## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MIDWEST ENERGY EMISSIONS CORP. and MES INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:19-cv-01334-RGA |
| VISTRA ENERGY CORP., *et al.*, | ) ) | JURY DEMANDED |
| Defendants. | ) ) ) | |

### CERT DEFENDANTS' OPENING BRIEF
### IN SUPPORT OF THEIR MOTION TO DISMISS
### FOR FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6)

OF COUNSEL:

Douglas R. Nemec
Leslie A. Demers
SKADDEN, ARPS, SLATE, MEAGHER &
    FLOM LLP
4 Times Square
New York, NY 10036
Tel: (212) 735-3000
douglas.nemec@skadden.com
leslie.demers@skadden.com

Robert S. Saunders (ID No. 3027)
Jessica R. Kunz (ID No. 5698)
SKADDEN, ARPS, SLATE, MEAGHER &
    FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
Tel: (302) 651-3000
Fax: (302) 651-3001
rob.saunders@skadden.com
jessica.kunz@skadden.com

*Attorneys for Defendants CERT
Coal Holdings LLC, CERT
Holdings LLC, CERT Holdings
2018, LLC, CERT Operations
LLC, CERT Operations II LLC,
CERT Operations III LLC,
CERT Operations IV LLC,
CERT Operations V LLC and
CERT Operations RCB LLC*

# TABLE OF CONTENTS

Page

I.      NATURE AND STAGE OF PROCEEDINGS ...................................................................1

II.     SUMMARY OF ARGUMENT ...........................................................................................1

III.    STATEMENT OF FACTS ...................................................................................................2

        A.      The '114 Patent...............................................................................................2

        B.      The '147 Patent...............................................................................................3

        C.      The Alleged Infringement ..............................................................................4

IV.     THE APPLICABLE LAW ...................................................................................................6

        A.      Legal Standard Governing Motions to Dismiss under Rule 12(b)(6)....................6

        B.      Legal Standard Governing Indirect Infringement..................................................7

        C.      Legal Standard Governing Willful Infringement....................................................8

        D.      Legal Standard Governing Joint Infringement ......................................................8

V.      THE COURT SHOULD DISMISS ME2C'S COMPLAINT AGAINST THE
        CERT DEFENDANTS FOR FAILURE TO STATE A CLAIM........................................9

        A.      ME2C Fails to State a Claim for Indirect Infringement .........................................9

                1.      ME2C Fails to Allege the Requisite Knowledge for Induced and
                        Contributory Infringement ...........................................................................9

                2.      ME2C Fails to Allege Specific Intent to Induce Infringement .................13

                3.      ME2C's Contributory Infringement Claims Suffer Additional
                        Deficiencies.................................................................................................14

        B.      ME2C's Willful Infringement Allegations Are Inadequate ..................................16

        C.      To the Extent ME2C Asserts a Joint Infringement Claim, This Too Is
                Inadequately Plead ................................................................................................16

VI.     CONCLUSION...................................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Addiction & Detoxification Institute L.L.C. v. Carpenter*,
   620 F. App'x 934 (Fed. Cir. 2015) ......................................................................15

*Akamai Technologies, Inc. v. Limelight Networks, Inc.*,
   797 F.3d 1020 (Fed. Cir. 2015) .......................................................................9, 17

*Artrip v. Ball Corp.*,
   735 F. App'x 708 (Fed. Cir. 2018) ......................................................................15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..............................................................................................6

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ...........................................................................................6, 7

*In re Bill of Lading Transmission & Processing System Patent Litigation*,
   681 F.3d 1323 (Fed. Cir. 2012) ........................................................................7, 15

*Bonutti Skeletal Innovations LLC v. Smith & Nephew, Inc.*,
   C.A. No. 12-1111-GMS,
   2013 U.S. Dist. LEXIS 165359 (D. Del. Nov. 18, 2013) ...................................12

*Chalumeau Power Systems LLC v. Alcatel-Lucent*,
   C.A. No. 11–1175–RGA,
   2012 U.S. Dist. LEXIS 142809 (D. Del. July 18, 2012) ....................................12

*Commil USA, LLC v. Cisco Systems, Inc.*,
   135 S.Ct. 1920, 191 L. Ed.2d 883 (2015) .........................................................8, 9

*DSU Medical Corp. v. JMS Co.*,
   471 F.3d 1293 (Fed. Cir. 2006) .......................................................................7, 13

*E.I. du Pont de Nemours & Co. v. Heraeus Holding GMBH*,
   C.A. No. 11-773-SLR-CJB,
   2012 U.S. Dist. LEXIS 140037 (D. Del. Sept. 28, 2012),
   *adopted by* C.A. No. 11-773-SLR-CJB (D. Del. Oct. 23, 2012) (D.I. 29) ......13, 14, 15, 16

*EON Corp. IP Holdings LLC v. FLO TV Inc.*,
   802 F. Supp. 2d 527 (D. Del. 2011) ......................................................................9

*F2VS Technologies, LLC v. Aruba Networks, Inc.*,
   No. 17-cv-0754-RGA,
   2018 U.S. Dist. LEXIS 60254 (D. Del. Apr. 10, 2018) .........................................7

*Global-Tech Appliances, Inc. v. SEB S.A.*,
   563 U.S. 754 (2011) ...............................................................................................7

*Halo Electronics, Inc. v. Pulse Electronics, Inc.*,
    136 S. Ct. 1923, 195 L. Ed.2d 278 (2016) ........................................................8

*Lyda v. CBS Corp.*,
    838 F.3d 1331 (Fed. Cir. 2016)...................................................................9, 17

*Monec Holding AG v. Motorola Mobility, Inc.*,
    897 F. Supp. 2d 225 (D. Del. 2012)..........................................7, 8, 10, 12, 16

*Neology, Inc. v. Kapsch Trafficcom IVHS, Inc.*,
    C.A. No. 13-2052-LPS,
    2014 U.S. Dist. LEXIS 131568 (D. Del. Sept. 19, 2014),
    *adopted by* C.A. No. 13-2052-LPS (D. Del. Oct. 22, 2014) (D.I. 39) ........12, 13

*Network Managing Sols., LLC v. AT&T Inc.*,
    No. 16-cv-295 (RGA),
    2017 U.S. Dist. LEXIS 19274 (D. Del. Feb. 3, 2017) ......................................1

*SIPCO, LLC v. Streetline, Inc.*,
    C.A. No. 16-830-RGA,
    2018 U.S. Dist. LEXIS 19911 (D. Del. Feb. 7, 2018) .................................10, 14

*Stephenson v. Game Show Network, LLC*,
    933 F. Supp. 2d 674 (D. Del. 2013)...............................................................15

*Superior Industries, LLC v. Thor Global Enterprises*,
    700 F.3d 1287 (Fed. Cir. 2012)..........................................................9, 12, 14

*Valinge Innovation AB v. Halstead New England Corp.*,
    C.A. No. 16-1082-LPS-CJB,
    2018 U.S. Dist. LEXIS 88696 (D. Del. May 29, 2018),
    *adopted by* C.A. No. 16-1082-LPS-CJB (D. Del. Nov. 6, 2018) (D.I. 295).................8, 16

*Varian Medical Systems v. Elekta AB*,
    C.A. No. 15-871-LPS,
    2016 U.S. Dist. LEXIS 91226 (D. Del. July 12, 2016),
    *adopted by* C.A. No. 15-871-LPS (D. Del. Dec. 22, 2016) (D.I. 112) .............................10

## STATUTES

Fed. R. Civ. P. 12(b)(6).............................................................................. *passim*

35 U.S.C. § 271(b) .........................................................................................7

35 U.S.C. § 271(c) .........................................................................................8

## I.      NATURE AND STAGE OF PROCEEDINGS

On July 17, 2019, plaintiffs Midwest Energy Emissions Corp. and MES Inc. (collectively, "Plaintiffs" or "ME2C") filed a complaint accusing 43 named defendants, including the CERT Defendants,[1] of infringing 34 claims in two patents relating to methods for separating mercury from a mercury-containing gas:   U.S. Patent Nos. 10,343,114 (claims 1-30) and 8,168,147 (claims 17-20) (respectively, the "'114" and "'147" Patents). (D.I. 1 at ¶¶ 182, 205.) The Court approved two stipulated motions by the parties to extend the CERT Defendants' responsive pleading deadline, extending the original deadline from August 9, 2019 to September 9, 2019, (D.I. 21, entered on August 5, 2019), and subsequently extending the deadline to September 23, 2019, (D.I. 35, entered on September 3, 2019).

Through this motion, the CERT Defendants seek dismissal of ME2C's Complaint for Patent Infringement ("Complaint") because the allegations against them are wholly inadequate.

## II.     SUMMARY OF ARGUMENT

1.      ME2C's Complaint should be dismissed in its entirety under Fed. R. Civ. P. 12(b)(6) as to the CERT Defendants.   At bottom, ME2C's theory of liability for the CERT Defendants appears to be based on their alleged provision of coal with one additive that ME2C

---

[1]   As used herein, "CERT Defendants" refers to Defendants CERT Coal Holdings LLC; CERT Holdings LLC; CERT Holdings 2018, LLC; CERT Operations LLC; CERT Operations II LLC; CERT Operations III LLC; CERT Operations IV LLC; CERT Operations V LLC; and CERT Operations RCB LLC.

Notably, certain of these entities are holding companies.   As this Court has observed, that patent infringement claims were asserted against "a holding company that does not make or sell any products or services in Delaware" "ultimately may be grounds for judgment against Plaintiff and grounds for a § 285 motion," but because Rule 12(b)(6) generally "requires . . . consider[ation] only [of] the pleadings," the CERT Defendants will address this issue at a later time.   *See Network Managing Sols., LLC v. AT&T Inc.*, No. 16-cv-295 (RGA), 2017 U.S. Dist. LEXIS 19274, at *4 (D. Del. Feb. 3, 2017).

1

asserts is used later in a method that it concedes is carried out by others.  That is a bridge too far. Dismissal is proper for the following reasons.

2.    ***First***, ME2C only expressly asserts indirect infringement claims against the CERT Defendants.  Despite having to plausibly plead that the CERT Defendants possessed knowledge of ME2C's patents and knowledge of infringement, ME2C only musters up irrelevant factual allegations or improper legal conclusions.  Because ME2C provides no factual allegations that could form the basis of a reasonable inference that the CERT Defendants had the requisite knowledge of purported infringement by others "downstream" in the process, its indirect infringement claims cannot stand.

3.    ***Second***, ME2C fails to allege additional elements for induced and contributory infringement, rendering those claims inadequate for independent reasons.

4.    ***Third***, ME2C's willful infringement allegations are unsupported for the same reasons as are its indirect infringement claims.

5.    And ***fourth***, ME2C's intimations (without express assertion) of some (but not all) elements of joint infringement theories cannot possibly meet its burden to state a claim. Accordingly, as discussed more fully below, ME2C's claims against the CERT Defendants should be dismissed.

## III.    STATEMENT OF FACTS

### A.    The '114 Patent

ME2C accuses the CERT Defendants of infringing claims 1-30 of the '114 Patent.  (D.I. 1 at ¶ 182.)  The asserted claims of the '114 Patent generally relate to methods of separating mercury from a mercury-containing gas through the use of at least two additives: a promoter and a sorbent.  (*See, e.g.*, *id.* at ¶¶ 184-93.)  Claim 25 is described as "exemplary," (*id.* at ¶ 183), and requires:

2

combusting coal in a combustion chamber, to provide the mercury-containing gas, wherein

the coal comprises added $Br_2$, HBr, a bromide compound, or a combination thereof, added to the coal upstream of the combustion chamber, or

the combustion chamber comprises added $Br_2$, HBr, a bromide compound, or a combination thereof, or

a combination thereof,

injecting a sorbent material comprising activated carbon into the mercury-containing gas downstream of the combustion chamber;

contacting mercury in the mercury-containing gas with the sorbent, to form a mercury/sorbent composition; and

separating the mercury/sorbent composition from the mercury-containing gas, to form a cleaned gas.

(*Id.* at Ex. A, 36:7-24.)  The claimed process thus includes (1) combusting coal with a promoter added to the coal ***upstream*** of the combustion chamber and/or added to the combustion chamber, and (2) injecting an activated carbon sorbent ***downstream*** of the combustion chamber.[2]

## B.    The '147 Patent

ME2C accuses the CERT Defendants of infringing claims 17-20 of the '147 Patent.  (D.I. 1 at ¶ 205.)  Although the '147 Patent and the '114 Patent claim priority to the same provisional application, their specifications differ.  Nonetheless, the asserted claims of the '147 Patent also generally relate to methods of separating mercury from a mercury-containing gas through the use of at least a promoter and a sorbent.  (*See, e.g.*, *id.* at ¶¶ 207-17.)  Claim 17 is described as "exemplary" of the asserted claims, (*id.* at ¶ 206), and requires:

(a) promoting at least a portion of a particulate sorbent material comprising activated carbon by chemically reacting the sorbent material with a bromine containing promoter to form a promoted brominated sorbent, wherein the bromine

---

[2]    The Court need not engage in claim construction in connection with this motion to dismiss.

containing promoter is in gaseous form, vapor form, or non-aqueous liquid form, and wherein the activated carbon contains graphene sheets having carbene species edge sites which react with the bromine containing promoter to form a carbocation paired with a bromide anion in the promoted brominated sorbent for oxidation of the mercury;

(b) chemically reacting elemental mercury in the mercury containing gas with the promoted brominated sorbent to form a mercury/sorbent chemical composition; and

(c) separating particulates from the mercury containing gas, the particulates including ash and the mercury/sorbent chemical composition[;]

further comprising injecting the particulate sorbent material at a sorbent material injection rate and injecting separately the bromine containing promoter into a gas stream whereby in-flight reaction produces the promoted brominated sorbent, wherein the promoter is reacted in the gas phase or as a vapor, wherein the promoter is added at from about 1 to about 30 grams per 100 grams of the sorbent material.

(*Id.* at Ex. B, 23:34-52, 24:34-41.)   Accordingly, the claimed process includes (1) injecting a particulate activated carbon sorbent material, and (2) *separately* injecting a promoter into a gas stream.   As does the '114 Patent, the '147 Patent thus dictates separate steps relating to the *promoter* and to the *activated carbon sorbent*.

## C.      The Alleged Infringement

As best as the CERT Defendants can discern from the Complaint, ME2C bases its infringement claims on the activities of two groups of defendants: (1) the Coal Plant Defendants and unnamed power plants connected to the Accused RC Facilities; and (2) AJG, DTE, Chem-Mod, the CERT Defendants, and the other RC Defendants.[3]

---

[3]   ME2C defines Accused RC Facilities and RC Defendants separately.   The former includes refined coal facilities allegedly operated by the CERT Defendants or others, (D.I. 1 at ¶ 152); and the latter includes additional named and unnamed entities, (*id.* at 2, first unnumbered paragraph), that ME2C claims are owned or operated by the CERT Defendants or others, (*id.* at ¶ 176).

Entities in the first group are accused of direct infringement, (D.I. 1 at ¶¶ 194, 218), and are alleged to have performed each step of the claimed method. (*Id.* at ¶¶ 184-93, 207-17.) According to the Complaint, these entities perform steps relating to the promoter, as well as steps relating to the activated carbon sorbent. ***First***, with respect to steps relating to the promoter, ME2C alleges that entities in the first group practice the claimed steps by burning coal that contains a previously-added promoter, and/or by "adding" promoter "to the combustion chamber." (*Id.* at ¶¶ 187, 210, 216.) In other words, ME2C takes the position that promoter is injected into a gas stream by these entities providing promoter to the combustion zone, and/or by burning coal with previously-added promoter. (*See id.*) ***Second***, with respect to the steps relating to the sorbent, ME2C alleges that entities in the first group perform this step by "injecting activated carbon sorbent downstream of the combustion chamber." (*Id.* at ¶ 189; *see also id.* at ¶¶ 210, 216.)

As to the second group of entities, including the CERT Defendants, ME2C appears to assert only indirect infringement theories against them.[4] Specifically, ME2C alleges that the CERT Defendants (among others) provide, at most, coal with added promoter to power plants. (D.I. 1 at ¶ 195 (claiming that the CERT Defendants and others "provide coal with added $Br_2$, HBr, a bromide compound, or a combination thereof to coal-fired power plants connected to an Accused RC Facility"), ¶ 219 (same), ¶ 152 (accusing the CERT Defendants and others of "operat[ing] RC facilities that receive coal, add bromine and/or bromide such as $CaBr_2$ to the coal, and then provide that 'refined' coal to a coal-fired power plant that injects a sorbent material comprising activated carbon downstream of the combustion chamber").)

---

[4] Although not recited in the Counts of the Complaint, ME2C includes a hodgepodge of allegations that may relate to (unstated) joint infringement theories. The deficiencies of these allegations are discussed in Section V.C.

Simply stated, ME2C's infringement allegations against the CERT Defendants are based solely on the "upstream" activity of adding promoter to the coal, rather than combustion or "downstream" activities related to the activated carbon sorbent.  Through these allegations, ME2C asserts that the CERT Defendants induce and contribute to the alleged infringement of the '114 Patent, (*id.* at ¶¶ 198-99), and to the alleged infringement of the '147 Patent, (*id.* at ¶¶ 222-23).  However, there are no factual allegations that the CERT Defendants participate in, encourage, or are even aware of the particulars of the combustion step or any "downstream" activities by the Coal Plant Defendants or other unnamed power plants, including any addition of an activated carbon sorbent as claimed.  (*Cf. id.* at ¶¶ 197-98, 221-22 (asserting bare legal conclusions regarding intent and knowledge).)  Nor are there factual allegations that the provided coal can only be used in a process that also employs activated carbon sorbent.  (*Cf. id.* at ¶¶ 196, 199, 220, 223 (asserting that the coal with added promoter is not a staple article or commodity of commerce without addressing whether it has uses beyond processes that employ the claimed sorbent).)

## IV.    THE APPLICABLE LAW

### A.    Legal Standard Governing Motions to Dismiss under Rule 12(b)(6)

Dismissal under Rule 12(b)(6) is appropriate where a plaintiff "fail[s] to state a claim upon which relief can be granted."  A plaintiff must provide sufficient factual allegations so that each of plaintiff's claims "is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To satisfy this requirement, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556) ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the

6

line between possibility and plausibility of entitlement to relief." (citation and quotations omitted)).

"Though detailed factual allegations are not required, a complaint must do more than simply provide labels and conclusions or a formulaic recitation of the elements of a cause of action." *F2VS Techs., LLC v. Aruba Networks, Inc.*, No. 17-cv-0754-RGA, 2018 U.S. Dist. LEXIS 60254, at *3 (D. Del. Apr. 10, 2018) (citations and quotations omitted). Further, courts are "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *Id.* (citation omitted); *see also Twombly*, 550 U.S. at 555 (Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." (citation and quotations omitted)).

### B.     Legal Standard Governing Indirect Infringement

Induced infringement under 35 U.S.C. § 271(b) requires knowledge of the patent and "knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011). "To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead facts 'plausibly showing that [the defendant] specifically intended [a third party] to infringe [the asserted patents] and knew that the [third party's] acts constituted infringement.'" *F2VS Techs.*, 2018 U.S. Dist. LEXIS 60254, at *9 (quoting *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012)) (alterations in original); *see also Monec Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 231 (D. Del. 2012) ("Inducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." (quoting *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc in relevant part))).

"Like induced infringement, contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement." *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S.Ct. 1920, 1926, 191 L. Ed.2d 883, 891 (2015) (citation omitted). To state a claim for contributory infringement, the plaintiff must plausibly allege that the infringer "offers to sell or sells within [or] . . . imports into the United States a component of a . . . patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use . . . ." *See* 35 U.S.C. § 271(c); *see also Monec*, 897 F. Supp. 2d at 234 (dismissing contributory infringement claims in part for failure to allege "knowledge that the combination for which [its] component was especially designed [is] both patented and infringing" (alterations in original) (citation omitted)).

## C.     Legal Standard Governing Willful Infringement

"[I]n order to sufficiently plead willful infringement, a plaintiff must allege facts plausibly showing that as of the time of the claim's filing, the accused infringer: (1) knew of the patent-in-suit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent." *Valinge Innovation AB v. Halstead New Eng. Corp.*, C.A. No. 16-1082-LPS-CJB, 2018 U.S. Dist. LEXIS 88696, at *35 (D. Del. May 29, 2018) (articulating pleading standard for willful infringement in view of *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 195 L. Ed.2d 278 (2016)), *adopted by* C.A. No. 16-1082-LPS-CJB (D. Del. Nov. 6, 2018) (D.I. 295).

## D.     Legal Standard Governing Joint Infringement

At the motion to dismiss stage, "[a] claim of joint infringement . . . requires pleading facts sufficient to allow a reasonable inference that all steps of the claimed method are performed and either (1) one party exercises the requisite 'direction or control' over the others' performance

or (2) the actors form a joint enterprise such that performance of every step is attributable to the controlling party." *Lyda v. CBS Corp.*, 838 F.3d 1331, 1339-40 (Fed. Cir. 2016) (citing *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1023 (Fed. Cir. 2015) (en banc)) (affirming dismissal with prejudice of joint infringement claim where plaintiff failed to plausibly allege that "each claim step was performed by or should be attributed to Defendants"); *see also EON Corp. IP Holdings LLC v. FLO TV Inc.*, 802 F. Supp. 2d 527, 534 (D. Del. 2011) (dismissing joint infringement claims and observing that "joint infringement liability not only requires proof that various parties perform all of the claimed steps, but also that one party exercise 'control or direction' over the infringing activities of all other parties").

## V. THE COURT SHOULD DISMISS ME2C'S COMPLAINT AGAINST THE CERT DEFENDANTS FOR FAILURE TO STATE A CLAIM

### A. ME2C Fails to State a Claim for Indirect Infringement

#### 1. ME2C Fails to Allege the Requisite Knowledge for Induced and Contributory Infringement

To avoid dismissal of its indirect infringement claims, ME2C must plausibly allege that the CERT Defendants had "knowledge of the patent in suit and knowledge of patent infringement." *Commil*, 135 S.Ct. at 1926, 191 L. Ed.2d at 891; *Superior Indus., LLC v. Thor Glob. Enters.*, 700 F.3d 1287, 1296 (Fed. Cir. 2012) (affirming dismissal of indirect infringement claims in part because plaintiff "d[id] not allege any facts to support a reasonable inference that [defendant] . . . knew it had induced acts that constitute infringement" (citation omitted)). Aside from bare legal conclusions and conjecture, ME2C's Complaint is completely lacking in this regard.

As for the CERT Defendants' purported knowledge of the patents, the Complaint asserts that they "likely" became aware of the "patents-in-suit and/or related applications" through interactions with the Energy & Environmental Research Center ("EERC"), as the inventors

9

allegedly developed these patents or related applications while at the EERC, (D.I. 1 at ¶ 145), or through a "close relationship" with a different entity whose president purportedly attended a conference where ME2C characterized its technology as "covered by its patents," (*id.* at ¶¶ 146-47).  These attenuated connections ME2C attempts to draw do not render actual knowledge plausible.  As an initial matter, any knowledge of these other entities cannot be imputed to the CERT Defendants.  Indeed, this Court has declined to impute knowledge of patents even within corporate families.  *See, e.g.*, *Varian Med. Sys. v. Elekta AB*, C.A. No. 15-871-LPS, 2016 U.S. Dist. LEXIS 91226, at *20 (D. Del. July 12, 2016) (finding allegations that one entity had knowledge insufficient to find knowledge for related entities even where "all four named Defendants operate under the same trade name"), *adopted by* C.A. No. 15-871-LPS (D. Del. Dec. 22, 2016) (D.I. 112).  More to the point, too many layers of inferences are required to conclude that the CERT Defendants had knowledge of the '114 and '147 Patents from an allusion to general patent protection at a conference attended by others, or interactions with a center where the inventors claim to have conducted research.  *See, e.g.*, *Monec*, 897 F. Supp. 2d at 233 (knowledge of patents not supported by "participat[ion] . . . in the same technologically-based industry").

Aside from the foregoing allegations, ME2C also baldly asserts that the CERT Defendants "have actual knowledge of the . . . patent[s]."  (D.I. 1 at ¶¶ 198, 222.)  But a "bare recitation of legal elements" does not suffice.  *SIPCO, LLC v. Streetline, Inc.*, C.A. No. 16-830-RGA, 2018 U.S. Dist. LEXIS 19911, at *5 (D. Del. Feb. 7, 2018) (dismissing indirect infringement claim).

ME2C's allegations of knowledge of direct infringement are even more tenuous.  Indeed, ME2C fails to plead the CERT Defendants' knowledge of any infringing acts in anything more

than conclusory rhetoric.  (*See, e.g.*, D.I. 1 at ¶ 198 (alleging that the CERT Defendants, among others, "know that [the alleged] actions . . . , if taken, would constitute infringement of th[e '114] [P]atent"), *id.* at ¶ 222 (same, for the '147 Patent).)  At most, ME2C alleges that the CERT Defendants provided coal with added ***promoter*** to the alleged direct infringers.  (*See, e.g.*, *id.* at ¶ 152.)  But the Complaint is silent on any knowledge regarding the alleged direct infringers' downstream use of ***activated carbon sorbent***, let alone knowledge of any of the other claimed steps.

ME2C's list of 12 activities that purportedly relate to the CERT Defendants' (among others') intent to "induce and/or contribute to the infringement of others" has no bearing on any knowledge of direct infringement.  (D.I. 1 at ¶ 158.)  Instead, these 12 activities either relate only to the CERT Defendants' interactions with RC Defendants or RC Facilities, or only touch on the alleged provision of coal with added ***promoter***.  For instance, ME2C's allegation that the CERT Defendants "[c]onnect[ed] the RC facilities to coal-fired power plants" is untethered to any knowledge of allegedly infringing activities undertaken by the power plant.  (*Id.* at ¶ 158(d); *see also id.* at ¶¶ 158(e), (g), (i), (j) (alleging various activities with the RC Defendants or RC Facilities without discussing even any promoter).)  Likewise, the allegation that the CERT Defendants "provid[e] several of the RC Defendants and operators of coal-fired power plants with [unspecified] chemicals used to directly infringe the patents-in-suit," (*id.* at ¶ 158(b)), again elides that ME2C consistently claims that the CERT Defendants provide, at most, coal with added promoter, and not any activated carbon sorbent.  (*See, e.g.*, *id.* at ¶¶ 152, 195-96, 199, 219-20, 223.)  Other allegations in the list are similarly limited to a promoter.  (*Id.* at ¶¶ 158(a), (c), (f), (h), (k), (l).)

Without any "factual basis at all to conclude that the defendants knew that the actions of others who obtained the [accused products] constituted infringement," ME2C's indirect infringement claims are deficient. *Chalumeau Power Sys. LLC v. Alcatel-Lucent*, C.A. No. 11–1175–RGA, 2012 U.S. Dist. LEXIS 142809, at *3 (D. Del. July 18, 2012); *see also Superior Indus.*, 700 F.3d at 1296; *Monec*, 897 F. Supp. 2d at 231 (dismissing contributory infringement claims in part for failure to allege "knowledge that the combination for which [its] component was especially designed [is] both patented and infringing" (alterations in original) (citation omitted)). Indeed, this Court has dismissed indirect infringement claims that alleged more than ME2C's allegations of knowledge here. *See, e.g.*, *Bonutti Skeletal Innovations LLC v. Smith & Nephew, Inc*., C.A. No. 12-1111-GMS, 2013 U.S. Dist. LEXIS 165359, at *2, n.5 (D. Del. Nov. 18, 2013) ("Allegations that [defendant] knew of [plaintiff's] patents and of its customers' use of [defendant's] products do not suffice to establish that [defendant] also knew that its customers' use of [defendant's] own products would amount to infringement of [plaintiff's] patents.").

Finally, should ME2C rely on the "passing reference to willful blindness" as to the patents or purported infringement, this too is not enough because "[t]o plead willful blindness, a plaintiff must identify affirmative actions taken by the defendant to avoid gaining knowledge of the patents-in-suit or of acts that constituted patent infringement." *Neology, Inc. v. Kapsch Trafficcom IVHS, Inc*., C.A. No. 13-2052-LPS, 2014 U.S. Dist. LEXIS 131568, at *15-16 (D. Del. Sept. 19, 2014) (citation omitted), *adopted by* C.A. No. 13-2052-LPS (D. Del. Oct. 22, 2014) (D.I. 39); *see* D.I. 1 at ¶¶ 147, 198, 222. Far from alleging affirmative actions, ME2C states simply that the CERT Defendants "***remained*** willfully blind." (*Id.* at ¶¶ 198, 222 (emphasis added).)

2.      ME2C Fails to Allege Specific Intent to Induce Infringement

ME2C's induced infringement claim against the CERT Defendants should be dismissed for the additional reason that ME2C has failed to adequately allege a specific intent to induce infringement.  "[I]nducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *DSU*, 471 F.3d at 1306.

Again, ME2C includes only conclusory allegations that the CERT Defendants "took . . . actions intending to cause infringing acts by others" without providing factual support.  (D.I. 1 at ¶¶ 197, 221.)  While ME2C charges the CERT Defendants with providing coal with added ***promoter*** to the alleged direct infringers, as well as "tailor[ing] the amount" of ***promoter*** for the needs of unnamed power plants, (*id.* at ¶¶ 196, 220), it does not plausibly plead that the CERT Defendants intended to encourage the use of ***activated carbon sorbent*** as claimed.

Reliance on the 12 activities discussed above for a specific intent to induce infringement is similarly flawed.  (*See* D.I. 1 at ¶ 158.)  In articulating these 12 activities, ME2C lumps together all of the CERT Defendants, along with a panoply of other named and unnamed entities. As this Court has held, "[t]reating these Defendants as one big group for purposes of articulating how each has encouraged the induced infringement at issue says nothing plausible as to what any particular one of them might have done."  *Neology*, 2014 U.S. Dist. LEXIS 131568, at *21. What is more, these alleged activities either relate solely to the CERT Defendants' interactions with RC Facilities or RC Defendants, or the alleged provision of coal with added promoter, and are thus untethered to any activities that could show a specific intent to induce infringement of the claimed methods.

Without plausible allegations that the CERT Defendants specifically intended to induce infringement, dismissal of ME2C's claim is warranted.  *See, e.g.*, *E.I. du Pont de Nemours & Co.*

13

*v. Heraeus Holding GMBH*, C.A. No. 11-773-SLR-CJB, 2012 U.S. Dist. LEXIS 140037, at \*22-23 (D. Del. Sept. 28, 2012) (dismissing induced infringement claim where allegations established only that "(1) Defendants sold certain [products] to their customers; (2) the customers practice the method disclosed in the patent . . . using [these products] . . . ; and (3) Defendants received notice of the . . . patent when the Complaint was filed"), *adopted by* C.A. No. 11-773-SLR-CJB (D. Del. Oct. 23, 2012) (D.I. 29); *see also Superior Indus.*, 700 F.3d at 1296 (affirming dismissal of induced infringement claim in part because plaintiff "d[id] not allege any facts to support a reasonable inference that [defendant] specifically intended to induce infringement"); *SIPCO*, 2018 U.S. Dist. LEXIS 19911, at \*5 (dismissing induced infringement claims where the complaint "contain[ed] no facts to support the allegation that [the alleged infringer] had specific intent to induce infringement").

3.   <u>ME2C's Contributory Infringement Claims Suffer Additional Deficiencies</u>

ME2C's contributory infringement claims should be dismissed on the additional grounds of ME2C's failure to plausibly allege that the coal with added promoter lacks substantial noninfringing use and is especially made to infringe.  *See Superior Indus.*, 700 F.3d at 1296 (affirming dismissal of contributory infringement claim where plaintiff "d[id] not allege that the accused products are 'especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use'" (citation omitted)).

ME2C's attempt to allege that the coal with added promoter has no substantial noninfringing use displays a wrongheaded conception of the requirements.  ME2C contends that the coal with added promoter qualifies because "[t]his coal is supplied to a conveyance that moves the coal toward the combustion chamber of the power plant that directly infringes the . . . patent[s]."  (D.I. 1 at ¶¶ 196, 220.)  "These allegations are tailored too narrowly; they say nothing

14

more than 'if you use this device to perform the patented method, the device will infringe and has no noninfringing uses.'"  *In re Bill of Lading*, 681 F.3d at 1323 (citation omitted).  ME2C alleges no facts to support the "relevant inquiry" of "whether the accused products can be used for purposes ***other than*** infringement."  *Id.* (emphasis in original).

ME2C also does not plausibly allege that the only use for coal with added promoter is in a process that includes an activated carbon sorbent, let alone a process that meets all other claim limitations.  *See id.* ("Where the product is equally capable of, and interchangeably capable of, both infringing and substantial non-infringing uses, a claim for contributory infringement does not lie."); *see also Addiction & Detoxification Inst. L.L.C. v. Carpenter*, 620 F. App'x 934, 938 (Fed. Cir. 2015) (affirming dismissal where the complaint "contain[ed] no allegations regarding substantial non-infringing uses"); *Artrip v. Ball Corp.*, 735 F. App'x 708, 713 (Fed. Cir. 2018) (affirming dismissal where the alleged "facts do not suggest that [defendant] knew of the . . . patents or that the [material] supplied could not be used 'for purposes ***other than*** infringement'" (citation omitted; emphasis in original)).  Nor does ME2C allege that the coal with added promoter is "especially made" to be used with the claimed sorbent in the claimed manner.  As such, ME2C's claims for contributory infringement against the CERT Defendants should be dismissed.  *See, e.g.*, *Stephenson v. Game Show Network, LLC*, 933 F. Supp. 2d 674, 681 (D. Del. 2013) (dismissing contributory infringement claim where "plaintiff does not offer any argument or facts directed to show that defendants 'knew that the combination for which [their] component was especially designed was both patented and infringing' or that the components 'have no substantial non-infringing uses'" (alteration in original) (citations omitted)); *du Pont*, 2012 U.S. Dist. LEXIS 140037, at *33 (dismissing contributory infringement claim where plaintiff failed to allege "facts regarding all elements of contributory infringement claim").

15

**B.      ME2C's Willful Infringement Allegations Are Inadequate**

ME2C's perfunctory reference to willful infringement, (D.I. 1 at ¶ 166), does not adequately plead that the CERT Defendants "(1) knew of the patent-in-suit; (2) after acquiring that knowledge, [they] infringed the patent; and (3) in doing so, [they] knew, or should have known, that [their] conduct amounted to infringement of the patent." *Valinge*, 2018 U.S. Dist. LEXIS 88696, at *35. To the contrary, as set forth above, ME2C's pleadings are bereft of factual allegations demonstrating the CERT Defendants' knowledge of the patents or of infringement. Accordingly, ME2C's willfulness allegations should be dismissed. *See id.* (dismissing willful infringement claim where plaintiff "did not plausibly allege that [d]efendants had knowledge of the patents" or "were on notice of how it is that they were said to infringe the asserted patents"); *see also Monec*, 897 F. Supp. 2d at 236-37 (dismissing willful infringement claim and finding the failure to plead knowledge of the patent was "fatal" to the claim).

**C.      To the Extent ME2C Asserts a Joint
          Infringement Claim, This Too Is Inadequately Plead**

Peppered throughout the complaint are puzzling accusations that numerous joint enterprises exist, (*see, e.g.*, D.I. 1 at ¶¶ 159-64 (identifying three separate joint enterprises)), and, conflictingly, that the CERT Defendants and others "condition participation in an activity or receipt of a benefit" upon the performance of combusting coal with added promoter, (*see, e.g.*, *id.* at ¶ 157). These stray references to select legal elements of joint infringement theories throughout the Complaint do not come close to a "short and plain statement" of a joint infringement claim against the CERT Defendants under Fed. R. Civ. P. 8(a) – especially as the CERT Defendants are never identified as direct infringers. *See du Pont*, 2012 U.S. Dist. LEXIS 140037, at *30-33, n.9 (in dismissing contributory infringement claim, observing that "Plaintiff's attempt to plead contributory infringement is well hidden, as compared to the more prominent

16

words in the Complaint that reference other claims"); *compare* D.I. 1 at ¶¶ 194, 218 (identifying the Coal Plant Defendants as direct infringers), *with id.* at ¶¶ 198-99, 222-23 (identifying the CERT Defendants and others as indirect infringers).

In any event, even if ME2C were to amend its Complaint to explicitly assert joint infringement claims against the CERT Defendants, a joint infringement claim still cannot stand. For instance, with respect to a joint enterprise theory, ME2C does not even pay lip service to the requirement that the joint enterprise participants all share "an equal right to a voice in the direction of the enterprise." *Akamai*, 797 F.3d at 1023.  And with respect to any theory of direction or control, ME2C does not allege that the CERT Defendants direct or control the Coal Plant Defendants or others such that *all* steps – including combustion, injection of the claimed activated carbon sorbent, or any other downstream step – are attributable to them. *Cf. id.* at 1020 ("Direct infringement . . . occurs where all steps of a claimed method are performed by or attributable to a single entity.").  Rather, ME2C asserts that the CERT Defendants and others "condition participation in an activity or receipt of benefit" upon the performance of combusting coal with added *promoter*, and that they "establish the manner or timing of *that performance*." (D.I. 1 at ¶ 157 (emphasis added).)

Because ME2C fails to provide factual allegations that all steps of the claimed method may be attributable to the CERT Defendants, any claim for joint infringement cannot stand. *See, e.g.*, *Lyda*, 838 F.3d at 1340 (affirming dismissal with prejudice of joint infringement claim where there were "no allegations in the Amended Complaint that can form the basis of a reasonable inference that *each claim step* was performed by or should be attributed to Defendants" (emphasis added)).

17

## VI.     CONCLUSION

For the foregoing reasons, the Court should dismiss ME2C's claims against the CERT

Defendants under Rule 12(b)(6) for failure to state a claim.


DATED: September 23, 2019                    Respectfully submitted,


                                             /s/ Robert S. Saunders
OF COUNSEL:                                  Robert S. Saunders (ID No. 3027)
Douglas R. Nemec                             Jessica R. Kunz (ID No. 5698)
Leslie A. Demers                             SKADDEN, ARPS, SLATE, MEAGHER &
SKADDEN, ARPS, SLATE, MEAGHER &                 FLOM LLP
   FLOM LLP                                  One Rodney Square
Four Times Square                            P.O. Box 636
New York, NY 10036                           Wilmington, Delaware  19899
Tel: (212) 735-3000                          Tel:  (302) 651-3000
douglas.nemec@skadden.com                    Fax:  (302) 651-3001
leslie.demers@skadden.com                    rob.saunders@skadden.com
                                             jessica.kunz@skadden.com

                                             *Attorneys for Defendants CERT
                                             Coal Holdings LLC, CERT
                                             Holdings LLC, CERT Holdings
                                             2018, LLC, CERT Operations
                                             LLC, CERT Operations II LLC,
                                             CERT Operations III LLC,
                                             CERT Operations IV LLC,
                                             CERT Operations V LLC, and
                                             CERT Operations RCB LLC*

18