IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MIDWEST ENERGY EMISSIONS CORP. and MES INC., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 19-1334-RGA |
| VISTRA ENERGY CORP., et al., | § § § | |
| Defendants. | § | |

**OPENING BRIEF IN SUPPORT OF MOTION TO DISMISS
BY DEFENDANT TALEN ENERGY CORPORATION, BRANDON SHORES LLC,
TALEN GENERATION LLC, AND H.A. WAGNER LLC**

*Of Counsel:*

David B. Weaver
Syed Fareed
Emily Pyclik
**BAKER BOTTS L.L.P.**
98 San Jacinto, Suite 1500
Austin, Texas 78701
(512) 322-2500

David Tobin
**BAKER BOTTS L.L.P.**
2001 Ross Avenue, Suite 1100
Dallas, Texas 75201
(214) 953-6500


Dated:  September 23, 2019

**DRINKER BIDDLE & REATH LLP**
Francis DiGiovanni (#3189)
Thatcher A. Rahmeier (#5222)
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
(302) 467-4200
francis.digiovanni@dbr.com
thatcher.rahmeier@dbr.com

*Attorneys for Defendants Talen Energy
Corporation, Brandon Shores LLC, Talen
Generation, LLC, and H.A. Wagner LLC*

## TABLE OF CONTENTS

I. NATURE AND STAGE OF THE PROCEEDINGS ................................................. 1

II. SUMMARY OF ARGUMENT ................................................................. 1

III. STATEMENT OF FACTS .................................................................. 3

    A. Willful Infringement ............................................................3

    B. Indirect Infringement ...........................................................4

    C. Joint And Several Liability ......................................................5

    D. Plaintiff MES ..................................................................5

III. ARGUMENT ........................................................................... 6

    A. Legal Standards for Motions to Dismiss...........................................6

       i. Willful Infringement ......................................................... 7

       ii. Indirect Infringement ....................................................... 7

       iii. Joint and Several Liability ................................................. 7

    B. Plaintiffs Fail to Adequately Plead Willful Infringement...........................8

    C. Plaintiffs' Allegations of Inducement to Infringe Are Wholly Deficient ..........10

    D. Plaintiffs Fail to Adequately Plead Joint and Several Liability Among Vistra, NRG, and Talen ...........................................................................12

    E. Plaintiffs Fail to Sufficiently and Plausibly Allege That MES Is a "Patentee" Under 35 U.S.C. § 281 In Order to Bring Suit on the '114 and '147 Patents..........................13

IV. CONCLUSION ........................................................................ 16

**TABLE OF AUTHORITIES**

**Page(s)**

<span style="font-variant:small-caps">Cases</span>

*Addition and Detoxification Inst. L.L.C. v. Carpenter*,
620 Fed. Appx. 934 (Fed. Cir. 2015) (unpublished).................................................12

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
797 F.3d 1020 (Fed. Cir. 2015)...............................................................7, 8, 12

*Ansell Healthcare Products LLC v. Reckitt Benckiser LLC*,
15-CV-915-RGA, 2018 WL 620968 (D. Del. Jan. 30, 2018)...................................9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...............................................................................6, 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..............................................................................2, 6, 8

*BlackBerry Ltd. v. Nokia Corp.*,
17-CV-155-RGA, 2018 WL 1401330 (D. Del. Mar. 20, 2018) ...............................9

*Brown v. Interbay Funding LLC*,
198 F. Appx. 223 (3d Cir. 2006)..................................................................1

*Crystal Semiconductor Corp. v. TriTech Microelectronics Intern., Inc.*,
246 F.3d 1336 (Fed. Cir. 2001)...................................................................8

*FMC Corp. v. Up-Right, Inc.*,
816 F. Supp. 1455 (N.D. Cal. 1993), *decision aff'd*, 21 F.3d 1073 (Fed. Cir.
1994) ..............................................................................................8, 9

*Genetic Technologies Ltd. v. Bristol-Myers Squibb Company*,
72 F. Supp. 3d 521 (D. Del. 2014).................................................................6

*In re Bill of Lading*,
681 F.3d 1323 (Fed. Cir. 2012)...............................................................11, 13

*In re Bill of Lading*,
681 F.3d 1332 (Fed. Cir. 2012)....................................................................7

*In re Vaughan Co., Realtors*,
477 B.R. 206 (Bankr. D. N.M. 2012) .............................................................1

*Intellectual Prop. Dev., Inc. v. TCI Cablevision of California, Inc.*,
248 F.3d 1333 (Fed. Cir. 2001)..................................................................16

*Kaempe v. Myers*,
    367 F.3d 958 (D.C. Cir. 2004) ................................................................................6

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
    925 F.3d 1225 (Fed. Cir. 2019) .............................................................................13

*Lyda v. CBS Corp.*,
    838 F.3d 1331 (Fed. Cir. 2016) ..............................................................................7

*M2M Solutions LLC, v. Telit Communications PLC et al.*,
    No. CV 14-1103-RGA, 2015 WL 4640400 (D. Del. Aug. 5, 2015) ..................11, 15

*Mayer v. Belichick*,
    605 F.3d 223 (3d Cir. 2010) ...................................................................................6

*Neology, Inc. v. Kapsch Trafficcom IVHS, Inc.*,
    No. CV 13-2052-LPS, 2014 WL 4675316 (D. Del. Sept. 19, 2014) .....................11

*Rotating Prods. Sys., Inc. v. Bock Specialities, Inc.*,
    42 Fed. Appx. 460 (Fed. Cir. 2002) (unpublished) ...........................................8, 12

*Sicom Sys., Ltd. v. Agilent Techs., Inc.*,
    427 F.3d 971 (Fed. Cir. 2005) ...............................................................................14

*State Industries, Inc. v. A.O. Smith Corp.*,
    751 F.2d 1226 (Fed. Cir. 1985) .............................................................................10

*Toshiba Corp. v. Imation Corp.*,
    681 F.3d 1358 (Fed. Cir. 2012) .............................................................................11

*Valinge Innovation AB v. Halstead New Eng. Corp.*,
    CV 16-1082-LPS-CJB, 2018 WL 2411218 (D. Del. May 29, 2018) ......................7

*Varian Med. Sys., Inc. v. Elekta AB*,
    CV 15-871-LPS, 2016 WL 3748772 (D. Del. July 12, 2016) ...............................10

*Vitek Sys., Inc. v. Abbott Labs.*,
    675 F.2d 190 (8th Cir. 1982) ..................................................................................6

**STATUTES**

35 U.S.C. § 271(b) ...................................................................................................2, 7

35 U.S.C. § 281 ..........................................................................................3, 13, 15, 16

*35 U.S.C. § 283* ..........................................................................................................15

35 U.S.C. § 287 ............................................................................................................4

**OTHER AUTHORITIES**

37 C.F.R. § 1.12 (2019) .................................................................................................6

Fed. R. Civ. P. 12(b)(6) ...............................................................................2, 3, 6, 13, 16

Rule 12(b) ...............................................................................................................6, 14

U.S. Patent No. 8,168,147 .......................................................................1, 3, 4, 6, 9, 14, 15

U.S. Patent No. 10,343,114 .....................................................................1, 3, 4, 6, 9, 14, 16

## I.     NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs Midwest Energy Emissions Corp. ("Midwest") and MES Inc. ("MES") (collectively "Plaintiffs") filed their Complaint (D.I. 1) on July 17, 2019, setting forth, *inter alia*, allegations of induced infringement and willful infringement by Talen Energy Corporation, Brandon Shores LLC, Talen Generation, LLC, and H.A. Wagner LLC (collectively "the Talen entities" or "Talen") as well as Talen Energy Holdings, Inc.[1], of U.S. Patent No. 8,168,147 (the "'147 Patent") and U.S. Patent No. 10,343,114 (the "'114 Patent") (collectively "Asserted Patents").   The Complaint further alleges that Defendants Vistra Energy Corporation, Dynegy Miami Fort, LLC, Dynegy Inc., Dynegy Midwest Generation, LLC, IPH, LLC, and Illinois Power Resources Generating, LLC (collectively "Vistra"), Defendants NRG Energy, Inc., NRG Texas Power LLC, Midwest Generation EME, LLC, and Midwest Generation, LLC (collectively "NRG"), and Talen are jointly and severally liable for infringement with each other.   This is Talen's Opening Brief in Support of its Motion to Dismiss.[2]

## II.     SUMMARY OF ARGUMENT

1.     Plaintiffs, in their Complaint, fail to plead facts sufficient to show that any Talen entity willfully infringed the Asserted Patents.   Plaintiffs make conclusory assertions in their

---

[1] Talen Energy Holdings Inc. is no longer in existence.  Counsel for Defendants requested that Plaintiffs' counsel dismiss Talen Energy Holdings, Inc. from this case.  Plaintiffs' counsel agreed to do so but have not yet done so.

[2] A motion to dismiss stays the time in which the defendant must respond to the remaining counts of the Complaint.  *See Brown v. Interbay Funding LLC*, 198 F. Appx. 223, 225 (3d Cir. 2006) ("[T]he time period for filing an answer is altered when a defendant files a motion under Rule 12.  *See* FED. R. CIV. P. 12(a)(4). . . . [T]he motion merely extended [defendant's] time to file an answer. . . after receiving notice of the District Court's action on its motion. *See* Fed.R.Civ.P. 12(a)(4)(A)."); *see, e.g., In re Vaughan Co., Realtors*, 477 B.R. 206, 213 (Bankr. D. N.M. 2012) ("The large majority of courts addressing this issue have held that when a defendant timely files a motion to dismiss under Rule 12(b)(6), FED. R. CIV. P., Rule 12(a)(4)(A) extends the time to file an answer as to all claims, including those not addressed by the motion to dismiss.").  During the Meet and Confer held with Plaintiff's counsel on September 18, 2019, Plaintiffs' counsel agreed that filing this partial motion to dismiss will stay Talen's time to respond to the remainder of the Complaint.

Complaint alleging that the Talen entities had knowledge of the Asserted Patents.   The allegations are implausible, and in any event mere knowledge is not sufficient to plead willful infringement.   Accordingly, the Talen entities respectfully request that the Court dismiss the allegations of willful infringement with respect to the Asserted Patents against Talen under FED. R. CIV. P. 12(b)(6).

2.      Plaintiffs, in their Complaint, fail to plead facts sufficient to show that any Talen entity acted with specific intent to induce infringement.   Rather, Plaintiffs lump multiple unrelated Defendants together in their Complaint without specifically identifying how any Talen entity induced any person or entity to infringe the Asserted Patents.   Plaintiffs fail to allege any specific intent by any Talen entity to induce a person or entity to infringe the Asserted Patents. Specific intent is a necessary element to plead inducement to infringe under 35 U.S.C. § 271(b), and Plaintiffs' allegations are insufficient as a matter of law under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("*Twombly*").   Plaintiffs' allegations of induced infringement of the Asserted Patents should therefore be dismissed under FED. R. CIV. P. 12(b)(6).

3.      Plaintiffs, in their Complaint, fail to plead facts sufficient to support their claims of joint and several liability.   Plaintiffs lump Vistra, NRG, and Talen together, making all joint and several liability allegations against this group, rather than making individualized allegations. The Complaint includes no facts supporting allegations that Vistra, NRG, and Talen have any relationship to one another, aside from the fact that they operate in the same industry.   Vistra, NRG, and Talen are, in fact, distinct, independently owned and operated companies. Accordingly, the Talen entities respectfully request that the allegations of joint and several liability be dismissed under FED. R. CIV. P. 12(b)(6).

4.      The Complaint also fails to establish that Plaintiff MES is a requisite "patentee" under 35 U.S.C. § 281 to pursue any cause of action for infringement of the Asserted Patents. Public records reveal that the '114 Patent and the '147 patent are owned solely by plaintiff Midwest, not MES.  And the Complaint fails to otherwise allege that MES has substantial rights to either the '114 Patent or the '147 Patent.  The Complaint identifies no connection between MES and the Asserted Patents that would qualify MES as a "patentee" to allow it to bring this lawsuit.  The Court should dismiss all allegations of patent infringement of the Asserted Patents brought by MES under FED. R. CIV. P. 12(b)(6) for failure to state a claim of patent infringement.

## III.    STATEMENT OF FACTS

Plaintiffs allege, in their Complaint, patent infringement against over forty entities. The Complaint alleges that Talen operates various coal-fired power plants, where coal is combusted using a method that allegedly directly infringes the Asserted Patents.  *See* D.I. ¶¶ 148-149, 194, 218.  Plaintiffs further allege that Talen's infringement is willful.  *Id.* at ¶ 166.  Plaintiffs also allege that one or more of the Talen entities indirectly infringes by inducing certain of its subsidiaries to perform the steps of the patented methods.  *Id.* at ¶ 150.  Finally, Plaintiffs allege that Vistra, NRG, and Talen (collectively the "Coal Plant Defendants") own and operate coal-fired power plants using Chem-Mod products to directly infringe, and thus are jointly and severally liable with each other.  *Id.* at ¶¶ 174-175.

### A.      Willful Infringement

The sole bases for Plaintiffs' allegations of willful infringement against the Talen entities appear in Paragraphs 138-144 and 166-168 of the Complaint, and center on references to "PPL," a non-party alleged to be a former owner of three power plants owned by Talen (*see id.* at ¶¶ 138-139):

138. Talen owns and/or operates the Brunner Island, Colstrip, and Montour power plants.

139. Prior to 2015 those plants were owned and/or operated by PPL.

140.  In 2013, representatives of PPL attended the Air Quality 9 conference and received a presentation on the patented technology which identified the '147 patent and parent applications to the '114 patent.

141. In 2013, ME2C met with PPL to discuss the use of ME2C's patented technology at power plants in the PPL fleet, including Brunner Island, Colstrip, and Montour.

142. ME2C specifically identified the '147 patent and the parent patent to the '114 patent, and explained that these patents covered the use of halogen-based sorbent enhancement additives and backend carbon-based sorbents.

143. In 2015, PPL spun off a portion of its business to form Talen.

144. Despite being aware of ME2C's patents, Talen has elected to infringe those patents.

*   *   *

166. Defendants' infringement of the Patents-in-Suit is willful. Defendants continue to commit acts of infringement despite a high likelihood that its actions constitute infringement, and Defendants knew or should have known that their actions constituted an unjustifiably high risk of infringement.

167. In accordance with 35 U.S.C. § 287, Defendants have actual notice and knowledge of all of the Patents-in-Suit as described above and no later than the filing of this Complaint and/or the date this Complaint was served upon each Defendant.  In any event, Defendants may not avail themselves of 35 U.S.C. § 287 as a defense because ME2C is under no obligation to mark performance of the patented methods.

168.  Defendants acts of infringement have been willful as of the date they became aware of the patented technology and the patents-in-suit, and in any event no later than the filing of this Complaint and/or the date this Complaint was served upon each Defendant.

B.      Indirect Infringement

Plaintiffs' allegations of indirect infringement against the Talen entities are even more

conclusory:

150. To the extent an Accused Coal Plant is owned by a subsidiary company, its parent (one or more of the named Coal Plant Defendants) also indirectly infringe(s) by inducing the subsidiary to perform the steps of the patented methods.

151. The parent companies do so by exercising control over subsidiaries, providing technical, administrative, logistical and financial services to subsidiaries, and/or negotiating standard form or bulk agreements for products and services related to mercury control.

*Id*. at ¶¶ 150-151. Plaintiffs thus ambiguously allege that "one or more of the named Coal Plant Defendants" (which Plaintiffs allege includes all of the Talen entities, *id*. at pg. 1) that is a parent of an Accused Coal Plant induces infringement of the Asserted Patents.

## C.    Joint And Several Liability

Plaintiffs further allege joint and several liability among Vistra, NRG, and Talen in the section of the Complaint entitled "Defendants' Interactions With Each Other Related to Infringement." *Id*. at ¶¶ 169-177. Specifically, ME2C alleges:

174. At least Defendants Vistra, NRG, and Talen have owned and/or operated Accused Coal Plants using Chem-Mod products to directly infringe the patents-in-suit and thus they are jointly, severally, and/or in the alternative liable with Chem-Mod with respect to those plants.

175. At least Defendants AJG, DTE, Chem-Mod and their associated Refined Coal LLCs have induced and/or contributed to infringement at Vistra and Talen Accused Coal Plants and coal plants associated with Accused RC Facilities, and thus those parties are jointly, severally, and/or in the alternative liable with respect to those plants.

## D.    Plaintiff MES

Plaintiffs, in their Complaint, also fail to identify MES's particular relationship with either of the Asserted Patents. Rather, the Complaint groups Midwest and MES together as "ME2C" when asserting the parties' connections to the Asserted Patents:

Plaintiffs Midwest Energy Emissions Corp. and MES Inc. (collectively, "ME2C") files this Original Complaint against Defendants . . . .

*Id*. at pg. 1.

> 82. ME2C is the commercial extension [sic] of the patented technology.  As the
> exclusive licensee, and later assignee, of the patents-in-suit, ME2C developed,
> marketed, and sold products and services that practice the patented technology.

*Id*. at ¶ 82.  The Complaint, referring to Midwest and MES under one defined term ("ME2C"), inconsistently (and ambiguously) alleges that "ME2C owns all rights, title, and interest in the '114 Patent, and holds all substantial rights pertinent to this suit, including the right to sue and recover for all past, current, and future infringement."  *See id*. at ¶ 180.

But, the assignment records at the USPTO show *Midwest* as the only owner (assignee) for both the '114 Patent and '147 Patent.  *See* Exhibit A; *see also* Exhibit B.[3]

## III.   ARGUMENT

### A.   Legal Standards for Motions to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint should be dismissed under Rule 12(b)(6) when it fails to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.  It is not sufficient to allege facts that are merely consistent with liability; a complaint that alleges only such facts "stops short of the line between possibility and plausibility" and should be dismissed.  *Twombly*, 550 U.S. at 546.

---

[3] In deciding a Rule 12(b) motion, a court may consider matters in the public record.  *Genetic Technologies Ltd. v. Bristol-Myers Squibb Company*, 72 F. Supp. 3d 521, 526 (D. Del. 2014); *see also Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).  USPTO assignment records are a public record.  *See Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004) (stating that USPTO assignment records "are public records subject to judicial notice on a motion to dismiss"); *see also* 37 C.F.R. § 1.12 (2019) (stating that PTO assignment records are open to public inspection); *see also Vitek Sys., Inc. v. Abbott Labs.*, 675 F.2d 190, 192 n. 4 (8th Cir. 1982) (holding that the Court may take judicial notice of USPTO filings).

### i.      Willful Infringement

A claim of willful infringement cannot survive a motion to dismiss unless it "plausibly demonstrate[s] that the accused infringer not only knew of the patent-in-suit, but also knew or should have known that what it was doing (and what it continued to do) amounted to infringement of that patent."  *Valinge Innovation AB v. Halstead New Eng. Corp.*, CV 16-1082-LPS-CJB, 2018 WL 2411218, at *13 (D. Del. May 29, 2018).

### ii.     Indirect Infringement

A claim of indirect infringement cannot survive a motion to dismiss unless it establishes the requisite predicate for inducement to infringe under 35 U.S.C. § 271(b).  To survive a motion to dismiss a claim of induced infringement, a plaintiff must plead facts "plausibly showing that [the alleged infringer] specifically intended [a third party] to infringe [the patent-in-suit] and knew that the [third party's] acts constituted infringement."  *In re Bill of Lading*, 681 F.3d 1332, 1339 (Fed. Cir. 2012).

### iii.    Joint and Several Liability

To plead joint and several liability, a patentee must allege the defendant directed and/or controlled another party in a joint enterprise or a common plan or design to unlawfully infringe the asserted patent.  *See Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) ("[Courts] will hold an entity responsible for others' performance of method steps in two sets of circumstances: (1) where that entity directs or controls others' performance, and (2) where the actors form a joint enterprise."); *see also Lyda v. CBS Corp.*, 838 F.3d 1331, 1338-39 (Fed. Cir. 2016) (stating that to properly plead joint infringement, a party must plead facts "sufficient to allow a reasonable inference that all steps of the claimed method are performed and either (1) one party exercises the requisite 'direction or control' over the others'

performance or (2) the actors form a joint enterprise such that performance of every step is attributable to the controlling party."); *see also Rotating Prods. Sys., Inc. v. Bock Specialities, Inc.*, 42 Fed. Appx. 460, 462 (Fed. Cir. 2002) (unpublished) (affirming district court's imposition of joint and several liability when "all of the acts for which the various defendants had been found liable were part of a common plan or design to unlawfully infringe" upon the plaintiffs' patent (quotation omitted)).

And to allege a joint enterprise, the plaintiff must plead (1) there was an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control. *See Akamai Techs., Inc.*, 797 F.3d at 1023.

Courts have also found joint and several liability for patent infringement when a party induces another to directly infringe a patent or a defendant is guilty of contributory infringement. *See Crystal Semiconductor Corp. v. TriTech Microelectronics Intern., Inc.*, 246 F.3d 1336, 1361 (Fed. Cir. 2001); *see also FMC Corp. v. Up-Right, Inc.*, 816 F. Supp. 1455, 1461 (N.D. Cal. 1993), *decision aff'd*, 21 F.3d 1073 (Fed. Cir. 1994).  To survive a motion to dismiss and meet the *Iqbal* and *Twombly* pleading requirements, sufficient facts must be pled to allege at least one of these circumstances.

### B.    Plaintiffs Fail to Adequately Plead Willful Infringement

Plaintiffs' willfulness allegations fall far short of satisfying the requirements of *Iqbal* and *Twombly*.  The Complaint alleges that ME2C met with PPL in 2013, well before Talen Energy Corporation was formed.  *See* D.I. ¶¶ 138-144.  But nothing in the Complaint suggests that Plaintiffs ever met with the Talen defendants to notify them regarding the existence of any Asserted Patent or that any of their actions directly or indirectly infringed the Asserted Patents.

*See id.*  Even with respect to PPL, which is a distinct entity from Talen, the Complaint merely alleges that "[i]n 2013, representatives of PPL attended the Air Quality 9 conference and received a presentation" and subsequently met with ME2C "to discuss the use of ME2C's patented technology at power plants in the PPL fleet . . . ."  *Id.* at ¶¶ 140-141.  But pre-suit knowledge of an asserted patent by even a related entity is insufficient to plead willful infringement.  *See BlackBerry Ltd. v. Nokia Corp.*, 17-CV-155-RGA, 2018 WL 1401330, at *3 (D. Del. Mar. 20, 2018) (granting motion to dismiss allegations of pre-suit willfulness where complaint merely alleged "pre-suit knowledge of the asserted patents" by related entities).

There is nothing to suggest that Talen was notified of ME2C's Asserted Patents or ME2C's claims of infringement prior to the filing of this lawsuit.  But, even if ME2C had plausibly alleged that Talen had prior knowledge of the Asserted Patents, it is well established that "a party's pre-suit knowledge of the patent is not by itself sufficient to find willful misconduct."  *Ansell Healthcare Products LLC v. Reckitt Benckiser LLC*, 15-CV-915-RGA, 2018 WL 620968, at *6 (D. Del. Jan. 30, 2018).

Moreover, the above-referenced allegations in the Complaint regarding willful infringement pertain only to Plaintiffs' allegations of willful infringement of the '147 Patent; any allegations of willful infringement of the '114 Patent suffer from even more deficiencies.  The '114 Patent issued on July 9, 2019—a week before the Complaint was filed.  *See* D.I. ¶ 179. Nothing in the Complaint alleges that Talen knew of the existence of the '114 Patent or that Talen was informed regarding the alleged infringement of the '114 Patent.  The Complaint merely alleges that PPL was informed about the '114 Patent's parent applications in 2013— before Talen Energy Corporation came into existence.  *See id.* at ¶¶ 140-143.  Knowledge of a parent application by someone other than the named defendant is not sufficient, particularly

where the asserted patent had not yet issued at the time of the alleged notice.  "To willfully infringe *a patent*, the patent must exist and one must have knowledge of it."  *State Industries, Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985).

Capping off its insufficient assertions of pre-suit knowledge, Plaintiffs make conclusory assertions of willful infringement as follows:

> 166. Defendants' infringement of the Patents-in-Suit is willful.  Defendants continue to commit acts of infringement despite a high likelihood that its actions constitute infringement, and Defendants knew or should have known that their actions constituted an unjustifiably high risk of infringement.

D.I. ¶ 166.  But this is nothing more than a formulaic recitation of the willful infringement elements, which are not enough to plead willfulness.  Plaintiffs' claims for willful infringement should, therefore, be dismissed.  *See, e.g., Varian Med. Sys., Inc. v. Elekta AB*, CV 15-871-LPS, 2016 WL 3748772, at *8 (D. Del. July 12, 2016), report and recommendation adopted, CV 15-871-LPS, 2016 WL 9307500 (D. Del. Dec. 22, 2016).

### C.      Plaintiffs' Allegations of Inducement to Infringe Are Wholly Deficient

Plaintiffs' allegations of indirect infringement by Coal Plant Defendants (such as Talen) are woefully deficient.  The entirety of Plaintiffs' allegations of induced infringement against Talen are found in two sentences:

> 150.  To the extent an Accused Coal Plant is owned by a subsidiary company, its parent (one or more of the named Coal Plant Defendants) also indirectly infringe(s) by inducing the subsidiary to perform the steps of the patented methods.

> 151.  The parent companies do so by exercising control over subsidiaries, providing technical, administrative, logistical and financial services to subsidiaries, and/or negotiating standard form or bulk agreements for products and services related to mercury control.

D.I. ¶¶ 150-151.

Nothing in the Complaint alleges that any Talen entity "knowingly induced infringement and possessed specific intent to encourage another's infringement." *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1363 (Fed. Cir. 2012).  To survive a motion to dismiss, Plaintiffs should have alleged facts "plausibly showing that [Talen] specifically intended [a third party] to infringe [the Asserted Patents] and knew that the [third party's] acts constituted infringement." *In re Bill of Lading*, 681 F.3d 1323, 1339 (Fed. Cir. 2012).  But there is no assertion that Talen knew of any Asserted Patent, specifically intended any third party to infringe any claim of any Asserted Patent, or that any act of a third party constituted infringement.

Even if specific intent was pled, the Complaint suffers from yet another defect: "fusing [multiple] Defendants as one."  *See, e.g., M2M Solutions LLC, v. Telit Communications PLC et al.*, No. CV 14-1103-RGA, 2015 WL 4640400, at *4 (D. Del. Aug. 5, 2015) (granting motion to dismiss claims of induced infringement and holding that "fusing the two Defendants as one is also problematic for Plaintiff's indirect infringement claims against Telit UK").  This Court has held that "[w]hen articulating certain of its inducement allegations," the plaintiff has to identify "which particular Defendant or Defendants are said to have" committed the acts requisite to plead induced infringement.  *Neology, Inc. v. Kapsch Trafficcom IVHS, Inc.*, No. CV 13-2052-LPS, 2014 WL 4675316, at *7 (D. Del. Sept. 19, 2014) (explaining that "treating these Defendants as one big group for purpose of articulating how each has encouraged the induced infringement at issue says nothing plausible as to what any particular one of them might have done").  Plaintiffs' reference to multiple coal plant defendants under one single term is, therefore, utterly deficient.  *See M2M Solutions*, 2015 WL 4640400, at *4 ("Referring to both Defendants under one single term, Plaintiff has not pled a plausible inducement claim against Telit UK as a result.").  Plaintiffs' claims of induced infringement must, therefore, be dismissed.

- 11 -

### D. Plaintiffs Fail to Adequately Plead Joint and Several Liability Among Vistra, NRG, and Talen

Plaintiffs fail to plead facts to support the alleged joint and several liability among Vistra, NRG, and Talen.  Instead, Plaintiffs rely on conclusory statements to allege joint and several liability, unsupported by any facts.  *See* D.I. ¶¶ 174-175.  Talen, NRG, and Vistra may be liable for the actions of one another when either (1) one of the parties directs or controls the others' performance, or (2) where the parties formed a joint enterprise." *See Akamai Techs., Inc.*, 797 F.3d at 1022.  Here, no facts have been pled that support either of these circumstances.  Nothing in the Complaint alleges that Vistra, NRG, and Talen were part of a common plan or design to infringe.  *See Rotating Prods. Sys., Inc.*, 42 Fed. Appx. at 462.  In fact, nothing in the Complaint alleges any sort of connection or relationship between these three defendants, aside from the fact that they operate in the same industry.  Vistra, NRG, and Talen are distinct, independently owned and operated companies that should not be liable for one another's alleged liability. Because nowhere in the Complaint have Plaintiffs alleged that Vistra, NRG, and Talen exercised "direction or control" over one another or that Vistra, NRG, and Talen formed a "joint enterprise", joint and several liability has not been sufficiently pled.

Moreover, to the extent that Plaintiffs seek to allege joint and several liability of Vistra, NRG, and Talen on another theory, those theories do not provide joint and several liability, and in any event Plaintiffs fail to plead facts to support that Talen induced another to directly infringe the asserted patents or that Talen is guilty of contributory infringement.

There are no facts in the Complaint to allege that Talen induced another to directly infringe the Asserted Patents.  "To state a claim for induced infringement, a plaintiff must allege that the defendant knew of the patent and that the induced acts constitute patent infringement." *See, e.g., Addition and Detoxification Inst. L.L.C. v. Carpenter*, 620 Fed. Appx. 934, 938 (Fed.

Cir. 2015) (unpublished).  Here, the Complaint contains no statements regarding intent or any specific acts caused by Talen to induce either Vistra, NRG or any other third party.  *See* Section III.C. *supra.*  Similarly, there is no allegation that Talen is guilty of contributory infringement. "Contributory infringement occurs if a party sells or offers to sell, a material or apparatus for use in practicing a patented process. . ." *In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1337 (Fed. Cir. 2012).  Here, nothing has been alleged that Vistra, NRG, and Talen ever sold *anything* to one another.  So, there are certainly no allegations that they sold "a material or apparatus for use in practicing" the methods of the Asserted Patents.  *See id*.

There is simply nothing to support a claim that Vistra, NRG, and Talen are jointly and severally liable for infringement.  Accordingly, Plaintiffs' allegation of joint and several liability among Vistra, NRG, and Talen must be dismissed under FED. R. CIV. P. 12(b)(6) for failure to state a claim.

### E.  Plaintiffs Fail to Sufficiently and Plausibly Allege That MES Is a "Patentee" Under 35 U.S.C. § 281 In Order to Bring Suit on the '114 and '147 Patents

Plaintiff MES's claims should be dismissed under FED. R. CIV. P. 12(b)(6) because the Complaint fails to sufficiently and plausibly allege that MES is a "patentee" under 35 U.S.C. § 281.  A plaintiff has the right to bring a patent infringement lawsuit only if it is the "patentee." *See Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1229 (Fed. Cir. 2019).  A patentee must have "all substantial rights" to the patent in suit.  *Id*.  While an owner (assignee) of the patent may be considered the "patentee," an exclusive licensee of a patent may also be a "patentee" under circumstances indicating that the exclusive license conferred all substantial rights on the exclusive licensee.  *Id*.

The party bringing the action, MES in this case, bears the burden of establishing that it has the right to bring a patent infringement suit. *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005). MES failed to meet its burden because the public record refutes any contention that MES is an owner of the Asserted Patents. Public records reveal that neither of the Asserted Patents are assigned to Plaintiff MES.[4] *See* Exs. A and B.

Plaintiffs' allegations regarding ownership of the Patents and their demand for damages are as follows:

179. U.S. Patent No. 10,343,114 (the "'114 patent"), entitled "Sorbents for the Oxidation and Removal of Mercury", was issued on July 9, 2019, naming Edwin S. Olson, Michael J. Holmes and John H. Pavlish as the inventors. Exhibit A ('114 Patent).

180. **ME2C owns all rights, title, and interest in the '114 Patent**, and holds all substantial rights pertinent to this suit, including the right to sue and recover for all past, current, and future infringement.

. . .

202. U.S. Patent No. 8,168,147 (the "'147 patent"), entitled "Sorbents for the Oxidation and Removal of Mercury", was issued on May 1, 2012, naming Edwin S. Olson, Michael J. Holmes and John H. Pavlish as the inventors. Exhibit B ('147 Patent).

203. **Midwest Energy Emissions Corp. owns by assignment all rights, title, and interest in the '147 Patent**, and holds all substantial rights pertinent to this suit, including the right to sue and recover for all past, current, and future infringement.

. . .

224. **Defendants' acts of infringement have caused damage to ME2C. ME2C is entitled to recover from Defendants** the damages sustained by ME2C as a result of Defendants' wrongful acts in an amount subject to proof at trial. In addition, the infringing acts and practices of Defendants have caused, are causing, and, unless such acts and practices are enjoined by the Court, will **continue to cause immediate and irreparable harm to ME2C** for which there is no adequate remedy

---

[4] In deciding a Rule 12(b) motion, a court may consider matters in the public record. *See supra* n.3.

at law, and for which ***ME2C is entitled to injunctive relief under 35 U.S.C. § 283***.

D.I. ¶¶ 179-180, 202-203, 224 (emphasis added).  The Complaint does not allege that Plaintiff MES owns or has any substantial rights to bring a suit for any alleged infringement of the '147 Patent, yet MES seeks damages and injunctive relief for infringement of the '147 Patent.  Indeed, Plaintiffs have conceded that *Midwest* (not MES) is the owner of the '147 Patent:

> 203.  ***Midwest Energy Emissions Corp. owns by assignment all rights, title, and interest in the '147 Patent***, and holds all substantial rights pertinent to this suit, including the right to sue and recover for all past, current, and future infringement.

D.I. ¶ 203 (emphasis added).   Nor have Plaintiffs sufficiently alleged to otherwise have "substantial rights" under the Asserted Patents to allow it to bring suit as a patentee under 35 U.S.C. § 281.  The only mention of licensing fails to adequately allege that MES is the exclusive licensee with all substantial rights under the patents:

> 82. ME2C is the commercial extension [sic] of the patented technology.  As the exclusive licensee, and later assignee, of the patents-in-suit, ME2C developed, marketed, and sold products and services that practice the patented technology.

D.I. ¶ 82.  This allegation is ambiguous because the phrase "the exclusive licensee, and later assignee" lacks clarity; if anything, it appears to refute the notion that "ME2C" is currently the exclusive licensee of the patents-in-suit.  This allegation is also inadequate due to the "lumping together" of the two plaintiffs.  *See, e.g., M2M Solutions LLC, v. Telit Communications PLC et al.*, No. CV 14-1103-RGA, 2015 WL 4640400, at *4 (holding that "fusing the two Defendants as one is also problematic for Plaintiff's [] claims").  The allegations in the Complaint are, therefore, demonstrably deficient to seek damages or injunctive relief by Plaintiff MES for any alleged infringement of the '147 Patent.

With respect to the '114 Patent, even though the Complaint alleges that "ME2C owns all rights, title, and interest in the '114 Patent, and holds all substantial rights pertinent to this suit,

including the right to sue and recover for all past, current, and future infringement," the public record reveals otherwise—neither of the Asserted Patents are assigned to Plaintiff MES.  *See* Exhibit A and B.  It is black letter law that only a patent owner or an exclusive licensee may participate in an infringement suit.  *See Intellectual Prop. Dev., Inc. v. TCI Cablevision of California, Inc.*, 248 F.3d 1333, 1347-48 (Fed. Cir. 2001).  Plaintiff MES simply has failed to establish that it has a right to bring this suit as a "patentee" under 35 U.S.C. § 281, and, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court should dismiss MES from this case, dismissing all claims brought by plaintiff MES.

## IV.    CONCLUSION

For the reasons set forth above, Talen respectfully requests that the Court dismiss Plaintiffs' claims against Talen for willful infringement and inducement of infringement, dismiss the claim that Vistra, NRG, and Talen are jointly and severally liable with each other, and dismiss all claims brought by plaintiff MES because MES is not a "patentee" under 35 U.S.C. § 281.

DRINKER BIDDLE & REATH LLP

*/s/ Francis DiGiovanni*

Of Counsel:

David B. Weaver
Syed Fareed
Emily Pyclik
**BAKER BOTTS L.L.P.**
98 San Jacinto, Suite 1500
Austin, Texas 78701
(512) 322-2500

David Tobin
**BAKER BOTTS L.L.P.**
2001 Ross Avenue, Suite 1100
Dallas, Texas 75201
(214) 953-6500

Dated:  September 23, 2019

Francis DiGiovanni (#3189)
Thatcher A. Rahmeier (#5222)
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
(302) 467-4200
francis.digiovanni@dbr.com
thatcher.rahmeier@dbr.com

*Attorneys for Defendants Talen Energy*
*Corporation, Brandon Shores LLC, Talen*
*Generation LLC, and H.A. Wagner LLC*