IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MIDWEST ENERGY EMISSIONS CORP. )
and MES INC., )
 )
   Plaintiffs, )
 )
   v. ) C.A. No. 19-1334 (RGA)
 )
VISTRA ENERGY CORP., IPH, LLC, ) **JURY TRIAL DEMANDED**
DYNEGY INC., ILLINOIS POWER )
RESOURCES GENERATING, LLC, )
DYNEGY MIDWEST GENERATION LLC, )
DYNEGY MIAMI FORT, LLC, )
AEP GENERATION RESOURCES INC., )
SOUTHWESTERN ELECTRIC POWER )
CO., CARDINAL OPERATING )
COMPANY, LLC, AEP TEXAS INC., )
NRG ENERGY, INC., NRG TEXAS )
POWER LLC, MIDWEST GENERATION )
EME, LLC, MIDWEST GENERATION, )
LLC, TALEN ENERGY CORPORATION, )
TALEN ENERGY HOLDINGS, INC., )
BRANDON SHORES LLC, TALEN )
GENERATION LLC, AND H. A. WAGNER )
LLC, ARTHUR J. GALLAGHER & CO., )
GALLAGHER CLEAN ENERGY, LLC, )
AND AJG COAL, LLC, DTE REF )
HOLDINGS, LLC, DTE REF HOLDINGS II )
LLC, CERT COAL HOLDINGS LLC, CERT )
HOLDINGS LLC, CERT HOLDINGS 2018, )
LLC, CERT OPERATIONS LLC, CERT )
OPERATIONS II LLC, CERT )
OPERATIONS III LLC, CERT )
OPERATIONS IV LLC, CERT )
OPERATIONS V LLC, CERT )
OPERATIONS RCB LLC, CHEM-MOD )
LLC, AJG IOWA REFINED COAL LLC, )
JOPPA REFINED COAL LLC, THOMAS )
HILL REFINED COAL LLC, WAGNER )
COALTECH LLC, WALTER SCOTT )
REFINED COAL LLC, LOUISA REFINED )
COAL, LLC, BELLE RIVER FUELS )
COMPANY, LLC, ARBOR FUELS )
COMPANY, LLC, PORTAGE FUELS )
COMPANY, LLC, AND JOHN DOE LLCS )
 )
   Defendants. )

**OPENING BRIEF IN SUPPORT OF MOTION TO DISMISS
BY DEFENDANTS ARTHUR J. GALLAGHER & CO., GALLAGHER CLEAN
ENERGY, LLC, AJG COAL, LLC, DTE REF HOLDINGS, LLC, DTE REF
HOLDINGS II LLC, CHEM-MOD LLC, AJG IOWA REFINED COAL LLC,
JOPPA REFINED COAL LLC, THOMAS HILL REFINED COAL, LLC,
WAGNER COALTECH LLC, WALTER SCOTT REFINED COAL LLC,
LOUISA REFINED COAL, LLC, BELLE RIVER FUELS COMPANY, LLC,
ARBOR FUELS COMPANY LLC, AND PORTAGE FUELS COMPANY, LLC**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
began@mnat.com

OF COUNSEL:

Richard W. Mark
Joseph Evall
Paul J. Kremer
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
(212) 351-4000

*Attorneys for Moving Refined Coal
Defendants[1]*

September 23, 2019

---

[1]     The "Moving Refined Coal Defendants" on behalf of which this motion is brought are Arthur J. Gallagher & Co., Gallagher Clean Energy, LLC, AJG Coal, LLC, DTE REF Holdings, LLC, DTE REF Holdings II LLC, Chem-Mod LLC, AJG Iowa Refined Coal LLC, Joppa Refined Coal LLC, Thomas Hill Refined Coal, LLC (sued herein as "Thomas Hill Refined Coal LLC"), Wagner Coaltech LLC, Walter Scott Refined Coal LLC, Louisa Refined Coal, LLC, Belle River Fuels Company, LLC, Arbor Fuels Company LLC, and Portage Fuels Company, LLC.  Thomas Hill Refined Coal, LLC, was dissolved on December 8, 2016.

## TABLE OF CONTENTS

Page

NATURE AND STAGE OF THE PROCEEDING........................................................................ 1

SUMMARY OF ARGUMENT ................................................................................................... 1

STATEMENT OF FACTS ......................................................................................................... 3

      I.      The Patents-in-Suit.............................................................................................. 3

      II.     The Defendants ................................................................................................... 4

      III.    The Allegations Against the "Coal Plant Defendants" ........................................ 5

      IV.   The Allegations Against the "Refined Coal Defendants"..................................... 6

LEGAL STANDARD................................................................................................................. 9

ARGUMENT ........................................................................................................................... 10

      I.      The Claims for Induced Infringement Should Be Dismissed .............................. 10

      II.     The Claims for Contributory Infringement Should Be Dismissed. ...................... 12

      III.    The Claims for Joint Infringement Should Be Dismissed. .................................. 15

             A.     There Is No Claim for Joint Enterprise.................................................... 15

             B.     The Allegations of "Direction and Control" Are Inadequate. ................. 18

      IV.   The Claims for Willful Infringement Should Be Dismissed. ............................... 20

CONCLUSION......................................................................................................................... 20

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
  797 F.3d 1020 (Fed. Cir. 2015)......................................................................3, 15, 17

*Artrip v. Ball Corp.*,
  735 Fed. App'x 708 (Fed. Cir. 2018).....................................................................13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).............................................................................................9, 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).............................................................................................9, 10

*In re Bill of Lading Transmission and Processing Sys. Patent Litig.*,
  681 F.3d 1323 (Fed. Cir. 2012).......................................................2, 10, 13, 15

*CBA Envtl. Servs., Inc. v. Toll Bros. Inc.*,
  No. 3:18-cv-13294, 2019 WL 3451737 (D.N.J. July 31, 2019) .............................17

*DSU Med. Corp. v. JMS Co., Ltd.*,
  471 F.3d 1293 (Fed. Cir. 2006)…………………………………………….....................10

*Ericsson, Inc. v. D-Link Systems, Inc.*,
  773 F.3d 1201 (Fed. Cir. 2014)......................................................................2, 11, 12

*Global–Tech Appliances, Inc. v. SEB S.A.*,
  563 U.S. 754 (2011).....................................................................................................12

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  136 S. Ct. 1923 (2016)...........................................................................................3, 20

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
  572 U.S. 915 (2014)..................................................................................................2, 11

*Lyda v. CBS Corp.*,
  838 F.3d 1331 (Fed. Cir. 2016)...........................................................................10, 18

*M2M Sols. LLC v. Telit Commc'ns PLC*,
  C.A. No. 14-1103, 2015 WL 4640400 (D. Del. Aug. 5, 2015) .........................16, 17

*Medgraph, Inc. v. Medtronic, Inc.*,
  843 F.3d 942 (Fed. Cir. 2016)........................................................................................19

*MEMC Elec. Materials Inc. v. Mitsubishi Materials Silicon Corp.*,
  420 F.3d 1369 (Fed. Cir. 2005)...................................................................................12

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005)..........................................................................................10

*N. Star Innovations, Inc. v. Toshiba Corp.*,
    C.A. No. 16–115, 2016 WL 7107230 (D. Del. Dec. 6, 2016) ..................................16

*Nalco Co. v. Chem-Mod LLC*,
    Case No. 14-cv-2510, 2015 WL 6122811 (N.D. Ill. Oct. 15, 2015),
    *rev'd on other grounds* 883 F.3d 1337 (Fed. Cir. 2018).........................................19

*Neology, Inc. v. Kapsch Trafficcom IVHS, Inc.*,
    C.A. No. 13-2052, 2014 WL 4675316 (D. Del. Sept. 19, 2014) ......................16, 17

*Sonrai Sys., LLC v. AMCS Grp. Inc.*,
    No. 16 C 9404, 2017 WL 4281122 (N.D. Ill. Sept. 27, 2017)................................17

*T-Jat Sys. 2006 Ltd. v. Expedia, Inc.*,
    C.A. No. 16-581, 2017 WL 896988 (D. Del. Mar. 7, 2017)...................................16

*Travel Sentry, Inc. v. Tropp*,
    877 F.3d 1370 (Fed. Cir. 2017)........................................................................19

*Vita-Mix Corp. v. Basic Holding, Inc.*,
    581 F.3d 1317 (Fed. Cir. 2009).................................................................11, 13

## Statutes

26 U.S.C. § 45…………………………………………………………………….......7, 19

35 U.S.C. § 271……………………………………………………….........2, 10, 12, 15

35 U.S.C. § 284………………………………………………………………………..20

## Other Authorities

FED. R. CIV. P. 12(b)(6) …………………………………………………………………1

FED. R. CIV. P. 8…………………………………………………………………………16

## NATURE AND STAGE OF THE PROCEEDING

Plaintiffs Midwest Energy Emissions Corp. and MES Inc. (together, "Plaintiffs") filed a patent infringement complaint (D.I. 1) (the "Complaint") on July 17, 2019, accusing 43 named defendants, as well as certain unnamed defendants, of directly or indirectly infringing certain claims of United States Patents Nos. 10,343,114 (the "'114 Patent") and 8,168,147 (the "'147 Patent") (together, the "Patents-in-Suit").  The "Moving Refined Coal Defendants" move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss all claims against them.  This is their opening brief in support of that motion.

## SUMMARY OF ARGUMENT

Each asserted claim of the Patents-in-Suit combines two separate and independent methods to reduce mercury emissions from coal-fired power plants.  First, each asserted claim of the Patents-in-Suit requires adding bromine to the combustion zone of a furnace ("Bromine Step").  Second, each asserted claim also requires adding activated carbon to the gases downstream of the combustion zone of the furnace ("Activated Carbon Step").  The Complaint does not allege that the Moving Refined Coal Defendants themselves practice either step, or that they encourage or otherwise induce anyone to practice the Activated Carbon Step.[2]

### 1.    Failure to State a Claim for Induced Infringement

The Complaint alleges that the Moving Refined Coal Defendants induce infringement of the asserted patent claims by providing power plants with Refined Coal that releases bromine when burned by the power plants.  The Complaint does not allege that any Moving Refined Coal Defendant supplies activated carbon, or requires (or even encourages) any power plant to use

---

[2]    The claims of the Patents-in-Suit have additional requirements, but the focus of this motion is on the failure of the Complaint to state claims against the Moving Refined Coal Defendants because the asserted patent claims require the use of activated carbon.  This motion does not address the validity or enforceability of the Patents-in-Suit, or whether the Complaint states a claim of direct infringement against the Power Plant Defendants.

activated carbon in conjunction with Refined Coal.  Because a claim for induced infringement under 35 U.S.C. § 271(b) requires that "the alleged infringer performs, or induces another party to perform, every single step in the method," *Ericsson, Inc. v. D-Link Systems, Inc.,* 773 F.3d 1201, 1219 (Fed. Cir. 2014) (citing *Limelight Networks, Inc. v. Akamai Techs., Inc.,* 572 U.S. 915, 921–22 (2014)), the failure to allege that the Moving Refined Coal Defendants practice, or induce the performance of, the Activated Carbon Step, is fatal to the claims.

## 2.   Failure to State a Claim for Contributory Infringement

The Complaint alleges that the Moving Refined Coal Defendants contribute to infringement of the asserted patent claims under 35 U.S.C. § 271(c) by providing Refined Coal to some power plants, who then may choose to use activated carbon in combination with Refined Coal.  Because the Complaint does not allege that Refined Coal must always be used in conjunction with activated carbon, as the patent claims require, the claims for contributory infringement should be dismissed.  *See In re Bill of Lading Transmission and Processing Sys. Patent Litig.*, 681 F.3d 1323, 1338 (Fed. Cir. 2012) (the correct issue is "whether the accused products can be used for purposes other than infringement").

## 3.   Failure to State a Claim for Joint Infringement

Although the two Counts for relief assert only that the Moving Refined Coal Defendants are liable for indirect infringement, other sections of the Complaint include allegations suggesting that the Moving Refined Coal Defendants should be liable as joint direct infringers.  There are assertions that each movant formed a joint enterprise with an unspecified power plant, and other assertions that the movants direct and control certain power plant activities.  *See Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (*en banc*) (actions performed by one actor may be "attributable" to another entity for purposes of joint

2

infringement "where the actors form a joint enterprise," or "where that entity directs or controls others' performance."). But the allegations are insufficient to state a claim under either theory.

Joint infringement under a "joint enterprise" theory requires that the participants share equal control in the putative joint enterprise, and that they share a common purpose. The Complaint makes no such allegation. And joint infringement under a "direction and control" theory would require allegations that the Moving Refined Coal Defendants "direct and control" the power plants' use of bromine and activated carbon, but the Complaint does not allege direction and control of either their alleged use of bromine *or* their alleged use of activated carbon. Accordingly, any putative claim for joint direct infringement fails as a matter of law.

### 4.  Failure to State a Claim for Willful Infringement

Willfulness requires knowledge of a patent and more. *See Halo Elecs., Inc. v. Pulse Elecs., Inc.,* 136 S. Ct. 1923, 1933–34 (2016). Yet the Complaint fails even to plead actual knowledge on the movants' part, only going so far as to allege "likely" knowledge of a patent. *See* D.I. 1, ¶ 145. The claims of willful infringement should be dismissed.

### STATEMENT OF FACTS

I.   **The Patents-in-Suit**

The Complaint asserts infringement of two patents that issued from the same common application, which was "filed on Aug. 22, 2005." D.I. 1, ¶¶ 50, 179; Ex. A at p. 2; *id.* at ¶ 51; Ex. B at 1. One, the '114 Patent, issued on July 9, 2019, eight days before this suit was filed. D.I. 1, ¶ 50. The other, the '147 Patent, issued on May 1, 2012. *Id.* at ¶ 51.

The invention claimed in the Patents-in-Suit reflects the putative discovery that two known methods for reducing mercury emissions from coal-fired power plants could be combined. According to the Complaint, "the inventors discovered, and ultimately proved, the benefits of combining [1] halogen treatments (e.g., bromine containing materials) in-flight with

[2] backend sorbents (e.g., activated carbon)."  D.I. 1, ¶ 61 (bracketed numbers added); *see also id.* at ¶ 60 (alleging that the named inventors "found that [1] applying a halogen additive such as bromine and bromide compounds onto coal or into a combustion chamber, when combined with [2] sorbent injection, could dramatically reduce the mercury content of coal-fired power plant emissions" (bracketed numbers added)).  The Complaint further explains how each asserted patent claim requires the performance of two distinct steps, referred to in this memorandum as the "Bromine Step" and the "Activated Carbon Step."

With respect to the '114 Patent, the Complaint asserts infringement of claims 1–30. D.I. 1, ¶ 182.  Characterizing claim 25 as an "exemplary claim," *id.* at ¶¶ 183–84, the Complaint describes the first claim step, the Bromine Step, as requiring "combusting coal in a combustion chamber . . . wherein the coal comprises added [bromine], added to the coal upstream of the combustion chamber, or the combustion chamber comprises added [bromine]." *Id.* at ¶ 186.  The Complaint describes the second claim step, the Activated Carbon Step, as requiring "injecting a sorbent material comprising activated carbon into the mercury containing gas downstream of the combustion chamber." *Id.* at ¶ 188.

The Complaint asserts infringement of claims 17–20 of the '147 Patent.  D.I. 1, ¶ 205. Characterizing claim 17 as an "exemplary claim," *id.* at ¶¶ 206-07, the Complaint once again pleads that the claims require activities involving the use of bromine (Bromine Step) and the separate introduction of activated carbon (Activated Carbon Step).  *See id.* at ¶¶ 215–16 ("injecting the particulate sorbent material . . . and injecting separately the bromine containing promoter").

## II.    The Defendants

The Complaint names 43 defendants, divided into two groups, pleading different theories of infringement against each group.  The first group, which the Complaint defines as the "Coal

Plant Defendants," comprises four subgroups of individual defendants, which the Complaint refers to as "Vistra," "AEP," "NRG," and "Talen."  D.I. 1, at p. 2.  These entities are in the electric power generation business.

The remaining defendants, referred to herein as the "Refined Coal Defendants," comprise what the Complaint defines as three "AJG" defendants, two "DTE" defendants, nine "CERT" defendants, one "Chem-Mod" defendant, and a group of "RC Defendants," which the Complaint defines to include nine "named . . . entities" and an unspecified number of "unnamed" "John Doe LLCs."  *Id.*  This motion is brought on behalf of the three AJG defendants, the two DTE defendants, the Chem-Mod defendant, and the nine "named" RC Defendants; these fifteen defendants are all "Refined Coal Defendants," and are referred to herein as the "Moving Refined Coal Defendants."

The following table summarizes the collective nouns used to refer to various groups of defendants; the italicized defendants are the "Moving Refined Coal Defendants" that make this motion:

| "Coal Plant Defendants" | 6 "Vistra" defendants |
| | 4 "AEP" defendants |
| | 4 "NRG" defendants |
| | 5 "Talen" defendants |
| Refined Coal Defendants | *3 "AJG" defendants* |
| | *2 "DTE" defendants* |
| | *1 "Chem-Mod" defendant* |
| | *9 "named RC Defendants"* |
| | "unnamed RC Defendants" |
| | 9 "CERT" defendants |

## III.    The Allegations Against the "Coal Plant Defendants"

The Complaint pleads that the Coal Plant Defendants "each operate at least one coal-fired power plant."  D.I. 1, ¶ 148.  The Complaint further alleges that at such power plants, the Coal Plant Defendants carry out the Bromine Step of the patent claims—namely, that they "combust coal in a combustion chamber with bromine and/or bromide that has been added to the coal

and/or that has been provided to the combustion chamber . . . ." *Id.* The Complaint also alleges that the same plants carry out the Activated Carbon Step of the patent claims—namely, that they "inject a sorbent material comprising activated carbon downstream of the combustion chamber." *Id.* The Complaint calls the coal-fired power plants that the Coal Plant Defendants allegedly operate, and which allegedly perform these activities, the "Accused Coal Plants." *Id.*

Count One of the Complaint pleads infringement of the '114 Patent. D.I. 1, ¶¶ 174–200. The Complaint alleges the Coal Plant Defendants meet the Bromine Step of the '114 Patent claims "by burning coal with an added $Br_2$, HBr, a bromide compound, or a combination thereof and/or by adding $Br_2$, HBr, a bromide compound, or a combination thereof to the combustion chamber" of the furnace. *Id.* at ¶ 187.[3] The Complaint alleges that the Coal Plant Defendants perform the Activated Carbon Step of the patent claims "by injecting activated carbon sorbent downstream of the combustion chamber" of the furnace. *Id.* at ¶ 189.

Count Two of the Complaint pleads infringement of claims 17–20 of the '147 Patent. D.I. 1, ¶¶ 201–24. The Count asserts that the Coal Plant Defendants meet the Bromine Step of the asserted '147 Patent claims by "burn[ing] coal with added $Br_2$, HBr, a bromide compound, or a combination thereof in the combustion zone with the coal." *Id.* at ¶¶ 210, 216. The Complaint alleges that the Coal Plant Defendants meet the Activated Carbon Step of the asserted '147 Patent claims because there is "activated carbon sorbent added by the Coal Plant Defendants and/or power plants connected to an Accused RC Facility." *Id.* at ¶ 216.

## IV.    The Allegations Against the "Refined Coal Defendants"

The Complaint alleges that the Refined Coal Defendants are associated, in undefined and undifferentiated ways, with an unspecified number of limited liability companies, each known as

---

[3]    The element bromine, bearing the chemical symbol "Br," is a liquid at room temperature, and occurs naturally as a "diatomic" molecule formed from two bromine atoms; the molecule has the symbol "$Br_2$." Certain bromine-containing compounds are referred to as "bromides." "HBr" is hydrogen bromide, which is a strong acid.

a "Refined Coal LLC."  D.I. 1, ¶¶ 72, 175.  According to the Complaint, each Refined Coal LLC

rents space on-site at a power plant where it "purchases coal from the plant, treats it with Chem-

Mod chemicals, and then sells the coal—now considered 'refined coal'—back to the coal-fired

power plant."[4]  *Id.* at ¶ 74.

The Complaint alleges that the "Chem-Mod chemicals" applied to coal in the production

of "refined coal" include one or more bromine compounds.  *Id.* at ¶ 76.  There is no allegation

that such chemicals include activated carbon.

The Complaint explains the alleged activities of the Refined Coal Defendants with

respect to Refined Coal as follows:  "[the] RC Defendants operate [Refined Coal] facilities that

receive coal, add bromine and/or bromide such as $CaBr_2$ to the coal, and then provide that

'refined' coal to a coal fired power plant that injects a sorbent material comprising activated

carbon downstream of the combustion chamber (the 'Accused RC Facilities')."  *Id.* at ¶ 152.

One Refined Coal Defendant, Chem-Mod, is further alleged to "provide[] chemicals and/or

refined coal to at least some of the Accused Coal Plants and Accused RC Facilities," *id.* at ¶ 153,

and to "assist[] in operating the Accused Coal Plants and Accused RC Facilities in connection

with administering the chemicals supplied by Chem-Mod," *id.* at ¶ 154.

There is no allegation that any Refined Coal Defendant performs either the Bromine Step

or the Activated Carbon Step, operates a power plant, burns coal, or adds any substance to the

furnace or flue gas of a power plant.

The Complaint alleges that the Refined Coal Defendants induce and contribute to

infringement by the "Coal Plant Defendants and the operators of coal-fired power plants

---

[4]     26 U.S.C. § 45 creates a tax credit for the sale of certain "Refined Coal" to an unrelated
party.  When combusted, Refined Coal must emit 40 percent less mercury or sulfur oxide, and 20
percent less nitrogen oxide, than would be emitted upon combustion of the coal from which the
Refined Coal is prepared.  Section 45 relates only to the sale of the Refined Coal itself; eligibility
for tax credits is not tethered to the actual emissions from a power plant.

connected to an Accused RC Facility." D.I. 1, ¶ 158.  The Complaint enumerates twelve alleged "actions" constituting inducement and or contribution, each of which is directed to the Bromine Step of the Patents-in-Suit—*i.e.*, the production or sale of bromine-enriched Refined Coal, or the use of such Refined Coal by a power plant.  *See id.*  There is no allegation that any Refined Coal Defendant provides activated carbon to any power plant, or requires its use by any power plant.

The Complaint alleges that the Refined Coal Defendants are engaged in a joint enterprise involving the use of bromine-enriched coal.  According to the Complaint, the Refined Coal Defendants "provide financial incentives to operators of coal-fired power plants to participate in a Section 45 Tax Credit scheme."  D.I. 1 ¶ 156.[5]  They further "condition participation in an activity or receipt of a benefit . . . upon performance of a step or steps of a patented method, *i.e.*, the combusting of coal with added bromine and/or bromide, and they establish the manner or timing of that performance by requiring the power plant to use the refined coal and by providing the refined coal directly onto conveyances leading to the combustor."  *Id.* at ¶ 157.  The Complaint alleges that the benefits of the joint enterprise scheme include "obtaining Section 45 Tax Credits and compliance with mercury capture regulations by performing the patented methods."  *Id.* at ¶¶ 160, 162, 164.

There is no allegation that either the "mercury capture regulations," or the putative benefit of "compliance with mercury capture regulations," applies to or benefits any of the Refined Coal Defendants.

The Complaint alleges that the Refined Coal Defendants "have worked with the EERC [Energy & Environmental Research Center] to conduct testing related to their coal treatment processes," and "relied on the EERC to demonstrate that [certain] processes . . . qualify for

---

[5]     *See supra,* Section IV at n.4.

Section 45 Tax Credits." D.I. 1, ¶ 145.[6] The Complaint speculates that "[t]hrough those interactions, it is likely that they became aware of the patents-in-suit and/or related applications as they were initially developed by the inventors while they were at the EERC." *Id.* The Complaint further alleges that defendant Chem-Mod participates in conferences where Plaintiffs described their patented technology. *Id.* at ¶ 146. Based on the foregoing, the Complaint implies that "[g]iven the close relationship between [the Refined Coal Defendants], those Defendants know of [Plaintiffs'] patented technology and patent portfolio and/or are willfully blind to [Plaintiffs'] patents." *Id.* at ¶ 147.

## LEGAL STANDARD

A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is not facially plausible unless the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly,* 550 U.S. at 556). The factual allegations "must be enough to raise a right to relief above the speculative level" and cannot consist of "conclusory statements" or "naked assertions devoid of further factual enhancement." *Id.* (citing *Twombly*, 550 U.S. at 557). Although a complaint is not required to have "'detailed factual allegations,' [] it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* at 677–78, quoting *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The complaint must do more than plead facts "merely 'consistent with' a defendant's liability." *Id.* (quoting *Twombly,* 550 U.S. at 557).

---

[6] The Complaint alleges that the named inventors worked at the "Energy & Environmental Research Center (EERC)." *See* D.I. 1, ¶¶ 54, 57, 59.

9

Claims of induced and contributory infringement must comply with the pleading standards of *Twombly* and *Iqbal*.  *In re Bill of Lading Transmission and Processing Sys. Patent Litig.*, 681 F.3d 1323, 1334 (Fed. Cir. 2012).  Claims of joint infringement must meet those standards as well.  *Lyda v. CBS Corp.*, 838 F.3d 1331, 1339 (Fed. Cir. 2016).

## ARGUMENT

The deficiencies in the Complaint are not mere pleading lapses or technical errors.  They are fundamental defects in Plaintiffs' theories that the Refined Coal Defendants—who are alleged to make and sell coal enriched with bromine compounds—infringe patent claims that require combining two separate and independent methods to reduce mercury emissions from coal-fired power plants.  For the reasons set forth below, the Complaint fails to state a claim against the Moving Refined Coal Defendants and should be dismissed as against them.

## I.     The Claims for Induced Infringement Should Be Dismissed.

Plaintiffs allege that as a consequence of making and selling Refined Coal, the Refined Coal Defendants induce the Power Plant Defendants to infringe the patent claims.   Under 35 U.S.C. § 271(b), an entity is liable for induced infringement only if it "actively induces infringement of a patent."   Active inducement of intellectual property infringement requires more than " knowledge that [a product] may be put to infringing uses"; it requires "statements or actions directed to promoting infringement."  *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 935 (2005).  Active inducement requires specific intent to infringe:

> Patent law provides that whoever actively induces infringement of a patent shall be liable as an infringer.  35 U.S.C. § 271(b).  Inducement requires a showing that the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent.  *DSU Med. Corp. v. JMS Co.*, *Ltd.,* 471 F.3d 1293, 1304 (Fed. Cir. 2006) (*en banc* in relevant part).  Intent can be shown by circumstantial evidence, but the mere knowledge of possible infringement will not suffice.  *Id*. at 1305–06.

*Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009).  The standard for inducement relates to the entire patent claim, not just one step.  *Ericsson, Inc. v. D-Link Systems, Inc.,* 773 F.3d 1201, 1219 (Fed. Cir. 2014) (citing *Limelight Networks, Inc. v. Akamai Techs., Inc.,* 572 U.S. 915, 921–22 (2014)) ("In order to prove induced infringement, the patentee must show that the alleged infringer performs, or induces another party to perform, every single step in the method.").

The alleged activities of the Moving Refined Coal Defendants relate exclusively to the production and sale of Refined Coal.  *See* D.I. 1, ¶ 158 (enumerating 12 activities by the various Refined Coal Defendants).[7]  And the Complaint is specific in alleging that Refined Coal provides bromine to the furnace.  There is no comparable allegation that the Refined Coal Defendants provide activated carbon,[8] or induce the use of activated carbon by any power plant.

The Complaint is explicit in attributing all activities relating to the Activated Carbon Step to the power plants themselves, not to the Moving Refined Coal Defendants.  *See* D.I. 1, ¶ 152 (The "[Refined Coal Defendants] operate RC facilities that receive coal, add bromine and/or bromide such as $CaBr_2$ to the coal, and then provide that "refined" coal to a coal-fired power plant . . . .").  It is then the "coal-fired power plant that injects a sorbent material comprising activated carbon downstream of the combustion chamber"—*i.e.*, the coal-fired power plant is alleged to perform the Activated Carbon Step.  *Id.*  There is no allegation that the Moving

---

[7]     Paragraph 158(l) comes the closest to alleging that the Refined Coal Defendants are involved with achieving a power plant's compliance with mercury emissions regulations, but neither that subparagraph nor any other alleges that any Refined Coal Defendant participates in or encourages performance of the Activated Carbon Step as required by the patents' claims.  *See* D.I. 1, ¶ 158(l).

[8]     Although the Complaint repeatedly references "chemicals supplied by Chem-Mod," there is no allegation that any such chemicals include activated carbon.  *See* D.I. 1, ¶ 154 (referring to Chem-Mod's alleged assistance with chemicals that it provides); *id.* at ¶ 76 (listing and defining "Chem-Mod chemicals," but not listing activated carbon as a Chem-Mod chemical).

Refined Coal Defendants encourage or direct the power plants to perform the Activated Carbon Step.

Because the Complaint admits that the patent claims require performance of both a Bromine Step and an Activated Carbon Step, a claim for induced infringement would need to allege that the Moving Refined Coal Defendants induce the performance of both the Bromine Step and the Activated Carbon Step. As it stands, the Complaint pleads only that the Refined Coal Defendants made, sold, and encouraged the use of Refined Coal—which can amount to no more than an attempt to allege that they induced the performance of the Bromine Step. The Complaint's failure to allege that the Moving Refined Coal Defendants encourage, or otherwise induce, the use of activated carbon in conjunction with the use of Refined Coal is fatal to the claim for induced infringement. *See Ericsson*, 773 F.3d at 1219. The claims for induced infringement should be dismissed.[9]

## II. The Claims for Contributory Infringement Should Be Dismissed.

Under 35 U.S.C. § 271(c), an entity is liable for contributory infringement if it sells "a material . . . for use in practicing a patented process . . . knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use." A substantial noninfringing use is any use that is "not unusual, far-fetched, illusory, impractical, occasional, aberrant, or

---

[9]     Induced infringement also requires knowledge of the patent, knowledge that the induced acts constitute direct infringement, and specific intent to infringe. *Global–Tech Appliances, Inc. v. SEB S.A.,* 563 U.S. 754, 765–66 (2011). The Complaint pleads that Chem-Mod's knowledge of the Patents-in-Suit may be inferred because the AJG, DTE, and CERT entities worked with EERC, and "it is likely" they learned of the patents in that context. D.I. 1, ¶ 145. The Complaint also pleads that Chem-Mod's President attended a conference in 2018 where the Plaintiff presented their technology. *Id*. at ¶ 146. Even assuming these thin allegations plead knowledge of the patents, there are no allegations that the Moving Refined Coal Defendants had knowledge of infringement. *See MEMC Elec. Materials Inc., v. Mitsubishi Materials Silicon Corp.,* 420 F.3d 1369, 1378 (Fed. Cir. 2005) (knowledge of infringement is an essential element of inducement). The claims for induced infringement are deficient for this additional reason.

experimental." *Vita-Mix*, 581 F.3d at 1327.  Claim construction is not required to determine that a non-infringing use is substantial.  *Bill of Lading*, 681 F.3d at 1339.

Plaintiffs' claims for contributory infringement require allegations that Refined Coal is "especially made or especially adapted" for use in combination with activated carbon, and that Refined Coal is not suitable for a substantial non-infringing use.  Because Refined Coal can be used by itself, or with other mercury-reducing systems—such as bromide at the pulverizer, or iodide—these claims would ultimately fail.[10]

The pleadings themselves are inadequate.  For a claim of contributory infringement to survive a motion to dismiss, a patent owner must "plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses."  *Artrip v. Ball Corp.*, 735 Fed. App'x 708, 713 (Fed. Cir. 2018) (quoting *Bill of Lading*, 681 F.3d at 1337).  The Complaint alleges that the Refined Coal provided by the Moving Refined Coal Defendants "is not a staple article or commodity of commerce suitable for substantial non-infringing use" because it is supplied to certain unnamed power plants on a conveyer belt heading into "the combustion chamber of a power plant that directly infringes the '114 Patent."  D.I. 1, ¶ 196; *see also id.* at ¶ 220 (same, except '147 Patent).  But there is no allegation that the power plant can only use Refined Coal with activated carbon.  Nor can there be any such allegation because power plants that burn Refined Coal do not need to use activated carbon for emission control (and even plants that do use activated carbon for that purpose do not use it at all times).

The Complaint also pleads that the Moving Refined Coal Defendants "tailor the amount of $Br_2$, HBr, a bromide compound, or a combination thereof added to the coal for the specific needs of the power plant."  D.I. 1, ¶ 196; *see also id.* at ¶ 220 (same, except '147 Patent).  But

---

[10]     Indeed, although the asserted claims of the patents require the use of activated carbon, the Complaint teaches that the invention may be practiced with "non-carbon" sorbents.  *See* D.I. 1, Ex. A at 9:61–10:9.  That teaching belies any possible assertion that Refined Coal must be used with activated carbon.

there is no allegation that a power plant must use activated carbon in conjunction with Refined Coal as a consequence of such "tailor[ing]."  Nor, given the available alternatives to activated carbon for controlling mercury emissions, is such an inference even plausible.

Plaintiffs tried to replace the proper inquiry (whether Refined Coal can only be used in conjunction with activated carbon) with an improper one:  whether specific power plants that receive specific loads of "tailor[ed]" Refined Coal on their conveyer belts also use activated carbon.  *See* D.I. 1, ¶ 155 ("Given the location and operation of the Accused RC Facilities and the contractual relationships between Accused RC Facilities and associated coal-fired power plants, the refined coal provided by each Accused RC Facility has no substantial non-infringing use.").

But the Federal Circuit rejected that approach in *Bill of Lading*, concluding that the district court had properly dismissed the contributory infringement claim.  In that case, the patent owner argued that the accused infringers' products had no substantial noninfringing use "as customized," *i.e.*, as the alleged direct infringers combined and adapted them for their customers to perform the various steps of the claim.  The Federal Circuit concluded that the plaintiff did not address the "relevant inquiry":

> These allegations . . . say nothing more than "if you use this device to perform the patented method, the device will infringe and has no noninfringing uses."  But that is not the relevant inquiry.  For purposes of contributory infringement, the argument focuses on whether the accused products can be used for purposes ***other than*** infringement. . . .  The fact that a product may be unavailable for simultaneous non-infringing uses while being used to infringe, is not determinative.  Where the product is equally capable of, and interchangeably capable of, both infringing and substantial non-infringing uses, a claim for contributory infringement does not lie.

681 F.3d at 1338 (emphasis in original).  The Complaint here does not plead—and cannot plead—that Refined Coal cannot be used without activated carbon.  As a consequence, the claims for contributory infringement should be dismissed for at least this reason.

III.    **The Claims for Joint Infringement Should Be Dismissed.**

Under 35 U.S.C. § 271(a), it is an act of infringement to "use" a patented method.  The Single-Actor Rule defines the scope of liability for multi-step patent claims such as those of the Patents-in-Suit:  "Direct infringement under § 271(a) occurs where all steps of a claimed method are performed by or attributable to a single entity."  *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (*en banc*).  Actions performed by one actor may be "attributable" to another entity in two circumstances:  "where the actors form a joint enterprise," and "where that entity directs or controls others' performance."  *Id.*

Here, Plaintiffs do not allege that any Moving Refined Coal Defendant introduces either bromine or activated carbon into any part of a power plant—*i.e.*, Plaintiffs do not allege that a Moving Refined Coal Defendant performs either the Bromine Step or the Activated Carbon Step. Plaintiffs allege instead that various power plants perform both of those steps, and that both acts are attributable to the Refined Coal Defendants, either because such Refined Coal Defendants have formed joint enterprises with power plants or because the Refined Coal Defendants control and direct the power plants' alleged performance of the two steps.

Both theories fail.

A.    **There Is No Claim for Joint Enterprise.**

For the putative "joint enterprise," Plaintiffs plead:

159.  AJG, Chem-Mod, their associated RC Defendants, and the operators of coal-fired power plants connected to an RC Facility that is owned by AJG and/or its subsidiaries are involved in a joint enterprise to infringe the patents-in-suit.

160.  AJG, Chem-Mod, their associated RC Defendants, and the operators of coal-fired power plants connected to an RC Facility that is owned by AJG and/or its subsidiaries share a common purpose, namely, obtaining Section 45 Tax Credits and compliance with mercury capture regulations by performing the patented methods.

D.I. 1, ¶¶ 159–60; *see also id.* at ¶¶ 161–64 (same joint enterprise allegations, but regarding DTE and CERT Defendants, respectively, instead of AJG Defendants).

These allegations are inadequate under Fed. R. Civ. P. 8 for two reasons.

First, they impermissibly lump all of the Refined Coal Defendants together and fail to direct allegations against each. In particular, the Complaint does not identify which Moving Refined Coal Defendants are alleged to be engaged in a "joint enterprise" with which power plants. This vagueness is compounded by the Complaint's use of the terms "associated RC Defendants" and "operators of coal-fired power plants connected to an RC Facility." The Complaint does not identify who the "associated" Defendants are, or who they are "associated" with; who the "coal-fired power plants" are, or which "RC Facility" they are "connected to"; or which allegations relate to which operators of furnaces or plants. Absent such specificity, the membership of any alleged joint enterprise is left to guesswork.

Although Rule 8 does not always prohibit collective allegations against multiple defendants, a pleading cannot survive when it does not give "each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." *Neology, Inc. v. Kapsch Trafficcom IVHS, Inc*., C.A. No. 13-2052, 2014 WL 4675316, at *4 (D. Del. Sept. 19, 2014) (internal quotation marks and citations omitted). Rather, a complaint must identify "which entity is responsible for any particular alleged infringing activity," *N. Star Innovations, Inc. v. Toshiba Corp.*, C.A. No. 16-115, 2016 WL 7107230, at *2 (D. Del. Dec. 6, 2016); *see M2M Sols. LLC v. Telit Commc'ns PLC*, C.A. No. 14-1103, 2015 WL 4640400, at *3 (D. Del. Aug. 5, 2015), and must "clarify that each defendant committed at least one infringing act," *T-Jat Sys. 2006 Ltd. v. Expedia, Inc*., C.A. No. 16-581, 2017 WL 896988, at *7 (D. Del. Mar. 7, 2017). In pleading against multiple defendants, a plaintiff cannot merely make a "blanket reference" to a generic group of defendants. *Neology, Inc*., 2014 WL 4675316, at *4. The Complaint's treatment of the Moving Refined Coal Defendants as an undifferentiated group is improper. *See M2M Sols.*,

16

2015 WL 4640400, at *3 ("Plaintiff's decision to lump two defendants together in addressing its direct infringement claim cannot pass muster . . . .")

Second, Plaintiffs fail to plead required elements of a joint enterprise. Their two most striking omissions are the failure to plead that the putative joint infringers possess "an equal right to a voice in the direction of the enterprise," and that they share a "common purpose." *Akamai*, 797 F.3d at 1023.

Far from pleading that the Moving Refined Coal Defendants and power plants share an equal right of control over the performance of the accused method, Plaintiffs do not allege that the Moving Refined Coal Defendants perform or have any control over the power plants' alleged performance of either the Bromine Step or the Activated Carbon Step. Absent such allegations, the Complaint fails to state a claim for joint infringement. *See, e.g.*, *CBA Envtl. Servs., Inc. v. Toll Bros. Inc.*, No. 3:18-cv-13294, 2019 WL 3451737, at *10 (D.N.J. July 31, 2019) (dismissing complaint where only one side of alleged joint venture was alleged to have "oversight authority"); *Sonrai Sys., LLC v. AMCS Grp. Inc.*, No. 16 C 9404, 2017 WL 4281122, at *4 (N.D. Ill. Sept. 27, 2017) (dismissing claim for joint infringement because "provid[ing] . . . technology" and "instruct[ing]" actors "in how to use it" does not demonstrate a right of control over the actor).

Likewise, for a "common purpose," the Complaint pleads that each party benefits financially from the sale or purchase of Refined Coal. *See* D.I. 1, ¶ 77 (describing financial benefits to Moving Refined Coal Defendants); ¶ 156 (power plants receive "financial incentives"). Beyond that, it pleads different purposes—the Power Plant Defendants' interest in complying with mercury emissions requirements, and the Refined Coal Defendants' interest in generating Section 45 tax credits. Plaintiffs' theory of joint enterprise would yoke any buyer and

17

seller acting at arm's length into a joint enterprise on the premise that each profits from the exchange, but otherwise benefits in its own way from the transaction.  The law requires more.

> **B.**     **The Allegations of "Direction and Control" Are Inadequate.**

Nor do Plaintiffs adequately plead joint enterprise under a theory that the Moving Refined Coal Defendants "direct and control" the power plants' performance of the accused method.

First, Plaintiffs' allegations, like those lodged in support of a putative "joint enterprise," fail to specify whom each Moving Refined Coal Defendant is purported to direct or control.  A claim for joint infringement must plead facts showing how direction and control is exercised, which includes articulating the relationship between each entity accused of infringement and each actor accused of performing any step of the accused method.  *See Lyda v. CBS Corp.*, 838 F.3d 1331, 1340 (Fed. Cir. 2016) (affirming dismissal of joint infringement claim where "the Amended Complaint alleges conclusively and without factual support that CBS directed or controlled the independent contractors[,] who then directed or controlled the unnamed third parties").  Here, the Complaint does not attempt to explain any of the causal connections that would be necessary to hold the various Refined Coal Defendants liable for joint infringement.

Second, the allegations simply parrot the legal definition of direction and control, without tying that definition to any allegedly infringing activity:

> 157.     AJG, DTE, CERT, Chem-Mod, and the RC Defendants condition . . . the financial benefits of participating in the Section 45 Tax Scheme and the technical and environmental benefits of using refined coal[] upon . . . the combusting of coal with added bromine . . . , and they establish the manner or timing of that performance by requiring the power plant to use the refined coal and by providing the refined coal directly onto conveyances leading to the combustor.

D.I. 1, ¶ 157; *see also Travel Sentry, Inc. v. Tropp*, 877 F.3d 1370, 1378 (Fed. Cir. 2017) (reciting two-prong "conditioning benefits" and "establishing manner or timing of performance"

test for direction and control).  These allegations are insufficient, because Plaintiffs do not even attempt to allege that the Refined Coal Defendants direct and control the performance of the Activated Carbon Step.  That alone is a fatal omission.  *See Medgraph, Inc. v. Medtronic, Inc.*, 843 F.3d 942, 948 (Fed. Cir. 2016) (no joint infringement because Medtronic did not "condition the use of, or receipt of a benefit from, the CareLink System on the performance of all of Medgraph's method steps").

Although Plaintiffs miss the mark entirely on alleging direction and control of the "Activated Carbon Step," their threadbare allegation that the Moving Refined Coal Defendants direct and control the Bromine Step is not even adequate for that step.  *See Travel*, 877 F.3d at 1382–83.  "Requiring" a power plant "to use" Refined Coal is not directing or controlling the manner of performance.  Nor is "providing the refined coal" on conveyer belts.  There is simply no allegation of direction or control over that step either.

Finally, as a matter of law, the statute that governs Section 45 tax credits does not permit a "plausible" inference of "control" to be drawn from the sale of Refined Coal for Section 45 tax credits.  *See Nalco Co. v. Chem-Mod LLC*, Case No. 14-cv-2510, 2015 WL 6122811, at *2 (N.D. Ill. Oct. 15, 2015) ("Section 45 tax credits are obtained by selling refined coal to an unrelated person with the reasonable expectation that it will be used for the purpose of producing steam. 26 U.S.C. § 45(a)(2)(B), 45(c)(7)(A) . . . .  Defendants are not required to . . . practice any . . . specific process in order to qualify for Section 45 tax credits . . . ."), *rev'd on other grounds* 883 F.3d 1337 (Fed. Cir. 2018).  Plaintiffs plead that the sale of Refined Coal generates tax credits for certain Defendants; that allegation alone belies any "direction or control" by such Defendants over necessarily "unrelated" power plants.

## IV.    The Claims for Willful Infringement Should Be Dismissed.

The Complaint alleges that the infringement by the Refined Coal Defendants is willful, such that Plaintiffs would be entitled to enhanced damages.  To be liable for enhanced damages under 35 U.S.C. § 284, Defendants must have engaged in "egregious infringement behavior," *i.e.*, behavior that is "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate."  *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016).

Here, the threadbare allegations of willfulness cannot support a claim for enhanced damages.  *See*, *e.g.*, D.I. 1, ¶ 145 (alleging only that "it is likely" that the Refined Coal Defendants learned of the patents prior to suit).  Absent something more than "likely" prior knowledge of the patent, there can be no willful infringement or enhanced damages.  *See Halo*, 136 S. Ct. at 1936 (Breyer, J., concurring) ("[T]he Court's references to 'willful misconduct' do not mean that a court may award enhanced damages simply because the evidence shows that the infringer knew about the patent and nothing more.").

That is especially so here, where the '114 Patent issued only eight days before the filing of this lawsuit.  Any asserted basis for "likely" knowledge cannot be plausible under these circumstances.  The claims for willful infringement are insufficient as a matter of law, and should be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant the Moving Refined Coal Defendants' motion and dismiss the Complaint against them.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Brian P. Egan*

_____

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
began@mnat.com

OF COUNSEL:

Richard W. Mark
Joseph Evall
Paul J. Kremer
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
(212) 351-4000

*Attorneys for Defendants*
*AJG Coal, LLC*
*AJG Iowa Refined Coal LLC*
*Arbor Fuels Company, LLC*
*Arthur J. Gallagher & Co.*
*Belle River Fuels Company, LLC*
*Chem-Mod LLC*
*DTE REF Holdings, LLC*
*DTE REF Holdings II LLC*
*Gallagher Clean Energy, LLC*
*Joppa Refined Coal LLC*
*Louisa Refined Coal, LLC*
*Portage Fuels Company, LLC*
*Thomas Hill Refined Coal LLC*
*Wagner Coaltech LLC*
*Walter Scott Refined Coal LLC*

September 23, 2019

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 23, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on September 23, 2019, upon the following in the manner indicated:

James M. Lennon, Esquire                                    *VIA ELECTRONIC MAIL*
DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE  19806
*Attorneys for Plaintiffs*

Bradley W. Caldwell, Esquire                                *VIA ELECTRONIC MAIL*
Jason D. Cassady, Esquire
John Austin Curry, Esquire
Justin T. Nemunaitis, Esquire
CALDWELL CASSADY CURRY PC
2010 Cedar Springs Road, Suite 1000
Dallas, TX  75201
*Attorneys for Plaintiffs*

Frederick L. Cottrell, III, Esquire                         *VIA ELECTRONIC MAIL*
Tyler E. Cragg, Esquire
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE  19801
*Attorneys for Defendants NRG Energy, Inc., NRG*
*Texas Power LLC, Midwest Generation EME,*
*LLC, Midwest Generation, LLC, Vistra Energy*
*Corp. Dynegy Miami Fort, LLC, Dynegy Inc.,*
*Dynegy Midwest Generation, LLC, IPH, LLC, and*
*Illinois Power Resources Generating, LLC*

Timothy S. Durst, Esquire                          *VIA ELECTRONIC MAIL*
Douglas M. Kubehl, Esquire
Christa Brown-Sanford, Esquire
Megan LaDriere, Esquire
Mark Johnson, Esquire
BAKER BOTTS, L.L.P.
2001 Ross Avenue, Suite 900
Dallas, TX 75201
*Attorneys for Defendants NRG Energy, Inc., NRG*
*Texas Power LLC, Midwest Generation EME, LLC,*
*Midwest Generation, LLC, Vistra Energy Corp.*
*Dynegy Miami Fort, LLC, Dynegy Inc., Dynegy*
*Midwest Generation, LLC, IPH, LLC, and Illinois*
*Power Resources Generating, LLC*

Robert S. Saunders, Esquire                        *VIA ELECTRONIC MAIL*
Jessica R. Kunz, Esquire
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, DE 19899-0636
*Attorneys for Defendants CERT Coal Holding,*
*LLC, CERT Holdings LLC, CERT Holdings 2018,*
*LLC, CERT Operations LLC, CERT Operations II*
*LLC, CERT Operations III LLC, CERT Operations*
*IV LLC, CERT Operations V LLC and CERT*
*Operations RCB LLC*

Douglas R. Nemec, Esquire                          *VIA ELECTRONIC MAIL*
Leslie A. Demers, Esquire
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4 Times Square
New York, NY 10036
*Attorneys for Defendants CERT Coal Holding,*
*LLC, CERT Holdings LLC, CERT Holdings 2018,*
*LLC, CERT Operations LLC, CERT Operations II*
*LLC, CERT Operations III LLC, CERT Operations*
*IV LLC, CERT Operations V LLC and CERT*
*Operations RCB LLC*

Francis DiGiovanni, Esquire                    *VIA ELECTRONIC MAIL*
Thatcher A. Rahmeier, Esquire
DRINKER BIDDLE & REATH LLP
222 Delaware Avenue, Suite 1410
Wilmington, DE  19801
*Attorneys for Defendants Talen Energy*
*Corporation, Brandon Shores LLC, Talen*
*Generation LLC and H.A. Wagner LLC*

*/s/ Brian P. Egan*

_____

Brian P. Egan (#6227)