**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| MIDWEST ENERGY EMISSIONS CORP. and MES INC., Plaintiffs, v. VISTRA ENERGY CORP., *et al*., Defendants. | ) ) ) ) ) ) ) ) ) ) ) | Case No. 1:19-cv-01334-RGA |

**CERT DEFENDANTS' REPLY BRIEF IN**
**FURTHER SUPPORT OF THEIR MOTION TO DISMISS**
**FOR FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6)**

OF COUNSEL:

Douglas R. Nemec
Leslie A. Demers
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4 Times Square
New York, NY 10036
Tel: (212) 735-3000
douglas.nemec@skadden.com
leslie.demers@skadden.com

Robert S. Saunders (ID No. 3027)
Jessica R. Kunz (ID No. 5698)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
Tel: (302) 651-3000
Fax: (302) 651-3001
rob.saunders@skadden.com
jessica.kunz@skadden.com

*Attorneys for Defendants CERT Coal Holdings LLC, CERT Holdings LLC, CERT Holdings 2018, LLC, CERT Operations LLC, CERT Operations II LLC, CERT Operations III LLC, CERT Operations IV LLC, CERT Operations V LLC, and CERT Operations RCB LLC*

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1

II. ME2C DOES NOT PLAUSIBLY ALLEGE PRE-SUIT KNOWLEDGE FOR ITS INDIRECT INFRINGEMENT CLAIMS ..... 1

III. ADDITIONAL DEFICIENCIES DOOM PRE-SUIT AND POST-SUIT CLAIMS ..... 4

A. ME2C Fails to Allege Specific Intent for Induced Infringement ..... 4

B. ME2C's Opposition Cannot Save Its Contributory Infringement Claims ..... 7

IV. ME2C'S WILLFULNESS ALLEGATIONS ARE INADEQUATE ..... 9

V. ME2C'S VAGUE AND NONSPECIFIC ALLEGATIONS DO NOT PLAUSIBLY STATE JOINT INFRINGEMENT CLAIMS ..... 9

VI. CONCLUSION ..... 10

**TABLE OF AUTHORITIES**

**Page(s)**

*Addiction & Detoxification Institute L.L.C. v. Carpenter*,
620 F. App'x 934 (Fed. Cir. 2015) ....4

*In re Bill of Lading Transmission & Processing System Patent Litigation*,
681 F.3d 1323 (Fed. Cir. 2012) ....5, 7, 8

*BioMérieux, S.A. v. Hologic, Inc.*,
No. CV 18-21 (LPS), 2018 WL 4603267 (D. Del. Sept. 25, 2018) ....3

*Callwave Commissions LLC v. AT&T Mobility LLC*,
No. 12-1701-RGA, 2014 U.S. Dist. LEXIS 15374 (D. Del. Jan. 28, 2014) ....9

*Chalumeau Power Systems LLC v. Alcatel-Lucent*,
C.A. No. 11-1175-RGA, 2012 U.S. Dist. LEXIS 142809 (D. Del. July 18, 2012) ....4

*Collabo Innovations, Inc. v. Omnivision Technologies, Inc.*,
No. CV 16-197-SLR-SRF, 2017 WL 374484 (D. Del. Jan. 25, 2017) ....2, 4

*Disc Disease Solutions Inc. v. VGH Solutions, Inc.*,
888 F.3d 1256 (Fed. Cir. 2018) ....10

*E.I. du Pont de Nemours & Co. v. Heraeus Holding GmbH*,
No. 11-773-SLR-CJB, 2012 U.S. Dist. LEXIS 140037 (D. Del. Sept. 28, 2012),
*adopted by* No. 11-773-SLR-CJB (D. Del. Oct. 23, 2012) (D.I. 29) ....4, 6

*EON Corp. IP Holdings LLC v. FLO TV Inc.*,
802 F. Supp. 2d 527 (D. Del. 2011) ....10

*Express Mobile, Inc. v. DreamHost LLC*,
C.A. No. 1:18-cv-01173-RGA, 2019 U.S. Dist. LEXIS 101468
(D. Del. June 18, 2019) ....9

*Groove Digital, Inc. v. Jam City, Inc.*,
No. 1:18-CV-01331-RGA, 2019 WL 351254 (D. Del. Jan. 29, 2019) ....1, 2, 10

*Lifetime Industries Inc. v. Trim-Lok, Inc.*,
869 F.3d 1372 (Fed. Cir. 2017) ....2

*Monec Holding AG v. Motorola Mobility, Inc.*,
897 F. Supp. 2d 225 (D. Del. 2012) ....3

*Nalco Co. v. Chem-Mod, LLC*,
883 F.3d 1337 (Fed. Cir. 2018) ....5, 8

*Neology, Inc. v. Kapsch Trafficcom IVHS, Inc.*,
C.A. No. 13-2052-LPS, 2014 U.S. Dist. LEXIS 131568 (D. Del. Sept. 19, 2014),
*adopted by* C.A. No. 13-2052-LPS (D. Del. Oct. 22, 2014) (D.I. 39) ....5, 6

*Nuance Communications Inc. v. Tellme Networks Inc.*,
707 F. Supp. 2d 472 (D. Del. 2010) ....5

*Stephenson v. Game Show Network, LLC*,
933 F. Supp. 2d 674 (D. Del. 2013)....8

*Tegal Corp. v. Tokyo Electron Co.*,
248 F.3d 1376 (Fed. Cir. 2001)....5

*Valinge Innovation AB v. Halstead New England Corp.*,
C.A. No. 16-1082-LPS-CJB, 2018 U.S. Dist. LEXIS 88696
(D. Del. May 29, 2018)....9

*Walker Digital, LLC v. Facebook, Inc.*,
852 F. Supp. 2d 559 (D. Del. 2012)....1, 2

*Ware v. Transport Drivers, Inc.*,
No. 12-830-SLR, U.S. Dist. LEXIS 167243 (D. Del. Dec. 3, 2014),
*aff'd*, 15 F. App'x 743 (3d Cir. 2015)....8

## I. INTRODUCTION

The CERT Defendants' Opening Brief in Support of Their Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6) ("Opening Brief" (D.I. 50))[1] exposed the numerous flaws in ME2C's pleading – most fundamentally, ME2C's overreach in attempting to hold the CERT Defendants liable for patent infringement for the provision of coal with one additive that ME2C claims is used in a method practiced by others. ME2C's Consolidated Response in Opposition to the Motions to Dismiss Filed by the Chem-Mod, AJG, DTE, CERT and Other RC Defendants ("Opposition" (D.I. 82)) only compounds the errors in its Complaint. Unable to identify factual allegations that make its claims plausible, ME2C instead puts up a smokescreen of irrelevant allegations concerning tax credits and unpled allegations on the technology. Because ME2C's exercise in misdirection cannot transmute its allegations into actionable claims, the Court should dismiss all claims – based on pre-suit and post-suit conduct – against the CERT Defendants.

## II. ME2C DOES NOT PLAUSIBLY ALLEGE PRE-SUIT KNOWLEDGE FOR ITS INDIRECT INFRINGEMENT CLAIMS

In an attempt to sidestep the fatal defects in its Complaint, ME2C argues that it need not plead pre-suit knowledge of the patents or of the downstream direct infringement for its indirect infringement claims. (D.I. 82 at 13.) This is not the law, as even ME2C's cited cases reveal. *See, e.g.*, *Walker Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d 559, 565-66 (D. Del. 2012) (holding only that content in a complaint may satisfy the knowledge requirement for indirect infringement claims that are limited to post-litigation conduct). While ME2C contends that "[l]ack of pre-suit knowledge relates only to the quantification of damages," (D.I. 82 at 13), this too flies in the face of its own cases, which clarify that knowledge gained through a complaint supports only "post-

[1] Capitalized terms not defined herein shall have the same meaning ascribed to them as in the Opening Brief unless noted otherwise.

filing indirect infringement liability." *Groove Digital, Inc. v. Jam City, Inc.*, No. 1:18-CV-01331-RGA, 2019 WL 351254, at *4 (D. Del. Jan. 29, 2019). Recognizing, as it must, that Delaware courts have dismissed pre-suit portions of indirect infringement claims, ME2C attempts to cabin this principle as limited to cases where the plaintiff "admitted that it was not alleging pre-suit inducement." (D.I. 82 at 13 n.3 (citing *Collabo Innovations, Inc. v. Omnivision Techs., Inc.*, No. CV 16-197-SLR-SRF, 2017 WL 374484, at *9 (D. Del. Jan. 25, 2017)).) To the contrary, where, as here, a plaintiff cannot plausibly allege knowledge of the patents or of downstream infringement prior to the lawsuit, the pre-suit portions of indirect infringement claims should be dismissed. *See, e.g.*, *Collabo*, 2017 WL 374484, at *9 (dismissing pre-suit portion of indirect infringement claim and summarizing Delaware caselaw as requiring "pre-suit knowledge of the patent [to] be alleged unless the plaintiff limits its cause of action for indirect infringement to post-litigation conduct").

Regarding pre-suit knowledge of the patents, ME2C's surprise that the CERT Defendants "stand[] alone in moving on this basis," (D.I. 82 at 14), betrays its misconception of the need to provide allegations of knowledge as to each defendant. ME2C does not even attempt to plead that any one CERT entity had knowledge of the patents, and its allegations with respect to the CERT Defendants collectively – *i.e.*, knowledge through ME2C's allusion to general patent protection at a conference attended by an entity other than the CERT Defendants, (D.I. 1 at ¶¶ 146-47), or the CERT Defendants' interactions with a center where the inventors claim to have conducted research, (*id.* at ¶ 145) – are wanting. (*See* D.I. 50 at 9-10 (collecting cases that ME2C failed to distinguish).) ME2C's cited cases only highlight the unbridgeable gulf between the allegations in those cases and ME2C's allegations here. *See Walker Digital*, 852 F. Supp. 2d at 564 (allegations that defendant had "interactions with representatives of [the patent owner]," as opposed to with a third party where the inventors allegedly conducted research as alleged here (citation omitted));

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1375 (Fed. Cir. 2017) (allegations that defendant hired "two of [the patent owner's] engineers with knowledge of the [asserted] patent"); *BioMérieux, S.A. v. Hologic, Inc.*, No. CV 18-21 (LPS), 2018 WL 4603267, at *2, 5 (D. Del. Sept. 25, 2018) (allegations that one defendant had knowledge through "its efforts over the last several years to revoke foreign counterparts of [the asserted patent]" and other entities had a "business relationship relat[ing] directly to the accused products" with that defendant (citation omitted)).

ME2C's allegations of pre-suit knowledge of purported downstream infringement fare no better. ME2C attempts to limp by with a bare legal conclusion, (D.I. 82 at 15 (citing D.I. 1 at ¶ 198)), and irrelevant conjecture, (D.I. 82 at 15-16 (citing D.I. 1 at ¶¶ 158, 196)). But bare legal conclusions are insufficient to survive a motion to dismiss, and ME2C's remaining allegations fail to show pre-suit knowledge of downstream use of activated carbon sorbent, which ME2C concedes is a required separate step for the asserted patents. (D.I. 82 at 4, 7.) For instance, ME2C argues that its allegation that the CERT Defendants tailor the amount of bromine is sufficient because the "CERT [Defendants] fail[] to explain how they could perform that step without being aware of the plant's mercury capture process, which would include the Carbon Step." (D.I. 82 at 15-16.) But, ME2C bears the burden of pleading facts that make plausible this conclusion, and ME2C fails to allege that – or even explain how – knowledge of the amount of bromine requires knowledge of the use of activated carbon sorbent, let alone of the particulars of any other claimed step. *See Monec Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 232 (D. Del. 2012) (dismissing indirect infringement claims where "drawing such an inference [on knowledge] is too tenuous even at the pleading stage").

ME2C's remaining allegations are similarly unmoored to any knowledge of the alleged downstream use of activated carbon sorbent. (D.I. 82 at 16 (pointing to allegations that the CERT

Defendants "[c]onnect[] the RC facilities to coal-fired power plants," and "[t]est[] the performance of the RC Facilities").) Rather than "rais[ing] a fact dispute as to the extent of its knowledge," (*id.*), the CERT Defendants explained in their Opening Brief how each of the purported activities did not bear on knowledge of downstream infringement, (D.I. 50 at 11, 13), and ME2C's Opposition identifies no support for its perfunctory conclusions. Because ME2C fails to allege pre-suit knowledge of the patents or knowledge of downstream infringement, "the allegations of indirect infringement prior to the filing of the complaint [should] be dismissed." *Chalumeau Power Sys. LLC v. Alcatel-Lucent*, C.A. No. 11-1175-RGA, 2012 U.S. Dist. LEXIS 142809, at *3 (D. Del. July 18, 2012); *Collabo Innovations*, 2017 WL 374484, at *9.

## III. ADDITIONAL DEFICIENCIES DOOM PRE-SUIT AND POST-SUIT CLAIMS

ME2C's pre-suit and post-suit indirect infringement claims suffer numerous additional defects – namely, for induced infringement, the failure to plausibly allege specific intent; and for contributory infringement, the failure to plausibly allege the absence of substantial non-infringing uses, or that coal with added promoter is especially made to infringe. Because ME2C failed to plead these elements, the Court should dismiss ME2C's pre-suit and post-suit indirect infringement claims. *See, e.g., E.I. du Pont de Nemours & Co. v. Heraeus Holding GmbH,* No. 11-773-SLR-CJB, 2012 U.S. Dist. LEXIS 140037, at *24-25 (D. Del. Sept. 28, 2012), *adopted by* No. 11-773-SLR-CJB (D. Del. Oct. 23, 2012) (D.I. 29); *Addiction & Detoxification Inst. L.L.C. v. Carpenter*, 620 F. App'x 934, 938 (Fed. Cir. 2015).

### A. ME2C Fails to Allege Specific Intent for Induced Infringement

Underlying ME2C's argument regarding induced infringement is a mistaken belief that "[a]ctive inducement requires only an 'affirmative act.'" (D.I. 82 at 8 (citation omitted); *see also id.* at 9 (inventing a "general rule that inducement merely requires performance of an affirmative act").) Not so. A plaintiff must "allege facts to allow for the plausible inference that the indirect

infringer had the specific intent to induce infringement by the direct infringer (that is, that the indirect infringer encouraged the direct infringement)." *Neology, Inc. v. Kapsch Trafficcom IVHS, Inc.*, C.A. No. 13-2052-LPS, 2014 U.S. Dist. LEXIS 131568, at *18-19 (D. Del. Sept. 19, 2014) (collecting cases) (emphasis and citation omitted), *adopted by* C.A. No. 13-2052-LPS (D. Del. Oct. 22, 2014) (D.I. 39). Similarly, ME2C's argument that "a party may be liable for induced infringement even if it only controls or influences a portion of the alleged infringement," (D.I. 82 at 8), cannot erase the requirement to plead a specific intent to induce infringement. *See, e.g.*, *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012) ("A complaint[] must contain facts plausibly showing that [defendants] specifically intended their customers to infringe . . . and knew that the customer's acts constituted infringement.").[2]

Perhaps most off the mark, ME2C appears to rely on *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1356 (Fed. Cir. 2018), for the uncontroversial position that there is no requirement to plead that the "inducing parties engaged in the underlying direct infringement." (D.I. 82 at 8.)[3] But the CERT Defendants have not argued the contrary. Instead, the CERT Defendants explained that ME2C failed to allege a specific intent to induce, (D.I. 50 at 13-14), which *Nalco* reaffirms is indeed a pleading requirement. *See Nalco*, 883 F.3d at 1356 ("For an allegation of induced infringement to survive a motion to dismiss, the complaint must plead facts plausibly showing that

---

[2] ME2C's cited cases are not to the contrary. (*See* D.I. 82 at 8.) For instance, *Tegal Corp. v. Tokyo Electron Co.*, 248 F.3d 1376 (Fed. Cir. 2001), addressed a violation of an injunction that prohibited "facilitating infringing acts," which the Federal Circuit analogized to "active inducement" in holding that injunction required "some affirmative action" as opposed to "inaction." While the court recounted what may qualify for induced infringement, it did not do away with the requirement to show specific intent. *See id.* And in considering the record at summary judgment, the court in *Nuance Communications Inc. v. Tellme Networks Inc.*, 707 F. Supp. 2d 472 (D. Del. 2010), found activities that are not alleged here sufficient to infer a specific intent, such as providing a platform for the accused services to customers and consumers.

[3] The CERT Defendants were not parties in the *Nalco* case. (*Cf.* D.I. 82 at 8.)

the accused infringer specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement." (alterations retained; citation omitted)).

With regard to factual allegations of specific intent, ME2C offers up a circular argument that encouraging a "Bromine Step effectively encourages that coal plant to also perform the Carbon Step" because "the Bromine Step boosts the effectiveness of the Carbon Step." (D.I. 82 at 9; *see also id.* at 10 (arguing that "allegations that the RC Defendants encourage performance of the Bromine Step also supports an inference that the RC Defendants intend to induce infringement").) Yet again, ME2C does not plead any facts that make plausible this conclusion – *e.g.*, ME2C does not allege that bromine alone is ineffective; or that bromine is ineffective without activated carbon; or that bromine only boosts the effectiveness of a process that uses activated carbon; or, critically, that the CERT Defendants in any way taught or promoted the use of activated carbon. Similarly, ME2C's reliance on other purported activities does not render specific intent plausible, as those activities do not address any encouragement of the use of activated carbon sorbent as claimed. (*See* D.I. 50 at 11, 13 (demonstrating irrelevance of the alleged list of activities).)

Finally, ME2C makes no effort to defend its decision to "lump[] together all of the CERT Defendants, along with a panoply of other named and unnamed entities," for its allegations purportedly relating to a specific intent to induce infringement. (*Id.* at 13 (citing *Neology*, 2014 U.S. Dist. LEXIS 131568, at *21).) As ME2C failed to allege specific intent, the Court should dismiss its pre-suit and post-suit induced infringement claims. *See, e.g.*, *du Pont*, 2012 U.S. Dist. LEXIS 140037, at *24-25 (dismissing post-suit induced infringement claims in part because "[p]laintiff does not allege sufficient facts to state a plausible claim that [d]efendants possessed the specific intent to encourage their customers' infringement of the patent-at-issue").

**B. ME2C's Opposition Cannot Save Its Contributory Infringement Claims**

ME2C assigns itself a light standard: its contributory infringement claims can supposedly survive so long as "the pleadings do not undermine" allegations regarding "the absence of substantial non-infringing uses." (D.I. 82 at 10 (citation omitted)); *id*. at 11 (contending that its allegations suffice because "Defendants identify no allegations in the complaint that undermine ME2C's infringement theories").) But, problematically for ME2C, its Complaint does exactly that.

For instance, ME2C characterizes its invention as a "discover[y of] the benefits of combining halogen treatments (e.g., bromine containing materials) in-flight with backend sorbents (e.g., activated carbon)." (D.I. 82 at 3-4 (citing D.I. 1 at ¶ 61); *see also* D.I. 82 at 9 (arguing that "the Bromine Step boosts the effectiveness of the Carbon Step" (citing D.I. 1 at ¶¶ 59-61)).) Implicit in this "discovery" is a concession that a so-called Bromine Step and a Carbon Step may not always be combined. In addition, the specification of the '114 Patent describes another substantial non-infringing use. Specifically, the '114 Patent teaches that the sorbent may be non-carbon as opposed to carbon – *i.e.*, it contemplates a process without a claimed step: "[T]he disclosure may at times discuss the use of carbon base sorbents in further details; however the use of non-carbon base sorbents and a combination of carbon and non-carbon base sorbents is also contemplated to at least the same degree as carbon base sorbents." (D.I. 1, Ex. A at Col. 10:4-8.)

What is more, as the CERT Defendants explain in their Opening Brief, ME2C's attempt to plead the lack of substantial non-infringing use is legally improper. (*See* D.I. 50 at 14-15 (discussing *In re Bill of Lading*, 681 F.3d at 1339).) ME2C's response is to mischaracterize the CERT Defendants' position, contending that the CERT Defendants read *In re Bill of Lading* to "requir[e] a patentee to more specifically prove that a product lacks non-infringing uses," (D.I. 82 at 11). Rather, the CERT Defendants' Opening Brief points out that *In re Bill of Lading* cautions against pleadings such as ME2C's: ME2C alleges that "coal is supplied to a conveyance that

moves the coal toward the combustion chamber of the power plant that directly infringes the . . . patent[s]," (D.I. 50 at 14 (quoting D.I. 1 at ¶¶ 196, 220)), rather than the "relevant inquiry" of "whether the accused products can be used for purposes ***other than*** infringement, (*see id.* at 15 (quoting *In re Bill of Lading*, 681 F.3d at 1323) (emphasis retained)).[4]

Left with nothing else, ME2C resorts to reaching beyond the pleadings to prop up its contributory infringement claims. (D.I. 82 at 12.) ME2C constructs a befuddling scenario, claiming that the only possible non-infringing alternative would require locating a new coal plant with specific "engineer[ing]," building a new "conveyor system and railroad line," and entering new "sale terms." (*Id.*) Again problematically for ME2C, missing from its Complaint is any factual allegation that non-infringing alternatives require these efforts. As "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss," ME2C's last ditch effort to rewrite its Complaint cannot save its contributory infringement claims. *Ware v. Transp. Drivers, Inc.*, No. 12-830-SLR, 2014 U.S. Dist. LEXIS 167243, at *5 n.1 (D. Del. Dec. 3, 2014) (alteration retained; citation omitted), *aff'd*, 15 F. App'x 743 (3d Cir. 2015).[5]

Because of these additional deficiencies, ME2C's pre-suit and post-suit claims for contributory infringement should be dismissed. *See, e.g.*, *Stephenson v. Game Show Network, LLC*, 933 F. Supp. 2d 674, 681 (D. Del. 2013) (dismissing contributory infringement claim where

---

4 Contrary to ME2C's protestations, (D.I. 82 at 12-13), *Nalco* recognized that "the inquiry focuses on whether the accused products can be used for purposes ***other than*** infringement." *Nalco*, 883 F.3d at 1357 (emphasis retained; citation omitted).

5 The Court should also disregard ME2C's extraneous figure that appears to be a version of an image from the University of Kentucky's website embellished with annotations, despite ME2C's citation implying that it is a figure from an asserted patent. *Compare* D.I. 82 at 4, *with* Kentucky Geological Survey, *Coal for Electricity Generation*, University of Kentucky, https://www.uky.edu/KGS/coal/coal-for-elec.php (last visited Oct. 29, 2019).

"plaintiff does not offer any argument or facts directed to show that . . . the components 'have no substantial non-infringing uses'" (citation omitted)).

## IV. ME2C'S WILLFULNESS ALLEGATIONS ARE INADEQUATE

As detailed in the CERT Defendants' Opening Brief, ME2C "must allege facts plausibly showing that as of the time of the [willful infringement] claim's filing, the accused infringer: (1) knew of the patent-in-suit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent." (D.I. 50 at 8 (quoting *Valinge Innovation AB v. Halstead New Eng. Corp*., C.A. No. 16-1082-LPS-CJB, 2018 U.S. Dist. LEXIS 88696, at *35 (D. Del. May 29, 2018)). Because ME2C's pleadings are lacking as to allegations of pre-suit knowledge, as discussed above in Section II, ME2C's willfulness claims should be dismissed.[6]

## V. ME2C'S VAGUE AND NONSPECIFIC ALLEGATIONS DO NOT PLAUSIBLY STATE JOINT INFRINGEMENT CLAIMS

Unable to gainsay that its pleading features only random and inconsistent references to certain elements of joint infringement theories, (D.I. 50 at 16-17), ME2C turns to mischaracterizing its own Complaint – along with the CERT Defendants' positions and the governing law.[7] ***First***, ME2C has no response to the CERT Defendants' authority establishing that

[6] To the extent ME2C implies that willfulness claims based on post-suit knowledge alone are proper, (D.I. 82 at 16), this ignores a wealth of caselaw supporting that "the pleading standard for willful infringement . . . requires allegations of willful conduct prior to the filing of the claim." *See, e.g., Express Mobile, Inc. v. DreamHost LLC*, C.A. No. 1:18-cv-01173-RGA, 2019 U.S. Dist. LEXIS 101468, at *4 (D. Del. June 18, 2019) (dismissing willful infringement claim where "[t]he complaints allege only post-filing knowledge of the alleged infringement"); *see also Callwave Commc'ns LLC v. AT&T Mobility LLC*, No. 12-1701-RGA, 2014 U.S. Dist. LEXIS 15374, at *6 (D. Del. Jan. 28, 2014) (explaining why "the better course is generally not to allow allegations of willfulness based solely on conduct post-dating the filing").

[7] ME2C cannot even maintain its joint infringement facade throughout its Opposition, stumbling into an admission that its lawsuit "alleg[es] direct infringement by various companies that own or

*(cont'd)*

ME2C must plead facts sufficient to support its joint infringement theories, (D.I. 50 at 8-9, 16-17), instead citing either inapposite caselaw in an attempt to dodge its burden,[8] or contradictory caselaw.[9] ***Second***, ME2C's paltry offering of caselaw blessing "similar allegations," (D.I. 82 at 17), is unavailing. The case it cites involving sufficiently pled claims of joint infringement stands in stark contrast to ME2C's inadequate allegations here. (*Id.* (citing *Groove Digital*, 2019 WL 351254, at *3 (allegations that defendant "acted jointly with [its] customers," including that it "encourag[ed] and instruct[ed] game players to perform some or all of the claimed steps, while in certain instances perform[ed] certain of the steps itself in coordination with such performance by game players," which is entirely dissimilar to the allegations here)).) ***Finally***, the CERT Defendants do not argue that "they cannot be liable for joint infringement if they are only involved in some of the steps of the asserted method claims," (D.I. 82 at 16-17), but instead that ME2C has failed to plead numerous elements of either theory of joint infringement, including failing to allege that all steps of the claimed methods may be attributed to the CERT Defendants, (D.I. 50 at 17 (highlighting elements of joint infringement missing from Complaint)).

## VI. CONCLUSION

For the reasons discussed herein and in the CERT Defendants' Opening Brief, the Court should dismiss ME2C's claims against the CERT Defendants under Rule 12(b)(6). As the defects are incurable, dismissal should be with prejudice.

---

*(cont'd from previous page)*

operate coal plants," and that "the RC Defendants induce and contribute to the infringement of various coal plants." (D.I. 82 at 6.)

8 (D.I. 82 at 17 (citing *Disc Disease Solutions Inc. v. VGH Solutions, Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018) (addressing sufficiency of direct infringement allegations for a patent involving "simple technology" without assessing any joint infringement theories)).)

9 (D.I. 82 at 17 (citing *EON Corp. IP Holdings LLC v. FLO TV Inc.*, 802 F. Supp. 2d 527, 534 (D. Del. 2011) (dismissing joint infringement claims and "differentiat[ing] the elements required to properly allege joint infringement and direct infringement at the pleading stage")).)

DATED: October 29, 2019

Respectfully submitted,

*/s/ Robert S. Saunders*

Robert S. Saunders (ID No. 3027)
Jessica R. Kunz (ID No. 5698)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
Tel: (302) 651-3000
Fax: (302) 651-3001
rob.saunders@skadden.com
jessica.kunz@skadden.com

*Attorneys for Defendants CERT Coal Holdings LLC, CERT Holdings LLC, CERT Holdings 2018, LLC, CERT Operations LLC, CERT Operations II LLC, CERT Operations III LLC, CERT Operations IV LLC, CERT Operations V LLC, and CERT Operations RCB LLC*

OF COUNSEL:

Douglas R. Nemec
Leslie A. Demers
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036
Tel: (212) 735-3000
douglas.nemec@skadden.com
leslie.demers@skadden.com