# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MIDWEST ENERGY EMISSIONS CORP. and MES INC., <br><br> Plaintiffs, <br><br> v. <br><br> VISTRA ENERGY CORP., ET AL., <br><br> Defendants. | C.A. NO. 1:19-cv-01334-RGA-CJB <br><br> JURY TRIAL DEMANDED |

**LETTER TO THE HONORABLE CHRISTOPHER J. BURKE FROM JAMES M. LENNON REGARDING THE PARTIES' JOINT SUBMISSION OF CASE MANAGEMENT CONFERENCE MATERIALS**

Dated: June 10, 2020

**DEVLIN LAW FIRM LLC**
James M. Lennon (No. 4570)
1526 Gilpin Avenue
Wilmington, DE 19806
(302) 449-9010
jlennon@devlinlawfirm.com
*Attorneys for Plaintiffs Midwest Energy Emissions Corp. and MES Inc.*

**FAEGRE DRINKER BIDDLE & REATH LLP**
Francis DiGiovanni (#3189)
Thatcher A. Rahmeier (#5222)
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
(302) 467-4200
francis.digiovanni@faegredrinker.com
thatcher.rahmeier@faegredrinker.com
*Attorneys for Defendants Talen Energy Corporation, Brandon Shores LLC, Talen Generation LLC, and H.A. Wagner LLC*

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
began@mnat.com
*Attorneys for Defendants*

**RICHARDS, LAYTON & FINGER, P.A.**
Frederick L. Cottrell, III (#2555)
Tyler E. Cragg (#6398)
One Rodney Square
920 N. King Street
Wilmington, DE 19801
(302) 651-7700
cottrell@rlf.com
cragg@rlf.com
*Attorneys for Defendants Vistra Energy Corp.. Dynegy Miami Fort, LLC, Dynegy*

*AJG Coal, LLC*
*AJG Iowa Refined Coal LLC*
*Arbor Fuels Company, LLC*
*Arthur J. Gallagher & Co.*
*Belle River Fuels Company, LLC*
*Chem-Mod-LLC*
*DTE REF Holdings LLC*
*DTE REF Holdings II LLC*
*Gallagher Clean Energy LLC*
*Joppa Refined Coal LLC*
*Louisa Refined Coal, LLC*
*Portage Fuels Company, LLC*
*Thomas Hill Refined Coal LLC*
*Wagner Coaltech LLC*
*Walter Scott Refined Coal LLC*

*Inc., Dynegy Midwest Generation, LLC, IPH, LLC, and Illinois Power Resources Generating, LLC; and NRG Energy, Inc., NRG Texas Power LLC, Midwest Generation EME, LLC, and Midwest Generation, LLC*

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
Robert S. Saunders (ID No. 3027)
Jessica R. Kunz (ID No. 5698)
One Rodney Square
P.O. Box 636
Wilmington, DE 19899-0636
(302) 651-3000
rob.saunders@skadden.com
jessica.kunz@skadden.com
*Attorneys for Defendants CERT Coal Holdings LLC, CERT Holdings LLC, CERT Holdings 2018, LLC, CERT Operations LLC, CERT Operations II LLC, CERT Operations III LLC, CERT Operations IV LLC, CERT Operations V LLC, and CERT Operations RCB LLC*

June 10, 2020

<u>VIA CM/ECF</u>

The Honorable Christopher J. Burke
United States Magistrate Judge
District of Delaware
844 N. King St, Unit 28, Room 2325
Wilmington, DE 19801

      RE:    *Midwest Energy Emissions Corp. et al. v. Vistra Energy Corp. et al.* – Case No. 1:19-cv-01334-RGA-CJB

Dear Judge Burke:

      Pursuant to the Court's May 11, 2020 Order, the parties hereby provide notice that they conducted a Rule 26(f) conference via telephone on June 8, 2020. During that call, the parties discussed proposals for the proposed scheduling order and the items identified in the Court's checklist. Moreover, the parties provide the following information for the benefit of the Court.

      **a. Description of the Case**

Plaintiffs ME2C supply products used by coal-fired power plants to reduce mercury emissions. ME2C alleges that the two asserted patents relate to a two-part process for mercury capture: supplying a bromine or bromide-containing additive on the coal and/or into the furnace and injecting activated carbon sorbent downstream of the furnace. ME2C accused 17 defendants (grouped and labeled Vistra, AEP, NRG, and Talen for convenience) of infringement based on their ownership and operation of coal-fired power plants. ME2C accused 24 defendants (grouped and labeled RC Defendants, Refined Coal LLC Defendants, and CERT, for convenience) of indirect infringement based on their alleged role in contributing to or inducing coal-fired power plants to perform the patented process. Defendants have filed a number of motions to dismiss allegations of indirect infringement and joint and several liability, and to dismiss Plaintiff MES Inc. for lacking sufficient rights in the asserted patents.

      **b. Parties' positions regarding any disputes in the proposed Scheduling Order**
<u>**Dispute 1: Disclosures - ¶7**</u>

<u>Plaintiffs' Position</u>: Plaintiff proposes that the parties follow the Court's form disclosure requirements and obtain any additional necessary information through traditional discovery. In contrast, Defendants propose inserting interrogatories into the scheduling order and are now treating this process as a presumptive motion to compel. That is not how Rule 37 works.

Nonetheless, as an alternative, if the Court is inclined to modify its form order for this case, Plaintiffs request that Defendants be required to produce the underlying facts and evidence necessary for Plaintiffs to provide its disclosures. This parallels the form requirement that Defendants produce underlying technical information before initial infringement contentions are due. While Plaintiffs can serve interrogatories or other requests for this information, Defendants

should not be permitted to lay behind the log in responding to those discovery requests while Plaintiff is forced to comply with Court ordered disclosure deadlines.

Defendants' Position:  Regarding ¶¶7(a) and 7(c), Defendants do not seek to impose additional requirements on Plaintiffs.  Rather, Defendants seek to clarify Plaintiffs' obligations where, as here, all asserted claims are method claims and most Named Defendants are accused only of indirect infringement. The revisions ensure that each Named Defendant can prepare its case knowing which acts are alleged to infringe, directly or indirectly, including which products form the basis of the contributory infringement claims and which claim elements they purport to meet, and which acts are alleged to be the result of the alleged inducement or contributory infringement.

Regarding ¶7(b), Plaintiffs would improperly expand the core technical document requirement to include narrative disclosures of corporate structure and transactions, and business relationships and activities. Such information is unrelated to providing Plaintiffs the core technical documents to prepare infringement claim charts, which is the purpose behind this early disclosure.

**Dispute 2: Request for Admission and Interrogatory Limits - ¶¶8(d), 8(e)**

Plaintiffs' Position: Plaintiffs propose that Defendants have separate limits for common and specific requests.  This is a common approach in multi-defendant and consolidated cases, and it is particularly appropriate here given that the same patents are asserted against all Defendants and some of the Defendants have cooperated in asserting the same invalidity theories in IPRs. Defendants' insistence that they be able to serve 175 interrogatories and 245 RFAs on Plaintiffs is likely to impose unnecessary burden and lead to disputes as Plaintiffs attempt to parse slight differences in wording between the many requests that will be directed to obtaining information commonly relevant to all Defendants.

Defendants' Position:  Under Defendants' proposal, Plaintiffs may serve an equal number of interrogatories and RFAs on each of the seven Defendant Groups, and each Defendant Group may serve the same number on Plaintiffs.  Plaintiffs' proposal is not equitable, permitting Plaintiffs to serve more discovery on all Defendants than all Defendants may serve collectively, and  restricting the type of discovery that Defendants may serve (with caps on the total number of "common" and "specific" interrogatories and RFAs), with no similar cap for Plaintiffs.  There are many defendant-specific issues (e.g., damages, willfulness, pre-suit notice, non-infringing alternatives, etc.); each Defendant Group should be permitted to craft its own requests.  To avoid undue burden, Defendants grouped defendants into seven "Defendant Groups," and seek fair treatment for those groups.

**Dispute 3: Supplementation – ¶16**

Plaintiffs' Position: Plaintiffs propose that Defendants identify their proposed invalidity references along with their initial invalidity contentions.  Defendants will still be able to accommodate any necessary changes to their contentions (e.g., based on claim construction) in their final invalidity contentions. And they can move for leave to add new references if they legitimately discover some new prior art or basis for asserting a reference that could not have been known earlier based on a

reasonable investigation. Allowing them to add new references, without showing good cause, merely encourages them to perform a less than diligent search or to hold back references only to spring them on ME2C in a deposition or after ME2C discloses its claim construction positions. In both those scenarios, Defendants could obtain an unfair tactical advantage based only on their informational advantage, not any substantive strength in their positions. Moreover, failing to require that Defendants perform a diligent search before serving their initial invalidity contentions, is likely to lead to further disputes (e.g., over the scope of IPR estoppel).

Defendants' Position: The parties disagree on simultaneity and on deadlines. Defendants seek to schedule final supplementation of prior art after final supplementation of accused products/processes, as there will be a dispute over the priority dates of the asserted patents. The staggering is also important because if Plaintiffs assert that their patents cover certain accused products/processes, those accused products/processes may then be cited as invalidating prior art. Plaintiffs seek final supplementation of invalidity references on October 1, 2020, the same day that initial invalidity contentions are due [¶7(d)] and less than one week from the deadline to amend pleadings [¶2]. Defendants request that the prior art supplementation occur after the parties have exchanged and conferred regarding claim construction (i.e., filed the joint claim-construction chart), but before any claim-construction briefs are served.

### c. List of 3 most significant topics discussed during parties' review of Checklist items and what was discussed.

The most significant topics discussed during the parties' review of the Checklist items are the scheduling order disputes listed above. In addition, the parties had a significant discussion regarding email discovery.

Summary of Discussion: The parties discussed potential limits for email discovery. Plaintiff described various categories of information for which email would be particularly useful, based on its limited knowledge at this stage of the case. Defendants expressed a desire to limit email discovery based on a limited set of custodians and terms. Plaintiffs explained that they were open to reasonable limits on email discovery. The parties agreed to further meet and confer as to the timing and scope of email discovery, and intend to submit a joint proposed Order Concerning Discovery of Electronically Stored Information. *See* Proposed Scheduling Order ¶ 1.

Section 299 Issues: The parties also discussed the impact of 35 U.S.C. § 299 and potential severance. The parties did not reach resolution.

                                              Respectfully,

                                              */s/ James M. Lennon*

                                              James M. Lennon (No. 4570)

Enclosures
cc:    Clerk of the Court (via CM/ECF, w/encls.)
       Counsel of Record (via CM/ECF, w/encls.)