```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF DELAWARE


MIDWEST ENERGY EMISSIONS   )
CORP. and MES, INC.,       )
                Plaintiffs,) Civil Action No.
                           ) 19-1334-RGA-CJB
v.                         )
                           )
VISTRA ENERGY CORP.,       )
et al.,                    )
                Defendant. )




                    Wednesday, May 27, 2020
                    1:00 p.m.
                    Teleconference


BEFORE:  THE HONORABLE CHRISTOPHER J. BURKE
         United States Magistrate Judge


APPEARANCES:


     DEVLIN LAW FIRM
     BY:  JAMES M. LENNON, ESQ.

             -and-

     CALDWELL, CASSADY & CURRY
     BY:  JUSTIN T. NEMUNAITIS, ESQ.
          BRIAN W. CALDWELL, ESQ.

              Counsel for the Plaintiffs
```

```
1     APPEARANCES, CONTINUED:

2          SKADDEN ARPS MEAGHER & FLOM, LLP
           BY:  JESSICA R. KUNZ, ESQ.
3               DOUGLAS R. NEMEC, ESQ.
                LESLIE A. DEMERS, ESQ.
4
                    Counsel for the CERT Defendants
5

6

7          MORRIS NICHOLS ARSHT & TUNNELL LLP
           BY:  BRIAN P. EGAN, ESQ.
8
                      -and-
9
           GIBSON DUNN & CRUTCHER LLP
10         BY:  RICHARD W. MARK, ESQ.
                JOSEPH EVALL, ESQ.
11
                    Counsel for the Moving Refined
12                  Coal Defendants

13

14
           RICHARDS LAYTON & FINGER, P.A.
15         BY:  FREDRICK L. COTTRELL, ESQ.
                TYLER E. CRAGG, ESQ.
16

17                    -and-

18         BAKER BOTTS LLP
           BY:  DOUGLAS M. KUBEHL, ESQ.
19              TIMOTHY S. DURST, ESQ.

20                  Counsel for the Vistra Defendants

21

22

23

24
```

```
 1      APPEARANCES, CONTINUED:

 2

 3           FAEGRE DRINKER BIDDLE & REATH LLP
             BY:  FRANCIS DIGIOVANNI, ESQ.

 4                     -and-

 5           BAKER BOTTS LLP LLP
             BY:  SYED K. FAREED, ESQ.
 6
                     Counsel for Defendants Talen
 7                   Energy Corp, Brandon Shores LLC,
                     Talen Generation LLC, and
 8                   H.A. Wagner LLC

 9

10
             RICHARDS LAYTON & FINGER, P.A.
11           BY:  FREDRICK L. COTTRELL, ESQ.
                  TYLER E. CRAGG, ESQ.
12

13                     -and-

14           BAKER BOTTS LLP
             BY:  PAUL R. MORICO, ESQ.
15

16                   Counsel for the NRG Defendants

17

18           MORRIS NICHOLS ARSHT & TUNNELL LLP
             BY:  RODGER D. SMITH, II, ESQ.

19                     -and-

20           JENNER & BLOCK
             BY:  ANDREW A. BARLOW, ESQ.
21

22                   Counsel for the AEP Defendants

23

24
```

1              THE COURT:  For the record,

2     we're here this afternoon in the matter of

3     *Midwest Energy Emissions Corp. and MES, Inc.,*

4     *vs. Vistra Energy Corp., et al.*, Civil Action

5     Number 19-1334-RGA-CJB here in our court.  And

6     we're here today for oral argument on a series

7     of motions to dismiss brought by the

8     defendants in the cases.

9              Because we're here on the record

10    for our teleconference for oral argument, I'd

11    just ask counsel if they would try to remember

12    to identify themselves before they speak to

13    help our court reporter make sure we get a

14    good and accurate record of our call today.

15             Next I'll just have counsel

16    identify themselves for the record, and we'll

17    start first with counsel for plaintiffs' side,

18    and we'll begin there with Delaware counsel.

19             MR. LENNON:  Good afternoon,

20    Your Honor.  This is Jim Lennon of the Devlin

21    Law Firm representing plaintiffs.  With me on

22    the line is Justin Nemunaitis from Caldwell,

23    Cassady & Curry, and also with us is Brian

24    Caldwell representing plaintiffs.  And we may

1    have two representatives, corporate

2    representatives from plaintiffs, Rick

3    MacPherson, our CEO, and John Pavlish, who is

4    CTO.

5            THE COURT:  All right, and

6    Mr. Lennon, thank you.

7            I know we have different groups

8    of defendants.  I'll just identify those

9    groups in the manner in which they filed their

10    collective briefs.  So we'll start first with

11    what we're calling the CERT defendants.  Let's

12    have counsel identify themselves for those

13    parties, again beginning with Delaware

14    counsel.

15            MS. KUNZ:  Good afternoon, Your

16    Honor.  This is Jessica Kunz from Skadden Arps

17    on behalf of the CERT defendants.  And on the

18    line with me today are my two colleagues from

19    our New York office, Doug Nemec, who is lead

20    counsel for the CERT defendants, and his

21    associate, Leslie Demers.

22            THE COURT:  Okay, thank you.

23    Next we'll have counsel for the moving refined

24    coal defendants identify themselves, again

1    beginning with Delaware counsel.

2                    MR. EGAN:  Good afternoon, Your

3    Honor.  This is Brian Egan from Morris Nichols

4    on behalf of the 15 refined coal defendants.

5    Joining me on today's call are Richard Mark

6    and Joseph Evall from Gibson Dunn.

7                    THE COURT:  Thank you.  And next

8    we'll turn to counsel for the Vistra

9    defendants, again beginning with Delaware

10   counsel.

11                   MR. COTTRELL:  Yes, Your Honor,

12   Fred Cottrell from Richards Layton for the

13   Vistra defendants, and Tyler Cragg from my

14   office also.  And from Baker Botts, my

15   co-counsel Tim Durst and Doug Kubehl.

16                   THE COURT:  All right, thank

17   you.  And lastly, there were four defendants

18   on the brief, including Talen Energy

19   Corporation.  Those were, in addition to Talen

20   Energy Corp, Brandon Shores LLC, Talen

21   Generation LLC, and H.A. Wagner LLC.  Let's

22   have counsel identify themselves for those

23   parties, beginning with Delaware counsel.

24                   MR. DIGIOVANNI:  Thank you, Your

 1     Honor.  It's Frank DiGiovanni of Faegre

 2     Drinker for the Talen defendants.  And also on

 3     the line for the Talen defendants is Syed

 4     Fareed of Baker Botts, and Mr. Fareed will be

 5     arguing for the Talen defendants today.

 6                    THE COURT:  Okay, thank you.

 7                    MR. COTTRELL:  And Your Honor,

 8     I'm sorry, I didn't mean to preempt what you

 9     were about to say mand maybe you were getting

10     to it, and I'm not sure how we are on the

11     briefs.  But the NRG defendants are

12     represented by Delaware counsel and Paul

13     Morico from Baker Botts is on for the NRG

14     defendants.

15                    THE COURT:  Okay, thank you.

16                    All right.  Well, Counsel, we

17     had kind of --

18                    MR. SMITH:  Your Honor, I'm

19     sorry to interrupt.  It's Rodger Smith from

20     Morris Nichols.  I'm also on with Aaron Barlow

21     from Kenner & Block on behalf of the AEP

22     defendants.

23                    THE COURT:  Okay, thank you.

24     Are there other counsel on the line that we

```
 1    haven't recognized?

 2                    All right.  Good.  Well, then it

 3    seemed like in terms of the motions to dismiss

 4    that are pending, there were four motions that

 5    were -- kind of two of which were very related

 6    and the other two of which were very related

 7    such that the plaintiff responded to two of

 8    them with one answering brief, and to the

 9    other two with one answering brief.  And the

10    respective groups of defendants that kind of

11    filed similar briefs were on the one hand the

12    CERT defendants and the moving refined coal

13    defendants, and then on the other hand, the

14    Vistra defendants and the Talen defendants.

15                    It strikes me that in light of

16    how the briefing went, it makes sense to hack

17    those sets of motions kind of separately.  So

18    my thought was that we would start with issues

19    that were raised by the CERT defendants and

20    the moving refined coal defendants, get the

21    plaintiffs' response and get those parties'

22    replies; and then move to the issues raised by

23    the Vistra defendants and the Talen

24    defendants, and again get plaintiffs' response
```

```
 1     and then get those parties' rebuttals.
 2                     And so if we go that way, I
 3     guess the question for the respective sets of
 4     defendants is whether for each of them, their
 5     counsel had anticipated kind of two sets of
 6     opening arguments, or was there coordination
 7     between them such that one of the two
 8     defendants for each bucket is going to take
 9     the lead and the other will fill in?
10                     So let me start with the CERT
11     defendants' counsel, and I'll ask the moving
12     refined coal defendants' counsel, have you all
13     talked about how you want to attack this
14     argument, and whether one of the two sets are
15     going to go first and the other two following
16     on or anything like that?
17                     MR. MARK:  Yes, Your Honor.
18     Richard Mark, Gibson Dunn, for let's call them
19     the refined coal defendants for now.  We have
20     spoken with counsel for the CERT defendants,
21     and our proposal was to share the argument.  I
22     will address the aspects of the inducement
23     claim and joint infringement, and Leslie
24     Demers will address contributory infringement
```

1    and issues of knowledge relating to the two

2    direct infringement issues and willfulness.

3              The Court's order had specified

4    one hour divided among all of the defendants,

5    and so what we would propose is between

6    Ms. Demers and I, we would take 35 minutes

7    together of the hour, I would use

8    approximately 20 of that hoping to divide it

9    15 for the principal argument and reserving 5

10   for rebuttal.

11             THE COURT:  Okay.  Why don't we

12   let you get started.  I think in general, I

13   have until 3:00 p.m. here, so I'm hoping to

14   basically spend an hour on the CERT and

15   refined coal defendants' issues and the hour

16   on Vistra and the Talen defendants' issues.

17             Now, as to the latter, there's

18   less issues, and I think at least one set of

19   them went away, so we could maybe spend a

20   little more time on the first group's issues.

21   Hopefully this will all take us up to 3:00 and

22   we'll go from there.  It's all to say that I'm

23   not going to be incredibly rigid about a

24   clock, but I'll just have to move the parties

1    along to make sure we cover everything.

2                   With that said, Mr. Mark, why

3    don't I turn to you to address the issues that

4    you were going to address with regard to these

5    two sets of briefs.

6                   MR. MARK:  Thank you, Your

7    Honor.  And again, I am counsel for a group of

8    defendants, we can call them the Gallagher

9    defendants, because Arthur J. Gallagher &

10   Company, Chem-Mod, and a collection of about

11   15 other entities were named sort of as a

12   collective there.  And for purposes of this

13   motion, I'm also speaking on behalf of the

14   nine or so CERT defendants who are alleged to

15   engage in similar types of activities.

16                  A critical aspect of this

17   complaint is understanding something very

18   fundamental about the technology that's at

19   issue here.  And that is the other defendants,

20   the power plant defendants I will call them,

21   is a group that includes facilities that burn

22   coal to generate energy.  And the complaint

23   accuses those power plant defendants of

24   actually performing two essential steps of the

1    patent claims when they burn bromine-enriched

2    refined coal, they allegedly perform the

3    so-called bromine step.  That happens in the

4    furnace of these power plants.  Then

5    downstream from the furnace, they allegedly

6    perform a so-called activated carbon step by

7    injecting a substance called activated carbon

8    into the flue to deal with the gas that is

9    created after the combustion of coal.

10              And what's significant here is

11   that neither the Gallagher defendants nor the

12   CERT defendants do not operate power plants,

13   they are not power plants, they don't burn

14   coal.  And they are not accused directly of

15   performing either the bromine step or the

16   activated carbon step.  When you get to the

17   two counts at the end of the complaint, it

18   alleges that the Gallagher and the CERT

19   defendants as a group, they only indirectly

20   infringe each of the patent claims.

21              So let me turn to the question

22   of indirect infringement.  Obviously the

23   statute we all know, it is simple at 271(b).

24   "Whoever actively infringes inducement of a

1    patent shall be liable as an infringer."  What

2    does that require?

3                    Now, we believe that the

4    instructions from the statute and the case law

5    are very clear.  It requires -- induced

6    infringement under 271(b) requires knowledge

7    that the induced acts constitute patent

8    infringement.  In other words, it's not

9    possible to be liable for inducement if one

10    encourages performance of a step in a method

11    or part of some method.  Inducement requires,

12    as we have cited in our brief to the *Ericsson*

13    *v. D-Link* case, inducement requires that the

14    alleged infringer performs or induces another

15    party to perform every single step in the

16    method.

17                    In other words, if you have a

18    multi-step claim, and the briefs on both sides

19    and complaint confirm here that we've got the

20    multi-step claim that we're dealing with.  In

21    order to be liable for inducement, you have to

22    be involved as the inducer in every single

23    step, either by performing it or by inducing

24    its performance.  Nowhere in this complaint is

1    it alleged that the refined coal defendants

2    induced performance of every step in the

3    method.  So allegations about the refined coal

4    defendants' conduct, I'm including, again,

5    Gallagher and CERT, all concern treating coal

6    with bromine and providing that treated coal

7    or refined coal to power plants as a fuel.

8               And for detail on that, the

9    Court can look to, for example, paragraph 76

10   of the complaint, which details chemicals that

11   one of the refined coal group, Chem-Mod,

12   provides allegedly to people to perform the

13   creation of refined coal.  All of the

14   chemicals listed there are either bromine

15   itself or some forms of bromine or bromine

16   compound.  There is no activated carbon that

17   is mentioned as being among the Chem-Mod

18   chemicals.

19              At paragraph 158, there is

20   detail about a dozen acts which the plaintiff

21   lists enumerating what it says in the conduct

22   that constitutes inducement.  And what is

23   significant about paragraph 158, A through L,

24   is that you cannot find the words "activated

1    carbon" in it.  There is plenty that the

2    plaintiffs have put forward by way of

3    allegation relating to bromine and advancing

4    the bromine step and really providing the

5    power plants this fuel as activated carbon,

6    but there is nothing in there relating to

7    activated carbon.

8              And because the parties agree

9    between complaint and the briefing, as you

10   have seen from both sides, that the asserted

11   claims require a bromine step, burning coal in

12   the furnace; an activated carbon step,

13   treating the gas in the flue downstream of the

14   furnace, the failure of this complaint, single

15   failure, is there is absolutely no allegation

16   that the refined coal defendants do anything

17   that induces the practice of the activated

18   carbon step.

19              Most significant -- I'm sorry,

20   was there a question?

21              THE COURT:  Yes, I think I have

22   your argument.  Just to kind of get the key

23   points, I think if you look at page 9 on their

24   answering brief, part of what -- you know,

1    with induced infringement, you have the need

2    to provide the plaintiff as set out what's the

3    affirmative act, you know, the act that does

4    the encouraging?  But of course you also have

5    to plead knowledge of infringement as specific

6    intent.

7              And I think what they are

8    suggesting, the plaintiffs, is that these

9    defendants, they provide the bromine-induced

10   coal, and so they do an act, the provision of

11   the coal, that encourages the bromine step.

12   And that same act, because the way this turns

13   out, is that these plants do that step and

14   then they do the carbon step, that step kind

15   of directly leads to the carbon step.

16              And I think -- I guess I'm

17   wondering, do you believe that the failure on

18   the plaintiff's part is a failure to allege an

19   act that causes the carbon step to occur, or

20   do you believe the failure is the lack of

21   pleading specific intent, i.e., there's not

22   enough there to show that these defendants

23   know and intend that when they provide the

24   bromine-induced coal, that that is going to in

```
 1     essence encourage or make happen the second
 2     step?
 3                  MR. MARK:  Your Honor, I would
 4     actually say that it's both, but I would like
 5     to emphasize the first.  And there is
 6     authority that we have cited in our briefs,
 7     and I direct the Court to Vita-Mix and also to
 8     the case we brought to the Court's attention
 9     yesterday, the HZNP case, for the following:
10     The Federal Circuit has been quite clear that
11     inducement can't be inferred just because a
12     defendant has -- and what Vita-Mix says is
13     just because the defendant has actual
14     knowledge that some users of what the alleged
15     inducer is providing may also be infringing
16     the patent.
17                  So the failure in the complaint
18     is both that it doesn't allege anything to do
19     with the activated carbon step, but also there
20     is nothing that connects performance of the
21     bromine step to the activated carbon step.
22     And there's absolutely no -- there's
23     absolutely no linkage there.
24                  And let me try HZNP by way of
```

1     example.  And I know that's an ANDA case and

2     there's different circumstances obtained from

3     some aspects of it.  But it's significant as a

4     recent Federal Circuit pronounced that on the

5     subject for this reason.  You had a summary

6     judgment where what was being tested in the

7     summary judgment was whether the label put out

8     by the alleged inducer met the test, supplied

9     the elements of active inducement in a

10    multi-step method of treatment.

11           So all of the other elements of

12    inducement for purposes of summary judgment

13    are assumed to be provable.  The only thing

14    the Court is focusing on at that point is

15    whether what it is the inducer is alleged to

16    be doing, or by way of summary judgment since

17    it was a label, they were arguing there was no

18    dispute they were there, was sufficient to

19    meet the active element of 271(b).  And the

20    Court held clearly that the directions in that

21    label which says apply this topical medication

22    first, but if you're going to put other

23    material on your skin afterwards, sunscreen or

24    insecticide, let the medication dry first.

1            The two-step method at issue in
2     that patent was directed to purportedly a
3     method for treating this certain condition.
4     It says first apply the medication, and then
5     wait to apply sunscreen and other materials,
6     you know, for the medication to dry before you
7     do that.  And what the Court concluded, what
8     the Federal Circuit concluded was even though
9     you had a label there which really looked
10    towards a second step in the method and
11    adverted to it, it did not tell anybody to go
12    out and actually apply sunscreen or
13    insecticide.
14            The complaint in this case is
15    actually not even as strong as the label was
16    in *HZNP*, because there is nothing whatsoever
17    in the complaint that says we had anything to
18    do with the activated carbon step.  It doesn't
19    say that there was any action, any active work
20    on the part of any refined coal defendants to
21    bring about the activated carbon step.  If at
22    best all the complaint does is say by
23    providing brominated coal as a fuel to a power
24    plant, you're advancing or encouraging the

```
1    bromine step, that's not enough, because it
2    does not induce performance of all steps in
3    the method.
4              THE COURT:  Mr. Mark, what I'm
5    thinking is, and I'm not suggesting the
6    complaint does this, but let's say -- you
7    know, sufficiently.  But let's say it was
8    pleaded that defendants that are arguing now,
9    they knew everything that happened in these
10   coal plants, they knew exactly -- they knew
11   that the coal plants were going to take both
12   steps when they provided the bromine-infused
13   coal, they were very familiar with exactly
14   what's going on, and they knew the only thing
15   the plants were going to do with the
16   bromine-induced was to perform both steps
17   together.  And then they do this act, this
18   provision of the bromine-infused coal, which
19   sets off a chain reaction.  It causes the coal
20   defendants to do the first step and then the
21   second step.  And this group of defendants
22   knew that that was going to happen.
23              If all that was pleaded, you
24   know, if the CERT defendants and the refined
```

1    coal defendants knew that the coal plant

2    operators were going to do both steps and only

3    both steps together and they knew that by

4    providing the coal, it was going to trigger

5    them to do both steps, and they pleaded that

6    when the coal plant operators did both steps,

7    everyone was going to make money, would that

8    be enough if those things were all pleaded?

9            MR. MARK:  The answer to that

10   one is no.  And because again, what *Vita-Mix*,

11   what *HZNP* and similar cases say is that mere

12   knowledge that someone is going to be out

13   there infringing is insufficient to do that.

14   You have to actually tell them, do this step.

15           In *Vita-Mix*, this had to do with

16   a method for making a type of mixed drinks and

17   using a particular apparatus one way.  If you

18   use it in one way, it would infringe the

19   patent; if you used it in another way, it

20   would not.  And the fact that there was no

21   instruction saying, you know, use it the way

22   that the *Vita-Mix* guys are telling you to do

23   it to break up the bubble around the blade ,

24   because there was not that kind of specific

1    encouragement to perform that step in the

2    method, it was insufficient.

3              I would add, by the way, and I

4    understand that Your Honor posed that as a

5    hypothetical to test the limits here, but the

6    complaint actually precludes even an inference

7    of that sort.  For example, in paragraph

8    158(g), there is an allegation that says part

9    of the conduct that they're relying on for

10   inducement is testing the performance of the

11   RC facilities for regulatory reasons and to

12   obtain Section 45 tax credit.  Again, nowhere

13   in paragraph 158 is there any allegation

14   relating to activated carbon.

15             But if the Court were inclined

16   to look at Section 45 of the Internal Revenue

17   Code, what you would find there is a statute

18   that says effectively the way you get this tax

19   credit is you have feed stock coal, you try

20   it, and you compare feed stock coal to treated

21   coal right out of that treatment process, you

22   burn both of them, and if there is a reduction

23   of a certain amount in nitrous oxide and

24   mercury or sulfur dioxide, then it qualifies

1   for the tax credit.  There is no mention of

2   measurement or performance or any other aspect

3   of emission control or measurement at a stack

4   outlet or something, it's just is this raw

5   coal performing one way untreated and another

6   way when you just burn it right then.

7                   And so the community of -- the

8   financial interest that is alleged here in the

9   complaint relating to Section 45 is very

10  particular to the tax credit and is complete

11  without any involvement, requirement, or need

12  for activated carbon.  And so the hypothetical

13  that Your Honor was testing, I don't think

14  it's even possible to imagine on the base of

15  this complaint.

16                  If I might turn to joint

17  infringement, unless Your Honor has a question

18  about inducement, because I do want to say a

19  few things about joint infringement.

20                  THE COURT:  Go ahead and do

21  that.

22                  MR. MARK:  The joint

23  infringement point is an interesting one,

24  because the complaint itself in the two counts

1    actually fails to say we are seeking to hold

2    the refined coal defendants liable on a theory

3    of joint infringement, meaning as direct

4    infringers.  The only allegation against the

5    refined coal defendants in count 1 and count 2

6    is that they are alleged to be indirect

7    infringers.  So that's a defect, but let's

8    assume that they could fix that if they really

9    intended to do that.

10              The problem with joint

11   infringement as a substantive matter when you

12   look at the factual allegations of the

13   complaint has some similarities to what I

14   alluded to already regarding the inducement

15   claim.  And that is joint infringement of a

16   multi-step claim again has to be something

17   where multiple steps happen and can be

18   attributed to a single entity for purposes of

19   vicarious liability.  You have the control or

20   direction test and you have obviously the

21   joint enterprise test.

22              In terms of control or

23   direction, again, the great detail that the

24   complaint pleads relates to the bromine step.

1    There is nothing here pleaded suggesting that

2    there's any kind of agreement, statement, or

3    anything of the kind putting control and

4    direction over the activated carbon step or

5    anything else to do with these power plants in

6    the hands of their coal vendor, which is

7    essentially what the refined coal defendants

8    are.  We're fuel supply, the ones who provide

9    the refined coal.

10                So were there to be direction

11   and control, you would need something to show

12   that those parties that were supplying the

13   refined coal also had some measure of control

14   over the activated carbon step, just to focus

15   on that piece of it.  There is nothing of the

16   kind in the complaint.

17                And similarly, for joint

18   enterprise, you have to be in a situation

19   where both parties, the parties involved, have

20   some measure of control over all of the steps

21   in the method.  And the complaint is woefully

22   inadequate on that point.  Again, lots of

23   detail and lots of ink was spilled in this

24   complaint regarding performance of the bromine

1    step and the interest and desire of the

2    refined coal defendants to have the bromine

3    step done, but there is nothing of that kind

4    suggesting that a refined coal supplier gets

5    to tell a power plant, turn on that switch,

6    turn off that switch for the activated carbon

7    step.  For that matter, there's nothing to

8    suggest they have any control over, you know,

9    how many turbines to run or how much

10   electricity to generate or anything like that.

11              So because the complaint has

12   this focus and describes and spends this

13   effort on the refined coal defendants to

14   describe and define refined coal and says

15   nothing about activated carbon or our

16   participation in bringing about the activated

17   carbon step by control or direction or because

18   we somehow are interested in that, it fails on

19   the joint infringement point.

20              And for those reasons, we would

21   ask the Court to grant the motion dismissing

22   these claims insofar as they allege or attempt

23   to allege infringement liability based on

24   theories of inducement under 271(b), or joint

1    infringement.

2              THE COURT:  And Mr. Mark, before

3    I turn to Ms. Demers for her issues, the last

4    question would be do you think the complaint

5    even sufficiently alleges that the CERT

6    defendants and the refined coal defendants

7    have knowledge that the carbon step is

8    actually happening at these plants?

9              MR. MARK:  I don't think it does

10   contain that allegation.  Indeed, when you

11   look at paragraphs that describes what goes

12   on, for example, paragraph 152, again, the

13   focus is on the refined coal defendants, they

14   receive coal -- I'm reading now -- receive

15   coal add bromine and/or bromide to the coal,

16   and provide that refined coal to a coal-fired

17   power plant.  Next step, it says the coal-

18   powered power plant injects a sorbent material

19   comprising activated carbon downstream the

20   combustion chamber.  There's a similar

21   allegation in paragraph 148.

22              So it separates quite clearly in

23   the allegations the refined coal defendants

24   doing one thing over here, the power plant is

1    doing something else, and I don't think it

2    alleges even that there's knowledge.

3                    THE COURT:  And is perhaps the

4    closest allegation that the refined coal

5    defendants, the CERT defendants, might have

6    knowledge that that is happening, that

7    reference to how they're going in and testing

8    these facilities in 158(g)?  Is that why you

9    mentioned that, even though I know you don't

10   think that speaks to the carbon element.

11                   MR. MARK:  There are -- I would

12   also, in advance of that question, there are a

13   couple of allegations, for example, that make

14   reference to MATS obligations which were EPA

15   obligations having to do with mercury

16   emissions.

17                   And the question is, what does

18   that testing relate to?  There is nothing here

19   that relates the testing to the performance of

20   the activated carbon step.  There's plenty to

21   test with bromine.  It's really corrosive

22   stuff.  And in order to figure out if in your

23   furnace the bromine is going to cause

24   problems, whether it will lead to issues in

1    terms of slagging in your boiler, whether

2    bromine in your effluent could end up through

3    certain processes in wastewater from the plant

4    and cause other problems.  So there's plenty

5    to test with regard to the bromine step.

6            The complaint doesn't give any

7    inkling that any of this testing that the

8    refined coal defendants are alleged to do has

9    anything to do whatsoever with the activated

10    carbon step.

11            THE COURT:  Okay, thank you.

12    Let me move to Ms. Demers and let her cover

13    her issues as well before we turn to

14    plaintiffs' side.  Ms. Demers?

15            MS. DEMERS:  Thank you.  Good

16    afternoon, Your Honor.  Leslie Demers for CERT

17    defendants.

18            As previewed by my colleague

19    Mr. Mark, the CERT defendants also fall into

20    the refined coal defendant category, and there

21    are nine different entities.  As Your Honor

22    has seen in our briefing, the same arguments

23    on induced and joint infringement suggested by

24    Mr. Mark also support dismissal for my

 1    clients.  I won't belabor those points.

 2    Instead, I'd like to address the two issues

 3    previewed by Mr. Mark.  First, contributory

 4    infringement as it pertains to all refined

 5    coal defendants; and second, the knowledge

 6    allegations that are required to plead claims

 7    of indirect infringement as it pertains to the

 8    CERT defendants.

 9              For a contributory infringement

10    claim to survive a motion to dismiss, ME2C has

11    to plausibly allege that the refined coal sold

12    by the refined coal defendants has no

13    substantial non-infringing use.  A substantial

14    non-infringing use is a use that is "not

15    unusual, far-fetched, illusory, impractical,

16    occasional, aberrant, or experimental."  And

17    that's from the Federal Circuit's opinion in

18    *Vita-Mix*.

19              Not only has ME2C failed to make

20    that allegation, but they have pled the

21    opposite by alleging numerous other uses of

22    refined coal beyond the claimed one.  To

23    briefly recap the claimed method, ME2C

24    concedes in its briefing that its patents

1        require a bromine step and a carbon step.

2        ME2C alleges that the refined coal defendants

3        provide coal with added bromine, but does not

4        allege that these defendants provide carbon.

5        ME2C affirmatively identifies non-infringing

6        uses of coal with bromine in its complaint,

7        namely burning the coal with the bromine and

8        without adding any carbon.  And we can look to

9        paragraph 61 of the complaint for that.

10                  In fact, burning coal with

11       bromine and without carbon is described in the

12       prior art method in the patent-in-suit, which

13       is attached to the complaint.  And the

14       asserted '114 patent identifies another

15       non-infringing use.  That patent states that

16       non-carbon sorbents can be used instead of

17       carbon sorbents.  And not just as an

18       impractical or occasional use, but rather --

19       and this is a quote from the patent -- "to at

20       least the same degree as carbon base

21       sorbents."  That's at column 10, lines 4

22       through 8 of the '114 patent.

23                  So ME2C has pled itself out of

24       contributory infringement claims by alleging

1    that coal with added bromine has substantial

2    non-infringing uses.  Again, bromine that

3    refined coal --

4                 THE COURT:  Ms. Demers, I'm

5    sorry to interrupt.  I want to make sure we

6    have time to cut to the core of these issues.

7    And here, one of the issues in the briefing

8    seems to be there's a distinction between what

9    I think your side is saying, is look, this

10   refined coal, as an object, you know, at the

11   moment it's being introduced to these coal

12   plants, if the question is if you took that

13   coal and you set it to the side and you said

14   to the world, can this coal be used for

15   anything else that doesn't amount to

16   infringement of these patents?  You'd say the

17   answer is, yes, it can be used in lots of

18   other ways.  It can be burned on its own, you

19   don't have to use the carbon step, et cetera.

20               And what the plaintiffs seem to

21   be focusing on is more of an argument that,

22   look, this coal when it is provided to these

23   plants, when it's put on these conveyor belts

24   riding its way into these plants, which

```
 1          undoubtedly are only going to be used in one
 2          way, then there is no practical non-infringing
 3          use for that coal in that step.  So there's
 4          that kind of dichotomy in the briefing.
 5                      And in part they cite to the
 6          Nalco case that seems to use the phrase "as
 7          sold and delivered" in that context in a way
 8          that might be said to help the plaintiffs'
 9          argument as to how do you figure out which
10          side is right in the way they're framing how
11          you look at the potential for non-infringing
12          use.
13                      I wanted to ask if you could
14          focus particularly on that kind of core back
15          and forth between the parties and why you have
16          the better answer there in terms of how the
17          standard goes.
18                      MS. DEMERS:  Your Honor, this is
19          Leslie Demers.  I'm so sorry, my phone dropped
20          the line right at the beginning of your
21          question, but I think I caught enough of the
22          question at the end to understand where Your
23          Honor is going.  My understanding is that Your
24          Honor was asking about the "as delivered"
```

1    aspect of plaintiffs' argument, and whether we

2    are able to look at coal as delivered to the

3    power plants for the non-infringing use.  If

4    that understanding is correct, I would say

5    that we do not agree with that proposition.

6              So if we just look to the

7    Federal Circuit's opinion in *Nalco v.*

8    *Chem-Mod*, which involves some of the same

9    things here for a different patent, the

10   Federal Circuit there did consider allegations

11   of the lack of substantial non-infringing uses

12   based on refined coal as delivered to the

13   power plants, so that's non-dispositive here.

14   The Federal Circuit also credited an

15   allegation that the Chem-Mod chemical mixed

16   with coal have no substantial non-infringing

17   uses.  So in other words, the Federal Circuit

18   credited allegations just based on the

19   material itself and not looking at the

20   specific coal on the conveyor belt.

21             And the panel in *Nalco* did not

22   purport to overrule the test described in *Bill*

23   *of Lading*.  The *Nalco* opinion quotes the test

24   from *Bill of Lading* as having to focus on whether

1    the products can be used for purposes other

2    than infringement.  So we would submit that

3    the test -- I'm sorry.

4                THE COURT:  I was just going to

5    say, I'm looking at the case now, and the key

6    line, or among the key lines there is, "When a

7    coal-fired power plant or a refined coal LLC

8    receives MerSorb and S-Sorb, if purchased, the

9    coal-fired power plant or refined coal LLC has

10   no other use for MerSorb and S-Sorb except to

11   use those additives in the Chem-Mod solution."

12               And I guess what I'm asking is

13   if I were to look into that case more, will I

14   find that it was alleged that literally

15   MerSorb and S-Sorb couldn't be used for

16   anything else in the world except in this

17   Chem-Mod solution, or is what the Court was

18   saying there, no, no, when it's provided to

19   this plant, you know, in this way, there's no

20   other use for it.  Do you know what I'm

21   asking?

22               MS. DEMERS:  I do know what

23   you're asking.  Looking at the sentence that I

24   think follows where you were reading, there's

1    also discussions here that says, "*Nalco* also

2    alleges that the Chem-Mod solution mixture

3    caused no substantial non-infringing uses."

4              But I think one other important

5    point to distinguish the *Nalco vs. Chem-Mod*

6    case from that case that we have here is that

7    at a high level, *Nalco* addresses a

8    contributory infringement claim predicated on

9    provision of coal with additives like bromine

10   in a process that involves burning coal with

11   bromine but not activated carbon.  The *Nalco*

12   patent owner did not plead that the *Nalco*

13   patent required adding another additive that

14   came from some other party besides moving

15   defendant like ME2C did here.  And the *Nalco*

16   patent owner is not even pleading that this

17   other additive is not required to remove

18   mercury, again, like ME2C did here.

19             So the Federal Circuit in *Nalco*

20   was not rejecting our argument that a

21   plaintiff can't plead contributory

22   infringement, so at the same time, pleading of

23   the components provided other uses.

24             THE COURT:  Just two more

1    questions quickly about contributory

2    infringement before I ask if you can move on

3    to the other issue.

4              One way of saying this when you

5    look at *Nalco* and *Bill of Lading* is that we

6    think *Bill of Lading* sets out the standard and

7    it's looking at the component or the product

8    itself, not just how it's actually used by

9    this accused infringer, but just how it can be

10   used in the world.  And so we kind of think

11   the way that *Nalco* phrased it is wrong; *Bill*

12   *of Lading* is right.  And, you know, or maybe

13   *that Nalco* just used some bad phrasing, and

14   really the better phrasing and the correct

15   test is *Bill of Lading*.  Or it could be that,

16   no, those two cases are easily reconcilable

17   with each other.  Which one are you saying?

18              MS. DEMERS:  I think those cases

19   are easily reconcilable with each other.

20   Again, *Nalco* did not purport to overrule the

21   *Bill of Lading* test, and it's still holding

22   *Bill of Lading* as saying for purposes of

23   contributory infringement, the inquiry focuses

24   on whether the accused products can be used

1    for purposes other than infringement.  So it's

2    not looking at whether if you put these

3    chemicals into a process the plaintiffs claim

4    is infringing, whether that process would then

5    go on to infringe.  It's looking at something

6    else.

7              THE COURT:  And then the last

8    question is separate and apart from that, I

9    understand you to say, look, we think that the

10   record here that you can consider, Judge,

11   actually has evidence in it, you know, if

12   you're looking at the Bill of lading test,

13   that the product at issue, the bromine-infused

14   coal, can be used for a non-infringing use.

15   Is it your view that the best evidence of that

16   is in column 10, lines 4 through 8, of patent

17   exhibit A?

18             MS. DEMERS:  Yes.  I looked at

19   that quite a bit.  I think you can also look

20   to the '114 patent exhibit A at column 2, line

21   16 to column 3, line 15.  And that's

22   discussing actually the *Nalco* patent as a

23   prior art method of using bromine without the

24   use of carbon.  So again, here you have

1    distinguishing the patent that was previously

2    asserted against some of the defendants here

3    as essentially non-infringing use.

4                    If we look beyond the patent, we

5    can also look to paragraph 61 of the

6    complaint.  And in paragraph 61 of the

7    complaint, there's a recognition that there's

8    this preexisting treatment of halogen

9    treatment and also backend sorbents, which

10   would be the activated carbon.  So if we're

11   looking for the greatest hits, I would point

12   Your Honor to those three citations.

13                    THE COURT:  And I do want to

14   mention another knowledge related issue, so

15   let me do that before we turn to the

16   plaintiffs' side.

17                    MS. DEMERS:  Yes, I did want to

18   cover the knowledge requirement.

19                    Under 35 U.S.C. Sections 271(b)

20   and (c), knowledge of the patent and knowledge

21   of the infringement are both required.  To

22   meet the pleading standard in *Iqbal* and

23   *Twombly*, ME2C must offer plausible factual

24   allegations that all nine CERT defendants

 1     possess knowledge of the patent and knowledge

 2     of the coal plant defendants' alleged

 3     infringement through the use of activated

 4     carbon.  By making this motion, we're not

 5     suggesting that actual proof of knowledge is

 6     required at the pleading stage, or that pre-

 7     suit claims of indirect infringement can only

 8     stand where the patent owner provided notice

 9     to the accused infringer, for example.  So

10     factual allegations directly connecting the

11     defendants to knowledge of the patent and of

12     the infringement are required where the

13     plaintiff is asserting pre-suit claims of

14     indirect infringement.

15                    Briefly, there are no factual

16     allegations that any single CERT entity had

17     knowledge of the patent and the allegations

18     about the CERT entities collectively have far

19     too many degrees of separation to support

20     pre-suit knowledge.  There's two different

21     allegations I'd like to discuss briefly on

22     this point.

23                    One allegation is that the CERT

24     defendants conducted a test with the research

1    center and that the inventors at one point

2    were also doing work at the research center.

3    There's too many gaps between the CERT

4    defendants and the patent for a plausible

5    inference of knowledge here.

6                Another allegation is that a

7    separate entity, Chem-Mod, attended the same

8    conference as ME2C, although there's no

9    knowledge that they had any interactions

10    there.  Again, taking all allegations as true

11    and drawing reasonable inferences in ME2C's

12    favor, that does not lead to actual knowledge

13    of the patents by CERT let alone by all nine

14    CERT entities.

15                And just briefly covering the

16    topic of knowledge of the infringement, as

17    well, as Mr. Mark said in detail, there's no

18    allegations tying CERT to the carbon step.

19    Without any knowledge by the CERT defendants

20    of the carbon step, then there is no adequate

21    pre-suit knowledge for indirect infringement

22    claims to stand.

23                THE COURT:  Okay.  Fair enough.

24    Thank you, Ms. Demers.

```
 1                    I want to get to the plaintiffs'
 2          side.  Who is going to speak on behalf of the
 3          plaintiffs?
 4                    MR. NEMUNAITIS:  Justin
 5          Nemunaitis, Your Honor.
 6                    THE COURT:  Okay, Mr.
 7          Nemunaitis.  It may make sense for you to take
 8          the issues kind of roughly in the way we heard
 9          them from Mr. Mark and Ms. Demers.  I'll turn
10          it to you to start, and then I'll jump in with
11          questions as needed, okay?
12                    MR. NEMUNAITIS:  Certainly.
13          Thank you, Your Honor.
14                    On the induced infringement
15          issue, and I think Your Honor kind of
16          highlighted the main dispute here, which is if
17          we assume that what's alleged in the complaint
18          is that by the refined coal property operating
19          their business, what they're doing is putting
20          a particular type of coal on a conveyor belt
21          that directly leads it into a boiler where
22          infringement occurs as a natural chemical
23          reaction, then do we have induced
24          infringement?  And that is absolutely what we
```

1    intended to plead.  The way the complaint is

2    structured is we provide factual background at

3    the top, and then in each count, we identify

4    the acts of infringement.  And so I would

5    direct Your Honor to paragraphs 196 to 198 on

6    this issue, in addition to some other

7    paragraphs that were talked about otherwise.

8          But I want to focus on the legal

9    issue here of is that enough to plead induced

10    infringement?  Because it absolutely is.

11          The response you heard was that

12    what we need to plead for a method claim,

13    inducing method claim, is that some specific

14    action induced in each step, and that is

15    wrong.  I want to walk through each of the

16    cases to explain why that is wrong.

17          The first case they rely on is

18    this *Ericsson v. D-Link* case, and they focus

19    on this language in *Ericsson* that's in the

20    black letter law section, just citing black

21    letter law.  And I'm going to read it real

22    quick here.  It starts out, "A method claim is

23    directly infringed when someone practices

24    every step of the patented method," just black

```
 1    letter basic statement of the law, cites a
 2    case, then it says, "In order to prove induced
 3    infringement, the patentee must show that the
 4    alleged infringer performs or induces another
 5    party to perform every single step of the
 6    method.  And then they cite Limelight v.
 7    Akamai.
 8                   Now that Supreme Court case,
 9    Limelight, that dealt with the issue of does
10    direct infringement require one entity to
11    perform every step in the method.  If Your
12    Honor recalls, before that case came out, the
13    Federal Circuit had held that you can have
14    induced infringement where the inducer
15    performs some of the method steps, and then
16    the quote/unquote direct infringer performs
17    the rest of the steps, and the Supreme Court
18    said no.
19                   So really all the Federal
20    Circuit is saying here is we are following
21    Limelight; you've got to have a direct
22    infringer that performs every step.  It is not
23    laying out some new test that inducement
24    requires a specific act of inducement for each
```

1     step in the method claim.

2                   And we know that's the case

3     because just a few paragraphs down, it

4     actually talks about what the inducement

5     dispute was in that case.  And there they

6     explain that the patent at issue required

7     three basic steps, a device that sends

8     something, a device that receives something,

9     and then resending of a block acknowledgment

10    response message.

11                   What D-Link had argued was that

12    they make routers.  They make devices that

13    send and receive things.  They don't do

14    anything to encourage end users to send block

15    acknowledgments.  Ericsson's response was,

16    well, you make routers that comply with the

17    WiFi standard, and when you use the WiFi

18    standard, you know inevitably you're going to

19    be sending block acknowledgments.  So by

20    telling your customers that, hey, you can use

21    this router to do WiFi, you have induced,

22    because the actions you took were inevitably

23    going to cause the direct infringement.

24                   And that same basic principle is

1     applicable on some of the other cases that we

2     talked about in the briefing, and I'll mention

3     the *Bill of Lading* case.  That was another

4     method claim case where the patent at issue

5     dealt with less-than-load trucking.  So if

6     you're a trucking company and you're being

7     paid to transport half a truckload of stuff

8     from Seattle to New York, it would be nice if

9     you could fill up the rest of the truck with

10    more stuff just to get paid to use up that

11    extra space.

12              So what the patent provided was

13    a more efficient way to handle the logistics

14    there, and said you should use a portable

15    document scanner to scan information on

16    everything that's loaded; you should use that

17    information and wirelessly transmit it to a

18    logistics center; and then the logistics

19    center should create a manifest of where all

20    the loads are going, and use that to plan out

21    logistics.

22              The defendants in that case were

23    not trucking companies, they were companies

24    that made document scanners.  And these are

1     generic document scanners, they can be used in

2     the trucking industry, or they could be used

3     at a grocery store, at an accounting firm or

4     whatever.

5                But in this case, each of these

6     defendants advertised that you could use their

7     generic document scanner in the field of

8     trucking.  So they still said, well, if that's

9     not enough for induced infringement, because

10    you see the patent, and I'm referring to the

11    part of the *Bill of Lading* case that talks

12    about the ACS complaint.  I think that's where

13    this point is made most clearly.

14               There the ACS defendants said,

15    look, your patent has this specific method

16    step that says you have to create a manifest

17    that has this information.  And yes, we have

18    document scanners that can scan things, that

19    can transmit things wirelessly, but we never

20    tell anybody to create these manifests.

21               And what the Federal Circuit

22    said was, look, at the pleading stage, we know

23    that you are encouraging customers to use this

24    in the trucking field.  We know that it is

```
 1    just logical, it is common sense that if
 2    you're scanning information and sending it to
 3    a logistics center, that the logistics center
 4    is going to want to collect it and do
 5    something with it, so it is plausible that you
 6    know that customers are going to be creating
 7    these manifests so they can take advantage of
 8    the information that they're collecting.  So
 9    they found that at the pleading stage, that
10    was sufficient to plead induced infringement.
11              THE COURT:  Mr. Nemunaitis, you
12    used the word "no".  And just to try to figure
13    out what we think we're probably really
14    arguing about here, tell me if this is right.
15    It sounds like you don't disagree that when it
16    comes to a multi-step claim, that the accused
17    infringer has to induce or encourage the
18    direct infringer to perform every step of the
19    claim.  You agree that they do, you just
20    believe that the allegations here that they do
21    are plausible, even though it's probably fair
22    to say that most of the action that these sets
23    of defendants are engaging in kind of focuses
24    more directly on what we're calling the
```

1    bromine step and the carbon step.  Am I right

2    so far?

3                    MR. NEMUNAITIS:  I think that's

4    right.  I don't know that I would say -- yes,

5    at the pleading stage, we do not need to

6    allege that they are encouraging the coal

7    plant to perform the carbon step.  If they are

8    encouraging these coal plants to use bromine

9    and coal and they know that by using that

10   bromine and coal that will cause infringement,

11   that is sufficient to plead induced

12   infringement.

13                   THE COURT:  Okay, so you

14   actually are asserting that you're not

15   required to allege that the induced infringer

16   encouraged the performance of the carbon step

17   in any way?  You're asserting that so long as

18   you allege that the induced infringer

19   encouraged the bromine step, and it so

20   happened that thereafter, the direct infringer

21   performs the carbon step, that's enough?

22                   MR. NEMUNAITIS:  Right.  We're

23   making two points.  One is the legal point

24   that they don't need to specifically encourage

1    the carbon step where these plants already

2    have the carbon system installed.

3              The other point we've made is

4    that by encouraging the bromine step, that

5    does encourage the use of carbon, because the

6    purpose of the bromine is to enhance the

7    ability of the carbon to clean out the

8    mercury.

9              THE COURT:  That second argument

10   is different.  The second argument is, no, no,

11   we have plausibly alleged that the indirect

12   infringer is encouraging step two, the carbon

13   step, because of the way we've described step

14   two is connected to step one, but it's the

15   former that I'm wondering if you're arguing.

16   It sounded like you also were separately

17   arguing that as a plaintiff, you don't even

18   need to plausibly allege that the indirect

19   infringer encourages each step of the claim,

20   all you have to do is say they encourage some

21   steps.  Are you arguing that or no?

22              MR. NEMUNAITIS:  I want to be

23   very clear about this.  Yes, we are arguing

24   that if what they are encouraging is to

1  perform the entire method.  In other words, if

2  they don't need to encourage the customer to

3  perform certain steps because those steps

4  happen inevitably, then there's no need for us

5  to point to some specific instruction for that

6  particular step, if what they're doing is

7  encouraging a part of the method that results

8  in the entire method claim being infringed.

9           THE COURT:  I think I understand

10 what you're saying.  So really I'm wondering

11 if the issue is more of a question of

12 knowledge and intent.  And so if I were going

13 to say to you, where in the complaint does it

14 make plausible and sufficiently clear that

15 these sets of defendants, the CERT defendants

16 and the refined coal defendants, well know and

17 it could be said that they intend that when

18 they provide the bromine-infused coal, that

19 the carbon step is actually going to happen at

20 these plants and that they are, actually are

21 doing something to intend that it happen?

22 Where's the best evidence in the complaint

23 that they know that that carbon step

24 necessarily happens, and that they intend that

1    it happens?

2            MR. NEMUNAITIS:  I think the

3    quickest thing to point you to would be

4    paragraphs 196 to 198.  Just above those

5    paragraphs we lay out step by step what steps

6    are taken by each of these entities to cause

7    the direct infringement, and then in

8    paragraphs 196, we say, "This coal," meaning

9    the refined coal, "is supplied to advance then

10   moves the coal toward the combustion chamber

11   of a power plant that directly infringes the

12   '114 patent."

13           THE COURT:  I'm sorry, but what

14   does that have to do with the knowledge?

15   Like, it's not enough that it's just, they do

16   one thing and another thing happens, they've

17   got to know that the second thing happens,

18   they've got to intend that it happens.  Where

19   do those paragraphs say that these accused

20   indirect infringers know and specifically

21   intend that that step two, that carbon then

22   happens?

23           MR. NEMUNAITIS:  Right.  Next it

24   goes on to say that they tailor the amount for

1    that particular plant.  Then in paragraph 198

2    it says, "AJG, DTE, the RC defendants, have

3    actual knowledge of the '114 patent and know

4    that the actions described above," meaning

5    supplying the coal on the power plant and

6    tailoring it for that particular plant, "if

7    taken would constitute infringement of that

8    patent."

9              THE COURT:  Okay, now, on the

10   first, the tailor part, I'm not sure I

11   understand totally what it means to tailor the

12   amount of bromine that goes into the coal and

13   how that tailoring necessarily relates to

14   knowledge of specific intent with regard to

15   the carbon step.  Does the complaint explain

16   that?  How does tailoring relate to knowledge

17   of specific intent with regard to the carbon

18   step?

19             MR. NEMUNAITIS:  Sure.  Refined

20   coal is a general term that applies to a broad

21   category of products.  So you could have at

22   some plant a subbituminous coal with two

23   percent bromine and at a different plant, you

24   have a type of lignite coal with a four

1   percent bromine, something like that.  What

2   we've alleged is that each time these

3   companies set up a new refined coal facility,

4   what they do is they already have the conveyor

5   belt leading the coal to the combustor that's

6   attached to the carbon system.  The refined

7   coal company comes and says, okay, let us

8   lease some space on your conveyor belt, we're

9   going to set up this sprayer there.  They then

10  need to do some type of testing to show, okay,

11  how much bromine or other chemicals, different

12  types of chemicals do we need to add to this

13  particular coal so that when it gets dropped

14  into that boiler, it will achieve the 40

15  percent reduction so we can qualify for the

16  tax credit?

17           So the point we're trying to

18  make is there's not really such a thing of

19  just sort of generic refined coal that you can

20  pick up and take to any plant in the country.

21  At each plant, it's a particular material

22  that's prepared for that plant.

23           THE COURT:  Okay, but I guess to

24  the extent that -- is it alleged somewhere or

1    is it pleaded to say, look, we're accusing

2    these defendants of providing this

3    bromine-induced coal to the plant in a certain

4    way that's, quote, tailored, and because

5    they've tailored it in a certain way, they

6    have to know, the plants are going to take

7    that particular bromine that they're producing

8    and actually perform this carbon step, because

9    it wouldn't make any sense that they use this

10   particularly tailored coal for any other

11   purpose.  Is that what the complaint alleges,

12   and if so, where?

13                MR. NEMUNAITIS:  Well, that's

14   certainly the intent of what we're trying to

15   allege here.  And I refer Your Honor to the

16   same paragraphs there.  In the background, we

17   describe what is happening at these plants,

18   and at this part of the complaint is where

19   we're describing once you've created the

20   refined coal and you're transferring ownership

21   of the coal to the plant, you know, just a few

22   feet away from where it's going into a boiler

23   that is already set up to have the carbon

24   system, at that point, you must have known

1    what else is going on at the plant; otherwise,

2    how could you create the coal for that plant?

3              THE COURT:  All right.  Let's

4    move on to some of our other issues to make

5    sure we get them covered.  In terms of the

6    joint infringement issue, I guess the

7    concerning thing there is in the opening

8    briefs, the defense on the other side, they

9    make some pretty specific assertions about why

10   you're pleading with distinction both, you

11   know, direction and control, and some of the

12   other tests that are used for joint

13   infringement.  Your answering brief really

14   didn't get into that; it really was very

15   short.  It just said we alleged enough, see

16   these paragraphs.  So what do I do with that

17   in terms of where I stand on joint

18   infringement?

19              MR. NEMUNAITIS:  Well, I would

20   say the joint infringement allegations are

21   sort of there as an alternative theory.  The

22   case law, the cases that are cited don't

23   provide a whole bunch of details as far as

24   what specifically needs to be in the

```
 1     complaint.  But I refer Your Honor to one test
 2     here which is the joint enterprise test, this
 3     is from Akamai, requiring an agreement among
 4     the members of the group, which we've alleged
 5     there's some kind of contract signed between
 6     the refined coal company and the plant; a
 7     common purpose to be carried out by the group,
 8     and that's the burning of the refined coal; a
 9     community of pecuniary interest in that
10     purpose, and that's making money off burning
11     the coal either by selling electricity or
12     collecting the tax credits; and an equal right
13     to a voice in the direction of that enterprise
14     which gives an equal right of control.
15               And so to the extent Your Honor
16     concludes that what is happening here is the
17     refined coal company has total control over
18     the bromine and the coal plant has total
19     control of the activated carbon, and there's a
20     total separation there, then really what we
21     have here is a situation where -- it's like a
22     faucet, where both sides want to have warm
23     water coming out, and they both need to
24     coordinate together to get the warm water,
```

```
 1    because if one side cranks it up too much, the
 2    other side has to adjust.  So that would be a
 3    scenario where you have the joint
 4    infringement.
 5                   THE COURT:  And to get,
 6    Mr. Nemunaitis, maybe a quick way of
 7    addressing it, and it was mentioned by the
 8    other side, I mean, when I read these counts,
 9    we're talking about these sets of defendants,
10    the CERT defendants and the refined coal
11    defendants, I mean, the counts are going to
12    tell me what they're accused of doing.  I
13    think, am I right, tell me if I'm wrong, the
14    counts only accuse these folks of indirect
15    infringement.  Joint infringement would be an
16    assertion that these folks directly infringed.
17    So is it fair to say then that the actual
18    counts, the counts that tell you who is
19    accused of doing what by way of infringement,
20    don't actually charge these buckets of
21    defendants with direct infringement or joint
22    infringement.
23                   MR. NEMUNAITIS:  Off the top of
24    my head, I can't point to a part of the
```

```
 1    complaint that would indicate that Your Honor
 2    is wrong about that.
 3                THE COURT:  If that's so, would
 4    you say, look, Judge, if in any way our
 5    complaint is deficient, we want an opportunity
 6    if we think it's viable to be able to amend.
 7    And so if ultimately you decide that we can
 8    amend, because some portions of our complaint
 9    are deficient, give us the chance to amend if
10    we feel justified as to that issue.  Is that
11    kind of, would that be a fair indication of
12    what you'd be asking for?
13                MR. NEMUNAITIS:  Yes, thank you,
14    absolutely.  To the extent on any of these
15    issues Your Honor is inclined to grant some
16    portion of the motion, we would request an
17    opportunity to amend.
18                THE COURT:  Let's move to
19    contributory infringement, and there, at least
20    a part of our argument was a slight difference
21    of view it seemed in the briefs in terms of
22    how they look at the bromine-induced coal here
23    in terms of its alleged potential
24    non-infringing use, and what does *Bill of*
```

1    *Lading* mean and what does *Nalco* mean, et

2    cetera.

3                    I guess just to ask you a couple

4    of general questions.  This coal, this

5    bromine-induced coal that is being produced by

6    these -- to these power plants, if before it

7    went in the door to the plants you took it

8    away and you said to yourself, can this coal,

9    can this particular kind of coal be used for

10   any other kind of substantial use in the

11   world?  Is the answer that, yes, it could,

12   it's just not going to be used for that when

13   it goes through the door to these particular

14   plants?

15                   MR. NEMUNAITIS:  The answer to

16   that question is at the moment where the

17   refined coal company provides the refined coal

18   to a plant, that coal has no other use; it can

19   only be used to infringe.

20                   THE COURT:  So if I'm trying to

21   figure out -- but then it sounds like you

22   might acknowledge that that refined coal,

23   before, you know, it was on the way to the

24   plant, but if it got diverted or the plant

1    doesn't want it, we've got to figure out, what

2    else are we going to do with this coal, there

3    might be ways in the world that it could be

4    used, including by other coal plants; is that

5    fair to say?

6              MR. NEMUNAITIS:  We have not

7    alleged that point.  I think that would be a

8    difficult thing to figure out.

9              THE COURT:  Well, that's a good

10   point, because I can only consider the record

11   here, right?  So in terms of knowing what is

12   possible or not possible to do with this

13   particular coal, I can only consider the

14   complaint or the attachments thereto.  And if

15   you don't tell me in the complaint it can be

16   used for anything else, then maybe you would

17   argue the only way I can conclude it could

18   possibly be used by anything else is just like

19   in *Bill of Lading*, somewhere in the record I

20   can consider it's clear that it can be used

21   for something else.

22              Now, on that point, I think the

23   other side would point me to the portion of

24   the '114 patent that they've cited, I think

```
 1        it's column 2.  Why doesn't that excerpt of

 2        that patent tell me that there is, in fact,

 3        another use for this kind of refined coal?

 4                    MR. NEMUNAITIS:  So the patent

 5        talks about different types of scenarios that

 6        could potentially be used at different plants.

 7        It doesn't provide any -- it doesn't provide

 8        enough specifics as to what would happen at

 9        any particular plant.

10                    So let me just give an example.

11        We've accused, I believe, one of the entities

12        is Joppa refined coal, LLC.  They own a

13        sprayer that is on the conveyor belt at Joppa

14        Coal Plant.  Once that coal leaves the

15        sprayer, it's got to move another 20 feet

16        before it drops into the burner.  The fact

17        that the patent has different examples of

18        different things that can be attempted,

19        there's absolutely nothing about whether that

20        material, the actual accused material, has

21        some substantial non-infringing use.  And that

22        would be true with respect to each of these

23        coal plants.

24                    That is nothing like in In Re:
```

```
1        Bill of Lading, which is the only case that I
2        believe they cited that had this issue
3        actually came up, where they identified
4        specific non-infringing uses for the specific
5        accused articles.
6                    THE COURT:  Okay.  And I think
7        it may make sense to turn lastly to the
8        knowledge issues, and maybe particularly we've
9        talked about some of them, but what more do
10       you want to say, and to the extent that
11       certain defendants are asserting that there
12       just isn't plausible allegations to believe
13       that they knew of the patents-in-suit simply
14       because they happen to interact with an entity
15       who at one point employed the inventors, or
16       they interacted with another entity that
17       worked closely with that first entity.  What
18       do you want to say in response as to why the
19       allegations in paragraphs 145 to 147 are
20       enough?
21                    MR. NEMUNAITIS:  Just briefly on
22       this point, you know, we've cited some cases
23       that take a pretty lenient standard at the
24       pleading stage, recognizing that much of this
```

1    information is just going to be within the

2    information of the defendant.

3              What we've alleged here is that

4    these CERT defendants wanted to use bromine on

5    coal at plants that use activated carbon.  And

6    so what they've done is contract with a

7    company, Chem-Mod, that puts bromine on coal

8    for plants to use activated carbon, that also

9    has people that go to the same conferences as

10   the inventors and have seen presentations

11   where that process was identified as a

12   patented process by Midwest, by the plaintiff.

13             And the other thing they've done

14   is they went to the one organization in the

15   world, the EERC, that is known for inventing

16   this patented process when they wanted to fine

17   tune and test that process.  So I would say

18   when you compare that to what has been alleged

19   in other cases, that at least provides a

20   plausible reason to conclude that CERT had

21   knowledge of the patent and the patented

22   process.

23             THE COURT:  Okay.

24   Mr. Nemunaitis, anything more before I get

```
 1     brief rebuttal?  Because I know we need to
 2     move on.
 3                     MR. NEMUNAITIS:  No, Your Honor.
 4     Thank you.
 5                     THE COURT:  Thank you.
 6                     Let me turn back, Mr. Mark,
 7     we'll turn to you first.  If there's anything
 8     you want to add by way of brief rebuttal to
 9     what you heard on your issues, I'll let you do
10     it; and I'll do the same for Ms. Demers before
11     we turn to the second set of motions.
12                     MR. MARK:  Yes, thank you, Your
13     Honor.  Richard Mark again for the refined
14     coal defendants.
15                     Plaintiffs did argue in their
16     brief, and I think it is pages 8 or 9 of that,
17     that it is sufficient for inducement to
18     encourage a step and just have knowledge the
19     rest of the happening out there.  That plainly
20     is not the law.  If that were the case, and
21     this is the kind of thing that has been
22     considered by the Supreme Court, you can't
23     have inducement occur based on a party being
24     induced to practice a step of the method.
```

1    Otherwise, you can have inducement go on and
2    someone be liable as an infringer without that
3    person having been bound or required or
4    directed, all the steps necessary to
5    accomplish infringement.
6              The examples that counsel for
7    the plaintiffs was giving, for example, in
8    *Ericsson*, I'm not arguing that there is a way
9    around inducement, to be sneaky about stuff
10   and to somehow outsource responsibility or
11   performance of a particular step to someone
12   else and then say, oh, it's not us doing it.
13             What this complaint lacks and
14   what is absent utterly from these allegations
15   is anything to say that we did anything
16   relating to the activated carbon step.  In
17   other words, if the plaintiff's argument is
18   correct, *HZNP* would be decided the other way.
19   And you cannot reconcile the argument that
20   they're making with that Federal Circuit
21   authority, because the directions that were
22   given there plainly said, do step one, put
23   that medicine on your knee, and, you know, let
24   it dry before you apply anything else there.

1    Plainly they knew -- and for purposes of that

2    motion, it had to be assumed that all the

3    other steps or elements of inducement could be

4    proved.  You had to have a framework in which

5    the Court is thinking, okay, everything else

6    necessary to have an inducement is there.

7    It's happening as direct infringement going

8    on, the two steps are happening.

9               What is it the alleged inducer

10   is doing?  Only thing they did was they said

11   apply that medication to your knee.  There was

12   nothing that said we're encouraging you to go

13   ahead and also then apply insecticide or

14   sunscreen to your knee.  And because that

15   encouragement to another step of the method

16   that was covered by the patent was not made by

17   the inducer, there was no inducement as a

18   matter of law.

19               So the fundamental flaw in their

20   argument which can't be cured based on the way

21   they've laid things out here, because they've

22   tied us to the bromine step very firmly, that

23   there is no encouragement of the activated

24   carbon step.

1                    Regarding joint infringement,

2         there was a litany of activities that was

3         recited there about an agreement, about

4         refined coal, about making money off of this

5         whole process.  None of that as alleged in the

6         complaint and as is patently obvious from

7         reading the Internal Revenue Code, none of

8         that has anything to do with activated carbon.

9         Nothing.  And so it does not go to the type of

10        joint enterprise which must in order to have

11        infringement on that theory go to, again, all

12        steps of the method.  When you lay it out

13        there, it didn't do it.

14                   I would note that I happen to

15        have been counsel of record in the *Nalco* case

16        that was referred to.  And the circumstances

17        of that case, in particular the patent, is the

18        one that Ms. Demers referred to and that is

19        referenced in the specification here,

20        completely different patent, didn't involve

21        these kinds of steps.  And the issues that

22        were being litigated there as far as how the

23        plaintiff had pleaded the acts of infringement

24        were completely different than these and did

1   not touch upon at all the question of

2   encouraging the performance of a multi-step

3   process.

4                   What that really had to do with

5   was a peculiar way which they alleged whether

6   a particular step in the method was performed,

7   whether adding bromine to coal outside of the

8   furnace constituted injecting the bromine into

9   flue gas.  It had nothing absolutely to do

10  with the issues we're talking about here

11  today.

12                  And unless the Court has further

13  questions, I will ask that the motion be

14  granted.

15                  THE COURT:  Thank you.

16                  Ms. Demers, is there anything

17  you want to add briefly on rebuttal on your

18  issues before we go to the other motions?

19                  MS. DEMERS:  Yes.  I'll keep it

20  very brief, Your Honor.  I did want to address

21  a couple of responses on the contributory

22  infringement and the knowledge requirement

23  issues, as well.

24                  So on contributory infringement,

1    it became even more clear today that there's

2    no allegation that the refined coal that

3    leaves the RC defendants has any other

4    substantial or does not have any other

5    substantial non-infringing uses.  And that is

6    the appropriate frame of reference under *Bill*

7    *of Lading* and even in view of *Nalco*, and I

8    have not heard otherwise from ME2C today.  But

9    even more importantly, I have not heard a

10   response to our argument that substantial

11   non-infringing uses of refined coal are

12   identified in the claims and in the patent.

13              And just a brief point on

14   amendment as it pertains to the contributory

15   infringement issue.  This is not a case of

16   there being insufficient allegations in the

17   complaint.  Instead it's a case where the

18   pleadings foreclosed substantial

19   non-infringing uses.  An amendment cannot cure

20   these issues.

21              Unless Your Honor has any

22   questions on contributory infringement, I'd

23   like to briefly touch on the knowledge

24   requirement, as well.

```
 1                    THE COURT:  Okay.

 2                    MS. DEMERS:  I think Your Honor

 3       was hitting the nail on the head with the

 4       questions posed to the plaintiff.  On the

 5       knowledge of the patent aspect, there's not

 6       enough in the complaint to support an

 7       inference of knowledge of the patent.  I heard

 8       reference to the EERC being one center in the

 9       world on the patented method, but again, this

10       is not an allegation that's in the complaint.

11       The complaint alleges that the CERT defendants

12       worked with the EERC on the refined coal

13       facility technology, and not on any technology

14       employed by any power plant that allegedly

15       uses activated carbon.

16                    And the same goes for knowledge

17       of infringement.  There's no allegations

18       supporting knowledge of the carbon steps by

19       the CERT defendants which plaintiff has agreed

20       is required for infringement.  For example,

21       there's no allegation that tailoring the

22       amount of bromine requires knowledge of any

23       use of activated carbon.  I heard perhaps a

24       reference to an intent to allege these facts,
```

```
 1        but just be clear, these allegations are not

 2        in the complaint.

 3                    So for these reasons, we believe

 4        that dismissal is appropriate here.

 5                    THE COURT:  Thank you.  We'll

 6        need to move on to the other motions, and as I

 7        noted there, it relates to a more cabined set

 8        of issues, at least one of which I think was

 9        obviated through the briefing.  But these are

10        the motions that have been involved by the

11        Vistra defendants and the Talen defendants.

12                    Is there counsel for those

13        defendants who is going to take the lead role

14        or the first step at addressing some issues,

15        and then counsel who is going to address the

16        rest, or one for all?  I will turn to their

17        counsel to tell me how they plan to attack.

18                    MR. KUBEHL:  Good afternoon,

19        Your Honor.  This is Doug Kubehl with Baker

20        Botts representing the Vistra defendants.

21        With Your Honor's permission, what I'll do is

22        address the common issues for Vistra, Talen,

23        and NRG that are found in dockets 45, 47 and

24        49, and then co-counsel Syed Fareed will
```

1    follow up with an additional issue, the

2    willfulness issue that appears in that motion.

3                    Just very briefly, you made note

4    to one of the issues as being obviated, and I

5    think it is obviated, assuming that plaintiff

6    follows through with representations it made.

7                    As you know, this case was filed

8    as a single lawsuit with over 40 entities, and

9    19 of those entities are associated with four

10   different groups of power companies.  Those

11   are independent power companies.  There's no

12   allegations in the complaint that would

13   support a joint and several liability

14   allegation against those companies.  And when

15   we saw the complaint, we thought that a joint

16   and several liability allegation would be the

17   basis that they would use to justify having

18   these independent companies in the same case.

19   We pointed out in our motion that there aren't

20   facts that would support that, and they

21   responded by conceding that they are not, in

22   fact, alleging that the coal plant defendants

23   are jointly and severally liable.  They have

24   representations that they will amend their

1    complaint to remove those allegations, and

2    based on those representations, it's our hope

3    that this issue is moot.  I think it will

4    remain to be seen what explanation, if any,

5    they have for having these independent

6    companies in a single lawsuit, but I think

7    that will be for another day.

8                    THE COURT:  Okay.

9                    MR. KUBEHL:  Moving to the

10   standing issue, there are two plaintiffs in

11   this case, Midwest Energy Emissions Corp., and

12   MES, Inc.  They're described in the complaint

13   as being different companies, they have

14   different locations, but that's really all

15   that we know about those companies from the

16   complaint.  There's a moniker, ME2C, that's

17   used to refer to those companies collectively,

18   but there's nothing describing the

19   relationship between those companies, and in

20   particular, there's nothing in the complaint

21   that identifies what specific rights does MES,

22   Inc.  hold that would entitle it to be a

23   plaintiff in this case.

24                    What we know from the complaint

1      at paragraph 203 is that it's actually Midwest

2      Energy Emissions, not EMS, Inc., that owns the

3      patents.  And we know from the public records

4      that we've attached to our briefing that the

5      assignment records in the patent office show

6      that it's Midwest Energy Emissions and not

7      EMS, Inc. that is the sole owner of those

8      patents.

9                   And I think from the briefing

10     it's at this point at least undisputed that

11     MES, Inc. in fact is not an owner of these

12     patents.  And if there were any dispute about

13     that, I certainly would have made an exhibit

14     to this hearing of a March 11, 2020 filing

15     that Midwest Energy made with the patent

16     office again showing that it is the sole owner

17     of both patents in this suit.

18                   So in the briefing, plaintiff

19     points to paragraph 180 as their basis for

20     alleging that MES, Inc. has standing in this

21     case.  And that paragraph says that as the

22     exclusive licensee and later assignee of the

23     patents-in-suit, ME2C developed, marketed, and

24     sold, products and services that practiced the

1    patented technology.  And of course developing

2    and marketing and selling products and

3    services that practice the patented technology

4    doesn't give you any right to be a plaintiff

5    in a patent lawsuit.  The question is are you

6    the owner of the patent or are you an

7    exclusive licensee with enough rights to be a

8    plaintiff?

9              So that paragraph 180 says that

10   at best, reading it at best for them, it says

11   that both those companies were once the

12   exclusive licensee, but now are the assignee

13   of those patents.  We know of course from the

14   public records that the only assignee, the

15   only owner of the patent, is Midwest Energy,

16   not MES, Inc.  And so when you look at the

17   complaint, there is simply nothing in that

18   complaint that alleges that MES, Inc.

19   specifically holds rights in this patent that

20   would convey standing.  It's plaintiff's

21   burden to establish standing, and the

22   complaint just doesn't do that for MES, Inc.

23              THE COURT:  Is there anything

24   you want to say about paragraph 82 further as

1          to why that paragraph doesn't help or is

2          confusing?

3                    MR. KUBEHL:  Paragraph 82 refers

4          to the collective moniker ME2C as being a

5          commercial extension of the patented

6          technology.  Again, that's talking

7          collectively about two companies, and those

8          specific allegations against MES.  I think

9          it's similar to the paragraph 180 that we

10         looked at that is a little more specific and

11         says that they were once the exclusive

12         licensee but now are the assignee of the

13         patent.  So I don't think that 82 provides

14         enough clarification to get first standing.

15                   THE COURT:  I guess as a literal

16         matter, as to one of the two patents, I think

17         the plaintiff acknowledged, it may be a

18         mistake, in its view, not in yours perhaps,

19         that only the other plaintiff entity, Midwest

20         Energy Emissions Corp., has said to have

21         ownership rights; and that as to the second,

22         you would say to the extent the patent lumps

23         together both entities and includes the

24         allegation in Paragraph 82, which is

1      confusing, especially in light of the record

2      in the patent office, it's all not enough to

3      show that MES belongs in the case at this

4      stage.  Is that a fair summary of your

5      arguments, Mr. Kubehl?

6                    MR. KUBEHL:  It is, Your Honor.

7                    THE COURT:  Why don't you move

8      on to the other issues you wanted to touch on.

9                    MR. KUBEHL:  The last issue that

10     I'll address is the inducements issue.  As

11     you've had some discussion today, there are

12     claims of direct infringement against the coal

13     plants that are actually burning coal.  The

14     infringement allegations start at paragraph

15     201 and go to paragraph 224.  As ME2C's

16     counsel told us, that where the counts are.

17     In those counts, there are allegations of

18     direct infringement against the coal plants

19     themselves.  There are allegations of indirect

20     infringement against the refined coal

21     companies.  But in the counts, there are no

22     allegations of indirect infringement against

23     the companies that are associated with the

24     coal plants.

1              What we see is that in

2      paragraphs 150 and 151, those are under the

3      heading "factual allegations in the

4      complaint," there there's sort of an attempt

5      to cover other entities with an indirect

6      infringement claim.  In paragraph 150, what

7      that addresses is, well, could there be a

8      situation where the coal plant itself is owned

9      by another entity, call that the subsidiary,

10     then that subsidiary is owned by still another

11     entity, we'll call that the parent.  And so to

12     the extent there's an entity named in the

13     complaint who would be a parent of a

14     subsidiary or the subsidiary owns the coal

15     plant, they're generally saying in paragraph

16     150 that there could somehow be indirect

17     infringement there.

18              In paragraph 151, they attempt

19     to get more specific about what it is that's

20     being done, and what we see here is an

21     allegation of exercise and control over the

22     subsidiaries, not the coal plants, control

23     over the subsidiaries, providing technical,

24     administrative, logistical, and financial

1    services or negotiating form and bulk contract

2    agreements related to mercury control.  Well,

3    we've heard lots of talk here today that there

4    are lots of things you can do to address

5    mercury control in a coal plant, and not all

6    of them infringe this patent.

7              So what we've got is a couple of

8    paragraphs that collectively take a bunch of

9    entities that may own subsidiaries that are

10   unnamed, that may further own coal plants, and

11   lump them all together and say that generally

12   providing technical, administrative,

13   logistical or bulk purchase agreements related

14   to mercury control, that that somehow induces

15   infringement.

16             And I think this is a lot like

17   the *Neology* case we cited where in that case,

18   it was alleged that general training

19   instructions to customers concerning the use

20   of the accused products, that's what was pled,

21   that simply begged the question, providing

22   training instructions as to what?  Here we've

23   got allegations of performing various tasks

24   generally related to mercury control, but no

```
1    specificity as to which company is doing what

2    for what other company, and how is that

3    company then infringing?

4                So our bottom line argument here

5    is there is insufficient allegation of

6    indirect infringement with respect to Vistra

7    Energy and Talen.

8                THE COURT:  Even at a more base

9    level, which I think is where you started,

10   your clients, the Vistra defendants, are

11   referred to with other entities collectively

12   as the coal plant defendants.  Am I right?

13                MR. KUBEHL:  They are.

14                THE COURT:  And in those counts,

15   the counts that tell you who is alleged to

16   have done what here, who is alleged to have

17   committed direct infringement, who is alleged

18   to have committed indirect infringement, is it

19   correct that the coal plant defendants are

20   only asserted in those counts to have engaged

21   in direct infringement of the patent?

22                MR. KUBEHL:  That is correct,

23   Your Honor.

24                THE COURT:  Okay.  Now, you're
```

```
 1     not challenging those allegations at least for

 2     purposes of these motions, am I right, that is

 3     the direct infringement allegations?

 4                    MR. KUBEHL:  There's no

 5     challenge to a direct infringement allegation

 6     in this motion, no.

 7                    THE COURT:  Okay.  All right.

 8     Let me let your colleague address the other

 9     issues.  Is it Mr. Fareed who is going to

10     address the remaining issues from Talen's

11     perspective?

12                    MR. FAREED:  Yes, Your Honor.

13     This is Syed Fareed on behalf of the Talen

14     defendants, and I'm going to address the

15     remaining issues.

16                    THE COURT:  Good afternoon.

17                    MR. FAREED:  These issues, Your

18     Honor, were briefed in docket number 49 and

19     87, which were Talon's briefs on willfulness

20     issues.

21                    Your Honor, with respect to

22     willful infringement, ME2C had to plead three

23     things, which were knowledge of the

24     patents-in-suit by Talen; they had to have
```

1    pled that not reporting the knowledge telling

2    when Talen infringed the patents; and in doing

3    so, Talen knew or should have known that its

4    conduct was amounting to infringement of the

5    patent.  And we know that from Your Honor's

6    decision in the *Valinge v. Halstead* cases,

7    that that's the standard for pleading

8    willfulness.

9              Your Honor, ME2C failed in all

10   three accounts.  But it has failed to plead

11   knowledge on the part of Talen, and it has

12   failed to plead that Talen knew or should have

13   known that its acts were infringing either of

14   the two patents.  In fact, ME2C has sued four

15   different Talen entities and has failed to

16   plead knowledge on the part of any one of

17   those four entities.  That's where we are.

18              And what I'll do, Your Honor,

19   here is I'll structure my argument so that it

20   addresses each of two patents.  The

21   allegations are somewhat different, so that's

22   why I'll break them apart into two.

23              First the '114 patent, Your

24   Honor, ME2C has not even alleged that Talen

1    had knowledge of the '114 patent.  And these

2    are the specific paragraphs of the complaint

3    that refer to any interactions are paragraphs

4    138 through 144.  In none of those paragraphs

5    does ME2C say that they ever approached Talen

6    with the '114 patent and said, Talen, here is

7    the patent, you're on notice of it, you

8    infringe.  That's never alleged at all.  The

9    closest they come --

10              THE COURT:  I mean, at least

11   with respect to the '147 -- I mean, I

12   understand your point about in general, if

13   you're a parent and you have a subsidiary, you

14   know, the law treats those as separate

15   corporate entities, and it's not enough to

16   say, well, the parent has knowledge of the

17   patent so therefore the sub must or vice

18   versa.

19              Here at least as to the '147 the

20   allegation is -- I understand it's a little

21   different.  In paragraphs 142 and 143, isn't

22   it said to be the case that a prior entity,

23   PPL, had knowledge of the '147, and not just

24   had knowledge of it, but that that patent was

1    specifically identified to personnel who

2    worked for PPL, and then PPL spun off a

3    portion of that business to form Talen.  In

4    other words, literally the people that were

5    PPL now become Talen.

6             So in that sense, assuming it's

7    plausible to infer that the same people or

8    some of the same people that had the '147

9    specifically identified to them when they

10    worked for PPL now worked at Talen, why isn't

11    that good enough at least to demonstrate

12    knowledge at least as to the '147 for Talen?

13             MR. FAREED:  Sure, Your Honor.

14    So you are correct that we need to treat the

15    two patents separately because the allegations

16    are different.  So turning to the '147 patent,

17    at the time, Your Honor, I'll note that at the

18    time they had pled to notify the predecessor

19    entity of the '147 patent; first of all, that

20    suggests that they identified it, but they

21    never identified that any ongoing activity as

22    infringing or they certainly didn't plead that

23    the predecessor entity knew or should have

24    known that any of its ongoing conduct amounted

1    to infringement.  That is something that's

2    needed under the pleading requirements under

3    Iqbal and Twombly, and certainly post *Halo*.

4                    THE COURT:  So maybe less about

5    knowledge of the patent as to the '147; more

6    about you're saying lack of sufficiency of

7    allegation as to knowledge of infringement of

8    that?

9                    MR. FAREED:  Certainly lack of

10   sufficiency, but even on the knowledge of the

11   patent, Your Honor, I will note that the

12   *BlackBerry v. Nokia* order from Judge Andrews

13   and even Your Honor's recent order in the

14   *Dynamic Data v. Google* cases, Your Honor, it's

15   not at all the case that knowledge can be

16   imputed from one entity to the other.

17                   So even though they say that PPL

18   spun off a portion of its business to form

19   Talen, anything beyond that would be an

20   interest they did not expressly mention in the

21   complaint.

22                   For example, the things you

23   mentioned, Your Honor, that people who were

24   notified at PPL or subsequently joined Talen.

1    That's not pled in the complaint.  And that

2    certainly would take them a step beyond where

3    they are right now, but that's not where the

4    record stands at the moment.

5              THE COURT:  Okay.  Let me let

6    you continue.

7              MR. FAREED:  Sure, Your Honor.

8    So I'll pick up on the '114, Your Honor; that

9    is a patent that issued just about a week

10    before the complaint was filed.  In that

11    interim period, they never notified Talen,

12    they certainly don't plead that they notified

13    of Talen of that patent.  So there's certainly

14    no allegation, although it could be alleged

15    that Talen was on notice of the '114 patent,

16    let alone that Talen knew or should have known

17    about the infringement of that patent.

18              So with respect to that specific

19    patent, Your Honor, any notice has to precede

20    any actionable step that they could have

21    taken, which they certainly have not pled

22    here.

23              I'll turn to the '147 patent,

24    Your Honor, which we already discussed a

1    little bit.  None of the allegations here are

2    specific to Talen, that the time that they

3    pled that the notice was given to the

4    predecessor entity in 2013, Talen was not even

5    in existence.  And that's clear from paragraph

6    143, because they say in 2015, that's when

7    Talen came into business or came into

8    existence.  So at the time notice was given,

9    the specific defendant entity that they're

10   suing here was not in existence.

11            With respect to, Your Honor, the

12   notice of infringement or certainly even any

13   knowledge that they knew or should have known,

14   that's also for the '147 allegation for the

15   same reasons, Your Honor.  There's inadequate

16   pleadings with respect to willfulness, willful

17   infringement with respect to the Talen

18   entities, any of the Talen entities that are

19   in suit here.

20            THE COURT:  Okay, fair enough.

21   Mr. Fareed, I want make sure to give

22   plaintiffs' counsel enough time to respond to

23   these issues, so let me turn to plaintiffs'

24   counsel now.  And if there is time for

1    rebuttal before we end, we'll go back to

2    defendants' counsel.

3              Who is going to speak on

4    plaintiffs' side to these motions?

5              MR. NEMUNAITIS:  Justin

6    Nemunaitis, Your Honor.

7              THE COURT:  Okay, Mr.

8    Nemunaitis.  Again, it may be helpful if you

9    kind of take them in the order that they were

10   addressed, but I'm happy to let you start and

11   I'll jump in with questions.

12             MR. NEMUNAITIS:  Yes, Your

13   Honor.  So first with the standing issue --

14   and again, this is just standing as to one of

15   the parties, not standing for the whole case.

16   The backstory here is that MES is a wholly

17   owned subsidiary of Midwest.  MES obtained an

18   exclusive license to the patents from EERC.

19   Later on, Midwest obtained an assignment of

20   the patents from EERC, and the full

21   documentation of that record is actually

22   fairly complicated, it's gone through several

23   amendments, and it's confidential really to go

24   into much more than what I've just said here,

1    but that's the backstory.

2              So when we were looking to file

3    the case, the law on this is in somewhat of a

4    gray area.  But generally, if a party has

5    really anything more than a non-exclusive

6    license, they have some kind of substantial

7    right in the patent, then they are supposed to

8    be clear as a plaintiff in the case.  So what

9    we attempted to do was name all the proper

10   plaintiffs.

11             THE COURT:  Mr. Nemunaitis, I

12   was going to say, just from reading your

13   briefing, it sounded like you were almost

14   saying without saying, look, as to MES,

15   there's the issue with the one patent, just

16   give us a chance to, you know, we've got the

17   facts to make the record we think we can make

18   about any connection to these patents, just

19   give us a chance to replead it.  It sounds

20   like it needs to be repleaded anyway as to the

21   '147, right, with MES, so isn't that kind of

22   what you're asking for and saying?

23             MR. NEMUNAITIS:  I think that's

24   a fair assessment, Your Honor.  I appreciate

1    that.  Yes, we would ask for that.

2             THE COURT:  All right.  Why

3    don't we have you address the other issues

4    that were discussed.  And I wouldn't -- I

5    mean, again, it's probably not a surprise, my

6    view is, look, ultimately, the counts here are

7    the place where the accused infringer looks to

8    know as to what part of the patent act that's

9    being alleged and violated.  And if those

10    counts don't assert in some way that a certain

11    group of infringers induced infringement, then

12    the complaint doesn't say they induced

13    infringement regardless of what's in the rest

14    of it.

15             So as to that issue, just like

16    with the direct infringement issue on the

17    other set of defendants, I don't think it's

18    worth the time covering that too much,

19    although I'm happy to hear what you had to

20    say.  I'd be interested, though, in your

21    responses to the other issues that were raised

22    by your colleagues on the other side.

23            MR. NEMUNAITIS:  Yes, thank you,

24    Your Honor.  I direct Your Honor to

```
1    paragraph -- well, first I would direct Your

2    Honor to the first sentence of each count

3    which incorporates by reference any other

4    above statements in the complaint.  Then I

5    would direct Your Honor to paragraph 150, "To

6    the extent an accused co-parent is owned by a

7    subsidiary company, its parent, one or more of

8    the named co-parent also indirectly infringes

9    by inducing the subsidiary to perform the

10   steps of the patented methods."

11              You know, certainly important to

12   us to have the direct infringement allegations

13   in the case.  If Your Honor would conclude

14   that -- I'm sorry, I also meant to mention

15   paragraph 150 which goes on to describe parent

16   companies exercising control.  If Your Honor

17   believes that that form of the pleading is

18   insufficient in this case, this is another

19   area we would request an opportunity to amend.

20              THE COURT:  Understood.

21              MR. NEMUNAITIS:  I would also

22   mention, again, to the extent Your Honor is

23   inclined to dismiss any aspect of the

24   complaint, we would request that.
```

1              THE COURT:  No, I appreciate

2    that.  Do you want to speak to the other

3    issues that were raised, particularly with

4    regard to willful infringement, for example,

5    or others that we haven't covered?

6              MR. NEMUNAITIS:  Yes, Your

7    Honor.

8              I believe the remaining issue

9    is, whether it's as willful or some aspect of

10   indirect, the knowledge of Talen.  There, the

11   reason we identify cases where -- again, the

12   pleading standards are fairly relaxed given

13   the lack of knowledge that a plaintiff can

14   have before filing suit.

15             But I would say by alleging that

16   Midwest met with representatives of PPL and

17   told them we've got this '147 patent, it

18   covers this method, and informed them about

19   this patent family, that that provides a

20   plausible inference that some of those same

21   people remained at Talen, you know, very

22   likely that some of the same people running

23   the plant would remain at Talen regardless of

24   the name change, that would provide a

1    sufficient inference of preceding knowledge of

2    the patent and the allegation of infringement.

3                    THE COURT:  And on the -- I

4    guess two questions.  On the '114, if it's

5    alleged back in 2013 that someone at PPL,

6    maybe it can be inferred, goes on to Talen,

7    hears about the parent patent of the '114, but

8    then it's eight days before the case is filed;

9    I guess seven years later that patent gets

10   issued, is it really plausible to believe that

11   whatever was said to those former PPL folks

12   back in 2013 about the parent of the '114

13   patent would have exhibited a log in their

14   mind, such that just a few days before this

15   case is filed, they figure out that the '114

16   issues?

17                    MR. NEMUNAITIS:  Well, at the

18   end of the day we're talking about eight days

19   worth of damages here.

20                    THE COURT:  Right.  I guess it's

21   not the most critical of damages periods.  But

22   in any event, I mean.  You know what I'm

23   asking.

24                    MR. NEMUNAITIS:  Yes, Your

1    Honor.  I'm also mindful that I don't want to

2    be setting a bad precedent.  This is kind of

3    an unusual situation because there are just

4    eight days.  But there are cases where patent

5    owners plead that because of one application

6    that's pending, a party cited an application

7    or something related to one of the patents, so

8    therefore, that provides an inference at least

9    at the pleading stage that there was knowledge

10   of this.

11              I think here we've established,

12   you know, that there is an inference that they

13   were aware of this patent family of the parent

14   patent to this patent, so at least at the

15   pleading stage, there's a plausible chance

16   that they would have been monitoring or

17   checking to see what was happening with these

18   patents.

19              THE COURT:  Is there any other

20   connection between -- I think your point is

21   sometimes if there's a good amount of

22   connection between, say, a patentee and a

23   defendant as to patent A, and then later,

24   patent B, which is a relative of patent A,

1   issues, maybe it could be said that that

2   defendant also would well have been aware of

3   the portfolio and would have known of

4   patentees' issuance.  In terms of the

5   connection between Midwest and PPL/Talon, is

6   the depth of that connection only what's

7   asserted in paragraphs 142 and 143, or is

8   there more in the complaint?

9                    MR. NEMUNAITIS:  In the

10  complaint as written, I believe that's it, but

11  I would also add, I believe we've alleged that

12  Talen works with Chem-Mod and the other

13  refined coal companies.  So we've alleged that

14  Chem-Mod attends conferences, would have

15  learned about the patent, so that is another

16  set of interactions where people from Talen

17  are interacting with people that should have

18  had knowledge of the patent, and that this is

19  a patented process.

20                   THE COURT:  Then last question,

21  Mr. Nemunaitis, and this kind of relates to

22  willful infringement and maybe induced

23  infringement, and it may be a little out of

24  left field.  But there's rule in our district,

1      I may have even utilized it, that says when it

2      comes to induced infringement, if a plaintiff

3      hasn't sufficiently pleaded that as of the

4      filing of the complaint there was pre-suit

5      knowledge of the patent, the complaint can

6      nevertheless stand as to a post-suit indirect

7      infringement claim.

8                    Now, there's also law I think

9      that I've subscribed to that says as to

10     willful infringement, you can't read the Fed

11     Circuit's cases that way, that is that if as

12     of the filing of the complaint the plaintiff

13     can't demonstrate that the defendant knew of

14     the patent prior to the suit's filing, they've

15     got to claim in that complaint for willful

16     infringement.

17                   I think the basic premise there

18     is that literally, as of the day that

19     complaint has filed, if you the plaintiff

20     can't prove that prior to the moment that the

21     complaint was filed that that defendant even

22     knew of the patent, how can you allege

23     plausibly what is going to happen in the

24     future because it hasn't happened yet?

```
 1                    So that's all to say with regard
 2       to this pre-suit/post-suit issue, is there any
 3       reason why indirect infringement claims should
 4       be any different?  In other words, does it
 5       make sense that if a plaintiff can't prove or
 6       even plausibly allege that the defendant even
 7       knew of the patent before the date the
 8       complaint was filed, why should the plaintiff
 9       be able to have that complaint stand, without
10       there being a further amendment or anything,
11       as to post-suit indirect infringement?  How
12       could it be plausibly alleged that the
13       defendant committed indirect infringement if
14       they didn't even know of the patent until the
15       case was filed?
16                    MR. NEMUNAITIS:  I believe the
17       answer is that once the claim is on file,
18       certainly they have the option to stop
19       infringing, and if they don't, then that would
20       be indirect infringement occurring.
21                    You know, I'd also mentioned a
22       couple of cases.  Here's my understanding of
23       the case law.  There is the IOENGINE case
24       which was cited in the briefing, and that was
```

```
 1      Judge Bryson sitting in Delaware by
 2      designation where he looked at this issue and
 3      he provided a pretty good walk through a
 4      number of different cases addressing it.  And
 5      he concluded that to plead willful
 6      infringement, a patentee only needs to
 7      allege -- I'm sorry.  He concluded that the
 8      filing of the complaint provides sufficient
 9      knowledge of the patent and the infringement
10      allegations to support post-suit willfulness.
11      And so I don't think there's any reason to
12      treat indirect infringement more harshly than
13      that.
14                  THE COURT:  Isn't it strange, I
15      mean, is there any other context in which we
16      say I'm going to file this complaint, and I'm
17      going to have plausibly alleged what will
18      happen at some point in the future that
19      doesn't yet exist when I file it?  Isn't that
20      kind of a strange thing?
21                  MR. NEMUNAITIS:  I suppose it
22      is, but the remedies in patent cases are also
23      kind of strange in that you're asking for an
24      ongoing royalty or something like that when
```

1    you don't necessarily know what's going to

2    happen after the case.

3                    THE COURT:  No, I appreciate

4    that.

5                    Okay, well, listen, we're close

6    to time here.  Mr. Nemunaitis, if there's not

7    anything further you want to add, I want to

8    give your colleague the chance for very brief

9    rebuttal.  Anything else you wish to add that

10   you want make sure you want to get in?

11                   MR. NEMUNAITIS:  The only other

12   comment I would add on this last issue I want

13   to raise is, my understanding of the split of

14   the cases is, there's the Judge Bryson

15   approach which basically says, you know, you

16   filed the complaint, you're okay for post-suit

17   willfulness and indirect infringement.

18                   The other approach is the Court

19   dismisses that original complaint, you then

20   refile the complaint and say, well, you had

21   notice as of the time of the original

22   complaint.  So you still get the post-suit

23   willfulness and indirect infringement from the

24   filing of the original complaint.

1              I believe that is basically the

2    split in authority and the way it has worked

3    out in the cases.  So I don't believe that I

4    can argue that there needs to be a big

5    substantive difference in what would happen

6    there.

7              THE COURT:  Got it.  Thank you.

8              All right, I'll go back to

9    Mr. Kubehl and Mr. Fareed to add anything by

10   way of brief rebuttal before we end by about

11   3:00.  Mr. Kubehl, you want to go first?

12             MR. KUBEHL:  Sure.  Not much to

13   add, just on the inducement issue.  You made

14   the point about what's in the count?  What is

15   in the count, there are specific allegations

16   of indirect infringement against other

17   entities but not the coal plant defendants.

18   Then when you get to paragraphs 150 and 151,

19   those are insufficient on their face.  We've

20   got some of the entities that are accused here

21   from a corporate structure standpoint, are

22   several rungs removed from an operating coal

23   plant.  And, you know, it sounds like Your

24   Honor is going to grant them leave to amend,

1    and when they do, obviously they'll have to

2    have a Rule 11 basis to allege that the

3    particular corporate entity that they're

4    pointing at has done something, done specific

5    inducing acts with respect to a particular

6    alleged direct infringer, and we certainly

7    don't see that in 150 and 151.

8                    THE COURT:  Fair enough.  And

9    Mr. Fareed, is there more you want to add with

10   regard to the knowledge, willful infringement

11   related issues?

12                   MR. FAREED:  Yes, Your Honor.

13   Very briefly, Your Honor.  As I was hearing

14   Mr. Nemunaitis address the Court's issues, I

15   heard the comment about Chem-Mod, and any

16   knowledge from Chem-Mod filtering its way to

17   any of the Talen entities.  That, Your Honor,

18   is certainly more out of the realm of the

19   plausibility than what's being seen in

20   paragraphs 133 to 134, and certainly not

21   within the realm of the case law that we have

22   briefed.

23                   If that was possible and allowed

24   leave knowledge from third parties without

1    necessarily identifying specific instances of

2    that occurring, Your Honor, we would think

3    that the *BlackBerry* case, *BlackBerry v. Nokia*

4    would have come out differently, that was

5    Judge Andrews.  And certainly with respect to

6    the '147 patent, which we addressed before, if

7    it was allowed to just impute knowledge from

8    one entity to the other, we would think that

9    the decision in the *Dynamic Data v. Google*

10   case would have come out differently.

11   Certainly that's not the law that you can

12   impute knowledge from one party to the other

13   based on the pleadings that we have in front

14   of us.

15            And unless Your Honor has any

16   further questions, that's all we have for

17   willful infringement and knowledge.

18            THE COURT:  I guess just on that

19   last point, I understand that it can't be said

20   you can simply impute knowledge from one

21   corporate entity to another because they are

22   related in some way.  But is there something

23   you're suggesting about the nature of the

24   allegation between how PPL became Talen that

1   you think doesn't sufficiently or plausibly

2   assert that the same people who might have

3   known at least one of the patents at issue end

4   up working for the entity that you're now

5   representing?

6                MR. FAREED:  What I would say,

7   Your Honor, on that is with respect to

8   paragraph 143, which is another paragraph you

9   brought up early on, it says, and I'm reading

10   it, "In 2015, PPL spun off a portion of its

11   business to form Talen," and I emphasize

12   portion.  Because right now, based on the

13   pleadings, it's not clear who they spoke to at

14   PP&L, if those people eventually made their

15   way to Talen.

16                If they're allowed leave to

17   amend and they have a basis to plead that,

18   we'll see that in the amended pleadings.

19                But at the moment, it's unclear

20   whether the portion that spun off to form

21   Talen was the same portion that they were

22   interfacing with in 2013, years before they

23   spun off, a couple of years before the

24   spin-off happened.  So that's something, what

 1     I would say it's unclear from the pleading

 2     itself.  And if Your Honor is allowing the

 3     plaintiffs leave to amend, that's something

 4     certainly we'll be looking to see that's

 5     sufficiently pled in an amended pleading.

 6                 THE COURT:  Okay.  I think I see

 7     your argument there.  Thank you, Mr. Fareed.

 8                 All right, Counsel, thank you

 9     for your arguments; I appreciate them.  As I

10     said, I have another proceeding starting just

11     after 3:00 so I'll need to go.  I know we do

12     have a case management conference scheduled

13     telephonically for the 15th.  My goal is going

14     to be to resolve some or all of these motions

15     prior to then.  It's my goal.  It's possible I

16     might not get there.  I'm hoping to get there.

17     It will be close, at least.

18                 In a world in which I do resolve

19     them prior to the 15th, I'll certainly be

20     talking to the parties on the 15th about what

21     the resolution of the motions in terms of what

22     stands as to what parties should mean about

23     how and whether we go forward with our case

24     schedule.  For now I'll just have to say that

1    that discussion will just be informed by what

2    happens with the motions.

3              If we get very close to that

4    date and I haven't yet issued those decisions,

5    I may communicate to the parties about trying

6    to coordinate those things in some further

7    way.  But for now we're going to go forward

8    with we're having our case management on the

9    15th and the parties are required to submit to

10   me proposed scheduled materials prior to then,

11   as we set out in my order.

12             Okay, thanks again everyone for

13   your time today.  I wish everybody good health

14   and otherwise a good week, and I look forward

15   to talking to you again in the future.

16             (Hearing adjourned at 2:59 p.m.)

17

18

19

20

21

22

23

24

1    State of Delaware)
                     )
2    New Castle County)

3

4                   CERTIFICATE OF REPORTER

5

6            I, Jennifer M. Guy, Registered

7    Professional Reporter and Notary Public in the

8    State of Delaware, do hereby certify that the

9    foregoing record, Pages 1 to 107 inclusive, is

10   a true and accurate record of the

11   above-captioned proceedings held on the 27th

12   day of May, 2020, in Wilmington.

13        IN WITNESS WHEREOF, this 2nd day of June

14   2020, at Wilmington.

15

16

17

18               /S/  Jennifer M Guy, RPR
                 Jennifer M. Guy, RPR
19

20

21

22

23

24

**'**

**'114** [15] - 31:14, 31:22, 38:20, 52:12, 53:3, 61:24, 83:23, 84:1, 84:6, 87:8, 87:15, 94:4, 94:7, 94:12, 94:15

**'147** [13] - 84:11, 84:19, 84:23, 85:8, 85:12, 85:16, 85:19, 86:5, 87:23, 88:14, 90:21, 93:17, 103:6

**/**

**/S** [1] - 107:18

**1**

**1** [2] - 24:5, 107:9
**10** [1] - 31:21, 38:16
**107** [1] - 107:9
**11** [2] - 75:14, 102:2
**133** [1] - 102:20
**134** [1] - 102:20
**138** [1] - 84:4
**142** [2] - 84:21, 96:7
**143** [4] - 84:21, 88:6, 96:7, 104:8
**144** [1] - 84:4
**145** [1] - 63:19
**147** [1] - 63:19
**148** [1] - 27:21
**15** [4] - 6:4, 10:9, 11:11, 38:21
**150** [7] - 79:2, 79:6, 79:16, 92:5, 92:15, 101:18, 102:7
**151** [4] - 79:2, 79:18, 101:18, 102:7
**152** [1] - 27:12
**158** [3] - 14:19, 14:23, 22:13
**158(g** [2] - 22:8, 28:8
**15th** [4] - 105:13, 105:19, 105:20, 106:9
**16** [1] - 38:21
**180** [3] - 75:19, 76:9, 77:9

**19** [1] - 73:9
**19-1334-RGA-CJB** [2] - 1:4, 4:5
**196** [3] - 43:5, 52:4, 52:8
**198** [3] - 43:5, 52:4, 53:1
**1:00** [1] - 1:10

**2**

**2** [3] - 24:5, 38:20, 62:1
**20** [2] - 10:8, 62:15
**201** [1] - 78:15
**2013** [4] - 88:4, 94:5, 94:12, 104:22
**2015** [2] - 88:6, 104:10
**2020** [4] - 1:10, 75:14, 107:12, 107:14
**203** [1] - 75:1
**224** [1] - 78:15
**27** [1] - 1:10
**271(b** [3] - 13:6, 26:24, 39:19
**271(b)** [2] - 12:23, 18:19
**27th** [1] - 107:11
**2:59** [1] - 106:16
**2nd** [1] - 107:13

**3**

**3** [1] - 38:21
**35** [2] - 10:6, 39:19
**3:00** [4] - 10:13, 10:21, 101:11, 105:11

**4**

**4** [2] - 31:21, 38:16
**40** [2] - 54:14, 73:8
**45** [4] - 22:12, 22:16, 23:9, 72:23
**47** [1] - 72:23
**49** [2] - 72:24, 82:18

**5**

**5** [1] - 10:9

**6**

**61** [3] - 31:9, 39:5,

39:6

**7**

**76** [1] - 14:9

**8**

**8** [3] - 31:22, 38:16, 65:16
**82** [4] - 76:24, 77:3, 77:13, 77:24
**87** [1] - 82:19

**9**

**9** [2] - 15:23, 65:16

**A**

**Aaron** [1] - 7:20
**aberrant** [1] - 30:16
**ability** [1] - 50:7
**able** [3] - 34:2, 59:6, 98:9
**above-captioned** [1] - 107:11
**absent** [1] - 66:14
**absolutely** [8] - 15:15, 17:22, 17:23, 42:24, 43:10, 59:14, 62:19, 69:9
**accomplish** [1] - 66:5
**accounting** [1] - 47:3
**accounts** [1] - 83:10
**accurate** [2] - 4:14, 107:10
**accuse** [1] - 58:14
**accused** [15] - 12:14, 37:9, 37:24, 40:9, 48:16, 52:19, 58:12, 58:19, 62:11, 62:20, 63:5, 80:20, 91:7, 92:6, 101:20
**accuses** [1] - 11:23
**accusing** [1] - 55:1
**achieve** [1] - 54:14
**acknowledge** [1] - 60:22
**acknowledged** [1] - 77:17
**acknowledgment** [1] - 45:9
**acknowledgment**

**s** [2] - 45:15, 45:19
**ACS** [2] - 47:12, 47:14
**act** [8] - 16:3, 16:10, 16:12, 16:19, 20:17, 44:24, 91:8
**action** [3] - 19:19, 43:14, 48:22
**Action** [2] - 1:4, 4:4
**actionable** [1] - 87:20
**actions** [2] - 45:22, 53:4
**activated** [34] - 12:6, 12:7, 12:16, 14:16, 14:24, 15:5, 15:7, 15:12, 15:17, 17:19, 17:21, 19:18, 19:21, 22:14, 23:12, 25:4, 25:14, 26:6, 26:15, 26:16, 27:19, 28:20, 29:9, 36:11, 39:10, 40:3, 57:19, 64:5, 64:8, 66:16, 67:23, 68:8, 71:15, 71:23
**active** [3] - 18:9, 18:19, 19:19
**actively** [1] - 12:24
**activities** [2] - 11:15, 68:2
**activity** [1] - 85:21
**acts** [6] - 13:7, 14:20, 43:4, 68:23, 83:13, 102:5
**actual** [6] - 17:13, 40:5, 41:12, 53:3, 58:17, 62:20
**add** [12] - 22:3, 27:15, 54:12, 65:8, 69:17, 96:11, 100:7, 100:9, 100:12, 101:9, 101:13, 102:9
**added** [2] - 31:3, 32:1
**adding** [3] - 31:8, 36:13, 69:7
**addition** [2] - 6:19, 43:6
**additional** [1] - 73:1

**additive** [2] - 36:13, 36:17
**additives** [2] - 35:11, 36:9
**address** [15] - 9:22, 9:24, 11:3, 11:4, 30:2, 69:20, 72:15, 72:22, 78:10, 80:4, 82:8, 82:10, 82:14, 91:3, 102:14
**addressed** [2] - 89:10, 103:6
**addresses** [2] - 36:7, 79:7, 83:20
**addressing** [3] - 58:7, 72:14, 99:4
**adequate** [1] - 41:20
**adjourned** [1] - 106:16
**adjust** [1] - 58:2
**administrative** [2] - 79:24, 80:12
**advance** [2] - 28:12, 52:9
**advancing** [2] - 15:3, 19:24
**advantage** [1] - 48:7
**adverted** [1] - 19:11
**advertised** [1] - 47:6
**AEP** [2] - 3:22, 7:21
**affirmatively** [1] - 31:5
**afternoon** [7] - 4:2, 4:19, 5:15, 6:2, 29:16, 72:18, 82:16
**afterwards** [1] - 18:23
**agree** [3] - 15:8, 34:5, 48:19
**agreed** [1] - 71:19
**agreement** [3] - 25:2, 57:3, 68:3
**agreements** [2] - 80:2, 80:13
**ahead** [2] - 23:20, 67:13
**AJG** [1] - 53:2
**Akamai** [2] - 44:7, 57:3
**al** [2] - 1:6, 4:4
**allegation** [27] - 15:3, 15:15, 22:8, 22:13, 24:4, 27:10, 27:21, 28:4, 30:20,

34:15, 40:23, 41:6, 70:2, 71:10, 71:21, 73:14, 73:16, 77:24, 79:21, 81:5, 82:5, 84:20, 86:7, 87:14, 88:14, 94:2, 103:24
**allegations** [39] - 14:3, 24:12, 27:23, 28:13, 30:6, 34:10, 34:18, 39:24, 40:10, 40:16, 40:17, 40:21, 41:10, 41:18, 48:20, 56:20, 63:12, 63:19, 66:14, 70:16, 71:17, 72:1, 73:12, 74:1, 77:8, 78:14, 78:17, 78:19, 78:22, 79:3, 80:23, 82:1, 82:3, 83:21, 85:15, 88:1, 92:12, 99:10, 101:15
**allege** [16] - 16:18, 17:18, 26:22, 26:23, 30:11, 31:4, 49:6, 49:15, 49:18, 50:18, 55:15, 71:24, 97:22, 98:6, 99:7, 102:2
**alleged** [39] - 11:14, 13:14, 14:1, 17:14, 18:8, 18:15, 23:8, 24:6, 29:8, 35:14, 40:2, 42:17, 44:4, 50:11, 54:2, 54:24, 56:15, 57:4, 59:23, 61:7, 64:3, 64:18, 67:9, 68:5, 69:5, 80:18, 81:15, 81:16, 81:17, 83:24, 84:8, 87:14, 91:9, 94:5, 96:11, 96:13, 98:12, 99:17, 102:6
**allegedly** [4] - 12:2, 12:5, 14:12, 71:14
**alleges** [8] - 12:18, 27:5, 28:2, 31:2, 36:2, 55:11, 71:11, 76:18

**alleging** [5] - 30:21, 31:24, 73:22, 75:20, 93:15
**allowed** [3] - 102:23, 103:7, 104:16
**allowing** [1] - 105:2
**alluded** [1] - 24:14
**almost** [1] - 90:13
**alone** [2] - 41:13, 87:16
**alternative** [1] - 56:21
**amend** [9] - 59:6, 59:8, 59:9, 59:17, 73:24, 92:19, 101:24, 104:17, 105:3
**amended** [2] - 104:18, 105:5
**amendment** [3] - 70:14, 70:19, 98:10
**amendments** [1] - 89:23
**amount** [6] - 22:23, 32:15, 52:24, 53:12, 71:22, 95:21
**amounted** [1] - 85:24
**amounting** [1] - 83:4
**ANDA** [1] - 18:1
**ANDREW** [1] - 3:20
**Andrews** [2] - 86:12, 103:5
**answer** [6] - 21:9, 32:17, 33:16, 60:11, 60:15, 98:17
**answering** [4] - 8:8, 8:9, 15:24, 56:13
**anticipated** [1] - 9:5
**anyway** [1] - 90:20
**apart** [2] - 38:8, 83:22
**apparatus** [1] - 21:17
**APPEARANCES** [1] - 1:15, 2:1, 3:1
**applicable** [1] - 46:1
**application** [2] - 95:5, 95:6
**applies** [1] - 53:20
**apply** [7] - 18:21, 19:4, 19:5, 19:12, 66:24, 67:11,

67:13
**appreciate** [4] - 90:24, 93:1, 100:3, 105:9
**approach** [2] - 100:15, 100:18
**approached** [1] - 84:5
**appropriate** [2] - 70:6, 72:4
**area** [2] - 90:4, 92:19
**argue** [3] - 61:17, 65:15, 101:4
**argued** [1] - 45:11
**arguing** [9] - 7:5, 18:17, 20:8, 48:14, 50:15, 50:17, 50:21, 50:23, 66:8
**argument** [20] - 4:6, 4:10, 9:14, 9:21, 10:9, 15:22, 32:21, 33:9, 34:1, 36:20, 50:9, 50:10, 59:20, 66:17, 66:19, 67:20, 70:10, 81:4, 83:19, 105:7
**arguments** [4] - 9:6, 29:22, 78:5, 105:9
**ARPS** [1] - 2:2
**Arps** [1] - 5:16
**ARSHT** [2] - 2:7, 3:17
**art** [2] - 31:12, 38:23
**Arthur** [1] - 11:9
**articles** [1] - 63:5
**aspect** [6] - 11:16, 23:2, 34:1, 71:5, 92:23, 93:9
**aspects** [2] - 9:22, 18:3
**assert** [2] - 91:10, 104:2
**asserted** [5] - 15:10, 31:14, 39:2, 81:20, 96:7
**asserting** [4] - 40:13, 49:14, 49:17, 63:11
**assertion** [1] - 58:16
**assertions** [1] - 56:9
**assessment** [1] - 90:24

**assignee** [4] - 75:22, 76:12, 76:14, 77:12
**assignment** [2] - 75:5, 89:19
**associate** [1] - 5:21
**associated** [2] - 73:9, 78:23
**assume** [2] - 24:8, 42:17
**assumed** [2] - 18:13, 67:2
**assuming** [2] - 73:5, 85:6
**attached** [3] - 31:13, 54:6, 75:4
**attachments** [1] - 61:14
**attack** [2] - 9:13, 72:17
**attempt** [3] - 26:22, 79:4, 79:18
**attempted** [2] - 62:18, 90:9
**attended** [1] - 41:7
**attends** [1] - 96:14
**attention** [1] - 17:8
**attributed** [1] - 24:18
**authority** [3] - 17:6, 66:21, 101:2
**aware** [2] - 95:13, 96:2

# B

**backend** [1] - 39:9
**background** [2] - 43:2, 55:16
**backstory** [2] - 89:16, 90:1
**bad** [2] - 37:13, 95:2
**BAKER** [3] - 2:18, 3:5, 3:14
**Baker** [4] - 6:14, 7:4, 7:13, 72:19
**BARLOW** [1] - 3:20
**Barlow** [1] - 7:20
**base** [3] - 23:14, 31:20, 81:8
**based** [8] - 26:23, 34:12, 34:18, 65:23, 67:20, 74:2, 103:13, 104:12
**basic** [4] - 44:1, 45:7, 45:24, 97:17
**basis** [4] - 73:17,

75:19, 102:2, 104:17
**became** [2] - 70:1, 103:24
**become** [1] - 85:5
**BEFORE** [1] - 1:13
**begged** [1] - 80:21
**begin** [1] - 4:18
**beginning** [5] - 5:13, 6:1, 6:9, 6:23, 33:20
**behalf** [6] - 5:17, 6:4, 7:21, 11:13, 42:2, 82:13
**belabor** [1] - 30:1
**believes** [1] - 92:17
**belongs** [1] - 78:3
**belt** [5] - 34:20, 42:20, 54:5, 54:8, 62:13
**belts** [1] - 32:23
**best** [5] - 19:22, 38:15, 51:22, 76:10
**better** [2] - 33:16, 37:14
**between** [12] - 9:7, 10:5, 15:9, 32:8, 33:15, 41:3, 57:5, 74:19, 95:20, 95:22, 96:5, 103:24
**beyond** [4] - 30:22, 39:4, 86:19, 87:2
**BIDDLE** [1] - 3:2
**big** [1] - 101:4
**Bill** [15] - 34:22, 34:24, 37:5, 37:6, 37:11, 37:15, 37:21, 37:22, 38:12, 46:3, 47:11, 59:24, 61:19, 63:1, 70:6, 84:8, 87:14, 88:1
**bit** [2] - 38:19, 88:1
**black** [3] - 43:20, 43:24
**BlackBerry** [3] - 86:12, 103:3
**blade** [1] - 21:23
**BLOCK** [1] - 3:20
**Block** [1] - 7:21
**block** [3] - 45:9, 45:14, 45:19
**boiler** [1] - 29:1, 42:21, 54:14, 55:22
**bottom** [1] - 81:4
**BOTTS** [3] - 2:18, 3:5, 3:14
**Botts** [4] - 6:14,

7:4, 7:13, 72:20
**bound** [1] - 66:3
**Brandon** [2] - 3:7, 6:20
**break** [2] - 21:23, 83:22
**BRIAN** [2] - 1:20, 2:7
**Brian** [2] - 4:23, 6:3
**brief** [13] - 6:18, 8:8, 8:9, 13:12, 15:24, 56:13, 65:1, 65:8, 65:16, 69:20, 70:13, 100:8, 101:10
**briefed** [2] - 82:18, 102:22
**briefing** [13] - 8:16, 15:9, 29:22, 30:24, 32:7, 33:4, 46:2, 72:9, 75:4, 75:9, 75:18, 90:13, 98:24
**briefly** [9] - 30:23, 40:15, 40:21, 41:15, 63:21, 69:17, 70:23, 73:3, 102:13
**briefs** [9] - 5:10, 7:11, 8:11, 11:5, 13:18, 17:6, 56:8, 59:21, 82:19
**bring** [1] - 19:21
**bringing** [1] - 26:16
**broad** [1] - 53:20
**bromide** [1] - 27:15
**brominated** [1] - 19:23
**bromine** [59] - 12:1, 12:3, 12:15, 14:6, 14:14, 14:15, 15:3, 15:4, 15:11, 16:9, 16:11, 16:24, 17:21, 20:1, 20:12, 20:16, 20:18, 24:24, 25:24, 26:2, 27:15, 28:21, 28:23, 29:2, 29:5, 31:1, 31:3, 31:6, 31:7, 31:11, 32:1, 32:2, 36:9, 36:11, 38:13, 38:23, 49:1, 49:8, 49:10, 49:19, 50:4, 50:6, 51:18, 53:12, 53:23, 54:1, 54:11, 55:3, 55:7, 57:18, 59:22,

60:5, 64:4, 64:7, 67:22, 69:7, 69:8, 71:22
**bromine-enriched** [1] - 12:1
**bromine-induced** [6] - 16:9, 16:24, 20:16, 55:3, 59:22, 60:5
**bromine-infused** [4] - 20:12, 20:18, 38:13, 51:18
**brought** [3] - 4:7, 17:8, 104:9
**Bryson** [2] - 99:1, 100:14
**bubble** [1] - 21:23
**bucket** [1] - 9:8
**buckets** [1] - 58:20
**bulk** [2] - 80:1, 80:13
**bunch** [2] - 56:23, 80:8
**burden** [1] - 76:21
**BURKE** [1] - 1:13
**burn** [5] - 11:21, 12:1, 12:13, 22:22, 23:6
**burned** [1] - 32:18
**burner** [1] - 62:16
**burning** [7] - 15:11, 31:7, 31:10, 36:10, 57:8, 57:10, 78:13
**business** [5] - 42:19, 85:3, 86:18, 88:7, 104:11
**BY** [13] - 1:17, 1:20, 2:2, 2:7, 2:10, 2:15, 2:18, 3:3, 3:5, 3:11, 3:14, 3:18, 3:20

**C**

**cabined** [1] - 72:7
**CALDWELL** [2] - 1:19, 1:20
**Caldwell** [2] - 4:22, 4:24
**cannot** [3] - 14:24, 66:19, 70:19
**captioned** [1] - 107:11
**carbon** [68] - 12:6, 12:7, 12:16, 14:16, 15:1, 15:5, 15:7, 15:12, 15:18, 16:14,

16:15, 16:19, 17:19, 17:21, 19:18, 19:21, 22:14, 23:12, 25:4, 25:14, 26:6, 26:15, 26:17, 27:7, 27:19, 28:10, 28:20, 29:10, 31:1, 31:4, 31:8, 31:11, 31:16, 31:17, 31:20, 32:19, 36:11, 38:24, 39:10, 40:4, 41:18, 41:20, 49:1, 49:7, 49:16, 49:21, 50:1, 50:2, 50:5, 50:7, 50:12, 51:19, 51:23, 52:21, 53:15, 53:17, 54:6, 55:8, 55:23, 57:19, 64:5, 64:8, 66:16, 67:24, 68:8, 71:15, 71:18, 71:23
**carried** [1] - 57:7
**case** [57] - 13:4, 13:13, 17:8, 17:9, 18:1, 19:14, 33:6, 35:5, 35:13, 36:6, 43:17, 43:18, 44:2, 44:8, 44:12, 45:2, 45:5, 46:3, 46:4, 46:22, 47:5, 47:11, 56:22, 63:1, 65:20, 68:15, 68:17, 70:15, 70:17, 73:7, 73:18, 74:11, 74:23, 75:21, 78:3, 80:17, 84:22, 86:15, 89:15, 90:3, 90:8, 92:13, 92:18, 94:8, 94:15, 98:15, 98:23, 100:2, 102:21, 103:3, 103:10, 105:12, 105:23, 106:8
**cases** [19] - 4:8, 21:11, 37:16, 37:18, 43:16, 46:1, 56:22, 63:22, 64:19, 83:6, 86:14, 93:11, 95:4, 97:11, 98:22, 99:4, 99:22, 100:14, 101:3

**CASSADY** [1] - 1:19
**Cassady** [1] - 4:23
**Castle** [1] - 107:2
**category** [2] - 29:20, 53:21
**caught** [1] - 33:21
**caused** [1] - 36:3
**causes** [2] - 16:19, 20:19
**center** [7] - 41:1, 41:2, 46:18, 46:19, 48:3, 71:8
**CEO** [1] - 5:3
**CERT** [34] - 2:4, 5:11, 5:17, 5:20, 8:12, 8:19, 9:10, 9:20, 10:14, 11:14, 12:12, 12:18, 14:5, 20:24, 27:5, 28:5, 29:16, 29:19, 30:8, 39:24, 40:16, 40:18, 40:23, 41:3, 41:13, 41:14, 41:18, 41:19, 51:15, 58:10, 64:4, 64:20, 71:11, 71:19
**certain** [8] - 19:3, 22:23, 29:3, 51:3, 55:3, 55:5, 63:11, 91:10
**certainly** [20] - 42:12, 55:14, 75:13, 85:22, 86:3, 86:9, 87:2, 87:12, 87:13, 87:21, 88:12, 92:11, 98:18, 102:6, 102:18, 102:20, 103:5, 103:11, 105:4, 105:19
**CERTIFICATE** [1] - 107:4
**certify** [1] - 107:8
**cetera** [2] - 32:19, 60:2
**chain** [1] - 20:19
**challenge** [1] - 82:5
**challenging** [1] - 82:1
**chamber** [2] - 27:20, 52:10
**chance** [5] - 59:9, 90:16, 90:19, 95:15, 100:8
**change** [1] - 93:24

**charge** [1] - 58:20
**checking** [1] - 95:17
**Chem** [15] - 11:10, 14:11, 14:17, 34:8, 34:15, 35:11, 35:17, 36:2, 36:5, 41:7, 64:7, 96:12, 96:14, 102:15, 102:16
**Chem-Mod** [15] - 11:10, 14:11, 14:17, 34:8, 34:15, 35:11, 35:17, 36:2, 36:5, 41:7, 64:7, 96:12, 96:14, 102:15, 102:16
**chemical** [2] - 34:15, 42:22
**chemicals** [6] - 14:10, 14:14, 14:18, 38:3, 54:11, 54:12
**CHRISTOPHER** [1] - 1:13
**Circuit** [11] - 17:10, 18:4, 19:8, 34:10, 34:14, 34:17, 36:19, 44:13, 44:20, 47:21, 66:20
**Circuit's** [3] - 30:17, 34:7, 97:11
**circumstances** [2] - 18:2, 68:16
**citations** [1] - 39:12
**cite** [2] - 33:5, 44:6
**cited** [9] - 13:12, 17:6, 56:22, 61:24, 63:2, 63:22, 80:17, 95:6, 98:24
**cites** [1] - 44:1
**citing** [1] - 43:20
**Civil** [2] - 1:4, 1:4
**claim** [21] - 9:23, 13:18, 13:20, 24:15, 24:16, 30:10, 36:8, 38:3, 43:12, 43:13, 43:22, 45:1, 46:4, 48:16, 48:19, 50:19, 51:8, 79:6, 97:7, 97:15, 98:17
**claimed** [2] - 30:22, 30:23

**claims** [12] - 12:1, 12:20, 15:11, 26:22, 30:6, 31:24, 40:7, 40:13, 41:22, 70:12, 78:12, 98:3
**clarification** [1] - 77:14
**clean** [1] - 50:7
**clear** [10] - 13:5, 17:10, 50:23, 51:14, 61:20, 70:1, 72:1, 88:5, 90:8, 104:13
**clearly** [3] - 18:20, 27:22, 47:13
**clients** [2] - 30:1, 81:10
**clock** [1] - 10:24
**close** [3] - 100:5, 105:17, 106:3
**closely** [1] - 63:17
**closest** [2] - 28:4, 84:9
**co** [4] - 6:15, 72:24, 92:6, 92:8
**co-counsel** [2] - 6:15, 72:24
**co-parent** [2] - 92:6, 92:8
**Coal** [2] - 2:12, 62:14
**coal** [161] - 5:24, 6:4, 8:12, 8:20, 9:12, 9:19, 10:15, 11:22, 12:2, 12:9, 12:14, 14:1, 14:3, 14:5, 14:6, 14:7, 14:11, 14:13, 15:11, 15:16, 16:10, 16:11, 16:24, 19:20, 19:23, 20:10, 20:11, 20:13, 20:18, 20:19, 21:1, 21:4, 21:6, 22:19, 22:20, 22:21, 23:5, 24:2, 24:5, 25:6, 25:7, 25:9, 25:13, 26:2, 26:4, 26:13, 26:14, 27:6, 27:13, 27:14, 27:15, 27:16, 27:17, 27:23, 28:4, 29:8, 29:20, 30:5, 30:11, 30:12, 30:22, 31:2, 31:3, 31:6,

31:7, 31:10, 32:1, 32:3, 32:10, 32:11, 32:13, 32:14, 32:22, 33:3, 34:2, 34:12, 34:16, 34:20, 35:7, 35:9, 36:9, 36:10, 38:14, 40:2, 42:18, 42:20, 49:6, 49:8, 49:9, 49:10, 51:16, 51:18, 52:8, 52:9, 52:10, 53:5, 53:12, 53:20, 53:22, 53:24, 54:3, 54:5, 54:7, 54:13, 54:19, 55:3, 55:10, 55:20, 55:21, 56:2, 57:6, 57:8, 57:11, 57:17, 57:18, 58:10, 59:22, 60:4, 60:5, 60:8, 60:9, 60:17, 60:18, 60:22, 61:2, 61:4, 61:13, 62:3, 62:12, 62:14, 62:23, 64:5, 64:7, 65:14, 68:4, 69:7, 70:2, 70:11, 71:12, 73:22, 78:12, 78:13, 78:18, 78:20, 78:24, 79:8, 79:14, 79:22, 80:5, 80:10, 81:12, 81:19, 96:13, 101:17, 101:22
**coal-fired** [3] - 27:16, 35:7, 35:9
**Code** [2] - 22:17, 68:7
**colleague** [3] - 29:18, 82:8, 100:8
**colleagues** [2] - 5:18, 91:22
**collect** [1] - 48:4
**collecting** [2] - 48:8, 57:12
**collection** [1] - 11:10
**collective** [3] - 5:10, 11:12, 77:4
**collectively** [5] - 40:18, 74:17, 77:7, 80:8, 81:11
**column** [5] - 31:21,

38:16, 38:20, 38:21, 62:1
**combustion** [3] - 12:9, 27:20, 52:10
**combustor** [1] - 54:5
**coming** [1] - 57:23
**comment** [2] - 100:12, 102:15
**commercial** [1] - 77:5
**committed** [3] - 81:17, 81:18, 98:13
**common** [3] - 48:1, 57:7, 72:22
**communicate** [1] - 106:5
**community** [2] - 23:7, 57:9
**companies** [18] - 46:23, 54:3, 73:10, 73:11, 73:14, 73:18, 74:6, 74:13, 74:15, 74:17, 74:19, 76:11, 77:7, 78:21, 78:23, 92:16, 96:13
**Company** [1] - 11:10
**company** [10] - 46:6, 54:7, 57:6, 57:17, 60:17, 64:7, 81:1, 81:2, 81:3, 92:7
**compare** [2] - 22:20, 64:18
**complaint** [87] - 11:17, 11:22, 12:17, 13:19, 13:24, 14:10, 15:9, 15:14, 17:17, 19:14, 19:17, 19:22, 20:6, 22:6, 23:9, 23:15, 23:24, 24:13, 24:24, 25:16, 25:21, 25:24, 26:11, 27:4, 29:6, 31:6, 31:9, 31:13, 39:6, 39:7, 42:17, 43:1, 47:12, 51:13, 51:22, 53:15, 55:11, 55:18, 57:1, 59:1, 59:5, 59:8, 61:14,

61:15, 66:13, 68:6, 70:17, 71:6, 71:10, 71:11, 72:2, 73:12, 73:15, 74:1, 74:12, 74:16, 74:20, 74:24, 76:17, 76:18, 76:22, 79:4, 79:13, 84:2, 86:21, 87:1, 87:10, 91:12, 92:4, 92:24, 96:8, 96:10, 97:4, 97:5, 97:12, 97:15, 97:19, 97:21, 98:8, 98:9, 99:8, 99:16, 100:16, 100:19, 100:20, 100:22, 100:24
**complete** [1] - 23:10
**completely** [2] - 68:20, 68:24
**complicated** [1] - 89:22
**comply** [1] - 45:16
**component** [1] - 37:7
**components** [1] - 36:23
**compound** [1] - 14:16
**comprising** [1] - 27:19
**concedes** [1] - 30:24
**conceding** [1] - 73:21
**concern** [1] - 14:5
**concerning** [2] - 56:7, 80:19
**conclude** [3] - 61:17, 64:20, 92:13
**concluded** [4] - 19:7, 19:8, 99:5, 99:7
**concludes** [1] - 57:16
**condition** [1] - 19:3
**conduct** [5] - 14:4, 14:21, 22:9, 83:4, 85:24
**conducted** [1] - 40:24
**conference** [2] - 41:8, 105:12
**conferences** [2] - 64:9, 96:14

**confidential** [1] - 89:23
**confirm** [1] - 13:19
**confusing** [2] - 77:2, 78:1
**connected** [1] - 50:14
**connecting** [1] - 40:10
**connection** [5] - 90:18, 95:20, 95:22, 96:5, 96:6
**connects** [1] - 17:20
**consider** [5] - 34:10, 38:10, 61:10, 61:13, 61:20
**considered** [1] - 65:22
**constitute** [2] - 13:7, 53:7
**constituted** [1] - 69:8
**constitutes** [1] - 14:22
**contain** [1] - 27:10
**context** [2] - 33:7, 99:15
**continue** [1] - 87:6
**CONTINUED** [2] - 2:1, 3:1
**contract** [3] - 57:5, 64:6, 80:1
**contributory** [13] - 9:24, 30:3, 30:9, 31:24, 36:8, 36:21, 37:1, 37:23, 59:19, 69:21, 69:24, 70:14, 70:22
**control** [20] - 23:3, 24:19, 24:22, 25:3, 25:11, 25:13, 25:20, 26:8, 26:17, 56:11, 57:14, 57:17, 57:19, 79:21, 79:22, 80:2, 80:5, 80:14, 80:24, 92:16
**convey** [1] - 76:20
**conveyor** [6] - 32:23, 34:20, 42:20, 54:4, 54:8, 62:13
**coordinate** [2] - 57:24, 106:6
**coordination** [1] - 9:6

**core** [2] - 32:6, 33:14
**CORP** [2] - 1:3, 1:6
**Corp** [6] - 3:7, 4:3, 4:4, 6:20, 74:11, 77:20
**corporate** [5] - 5:1, 84:15, 101:21, 102:3, 103:21
**Corporation** [1] - 6:19
**correct** [6] - 34:4, 37:14, 66:18, 81:19, 81:22, 85:14
**corrosive** [1] - 28:21
**Cottrell** [1] - 6:12
**COTTRELL** [4] - 2:15, 3:11, 6:11, 7:7
**Counsel** [9] - 1:21, 2:4, 2:11, 2:20, 3:6, 3:16, 3:22, 7:16, 105:8
**counsel** [31] - 4:11, 4:15, 4:17, 4:18, 5:12, 5:14, 5:20, 5:23, 6:1, 6:8, 6:10, 6:15, 6:22, 6:23, 7:12, 7:24, 9:5, 9:11, 9:12, 9:20, 11:7, 66:6, 68:15, 72:12, 72:15, 72:17, 72:24, 78:16, 88:22, 88:24, 89:2
**count** [6] - 24:5, 43:3, 92:2, 101:14, 101:15
**country** [1] - 54:20
**counts** [15] - 12:17, 23:24, 58:8, 58:11, 58:14, 58:18, 78:16, 78:17, 78:21, 81:14, 81:15, 81:20, 91:6, 91:10
**County** [1] - 107:2
**couple** [6] - 28:13, 60:3, 69:21, 80:7, 98:22, 104:23
**course** [3] - 16:4, 76:1, 76:13
**court** [2] - 4:5, 4:13
**Court** [14] - 14:9, 17:7, 18:14, 18:20, 19:7,

22:15, 26:21, 35:17, 44:8, 44:17, 65:22, 67:5, 69:12, 100:18
**COURT** [70] - 1:1, 4:1, 5:5, 5:22, 6:7, 6:16, 7:6, 7:15, 7:23, 10:11, 15:21, 20:4, 23:20, 27:2, 28:3, 29:11, 32:4, 35:4, 36:24, 38:7, 39:13, 41:23, 42:6, 48:11, 49:13, 50:9, 51:9, 52:13, 53:9, 54:23, 56:3, 58:5, 59:3, 59:18, 60:20, 61:9, 63:6, 64:23, 65:5, 69:15, 71:1, 72:5, 74:8, 76:23, 77:15, 78:7, 81:8, 81:14, 81:24, 82:7, 82:16, 84:10, 86:4, 87:5, 88:20, 89:7, 90:11, 91:2, 92:20, 93:1, 94:3, 94:20, 95:19, 96:20, 99:14, 100:3, 101:7, 102:8, 103:18, 105:6
**Court's** [3] - 10:3, 17:8, 102:14
**cover** [4] - 11:1, 29:12, 39:18, 79:5
**covered** [3] - 56:5, 67:16, 93:5
**covering** [2] - 41:15, 91:18
**covers** [1] - 93:18
**Cragg** [1] - 6:13
**CRAGG** [2] - 2:15, 3:11
**cranks** [1] - 58:1
**create** [4] - 46:19, 47:16, 47:20, 56:2
**created** [2] - 12:9, 55:19
**creating** [1] - 48:6
**creation** [1] - 14:13
**credit** [5] - 22:12, 22:19, 23:1, 23:10, 54:16
**credited** [2] -

34:14, 34:18
**credits** [1] - 57:12
**critical** [2] - 11:16, 94:21
**CRUTCHER** [1] - 2:9
**CTO** [1] - 5:4
**cure** [1] - 70:19
**cured** [1] - 67:20
**CURRY** [1] - 1:19
**Curry** [1] - 4:23
**customer** [1] - 51:2
**customers** [4] - 45:20, 47:23, 48:6, 80:19
**cut** [1] - 32:6

# D

**D-Link** [3] - 13:13, 43:18, 45:11
**damages** [2] - 94:19, 94:21
**Data** [2] - 86:14, 103:9
**date** [2] - 98:7, 106:4
**days** [4] - 94:8, 94:14, 94:18, 95:4
**deal** [1] - 12:8
**dealing** [1] - 13:20
**dealt** [2] - 44:9, 46:5
**decide** [1] - 59:7
**decided** [1] - 66:18
**decision** [2] - 83:6, 103:9
**decisions** [1] - 106:4
**defect** [1] - 24:7
**Defendant** [1] - 1:7
**defendant** [12] - 17:12, 17:13, 29:20, 36:15, 64:2, 88:9, 95:23, 96:2, 97:13, 97:21, 98:6, 98:13
**Defendants** [6] - 2:4, 2:12, 2:20, 3:6, 3:16, 3:22
**defendants** [104] - 4:8, 5:8, 5:11, 5:17, 5:20, 5:24, 6:4, 6:9, 6:13, 6:17, 7:2, 7:3, 7:5, 7:11, 7:14, 7:22, 8:10, 8:12, 8:13, 8:14, 8:19,

8:20, 8:23, 8:24, 9:4, 9:8, 9:19, 9:20, 10:4, 11:8, 11:9, 11:14, 11:19, 11:20, 11:23, 12:11, 12:12, 12:19, 14:1, 15:16, 16:9, 16:22, 19:20, 20:8, 20:20, 20:24, 21:1, 24:2, 24:5, 25:7, 26:2, 26:13, 27:6, 27:13, 27:23, 28:5, 29:8, 29:17, 29:19, 30:5, 30:8, 30:12, 31:2, 31:4, 39:2, 39:24, 40:11, 40:24, 41:4, 41:19, 46:22, 47:6, 47:14, 48:23, 51:15, 51:16, 53:2, 55:2, 58:9, 58:10, 58:11, 58:21, 63:11, 64:4, 65:14, 70:3, 71:11, 71:19, 72:11, 72:13, 72:20, 73:22, 81:10, 81:12, 81:19, 82:14, 91:17, 101:17
**defendants'** [7] - 9:11, 9:12, 10:15, 10:16, 14:4, 40:2, 89:2
**defense** [1] - 56:8
**deficient** [2] - 59:5, 59:9
**define** [1] - 26:14
**degree** [1] - 31:20
**degrees** [1] - 40:19
**DELAWARE** [1] - 1:1
**Delaware** [9] - 4:18, 5:13, 6:1, 6:9, 6:23, 7:12, 99:1, 107:1, 107:8
**delivered** [4] - 33:7, 33:24, 34:2, 34:12
**Demers** [14] - 5:21, 9:24, 10:6, 27:3, 29:12, 29:14, 29:16, 32:4, 33:19, 41:24, 42:9, 65:10, 68:18, 69:16

**DEMERS** [9] - 2:3, 29:15, 33:18, 35:22, 37:18, 38:18, 39:17, 69:19, 71:2
**demonstrate** [2] - 85:11, 97:13
**depth** [1] - 96:6
**describe** [3] - 26:14, 55:17, 92:15
**described** [5] - 31:11, 34:22, 50:13, 53:4, 74:12
**describes** [2] - 26:12, 27:11
**describing** [2] - 55:19, 74:18
**designation** [1] - 99:2
**desire** [1] - 26:1
**detail** [5] - 14:8, 14:20, 24:23, 25:23, 41:17
**details** [2] - 14:10, 56:23
**developed** [1] - 75:23
**developing** [1] - 76:1
**device** [2] - 45:7, 45:8
**devices** [1] - 45:12
**Devlin** [1] - 4:20
**DEVLIN** [1] - 1:17
**dichotomy** [1] - 33:4
**difference** [2] - 59:20, 101:5
**different** [23] - 5:7, 18:2, 29:21, 34:9, 40:20, 50:10, 53:23, 54:11, 62:5, 62:6, 62:17, 62:18, 68:20, 68:24, 73:10, 74:13, 74:14, 83:15, 83:21, 84:21, 85:16, 98:4, 99:4
**differently** [2] - 103:4, 103:10
**difficult** [1] - 61:8
**DiGiovanni** [1] - 7:1
**DIGIOVANNI** [2] - 3:3, 6:24
**dioxide** [1] - 22:24
**direct** [25] - 10:2,

17:7, 24:3, 43:5,
44:10, 44:16,
44:21, 45:23,
48:18, 49:20,
52:7, 58:21, 67:7,
78:12, 78:18,
81:17, 81:21,
82:3, 82:5, 91:16,
91:24, 92:1, 92:5,
92:12, 102:6
**directed** [2] - 19:2,
66:4
**direction** [7] -
24:20, 24:23,
25:4, 25:10,
26:17, 56:11,
57:13
**directions** [2] -
18:20, 66:21
**directly** [8] - 12:14,
16:15, 40:10,
42:21, 43:23,
48:24, 52:11,
58:16
**disagree** [1] - 48:15
**discuss** [1] - 40:21
**discussed** [2] -
87:24, 91:4
**discussing** [1] -
38:22
**discussion** [2] -
78:11, 106:1
**discussions** [1] -
36:1
**dismiss** [4] - 4:7,
8:3, 30:10, 92:23
**dismissal** [2] -
29:24, 72:4
**dismisses** [1] -
100:19
**dismissing** [1] -
26:21
**dispositive** [1] -
34:13
**dispute** [4] - 18:18,
42:16, 45:5,
75:12
**distinction** [2] -
32:8, 56:10
**distinguish** [1] -
36:5
**distinguishing** [1] -
39:1
**district** [1] - 96:24
**DISTRICT** [2] - 1:1,
1:1
**diverted** [1] - 60:24
**divide** [1] - 10:8
**divided** [1] - 10:4
**docket** [1] - 82:18

**dockets** [1] - 72:23
**document** [5] -
46:15, 46:24,
47:1, 47:7, 47:18
**documentation** [1]
- 89:21
**done** [7] - 26:3,
64:6, 64:13,
79:20, 81:16,
102:4
**door** [2] - 60:7,
60:13
**Doug** [3] - 5:19,
6:15, 72:19
**DOUGLAS** [2] -
2:3, 2:18
**down** [1] - 45:3
**downstream** [3] -
12:5, 15:13,
27:19
**dozen** [1] - 14:20
**drawing** [1] - 41:11
**DRINKER** [1] - 3:2
**Drinker** [1] - 7:2
**drinks** [1] - 21:16
**dropped** [2] -
33:19, 54:13
**drops** [1] - 62:16
**dry** [3] - 18:24,
19:6, 66:24
**DTE** [1] - 53:2
**Dunn** [2] - 6:6, 9:18
**DUNN** [1] - 2:9
**Durst** [1] - 6:15
**DURST** [1] - 2:19
**Dynamic** [2] -
86:14, 103:9

# E

**early** [1] - 104:9
**easily** [2] - 37:16,
37:19
**EERC** [5] - 64:15,
71:8, 71:12,
89:18, 89:20
**effectively** [1] -
22:18
**efficient** [1] - 46:13
**effluent** [1] - 29:2
**effort** [1] - 26:13
**EGAN** [2] - 2:7, 6:2
**Egan** [1] - 6:3
**eight** [3] - 94:8,
94:18, 95:4
**either** [5] - 12:15,
13:23, 14:14,
57:11, 83:13
**electricity** [2] -
26:10, 57:11

**element** [2] - 18:19,
28:10
**elements** [3] - 18:9,
18:11, 67:3
**emission** [1] - 23:3
**EMISSIONS** [1] -
1:3
**emissions** [1] -
28:16
**Emissions** [5] -
4:3, 74:11, 75:2,
75:6, 77:20
**emphasize** [2] -
17:5, 104:11
**employed** [2] -
63:15, 71:14
**EMS** [2] - 75:2, 75:7
**encourage** [8] -
17:1, 45:14,
48:17, 49:24,
50:5, 50:20, 51:2,
65:18
**encouraged** [2] -
49:16, 49:19
**encouragement** [3]
- 22:1, 67:15,
67:23
**encourages** [3] -
13:10, 16:11,
50:19
**encouraging** [11] -
16:4, 19:24,
47:23, 49:6, 49:8,
50:4, 50:12,
50:24, 51:7,
67:12, 69:2
**end** [8] - 12:17,
29:2, 33:22,
45:14, 89:1,
94:18, 101:10,
104:3
**Energy** [12] - 3:7,
4:3, 4:4, 6:18,
6:20, 74:11, 75:2,
75:6, 75:15,
76:15, 77:20,
81:7
**energy** [1] - 11:22
**ENERGY** [2] - 1:3,
1:6
**engage** [1] - 11:15
**engaged** [1] - 81:20
**engaging** [1] -
48:23
**enhance** [1] - 50:6
**enriched** [1] - 12:1
**enterprise** [5] -
24:21, 25:18,
57:2, 57:13,
68:10

**entire** [2] - 51:1,
51:8
**entities** [20] -
11:11, 29:21,
40:18, 41:14,
52:6, 62:11, 73:8,
73:9, 77:23, 79:5,
80:9, 81:11,
83:15, 83:17,
84:15, 88:18,
101:17, 101:20,
102:17
**entitle** [1] - 74:22
**entity** [21] - 24:18,
40:16, 41:7,
44:10, 63:14,
63:16, 63:17,
77:19, 79:9,
79:11, 79:12,
84:22, 85:19,
85:23, 86:16,
88:4, 88:9, 102:3,
103:8, 103:21,
104:4
**enumerating** [1] -
14:21
**EPA** [1] - 28:14
**equal** [2] - 57:12,
57:14
**Ericsson** [4] -
13:12, 43:18,
43:19, 66:8
**Ericsson's** [1] -
45:15
**especially** [1] -
78:1
**ESQ** [20] - 1:17,
1:20, 1:20, 2:2,
2:3, 2:3, 2:7,
2:10, 2:10, 2:15,
2:15, 2:18, 2:19,
3:3, 3:5, 3:11,
3:11, 3:14, 3:18,
3:20
**essence** [1] - 17:1
**essential** [1] -
11:24
**essentially** [2] -
25:7, 39:3
**establish** [1] -
76:21
**established** [1] -
95:11
**et** [4] - 1:6, 4:4,
32:19, 60:1
**Evall** [1] - 6:6
**EVALL** [1] - 2:10
**event** [1] - 94:22
**eventually** [1] -
104:14

**evidence** [3] -
38:11, 38:15,
51:22
**exactly** [2] - 20:10,
20:13
**example** [11] - 14:9,
18:1, 22:7, 27:12,
28:13, 40:9,
62:10, 66:7,
71:20, 86:22,
93:4
**examples** [2] -
62:17, 66:6
**except** [2] - 35:10,
35:16
**excerpt** [1] - 62:1
**exclusive** [6] -
75:22, 76:7,
76:12, 77:11,
89:18, 90:5
**exercise** [1] - 79:21
**exercising** [1] -
92:16
**exhibit** [3] - 38:17,
38:20, 75:13
**exhibited** [1] -
94:13
**exist** [1] - 99:19
**existence** [3] -
88:5, 88:8, 88:10
**experimental** [1] -
30:16
**explain** [3] - 43:16,
45:6, 53:15
**explanation** [1] -
74:4
**expressly** [1] -
86:20
**extension** [1] - 77:5
**extent** [8] - 54:24,
57:15, 59:14,
63:10, 77:22,
79:12, 92:6,
92:22
**extra** [1] - 46:11

# F

**face** [1] - 101:19
**facilities** [3] -
11:21, 22:11,
28:8
**facility** [2] - 54:3,
71:13
**fact** [7] - 21:20,
31:10, 62:2,
62:16, 73:22,
75:11, 83:14
**facts** [3] - 71:24,
73:20, 90:17

**factual** [6] - 24:12, 39:23, 40:10, 40:15, 43:2, 79:3
**FAEGRE** [1] - 3:2
**Faegre** [1] - 7:1
**failed** [5] - 30:19, 83:9, 83:10, 83:12, 83:15
**fails** [2] - 24:1, 26:18
**failure** [6] - 15:14, 15:15, 16:17, 16:18, 16:20, 17:17
**fair** [9] - 41:23, 48:21, 58:17, 59:11, 61:5, 78:4, 88:20, 90:24, 102:8
**fairly** [2] - 89:22, 93:12
**fall** [1] - 29:19
**familiar** [1] - 20:13
**family** [2] - 93:19, 95:13
**far** [5] - 30:15, 40:18, 49:2, 56:23, 68:22
**far-fetched** [1] - 30:15
**Fareed** [9] - 7:4, 72:24, 82:9, 82:13, 88:21, 101:9, 102:9, 105:7
**FAREED** [8] - 3:5, 82:12, 82:17, 85:13, 86:9, 87:7, 102:12, 104:6
**faucet** [1] - 57:22
**favor** [1] - 41:12
**Fed** [1] - 97:10
**Federal** [13] - 17:10, 18:4, 19:8, 30:17, 34:7, 34:10, 34:14, 34:17, 36:19, 44:13, 44:19, 47:21, 66:20
**feed** [2] - 22:19, 22:20
**feet** [2] - 55:22, 62:15
**fetched** [1] - 30:15
**few** [4] - 23:19, 45:3, 55:21, 94:14
**field** [3] - 47:7, 47:24, 96:24
**figure** [7] - 28:22,

33:9, 48:12, 60:21, 61:1, 61:8, 94:15
**file** [4] - 90:2, 98:17, 99:16, 99:19
**filed** [11] - 5:9, 8:11, 73:7, 87:10, 94:8, 94:15, 97:19, 97:21, 98:8, 98:15, 100:16
**filing** [7] - 75:14, 93:14, 97:4, 97:12, 97:14, 99:8, 100:24
**fill** [2] - 9:9, 46:9
**filtering** [1] - 102:16
**financial** [2] - 23:8, 79:24
**fine** [1] - 64:16
**FINGER** [2] - 2:14, 3:10
**fired** [3] - 27:16, 35:7, 35:9
**FIRM** [1] - 1:17
**Firm** [1] - 4:21
**firm** [1] - 47:3
**firmly** [1] - 67:22
**first** [24] - 4:17, 5:10, 9:15, 10:20, 17:5, 18:22, 18:24, 19:4, 20:20, 30:3, 43:17, 53:10, 63:17, 65:7, 72:14, 77:14, 83:23, 85:19, 89:13, 92:1, 92:2, 101:11
**fix** [1] - 24:8
**flaw** [1] - 67:19
**FLOM** [1] - 2:2
**flue** [3] - 12:8, 15:13, 69:9
**focus** [7] - 25:14, 26:12, 27:13, 33:14, 34:24, 43:8, 43:18
**focuses** [2] - 37:23, 48:23
**focusing** [2] - 18:14, 32:21
**folks** [3] - 58:14, 58:16, 94:11
**follow** [1] - 73:1
**following** [3] - 9:15, 17:9, 44:20
**follows** [2] - 35:24,

73:6
**FOR** [1] - 1:1
**foreclosed** [1] - 70:18
**foregoing** [1] - 107:9
**form** [6] - 80:1, 85:3, 86:18, 92:17, 104:11, 104:20
**former** [2] - 50:15, 94:11
**forms** [1] - 14:15
**forth** [1] - 33:15
**forward** [4] - 15:2, 105:23, 106:7, 106:14
**four** [6] - 6:17, 8:4, 53:24, 73:9, 83:14, 83:17
**frame** [1] - 70:6
**framework** [1] - 67:4
**framing** [1] - 33:10
**FRANCIS** [1] - 3:3
**Frank** [1] - 7:1
**Fred** [1] - 6:12
**FREDRICK** [2] - 2:15, 3:11
**front** [1] - 103:13
**fuel** [4] - 14:7, 15:5, 19:23, 25:8
**full** [1] - 89:20
**fundamental** [2] - 11:18, 67:19
**furnace** [6] - 12:4, 12:5, 15:12, 15:14, 28:23, 69:8
**future** [3] - 97:24, 99:18, 106:15

**G**

**Gallagher** [5] - 11:8, 11:9, 12:11, 12:18, 14:5
**gaps** [1] - 41:3
**gas** [3] - 12:8, 15:13, 69:9
**general** [5] - 10:12, 53:20, 60:4, 80:18, 84:12
**generally** [4] - 79:15, 80:11, 80:24, 90:4
**generate** [2] - 11:22, 26:10
**Generation** [2] - 3:7, 6:21

**generic** [3] - 47:1, 47:7, 54:19
**Gibson** [2] - 6:6, 9:18
**GIBSON** [1] - 2:9
**given** [4] - 66:22, 88:3, 88:8, 93:12
**goal** [2] - 105:13, 105:15
**Google** [2] - 86:14, 103:9
**grant** [3] - 26:21, 59:15, 101:24
**granted** [1] - 69:14
**gray** [1] - 90:4
**great** [1] - 24:23
**greatest** [1] - 39:11
**grocery** [1] - 47:3
**group** [8] - 11:7, 11:21, 12:19, 14:11, 20:21, 57:4, 57:7, 91:11
**group's** [1] - 10:20
**groups** [4] - 5:7, 5:9, 8:10, 73:10
**guess** [1] - 9:3, 16:16, 35:12, 54:23, 56:6, 60:3, 77:15, 94:4, 94:9, 94:20, 103:18
**Guy** [3] - 107:6, 107:18, 107:18
**guys** [1] - 21:22

**H**

**H.A** [2] - 3:8, 6:21
**hack** [1] - 8:16
**half** [1] - 46:7
**Halo** [1] - 86:3
**halogen** [1] - 39:8
**Halstead** [1] - 83:6
**hand** [2] - 8:11, 8:13
**handle** [1] - 46:13
**hands** [1] - 25:6
**happy** [2] - 89:10, 91:19
**harshly** [1] - 99:12
**head** [2] - 58:24, 71:3
**heading** [1] - 79:3
**health** [1] - 106:13
**hear** [1] - 91:19
**heard** [9] - 42:8, 43:11, 65:9, 70:8, 70:9, 71:7, 71:23, 80:3, 102:15
**hearing** [2] - 75:14, 102:13

**Hearing** [1] - 106:16
**hears** [1] - 94:7
**held** [3] - 18:20, 44:13, 107:11
**help** [4] - 4:13, 33:8, 77:1
**helpful** [1] - 89:8
**hereby** [1] - 107:8
**high** [1] - 36:7
**highlighted** [1] - 42:16
**hits** [1] - 39:11
**hitting** [1] - 71:3
**hold** [2] - 24:1, 74:22
**holding** [1] - 37:21
**holds** [1] - 76:19
**Honor** [74] - 4:20, 5:16, 6:3, 6:11, 7:1, 7:7, 7:18, 9:17, 11:7, 17:3, 22:4, 23:13, 23:17, 29:16, 29:21, 33:18, 33:23, 33:24, 39:12, 42:5, 42:13, 42:15, 43:5, 44:12, 55:15, 57:1, 57:15, 59:1, 59:15, 65:3, 65:13, 69:20, 70:21, 71:2, 72:19, 78:6, 81:23, 82:12, 82:18, 82:21, 83:9, 83:18, 83:24, 85:13, 85:17, 86:11, 86:14, 86:23, 87:7, 87:8, 87:19, 87:24, 88:11, 88:15, 89:6, 89:13, 90:24, 91:24, 92:2, 92:5, 92:13, 92:16, 92:22, 93:7, 95:1, 101:24, 102:12, 102:13, 102:17, 103:2, 103:15, 104:7, 105:2
**Honor's** [3] - 72:21, 83:5, 86:13
**HONORABLE** [1] - 1:13
**hope** [1] - 74:2
**hopefully** [1] - 10:21
**hoping** [3] - 10:8,

10:13, 105:16
**hour** [4] - 10:4,
10:7, 10:14,
10:15
**hypothetical** [2] -
22:5, 23:12
**HZNP** [5] - 17:9,
17:24, 19:16,
21:11, 66:18

**I**

**i.e** [1] - 16:21
**identified** [7] -
63:3, 64:11,
70:12, 85:1, 85:9,
85:20, 85:21
**identifies** [3] - 31:5,
31:14, 74:21
**identify** [8] - 4:12,
4:16, 5:8, 5:12,
5:24, 6:22, 43:3,
93:11
**identifying** [1] -
103:1
**II** [1] - 3:18
**illusory** [1] - 30:15
**imagine** [1] - 23:14
**important** [2] -
36:4, 92:11
**importantly** [1] -
70:9
**impractical** [2] -
30:15, 31:18
**impute** [3] - 103:7,
103:12, 103:20
**imputed** [1] - 86:16
**IN** [2] - 1:1, 107:13
**inadequate** [2] -
25:22, 88:15
**INC** [1] - 1:3
**Inc** [10] - 4:3, 74:12,
74:22, 75:2, 75:7,
75:11, 75:20,
76:16, 76:18,
76:22
**inclined** [3] - 22:15,
59:15, 92:23
**includes** [2] -
11:21, 77:23
**including** [3] -
6:18, 14:4, 61:4
**inclusive** [1] -
107:9
**incorporates** [1] -
92:3
**incredibly** [1] -
10:23
**indeed** [1] - 27:10
**independent** [3] -

73:11, 73:18,
74:5
**indicate** [1] - 59:1
**indication** [1] -
59:11
**indirect** [26] -
12:22, 24:6, 30:7,
40:7, 40:14,
41:21, 50:11,
50:18, 52:20,
58:14, 78:19,
78:22, 79:5,
79:16, 81:6,
81:18, 93:10,
97:6, 98:3, 98:11,
98:13, 98:20,
99:12, 100:17,
100:23, 101:16
**indirectly** [2] -
12:19, 92:8
**induce** [2] - 20:2,
48:17
**induced** [28] - 13:5,
13:7, 14:2, 16:1,
16:9, 16:24,
20:16, 29:23,
42:14, 42:23,
43:9, 43:14, 44:2,
44:14, 45:21,
47:9, 48:10,
49:11, 49:15,
49:18, 55:3,
59:22, 60:5,
65:24, 91:11,
91:12, 96:22,
97:2
**inducement** [25] -
9:22, 12:24, 13:9,
13:11, 13:13,
13:21, 14:22,
17:11, 18:9,
18:12, 22:10,
23:18, 24:14,
26:24, 44:23,
44:24, 45:4,
65:17, 65:23,
66:1, 66:9, 67:3,
67:6, 67:17,
101:13
**inducements** [1] -
78:10
**inducer** [7] - 13:22,
17:15, 18:8,
18:15, 44:14,
67:9, 67:17
**induces** [4] - 13:14,
15:17, 44:4,
80:14
**inducing** [4] -
13:23, 43:13,

92:9, 102:5
**industry** [1] - 47:2
**inevitably** [3] -
45:18, 45:22,
51:4
**infer** [1] - 85:7
**inference** [7] -
22:6, 41:5, 71:7,
93:20, 94:1, 95:8,
95:12
**inferences** [1] -
41:11
**inferred** [2] - 17:11,
94:6
**information** [7] -
46:15, 46:17,
47:17, 48:2, 48:8,
64:1, 64:2
**informed** [2] -
93:18, 106:1
**infringe** [6] - 12:20,
21:18, 38:5,
60:19, 80:6, 84:8
**infringed** [4] -
43:23, 51:8,
58:16, 83:2
**infringement** [118] -
9:23, 9:24, 10:2,
12:22, 13:6, 13:8,
16:1, 16:5, 23:17,
23:19, 23:23,
24:3, 24:11,
24:15, 26:19,
26:23, 27:1,
29:23, 30:4, 30:7,
30:9, 31:24,
32:16, 35:2, 36:8,
36:22, 37:2,
37:23, 38:1,
39:21, 40:3, 40:7,
40:12, 40:14,
41:16, 41:21,
42:14, 42:22,
42:24, 43:4,
43:10, 44:3,
44:10, 44:14,
45:23, 47:9,
48:10, 49:10,
49:12, 52:7, 53:7,
56:6, 56:13,
56:18, 56:20,
58:4, 58:15,
58:19, 58:21,
58:22, 59:19,
66:5, 67:7, 68:1,
68:11, 68:23,
69:22, 69:24,
70:15, 70:22,
71:17, 71:20,
78:12, 78:14,

78:18, 78:20,
78:22, 79:6,
79:17, 80:15,
81:6, 81:17,
81:18, 81:21,
82:3, 82:5, 82:22,
83:4, 86:1, 86:7,
87:17, 88:12,
88:17, 91:11,
91:13, 91:16,
92:12, 93:4, 94:2,
96:22, 96:23,
97:2, 97:7, 97:10,
97:16, 98:3,
98:11, 98:13,
98:20, 99:6, 99:9,
99:12, 100:17,
100:23, 101:16,
102:10, 103:17
**infringer** [17] -
13:1, 13:14, 37:9,
40:9, 44:4, 44:16,
44:22, 48:17,
48:18, 49:15,
49:18, 49:20,
50:12, 50:19,
66:2, 91:7, 102:6
**infringers** [4] -
24:4, 24:7, 52:20,
91:11
**infringes** [3] -
12:24, 52:11,
92:8
**infringing** [26] -
17:15, 21:13,
30:13, 30:14,
31:5, 31:15, 32:2,
33:2, 33:11, 34:3,
34:11, 34:16,
36:3, 38:4, 38:14,
39:3, 59:24,
62:21, 63:4, 70:5,
70:11, 70:19,
81:3, 83:13,
85:22, 98:19
**infused** [4] - 20:12,
20:18, 38:13,
51:18
**injecting** [2] - 12:7,
69:8
**injects** [1] - 27:18
**ink** [1] - 25:23
**inkling** [1] - 29:7
**inquiry** [1] - 37:23
**insecticide** [3] -
18:24, 19:13,
67:13
**insofar** [1] - 26:22
**installed** [1] - 50:2
**instances** [1] -

103:1
**instead** [3] - 30:2,
31:16, 70:17
**instruction** [2] -
21:21, 51:5
**instructions** [3] -
13:4, 80:19,
80:22
**insufficient** [6] -
21:13, 22:2,
70:16, 81:5,
92:18, 101:19
**intend** [6] - 16:23,
51:17, 51:21,
51:24, 52:18,
52:21
**intended** [2] - 24:9,
43:1
**intent** [7] - 16:6,
16:21, 51:12,
53:14, 53:17,
55:14, 71:24
**interact** [1] - 63:14
**interacted** [1] -
63:16
**interacting** [1] -
96:17
**interactions** [3] -
41:9, 84:3, 96:16
**interest** [4] - 23:8,
26:1, 57:9, 86:20
**interested** [2] -
26:18, 91:20
**interesting** [1] -
23:23
**interfacing** [1] -
104:22
**interim** [1] - 87:11
**Internal** [2] - 22:16,
68:7
**interrupt** [2] - 7:19,
32:5
**introduced** [1] -
32:11
**inventing** [1] -
64:15
**inventors** [3] -
41:1, 63:15,
64:10
**involve** [1] - 68:20
**involved** [3] -
13:22, 25:19,
72:10
**involvement** [1] -
23:11
**involves** [2] - 34:8,
36:10
**IOENGINE** [1] -
98:23
**Iqbal** [2] - 39:22,

86:3
**issuance** [1] - 96:4
**issue** [32] - 11:19,
19:1, 37:3, 38:13,
39:14, 42:15,
43:6, 43:9, 44:9,
45:6, 46:4, 51:11,
56:6, 59:10, 63:2,
70:15, 73:1, 73:2,
74:3, 74:10, 78:9,
78:10, 89:13,
90:15, 91:15,
91:16, 93:8, 98:2,
99:2, 100:12,
101:13, 104:3
**issued** [3] - 87:9,
94:10, 106:4
**issues** [43] - 8:18,
8:22, 10:1, 10:2,
10:15, 10:16,
10:18, 10:20,
11:3, 27:3, 28:24,
29:13, 30:2, 32:6,
32:7, 42:8, 56:4,
59:15, 63:8, 65:9,
68:21, 69:10,
69:18, 69:23,
70:20, 72:8,
72:14, 72:22,
73:4, 78:8, 82:9,
82:10, 82:15,
82:17, 82:20,
88:23, 91:3,
91:21, 93:3,
94:16, 96:1,
102:11, 102:14
**itself** [7] - 14:15,
23:24, 31:23,
34:19, 37:8, 79:8,
105:2

## J

**JAMES** [1] - 1:17
**JENNER** [1] - 3:20
**Jennifer** [3] -
107:6, 107:18,
107:18
**JESSICA** [1] - 2:2
**Jessica** [1] - 5:16
**Jim** [1] - 4:20
**John** [1] - 5:3
**joined** [1] - 86:24
**joining** [1] - 6:5
**joint** [24] - 9:23,
23:16, 23:19,
23:22, 24:3,
24:10, 24:15,
24:21, 25:17,
26:19, 26:24,

29:23, 56:6,
56:12, 56:17,
56:20, 57:2, 58:3,
58:15, 58:21,
68:1, 68:10,
73:13, 73:15
**jointly** [1] - 73:23
**Joppa** [2] - 62:12,
62:13
**Joseph** [1] - 6:6
**JOSEPH** [1] - 2:10
**Judge** [7] - 1:13,
38:10, 59:4,
86:12, 99:1,
100:14, 103:5
**judgment** [4] -
18:6, 18:7, 18:12,
18:16
**jump** [2] - 42:10,
89:11
**June** [1] - 107:13
**justified** [1] - 59:10
**justify** [1] - 73:17
**JUSTIN** [1] - 1:20
**Justin** [3] - 4:22,
42:4, 89:5

## K

**keep** [1] - 69:19
**Kenner** [1] - 7:21
**key** [3] - 15:22,
35:5, 35:6
**kind** [31] - 7:17,
8:5, 8:10, 8:17,
9:5, 15:22, 16:14,
21:24, 25:2, 25:3,
25:16, 26:3, 33:4,
33:14, 37:10,
42:8, 42:15,
48:23, 57:5,
59:11, 60:9,
60:10, 62:3,
65:21, 89:9, 90:6,
90:21, 95:2,
96:21, 99:20,
99:23
**kinds** [1] - 68:21
**knee** [3] - 66:23,
67:11, 67:14
**knowing** [1] - 61:11
**knowledge** [68] -
10:1, 13:6, 16:5,
17:14, 21:12,
27:7, 28:2, 28:6,
30:5, 39:14,
39:18, 39:20,
40:1, 40:5, 40:11,
40:17, 40:20,
41:5, 41:9, 41:12,

41:16, 41:19,
41:21, 51:12,
52:14, 53:3,
53:14, 53:16,
63:8, 64:21,
65:18, 69:22,
70:23, 71:5, 71:7,
71:16, 71:18,
71:22, 82:23,
83:1, 83:11,
83:16, 84:1,
84:16, 84:23,
84:24, 85:12,
86:5, 86:7, 86:10,
86:15, 88:13,
93:10, 93:13,
94:1, 95:9, 96:18,
97:5, 99:9,
102:10, 102:16,
102:24, 103:7,
103:12, 103:17,
103:20
**known** [9] - 55:24,
64:15, 83:3,
83:13, 85:24,
87:16, 88:13,
96:3, 104:3
**Kubehl** [5] - 6:15,
72:19, 78:5,
101:9, 101:11
**KUBEHL** [10] -
2:18, 72:18, 74:9,
77:3, 78:6, 78:9,
81:13, 81:22,
82:4, 101:12
**KUNZ** [2] - 2:2,
5:15
**Kunz** [1] - 5:16

## L

**label** [5] - 18:7,
18:17, 18:21,
19:9, 19:15
**lack** [5] - 16:20,
34:11, 86:6, 86:9,
93:13
**lacks** [1] - 66:13
**Lading** [14] - 34:23,
34:24, 37:5, 37:6,
37:12, 37:15,
37:21, 37:22,
46:3, 47:11, 60:1,
61:19, 63:1, 70:7
**lading** [1] - 38:12
**laid** [1] - 67:21
**language** [1] -
43:19
**last** [6] - 27:3, 38:7,
78:9, 96:20,

100:12, 103:19
**lastly** [2] - 6:17,
63:7
**latter** [1] - 10:17
**Law** [1] - 4:21
**law** [13] - 13:4,
43:20, 43:21,
44:1, 56:22,
65:20, 67:18,
84:14, 90:3, 97:8,
98:23, 102:21,
103:11
**LAW** [1] - 1:17
**lawsuit** [3] - 73:8,
74:6, 76:5
**lay** [2] - 52:5, 68:12
**laying** [1] - 44:23
**LAYTON** [2] - 2:14,
3:10
**Layton** [1] - 6:12
**lead** [5] - 5:19, 9:9,
28:24, 41:12,
72:13
**leading** [1] - 54:5
**leads** [2] - 16:15,
42:21
**learned** [1] - 96:15
**lease** [1] - 54:8
**least** [15] - 10:18,
31:20, 59:19,
64:19, 72:8,
75:10, 82:1,
84:10, 84:19,
85:11, 85:12,
95:8, 95:14,
104:3, 105:17
**leave** [4] - 101:24,
102:24, 104:16,
105:3
**leaves** [2] - 62:14,
70:3
**left** [1] - 96:24
**legal** [2] - 43:8,
49:23
**lenient** [1] - 63:23
**LENNON** [2] - 1:17,
4:19
**Lennon** [2] - 4:20,
5:6
**Leslie** [4] - 5:21,
9:23, 29:16,
33:19
**LESLIE** [1] - 2:3
**less** [3] - 10:18,
46:5, 86:4
**less-than-load** [1] -
46:5
**letter** [3] - 43:20,
43:21, 44:1
**level** [2] - 36:7,

81:9
**liability** [4] - 24:19,
26:23, 73:13,
73:16
**liable** [6] - 13:1,
13:9, 13:21, 24:2,
66:2, 73:23
**license** [2] - 89:18,
90:6
**licensee** [4] -
75:22, 76:7,
76:12, 77:12
**light** [2] - 8:15, 78:1
**lignite** [1] - 53:24
**likely** [1] - 93:22
**Limelight** [3] -
44:6, 44:9, 44:21
**limits** [1] - 22:5
**line** [9] - 4:22, 5:18,
7:3, 7:24, 33:20,
35:6, 38:20,
38:21, 81:4
**lines** [3] - 31:21,
35:6, 38:16
**Link** [3] - 13:13,
43:18, 45:11
**linkage** [1] - 17:23
**listed** [1] - 14:14
**listen** [1] - 100:5
**lists** [1] - 14:21
**litany** [1] - 68:2
**literal** [1] - 77:15
**literally** [3] - 35:14,
85:4, 97:18
**litigated** [1] - 68:22
**LLC** [9] - 3:7, 3:7,
3:8, 6:20, 6:21,
35:7, 35:9, 62:12
**LLP** [9] - 2:2, 2:7,
2:9, 2:18, 3:2,
3:5, 3:14, 3:17
**load** [1] - 46:5
**loaded** [1] - 46:16
**loads** [1] - 46:20
**locations** [1] -
74:14
**log** [1] - 94:13
**logical** [1] - 48:1
**logistical** [2] -
79:24, 80:13
**logistics** [5] -
46:13, 46:18,
46:21, 48:3
**look** [26] - 14:9,
15:23, 22:16,
24:12, 27:11,
31:8, 32:9, 32:22,
33:11, 34:2, 34:6,
35:13, 37:5, 38:9,
38:19, 39:4, 39:5,

47:15, 47:22,
55:1; 59:4, 59:22,
76:16, 90:14,
91:6, 106:14
**looked** [4] - 19:9,
38:18, 77:10,
99:2
**looking** [10] -
34:19, 35:5,
35:23, 37:7, 38:2,
38:5, 38:12,
39:11, 90:2,
105:4
**looks** [1] - 91:7
**lump** [1] - 80:11
**lumps** [1] - 77:22

## M

**MacPherson** [1] -
5:3
**Magistrate** [1] -
1:13
**main** [1] - 42:16
**management** [2] -
105:12, 106:8
**mand** [1] - 7:9
**manifest** [2] -
46:19, 47:16
**manifests** [2] -
47:20, 48:7
**manner** [1] - 75:14
**March** [1] - 75:14
**MARK** [9] - 2:10,
9:17, 11:6, 17:3,
21:9, 23:22, 27:9,
28:11, 65:12
**Mark** [6] - 6:5, 9:18,
11:2, 27:2, 30:3,
65:13
**mark** [6] - 20:4,
29:19, 29:24,
41:17, 42:9, 65:6
**marketed** [1] -
75:23
**marketing** [1] -
76:2
**material** [6] - 18:23,
27:18, 34:19,
54:21, 62:20
**materials** [2] - 19:5,
106:10
**MATS** [1] - 28:14
**matter** [5] - 4:2,
24:11, 26:7,
67:18, 77:16
**ME2C** [19] - 30:10,
30:19, 30:23,
31:2, 31:5, 31:23,
36:15, 36:18,

39:23, 41:8, 70:8,
74:16, 75:23,
77:4, 82:22, 83:9,
83:14, 83:24,
84:5
**ME2C's** [2] - 41:11,
78:15
**MEAGHER** [1] - 2:2
**mean** [11] - 7:8,
58:8, 58:11, 60:1,
84:10, 84:11,
91:5, 94:22,
99:15, 105:22
**meaning** [3] - 24:3,
52:8, 53:4
**means** [1] - 53:11
**meant** [1] - 92:14
**measure** [2] -
25:13, 25:20
**measurement** [2] -
23:2, 23:3
**medication** [5] -
18:21, 18:24,
19:4, 19:6, 67:11
**medicine** [1] -
66:23
**meet** [2] - 18:19,
39:22
**members** [1] - 57:4
**mention** [6] - 23:1,
39:14, 46:2,
86:20, 92:14,
92:22
**mentioned** [5] -
14:17, 28:9, 58:7,
86:23, 98:21
**mercury** [8] -
22:24, 28:15,
36:18, 50:8, 80:2,
80:5, 80:14,
80:24
**mere** [1] - 21:11
**MerSorb** [3] - 35:8,
35:10, 35:15
**MES** [15] - 1:3, 4:3,
74:12, 74:21,
75:11, 75:20,
76:16, 76:18,
76:22, 77:8, 78:3,
89:16, 89:17,
90:14, 90:21
**message** [1] -
45:10
**met** [2] - 18:8,
93:16
**method** [34] -
13:10, 13:11,
13:16, 14:3,
18:10, 19:1, 19:3,
19:10, 20:3,

21:16, 22:2,
25:21, 30:23,
31:12, 38:23,
43:12, 43:13,
43:22, 43:24,
44:6, 44:11,
44:15, 45:1, 46:4,
47:15, 51:1, 51:7,
51:8, 65:24,
67:15, 68:12,
69:6, 71:9, 93:18
**methods** [1] -
92:10
**Midwest** [12] - 4:3,
64:12, 74:11,
75:1, 75:6, 75:15,
76:15, 77:19,
89:17, 89:19,
93:16, 96:5
**MIDWEST** [1] - 1:3
**might** [7] - 23:16,
28:5, 33:8, 60:22,
61:3, 104:2,
105:16
**mind** [1] - 94:14
**mindful** [1] - 95:1
**minutes** [1] - 10:6
**mistake** [1] - 77:18
**Mix** [6] - 17:7,
17:12, 21:10,
21:15, 21:22,
30:18
**mixed** [2] - 21:16,
34:15
**mixture** [1] - 36:2
**Mod** [15] - 11:10,
14:11, 14:17,
34:8, 34:15,
35:11, 35:17,
36:2, 36:5, 41:7,
64:7, 96:12,
96:14, 102:15,
102:16
**moment** [5] -
32:11, 60:16,
87:4, 97:20,
104:19
**money** [3] - 21:7,
57:10, 68:4
**moniker** [2] -
74:16, 77:4
**monitoring** [1] -
95:16
**moot** [1] - 74:3
**Morico** [1] - 7:13
**MORICO** [1] - 3:14
**Morris** [2] - 6:3,
7:20
**MORRIS** [2] - 2:7,
3:17

most [4] - 15:19,
47:13, 48:22,
94:21
**motion** [10] - 11:13,
26:21, 30:10,
40:4, 59:16, 67:2,
69:13, 73:2,
73:19, 82:6
**motions** [13] - 4:7,
8:3, 8:4, 8:17,
65:11, 69:18,
72:6, 72:10, 82:2,
89:4, 105:14,
105:21, 106:2
**move** [10] - 8:22,
10:24, 29:12,
37:2, 56:4, 59:18,
62:15, 65:2, 72:6,
78:7
**moves** [1] - 52:10
**moving** [6] - 5:23,
8:12, 8:20, 9:11,
36:14, 74:9
**Moving** [2] - 2:11
**MR** [59] - 4:19, 6:2,
6:11, 6:24, 7:7,
7:18, 9:17, 11:6,
17:3, 21:9, 23:22,
27:9, 28:11, 42:4,
42:12, 49:3,
49:22, 50:22,
52:2, 52:23,
53:19, 55:13,
56:19, 58:23,
59:13, 60:15,
61:6, 62:4, 63:21,
65:3, 65:12,
72:18, 74:9, 77:3,
78:6, 78:9, 81:13,
81:22, 82:4,
82:12, 82:17,
85:13, 86:9, 87:7,
89:5, 89:12,
90:23, 91:23,
92:21, 93:6,
94:17, 94:24,
96:9, 98:16,
99:21, 100:11,
101:12, 102:12,
104:6
**MS** [9] - 5:15,
29:15, 33:18,
35:22, 37:18,
38:18, 39:17,
69:19, 71:2
**multi** [6] - 13:18,
13:20, 18:10,
24:16, 48:16,
69:2
**multi-step** [6] -

13:18, 13:20,
18:10, 24:16,
48:16, 69:2
**multiple** [1] - 24:17
**must** [5] - 39:23,
44:3, 55:24,
68:10, 84:17

## N

**nail** [1] - 71:3
**Nalco** [19] - 33:6,
34:7, 34:21,
34:23, 36:1, 36:5,
36:7, 36:11,
36:12, 36:15,
36:19, 37:5,
37:11, 37:13,
37:20, 38:22,
60:1, 68:15, 70:7
**name** [2] - 90:9,
93:24
**named** [3] - 11:11,
79:12, 92:8
**namely** [1] - 31:7
**natural** [1] - 42:22
**nature** [1] - 103:23
**necessarily** [4] -
51:24, 53:13,
100:1, 103:1
**necessary** [2] -
66:4, 67:6
**need** [16] - 16:1,
23:11, 25:11,
43:12, 49:5,
49:24, 50:18,
51:2, 51:4, 54:10,
54:12, 57:23,
65:1, 72:6, 85:14,
105:11
**needed** [2] - 42:11,
86:2
**needs** [4] - 56:24,
90:20, 99:6,
101:4
**negotiating** [1] -
80:1
**NEMEC** [1] - 2:3
**Nemec** [1] - 5:19
**Nemunaitis** [12] -
4:22, 42:5, 42:7,
48:11, 58:6,
64:24, 89:6, 89:8,
90:11, 96:21,
100:6, 102:14
**NEMUNAITIS** [30] -
1:20, 42:4, 42:12,
49:3, 49:22,
50:22, 52:2,
52:23, 53:19,

55:13, 56:19, 58:23, 59:13, 60:15, 61:6, 62:4, 63:21, 65:3, 89:5, 89:12, 90:23, 91:23, 92:21, 93:6, 94:17, 94:24, 96:9, 98:16, 99:21, 100:11
**Neology** [1] - 80:17
**never** [4] - 47:19, 84:8, 85:21, 87:11
**nevertheless** [1] - 97:6
**new** [2] - 44:23, 54:3
**New** [3] - 5:19, 46:8, 107:2
**next** [5] - 4:15, 5:23, 6:7, 27:17, 52:23
**nice** [1] - 46:8
**NICHOLS** [2] - 2:7, 3:17
**Nichols** [2] - 6:3, 7:20
**nine** [4] - 11:14, 29:21, 39:24, 41:13
**nitrous** [1] - 22:23
**no"** [1] - 48:12
**Nokia** [2] - 86:12, 103:3
**non** [22] - 30:13, 30:14, 31:5, 31:15, 31:16, 32:2, 33:2, 33:11, 34:3, 34:11, 34:13, 34:16, 36:3, 38:14, 39:3, 59:24, 62:21, 63:4, 70:5, 70:11, 70:19, 90:5
**non-carbon** [1] - 31:16
**non-dispositive** [1] - 34:13
**non-exclusive** [1] - 90:5
**non-infringing** [19] - 30:13, 30:14, 31:5, 31:15, 32:2, 33:2, 33:11, 34:3, 34:11, 34:16, 36:3, 38:14, 39:3, 59:24, 62:21, 63:4, 70:5, 70:11, 70:19

**none** [4] - 68:5, 68:7, 84:4, 88:1
**Notary** [1] - 107:7
**note** [4] - 68:14, 73:3, 85:17, 86:11
**noted** [1] - 72:7
**nothing** [17] - 15:6, 17:20, 19:16, 25:1, 25:15, 26:3, 26:7, 26:15, 28:18, 62:19, 62:24, 67:12, 68:9, 69:9, 74:18, 74:20, 76:17
**notice** [8] - 40:8, 84:7, 87:15, 87:19, 88:3, 88:8, 88:12, 100:21
**notified** [3] - 86:24, 87:11, 87:12
**notify** [1] - 85:18
**nowhere** [2] - 13:24, 22:12
**NRG** [4] - 3:16, 7:11, 7:13, 72:23
**Number** [1] - 4:5
**number** [2] - 82:18, 99:4
**numerous** [1] - 30:21

**O**

**object** [1] - 32:10
**obligations** [2] - 28:14, 28:15
**obtain** [1] - 22:12
**obtained** [3] - 18:2, 89:17, 89:19
**obviated** [3] - 72:9, 73:4, 73:5
**obvious** [1] - 68:6
**obviously** [3] - 12:22, 24:20, 102:1
**occasional** [2] - 30:16, 31:18
**occur** [2] - 16:19, 65:23
**occurring** [2] - 98:20, 103:2
**occurs** [1] - 42:22
**OF** [2] - 1:1, 107:4
**offer** [1] - 39:23
**office** [5] - 5:19, 6:14, 75:5, 75:16, 78:2
**once** [5] - 55:19, 62:14, 76:11,

77:11, 98:17
**one** [50] - 8:8, 8:9, 8:11, 9:7, 9:14, 10:4, 10:18, 13:9, 14:11, 21:10, 21:17, 21:18, 23:5, 23:23, 27:24, 30:22, 32:7, 33:1, 36:4, 37:4, 37:17, 40:23, 41:1, 44:10, 49:23, 50:14, 52:16, 57:1, 58:1, 62:11, 63:15, 64:14, 66:22, 68:18, 71:8, 72:8, 72:16, 73:4, 77:16, 83:16, 86:16, 89:14, 90:15, 92:7, 95:5, 95:7, 103:8, 103:12, 103:20, 104:3
**ones** [1] - 25:8
**ongoing** [3] - 85:21, 85:24, 99:24
**opening** [2] - 9:6, 56:7
**operate** [1] - 12:12
**operating** [2] - 42:18, 101:22
**operators** [2] - 21:2, 21:6
**opinion** [3] - 30:17, 34:7, 34:23
**opportunity** [3] - 59:5, 59:17, 92:19
**opposite** [1] - 30:21
**option** [1] - 98:18
**oral** [2] - 4:6, 4:10
**order** [9] - 10:3, 13:21, 28:22, 44:2, 68:10, 86:12, 86:13, 89:9, 106:11
**organization** [1] - 64:14
**original** [3] - 100:19, 100:21, 100:24
**otherwise** [5] - 43:7, 56:1, 66:1, 70:8, 106:14
**outlet** [1] - 23:4
**outside** [1] - 69:7
**outsource** [1] - 66:10

**overrule** [2] - 34:22, 37:20
**own** [4] - 32:18, 62:12, 80:9, 80:10
**owned** [4] - 79:8, 79:10, 89:17, 92:6
**owner** [8] - 36:12, 36:16, 40:8, 75:7, 75:11, 75:16, 76:6, 76:15
**owners** [1] - 95:5
**ownership** [2] - 55:20, 77:21
**owns** [2] - 75:2, 79:14
**oxide** [1] - 22:23

**P**

**P.A** [2] - 2:14, 3:10
**p.m** [3] - 1:10, 10:13, 106:16
**page** [1] - 15:23
**Pages** [1] - 107:9
**pages** [1] - 65:16
**paid** [2] - 46:7, 46:10
**panel** [1] - 34:21
**paragraph** [29] - 14:9, 14:19, 14:23, 22:7, 22:13, 27:12, 27:21, 31:9, 39:5, 39:6, 53:1, 75:1, 75:19, 75:21, 76:9, 76:24, 77:1, 77:9, 78:14, 78:15, 79:6, 79:15, 79:18, 88:5, 92:1, 92:5, 92:15, 104:8
**Paragraph** [2] - 77:3, 77:24
**paragraphs** [20] - 27:11, 43:5, 43:7, 45:3, 52:4, 52:5, 52:8, 52:19, 55:16, 56:16, 63:19, 79:2, 80:8, 84:2, 84:3, 84:4, 84:21, 96:7, 101:18, 102:20
**parent** [11] - 79:11, 79:13, 84:13, 84:16, 92:6, 92:7, 92:8, 92:15, 94:7, 94:12, 95:13
**part** [15] - 13:11,

15:24, 16:18, 19:20, 22:8, 33:5, 47:11, 51:7, 53:10, 55:18, 58:24, 59:20, 83:11, 83:16, 91:8
**participation** [1] - 26:16
**particular** [19] - 21:17, 23:10, 42:20, 51:6, 53:1, 53:6, 54:13, 54:21, 55:7, 60:9, 60:13, 61:13, 62:9, 66:11, 68:17, 69:6, 74:20, 102:3, 102:5
**particularly** [4] - 33:14, 55:10, 63:8, 93:3
**parties** [14] - 5:13, 6:23, 10:24, 15:8, 25:12, 25:19, 33:15, 89:15, 102:24, 105:20, 105:22, 106:5, 106:9
**parties'** [2] - 8:21, 9:1
**party** [7] - 13:15, 36:14, 44:5, 65:23, 90:4, 95:6, 103:12
**patent** [100] - 12:1, 12:20, 13:1, 13:7, 17:16, 19:2, 21:19, 31:12, 31:14, 31:15, 31:19, 31:22, 34:9, 36:12, 36:13, 36:16, 38:16, 38:20, 38:22, 39:1, 39:4, 39:20, 40:1, 40:8, 40:11, 40:17, 41:4, 45:6, 46:4, 46:12, 47:10, 47:15, 52:12, 53:3, 53:8, 61:24, 62:2, 62:4, 62:17, 64:21, 67:16, 68:17, 68:20, 70:12, 71:5, 71:7, 75:5, 75:15, 76:5, 76:6, 76:15, 76:19, 77:13, 77:22, 78:2, 80:6, 81:21, 83:5,

83:23, 84:1, 84:6,
84:7, 84:17,
84:24, 85:16,
85:19, 86:5,
86:11, 87:9,
87:13, 87:15,
87:17, 87:19,
87:23, 90:7,
90:15, 91:8,
93:17, 93:19,
94:2, 94:7, 94:9,
94:13, 95:4,
95:13, 95:14,
95:23, 95:24,
96:15, 96:18,
97:5, 97:14,
97:22, 98:7,
98:14, 99:9,
99:22, 103:6
**patent-in-suit** [1] -
31:12
**patented** [10] -
43:24, 64:12,
64:16, 64:21,
71:9, 76:1, 76:3,
77:5, 92:10,
96:19
**patentee** [3] - 44:3,
95:22, 99:6
**patentees'** [1] -
96:4
**patently** [1] - 68:6
**patents** [22] -
30:24, 32:16,
41:13, 63:13,
75:3, 75:8, 75:12,
75:17, 75:23,
76:13, 77:16,
82:24, 83:2,
83:14, 83:20,
85:15, 89:18,
89:20, 90:18,
95:7, 95:18,
104:3
**patents-in-suit** [3] -
63:13, 75:23,
82:24
**Paul** [1] - 7:12
**PAUL** [1] - 3:14
**Pavlish** [1] - 5:3
**peculiar** [1] - 69:5
**pecuniary** [1] - 57:9
**pending** [2] - 8:4,
95:6
**people** [12] - 14:12,
64:9, 85:4, 85:7,
85:8, 86:23,
93:21, 93:22,
96:16, 96:17,
104:2, 104:14

**percent** [3] - 53:23,
54:1, 54:15
**perform** [14] - 12:2,
12:6, 13:15,
14:12, 20:16,
22:1, 44:5, 44:11,
48:18, 49:7, 51:1,
51:3, 55:8, 92:9
**performance** [12] -
13:10, 13:24,
14:2, 17:20, 20:2,
22:10, 23:2,
25:24, 28:19,
49:16, 66:11,
69:2
**performed** [1] -
69:6
**performing** [5] -
11:24, 12:15,
13:23, 23:5,
80:23
**performs** [6] -
13:14, 44:4,
44:15, 44:16,
44:22, 49:21
**perhaps** [3] - 28:3,
71:23, 77:18
**period** [1] - 87:11
**periods** [1] - 94:21
**permission** [1] -
72:21
**person** [1] - 66:3
**personnel** [1] -
85:1
**perspective** [1] -
82:11
**pertains** [3] - 30:4,
30:7, 70:14
**phone** [1] - 33:19
**phrase** [1] - 33:6
**phrased** [1] - 37:11
**phrasing** [2] -
37:13, 37:14
**pick** [2] - 54:20,
87:8
**piece** [1] - 25:15
**place** [1] - 91:7
**plainly** [3] - 65:19,
66:22, 67:1
**plaintiff** [24] - 8:7,
14:20, 16:2,
36:21, 40:13,
50:17, 64:12,
68:23, 71:4,
71:19, 73:5,
74:23, 75:18,
76:4, 76:8, 77:17,
77:19, 90:8,
93:13, 97:2,
97:12, 97:19,

98:5, 98:8
**plaintiff's** [3] -
16:18, 66:17,
76:20
**plaintiffs** [13] -
4:21, 4:24, 5:2,
15:2, 16:8, 32:20,
38:3, 42:3, 65:15,
66:7, 74:10,
90:10, 105:3
**Plaintiffs** [2] - 1:4,
1:21
**plaintiffs'** [11] -
4:17, 8:21, 8:24,
29:14, 33:8, 34:1,
39:16, 42:1,
88:22, 88:23,
89:4
**plan** [2] - 46:20,
72:17
**Plant** [1] - 62:14
**plant** [44] - 11:20,
11:23, 19:24,
21:1, 21:6, 26:5,
27:17, 27:18,
27:24, 29:3, 35:7,
35:9, 35:19, 40:2,
49:7, 52:11, 53:1,
53:5, 53:6, 53:22,
52:23, 54:20,
54:21, 54:22,
55:3, 55:21, 56:1,
56:2, 57:6, 57:18,
60:18, 60:24,
62:9, 71:14,
73:22, 79:8,
79:15, 80:5,
81:12, 81:19,
93:23, 101:17,
101:23
**plants** [34] - 12:4,
12:12, 12:13,
14:7, 15:6, 16:13,
20:10, 20:11,
20:15, 25:5, 27:8,
32:12, 32:23,
32:24, 34:3,
34:13, 49:8, 50:1,
51:20, 55:6,
55:17, 60:6, 60:7,
60:14, 61:4, 62:6,
62:23, 64:5, 64:8,
78:13, 78:18,
78:24, 79:22,
80:10
**plausibility** [1] -
102:19
**plausible** [11] -
39:23, 41:4, 48:5,
48:21, 51:14,

63:12, 64:20,
85:7, 93:20,
94:10, 95:15
**plausibly** [8] -
30:11, 50:11,
50:18, 97:23,
98:6, 98:12,
99:17, 104:1
**plead** [18] - 16:5,
30:6, 36:12,
36:21, 43:1, 43:9,
43:12, 48:10,
49:11, 82:22,
83:10, 83:12,
83:16, 85:22,
87:12, 95:5, 99:5,
104:17
**pleaded** [8] - 20:8,
20:23, 21:5, 21:8,
25:1, 55:1, 68:23,
97:3
**pleading** [18] -
16:21, 36:16,
36:22, 39:22,
40:6, 47:22, 48:9,
49:5, 56:10,
63:24, 83:7, 86:2,
92:17, 93:12,
95:9, 95:15,
105:1, 105:5
**pleadings** [5] -
70:18, 88:16,
103:13, 104:13,
104:18
**pleads** [1] - 24:24
**pled** [9] - 30:20,
31:23, 80:20,
83:1, 85:18, 87:1,
87:21, 88:3,
105:5
**plenty** [3] - 15:1,
28:20, 29:4
**point** [29] - 18:14,
23:23, 25:22,
26:19, 36:5,
39:11, 40:22,
41:1, 47:13,
49:23, 50:3, 51:5,
52:3, 54:17,
55:24, 58:24,
61:7, 61:10,
61:22, 61:23,
63:15, 63:22,
70:13, 75:10,
84:12, 95:20,
99:18, 101:14,
103:19
**pointed** [1] - 73:19
**pointing** [1] - 102:4
**points** [4] - 15:23,

30:1, 49:23,
75:19
**portable** [1] - 46:14
**portfolio** [1] - 96:3
**portion** [8] - 59:16,
61:23, 85:3,
86:18, 104:10,
104:12, 104:20,
104:21
**portions** [1] - 59:8
**posed** [2] - 22:4,
71:4
**possess** [1] - 40:1
**possible** [6] - 13:9,
23:14, 61:12,
102:23, 105:15
**possibly** [1] - 61:18
**post** [6] - 86:3,
97:6, 98:11,
99:10, 100:16,
100:22
**post-suit** [5] - 97:6,
98:11, 99:10,
100:16, 100:22
**potential** [2] -
33:11, 59:23
**potentially** [1] -
62:6
**power** [23] - 11:20,
11:23, 12:4,
12:12, 12:13,
14:7, 15:5, 19:23,
25:5, 26:5, 27:17,
27:18, 27:24,
34:3, 34:13, 35:7,
35:9, 52:11, 53:5,
60:6, 71:14,
73:10, 73:11
**powered** [1] - 27:18
**PP&L** [1] - 104:14
**PPL** [12] - 84:23,
85:2, 85:5, 85:10,
86:17, 86:24,
93:16, 94:5,
94:11, 103:24,
104:10
**PPL/Talon** [1] -
96:5
**practical** [1] - 33:2
**practice** [3] - 15:17,
65:24, 76:3
**practiced** [1] -
75:24
**practices** [1] -
43:23
**pre** [6] - 40:6,
40:13, 40:20,
41:21, 97:4, 98:2
**pre-suit** [4] - 40:13,
40:20, 41:21,

97:4
**pre-suit/post-suit** [1] - 98:2
**precede** [1] - 87:19
**precedent** [1] - 95:2
**preceding** [1] - 94:1
**precludes** [1] - 22:6
**predecessor** [3] - 85:18, 85:23, 88:4
**predicated** [1] - 36:8
**preempt** [1] - 7:8
**preexisting** [1] - 39:8
**premise** [1] - 97:17
**prepared** [1] - 54:22
**presentations** [1] - 64:10
**pretty** [3] - 56:9, 63:23, 99:3
**previewed** [2] - 29:18, 30:3
**previously** [1] - 39:1
**principal** [1] - 10:9
**principle** [1] - 45:24
**problem** [1] - 24:10
**problems** [2] - 28:24, 29:4
**proceeding** [1] - 105:10
**proceedings** [1] - 107:11
**process** [12] - 22:21, 36:10, 38:3, 38:4, 64:11, 64:12, 64:16, 64:17, 64:22, 68:5, 69:3, 96:19
**processes** [1] - 29:3
**produced** [1] - 60:5
**producing** [1] - 55:7
**product** [2] - 37:7, 38:13
**products** [6] - 35:1, 37:24, 53:21, 75:24, 76:2, 80:20
**Professional** [1] - 107:7
**pronounced** [1] - 18:4

**proof** [1] - 40:5
**proper** [1] - 90:9
**property** [1] - 42:18
**proposal** [1] - 9:21
**propose** [1] - 10:5
**proposed** [1] - 106:10
**proposition** [1] - 34:5
**provable** [1] - 18:13
**prove** [3] - 44:2, 97:20, 98:5
**proved** [1] - 67:4
**provide** [13] - 16:2, 16:9, 16:23, 25:8, 27:16, 31:3, 31:4, 43:2, 51:18, 56:23, 62:7, 93:24
**provided** [7] - 20:12, 32:22, 35:18, 36:23, 40:8, 46:12, 99:3
**provides** [7] - 14:12, 60:17, 64:19, 77:13, 93:19, 95:8, 99:8
**providing** [9] - 14:6, 15:4, 17:15, 19:23, 21:4, 55:2, 79:23, 80:12, 80:21
**provision** [3] - 16:10, 20:18, 36:9
**Public** [1] - 107:7
**public** [2] - 75:3, 76:14
**purchase** [1] - 80:13
**purchased** [1] - 35:8
**purport** [2] - 34:22, 37:20
**purportedly** [1] - 19:2
**purpose** [4] - 50:6, 55:11, 57:7, 57:10
**purposes** [8] - 11:12, 18:12, 24:18, 35:1, 37:22, 38:1, 67:1, 82:2
**put** [6] - 15:2, 18:7, 18:22, 32:23, 38:2, 66:22
**puts** [1] - 64:7
**putting** [2] - 25:3,

42:19

**Q**

**qualifies** [1] - 22:24
**qualify** [1] - 54:15
**questions** [9] - 37:1, 42:11, 60:4, 69:13, 70:22, 71:4, 89:11, 94:4, 103:16
**quick** [2] - 43:22, 58:6
**quickest** [1] - 52:3
**quickly** [1] - 37:1
**quite** [3] - 17:10, 27:22, 38:19
**quote** [2] - 31:19, 55:4
**quote/unquote** [1] - 44:16
**quotes** [1] - 34:23

**R**

**raise** [1] - 100:13
**raised** [4] - 8:19, 8:22, 91:21, 93:3
**rather** [1] - 31:18
**raw** [1] - 23:4
**RC** [3] - 22:11, 53:2, 70:3
**Re** [1] - 62:24
**reaction** [2] - 20:19, 42:23
**read** [3] - 43:21, 58:8, 97:10
**reading** [6] - 27:14, 35:24, 68:7, 76:10, 90:12, 104:9
**real** [1] - 43:21
**really** [17] - 15:4, 19:9, 24:8, 28:21, 37:14, 44:19, 48:13, 51:10, 54:18, 56:13, 56:14, 57:20, 69:4, 74:14, 89:23, 90:5, 94:10
**realm** [2] - 102:18, 102:21
**reason** [5] - 18:5, 64:20, 93:11, 98:3, 99:11
**reasonable** [1] - 41:11
**reasons** [4] - 22:11, 26:20, 72:3,

88:15
**REATH** [1] - 3:2
**rebuttal** [7] - 10:10, 65:1, 65:8, 69:17, 89:1, 100:9, 101:10
**rebuttals** [1] - 9:1
**recap** [1] - 30:23
**receive** [3] - 27:14, 45:13
**receives** [2] - 35:8, 45:8
**recent** [2] - 18:4, 86:13
**recited** [1] - 68:3
**recognition** [1] - 39:7
**recognized** [1] - 8:1
**recognizing** [1] - 63:24
**reconcilable** [2] - 37:16, 37:19
**reconcile** [1] - 66:19
**record** [14] - 4:1, 4:9, 4:14, 4:16, 38:10, 61:10, 61:19, 68:15, 78:1, 87:4, 89:21, 90:17, 107:9, 107:10
**records** [3] - 75:3, 75:5, 76:14
**reduction** [2] - 22:22, 54:15
**refer** [4] - 55:15, 57:1, 74:17, 84:3
**reference** [6] - 28:7, 28:14, 70:6, 71:8, 71:24, 92:3
**referenced** [1] - 68:19
**referred** [3] - 68:16, 68:18, 81:11
**referring** [1] - 47:10
**refers** [1] - 77:3
**refile** [1] - 100:20
**Refined** [1] - 2:11
**refined** [66] - 5:23, 6:4, 8:12, 8:20, 9:12, 9:19, 10:15, 12:2, 14:1, 14:3, 14:7, 14:11, 14:13, 15:16, 19:20, 20:24, 24:2, 24:5, 25:7, 25:9, 25:13, 26:2, 26:4, 26:13, 26:14, 27:6,

27:13, 27:16, 27:23, 28:4, 29:8, 29:20, 30:4, 30:11, 30:12, 30:22, 31:2, 32:3, 32:10, 34:12, 35:7, 35:9, 42:18, 51:16, 52:9, 53:19, 54:3, 54:6, 54:19, 55:20, 57:6, 57:8, 57:17, 58:10, 60:17, 60:22, 62:3, 62:12, 65:13, 68:4, 70:2, 70:11, 71:12, 78:20, 96:13
**regard** [2] - 11:4, 29:5, 53:14, 53:17, 93:4, 98:1, 102:10
**regarding** [3] - 24:14, 25:24, 68:1
**regardless** [2] - 91:13, 93:23
**Registered** [1] - 107:6
**regulatory** [1] - 22:11
**rejecting** [1] - 36:20
**relate** [2] - 28:18, 53:16
**related** [9] - 8:5, 8:6, 39:14, 80:2, 80:13, 80:24, 95:7, 102:11, 103:22
**relates** [5] - 24:24, 28:19, 53:13, 72:7, 96:21
**relating** [6] - 10:1, 15:3, 15:6, 22:14, 23:9, 66:16
**relationship** [1] - 74:19
**relative** [1] - 95:24
**relaxed** [1] - 93:12
**rely** [1] - 43:17
**relying** [1] - 22:9
**remain** [2] - 74:4, 93:23
**remained** [1] - 93:21
**remaining** [3] - 82:10, 82:15, 93:8
**remedies** [1] - 99:22

**remember** [1] - 4:11
**remove** [2] - 36:17, 74:1
**removed** [1] - 101:22
**replead** [1] - 90:19
**repleaded** [1] - 90:20
**replies** [1] - 8:22
**reporter** [1] - 4:13
**REPORTER** [1] - 107:4
**Reporter** [1] - 107:7
**reporting** [1] - 83:1
**representations** [3] - 73:6, 73:24, 74:2
**representatives** [3] - 5:1, 5:2, 93:16
**represented** [1] - 7:12
**representing** [4] - 4:21, 4:24, 72:20, 104:5
**request** [3] - 59:16, 92:19, 92:24
**require** [4] - 13:2, 15:11, 31:1, 44:10
**required** [11] - 30:6, 36:13, 36:17, 39:21, 40:6, 40:12, 45:6, 49:15, 66:3, 71:20, 106:9
**requirement** [4] - 23:11, 39:18, 69:22, 70:24
**requirements** [1] - 86:2
**requires** [6] - 13:5, 13:6, 13:11, 13:13, 44:24, 71:22
**requiring** [1] - 57:3
**research** [2] - 40:24, 41:2
**resending** [1] - 45:9
**reserving** [1] - 10:9
**resolution** [1] - 105:21
**resolve** [2] - 105:14, 105:18
**respect** [11] - 62:22, 81:6, 82:21, 84:11, 87:18, 88:11,

88:16, 88:17, 102:5, 103:5, 104:7
**respective** [2] - 8:10, 9:3
**respond** [1] - 88:22
**responded** [2] - 8:7, 73:21
**response** [7] - 8:21, 8:24, 43:11, 45:10, 45:15, 63:18, 70:10
**responses** [2] - 69:21, 91:21
**responsibility** [1] - 66:10
**rest** [5] - 44:17, 46:9, 65:19, 72:16, 91:13
**results** [1] - 51:7
**Revenue** [2] - 22:16, 68:7
**Richard** [3] - 6:5, 9:18, 65:13
**RICHARD** [1] - 2:10
**Richards** [1] - 6:12
**RICHARDS** [2] - 2:14, 3:10
**Rick** [1] - 5:2
**riding** [1] - 32:24
**rights** [4] - 74:21, 76:7, 76:19, 77:21
**rigid** [1] - 10:23
**RODGER** [1] - 3:18
**Rodger** [1] - 7:19
**role** [1] - 72:13
**roughly** [1] - 42:8
**router** [1] - 45:21
**routers** [2] - 45:12, 45:16
**royalty** [1] - 99:24
**RPR** [2] - 107:18, 107:18
**rule** [1] - 96:24
**Rule** [1] - 102:2
**run** [1] - 26:9
**rungs** [1] - 101:22
**running** [1] - 93:22

---

## S

**S-Sorb** [3] - 35:8, 35:10, 35:15
**saw** [1] - 73:15
**scan** [2] - 46:15, 47:18
**scanner** [2] - 46:15, 47:7
**scanners** [3] -

46:24, 47:1, 47:18
**scanning** [1] - 48:2
**scenario** [1] - 58:3
**scenarios** [1] - 62:5
**schedule** [1] - 105:24
**scheduled** [2] - 105:12, 106:10
**Seattle** [1] - 46:8
**second** [9] - 17:1, 19:10, 20:21, 30:5, 50:9, 50:10, 52:17, 65:11, 77:21
**Section** [3] - 22:12, 22:16, 23:9
**section** [1] - 43:20
**Sections** [1] - 39:19
**see** [9] - 47:10, 56:15, 79:1, 79:20, 95:17, 102:7, 104:18, 105:4, 105:6
**seeking** [1] - 24:1
**seem** [1] - 32:20
**selling** [2] - 57:11, 76:2
**send** [2] - 45:13, 45:14
**sending** [2] - 45:19, 48:2
**sends** [1] - 45:7
**sense** [7] - 8:16, 42:7, 48:1, 55:9, 63:7, 85:6, 98:5
**sentence** [2] - 35:23, 92:2
**separate** [3] - 38:8, 41:7, 84:14
**separately** [3] - 8:17, 50:16, 85:15
**separates** [1] - 27:22
**separation** [2] - 40:19, 57:20
**series** [1] - 4:6
**services** [3] - 75:24, 76:3, 80:1
**set** [11] - 10:18, 16:2, 32:13, 54:3, 54:9, 55:23, 65:11, 72:7, 91:17, 96:16, 106:11
**sets** [10] - 8:17, 9:3, 9:5, 9:14, 11:5, 20:19, 37:6,

48:22, 51:15, 58:9
**setting** [1] - 95:2
**seven** [1] - 94:9
**several** [4] - 73:13, 73:16, 89:22, 101:22
**severally** [1] - 73:23
**shall** [1] - 13:1
**share** [1] - 9:21
**Shores** [2] - 3:7, 6:20
**short** [1] - 56:15
**show** [6] - 16:22, 25:11, 44:13, 54:10, 75:5, 78:3
**showing** [1] - 75:16
**side** [14] - 4:17, 29:14, 32:9, 32:13, 33:10, 39:16, 42:2, 56:8, 58:1, 58:2, 58:8, 61:23, 89:4, 91:22
**sides** [3] - 13:18, 15:10, 57:22
**signed** [1] - 57:5
**significant** [4] - 12:10, 14:23, 15:19, 18:3
**similar** [5] - 8:11, 11:15, 21:11, 27:20, 77:9
**similarities** [1] - 24:13
**similarly** [1] - 25:17
**simple** [1] - 12:23
**simply** [4] - 63:13, 76:17, 80:21, 103:20
**single** [8] - 13:15, 13:22, 15:14, 24:18, 40:16, 44:5, 73:8, 74:6
**sitting** [1] - 99:1
**situation** [4] - 25:18, 57:21, 79:8, 95:3
**SKADDEN** [1] - 2:2
**Skadden** [1] - 5:16
**skin** [1] - 18:23
**slagging** [1] - 29:1
**slight** [1] - 59:20
**SMITH** [2] - 3:18, 7:18
**Smith** [1] - 7:19
**sneaky** [1] - 66:9
**so-called** [2] - 12:3, 12:6

**sold** [3] - 30:11, 33:7, 75:24
**sole** [2] - 75:7, 75:16
**solution** [3] - 35:11, 35:17, 36:2
**someone** [5] - 21:12, 43:23, 66:2, 66:11, 94:5
**sometimes** [1] - 95:21
**somewhat** [2] - 83:21, 90:3
**somewhere** [2] - 54:24, 61:19
**Sorb** [3] - 35:8, 35:10, 35:15
**sorbent** [1] - 27:18
**sorbents** [4] - 31:16, 31:17, 31:21, 39:9
**sorry** [9] - 7:8, 7:19, 15:19, 32:5, 33:19, 35:3, 52:13, 92:14, 99:7
**sort** [5] - 11:11, 22:7, 54:19, 56:21, 79:4
**sounded** [2] - 50:16, 90:13
**sounds** [4] - 48:15, 60:21, 90:19, 101:23
**space** [2] - 46:11, 54:8
**speaking** [1] - 11:13
**speaks** [1] - 28:10
**specific** [24] - 16:5, 16:21, 21:24, 34:20, 43:13, 44:24, 47:15, 51:5, 53:14, 53:17, 56:9, 63:4, 74:21, 77:8, 77:10, 79:19, 84:2, 87:18, 88:2, 88:9, 101:15, 102:4, 103:1
**specifically** [6] - 49:24, 52:20, 56:24, 76:19, 85:1, 85:9
**specification** [1] - 68:19
**specificity** [1] - 81:1
**specifics** [1] - 62:8

**specified** [1] - 10:3
**spend** [2] - 10:14, 10:19
**spends** [1] - 26:12
**spilled** [1] - 25:23
**spin** [1] - 104:24
**spin-off** [1] - 104:24
**split** [2] - 100:13, 101:2
**spoken** [1] - 9:20
**sprayer** [3] - 54:9, 62:13, 62:15
**spun** [5] - 85:2, 86:18, 104:10, 104:20, 104:23
**stack** [1] - 23:3
**stage** [8] - 40:6, 47:22, 48:9, 49:5, 63:24, 78:4, 95:9, 95:15
**stand** [5] - 40:8, 41:22, 56:17, 97:6, 98:9
**standard** [7] - 33:17, 37:6, 39:22, 45:17, 45:18, 63:23, 83:7
**standards** [1] - 93:12
**standing** [8] - 74:10, 75:20, 76:20, 76:21, 77:14, 89:13, 89:14, 89:15
**standpoint** [1] - 101:21
**stands** [2] - 87:4, 105:22
**start** [7] - 4:17, 5:10, 8:18, 9:10, 42:10, 78:14, 89:10
**started** [2] - 10:12, 81:9
**starting** [1] - 105:10
**starts** [1] - 43:22
**State** [2] - 107:1, 107:8
**statement** [2] - 25:2, 44:1
**statements** [1] - 92:4
**states** [1] - 31:15
**STATES** [1] - 1:1
**States** [1] - 1:13
**statute** [3] - 12:23, 13:4, 22:17

**step** [97] - 12:3, 12:6, 12:15, 12:16, 13:10, 13:15, 13:18, 13:20, 13:23, 14:2, 15:4, 15:11, 15:12, 15:18, 16:11, 16:13, 16:14, 16:15, 16:19, 17:2, 17:19, 17:21, 18:10, 19:1, 19:10, 19:18, 19:21, 20:1, 20:20, 20:21, 21:14, 22:1, 24:16, 24:24, 25:4, 25:14, 26:1, 26:3, 26:7, 26:17, 27:7, 27:17, 28:20, 29:5, 29:10, 31:1, 32:19, 33:3, 41:18, 41:20, 43:14, 43:24, 44:5, 44:11, 44:22, 45:1, 47:16, 48:16, 48:18, 49:1, 49:7, 49:16, 49:19, 49:21, 50:1, 50:4, 50:12, 50:13, 50:14, 50:19, 51:6, 51:19, 51:23, 52:5, 52:21, 53:15, 53:18, 55:8, 65:18, 65:24, 66:11, 66:16, 66:22, 67:15, 67:22, 67:24, 69:2, 69:6, 72:14, 87:2, 87:20
**steps** [24] - 11:24, 20:2, 20:12, 20:16, 21:2, 21:3, 21:5, 21:6, 24:17, 25:20, 44:15, 44:17, 45:7, 50:21, 51:3, 52:5, 66:4, 67:3, 67:8, 68:12, 68:21, 71:18, 92:10
**still** [4] - 37:21, 47:8, 79:10, 100:22
**stock** [2] - 22:19, 22:20
**stop** [1] - 98:18
**store** [1] - 47:3

**strange** [3] - 99:14, 99:20, 99:23
**strikes** [1] - 8:15
**strong** [1] - 19:15
**structure** [2] - 83:19, 101:21
**structured** [1] - 43:2
**stuff** [4] - 28:22, 46:7, 46:10, 66:9
**sub** [1] - 84:17
**subbituminous** [1] - 53:22
**subject** [1] - 18:5
**submit** [2] - 35:2, 106:9
**subscribed** [1] - 97:9
**subsequently** [1] - 86:24
**subsidiaries** [3] - 79:22, 79:23, 80:9
**subsidiary** [8] - 79:9, 79:10, 79:14, 84:13, 89:17, 92:7, 92:9
**substance** [1] - 12:7
**substantial** [13] - 30:13, 32:1, 34:11, 34:16, 36:3, 60:10, 62:21, 70:4, 70:5, 70:10, 70:18, 90:6
**substantive** [2] - 24:11, 101:5
**sued** [1] - 83:14
**sufficiency** [2] - 86:6, 86:10
**sufficient** [6] - 18:18, 48:10, 49:11, 65:17, 94:1, 99:8
**sufficiently** [6] - 20:7, 27:5, 51:14, 97:3, 104:1, 105:5
**suggest** [1] - 26:8
**suggested** [1] - 29:23
**suggesting** [6] - 16:8, 20:5, 25:1, 26:4, 40:5, 103:23
**suggests** [1] - 85:20
**suing** [1] - 88:10
**suit** [18] - 31:12,

40:7, 40:13, 40:20, 41:21, 63:13, 75:17, 75:23, 82:24, 88:19, 93:14, 97:4, 97:6, 98:2, 98:11, 99:10, 100:16, 100:22
**suit's** [1] - 97:14
**suit/post** [1] - 98:2
**sulfur** [1] - 22:24
**summary** [5] - 18:5, 18:7, 18:12, 18:16, 78:4
**sunscreen** [4] - 18:23, 19:5, 19:12, 67:14
**supplied** [2] - 18:8, 52:9
**supplier** [1] - 26:4
**supply** [1] - 25:8
**supplying** [2] - 25:12, 53:5
**support** [6] - 29:24, 40:19, 71:6, 73:13, 73:20, 99:10
**supporting** [1] - 71:18
**suppose** [1] - 99:21
**supposed** [1] - 90:7
**Supreme** [3] - 44:8, 44:17, 65:22
**surprise** [1] - 91:5
**survive** [1] - 30:10
**switch** [2] - 26:5, 26:6
**SYED** [1] - 3:5
**Syed** [3] - 7:3, 72:24, 82:13
**system** [3] - 50:2, 54:6, 55:24

# T

**tailor** [3] - 52:24, 53:10, 53:11
**tailored** [3] - 55:4, 55:5, 55:10
**tailoring** [4] - 53:6, 53:13, 53:16, 71:21
**Talen** [50] - 3:6, 3:7, 6:18, 6:19, 6:20, 7:2, 7:3, 7:5, 8:14, 8:23, 10:16, 72:11, 72:22, 81:7, 82:13, 82:24, 83:2, 83:3,

83:11, 83:12, 83:15, 83:24, 84:5, 84:6, 85:3, 85:5, 85:10, 85:12, 86:19, 86:24, 87:11, 87:13, 87:15, 87:16, 88:2, 88:4, 88:7, 88:17, 88:18, 93:10, 93:21, 93:23, 94:6, 96:12, 96:16, 102:17, 103:24, 104:11, 104:15, 104:21
**Talen's** [1] - 82:10
**talks** [3] - 45:4, 47:11, 62:5
**Talon's** [1] - 82:19
**tasks** [1] - 80:23
**tax** [6] - 22:12, 22:18, 23:1, 23:10, 54:16, 57:12
**technical** [2] - 79:23, 80:12
**technology** [6] - 11:18, 71:13, 76:1, 76:3, 77:6
**Teleconference** [1] - 1:11
**teleconference** [1] - 4:10
**telephonically** [1] - 105:13
**term** [1] - 53:20
**terms** [11] - 8:3, 24:22, 29:1, 33:16, 56:5, 56:17, 59:21, 59:23, 61:11, 96:4, 105:21
**test** [17] - 18:8, 22:5, 24:20, 24:21, 28:21, 29:5, 34:22, 34:23, 35:3, 37:15, 37:21, 38:12, 40:24, 44:23, 57:1, 57:2, 64:17
**tested** [1] - 18:6
**testing** [7] - 22:10, 23:13, 28:7, 28:18, 28:19, 29:7, 54:10
**tests** [1] - 56:12
**THE** [72] - 1:1, 1:1, 1:13, 4:1, 5:5, 5:22, 6:7, 6:16,

7:6, 7:15, 7:23,
10:11, 15:21,
20:4, 23:20, 27:2,
28:3, 29:11, 32:4,
35:4, 36:24, 38:7,
39:13, 41:23,
42:6, 48:11,
49:13, 50:9, 51:9,
52:13, 53:9,
54:23, 56:3, 58:5,
59:3, 59:18,
60:20, 61:9, 63:6,
64:23, 65:5,
69:15, 71:1, 72:5,
74:8, 76:23,
77:15, 78:7, 81:8,
81:14, 81:24,
82:7, 82:16,
84:10, 86:4, 87:5,
88:20, 89:7,
90:11, 91:2,
92:20, 93:1, 94:3,
94:20, 95:19,
96:20, 99:14,
100:3, 101:7,
102:8, 103:18,
105:6
**themselves** [6] -
4:12, 4:16, 5:12,
5:24, 6:22, 78:19
**theories** [1] - 26:24
**theory** [3] - 24:2,
56:21, 68:11
**thereafter** [1] -
49:20
**therefore** [2] -
84:17, 95:8
**thereto** [1] - 61:14
**they've** [9] - 52:16,
52:18, 55:5,
61:24, 64:6,
64:13, 67:21,
97:14
**thinking** [2] - 20:5,
67:5
**third** [1] - 102:24
**three** [4] - 39:12,
45:7, 82:22,
83:10
**tied** [1] - 67:22
**Tim** [1] - 6:15
**TIMOTHY** [1] - 2:19
**today** [10] - 4:6,
4:14, 5:18, 7:5,
69:11, 70:1, 70:8,
78:11, 80:3,
106:13
**today's** [1] - 6:5
**together** [6] - 10:7,
20:17, 21:3,

57:24, 77:23,
80:11
**took** [3] - 32:12,
45:22, 60:7
**top** [2] - 43:3, 58:23
**topic** [1] - 41:16
**topical** [1] - 18:21
**total** [3] - 57:17,
57:18, 57:20
**totally** [1] - 53:11
**touch** [2] - 69:1,
70:23, 78:8
**toward** [1] - 52:10
**towards** [1] - 19:10
**training** [2] - 80:18,
80:22
**transferring** [1] -
55:20
**transmit** [2] -
46:17, 47:19
**transport** [1] - 46:7
**treat** [2] - 85:14,
99:12
**treated** [2] - 14:6,
22:20
**treating** [3] - 14:5,
15:13, 19:3
**treatment** [4] -
18:10, 22:21,
39:8, 39:9
**treats** [1] - 84:14
**trigger** [1] - 21:4
**truck** [1] - 46:9
**trucking** [6] - 46:5,
46:6, 46:23, 47:2,
47:8, 47:24
**truckload** [1] - 46:7
**true** [3] - 41:10,
62:22, 107:10
**try** [4] - 4:11, 17:24,
22:19, 48:12
**trying** [4] - 54:17,
55:14, 60:20,
106:5
**tune** [1] - 64:17
**TUNNELL** [2] - 2:7,
3:17
**turbines** [1] - 26:9
**turn** [17] - 6:8, 11:3,
12:21, 23:16,
26:5, 26:6, 27:3,
29:13, 39:15,
42:9, 63:7, 65:6,
65:7, 65:11,
72:16, 87:23,
88:23
**turning** [1] - 85:16
**turns** [1] - 16:12
**two** [34] - 5:1, 5:18,
8:5, 8:6, 8:7, 8:9,

9:5, 9:7, 9:14,
9:15, 10:1, 11:5,
11:24, 12:17,
19:1, 23:24, 30:2,
36:24, 37:16,
40:20, 49:23,
50:12, 50:14,
52:21, 53:22,
67:8, 74:10, 77:7,
77:16, 83:14,
83:20, 83:22,
85:15, 94:4
**two-step** [1] - 19:1
**Twombly** [2] -
39:23, 86:3
**tying** [1] - 41:18
**Tyler** [1] - 6:13
**TYLER** [2] - 2:15,
3:11
**type** [5] - 21:16,
42:20, 53:24,
54:10, 68:9
**types** [3] - 11:15,
54:12, 62:5

### U

**U.S.C** [1] - 39:19
**ultimately** [2] -
59:7, 91:6
**unclear** [2] -
104:19, 105:1
**under** [7] - 13:6,
26:24, 39:19,
70:6, 79:2, 86:2
**understood** [1] -
92:20
**undisputed** [1] -
75:10
**undoubtedly** [1] -
33:1
**UNITED** [1] - 1:1
**United** [1] - 1:13
**unless** [4] - 23:17,
69:12, 70:21,
103:15
**unnamed** [1] -
80:10
**untreated** [1] - 23:5
**unusual** [2] - 30:15,
95:3
**up** [15] - 10:21,
21:23, 29:2, 46:9,
46:10, 54:3, 54:9,
54:20, 55:23,
58:1, 63:3, 73:1,
87:8, 104:4,
104:9
**users** [2] - 17:14,
45:14

**uses** [12] - 30:21,
31:6, 32:2, 34:11,
34:17, 36:3,
36:23, 63:4, 70:5,
70:11, 70:19,
71:15
**utilized** [1] - 97:1
**utterly** [1] - 66:14

### V

**Valinge** [1] - 83:6
**various** [1] - 80:23
**vendor** [1] - 25:6
**versa** [1] - 84:18
**viable** [1] - 59:6
**vicarious** [1] -
24:19
**vice** [1] - 84:17
**view** [5] - 38:15,
59:21, 70:7,
77:18, 91:6
**violated** [1] - 91:9
**VISTRA** [1] - 1:6
**vistra** [1] - 4:4
**Vistra** [5] - 2:20,
6:8, 6:13, 8:14,
8:23, 10:16,
72:11, 72:20,
72:22, 81:6,
81:10
**Vita** [6] - 17:7,
17:12, 21:10,
21:15, 21:22,
30:18
**Vita-Mix** [6] - 17:7,
17:12, 21:10,
21:15, 21:22,
30:18
**voice** [1] - 57:13
**vs** [2] - 4:4, 36:5

### W

**Wagner** [2] - 3:8,
6:21
**wait** [1] - 19:5
**walk** [2] - 43:15,
99:3
**warm** [2] - 57:22,
57:24
**wastewater** [1] -
29:3
**water** [2] - 57:23,
57:24
**ways** [2] - 32:18,
61:3
**wednesday** [1] -
1:10
**week** [2] - 87:9,

106:14
**whatsoever** [2] -
19:16, 29:9
**WHEREOF** [1] -
107:13
**whole** [3] - 56:23,
68:5, 89:15
**wholly** [1] - 89:16
**WiFi** [3] - 45:17,
45:21
**willful** [10] - 82:22,
88:16, 93:4, 93:9,
96:22, 97:10,
97:15, 99:5,
102:10, 103:17
**willfulness** [8] -
10:2, 73:2, 82:19,
83:8, 88:16,
99:10, 100:17,
100:23
**Wilmington** [2] -
107:12, 107:14
**wirelessly** [2] -
46:17, 47:19
**wish** [2] - 100:9,
106:13
**WITNESS** [1] -
107:13
**woefully** [1] - 25:21
**wondering** [3] -
16:17, 50:15,
51:10
**word** [1] - 48:12
**words** [8] - 13:8,
13:17, 14:24,
34:17, 51:1,
66:17, 85:4, 98:4
**works** [2] - 32:14,
60:11, 61:3,
64:15, 71:9,
105:18
**worth** [2] - 91:18,
94:19
**written** [1] - 96:10

### Y

**years** [3] - 94:9,
104:22, 104:23
**yesterday** [1] - 17:9
**York** [3] - 5:19,
46:8
**yourself** [1] - 60:8