## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MIDWEST ENERGY EMISSIONS    )
CORP. and MES INC.,    )
    )
         Plaintiffs,    )
    )
         v.    )      Civil Action No. 19-1334-RGA-CJB
    )
VISTRA ENERGY CORP., et al.,    )
    )
         Defendants.    )

## REPORT AND RECOMMENDATION

In this action filed by Plaintiffs Midwest Energy Emissions Corp. ("Midwest Energy")

and MES Inc. ("MES" and collectively with Midwest Energy, "Plaintiffs" or "ME2C") against

Vistra Energy Corp., IPH, LLC, Dynegy Inc., Illinois Power Resources Generating, LLC,

Dynegy Midwest Generation LLC and Dynegy Miami Fort, LLC (collectively, the "Vistra

Defendants"), AEP Generation Resources Inc., Southwestern Electric Power Co. and AEP Texas

Inc. (collectively, the "AEP Defendants"), NRG Energy, Inc., NRG Texas Power LLC, Midwest

Generation EME, LLC and Midwest Generation, LLC (collectively, the "NRG Defendants"),

Talen Energy Corporation, Brandon Shores LLC, Talen Generation LLC and H.A. Wagner LLC

(collectively, the "Talen Defendants"), Arthur J. Gallagher & Co., Gallagher Clean Energy, LLC

and AJG Coal, LLC (collectively, "AJG"), DTE REF Holdings, LLC and DTE REF Holdings II

LLC (collectively, "DTE"), Chem-Mod LLC ("Chem-Mod"), AJG Iowa Refined Coal LLC,

Joppa Refined Coal LLC, Thomas Hill Refined Coal LLC, Wagner Coaltech LLC, Walter Scott

Refined Coal LLC, Louisa Refined Coal, LLC, Belle River Fuels Company, LLC, Arbor Fuels

Company LLC, Portage Fuels Company, LLC and John Doe LLCs (collectively, the "RC

Defendants"), and CERT Coal Holdings LLC, CERT Holdings LLC, CERT Holdings 2018,

LLC, CERT Operations LLC, CERT Operations II LLC, CERT Operations III LLC, CERT

Operations IV LLC, CERT Operations V LLC and CERT Operations RCB LLC (collectively,

the "CERT Defendants"), ME2C alleges infringement of United States Patent Nos. 10,343,114

(the "'114 patent") and 8,168,147 (the "'147 patent" and collectively with the '114 patent, "the

asserted patents").  This Report and Recommendation addresses the following motions ("the

Motions"), all filed pursuant to Federal Rule of Civil Procedure 12(b)(6):  (1) the Vistra

Defendants' Motion to Dismiss, (D.I. 45); (2) the CERT Defendants' Motion to Dismiss, (D.I.

48); (3) the Talen Defendants' Motion to Dismiss, (D.I. 49); and (4) the Moving Refined Coal

Defendants' Motion to Dismiss, (D.I. 55).[1]  Plaintiffs oppose the Motions.  For the reasons set

forth below, the Court recommends the Motions be GRANTED in their entirety (with the

exception of one portion of the Vistra Defendants' and Talen Defendants' Motions that should be

DENIED as MOOT).

## I.      BACKGROUND

### A.      Factual Background

In their Complaint, Plaintiffs allege that 43 named Defendants and certain unnamed

Defendants infringe 34 claims of the '114 patent and the '147 patent; both patents are entitled

"Sorbents for the Oxidation and Removal of Mercury."  (D.I. 1 & exs. A-B)  The '147 patent

issued on May 1, 2012 and the '114 patent issued on July 9, 2019 (eight days before this lawsuit

was filed).  (Id., exs. A-B)

Plaintiffs' Complaint divides the defendants into two big groups and pleads different

theories of infringement against each group.  The first group includes the Vistra Defendants, the

---

[1]      The NRG Defendants filed a Joinder in the Talen Defendants' Motion to Dismiss
and a Joinder in the Vistra Defendants' Motion to Dismiss.  (D.I. 47; D.I. 53)

AEP Defendants, the NRG Defendants and the Talen Defendants, who will be referred to herein as the "Coal Plant Defendants."  (D.I. 1 at 2; *see also* D.I. 56 at 4-5)  The second group includes AJG, DTE, Chem-Mod, the RC Defendants, and the CERT Defendants, who will be referred to herein as the "Refined Coal Defendants."  (D.I. 1 at 2; *see also* D.I. 56 at 5)[2]

The asserted patents relate to methods for reducing mercury emissions from coal-fired power plants by combining halogen treatments such as bromine and bromide compounds in-flight with backend sorbents such as activated carbon.  (*See* D.I. 1 at ¶ 61 & exs. A-B)  The Complaint asserts infringement of claims 1-30 of the '114 patent and describes claim 25 of the patent as exemplary.  (*Id.* at ¶¶ 182-84)  Claim 25 of the '114 patent recites a method of separating mercury from a mercury-containing gas that comprises, *inter alia*, "combusting coal in a combustion chamber . . . wherein the coal comprises added [bromine], added to the coal upstream of the combustion chamber, or the combustion chamber comprises added [bromine]" (the "Bromine Step") and then "injecting a sorbent material comprising activated carbon into the mercury-containing gas downstream of the combustion chamber" (the "Activated Carbon Step"). ('114 patent, col. 36:7-23; *see also* D.I. 1 at ¶¶ 184, 186, 188)  The Complaint also asserts infringement of claims 17-20 of the '147 patent and describes claim 17 of the patent as exemplary.  (D.I. 1 at ¶¶ 205-07)  Claim 17 also comprises a Bromine Step and an Activated Carbon Step.  (*Id.* at ¶¶ 209, 215)

Plaintiffs allege that the Coal Plant Defendants each operate at least one coal-fired power

---

[2]      Of the Refined Coal Defendants, the CERT Defendants filed one Motion to Dismiss, and the rest of the Refined Coal Defendants (with the exception of the John Doe LLCs, who obviously did not participate in this briefing process) filed a separate Motion to Dismiss. To differentiate themselves from the CERT Defendants, the rest of the Refined Coal Defendants (other than the John Doe LLCs) refer to themselves as the "Moving Refined Coal Defendants." (D.I. 56 at 5)

plant where they combust coal using a method that performs each step of the methods claimed in the asserted patents.  (*Id.* at ¶¶ 148-49, 184-94, 207-18)  As for the Refined Coal Defendants, Plaintiffs allege that they indirectly infringe the asserted patents by providing coal with bromine to coal-fired power plants connected to an Accused RC Facility.[3]  (*Id.* at ¶¶ 195, 199, 219, 223)  To that end, the Complaint further alleges that certain of the Refined Coal Defendants (AJG, DTE, CERT and Chem-Mod) are associated with a number of limited liability companies, each referred to as a "Refined Coal LLC" (and which include the RC Defendants).  (*Id.* at ¶¶ 72, 80, 175, 176)  The Refined Coal LLC, in turn, is alleged to:  (1) rent space at a power plant where it briefly takes possession of coal as it moves toward a combustion chamber on a conveyer belt; (2) add chemicals supplied by Chem-Mod to the coal that include one or more bromine compounds; (3) sell the coal (now considered "refined coal") back to the power plant; and (4) return the refined coal back to the conveyor belt.  (*Id.* at ¶¶ 74-76, 80)  Through this arrangement, the Refined Coal Defendants obtain tax credits related to the production of refined coal known as "Section 45 tax credits."  (*Id.* at ¶¶ 63-81)  The Complaint alleges that the Refined Coal Defendants "provide financial incentives to operators of coal-fired power plants to participate in" this "Section 45 [t]ax [c]redit scheme."  (*Id.* at ¶¶ 152-56)

Further relevant facts related to resolution of the Motions will be set out as needed in Section III.

### B.    Procedural Background

---

[3]    The Complaint defines "Accused RC Facilities" as facilities that are operated by AJG, DTE, CERT, Chem-Mod, and the RC Defendants and that "receive coal, add bromine and/or bromide . . . to the coal, and then provide that 'refined' coal to a coal-fired power plant that injects a sorbent material comprising activated carbon downstream of the combustion chamber[.]"  (D.I. 1 at ¶ 152)

Plaintiffs filed the Complaint on July 17, 2019.  (D.I. 1)  The instant Motions were filed on September 23, 2019, (D.I. 45; D.I. 48; D.I. 49; D.I. 55),[4] and briefing was completed on October 29, 2019, (D.I. 84-87).  United States District Judge Richard G. Andrews referred these Motions to the Court for resolution on November 25, 2019, (D.I. 94), and the Court heard argument on the Motions on May 27, 2020, (D.I. 108 (hereinafter, "Tr.")).[5]

## II.   LEGAL STANDARD

When presented with a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court conducts a two-part analysis.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  First, the court separates the factual and legal elements of a claim, accepting all of the complaint's well-pleaded facts as true, but disregarding any legal conclusions.  *Id.* at 210-11. Second, the court determines whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'"  *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  In assessing the plausibility of a claim, the court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  *Fowler*, 578 F.3d at 210 (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

## III.   DISCUSSION

---

[4]     The AEP Defendants filed an Answer to the Complaint.  (D.I. 79)

[5]     Judge Andrews later referred this case to the Court for all purposes, up through the case dispositive motions deadline.  (D.I. 98)

The Court will first assess the arguments for dismissal made by the Vistra Defendants and the Talen Defendants, and will then assess the arguments for dismissal posited by the CERT Defendants and the Moving Refined Coal Defendants.

### A.  Vistra Defendants' and Talen Defendants' Motions to Dismiss

Plaintiffs allege that the Vistra Defendants and the Talen Defendants operate coal-fired power plants where coal is combusted utilizing a method that directly infringes the asserted patents.  (D.I. 1 at ¶¶ 148-49, 194, 218)  The Motions to Dismiss filed by the Vistra Defendants and the Talen Defendants raise three arguments:  (1) Plaintiffs have failed to adequately plead induced infringement; (2) MES is not a proper plaintiff; and (3) Plaintiffs have failed to adequately plead the knowledge requirement for willful and indirect infringement with respect to the Talen Defendants.[6]  The Court will take up these arguments in turn.

### 1.  Induced Infringement

A plaintiff asserting a claim of induced infringement must show, in addition to direct infringement, that "the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent."  *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009); *Helios Streaming, LLC v. Vudu, Inc.*, Civil Action No. 19-1792-CFC-SRF, 2020 WL 2332045, *2 (D. Del. May 11, 2020).  The Talen Defendants and the Vistra Defendants contend that Plaintiffs' induced infringement allegations are inadequate for various reasons, including because they fail to make

---

[6]       The Vistra Defendants and the Talen Defendants had also asserted that Plaintiffs failed to adequately plead joint and several liability among the Vistra Defendants, the Talen Defendants, and the NRG Defendants.  (D.I. 46 at 7-9; D.I. 51 at 12-13)  However, Plaintiffs responded that they are not asserting claims of joint and several liability against these Defendant groups, (D.I. 83 at 3), and therefore the Court recommends that these portions of the Motions be DENIED as MOOT.

clear which particular Talen or Vistra entity committed which acts that would support an induced infringement claim.  (D.I. 51 at 2, 10-11; D.I. 87 at 4-6; D.I. 46 at 9-10; D.I. 85 at 2-4)

The Court agrees that the Complaint fails to sufficiently plead induced infringement with respect to these Defendants, for a very basic reason.  Counts One and Two of the Complaint (which allege infringement of the '114 patent and the '147 patent, respectively) only clearly accuse the Talen Defendants and the Vistra Defendants of *directly* infringing each of the patents. (D.I. 1 at ¶¶ 194, 218)  While these Counts allege induced infringement with respect to certain *other* Defendants, they do *not* clearly allege that the Talen Defendants and the Vistra Defendants induced infringement with respect to the asserted patents.  (*Id.* at ¶¶ 198, 222; Tr. at 78)  This failing alone is fatal here.  If Plaintiffs wished to accuse these Defendants of induced infringement, Plaintiffs should have actually stated that allegation in the relevant Counts of the Complaint (coupled with an articulation of the elements of such a claim, and at least a nod as to why the facts suggest that these Defendants' acts track those elements).  *See, e.g.*, *Lee-Peckham v. Runa, LLC*, Civil Action No. 14-6635 (JLL), 2015 WL 150120, at *3 (D.N.J. Jan. 12, 2015) (explaining that each count of a properly pled complaint should contain its own cause of action against clearly identified defendants, as well as the factual allegations that would allow the court to draw the reasonable inference that the defendant is liable for that cause of action); *Swift v. Pandey*, Civil Action No. 13-649 (JLL), 2013 WL 3336768, at *3 (D.N.J. July 2, 2013) (granting a motion to dismiss with respect to counts that did not specify which defendants the counts were asserted against, nor contain any particular facts relating to any particular defendant); *see also Bartol v. Barrowclough*, 251 F. Supp. 3d 855, 859-60 (E.D. Pa. 2017).  Plaintiffs did not do so, and thus failed to provide sufficient notice to these Defendants that they were in fact actually

7

being accused of induced infringement.  Thus, the Court recommends that any intended induced infringement claims be dismissed on that basis alone.[7]

### 2.     MES as a Plaintiff

The Talen Defendants and the Vistra Defendants further argue that Plaintiff MES should be dismissed for failing to plausibly allege that it is a "patentee" under 35 U.S.C. § 281 ("Section 281").  (D.I. 46 at 10-12; D.I. 51 at 13-16)  Pursuant to Section 281, "[a] patentee shall have remedy by civil action for infringement of his patent."  35 U.S.C. § 281.  A plaintiff has the right to bring a patent infringement lawsuit only if it is the "patentee" under Section 281.  *See Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1229, 1235-36 (Fed. Cir. 2019) (also noting that a challenge to a complaint on this ground is properly brought pursuant to

---

[7]       Earlier in paragraphs 150 and 151 of the Complaint, prior to setting out their Counts, Plaintiffs do allege that:  (1) "[t]o the extent an Accused Coal Plant is owned by a subsidiary company, its parent (one or more of the named Coal Plant Defendants) also indirectly infringe(s) by inducing the subsidiary to perform the steps of the patented methods" and (2) "[t]he parent companies do so by exercising control over subsidiaries, providing technical, administrative, logistical and financial services to subsidiaries, and/or negotiating standard form or bulk agreements for products and services related to mercury control."  (D.I. 1 at ¶¶ 150-51; *see also id.* at ¶ 169 ("Each Coal Plant Defendant consist of a parent company and various subsidiaries.  These various entities work together to procure materials and manage Accused Power Plants."))  In their briefing, Plaintiffs point to these paragraphs as being sufficient to allege induced infringement with respect to the Talen Defendants and the Vistra Defendants.  (D.I. 83 at 5; Tr. at 91-92)  The Court disagrees.  Even if the two Counts of Plaintiffs' Complaint actually did include a sufficiently clear allegation that the Talen Defendants and Vistra Defendants were being accused of induced infringement of the asserted patents (which they do not), the Complaint would still lack sufficient facts to make induced infringement allegations *plausible* as to these Defendants.  That is because paragraphs 150 and 151 fail to identify which entities within these Defendant groups have actually induced infringement, by which actions they are said to have done so, and how such actions encouraged another to infringe or necessarily resulted in infringement by another entity.  (D.I. 85 at 3-4; D.I. 87 at 6; Tr. at 101-02)  They thus lack the requisite specificity to sufficiently allege induced infringement.  *Cf. M2M Sols. LLC v. Telit Commc'ns PLC*, Civil Action No. 14-1103-RGA, 2015 WL 4640400, at *4 (D. Del. Aug. 5, 2015) (finding that the plaintiff failed to plead a plausible inducement claim against the defendants, where the complaint referred to the two defendants by use of a single term, as the plaintiff thereby failed to identify which particular defendant was said to have disseminated the materials that instructed the operation of the products in an infringing manner).

Rule 12(b)(6).  To qualify as a "patentee," a plaintiff must have "all rights or all substantial

rights" in a patent or be "a licensee with exclusionary rights."  *Id.* at 1228 (internal quotation

marks and citation omitted).  The plaintiff bears the burden to establish that it has the right to

bring a patent infringement suit.  *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed.

Cir. 2005).

 The Court agrees that the Complaint does not plausibly allege that MES is a "patentee"

under Section 281 as to either asserted patent.

 With respect to the '147 patent, the Complaint alleges that Midwest Energy "owns by

assignment all rights, title, and interest in the '147 [p]atent, and holds all substantial rights

pertinent to this suit[.]"  (D.I. 1 at ¶ 203)  Plaintiffs acknowledge that the Complaint

"mistakenly" refers to Midwest Energy as the sole rights holder.  (D.I. 83 at 6 n.2; *see also* Tr. at

90-91)  If that really is just a mistake, then it would need to be corrected via amendment.  (Tr. at

90); *see also Nash v. Akinbayo*, C.A. No. 18-677 (MN), 2019 WL 4393159, at *3 (D. Del. Sept.

13, 2019).

 With respect to the '114 patent, the Complaint alleges that:  (1) "[a]s the exclusive

licensee, and later assignee, of the patents-in-suit, ME2C developed, marketed, and sold products

and services that practices the patented technology" and (2) "MEC2 owns all rights, title, and

interest in the '114 [p]atent, and holds all substantial rights pertinent to this suit[.]"  (D.I. 1 at ¶¶

82, 180)  These allegations do not satisfy Plaintiffs' burden.  They lump the two Plaintiffs

together under one defined term ("ME2C"), (*id.* at 2), making it unclear which Plaintiff is alleged

to hold which rights regarding that patent, (*see* D.I. 46 at 10-11).  Moreover, the United States

Patent and Trademark Office's assignment records regarding the '114 patent show only Midwest

Energy as the owner or assignee for the patent. (*Id.*, ex. B)[8] Thus, the record fails to plausibly demonstrate that MES is a patentee with respect to the '114 patent.[9]

The Court recommends that the Motions be granted with respect to this issue and that MES be dismissed as a Plaintiff.

### 3.     Willful Infringement

Plaintiffs' Complaint alleges that Defendants' infringement of the asserted patents is willful. (D.I. 1 at ¶¶ 166, 168 & page 30)  A claim for willful patent infringement requires that the infringer:  (1) knew of the patent; (2) thereafter infringed the patent and (3) in doing so, knew or should have known that its conduct amounted to patent infringement. *See Välinge Innovation AB v. Halstead New England Corp.*, Civil Action No. 16-1082-LPS-CJB, 2018 WL 2411218, at *13 (D. Del. May 29, 2018).

The Talen Defendants argue that any claim of willful infringement must be dismissed against them because the Complaint fails to allege that they:  (1) had pre-suit knowledge of the asserted patents; and (2) thereafter knew or should have known that they were infringing the asserted patents.  (D.I. 51 at 8-10)  For their part, Plaintiffs assert that they properly pleaded these elements, pointing to the following allegations in their Complaint:

---

[8]      In resolving motions to dismiss under Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents integral to or explicitly relied upon in the complaint. *See, e.g.*, *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *Freed v. St. Jude Med., Inc.*, 364 F. Supp. 3d 343, 349 n.4 (D. Del. 2019).  The patent assignment record is a public record that the Court may consider here. *See, e.g.*, *McDowell v. U.S. ex rel. Holder*, Civil Action No. 12-1302-SLR-SRF, 2013 WL 1953340, at *1 n.1 (D. Del. May 10, 2013).

[9]      In their answering brief, Plaintiffs contend that "MES received more than a non-exclusive license with respect to the patents-in-suit[,]" while acknowledging that they did not include this detail in the Complaint.  (D.I. 83 at 7 n.3)

      141.  In 2013, ME2C met with PPL to discuss the use of ME2C's patented technology at power plants in the PPL fleet, including Brunner Island, Colstrip, and Montour.

      142.  ME2C specifically identified the '147 patent and the parent patent to the '114 patent, and explained that these patents covered the use of halogen-based sorbent enhancement additives and backend carbon-based sorbents.

      143.  In 2015, PPL spun off a portion of its business to form Talen.

(D.I. 83 at 9 (citing D.I. 1 at ¶¶ 141-43); Tr. at 93-94)  The Court does not agree.

      With respect to the '147 patent, Plaintiffs do clearly allege that some PPL employees were informed of the patent's existence in 2013 (and what the patent covered).  But from there, the Complaint requires too much of the Court.  Who at PPL obtained that knowledge?  Were those persons among those who later became Talen employees after the spin off of a "portion" of PPL's business?  From the allegations set out above, it is *possible* that the same PPL employees who met with ME2C in 2013 worked within the PPL business unit that eventually became Talen.  But in order for this to be *plausible*, Plaintiffs should plead facts in their Complaint that help to make this link.  *See, e.g.*, *Software Research, Inc. v. Dynatrace LLC*, 316 F. Supp. 3d 1112, 1134 (N.D. Cal. 2018) (concluding that it was "implausible to infer from the complaint that Dynatrace had pre-suit knowledge from communications between SRI and Dynatrace's predecessors" where the plaintiff pleaded that certain entities were "Dynatrace's predecessors-in-interest but provide[d] no details as to the nature of the relationship between those entities and Dynatrace"); *cf. Varian Med. Sys., Inc. v. Elekta AB*, Civil Action No. 15-871-LPS, 2016 WL 3748772, at *5 (D. Del. July 12, 2016) ("Plaintiff needs to set out more than just the bare fact of the parent/subsidiary relationship in order to make out a plausible claim that *the U.S. Defendants* had the requisite knowledge of the patent-in-suit as of April 2006 or thereafter") (emphasis in

original), *report and recommendation adopted*, Civil Action No. 15-871-LPS, 2016 WL 9307500 (D. Del. Dec. 22, 2016).

Plaintiffs' allegations regarding knowledge of the '114 patent are even weaker.  (D.I. 87 at 3-4)  Assume for the sake of argument that after the 2015 spin off, the same PPL employee(s) who knew about the '114 patent's parent joined Talen (such that PPL's knowledge might have fairly been imputed to Talen).  Even so, it is just not plausible (without more) to believe that six years after learning of the '114 patent's *parent* in 2013, Talen would have been cognizant of the fact that the *'114 patent* issued in 2019 (a mere eight days before this lawsuit was filed).  (*Id.* at 4; Tr. at 94); *see also, e.g.*, *MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 233 (D. Del. 2012) (finding that the fact that the alleged infringer had knowledge of a related patent to the patent-in-suit was not, without more, sufficient to demonstrate a plausible claim to pre-suit knowledge of the patent-in-suit).[10]

In addition to lacking plausible allegations that the Talen Defendants knew of the asserted patents, the Complaint also lacks plausible allegations that the Talen Defendants knew or should have known that their conduct constituted infringement of those patents.  (D.I. 87 at 3)  Plaintiffs' answering brief fails to even address this element.  (D.I. 83 at 7-9; D.I. 87 at 3)

---

[10]     Plaintiffs argue that pre-suit knowledge is not required to plead willful infringement and that the filing of a complaint provides the requisite knowledge as to a claim for post-suit culpability.  (D.I. 83 at 7-8)  For reasons the Court has set out previously, it disagrees that a claim for willful infringement can stand if the defendant was unaware of the patent prior to the date that the complaint at issue was filed.  *See Välinge Innovation AB*, 2018 WL 2411218, at *9-13; *see also Illumina, Inc. v. BGI Genomics Co., Ltd.*, Case No. 19-03770-WHO, 2020 WL 571030, at *6 (N.D. Cal. Feb. 5, 2020); *VLSI Tech. LLC. v. Intel Corp.*, Civil Action No. 18-966-CFC, 2019 WL 1349468, at *2 (D. Del. Mar. 26, 2019); *Adidas Am., Inc. v. Skechers USA, Inc.*, Case No. 3:16-cv-1400-SI, 2017 WL 2543811, at *4 (D. Or. June 12, 2017).

For these reasons, the Court recommends that the Talen Defendants' Motion be granted with respect to Plaintiffs' claims of willful infringement.[11]

**B.     CERT Defendants' and Moving Refined Coal Defendants' Motions to Dismiss**

The Motions to Dismiss filed by the CERT Defendants and the Moving Refined Coal Defendants raise four primary arguments:  (1) Plaintiffs have failed to adequately plead certain elements of induced infringement; (2) Plaintiffs have failed to adequately plead the CERT Defendants' pre-suit knowledge of the asserted patents; (3) Plaintiffs have failed to adequately plead certain elements of contributory infringement; (4) Plaintiffs have failed to adequately plead joint infringement.  The Court will address these arguments in turn.

**1.     Induced Infringement**

Plaintiffs' Complaint asserts that the CERT Defendants and the Moving Refined Coal Defendants induce infringement of the asserted patents "with respect to each coal-fired power plant connected to an Accused RC Facility" by providing coal with added bromine.  (D.I. 1 at ¶¶ 195, 198, 219, 222)  As explained above, the claimed methods require performance of both the Bromine Step and the Activated Carbon Step.

To make out a claim of induced infringement, the patentee must demonstrate that the alleged infringer performs, or induces another party to perform, every single step in the method. *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1219 (Fed. Cir. 2014).  Here, the CERT

---

[11]     The Talen Defendants also argue that the Complaint fails to adequately plead induced infringement because it fails to allege that these defendants had pre-suit knowledge of the asserted patents or that they knew that they were infringing the asserted patents.  (D.I. 51 at 11; D.I. 87 at 4)  The Court's conclusion as to these Defendants' knowledge of the patents in the willful infringement context would be no different with regard to any induced infringement claims.  Nevertheless, the Court has above also recommended that claims for induced infringement be dismissed on another ground, and so it need not discuss this knowledge issue in terms of induced infringement any further here.

Defendants and Moving Refined Coal Defendants assert that Plaintiffs' induced infringement claims against them must be dismissed because: (1) the Complaint only ties them to performance of the Bromine Step and so (2) it fails to plausibly allege that these Defendants knowingly induced anyone to practice the Activated Carbon Step, or possessed specific intent to encourage infringement in this way. (D.I. 50 at 10-14; D.I. 56 at 10-12; Tr. at 14-15, 27-29, 66)

As was previously noted above, an inducement claim requires a showing that when the induced infringer did the act that caused direct infringement to occur, the induced infringer actually knew that that direct infringement was happening—and specifically intended that it happen. Here, in support of their assertion that they sufficiently pleaded these "knowledge"/specific intent elements, Plaintiffs point to the Complaint's allegation that the CERT Defendants and the Moving Refined Coal Defendants "tailor" the amount of bromide added to the coal "for the specific needs of the power plant." (D.I. 1 at ¶ 196 (*cited in* D.I. 82 at 15); *see also* Tr. at 52-55) This is not sufficient. The Complaint does not go on to allege, for example, what such "tailor[ing]" means or what it involves. Thus, it does not sufficiently explain why if these Defendants "tailor" the amount of bromide added to the coal, they must necessarily know and intend that the coal plants will go on to perform the Activated Carbon Step. (D.I. 84 at 3; Tr. at 55, 71-72) And with the Complaint silent with respect to facts like these, the Court cannot make the inferential leap that Plaintiffs want it to make.[12]

---

[12]     Plaintiffs also cite for support to the Complaint's allegations that: (1) these Defendants "[t]est[] the performance of the RC Facilities for regulatory reasons and to obtain Section 45 Tax Credits" and (2) connect those facilities to coal-fired power plants. (D.I. 82 at 16 (citing D.I. 1 at ¶ 158)) Without more, however, such an allegation does not lead to an inference that these Defendants had knowledge of the alleged *downstream use of carbon* in the coal-fired power plants. (D.I. 50 at 11; D.I. 84 at 3-4) It is Plaintiffs' responsibility to plead facts explaining how Defendants infringe, and without a sufficient allegation that as part of these

For this reason, the Court recommends that the induced infringement claims against the CERT Defendants and the Moving Refined Coal Defendants be dismissed.[13]

### 2.      CERT Defendants' Pre-Suit Knowledge of the Asserted Patents

Plaintiffs' claims of induced infringement and contributory infringement against the CERT Defendants require plausible allegations that, *inter alia*, the CERT Defendants had "knowledge of the patent[s] in suit."  *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015); *Boston Sci. Corp. v. Nevro Corp.*, 415 F. Supp. 3d 482, 491 (D. Del. 2019).[14]  The CERT Defendants contend that Plaintiffs' Complaint fails to plausibly allege that the CERT Defendants had pre-suit knowledge of the asserted patents, such that the claims against them for indirect infringement and willful infringement should also be dismissed on this ground.  (D.I. 50 at 9-10, 16; D.I. 84 at 1-2, 9; Tr. at 40-41)

In pushing back against this argument, (D.I. 82 at 14-15), Plaintiffs rely on the allegation that they have "publicized [their] patent portfolio . . . through presentations at industry events" that were attended by "[r]epresentatives of Defendants[,]" (D.I. 1 at ¶ 84), as well as the following more specific allegations:

> 145.  AJG, DTE, CERT, Chem-Mod, and RC Defendants have worked with the [Energy & Environmental Research Center, ("EERC")] to conduct testing related to their coal treatment processes.  For example, they have relied on the EERC to demonstrate that the processes employed by refined coal facilities qualify for Section 45 Tax Credits.  Through those interactions, it

---

testing/connecting efforts, these Defendants became aware of the Activated Carbon Step, the Court cannot just assume that they did.

[13]      The Complaint's failure to adequately plead knowledge of infringement also dooms Plaintiffs' willful infringement claim against these Defendants.  (D.I. 84 at 9; D.I. 86 at 9-10)

[14]      As explained above, a claim of willful infringement also requires the plaintiff to plausibly plead that the defendant had knowledge of the patent.  (*See supra* at 10)

is likely that they became aware of the patents-in-suit and/or related applications as they were initially developed by the inventors while they were at the EERC.

146.  In addition, at least Chem-Mod participates in conferences where ME2C describes its patented technology.  For example, Chem-Mod president Murray F. Abbott attended the 2018 MEGA conference where ME2C described the technology at issue in this case and explained that it was covered by its patents.  ME2C also referred attendees to its website which has additional information regarding its patents.

147.  Given the close relationship between Chem-Mod, AJG, DTE, CERT, and the RC Defendants, those Defendants know of ME2C's patented technology and patent portfolio and/or are willfully blind to ME2C's patents.

(D.I. 1 at ¶¶ 145-47)

These allegations fail to make a plausible case that the CERT Defendants knew of the asserted patents before this suit was filed.  Without more, it is not enough that the CERT Defendants "worked with" a third party (the EERC), and this third party is the place where the inventors were working when they "developed" the asserted patents.  (D.I. 84 at 2)  Among the key questions that are left unanswered by these broad allegations are:  (1) When did the CERT Defendants "work[] with" the EERC, and did that work occur at the same time as when the inventors worked there?; and (2) Did the nature of the CERT Defendants' work and the inventors' work with the EERC suggest it is likely that the CERT Defendants would have been aware of the inventors' efforts as to the asserted patents (one of which issued eight days before this lawsuit was filed)?  Additionally, the bare fact that co-Defendant Chem-Mod (who allegedly has a "close relationship" with the CERT Defendants) participates in conferences where Plaintiffs have described the patented technology does not render it plausible that the *CERT Defendants* (one of them, or all of them) learned of this information from Chem-Mod.  To conclude otherwise would be to suggest that when one entity has a "close relationship" to

16

another, then the first entity knows everything that the second entity knows.  (*Id.*; *see also* D.I. 50 at 10); *see, e.g.*, *MONEC Holding*, 897 F. Supp. 2d at 232-33 (finding that plaintiff's reliance on defendants' participation in the same technologically-based industry as plaintiff, standing alone, was insufficient to establish defendants' actual knowledge of the patent).

The Court thus recommends that Plaintiffs' claims of indirect infringement and willful infringement against the CERT Defendants also be dismissed for failure to sufficiently plead pre-suit knowledge of the asserted patents.[15]

### 3.       Contributory Infringement

Plaintiffs bring claims for contributory infringement, pursuant to 35 U.S.C. § 271(c) ("Section 271(c)") against the CERT Defendants and the Moving Refined Coal Defendants with respect to both asserted patents.  (D.I. 1 at ¶¶ 199, 223)

To prove contributory infringement, a patentee must demonstrate that an alleged contributory infringer has sold, offered to sell or imported into the United States a material or apparatus for use in practicing a patented process "knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use[.]"  35 U.S.C. § 271(c); *see also Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed. Cir. 2009).  Thus, in order to sufficiently plead a contributory infringement claim, the patentee must "plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses."  *See In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323,

---

[15]     Plaintiffs argue that even if they did fail to adequately allege pre-suit notice of the patent, their induced infringement claims should still be able to stand as to Plaintiffs' allegations of post-suit induced infringement.  (D.I. 82 at 13 n.3)  Since the Court has above also found the induced infringement claims as to the CERT Defendants wanting on other grounds, such that they will be dismissed in their entirety, the Court need not address this issue further.

1336, 1337 (Fed. Cir. 2012); *see also Artrip v. Ball Corp.*, 735 F. App'x 708, 713 (Fed. Cir. 2018) (requiring the same of a patentee).  With regard to the "no substantial non-infringing uses" requirement, the United States Court of Appeals for the Federal Circuit has explained that "the inquiry focuses on whether the accused products can be used for purposes *other than* infringement." *Bill of Lading*, 681 F.3d at 1338 (emphasis in original).  And it has further noted that the language of the contributory infringement statute "deals with the material actually sold by the accused and the uses made of it by its purchasers." *Hodosh v. Block Drug Co., Inc.*, 833 F.2d 1575, 1578 (Fed. Cir. 1987); *see also, e.g.*, *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1357 (Fed. Cir. 2018) (finding that the plaintiff's allegations were sufficient to plead that the accused products had no substantial non-infringing uses, where the plaintiff pleaded that "[a]s sold and delivered" to the refined coal LLCs or operators of coal-fired power plants using Chem-Mod solution, certain additives at issue (MerSorb and S-Sorb) had no substantial non-infringing uses); *Veritas Operating Corp. v. Microsoft Corp.*, 562 F. Supp. 2d 1141, 1169 (W.D. Wash. 2008).

Here, the CERT Defendants' and Moving Refined Coal Defendants' challenge is that Plaintiffs did not (and cannot) plead that they knew that the coal with added bromine and/or bromide has no other substantial non-infringing uses (i.e., that it cannot be used in any substantial way without an accompanying injection of activated carbon).  (D.I. 50 at 14-15; D.I. 56 at 13-14; Tr. at 30)  Instead, they contend, Plaintiffs' Complaint actually demonstrates the opposite—that coal with added bromine and/or bromide *does have* substantial non-infringing uses.  (D.I. 84 at 7-8; D.I. 86 at 6-8 & n.6; Tr. at 30-32)  In support, they refer to the Complaint's allegation that the asserted patents were the result of the inventors' discovery of the "benefits of combining halogen treatments (e.g., bromine containing materials) in-flight with backend

sorbents (e.g., activated carbon)[,]" which demonstrates that refined coal can be burned without use of activated carbon. (D.I. 1 at ¶ 61 (*cited in* D.I. 86 at 8); *see also* Tr. at 31) Further, they point to the '114 patent's disclosure that "the use of non-carbon base sorbents . . . is also contemplated to at least the same degree as carbon base sorbents." (Tr. at 31 (citing '114 patent, col. 10:4-8); *see also* D.I. 84 at 7; D.I. 56 at 13 n.10)

Plaintiffs, meanwhile, respond that Defendants' position on this front is flawed, because it fails to consider how the refined coal is "actually prepared and delivered"—i.e., that when the coal described in the Complaint is provided to the plants at issue, it is a specifically "tailored" product that, at that stage, has no commercially reasonable non-infringing use. (D.I. 82 at 11-12) To that end, Plaintiffs point to the Complaint's allegations that:

> [196/220.] The coal with added $Br_2$, HBr, a bromide compound, or a combination thereof provided by AJG, DTE, CERT, Chem-Mod and the RC Defendants is not a staple article or commodity of commerce suitable for substantial non-infringing use. This coal is supplied to a conveyance that moves the coal toward the combustion chamber of a power plant that directly infringes the ['114/'147] patent. In addition, AJG, DTE, CERT, Chem-Mod and the RC Defendants tailor the amount of $Br_2$, HBr, a bromide compound, or a combination thereof added to the coal for the specific needs of the power plant.

(D.I. 1 at ¶¶ 196, 220; *see also id.* at ¶¶ 155, 157)

As the Court has previously set out above, it does not believe that the Complaint sufficiently explains how the "tailor[ed]" nature of the Refined Coal renders it plausible that these Defendants knew or intended that this coal will in fact be utilized in an Activated Carbon Step. If the Complaint does not adequately plead that, then it also does not adequately plead that when these Defendants deposit that coal onto the conveyance, they know that this coal has no substantial non-infringing use (i.e., that it cannot reasonably be used for purposes other than to

be injected with activated carbon).  For this reason alone, the Court recommends that the Motion

be granted on this ground as to the contributory infringement claims.

### 4.    Joint Infringement

To state a claim for joint infringement, a plaintiff must allege facts "sufficient to allow a

reasonable inference that all steps of the claimed method are performed and either (1) one party

exercises the requisite 'direction or control' over the others' performance or (2) the actors form a

joint enterprise such that performance of every step is attributable to the controlling party."  *Lyda*

*v. CBS Corp.*, 838 F.3d 1331, 1339 (Fed. Cir. 2016) (citing *Akamai Techs., Inc. v. Limelight*

*Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015)).  The "direction or control" test requires

the controlling party to be, in effect, the "mastermind" of the entire process.  *See CBA Envtl.*

*Servs., Inc. v. Toll Bros. Inc.*, 403 F. Supp. 3d 403, 418 (D.N.J. 2019); *see also Move, Inc. v.*

*Real Estate Alliance, Ltd.*, 709 F.3d 1117, 1122 (Fed. Cir. 2013).  The "joint enterprise" test

requires a showing of, *inter alia*, "'an equal right to a voice in the direction of the enterprise,

which gives an equal right of control.'"  *IOENGINE, LLC v. PayPal Holdings, LLC*, Civil Action

No. 18-452-WCB, Civil Action No. 18-826-WCB, 2019 WL 330515, at *1, *3 (D. Del. Jan. 25,

2019) (citation omitted) (noting that plausibly asserting the existence of a joint enterprise

requires meeting a "demanding standard").

In the "Factual Allegations" section of the Complaint, Plaintiffs allege that:

> 159.  AJG, Chem-Mod, their associated RC Defendants, and the
> operators of coal-fired power plants connected to an RC Facility
> that is owned by AJG and/or its subsidiaries are involved in a joint
> enterprise to infringe the patents-in-suit.
>
> 160.  AJG, Chem-Mod, their associated RC Defendants, and the
> operators of coal-fired power plants connected to an RC Facility
> that is owned by AJG and/or its subsidiaries share a common
> purpose, namely, obtaining Section 45 Tax Credits and compliance

20

> with mercury capture regulations by performing the patented
> methods.

(D.I. 1 at ¶¶ 159-60; *see also id.* at ¶¶ 161-64 (putting forth the same joint enterprise allegations, but regarding DTE and the CERT Defendants, respectively, instead of AJG))  The CERT Defendants and the Moving Refined Coal Defendants move for dismissal of Plaintiffs' joint infringement claim.  (D.I. 50 at 16-17; D.I. 56 at 15-19)  And the Court agrees that Plaintiffs have failed to plausibly allege joint infringement.

As an initial matter, as Defendants point out, in the section of the Complaint setting out Plaintiffs' Counts, they allege only that the CERT Defendants and the Moving Refined Coal Defendants *indirectly* infringe the asserted patents.  (D.I. 1 at ¶¶ 198-99, 222-23)  These Defendant groups are not identified as direct infringers in this section.  And so, for the reasons set out above in Section III.A.1, this is one basis on which the Court recommends dismissal of the joint infringement theory of liability.  (D.I. 50 at 16; Tr. at 23-24, 58-59)

Moreover, even did the above defect not doom these claims, for the reasons set out below, the Complaint otherwise fails to adequately plead all necessary elements of either theory of joint infringement.

In their opening briefs, the CERT Defendants and the Moving Refined Coal Defendants set out why Plaintiffs' joint infringement claims were wanting.  This included their arguments that:  (1) with respect to a direction or control theory, Plaintiffs failed to allege that all steps of the claimed method (including the Activated Carbon Step) may be attributable to these Defendants; and (2) with respect to a joint enterprise theory, Plaintiffs failed to acknowledge the requirement that the joint enterprise participants share "'an equal right to a voice in the direction of the enterprise[.]'"  (D.I. 50 at 16-17; D.I. 56 at 15-19)  Yet Plaintiffs' answering brief with respect to joint infringement was cursory and non-responsive.  (Tr. at 56)  There, Plaintiffs

simply assert that they adequately pleaded joint infringement because the Complaint alleges that "each RC Defendant operating a refined coal facility physically connected to an infringing coal plant jointly infringes with the owner/operator of that coal plant."  (D.I. 82 at 16-17)  This is not sufficient, and thus the Court recommends that Plaintiffs' claim of joint infringement be dismissed on this ground too.  *See, e.g.*, *IOENGINE, LLC*, 2019 WL 330515, at *3 (granting a motion to dismiss with regard to joint enterprise theory of joint infringement, where, at minimum, the complaint failed to sufficiently plead facts as to the presence of an equal right to a voice in the direction of the enterprise, which gives an equal right of control);[16] *see also CBA Envtl. Servs., Inc*, 403 F. Supp. 3d at 419.

C.       **Nature of Dismissal**

Because it is not clear to the Court that allowing the opportunity to amend would be a futile act, because this is the first time the Court has found these claims to be deficiently pleaded, and because leave to amend should be given freely "when justice so requires[,]" Fed. R. Civ. P. 15(a)(2), the Court recommends that dismissal of the claims found wanting should be without prejudice.  It further recommends that Plaintiffs be given leave to file a further amended complaint addressing the deficiencies outlined above, and that if the District Court affirms its decision herein, that Plaintiffs be given 14 days to file such an amended complaint.

---

[16]       During oral argument, Plaintiffs asserted that with respect to the joint enterprise theory, the Complaint alleges that "there's some kind of contract signed between the refined coal company and the plant; a common purpose to be carried out by the group, and that's the burning of the refined coal; a community of pecuniary interest in that purpose, and that's making money off burning the coal either by selling electricity or collecting the tax credits; and an equal right to a voice in the direction of that enterprise which gives an equal right of control."  (Tr. at 57)  But such allegations (at least as to the "equal right of control" element) are not contained in the Complaint.  (*Id.* at 68)

22

*TriDiNetworks Ltd. v. Signify N. Am. Corp.*, Civil Action No. 19-1063-CFC-CJB, 2020 WL 2839224, at *5 (D. Del. June 1, 2020).

## IV.    CONCLUSION

For the foregoing reasons, the Court recommends that Defendants' Motions be:  (1) granted with respect to Plaintiffs' induced infringement claims against the Vistra Defendants and the Talen Defendants; (2) granted with respect to the Vistra Defendants' and the Talen Defendants' assertion that Plaintiff MES should be dismissed for failing to plausibly allege that it is a "patentee" under 35 U.S.C. § 281; (3) granted with respect to Plaintiffs' claims of willful infringement against the Talen Defendants; (4) denied as moot with respect to the Vistra Defendants and the Talen Defendants' assertion that Plaintiffs failed to adequately plead joint and several liability among the Vistra Defendants, the Talen Defendants and the NRG Defendants; and (5) granted with respect to Plaintiffs' claims of induced infringement, contributory infringement, willful infringement and joint infringement against the CERT Defendants and the Moving Refined Coal Defendants.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2).  The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court.  *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated:  June 18, 2020                          _Christopher J. Burke_____
                                               Christopher J. Burke
                                               UNITED STATES MAGISTRATE JUDGE