```
          IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF DELAWARE


MIDWEST ENERGY EMISSIONS  )
CORP. and MES, INC.,       )
               Plaintiffs,) Civil Action No.
                          ) 19-1334-RGA-CJB
v.                        )
                          )
VISTRA ENERGY CORP.,      )
et al.,                   )
               Defendant. )




               Monday, June 15, 2020
               2:00 p.m.
               Teleconference


BEFORE:  THE HONORABLE CHRISTOPHER J. BURKE
         United States Magistrate Judge


APPEARANCES:


     DEVLIN LAW FIRM
     BY:  JAMES M. LENNON, ESQ.

             -and-

     CALDWELL, CASSADY & CURRY
     BY:  JUSTIN T. NEMUNAITIS, ESQ.

               Counsel for the Plaintiffs
```

```
 1     APPEARANCES, CONTINUED:

 2          SKADDEN ARPS MEAGHER & FLOM, LLP
            BY:   JESSICA R. KUNZ, ESQ.
 3                DOUGLAS R. NEMEC, ESQ.
                  LESLIE A. DEMERS, ESQ.
 4
                      Counsel for the CERT Defendants
 5

 6

 7          MORRIS NICHOLS ARSHT & TUNNELL LLP
            BY:   BRIAN P. EGAN, ESQ.
 8
                      -and-
 9
            GIBSON DUNN & CRUTCHER LLP
10          BY:   RICHARD W. MARK, ESQ.
                  JOSEPH EVALL, ESQ.
11
                      Counsel for the Refined Coal
12                    Defendants

13

14
            RICHARDS LAYTON & FINGER, P.A.
15          BY:   FREDRICK L. COTTRELL, ESQ.

16                    -and-

17          BAKER BOTTS LLP
            BY:   DOUGLAS M. KUBEHL, ESQ.
18                MEGAN LADRIERE, ESQ.

19                    Counsel for the Vistra Defendants
20

21

22

23

24
```

```
 1      APPEARANCES, CONTINUED:

 2
            FAEGRE DRINKER BIDDLE & REATH LLP
 3          BY:  FRANCIS DIGIOVANNI, ESQ.

 4                   -and-

 5          BAKER BOTTS LLP
            BY:  SYED K. FAREED, ESQ.
 6               DAVID TOBIN, ESQ.

 7                   Counsel for Defendants Talen
                     Energy Corp, Brandon Shores LLC,
 8                   Talen Generation LLC, and
                     H.A. Wagner LLC
 9

10

11          RICHARDS LAYTON & FINGER, P.A.
            BY:  FREDRICK L. COTTRELL, ESQ.
12

13                   -and-

14          BAKER BOTTS LLP
            BY:  PAUL R. MORICO, ESQ.
15               ELIZABETH DURHAM FLANNERY

16                   Counsel for the NRG Defendants

17

18          MORRIS NICHOLS ARSHT & TUNNELL LLP
            BY:  RODGER D. SMITH, II, ESQ.
19                   -and-

20          JENNER & BLOCK
            BY:  AARON BARLOW, ESQ.
21
                     Counsel for the AEP Defendants
22

23

24
```

```
 1                    THE COURT:  We're here for the
 2        record in the matter of Midwest Energy
 3        Emissions Corp., et al., v. Vistra Energy
 4        Corp, et al., Civil Action Number
 5        19-1334-RGA-CJB here in our court, and we're
 6        here today for a case management conference by
 7        way of a telephone conference.
 8                    Because we're on the record, we
 9        have a court reporter who will be taking down
10        our call, so it would be helpful if counsel
11        before they speak identify themselves to help
12        make sure we get a good and accurate record of
13        our call today.
14                    Before we go further, we'll have
15        counsel for each side identify themselves for
16        the record.  We'll start first with counsel
17        for the plaintiffs' side, and we'll begin
18        there are with Delaware counsel.
19                    MR. LENNON:  Thank you, Your
20        Honor.  This is Jim Lennon, Devlin Law Firm,
21        on behalf of the plaintiffs, and with me on
22        the line and speaking on behalf of plaintiffs
23        is Justin Nemunaitis.
24                    THE COURT:  Okay, thank you.
```

1          We have a number of different
2     sets of defendants on the line.  I think
3     there's maybe 40-some in total.  So it will be
4     easier for me just to go along by identifying
5     our Delaware counsel who is representing
6     different sets of defendants and ask the
7     representative for that firm to identify who
8     is on the line for the set of defendants that
9     they represent.  Let me start first with
10    counsel from Richards, Layton & Finger.
11          MR. COTTRELL:  Good afternoon,
12    Your Honor, Fred Cottrell.  I represent as
13    Delaware counsel two groups of defendants:
14    The Vistra defendants, and on the phone with
15    me from Baker Botts is Doug Kubehl and Megan
16    LaDriere.  And I also am Delaware counsel for
17    the NRG defendants.  And also from Baker
18    Botts, Paul Morico and Liz Flannery.
19          THE COURT:  Okay, thank you.
20    Welcome.
21          Next, Morris, Nichols, Arsht &
22    Tunnell is representing certain defendants.
23    Let me call on their counsel to introduce
24    them.

```
 1                    MR. EGAN:  Good afternoon, Your
 2     Honor.  This is Brian Egan from Morris
 3     Nichols.  I represent along with Jack
 4     Blumenfeld the RC defendants and the Refined
 5     Coal, LLC defendants, and those are sub-groups
 6     that are identified in Paragraph 8C of the
 7     proposed scheduling order that we submitted to
 8     Your Honor.  And joining me on the phone today
 9     are Joseph Evall and Richard Mark from Gibson
10     Dunn.
11                    MR. SMITH:  And Your Honor, it's
12     Rodger Smith also with Morris Nichols.  I'm on
13     on behalf of the AEP defendants along with
14     Andrew Barlow from Jenner & Block.
15                    THE COURT:  Thank you very much.
16     I believe Skadden Arps also represents certain
17     of defendants, and if their counsel is on the
18     line, I'll turn to them.
19                    MS. KUNZ:  Good afternoon, Your
20     Honor.  This is Jessica Kunz, and here with me
21     today are Doug Nemec and Leslie Demers, and we
22     represent the CERT defendants, which are
23     listed in paragraphs 8-26 of this proposed
24     scheduling order submitted by the parties.
```

```
 1      And today Mr. Nemec will be speaking on behalf
 2      of the CERT defendants.
 3                  THE COURT:  Okay, thank you.
 4      And I believe in addition, Drinker, Biddle &
 5      Reath also represents certain defendants.
 6      Faegre Drinker Biddle, I should say.  I'll
 7      turn to their counsel, as well.
 8                  MR. DIGIOVANNI:  Thank you, Your
 9      Honor.  It's Frank DiGigiovanni of Faegre
10      Drinker represent the Talen defendants or
11      Talen Energy defendants, and my co-counsel is
12      Syed Fareed and David Tobin of the Baker Botts
13      firm.
14                  THE COURT:  All right, thank
15      you.  I think I have everybody, but is there
16      any other party on the line who have not yet
17      identified their counsel?
18                  Okay.  Thanks to you all for
19      that.
20                  Before we begin with the
21      substance of our case management conference,
22      let me just say a few things by way of
23      process.  The first is just to review my role
24      in the case and a few things related to it.
```

```
 1        And there, as the parties know, the district

 2        court has referred the case to me for all

 3        purposes up through the case dispositive

 4        motion stage.  And so I'll address any issues

 5        that come up in the case through that stage.

 6                    I should also note, and I always

 7        like to note during case management

 8        conferences, one of the particular standing

 9        orders that's on my portion of the court's

10        website -- that portion of the website has

11        many different orders that relate to

12        procedures in front of me -- but one of them

13        is a standing order that is meant to provide

14        an incentive for opportunity for newer

15        attorneys, that is attorneys that are seven

16        years or less out of law school.  And the

17        standing order simply says that if there's a

18        motion pending before me where oral argument

19        has been requested, that if one of the parties

20        to the motion tells me by way of a notice that

21        a newer attorney is going to argue the motion,

22        I'll almost certainly grant the request for

23        oral argument.  And in doing so, I will likely

24        do other things meant to provide additional
```

1    opportunity for argument such as consider

2    providing more time for the argument than I

3    might otherwise have provided.  That standing

4    order to the parties, again, it's on my

5    portion of the district court's website.

6              Next, just a mention about

7    process.  And I appreciate it, I just saw that

8    although the parties had previously submitted

9    a proposed scheduling order to me I think on

10   the 10th of this month, just today they

11   submitted a revised proposed or amended

12   scheduling order which, if I have it right,

13   has reduced the number of disputed issues

14   regarding the schedule from three to one.

15             And what we'll do on the call

16   today is we'll talk about any disputed issue

17   relating to the schedule, I'll hear from the

18   parties briefly about it, I'll make a decision

19   with regard to that issue, and then I'll ask

20   the parties to submit, and I'll ask

21   plaintiffs' counsel to do this on behalf of

22   all parties, a revised proposed final

23   scheduling order that I can sign and put up on

24   the docket.  And I'll ask plaintiffs' counsel

1    to do that on behalf of all sides by no later

2    than close of business on Friday this week.

3                        And so we'll go from there.  And

4    first, what I'll do is touch base with the

5    parties on what I understand to be the

6    disputed issues relating to the schedule, and

7    I'll also ask a question or two just by way of

8    clarification.

9                        So let's turn to that now, and

10   first I'll I turn to plaintiffs' side.  And

11   who going to speak on behalf of the

12   plaintiffs' side?

13                       MR. NEMUNAITIS:  Justin

14   Nemunaitis, Your Honor.

15                       THE COURT:  Mr. Nemunaitis,

16   maybe first just to set out what's left to

17   discuss in terms of disputes, it looks like

18   there's now only one remaining disputed issue,

19   which relates I think to the date of

20   supplementation in paragraph 16; is that

21   right?

22                       MR. NEMUNAITIS:  That's right,

23   Your Honor.

24                       THE COURT:  Okay.  And then

1    before we get there, let me just ask the

2    question.  I see that the parties have jointly

3    agreed in terms of the form of the schedule

4    that it's not going to be the kind of schedule

5    where we have set in stone dates for claim

6    construction hearings, summary judgment

7    motions, trial, pretrial conference at this

8    stage, that it looks like the intent of it is

9    to time all of those dates off of earlier

10    dates in the schedule.

11                    And I guess I wanted to get your

12    take on is that right, and are the dates that

13    are currently left blank in the scheduling

14    order meant to remain blank when we put up the

15    final version this Friday?

16                    MR. NEMUNAITIS:  My

17    understanding, Your Honor, is that we would

18    receive from Your Honor, depending on your

19    availability, a trial date and claim

20    construction hearing date.  An the way we

21    structured the order was to basically provide

22    room that once when we have those firms dates,

23    that we can plug in the rest of the dates in

24    the order we submit on Friday.

```
 1                    THE COURT:  Oh, I see.   In other
 2     words, once you get the claim construction
 3     hearing date, summary judgment oral argument
 4     date, pretrial conference date, and trial that
 5     works for me and/or Judge Andrews, you'll then
 6     fill in the rest of the dates as appropriate
 7     around it based on the timing that's set out
 8     in the proposed order; is that right?
 9                    MR. NEMUNAITIS:  Yes.
10                    THE COURT:  All right.   I
11     misunderstood that.  And so what I'll do is
12     I'll make sure that between now and Friday, my
13     chambers will get to the parties dates that
14     seem to work for those key dates that are
15     referenced, and then I'll let you all fill in
16     the remaining dates that will trigger off of
17     those.
18                    I guess before I close on that
19     issue, I'll just ask defendants' counsel, is
20     that also their understanding of what we're
21     doing here, and is that how we should proceed?
22                    MS. LADRIERE:  Your Honor, Megan
23     LaDriere on behalf of defendants Vistra.  Yes,
24     that's our understanding; we would appreciate
```

1    that.

2                    THE COURT:  Good.  We'll check

3    in with Judge Andrews' chambers, and also look

4    at my schedule, we'll get Delaware counsel for

5    the parties those dates very shortly.

6                    All right.  Then let's just

7    touch on briefly the one disputed issue about

8    the schedule.  We won't have a lot of argument

9    about it, but that's the dispute about

10   supplementation in paragraph 16 which relates

11   to when will be the date or dates for

12   supplementation of all accused products and

13   processes and of all invalidity references.

14                    Plaintiffs are proposing both of

15   those deadlines happen on the same date, and

16   that it be a date set in stone as October 1st,

17   2020, which I understand to be the date for

18   the submission of initial invalidity

19   contentions; whereas the defendants' proposal

20   is that there be two separate dates, the first

21   of them coming not later than the date of the

22   joint claim construction statement and the

23   second coming three weeks later.

24                    I'll turn to plaintiffs'

```
 1    counsel.  Mr. Nemunaitis, is there anything
 2    you want to add by way of why what you are
 3    proposing you think makes more sense, and
 4    particularly to address what the defendants
 5    have to say, which is in part that the final
 6    confirmation of accused products and processes
 7    might well have some impact on exactly what
 8    prior art might be relevant or at issue in the
 9    case.
10              MR. NEMUNAITIS:  Yes, Your
11    Honor, two brief points.  The first on the
12    staggered deadlines, that issue wasn't as
13    important to us, so if we were to have an
14    earlier deadline, we would be fine with the
15    staggered deadline, which I think is three
16    weeks.
17              As to the more important issue,
18    there's a particular reason why I think it
19    makes sense in this case, which is the
20    defendants have filed IPRs, and in those IPRs
21    said that they don't want to construe any
22    terms.  That's under now the same claim
23    construction standard as the district court.
24    The plaintiff, I would expect that we will
```

1    also not want to construe any terms.  Now, it

2    may be that once we get infringement

3    contention exchanged and invalidity

4    contentions exchanged, that that would change,

5    that the parties would have some disputes.

6              But it would seem at this point

7    that there's -- the most important thing is

8    getting everyone's contentions exchanged so

9    that we know whether there are any disputes

10   and what those disputes are, and that we

11   should then exchange our claim construction

12   positions.

13             So it seems to me that the more

14   logical thing to do is have defendants

15   disclose all the references they think they

16   might use; exchange whatever claim

17   construction disputes there are, so everyone

18   has the same set of information and has the

19   same understanding as to those disputes.

20             And part of our concern here is

21   if defendants only disclose some of their

22   references and then we lock in our claim

23   construction positions, they could then

24   disclose their full set of references and it

```
 1      would be more difficult for us to sort of
 2      address that scenario, especially if we need
 3      to file our opening claim construction
 4      brief -- or, I'm sorry, serve our claim
 5      construction brief a week after that occurs.
 6      So that's why we think our proposal makes more
 7      sense.
 8                   THE COURT:  Okay.  And to your
 9      point there being it makes the claim
10      construction process too tight, if there were
11      to be a newly identified invalidity reference
12      that might well have some bearing on a claim
13      construction position, is that the idea?
14                   MR. NEMUNAITIS:  Yes, Your
15      Honor.
16                   THE COURT:  Okay.  All right.
17      On defendants' side, is there one attorney who
18      is going to speak on behalf of the defendants
19      for this point?
20                   MS. LADRIERE:  Yes, Your Honor,
21      Megan LaDriere on behalf of defendant Vistra.
22                   THE COURT:  Okay, Ms. LaDriere.
23      Any more you want to say in support of why
24      your proposal, particularly I guess as to the
```

1      timing issue, less so as to the staggering
2      issue, which doesn't seem to be as big a deal,
3      makes more sense?
4                  MS. LADRIERE:  Yes, Your Honor.
5      I think Your Honor hit the nail on the head
6      when you recognized that plaintiffs' proposal
7      is for defendants to provide a final
8      identification of references on the same day
9      that the initial invalidity contentions are
10     due.  And October 1st, Your Honor, creates
11     such as a compressed timeframe in order to
12     identify all the prior art references the
13     defendants would use.
14                 For example, this October 1st
15     deadline would be less than one week after the
16     September 25th deadline for plaintiffs to
17     amend their briefing.  So if, for example,
18     plaintiffs added any patents to the pleadings,
19     that would give us one week to identify all
20     prior art references for that patent.
21                 So we believe that our proposed
22     timeframe of letting the parties identify
23     their final accused products and processes as
24     well as prior art references during claim

1    construction makes more sense.

2                    For example, this would be when
3    the joint claim construction chart is filed,
4    and actually, the parties would have discussed
5    claim construction terms, proposed
6    constructions, and evidence two weeks before
7    that is filed.  So that would give plaintiffs
8    sufficient time to understand defendants'
9    proposed claim constructions, if any, before
10   they even provide their final accused products
11   and processes.

12                    THE COURT:  And I guess on those
13   points, on the first point, which is that it
14   could be a potentially tight timeframe were
15   the plaintiff to amend, for example, a patent,
16   I mean amend the deadline, the plaintiff might
17   say, yeah, but surely even this proposal is
18   one that is subject to amendment for good
19   cause, and in that scenario, presumably
20   defendants would have good cause.  Why
21   wouldn't the ability to amend, to change the
22   schedule for due cause in that scenario be
23   enough?

24                    MS. LADRIERE:  Actually, Your

```
 1      Honor, thank you.  We believe that our
 2      proposal strikes the balance between
 3      solidifying issues related to the accused
 4      product and processes as well as invalidity
 5      references early enough to provide certainty,
 6      but late enough to where the parties
 7      understand each other's claim construction
 8      proposal.
 9                   THE COURT:  And on the
10      plaintiffs' other point, I think it was, in
11      essence, look if three weeks after the joint
12      claim construction statement the defendants
13      supplement their identification of references
14      and end up adding, that could have an impact
15      on our thoughts about claim construction terms
16      and arguments, and we have our opening briefs
17      due just one week later, you know, can't we
18      get a little more leeway there, is there
19      anything more that can be done to dissuade
20      that concern?
21                   MS. LADRIERE:  Your Honor, I
22      think defendants would be open to addressing
23      that concern, but I don't think that we
24      anticipate doing that purposefully by any
```

1    means.  We would attempt to identify as many

2    proposed references that we want to use, and I

3    think that additional references may be added

4    based on what plaintiff identifies for their

5    accused products and processes.

6            THE COURT:  And can you remind

7    me, Ms. LaDriere, if we know that the

8    plaintiffs want October 1, 2020 as the key

9    date here, whereas you all are proposing a

10   couple of weeks after the joint claim

11   construction, I know it depends on when

12   various other dates are inputted in here, but

13   as a practical matter in terms of what's

14   likely to happen, about how much difference

15   are we talking about in terms of dates?  In

16   other words, if they're looking for October 1,

17   2020, you'd say our proposal probably,

18   depending on the Court's availability, would

19   probably come in more around blank.

20           MS. LADRIERE:  Yeah, Your Honor,

21   assuming a June Markman hearing, the deadline

22   that we propose would be around mid January of

23   2021.

24           THE COURT:  All right.  Well, on

1    this issue, then, what I'm going to do is I'm

2    going to ask the parties just to see if they

3    can meet and confer briefly on one smaller

4    point, but I'll in general adopt the

5    defendants' proposal.  That is I think it

6    makes sense to have a staggered set of two

7    deadlines for some of the reasons defendants

8    set out in their letter, that is a first

9    deadline in which the plaintiff should

10    identify finally all accused products and

11    processes, and then a second deadline that

12    comes shortly thereafter for defendants to

13    supplement finally the identification of all

14    invalidity references.

15            I also think it's not

16    unreasonable for defendants to ask for a bit

17    more time post the date of the submission of

18    initial invalidity submissions, that is

19    October 1, 2020, to have these deadlines set.

20    And indeed, in many scheduling orders, this

21    kind of final identification if it's in there

22    at all would indeed typically be later.

23            That said, I do understand some

24    concern on the plaintiffs' side with regard to

1    how close in time the date for supplementation

2    of all invalidity references in defendants'

3    proposal is coming vis-a-vis the date when the

4    initial claim construction brief would need to

5    be served.  And my sense is the parties

6    probably in terms of talking briefly after our

7    call could find an agreeable way to alter the

8    date slightly, to take a little bit of that

9    pressure off of the plaintiff in the event the

10   defendants actually do end up supplementing by

11   the last date, so that we could have an

12   orderly claim construction briefing process.

13                So I'll ask counsel just to meet

14   and confer further before submitting the final

15   version of the scheduling order by Friday, to

16   see if they can come to an agreement on what

17   those dates would look like.  Otherwise, I'll

18   adopt defendants' proposal.  If for whatever

19   reason the parties need a little more time,

20   they can file a stipulation between now and

21   Friday to let me know when they're going to

22   submit the revised proposed scheduling order

23   here.

24                So having resolved that issue, I

1    think that addresses any disputes that relate

2    to the schedule.  And as I said, it will be on

3    us to get back to Delaware counsel to provide

4    the dates from the Court that should be

5    implemented in the scheduling order.  We can

6    do that in the early part of the week.

7                    Is there anything further about

8    the content of the scheduling order we need to

9    take up before I move on here?  Mr. Nemunaitis

10   on the plaintiffs' side?

11                    MR. NEMUNAITIS:  No, Your Honor.

12                    THE COURT:  Ms. LaDriere, on the

13   defendants' side?

14                    MS. LADRIERE:  No, Your Honor.

15   Thank you.

16                    THE COURT:  I did want to say

17   one or two things just about the pending

18   motions to dismiss and the issues of motions

19   to stay.  I know we've talked about that

20   previously, and I've said some things about

21   that earlier.  The first is I expect very

22   shortly to issue reports and recommendations

23   with regard to all outstanding pending motions

24   to dismiss.  I think they can come as soon as

1    before the end of this week.

2                    As I mentioned I think earlier

3    in the case, I know that depending on what the

4    Court's decisions are there, some or all of

5    the defendants may wish to move to stay the

6    case as to them.  So let me just talk about

7    what I envision happening kind of in the near

8    time with regard to this issue.

9                    As I've already ruled, the case

10   schedule is going to be set and entered, and

11   the case is going to move forward no matter

12   what the decisions are on the pending motions

13   to dismiss at least as to some defendants,

14   because there are some defendants who have no

15   motions to dismiss pending, or while they may

16   have motions to dismiss pending, they are not

17   moving to dismiss all claims against them, and

18   for various reasons, including ones that I've

19   already stated, and the case should be moving

20   forward.  So we will be implementing a

21   schedule in the next few days and moving

22   forward with the case.

23                    That said, if when I issue my

24   reports and recommendations on the motions to

1    dismiss, if there are defendants as to whom in

2    light of my decisions on the R&Rs currently

3    then have all claims against them standing

4    dismissed, those are defendants who I would

5    expect might well seek to stay the case

6    against them, even if, as would be the case,

7    plaintiff is given the opportunity to amend

8    the complaint against them.

9            And I think my presumption would

10   be that if after I issued the R&Rs, there is a

11   defendant or set of defendants for whom all

12   claims against them currently stand dismissed,

13   the presumption is that if asked to stay the

14   case against them, I likely will do that.

15   I'll give the parties free process to be able

16   to argue to me about whether stay is

17   appropriate as to those defendants.  But

18   again, my presumption probably going in is if

19   you're a defendant and then after my R&R is

20   issued you currently have no pending claims

21   moving forward against you, my strong

22   presumption is going to be that the case

23   against that defendant will be stayed if they

24   ask for it.

1          On the other hand, if there's a

2     defendant who at least has some claims moving

3     forward against them after those R&Rs issue,

4     the strong presumption is going to be that the

5     case is going to move forward as to that

6     defendant and there won't be a stay as to

7     them.

8          The other thing I would mention,

9     if there is a request for a stay made by some

10    or all defendants after the R&R is issued, you

11    don't really need the full kind of 2010 local

12    rules type briefing process for those stay

13    motions.  And so what I would ask the parties

14    to do, that if there are at that point certain

15    defendants who do want to move for a stay, in

16    terms of the actual briefing for the stay,

17    again, I think it should be truncated, because

18    these won't be complicated issues.

19          So what I have in mind is that

20    the opening brief for a stay would be no more

21    than four single-spaced pages; that the

22    answering brief would be the same, no more

23    than four single-spaced pages; and that a

24    reply brief, if filed, would be no more than

1    two single-spaced pages.

2              I also don't think we probably

3    need the full length of time that briefing,

4    again, typically happens in per the local

5    rules.  So what I'd just ask the parties to do

6    is if a defendant does wish to move for a stay

7    after my R&Rs are issues, that defendants'

8    counsel contact plaintiff's counsel, see if

9    you can agree on a truncated briefing schedule

10   with the lengths of the briefs as I have just

11   set out, so that we can have those stay

12   motions teed up, if they're going to be filed,

13   pretty quickly, and then I can make a decision

14   on them pretty quickly, as well.

15             So that was a lot of words

16   there, and let me just ask if there are any

17   questions about anything I've said about the

18   R&Rs or the issue of stays that's confusing or

19   that the parties need to have me readdress.

20   Mr. Nemunaitis on the plaintiffs' side?

21             MR. NEMUNAITIS:  No, Your Honor.

22             THE COURT:  Ms. LaDriere on the

23   defendants' side?

24             MS. LADRIERE:  No, Your Honor;

```
 1    thank you.

 2                    THE COURT:  And if any other

 3    defendants' counsel has questions as we go

 4    through our call today, you can always feel

 5    free to pipe up when you need to.

 6                    Okay, I always give the parties,

 7    even though I think we addressed any dispute

 8    issues relating to the schedule, I always give

 9    the parties the chance to let me know if there

10    is some other issue that is important to the

11    case, where although it has not reared its

12    head now, is one that they parties want to

13    give the Court a heads up about, Judge you

14    might be saying this later in the case,

15    because a big issue is going to be X, we just

16    want to alert you to the possibility of it

17    now.  Not that there has to be such an issue,

18    but if there is and it's something that you

19    think deserves mention at the case management

20    conference, I'm always happy to hear it.

21                    So I'll turn to plaintiff's

22    counsel and then to defendants' counsel to let

23    me know if there is an any other issue they

24    think we should discuss in those regards.
```

```
 1                        Mr. Nemunaitis, on the

 2        plaintiffs' side, anything that you wish to

 3        raise?

 4                        MR. NEMUNAITIS:  No, nothing I

 5        wish to raise right now, Your Honor.

 6                        THE COURT:  Okay.  And on the

 7        defendants' side, Ms. LaDriere?

 8                        MR. FAREED:  Good afternoon,

 9        Your Honor.  Syed Fareed speaking on behalf of

10        the Talen defendants and on behalf of the

11        other defendants, as well.

12                        There was an issue that we had

13        flagged in the letter, a significant issue

14        with respect to severance, and that's the only

15        other issue, Your Honor, that we have that

16        we'd like to get some guidance on from the

17        Court.

18                        THE COURT:  Okay, I did see a

19        brief mention of that at I think it may have

20        been the very last sentence of the letter.

21        Mr. Fareed, anything more you want to say just

22        to flush out what that issue might look like?

23                        MR. FAREED:  Absolutely, Your

24        Honor.  So the issue is fairly simple, which
```

1    is as Your Honor noted, there are 40-plus

2    defendants that were named in the complaint.

3    And we do not -- we as the defendants do not

4    see any impropriety of enjoining all 40-plus

5    defendants under Section 299 in a single case,

6    in a single complaint.  And defendants believe

7    that severance may be necessary as it pertains

8    to each defendant group.

9                   And what we would like, Your

10    Honor, is Your Honor's guidance how to raise

11    this issue, specifically whether we raise this

12    issue in the near term, or perhaps after the

13    Court rules on the pending motions to dismiss,

14    or at some other time at the Court's

15    preference.

16                   THE COURT:  You know, I'm just

17    trying to think, and you may have a sense of

18    this, Mr. Fareed, more than I do.  For a

19    Section 299 and a joinder severance related

20    motion, I'm just thinking what's the rule or

21    posture in which that would typically come up

22    in the case?  At the pleading stage, at any

23    point?  Maybe part of it is how come I haven't

24    seen that request yet from defendants' side?

1    I'm happy to hear any thoughts you have about

2    that.

3              MR. FAREED:  Very well, Your

4    Honor.  So we had made note of that in one of

5    the -- and I don't have the docket in front of

6    me, so I apologize for that.  But we had made

7    note of that in a pending notion to dismiss in

8    the context of joint and several liability.

9    And the issued we had flagged for the Court

10   was that because we didn't see anything in the

11   allegation of joint and several liability, and

12   because plaintiffs had withdrawn those

13   allegations in their response brief, that took

14   away any reasonable basis to proceed with all

15   40-plus defendants in a single complaint.

16             And our thought was to perhaps

17   wait until we got the Court's orders on the

18   motions to dismiss.  And assuming those orders

19   necessitated an amended complaint or some type

20   of an amended complaint, then perhaps we would

21   wait to see those amended complaints, and the

22   if the improper joinder issues still

23   persisted, then we would raise that those

24   issues with the Court.

1          And perhaps if the Court has an

2    idea on what the Court orders on the motion to

3    dismiss, that that would necessitate an

4    amended complaint schedule, then perhaps we

5    can raise the severance issue in response to

6    those amended complaints.  But if the Court

7    would like to see that before that, we'll

8    certainly be amenable to a briefing schedule

9    in the short term.

10          THE COURT:  Thank you.  On the

11   plaintiffs' side, Mr. Nemunaitis, anything you

12   want to say about this issue?

13          MR. NEMUNAITIS:  So this was

14   raised during the meet-and-confer.  I suppose

15   I'll say the same thing I said there, which is

16   I don't think there's any dispute that whether

17   this is one case or multiple cases, the

18   parties are going to coordinate on discovery

19   and have one claims construction hearing and

20   all that leading up to trial.

21          So I believe the practical

22   effect of this issue is how do you structure

23   trial, how many trials do you have, who are

24   the parties involved in each trial?  And I

```
 1    think the best time to answer that question
 2    would be closer to trial.  As an example,
 3    right now my understanding is if we were to
 4    separate Vistra, Talen, NRG, all of them into
 5    their own trial, in some sense, Chem-Mod and
 6    some of the other RC defendants would have to
 7    participate in multiple trials over the same
 8    basic issues.  That would seem to be -- well,
 9    it's not our opinion that all of the
10    defendants will necessarily agree on the way
11    to structure trials.  It would seem to me to
12    make more sense to see what happens as the
13    case progresses and we get closer to trial as
14    far as deciding on that issue.
15                 THE COURT:  Okay.  Mr. Fareed,
16    on your end, it sounds right to me when
17    Mr. Nemunaitis is saying that whatever we do
18    with regard to a joinder and severance, it's
19    not going to have a practical impact likely on
20    the kind of pretrial deadlines in what is
21    either one schedule or two kind of
22    consolidated for pretrial purposes schedules.
23    It seems like the biggest impact that it would
24    have is if you did have severance as to some
```

```
1    defendants, you would need eventually a
2    separate trial date, presumably antedating
3    whatever the first trail date is that we get
4    from Judge Andrews, and that that would be a
5    key.
6                  Do you agree with that in terms
7    of how a decision on severance might impact
8    the cases?
9                  MR. FAREED:  Yes, Your Honor, we
10   agree that it would not have an impact on the
11   pretrial issues or the scheduling of pretrial
12   events.  But given that we were going to be
13   setting trial dates or perhaps having an
14   indication from the Court on what the likely
15   trial dates would be, we didn't want there to
16   be an implication that we're somehow waiving
17   any issue on improper joinder just because we
18   have a single trial date in the schedule.  So
19   that's the thing we wanted to make sure all
20   where parties are on the same page with that.
21                  THE COURT:  Okay.
22                  MR. KUBEHL:  Your Honor, could I
23   offer one additional perspective there?
24                  THE COURT:  Sure.  Who is
```

```
 1      speaking?

 2                  MR. KUBEHL:  Hello, Your Honor.

 3      This is Doug Kubehl representing Vistra.

 4                  I agree with Mr. Fareed's

 5      observation that this isn't something we need

 6      to address in the immediate near term, but it

 7      probably is something that we need to address

 8      well before trial, because it could affect

 9      selection of experts, for example, whether the

10      parties need to think about for a trial

11      presentation using the same experts or can

12      they use their own experts.  So that there

13      will be decisions along the path that will be

14      affected by whether or not there would be a

15      single trial or separate trials for this.

16                  So I agree we don't need to deal

17      with this right now, and I think we're

18      bringing it to Your Honor's attention so that

19      you're not caught off guard in any way later

20      on when there is a request.  But probably on

21      the other side of the coin, we need to

22      probably do it quite in advance of trial so

23      that we can all plan trial strategies to the

24      extent there is a trial in this case.
```

1           THE COURT:  Understood, and that
2     is part of the reason why it's good to mention
3     it now.
4           Okay, so here's what I would
5     say.  I'd say I appreciate your raising the
6     issue.  Certainly nothing I do is meant to or
7     should suggest that defendants shouldn't do
8     everything that they think they need to to
9     make sure they don't waive any defenses or
10    that they properly make it clear that this is
11    an issue that they want to raise at the first
12    appropriate opportunity.
13          But separate and apart from
14    that, you know, I don't have a strong view
15    about when it is raised.  It sounds to me like
16    the following is probably true.  It might be
17    the case that if after I issue these reports
18    and recommendations in a few days, and then
19    depending on this state of affairs as to
20    certain defendants, there is some thought and
21    maybe even some back and forth between
22    plaintiffs' and defendants' side about will
23    there be objections, if there are or aren't;
24    will there be an amended complaint, and if so,

```
 1    who will it be brought against, to the extent

 2    that some of the arguments for dismissal are

 3    well taken.

 4              If strikes me in the back and

 5    forth of that that it's possible that things

 6    might work out such that it might obviate the

 7    need for a motion for severance down the line.

 8    I don't know how likely it is, maybe it's less

 9    likely than the alternative, but it seems like

10    it's at least possible.

11              So I can't say for sure that my

12    decision on these motions might not be

13    something that the parties could wait on and

14    then kind of react to, and maybe it saves the

15    issue of severance from having to be involved

16    in motions practice.

17              On the other hand, there are

18    lots of ways I could see where my issuing the

19    R&Rs on the motion to dismiss don't really

20    make that all that clear any time soon.

21    Again, if there are objections, it will be

22    some period of time before when the District

23    Court will get to them, and some period for

24    amendment if amendment is appropriate, and
```

1    that could all take time.  And as Mr. Kubehl
2    said, there's probably a need to deal with
3    this issue sooner rather than later.
4              So that's all to say I'm
5    probably not providing you with a ton of help,
6    but I don't have a strong view on when the
7    defendants raise the issue.  And to the extent
8    it is an issue, I will try to address it as
9    soon as I can so that the parties have
10   sufficient lead time to know how they're going
11   to plan for expert discovery.  Okay?
12             All right.  Let me briefly touch
13   on, if there are no other issues that
14   defendants' side wishes to raise at this
15   point, the last issue, which is alternative
16   dispute resolution, or ADR, as it relates to
17   the case.  And that is that our typical
18   process here is that once a scheduling order
19   is actually entered, then that scheduling
20   order is submitted to our chief magistrate
21   judge, Judge Thynge, and she assigns one of
22   our four magistrate judges to be the
23   magistrate judge who is responsible for
24   addressing ADR and settlement issues with the

1    parties.  That may or may not be me.  It won't

2    necessarily be me, even though I'm the

3    magistrate judge who is assisting Judge

4    Andrews with substantive motions in the case.

5              But in any event, once the

6    scheduling order is entered, you'll see soon

7    thereafter a designation of the magistrate

8    judge who is assigned the case for ADR

9    purposes, and soon after that, that judge will

10   issue an order that will provide the parties

11   with guidance as to how to reach out to the

12   Court or how the Court will be contacting them

13   to discuss settlement issues.  So be on the

14   lookout for that.

15             That said, I think it's the case

16   with all our magistrate judges that all of us

17   welcome parties reaching out either jointly or

18   individually at whatever point in the case

19   they think makes sense to ask for our

20   assistance with ADR and mediation and

21   settlement issues.  So I just provide that for

22   what it's worth to the parties, as well.

23             All right, with all that said,

24   is there anything further we need to take up

1       at this time on our case management conference

2       before we conclude?  Mr. Nemunaitis, on the

3       plaintiffs' side?

4                    MR. NEMUNAITIS:  No, Your Honor.

5                    THE COURT:  And on the

6       defendants' side, Ms. LaDriere, I'll go to you

7       because you're the spokesperson, but I'll also

8       ask after I ask you if there's anyone else

9       that has a comment.

10                   MS. LADRIERE:  Wonderful.  Thank

11      you, Your Honor.  Nothing from me.

12                   THE COURT:  Any other

13      defendants' counsel have anything to raise?

14                   All right.  Well, thanks,

15      everyone.  Then we will reach out to Delaware

16      counsel with some key dates in the next few

17      days.  We'll look for the parties to submit a

18      revised post-scheduling order via plaintiffs'

19      counsel by no later than close of business on

20      Friday, or to the extent the parties need more

21      time, we'll look for a stip filed by.  And I

22      continue to look forward to working with you

23      on the case, and wish everybody good health

24      and a good week and a good weekend ahead.

1        Take care, and we'll go off the record.

2                        MR. NEMUNAITIS:   Thank you, Your

3        Honor.

4                        MS. LADRIERE:   Thank you, Your

5        Honor.

6                        (Hearing concluded at 2:40 p.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

```
 1      State of Delaware)
                        )
 2      New Castle County)

 3

 4                   CERTIFICATE OF REPORTER

 5

 6           I, Jennifer M. Guy, Registered

 7      Professional Reporter and Notary Public in the

 8      State of Delaware, do hereby certify that the

 9      foregoing record, Pages 1 to 42 inclusive, is

10      a true and accurate record of the

11      above-captioned proceedings held on the 15th

12      day of June, 2020, in Wilmington.

13           IN WITNESS WHEREOF, this 19th day of June

14      2020, at Wilmington.

15

16

17

18                   /S/  Jennifer M Guy, RPR
                     Jennifer M. Guy, RPR
19

20

21

22

23

24
```

## /

**/S** [1] - 42:18

## 1

**1** [4] - 20:8, 20:16, 21:19, 42:9
**10th** [1] - 9:10
**15** [1] - 1:10
**15th** [1] - 42:11
**16** [2] - 10:20, 13:10
**19-1334-RGA-CJB** [2] - 1:4, 4:5
**19th** [1] - 42:13
**1st** [3] - 13:16, 17:10, 17:14

## 2

**2010** [1] - 26:11
**2020** [7] - 1:10, 13:17, 20:8, 20:17, 21:19, 42:12, 42:14
**2021** [1] - 20:23
**25th** [1] - 17:16
**299** [2] - 30:5, 30:19
**2:00** [1] - 1:10
**2:40** [1] - 41:6

## 4

**40-plus** [3] - 30:1, 30:4, 31:15
**40-some** [1] - 5:3
**42** [1] - 42:9

## 8

**8-26** [1] - 6:23
**8C** [1] - 6:6

## A

**AARON** [1] - 3:20
**ability** [1] - 18:21
**able** [1] - 25:15
**above-captioned** [1] - 42:11
**absolutely** [1] - 29:23
**accurate** [2] - 4:12, 42:10
**accused** [7] - 13:12, 14:6, 17:23, 18:10, 19:3, 20:5, 21:10

**Action** [2] - 1:4, 4:4
**actual** [1] - 26:16
**add** [1] - 14:2
**added** [2] - 17:18, 20:3
**adding** [1] - 19:14
**addition** [1] - 7:4
**additional** [3] - 8:24, 20:3, 34:23
**address** [6] - 8:4, 14:4, 16:2, 35:6, 35:7, 38:8
**addressed** [1] - 28:7
**addresses** [1] - 23:1
**addressing** [2] - 19:22, 38:24
**adopt** [2] - 21:4, 22:18
**ADR** [4] - 38:16, 38:24, 39:8, 39:20
**advance** [1] - 35:22
**AEP** [2] - 3:21, 6:13
**affairs** [1] - 36:19
**affect** [1] - 35:8
**affected** [1] - 35:14
**afternoon** [4] - 5:11, 6:1, 6:19, 29:8
**agree** [6] - 27:9, 33:10, 34:6, 34:10, 35:4, 35:16
**agreeable** [1] - 22:7
**agreed** [1] - 11:3
**agreement** [1] - 22:16
**ahead** [1] - 40:24
**al** [3] - 1:6, 4:3, 4:4
**alert** [1] - 28:16
**allegation** [1] - 31:11
**allegations** [1] - 31:13
**almost** [1] - 8:22
**alter** [1] - 22:7
**alternative** [2] - 37:9, 38:15
**amenable** [1] - 32:8
**amend** [5] - 17:17, 18:15, 18:16, 18:21, 25:7
**amended** [7] - 9:11, 31:19, 31:20, 31:21, 32:4, 32:6, 36:24
**amendment** [3] - 18:18, 37:24

**Andrew** [1] - 6:14
**Andrews** [3] - 12:5, 34:4, 39:4
**Andrews'** [1] - 34:3
**answer** [1] - 33:1
**answering** [1] - 26:22
**antedating** [1] - 34:2
**anticipate** [1] - 19:24
**apart** [1] - 36:13
**apologize** [1] - 31:6
**APPEARANCES** [3] - 1:15, 2:1, 3:1
**appreciate** [3] - 9:7, 12:24, 36:5
**appropriate** [4] - 12:6, 25:17, 36:12, 37:24
**argue** [2] - 8:21, 25:16
**argument** [6] - 8:18, 8:23, 9:1, 9:2, 12:3, 13:8
**arguments** [2] - 19:16, 37:2
**Arps** [1] - 6:16
**ARPS** [1] - 2:2
**ARSHT** [2] - 2:7, 3:1
**Arsht** [1] - 5:21
**art** [4] - 14:8, 17:12, 17:20, 17:24
**assigned** [1] - 39:8
**assigns** [1] - 38:21
**assistance** [1] - 39:20
**assisting** [1] - 39:3
**assuming** [2] - 20:21, 31:18
**attempt** [1] - 20:1
**attention** [1] - 35:18
**attorney** [2] - 8:21, 16:17
**attorneys** [1] - 8:15
**availability** [2] - 11:19, 20:18

## B

**Baker** [3] - 5:15, 5:17, 7:12
**BAKER** [3] - 2:17, 3:5, 3:14
**balance** [1] - 19:2
**BARLOW** [1] - 3:20
**Barlow** [1] - 6:14
**base** [1] - 10:4

**based** [2] - 12:7, 20:4
**basic** [1] - 33:8
**basis** [1] - 31:14
**bearing** [1] - 16:12
**BEFORE** [1] - 1:13
**begin** [2] - 4:17, 7:20
**behalf** [12] - 4:21, 4:22, 6:13, 7:1, 9:21, 10:1, 10:11, 12:23, 16:18, 16:21, 29:9, 29:10
**best** [1] - 33:1
**between** [4] - 12:12, 19:2, 22:20, 36:21
**Biddle** [2] - 7:4, 7:6
**BIDDLE** [1] - 3:2
**big** [2] - 17:2, 28:15
**biggest** [1] - 33:23
**bit** [2] - 21:16, 22:8
**blank** [3] - 11:13, 11:14, 20:19
**BLOCK** [1] - 3:20
**Block** [1] - 6:14
**Blumenfeld** [1] - 6:4
**Botts** [3] - 5:15, 5:18, 7:12
**BOTTS** [2] - 2:17, 3:5, 3:14
**Brandon** [1] - 3:7
**Brian** [1] - 6:2
**BRIAN** [1] - 2:7
**brief** [9] - 14:11, 16:4, 16:5, 22:4, 26:20, 26:22, 26:24, 29:19, 31:13
**briefing** [7] - 17:17, 22:12, 26:12, 26:16, 27:3, 27:9, 32:8
**briefly** [5] - 9:18, 13:7, 21:3, 22:6, 38:12
**briefs** [2] - 19:16, 27:10
**bringing** [1] - 35:18
**brought** [1] - 37:1
**BURKE** [1] - 1:13
**business** [2] - 10:2, 40:19
**BY** [13] - 1:17, 1:20, 2:2, 2:7, 2:10, 2:15, 2:17, 3:3, 3:5, 3:11, 3:14, 3:18, 3:20

## C

**CALDWELL** [1] - 1:19
**captioned** [1] - 42:11
**care** [1] - 41:1
**case** [36] - 4:6, 7:21, 7:24, 8:2, 8:3, 8:5, 8:7, 14:9, 14:19, 24:3, 24:6, 24:9, 24:11, 24:19, 24:22, 25:5, 25:6, 25:14, 25:22, 26:5, 26:11, 28:14, 28:19, 30:5, 30:22, 32:17, 33:13, 35:24, 36:17, 38:17, 39:4, 39:8, 39:15, 39:18, 40:1, 40:23
**cases** [2] - 32:17, 34:8
**CASSADY** [1] - 1:19
**Castle** [1] - 42:2
**caught** [1] - 35:19
**CERT** [3] - 2:4, 6:22, 7:2
**certain** [5] - 5:22, 6:16, 7:5, 26:14, 36:20
**certainly** [3] - 8:22, 32:8, 36:6
**certainty** [1] - 19:5
**CERTIFICATE** [1] - 42:4
**certify** [1] - 42:8
**chambers** [2] - 12:13, 13:3
**chance** [1] - 28:9
**change** [2] - 15:4, 18:21
**chart** [1] - 18:3
**check** [1] - 13:2
**Chem** [1] - 33:5
**Chem-Mod** [1] - 33:5
**chief** [1] - 38:20
**CHRISTOPHER** [1] - 1:13
**Civil** [2] - 1:4, 4:4
**claim** [22] - 11:5, 11:19, 12:2, 13:22, 14:22, 15:11, 15:16, 15:22, 16:3, 16:4, 16:9, 16:12,

17:24, 18:3, 18:5, 18:9, 19:7, 19:12, 19:15, 20:10, 22:4, 22:12
**claims** [6] - 24:17, 25:3, 25:12, 25:20, 26:2, 32:19
**clarification** [1] - 10:8
**clear** [2] - 36:10, 37:20
**close** [4] - 10:2, 12:18, 22:1, 40:19
**closer** [2] - 33:2, 33:13
**co** [1] - 7:11
**co-counsel** [1] - 7:11
**Coal** [2] - 2:11, 6:5
**coin** [1] - 35:21
**coming** [3] - 13:21, 13:23, 22:3
**comment** [1] - 40:9
**complaint** [8] - 25:8, 30:2, 30:6, 31:15, 31:19, 31:20, 32:4, 36:24
**complaints** [2] - 31:21, 32:6
**complicated** [1] - 26:18
**compressed** [1] - 17:11
**concern** [4] - 15:20, 19:20, 19:23, 21:24
**conclude** [1] - 40:2
**concluded** [1] - 41:6
**confer** [3] - 21:3, 22:14, 32:14
**conference** [7] - 4:6, 4:7, 7:21, 11:7, 12:4, 28:20, 40:1
**conferences** [1] - 8:8
**confirmation** [1] - 14:6
**confusing** [1] - 27:18
**consider** [1] - 9:1
**consolidated** [1] - 33:22
**construction** [22] - 11:6, 11:20, 12:2, 13:22, 14:23,

15:11, 15:17, 15:23, 16:3, 16:5, 16:10, 16:13, 18:1, 18:3, 18:5, 19:7, 19:12, 19:15, 20:11, 22:4, 22:12, 32:19
**constructions** [2] - 18:6, 18:9
**construe** [2] - 14:21, 15:1
**contact** [1] - 27:8
**contacting** [1] - 39:12
**content** [1] - 23:8
**contention** [1] - 15:3
**contentions** [4] - 13:19, 15:4, 15:8, 17:9
**context** [1] - 31:8
**continue** [1] - 40:22
**CONTINUED** [2] - 2:1, 3:1
**coordinate** [1] - 32:18
**Corp** [3] - 3:7, 4:3, 4:4
**CORP** [2] - 1:3, 1:6
**Cottrell** [1] - 5:12
**COTTRELL** [3] - 2:15, 3:11, 5:11
**Counsel** [7] - 1:21, 2:4, 2:11, 2:19, 3:7, 3:16, 3:21
**counsel** [28] - 4:10, 4:15, 4:16, 4:18, 5:5, 5:10, 5:13, 5:16, 5:23, 6:17, 7:7, 7:11, 7:17, 9:21, 9:24, 12:19, 13:4, 14:1, 22:13, 23:3, 27:8, 28:3, 28:22, 40:13, 40:16, 40:19
**County** [1] - 42:2
**couple** [1] - 20:10
**Court** [13] - 23:4, 28:13, 29:17, 30:13, 31:9, 31:24, 32:1, 32:2, 32:6, 34:14, 37:23, 39:12
**court** [4] - 4:5, 4:9, 8:2, 14:23
**COURT** [33] - 1:1, 4:1, 4:24, 5:19, 6:15, 7:3, 7:14,

10:15, 10:24, 12:1, 12:10, 13:2, 16:8, 16:16, 16:22, 18:12, 19:9, 20:6, 20:24, 23:12, 23:16, 27:22, 28:2, 29:6, 29:18, 30:16, 32:10, 33:15, 34:21, 34:24, 36:1, 40:5, 40:12
**Court's** [4] - 20:18, 24:4, 30:14, 31:17
**court's** [2] - 8:9, 9:5
**creates** [1] - 17:10
**CRUTCHER** [1] - 2:9
**CURRY** [1] - 1:19

**D**

**date** [20] - 10:19, 11:19, 11:20, 12:3, 12:4, 13:11, 13:15, 13:16, 13:17, 13:21, 20:9, 21:17, 22:1, 22:3, 22:8, 22:11, 34:2, 34:3, 34:18
**dates** [20] - 11:5, 11:9, 11:10, 11:12, 11:22, 11:23, 12:6, 12:13, 12:14, 12:16, 13:5, 13:11, 13:20, 20:12, 20:15, 22:17, 23:4, 34:13, 34:15, 40:16
**David** [1] - 7:12
**DAVID** [1] - 3:6
**days** [3] - 24:21, 36:18, 40:17
**deadline** [8] - 14:14, 14:15, 17:15, 17:16, 18:16, 20:21, 21:9, 21:11
**deadlines** [5] - 13:15, 14:12, 21:7, 21:19, 33:20
**deal** [3] - 17:2, 35:16, 38:2
**deciding** [1] - 33:14
**decision** [4] - 9:18, 27:13, 34:7, 37:12

**decisions** [4] - 24:4, 24:12, 25:2, 35:13
**Defendant** [1] - 1:7
**defendant** [8] - 16:21, 25:11, 25:19, 25:23, 26:2, 26:6, 27:6, 30:8
**Defendants** [6] - 2:4, 2:12, 2:19, 3:7, 3:16, 3:21
**defendants** [53] - 5:2, 5:6, 5:8, 5:13, 5:14, 5:17, 5:22, 6:4, 6:5, 6:13, 6:17, 6:22, 7:2, 7:5, 7:10, 7:11, 12:23, 14:4, 14:20, 15:14, 15:21, 16:18, 17:7, 17:13, 18:20, 19:12, 19:22, 21:7, 21:12, 21:16, 22:10, 24:5, 24:13, 24:14, 25:1, 25:4, 25:11, 25:17, 26:10, 26:15, 29:10, 29:11, 30:2, 30:3, 30:5, 30:6, 31:15, 33:6, 33:10, 34:1, 36:7, 36:20, 38:7
**defendants'** [18] - 12:19, 13:19, 16:17, 18:8, 21:5, 22:2, 22:18, 23:13, 27:7, 27:23, 28:3, 28:22, 29:7, 30:24, 36:22, 38:14, 40:6, 40:13
**defenses** [1] - 28:19
**DELAWARE** [1] - 1:1
**Delaware** [9] - 4:18, 5:5, 5:13, 5:16, 13:4, 23:3, 40:15, 42:1, 42:8
**Demers** [1] - 6:21
**DEMERS** [1] - 2:3
**deserves** [1] - 28:19
**designation** [1] - 39:7
**Devlin** [1] - 4:20
**DEVLIN** [1] - 1:17
**difference** [1] -

20:14
**different** [3] - 5:1, 5:6, 8:11
**difficult** [1] - 16:1
**DiGigiovanni** [1] - 7:9
**DIGIOVANNI** [2] - 3:3, 7:8
**disclose** [3] - 15:15, 15:21, 15:24
**discovery** [2] - 32:18, 38:11
**discuss** [3] - 10:17, 28:24, 39:13
**discussed** [1] - 18:4
**dismiss** [12] - 23:18, 23:24, 24:13, 24:15, 24:16, 24:17, 25:1, 30:13, 31:7, 31:18, 32:3, 37:19
**dismissal** [1] - 37:2
**dismissed** [2] - 25:4, 25:12
**dispositive** [1] - 8:3
**dispute** [4] - 13:9, 28:7, 32:16, 38:16
**disputed** [5] - 9:13, 9:16, 10:6, 10:18, 13:7
**disputes** [7] - 10:17, 15:5, 15:9, 15:10, 15:17, 15:19, 23:1
**dissuade** [1] - 19:19
**District** [1] - 37:22
**DISTRICT** [2] - 1:1, 1:1
**district** [3] - 8:1, 9:5, 14:23
**docket** [2] - 9:24, 31:5
**done** [1] - 19:19
**Doug** [3] - 5:15, 6:21, 35:3
**DOUGLAS** [2] - 2:3, 2:17
**down** [2] - 4:9, 37:7
**Drinker** [3] - 7:4, 7:6, 7:10
**DRINKER** [1] - 3:2
**due** [3] - 17:10, 18:22, 19:17
**DUNN** [1] - 2:9
**Dunn** [1] - 6:10

**DURHAM** [1] - 3:15
**during** [3] - 8:7, 17:24, 32:14

### E

**early** [2] - 19:5, 23:6
**easier** [1] - 5:4
**effect** [1] - 32:22
**EGAN** [2] - 2:7, 6:1
**Egan** [1] - 6:2
**either** [2] - 33:21, 39:17
**ELIZABETH** [1] - 3:15
**EMISSIONS** [1] - 1:3
**Emissions** [1] - 4:3
**end** [4] - 19:14, 22:10, 24:1, 33:16
**Energy** [4] - 3:7, 4:2, 4:3, 7:11
**ENERGY** [2] - 1:3, 1:6
**enjoining** [1] - 30:4
**entered** [3] - 24:10, 38:19, 39:6
**envision** [1] - 24:7
**especially** [1] - 16:2
**ESQ** [18] - 1:17, 1:20, 2:2, 2:3, 2:3, 2:7, 2:10, 2:10, 2:15, 2:17, 2:18, 3:3, 3:5, 3:6, 3:11, 3:14, 3:18, 3:20
**essence** [1] - 19:11
**et** [3] - 1:6, 4:3, 4:4
**Evall** [1] - 6:9
**EVALL** [1] - 2:10
**event** [2] - 22:9, 39:5
**events** [1] - 34:12
**eventually** [1] - 34:1
**evidence** [1] - 18:6
**exactly** [1] - 14:7
**example** [6] - 17:14, 17:17, 18:2, 18:15, 33:2, 35:9
**exchange** [2] - 15:11, 15:16
**exchanged** [3] - 15:3, 15:4, 15:8
**expect** [3] - 14:24, 23:21, 25:5

**expert** [1] - 38:11
**experts** [3] - 35:9, 35:11, 35:12
**extent** [4] - 35:24, 37:1, 38:7, 40:20

### F

**FAEGRE** [1] - 3:2
**Faegre** [2] - 7:6, 7:9
**fairly** [1] - 29:24
**far** [1] - 33:14
**Fareed** [5] - 7:12, 29:9, 29:21, 30:18, 33:15
**FAREED** [5] - 3:5, 29:8, 29:23, 31:3, 34:9
**Fareed's** [1] - 35:4
**few** [5] - 7:22, 7:24, 24:21, 36:18, 40:16
**file** [2] - 16:3, 22:20
**filed** [6] - 14:20, 18:3, 18:7, 26:24, 27:12, 40:21
**fill** [2] - 12:6, 12:15
**final** [8] - 9:22, 11:15, 14:5, 17:7, 17:23, 18:10, 21:21, 22:14
**finally** [2] - 21:10, 21:13
**fine** [1] - 14:14
**FINGER** [2] - 2:14, 3:11
**Finger** [1] - 5:10
**FIRM** [1] - 1:17
**Firm** [1] - 4:20
**firm** [2] - 5:7, 7:13
**firms** [1] - 11:22
**first** [13] - 4:16, 5:9, 7:23, 10:4, 10:10, 10:16, 13:20, 14:11, 18:13, 21:8, 23:21, 34:3, 36:11
**flagged** [2] - 29:13, 31:9
**Flannery** [1] - 5:18
**FLANNERY** [1] - 3:15
**FLOM** [1] - 2:2
**flush** [1] - 29:22
**following** [1] - 36:16
**FOR** [1] - 1:1
**foregoing** [1] - 42:9
**form** [1] - 11:3
**forth** [2] - 36:21,

37:5
**forward** [7] - 24:11, 24:20, 24:22, 25:21, 26:3, 26:5, 40:22
**four** [3] - 26:21, 26:23, 38:22
**FRANCIS** [1] - 3:3
**Frank** [1] - 7:9
**Fred** [1] - 5:12
**FREDRICK** [2] - 2:15, 3:11
**free** [2] - 25:15, 28:5
**Friday** [7] - 10:2, 11:15, 11:24, 12:12, 22:15, 22:21, 40:20
**front** [2] - 8:12, 31:5
**full** [3] - 15:24, 26:11, 27:3

### G

**general** [1] - 21:4
**Generation** [1] - 3:8
**Gibson** [1] - 6:9
**GIBSON** [1] - 2:9
**given** [2] - 25:7, 34:12
**grant** [1] - 8:22
**group** [1] - 30:8
**groups** [2] - 5:13, 6:5
**guard** [1] - 35:19
**guess** [4] - 11:11, 12:18, 16:24, 18:12
**guidance** [3] - 29:16, 30:10, 39:11
**Guy** [3] - 42:6, 42:18, 42:18

### H

**H.A** [1] - 3:8
**hand** [2] - 26:1, 37:17
**happy** [2] - 28:20, 31:1
**head** [2] - 17:5, 28:12
**heads** [1] - 28:13
**health** [1] - 40:23
**hear** [3] - 9:17, 28:20, 31:1
**Hearing** [1] - 41:6

**hearing** [4] - 11:20, 12:3, 20:21, 32:19
**hearings** [1] - 11:6
**held** [1] - 42:11
**hello** [1] - 35:2
**help** [2] - 4:11, 38:5
**helpful** [1] - 4:10
**hereby** [1] - 42:8
**hit** [1] - 17:5
**Honor** [39] - 4:20, 5:12, 6:2, 6:8, 6:11, 6:20, 7:9, 10:14, 10:23, 11:17, 11:18, 12:22, 14:11, 16:15, 16:20, 17:4, 17:5, 17:10, 19:1, 19:21, 20:20, 23:11, 23:14, 27:21, 27:24, 29:5, 29:9, 29:15, 29:24, 30:1, 30:10, 31:4, 34:9, 34:22, 35:2, 40:4, 40:11, 41:3, 41:5
**Honor's** [2] - 30:10, 35:18
**HONORABLE** [1] - 1:13

### I

**idea** [2] - 16:13, 32:2
**identification** [4] - 17:8, 19:13, 21:13, 21:21
**identified** [3] - 6:6, 7:17, 16:11
**identifies** [1] - 20:4
**identify** [8] - 4:11, 4:15, 5:7, 17:12, 17:19, 17:22, 20:1, 21:10
**identifying** [1] - 5:4
**II** [1] - 3:18
**immediate** [1] - 35:6
**impact** [6] - 14:7, 19:14, 33:19, 33:23, 34:7, 34:10
**implemented** [1] - 23:5
**implementing** [1] - 24:20
**implication** [1] - 34:16

**important** [4] - 14:13, 14:17, 15:7, 28:10
**improper** [2] - 31:22, 34:17
**impropriety** [1] - 30:4
**IN** [2] - 1:1, 42:13
**INC** [1] - 1:3
**incentive** [1] - 8:14
**including** [1] - 24:18
**inclusive** [1] - 42:9
**indeed** [2] - 21:20, 21:22
**indication** [1] - 34:14
**individually** [1] - 39:18
**information** [1] - 15:18
**infringement** [1] - 15:2
**initial** [4] - 13:18, 17:9, 21:18, 22:4
**inputted** [1] - 20:12
**intent** [1] - 11:8
**introduce** [1] - 5:23
**invalidity** [9] - 13:13, 13:18, 15:3, 16:11, 17:9, 19:4, 21:14, 21:18, 22:2
**involved** [2] - 32:24, 37:15
**IPRs** [2] - 14:20
**issue** [42] - 9:16, 9:19, 10:18, 12:19, 13:7, 14:8, 14:12, 14:17, 17:1, 17:2, 21:1, 22:24, 23:22, 24:8, 24:23, 26:3, 27:18, 28:10, 28:15, 28:17, 28:23, 29:12, 29:13, 29:15, 29:22, 29:24, 30:11, 30:12, 32:5, 32:12, 32:22, 33:14, 34:17, 36:6, 36:11, 36:17, 37:15, 38:3, 38:7, 38:8, 38:15, 39:10
**issued** [4] - 25:10, 25:20, 26:10, 31:9
**issues** [16] - 8:4,

9:13, 10:6, 19:3, 23:18, 26:18, 27:7, 28:8, 31:22, 31:24, 33:8, 34:11, 38:13, 38:24, 39:13, 39:21
**issuing** [1] - 37:18

## J

**Jack** [1] - 6:3
**JAMES** [1] - 1:17
**January** [1] - 20:22
**Jenner** [1] - 6:14
**JENNER** [1] - 3:20
**Jennifer** [3] - 42:6, 42:18, 42:18
**JESSICA** [1] - 2:2
**Jessica** [1] - 6:20
**Jim** [1] - 4:20
**joinder** [4] - 30:19, 31:22, 33:18, 34:17
**joining** [1] - 6:8
**joint** [6] - 13:22, 18:3, 19:11, 20:10, 31:8, 31:11
**jointly** [2] - 11:2, 39:17
**Joseph** [1] - 6:9
**JOSEPH** [1] - 2:10
**judge** [5] - 38:21, 38:23, 39:3, 39:8, 39:9
**Judge** [7] - 1:13, 12:5, 13:3, 28:13, 34:4, 38:21, 39:3
**judges** [2] - 38:22, 39:16
**judgment** [2] - 11:6, 12:3
**June** [4] - 1:10, 20:21, 42:12, 42:13
**Justin** [2] - 4:23, 10:13
**JUSTIN** [1] - 1:20

## K

**key** [4] - 12:14, 20:8, 34:5, 40:16
**kind** [7] - 11:4, 21:21, 24:7, 26:11, 33:20, 33:21, 37:14
**KUBEHL** [3] - 2:17, 34:22, 35:2

**Kubehl** [3] - 5:15, 35:3, 38:1
**KUNZ** [2] - 2:2, 6:19
**Kunz** [1] - 6:20

## L

**LADRIERE** [11] - 2:18, 12:22, 16:20, 17:4, 18:24, 19:21, 20:20, 23:14, 27:24, 40:10, 41:4
**LaDriere** [9] - 5:16, 12:23, 16:21, 16:22, 20:7, 23:12, 27:22, 29:7, 40:6
**last** [3] - 22:11, 29:20, 38:15
**late** [1] - 19:6
**Law** [1] - 4:20
**law** [1] - 8:16
**LAW** [1] - 1:17
**LAYTON** [2] - 2:14, 3:11
**Layton** [1] - 5:10
**lead** [1] - 38:10
**leading** [1] - 32:20
**least** [3] - 24:13, 26:2, 37:10
**leeway** [1] - 19:18
**left** [2] - 10:16, 11:13
**length** [1] - 27:3
**lengths** [1] - 27:10
**Lennon** [1] - 4:20
**LENNON** [1] - 1:17, 4:19
**Leslie** [1] - 6:21
**LESLIE** [1] - 2:3
**less** [4] - 8:16, 17:1, 17:15, 37:8
**letter** [3] - 21:8, 29:13, 29:20
**letting** [1] - 17:22
**liability** [2] - 31:8, 31:11
**light** [1] - 25:2
**likely** [7] - 8:23, 20:14, 25:14, 33:19, 34:14, 37:8, 37:9
**line** [6] - 4:22, 5:2, 5:8, 6:18, 7:16, 37:7
**listed** [1] - 6:23
**Liz** [1] - 5:18

**LLC** [4] - 3:7, 3:8, 3:8, 6:5
**LLP** [8] - 2:2, 2:7, 2:9, 2:17, 3:2, 3:5, 3:14, 3:17
**local** [2] - 26:11, 27:4
**lock** [1] - 15:22
**logical** [1] - 15:14
**look** [7] - 13:3, 19:11, 22:17, 29:22, 40:17, 40:21, 40:22
**looking** [1] - 20:16
**lookout** [1] - 39:14
**looks** [2] - 10:17, 11:8

## M

**Magistrate** [1] - 1:13
**magistrate** [6] - 38:20, 38:22, 38:23, 39:3, 39:7, 39:16
**management** [5] - 4:6, 7:21, 8:7, 28:19, 40:1
**Mark** [1] - 6:9
**MARK** [1] - 2:10
**Markman** [1] - 20:21
**matter** [3] - 4:2, 20:13, 24:11
**MEAGHER** [1] - 2:2
**mean** [1] - 18:16
**means** [1] - 20:1
**meant** [4] - 8:13, 8:24, 11:14, 36:6
**mediation** [1] - 39:20
**meet** [3] - 21:3, 22:13, 32:14
**meet-and-confer** [1] - 32:14
**Megan** [3] - 5:15, 12:22, 16:21
**MEGAN** [1] - 2:18
**mention** [5] - 9:6, 26:8, 28:19, 29:19, 36:2
**mentioned** [1] - 24:2
**MES** [1] - 1:3
**mid** [1] - 20:22
**MIDWEST** [1] - 1:3
**Midwest** [1] - 4:2
**might** [14] - 9:3, 14:7, 14:8, 15:16,

16:12, 18:16, 25:5, 28:14, 29:22, 34:7, 36:16, 37:6, 37:12
**mind** [1] - 26:19
**misunderstood** [1] - 12:11
**Mod** [1] - 33:5
**Monday** [1] - 1:10
**month** [1] - 9:10
**MORICO** [1] - 3:14
**Morico** [1] - 5:18
**MORRIS** [2] - 2:7, 3:17
**Morris** [3] - 5:21, 6:2, 6:12
**most** [1] - 15:7
**motion** [8] - 8:4, 8:18, 8:20, 8:21, 30:20, 32:2, 37:7, 37:19
**motions** [15] - 11:7, 23:18, 23:23, 24:12, 24:15, 24:16, 24:24, 26:13, 27:12, 30:13, 31:18, 37:12, 37:16, 39:4
**move** [6] - 23:9, 24:5, 24:11, 26:5, 26:15, 27:6
**moving** [5] - 24:17, 24:19, 24:21, 25:21, 26:2
**MR** [23] - 4:19, 5:11, 6:1, 6:11, 7:8, 10:13, 10:22, 11:16, 12:9, 14:10, 16:14, 23:11, 27:21, 29:4, 29:8, 29:23, 31:3, 32:13, 34:9, 34:22, 35:2, 40:4, 41:2
**MS** [11] - 6:19, 12:22, 16:20, 17:4, 18:24, 19:21, 20:20, 23:14, 27:24, 40:10, 41:4
**multiple** [2] - 32:17, 33:7

## N

**nail** [1] - 17:5
**named** [1] - 30:2
**near** [3] - 24:7,

30:12, 35:6
**necessarily** [2] - 33:10, 39:2
**necessary** [1] - 30:7
**necessitate** [1] - 32:3
**necessitated** [1] - 31:19
**need** [19] - 16:2, 22:4, 22:19, 23:8, 26:11, 27:3, 27:19, 28:5, 34:1, 35:5, 35:7, 35:10, 35:16, 35:21, 36:8, 37:7, 38:2, 39:24, 40:20
**NEMEC** [1] - 2:3
**Nemec** [2] - 6:21, 7:1
**Nemunaitis** [10] - 4:23, 10:14, 10:15, 14:1, 23:9, 27:20, 29:1, 32:11, 33:17, 40:2
**NEMUNAITIS** [13] - 1:20, 10:13, 10:22, 11:16, 12:9, 14:10, 16:14, 23:11, 27:21, 29:4, 32:13, 40:4, 41:2
**New** [1] - 42:2
**newer** [2] - 8:14, 8:21
**newly** [1] - 16:11
**next** [4] - 5:21, 9:6, 24:21, 40:16
**NICHOLS** [2] - 2:7, 3:17
**Nichols** [3] - 5:21, 6:3, 6:12
**Notary** [1] - 42:7
**note** [4] - 8:6, 8:7, 31:4, 31:7
**noted** [1] - 30:1
**nothing** [3] - 29:4, 36:6, 40:11
**notice** [1] - 8:20
**notion** [1] - 31:7
**NRG** [3] - 3:16, 5:17, 33:4
**Number** [1] - 4:4
**number** [2] - 5:1, 9:13

## O

**objections** [2] -

36:23, 37:21
**observation** [1] -
35:5
**obviate** [1] - 37:6
**occurs** [1] - 16:5
**October** [6] - 13:16,
17:10, 17:14,
20:8, 20:16,
21:19
**OF** [2] - 1:1, 42:4
**offer** [1] - 34:23
**once** [5] - 11:22,
12:2, 15:2, 38:18,
39:5
**one** [20] - 8:8, 8:12,
8:19, 9:14, 10:18,
13:7, 16:17,
17:15, 17:19,
18:18, 19:17,
21:3, 23:17,
28:12, 31:4,
32:17, 32:19,
33:21, 34:23,
38:21
**ones** [1] - 24:18
**open** [1] - 19:22
**opening** [3] - 16:3,
19:16, 26:20
**opinion** [1] - 33:9
**opportunity** [4] -
8:14, 9:1, 25:7,
36:12
**oral** [3] - 8:18, 8:23,
12:3
**order** [22] - 6:7,
6:24, 8:13, 8:17,
9:4, 9:9, 9:12,
9:23, 11:14,
11:21, 11:24,
12:8, 17:11,
22:15, 22:22,
23:5, 23:8, 38:18,
38:20, 39:6,
39:10, 40:18
**orderly** [1] - 22:12
**orders** [6] - 8:9,
8:11, 21:20,
31:17, 31:18,
32:2
**otherwise** [2] - 9:3,
22:17
**outstanding** [1] -
23:23
**own** [2] - 33:5,
35:12

**P**

**P.A** [2] - 2:14, 3:11
**p.m** [2] - 1:10, 41:6

**page** [1] - 34:20
**Pages** [1] - 42:9
**pages** [3] - 26:21,
26:23, 27:1
**Paragraph** [1] - 6:6
**paragraph** [2] -
10:20, 13:10
**paragraphs** [1] -
6:23
**part** [5] - 14:5,
15:20, 23:6,
30:23, 36:2
**participate** [1] -
33:7
**particular** [2] - 8:8,
14:18
**particularly** [2] -
14:4, 16:24
**parties** [38] - 6:24,
8:1, 8:19, 9:4,
9:8, 9:18, 9:20,
9:22, 10:5, 11:2,
12:13, 13:5, 15:5,
17:22, 18:4, 19:6,
21:2, 22:5, 22:19,
25:15, 26:13,
27:5, 27:19, 28:6,
28:9, 28:12,
32:18, 32:24,
34:20, 35:10,
37:13, 38:9, 39:1,
39:10, 39:17,
39:22, 40:17,
40:20
**party** [1] - 7:16
**patent** [1] - 17:20,
18:15
**patents** [1] - 17:18
**path** [1] - 35:13
**Paul** [1] - 5:18
**PAUL** [1] - 3:14
**pending** [9] - 8:18,
23:17, 23:23,
24:12, 24:15,
24:16, 25:20,
30:13, 31:7
**per** [1] - 27:4
**perhaps** [6] -
30:12, 31:16,
31:20, 32:1, 32:4,
34:13
**period** [2] - 37:22,
37:23
**persisted** [1] -
31:23
**perspective** [1] -
34:23
**pertains** [1] - 30:7
**phone** [2] - 5:14,
6:8

**pipe** [1] - 28:5
**plaintiff** [7] - 14:24,
18:15, 18:16,
20:4, 21:9, 22:9,
25:7
**plaintiff's** [2] - 27:8,
28:21
**plaintiffs** [8] - 4:21,
4:22, 13:14,
17:16, 17:18,
18:7, 20:8, 31:12
**Plaintiffs** [1] - 1:4,
1:21
**plaintiffs'** [16] -
4:17, 9:21, 9:24,
10:10, 10:12,
13:24, 17:6,
19:10, 21:24,
23:10, 27:20,
29:2, 32:11,
36:22, 40:3,
40:18
**plan** [2] - 35:23,
38:11
**pleading** [1] - 30:22
**pleadings** [1] -
17:18
**plug** [1] - 11:23
**point** [10] - 15:6,
16:9, 16:19,
18:13, 19:10,
21:4, 26:14,
30:23, 38:15,
39:18
**points** [2] - 14:11,
18:13
**portion** [2] - 8:9,
8:10, 9:5
**position** [1] - 16:13
**positions** [2] -
15:12, 15:23
**possibility** [1] -
28:16
**possible** [2] - 37:5,
37:10
**post** [2] - 21:17,
40:18
**post-scheduling**
[1] - 40:18
**posture** [1] - 30:21
**potentially** [1] -
18:14
**practical** [3] -
20:13, 32:21,
33:19
**practice** [1] - 37:16
**preference** [1] -
30:15
**presentation** [1] -
35:11

**pressure** [1] - 22:9
**presumably** [2] -
18:19, 34:2
**presumption** [5] -
25:9, 25:13,
25:18, 25:22,
26:4
**pretrial** [6] - 11:7,
12:4, 33:20,
33:22, 34:11
**pretty** [2] - 27:13,
27:14
**previously** [2] - 9:8,
33:20
**procedures** [1] -
8:12
**proceed** [2] -
12:21, 31:14
**proceedings** [1] -
42:11
**process** [7] - 7:23,
9:7, 16:10, 22:12,
22:15, 26:12,
38:18
**processes** [7] -
13:13, 14:6,
17:23, 18:11,
19:4, 20:5, 21:11
**product** [1] - 19:4
**products** [6] -
13:12, 14:6,
17:23, 18:10,
20:5, 21:10
**Professional** [1] -
42:7
**progresses** [1] -
33:13
**properly** [1] - 36:10
**proposal** [11] -
13:19, 16:6,
16:24, 17:6,
18:17, 19:2, 19:8,
20:17, 21:5, 22:3,
22:18
**propose** [1] - 20:22
**proposed** [11] -
6:7, 6:23, 9:9,
9:11, 9:22, 12:8,
17:21, 18:5, 18:9,
20:2, 22:22
**proposing** [3] -
13:14, 14:3, 20:9
**provide** [8] - 8:13,
8:24, 11:21, 17:7,
18:10, 19:5, 23:3,
39:10, 39:21
**provided** [1] - 9:3
**providing** [2] - 9:2,
38:5
**Public** [1] - 42:7

**purposefully** [1] -
19:24
**purposes** [3] - 8:3,
33:22, 39:9
**put** [2] - 9:23, 11:14

**Q**

**questions** [2] -
27:17, 28:3
**quickly** [2] - 27:13,
27:14
**quite** [1] - 35:22

**R**

**R&R** [2] - 25:19,
26:10
**R&Rs** [6] - 25:2,
25:10, 26:3, 27:7,
27:18, 37:19
**raise** [10] - 29:3,
29:5, 30:10,
30:11, 31:23,
32:5, 36:11, 38:7,
38:14, 40:13
**raised** [2] - 32:14,
36:15
**raising** [1] - 36:5
**rather** [1] - 38:3
**RC** [2] - 6:4, 33:6
**reach** [2] - 39:11,
40:15
**reaching** [1] -
39:17
**react** [1] - 37:14
**readdress** [1] -
27:19
**really** [2] - 26:11,
37:19
**reared** [1] - 28:11
**reason** [3] - 14:18,
22:19, 36:2
**reasonable** [1] -
31:14
**reasons** [2] - 21:7,
24:18
**Reath** [1] - 7:5
**REATH** [1] - 3:2
**receive** [1] - 11:18
**recognized** [1] -
17:6
**recommendation
s** [3] - 23:22,
24:24, 36:18
**record** [7] - 4:2,
4:8, 4:12, 4:16,
41:1, 42:9, 42:10
**reduced** [1] - 9:13
**reference** [1] -

16:11
**referenced** [1] - 12:15
**references** [14] - 13:13, 15:15, 15:22, 15:24, 17:8, 17:12, 17:20, 17:24, 19:5, 19:13, 20:2, 20:3, 21:14, 22:2
**referred** [1] - 8:2
**Refined** [2] - 2:11, 6:4
**regard** [5] - 9:19, 21:24, 23:23, 24:8, 33:18
**regarding** [1] - 9:14
**regards** [1] - 28:24
**Registered** [1] - 42:6
**relate** [2] - 8:11, 23:1
**related** [3] - 7:24, 19:3, 30:19
**relates** [3] - 10:19, 13:10, 38:16
**relating** [3] - 9:17, 10:6, 28:8
**relevant** [1] - 14:8
**remain** [1] - 11:14
**remaining** [2] - 10:18, 12:16
**remind** [1] - 20:6
**reply** [1] - 26:24
**reporter** [1] - 4:9
**REPORTER** [1] - 42:4
**Reporter** [1] - 42:7
**reports** [3] - 23:22, 24:24, 36:17
**represent** [5] - 5:9, 5:12, 6:3, 6:22, 7:10
**representative** [1] - 5:7
**representing** [3] - 5:5, 5:22, 35:3
**represents** [2] - 6:16, 7:5
**request** [4] - 8:22, 26:9, 30:24, 35:20
**requested** [1] - 8:19
**resolution** [1] - 38:16
**resolved** [1] - 22:24
**respect** [1] - 29:14
**response** [2] - 31:13, 32:5

**responsible** [1] - 38:23
**rest** [2] - 11:23, 12:6
**review** [1] - 7:23
**revised** [4] - 9:11, 9:22, 22:22, 40:18
**Richard** [1] - 6:9
**RICHARD** [1] - 2:10
**Richards** [1] - 5:10
**RICHARDS** [2] - 2:14, 3:11
**Rodger** [1] - 6:12
**RODGER** [1] - 3:18
**role** [1] - 7:23
**room** [1] - 11:22
**RPR** [2] - 42:18, 42:18
**rule** [1] - 30:20
**ruled** [1] - 24:9
**rules** [3] - 26:12, 27:5, 30:13

## S

**saves** [1] - 37:14
**saw** [1] - 9:7
**scenario** [3] - 16:2, 18:19, 18:22
**schedule** [18] - 9:14, 9:17, 10:6, 11:3, 11:4, 11:10, 13:4, 13:8, 18:22, 23:2, 24:10, 24:21, 27:9, 28:8, 32:4, 32:8, 33:21, 34:18
**schedules** [1] - 33:22
**scheduling** [16] - 6:7, 6:24, 9:9, 9:12, 9:23, 11:13, 21:20, 22:15, 22:22, 23:5, 23:8, 34:11, 38:18, 38:19, 39:6, 40:18
**school** [1] - 8:16
**second** [2] - 13:23, 21:11
**Section** [2] - 30:5, 30:19
**see** [13] - 11:2, 12:1, 21:2, 22:16, 27:8, 29:18, 30:4, 31:10, 31:21, 32:7, 33:12, 37:18, 39:6
**seek** [1] - 25:5

**seem** [5] - 12:14, 15:6, 17:2, 33:8, 33:11
**selection** [1] - 35:9
**sense** [11] - 14:3, 14:19, 16:7, 17:3, 18:1, 21:6, 22:5, 30:17, 33:5, 33:12, 39:19
**sentence** [1] - 29:20
**separate** [5] - 13:20, 33:4, 34:2, 35:15, 36:13
**September** [1] - 17:16
**serve** [1] - 16:4
**served** [1] - 22:5
**set** [13] - 5:8, 10:16, 11:5, 12:7, 13:16, 15:18, 15:24, 21:6, 21:8, 21:19, 24:10, 25:11, 27:11
**sets** [2] - 5:2, 5:6
**setting** [1] - 34:13
**settlement** [3] - 38:24, 39:13, 39:21
**seven** [1] - 8:15
**several** [2] - 31:8, 31:11
**severance** [9] - 29:14, 30:7, 30:19, 32:5, 33:18, 33:24, 34:7, 37:7, 37:15
**Shores** [1] - 3:7
**short** [1] - 32:9
**shortly** [3] - 13:5, 21:12, 23:22
**side** [19] - 4:15, 4:17, 10:10, 10:12, 16:17, 21:24, 23:10, 23:13, 27:20, 27:23, 29:2, 29:7, 30:24, 32:11, 35:21, 36:22, 38:14, 40:3, 40:6
**sides** [1] - 10:1
**sign** [1] - 9:23
**significant** [1] - 29:13
**simple** [1] - 29:24
**simply** [1] - 8:17
**single** [8] - 26:21, 26:23, 27:1, 30:5, 30:6, 31:15, 34:18, 35:15

**single-spaced** [3] - 26:21, 26:23, 27:1
**Skadden** [1] - 6:16
**SKADDEN** [1] - 2:2
**slightly** [1] - 22:8
**smaller** [1] - 21:3
**SMITH** [2] - 3:18, 6:11
**Smith** [1] - 6:12
**solidifying** [1] - 19:3
**soon** [5] - 23:24, 37:20, 38:9, 39:6, 39:9
**sooner** [1] - 38:3
**sorry** [1] - 16:4
**sort** [1] - 16:1
**sounds** [2] - 33:16, 36:15
**spaced** [3] - 26:21, 26:23, 27:1
**speaking** [4] - 4:22, 7:1, 29:9, 35:1
**specifically** [1] - 30:11
**spokesperson** [1] - 40:7
**stage** [4] - 8:4, 8:5, 11:8, 30:22
**staggered** [3] - 14:12, 14:15, 21:6
**staggering** [1] - 17:1
**stand** [1] - 25:12
**standard** [1] - 14:23
**standing** [5] - 8:8, 8:13, 8:17, 9:3, 25:3
**start** [2] - 4:16, 5:9
**state** [1] - 36:19
**State** [2] - 42:1, 42:8
**statement** [2] - 13:22, 19:12
**STATES** [1] - 1:1
**States** [1] - 1:13
**stay** [13] - 23:19, 24:5, 25:5, 25:13, 25:16, 26:6, 26:9, 26:12, 26:15, 26:16, 26:20, 27:6, 27:11
**stayed** [1] - 25:23
**stays** [1] - 27:18
**still** [1] - 31:22
**stip** [1] - 40:21
**stipulation** [1] -

22:20
**stone** [2] - 11:5, 13:16
**strategies** [1] - 35:23
**strikes** [2] - 19:2, 37:4
**strong** [4] - 25:21, 26:4, 36:14, 38:6
**structure** [2] - 32:22, 33:11
**structured** [1] - 11:21
**sub** [1] - 6:5
**sub-groups** [1] - 6:5
**subject** [1] - 18:18
**submission** [2] - 13:18, 21:17
**submissions** [1] - 21:18
**submit** [4] - 9:20, 11:24, 22:22, 40:17
**submitted** [5] - 6:7, 6:24, 9:8, 9:11, 38:20
**submitting** [1] - 22:14
**substance** [1] - 7:21
**substantive** [1] - 39:4
**sufficient** [2] - 18:8, 38:10
**suggest** [1] - 36:7
**summary** [2] - 11:6, 12:3
**supplement** [2] - 19:13, 21:13
**supplementation** [4] - 10:20, 13:10, 13:12, 22:1
**supplementing** [1] - 22:10
**support** [1] - 16:23
**suppose** [1] - 32:14
**surely** [1] - 18:17
**Syed** [2] - 7:12, 29:9
**SYED** [1] - 3:5

## T

**Talen** [6] - 3:7, 3:8, 7:10, 7:11, 29:10, 33:4
**teed** [1] - 27:12
**Teleconference** [1] - 1:11

**telephone** [1] - 4:7
**term** [3] - 30:12, 32:9, 35:6
**terms** [11] - 10:17, 11:3, 14:22, 15:1, 18:5, 19:15, 20:13, 20:15, 22:6, 26:16, 34:6
**THE** [35] - 1:1, 1:1, 1:13, 4:1, 4:24, 5:19, 6:15, 7:3, 7:14, 10:15, 10:24, 12:1, 12:10, 13:2, 16:8, 16:16, 16:22, 18:12, 19:9, 20:6, 20:24, 23:12, 23:16, 27:22, 28:2, 29:6, 29:18, 30:16, 32:10, 33:15, 34:21, 34:24, 36:1, 40:5, 40:12
**themselves** [2] - 4:11, 4:15
**thereafter** [2] - 21:12, 39:7
**thinking** [1] - 30:20
**thoughts** [2] - 19:15, 31:1
**three** [4] - 9:14, 13:23, 14:15, 19:11
**Thynge** [1] - 38:21
**tight** [2] - 16:10, 18:14
**timeframe** [3] - 17:11, 17:22, 18:14
**timing** [2] - 12:7, 17:1
**Tobin** [1] - 7:12
**TOBIN** [1] - 3:6
**today** [8] - 4:6, 4:13, 6:8, 6:21, 7:1, 9:10, 9:16, 28:4
**ton** [1] - 38:5
**took** [1] - 31:13
**total** [1] - 5:3
**touch** [3] - 10:4, 13:7, 38:12
**trail** [1] - 34:3
**trial** [19] - 11:7, 11:19, 12:4, 32:20, 32:23, 32:24, 33:2, 33:5, 33:13, 34:2, 34:13, 34:15, 34:18, 35:8,

35:10, 35:15, 35:22, 35:23, 35:24
**trials** [4] - 32:23, 33:7, 33:11, 35:15
**trigger** [1] - 12:16
**true** [2] - 36:16, 42:10
**truncated** [2] - 26:17, 27:9
**try** [1] - 38:8
**trying** [1] - 30:17
**TUNNELL** [2] - 2:7, 3:17
**Tunnell** [1] - 5:22
**turn** [6] - 6:18, 7:7, 10:9, 10:10, 13:24, 28:21
**two** [9] - 5:13, 10:7, 13:20, 14:11, 18:6, 21:6, 23:17, 27:1, 33:21
**type** [2] - 26:12, 31:19
**typical** [1] - 38:17
**typically** [3] - 21:22, 27:4, 30:21

## U

**under** [2] - 14:22, 30:5
**understood** [1] - 36:1
**UNITED** [1] - 1:1
**United** [1] - 1:13
**unreasonable** [1] - 21:16
**up** [13] - 8:3, 8:5, 9:23, 11:14, 19:14, 22:10, 23:9, 27:12, 28:5, 28:13, 30:21, 32:20, 39:24

## V

**various** [2] - 20:12, 24:18
**version** [2] - 11:15, 22:15
**via** [1] - 40:18
**view** [2] - 36:14, 38:6
**vis** [2] - 22:3
**vis-a-vis** [1] - 22:3
**Vistra** [7] - 2:19, 4:3, 5:14, 12:23,

16:21, 33:4, 35:3
**VISTRA** [1] - 1:6

## W

**Wagner** [1] - 3:8
**wait** [3] - 31:17, 31:21, 37:13
**waive** [1] - 36:9
**waiving** [1] - 34:16
**ways** [1] - 37:18
**website** [3] - 8:10, 9:5
**week** [8] - 10:2, 16:5, 17:15, 17:19, 19:17, 23:6, 24:1, 40:24
**weekend** [1] - 40:24
**weeks** [5] - 13:23, 14:16, 18:6, 19:11, 20:10
**welcome** [2] - 5:20, 39:17
**whereas** [2] - 13:19, 20:9
**WHEREOF** [1] - 42:13
**Wilmington** [2] - 42:12, 42:14
**wish** [5] - 24:5, 27:6, 29:2, 29:5, 40:23
**wishes** [1] - 38:14
**withdrawn** [1] - 31:12
**WITNESS** [1] - 42:13
**wonderful** [1] - 40:10
**words** [3] - 12:2, 20:16, 27:15
**works** [1] - 12:5
**worth** [1] - 39:22

## Y

**years** [1] - 8:16