# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MIDWEST ENERGY EMISSIONS CORP. and MES INC., <br><br> Plaintiffs, <br><br> v. <br><br> VISTRA ENERGY CORP., ET AL., <br><br> Defendants. | C.A. NO. 1:19-cv-01334-RGA-CJB <br><br> JURY TRIAL DEMANDED |

**LETTER TO THE HONORABLE CHRISTOPHER J. BURKE FROM JAMES M. LENNON IN RESPONSE TO REFINED COAL DEFENDANTS' MOTION FOR STAY**

Dated: July 6, 2020

**DEVLIN LAW FIRM LLC**
James M. Lennon (No. 4570)
1526 Gilpin Avenue
Wilmington, DE 19806
(302) 449-9010
jlennon@devlinlawfirm.com

*Attorneys for Plaintiffs Midwest Energy Emissions Corp. and MES Inc.*

1

July 6, 2020

**VIA CM/ECF**

The Honorable Christopher J. Burke
United States Magistrate Judge
District of Delaware
844 N. King St., Unit 28, Room 2325
Wilmington, DE 19801

      RE:   *Midwest Energy Emissions Corp. et al. v. Vistra Energy Corp. et al.*,
             Case No. 1:19-cv-01334-RGA-CJB

Dear Judge Burke:

     At the scheduling conference, the Court described a presumption in favor of a stay pending district court review of the R&R. That makes sense, in that scenario, the Court would have expected the claims to be dismissed and would not know if or when ME2C would amend the complaint. That rationale is no longer applicable. ME2C has waived its right to *de novo* review of the Court's R&R and served an amended complaint.[1]

     In light of the above, the Court should evaluate the present motion based on this district's jurisprudence governing stays, instead of presuming that a stay is appropriate. *See Kaavo Inc. v. Cognizant Tech. Sols. Corp.*, No. CV 14-1192, 2015 WL 1737476, at *3 (D. Del. Apr. 9, 2015).

### ME2C's Amended Complaint Addresses the Deficiencies Recited in the R&R

     Defendants bear the burden of justifying their requested stay. Thus, ME2C should not be required to demonstrate that the amended complaint will overcome a hypothetical motion to dismiss. Nonetheless, ME2C's amended complaint does overcome the deficiencies recited in the R&R.

     The R&R recommended dismissing ME2C's induced infringement claims because: "Plaintiffs also cite for support to the Complaint's allegations that: (1) these Defendants "[t]est[] the performance of the RC Facilities for regulatory reasons and to obtain Section 45 Tax Credits" and (2) connect those facilities to coal-fired power plants. (D.I. 82 at 16 (citing D.I. 1 at ¶ 158)) Without more, however, such an allegation does not lead to an inference that these Defendants had knowledge of the alleged downstream use of carbon in the coal-fired power plants."

     ME2C's amended complaint alleges, among other things, that when the refined coal Defendants negotiate supply agreements with coal-fired power plants that use activated carbon,

---

[1] ME2C is currently negotiating with Defendants to determine if it needs to file a motion for leave to file the complaint or if it can be filed by agreement. Regardless, ME2C will ask that the Court treat Exhibit 1 as ME2C's First Amended Complaint.

1

they are specifically aware of this step, they encourage those plants to continue using activated carbon, and they tout the benefits of refined coal for activated carbon systems. For example, it alleges (Ex. 1 at ¶¶ 89, 90, 103):

> On information and belief, AJG, DTE, CERT, Chem-Mod, and the RC Defendants provide the required certification for qualified emission reduction [required for refined coal tax credits] by performing pilot scale testing that simulates the conditions of a particular coal-fired power plant or by performing testing at a particular coal-fired power plant. In either case, AJG, DTE, CERT, Chem-Mod, and the RC Defendants must prepare a specific refined coal designed to work for that plant, and they will be aware of a plant's use of activated carbon injection.

> [I]f these Defendants attempted to perform a certification test by merely combusting refined coal and measuring the amount of emitted mercury leaving the combustion chamber (i.e., disregarding the plant's activated carbon injection and other mercury control equipment), they would be unable to demonstrate the required reduction in mercury.

> Thus, AJG, DTE, CERT, Chem-Mod, and the RC Defendants must necessarily know and intend that the coal plants will go on to perform the step of injecting activated carbon.

The R&R also recommended dismissing ME2C's induced infringement claims because: "The Complaint does not go on to allege, for example, what such "tailor[ing]" means or what it involves. Thus, it does not sufficiently explain why if these Defendants "tailor" the amount of bromide added to the coal, they must necessarily know and intend that the coal plants will go on to perform the Activated Carbon Step."

ME2C's amended complaint alleges (Ex. 1 at ¶¶ 105-107):

> Once AJG, DTE, CERT, Chem-Mod, and/or one of the RC Defendants has provided section 45 certification of qualified emissions reductions for a plant, the amount of bromine and/or bromide applied to the coal will need to be tailored (chemically adjusted) depending on the ongoing needs of the plant (e.g., when considering a new coal supply that has different chemical properties or is mined from a different location, or operations of the plant change).

> When such tailoring occurs, the coal-fired power plant must ensure that it does not cause the plant to emit mercury (or other emissions such as SO2, NOx, and PM)) in excess of state or federal mercury regulations. The refined coal provider (AJG, DTE, CERT, Chem-Mod, and/or one of the RC Defendants) must ensure that the tailoring will not interfere with its ability to provide section 45 certification. On information and belief, the parties must keep each other apprised of the bromine, bromide, and activated carbon in use to ensure that they are able to comply with regulatory requirements.

Thus, AJG, DTE, CERT, Chem-Mod, and the RC Defendants must know and intend that the coal plants will go on to perform the step of providing sorbent comprising activated carbon after the refined coal with added HBr, Br2, and/or bromide has been tailored to account for changing circumstances.

Finally, the R&R recommends dismissing ME2C's contributory claims because the complaint failed to allege that these Defendants "know that this coal has no substantial non-infringing use (i.e., that it cannot reasonably be used for purposes other than to be injected with activated carbon)."

ME2C's amended complaint alleges (Ex. 1 at ¶¶ 109-111):

When AJG, DTE, CERT, Chem-Mod, and/or one of the RC Defendants provides refined coal to a coal plant with an activated carbon injection system, they intend for the plant to continue to operate that system by injecting sorbent comprising activated carbon so that these Defendants may continue to receive the benefits of Section 45 tax credits.

Thus, when AJG, DTE, CERT, Chem-Mod, and/or one of the RC Defendants provides refined coal on the conveyance leading to the combustion chamber of a coal-fired power plant with an activated carbon injection system, AJG, DTE, CERT, Chem-Mod, and the RC Defendants know that this refined coal has been specifically tailored and certified for that plant, and that the provided refined coal has no substantial non-infringing use (i.e., it cannot reasonably be used for purposes other than to be combusted at the plant where sorbent comprising activated carbon will later be injected).

In addition, even if the provided refined coal could have had some non-infringing use, because AJG, DTE, CERT, Chem-Mod, and one of the RC Defendants must sell the refined coal "with the reasonable expectation that it will be used for the purpose of producing steam," and as explained above, the refined coal is only certified for a particular plant (i.e., a plant that uses activated carbon), it is reasonable to infer that they require the coal plant to combust the provided refined coal or at least some significant portion of it in accordance with those expectations, i.e., in some non-infringing way.

Lest there be any doubt that ME2C has adequately alleged infringement by these Defendants, the amended complaint describes the one refined coal contract that ME2C has been able to locate through public sources. ***This contract specifically states that the coal plant will provide reports to the refined coal supplier (AJG subsidiary Belle River Fuels Company, LLC) that describe the use of activated carbon (sec. 8.2(e), exhibit C), and it specifically obligates the coal plant to use the received coal only for combustion at the plant using activated carbon (sec. 8.2(d)).*** Ex. 2. While this is only a single contract that ME2C fortuitously uncovered as an exhibit to an out-of-state regulatory hearing, it leads to the plausible inference that the other refined coal companies, which have identical business models and similar ties to AJG and Chem-Mod, would sign similar contracts.

3

Moreover, ME2C alleges that, for plants that inject activated carbon, the refined coal Defendants must perform certification testing for refined coal tax credits every six months. As a consequence, they directly infringe (and/or indirectly infringe if using a third party tester) by performing both the bromine step and the carbon step during routine testing (Ex. 1 at ¶ 260):

> AJG, DTE, CERT, Chem-Mod, and their associated RC Defendants also directly infringe when performing certification testing of refined coal designed for coal-fired power plants that use sorbent comprising activated carbon. They perform each step of the '114 patent claims, or they engage a third party agent on their behalf to perform each step of the '114 patent claims that acts under their control.

### The *Kaavo* Factors weigh Against a Stay

**Factor 1:** Denying the requested stay will ensure that the parties maintain a consistent schedule for claim construction discovery, depositions of overlapping witnesses such as inventors and third parties, expert discovery, and dispositive motions. An indefinite stay has the potential to destroy those efficiencies. This is particularly problematic given that the Coal Plant Defendants and Refined Coal Defendants are alleged to be jointly and severally liable for the same infringement at some of the same coal plants. Separating these parties could lead to multiple trials involving the same infringement allegations and the same invalidity theories.

**Factor 2:** While this case is in the early stages, the Court has provided a trial date. Bifurcating the Defendants at such an early stage could lead to substantial complications and duplicative efforts from the parties and the Court, as described above.

**Factor 3:** Finally, a stay would prejudice ME2C. ME2C is a practicing entity that has attempted to compete with the Refined Coal companies that are severely undercutting ME2C's business model by infringing the patents-in-suit. *See* D.I. 97 at 2-3 (describing commercial harm to ME2C from delay and citing testimony of Jim Trettel); *see also Kaavo Inc. v. Cognizant Tech. Sols. Corp.*, No. CV 14-1192-LPS-CJB, 2015 WL 1737476, at *3 (D. Del. Apr. 9, 2015) ("Courts have recognized that when the parties are direct competitors, there is a reasonable chance that delay in adjudicating the alleged infringement will have outsized consequences to the party asserting infringement has occurred, including the potential for loss of market share and an erosion of goodwill."). Moreover, delaying discovery from these Defendants could prevent ME2C from identifying the remaining John Doe Defendants. Those Defendants may argue that they cannot be liable for indirect infringement occurring before they were added to the case. As a result, they may attempt to escape judgment based purely on denied discovery rather than the merits.

Overall, a stay would be beneficial only if the refined coal Defendants ultimately prevail dismissing all claims against them with prejudice. As explained above, that result is highly unlikely to occur. Moreover, if ME2C does maintain claims against these Defendants, a stay would significantly prejudice ME2C and create unnecessary hardship for the parties and the Court. Because ME2C has provided an amended complaint to address any alleged deficiencies, and because it has uncovered a contract demonstrating that ME2C's infringement theories are well-founded, the Court should deny the requested stay.

                              Respectfully,

                              */s/ James M. Lennon*

                              James M. Lennon (No. 4570)

Enclosures
cc:    Clerk of the Court (w/encls., via CM/ECF)
        Counsel of Record (w/encls., via CM/ECF)

5