**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| MIDWEST ENERGY EMISSIONS CORP. and MES INC., <br><br> Plaintiffs, <br><br> v. <br><br> VISTRA ENERGY CORP., *et al.*, <br><br> Defendants. | Civil Action No. 19-1334-RGA-CJB <br><br> **DEMAND FOR JURY TRIAL** |

**PROPOSED ORDER FOR DISCOVERY,
INCLUDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION
("ESI")**

**1.   General Provisions**

   a.   **Cooperation**.  Parties are expected to reach agreements cooperatively on how to conduct discovery under Fed. R. Civ. P. 26-36.  The following provisions shall apply until further order of the Court or the parties reach agreement.

   b.   **Proportionality**.  Parties are expected to use reasonable, good faith and proportional efforts to preserve, identify and produce relevant information.[1]  This includes identifying appropriate limits to discovery, including limits on custodians, identification of relevant subject matter, time periods for discovery and other parameters to limit and guide preservation and discovery issues.

   c.   **Preservation of Discoverable Information**.  A party has a common law obligation to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody or control.

---

[1] Information can originate in any form, including ESI and paper, and is not limited to information created or stored electronically.

      (i)      Absent a showing of good cause by the requesting party, the parties shall not be required to modify, on a going-forward basis, the procedures used by them in the ordinary course of business to back up and archive data; provided, however, that the parties shall preserve the non-duplicative discoverable information currently in their possession, custody or control.

      (ii)      Absent a showing of good cause by the requesting party, the categories of ESI identified in Schedule A attached hereto need not be preserved.

    d.    **Privilege**.

      (i)      The parties are to confer on the nature and scope of privilege logs for the case, including whether categories of information may be excluded from any logging requirements and whether alternatives to document-by-document logs can be exchanged.

      (ii)      With respect to information generated after the filing of the complaint, parties are not required to include any such information in privilege logs.

      (iii)      Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

      (iv)      Pursuant to Federal Rule of Evidence 502(b), 502(d) and the Protective Order, the inadvertent production of ESI protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege is not a waiver in the pending case or in any other federal or state proceeding.

**2.**    **Initial ESI Disclosures**.[2]  Within 30 days after the signing of this Order, each Party shall disclose:[3]

---

[2] As these disclosures are "initial," each party shall be permitted to supplement.

[3] All plaintiffs in this litigation (e.g., Midwest Energy Emissions Corp. and MES, Inc.) collectively constitute a single Party Group. Likewise, each Defendant Group, as the term is used in the Joint Proposed Order (D.I. 109), is collectively a single Party Group. The custodian limitations herein are on a per-Party-Group basis, as opposed to a per-party basis.

a.  **Custodians**.  The 8 custodians most likely to have discoverable information in their possession, custody or control, from the most likely to the least likely.  The custodians shall be identified by name, title, role in the instant dispute, and the subject matter of the information.  Where multiple parties in a Party Group have overlapping custodians, each party need not serve duplicative disclosures and may instead designate overlapping custodians as a Party Group.  If a party does not have 8 custodians likely to have discoverable information, it need only disclose the custodians (if any) likely to have discoverable information.

b.  **Non-custodial data sources**.[4]  A list of the non-custodial data sources that are most likely to contain non-duplicative discoverable information for preservation and production consideration, from the most likely to the least likely.

c.  **Notice**.  The parties shall identify any issues relating to:

(i)  Any ESI (by type, date, custodian, electronic system or other criteria) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(C)(i).

(ii)  Third-party discovery under Fed. R. Civ. P. 45 and otherwise, including the timing and sequencing of such discovery.

(iii)  Production of information subject to privacy protections, including information that may need to be produced from outside of the United States and subject to foreign laws.

Lack of proper notice of such issues may result in a party losing the ability to pursue or to protect such information.

---

[4]  That is, a system or container that stores ESI, but over which an individual custodian does not organize, manage or maintain the ESI in the system or container (e.g., enterprise system or database).

3.     **Discovery in Patent Litigation**[5]

a.     Absent a showing of good cause, discovery request and demands shall be limited to a term of 6 years before the filing of the complaint, except that discovery requests and demands related to asserted prior art, prosecution of any patent or patent application within the same family as a patent-in-suit, inequitable conduct, patent ownership/assignment/transfer, a defendant's knowledge of the patents-in-suit, a Defendant's interactions with plaintiffs, or the conception and reduction to practice of the inventions claimed in any patent-in-suit shall not be so limited.

4.     **Specific E-Discovery Issues.**

a.     **On-site inspection of electronic media**.  Such an inspection shall not be permitted absent a demonstration by the requesting party of specific need and good cause.

b.     **De-duplicate.**  A party may make reasonable efforts to produce only one copy of each responsive document and a party may either (1) de-duplicate responsive ESI on a global scale as long as the producing party has the ability to, and does, provide information identifying the other custodians who possessed any given record or ESI in load files provided with the production; or (2) de-duplicate each custodian's responsive ESI and separately de-duplicate the party's non-custodial ESI.

c.     **Electronic Mail.**

(i)     **Timing.**  The parties may delay search and production of emails until after specific email production requests have been propounded.

(ii)     **Custodians.**  E-mail production requests shall identify the custodian, search terms, and time frame.  The parties shall cooperate to identify the proper custodians, proper search terms, and proper time frame.  Plaintiffs shall limit their e-mail production requests to a total of:

---

[5] As these disclosures are "initial," each party shall be permitted to supplement.

4

four (4) custodians for each Coal Plant Defendant Group; four (4) custodians for the CERT Defendant Group; four (4) custodians for the combination of Arthur J. Gallagher & Co., Gallagher Clean Energy, LLC, AJG Coal, LLC, and Chem-Mod LLC; four (4) custodians for the combination of DTE REF Holdings LLC, DTE REF Holdings II LLC; and two (2) custodians for each Refined Coal LLC Defendant for all such requests. Defendants may collectively identify five (5) common custodians of Plaintiffs for all such e-mail production requests. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional or fewer custodians per Party Group based on a showing of good cause, including a showing a distinct need based on the size, complexity, and issues of this specific case.

   (iii) **Number of search terms.** Plaintiffs shall limit e-mail production requests to a total of 10 search terms per custodian. With respect to each custodian of Plaintiffs, the Coal Plant Defendants collectively may propose a total of 10 search terms per custodian, and the Refined Coal Defendants collectively may propose a total of 10 search terms per custodian. The parties may jointly agree to modify this limit without the Court's leave.

   (iv) **Content of search terms.** The search terms for e-mail production shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (e.g., "bromine" and "chlorine") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (e.g., "bromine" or "chlorine") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word [e.g., "(halogen or halide)" or "(bromine or bromide)"]. However, even when used disjunctively, the following shall count as only a single search term: foreign-language

5

translations of a term [e.g., the term "(analysis or análisis or anàlisi)"], the names (including alternate spellings) of the various Defendants, and the numbers of any/all patents-in-suit and corresponding application numbers and foreign counterpart patent numbers [e.g., the term "(8168147 or 10343114 or 12/419219 or 15/978760)"]. Use of narrowing search criteria (e.g., "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery. To the extent a producing party contends that the proposed search terms yield an unreasonable or overly burdensome number of hits, the producing party will propose a revised set of search terms, and the producing party and requesting party will negotiate in good faith to narrow the terms.

      (v)    Nothing in this Order prevents a party from voluntarily producing the e-mails of its own custodians. A party's voluntary production of e-mail from a custodian shall not operate as a waiver of any of the limitations on e-mail discovery set forth in this Order.

      d.    **Format**. ESI and non-ESI shall be produced to the requesting party as text searchable image files (e.g., PDF or TIFF). When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, i.e., the original formatting, the metadata (as noted below) and, where applicable, the revision history. The parties shall produce their information in the following format: single page TIFF images and associated multi-page text files containing extracted text or OCR with Concordance and Opticon load files containing all requisite information including relevant metadata be labeled with a unique production number and produced with a slip-sheet indicating that the document was produced in native format and containing the appropriate confidentiality designation.

      e.    **Native files**. The only files that should be produced in native format as a matter of course are files not easily converted to image format, such as Excel, audio, video, and database

files.  However, a party that receives a document produced in a format specified in Paragraph 5(d) may make a reasonable request to have the document reproduced in its native format.

      f.      **Metadata fields**.  The parties are only obligated to provide the following metadata for all ESI produced, to the extent such metadata exists:  Custodian, Email Subject, From, To, CC, BCC, Date Sent, Time Sent, Date Received, Time Received, Filename, Author, Date and Time Created, MD5 Hash, File Size, File Extension, Control Number Begin, Control Number End, Attachment Range, Attachment Begin, and Attachment End (or the equivalent thereof).

Dated:  July 29, 2020

| DEVLIN LAW FIRM LLC | FAEGRE DRINKER BIDDLE & REATH LLP |
|---|---|
| */s/ James M. Lennon* <br> James M. Lennon (No. 4570) <br> 1526 Gilpin Avenue <br> Wilmington, DE 19806 <br> (302) 449-9010 <br> jlennon@devlinlawfirm.com <br><br> *Attorneys for Plaintiffs Midwest Energy Emissions Corp. and MES Inc.* | */s/ Thatcher A. Rahmeier* <br> Francis DiGiovanni (#3189) <br> Thatcher A. Rahmeier (#5222) <br> 222 Delaware Avenue, Suite 1410 <br> Wilmington, DE 19801 <br> (302) 467-4200 <br> francis.digiovanni@faegredrinker.com <br> thatcher.rahmeier@faegredrinker.com <br><br> *Attorneys for Defendants Talen Energy Corporation, Brandon Shores LLC, Talen Generation LLC, and H.A. Wagner LLC* |
| MORRIS, NICHOLS, ARSHT & TUNNELL LLP | RICHARDS, LAYTON & FINGER, P.A. |
| */s/ Brian P. Egan* <br> Jack B. Blumenfeld (#1014) <br> Brian P. Egan (#6227) <br> 1201 North Market Street <br> P.O. Box 1347 <br> Wilmington, DE 19899 <br> (302) 658-9200 <br> jblumenfeld@mnat.com <br> began@mnat.com | */s/ Tyler E. Cragg* <br> Frederick L. Cottrell, III (#2555) <br> Tyler E. Cragg (#6398) <br> One Rodney Square <br> 920 N. King Street <br> Wilmington, DE 19801 <br> (302) 651-7700 <br> cottrell@rlf.com <br> cragg@rlf.com |

| | |
|---|---|
| *Attorneys for Defendants*<br>*AJG Coal, LLC*<br>*AJG Iowa Refined Coal LLC*<br>*Arbor Fuels Company, LLC*<br>*Arthur J. Gallagher & Co.*<br>*Belle River Fuels Company, LLC*<br>*Chem-Mod-LLC*<br>*DTE REF Holdings LLC*<br>*DTE REF Holdings II LLC*<br>*Gallagher Clean Energy LLC*<br>*Joppa Refined Coal LLC*<br>*Louisa Refined Coal, LLC*<br>*Portage Fuels Company, LLC*<br>*Thomas Hill Refined Coal LLC*<br>*Wagner Coaltech LLC*<br>*Walter Scott Refined Coal LLC* | *Attorneys for Defendants Dynegy Midwest Generation, LLC, Illinois Power Resources Generating, LLC, Electric Energy, Inc., Illinois Power Generation Company, Coleto Creek Power, LLC, Oak Grove Management Company LLC, Luminant Generation Company LLC, and NRG Energy, Inc., NRG Texas Power LLC, Midwest Generation EME, LLC, Midwest Generation, LLC* |
| MORRIS, NICHOLS, ARSHT<br>    & TUNNELL LLP | SKADDEN, ARPS, SLATE, MEAGHER<br>    & FLOM LLP |
| */s/ Rodger D. Smith II*<br>Rodger D. Smith II (#3778)<br>Lucinda C. Cucuzzella (#3491)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899<br>(302) 658-9200<br>rsmith@mnat.com<br>ccucuzzella@mnat.com<br>*Attorneys for Defendants*<br>*AEP Generation Resources Inc.,*<br>*Southwestern Electric Power Co.,*<br>*and AEP Texas Inc.* | */s/ Jessica R. Kunz*<br>Robert S. Saunders (ID No. 3027)<br>Jessica R. Kunz (ID No. 5698)<br>One Rodney Square<br>P.O. Box 636<br>Wilmington, DE 19899-0636<br>(302) 651-3000<br>rob.saunders@skadden.com<br>jessica.kunz@skadden.com<br><br>*Attorneys for Defendants CERT Coal Holdings LLC, CERT Holdings LLC, CERT Holdings 2018, LLC, CERT Operations LLC, CERT Operations II LLC, CERT Operations III, LLC, CERT Operations IV, LLC,CERT Operations V LLC, and CERT Operations RBC LLC* |

SO ORDERED this _____ day of _____, 2020.

_____
United States District Court Judge

# SCHEDULE A

1. Deleted, slack, fragmented, or other data only accessible by forensics.

2. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

3. On-line access data such as temporary Internet files, history, cache, cookies, and the like.

4. Data in metadata fields that are frequently updated automatically, such as last-opened dates.

5. Back-up data that are substantially duplicative of data that are more accessible elsewhere.

6. Voice messages.

7. Instant messages.

8. Electronic mail or pin-to-pin messages sent to or from mobile devices (e.g., iPhone and Blackberry devices), provided that a copy of such mail is routinely saved elsewhere.

9. Other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere.

10. Logs of calls made from mobile devices.

11. Server, system or network logs.

12. Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report.

13. Data remaining from systems no longer in use that is unintelligible on the systems in use.

14. Text messages or SMS messages.