**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| MIDWEST ENERGY EMISSIONS CORP. and MES INC., | § § § | |
| Plaintiffs, | § § | Civil Action No. 19-1334-RGA-CJB |
| v. | § § | |
| VISTRA ENERGY CORP., et al., | § § | |
| Defendants. | § § | |

**TALEN DEFENDANTS' OPENING BRIEF IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT
AND FOR SEVERANCE**

*Of Counsel:*

Syed Fareed
Emily Pyclik
John C. Williams
**BAKER BOTTS L.L.P.**
98 San Jacinto, Suite 1500
Austin, Texas 78701
(512) 322-2500

David J. Tobin
**BAKER BOTTS L.L.P.**
2001 Ross Avenue, Suite 1100
Dallas, Texas 75201
(214) 953-6869

**FAEGRE DRINKER BIDDLE & REATH LLP**
Francis DiGiovanni (#3189)
Thatcher A. Rahmeier (#5222)
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
(302) 467-4200
francis.digiovanni@faegredrinker.com
thatcher.rahmeier@faegredrinker.com

*Attorneys for Defendants Talen Energy
Corporation, Brandon Shores LLC, Talen
Generation, LLC, and H.A. Wagner LLC*

Dated:  August 6, 2020

## TABLE OF CONTENTS

I.   NATURE AND STAGE OF THE PROCEEDINGS ............................................................. 1

II.  SUMMARY OF ARGUMENT ........................................................................................ 2

III. STATEMENT OF FACTS ............................................................................................. 5

III. ARGUMENT .............................................................................................................. 5

    A.    Legal Standards for Motions to Dismiss ............................................................. 5

    B.    Plaintiffs Again Fail to Adequately Plead Willful Infringement ........................... 6

        1.    Failure to Plead Knowledge of Infringement Is Fatal .................................... 6

        2.    The FAC Fails to Adequately Plead Pre-Suit Knowledge of
            '114 Patent by Talen Defendants .............................................................. 11

        3.    No Plausible Basis to Plead Pre-Suit Knowledge of the '225, '517
            and '430 Patents or That Talen Defendants Were on Notice of
            Infringement of These Patents ................................................................ 12

    C.    Plaintiffs Again Fail to Adequately Plead Induced Infringement ........................ 13

    D.    Plaintiffs Again Fail to Adequately Plead Joint and Several Liability ................. 16

    E.    MES Does Not Have Standing to Bring Suit for Any Asserted Patent ............... 17

    F.    The FAC Fails to Provide Sufficient Basis for Joinder of Unrelated
        Defendants Under Section 299 ........................................................................ 19

    G.    The Claims Should Be Dismissed With Prejudice .............................................. 20

IV.  CONCLUSION .......................................................................................................... 20

ACTIVE.124795709.01

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
797 F.3d 1020 (Fed. Cir. 2015)...................................................................................16, 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................................6

*Bishop v. JP Morgan Chase & Co.*,
No. CV 13-001-RGA, 2014 WL 1382393 (D. Del. Apr. 7, 2014) .......................................20

*British Telecom. v. IAC/InterActiveCorp.*,
No. 18-CV-366-WCB, 2019 WL 1765224 (D. Del. Apr. 22, 2019) ...................................19

*CBA Envtl. Servs. v. Toll Brothers Inc.*,
403 F. Supp. 3d 403 (D.N.J. 2019) ...................................................................................17

*Deepsouth Packing Co. v. Laitram Corp.*,
406 U.S. 518 (1972) ..........................................................................................................16

*Dynamic Data Techs. v. Amlogic*,
No. CV 19-1239-CFC, 2020 WL 4365809 (D. Del. July 30, 2020).......................................9

*Dynamic Data Techs. v. Google LLC*,
No. CV 19-1529-CFC-CJB, 2020 WL 1285852 (D. Del. Mar. 18, 2020).............................9

*In re Bill of Lading*,
681 F.3d 1323 (Fed. Cir. 2012)..........................................................................................14

*IpVenture Inc. v. Lenovo Grp. Ltd.*,
No. CIV.A. 11-588-RGA, 2013 WL 126276 (D. Del. Jan. 8, 2013) ...................................20

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
925 F.3d 1225 (Fed. Cir. 2019)..........................................................................................17

*M2M Sols., LLC v. Telit Commc'ns PLC*,
No. 14-1103-RGA, 2015 WL 4640400 (D. Del. Aug. 5, 2015) ...................................15, 16

*MONEC Holding AG v. Motorola Mobility, Inc.*,
897 F. Supp. 2d 225 (D. Del. 2012) ...................................................................................12

*Neology, Inc. v. Kapsch Trafficcom IVHS, Inc.*,
No. CV 13-2052-LPS, 2014 WL 4675316 (D. Del. Sept. 19, 2014) ...................................14

ACTIVE.124795709.01

*NNCrystal US Corp. v. Nanosys, Inc.*,
  No. 19-1307-RGA, 2020 WL 616307 (D. Del. Feb. 10, 2020) ................................................. 6

*Sicom Sys., Ltd. v. Agilent Techs., Inc.*,
  427 F.3d 971 (Fed. Cir. 2005) ........................................................................................... 17

*Software Research, Inc. v. Dynatrace LLC*,
  316 F. Supp. 3d 1112 (N.D. Cal. 2018) ............................................................................. 9

*Sun-Tek Indus., Inc. v. Kennedy Sky Lites, Inc.*,
  988 F.2d 131 (Fed. Cir. 1993) ........................................................................................... 11

*Toshiba Corp. v. Imation Corp.*,
  681 F.3d 1358 (Fed. Cir. 2012) ......................................................................................... 13

*United Artists Theatre Circuit, Inc. v. Twp. of Warrington, PA*,
  316 F.3d 392 (3d Cir. 2003) .............................................................................................. 11

*Välinge Innovation AB v. Halstead New England Corp.*,
  No. 16-1082-LPS-CJB, 2018 WL 2411218 (D. Del. May 29, 2018) ..................... 6, 8, 10, 11

*Varian Med. Sys., Inc. v. Elekta AB*,
  Civil Action No. 15-871-LPS, 2016 WL 3748772 (D. Del. July 12, 2016) ................. 8, 9, 15

*Vasudevan Software, Inc. v. TIBCO Software Inc.*,
  No. C 11-06638 RS, 2012 WL 1831543 (N.D. Cal. 2012) ................................................. 13

*VLSI Tech. LLC v. Intel Corp.*,
  CV 18-966-CFC, 2019 WL 1349468 (D. Del. Mar. 26, 2019) ...................................... 11, 12

*Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*,
  810 F.2d 243 (D.C. Cir. 1987) ........................................................................................... 12

**STATUTES**

35 U.S.C. § 299 ....................................................................................................................... 4, 19

**OTHER AUTHORITIES**

FED. R. CIV. P. 12(b) ...............................................................................2, 3, 4, 6, 18, 19

FED. R. CIV. P. 20(a)(2) ........................................................................................................ 19

ACTIVE.124795709.01

## I.       NATURE AND STAGE OF THE PROCEEDINGS

Midwest Energy Emissions Corp. ("Midwest") and MES Inc. ("MES") (collectively, "Plaintiffs" or "ME2C") filed their Original Complaint (D.I. 1) on July 17, 2019, asserting that both entities had standing to sue, and further asserting induced infringement, willful infringement, and joint and several liability against Talen Energy Corporation, Brandon Shores LLC, Talen Generation, LLC, and H.A. Wagner LLC (collectively, "Talen Defendants") of U.S. Patent No. 8,168,147 (the "'147 Patent") and U.S. Patent No. 10,343,114 (the "'114 Patent") (collectively, "Originally Asserted Patents").  In response to a motion to dismiss filed by Talen Defendants that challenged each of these assertions (D.I. 49, 51), Plaintiffs conceded that they did not make a claim for joint and several liability between Talen Defendants and other power plant defendants, thereby mooting that issue.  D.I. 83 at 1.  The Court issued a report and recommendation (D.I. 110, "R&R") recommending dismissal of the remaining assertions against Talen Defendants.  Plaintiffs did not object to the R&R (*see* D.I. 125 at 1), and the District Court adopted it on July 15, 2020.  D.I. 127.

On July 15, 2020, Plaintiffs filed their First Amended Complaint ("FAC") (D.I. 130), but failed to fix the deficiencies identified by the Court in its R&R regarding willful infringement, induced infringement, and joint and several liability against the Talen Defendants, and MES's standing.  Plaintiffs amplify and propagate these deficiencies by re-asserting the dismissed theories of infringement and adding three new patents—U.S. Patent No. 10,589,225 (the "'225 Patent"), U.S. Patent No. 10,596,517 (the "'517 Patent"), and U.S. Patent No. 10,668,430 (the "'430 Patent") (all five collectively referred to as "Asserted Patents").  The FAC also alleges, but fails to properly plead, that Talen Defendants are jointly and severally liable with certain "RC Defendants": Chem-Mod LLC ("Chem-Mod"), Arthur J. Gallagher & Co., Gallagher Clean Energy, LLC, and AJG Coal, LLC ("AJG"); DTE REF Holdings, LLC, DTE REF Holdings II

ACTIVE.124795709.01

LLC ("DTE"), and CERT Coal Holdings LLC, CERT Holdings LLC, CERT Holdings 2018, LLC, CERT Operations LLC, CERT Operations II LLC, CERT Operations III LLC, CERT Operations IV LLC, CERT Operations V LLC, CERT Operations RCB LLC ("CERT"). D.I. 130 ¶¶ 228-233. This is the Talen Defendants' Opening Brief in Support of its Motion to Dismiss Plaintiffs' FAC.

## II.    SUMMARY OF ARGUMENT

When measuring the FAC against the roadmap provided by the R&R, it is apparent that Plaintiffs have used this opportunity to amend merely to assert new patents, and are unable to fix the deficiencies in the Original Complaint. Plaintiffs' FAC should be dismissed under FED. R. CIV. P. 12(b)(6) and any remaining claims against the Talen Defendants severed.

**Willful Infringement:** The FAC fails to plead facts sufficient to show that any Talen Defendant willfully infringed the Asserted Patents. *See* D.I. 130 ¶¶ 223, 226. Regarding the originally asserted '114 Patent, the Court held that "it is just not plausible (without more) to believe that six years after learning of the '114 patent's *parent* in 2013, Talen would have been cognizant of the fact that the '114 patent issued in 2019 (a mere eight days before this lawsuit was filed)." D.I. 110 at 12. This is because "knowledge of a related patent to the patent-in-suit was not, without more, sufficient to demonstrate a plausible claim to pre-suit knowledge of the patent-in-suit." *Id.* ME2C now attempts to backfill this deficiency by "infer[ring] that Talen would have reviewed the prosecution history for the '114 and '147 patents and would be generally aware of other patents in the same family." D.I. 130 ¶ 183. As for the three newly-asserted patents, Plaintiffs' willfulness pleadings rest on even shakier ground: that "ME2C provided notice to Talen of [these patents] and of the acts constituting infringement by providing Talen with a draft amended complaint" on June 29, 2020 (*Id.* ¶ 185)—eleven months *after* the lawsuit was filed. But the Court already rejected the argument that mere post-suit knowledge could serve as a prerequisite for willful infringement.

ACTIVE.124795709.01

D.I. 110 at 12.  Across all Asserted Patents, Plaintiffs still have failed to plead that, prior to filing of the suit, the Talen Defendants "knew or should have known that their conduct amounted to infringement of any Asserted Patent."  *See* D.I. 110 at 12.  Accordingly, willful infringement allegations against Talen Defendants should be dismissed under FED. R. CIV. P. 12(b)(6).

**Inducement:**  Among the four named Talen Defendants, the FAC asserts induced infringement against only one of them:  "As the parent of the other Talen entities, Talen Energy Corporation induces the other Talen entities to perform the steps of the patented methods."  D.I. 130 ¶ 204; *see also id.* ¶¶ 200, 253, 287, 316, 345, 378.  But Plaintiffs yet again lump multiple entities together (as "other Talen entities"), without specifically identifying *how* Talen Energy Corporation induced any of the multiple "other Talen entities" to infringe the Asserted Patents— or *which* of the Talen Defendants are direct infringers in this scenario.  *See* D.I. 110 at 8 n.7 (dismissing induced infringement allegations between parent and subsidiary).  This lack of clarity coupled with Plaintiffs' failure to allege any specific intent by Talen Energy Corporation to induce any of the "other Talen entities" to infringe the Asserted Patents is fatal.  Accordingly, Talen Defendants request dismissal of the inducement allegations under FED. R. CIV. P. 12(b)(6).

**Joint and Several Liability:**  Plaintiffs appear to allege that one or more Talen Defendants are "jointly, severally, and/or in the alternative liable with" DTE, AJG, CERT and Chem-Mod with respect to certain plants. D.I. 130 ¶ 233; *see also id.* at ¶¶ 215, 218, 221.  But the FAC fails to provide any plausible basis for Talen Defendants to be found jointly, severally, and/or in the alternative liable with any other party.  There is no allegation that Talen Defendants direct or control AJG, DTE, CERT or Chem-Mod.  While the FAC asserts that "AJG, Chem-Mod, their associated RC Defendants" purportedly "are involved in a joint enterprise to infringe the patents-in-suit … for the common purpose of obtaining the benefits of Section 45 tax credits,"  D.I. 130

-3-

¶¶ 213-214, the remaining allegations of the FAC belie any assertion that all parties have a joint enterprise or an equal right of control.  Accordingly, allegations of joint and several liability against Talen Defendants should be dismissed under FED. R. CIV. P. 12(b)(6).

**Standing of MES to Sue:**  The FAC fails to plead any plausible facts to demonstrate that Plaintiff MES is a requisite "patentee" under 35 U.S.C. § 281, and conclusively demonstrates the opposite.  The USPTO assignment records demonstrate that the Asserted Patents were assigned by EERC to Plaintiff Midwest on April 24, 2017.  D.I. 52 at Exs. A-B (assignment records for '147 and '114 Patents); Exs. C-E (assignment records for '225, '517, and '430 Patents, attached hereto).  The FAC states that MES had previously "obtained an exclusive license to the '147 patent and pending related applications from the EERC"; however, when EERC assigned the patents to Midwest, the assignment to Midwest included "any rights retained by the EERC to receive past damages, and *MES, Inc. agreed to terminate its exclusive license at that time.*"  D.I. 130 ¶ 110 (emphasis added).  Accordingly, the FAC demonstrates that Plaintiff MES has no ownership rights in the patents, is not an exclusive licensee, and does not have any right to sue for damages.  MES is not a proper plaintiff, as it is not a "'patentee' under Section 281."  D.I. 110 at 8.  Accordingly, MES should be dismissed as a plaintiff under FED. R. CIV. P. 12(b)(1) and 12(b)(6).

**Violation of 35 U.S.C. § 299:**  The FAC fails to provide any plausible basis for joining any other "Coal Plant Defendants"—*i.e.*, the Vistra entities, NRG entities, and AEP entities, as defined in the FAC, D.I. 130 at 2—in the same lawsuit as the Talen Defendants, in contravention of 35 U.S.C. § 299.  Accordingly, the Talen Defendants request that they be severed into a separate action under FED. R. CIV. P. 20(a), 21 and 35 U.S.C. § 299.

Plaintiffs have already been given an opportunity to amend their claims and were provided with a roadmap in the R&R that detailed the deficiencies.  In their FAC, however, Plaintiffs again

ACTIVE.124795709.01

fail to properly plead those claims, and any additional attempt to amend would be futile. Therefore, Plaintiffs' claims should be dismissed with prejudice.

## III.   STATEMENT OF FACTS

The FAC alleges a cause of action for patent infringement against forty-four entities, categorized into eight groups, namely (1) Vistra, (2) AEP, (3) NRG, (4) Talen, (5) AJG, (6) DTE, (7) CERT, and (8) Chem-Mod.[1]  The FAC alleges that the "Coal Plant Defendants" (defined as the Vistra, AEP, NRG and Talen Defendants), operate various coal-fired power plants, where they combust coal using a method that allegedly infringes the Asserted Patents. *See* D.I. 130 ¶¶ 198-199, 252-253, 286, 315, 344, and 377.  The FAC alleges that RC Defendants rent space on-site at the power plants, purchase the coal from the power plants, take possession of the coal, treat it with chemicals, and sell the 'refined coal' back to the power plants. *Id.* ¶ 76.  Plaintiffs allege that Chem-Mod contracts with the other RC Defendants to provide Chem-Mod chemicals to treat the coal at the coal plaint. *Id.* ¶ 75.  The FAC further alleges that the AJG, DTE, and CERT entities operate and control various "Refined Coal LLC"s and their processes for treating the coal. *Id.* ¶¶ 74-82.  The FAC does not allege that any of Vistra, AEP, NRG or Talen Defendants are jointly and severally liable with respect to one another for conduct arising out of the same transaction, occurrence, or series of transactions.  The FAC also fails to allege that there are questions of fact common to all Coal Plant Defendants.

## III.   ARGUMENT

### A.   <u>Legal Standards for Motions to Dismiss</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

---

[1] Since the filing of the First Amended Complaint, the Court has ordered dismissal of the Vistra-related entities pursuant to a joint stipulation (D.I. 167) and has ordered that the case against AJG, DTE, CERT, and Chem-Mod be stayed (D.I. 166).

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint should be dismissed under Rule 12(b)(6) when it fails to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.  It is not sufficient to allege facts that are merely consistent with liability; a complaint that alleges only such facts "stops short of the line between possibility and plausibility" and should be dismissed. *Twombly*, 550 U.S. at 546.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### B.      Plaintiffs Again Fail to Adequately Plead Willful Infringement

Plaintiffs' willfulness allegations again fall short of satisfying the requirements of *Iqbal* and *Twombly*.  To sufficiently plead willful infringement, Plaintiffs must have alleged "facts plausibly showing that as of the time of the claim's filing, the accused infringer:  (1) knew of the patent-in-suit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent." *Välinge Innovation AB v. Halstead New England Corp.*, No. 16-1082-LPS-CJB, 2018 WL 2411218, at \*12 (D. Del. May 29, 2018); *see also* D.I. 110 at 10, 12 n.10 (summarizing *Välinge*); *see, e.g., NNCrystal US Corp. v. Nanosys, Inc.*, No. 19-1307-RGA, 2020 WL 616307, at \*4 (D. Del. Feb. 10, 2020) ("To plead a claim of willful infringement, the complaint must allege that the accused infringer … knowingly or intentionally infringed the patent after acquiring that knowledge.").  The FAC fails to sufficiently plead all three elements with respect to each Asserted Patent.

### 1.      Failure to Plead Knowledge of Infringement Is Fatal

Plaintiffs' willfulness allegations continue to suffer from the same infirmities that warranted dismissal of the Original Complaint.  While the FAC adds additional statements regarding ME2C's interactions with PPL (who is not a named party), they are insufficient to

plausibly allege willful infringement against the named Talen Defendants.  The operative statements regarding willfulness prerequisites are shown below, with redlines comparing the Original Complaint to the FAC:

175. Talen owns and/or operates the ~~Brunner Island,~~ Colstrip~~,~~ and ~~Montour~~ other power plants.

176. Prior to 2015 those plants were owned and/or operated by PPL.

177. In 2013, representatives of PPL attended the Air Quality 9 conference and received a presentation on the patented technology which identified the '147 patent and parent applications to the '114 patent.

178. In 2013, ME2C met with PPL employees tasked with understanding and designing mercury control procedures, including Jon Boucher, Bill Neumiller, and Steve Craig, to discuss the use of ME2C's patented technology at power plants in the PPL fleet, including ~~Brunner Island,~~ Colstrip, and ~~Montour~~ other plants.

179. ME2C specifically identified the '147 patent and the parent patent to the '114 patent to at least Jon Boucher, and explained that these patents covered the use of halogen-based sorbent enhancement additives and backend carbon-based sorbents.

180. In 2015, PPL spun off a portion of its business to form Talen.

181. At least Jon Boucher has remained with Talen.

182. In addition, operation of a coal-fired power plant can be dangerous and complicated, requiring a team of qualified engineers. Similarly, ensuring compliance with mercury capture regulations requires managing complex chemical reactions occurring at the plant. Accordingly, it is reasonable to infer that even when Talen took over control of the plants at issue, it would have retained additional individuals knowledgeable of plant operations and mercury control processes at the plants. Thus, it is likely that at least some of those additional individuals that met with and/or received information about ME2C's patented technology would have remained with Talen as of 2015, or would have shared information related to mercury control at the plants with other Talen personnel and management as Talen is now responsible for complying with state and federal mercury regulations.

183. In addition to the foregoing, on July 17, 2019, ME2C provided notice to Talen of the '114 and '147 patents and of the acts constituting infringement by filing the original complaint in this case.

184. It is reasonable to infer that Talen would have reviewed the prosecution history for the '114 and '147 patents and would be generally aware of other patents in the same family.

ACTIVE.124795709.01

185. On June 29, 2020, ME2C provided notice to Talen of the '225, '517, and '430 patents and of the acts constituting infringement by providing Talen with a draft amended complaint.

186. Despite being aware of ME2C's patents, Talen has elected to infringe those patents.

D.I. 130 ¶¶ 175-186.

The FAC never alleges that PPL was provided with notice of infringement of any Asserted Patent during any prior interaction with ME2C, or that PPL should have known that any of its conduct amounted to infringement. *See Välinge*, 2018 WL 2411218, at *12. At best, the FAC merely states that one or more employees of PPL was notified of the existence of the '147 Patent and unidentified "parent applications to the '114 Patent" prior to the suit being filed, and that the PPL employee who attended those meetings has allegedly "remained with Talen." *See* D.I. 130 ¶¶ 177-181. As with the Original Complaint, the FAC fails to allege whether ME2C ever notified any PPL employee that any power plant in the PPL fleet infringed any Asserted Patent during their prior interactions in 2013, or that PPL should have known of such infringement. *See Välinge*, 2018 WL 2411218, at *12. Mere knowledge of a patent does not equal knowledge of infringement, and mere overlap of an employee is not sufficient to even plead knowledge of the patent. *Varian Med. Sys., Inc. v. Elekta AB*, Civil Action No. 15-871-LPS, 2016 WL 3748772, at *6 n.14 (D. Del. July 12, 2016) ("Courts have tended to require more than just an overlap of employees when considering allegations regarding knowledge of a patent … they require sufficient facts to infer that the overlapping employee in question had reason to know of the patent and that this knowledge would have come into play at the company to which knowledge would be imputed.").

The Court previously recognized the same infirmity in granting Talen Defendants' motion to dismiss the Original Complaint. *See* D.I. 110 at 12 ("[T]he Complaint also lacks plausible allegations that the Talen Defendants knew or should have known that their conduct constituted

ACTIVE.124795709.01

infringement of those patents."); *see also Dynamic Data Techs. v. Google LLC*, No. CV 19-1529-CFC-CJB, 2020 WL 1285852, at *2 (D. Del. Mar. 18, 2020) ("even assuming [that Defendants] somehow knew of the existence of each of the patents-in-suit [before the suit was filed] the Complaint does not contain plausible allegations that [Defendants] would then have known that [they were] infringing each of the patents-in-suit") (internal quotation marks omitted), *adopted by*, 2020 WL 3103786 (D. Del. June 11, 2020); *see also Dynamic Data Techs. v. Amlogic*, No. CV 19-1239-CFC, 2020 WL 4365809 (D. Del. July 30, 2020) (dismissing allegations of willful infringement in the absence of plausible allegations of knowledge of infringement).  This failure alone warrants dismissal of all allegations of willful infringement against Talen Defendants.

Moreover, as the R&R observed, a complaint alleging willful infringement based on pre-suit notice to a predecessor-in-interest fails to rise to the level of plausibility if it fails to provide "details as to the nature of the relationship between those entities and [the named defendant]."  *See* D.I. 110 at 11 (citing *Software Research, Inc. v. Dynatrace LLC*, 316 F. Supp. 3d 1112, 1134 (N.D. Cal. 2018)).  For example, the FAC does not allege that PPL was a predecessor-in-interest to any of the named Talen Defendants in this case,[2] does not plead the "nature of relationship between those entities and" the named defendant, and does nothing to suggest that any pre-suit notice to PPL about one of the five Asserted Patents should result in knowledge being imputed to any of the Talen Defendants named in this case.  *See Varian*, 2016 WL 3748772, at *5.  Mere "spin-off" from PPL of an unidentified "portion of its business" to form an unidentified "Talen" entity, and the retention of a former PPL employee (who was *not* notified of any infringement) (D.I. 130 ¶¶ 180-

---

[2] This omission is critical, because pre-suit notice to one entity is insufficient to impute notice to other entities within the corporate umbrella.  *See Dynamic Data*, 2020 WL 1285852, at *3 (dismissing allegations of willful infringement against YouTube based on pre-suit notice to corporate parent, Google, because there is no factual basis "for the conclusion that Google's knowledge should be imputed to YouTube.").

ACTIVE.124795709.01

181) does not suggest that any named Talen Defendant should be imputed with the knowledge of PPL. The remaining allegations in paragraph 182 are conclusory and speculative; indeed, they fail to assert that any named Talen Defendant "took over control of the plants at issue," fail to even identify the "plants at issue," fail to explain why any such entity would have shared ME2C's patented technology with others (especially the named Talen Defendants), and fail to give rise to a plausible assertion of pre-suit notice that could be imputed from PPL to any Talen Defendant.

ME2C's reliance on the filing of the Original Complaint in paragraph 183 to allege notice of infringement of the '147 and '114 Patents[3] also fails for the simple fact that the Original Complaint did not identify any specific power plant owned by the Talen Defendants as infringing the '147 and '114 Patents. *See* D.I. 1 ¶¶ 178-224 (allegations of infringement merely stating that "power plants connected to an Accused RC Facility perform" the method steps without identifying which power plants owned by which entity perform any method claim).[4] Moreover, if the Original Complaint failed to satisfy the threshold of pleading willful infringement in the first place, it cannot plausibly be relied upon to plead willful infringement a year later. *See Välinge*, 2018 WL 2411218, at *12-13 (dismissing allegations of willful infringement in an amended complaint after a prior dismissal of the original complaint, where the amended complaint "did not plead facts ... to plausibly demonstrate that, between the date of filing of the original Complaint and the date of filing of the [amended complaint], Defendants were on notice of how it is that they were said to

---

[3] These allegations were pled in the Original Complaint and were already dismissed in the R&R.

[4] Even the term "Accused RC Facilities" was vaguely defined in the Original Complaint as "RC facilities that receive coal, add bromine and/or bromide such as CaBr$_2$ to the coal, and then provide that 'refined' coal to a coal-fired power plant that injects a sorbent material comprising activated carbon downstream of the combustion chamber (the "Accused RC Facilities")." D.I. 1 ¶ 152. The same definition appears in FAC. *See* D.I. 130 ¶ 206. Neither the Original Complaint, nor the FAC, identify which "coal-fired power plant" is referenced in the specific counts of infringement.

ACTIVE.124795709.01

infringe the asserted patent"); *see also VLSI Tech. LLC v. Intel Corp.*, CV 18-966-CFC, 2019 WL 1349468, at *2 (D. Del. Mar. 26, 2019) (dismissing willfulness allegations in a proposed amended complaint where the original complaint previously alleged infringement against the defendant).

### 2.   The FAC Fails to Adequately Plead Pre-Suit Knowledge of '114 Patent by Talen Defendants

Similar to the Original Complaint, the FAC does not allege pre-suit notice of the '114 Patent by the Talen Defendants, and merely alleges pre-suit knowledge of a "parent patent to the '114 patent"—an allegation that the Court already found failing to rise to the level of plausibility. "[I]t is just not plausible (without more) to believe that six years after learning of the '114 patent's *parent* in 2013, Talen would have been cognizant of the fact that the *'114 patent* issued in 2019 (a mere eight days before this lawsuit was filed)."  D.I. 110 at 12-13.  More importantly, the FAC fails to allege any facts that transpired since the filing of the Original Complaint that would have put any Talen Defendant on notice of infringement at any specific power plant. *Välinge*, 2018 WL 2411218, at *12-13 (dismissing allegations of willful infringement where the amended complaint "did not plead facts … to plausibly demonstrate that, *between the date of filing of the original Complaint and the date of filing of the* [amended complaint], Defendants were on notice of how it is that they were said to infringe the asserted patent") (emphasis added).  Indeed, neither the Original Complaint nor the FAC identify any power plant in the Talen fleet that allegedly infringes the '114 Patent.  *See* D.I. 1 ¶¶ 178-200; *see* D.I. 130 ¶¶ 236-268.  The FAC's allegations of adequate pre-suit knowledge of the '114 Patent remain implausible and should be dismissed.[5]

---

[5] Plaintiffs did not object to the R&R, and it was adopted by the District Court.  The R&R is now "law of the case" against which the FAC must be measured.  *See United Artists Theatre Circuit, Inc. v. Twp. of Warrington, PA*, 316 F.3d 392, 397–98 (3d Cir. 2003) ("Courts apply the law of the case doctrine when their prior decisions in an ongoing case either expressly resolved an issue or necessarily resolved it by implication"); *Sun-Tek Indus., Inc. v. Kennedy Sky Lites, Inc.*, 988 F.2d 131 (Fed. Cir. 1993) ("[A] legal decision made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future

**3.     No Plausible Basis to Plead Pre-Suit Knowledge of the '225, '517 and '430 Patents or That Talen Defendants Were on Notice of Infringement of These Patents**

Plaintiffs' sole basis for alleging pre-suit knowledge of the '225, '517 and '430 Patents—all three of which issued in March 2020 or later—is an inadequately pled draft complaint exchanged merely two and a half weeks before the filing of the FAC.  *See* D.I. 130 ¶ 185.  This draft complaint cannot be sufficient or definitive notice for willful infringement.  First, the draft complaint—served only on outside counsel merely for the purposes of determining whether a motion for leave to amend the Original Complaint would be opposed in light of this Court's previous dismissal order—did not provide any notice of infringement of the '225, '517 and '430 Patents by any specific plant in Talen Defendants' fleet.  This failure is fatal.  Second, this alleged notice was provided *after* the lawsuit was originally filed.  *See* D.I. 110 at 12 n.10.

Knowing that Plaintiffs did not provide adequate pre-suit notice of the '225, '517, and '430 Patents, Plaintiffs attempt to shift the burden to the Talen Defendants to have reviewed the prosecution history of the entire family of patents.  *See* D.I. 130 ¶ 184.  There is no plausible basis to plead that Talen Defendants had reviewed the prosecution histories of the specific Asserted Patents to determine whether or not they infringed, or that they would have even been aware of other patents in the same family prior to the suit being filed.  Indeed, it is rank speculation.  As the Court already stated, "the fact that the alleged infringer had knowledge of a related patent to the patent-in-suit was not, without more, sufficient to demonstrate a plausible claim to pre-suit knowledge of the patent-in-suit."  D.I. 110 at 12 (summarizing *MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 223 (D. Del. 2012)); *see also VLSI Tech. LLC*, 2020 WL

---

stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time."); *see also Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 810 F.2d 243, 250 (D.C. Cir. 1987).

3488584, at *5 (denying motion to amend pleading to add allegations of willful infringement based on defendant's alleged "monitor[ing] of competitor's activities"); *Vasudevan Software, Inc. v. TIBCO Software Inc.*, No. C 11-06638 RS, 2012 WL 1831543, *2-*6 (N.D. Cal. 2012) (accused infringer's knowledge of the pending patent application that led to the asserted patent and knowledge of other family related patents was insufficient to show actual knowledge of the asserted patent). For at least these reasons, ME2C's allegations of willfulness as to each Asserted Patent should be dismissed.

### C.   Plaintiffs Again Fail to Adequately Plead Induced Infringement

Plaintiffs allege inducement only with respect to Talen Energy Corporation, stating:

> 204.  As the parent of the other Talen entities, Talen Energy Corporation induces the other Talen entities to perform the steps of the patented methods.

> 205.  On information and belief and based on ME2C's business encounters with PPL and the fact that Talen retained at least some PPL employees, Talen Energy Corporation does so by exercising control over subsidiaries, providing technical, administrative, logistical and financial services to subsidiaries, and/or negotiating standard form or bulk agreements for products and services related to mercury control. For example, Talen Energy Corporation negotiates or exercises veto power over decisions to sign supply contracts for activated carbon and bromine-containing additives. In so doing, Talen Energy Corporation takes part in the decisions regarding supply contracts and influences the other Talen entities to select suppliers for the plant, including those that provide bromine-containing additives and activated carbon.

D.I. 130 ¶¶ 204-05; *see also id.* ¶¶ 253, 287, 316, 345, 378.

These allegations suffer from the same deficiencies that resulted in dismissal of the Original Complaint.  Nothing in the FAC alleges that Talen Energy Corporation "knowingly induced infringement and possessed specific intent to encourage another's infringement." *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1363 (Fed. Cir. 2012). Mere "aware[ness] of the patents-in-suit" as alleged in paragraphs 253, 287, 316, 345, 378, is not sufficient for induced infringement. Plaintiffs must also plead that Talen Energy Corporation had actual knowledge of infringement as

ACTIVE.124795709.01

they engaged in acts of inducement and the specific intent to induce infringement. *See In re Bill of Lading*, 681 F.3d 1323, 1336, 1339 (Fed. Cir. 2012). As explained in Section III.B. above, Plaintiffs failed to plead that Talen Energy Corporation had knowledge that any of the "other Talen entities" were infringing any of the Asserted Patents at any specific power plant.

Moreover, the FAC again improperly conflates multiple entities into one, labeling them "other Talen entities," D.I. 130 ¶¶ 204-05, and "respective subsidiary Defendants," D.I. 130 ¶¶ 253, 287, 316, 345, 378. The FAC remains deficient as to *which* specific entities are being induced—it is unclear whether Plaintiffs are alleging that these are the same entities over which Talen exercises control, or to which Talen provides technical, administrative, logistical, and financial services, or whether they are the same entities for whom Talen negotiates standard form or bulk agreements for products and services related to mercury control. The failure to identify the direct infringer that is allegedly being induced by Talen Energy Corporation pushes Plaintiffs' allegations to the realm of implausibility.

The Court has held that "[w]hen articulating certain of its inducement allegations," the plaintiff must identify "which particular Defendant or Defendants are said to have" committed the acts requisite to plead induced infringement. *Neology, Inc. v. Kapsch Trafficcom IVHS, Inc.*, No. CV 13-2052-LPS, 2014 WL 4675316, at *7 (D. Del. Sept. 19, 2014) (explaining that "treating these Defendants as one big group for purpose of articulating how each has encouraged the induced infringement at issue says nothing plausible as to what any particular one of them might have done"). Lumping together the actions of multiple defendants is "another failing" of the FAC:

> [I]f it was unclear as to which of the four Defendant entities these allegations related to, that would simply highlight another failing of the Complaint. If a plaintiff simply files suit against four separate defendants and then states that it is going to lump all four defendants together in a complaint by referring to them by one name (here, 'Elekta'"), that practice tends to obscure which Defendants are said to have done and known what, and when.

-14-

*Varian*, 2016 WL 3748772, at *5 n. 13.  Plaintiffs' wholesale treatment of multiple defendants and failure to identify the direct infringer that is allegedly being induced is, therefore, insufficient to plead induced infringement.  *See M2M Sols., LLC v. Telit Commc'ns PLC*, No. 14-1103-RGA, 2015 WL 4640400, at *4 (D. Del. Aug. 5, 2015) ("Referring to both Defendants under one single term, Plaintiff has not pled a plausible inducement claim against Telit UK as a result.").

Finally, the FAC's generic allegations as to routine activities of "exercising control over subsidiaries," "providing technical, administrative, logistical and financial services to subsidiaries," "negotiating standard form or bulk agreements for products and services related to mercury control," or otherwise exercising "veto power over decisions to sign supply contracts" are insufficient to support an allegation of induced infringement against Talen Energy Corporation. None of these allegations plead that Talen Energy Corporation engaged in these acts after obtaining knowledge of the Asserted Patents and *with specific intent to infringe* any of the Asserted Patents. And merely "negotiating standard form or bulk agreements for products and services related to mercury control" or exercising "veto power over … supply contracts" is insufficient, especially when such allegations are untethered to either the "Bromine Step" or the "Activated Carbon Step."[6] As the Court recognized, Plaintiffs have not pled which specific Talen Defendants have been induced to infringe, or how the above actions "encouraged another to infringe or necessarily resulted in infringement by another entity. … They thus lack the requisite specificity to sufficiently allege induced infringement."  D.I. 110 at 8 n.7.  The FAC's allegations of induced infringement against Talen Energy Corporation should be dismissed.

---

[6] Not every method of "mercury control" infringes the Asserted Patents, as the Asserted Patents disclose "the use of non-carbon base sorbents" in mercury removal.  *See e.g.*, D.I. 130, Ex. A ('114 Patent) at 10:4-8.  "[T]he claimed methods require performance of both the Bromine Step and the Activated Carbon Step," and the FAC fails to plead whether any alleged acts of inducement were specifically tied to either of these required steps.  *See* D.I. 110 at 13.

ACTIVE.124795709.01

### D.   Plaintiffs Again Fail to Adequately Plead Joint and Several Liability

Plaintiffs, yet again, fail to plead facts sufficient to plausibly allege joint and several liability involving Talen Defendants, or that Talen Defendants are part of a joint enterprise to infringe the Asserted Patents.  *See Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1023 (Fed. Cir. 2015).  In fact, the only allegations of a "common purpose" in the FAC appear in reference to the "refined coal" that is allegedly purchased by "operators of coal-fired power plants" from AJG, DTE, CERT, Chem-Mod and "their associated RC Defendants."[7]  *See* D.I. 130 ¶¶ 214, 217, 220.  But obtaining "refined coal" is nothing more than purchasing a component that, by itself, is not alleged to infringe any Asserted Patent.  And, as the Court already held, the claims at issue require more—"the claimed methods require performance of *both* the Bromine Step and the Activated Carbon Step."  *See* D.I. 110 at 13 (emphasis added); *see also* D.I. 130, Exs. A-E (each claim requiring both bromine and activated carbon).  If it were otherwise, every purchase of a non-infringing component with non-infringing uses, that may otherwise be combined with other components to form an allegedly infringing product, would give rise to joint and several liability.[8] There is no basis for such conduct to implicate joint and several liability.

Finally, the FAC's allegation that AJG, Chem-Mod, DTE, CERT, "their associated RC Defendants" and Talen Defendants have an "equal right of control" is belied by other passages found elsewhere in the FAC.  *See* D.I. 130 ¶¶ 215, 218, 221.  The FAC alleges that AJG, Chem-

---

[7] In this regard, the FAC's allegations are unclear and implausible because they fuse together multiple (potentially unrelated parties) into a single term "operators of coal-fired power plants" as well as "associated RC Defendants."  "[F]using the two Defendants as one is also problematic for Plaintiff's … claims."  *M2M Solutions*, 2015 WL 4640400, at *4 (granting 12(b)(6) motion to dismiss claims of induced infringement).

[8] "If anything is settled in the patent law, it is that the combination patent covers only the totality of the elements in the claim and that no element, separately viewed, is within the grant." *Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518, 528 (1972).

Mod, DTE, CERT and associated RC Defendants "control … the provision of chemicals onto the coal" while Talen Defendants "control[] the process of combusting the coal and providing sorbent comprising activated carbon."  *Id.*  Even assuming these conclusory allegations as true, the FAC is clear that not all entities exercise an equal right of control because the Talen Defendants have no control over "the provision of chemicals onto the coal" and AJG, Chem-Mod, DTE, CERT and their associated RC Defendants have no control over "the process of combusting the coal" or the "provi[sion] of sorbent comprising activated carbon."  *See CBA Envtl. Servs. v. Toll Brothers Inc.*, 403 F. Supp. 3d 403, 419 (D.N.J. 2019) (dismissing allegations of joint infringement where "[t]he Complaint is clear that not all of the Defendants had equal control over the project, alleging that while [certain defendants] were responsible for 'overseeing and directing soil remediation activities at Apple Ridge and High Mountain,' [remaining defendants] had no such oversight authority.").  The FAC's allegations of joint and several liability should, therefore, be dismissed.

### E.   MES Does Not Have Standing to Bring Suit for Any Asserted Patent

The FAC underscores the holding in the R&R that MES lacks standing to bring suit for infringement of the Asserted Patents.  The statements in the FAC itself, and the public record, conclusively establish that MES is neither a "patentee" under 35 U.S.C. § 281, nor has any right to seek recovery for any alleged infringement of the Asserted Patents.  *See Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1229, 1235-36 (Fed. Cir. 2019) (analyzed by D.I. 110 at 8-9).  To qualify as a "patentee," a plaintiff must have "all rights or all substantial rights" in a patent or be "a licensee with exclusionary rights."  *Id.* at 1228 (internal quotation marks and citation omitted).  The party bringing the action, MES in this case, bears the burden of establishing that it has the right to bring a patent infringement suit.  *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005).

MES failed to meet its burden because the public record refutes any contention that MES

is an owner of the Asserted Patents.  Public records reveal that none of the Asserted Patents are

assigned to Plaintiff MES.  *See* Exs. A-E (assignment records for the five Asserted Patents); *see

also* D.I. 130-7 ("Report on the Filing or Determination of an Action Regarding a Patent or

Trademark" filed with FAC identifying "Midwest Energy Emissions Corporation" as the only

patentee); D.I. 110 at 10, n.8 (noting that courts can consider the public record in deciding motions

to dismiss under Rule 12).  The assignment records for all Asserted Patents reflect a change in

ownership from the original assignee EERC to Plaintiff Midwest, dated April 24, 2017.  Plaintiff

MES is nowhere in the assignment chain.

The FAC itself also refutes MES's purported ownership interest in the patents by stating

that "ME2C"—and not MES—"owns all rights, title, and interest in the [Asserted Patents], and

holds all substantial rights pertinent to this suit, including the right to sue and recover for all past,

current, and future infringement."  D.I. 130 ¶ 238, 271, 305, 334, and 363.  As this Court already

explained in its R&R, "[t]hese allegations do not satisfy Plaintiffs' burden.  They lump the two

Plaintiffs together under one defined term ("ME2C"), making it unclear which Plaintiff is alleged

to hold which rights regarding that patent."  D.I. 110 at 9.

To the extent Plaintiffs prop up any interest in the Asserted Patents by asserting that MES

was an exclusive licensee, the FAC refutes that as well.  As discussed above, the assignments from

the EERC to Midwest are all dated April 24, 2017, and Plaintiffs characterize the assignment as a

complete assignment that included the right to recover for past damages:

> 110.  MES, Inc. obtained an exclusive license to the '147 patent and pending related
> applications from the EERC. Midwest Energy Emissions Corp. later obtained an
> assignment of the patents-in-suit from the EERC including any rights retained by
> the EERC to receive past damages, and MES, Inc. agreed to terminate its exclusive
> license at that time. Thus, during the time period of alleged infringement, MES,
> Inc. and/or Midwest Energy Emissions Corp. held all substantial rights in the
> patents-in-suit.

D.I. 130 ¶ 110.  Accordingly, between the assignment records and the admissions in the FAC, it is

apparent that on April 24, 2017:  (1) EERC had assigned the patents to Midwest; (2) MES's exclusive license was terminated; and (3) MES had not retained any right to sue for past damages. Thus, as of the date of the Original Complaint and the FAC, MES does not have **any** right to any Asserted Patent.[9]  As with the Original Complaint, the FAC "does not plausibly allege that MES is a 'patentee' under Section 281 as to" any of the Asserted Patents.  *See* D.I. 110 at 9.  The Court should, therefore, dismiss MES as a plaintiff from this case.

### F.     The FAC Fails to Provide Sufficient Basis for Joinder of Unrelated Defendants Under Section 299

By filing a single complaint against eight unrelated groups of defendants, without adequately pleading a sufficient basis to do so, Plaintiffs have violated 35 U.S.C. § 299.  *See also* FED. R. CIV. P. 20(a)(2).  Unrelated parties may *only* be named as co-defendants in a patent case if "[i] any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences . . . and [ii] questions of fact common to all defendants or counterclaim defendants will arise in the action."  35 U.S.C. § 299.  The FAC contains no allegations that Talen Defendants are jointly and severally liable with any other Coal Plant Defendants—the Vistra, AEP, or NRG entities.  The only connection between Talen Defendants and of the other defendants is that allegedly "they each have infringed the patent or patents in suit," but that is statutorily insufficient for joining unrelated defendants in a single suit.  *See* 35 U.S.C. § 299(b); *see also British Telecom. v. IAC/InterActiveCorp.*, No. 18-CV-366-WCB, 2019 WL 1765224 at *1-2 (D. Del. Apr. 22, 2019) (severing defendant when several of the counts had "nothing whatsoever to do with" the defendant).  Accordingly, while the Talen Defendants would not object to the continued

---

[9] Moreover, MES **never** held legal title to the '114, '225, '517, and '430 Patents, each of which issued *after* April 24, 2017.

coordination of the related cases for pre-trial purposes, Plaintiffs' allegations against Talen Defendants should be severed into a separate action under 35 U.S.C. § 299.

### G.    The Claims Should Be Dismissed With Prejudice

This Court has already dismissed Plaintiffs' claims for willful infringement, induced infringement, and standing based on much of the same arguments regurgitated in the FAC.  *See* D.I. 110.  Plaintiffs avoided a ruling on their prior allegation of joint and several liability by conceding the deficiencies and mooting the issue prior to the Court's R&R.  *See* D.I. 83 at 1.  But Plaintiffs' FAC has, once again, failed to plausibly and adequately plead these same issues.  This time, the dismissals should be "with prejudice, as it is apparent that Plaintiff cannot satisfactorily amend its Complaint."  *IpVenture Inc. v. Lenovo Grp. Ltd.*, No. CIV.A. 11-588-RGA, 2013 WL 126276, at *3 (D. Del. Jan. 8, 2013); *see also Bishop v. JP Morgan Chase & Co.*, No. CV 13-001-RGA, 2014 WL 1382393, at *5 (D. Del. Apr. 7, 2014) ("Because Plaintiff failed in his attempt to remedy the defects in his complaint, despite notice and his familiarity with the pleading requirements, granting him a second opportunity to amend his complaint would be futile.").  The allegations in the FAC addressed above should be dismissed with prejudice.

## IV.    CONCLUSION

For the reasons set forth above, the Talen Defendants respectfully request that the Court dismiss Plaintiffs' claims against Talen Defendants for willful infringement, inducement of infringement, and joint and several liability with prejudice.  Talen Defendants also request the Court dismiss all claims brought by Plaintiff MES with prejudice because MES does not have standing under any of the Asserted Patents.  Talen Defendants further request that the Court sever the remaining claims against them from the claims brought against other unrelated defendants.

**FAEGRE DRINKER BIDDLE & REATH LLP**

*Of Counsel:*

Syed Fareed
Emily Pyclik
John C. Williams
**BAKER BOTTS L.L.P.**
98 San Jacinto, Suite 1500
Austin, Texas 78701
(512) 322-2500

David J. Tobin
**BAKER BOTTS L.L.P.**
2001 Ross Avenue, Suite 1100
Dallas, Texas 75201
(214) 953-6500

Dated:  August 6, 2020

*/s/ Francis DiGiovanni*
Francis DiGiovanni (#3189)
Thatcher A. Rahmeier (#5222)
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
(302) 467-4200
francis.digiovanni@faegredrinker.com
thatcher.rahmeier@faegredrinker.com

*Attorneys for Defendants Talen Energy*
*Corporation, Brandon Shores LLC, Talen*
*Generation LLC, and H.A. Wagner LLC*

-21-

ACTIVE.124795709.01