# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MIDWEST ENERGY EMISSIONS CORP.
and MES INC.,

                 Plaintiffs,

       v.

VISTRA ENERGY CORP. et al.,

                 Defendants.

C.A. No. 19-1334 (RGA)

JURY TRIAL DEMANDED

**PUBLIC VERSION**

---

## OPENING BRIEF IN SUPPORT OF MOTION TO DISMISS
## BY DEFENDANTS NRG ENERGY, INC., NRG TEXAS POWER LLC,
## <u>MIDWEST GENERATION EME, LLC, AND MIDWEST GENERATION, LLC</u>

*Of Counsel*:
Paul R. Morico
Elizabeth Durham Flannery
Ali Dhanani
Thomas B. Carter, Jr.
BAKER BOTTS L.L.P.
One Shell Plaza
910 Louisiana Street
Houston, TX 77002
(713) 229-1234
paul.morico@bakerbotts.com
liz.flannery@bakerbotts.com
ali.dhanani@bakerbotts.com
thomas.carter@bakerbotts.com

Frederick L. Cottrell, III (#2555)
Tyler E. Cragg (#6398)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
Tel. (302) 651-7700
cottrell@rlf.com
cragg@rlf.com

*Attorneys for Defendants NRG Energy, Inc.,*
*NRG Texas Power LLC, Midwest Generation*
*EME, LLC, and Midwest Generation, LLC*

## Table of Contents

**Page**

I. NATURE AND STAGE OF THE PROCEEDINGS ........................................................ 1

II. STATEMENT OF FACTS ........................................................................................... 3

    A. Willful Infringement ........................................................................................ 4

    B. Indirect Infringement ....................................................................................... 4

    C. Joint and Several Liability ............................................................................... 5

III. ARGUMENT .............................................................................................................. 5

    A. Legal Standards for Motions to Dismiss ......................................................... 5

        i. Willful Infringement ............................................................................ 6

        ii. Indirect Infringement .......................................................................... 6

        iii. Joint and Several Liability ................................................................... 7

    B. ME2C Fails to Adequately Plead Willful Infringement ................................... 8

    C. ME2C's Allegations of Induced Infringement Are Still Deficient .................. 11

    D. ME2C's Continues to Fail to Adequately Plead Joint and Several Liability ........ 13

    E. NRG Joins Talen's Motion to Dismiss Regarding ME2C's Failure to Establish MES Does Not Have Standing to Bring Suit and Failure to Provide Sufficient Basis for Joinder of Unrelated Defendants Under Section 299 ............................ 15

    F. ME2C's Claims Should Be Dismissed With Prejudice ..................................... 15

IV. CONCLUSION ............................................................................................................ 16

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Adidas Am., Inc. v. Skechers USA, Inc.*,
    C.A. No. 3:16-cv-1400-SI, 2017 WL 2543811 (D. Or. June 12, 2017) ..................................10

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
    797 F.3d 1020 (Fed. Cir. 2015)......................................................................................7, 8, 14

*Ansell Healthcare Prods. LLC v. Reckitt Benckiser LLC*,
    C.A. No. 15-CV-915-RGA, 2018 WL 620968 (D. Del. Jan. 30, 2018) ...................................9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................................................5, 6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................................................................5, 6

*Bishop v. JP Morgan Chase & Co.*,
    C.A. No. 13-001-RGA, 2014 WL 1382393 (D. Del. Apr. 7, 2014) .......................................16

*BlackBerry Ltd. v. Nokia Corp.*,
    C.A. No. 17-155-RGA, 2018 WL 1401330 (D. Del. Mar. 20, 2018)........................................8

*Citrix Sys., Inc. v. Avi Networks, Inc.*,
    363 F. Supp. 3d 511 (D. Del. 2019)......................................................................................16

*Ericsson, Inc. v. D-Link Sys., Inc.*,
    773 F.3d 1201 (Fed. Cir. 2014)...............................................................................................7

*FMC Corp. v. Up-Right, Inc.*,
    816 F. Supp. 1455 (N.D. Cal. 1993), *aff'd*, 21 F.3d 1073 (Fed. Cir. 1994).............................7

*Helios Streaming, LLC v. Vudu, Inc.*,
    C.A. No. 19-1792-CFC-SRF, 2020 WL 2332045 (D. Del. May 11, 2020)...............................6

*Illumina, Inc. v. BGI Genomics Co.*,
    C.A. No. 19-cv-03770-WHO, 2020 WL 571030 (N.D. Cal. Feb. 5, 2020)...............................9

*In re Vaughan Co., Realtors*,
    2012 WL 3166721 (Bankr. D. N.M. Aug. 2, 2012) .................................................................3

i

*IOENGINE, LLC v. PayPal Hldgs., Inc.*,
    C.A. No. 18-452-WCB, 2019 WL 330515 (D. Del. Jan. 25, 2019) ....................................7, 8

*IPVenture Inc. v. Lenovo Grp. Ltd.*,
    No. C.A. 11-588-RGA, 2013 WL 126276 (D. Del. Jan. 8, 2013) ...........................................16

*Lyda v. CBS Corp.*,
    838 F.3d 1331 (Fed. Cir. 2016)......................................................................................7, 13

*M2M Sols. LLC v. Telit Commc'ns PLC*,
    C.A. No. 14-1103-RGA, 2015 WL 4640400 (D. Del. Aug. 5, 2015)................................8, 13

*McCoy v. Favata*,
    No. C.A. No. 17-1046 (MN), 2019 WL 1429570 (D. Del. Mar. 29, 2019)............................6

*N. Star Innovations, Inc. v. Toshiba Corp.*,
    C.A. No. 16-115-LPS-CJB, 2016 WL 7107230 (D. Del. Dec. 6, 2016) ................................8

*On Demand Mach. Corp. v. Ingram Indus., Inc.*,
    442 F.3d 1331 (Fed. Cir. 2006)...........................................................................................7

*T-Jat Sys. 2006 Ltd. v. Expedia, Inc. (DE)*,
    C.A. No. 16-581-RGA-MPT, 2017 WL 896988 (D. Del. Mar. 7, 2017) ................................8

*Toshiba Corp. v. Imation Corp.*,
    681 F.3d 1358 (Fed. Cir. 2012)...........................................................................................12

*Välinge Innovation AB v. Halstead New Eng. Corp.*,
    C.A. No. 16-1082-LPS-CJB, 2018 WL 2411218 (D. Del. May 29, 2018) .........................6, 9

*Varian Med. Sys., Inc. v. Elekta AB*,
    C.A. No. 15-871-LPS, 2016 WL 3748772 (D. Del. July 12, 2016), *report and
    recommendation adopted*, C.A. No. 15-871-LPS, 2016 WL 9307500 (D. Del. Dec. 22,
    2016) ..................................................................................................................................10

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
    759 F.3d 1307 (Fed. Cir. 2014)...........................................................................................14

*Vita-Mix Corp. v. Basic Hldg., Inc.*,
    581 F.3d 1317 (Fed. Cir. 2009)...........................................................................................6

*VLSI Tech. LLC v. Intel Corp.*,
    C.A. No. 18-0966-CFC, 2020 WL 3488584 (D. Del. June 26, 2020) ....................................10

*VLSI Tech. LLC. v. Intel Corp.*,
    C.A. No. 18-966-CFC, 2019 WL 1349468 (D. Del. Mar. 26, 2019).........................................9

*Williams v. Potter*,
    384 F. Supp. 2d 730 (D. Del. 2005) ......................................................................................6

**STATUTES**

28 U.S.C. § 45(e)(8)(A) ....................................................................................................14

**OTHER AUTHORITIES**

FED. R. CIV. P. 12 ......................................................................................................1, 2, 3

## I.     NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs Midwest Energy Emissions Corp. ("Midwest") and MES Inc. ("MES") (collectively "ME2C") filed their Complaint (D.I. 1) on July 17, 2019, setting forth, *inter alia*, allegations of induced infringement and willful infringement by NRG Energy, Inc., NRG Texas Power LLC, Midwest Generation EME, LLC, and Midwest Generation, LLC (collectively, "NRG") of U.S. Patent No. 8,168,147 (the "'147 Patent") and U.S. Patent No. 10,343,114 (the "'114 Patent"). The Complaint further alleged that Defendants Vistra Energy Corporation, Dynegy Miami Fort, LLC, Dynegy Inc., Dynegy Midwest Generation, LLC, IPH, LLC, and Illinois Power Resources Generating, LLC (collectively "Vistra"), Defendants Talen Energy Corporation, Talen Energy Holdings, Inc., Brandon Shores LLC, Talen Generation LLC, and H.A. Wagner LLC's (collectively, "Talen"), and NRG were jointly and severally liable for infringement with each other.

On September 23, 2019, Vistra and Talen filed separate Motions to Dismiss pursuant to FED. R. CIV. P. 12(b)(6). D.I. 45 (the "Vistra Motion to Dismiss"); D.I. 49 (the "Talen Motion to Dismiss"). The Vistra Motion to Dismiss requested dismissal of ME2C's claims of joint and several liability with regards to the "Coal Plant Defendants" under FED. R. CIV. P. 12(b)(6) and dismissal of Plaintiff MES Inc. under FED. R. CIV. P. 12(b)(6) because the Complaint fails to show that MES Inc. is a "patentee" under Section 281. The Vistra Motion to Dismiss also requested dismissal of ME2C's claims of induced infringement by Vistra under FED. R. CIV. P. 12(b)(6). The Talen Motion to Dismiss requested dismissal of ME2C's claims of joint and several liability with regards to NRG, Talen, and Vistra under FED. R. CIV. P. 12(b)(6) and dismissal of Plaintiff MES Inc. under FED. R. CIV. P. 12(b)(6) because the Complaint fails to show that MES Inc. is a "patentee" under Section 281. The Talen Motion to Dismiss also requested dismissal of ME2C's

1

claims of willful and induced infringement by Talen under FED. R. CIV. P. 12(b)(6). On that same day, NRG filed motions to join portions of the Vistra Motion to Dismiss and the Talen Motion to Dismiss. (D.I. 47, 53). Specifically, NRG joined the portions of the Vistra Motion to Dismiss and the Talen Motion to dismiss regarding joint and several liability and failure to establish that MES Inc. is a "patentee" under Section 281 and also joined the portion of the Talen Motion to Dismiss regarding ME2C's claims of induced infringement.

On June 18, 2020, Magistrate Judge Christopher Burke issued a Report and Recommendation recommending that the Court grant the motions with regard to the induced infringement claims and defendants' assertion that the Complaint failed to establish that Plaintiff MES was a "patentee." D.I. 110 at 23. Judge Burke also recommended that the motions to dismiss should be denied as moot with regards to the joint and several liability issues because ME2C clarified that they were not asserting claims of joint and several liability among NRG, Vistra, and Talen. *Id.* at 6. Finally, Judge Burke recommended that Talen's request to dismiss ME2C's claims of willful infringement should be granted. *Id.* at 23. All dismissals were recommended to be granted without prejudice. *Id.* at 22. On July 15, 2020, the Court entered an order adopting the portions of Judge Burke's report and recommendation discussed above. D.I. 127. On July 17, 2020, the Court entered an order clarifying that the earlier order applied to NRG's request to dismiss ME2C's induced infringement claims. D.I. 135.

On July 15, 2020, ME2C filed a First Amended Complaint continuing to allege willful and induced infringement by NRG, Vistra, and Talen of the '147 Patent and '114 Patent as well as U.S. Patent No. 10,589,225 (the "'225 Patent"), U.S. Patent No. 10,596,517 (the "'517 Patent"), and U.S. Patent No. 10,668,430 (the "'430 Patent") (collectively, the "Asserted Patents"). D.I. 130. However, for the reasons discussed below, the First Amended Complaint fails to correct the

2

deficiencies with ME2C's claims of willful and induced infringement against NRG. The First Amended Complaint also makes nothing but conclusory assertions that NRG had knowledge of the Asserted Patents and any alleged infringement thereof. Accordingly, NRG submits this Opening Brief in Support of its Motion to Dismiss ME2C's claims of willful and induced infringement as well as ME2C's joint and several liability allegations under FED. R. CIV. P. 12(b)(6).[1] NRG also joins the portions of the motion to dismiss filed by Talen (D.I. 172) regarding dismissal of Plaintiff MES Inc. because the First Amended Complaint fails to show that MES Inc. is a "patentee" under Section 281 and severance of NRG under 35 U.S.C. § 299 because the First Amended Complaint fails to provide sufficient basis for joinder of eight unrelated groups of defendants.

## II.   STATEMENT OF FACTS

ME2C's First Amended Complaint alleges patent infringement against over forty entities. The First Amended Complaint alleges that NRG operates various coal-fired power plants, where coal is combusted using a method that allegedly directly infringes the Asserted Patents. *See, e.g.*, D.I. ¶¶ 232, 242-252, 275-286, 311-315, 338-344, 367-377. ME2C further states that NRG's infringement is willful. *Id.* at ¶¶ 223-226. ME2C also states that NRG Energy, Inc. indirectly

---

[1] A motion to dismiss stays the time in which the defendant must respond to the remaining counts of the Complaint. *See Brown v. Interbay Funding LLC*, 198 F. App'x. 223, 225 (3d Cir. 2006) ("[T]he time period for filing an answer is altered when a defendant files a motion under Rule 12. *See* FED. R. CIV. P. 12(a)(4). . . . [T]he motion merely extended [defendant's] time to file an answer . . . after receiving notice of the District Court's action on its motion. *See* FED.R.CIV.P. 12(a)(4)(A)."); *see, e.g., In re Vaughan Co., Realtors*, 2012 WL 3166721, at *11 (Bankr. D. N.M. Aug. 2, 2012) ("The large majority of courts addressing this issue have held that when a defendant timely files a motion to dismiss under Rule 12(b)(6), FED. R. CIV. P., Rule 12(a)(4)(A) extends the time to file an answer as to all claims, including those not addressed by the motion to dismiss.").

infringes by inducing certain of its subsidiaries to perform the steps of the patented methods. *Id.* at ¶¶ 202-203.

### A.  Willful Infringement

The alleged facts purportedly supporting ME2C's allegations of pre-suit willful infringement against NRG focus solely on unspecified "interactions" with NRG in 2012:

> 168.  In 2012, ME2C had various interactions with NRG to discuss ME2C's patented technology.
>
> 169.  Over the next few years, NRG evaluated its options for coming into compliance with upcoming MATS regulations.
>
> 170.  During that time, ME2C identified its patents to NRG and explained the operation of its patented technology.
>
> 171.  The parties also considered having ME2C perform various demonstrations of the technology at NRG power plants.

*Id.* at ¶¶ 168-171. The only other alleged facts relating to willful infringement by NRG rely on the filing of the Complaint and the First Amended Complaint:

> 172.  In addition to the foregoing, on July 17, 2019, ME2C provided notice to NRG of the '114 and '147 patents and of the acts constituting infringement by filing the original complaint in this case.
>
> 173.  It is reasonable to infer that NRG would have reviewed the prosecution history for the '114 and '147 patents and would be generally aware of other patents in the same family.
>
> 174.  On June 29, 2020, ME2C provided notice to NRG of the '225, '517, and '430 patents and of the acts constituting infringement by providing NRG with a draft amended complaint. Nonetheless, NRG elected to infringe ME2C's patents.

*Id.* at ¶¶ 172-174.

### B.  Indirect Infringement

ME2C's claims of indirect infringement against NRG Energy Inc. are similarly conclusory and devoid of adequate factual allegations:

4

202. As the parent of the other NRG entities, NRG Energy Inc. induces the other NRG entities to perform the steps of the patented methods.

203. On information and belief and based on ME2C's past business encounters with NRG, NRG Energy Inc. does so by exercising control over subsidiaries, providing technical, administrative, logistical and financial services to subsidiaries, and/or negotiating standard form or bulk agreements for products and services related to mercury control. For example, NRG Energy Inc. negotiates or exercises veto power over decisions to sign supply contracts for activated carbon and bromine-containing additives. In so doing, NRG Energy Inc. takes part in the decisions regarding supply contracts and influences the other NRG entities to select suppliers for the plant, including those that provide bromine-containing additives and activated carbon.

*Id.* at ¶¶ 202-203.

### C.  Joint and Several Liability

The First Amended Complaint contains a single explicit allegation that NRG is jointly and severally liable with any other defendant:

232. At least Defendants Vistra, NRG, and Talen have owned and/or operated Accused Coal Plants using Chem-Mod products to directly infringe the patents-in-suit and thus Vistra is jointly and severally liable with Chem-Mod, NRG is jointly and severally liable with Chem-Mod, and Talen is jointly and severally liable with Chem-Mod with respect to those plants.

D.I. 130, ¶ 232.

## III.   ARGUMENT

### A.    Legal Standards for Motions to Dismiss

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal for "failure to state a claim upon which relief can be granted." As the Supreme Court has explained, to state a claim on which relief can be granted, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009). The Supreme Court has affirmed that the *Twombly* standard applies to "all civil actions." *Id.* at 684.

The First Amended Complaint must further "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. "Vague and conclusory factual allegations do not provide fair notice to a defendant." *Williams v. Potter*, 384 F. Supp. 2d 730, 733 (D. Del. 2005); *see also McCoy v. Favata*, No. C.A. No. 17-1046 (MN), 2019 WL 1429570, at *4, n.3 (D. Del. Mar. 29, 2019) (finding the complaint "wholly unclear" which offenses Plaintiff is asserting against any one of the eight defendants).

### i.   *Willful Infringement*

A claim of willful infringement cannot survive a motion to dismiss unless it "plausibly demonstrate[s] that the accused infringer not only knew of the patent-in-suit, but also knew or should have known that what it was doing (and what it continued to do) amounted to infringement of that patent." *Välinge Innovation AB v. Halstead New Eng. Corp.*, C.A. No. 16-1082-LPS-CJB, 2018 WL 2411218, at *13 (D. Del. May 29, 2018).

### ii.   *Indirect Infringement*

A claim of indirect infringement must establish the requisite predicate for inducement to infringe under 35 U.S.C. § 271(b). To survive a motion to dismiss a claim of induced infringement, a plaintiff must plead facts that "the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent." *Vita-Mix Corp. v. Basic Hldg., Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009); *Helios Streaming, LLC v. Vudu, Inc.*, C.A. No. 19-1792-CFC-SRF, 2020 WL 2332045 at *2 (D. Del. May 11, 2020). To make out a claim of induced infringement, the patentee must demonstrate that the alleged infringer

performs, or induces another party to perform, every single step in the method. *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1219 (Fed. Cir. 2014).

### iii.     *Joint and Several Liability*

There are a limited number of ways in which parties accused of patent infringement may be jointly and severally liable. For example, "[w]here the infringement is the result of the participation and combined action(s) of one or more persons or entities, they are joint infringers and are jointly liable for the infringement." *On Demand Mach. Corp. v. Ingram Indus., Inc.*, 442 F.3d 1331, 1345 (Fed. Cir. 2006); *see also FMC Corp. v. Up-Right, Inc.*, 816 F. Supp. 1455, 1461 (N.D. Cal. 1993), *aff'd*, 21 F.3d 1073 (Fed. Cir. 1994). In joint infringement, multiple actors are involved in practicing the steps of the claimed method and thus a patent owner needs to show that the acts of one party are attributable to the other. *See Lyda v. CBS Corp.*, 838 F.3d 1331, 1338–39 (Fed. Cir. 2016). "A claim of joint infringement thus requires pleading facts sufficient to allow a reasonable inference that all steps of the claimed method are performed and either (1) one party exercises the requisite 'direction or control' over the others' performance or (2) the actors form a joint enterprise such that performance of every step is attributable to the controlling party." *Id.* at 1339; *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) ("[Courts] will hold an entity responsible for others' performance of method steps in two sets of circumstances: (1) where that entity directs or controls others' performance, and (2) where the actors form a joint enterprise."). "Proof that a defendant was part of a joint enterprise with another party or group of parties requires a showing of '(1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control.'" *IOENGINE, LLC v. PayPal*

7

*Hldgs., Inc.*, C.A. No. 18-452-WCB, 2019 WL 330515, at *1 (D. Del. Jan. 25, 2019) (quoting *Akamai*, 797 F.3d at 1023).

### B.  ME2C Fails to Adequately Plead Willful Infringement

Even ME2C's second attempt at alleging willful infringement falls far short of satisfying the requirements of *Iqbal* and *Twombly*. The First Amended Complaint relies on the same allegations from the original Complaint that ME2C interacted with NRG in 2012 and "identified its patents to NRG and explained the operation of its patented technology" (*compare* D.I. 130, ¶¶ 168-170, *with* D.I. 1, ¶¶ 133-135)—allegations that this Court already found insufficient to support ME2C's willfulness claims. *See* D.I. 110 at 10-11. Like the original Complaint, the First Amended Complaint also lumps four separate entities into its definition of "NRG" and fails to specify which individuals at which, if any, of these entities ME2C interacted with. *Id.*; *see also* D.I. 130. Not only does this fail to provide the notice required by the Supreme Court of the United States in *Twombly* and *Iqbal*, courts in this District have repeatedly held that pleadings of patent infringement claims against multiple defendants—even related corporate entities—do not properly state a claim where they allege infringing acts of the defendants as a group and fail to specify which defendant has performed any particular alleged infringing act. *See, e.g.*, *BlackBerry Ltd. v. Nokia Corp.*, C.A. No. 17-155-RGA, 2018 WL 1401330 (D. Del. Mar. 20, 2018); *T-Jat Sys. 2006 Ltd. v. Expedia, Inc. (DE)*, C.A. No. 16-581-RGA-MPT, 2017 WL 896988 (D. Del. Mar. 7, 2017); *N. Star Innovations, Inc. v. Toshiba Corp.*, C.A. No. 16-115-LPS-CJB, 2016 WL 7107230 (D. Del. Dec. 6, 2016); *M2M Sols. LLC v. Telit Commc'ns PLC*, C.A. No. 14-1103-RGA, 2015 WL 4640400 (D. Del. Aug. 5, 2015). Although these cases discuss claims of direct and indirect infringement, the reasoning applies equally here. ME2C asserts claims of willful infringement, but fails to provide any notice as to which specific defendant had knowledge of any Asserted Patent

8

or that its actions might infringe said Asserted Patent. At best, the First Amended Complaint can only be read as alleging pre-suit knowledge by an unspecified NRG entity of the '147 Patent—the only one of the Asserted Patents that issued prior to 2019, many years after the alleged interactions in 2012.[2] But nothing in the First Amended Complaint asserts that ME2C notified any NRG entity regarding the existence of the '147 Patent or any other Asserted Patent. *See* D.I. 130.

Even if ME2C sufficiently pled that any of the NRG entities had notice of any of the Asserted Patents, nothing in the First Amended Complaint alleges that ME2C notified NRG that any of their actions directly or indirectly infringed the Asserted Patents. *See Ansell Healthcare Prods. LLC v. Reckitt Benckiser LLC*, C.A. No. 15-CV-915-RGA, 2018 WL 620968, at *6 (D. Del. Jan. 30, 2018) (explaining that it is well established that "a party's pre-suit knowledge of the patent is not by itself sufficient to find willful misconduct"). ME2C has not, and cannot, allege that it notified any specific NRG entity that activities performed by that specific NRG entity infringed the Asserted Patents prior to the filing of this lawsuit.

ME2C's new willfulness allegations fare no better. First, ME2C's allegations of post-filing knowledge of the Asserted Patents are insufficient to support a claim of willful infringement in this Court. Regarding the Talen Motion to Dismiss, Judge Burke made clear that the Court "disagrees that a claim for willful infringement can stand if the defendant was unaware of the patent prior to the date that the complaint at issue was filed." D.I. 110 at n. 10 (citing *Välinge Innovation AB*, 2018 WL 2411218, at *9-13; *Illumina, Inc. v. BGI Genomics Co.*, C.A. No. 19-cv-03770-WHO, 2020 WL 571030, at *6 (N.D. Cal. Feb. 5, 2020); *VLSI Tech. LLC. v. Intel Corp.*,

_____

[2] The '147 Patent did not issue until May of 2012, and so depending on the timing of these alleged "interactions", none of the Asserted Patents may have existed at that time.

C.A. No. 18-966-CFC, 2019 WL 1349468, at *2 (D. Del. Mar. 26, 2019); *Adidas Am., Inc. v. Skechers USA, Inc.*, C.A. No. 3:16-cv-1400-SI, 2017 WL 2543811, at *4 (D. Or. June 12, 2017)).

Regarding the new Asserted Patents (i.e., the '225 Patent, '517 Patent, and '430 Patent), the First Amended Complaint asserts that "[i]t is reasonable to infer that NRG would have reviewed the prosecution history for the '114 and '147 patents and would be generally aware of other patents in the same family." D.I. 130 at ¶ 173. Notably, ME2C does not assert that NRG was, in fact, monitoring ME2C's patent applications. Instead, ME2C resorts to speculation because it cannot show any facts that NRG had knowledge of these patents, much less any alleged infringement thereof. Even if NRG were monitoring ME2C's patent activities, that alone is insufficient for a claim of willful infringement to survive a motion to dismiss. *See VLSI Tech. LLC v. Intel Corp.*, C.A. No. 18-0966-CFC, 2020 WL 3488584, at *5 (D. Del. June 26, 2020) ("Allegations about monitoring competition generally and about patents not asserted here do not plausibly establish that [defendant] had knowledge of infringement of the [asserted] patents."). That any NRG entity knew of the '147 Patent and '114 Patent and may have been monitoring ME2C's activity is not enough to plausibly allege a claim that any such NRG entity was willfully infringing the '225 Patent, '517 Patent, or '430 Patent.

The additional references to willfulness (*see, e.g.*, D.I. 130, ¶¶ 223) are nothing more than a formulaic recitation of the willful infringement elements, which are not enough to plead willfulness. ME2C's claims for willful infringement should, therefore, be dismissed. *See, e.g., Varian Med. Sys., Inc. v. Elekta AB*, C.A. No. 15-871-LPS, 2016 WL 3748772, at *8 (D. Del. July 12, 2016), *report and recommendation adopted*, C.A. No. 15-871-LPS, 2016 WL 9307500 (D. Del. Dec. 22, 2016).

10

**C.  ME2C's Allegations of Induced Infringement Are Still Deficient**

In the Report and Recommendation, Judge Burke noted that ME2C's claims of induced infringement in the original Complaint could not stand because "Counts One and Two of the Complaint (which allege infringement of the '114 patent and the '147 patent, respectively) only clearly accuse the [defendants] of directly infringing each of the patents." D.I. 110 at 7. In their briefing, ME2C argued that the following factual paragraphs were sufficient to allege induced infringement:

> 150. To the extent an Accused Coal Plant is owned by a subsidiary company, its parent (one or more of the named Coal Plant Defendants) also indirectly infringe(s) by inducing the subsidiary to perform the steps of the patented methods.

> 151. The parent companies do so by exercising control over subsidiaries, providing technical, administrative, logistical and financial services to subsidiaries, and/or negotiating standard form or bulk agreements for products and services related to mercury control.

D.I. 1, ¶¶ 150-151. Judge Burke disagreed, noting that "[e]ven if the two Counts of Plaintiffs' Complaint actually did include a sufficiently clear allegation that the [defendants] were being accused of induced infringement of the asserted patents (which they do not), the Complaint would still lack sufficient facts to make induced infringement allegations plausible as to these Defendants." D.I. 110 at 8, n.7. Specifically, Judge Burke found that these paragraphs "lack the requisite specificity to sufficiently allege induced infringement" because they "fail to identify which entities within these Defendant groups have actually induced infringement, by which actions they are said to have done so, and how such actions encouraged another to infringe or necessarily resulted in infringement by another entity." *Id.*

While ME2C's First Amended Complaint now appears to only purport to state a claim for induced infringement against NRG Energy Inc., it still fails to correct the deficiencies previously

identified by the Court, much less meet the standards required to survive a motion to dismiss. Nothing in the First Amended Complaint alleges that NRG Energy, Inc., or any other specific NRG entity, "knowingly induced infringement and possessed specific intent to encourage another's infringement." *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1363 (Fed. Cir. 2012). ME2C added only a single paragraph to each count of infringement alleging induced infringement, blanketly asserting that NRG Energy Inc. (and other unrelated entities) are "aware of the patents-in-suit" and encourage their unspecified "subsidiaries to infringe" by "taking part in the supply contract process . . . at coal fired power plants that directly infringe" and "signing, or encouraging their subsidiaries to sign" contracts that supply components of the accused methods. D.I. 130 ¶¶ 253, 287, 316, 345, 378. But as discussed above with respect to willful infringement, ME2C's First Amended Complaint fails to allege facts that show NRG Energy Inc. was aware of any of the Asserted Patents or that any NRG entity was allegedly infringing any of the Asserted Patents prior to the filing of the original Complaint. *See supra* § III.B. In fact, the First Amended Complaint makes no allegations that ME2C informed any NRG entity—much less NRG Energy, Inc.—of alleged infringement prior to service of the original complaint in this matter. *See id.*

ME2C's new factual allegations regarding induced infringement similarly fail to allege that NRG Energy, Inc. knew of any Asserted Patent, specifically intended any third party to infringe any claim of any Asserted Patent, or that any act of a third party constituted infringement. Those allegations broadly assert that "[a]s the parent of the other NRG entities, NRG Energy Inc. induces the other NRG entities to perform the steps of the patented methods" (D.I. 130 at ¶ 202), and cite generic activities of a corporate parent (e.g., "tak[ing] part in the decisions regarding supply contracts and influenc[ing] the other NRG entities to select suppliers" by virtue of its veto power) without any mention of NRG Energy Inc.'s knowledge or intent to encourage infringement of the

Asserted Patents in those alleged actions (*id.* at ¶¶ 201, 203). ME2C's claims of induced infringement must, therefore, be dismissed.

### D. ME2C's Continues to Fail to Adequately Plead Joint and Several Liability

ME2C does not assert claims of joint and several liability between NRG, Talen, and Vistra. D.I. 83 at 3; *see also* D.I. 110 at 6. The First Amended Complaint contains a single allegation that NRG is jointly and severally liable with Chem-Mod:

> 232. At least Defendants Vistra, NRG, and Talen have owned and/or operated Accused Coal Plants using Chem-Mod products to directly infringe the patents-in-suit and thus Vistra is jointly and severally liable with Chem-Mod, NRG is jointly and severally liable with Chem-Mod, and Talen is jointly and severally liable with Chem-Mod with respect to those plants.

D.I. 130, ¶ 232. However, ME2C provides no factual or legal explanation for why "NRG is jointly and severally liable with Chem-Mod." D.I. 130, ¶ 232. Without more, ME2C's claim of joint and several liability between NRG and Chem-Mod must be dismissed. *See Lyda*, 838 F.3d at 1339 ("A claim of joint infringement . . . requires pleading facts sufficient to allow a reasonable inference that all steps of the claimed method are performed and either (1) one party exercises the requisite 'direction or control' over the others' performance or (2) the actors form a joint enterprise such that performance of every step is attributable to the controlling party."). The remainder of ME2C's allegations make no mention of NRG, despite expressly calling out similarly situated "Coal Plant Defendants" such as Talen and Vistra.[3] *See* D.I. 130, ¶ 233; *see also* D.I. 130, , ¶¶ 214, 217, 220.

---

[3] Nor do ME2C's allegations regarding generic "operators of coal-fired power plants connected to an RC Facility" adequately identify NRG much less give notice of claims asserted against NRG. The First Amended Complaint and ME2C's Section 7.a Disclosures make clear that NRG is a "Coal Plant Defendant" who operates "Accused Coal Plants" rather than an "operator[] of coal-fired power plants connected to an RC Facility." D.I. 130 at 2, ¶ 198; Ex. 1 (ME2C's 7.a disclosures) at 3-4. Lumping NRG in with these other defendant groups is unclear and implausible. Moreover, "fusing the two Defendants as one is also problematic for Plaintiff's . . . claims." *M2M*

Even if ME2C had properly included NRG in the other claims of joint and several liability, those allegations still fail to show that NRG operated a joint enterprise with any of the other defendants. Proving joint and several liability via joint enterprise requires, *inter alia*, a showing of **both** "(2) a common purpose to be carried out by the group" and "(3) a community of pecuniary interest in that purpose, among the members. *Akamai*, 797 F.3d at 1023. The only allegation of a "common purpose" in the First Amended Complaint is that the joint enterprise seeks to "obtain[] the benefits of Section 45 tax credits." *See* D.I. 130 ¶¶ 214, 217, 220. However, the text of Section 45 expressly states that in determining the refined coal credits the coal must be "sold by the taxpayer . . . to an **unrelated person**." 28 U.S.C. § 45(e)(8)(A) (emphasis added). Thus, ME2C's assertions of "joint enterprise" or "common purpose" based on tax credits are called into doubt by the very text of the statute that governs those credits. Further, ME2C improperly conflates the second and third elements of a joint enterprise by asserting that the defendants "have a community of pecuniary interest in that purpose because they share in the benefits of those tax credits." *See* D.I. 130 ¶¶ 214, 217, 220. Allowing ME2C to argue that the "common purpose" may be as simple as obtaining a financial benefit—even if NRG could somehow benefit from tax credits taken by an "unrelated" company—would effectively read the second element out of a test that already separately requires a pecuniary benefit. *See VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1313 (Fed. Cir. 2014) (explaining that it is improper to collapse the four-factor test used for evaluating a request for a stay into a three-factor despite the similarities between factors). Thus, ME2C's claims of joint and several liability must be dismissed.

---

*Sols.*, 2015 WL 4640400, at *4 (granting 12(b)(6) motion to dismiss claims of induced infringement).

**E.  NRG Joins Talen's Motion to Dismiss Regarding ME2C's Failure to Establish MES Does Not Have Standing to Bring Suit and Failure to Provide Sufficient Basis for Joinder of Unrelated Defendants Under Section 299**

NRG joins portions of Talen's motions to dismiss subject to the following qualifications. NRG only joins the portions of the motions regarding the First Amended Complaint's failure to establish that MES Inc. is a "patentee" under Section 281 and failure to provide sufficient basis for joinder of eight unrelated groups of defendants. NRG agrees with and incorporates by reference the factual and legal arguments in the motions to dismiss to the extent those factual and legal arguments relate to these issues.

Because the First Amended Complaint fails to establish that Plaintiff MES Inc. is a "patentee" under Section 281, for all of the reasons discussed in Talen's motion to dismiss, NRG joins such motions to dismiss and respectfully requests that this Court dismiss Plaintiff MES Inc. from the First Amended Complaint. *See* D.I. 174.

Because the First Amended Complaint contains no allegations that NRG is jointly and severally liable with any other Coal Plant Defendants and improperly pleads joint and several liability between NRG and any combination of AJG, DTE, CERT, Chem-Mod, and the RC Defendants, for all of the reasons discussed in Talen's motion to dismiss and in Section III.D, *supra*, NRG joins such motions to dismiss and respectfully requests that Plaintiffs' allegations against NRG should be severed into a separate action under 35 U.S.C. § 299. *See* D.I. 174. NRG would not object to the continued coordination of the related cases for pre-trial purposes.

**F.  ME2C's Claims Should Be Dismissed With Prejudice**

This Court previously dismissed ME2C's claims for induced infringement and standing based on much of the same improper allegations repeated in the First Amended Complaint. *See* D.I. 110. ME2C avoided a ruling on their prior allegation of joint and several liability regarding

15

NRG by conceding the deficiencies and mooting the issue. *See* D.I. 83 at 1. Despite the Court giving ME2C an opportunity to correct the pleading deficiencies, ME2C still fails to plausibly and adequately plead these same issues. Thus, NRG requests that ME2C's claims for willful infringement,[4] induced infringement, standing of MES Inc., and joint and several liability be dismissed "with prejudice, as it is apparent that Plaintiff cannot satisfactorily amend its Complaint." *IPVenture Inc. v. Lenovo Grp. Ltd.*, No. C.A. 11-588-RGA, 2013 WL 126276, at *3 (D. Del. Jan. 8, 2013); *see also Bishop v. JP Morgan Chase & Co.*, C.A. No. 13-001-RGA, 2014 WL 1382393, at *5 (D. Del. Apr. 7, 2014) ("Because Plaintiff failed in his attempt to remedy the defects in his complaint, despite notice and his familiarity with the pleading requirements, granting him a second opportunity to amend his complaint would be futile."); *Citrix Sys., Inc. v. Avi Networks, Inc.*, 363 F. Supp. 3d 511, 525 (D. Del. 2019) (granting motion to dismiss a plaintiff's first amended complaint, filed after plaintiff had reviewed defendant's motion to dismiss the original complaint, because "any further amendment would be futile").

## IV.    CONCLUSION

For the reasons set forth above, NRG respectfully requests that the Court dismiss Plaintiffs' claims against NRG for willful infringement, against NRG Energy, Inc. for inducement of infringement, and against NRG for joint and several liability with other defendant groups with prejudice. For the reasons set forth above and in Talen's motion to dismiss, NRG also requests that this Court dismiss Plaintiff MES Inc. from the First Amended Complaint with prejudice and sever the NRG defendants into a separate action under 35 U.S.C. § 299.

---

[4] Although NRG did not previously move to dismiss ME2C's claims of willful infringement, those claims should still be dismissed with prejudice as the state of the facts, as discussed herein, show that ME2C cannot amend their allegations to satisfy the pleading requirements.

RICHARDS, LAYTON & FINGER, PA

Dated: August 6, 2020

/s/ *Frederick L. Cottrell, III*
Frederick L. Cottrell, III (#2555)

OF COUNSEL:

Tyler E. Cragg (#6398)
One Rodney Square
920 N. King Street

Paul R. Morico
Wilmington, DE 19801

Elizabeth Durham Flannery
(302) 651-7700

Ali Dhanani
cottrell@rlf.com

Thomas B. Carter, Jr.
cragg@rlf.com

BAKER BOTTS L.L.P.
One Shell Plaza
910 Louisiana Street

*Attorneys for Defendants*

Houston, TX 77002
*NRG Energy, Inc.,*

(713) 229-1234
*NRG Texas Power LLC,*

paul.morico@bakerbotts.com
*Midwest Generation EME, LLC,*

liz.flannery@bakerbotts.com
*and Midwest Generation, LLC*

ali.dhanani@bakerbotts.com
thomas.carter@bakerbotts.com

17

## CERTIFICATE OF SERVICE

I hereby certify that, on August 6, 2020, I caused to be served on the following counsel of

record true and correct copies of the foregoing document by the means indicated:

**VIA ELECTRONIC MAIL:**

James M. Lennon
DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE 19806
jlennon@devlinlawfirm.com

Bradley W. Caldwell
Jason D. Cassady
John Austin Curry
Justin T. Nemunaitis
CALDWELL CASSADY CURRY PC
2101 Cedar Springs Road, Suite 1000
Dallas, Texas 75201
bcaldwell@caldwellcc.com
jcassady@caldwellcc.com
acurry@caldwellcc.com
jnemunaitis@caldwellcc.com

*/s/ Tyler E. Cragg*
Tyler E. Cragg (#6398)