# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MIDWEST ENERGY EMISSIONS CORP. and MES INC., <br><br> Plaintiff, <br><br> v. <br><br> VISTRA ENERGY CORP., et al., <br><br> Defendants. | CIVIL ACTION NO. 1:19-cv-1334-RGA <br><br> **JURY TRIAL DEMANDED** |

**PLAINTIFFS' SESTION 7.a DISCLOSURES**

Pursuant to section 7.a of the proposed Scheduling Order, Plaintiffs Midwest Energy Emissions Corp. and MES Inc. ("ME2C") submits this disclosure of the accused product(s), including accused methods and systems, and its damages model, as well as the asserted patent(s) that the accused product(s) allegedly infringe(s), to Defendants Vistra Energy Corp., IPH, LLC, Dynegy Inc., Illinois Power Resources Generating, LLC, Dynegy Midwest Generation LLC, and Dynegy Miami Fort, LLC (collectively, "Vistra"); AEP Generation Resources Inc., Southwestern Electric Power Co., Cardinal Operating Company, LLC, and AEP Texas Inc. (collectively, "AEP"); NRG Energy, Inc., NRG Texas Power LLC, Midwest Generation EME, LLC, Midwest Generation, LLC (collectively, "NRG"); Talen Energy Corporation, Talen Energy Holdings, Inc., Brandon Shores LLC, Talen Generation LLC, and H. A. Wagner LLC (collectively, "Talen"), (Vistra, AEP, NRG, and Talen, are referred to collectively as "Coal Plant Defendants"); Arthur J. Gallagher & Co., Gallagher Clean Energy, LLC, and AJG Coal, LLC ("AJG"); DTE REF Holdings, LLC, DTE REF Holdings II LLC ("DTE"); CERT Coal Holdings LLC, CERT Holdings LLC, CERT Holdings 2018, LLC,

1

CERT Operations LLC, CERT Operations II LLC, CERT Operations III LLC, CERT Operations IV LLC, CERT Operations V LLC, CERT Operations RCB LLC ("CERT"); Chem-Mod LLC ("Chem-Mod"); and the additional named and unnamed entities referred to below as the "RC Defendants": AJG Iowa Refined Coal LLC, Joppa Refined Coal LLC, Thomas Hill Refined Coal LLC, Wagner Coaltech LLC, Walter Scott Refined Coal LLC, Louisa Refined Coal, LLC, Belle River Fuels Company, LLC, Arbor Fuels Company, LLC, Portage Fuels Company, LLC, and John Doe LLCs (all of these entities are referred to collectively as "Defendants").

ME2C submits these disclosures based upon information it has acquired to date, as it presently understands this information and the significance thereof, without yet having had the benefit of formal discovery from any other party in this case. Accordingly, ME2C reserves the right to modify, amend, retract, and/or supplement the disclosures made herein as additional evidence and information becomes available.

## I. IDENTIFICATION OF ACCUSED PRODUCTS

ME2C accuses each Coal Plant Defendant of infringing the '114 and '147 patents with respect to each coal-fired power plant owned, operated, and/or controlled by the Defendant in the United States where the coal-fired power plant combusts coal in a combustion chamber with bromine and/or bromide that has been added to the coal and/or that has been provided to the combustion chamber, and where a sorbent material comprising activated carbon is injected downstream of the combustion chamber (the "Accused Coal Plants").

The mercury control procedures used at coal-fired power plants can be maintained as confidential. Nonetheless, based on a reasonable investigation of information currently available to ME2C, ME2C reasonably believes that Defendants have performed the patented

methods without permission at the following plants at some time between the present and six years prior to the filing of this lawsuit.  Thus, these plants are examples of Accused Coal Plants.



The above recited list of exemplary Accused Coal Plants is not a limitation on ME2C's accusations of infringement, which include all facilities identified in response to ME2C's first interrogatory to the Coal Plant Defendants.

ME2C accuses each RC Defendant of infringing the '114 and '147 patents with respect to each coal-fired power plant in the United States that uses a sorbent material comprising activated carbon injected downstream of the combustion chamber, where the RC Defendant provides: (1) bromine and/or bromide for use on coal that will be provided to the combustion chamber of the coal-fired power plant; and/or (2) coal with added bromine and/or bromide for the coal-fired power plant. To the extent the RC Defendant owns, operates, controls, and/or supplies bromine or bromide to a facility that applies bromine or bromide to coal for use at such a coal-fired power plant, that facility is referred to as an "Accused RC Facility."

The identification and/or operation of these facilities is typically maintained as confidential.  Nonetheless, Based on a reasonable investigation of information currently available to ME2C, ME2C reasonably believes that RC Defendants have induced and/or contributed to infringement at the following coal-fired power plants at some time between the present and six years prior to the filing of this lawsuit.  Thus, at least these plants are the

locations of Accused RC Facilities:



The above recited list of exemplary Accused RC Facilities is not a limitation on ME2C's accusations of infringement, which include all facilities identified in response to ME2C's first common interrogatory to the RC Defendants and all coal-fired power plants identified in response to ME2C's first specific interrogatory to Chem-Mod.

## II. DAMAGES MODEL INFORMATION

ME2C is seeking monetary damages for Defendants' infringement of the asserted patents in an amount not less than a reasonable royalty. Methods that may be appropriate to calculate such damages include: (i) lost profits; (ii) price erosion; (iii) an analysis of the sales and history of ME2C's products and services; (iv) a per-unit royalty; (v) a per-megawatt royalty; (vi) a per-ton of coal royalty; (vii) the Nash-Bargaining Solution; (viii) the Analytical Method; (ix) an analysis of the costs and acceptability of implementing a non-infringing alternative; (x) an analysis of comparable licenses; (xi) an analysis of proxy products, services,

and/or systems; (xii) a Georgia-Pacific analysis; (xiii) analysis of the benefits to Defendants from, e.g., fly ash sales, improved equipment operation and longevity, reduced need for additives and/or sorbents, the ability to participate in tax credit programs; (xiv) the value of tax credits attributable to the patented technology; and (xv) a combination of some or all of the methods listed herein.

With respect to a lost profits model, ME2C sells bromine additives, activated carbon sorbents, and corresponding services. ME2C may rely on pricing models and the depreciation of prices for activated carbon and/or bromine additives over time (including depreciation of ME2C's prices and depreciation of prices paid by Defendants) to determine the amount of price erosion and appropriate profit margin. The calculated profit margin and information regarding the amount of bromine additives and activated carbon sorbents used and/or needed at each accused coal plant and coal plant attached to an accused RC facility may be used to determine the amount of profit lost due to infringement. The amount of bromine additives and activated carbon sorbents used and/or needed may be determined based on historical data from Defendants, and/or it may be estimated based on information about emission controls at each plant and the amount of coal burned or electricity generated.

Alternatively, ME2C is entitled to a reasonable royalty based on the value of the patented technology to each accused coal plant and accused RC facility. The reasonable royalty may be assessed as a royalty on the sale of fly ash, the value of refined coal tax credits, each MW/hr of electricity produced performing the infringing methods, each ton of coal burned while performing the infringing methods, and/or regulatory costs, fees, and fines avoided as a result of performance of the patented methods. To the extent the patented methods have provided value in multiple ways to a plant or RC facility (e.g., facilitating

5

increased fly ash sales, increased electricity production, and tax credit benefits), the royalty would be assessed on each of those benefits.

For example, a coal plant may have received tax credit related benefits (in the form of payments, refined coal prices, the value of coal additives, rent, etc.), the ability to sell fly ash instead of paying for disposal, and increased electricity production based on improved efficiency at the plant.  That value may be attributable to the patented technology.  If the Defendant alleges that its next best non-infringing alternative is to use a different method of mercury capture for regulatory compliance (e.g., activated carbon without a bromine additive), that alternative will have some cost difference as compared to the plant's costs while infringing.  That value would also be attributable to the patented technology.  Alternatively, that value may be assessed as a royalty base to which a rate is applied. The royalty rate may be based on consideration of comparable licenses, relevant proxies, and comparison of the patented methods against Defendants' alleged next best non-infringing alternative.  The royalty rate may be calculated as a percentage of the base or as a per unit fee (e.g. $ per MW/hr, ton of coal, or ton of fly ash).

Discovery may provide evidence of additional value and/or benefits attributable to the patented technology.  In addition, ME2C intends to rely on the opinions of one or more qualified experts who may have different opinions as to calculation of lost profits and/or a reasonably royalty.

Because this is an exceptional case, ME2C also seeks reasonable and necessary attorney's fees. To the extent the Defendants' conduct was and continues to be willful, ME2C seeks treble damages. To the extent allowable by law, ME2C seeks attorney's fees, costs, expenses, and pre- and post-judgment interest on these claims.  ME2C will provide additional

detail in its discovery responses as the case proceeds, and it anticipates providing an expert report on the subject of damages.

Dated: June 19, 2020

Respectfully submitted,

**CALDWELL CASSADY CURRY PC**

/s/ *Justin T. Nemunaitis*

**DEVLIN LAW FIRM LLC**
James M. Lennon (Bar No. 4570)
1526 Gilpin Avenue
Wilmington, Delaware 19806
Telephone: (302) 449-9010
Facsimile: (302) 353-4251
jlennon@devlinlawfirm.com

2121 N. Pearl St., Suite 1200
Dallas, Texas 75201
Phone: (214) 888-4848
(214) 888-4849 (*fax*)
Bradley W. Caldwell
Texas Bar No. 24040630
Jason D. Cassady
Texas Bar No.  24045625
John Austin Curry
Texas Bar No. 24059636
Justin T. Nemunaitis
Texas Bar No. 24065815
bcaldwell@caldwellcc.com
jcassady@caldwellcc.com
acurry@caldwellcc.com
jnemunaitis@caldwellcc.com

*Attorneys for Plaintiffs*
*Midwest Energy Emissions Corp. and MES Inc.*

## CERTIFICATE OF SERVICE

I certify that counsel of record is being served with a copy of the foregoing document via electronic mail on June 19, 2020.

/s/ *Justin T. Nemunaitis*
Justin T. Nemunaitis