IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MIDWEST ENERGY EMISSIONS CORP.
and MES INC.,

        Plaintiffs,

    v.

VISTA ENERGY CORP., et al.

        Defendants.

C.A. No. 19-1334-RGA-CJB

JURY TRIAL DEMANDED

PLAINTIFFS MIDWEST ENERGY EMISSIONS CORP. AND MES INC.'S
RESPONSE IN OPPOSITION TO THE MOTION TO DISMISS FILED BY TALEN

Dated: August 27, 2020


OF COUNSEL:

Bradley W. Caldwell
Texas Bar No. 24040630
Jason D. Cassady
Texas Bar No. 24045625
John Austin Curry
Texas Bar No. 24059636
Justin T. Nemunaitis
Texas Bar No. 24065815
CALDWELL CASSADY CURRY PC
2101 Cedar Springs Road, Suite 1000
Dallas, Texas 75201
Phone: (214) 888-4848
Fax: (214) 888-4849
bcaldwell@caldwellcc.com
jcassady@caldwellcc.com
acurry@caldwellcc.com
jnemunaitis@caldwellcc.com

DEVLIN LAW FIRM LLC
James M. Lennon (No. 4570)
1526 Gilpin Avenue
Wilmington, DE 19806
(302) 449-9010
jlennon@devlinlawfirm.com

*Attorneys for Plaintiffs Midwest Energy
Emissions Corp. and MES Inc.*

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................ 1

II.     NATURE AND STAGE OF THE PROCEEDINGS ....................................... 1

III.    SUMMARY OF THE ARGUMENT ............................................................... 1

        A.    ME2C Has Adequately Pled Willful Infringement with Respect to Talen ............. 1

        B.    ME2C Has Adequately Pled Induced Infringement by Talen Energy Corporation.
              1

        C.    ME2C Has Adequately Pled that the Refined Coal Defendants Are Liable for
              Direct Infringement, Having Entered into Joint Enterprises with the Respective
              Coal Plant Operators ........................................................................... 2

        D.    MES, Inc. Is a Proper Plaintiff. ........................................................... 2

        E.    The FAC Provides Sufficient Basis for Joinder Under 35 U.S.C. § 299 ............... 2

IV.    STATEMENT OF FACTS ................................................................................ 2

V.     LEGAL STANDARD ....................................................................................... 3

VI.    ARGUMENT ..................................................................................................... 3

        A.    ME2C Has Adequately Pled Willful Infringement with Respect to Talen ............. 3

        B.    ME2C Has Adequately Pled Induced Infringement by Talen Energy Corporation 8

        C.    ME2C Has Adequately Pled that the Refined Coal Defendants Are Liable for
              Direct Infringement, Having Entered into Joint Enterprises with the Respective
              Coal Plant Operators ........................................................................... 9

        D.    MES, Inc. Is a Proper Plaintiff ............................................................ 10

        E.    The FAC Provides Sufficient Basis for Joinder Under 35 U.S.C. § 299 ............. 10

VII.   CONCLUSION ................................................................................................ 12

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009)..................................................................................................... 3

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007)..................................................................................................... 3

*BioMerieux, S.A. v. Hologic, Inc.*
  No. CV 18-21 (LPS), 2018 WL 4603267 (D. Del. Sept. 25, 2018)............................ 6

*BlackBerry Ltd. v. Nokia Corp.*
  No. 17-CV-155-RGA, 2018 WL 1401330 (D. Del. Mar. 20, 2018) ........................... 4

*Callwave Commc'ns LLC v. AT & T Mobility LLC*
  No. CV 12-1701-RGA, 2014 WL 5363741 (D. Del. Jan. 28, 2014) ........................... 4

*Clouding IP, LLC v. Amazon.com, Inc.*
  No. CA 12-641-LPS, 2013 WL 2293452 (D. Del. May 24, 2013)............................. 4

*CyberFone Sys., LLC v. Cellco P'ship*
  No. CIV. 11-827-SLR, 2012 WL 1509504 (D. Del. Apr. 30, 2012) ........................ 11

*Erickson v. Pardus*
  551 U.S. 89 (2007)....................................................................................................... 3

*Huawei Technologies Company v. T-Mobile US, Inc.*
  2017 WL 1129951 (E.D. Tex. Feb. 21, 2017) ........................................................... 4

*In re Apple Inc.*
  650 F. App'x 771 (Fed. Cir. 2015)............................................................................ 10

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*
  681 F.3d 1323 (Fed. Cir. 2012)............................................................................. 3, 8

*In re EMC Corp.*
  677 F.3d 1351 (Fed. Cir. 2012)............................................................................... 10

*IOENGINE, LLC v. PayPal Holdings, Inc.*
  No. CV 18-452-WCB, 2019 WL 330515 (D. Del. Jan. 25, 2019) ............................ 7

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*
  869 F.3d 1372 (Fed. Cir. 2017).................................................................................. 5

*Reagent Chemical & Research, Inc. v. Eurotarget S.R.L.*
   2016 WL 8200435 (M.D. Penn. May 23, 2016) ........................................................ 9

*Rearden LLC v. Walt Disney Co.*
   293 F. Supp. 3d 963 (N.D. Cal. 2018) .................................................................. 5

*Shire ViroPharma Inc. v. CSL Behring LLC*
   No. CV 17-414, 2018 WL 326406 (D. Del. Jan. 8, 2018) ........................................ 3

*Smartflash LLC v. Apple, Inc.*
   No. 6:13-CV-447, 2014 WL 11071873 (E.D. Tex. Apr. 4, 2014) ............................ 11

*Spruill v. Gillis*
   372 F.3d 218 (3d Cir. 2004) .................................................................................. 3

*Sunoco Partners Marketing & Terminals L.P. v. Powder Springs Logistics, LLC*
   2019 WL 8641303 (D. Del. Aug. 7, 2019) ........................................................ 7, 9

*Välinge Innovation AB v. Halstead New England Corp.*
   Civil Action No. 16-1082-LPS-CJB, 2018 WL 2411218 (D. Del. May 29, 2018) ............... 3, 4

*Walker Digital, LLC v. Facebook, Inc.*
   852 F. Supp. 2d 559 (D. Del. 2012) ..................................................................... 5

**Statutes**

35 U.S.C. § 299 .................................................................................................. 2, 10, 11

**Rules**

Fed. R. Civ. P. 12(b) ............................................................................................... 7

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 3

Fed. R. Civ. P. 19 .................................................................................................. 10

Fed. R. Civ. P. 21 .................................................................................................. 11

## I.     INTRODUCTION

Talen's motion seeks dismissal of various aspects of ME2C's First Amended Complaint. With respect to each of these issues, the Complaint provides allegations that meet the applicable pleading standard.  Accordingly, ME2C respectfully requests that the motion be denied.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

On June 18, 2020, the Court issued a Report & Recommendation (the "R&R") granting various Defendants' motions to dismiss and allowing ME2C to amend its complaint.  D.I. 127. On July 15, 2020, ME2C filed its First Amended Complaint ("FAC"), which provides additional factual allegations related to its infringement theories, and also includes three additional patents that issued after ME2C filed its original complaint.

## III.   SUMMARY OF THE ARGUMENT

### A.  ME2C Has Adequately Pled Willful Infringement with Respect to Talen

ME2C alleges that it provided notice of the patents at least by filing the original complaint and by providing a draft of the FAC to Defendants before filing the FAC.  Nothing more is required to plead willful infringement.  In addition, The FAC contains additional allegations based directly on the Court's R&R demonstrating that Talen's infringement has been willful before even the filing of the original complaint.

### B.  ME2C Has Adequately Pled Induced Infringement by Talen Energy Corporation.

Contrary to Talen's assertions, the FAC alleges a that Talen Energy Corporation exercises sufficient control over its subsidiaries to support a claim of induced infringement.

**C. ME2C Has Adequately Pled that the Refined Coal Defendants Are Liable for Direct Infringement, Having Entered into Joint Enterprises with the Respective Coal Plant Operators**

Talen's attacks against ME2C's joint enterprise infringement theory should be disregarded as waived. Regardless, the FAC alleges that the relationship between coal plant operators and refined coal operators is much more involved than a simple supplier/customer relationship such that the refined coal operators are liable for participating in a joint enterprise.

**D. MES, Inc. Is a Proper Plaintiff.**

As a former exclusive licensee, MES Inc. is entitled to recover damages for past infringement. Accordingly, MES, Inc. should not be dismissed.

**E. The FAC Provides Sufficient Basis for Joinder Under 35 U.S.C. § 299**

Talen argues that joinder is improper if the Court dismisses ME2C's joint enterprise theory. But § 299 does not require allegations of joint enterprise or joint infringement and the Federal Circuit has approved joinder under circumstances similar to this case. Regardless, severance at this time would be premature.

## IV. STATEMENT OF FACTS

ME2C has accused Talen of willfully infringing the patents-in-suit at least because Talen has continued to infringe after receiving ME2C's complaints for infringement. D.I. 130 at ¶ 224. ME2C also alleges that Talen Energy Corporation induces its subsidiaries to infringe by exercising sufficient control over their selection of mercury control processes. D.I. 130 at ¶ 205. ME2C also alleges that Talen is jointly and severally liable with various refined coal operators because they work together to perform the patented methods at the accused plants. D.I. 130 at ¶ 232-234.

2

## V.    LEGAL STANDARD

When evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court is required to accept as true all material allegations in the complaint.  *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 570).  "[T]he plausibility requirement is not akin to a 'probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal' that the defendant is liable for the misconduct alleged."  *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1341 (Fed. Cir. 2012) (quoting *Twombly*, 550 U.S. at 556).

## VI.    ARGUMENT

### A.  ME2C Has Adequately Pled Willful Infringement with Respect to Talen

ME2C alleges that Talen received notice of the original patents and the acts constituting infringement at least as of the filing of the original complaint on July 17, 2019, and notice of the additional patents and acts constituting infringement at least when they received a draft of the FAC on June 29, 2020.  D.I. 130 at ¶ 224.[1]  Nothing more is required at the pleading stage.  *See Välinge Innovation AB v. Halstead New England Corp.*, Civil Action No. 16-1082-LPS-CJB, 2018 WL 2411218, at *13 (D. Del. May 29, 2018); *see also Shire ViroPharma Inc. v. CSL*

---

[1] Both of these dates predate the filing of the FAC on July 15, 2020.

3

*Behring LLC*, No. CV 17-414, 2018 WL 326406, at *3 (D. Del. Jan. 8, 2018) (approving willfulness allegations in amended complaint based on notice provided in original complaint); *BlackBerry Ltd. v. Nokia Corp.*, No. 17-CV-155-RGA, 2018 WL 1401330, at *3 (D. Del. Mar. 20, 2018) (same); *Clouding IP, LLC v. Amazon.com, Inc.*, No. CA 12-641-LPS, 2013 WL 2293452, at *4 (D. Del. May 24, 2013) ("For purposes of pleading willful infringement, there appears to be little practical difference between a pre-complaint notice letter informing a defendant about a patentee's allegation of infringement and a subsequently-superceded original complaint formally alleging infringement.").[2]  Because ME2C has alleged that Defendants continue to infringe despite having knowledge of the patents and the acts constituting infringement, there is nothing more for the Court to do in response to these Rule 12(b) motions. *See Valinge Innovation AB v. Halstead New England Corp.*, No. CV 16-1082-LPS-CJB, 2018 WL 2411218, at *9 (D. Del. May 29, 2018) (explaining that a patentee need not plead any of the *Read* enhancement factors including, e.g., the duration of a defendant's misconduct).

---

[2] One Court has dismissed willfulness allegations based on the notice provided in an original complaint. *See Callwave Commc'ns LLC v. AT & T Mobility LLC*, No. CV 12-1701-RGA, 2014 WL 5363741, at *1 (D. Del. Jan. 28, 2014).  However, this is the sort of rigid rule that the Supreme Court would later criticize in *Halo*.  One of the purposes of an amended complaint is to account for new facts that have arisen or been discovered after the filing of the original complaint.  Because each act of infringement is a new tort that damages the plaintiff, the fact that a Defendant continues to infringe even after receiving a complaint for patent infringement is precisely the type of new fact appropriately added to an amended complaint.  It simply should not be the case that once a complaint is on file, the accused infringer is forever absolved of any subsequent egregious conduct.  *See also Huawei Technologies Company v. T-Mobile US, Inc.*, 2017 WL 1129951, at *4 (E.D. Tex. Feb. 21, 2017) ("*Halo* recognizes that 'culpability is generally measured against the knowledge of the actor at the time of the challenged conduct.' Culpability can arise pre- or post-suit—the scienter requirement is the same in either instance. The contrary conclusion would permit the very type of culpable behavior admonished by the Supreme Court in *Halo* simply because of timing.").

Talen disagrees with this straightforward analysis based on *Valinge*, 2018 WL 2411218. According to Talen, an original complaint that lacks adequate allegations of willful infringement cannot provide notice for alleging willfulness in a later amended complaint. This is incorrect. In *Valinge*, the plaintiff failed to allege direct or indirect infringement in an original complaint. *Id.* at *13. Those defects were corrected, at least in part, in an amended complaint. However, the Court dismissed the willfulness claim in the amended complaint because it found that the Defendants could not have been willful until they received that amended complaint. Nonetheless, the Court granted leave to file another amended complaint that could now allege that Defendants were on notice of the acts constituting infringement. *Id.* In this case, because Defendants never disputed that ME2C's original complaint states a claim for direct infringement, that complaint provides adequate notice for willfulness purposes.

Regardless, if the Court determines that a patent owner filing an amended complaint for willful infringement must allege that the Defendant had knowledge of the patents and acts constituting infringement prior to the filing of the original complaint, the FAC satisfies this requirement as well. A plaintiff need not provide detailed factual support for an allegation of pre-suit knowledge of the patent. *See Walker Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d 559, 564 (D. Del. 2012) (finding the following statement to properly allege notice of a patent: "It is believed that Zappos was on notice of the ′056 patent and Walker Digital's claims prior to April 11, 2011 through Zappos' interactions with representatives of Walker Digital"). A plaintiff may allege notice of a patent based on circumstantial evidence. *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1380 (Fed. Cir. 2017) (overturning dismissal based on allegations that Defendant hired employees with knowledge of the patent). A plaintiff may also allege notice on information and belief. *Rearden LLC v. Walt Disney Co.*, 293 F. Supp. 3d 963, 976 (N.D. Cal.

2018) (explaining that a "plaintiff may plead facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible") (internal citations omitted).

For example, in *BioMerieux, S.A. v. Hologic, Inc.*, multiple entities worked together to infringe a patent. No. CV 18-21 (LPS), 2018 WL 4603267, at *5 (D. Del. Sept. 25, 2018). One of those entities had attempted to invalidate the European counterpart to the patents-in-suit. Based on that conduct, the patentee inferred that the entity had knowledge of the U.S. patents, and based on the close relationship between the entities, that they all had knowledge of the patents-in-suit. This allegation was found to meet the pleading requirement. *Id.*

In this case, ME2C previously alleged that, prior to implementation of the EPA's MATS regulations, it met with employees of Talen's predecessor PPL to discuss the potential use of ME2C's patented technology at accused coal plants. The Court found: "From the allegations set out above, it is possible that the same PPL employees who met with ME2C in 2013 worked within the PPL business unit that eventually became Talen. But in order for this to be plausible, Plaintiffs should plead facts in their Complaint that help to make this link." D.I. at 11. The FAC pleads those additional facts.

The FAC alleges that at least one of the PPL employees that met with ME2C continued on with Talen, just as the Court considered. D.I. 130 at ¶¶ 178-181. It further alleges:

> In addition, operation of a coal-fired power plant can be dangerous and complicated, requiring a team of qualified engineers. Similarly, ensuring compliance with mercury capture regulations requires managing complex chemical reactions occurring at the plant. Accordingly, it is reasonable to infer that even when Talen took over control of the plants at issue, it would have retained additional individuals knowledgeable of plant operations and mercury control processes at the plants. Thus, it is likely that at least some of those additional individuals that met with and/or received information about ME2C's

6

patented technology would have remained with Talen as of 2015, or would have shared information related to mercury control at the plants with other Talen personnel and management as Talen is now responsible for complying with state and federal mercury regulations.

D.I. 130 at ¶ 182.  Taken as true, these allegations state a claim for willful infringement.

Finally, Talen also argues that the neither the original complaint nor the FAC provide adequate notice of infringement because the complaint accused all coal plants that use bromine and activated carbon instead if specifying plants by name.  As an initial matter, this argument was waived as Talen did not previously raise it.  *See Sunoco Partners Marketing & Terminals L.P. v. Powder Springs Logistics, LLC*, 2019 WL 8641303 at *3 (D. Del. Aug. 7, 2019) (explaining that it is reversible error for a Court to consider a defense or objection in a Rule 12(b) motion that was available to the party but omitted from an earlier filed motion Rule 12(b) motion).  The argument is also beside the point as ME2C has asserted method claims.  The accused conduct is the performance of the claimed method steps, not the existence of a particular named coal plant.  Talen does not dispute that ME2C adequately identified the method steps constituting infringement.

In addition, the patents at issue in this case are written to be understood by a person of ordinary skill in the art of power plant mercury capture.  Talen undoubtedly has employees versed in that subject.  Talen is fully capable of understanding the claims of the asserted patents and the conduct relevant to those claims.  Indeed, most Courts do not require any specific allegations regarding the conduct at issue provided that the patents are properly identified.  *See, e.g., IOENGINE, LLC v. PayPal Holdings, Inc.*, No. CV 18-452-WCB, 2019 WL 330515, at *7 (D. Del. Jan. 25, 2019) (explaining that to plead willful infringement, a patentee need only allege knowledge of the patent and that the filing of a complaint provides such knowledge).

7

**B.  ME2C Has Adequately Pled Induced Infringement by Talen Energy Corporation**

ME2C alleges that "As the parent of the other Talen entities, Talen Energy Corporation induces the other Talen entities to perform the steps of the patented methods."  D.I. 130 at ¶ 204. It further alleges—and Talen does not contest the adequacy of these allegations—that each Talen defendant directly infringes.  Talen now contends that the FAC's reference to "other Talen entities," improperly lumps those parties together.  However, those are the parties accused of direct infringement, not induced infringement.  To state a claim for inducement, a patentee need not identify *any* direct infringers by name.  *Bill of Lading*, 681 F.3d at 1336 ("To state a claim for indirect infringement, therefore, a plaintiff need not identify a specific direct infringer if it pleads facts sufficient to allow an inference that at least one direct infringer exists.").  Because Talen has waived any right to challenge the sufficiency ME2C's direct infringement allegations against each of the Talen entities, it cannot now argue that FAC fails to allege the existence of a direct infringer.

Next, Talen argues that the FAC fails to allege specific intent with respect to Talen Energy Corporation.  As noted above, Talen Energy Corporation has been on notice of the patents and the acts constituting direct at least as of the filing of the original complaint and FAC. ME2C further alleges that, despite that knowledge, Talen Energy Corporation continues to exercise control of the other Talen entities causing them to infringe.  D.I. 130 at ¶ 205.  In particular, ME2C alleges, "Talen Energy Corporation negotiates or exercises veto power over decisions to sign supply contracts for activated carbon and bromine-containing additives. In so doing, Talen Energy Corporation takes part in the decisions regarding supply contracts and influences the other Talen entities to select suppliers for the plant, including those that provide bromine-containing additives and activated carbon."  *Id.*  Taken as true, these allegations state

that Talen Energy Corporation performs affirmative acts that cause the other Talen Defendants to infringe.  Nothing more is required to state a claim for induced infringement.

### C. ME2C Has Adequately Pled that the Refined Coal Defendants Are Liable for Direct Infringement, Having Entered into Joint Enterprises with the Respective Coal Plant Operators

Although the refined coal Defendants previously challenged ME2C's joint enterprise claims, Talen did not.  Thus, this argument is waived.  *See Sunoco*, 2019 WL 8641303 at *3.

Regardless, ME2C has stated a claim for joint enterprise against the refined coal defendants.  According to Talen, its relationship with refined coal suppliers is merely a supplier/customer relationship.  Mot. at 16-17.  For example, Talen argues that the refined coal operators do not control the combustion of coal, and the coal plants do not control the chemicals on the coal.  *Id.*  The FAC alleges otherwise.

The Belle River Fuels contract is instructive, and ME2C has alleged that this contract is representative of contracts signed by the other Refined Coal Defendants (D.I. 130 at ¶ 95).  It demonstrates that the refined coal operator does have control over the combustion of coal because it can sue the coal plant operator for breach of contract if it fails to combust the refined coal.  D.I. 130-6 at 8.2(d). Similarly, the coal plant could sue the refined coal operator for breach of contract for failure to provide adequate bromine on the coal.  D.I. 130-6 at 8.2(a),(b), 8.3.  Thus, these entities are not merely in a simply supply relationship, rather, they both control key aspects of the process for claiming the benefits of refined coal tax credits.  *See Reagent Chemical & Research, Inc. v. Eurotarget S.R.L.*, 2016 WL 8200435 at *2 (M.D. Penn. May 23, 2016), the patent at issue covered a method of shooting targets.  The patentee alleged that various shooting galleries formed joint enterprises with their customers to perform the common purpose of facilitating a shooting activity.  This was sufficient to state a claim for joint enterprise infringement.  Id. at *6 ("an agreement has been formed, with a common purpose of facilitating a

shooting activity. The parties have a pecuniary interest, insomuch as the shooting facilities

generate profits from their customers' dues and/or payments to use the facilities. . . .  Finally, all

involved have an equal right to a voice in the direction of the enterprise, insomuch as they may

control whether and when the shooting activity takes place.").

### D.  MES, Inc. Is a Proper Plaintiff

As Talen notes, prior to April 24, 2017, MES, Inc. was an exclusive licensee with the

right to recover past damages.  ME2C would not want to prevail in this case only to have

Defendants refuse to pay damages for conduct occurring prior to April 24, 2017 because MES,

Inc. is not a party to the case.  MES Inc. has asserted an interest in the case, and not alleged that

it's right to recover past damages terminated on April 24, 2017.  Thus, the Court may not assume

that to be the case.  While the actual question of past damages will turn on the applicable

contract language, at the pleading stage, ME2C has adequately alleged that MES, Inc. is a proper

party.  See also Fed. R. Civ. P. 19 (stating that joinder is required for a party that claims an

interest relating to the subject of the action and is so situated that disposing of the party may as a

practical matter impair or impede the person's ability to protect the interest).

### E.  The FAC Provides Sufficient Basis for Joinder Under 35 U.S.C. § 299

Talen argues that ME2C has not alleged joint and several liability, but it appears to

conflate joint infringement with joint and several liability.  Joinder under 35 U.S.C. § 299 does

not require allegations of joint infringement or joint enterprise infringement.  *See In re EMC

Corp.*, 677 F.3d 1351, 1356 (Fed. Cir. 2012) (interpreting "jointly, severally, or in the

alternative," which was not modified by the AIA).  Courts have allowed joinder under § 299

based on allegations of induced infringement or where one Defendant supplies an important

aspect of the infringement to other Defendants.  For example, in *In re Apple Inc.*, the Federal

Circuit allowed joinder of Google, Amazon, and various cell phone manufacturers where some

10

of the infringement theories were based on the fact that Google and Amazon supplied software for the accused cell phones.  650 F. App'x 771, 775 (Fed. Cir. 2015); *see also Smartflash LLC v. Apple, Inc.*, No. 6:13-CV-447, 2014 WL 11071873, at *4 (E.D. Tex. Apr. 4, 2014) (permitting joinder between Apple and app developers that used Apple software kit).

Joinder is similarly appropriate here.  ME2C alleges that Talen is jointly and severally liable with Chem-Mod, and certain of the Refined Coal Defendants that operate at Talen plants.  D.I. 130 at ¶ 232-233.  In particular, ME2C alleges that each of the RC Defendants establish a location a particular coal plant (e.g., Defendant Wagner Coaltech LLC for Talen's Herbert A. Wagner Generating Station, (D.I. 130 at ¶ 39), and use Chem-Mod products to produce refined coal there (D.I. 130 at ¶ 234).  Accordingly, ME2C has alleged joint and several liability for purposes of 35 U.S.C. § 299.

In addition, Talen's motion is procedurally improper, as a motion to dismiss is not the proper vehicle for seeking severance.  *See* Fed. R. Civ. P. 21.  Even if the Court were to consider discretionary severance, given that Talen has already agreed to consolidation for pretrial purposes, the Court should deny this request as moot.  *See CyberFone Sys., LLC v. Cellco P'ship*, No. CIV. 11-827-SLR, 2012 WL 1509504, at *1 (D. Del. Apr. 30, 2012) (denying as moot motion to sever because trial was not yet imminent).

In sum, Talen has not demonstrated that the FAC violates 35 U.S.C. § 299.  Even if the Court were to consider discretionary severance, it should do so closer to trial, after a proper motion for severance has been filed, and with input from all parties, not based on a couple paragraphs in one Defendant's partial motion to dismiss.

## VII.   CONCLUSION

For all of the foregoing reasons, and given the lenient standard applied at this stage in the case, the court should deny the Motion to Dismiss.  If the Court is inclined to dismiss some aspect of the FAC, ME2C requests leave to amend.

Dated:  August 27, 2020                                    Respectfully submitted,

**DEVLIN LAW FIRM LLC**

*/s/ James M. Lennon*
James M. Lennon (No. 4570)
1526 Gilpin Avenue
Wilmington, Delaware 19806
Telephone: (302) 449-9010
Facsimile: (302) 353-4251
jlennon@devlinlawfirm.com

**CALDWELL CASSADY CURRY PC**          Bradley W. Caldwell
2121 N. Pearl St., Suite 1000                    Texas Bar No. 24040630
Dallas, Texas 75201                                   Jason D. Cassady
Phone: (214) 888-4848                              Texas Bar No. 24045625
(214) 888-4849 (*fax*)                                 John Austin Curry
bcaldwell@caldwellcc.com                       Texas Bar No. 24059636
jcassady@caldwellcc.com                         Justin T. Nemunaitis
acurry@caldwellcc.com                            Texas Bar No. 24065815
jnemunaitis@caldwellcc.com

*Attorneys for Plaintiffs*
*Midwest Energy Emissions Corp.*
*and MES Inc.*

12

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that all counsel of record have been served with this document

via the Court's CM/ECF system on August 27, 2020.

*/s/ James M. Lennon*
James M. Lennon

13