# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MIDWEST ENERGY EMISSIONS CORP.
and MES INC.,

        Plaintiffs,

  v.

VISTA ENERGY CORP., et al.

        Defendants.

C.A. No. 19-1334-RGA-CJB

**JURY TRIAL DEMANDED**

## PLAINTIFFS MIDWEST ENERGY EMISSIONS CORP. AND MES INC.'S RESPONSE IN OPPOSITION TO THE MOTION TO DISMISS FILED BY THE MOVING REFINED COAL DEFENDANTS

Dated: August 27, 2020


OF COUNSEL:

Bradley W. Caldwell
Texas Bar No. 24040630
Jason D. Cassady
Texas Bar No. 24045625
John Austin Curry
Texas Bar No. 24059636
Justin T. Nemunaitis
Texas Bar No. 24065815
**CALDWELL CASSADY CURRY PC**
2101 Cedar Springs Road, Suite 1000
Dallas, Texas 75201
Phone: (214) 888-4848
Fax: (214) 888-4849
bcaldwell@caldwellcc.com
jcassady@caldwellcc.com
acurry@caldwellcc.com
jnemunaitis@caldwellcc.com

DEVLIN LAW FIRM LLC
James M. Lennon (No. 4570)
1526 Gilpin Avenue
Wilmington, DE 19806
(302) 449-9010
jlennon@devlinlawfirm.com

*Attorneys for Plaintiffs Midwest Energy*
*Emissions Corp. and MES Inc.*

## <u>TABLE OF CONTENTS</u>

I.    NATURE AND STAGE OF THE PROCEEDINGS ........................................................ 1

II.    SUMMARY OF THE ARGUMENT ............................................................................ 2

    A.  ME2C's Use of Group Names Is Proper............................................................ 2

    B.  ME2C Adequately Pled Induced Infringement.................................................. 2

    C.  ME2C Adequately Pled Contributory Infringement.......................................... 2

    D.  ME2C Has Adequately Pled Joint Enterprise Infringement. ............................. 2

    E.  ME2C Has Adequately Pled Direct Infringement ............................................. 3

    F.  ME2C Has Adequately Pled Willful Infringement............................................ 3

III.  STATEMENT OF FACTS........................................................................................... 3

IV.  LEGAL STANDARD .................................................................................................. 3

V.    ARGUMENT ............................................................................................................... 4

    A.  Defendants Fail to Show That ME2C's Use of Group Names
Creates a Lack of Notice of Its Asserted Claims. ........................................... 4

        1.    The Moving Refined Coal Defendants Waived Their Right to
File a 12(b) Motion Objecting to ME2C's Use of Group Names to
Plead Induced and Contributory Infringement. ................................... 4

        2.    ME2C's use of Group Names Provides Adequate Notice. .............. 5

    B.  ME2C Has Adequately Pled Induced Infringement. ................................. 8

    C.  The FAC Has Adequately Pled Contributory Infringement. ................................. 12

    D.  The FAC Has Adequately Pled Joint Enterprise Infringement............................. 15

    E.  The FAC Has Adequately Pled Direct Infringement............................................ 18

    F.  The FAC Has Adequately Pled Willful Infringement. ........................................... 19

VI.  CONCLUSION ........................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Acantha LLC v. Depuy Synthes Sales, Inc.*
No. 15-CV-1257, 2016 WL 8201781 (E.D. Wis. July 28, 2016) ............................................. 7

*Akamai Techs., Inc. v. Limelight Networks, Inc.*
797 F.3d 1020 (Fed. Cir. 2015) ...................................................................................... 15, 16

*Align Tech., Inc. v. 3Shape A/S*
339 F.Supp.3d 435 (D. Del. 2018) ..................................................................................... 5, 6

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ................................................................................................................ 4

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) ................................................................................................................ 4

*Clouding IP, LLC v. Amazon.com, Inc.*
No. CA 12-641-LPS, 2013 WL 2293452 (D. Del. May 24, 2013) ......................................... 19

*Erickson v. Pardus*
551 U.S. 89 (2007) .................................................................................................................. 4

*Groove Digital, Inc. v. King.com, Ltd.*
Civil Action No. 1:18-cv-836, 2018 WL 6168615 (D. Del. Nov. 26, 2018) ............................ 5

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*
681 F.3d 1323 (Fed. Cir. 2012) ........................................................................................ 4, 13

*INVISTA North America S.a.r.l. v. M & G USA Corp.*
2013 WL 3196817 (D.Del. June 25, 2013) ........................................................................... 14

*IOENGINE, LLC v. PayPal Holdings, Inc.*
No. CV 18-452-WCB, 2019 WL 330515 (D. Del. Jan. 25, 2019) ........................................... 5

*Lucent Techs., Inc. v. Gateway, Inc.*
580 F.3d 1301 (Fed. Cir. 2009) ........................................................................................... 13

*Mayne Pharma International Pty Ltd. v. Merck & Co., Inc.*
Civil Action No. 15–438–LPS–CJB, 2015 WL 7833206 (D. Del. Dec. 3, 2015) .................... 8

*N. Star Innovations, Inc. v. Toshiba Corp.*
No. CV 16-115-LPS-CJB, 2016 WL 7107230 (D. Del. Dec. 6, 2016) .................................... 8

*Neology, Inc. v. Kapsch Trafficcom IVHS, Inc.*
   No. CV 13-2052-LPS, 2014 WL 4675316 (D. Del. Sept. 19, 2014) ........................................ 7

*Promos Techs., Inc. v. Samsung Elecs. Co.*
   No. CV 18-307-RGA, 2018 WL 5630585 (D. Del. Oct. 31, 2018) ........................................... 7

*Reagent Chemical & Research, Inc. v. Eurotarget S.R.L.*
   2016 WL 8200435 (M.D. Penn. May 23, 2016) ........................................................ 16, 17, 18

*Shire ViroPharma Inc. v. CSL Behring LLC*
   No. CV 17-414, 2018 WL 326406 (D. Del. Jan. 8, 2018) ...................................................... 19

*Spruill v. Gillis*
   372 F.3d 218 (3d Cir. 2004) ................................................................................................... 3

*Sunoco Partners Marketing & Terminals L.P. v. Powder Springs Logistics, LLC*
   2019 WL 8641303 (D. Del. Aug. 7, 2019) ....................................................................... 5, 13

*Välinge Innovation AB v. Halstead New England Corp.*
   Civil Action No. 16-1082-LPS-CJB, 2018 WL 2411218 (D. Del. May 29, 2018) ................. 19

## Statutes

35 U.S.C. § 271(c) .......................................................................................................... 13, 14

## Rules

Fed. R. Civ. P. 12(b) ............................................................................................................... 4

Fed. R. Civ. P. 12(b)(6) ........................................................................................................... 3

Fed. R. Civ. P. 12(g)(2) ........................................................................................................... 4

This Court dismissed ME2C's original complaint against the refined coal defendants based on insufficient allegations of intent and knowledge for ME2C's indirect infringement theories. ME2C's First Amended Complaint ("FAC") includes over thirty additional paragraphs of factual allegations demonstrating that the refined coal defendants have knowledge of their customers use of activated carbon through the testing process and as a result of operating a refined coal facility on-site at a power plant, and that they intend for their customers to use activated carbon so that they can qualify for and continue to obtain refined coal tax credits.

In fact, the refined coal defendants now admit that refined coal operators could be subject to claims of indirect infringement based on what they refer to as "post-emissions control" testing. Mot. at 8. Defendants mistakenly argue that the FAC does not allege this type of testing. They are wrong; it does. D.I. 130 at ¶¶ 86-88. This fact alone demonstrates that ME2C has stated a claim for indirect infringement.

Moreover, ME2C also alleges that these Defendants have directly infringed by performing "post-emission control" testing. Defendants do not deny that they have done so, they merely hypothesize that some companies could perform a different type of testing. Because the Court must accept the allegations in the FAC as true, ME2C has also stated a claim for direct infringement.

## I.      NATURE AND STAGE OF THE PROCEEDINGS

On June 18, 2020, the Court issued a Report & Recommendation (the "R&R") granting various Defendants' motions to dismiss and allowing ME2C to amend its complaint. D.I. 127. On July 15, 2020, ME2C filed its First Amended Complaint ("FAC"), which provides additional factual allegations related to its infringement theories, and also includes three additional patents that issued after ME2C filed its original complaint.

1

## II.     SUMMARY OF THE ARGUMENT

### A.  ME2C's Use of Group Names Is Proper

The Moving Refined Coal Defendants allege that it is improper to group similarly situated Defendants under group names.  This argument was waived, is contrary to law, and disregards the fact that the FAC asserts the same infringement claims against each of the Moving Refined Coal Defendants such that there is no lack of notice as to ME2C's infringement theories.

### B.  ME2C Adequately Pled Induced Infringement

The Moving Refined Coal Defendants allege that they could only induce infringement if they perform post-emission control certification testing for section 45 refined coal tax credits. They further argue that the FAC does not allege this type of testing.  They are wrong.  The FAC also provides additional independent bases claims of induced infringement.

### C.  ME2C Adequately Pled Contributory Infringement

The Moving Refined Coal Defendants argue that they do not contribute to infringement by coal plant operators because those coal plant operators could stop injecting activated carbon. However, the FAC does not allege that such an approach is viable, and thus the Court may not assume that Defendants' factual allegations are correct.  In fact, the FAC alleges the opposite; this supposed non-infringing alternative is not available to the coal plant operators at issue in this case because it would be non-economical or result in plant shut-down.  Because the Court must accept these allegations as true, ME2C has stated a claim for contributory infringement.

### D.  ME2C Has Adequately Pled Joint Enterprise Infringement

ME2C alleges joint enterprise infringement based on the fact that each RC Defendant and each coal plant control a key part of the process for receiving the benefits of refined coal tax credits.  Defendants argue that to state a claim for joint enterprise infringement, both parties must have equal control over the entire process.  Defendants' assertion cannot be correct as it would

2

collapse joint enterprise infringement into simple direct infringement or direction and control infringement.  Defendants attack other aspects of ME2C's joint enterprise theory, but these attacks are also misguided.

### E.  ME2C Has Adequately Pled Direct Infringement

ME2C alleges that the Moving Refined Coal Defendants directly infringe by performing each step of the asserted claims during Section 45 certification testing.  Defendants do not dispute that they perform each step, but they posit that it might be possible to achieve certification testing without performing the carbon step.  Because the Court must accept ME2C's allegations as true, Defendants assertions cannot justify dismissal.

### F.  ME2C Has Adequately Pled Willful Infringement.

ME2C alleges that it provided notice of the patents at least by filing the original complaint and by providing a draft of the FAC to Defendants before filing the FAC.  Nothing more is required to plead willful infringement.

## III.    STATEMENT OF FACTS

ME2C alleges that each of the Moving Refined Coal Defendants directly infringes the patents-in-suit by performing the patented methods during Section 45 certification testing.  D.I. 130 at ¶ 84-88.  It further alleges that the indirectly infringe by inducing and contributing to the infringement of coal plant operators.  D.I. 130 at ¶ 87-108.  More detailed descriptions of the patented technology were provided in the parties' prior briefing and are not repeated here.

## IV.    LEGAL STANDARD

When evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court is required to accept as true all material allegations in the complaint.  *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

3

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 570).  "[T]he plausibility requirement is not akin to a 'probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal' that the defendant is liable for the misconduct alleged."  *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1341 (Fed. Cir. 2012) (quoting *Twombly*, 550 U.S. at 556).

## V.   ARGUMENT

### A.  Defendants Fail to Show That ME2C's Use of Group Names Creates a Lack of Notice of Its Asserted Claims

As to all of the Moving Refined Coal Defendants other than Chem-Mod (for which ME2C did not use a group name), Defendants assert that the complaint is deficient because ME2C used group names to refer to similarly situated groups of Defendants instead of separately listing the name of each Defendant in the group.  The Moving Refined Coal Defendants waived this argument by failing to raise it in their original motion to dismiss.  They are also wrong that this drafting decision renders the complaint deficient.

#### 1.   The Moving Refined Coal Defendants Waived Their Right to File a 12(b) Motion Objecting to ME2C's Use of Group Names to Plead Induced and Contributory Infringement.

Rule 12(g)(2) prohibits a party from raising a defense or objection in a Rule 12(b) motion that was available to the party but omitted from an earlier filed motion.  Fed. Civ. P. 12(g)(2).  It is reversible error for a Court to consider such a defense or objection.  *Sunoco Partners Marketing & Terminals L.P. v. Powder Springs Logistics, LLC*, 2019 WL 8641303 at *3 (D. Del.

4

Aug. 7, 2019).  In their original motion to dismiss, the Moving Refined Coal Defendants raised

no objection to ME2C's use of group names.[1]  Accordingly, this argument is waived.

### 2.    ME2C's use of Group Names Provides Adequate Notice.

Courts in this district have held that a complaint may plead infringement using group

names.  For example, in *Align Tech., Inc. v. 3Shape A/S*, the complaint used the term "3Shape" to

refer to the 3Shape entities named as Defendants.  The Defendants argued that this was

improper.  Chief Judge Stark disagreed, explaining: "[the plaintiff] is alleging that both of the

Defendants did everything. . . . The allegations must at this stage, be taken as true. Time will tell

if the plaintiff can prove them."  *Align Tech., Inc. v. 3Shape A/S*, 339 F.Supp.3d 435, 447 (D.

Del. 2018); *see also Groove Digital, Inc. v. King.com, Ltd.*, Civil Action No. 1:18-cv-836, 2018

WL 6168615, at *1 (D. Del. Nov. 26, 2018) ("[A] complaint that collectively refers to

defendants meets Rule 8's pleading standard if 'it can be reasonably inferred that each and every

allegation is made against each individual defendant.'").[2]

In this case, ME2C used group names to refer to the Moving Refined Coal Defendants.

For example, when listing the Defendants, the complaint states: "DTE REF Holdings, LLC, DTE

REF Holdings II LLC ("DTE")."  D.I. 130 at page 2.  Below, the complaint uses the defined

---

[1] Defendants did criticize the use of the term "RC Defendants" in the context of ME2C's joint infringement allegations, but only insofar as Defendants argued that the complaint was vague as to the relationship between the RC Defendants and coal plant operators.  D.I. 56 at 16. Defendants did not, for example, assert that they lacked notice as which of the DTE entities were referred to by the name "DTE."  Notably, Defendants have abandoned this criticism of ME2C's joint enterprise theory in the present motion.  Mot. at 16.

[2] Defendants cite *T-Jat Sys. 2006 Ltd. v. Expedia, Inc.* and *M2M Sols. LLC v. Telit Commc'ns PLC*, for a contrary conclusion, but these older decisions are contrary to the weight of authority. *See IOENGINE, LLC v. PayPal Holdings, Inc.*, No. CV 18-452-WCB, 2019 WL 330515, at *11 (D. Del. Jan. 25, 2019) (Bryson, J.) (noting a split of authority and explaining that he recent decisions in the *Align* and *Groove Digital* cases are more persuasive).

term "DTE" to refer to these same entities to avoid needing to restate "DTE REF Holdings, LLC, DTE REF Holdings II LLC." By stating, e.g., "AJG, DTE, CERT, Chem-Mod, and the RC Defendants operate RC facilities that receive coal, add bromine and/or bromide such as CaBr2 to the coal, and then provide that 'refined' coal to a coal-fired power plant that injects a sorbent material comprising activated carbon downstream of the combustion chamber," (D.I. 130 at ¶ 206), ME2C has provided notice that each of the Defendants included in those group names are accused of the acts constituting infringement. This is precisely the type of drafting approach approved in *Align Tech.* Accordingly, Defendants have failed to show that the complaint is deficient.

Moreover, even if a Plaintiff were required to copy and paste defendant names instead of using group names or use particular phrases to indicate that group names apply to all members of the group, such rules could not impact the *plausibility* of the allegations. At most, Defendants assert that they lack notice as to what is accused, but they did not even raise that defense in their original motion to dismiss. The fact that Defendants have been able to address the substance of ME2C's allegations indicates that the complaint satisfies Rule 8's requirement for "a short and plain statement of the claim showing that the pleader is entitled to relief." As one Court has explained in response to a similar motion:

> Rule 8 does not require a heightened pleading standard for patent infringement actions. In this case, Plaintiff's complaint gives Defendants notice of the various patent infringement claims asserted against them and that the claims arise from the alleged infringement of [the patents]. Plaintiff need not extensively elaborate on the details of each individual defendant to comply with Rule 8. The activity of the multiple defendants is so intertwined that no one from the outside could possibly separate the different subsidiaries' alleged infringing conduct. There is no mystery as to what Plaintiff claims Defendants did, and Defendants can readily identify the nature of the case. Whether each defendant did or did not infringe on the patents that Plaintiff ascribes to all defendants is something that will emerge either in the course of the mandatory up-front disclosure under Rule 26(a) or

> through discovery or both. In the meantime, Plaintiff's allegations sufficiently
> state a claim for patent infringement.

*Acantha LLC v. Depuy Synthes Sales, Inc.*, No. 15-CV-1257, 2016 WL 8201781, at *2 (E.D.

Wis. July 28, 2016).

Some Courts have dismissed complaints where the use of a group name and boilerplate

statements of infringement create ambiguity as to what conduct is accused.  For example, in

*Promos Techs., Inc. v. Samsung Elecs. Co.*, No. CV 18-307-RGA, 2018 WL 5630585, at *3

(D. Del. Oct. 31, 2018), the complaint defined various US and foreign entities under a group

name and accused them all of making, using, offering to sell, or selling the infringing products

within the United States, or importing them into the United States.  The Court granted a motion

to dismiss as to those allegations because the use of such disjunctive pleading made it unclear

which Defendants were accused of which acts of infringement.  *Id.*  Similarly, in *Neology, Inc. v.*

*Kapsch Trafficcom IVHS, Inc.*, No. CV 13-2052-LPS, 2014 WL 4675316, at *6 (D. Del.

Sept. 19, 2014), the patent owner lumped together unrelated defendants that sold different

products and engaged in different activities related to indirect infringement.  Here, there is no

such ambiguity.  ME2C has accused all of the Moving Refined Coal Defendants[3] of directly and

indirectly infringing by performing the patented method steps, operating refined coal facilities,

and providing refined coal to coal plants that perform the patented method steps.  Indeed, the

Moving Refined Coal defendants acknowledged that they fully understood these allegations in

their original motion to dismiss.  D.I. 56 at 11 ("The alleged activities of the Moving Refined

Coal Defendants relate exclusively to the production and sale of Refined Coal.  And the

_____

[3] The one exception is with respect to Defendant Chem-Mod for which ME2C has not used a
group name and has articulated separate accused conduct related to Chem-Mod.  Defendants
have not separately attacked ME2C's allegations against Chem-Mod.

Complaint is specific in alleging that Refined Coal provides bromine to the furnace.") (internal citation omitted).

Accordingly, ME2C has provided adequate notice of its allegations.  If the Court nonetheless concludes that the complaint is deficient for some Defendants, ME2C requests leave to amend the complaint.  Dismissal with prejudice on this basis would be unduly harsh given that this argument was not previously raised, and that it could be resolved with a straightforward amendment to the complaint.  *See, e.g., N. Star Innovations, Inc. v. Toshiba Corp.*, No. CV 16-115-LPS-CJB, 2016 WL 7107230, at *2 (D. Del. Dec. 6, 2016) (citing *Mayne Pharma International Pty Ltd. v. Merck & Co., Inc.*, Civil Action No. 15–438–LPS–CJB, 2015 WL 7833206 (D. Del. Dec. 3, 2015)).

## B.  ME2C Has Adequately Pled Induced Infringement.

The Court previously dismissed the complaint because it "does not sufficiently explain why if these Defendants 'tailor' the amount of bromide added to the coal, they must necessarily know and intend that the coal plants will go on to perform the Activated Carbon Step."  D.I. 110 at 14.  It also found that ME2C's allegations regarding tax credit testing and regulatory requirements failed to demonstrate that the Defendants had knowledge of the downstream use of carbon.  *Id.* at 14 n. 12.  The FAC alleges that the Refined Coal Defendants "must necessarily know and intend that the coal plants will go on to perform the step of injecting activated carbon." D.I. 130 at ¶ 100.  Taking this statement as true, ME2C has adequately alleged induced infringement.

The FAC provides additional allegations that explain how and why the Moving Refined Coal Defendants know and intend for coal plants to perform the step of injecting activated carbon.  For example, it explains that, in order for the Moving Refined Coal Defendants to obtain the benefits of Section 45 tax credits, they must perform Section 45 certification testing.  D.I.

8

130 at ¶ 84. That is, they must demonstrate that use of their refined coal at a particular plant will provide the mercury reduction required under the statute.[4] *Id.* at ¶ 85.

The FAC explains that there are multiple techniques for performing Section 45 certification testing. *Id.* at ¶ 86-88. "Pre-emission control" testing tests the amount of mercury emitted from refined coal combustion without regard to the emission control equipment used at a particular plant. *Id.* at ¶ 87. This approach may be appropriate if the refined coal is prepared by removing atoms of mercury from the coal. With this type of refined coal, the operator need only compare mercury emissions between refined and non-refined coals to demonstrate mercury reduction. *Id.* The FAC alleges—and the Court must accept as true—that the Defendants do not refine coal in this manner, nor do they rely on "pre-emission control" testing. *Id.*

In contrast, "post-emission control" testing depends on the use of a plant's emission control equipment, including its use of activated carbon injection. *Id.* at ¶ 88. This approach is appropriate when the refined coal is prepared by adding chemicals to the coal to boost performance of emission control equipment (i.e., activated carbon injection), as opposed to removing atoms of mercury from the coal. With this type of refined coal, "pre-combustion control" testing would fail to demonstrate any reduction in mercury because all of the mercury atoms remain in the coal. *Id.* at ¶ 87. "Post-emission control" testing, is performed on-site or using a combustor that simulates a plant's emission control equipment. The operator compares the amount of mercury exiting this emission control equipment after combusting refined and non-refined coal.

_____

[4] The Moving Refined Coal Defendants note that a party may qualify for Section 45 tax credits by demonstrating reduction in pollutants other than mercury. This fact is irrelevant as ME2C has alleged that Defendants rely on mercury reduction testing. D.I. 130 at ¶ 85.

9

The FAC alleges that Defendants prepare refined coal by adding chemicals to the coal, not by removing atoms of mercury.  Thus, when they perform Section 45 certification testing, they determine whether a given coal plant uses activated carbon injection, and they rely on that usage to perform "post-emission control" testing.  *Id.* at ¶ 87-88 ("On information and belief, for coal-fired power plants that use activated carbon injection, AJG, DTE, CERT, Chem-Mod, and the RC Defendants demonstrate qualified emission reduction for those plants by adding activated carbon sorbent downstream of the combustion chamber during the certification testing.").  This certification testing remains valid only for the coal plant under the conditions of the certification test.  *Id.*  Thus, the Moving Refined Coal Defendants must know and intend for the coal plant to continue to inject activated carbon during normal operation so that they can continue to receive the benefits of refined coal tax credits.  *Id.* at ¶ 106.

In addition, the FAC alleges that, either through contractual obligations or financial incentives, once a refined coal system is installed at a plant, the coal plant operator cannot simply stop injecting activated carbon.  *Id.* at ¶ 98.  Because the particular refined coal used at an accused coal plant has been formulated to work with the activated carbon injection system at the plant, turning off that activated carbon injection system would result in mercury regulation violations.  *Id.* at ¶ 98 ("Were a plant to stop operating its activated carbon injection system, it could face fines that would destroy the economic incentives for dealing with a refined coal provider, or be shut down.").  The FAC alleges that the Moving Refined Coal Defendants are aware of this fact, and thus intend for coal plant operators to perform activated carbon injection after combusting the refined coal.  *Id.* at ¶¶ 98-100.

Defendants apparently acknowledge that the facts listed above would state a claim for induced infringement, and they mistakenly assert that the FAC fails to allege that the Moving

Refined Coal Defendants perform post-emission control testing.[5]  Mot. at 8 ("A coal-fired power

plant only needs to continue to operate an activated carbon system if the certification for refined

coal tax credits is obtained using the "post-emissions control" method, which is one of several

different certification methods permitted under Section 45. The FAC does not plead that any

Refined Coal Defendant certified eligibility using the "post-emissions control" method"); Mot. at

10 (arguing that the FAC provides insufficient facts to infer that Defendants perform post-

emission control testing).  However, they fail to acknowledge that the FAC specifically alleges

that they do perform post-emission control testing and that they specifically inject activated

carbon during the testing.  D.I. 130 at ¶ 87-88.  Thus, ME2C has stated a claim for induced

infringement.

        The FAC also alleges additional support for this claim.  *See, e.g., id.* at ¶¶ 90-104.  It

alleges that the Moving Refined Coal Defendants have advertised the benefits of refined coal and

specifically targeted marketing efforts towards plants that use activated carbon injection systems.

*Id.* at ¶ 97.  In particular, it alleges that the Moving Refined Coal Defendants advertise that

refined coal can result in reduced carbon costs and the ability to sell fly ash instead of paying for

disposal.  *Id.* at ¶ 96 ("In addition, the use of high quantities of activated carbon injection can

discolor the fly ash produced by a coal-fired power plant. This may prevent the plant from

selling the fly ash to cement producers, and instead require it to take on the cost of disposing of

the fly ash. Providing bromine and/or bromide additives onto the coal combusted at a coal-fired

power plant can reduce, the quantity of activated carbon required for mercury capture and thus

---

[5] The phrase "post-emission control" testing is one coined by Defendants.  While this term does not appear in the FAC, as explained above, the FAC alleges that the Defendants rely on this type of testing.

preserve the plant's ability to sell fly ash."); *see also id.* at ¶ 116 ("AJG CFO Douglas Howell

has explained, 'the reason why [coal-fired power plants] participate in these [Section 45 Tax

Credit] projects is that they've got a financial incentive to participate in it, but they also receive

the improved environmental results basically for free and they get a better ash and favorable

operating results.'").  Taken as true, these allegations indicate that the Moving Refined Coal

Defendants know and intend for coal plants to use refined coal with activated carbon injection.

The FAC also alleges that, once a refined coal facility is installed at a plant, the plant

operator and refined coal operator must coordinate regarding the amount of bromine and

activated carbon being used.  This may be for economic and technical reasons.  For example, the

refined coal contract between Defendant Belle River Fuels LLC and the Belle River Power Plant

requires the coal plant operator to report the amount of activated carbon in use to Belle River

Fuels.  D.I. 130-6 at sec. 8.2(e), exhibit C.  ME2C alleges that this contract is representative of

the contracts entered into by other Moving Refined Coal Defendants.  *Id.* at ¶ 95.  ME2C also

alleges that the Moving Refined Coal Defendants coordinate with coal plant operators to ensure

that the amount of bromine used is appropriate for the amount of mercury in the current batch of

coal and the current amount of activated carbon being added.  *Id.* at ¶ 91, 102-103.

### C.  The FAC Has Adequately Pled Contributory Infringement

The Court previously dismissed ME2C's claims for contributory infringement after

finding that it failed to allege that the Defendants "know that this coal has no substantial non-

infringing use (i.e., that it cannot reasonably be used for purposes other than to be injected with

activated carbon)."  The FAC alleges:

> [W]hen AJG, DTE, CERT, Chem-Mod, and/or one of the RC Defendants
> provides refined coal on the conveyance leading to the combustion chamber of a
> coal-fired power plant with an activated carbon injection system, AJG, DTE,
> CERT, Chem-Mod, and the RC Defendants know that this refined coal has been
> specifically tailored and certified for that plant, and that the provided refined coal

> has no substantial non-infringing use (i.e., it cannot reasonably be used for
> purposes other than to be combusted at the plant where sorbent comprising
> activated carbon will later be injected).

D.I. 130 at ¶ 107.  The FAC also explains that the refined coal is formulated and certified for a

particular plant based on the assumption that the plant will continue to inject activated carbon

(*id.* at ¶ 86-89), and why the coal plant must combust the coal and continue injecting activated

carbon (*id.* at ¶ 98, 107-108, D.I. 130-6 at 8.2(d)).  Taken as true, these allegations state a claim

for contributory infringement.  Defendants' arguments to the contrary are unavailing.

First, Defendants contend that the FAC fails to allege what the movants sell or to whom.

Mot. at 13.  This argument was waived for failure to include it in their original motion to

dismiss.  *Sunoco Partners*, 2019 WL 8641303 at *3.  Moreover, the FAC does allege that the

moving refined coal Defendants contribute to infringement by providing refined coal to coal-

fired power plants that use activated carbon injection systems, i.e., plants that directly infringe.

D.I. 130 at ¶ 107.  Nothing more is required at the pleading stage.  *In re Bill of Lading*, 681 F.3d

at 1336 ("To state a claim for indirect infringement, therefore, a plaintiff need not identify a

specific direct infringer if it pleads facts sufficient to allow an inference that at least one direct

infringer exists.").  Indeed, the Federal Circuit has upheld jury verdicts of indirect infringement

premised on direct infringement by unknown parties.  *E.g., Lucent Techs., Inc. v. Gateway, Inc.*,

580 F.3d 1301, 1318 (Fed. Cir. 2009).

Second, Defendants argue that the FAC fails to allege intent to infringe based on their

post-emission control testing argument.  Mot. at 13.  As explained above, ME2C has alleged that

Defendants do perform post-emission control testing, thus this argument must fail.  Moreover,

"[i]ntent to cause infringement is not a requirement of contributory infringement under 35 U.S.C.

§ 271(c)."  *See e.g., INVISTA North America S.a.r.l. v. M & G USA Corp.*, 2013 WL 3196817, at

*13 n. 12 (D.Del. June 25, 2013).  Rather, ME2C need only allege that the Defendants knowingly provide refined coal "especially made or especially adapted for use in an infringement, and not a staple article or commodity of commerce suitable for substantial noninfringing use."  35 U.S.C. § 271(c).  ME2C has alleged that the refined coal at issue is specifically tested and formulated for use with activated carbon injection, and that it has no substantial non-infringing use.  D.I. at ¶¶ 84-88, 107.

Defendants next argue that the FAC fails to allege lack of non-infringing alternatives because a coal plant operator could turn off activated carbon injection.  This is wrong as well.  The FAC alleges that the Moving Refined Coal Defendants formulate a specific refined coal on a per plant basis.  This process is based on the assumption that the coal plant operator will continue to provide activated carbon injection.  Given this background a plant cannot simply turn off activated carbon injection.  *See* D.I. at ¶ 98 ("Were a plant to stop operating its activated carbon injection system, it could face fines that would destroy the economic incentives for dealing with a refined coal provider, or be shut down.").  Taken as true, the FAC states a claim for contributory infringement.

Defendants also argue that the FAC "continually state[s] that the power plants may 'unilaterally reduce' their use of activated carbon."  However, for support, they cite only a paragraph that alleges precisely the opposite conclusion:

> [I]f the plant were to unilaterally reduce its activated carbon injection rate, or AJG, DTE, CERT, Chem-Mod, and the RC Defendants were to unilaterally reduce the amount of bromine added to the coal, this could hinder the plant's ability to comply with state and federal mercury regulations and/or the certification process for section 45 tax credits. Thus, AJG, DTE, CERT, Chem-Mod, and the RC Defendants coordinate with coal-fired power plants by keeping each other aware of their respective bromine and activated carbon usage rates.

14

D.I. 130 at ¶ 91.  This paragraph explains why the plants at issue *do not* unilaterally reduce activated carbon injection rates as doing so would result in prohibitive fines, plant shut-down, or loss of section 45 certification.  *See also id.* at 98.  Thus, the FAC adequately alleges that turning off activated carbon injection is not an available non-infringing alternative.

Finally, Defendants argue that "as sold and delivered," refined coal could be used for a purpose other than infringement.  For support, they cite the refined coal contract attached to the complaint as stating that the refined coal supplier Belle River Fuels is permitted to sell refined coal to a third party if the Belle River Power Plant does not purchase it.  Mot. at 15.  This is beside the point.  The fact that Belle River Fuels may be permitted to sell rejected refined coal to a third party is not an affirmative allegation that the Belle River *Power Plant* has a non-infringing use for the refined coal "as sold and delivered."  Indeed, the contract requires the Belle River Power Plant to combust all received coal.  D.I. 130-6 at 8.2(d) ("Buyer hereby covenants that it will use all Refined Coal purchased hereunder solely for use as fuel in the Belle River Power Plant.").  It also notes that the Belle River Power Plant uses activated carbon.  D.I. 130-6 at sec. 8.2(e), exhibit C.  Because ME2C alleges that plants cannot simply turn off activated carbon, and that the Belle River contract is representative of contracts entered into by all of the Moving Refined Coal Defendants, D.I. 130 at ¶¶ 95, 108, this document provides further support for ME2C's contributory infringement claims.

**D.  The FAC Has Adequately Pled Joint Enterprise Infringement.**

To plead joint enterprise infringement, a patent owner must allege: "(1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1023 (Fed. Cir. 2015).  Under

these circumstances, the members of the joint enterprise may be considered a single entity for purposes of determining direct infringement.  *Id.*

For example, in *Reagent Chemical & Research, Inc. v. Eurotarget S.R.L.*, 2016 WL 8200435 at *2 (M.D. Penn. May 23, 2016), the patent at issue covered a method of shooting targets.  The patentee alleged that various shooting galleries formed joint enterprises with their customers to perform the common purpose of facilitating a shooting activity.  This was sufficient to state a claim for joint enterprise infringement.  *Id.* at *6 ("an agreement has been formed, with a common purpose of facilitating a shooting activity. The parties have a pecuniary interest, insomuch as the shooting facilities generate profits from their customers' dues and/or payments to use the facilities. . . .  Finally, all involved have an equal right to a voice in the direction of the enterprise, insomuch as they may control whether and when the shooting activity takes place.")

ME2C has adequately alleged that the Moving Refined Coal Defendants are involved in a joint enterprise with respect to each coal plant operator that receives refined coal and uses activated carbon injection.  The Belle River Fuels contract is instructive.  It demonstrates that Belle River Fuels LLC has contracted with a coal plant operator to sell refined coal to the operator.  It further confirms that the parties to the agreement share the common purpose and pecuniary interest of benefiting from Section 45 tax credits, i.e., Belle River Fuels obtains those benefits directly from the IRS, and the coal plant operator obtains those benefits through reduced mercury regulation compliance costs and the other "Mercury Benefits," defined in the contract. D.I. 130-6 at sec. 8.2(e), exhibit C.  Finally, it demonstrates that both parties to the agreement maintain an equal right of control in the enterprise.  The refined coal company maintains physical control over the application of bromine, and the coal plant maintains physical control over the combustion of the coal and operation of the mercury control systems including activated

16

carbon injection.  Both of these elements are equally important for achieving the common purpose.  Moreover, the agreement requires the refined coal operator to continue applying bromine to coal (D.I. 130-6 at 8.2(a),(b), 8.3), requires the coal plant to continue combusting the refined coal (D.I. 130-6 at 8.2(d)), curtails each party's right to terminate the agreement (D.I. 130-6 at 24-25), and requires the parties to coordinate in the performance of the enterprise (D.I. 130-6 at 8.2(d)).  Because ME2C has alleged that this contract is representative of contracts signed by the other Moving Refined Coal Defendants (D.I. 130 at ¶ 95), ME2C has stated a claim for joint enterprise.  Defendants' arguments to the contrary are unavailing.

First, Defendants contend that ME2C failed to provide all of the contracts at issue.  But ME2C need only allege the existence of the contracts (*see* D.I. 130 at ¶¶ 95, 214, 217, 220), it is not required to access Defendants confidential information as a prerequisite to filing suit.

Second, Defendants argue that there can be no common purpose because coal plants cannot claim section 45 tax credits.  However, ME2C has not alleged that coal plants claim section 45 tax credits, it has claimed that it shares in the benefits of those tax credits, i.e., reduced mercury compliance costs and other financial benefits that the Moving Refined Coal Defendants are only able to provide because they receive the value of Section 45 tax credits.  *See* D.I. 130 at ¶¶ 115, 214, 217, 220.

Third, Defendants argue that there can be no community of pecuniary interest because there is no single shared income.  For support, Defendants cite a non-patent, Texas state court opinion.  Such a showing is not required at the pleading stage in a patent case.  *See, e.g., Reagent*, 2016 WL 8200435 at *6 (finding that patentee alleged a common pecuniary interest based on the fact that shooters must pay dues to shoot at a gallery).  Moreover, ME2C has alleged more than a mere exchange of money for refined coal.  Rather, ME2C alleges that the

Moving Refined Coal Defendants share the value of Section 45 tax credits with coal plant operators by providing free or reduced price mercury control, paying rent, and providing the other benefits enumerated in the Belle River contract. *See* D.I. 130 at ¶¶ 95, 214, 217, 220.

Fourth, Defendants argue that the FAC fails to allege an equal right of control because it fails to allege that the Moving Refined Coal Defendants and coal plant operators can both control all aspects of the operation. The law is not so rigid. If joint enterprise liability required all parties to perform all of the steps of a patented method, there would be no need for this theory as the parties would simply be independently liable for direct infringement. *See, e.g., Reagent*, 2016 WL 8200435 at *6.

Here, both the refined coal companies and the coal plants have equal control over the common purpose of benefiting from Section 45 tax credits, they just divide the responsibility for achieving that goal. This control amounts to more than a simple supplier/customer relationship. As noted above, the refined coal operator must continue to supply refined coal (D.I. 130-6 at 8.2(a),(b), 8.3), and the coal plant must use that coal for the common purpose, i.e., it must combust the coal only at the plant using activated carbon (D.I. 130-6 at 8.2(d)). Failure of either party to support the common purpose could result in a breach of contract. This sufficiently demonstrates an equal right to a voice in the direction of the enterprise.

### E. The FAC Has Adequately Pled Direct Infringement.

As stated in Defendants' motion, the FAC alleges that each of the Moving Refined Coal Defendants performs each step of the asserted method claims. *See, e.g.,* D.I. 130 at ¶¶ 265-66. In particular, it alleges that they combust refined coal with added bromide and then inject activated carbon sorbent during Section 45 Certification testing. Nothing more is required to state a claim for direct infringement.

18

Defendants do not dispute that ME2C has provided adequate notice of its direct infringement theories, they only contend that it is theoretically possible that a party could perform Section 45 testing without infringing.  Mot. at 19.  Notably, they do not actually contend that they perform this non-infringing form of testing.  Regardless, this argument cannot support dismissal, because the Court must accept as true that Defendants perform each of the claimed method steps.  D.I. 130 at ¶¶ 87-88, 265.

### F.  The FAC Has Adequately Pled Willful Infringement.

ME2C alleges that the Moving RC Defendants received notice of the original patents and the acts constituting infringement at least as of the filing of the original complaint on July 17, 2019, and notice of the additional patents and acts constituting infringement at least when they received a draft of the FAC on June 29, 2020.  D.I. 130 at ¶ 224.  Nothing more is required at the pleading stage.  *See Välinge Innovation AB v. Halstead New England Corp.*, Civil Action No. 16-1082-LPS-CJB, 2018 WL 2411218, at *13 (D. Del. May 29, 2018); *see also Shire ViroPharma Inc. v. CSL Behring LLC*, No. CV 17-414, 2018 WL 326406, at *3 (D. Del. Jan. 8, 2018) (approving willfulness allegations in amended complaint based on notice provided in original complaint); *Clouding IP, LLC v. Amazon.com, Inc.*, No. CA 12-641-LPS, 2013 WL 2293452, at *4 (D. Del. May 24, 2013) ("For purposes of pleading willful infringement, there appears to be little practical difference between a pre-complaint notice letter informing a defendant about a patentee's allegation of infringement and a subsequently-superceded original complaint formally alleging infringement.").

## VI.    CONCLUSION

For all of the foregoing reasons, and given the lenient standard applied at this stage in the case, the court should deny the Motion to Dismiss.  If the Court is inclined to dismiss some aspect of the FAC, ME2C requests leave to amend.

Dated:  August 27, 2020

Respectfully submitted,

**DEVLIN LAW FIRM LLC**

*/s/ James M. Lennon*
James M. Lennon (No. 4570)
1526 Gilpin Avenue
Wilmington, Delaware 19806
Telephone: (302) 449-9010
Facsimile: (302) 353-4251
jlennon@devlinlawfirm.com

**CALDWELL CASSADY CURRY PC**
2121 N. Pearl St., Suite 1000
Dallas, Texas 75201
Phone: (214) 888-4848
(214) 888-4849 (*fax*)
bcaldwell@caldwellcc.com
jcassady@caldwellcc.com
acurry@caldwellcc.com
jnemunaitis@caldwellcc.com

Bradley W. Caldwell
Texas Bar No. 24040630
Jason D. Cassady
Texas Bar No. 24045625
John Austin Curry
Texas Bar No. 24059636
Justin T. Nemunaitis
Texas Bar No. 24065815

*Attorneys for Plaintiffs*
*Midwest Energy Emissions Corp.*
*and MES Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that all counsel of record have been served with this document

via the Court's CM/ECF system on August 27, 2020.

*/s/ James M. Lennon*
James M. Lennon
