## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MIDWEST ENERGY EMISSIONS CORP. and MES INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Case No. 1:19-cv-01334-RGA-CJB |
| AEP GENERATION RESOURCES INC., *et al.*, | ) ) ) | |
| Defendants. | ) ) ) | |

## CERT DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS ALL CLAIMS IN THE FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6)

OF COUNSEL:

Douglas R. Nemec
Leslie A. Demers
SKADDEN, ARPS, SLATE, MEAGHER &
    FLOM LLP
One Manhattan West
New York, NY 10001-8602
Tel: (212) 735-3000
douglas.nemec@skadden.com
leslie.demers@skadden.com

Robert S. Saunders (ID No. 3027)
Nicole A. DiSalvo (ID No. 4662)
Jessica R. Kunz (ID No. 5698)
SKADDEN, ARPS, SLATE, MEAGHER &
    FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
Tel: (302) 651-3000
Fax: (302) 651-3001
rob.saunders@skadden.com
nicole.disalvo@skadden.com
jessica.kunz@skadden.com

*Attorneys for Defendants CERT*
*Coal Holdings LLC, CERT*
*Holdings LLC, CERT Holdings*
*2018, LLC, CERT Operations*
*LLC, CERT Operations II LLC,*
*CERT Operations III LLC,*
*CERT Operations IV LLC,*
*CERT Operations V LLC and*
*CERT Operations RCB LLC*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ............................................................................................................1

II.   ME2C'S FAILURE TO PROVIDE ANYTHING OTHER THAN AMORPHOUS
      GROUP ALLEGATIONS DOOMS ITS CLAIMS.........................................................1

III.  ME2C'S FAILURE TO PLAUSIBLY ALLEGE KNOWLEDGE TEMPORALLY
      LIMITS ITS INDIRECT INFRINGEMENT CLAIMS ....................................................2

IV.   ME2C HAS NOT PLAUSIBLY ALLEGED SPECIFIC INTENT FOR
      INDUCED INFRINGEMENT.........................................................................................4

V.    ME2C DOES NOT ADEQUATELY ALLEGE ADDITIONAL ELEMENTS
      FOR CONTRIBUTORY INFRINGEMENT ....................................................................6

VI.   ME2C'S JOINT ENTERPRISE THEORY FAILS TO STATE A CLAIM .......................8

VII.  ME2C'S REMAINING REFERENCE TO DIRECT INFRINGEMENT FALLS
      SHORT OF THE REQUIRED STANDARD....................................................................9

VIII. ME2C'S WILLFULNESS ALLEGATIONS SHOULD BE DISMISSED .......................10

IX.   CONCLUSION.............................................................................................................10

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**CASES**

*Align Technology, Inc. v. 3Shape A/S,*
    339 F. Supp. 3d 435 (D. Del. 2018) ....................................................................................2

*In re Bill of Lading Transmission & Processing System Patent Litigation,*
    681 F.3d 1323 (Fed. Cir. 2012) .......................................................................................7, 8

*BioMérieux, S.A. v. Hologic, Inc.,*
    No. 18-21 (LPS), 2018 WL 4603267 (D. Del. Sept. 25, 2018) .........................................3

*CBA Environmental Services, Inc. v. Toll Brothers, Inc.,*
    403 F. Supp. 3d 403 (D.N.J. 2019) ...............................................................................9, 10

*Chalumeau Power Systems LLC v. Alcatel-Lucent,*
    No. 11-1175-RGA, 2012 U.S. Dist. LEXIS 142809 (D. Del. July 18, 2012) ....................3

*DoDots Licensing Solutions LLC v. Lenovo Holding Co.,*
    No. 18-098 (MN), 2019 U.S. Dist. LEXIS 116655 (D. Del. July 12, 2019) ......................2

*F2VS Technologies, LLC v. Aruba Networks, Inc.,*
    No. 17-cv-0754-RGA, 2018 U.S. Dist. LEXIS 60254 (D. Del. Apr. 10, 2018) .................4

*Groove Digital, Inc. v. Jam City, Inc.,*
    No. 1:18-cv-01331-RGA, 2019 WL 351254 (D. Del. Jan. 29, 2019) .................................3

*Groove Digital, Inc. v. King.com, Ltd.,*
    No. 1:18-cv-00836-RGA, 2018 WL 6168615 (D. Del. Nov. 26, 2018) .............................2

*Hodosh v. Block Drug Co.,*
    833 F.2d 1575 (Fed. Cir. 1987) ........................................................................................8

*Horatio Washington Depot Technologies LLC v. Tolmar, Inc.,*
    No. 17-1086-LPS, 2018 U.S. Dist. LEXIS 187074 (D. Del. Nov. 1, 2018) .....................10

*Investpic, LLC v. FactSet Research Systems, Inc.,*
    No. 10-1028-SLR, 2011 WL 4591078 (D. Del. Sept. 30, 2011) .......................................3

*Lifetime Industries, Inc. v. Trim-Lok, Inc.,*
    869 F.3d 1372 (Fed. Cir. 2017) ........................................................................................3

*McDermott v. Clondalkin Group, Inc.,*
    649 F. App'x 263 (3d Cir. 2016) ......................................................................................3

*Nalco Co. v. Chem-Mod, LLC,*
    883 F.3d 1337 (Fed. Cir. 2018) ........................................................................................7

*Nalco Co. v. Chem-Mod, LLC,*
    No. 14-cv-2510, 2015 U.S. Dist. LEXIS 141162 (N.D. Ill. Oct. 15, 2015) ..................5, 9

*North Star Innovations, Inc. v. Toshiba Corp.*,
   No. 16-115-LPS-CJB, 2016 U.S. Dist. LEXIS 168670 (D. Del. Dec. 6, 2016) .................2

*Reagent Chemical & Research, Inc. v. Eurotarget S.R.L.*,
   No. 1:16-cv-395, 2016 WL 8200435 (M.D. Pa. May 23, 2016) .......................................9

*Scheing v. Department of Natural Resources & Environmental Control*,
   No. 15-1028 RGA, 2016 U.S. Dist. LEXIS 65307 (D. Del. May 18, 2016) .....................4

*Sunoco Partners Marketing & Terminals L.P. v. Powder Springs Logistics, LLC*,
   No. 17-1390-LPS-CJB, 2019 WL 8641303 (D. Del. Aug. 7, 2019) ..................................1

*Veritas Operating Corp. v. Microsoft Corp.*,
   562 F. Supp. 2d 1141 (W.D. Wash. 2008).........................................................................8

*Vita-Mix Corp. v. Basic Holding, Inc.*,
   581 F.3d 1317 (Fed. Cir. 2009)..........................................................................................6

## STATUTES

26 U.S.C. § 45...............................................................................................................5, 8

26 U.S.C. § 52....................................................................................................................8

## RULES

Fed. R. Civ. P. 11 ..............................................................................................................2

## I.      INTRODUCTION

ME2C's Opposition (D.I. 190) confirms that it was unable to comply with the guidance in the R&R in its second attempt to plead claims against the CERT Defendants, and its claims should be dismissed with prejudice.[1]  Rather than identify factual allegations in the FAC that pave over the holes in the Original Complaint, ME2C pleads for a "lenient standard" to state a viable claim. (*Id.* at 19.)  But, ME2C is obligated to provide plausible factual allegations that each CERT Defendant committed an infringing act.  ME2C cannot meet this bar.

## II.     ME2C'S FAILURE TO PROVIDE ANYTHING OTHER THAN AMORPHOUS GROUP ALLEGATIONS DOOMS ITS CLAIMS

ME2C's first argument in its Opposition asks the Court to ignore that the FAC improperly conflates the nine CERT Defendants with each other and with 15 other named defendants, because the CERT Defendants supposedly waived this argument by "failing to raise it in their original motion to dismiss."  (D.I. 190 at 4.)  To the contrary, the CERT Defendants raised this issue explicitly in their original motion (*e.g.*, D.I. 50 at 13; D.I. 84 at 2, 6), as reflected in the R&R. (*E.g.*, D.I. 110 at 16 (Original Complaint did not plausibly allege pre-suit knowledge by "the CERT Defendants (one of them, or all of them)").)  In any event, ME2C's own authority confirms that the CERT Defendants could not have waived this argument for new allegations in the FAC.  *See Sunoco Partners Marketing & Terminals L.P. v. Powder Springs Logistics, LLC*, No. 17-1390-LPS-CJB, 2019 WL 8641303, at *4 (D. Del. Aug. 7, 2019) ("the current [m]otion was the first opportunity for [d]efendants to raise Rule 12(b)(6)-type defenses against those allegations").

ME2C falls back on the argument that group allegations sometimes pass muster.  (D.I. 190

---

[1]   Capitalized terms not defined herein shall have the same meaning ascribed to them as in the CERT Defendants' Opening Brief (D.I. 179) unless noted otherwise, and all emphasis is added unless noted otherwise.  The CERT Defendants further join in co-defendants' arguments in reply that MES Inc. has no standing, and arguments advanced in reply by the Moving Refined Coal Defendants to the extent applicable.

at 5.)  As discussed in the Opening Brief, notice of the grounds and plausible allegations that each defendant is liable for infringement are still required.  (D.I. 179 at 9 n.8.)[2]  That is a far cry from the FAC, which only provides the CERT Defendants' addresses.  (*Id.* at 3.)  ME2C's claim that "it makes sense that the same theories of infringement and supporting factual allegations would apply equally to each of the CERT Defendants" (D.I. 190 at 13) thus has no basis in the FAC.

At bottom, this is not a clerical issue of whether ME2C must "copy and paste defendant names instead of using group names or . . . particular phrases" (D.I. 190 at 6); rather, it is an issue of whether ME2C has a basis under Fed. R. Civ. P. 11 to allege that each of the nine CERT Defendants committed an act of infringement.  The FAC fails to make any factual allegation that any CERT Defendant committed an act of infringement, and the amorphous nature of the group pleadings renders claims against them implausible.  *See, e.g.*, *N. Star Innovations, Inc. v. Toshiba Corp.*, No. 16-115-LPS-CJB, 2016 U.S. Dist. LEXIS 168670, at *3-4, *6 (D. Del. Dec. 6, 2016).

## III.   ME2C'S FAILURE TO PLAUSIBLY ALLEGE KNOWLEDGE TEMPORALLY LIMITS ITS INDIRECT INFRINGEMENT CLAIMS

Unable to add anything to the allegations of pre-suit knowledge that this Court already deemed inadequate (D.I. 110 at 15-17), ME2C instead attempts to move the goal posts, asserting that purported pre-***FAC*** knowledge is enough to save all pre-***suit*** claims.  (D.I. 190 at 7-9.)  But "courts in this District . . . par[e] inducement claims down by time period when [p]laintiff fails to adequately plead pre-suit inducement."  *DoDots Licensing Sols. LLC v. Lenovo Holding Co.*, No. 18-098 (MN), 2019 U.S. Dist. LEXIS 116655, at *11-12 & n.5 (D. Del. July 12, 2019) (dismissing portion of indirect infringement claim for originally-asserted patent that predated the filing of the

---

[2]   (*See* D.I. 190 (citing *Align Tech., Inc. v. 3Shape A/S,* 339 F. Supp. 3d 435, 447 (D. Del. 2018) (complaint adequate that "indicates [that plaintiff] is alleging that both of the [d]efendants did everything"); *Groove Digital, Inc. v. King.com, Ltd.,* No. 1:18-cv-00836-RGA, 2018 WL 6168615, at *1 (D. Del. Nov. 26, 2018) (complaint provided "factual allegations . . . to support an inference that all three . . . [d]efendants engaged in the alleged infringing conduct")).)

original complaint, and portion of indirect infringement claims for later-added patents that predated the filing of the amended complaint); *see also Chalumeau Power Sys. LLC v. Alcatel-Lucent*, No. 11-1175-RGA, 2012 U.S. Dist. LEXIS 142809, at *3 (D. Del. July 18, 2012). ME2C's failure to plausibly allege knowledge of the Original Patents prior to July 17, 2019 and of the Newly-Added Patents prior to June 29, 2020 thus forecloses portions of its claims.

With regard to the sufficiency of allegations of knowledge of the patents, ME2C fails to address any of the opinions – including the R&R itself – that found allegations like those in the FAC too speculative to survive dismissal. (*See* D.I. 179 at 6-7.) Instead, ME2C resurrects caselaw from its previous briefing, but ME2C's also-ran authorities are no more helpful here than they were when cited by ME2C in the last motion.[3] The sole "new" patent case provided by ME2C, *Investpic, LLC v. FactSet Research Systems, Inc.*, No. 10-1028-SLR, 2011 WL 4591078 (D. Del. Sept. 30, 2011), involved allegations that ME2C has not made – that the asserted patent was "well-known in the industry[,] having been cited by at least 79 issued U.S. patents . . . ." *Id.* at *2 (quotations omitted). ME2C's argument that *Investpic* found knowledge adequately alleged with an assertion "that the patent was 'publicly known'" alone (D.I. 190 at 8) thus reflects a misunderstanding of the opinion, and would effectively erase the knowledge requirement, as all issued patents are public.[4]

Finally, ME2C's allegations of pre-suit knowledge of the alleged infringement fare no better, for the reasons discussed in Section IV, *infra*.

---

[3]   *See Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1375 (Fed. Cir. 2017) (defendant hired "two of [the patent owner's] engineers with knowledge of the [asserted] patent"); *BioMérieux, S.A. v. Hologic, Inc.*, No. 18-21 (LPS), 2018 WL 4603267, at *2, *5 (D. Del. Sept. 25, 2018) (one defendant had knowledge through its challenges to foreign counterparts and other entities had a relevant business relationship with that defendant); *Groove Digital, Inc. v. Jam City, Inc.*, No. 1:18-CV-01331-RGA, 2019 WL 351254, at *4 (D. Del. Jan. 29, 2019) (defendant "monitors patent litigation against its competitors" (quotations omitted)).

[4]   ME2C's citation to *McDermott v. Clondalkin Group, Inc.*, 649 F. App'x 263, 268 (3d Cir. 2016) is also unavailing, as the court recognized that even pleading on information and belief requires "factual allegations that make [a] theoretically viable claim plausible."

3

## IV.   ME2C HAS NOT PLAUSIBLY ALLEGED SPECIFIC INTENT FOR INDUCED INFRINGEMENT

As an initial matter, ME2C's halfhearted argument that it can avoid dismissal of its induced infringement claims with a bare allegation that "the Refined Coal Defendants 'must necessarily know and intend that the coal plants will go on to perform the step of injecting activated carbon'" (D.I. 190 at 9-10 (quoting D.I. 130 at ¶ 100)) ignores that the Court is "not required to credit bald assertions or legal conclusions improperly alleged in the complaint."  *F2VS Techs., LLC v. Aruba Networks, Inc.*, No. 17-cv-0754-RGA, 2018 U.S. Dist. LEXIS 60254, at *3 (D. Del. Apr. 10, 2018).  Rather, the FAC must provide factual allegations to make plausible this conclusion.  As set forth in the Opening Brief (D.I. 179 at 7-15), the FAC falls short.

In its Opposition, ME2C relies primarily on Section 45 certification testing in an effort to concoct a specific intent to induce infringement.  However, ME2C does not dispute that this certification testing is irrelevant for the Newly-Added Patents (*compare* D.I. 179 at 11, *with* D.I. 190 at 9-13), "suggesting that Plaintiffs concede the point."  *Scheing v. Dep't of Nat. Res. & Envtl. Control*, No. 15-1028 RGA, 2016 U.S. Dist. LEXIS 65307, at *9 (D. Del. May 18, 2016).

For the Original Asserted Patents, ME2C claims in its Opposition that the CERT Defendants rely on "post-emission control" testing to obtain Section 45 tax credits as opposed to "pre-combustion control" testing.  (D.I. 190 at 11.)  Also according to the Opposition, "post-emission control" testing "depends on the use of a plant's emission control equipment, including its use of activated carbon injection."  (*Id.*)  But the factual allegations do not go so far.  Instead, the factual allegations speculate on how the testing *could be* performed as opposed to how the testing *is* performed.[5]  And, the FAC avoids alleging that an Activated Carbon Step is required to

---

[5]   (D.I. 130 ¶ 88 (hypothesizing that: "these Defendants *can establish* a baseline mercury capture rate," which "*could be* a test at the plant, or a test at a pilot scale facility"; "[t]he gas

*(cont'd)*

4

obtain Section 45 tax credits, even for "post-emission control" testing.[6]  Indeed, "[d]efendants are not required to . . . practice any . . . specific process in order to qualify for Section 45 tax credits." *Nalco Co. v. Chem-Mod, LLC*, No. 14-cv-2510, 2015 U.S. Dist. LEXIS 141162, at *6 (N.D. Ill. Oct. 15, 2015) ("*Nalco I*"); *see also* 26 U.S.C. § 45(a), (c)(7).  Without plausible factual allegations that a third party must perform the Activated Carbon Step for certification or in fact does perform that step and each CERT Defendant intends for its performance, this theory misses the mark.

Likewise, ME2C distorts the allegations in the FAC regarding mercury emissions regulations, claiming that the FAC alleges that "turning off that activated carbon injection system ***would*** result in mercury regulation violations" (D.I. 190 at 12), when the FAC asserts only that this ***could*** result in fines (D.I. 130 ¶ 98).  This is not a matter of inartful wording, as the FAC acknowledges that an Activated Carbon Step is not required (D.I. 179 at 10-11 & n.9), which ME2C did not dispute (D.I. 190 at 9-13 (failing to respond to argument)).  Without that crucial link, the allegations concerning mercury emissions regulations do not support that any of the CERT Defendants specifically intended for third parties to perform the Activated Carbon Step.

Finally, ME2C claims it alleged that "the CERT Defendants have advertised the benefits of refined coal and specifically targeted marketing efforts towards plants that use activated carbon . . . ." (D.I. 190 at 12.)  Not so.  The FAC does not allege that "CERT" (or any single CERT Defendant) conducted advertising, nor does it detail any marketing efforts by these defendants (D.I. 179 at 14); rather, the FAC addresses purported advertising by other entities (D.I. 130 ¶ 97), which ME2C improperly attempts to impute to each CERT Defendant (D.I. 190 at 12-13).  ME2C's

---

downstream of the electrostatic precipitator ***can then be measured*** for mercury content"; and "Defendants ***can then measure*** the gas downstream of the electrostatic precipitator").)

[6]  (*See* D.I. 130 ¶ 87 ("if these [24 d]efendants attempted to perform a certification test by merely combusting refined coal and measuring the amount of emitted mercury leaving the combustion chamber (i.e., disregarding the plant's activated carbon injection ***and other mercury control equipment***), they would be unable to demonstrate the required reduction in mercury").)

reliance on a contract between other parties is similarly inapt, as that contract does not require the plant to perform an Activated Carbon Step (D.I. 179 at 14), which ME2C also does not dispute. Notably, ME2C also ignores the argument that the FAC's allegations of operations at plants fall short because any alleged coordination between "CERT" and plants regarding quantities of bromine and activated carbon reflects – at most – an attempt to allege ***knowledge*** of the Activated Carbon Step as opposed to any ***intent*** for its performance.  (D.I. 179 at 13-15; D.I. 190 at 13.)

Despite the clear direction in the R&R, the FAC does not provide factual allegations to support an "inferential leap" to each CERT Defendant "know[ing] and intend[ing] that the coal plants will go on to perform the Activated Carbon Step."  (D.I. 110 at 14.)  To the contrary, the FAC introduced another use of refined coal – burning the coal at plants other than those allegedly located in proximity to refined coal facilities.  (*See* D.I. 130-6, discussed *infra*.)  Given the multiple uses of refined coal that do not require an Activated Carbon Step, and the lack of any factual allegation specific to any CERT Defendant, an inference that all CERT Defendants intended power plants to perform the Activated Carbon Step is not plausible.  *See Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1329 (Fed. Cir. 2009) ("Especially where a product has substantial non-infringing uses, intent to induce infringement cannot be inferred even when the defendant has actual knowledge that some users of its product may be infringing the patent." (citation omitted)).

## V.   ME2C DOES NOT ADEQUATELY ALLEGE ADDITIONAL ELEMENTS FOR CONTRIBUTORY INFRINGEMENT

The R&R dismissed ME2C's contributory infringement claims because the Original Complaint failed to "adequately plead that when these Defendants deposit that coal onto the conveyance, they know that this coal has no substantial non-infringing use (i.e., that it cannot reasonably be used for purposes other than to be injected with activated carbon)."  (D.I. 110 at 19-20.)  The FAC compounds these flaws by offering further support for non-infringing uses, and

ME2C's Opposition only confirms that its claims are deficient under Federal Circuit law.

ME2C attempts to distinguish *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323 (Fed. Cir. 2012), but fails to confront its own admissions in the FAC. Although ME2C asserts that *Bill of Lading* is distinguishable because the accused device there "could be used in infringing and admittedly non-infringing ways" (D.I. 190 at 15), that is exactly the case here – the FAC acknowledges that refined coal may be burned without activated carbon, or with a non-carbon sorbent instead of carbon. (D.I. 179 at 9-10 & n.9.) In an effort to escape these admissions, ME2C asserts that "the specific refined coal accused in this case can only be used at plants using activated carbon" (D.I. 190 at 15; *id.* (claiming that defendants "require that coal plant to use the coal only for combustion, i.e., to infringe")), but that is wrong for at least two reasons. First, the FAC asserts only that activated carbon "will later be injected" at those plants, and does not confront whether activated carbon needs to be injected at those plants. (*See, e.g.*, D.I. 130 ¶ 107); *Bill of Lading* 681 F.3d at 1338 (test assesses "whether the accused products can be used for purposes other than infringement"). For that reason, the "[a]s sold and delivered" language in *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1357 (Fed. Cir. 2018) does not save ME2C's claims. Indeed, ME2C's claims would require a standard of "as sold and delivered and in one manner of use," which is not the law, and which ME2C did not contest. (*See* D.I. 179 at 16.)

Second, a contract between other parties attached to the FAC contradicts ME2C's argument that the refined coal can only be used at plants using activated carbon, as the contract allows refined coal to be "sold by Seller to third parties or otherwise disposed." (D.I. 130-6, Section 5.2.)[7]

---

[7] ME2C does not respond to this argument in opposing the CERT Defendants' motion. (*See* D.I. 179 at 13, 16; D.I. 190 at 13-15.) In response to the Moving Refined Coal Defendants' motion, ME2C asserts that the plant must still "combust all received coal," and that "plants cannot simply turn off activated carbon." (D.I. 191 at 15.) But ME2C does not allege that plants cannot turn off activated carbon; it alleges the opposite. In any event, that the refined coal may be sold to third parties further supports that the refined coal is not especially made for an infringing process, and has substantial non-infringing uses.

*Hodosh v. Block Drug Co.*, 833 F.2d 1575 (Fed. Cir. 1987) also does not support ME2C's claims.  (*Cf.* D.I. 190 at 14-15.)  As the Federal Circuit explained in *Bill of Lading*, *Hodosh* "did not determine whether the product at issue . . . had substantial non-infringing uses."  681 F.3d at 1138 n.10.  Rather, *Hodosh* explained that the analysis for contributory infringement looks to the product sold by the accused infringer (there, toothpaste) as opposed to components in the product (there, potassium nitrate).  *See Hodosh*, 833 F.2d at 1577-78; *accord Veritas Operating Corp. v. Microsoft Corp.*, 562 F. Supp. 2d 1141, 1169-74 (W.D. Wash. 2008).  Here, the arguments do not depend on the substantial non-infringing uses of components of refined coal (*e.g.*, bromine alone), but on the allegations of substantial non-infringing uses of the refined coal itself.

## VI.    ME2C'S JOINT ENTERPRISE THEORY FAILS TO STATE A CLAIM

In the Opening Brief, the CERT Defendants demonstrated that the amorphous nature of the FAC prevented them from receiving notice of the joint enterprise claims, in particular, through the vague description of the members as "CERT, Chem-Mod, . . . their associated RC Defendants, . . . and each coal-fired power plant . . . ." (D.I. 179 at 18.)  The Opposition does nothing to add clarity and does not even consistently mention "CERT" in describing the purported joint enterprise, referring (presumably mistakenly) to an alleged joint enterprise between "the Moving Refined Coal Defendants [and] each coal plant operator . . . ."  (D.I. 190 at 16-17.)  This lack of fair notice is an independent ground for dismissal.  (*See* D.I. 179 at 18 (collecting cases).)

Moreover, ME2C's Opposition mischaracterizes the CERT Defendants' position regarding the significance of requirements for Section 45 tax credits.  The CERT Defendants are not asking the Court to find that "they have met . . . statutory requirements."  (*Cf.* D.I. 190 at 17.)  Rather, the requirements for Section 45 tax credits, including for sales of refined coal to persons that are not under "common control," 26 U.S.C. §§ 45(a)(2)(B), 52(b)(1), are inconsistent with ME2C's joint enterprise theory, which requires an equal right of control.  ME2C's claim that "CERT" formed a

joint enterprise to "benefit[] from Section 45 tax credits" in a manner that would prohibit Section 45 tax credits is thus nonsensical. *See also Nalco I*, 2015 U.S. Dist. LEXIS 141162, at \*11, \*14 (rejecting joint enterprise theory based on Section 45 tax credits, which ME2C does not address).

ME2C also cannot overcome the failure to allege elements of a joint enterprise. First, not only does the referenced contract relate to other, non-CERT entities, but there is also no factual allegation to support an inference that any single CERT Defendant enters into contracts at all, let alone that "this contract is representative of contracts signed by the other CERT Defendants." (D.I. 190 at 16.) At any rate, ME2C is incorrect on the substance of the contract, including that the contract requires the plant to "combust the coal only at the plant using activated carbon." (*Id.* at 16-17.) In fact, the contract does not require the performance of an Activated Carbon Step, and it even allows the refined coal to be sold to third parties. (*See supra*.) ME2C also fails to identify any provision in the contract that supports a common purpose or community of pecuniary interest, instead resting on benefits typical in a supplier relationship. (*See* D.I. 190 at 16.)

Second, ME2C's reliance on *Reagent Chemical & Research, Inc. v. Eurotarget S.R.L.*, No. 1:16-cv-395, 2016 WL 8200435 (M.D. Pa. May 23, 2016) is similarly misplaced. For instance, the claimed method in *Reagent* involved shooting at targets, and the court credited allegations that "shooters and facilities come to specific agreements or arrangements governing their conduct," *id.* at \*6, with a defendant admitting that agreements may "requir[e] that shooters aim only at those [accused] targets." *Id.* at \*5 n.4. Here, there is no plausible allegation that the CERT Defendants exercise control over particulars of the plants' burning of the refined coal or any Activated Carbon Step. *See CBA Envtl. Servs., Inc. v. Toll Bros., Inc.*, 403 F. Supp. 3d 403, 419 (D.N.J. 2019).

## VII.   ME2C'S REMAINING REFERENCE TO DIRECT INFRINGEMENT FALLS SHORT OF THE REQUIRED STANDARD

As set forth in the Opening Brief, the FAC does not plausibly allege that each CERT

Defendant (or a third party agent) performs each claimed step during certification testing.  (*See* D.I. 179 at 17-20.)   ME2C's reliance on its supposed allegations that the CERT Defendants "prepare refined coal containing bromine, combust it, and inject activated carbon sorbent downstream of the combustion chamber" (D.I. 190 at 18) both misstates the allegations in the FAC (*see supra*), and understates ME2C's burden at this stage.  *See, e.g.*, *Horatio Wash. Depot Techs. LLC v. Tolmar, Inc*., No. 17-1086-LPS, 2018 U.S. Dist. LEXIS 187074, at \*31-32 (D. Del. Nov. 1, 2018) (requiring plausible factual allegations for each claim element).

ME2C's theory of direct infringement through "CERT's" supposed direction and control of third parties during testing is deficient for the additional reason that it conflicts with other allegations in the FAC – namely, the allegation that "CERT, Chem-Mod, [and] their associated RC Defendants control . . . certification" (D.I. 130 ¶ 221). *See CBA*, 403 F. Supp. 3d at 419.  This is not a mere "re-hash of the group names issue" (D.I. 190 at 18), but rather another instance of ME2C pleading itself out of a claim by offering allegations that are inconsistent with liability.

## VIII.   ME2C'S WILLFULNESS ALLEGATIONS SHOULD BE DISMISSED

As with indirect infringement, ME2C's failure to plausibly allege knowledge of the patents and of infringement forecloses willful infringement allegations.  (*See* D.I. 110 at 15.)  In addition, ME2C's scramble to save post-complaint willfulness does not explain how the CERT Defendants' conduct after the filing of the Original Complaint could constitute willful infringement, given that the Original Complaint did not state a claim against them.  (*Cf.* D.I. 190 at 18.)

## IX.    CONCLUSION

For reasons discussed herein and in the Opening Brief and adopted briefs, the Court should dismiss all claims against the CERT Defendants with prejudice.

DATED: September 10, 2020        Respectfully submitted,

                                               */s/ Robert S. Saunders*

OF COUNSEL:                              Robert S. Saunders (ID No. 3027)
Douglas R. Nemec                      Nicole A. DiSalvo (ID No. 4662)
Leslie A. Demers                       Jessica R. Kunz (ID No. 5698)
SKADDEN, ARPS, SLATE, MEAGHER &      SKADDEN, ARPS, SLATE, MEAGHER &
    FLOM LLP                                FLOM LLP
One Manhattan West                  One Rodney Square
New York, NY 10001-8602           P.O. Box 636
Tel: (212) 735-3000                  Wilmington, Delaware  19899
douglas.nemec@skadden.com       Tel:  (302) 651-3000
leslie.demers@skadden.com         Fax:  (302) 651-3001
                                            rob.saunders@skadden.com
                                            nicole.disalvo@skadden.com
                                            jessica.kunz@skadden.com

                                            *Attorneys for Defendants CERT*
                                            *Coal Holdings LLC, CERT*
                                            *Holdings LLC, CERT Holdings*
                                            *2018, LLC, CERT Operations*
                                            *LLC, CERT Operations II LLC,*
                                            *CERT Operations III LLC,*
                                            *CERT Operations IV LLC,*
                                            *CERT Operations V LLC, and*
                                            *CERT Operations RCB LLC*