IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MIDWEST ENERGY EMISSIONS CORP. and MES INC., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) C.A. No. 19-1334 (RGA) (CJB) |
| VISTRA ENERGY CORP., *et al.*, | ) ) ) |
| Defendants. | ) |

**REPLY BRIEF IN SUPPORT OF MOVING REFINED COAL DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

OF COUNSEL:

Richard W. Mark
Joseph Evall
Paul J. Kremer
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
(212) 351-4000

September 10, 2020

MORRIS, NICHOLS, ARSHT &TUNNELL LLP
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
began@mnat.com

*Attorneys for Moving Refined Coal Defendants[1]*

---

[1] The "Moving Refined Coal Defendants," or "Movants," are Arthur J. Gallagher & Co., Gallagher Clean Energy, LLC, AJG Coal, LLC, DTE REF Holdings, LLC, DTE REF Holdings II LLC, Chem-Mod LLC, AJG Iowa Refined Coal LLC, Joppa Refined Coal LLC, Thomas Hill Refined Coal, LLC (sued herein as "Thomas Hill Refined Coal LLC"), Wagner Coaltech LLC, Walter Scott Refined Coal LLC, Louisa Refined Coal, LLC, Belle River Fuels Company, LLC, Arbor Fuels Company LLC, and Portage Fuels Company, LLC.

# TABLE OF CONTENTS

|      |                                                                                                                                                      | Page |
|------|------------------------------------------------------------------------------------------------------------------------------------------------------|------|
| I.   | Introduction                                                                                                                                         | 1    |
| II.  | The FAC Fails to Put Any One of the Fifteen Movants on Notice of the Basis for the Claims Against It.                                                | 1    |
| III. | The Claims for Induced Infringement Should Be Dismissed.                                                                                             | 3    |
| IV.  | The Claims for Contributory Infringement Should Be Dismissed.                                                                                        | 5    |
| V.   | The Claims for Direct Infringement Should Be Dismissed.                                                                                              | 6    |
|      | A. The Joint Enterprise Claims Fail as a Matter of Law.                                                                                              | 6    |
|      |     1. Section 45 Requires "Unrelated" Parties.                                                                                  | 6    |
|      |     2. The Alleged Joint Enterprises Are Indistinguishable From Any Other Arm's-Length Business Transaction.                     | 7    |
|      | B. The FAC Does Not Allege Direct Infringement by Testing.                                                                                           | 9    |
| VI.  | The Claims for Indirect and Willful Infringement Should Be Dismissed for Failure to Plead Knowledge of the Patents.                                  | 10   |
| VII. | Conclusion                                                                                                                                           | 10   |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
   797 F.3d 1020 (Fed. Cir. 2015) ........................................................................................... 7, 8

*Bos. Sci. Corp. v. Nevro Corp.*,
   415 F. Supp. 3d 482 (D. Del. 2019) ........................................................................................ 10

*In re Bill of Lading Transmission and Processing Sys. Patent Litig.*,
   681 F.3d 1323 (Fed. Cir. 2012) ................................................................................................ 5

*Reagent Chem. & Res., Inc. v. Eurotarget S.R.L.*,
   No. 16-395, 2016 WL 8200435 (M.D. Pa. May 23, 2016) ....................................................... 8

*St. Joseph Hosp. v. Wolff*,
   94 S.W.3d 513 (Tex. 2002) ....................................................................................................... 8

*Sunoco Partners Marketing & Terminals L.P. v. Powder Springs Logistics, LLC*,
   C.A. No. 17-1390-LPS-CJB, 2019 WL 8641303 (D. Del. Aug. 7, 2019) ................................ 2

*Välinge Innovation AB v. Halstead New England Corp.*,
   C.A. No. 16-1082-LPS-CJB, 2018 WL 2411218 (D. Del. May 29, 2018) ............................. 10

**I.      Introduction**

Plaintiffs' answering brief (D.I. 191) confirms that the FAC's new allegations suffer from the same contradictions and inadequacies as those of the Original Complaint. For the reasons set forth below and in the opening brief, and in the briefs of the CERT and Talen Defendants, the Court should dismiss the FAC with prejudice.

**II.     The FAC Fails to Put Any One of the Fifteen Movants on Notice of the Basis for the Claims Against It.**

Movants' opening brief explained that by lodging nonspecific allegations against a mass of defendants, the FAC fails to state a claim against any Movant. In response, Plaintiffs argue that: (i) Movants waived this argument because the same deficiency infected their Original Complaint and Movants purportedly did not move to dismiss that pleading on that basis; (ii) the defect does not apply to defendant Chem-Mod LLC because the lumped listings of defendants in the FAC expressly name "Chem-Mod"; and (iii) the defect is harmless because the FAC, taken as a whole, gives Movants notice of the claims against them. Each response is without merit.

*No Waiver.* Plaintiffs devote four pages of their brief to waiver. There was no waiver.

*First*, to the extent the group-pleading deficiency was present in the Original Complaint, Movants objected to it in their motion to dismiss that pleading:

- Plaintiffs "impermissibly lump all of the Refined Coal Defendants together and fail to direct allegations against each. . . . the Complaint does not identify which Moving Refined Coal Defendants are alleged to be engaged in a 'joint enterprise' with which power plants." (D.I. 56 at 16)[2]

- "The Complaint's treatment of the Moving Refined Coal Defendants as an undifferentiated group is improper." (*id.*)

- "Plaintiffs' allegations . . . fail to specify whom each Moving Refined Coal Defendant is purported to direct or control." (*id.* at 18).

---

[2] Page number pin cites to Docket Items are to the original pagination of the document, not to the page number identified in the ECF stamp.

Movants also stated the applicable law, including that a complaint "must identify 'which entity is responsible for any particular alleged infringing activity,'" and cited multiple cases. *See id*. at 16.

*Second*, as Plaintiffs admit, Rule 12(g)(2)'s waiver provision only applies to grounds for dismissal that were available when the first dismissal motion was made. To the extent that Plaintiffs attempted to make factual allegations against Movants in their Original Complaint, Movants complained that the allegations improperly failed to distinguish among those Movants.[3] Therefore, there is no waiver. Plaintiffs responded with new allegations in the FAC (*see* D.I. 177 at 6-15), which they added in an attempt to address the prior pleading failure. Arguments challenging the sufficiency of these new allegations could not have been waived because the allegations were not in the Original Complaint. *See Sunoco Partners Marketing & Terminals L.P. v. Powder Springs Logistics, LLC*, No. 17-1390-LPS-CJB, 2019 WL 8641303, at *4 (D. Del. Aug. 7, 2019) (no waiver where second motion presented "the first opportunity for [d]efendants to raise Rule 12(b)(6)-type defenses against *those* allegations") (emphasis in original).

***Chem-Mod.*** Plaintiffs defend their claims against Chem-Mod LLC on the ground that the FAC's grouped-defendant allegations identify "Chem-Mod" by name, but that argument is a red herring. The issue is not whether a specific defendant is listed individually or as a part of group, but whether the pleaded facts directed to that group state a claim of infringement against any defendant. The FAC's allegations against Chem-Mod fall short, and that they call out the name "Chem-Mod" does not make them proper.[4]

---

[3] *See, e.g.*, D.I. 56 at 7 ("There is no allegation that any Refined Coal Defendant performs either the Bromine Step or the Activated Carbon Step, operates a power plant, burns coal, or adds any substance . . . ."); *id.* at 8 ("There is no allegation that any Refined Coal Defendant provides activated carbon to any power plant, or requires its use by any power plant."); *id.* at 16 (specifying failure to plead joint enterprise by lumping parties together).
[4] Plaintiffs also argue that the FAC "articulated separate accused conduct related to Chem-Mod" (D.I. 191 at 7 n.3), but the FAC repeats the Original Complaint's defective group pleading

2

*Notice.* The FAC contains no allegations leading to the plausible inference that any individual Movant had the requisite knowledge and intent for indirect infringement or carried out acts that directly or indirectly infringed. Contrary to Plaintiffs' contention, the FAC gives no specific Movant notice of the claims against it: what that Movant purportedly did; where or when it was done; with whom that Movant formed a joint enterprise; or how or why such acts infringe.

### III. The Claims for Induced Infringement Should Be Dismissed.

As set forth in Movants' opening brief, Plaintiffs have once again failed to allege any Movant acts that induce power plants to perform the Activated Carbon Step. Likewise, the FAC fails to allege intent to cause infringement. Plaintiffs take pains to recount why Movants might *know* about their customers' activated carbon use, but admit that knowledge of infringement is not intent. *See* D.I. 191 at 8 (arguing that the FAC alleges that Movants "know *and intend* that the coal plants will go on to perform the step of injecting activated carbon") (emphasis added). But in the FAC, intent is a house of cards built on Plaintiffs' speculation about knowledge.

*First*, Plaintiffs allege that "when [Movants] perform certification testing for a particular plant, *they must be aware*" if activated carbon is used there. D.I. 130 at ¶ 87 (emphasis added). Plaintiffs then assert that "*if these Defendants*" thereafter "attempted to perform a certification test" without activated carbon, the test would be useless for certification purposes. *Id.* (emphasis added). This guesswork and speculation about *knowledge* is insufficient to support Plaintiffs' inferences about *intent*—and unconnected to any acts of inducement. *See* D.I. 177 at 7-12.

*Second*, Plaintiffs argue that Movants must intend for activated carbon to be used because

---

practice. *See, e.g.*, D.I. 130 ¶¶ 86-88. Listing Chem-Mod as a participant in an unspecified number of joint enterprises, with unknown and unnamed co-participants, is not proper simply because Chem-Mod is asserted to be one of the participants. *See* D.I. 56 at 15-16 (collecting Original Complaint allegations about Chem-Mod). Finally, the few "separate" allegations, which relate to subjects such as purported sales (D.I. 130 ¶ 75), advertising (*id.* ¶ 97), and attendance at conferences (*id.* ¶ 188), are irrelevant for reasons already addressed by the Court.

3

they need it to be used.  *See* D.I. 191 at 10.  But there are no plausible allegations that Movants would ever need their customers to perform the Activated Carbon Step.  *See* D.I. 177 at 8-9.  Similarly, Plaintiffs argue that Movants tailor Refined Coal for use in plants that use activated carbon—but as explained in Movants' opening brief, any such acts are not evidence that the Movants *intend* for activated carbon to be used—let alone in an infringing way—only that they may understand that the power plants, for their own reasons, are using it.  *See* D.I. 191 at 11-12.

*Third*, as with the Original Complaint, the FAC asks the Court to infer inducement from Section 45 compliance.  *See* D.I. 191 at 8-11.  Plaintiffs allege that one *possible* way to show compliance with Section 45 is through on-site post-emissions control testing, but deliberately stop short of alleging that such testing occurred at any accused sites.  Plaintiffs point to paragraph 87 of the FAC, *see* D.I. 191 at 9, but that paragraph says only that "*if* these Defendants attempted to perform a certification test by merely combusting refined coal and measuring the amount of mercury leaving the combustion chamber" (exactly what the Refined Coal Defendants have a third party do, at a testing facility in North Dakota), *then* "they would be unable to demonstrate the required reduction in mercury." D.I. 130 ¶ 87 (emphasis added).  Plaintiffs' conditional statement is wrong as a matter of law (*see* D.I. 177 at 7-11) and inadequate, as it does not allege what the Movants do.  In positing multiple alternatives for Section 45 qualification, yet failing to allege that anyone uses the patented steps at a particular plant in order to obtain Section 45 qualification for a Movant, Plaintiffs fail to state a claim that Movants induce infringement by the power plants.

*Finally*, while Plaintiffs argue that FAC paragraph 87 alleges that Movants do not "rely on 'pre-emission control' testing" (D.I. 191 at 9), it does not.  Likewise, Plaintiffs claim that the first sentence of FAC paragraph 88 shows that they plead intent. D.I. 191 at 10.  But that sentence does not relate to intent, or even to induced infringement.

4

The FAC's claims of inducement fail as a matter of law. The allegations of acts directed to the Activated Carbon Step are inadequate, and the allegations of intent are entirely based on conjecture about, and other insufficient allegations of, knowledge. *See* D.I. 191 at 10-12.

### IV.  The Claims for Contributory Infringement Should Be Dismissed.

Plaintiffs' claim that the sale of Refined Coal contributes to infringement is "based on the assumption that the [customer] plant will continue to inject activated carbon." D.I. 191 at 13. But if Refined Coal has a substantial use that does not require injecting activated carbon into combustion flue gas, then there can be no liability for sale of that Refined Coal. To the extent that the FAC describes *any* Refined Coal, the FAC describes noninfringing uses for all of it.

Plaintiffs do not respond to Movants' argument (D.I. 177 at 13) that the FAC fails to identify the Refined Coal that has been used to infringe—or where or how it was used to infringe. Movants are left to guess which of their formulations and past sales would be relevant under Plaintiffs' theory. In response, Plaintiffs insist—beside the point—that they need not identify the infringing customer who bought this still-unidentified contributory material. *See* D.I. 191 at 13.

Moreover, Plaintiffs do not dispute that (a) their own asserted patents, (b) the tax code, and (c) the supply agreement referenced in the FAC all allow Refined Coal to be used without activated carbon. *See* D.I. 177 at 13-15. Instead, they simply "assum[e] that the coal plant operator will continue to provide activated carbon injection" in each case, because—according to Plaintiffs—to do otherwise that customer "could face fines" or government shutdown. D.I. 191 at 14. Even if this "assumption" were rendered plausible by factual allegations—which it is not—a hypothetical ("*could* face fines") risk of future economic disadvantage is not sufficient to render a noninfringing use "unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental." *See In re Bill of Lading Transmission and Processing Sys. Patent Litig.*, 681 F.3d 1323, 1338 (Fed. Cir. 2012) (citation omitted). Likewise, if potential inefficiency were enough to disqualify a

noninfringing use, then any seller would be automatically subject to infringement liability anytime one of its customers opted to use its product in an infringing way. That is not the law.

## V. The Claims for Direct Infringement Should Be Dismissed.

### A. The Joint Enterprise Claims Fail as a Matter of Law.

The FAC alleges that Movants sell refined coal to their customers in order to obtain Section 45 tax credits. Plaintiffs ignore, however, that such credits cannot be obtained if the seller and buyer form a joint enterprise for that purpose. Plaintiffs also fail to plead any joint enterprises under the Restatement approach required by the Federal Circuit.

#### 1. Section 45 Requires "Unrelated" Parties.

Plaintiffs do not dispute that the sellers and buyers of refined coal in each purported joint enterprise are, as a matter of law, "unrelated" to each other. Suggesting otherwise—that Movants and their power plant customers are "related," through a joint enterprise or otherwise—would undermine Plaintiffs' position that Movants earn Section 45 tax credits by making and selling refined coal. That leaves Plaintiffs with a conundrum: reconciling (i) their allegations that refined coal suppliers successfully comply with Section 45, with (ii) their assertions that they form joint enterprises with their customers, who must be unrelated. Plaintiffs posit no solution.

Nor do Plaintiffs posit how Refined Coal suppliers could lawfully compel or halt their customers' allegedly infringing coal-burning processes—having admitted that such suppliers do not exercise any control over the use of activated carbon at those plants. *See* D.I. 191 at 16-17 ("[T]he coal plant maintains physical control over the combustion of the coal and operation of the mercury control systems including activated carbon injection.").

Even if Plaintiffs could overcome these blatant contradictions, the FAC still fails because there are no allegations to suggest that the enterprise is directed to use of Refined Coal *along with* activated carbon (*i.e.*, that it is potentially infringing). *See* D.I. 177 at 4, 8-12, 18-19.

6

With the tax code firmly blocking the mixing of business operations, the sharing of common proceeds, and the diffusion of control over the parties' respective businesses, Plaintiffs plead no joint enterprise—let alone an infringing one. *See Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1023 (Fed. Cir. 2015).

### 2. The Alleged Joint Enterprises Are Indistinguishable From Any Other Arm's-Length Business Transaction.

Instead of addressing these dispositive, threshold bars to joint infringement, Plaintiffs insist that they should be permitted to proceed because they allege at least one fact for each of the four "joint enterprise" elements required by *Akamai*. D.I. 191 at 15-18. But Plaintiffs' rote recitations fail to describe a plausible joint enterprise. Instead, they lead to the absurd conclusion that any two parties with a supply agreement form a joint enterprise under *Akamai*.

***First***, Plaintiffs have not identified any agreement that creates a new "joint enterprise" business entity or structure. In fact, Plaintiffs allege that Section 45 tax credits are earned in the first instance by Movants—not by any unnamed joint enterprise vehicle. D.I. 130 ¶ 79.

The putative contract between Defendant Belle River Fuels LLC and its power plant customer is "instructive" (*see* D.I. 191 at 16), but not as Plaintiffs suggest. Nothing in that agreement purports to create a joint enterprise. As Plaintiffs admit, the agreement simply "demonstrates that Belle River Fuels LLC has contracted with a coal plant operator to sell refined coal to the operator"—an ordinary arm's-length business transaction. *Id.*

***Second***, Plaintiffs confirm that the power plant customers do not actually share the putative "common purpose" of earning Section 45 tax credits (*see* D.I. 191 at 17), but rather "share" in "financial benefits that the Moving Refined Coal Defendants are only able to provide because they receive the value of Section 45 tax credits." *Id.* Lower coal prices and supplier tax credits are not a "common purpose," but rather two distinct purposes facilitated by exchange—as with any buyer–

7

seller pair.  By contrast, the complaint in Plaintiffs' sole cited case, *Reagent Chem. & Res., Inc. v. Eurotarget S.R.L.*, No. 16-395, 2016 WL 8200435, at *6 (M.D. Pa. May 23, 2016), alleged a common purpose: "facilitating a shooting activity" at a gun range.

*Third*, Plaintiffs' theory of a "community of pecuniary interest" would have any supplier enter into a joint enterprise simply by passing savings onto its customers.  *St. Joseph Hospital v. Wolff*, which applied the same Restatement approach required by the Federal Circuit in *Akamai* (*see* D.I. 177 at 17 & n.10), explains why two separate revenue streams are not a "community of pecuniary interest" for purposes of a joint enterprise.  94 S.W.3d 513, 530-32 (Tex. 2002).

*Fourth*, Plaintiffs concede that Movants cannot direct or control the performance of the Activated Carbon Step.  *See, e.g.*, D.I. 191 at 16-17.  Because the law requires *each* member of a joint enterprise to have the power to control the infringing process, that concession is also fatal to their claim.  *See* D.I. 177 at 17-18.  The case cited by Plaintiffs, *Reagent Chemicals*, 2016 WL 8200435 at *6 (*see* D.I. 191 at 16, 18), supports that conclusion.  There, the allegations supported a joint enterprise because both the range operators *and* the shooters "may control whether and when the shooting activity takes place."  *Id.* at *6.  Here, Plaintiffs go no further than alleging that Movants "know and intend" that activated carbon be used.  D.I. 191 at 12.

Plaintiffs' implicit suggestion that Movants have an express contractual right to compel the coordinated use of bromine and activated carbon (D.I. 191 at 18) is not pleaded, but even if it were, that argument is belied by the provisions Plaintiffs cite, which focus entirely on the nature of the Refined Coal to be provided and used.  *See* D.I. 130-6 at 8.2(a)-(b), 8.2(d), 8.3.[5]  Those provisions

---

[5] Plaintiffs argue that Section 8.2(d) "requires the parties to coordinate in the performance of the enterprise."  D.I. 191 at 17.  But that provision states only that "Buyer hereby covenants that it will use all Refined Coal purchased hereunder solely for use as fuel in the Belle River Power Plant."  D.I. 130-6 at 8.2(d).

8

say nothing about the use of activated carbon—let alone provide Movants a right to compel its use.

### B. The FAC Does Not Allege Direct Infringement by Testing.

Plaintiffs assert that Movants are liable for direct infringement based on "Section 45 Certification testing." D.I. 191 at 18. According to the FAC, such testing *may* be conducted at a coal-burning plant, rather than at an off-site test facility; it *may* be conducted downstream of other emissions-reducing equipment, such as activated carbon injectors, rather than before such equipment; and it *may* be conducted in a plant that injects activated carbon, rather than one that does not. *See, e.g.,* D.I. 130 ¶ 266. Plaintiffs argue that *if* Movants participate in emissions testing (at a plant not a test facility), and *if* such testing is conducted downstream of emissions devices (not before such devices), and *if* such testing is performed on flue gas into which activated carbon has been injected, *then* the Movants are involved in direct infringement. *See* D.I. 191 at 18-19.

Plaintiffs' argument is hypothesis and conjecture. The FAC does not plead that any Movant conducted certification testing at any identified coal-fired power plant; or that any Movant used post-emission control certification testing; or that any Movant conducted any testing involving activated carbon injection into flue gas. The FAC pleads that Movants are involved in certification testing, and that some types of certification testing infringe, but does not plead that Movants conduct infringing tests. That fatal shortcoming cannot be remedied.

Plaintiffs' answering brief argues that the first sentence of FAC paragraph 88 does allege that Movants conduct infringing post-emissions control testing. D.I. 191 at 10. But Plaintiffs do not argue that this allegation supports their direct infringement claim. *Cf. supra* Section II (induced infringement claim). Nor could they. That sentence—coupled with the conjectures later in that paragraph, and in paragraphs 87 and 89 and Plaintiffs' admissions that Movants themselves do not burn coal—make clear that this is not an allegation that any Movant actually practices the steps of a patent at any particular place. Indeed, the context provided by other allegations in the paragraph

9

make clear that this is all hypothetical. *See* D.I. 130 ¶ 88 ("This could be a test at the plant, or a test at a pilot scale facility that simulates the plant's equipment"—*i.e.*, the North Dakota facility).

## VI. The Claims for Indirect and Willful Infringement Should Be Dismissed for Failure to Plead Knowledge of the Patents.

In *Välinge Innovation AB v. Halstead New England Corp.*, the Court made clear that to plead willful infringement, the plaintiff must allege not only knowledge of the patent, but also facts demonstrating that, "as of the time of the claim's filing, the accused infringer . . . knew, or should have known, that its conduct amounted to infringement of the patent." No. 16-1082-LPS-CJB, 2018 WL 2411218 at *13 (D. Del. May 29, 2018). The same concept applies to knowledge necessary for indirect infringement. *Bos. Sci. Corp. v. Nevro Corp.*, 415 F. Supp. 3d 482, 491, 494 (D. Del. 2019).

Plaintiffs admit that the only arguable notice of infringement here would come from the litigation complaints filed against Movants. *See* D.I. 191 at 19. But the first complaint was dismissed in its entirety, belying any claim that it provided notice of infringement, and the FAC cannot support a claim for willful infringement that predates its filing. *See Välinge*, 2018 WL 2411218 at *11 (requiring an allegation of willful infringement prior to the date of the "governing pleading"). Plaintiffs' argument that they shared a copy of the FAC with Defendants in advance is unavailing, since Plaintiffs' counsel required Defendants to "not rely on the draft other than to evaluate whether they oppose the amendment." *See* Ex. A.

## VII. Conclusion

For the foregoing reasons, and those set forth in Movants' opening brief and the briefs of the CERT and Talen Defendants, the Court should grant Movants' motion and dismiss the FAC with prejudice.

10

<table>
<tr><td>

OF COUNSEL:

Richard W. Mark
Joseph Evall
Paul J. Kremer
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
(212) 351-4000

</td><td>

MORRIS, NICHOLS, ARSHT &TUNNELL LLP

*/s/ Brian P. Egan*

_____
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
began@mnat.com

*Attorneys for Defendants*
*AJG Coal, LLC*
*AJG Iowa Refined Coal LLC*
*Arbor Fuels Company, LLC*
*Arthur J. Gallagher & Co.*
*Belle River Fuels Company, LLC*
*Chem-Mod LLC*
*DTE REF Holdings, LLC*
*DTE REF Holdings II LLC*
*Gallagher Clean Energy, LLC*
*Joppa Refined Coal LLC*
*Louisa Refined Coal, LLC*
*Portage Fuels Company, LLC*
*Thomas Hill Refined Coal LLC*
*Wagner Coaltech LLC*
*Walter Scott Refined Coal LLC*

</td></tr>
</table>

September 10, 2020

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 10, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on September 10, 2020, upon the following in the manner indicated:

| | |
|---|---|
| James M. Lennon, Esquire<br>DEVLIN LAW FIRM LLC<br>1526 Gilpin Avenue<br>Wilmington, DE  19806<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |
| Bradley W. Caldwell, Esquire<br>Jason D. Cassady, Esquire<br>John Austin Curry, Esquire<br>Justin T. Nemunaitis, Esquire<br>CALDWELL CASSADY CURRY PC<br>2010 Cedar Springs Road, Suite 1000<br>Dallas, TX  75201<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |
| Frederick L. Cottrell, III, Esquire<br>Tyler E. Cragg, Esquire<br>RICHARDS, LAYTON & FINGER, P.A.<br>One Rodney Square<br>920 North King Street<br>Wilmington, DE  19801<br>*Attorneys for Defendants NRG Energy, Inc., NRG Texas Power LLC, Midwest Generation EME, LLC and Midwest Generation, LLC* | *VIA ELECTRONIC MAIL* |

| | |
|---|---|
| Timothy S. Durst, Esquire<br>Douglas M. Kubehl, Esquire<br>Christa Brown-Sanford, Esquire<br>Megan LaDriere, Esquire<br>Mark Johnson, Esquire<br>BAKER BOTTS, L.L.P.<br>2001 Ross Avenue, Suite 900<br>Dallas, TX  75201<br>*Attorneys for Defendants NRG Energy, Inc., NRG Texas Power LLC, Midwest Generation EME, LLC and Midwest Generation, LLC* | *VIA ELECTRONIC MAIL* |
| Robert S. Saunders, Esquire<br>Jessica R. Kunz, Esquire<br>SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP<br>One Rodney Square<br>P.O. Box 636<br>Wilmington, DE  19899-0636<br>*Attorneys for Defendants CERT Coal Holding, LLC, CERT Holdings LLC, CERT Holdings 2018, LLC, CERT Operations LLC, CERT Operations II LLC, CERT Operations III LLC, CERT Operations IV LLC, CERT Operations V LLC and CERT Operations RCB LLC* | *VIA ELECTRONIC MAIL* |
| Douglas R. Nemec, Esquire<br>Leslie A. Demers, Esquire<br>SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP<br>One Manhattan West<br>New York, NY  10001-8602<br>*Attorneys for Defendants CERT Coal Holding, LLC, CERT Holdings LLC, CERT Holdings 2018, LLC, CERT Operations LLC, CERT Operations II LLC, CERT Operations III LLC, CERT Operations IV LLC, CERT Operations V LLC and CERT Operations RCB LLC* | *VIA ELECTRONIC MAIL* |
| Francis DiGiovanni, Esquire<br>Thatcher A. Rahmeier, Esquire<br>FAEGRE DRINKER BIDDLE & REATH LLP<br>222 Delaware Avenue, Suite 1410<br>Wilmington, DE  19801<br>*Attorneys for Defendants Talen Energy Corporation, Brandon Shores LLC, Talen Generation LLC and H.A. Wagner LLC* | *VIA ELECTRONIC MAIL* |

| | |
|---|---|
| John Conrad Williams, Esquire<br>BAKER BOTTS L.L.P.<br>98 San Jacinto Blvd., Suite 1500<br>Austin, Texas 78701<br>*Attorneys for Defendants Talen Energy Corporation, Brandon Shores LLC, Talen Generation LLC and H.A. Wagner LLC* | VIA ELECTRONIC MAIL |
| Rodger D. Smith II, Esquire<br>Lucinda C. Cucuzzella, Esquire<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899<br>*Attorney for Defendants AEP Generation Resources Inc., Southwestern Electric Power Co. and AEP Texas Inc.* | VIA ELECTRONIC MAIL |
| Randall E. Mehrberg, Esquire<br>Terri L. Mascherin, Esquire<br>Aaron A. Barlow, Esquire<br>JENNER & BLOCK LLP<br>353 North Clark Street,<br>Chicago, IL 60654-3456<br>*Attorney for Defendants AEP Generation Resources Inc., Southwestern Electric Power Co. and AEP Texas Inc.* | VIA ELECTRONIC MAIL |
| Adam G. Unikowsky, Esquire<br>JENNER & BLOCK LLP<br>1099 New York Avenue, NW, Suite 900<br>Washington, DC 20001-4412<br>*Attorney for Defendants AEP Generation Resources Inc., Southwestern Electric Power Co. and AEP Texas Inc.* | VIA ELECTRONIC MAIL |

*/s/ Brian P. Egan*

Brian P. Egan (#6227)

3