**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

MIDWEST ENERGY EMISSIONS CORP.
and MES INC.,

                Plaintiffs,

v.

VISTRA ENERGY CORP., et al.

                Defendants.

C.A. No. 19-1334-RGA-CJB

**OPENING BRIEF IN SUPPORT OF THE TALEN, NRG, AND AEP DEFENDANTS'
MOTION TO STAY THE CASE PENDING INTER PARTES REVIEW**

OF COUNSEL:

Syed K. Fareed
Emily Pyclik
John C. Williams
**Baker Botts L.L.P.**
98 San Jacinto, Suite 1500
Austin, Texas 78701
(512) 322-2500

David J. Tobin
**Baker Botts L.L.P.**
2001 Ross Avenue, Suite 1100
Dallas, Texas 75201
(214) 953-6869

**Faegre Drinker Biddle & Reath LLP**
Francis DiGiovanni (#3189)
Thatcher A. Rahmeier (#5222)
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
(302) 467-4200
francis.digiovanni@faegredrinker.com
thatcher.rahmeier@faegredrinker.com

*Attorneys for Defendants Talen Energy
Corporation, Brandon Shores LLC, Talen
Generation LLC, and H.A. Wagner LLC*

OF COUNSEL:

Randall E. Mehrberg
Terri L. Mascherin
Aaron A. Barlow
Cayman C. Mitchell
**JENNER & BLOCK LLP**
353 N. Clark Street
Chicago, IL 60654-3456
(312) 222-9350

Adam G. Unikowsky
**JENNER & BLOCK LLP**
1099 New York Avenue, N.W.
Suite 900
Washington, DC 20001-4412
(202) 639-6000

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
Rodger D. Smith II (#3778)
Lucinda C. Cucuzzella (#3491)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@mnat.com
ccucuzzella@mnat.com

*Attorneys for Defendants AEP Generation Resources Inc., Southwestern Electric Power Co. and AEP Texas Inc.*

OF COUNSEL:

Paul R. Morico
Elizabeth Durham Flannery
Ali Dhanani
Thomas B. Carter, Jr.
**BAKER BOTTS L.L.P.**
910 Louisiana Street
Houston, TX 77002
713-229-1234
paul.morico@bakerbotts.com
liz.flannery@bakerbotts.com
ali.dhanani@bakerbotts.com
thomas.carter@bakerbotts.com

**RICHARDS, LAYTON & FINGER, P.A.**
Frederick L. Cottrell, III (#2555)
Tyler E. Cragg (#6398)
One Rodney Square
920 N. King Street
Wilmington, DE 19801
302-651-7700
cottrell@rlf.com
cragg@rlf.com

*Attorneys for Defendants NRG Energy, Inc., NRG Texas Power LLC, Midwest Generation EME, LLC, and Midwest Generation, LLC*

## <u>TABLE OF CONTENTS</u>

**Page**

I.     NATURE AND STAGE OF THE PROCEEDINGS AND STATEMENT OF FACTS ... 1

    **A.**     District Court Proceedings ...................................................................... 1

    **B.**     PTAB Proceedings ................................................................................ 3

II.    SUMMARY OF THE ARGUMENT ............................................................. 5

III.   ARGUMENT ................................................................................................ 6

    **A.**     A Stay Will Simplify the Issues for Trial .............................................. 6

    **B.**     The Early Status of the District Court Litigation Supports a Stay ........ 11

    **C.**     A Stay Will Not Unduly Prejudice Plaintiffs ......................................... 12

    **D.**     The Totality of Factors Weighs in Favor of a Stay ............................... 14

IV.    CONCLUSION .............................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*454 Life Scis. Corp. v. Ion Torrent Sys., Inc.*,
  No. 15-595-LPS, 2016 WL 6594083 (D. Del. Nov. 7, 2016)..................................................13

*CallWave Commc'ns, LLC v. AT&T Mobility, LLC*,
  No. 12-1701-RGA, 2015 WL 1284203 (D. Del. Mar. 18, 2015) .....................................10, 13

*Contour IP Holding, LLC v. GoPro, Inc.*,
  No. 15-1108-LPS-CJB, 2016 WL 4474340 (D. Del. July 14, 2016)...........................9, 10, 12

*Ethicon LLC v. Intuitive Surgical, Inc.*,
  No. 17-871-LPS, 2019 WL 1276029 (D. Del. Mar. 20, 2019) ...............................................10

*Lockwood v. Am. Airlines, Inc.*,
  107 F.3d 1565 (Fed. Cir. 1997).................................................................................................4

*Miics & Partners Am. Inc. v. Toshiba Corp.*,
  No. 14-803-RGA, 2015 WL 9854845 (D. Del. Aug. 11, 2015) ..............................6, 11, 13, 15

*Princeton Dig. Image Corp. v. Konami Dig. Entm't Inc.*,
  No. 12-1461-LPS-CJB, 2014 WL 3819458 (D. Del. Jan. 15, 2014).......................6, 10, 12, 14

STATUTES, RULES & REGULATIONS

37 C.F.R. § 1.321(a) ........................................................................................................................7

37 C.F.R. § 42.100(c) ....................................................................................................................12

37 C.F.R. § 42.107 ........................................................................................................................14

35 U.S.C. § 102(a)(1) ....................................................................................................................11

35 U.S.C. § 119(e) ...........................................................................................................................3

35 U.S.C. § 299 ................................................................................................................................2

35 U.S.C. § 311(c)(1) ............................................................................................................. *passim*

35 U.S.C. § 313 ..............................................................................................................................14

35 U.S.C. § 314(b)(1) ....................................................................................................................14

35 U.S.C. § 315(c) ...........................................................................................................................3

35 U.S.C. § 316(a)(11)................................................................................................12, 14

35 U.S.C. § 318(a) ..........................................................................................................15

FED. R. CIV. P. 12(b)(6) ...................................................................................................2

**OTHER AUTHORITIES**

M.P.E.P. § 2159 ................................................................................................................3

Talen Energy Corporation, Talen Generation LLC, Brandon Shores LLC, and H.A. Wagner LLC ("Talen"), NRG Energy, Inc., NRG Texas Power LLC, Midwest Generation EME, LLC, Midwest Generation, LLC ("NRG"), and AEP Generation Resources Inc., Southwestern Electric Power Co., and AEP Texas Inc. ("AEP") (collectively, "Defendants")[1] move to stay this action, pending issuance of final written decisions by the PTAB on Defendants' *Inter Partes* Review ("IPR") petitions.   The original complaint asserted two patents:   U.S. Patent Nos. 8,168,147 ("147 Patent") and 10,343,114 ("114 Patent").  D.I. 1.  Since then, the PTAB instituted IPR on two petitions against the '114 Patent on October 26, 2020, and Defendants expect the PTAB to issue institution decisions on two petitions against the '147 Patent by December 4, 2020. The three remaining patents issued during the pendency of this litigation, were first asserted in the First Amended Complaint on July 15, 2020 (D.I. 130), and cannot yet be challenged by IPR.  *See* 35 U.S.C. § 311(c)(1) (petitioners must "9 months after the grant of a patent" to file IPR).  Because Plaintiffs treat the '114 Patent claims (against which two IPR proceedings have been instituted) as representative of the remaining patents (which are all from the same family), a stay would simplify the issues for trial and is appropriate now.

I.     **NATURE AND STAGE OF THE PROCEEDINGS AND STATEMENT OF FACTS**

    A.     **District Court Proceedings**

The case is in its early stages.  The operative complaint is still unknown due to Plaintiffs' prior improper pleading and repeated decisions to amend their allegations.  No depositions have been noticed or scheduled, the *Markman* hearing is over 7 months away, opening expert reports

---

[1] The remaining defendants are already stayed "until the Court determines that Plaintiffs have stated a viable claim for relief against those Defendants."  D.I. 166.

are more than 17 months away, and trial is more than 27 months away.  Key milestones are described below.

Original Complaint:  The original complaint was filed July 17, 2019, asserting the '147 Patent and the '114 Patent, both from the same patent family.  D.I. 1.  On June 18, 2020, the Court recommended dismissing the complaint.  D.I. 110, *adopted without objection*, D.I. 127.

First Amended Complaint:  The first amended complaint ("FAC") was filed July 15, 2020. D.I. 130.  The FAC asserted three newly issued patents from the same family as the '147 and '114 Patents—adding U.S. Patent Nos. 10,589,225 ("'225 Patent"), 10,596,517 ("'517 Patent"), and 10,668,430 ("'430 Patent").  Talen, NRG, RC, Refined Coal LLC, and CERT again filed motions to dismiss under FED. R. CIV. P. 12(b)(6), and Talen also sought severance for improper joinder under 35 U.S.C. § 299.  *See, e.g.*, D.I. 172, 178; *see also* D.I. 119 at 1 n.1, n.2, n.3 (grouping specific parties as "RC Defendants," "Refined Coal LLC Defendants," and "CERT Defendants"). Oral argument is scheduled for January 6, 2021.  D.I. 233.

Stay of Majority of Defendants:  On July 31, 2020, the Court stayed the case against RC, Refined Coal LLC, and CERT "until the Court determines that Plaintiffs have stated a viable claim for relief against those Defendants."  D.I. 166.  The Court found "a very real chance . . . that Plaintiffs will not ultimately be able to sustain claims against these Defendants," and further reasoned that "it is clear that the case is still in its early stages."  *Id.*  The stayed defendants constitute a majority of defendants against whom ME2C asserts a claim for infringement.

Second Amended Complaint:  On September 28, 2020, Plaintiffs sought leave to file a second amended complaint.  D.I. 218.  Talen opposed the motion for leave.  D.I. 221.  A telephone conference is set for November 16, 2020.  D.I. 229.

Infringement Contentions:   On August 28, 2020, Plaintiffs served ¶ 7(c) infringement contentions against Talen, NRG, and AEP.  D.I. 193–195.  On October 2, 2020, Plaintiffs served amended ¶ 7(c) contentions against Talen and NRG.  D.I. 223, 224.  The contentions lead with the '114 Patent, and then rely on "see '114 …" for the remaining four patents.  *See* Ex. A.[2]

Future Milestones:   Initial invalidity contentions are due January 7, 2021.  D.I. 140 ¶ 7(d).  Hearing on claim construction is set for July 13, 2021.  *Id.* ¶¶ 13-14.  Fact discovery is set to close on March 7, 2022.  *Id.* ¶ 8(a).  Opening expert reports are due April 5, 2022.  *Id.* ¶ 8(g)(i).  A first trial is scheduled for January 9, 2023.  *Id.* ¶ 22.

### B.      PTAB Proceedings

The '114, '225, '517, and '430 Patents were all filed after the America Invents Act (AIA) took effect on March 16, 2013, but purport to claim priority through 35 U.S.C. § 119(e) to pre-AIA applications.   *See* M.P.E.P. § 2159, filed as Ex. B.   Defendants contend that because the '114, '225, '517, and '430 Patents cannot demonstrate priority to pre-AIA applications, they are considered post-AIA patents.  Thus, a statutory waiting period of nine months applies before IPR petitions could be filed.  *See* 35 U.S.C. § 311(c)(1).

Talen, NRG, and Vistra (which was subsequently dismissed) filed two IPR petitions against each of the '114 and '147 Patents (four petitions in total) months *before* receiving Plaintiffs' infringement contentions.  AEP subsequently filed four "copycat" petitions against the '114 and '147 Patents.[3]  Status of the IPR proceedings is shown below.

---

[2] All citations to exhibits refer to those attached to the declaration of David Tobin, filed with this brief.

[3] On July 15, 2020, AEP filed petitions in IPR2020-1294 and -1295 challenging the '114 Patent, and IPR2020-1296 and -1297 challenging the '147 Patent.  AEP presented the same art as Talen and NRG and informed the PTAB that, if the Talen and NRG petitions are instituted, AEP would seek to join those of Talen and NRG under 35 U.S.C. §315(c).

| Asserted Patents | | IPR Petitions Filed by Talen and NRG | | |
|---|---|---|---|---|
| | Issue Date | §311(c)(1) Date | Petitions Filed | Status |
| '114 | 7/9/2019 | 4/9/2019 | IPR2020-00832 (Ex. C) IPR2020-00834 (Ex. D) (each filed 4/21/2020) | Both petitions instituted 10/26/2020. (Ex. E, F) |
| '147 | 5/1/2012 | N/A | IPR2020-00926 (Ex. G) IPR2020-00928 (Ex. H) (each filed 5/27/2020) | Institution decisions are expected 12/4/2020. |
| '225 | 3/17/2020 | 12/17/2020 | Not yet filed | N/A |
| '517 | 3/24/2020 | 12/24/2020 | Not yet filed | N/A |
| '430 | 6/2/2020 | 3/2/2021 | Not yet filed | N/A |

The PTAB instituted IPR on all challenged claims of the '114 Patent, which are claims 1-9 and 12-30. *See* Ex. E, F.

Among other findings, the PTAB held in the IPR2020-00832 institution decision that "Patent Owner, on this record, has not presented persuasive arguments or evidence that the '114 patent is entitled to a priority date earlier than [its] May 14, 2018 filing date." Ex. E at 31. The PTAB devoted 14 pages to the legal and factual bases for why the '114 Patent cannot achieve priority to the earliest filing date of App. No. 60,605,640 (filed Aug. 30, 2004), the first provisional application in the patent family. *Id.* at 18-31. The PTAB explained that to achieve priority to earlier applications, the claim limitations of the '114 Patent must be supported in "each application in the chain" of priority. *Id.* at 26 (citing *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1571 (Fed. Cir. 1997)). The PTAB agreed with Talen and NRG that intervening application nos. 11/209,163 ('163 application) and 12/201,595 ('595 application) "do not provide written description support for the challenged claims" of the '114 patent (*id.* at 26), which require "(1) the addition of [bromine] with the coal or the combustion chamber and (2) the injection of the sorbent material . . . downstream of the combustion chamber." *Id.* at 28. This same defect is present in the three newly added patents, as each claims priority through the '163 and '595 applications. *See*

D.I. 130-3, 130-4, 130-5.  Consequently, the PTAB, following what it did in the IPRs for the '114 Patent, would be expected to institute IPRs on these patents as well.

II.   **SUMMARY OF THE ARGUMENT**

The Court should stay this case pending completion of the IPR proceedings.  Each of the Court's familiar stay factors favors staying this case:

1.   A stay will simplify the issues in this litigation—by invalidating some or all of the asserted claims, or by estopping Defendants from raising invalidity grounds that were raised or could have been raised in the IPRs.  By Plaintiffs' own admissions in their infringement contentions, the one patent for which IPR has already been instituted ('114 Patent) is representative of the remaining four patents from the same family.  Because the PTAB is addressing priority dates of the patents, the accused processes themselves may constitute prior art.  *Compare* D.I. 130 ¶¶ 175-181 (asserting that Talen's predecessors were practicing the accused processes prior to 2015, *i.e.*, prior to the filing date of four out of five asserted patents), *with* Ex. E at 31 (Patent Owner had not demonstrated priority for the '114 Patent prior to May 14, 2018).

2.   The District Court litigation is still in the early stages.  There is no operative complaint on file, and the majority of remaining defendants are already stayed pending resolution of motions to dismiss.  D.I. 120, D.I. 166.  No depositions have been taken or even requested yet.  Key milestones in the case are months, if not years, away.  The parties and/or Court should not be required to undergo the significant expenses of invalidity contentions, claim construction, fact depositions, and expert reports when there is the very real possibility that the PTAB will dispose of the case—either through invalidating patents and printed publications, or through pushing back the priority date of Plaintiffs' patents from 2004 (*see* D.I. 130 ¶ 63) to 2018.  In any event, final written decisions on the petitions for the '114 Patent are expected by October 2021, more than one year before the first scheduled trial date of January 9, 2023.

3. A stay of the District Court litigation pending IPR will not unduly prejudice Plaintiffs. The petitions for IPR on the '114 Patent were filed mere weeks after expiration of the statutory waiting period under 35 U.S.C. § 311(c)(1). Within four days of receiving the PTAB's institution decisions, movants requested Plaintiffs for a meet and confer on their request to stay the litigation pending IPRs. The parties participated in a meet and confer on November 5, and this motion for stay was filed the day after. In all, the motion was filed less than two weeks after institution decisions from the PTAB. Plaintiffs will not be unduly prejudiced by the stay for the additional reason that Talen, NRG, and AEP do not compete with Plaintiffs; the moving Defendants generate and sell electricity, while Plaintiffs resell commodity chemicals.

III. **ARGUMENT**

"The standard for granting a stay is: (1) whether granting a stay will simplify the issues for trial; (2) whether discovery is complete and a trial date is set; and (3) whether granting a stay would cause the non-moving party to suffer undue prejudice from any delay, or a clear tactical disadvantage." *Miics & Partners Am. Inc. v. Toshiba Corp.*, No. 14-803-RGA, 2015 WL 9854845, at *1 (D. Del. Aug. 11, 2015); *Princeton Dig. Image Corp. v. Konami Dig. Entm't Inc.*, No. 12-1461-LPS-CJB, 2014 WL 3819458, at *2 (D. Del. Jan. 15, 2014).

Each factor strongly favors a stay in this case.

A. **A Stay Will Simplify the Issues for Trial**

Plaintiffs have presented the '114 Patent as representative of the other four asserted patents, and the PTAB will be addressing outcome-determinative issues regarding the '114 Patent that will apply across the board for all asserted patents. For each of the IPR2020-00832 and IPR2020-00834 petitions, the PTAB instituted IPR on claims 1-9 and 12-30 of the '114 Patent. Ex. E, F. The petition in IPR2020-00926 challenged all live claims of the '147 Patent (claims 17-20), and the

petition in IPR2020-00928 challenged claims 18 and 19 of the '147 Patent.[4]  Ex. G, H.  Although Defendants cannot file IPR petitions for the newly asserted patents prior to December 2020 ('225 and '517 Patents) or March 2021 ('430 Patent) under 35 U.S.C. § 311(c)(1), granting a stay now will substantially simplify the issues in the case.

### 1.    The '114 Patent is representative of the remaining patents

All of the asserted patents are from the same patent family and pertain to removing mercury using activated carbon and bromine.  Indeed, the asserted claims of each of the patents are so similar that Plaintiffs themselves have asserted that their infringement contentions for the '114 Patent suffice, and are nearly duplicative of, their infringement contentions for the remaining patents.

On August 28, 2020, Plaintiffs first provided their infringement contentions.  D.I. 140 ¶ 7(c); D.I. 193–195.  The contentions were served more than *four months after* Talen and NRG filed two IPR petitions against the '114 Patent, and more than three months after Talen and NRG filed two IPR petitions against the '147 Patent.  The infringement contentions chart the '114 Patent, but provide little more than "see '114" for the remaining four patents, as shown from the below excerpts from Plaintiffs' contentions against Talen.  *See* Ex. A.

| | '147 Initial Claim Chart | |
|---|---|---|
| **No.** | **'147 Claim Element** | **Accused Coal Plants** |
| *17* | A method according to claim 1, further comprising injecting the particulate sorbent material at a sorbent material injection rate and injecting separately the bromine containing promoter into a gas stream whereby in-flight reaction produces the promoted brominated sorbent, wherein the promoter is reacted in the gas phase or as a vapor, wherein the promoter is added at from about 1 to about 30 grams per 100 grams of the sorbent material. | See '114 claim 1 and 4. |

---

[4] During the District Court litigation, ME2C disclaimed claims 1-16 and 21-25 of the '147 Patent. Ex. I (12/11/2019 statutory disclaimer); 37 C.F.R. § 1.321(a).

| 18 | A method according to claim 17, wherein the gas stream is a mercury containing gas. | See '114 claim 1 |
| 19 | A method according to claim 18, wherein the gas stream is a transport gas. | Because the sorbent is injected into the gas as it is being transported, it is a transport gas. |
| 20 | A method according to claim 17, wherein the promoter injection rate and the sorbent injection rate into the gas are determined at least in part on the monitored mercury content of the cleaned gas. | See '114 claim 1h. |

**'225 Initial Claim Chart**

| No. | '225 Claim Element | Accused Coal Plants |
|---|---|---|
| 1a | A method for treating a mercury-containing gas, the method comprising: | See '114 1a. |
| 1b | combusting a mixture comprising coal, pyrolysis char, and an additive comprising HBr, a bromide compound, or a combination thereof, to form the mercury-containing gas; and | See '114 1b, 1c. In addition, combusted coal forms pyrolysis char.  Talen contends that ME2C has not explained how combusted coal forms pyrolysis char. However, pyrolysis is a well understood physical phenomenon. When the coal is heated in the combustion chamber, pyrolysis occurs. The result is called char. |
| 1c | adding a particulate sorbent material comprising activated carbon into the mercury-containing gas. | See '114 1d |

**'517 Claim Chart**

| No. | '517 Claim Element | Accused Coal Plants |
|---|---|---|
| 1a | A method for reducing mercury in a mercury-containing gas, the method comprising: | See '114 1a |
| 1b | combusting coal in a combustion chamber, the coal comprising an additive comprising $Br_2$, HBr, a bromide compound, or a combination thereof, to form the mercury-containing gas; and | See '114 1b |
| 1c | collecting mercury in the mercury-containing gas with a sorbent added to the mercury-containing gas, the sorbent comprising activated carbon. | See '114 1d, 1e |

**'430 Claim Chart**

| No. | '430 Claim Element | Accused Coal Plants |
|---|---|---|
| 1a | A method of separating mercury from a mercury-containing gas, the method comprising: | See '114 1a |
| 1b | combusting coal in a combustion chamber, to provide the mercury-containing gas, wherein | See '114 1b |
| 1c | the coal comprises an additive comprising $Br_2$, HBr, a bromide compound, or a combination thereof, wherein the additive is added to the coal before the coal enters the combustion chamber, or | See '114 1c |

8

| 1d | the combustion chamber comprises an additive comprising $Br_2$, HBr, a bromide compound, or a combination thereof or | See '114 1c |
| 1e | a combination thereof; | See '114 1c |
| 1f | injecting a sorbent comprising activated carbon into the mercury-containing gas downstream of the combustion chamber; | See '114 1d |
| 1g | contacting mercury in the mercury-containing gas with the sorbent; and | See '114 1e |
| 1h | separating the sorbent contacted with the mercury from the mercury-containing gas. | See '114 1f |

### 2.   PTAB's Final Written Decision against the '114 Patent will simplify the issues for trial

"[E]ven Plaintiffs acknowledge" through their infringement contentions that the four patents in which IPR petitions have not yet been instituted are "closely related to the" '114 Patent and "contain terms identical or similar to terms found in claims instituted for review." *See Contour IP Holding, LLC v. GoPro, Inc.*, No. 15-1108-LPS-CJB, 2016 WL 4474340, at *3 (D. Del. July 14, 2016) ("PTAB's sound judgment with respect to other [claim] terms . . . or how the art might generally read could be instructive to this Court" regarding non-instituted claims). Indeed, the three additional patents ('225, '517, and '430) each suffer from one of the identical flaws that the PTAB analyzed in the institution decisions against the '114 Patent. As described above, the PTAB considered in detail two applications in the priority chain of the '114 patent, the '163 application and the '595 application, and held in IPR2020-00832 that "at least the '163 application and the '595 application do not provide written description support for the challenged claims" of the '114 Patent. Ex. E at 26. The '225, '517, and '430 Patents also purport to claim priority through the '163 application and the '595 application, and it is expected that the PTAB would be able to dispose of the claims in these three patents in a similar manner. As described below, priority date of the asserted patents will be a critical issue in the case.

The PTAB's decisions in the IPR proceedings will thus necessarily simplify the issues before this Court—either by invalidating some or all of the asserted claims, or by estopping

Defendants from raising invalidity grounds that they raised or reasonably could have raised in the IPRs. *Ethicon LLC v. Intuitive Surgical, Inc.*, No. 17-871-LPS, 2019 WL 1276029, at *2 (D. Del. Mar. 20, 2019) (staying case even after claim construction rulings and completion of fact discovery); *Contour*, 2016 WL 4474340, at *3. Here, the PTAB instituted IPR on two petitions, each challenging claims 1-9 and 12-30 of the '114 Patent. Ex. E, F. This corresponds to *all* claims asserted against Talen and AEP for the '114 Patent, and all but two dependent claims (claims 10-11) asserted against NRG.[5] Ex. A. The IPR petitions against the '147 Patent collectively address all claims of the '147 Patent that have not been statutorily disclaimed (claims 17-20). Ex. C, D, I. Accordingly, "a very high percentage of the asserted patents' claims are at issue in the IPR proceedings." *Contour*, 2016 WL 4474340, at *3. "[W]ith such a high percentage of the patent's claims . . . potentially at issue before the PTO, there will likely be notable simplification of issues if a stay is granted and the IPR[s] commence[]." *Princeton*, 2014 WL 3819458, at *2. Even if the PTAB were to decide not to institute IPR on the '147 Patent or the three newly added patents, "the first IPR [on the '114 Patent] is likely to alter the landscape in such a way as to simplify matters for trial." *CallWave Commc'ns, LLC v. AT&T Mobility, LLC*, No. 12-1701-RGA, 2015 WL 1284203, at *1 (D. Del. Mar. 18, 2015) (finding simplification of issues for two petitions challenging different claims of the same patent, "even if the second IPR is dismissed"). This is because the subject matter of the claims across the five patents is similar, and as explained below, the PTAB is addressing priority date of patents in the same patent family.

---

[5] NRG has also challenged the sufficiency of Plaintiffs' contentions on these additional dependent claims, which cite no evidentiary basis for asserting them.

### 3.    The PTAB will address the priority date of the asserted patents

The PTAB's ruling on whether the '114 Patent claims have priority before their 2018 filing date is particularly significant in this case, as the same processes accused of infringement could be used to establish "on sale" or "in public use" prior art under 35 U.S.C. § 102(a)(1) (post-AIA). Plaintiffs assert the following regarding MATS and its relationship to the case:

> In 2011, the EPA finalized the first national standards to reduce mercury and other toxic air pollution from coal-fired plants (the Mercury and Air Toxics Standards or "MATS"). *Most coal-fired power plants were required to comply with this rule by 2016.*

FAC, D.I. 130 ¶ 64 (emphasis added).  Plaintiffs then assert that Defendants' coal plants infringe the asserted patents when using "added bromine and/or bromide and activated carbon to ensure compliance with federal MATS regulations." *See, e.g.*, *id.* ¶ 163 (AEP), ¶¶ 168-170 (NRG).  Upon a final written decision confirming priority for the '114 Patent of no earlier than May 2018, there is the very real possibility that each of the accused processes will constitute prior art under 35 U.S.C. § 102(a)(1) (post-AIA).

### B.    <u>The Early Status of the District Court Litigation Supports a Stay</u>

The early stage of this case strongly favors a stay.  Other than AEP, none of the defendants (Talen, NRG, RC, Refined Coal LLC, and CERT) has answered the complaints.  As to other case milestones, the Court has previously explained:

> While discovery has started and there are trial dates, there have been no depositions, claim construction briefing has not started (although it is about to), and expert discovery is a long way off.  The case is relatively young.  The major expenses of the parties are yet to come.

*Miics*, 2015 WL 9854845, at *1.  Here too, the key dates are "a long way off."  There have been no depositions; claim construction briefing starts March 30, 2021 (D.I. 140 ¶ 13); the claim construction hearing is July 13, 2021 (*id.* ¶ 14); opening expert reports are due April 5, 2022 (*id.* ¶ 8(g)(i)); and a first trial is set for January 9, 2023.  *Id.* ¶ 22.  These dates "are all still many

months to well over a year away." *See Princeton*, 2014 WL 3819458, at *4. Final written decisions for the '114 Patent petitions are expected October 2021, and upon institution, final written decisions would be expected for the '147 Patent in December 2021. 35 U.S.C. § 316(a)(11); 37 C.F.R. §42.100(c) (final written decisions "normally not more than one year" after institution). These PTAB dates precede opening expert reports, and possibly a final claim construction order. Staying the case now "prevents the court and parties from expending resources on claims that may later be rendered invalid." *Contour*, 2016 WL 4474340, at *3.

### C.    A Stay Will Not Unduly Prejudice Plaintiffs

In considering whether a stay will be unduly prejudicial or present a clear tactical advantage, courts typically consider four factors:  (1) the timing of the request for IPR; (2) the timing of the request for a stay; (3) the status of the review proceedings; and (4) the relationship of the parties. *Id.* at *4. Each factor strongly favors a stay.

### 1.    Talen's and NRG's IPR petitions were timely

On April 21, 2020, Talen and NRG filed two petitions challenging the '114 Patent less than *two weeks* after the earliest period the petitions could be filed pursuant to 35 U.S.C. § 311(c)(1). Talen and NRG filed two more petitions challenging the '147 Patent slightly more than one month later on May 27, 2020. All four petitions were filed more than three months *before* Plaintiffs provided their infringement contentions on August 28, 2020 (D.I. 195), and more than 1.5 months *before* Plaintiffs even added the '225, '517, and '430 Patents to the case. D.I. 130. The statutory waiting period of 35 U.S.C. § 311(c)(1) has not yet expired for the '225, '517, and '430 Patents, and moving Defendants currently intend to file petitions challenging those newly added patents after the waiting period ends. Thus, the timing of the petitions weighs in favor of a stay.

### 2.      The request for a stay was timely

Defendants promptly requested a stay pending the outcomes of IPR.  Within *four days* of the October 26, 2020 institution decisions for the '114 Patent (Ex. E, F), Defendants requested a meet and confer from Plaintiffs to request their consent to a stay pending IPR. Ex. J.  The present motion for a stay was filed the day after the meet and confer, and on the same day that Plaintiffs confirmed that they would oppose the motion to stay.  "[S]hortly after the PTAB issue[s] its decision[] to proceed with a validity trial . . . is generally the ideal time at which to file" a motion to stay.  *454 Life Scis. Corp. v. Ion Torrent Sys., Inc.*, No. 15-595-LPS, 2016 WL 6594083, at *4 (D. Del. Nov. 7, 2016).  Defendants' IPR petitions were filed while "[t]he case [was] relatively young" and when the "major expenses of the parties are yet to come."  *Miics*, 2015 WL 9854845, at *1.  There have been no depositions, claim construction briefs, or expert reports in the District Court litigation.  A stay at this time "would not be inconvenient to anyone."  *Id.*  The timing of Defendants' motion weighs in favor of a stay.

### 3.      Plaintiffs do not compete with Defendants

Plaintiffs have not sought a preliminary injunction, as they are not competitors of Talen, NRG, or AEP.  Plaintiffs characterize their business as "attempt[ing] to compete with the Refined Coal companies," who are already stayed.  D.I. 125 at 4; *see* D.I. 166 (finding "Plaintiffs' showing of harm to competition is not robust").  The Refined Coal defendants characterized Plaintiffs' business as "selling commodity chemicals."  D.I. 126 at 2.  Under either characterization, Plaintiffs do not compete with Talen, NRG, or AEP, whose business is electrical power generation.

The parties are not competitors, so "[a]ny purported harm that [Plaintiffs] suffer[] from a stay can be fully compensated by monetary damages," and there is no risk of undue prejudice from a stay.  *CallWave*, 2015 WL 1284203, at *1; *see Miics*, 2015 WL 9854845, at *1 ("Plaintiffs are not competitors of the defendants, and . . . are realistically looking only for monetary damages.  It

does not appear that they will suffer any undue prejudice if the motion is granted."); *Princeton*, 2014 WL 3819458, at *6 (factor "in favor of a stay" where "there is no dispute that the parties are not direct competitors" and "Plaintiff's damages, if any, are purely monetary").  The relationship of the parties weighs in favor of a stay.

### 4.      The status of the IPR proceedings favors a stay

Defendants' timeliness in filing IPR petitions and their motion to stay reduces any undue prejudice to Plaintiffs.  The PTAB has already decided to institute review on two petitions for the '114 Patent and is expected to decide whether to institute review by December 4, 2020 for two petitions for the '147 Patent (within 6 months of being accorded a filing date).  *See* 35 U.S.C. §§ 313, 314(b)(1); 37 C.F.R. § 42.107.  IPR proceedings resolve quickly and are time-limited by statute, and the PTAB normally issues a final decision no later than one year after institution.  *See* 35 U.S.C. § 316(a)(11).

### D.      The Totality of Factors Weighs in Favor of a Stay

Plaintiffs asserted the '114 Patent as their flagship patent in infringement contentions, and *two* petitions for inter partes review have already been instituted that each challenge claims 1-9 and 12-30 of the '114 Patent.  These petitions address not only invalidating prior art, but also whether Plaintiffs are entitled to a priority date for the '114 Patent of August 2004 or May 2018.  Petitions on the '147 Patent have also been filed, including a challenge to priority date and some overlapping references with the '114 Patent petitions, and institution decisions are due from the PTAB around the time that briefing on the present motion is complete.  Petitions for the three remaining patents are not yet available to be filed per statute, but the proceedings on the representative '114 Patent and on the '147 Patent will no doubt be informative, if not dispositive. The currently pending petitions and Plaintiffs' responses will undoubtedly add to the prosecution history of each patent and will become part of the record for claim construction, to the extent claim

14

construction by the District Court would even be needed after the IPR proceedings have concluded. Given that this case is already stayed for most defendants, and is still in the early phases for the remaining Defendants, the Court and the parties should not need to spend the time and resources to pursue litigation in the District Court on claims that may very well be invalidated by the PTAB. The District Court proceedings should be stayed against Talen, NRG, and AEP to allow the PTAB proceedings to run their course.

IV.   **CONCLUSION**

Similar to the *MIICS v. Toshiba* case, 2015 WL 9854845, at *2, Defendants request "a stay of limited duration"—at least until final written decisions have been entered pursuant to 35 U.S.C. § 318(a) regarding the four petitions already filed in the case (IPR2020-00832, IPR2020-00834, IPR2020-00926, and IPR2020-00928).   At that point, and prior to any appeals to the Federal Circuit, the parties can apprise the Court of the status of the IPR proceedings and provide their proposals for the Court's review as to whether the District Court litigation should be further stayed. Defendants further request that the Court order the parties to submit a joint status report on the above IPR proceedings ninety (90) days after the Court's entry of a stay order, and every ninety (90) days thereafter.

Dated:  November 6, 2020

OF COUNSEL:

Syed K. Fareed
Emily Pyclik
John C. Williams
**BAKER BOTTS L.L.P.**
98 San Jacinto, Suite 1500
Austin, Texas 78701
(512) 322-2500

David J. Tobin
**BAKER BOTTS L.L.P.**
2001 Ross Avenue, Suite 1100
Dallas, Texas 75201
(214) 953-6869

**FAEGRE DRINKER BIDDLE & REATH LLP**

*/s/Francis DiGiovanni*
Francis DiGiovanni (#3189)
Thatcher A. Rahmeier (#5222)
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
(302) 467-4200
francis.digiovanni@faegredrinker.com
thatcher.rahmeier@faegredrinker.com

*Attorneys for Defendants Talen Energy
Corporation, Brandon Shores LLC, Talen
Generation LLC, and H.A. Wagner LLC*

OF COUNSEL:

Randall E. Mehrberg
Terri L. Mascherin
Aaron A. Barlow
Cayman C. Mitchell
**JENNER & BLOCK LLP**
353 N. Clark Street
Chicago, IL 60654-3456
(312) 222-9350

Adam G. Unikowsky
**JENNER & BLOCK LLP**
1099 New York Avenue, N.W.
Suite 900
Washington, DC 20001-4412
(202) 639-6000

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Rodger D. Smith*
Rodger D. Smith II (#3778)
Lucinda C. Cucuzzella (#3491)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@mnat.com
ccucuzzella@mnat.com

*Attorneys for Defendants AEP Generation
Resources Inc., Southwestern Electric Power
Co. and AEP Texas Inc.*

RICHARDS, LAYTON & FINGER, P.A.

OF COUNSEL:

/s/*Frederick L. Cottrell, III*

Paul R. Morico
Elizabeth Durham Flannery
Ali Dhanani
Thomas B. Carter, Jr.
**BAKER BOTTS L.L.P.**
910 Louisiana Street
Houston, TX 77002
713-229-1234
paul.morico@bakerbotts.com
liz.flannery@bakerbotts.com
ali.dhanani@bakerbotts.com
thomas.carter@bakerbotts.com

Frederick L. Cottrell, III (#2555)
Tyler E. Cragg (#6398)
One Rodney Square
920 N. King Street
Wilmington, DE 19801
302-651-7700
cottrell@rlf.com
cragg@rlf.com

*Attorneys for Defendants NRG Energy, Inc.,*
*NRG Texas Power LLC, Midwest Generation*
*EME, LLC, and Midwest Generation, LLC*