# EXHIBIT G

UNITED STATES PATENT AND TRADEMARK
OFFICE

PATENT TRIAL AND APPEAL BOARD

---

NRG Energy, Inc.,
Talen Energy Corporation, and
Vistra Energy Corp.

Petitioners

v.

Midwest Energy Emissions Corp.

Patent Owner

---

IPR2020-00926
Patent No. 8,168,147

**PETITION FOR *INTER PARTES* REVIEW**

Petition for IPR2020-00926
USP 8,168,147

# **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................1

II.   MANDATORY NOTICES UNDER 37 C.F.R. §42.8(a)(1)...........................1

    A.    Real Party-In-Interest under 37 C.F.R. §42.8(b)(1) .............................1

        1.   Additional Potential Real Parties in Interest Identified by Talen........................................................................ 2

        2.   Additional Potential Real Parties in Interest Identified by Vistra ........................................................................ 4

        3.   Additional Potential Real Parties in Interest Identified by NRG ......................................................................... 6

    B.    Related Matters under 37 C.F.R. §42.8(b)(2) .....................................6

    C.    Lead and Back-Up Counsel under 37 C.F.R. §42.8(b)(3) ..................8

    D.    Service Information under 37 C.F.R. §42.8(b)(4).................................8

    E.    Fees ....................................................................................9

III.  REQUIREMENTS FOR IPR UNDER 37 C.F.R. §42.104............................9

    A.    Standing ..............................................................................9

    B.    Asserted References and Prior-Art Status..............................................9

    C.    Identification of Challenged Claims ...................................................10

    D.    The Board Should Not Deny Institution .............................................10

IV.  OVERVIEW ............................................................................13

    A.    Level of Ordinary Skill ........................................................13

    B.    The Alleged Invention of the '147 Patent ..........................................13

    C.    Prosecution History of the '147 Patent ..............................................14

    D.    State of the Art ...................................................................16

        1.   Coal-Fired Plants........................................................ 16

        2.   EPA Regulations ........................................................ 17

        3.   Mercury Removal Using Activated Carbon and Halogens ..... 17

i

V.     CLAIM CONSTRUCTION ............................................................20

VI.    GROUND 1: CLAIMS 1-2, 4-6, 9-17, AND 20-24 ARE OBVIOUS
       OVER NELSON IN VIEW OF OLSON-PAPER .........................20

       A.    Overview of Ex[1012] ("Nelson") ...................................20

       B.    Overview of Ex[1079] ("Olson-Paper") ...........................22

       C.    Reasons to Combine References .......................................27

       D.    Claim 1 ............................................................................30

             1.    1(Preamble) —"A method for separating mercury from a
                   mercury containing gas comprising:" ......................... 30

             2.    Elements 1(a)(1)-1(a)(2) ......................................... 30

             3.    Elements 1(a)(3)-1(a)(4) ......................................... 34

             4.    Element 1(b) —"chemically reacting elemental mercury in
                   the mercury containing gas with the promoted brominated
                   sorbent to form a mercury/sorbent chemical composition"..... 39

             5.    Element 1(c)—"separating particulates from the mercury
                   containing gas, the particulates including ash and the
                   mercury/sorbent chemical composition." ................. 41

       E.    Dependent Claims ............................................................42

             1.    Claim 2: "the bromine containing promoter is in gaseous
                   form." ...................................................................... 42

             2.    Claim 4: "the carbocation paired with a bromide anion
                   chemically react with elemental mercury form the
                   mercury/sorbent composition."................................... 42

             3.    Claim 5: "at least a portion of the basic binding sites of the
                   activated carbon reacts with oxidized mercury in the
                   mercury containing gas to form another mercury/sorbent
                   chemical composition."............................................... 42

             4.    Claim 6. "the step of separating particulates from the
                   mercury containing gas comprises separating in a
                   particulate separator comprising one or more electrostatic
                   precipitators."............................................................ 46

             5.    Claims 9-10:............................................................ 46

             6.    Claims 11-12 .......................................................... 47

7.    Claims 13-14: ........................................................... 48

8.    Claim 15. "the step of promoting at least a portion of the available sorbent material occurs at least partially outside of the mercury containing gas." ............................... 49

9.    Claim 16. "the promoted brominated sorbent combines with at least 70% of the mercury present in the mercury containing gas." ......................................................... 49

10.   Claim 17 ..................................................................... 51

11.   Claim 20. "A method according to claim 17, wherein the promoter injection rate and the sorbent injection rate into the gas are determined at least in part on the monitored mercury content of the cleaned gas." ........................ 55

12.   Claim 21. "A method according to claim 1, wherein the composition of the promoted sorbent is controlled by the mercury content of the cleaned gas stream." .......................... 57

13.   Claims 22-24:  "the bromine containing promoter comprises [cl. 22: at least one of HBr, PBr3, or Br$_2$] [cl. 23: molecular bromine] [cl. 24: a bromine compound]" ......... 59

VII.  GROUND 2: Claims 11-12 and 17-20 Are Obvious Over NELSON IN VIEW OF OLSON-PAPER AND LISSIANSKI-PATENT ................... 59

   A.   Overview of Ex[1036] ("Lissianski-Patent") ..................................... 60

   B.   Reasons to Combine References ....................................................... 61

       1.   Enhanced NOx Removal ...................................................... 65

       2.   Enhanced Mercury Removal ................................................ 66

   C.   Teachings of Nelson, Olson-Paper, and Lissianski-Patent ................ 68

       1.   Claims 11-12 ......................................................................... 68

       2.   Claims 17-18 ......................................................................... 69

       3.   Claim 19. "A method according to claim 18, wherein the gas stream is a transport gas." ................................................. 78

       4.   Claim 20: "A method according to claim 17, wherein the promoter injection rate and the sorbent injection rate into the gas are determined at least in part on the monitored mercury content of the cleaned gas" ........................................ 78

Petition for IPR2020-00926
USP 8,168,147

VIII.   GROUND 3: CLAIMS 1-2, 4-6, 11-12, 15-16, and 21-24 ARE
        OBVIOUS OVER DOWNS-HALOGENATION IN VIEW OF
        OLSON-PAPER ........................................................................81

    A.   Overview of Ex[1015] ("Downs-Halogenation") ..............................81

    B.   Reasons to Combine Downs-Halogenation with Olson-Paper ..........84

    C.   Claim 1 ....................................................................................87

        1.   1(Preamble)—"A method for separating mercury from a
             mercury containing gas comprising:" ...................................... 87

        2.   Elements 1(a)(1)-1(a)(2) ....................................................... 87

        3.   Elements 1(a)(3)-1(a)(4) ....................................................... 90

        4.   Element 1(b) —"chemically reacting elemental mercury in
             the mercury containing gas with the promoted brominated
             sorbent to form a mercury/sorbent chemical composition"..... 94

        5.   Element 1(c)—"separating particulates from the mercury
             containing gas, the particulates including ash and the
             mercury/sorbent chemical composition." ............................... 95

    D.   Dependent Claims .....................................................................96

        1.   Claim 2: "the bromine containing promoter is in gaseous
             form." ................................................................................. 96

        2.   Claim 4: "the carbocation paired with a bromide anion
             chemically react with elemental mercury form the
             mercury/sorbent composition."............................................. 96

        3.   Claim 5: "at least a portion of the basic binding sites of the
             activated carbon reacts with oxidized mercury in the
             mercury containing gas to form another mercury/sorbent
             chemical composition.".......................................................... 97

        4.   Claim 6. "the step of separating particulates from the
             mercury containing gas comprises separating in a
             particulate separator comprising one or more electrostatic
             precipitators."....................................................................... 98

        5.   Claims 11-12 ....................................................................... 98

        6.   Claim 15. "the step of promoting at least a portion of the
             available sorbent material occurs at least partially outside
             of the mercury containing gas.".............................................. 99

7.      Claim 16. "the promoted brominated sorbent combines with at least 70% of the mercury present in the mercury containing gas.".................................................................. 101

8.      Claim 21. "the composition of the promoted sorbent is controlled by the mercury content of the cleaned gas stream." .................................................................................. 102

9.      Claims 22-24:  "the bromine containing promoter comprises [cl. 22: at least one of HBr, PBr3, or Br$_2$] [cl. 23: molecular bromine] [cl. 24: a bromine compound]" ....... 105

IX.    GROUND 4: Claims 17-20 Are Obvious Over DOWNS-HALOGENATION IN VIEW OF OLSON-PAPER AND LISSIANSKI-PATENT .....................................................................105

A.     Reasons to Combine References ........................................................105

B.     Teachings of Downs-Halogenation, Olson-Paper, and Lissianski-Patent .......................................................................109

1.     Claim 17 .......................................................................... 110

2.     Claims 18-19 .................................................................. 116

3.     Claim 20. "A method according to claim 17, wherein the promoter injection rate and the sorbent injection rate into the gas are determined at least in part on the monitored mercury content of the cleaned gas.".................................... 118

X.     CONCLUSION............................................................................122

Petition for IPR2020-00926
USP 8,168,147

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abbott Labs. v. Baxter Pharm. Prod., Inc.*,
   471 F.3d 1363 (Fed. Cir. 2006) ...........................................................11, 27, 84

*Alcon Research Ltd. v. Apotex Inc.*,
   687 F.3d 1362 (Fed. Cir. 2012) .......................................................................61

*Amgen Inc. v. Sanofi*,
   872 F.3d 1367 (Fed. Cir. 2017) .......................................................................81

*Apple Inc. v. Fintiv, Inc.*,
   IPR2020-00019, Paper 11 (P.T.A.B. Mar. 20, 2020) ........................................10

*Becton, Dickinson & Co. v. B. Braun Melsungen AG*,
   IPR2017-01586, Paper 8 (Dec. 15, 2017)..........................................................11

*Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*,
   800 F.3d 1375 (Fed. Cir. 2015) .......................................................................81

*Ex Parte Jacobson*,
   Appeal 2009-003022, Decision on Appeal,
   Slip op. (BPAI Feb. 1, 2010) ...........................................................29, 38, 86, 93

*In re Applied Materials, Inc.*,
   692 F.3d 1289 (Fed. Cir. 2012) ................................................................55, 116

*In re Crish*,
   393 F.3d 1253 (Fed. Cir. 2004) ................................................................27, 84

*In re Mayne*,
   104 F.3d 1339 (Fed. Cir. 1997) ....................................................28, 38, 85, 93

*Koninklijke Philips N.V. v. Google LLC*,
   948 F.3d 1330 (Fed. Cir. 2020) ..................................................16, 81, 104, 121

*Midwest Energy Emissions Corp. and MES Inc. v. Vistra Energy Corp.*,
  No. 1:19-cv-01334-RGA (D. Del.)....................................................................1, 6

*Oticon Medical AB et al. v. Cochlear Limited*,
  IPR2019-00975, Paper 15 (P.T.A.B. Oct. 16, 2019).........................................12

*PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*,
  491 F.3d 1342 (Fed. Cir. 2007) ..................................................................30, 87

*PowerOasis, Inc. v. T-Mobile USA, Inc.*,
  522 F.3d 1299 (Fed. Cir. 2008) ..........................................................................9

*Titanium Metals Corp. v. Banner*,
  778 F.2d 775 (Fed. Cir. 1985) ..........................................................................54

## LIST OF EXHIBITS

| Ex. | Description |
|---|---|
| 1001 | U.S. Patent No. 8,168,147 to Olson et al. (filed April 6, 2009) (**"'147 Patent" or "Challenged Patent"**) |
| 1002 | RESERVED |
| 1003 | Declaration of Dr. Stephen Niksa in Support of Petition for *Inter Partes* Review of U.S. Patent No. 8,168,147 (**"'147 Niksa Decl."**) |
| 1004 | Curriculum Vitae of Dr. Stephen Niksa (**"Curriculum-Vitae"**) |
| 1005 | *Midwest Energy Emissions Corp. v. Vistra Energy Corp. et al.*, Case No. 1:19-cv-01334, Dkt. No. 1 (D. Del. July 17, 2019) (**"Complaint"**) |
| 1006 | U.S. Patent Pub. No. 2008/0107579 to Downs et al. (published May 8, 2008) (**"Downs-Boiler"**) |
| 1007 | U.S. Patent No. 5,435,980 to Felsvang (**"Felsvang"**) |
| 1008 | U.S. Patent No. 6,878,358 to Vosteen et al. (filed May 6, 2003) (**"Vosteen"**) |
| 1009 | Proposed National Emission Standards for Hazardous Air Pollutants; and, in the Alternative, Proposed Standards of Performance for New and Existing Stationary Sources: Electric Utility Steam Generating Units, 69 Fed. Reg. 4652-4752 [Volume 69, No. 20] (Jan. 30, 2004) (**"EPA-Proposal"**) |
| 1010 | Sharon Sjostrom, "Full Scale Evaluations of Mercury Control Technologies with PRB Coals," Track A, Session A3 (Mercury – Control), Presentation A3b, EUEC: 8TH ELECTRIC UTILITIES ENVIRONMENTAL CONFERENCE (Tucson, Arizona: January 25, 2005) (**"Sjostrom"**) |

Petition for IPR2020-00926
USP 8,168,147

| Ex. | Description |
|-----|-------------|
| 1011 | Vitali Lissianski, "Integrated Approach to Multi-Pollutant Control," Track B, Session B3 (Mercury – Control), Presentation B3.5, EUEC: 9TH ELECTRIC UTILITIES ENVIRONMENTAL CONFERENCE (Tucson, Arizona: January 24, 2006) (**"Lissianski-Presentation"**) |
| 1012 | U.S. Patent No. 6,953,494 to Nelson, (filed May 6, 2003) (**"Nelson"**) |
| 1013 | U.S. Patent Pub. No. 2004/0003716 to Nelson (published Jan. 8, 2004) (**"Nelson Publication"**) |
| 1014 | U.S. Patent Pub. No. 2006/0048646 to Olson et al. (published Mar. 9, 2006) (**"Olson-646"**) |
| 1015 | U.S. Patent Pub. No. 2007/0180990 to Downs et al. (published Aug. 9, 2007) (**"Downs-Halogenation"**) |
| 1016 | U.S. Patent Prov. App. No. 60/555,281 (filed Mar. 22, 2004) (**"Downs-Halogenation-Provisional"**) |
| 1017 | Family Tree of '114 and '147 Patents, Showing Parent Patent Applications (**"Family Tree"**) |
| 1018 | Redline comparison between U.S. Patent Pub. No. 2007/0180990 (Downs-Halogenation, Ex. 1006) and U.S. Patent Prov. Appl. No. 60/555,281 (Downs-Halogenation-Provisional, Ex. 1007), using Downs-Halogenation-Provisional as the original version (**"Downs-Halogenation-Redline"**) |
| 1019 | File History for U.S. Patent No. 8,168,147 (**"'147 Patent File History"**) |
| 1020 | File History of U.S. Patent Prov. App. No. 60/605640 (**"Provisional"**) |

Petition for IPR2020-00926
USP 8,168,147

| Ex. | Description |
|---|---|
| 1021 | File History of U.S Patent Application No. 11/209,163 (**"'163 Application File History"**) |
| 1022 | File History of U.S Patent Application No. 12/201,595 (**"'595 Application File History"**) |
| 1023-1026 | RESERVED |
| 1027 | Babcock & Wilcox, STEAM: ITS GENERATION AND USE, 40th ed. (The Babcock & Wilcox Company: 1992) (**"B&W: Steam"**) |
| 1028 | J. Bustard, S. Sjostrom, et al., "Full Scale Evaluation of Sorbent Injection for Mercury Control on Coal-Fired Power Plants," International Conference on Air Quality III, Paper No. A5-4 (Sept. 9-12, 2002: Arlington, VA) (**"Bustard"**) |
| 1029 | U.S. Patent No. 1,984,164 to Stock et al. (issued Dec. 11, 1934) (**"Stock"**) |
| 1030 | Electric Utilities Environment Conference 2005 Handout (**"2005 EUEC Handout"**) |
| 1031 | Scan of CD mailed to conference attendees from EUEC: 8th Electric Utilities Environmental Conference (Tucson, Arizona: January 23-26, 2005) (**"2005 EUEC CD Scan"**) |
| 1032-1035 | RESERVED |
| 1036 | U.S. Patent No. 7,514,052 to Lissianski et al. (filed Jan. 6, 2004) (**"Lissianski-Patent"**) |
| 1037 | Paul Chu, "Power Plant Evaluation of the Effect of SCR Technology on Mercury," Paper No. 106, COMBINED POWER PLANT AIR |

| Ex. | Description |
|---|---|
|  | POLLUTANT CONTROL MEGA SYMPOSIUM (MEGA) (Washington, DC: May 19-22, 2003) (“**Power Plant Evaluation**”) |
| 1038 | Evan J. Granite et al., “Sorbents for Mercury Removal from Flue Gas,” DOE/FETC/TR–98-01, U.S. Department of Energy (Jan. 1998) (“**Granite**”) |
| 1039 | Thomas J. Feeley, et al., “A Review of DOE/NETL’s Mercury Control Technology R&D Program for Coal-Fired Power Plants,” *DOE/NETL &g R&D Program Review* (April 2003) (“**Feeley**”) |
| 1040 | Oxtoby et al., PRINCIPLES OF MODERN CHEMISTRY, 4th ed (Saunders College Publishing: 1999) (“**Oxtoby**”) |
| 1041 | N.N. Greenwood and A. Earnshaw, CHEMISTRY OF THE ELEMENTS, 2nd ed. (Butterworth-Heinemann: 1997) (“**Greenwood**”) |
| 1042 | B.R. Puri, *Surface Complexes on Carbons*, *in* CHEMISTRY AND PHYSICS OF CARBON 191 (Philip L. Walker, ed.) (Marcel Dekker: 1970) (“**Puri**”) |
| 1043 | Frank E. Huggins et al., “XAFS Examination of Mercury Sorption on Three Activated Carbons,” *Energy & Fuels* 1999(13), p. 114-121 (1999) (“**XAFS**”) |
| 1044 | S. Niksa et al., *Predicting Complete Hg Speciation Along Coal-Fired Utility Exhaust Systems*, MEGA SYMPOSIUM, Paper # 45 (Washington, DC: 2004) (“**Hg Speciation**”) |
| 1045 | D.L. Laudal et al., *Evaluation of Mercury Speciation at Power Plants Using SCR and SNCR NOx Control Technologies*, Paper No. A5-01, INT’L CONF. ON AIR QUALITY III (Arlington, VA: Sept. 9-12, 2002) (“**Laudal**”) |

Petition for IPR2020-00926
USP 8,168,147

| Ex. | Description |
|---|---|
| 1046 | Radovic, Ljubisa R., et al., *What (Exactly) is on the Edges of Graphene Layers in Carbon: the Unfolding Story*, Fuel Chemistry Div. Preprints, 428 (2002) (**"Radovic"**) |
| 1047 | Electric Utilities Environment Conference 2006 Handout (**"2006 EUEC Handout"**) |
| 1048 | Scan of CD mailed to conference attendees from EUEC: 9th Electric Utilities Environmental Conference (Tucson, Arizona: January 22-25, 2006) (**"2006 EUEC CD Scan"**) |
| 1049 | PDF copy of the attendee list from the 2006 EUEC ("**2006 EUEC Attendee List**") |
| 1050 | EUEC 2006 home page, available at https://web.archive.org/web/20060204211859/http:/euec.com/ ("EUEC 2006 Home Page") |
| 1051 | *Ex Parte Jacobson*, No. 2009-003022, Decision on Appeal, Slip op. (B.P.A.I. Feb. 1, 2010) |
| 1052 | RESERVED |
| 1053 | U.S. EPA, AP-42: External Combustion Sources, Chapter 1: Fifth Edition, Volume I (Sep. 1998), available at https://www3.epa.gov/ttn/chief/ap42/ch01/index.html (last visited Apr 10, 2020) (**"Chapter 1 of AP-42"**) |
| 1054 | U.S. DOE, Mercury Emissions Control - Regulatory Drivers (Jan. 24, 2003), available at https://web.archive.org/web/20030416142937/http:/www.netl.doe.gov/coalpower/environment/mercury/regs.html (**"Mercury Emissions Control"**) |

Petition for IPR2020-00926
USP 8,168,147

| Ex. | Description |
|---|---|
| 1055 | Clean Air Mercury Rule: Basic Information, available at https://web.archive.org/web/20050920005951/http:/www.epa.gov/mercuryrule/basic.htm (**"Clean Air Mercury Rule"**) |
| 1056 | EPA Newsroom, "EPA Announces First-Ever Rule to Reduce Mercury Emissions from Power Plants" (Mar. 15, 2005), available at: https://archive.epa.gov/epapages/newsroom_archive/newsreleases/91ab7266e65751b985256fc50067d9b0.html (**"3/15/2005 EPA Press Release"**) |
| 1057 | EPA Newsroom, "Public Comment Period Begins for Proposed Power Plant Regulations" (Jan. 29, 2004), available at: https://archive.epa.gov/epapages/newsroom_archive/newsreleases/4daf1d46e8dd755c85257036005511f9.html (**"1/29/2004 EPA Press Release"**) |
| 1058 | EPA Newsroom, "EPA Supplements Proposal to Reduce Power Plant Mercury Emissions," (Feb. 24, 2004), available at: https://archive.epa.gov/epapages/newsroom_archive/newsreleases/5810096dabfc9eba85256e440078905f.html (**"2/24/2004 EPA Press Release"**) |
| 1059 | Sharon Sjostrom et al., "Field Studies of Mercury Control Using Injected Sorbents," AWMA ANNUAL MEETING, Session Ae-1b (2002) (**"Field Studies of Mercury Control"**) |
| 1060 | EPA, "Mercury Study Report to Congress Volume VIII: An Evaluation of Mercury Control Technologies and Costs," EPA Report No. EPA-452/R-97-010 (Dec. 1997), available at https://www3.epa.gov/airtoxics/112nmerc/volume8.pdf (**"EPA 1997 Mercury Study Report Vol. VIII"**) |
| 1061 | EUEC 2005 home page, available at https://web.archive.org/web/20050303090129/http:/www.euec.com/ (**"EUEC 2005 Home Page"**) |

Petition for IPR2020-00926
USP 8,168,147

| Ex. | Description |
|---|---|
| 1062 | Charlene R. Crocker et al., "Mercury Control with the Advanced Hybrid Particulate Collector Technical Progress Report," U.S. DOE-NETL (Nov. 2003) (**"Crocker"**) |
| 1063-1069 | RESERVED |
| 1070 | Roop Chand Bansal, et al., ACTIVE CARBON (Marcel Dekker:1988) 1988. 482 pages (scan received from Library of Congress via Baker Botts) (**"Bansal"**) |
| 1071-1077 | RESERVED |
| 1078 | E. S. Olson, et al. "Chemical Mechanism in Mercury Emission Control Technologies." Published in *Journal de Physique IV, XIIth International Conference on Heavy Metals in the Environment: Proceedings.* Grenoble, France, May 26-30, 2003. Volume 107. May 2003. Volume 2. Pages. 979-982. EDP Sciences, edited by C. Boutron and C. Ferrari (downloaded from CiteSeer, maintained by Penn State University Libraries) |
| 1079 | E. S. Olson, et al. "Chemical Mechanism in Mercury Emission Control Technologies." Published in *Journal de Physique IV, XIIth International Conference on Heavy Metals in the Environment: Proceedings.* Grenoble, France, May 26-30, 2003. Volume 107. May 2003. Volume 2. Pages. 979-982. EDP Sciences, edited by C. Boutron and C. Ferrari (copy received from MIT Libraries) (**"Olson-Paper"**) |
| 1080 | Copy of Olson received from Library of Congress |
| 1081 | Copy of Olson received from Brown University Library |
| 1082 | Copy of Olson received from University of Wisconson Library |

Case 1:19-cv-01334-CJB   Document 236-7   Filed 11/06/20   Page 17 of 142 PageID #: 3376

Petition for IPR2020-00926
USP 8,168,147

| Ex. | Description |
| --- | --- |
| 1083 | OCLC WorldCat entry for Olson (serial) |
| 1084 | OCLC WorldCat entry for Olson (monograph) |
| 1085 | MIT Libraries OPAC records for Olson |
| 1086 | MIT Libraries MARC records for Olson |
| 1087 | Library of Congress OPAC records for Olson |
| 1088 | Library of Congress MARC records for Olson |
| 1089 | Brown University Library OPAC records for Olson |
| 1090 | Brown University Library MARC records for Olson |
| 1091 | University of Wisconsin Library OPAC records for Olson |
| 1092 | Declaration of James L. Mullins in Support of Petition for Inter Partes Review of U.S. Patent No. 8,168,147 (**"Mullins Decl."**) |

Other than prosecution histories, Ex[1019]-Ex[1022], and as otherwise noted herein, all citations to exhibits reference original page numbers found in the underlying document, and all emphases are added.

xv

Petition for IPR2020-00926
USP 8,168,147

## I.    INTRODUCTION

Petitioners request IPR of claims 1, 2, 4-6, and 9-24 of Patent No. 8,168,147

(the "**'147 Patent**" or "**Challenged Patent**").  Ex[1001].  The Petition is supported

by the expert declaration of Dr. Stephen Niksa.  Ex[1003] (declaration); Ex[1004]

(CV).

## II.    MANDATORY NOTICES UNDER 37 C.F.R. §42.8(A)(1)

### A.    REAL PARTY-IN-INTEREST UNDER 37 C.F.R. §42.8(B)(1)

The real parties-in-interest are the Petitioners NRG Energy, Inc. (**"NRG"**),

Talen Energy Corporation (**"Talen"**), and Vistra Energy Corp. (**"Vistra"**)

(collectively, **"Petitioners"**).

Petitioners also identify the following real-parties-in-interest: Brandon Shores

LLC; Talen Generation LLC; H.A. Wagner LLC; IPH, LLC; Illinois Power

Resources Generating, LLC; Dynegy Midwest Generation LLC; Dynegy Miami

Fort, LLC;  NRG Texas Power LLC; Midwest Generation EME, LLC; and Midwest

Generation, LLC.[1]  These entities are parties to a lawsuit where they have been

accused of infringing the Challenged Patent.  *Midwest Energy Emissions Corp. and*

---

[1]   Although Dynegy Inc. and Talen Energy Holdings, Inc. are also listed in the

complaint, those entities no longer exist, and thus Petitioners have not included them

here.

Petition for IPR2020-00926
USP 8,168,147

*MES Inc. v. Vistra Energy Corp.*, No. 1:19-cv-01334-RGA (D. Del.) (**"Delaware Litigation"**).  Ex[1005] (Complaint).

### 1.    Additional Potential Real Parties in Interest Identified by Talen

Petitioner Talen Energy Corporation, out of an abundance of caution, also identifies Alstom Power, Inc., Brandon Shores Coaltech, LLC, Brunner Island Refined Coal LLC, Chem-Mod LLC, Clean Coal Solutions, LLC, C.P. Crane LLC, Con-C, LLC, Clyde Bergemann Delta Ducon, Inc., Montour Refined Coal LLC, and Wagner Coaltech, LLC as potential real parties-in-interest to the Petitioner Talen Energy Corporation.  These entities are vendors and suppliers with regards to certain allegedly infringing components at issue in the Delaware Litigation.  None of these companies have agreed to be listed as a real party-in-interest for this Petition.  None of these companies or any unnamed entity is funding, controlling, or directing, or otherwise has an opportunity to control or direct this Petition or proceeding.

In addition, Petitioner Talen Energy Corporation also identifies the following entities as potential real parties-in-interest out of an abundance of caution: Avista Corporation, Barney M. Davis, LP; BDW Corp.; Bell Bend, LLC; Brunner Island Services LLC; Brunner Island, LLC; C/R Topaz Holdings, LLC; Camden Plant Holding, LLC; Colstrip Comm Serv, LLC; Conemaugh Fuels, LLC; Dartmouth Plant Holding, LLC; Dartmouth Power Associates Limited Partnership; Dartmouth

Power Generation, LLC; Dartmouth Power Holding Company, LLC; Elmwood Energy Holdings, LLC; Elmwood Park Power, LLC; Fort Armistead Road – Lot 15 Landfill, LLC; Holtwood LLC; Interstate Energy Company LLC; Jade Power Generation Holdings LLC; Keystone Fuels, LLC; Lady Jane Collieries, Inc.; Laredo WLE, LP; Liberty View Power, LLC; LMBE Project Company; LMBE-MC Holdco I LLC; LMBE-MC Holdco II LLC; Lower Mount Bethel Energy, LLC; Martins Creek, LLC; MC OpCo LLC; MC Project Company LLC; MEG Generating Company, LLC; Millennium Power Partners, LP; Montour Services LLC; Montour Solar HoldCo LLC; Montour, LLC; Morris Energy Management Company, LLC; Morris Energy Operations Company, LLC; NBCP Urban Renewal Corporation; New Athens Generating Company, LLC; Newark Bay Cogeneration Partnership, LP; Newark Bay Holding Company, LLC; NorthEast Gas Generation GP, LLC; NorthEast Gas Generation Holdings, LLC; NorthEast Gas Generation, LLC; NorthWestern Corp.; Nueces Bay WLE, LP; PacifiCorp; Pedricktown Cogeneration Company LP; Pedricktown Investment Company LLC; Pedricktown Management Company LLC; Pennsylvania Mines, LLC; Portland General Electric Company; Puget Sound Energy, Inc.; Raven FS Property Holdings LLC; Raven Lot 15 LLC; Raven Power Finance LLC; Raven Power Fort Smallwood LLC; Raven Power Generation Holdings LLC; Raven Power Group LLC; Raven Power Marketing LLC;

Raven Power Operating LLC; Raven Power Property LLC; Realty Company of Pennsylvania; RMGL Holdings LLC; Sapphire Power Finance LLC; Sapphire Power Generation Holdings LLC; Sapphire Power LLC; Sapphire Power Marketing, LLC; Susquehanna Nuclear, LLC; Talen Energy Marketing, LLC; Talen Energy Retail LLC; Talen Energy Services Group, LLC; Talen Energy Services Holdings, LLC; Talen Energy Services Northeast, Inc.; Talen Energy Supply, LLC; Talen Investment Corporation; Talen Land Holdings, LLC; Talen Montana Holdings, LLC; Talen Montana, LLC; Talen MS Holdings LLC; Talen NE LLC; Talen Nuclear Development, LLC; Talen Receivables Funding, LLC; Talen Solar Holdings LLC; Talen Treasure State, LLC; Topaz Power Group GP II, LLC; Topaz Power Group LP II, LLC; Topaz Power Group, LLC; Topaz Power Holdings, LLC; Topaz Power Management II GP, LLC; Topaz Power Management II LP, LLC; Topaz Power Property Management II, LP; York Generation Company, LLC; and York Pant Holding, LLC.

### 2.    Additional Potential Real Parties in Interest Identified by Vistra

Petitioner Vistra Energy Corp., out of an abundance of caution, also identifies Bascobert (A) Holdings, LLC; Calgon Carbon Corp.; CERT Operations RCB, LLC; Chem-Mod LLC; RC29, LLC; and RTRC Texas LLC as potential real parties-in-interest to Petitioner Vistra.  These entities are vendors and suppliers with regards to

certain allegedly infringing components at issue in the District Court litigation referenced in the Related Matters section below.  None of these companies have agreed to be listed as a real party-in-interest for this Petition.  None of these companies or any unnamed entity is funding, controlling, or directing, or otherwise has an opportunity to control or direct this Petition or proceeding.

In addition, Petitioner Vistra Energy Corp. also identifies the following entities as potential real parties-in-interest out of an abundance of caution: Big Brown Power Company LLC; Coffeen and Western Railroad Company; Coleto Creek Power, LLC; Dynegy Coal Generation, LLC; Dynegy Coal HoldCo, LLC; Dynegy Commercial Asset Management, LLC; Dynegy Conesville, LLC; Dynegy Power Marketing, LLC; Dynegy Resource II, LLC; Dynegy Resources Generating Holdco, LLC; Dynegy Zimmer, LLC; Electric Energy, Inc.; EquiPower Resources Corp.; Havana Dock Enterprises, LLC; Illinois Power Generating Company; Illinois Power Resources, LLC; Joppa and Eastern Railroad Company; Kincaid Generation, L.L.C.; Luminant Generation Company LLC; NEPCO Services Company; Northeastern Power Company; Oak Grove Management Company; Sandow Power Company LLC; Vistra Asset Company LLC; Vistra Intermediate Company LLC; and Vistra Operations Company LLC.

### 3.    Additional Potential Real Parties in Interest Identified by NRG

Petitioner NRG Energy, Inc., out of an abundance of caution, also identifies ADA-ES, Inc., Alistar Enterprises, LLC, Cabot Corporation, Calgon Carbon Corporation, CERT Operations, LLC, CERT Operations IV, LLC, Chem-Mod LLC, Rutledge Products, LLC, and Senescence Energy Products, LLC.  These entities are vendors and suppliers with regards to certain allegedly infringing components at issue in the District Court litigation referenced in the Related Matters section below. None of these companies have agreed to be listed as a real party-in-interest for this Petition.  No unnamed entity is funding, controlling, or directing, or otherwise has an opportunity to control or direct this Petition or proceeding.

In addition, Petitioner NRG Energy, Inc. also identifies the following entities as potential real parties-in-interest out of an abundance of caution: NRG Texas LLC, NRG Midwest Holdings LLC, Mission Midwest Coal, LLC, Midwest Generation Holdings I, LLC, Midwest Generation Holdings II, LLC, Midwest Generation Procurement Services, LLC, Midwest Finance Company, LLC, NRG Energy Holdings, Inc., and NRG Acquisition Holdings Inc.

### B.    RELATED MATTERS UNDER 37 C.F.R. §42.8(B)(2)

Patent Owner ("PO") has asserted the Challenged Patent in district court in the following matter: *Midwest Energy Emissions Corp. and MES Inc. v. Vistra*

*Energy Corp.*, No. 1:19-cv-01334-RGA (D. Del.).  Ex[1005].  The case has multiple motions to dismiss filed under Rule 12(b)(6) pending resolution, and the Court only recently set a Rule 16 conference for June 15, 2020. None of the Petitioners have filed an answer to the Complaint, and the Court has not set a trial schedule.  PO has also asserted U.S. Patent No. 10,343,114 (the "'114 Patent") in the district court proceeding.   On April 21, 2020 Petitioners simultaneously filed two IPRs challenging the validity of the '114 Patent, IPR2020-00832 and IPR2020-00834.

According to U.S. Patent & Trademark Office Patent Application Information Retrieval (PAIR) system, the '147 Patent was filed as App. No. 12/419,219 (the "'219 Application") on April 6, 2009 and purports to claim priority as follows:

- Continuation of a U.S. Patent Application No. 12/201,595 filed on August 29, 2008 (the "'595 Application") and abandoned on September 30, 2010, which is a:

- Division of U.S. Patent Application No. 11/209,163, filed on Aug. 22, 2005 (the "'163 Application") and issued on September 24, 2008 as U.S. Patent No. 7,435,286, which is a non-provisional of:

- U.S. Provisional Patent Application No. 60/605,640, filed on August 30, 2004 (the "Provisional").

Petitioners are concurrently filing another petition against the Challenged Patent.  The current petition assumes *arguendo* that the Challenged Claims of the '147 Patent have priority to August 30, 2004.  The second petition challenges only claims 18 and 19 and asserts a priority date of no earlier than April 2009, when the

Petition for IPR2020-00926
USP 8,168,147

'147 Patent was filed, because the applications to which the '147 Patent claims

priority do not contain support for claims 18-19 of the '147 Patent.

### C. LEAD AND BACK-UP COUNSEL UNDER 37 C.F.R. §42.8(B)(3)

| LEAD COUNSEL | BACK-UP COUNSEL |
|---|---|
| Brian W. Oaks (Reg. 44,981)<br>Baker Botts L.L.P.<br>98 San Jacinto Boulevard, Suite 1500<br>Austin, TX 78701-4078<br>Tel:  512-322-5470<br>brian.oaks@bakerbotts.com | David J. Tobin (Reg. 60,776)<br>Baker Botts L.L.P.<br>2001 Ross Avenue, Suite 900<br>Dallas, TX 75201-2980<br>Tel: 214-953-6869<br>david.tobin@bakerbotts.com<br><br>Elizabeth D. Flannery (Reg. 59,509)<br>Baker Botts L.L.P.<br>910 Louisiana Street<br>Houston, Texas 77002-4995<br>Tel.: 713.229.2104<br>liz.flannery@bakerbotts.com<br><br>Thomas B. Carter, Jr. (Reg. 76,040)<br>Baker Botts L.L.P.<br>910 Louisiana Street<br>Houston, Texas 77002-4995<br>Tel.: 713.229.1505<br>thomas.carter@bakerbotts.com |

### D. SERVICE INFORMATION UNDER 37 C.F.R. §42.8(B)(4)

Petitioners may be served at lead counsel's address provided above and

consent to e-mail service, provided it is made to all of the following e-mail addresses:

brian.oaks@bakerbotts.com,   david.tobin@bakerbotts.com,   and   DLBB-ME2C-

IPR@bakerbotts.com.

Petition for IPR2020-00926
USP 8,168,147

### E.   FEES

Payment for fees is authorized from Deposit Account 02-0384.

## III.   REQUIREMENTS FOR IPR UNDER 37 C.F.R. §42.104

### A.   STANDING

Petitioners certify the '147 Patent is eligible for IPR.  Petitioners are not barred

or estopped from requesting IPR on the grounds herein.

### B.   ASSERTED REFERENCES AND PRIOR-ART STATUS

| Reference | Prior-Art Status (Pre-AIA) |
|---|---|
| **Nelson**, Ex[1012], USP 6,953,494B2 | **§102(e):** filed 5/6/2003, issued 10/11/2005 |
| **Downs-Halogenation**, Ex[1015], USP Pub. 2007/0180990A1 | **§102(e):** filed 3/21/2005, claiming priority to 3/22/2004 |
| **Lissianski-Patent**, Ex[1036], USP 7,514,052B2 | **§102(e):** filed 1/6/2004, issued 4/7/2009 |
| **Olson-Paper**, Ex[1079], "Chemical mechanisms in mercury emission control technologies" | **§102(a), §102(b):** publicly accessible by 6/26/2003 |

Each reference is also prior art under §102(b) (pre-AIA) with respect to claims 18-

19.  Each was patented and/or described in a printed publication or otherwise

available to the public, including more than one year before the effective filing date

of claims 18-19 of the '147 Patent (April 2009).  Patent Owner bears the burden to

prove entitlement to an earlier filing date.  *PowerOasis, Inc. v. T-Mobile USA, Inc.*,

522 F.3d 1299, 1304-1305 (Fed. Cir. 2008).

### C.   IDENTIFICATION OF CHALLENGED CLAIMS

There is a reasonable likelihood that the petitioned claims are unpatentable as

obvious under §103:

| Ground | '147 Claims | Basis for Challenge |
|--------|-------------|---------------------|
| 1. | 1-2, 4-6, 9-17, 20-24 | Obvious over Nelson Ex[1012] and Olson-Paper Ex[1079] |
| 2. | 11-12, 17-20 | Obvious over Nelson, Olson-Paper, and Lissianski-Patent Ex[1036] |
| 3. | 1-2, 4-6, 11-12, 15-16, 21-24 | Obvious over Downs-Halogenation Ex[1015] and Olson-Paper |
| 4. | 17-20 | Obvious over Downs-Halogenation, Olson-Paper, and Lissianski-Patent |

### D.   THE BOARD SHOULD NOT DENY INSTITUTION

The Board should not deny institution under Section 314(a), because the

district-court proceeding is in its early stages.  With multiple motions to dismiss

pending, the Court recently set a Rule 16 conference for June 15, 2020, but has not

provided a case schedule.  Petitioners have not answered the Complaint, and

discovery has not opened.  Any Final Written Decision would likely conclude before

trial.  *See Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 11, at 6 (P.T.A.B. Mar.

20, 2020) (precedential).

The Board should not deny institution under Section 325(d).  Downs-

Halogenation Ex[1015] is used as a primary reference and was not cited on the face

of the '147 Patent.  Accordingly, Grounds 3-4 present art that was not considered

during prosecution. *See Becton, Dickinson & Co. v. B. Braun Melsungen AG*, IPR2017-01586, Paper 8 at 17-18 (Dec. 15, 2017) (factors A-D). While the '147 Patent cites Lissianski-Patent (Ex[1036]) on the cover, the Examiner never cited to Lissianski-Patent in a substantive rejection. *Id.* (factor c).

Nelson Ex[1012] is also used as a primary reference. The Examiner during prosecution relied on an earlier publication of Nelson, Ex[1013] (Nelson-Publication), to reject claims, but ultimately allowed the claims over Nelson-Publication after applicants amended the sole independent claim to require: "activated carbon contains graphene sheets having carbene species edge sites which react with the bromine containing promoter to form a carbocation paired with a bromide anion in the promoted-brominated sorbent for oxidation of the mercury." Ex[1019], 322 (amendment), 466-72 (reasons for allowance). However, the Examiner should not have allowed the claims because "a newly-discovered property of the prior art cannot support a patent" merely because "the patentee explicitly claims that property." *Abbott Labs. v. Baxter Pharm. Prod., Inc.*, 471 F.3d 1363, 1368 (Fed. Cir. 2006). Moreover, this property was disclosed in prior art not before the Examiner. Olson-Paper Ex[1079]—co-authored by three named inventors of the '147 Patent along with others—discloses the very limitation applicants alleged was not disclosed in Nelson. Consolidated Trial Practice Guide (Nov. 2019) at 63 (not

exercising discretion when presented with "material … facts and evidence of which the Office was not aware of").

Olson-Paper, used as a secondary reference for **each** Ground, discloses the specific sorbent in all primary references (activated carbon).  Olson-Paper even discloses that the **specific brand** of sorbent in Nelson—Norit Darco FGD—contains "carbene structures … at the edges of the carbon graphene layers").  Ex[1079], 979, 982.  These carbene edge sites are readily observed by comparing Figure 2 of the '147 Patent (excerpted, left) and of the prior-art Olson-Paper (right).



And as discussed below, the '147 Patent copied reaction mechanisms from Olson-Paper, yet the inventors never disclosed their prior-art paper during prosecution. "[T]he Petition therefore presents different prior art than the Office was aware of." *See Oticon Medical AB et al. v. Cochlear Limited*, IPR2019-00975, Paper 15, at 19-20 (P.T.A.B. Oct. 16, 2019) (precedential).

12

Petition for IPR2020-00926
USP 8,168,147

## IV.   OVERVIEW

### A.   LEVEL OF ORDINARY SKILL

A person of ordinary skill in the art ("POSITA") would have at least a bachelor's degree in chemical engineering, mechanical engineering, or a related field of study with at least two years of experience with implementing pollution control in power generation plants for natural gas, coal, and/or industrial waste incineration. Ex[1003], ¶¶63-66.

### B.   THE ALLEGED INVENTION OF THE '147 PATENT

The '147 Patent relates to removing mercury from a flue gas.  Ex[1001], 1:29-31.  The Patent admits that known "mercury control methods" included "injection of fine sorbent particles into a flue gas duct" such as "activated carbon."  Ex[1001], 1:57-61.  Ex[1003], ¶¶207-210.  The Patent purports to improve mercury capture with "exceptionally reactive halogen/halide promoted carbon sorbents using a bromide (or other halogen/halide) treatment of the carbon."  Ex[1001], 6:19-23. Independent claim 1 recites limitations directed towards the surface structure of activated-carbon sorbent, and its chemical reactions with promoter and mercury. Ex[1003], ¶¶164-168.

13

### C.   PROSECUTION HISTORY OF THE '147 PATENT

The '147 Patent was filed April 6, 2009, purportedly claiming priority through a series of applications to U.S. Provisional Application No. 60/605,640, filed on August 30, 2004 ("Provisional").  Ex[1003], ¶169.



Petition for IPR2020-00926
USP 8,168,147



Ex[1017].   The file histories for the '147 Patent and its parent applications are submitted with this Petition. Ex[1019]-Ex[1022].

During prosecution, the Examiner rejected the sole independent claim and certain dependent claims as anticipated by Nelson-Publication Ex[1013], finding the remaining claims obvious with Nelson-Publication as a primary reference.   In response, applicants amended independent claim 34, which ultimately issued as Claim 1 of the '147 Patent:

> 34.   (Currently Amended)  A method for separating mercury from a mercury containing gas comprising:
>
> (a) promoting at least a portion of a sorbent material comprising activated carbon by chemically reacting the sorbent material with a bromine containing promoter to form a promoted brominated sorbent, wherein the bromine containing promoter is in gaseous form, vapor form, or non-aqueous liquid form, and wherein the activated carbon contains graphene sheets having carbene species edge sites which react with the bromine containing promoter to form a carbocation paired with a bromide anion in the promoted brominated sorbent for oxidation of the mercury;
>
> (b) chemically reacting elemental mercury in the mercury containing gas with the promoted brominated sorbent to form a mercury/sorbent chemical composition; and
>
> (c) separating particulates from the mercury containing gas, the particulates including ash and the mercury/sorbent chemical composition.

Ex[1019], p. 319, 321-25.   Applicants argued that Nelson-Publication failed to disclose "activated carbon containing ***graphene sheets*** having carbene species edge sites therein." *Id.* at 327.  Ultimately, the Examiner allowed the claims based on this limitation.  Ex[1019], 466-472, ¶ 2.  Ex[1003], ¶¶169-175, 221-223.

### D.    STATE OF THE ART

Whether the "differences between the invention and the prior art would have rendered the invention obvious to a [POSITA] necessarily depends on such artisan's knowledge," including an "assessment of the background knowledge possessed" by a POSITA.  *Koninklijke Philips N.V. v. Google LLC*, 948 F.3d 1330, 1337 (Fed. Cir. 2020) (internal citations omitted).   The subjects below were "within the general knowledge of a skilled artisan" by 2004.  *See id.* at 1338.  Ex[1003], ¶67.

### 1.    **Coal-Fired Plants**

It was known that pulverized-coal firing was performed by feeding particle-sized coal to a combustion chamber, also referred to as a "boiler."  Ex[1027], 13-1, 18-1.  Combustion gases exiting the boiler, have been referred to as flue gases.  Ex[1027], 19-1; Ex[1003], ¶¶91-97.

It was known that flue gases included particles (fly ash and unburned carbon), mercury (Hg), sulfur oxides ($SO_X$), nitrogen oxides ($NO_X$), and other pollutants.  Ex[1053], 1.1-3 to 1.1-6.  Downstream components were used to control flue-gas constituents, including electrostatic precipitators (ESP) and fabric filters (FF) for

particulates, dry FGD systems (sorbents), and selective catalytic reduction (SCR) systems.  Ex[1053], 1.1-6 to 1.1-9; Ex[1037]; Ex[1045]; Ex[1003], ¶¶87, 98-117.

## 2.   EPA Regulations

It was known that mercury generally exists in elemental form ($Hg^0$) and oxidized form (either $Hg_2^{2+}$ or $Hg^{2+}$).  Ex[1060], 2-1 (exhibit p.37); Ex[1060], 4-12 to 4-19; Ex[1054]; Ex[1055].   In 2000, EPA announced the need to tighten restrictions on mercury-emissions from coal-fired power plants.  Ex[1039], 2, 7-8. EPA officially passed the Clean Air Mercury Rule in 2005, requiring 70% mercury removal, but put the industry on notice of the upcoming requirements well before then.  Ex[1056]; Ex[1009]; Ex[1057]; Ex[1058].  As a result, the American electric-power industry mobilized to develop and evaluate mercury-emissions control technologies.  Ex[1039]; Ex[1003] ¶¶135-146.

## 3.   Mercury Removal Using Activated Carbon and Halogens

Even prior to EPA regulations, activated-carbon sorbents were used to remove mercury, and researchers were investigating methods to reduce costs and improve effectiveness of sorbents.  Ex[1060], 2-54; Ex[1038], 2. Ex[1003], ¶¶147-163.  By 1934, it was known that halogens improved the ability of activated carbon to remove mercury.  *See* Ex[1029], 1:33-41.  Ex[1003], ¶¶118-121, 150-163.  It was known that halogens—including chlorine (Cl), bromine (Br), and iodine (I)—are highly-

reactive oxidizing agents.   Ex[1040], 788, 791, A.44; *see* Ex[1041], 789-824.

Ex[1003], ¶¶68-73, 83-86.



Ex[1027], exhibit p.239.

By 1970, it was known that bromine (Br) was adsorbed up to a saturation limit (adsorption equilibrium) of 31-38% in carbon materials.  Ex[1042], 260.  By 1988, it was shown that bromine (Br) reacted with activated carbon to provide "carbon-bromine surface structures (surface compounds)."  Ex[1070], 259.  Ex[1003], ¶¶128-129.  By 1991, it was known that halogen content of flue gas combustion depended on the variable halogen content of "coal mined at different locations," and that

supplying additional halogen content (e.g., "to the coal before or during the combustion thereof and/or by injecting gaseous HCl into the flue gas") increased the effectiveness of activated carbon.  Ex[1007], 3:50-4:50. By 1998, "*[a]ctivated carbons ha[d] been the most thoroughly studied sorbent for the capture of mercury*." Ex[1038], 22. Ex[1003], ¶¶118-127.  In 1999, researchers demonstrated that flue-gas mercury chemically reacted with halogenated activated carbons. Ex[1043], 119.  By 2004, researchers generalized these findings to interpret the capture of elemental and oxidized mercury on promoted activated-carbon sorbents. Ex[1044]; Ex[1062], exhibit p.14-15 (halides "improve[d] Hg capture both by conversion of the $Hg^0$ to the more easily removed $Hg^{2+}$ forms and by enhancing the reactivity of $Hg^0$ with activated carbons").  Prior to the earliest filing date, it was well-known that halogens, particularly bromine-containing, improved the effectiveness of activated carbon in removing mercury. *See, e.g.*, Ex[1006] ¶[0018]-[0020], [0025]; Ex[1007]; Ex[1008], 1:65-2:15, 5:18-39; Ex[1012]; Ex[1015]; Ex[1036].  Ex[1003], ¶¶128-132. It was also known to measure mercury content, and in response, to adjust halide injection, sorbent injection, and/or sorbent composition.  Ex[1028], 10; Ex[1059]; Ex[1009], 4676; Ex[1003] ¶¶133-134.

Petition for IPR2020-00926
USP 8,168,147

## V.   CLAIM CONSTRUCTION

For purposes of the asserted prior art, Petitioners do not, at this time, contend that any term requires construction. All terms have been accorded their plain and ordinary meaning.  Ex[1003], ¶211.

## VI.   GROUND 1: CLAIMS 1-2, 4-6, 9-17, AND 20-24 ARE OBVIOUS OVER NELSON IN VIEW OF OLSON-PAPER

### A.   OVERVIEW OF EX[1012] ("NELSON")

Nelson discloses remediating "mercury emitted from coal-fired power plants."  Ex[1012], 1:53-54.  Nelson prepares a promoted-brominated sorbent (purple) by chemically reacting powdered-activated carbon (PAC) sorbent (red) with HBr and/or $Br_2$ promoter (blue).

Petition for IPR2020-00926
USP 8,168,147



Ex[1012], Fig. 1 (annotated). Nelson describes "bromine, which *chemically react[s] with* strongly-held carbon surface compounds." Ex[1012], 2:33-39. By reacting activated-carbon sorbents with "$Br_2(g)$" and/or "$HBr(g)$," Nelson improved the sorbent's "ability to remove mercury species when injected into high-temperature coal-fired flue-gas compositions." Ex[1012], 6:10-15. Nelson identifies the same promoter (HBr and/or $Br_2$), brand of activated-carbon sorbent (Norit Darco-FGD), type of reactor (e.g., fluidized bed), reaction temperature, and brand of mercury

monitors (Sir Galahad from P.S. Analytical) as the '147 Patent.  Ex[1003], ¶¶214-220.

### B.   OVERVIEW OF EX[1079] ("OLSON-PAPER")

Olson-Paper Ex[1079] qualifies as a printed publication at least by June 26, 2003.  Dr. Mullins, a librarian expert and former MIT librarian from 2000-2004, confirms authenticity of the copy from MIT Libraries.  Ex[1079]; Ex[1092], ¶¶38-52, 79.  Dr. Mullins compared Ex[1079] to print copies held at three other libraries and one online repository.  *Id.*; Ex[1078]-Ex[1082].  As evidenced by an authentic date stamp and other records, MIT Libraries received Olson-Paper on 6/16/2003, and would have made Olson-Paper publicly accessible on library shelves 7-10 days afterwards.



Ex[1079]; Ex[1092], ¶¶53-79.  In addition to MIT, Olson-Paper was publicly accessible from: University of Wisconsin–Madison by 6/27/2003, Brown University by 9/8/2003, and Library of Congress by 11/3/2003.  *Id.*; Ex[1083]-Ex[1091].  Olson-Paper was catalogued and locatable through the world's largest online

catalog, WorldCat, which indicates that more than 100 libraries held print copies of Olson-Paper.   Ex[1092],  ¶¶53-58; Ex[1083]-Ex[1084].   As of 2003, researchers could have used Worldcat or Library of Congress (or other libraries) to locate Olson-Paper by searching authors, conference title, and subject (e.g., "*Heavy Metals – Environmental aspects*").   Ex[1092], ¶¶53-79.  Mercury was one of the most heavily investigated "heavy metals" for purposes of "environmental" harm.  Ex[1003], ¶243-244.

Olson-Paper described surface compounds of activated-carbon sorbent. Ex[1079], 979.   Reporting the work of others, Olson-Paper proposes "carbene structures" present "at the edges of the carbon graphene layers [8]" in activated carbon.  Ex[1079], 982 (citing Ex[1046] (Radovic)); Ex[1046] ("surface chemistry of edge carbon atoms" in graphene layers, including "carbene … at the zigzag sites").  A "carbene" species in Olson-Paper is circled in red.

Petition for IPR2020-00926
USP 8,168,147

Figure 2. Reaction site model for activated carbon.

Ex[1079], Fig. 2 (annotated).  Ex[1003], ¶¶245-248.

Olson-Paper proposed reaction mechanisms between activated-carbon sorbent, halogen promoters, and mercury.



Figure 2. Reaction site model for activated carbon.

Ex[1079], Fig. 2 (annotated).  Step 1 depicts a carbocation (+) paired with a halide

anion (Cl⁻), forming a promoted-halogenated sorbent.  Step 2 depicts the promoted-

halogenated sorbent reacting with elemental mercury to form a mercury/sorbent

composition, labeled "B."  Step 3 depicts activated-carbon reacting with oxidized

mercury to form another mercury/sorbent composition, labeled "A."   The

mechanisms depicted in Figure 2 of Olson-Paper (top) are nearly identical to those

in Figure 2 of the '147 Patent (bottom).  Ex[1003], ¶¶249-252.

Petition for IPR2020-00926
USP 8,168,147



Figure 2. Reaction site model for activated carbon.

Ex[1079]

FIG. 2

Ex[1001]

### C.    REASONS TO COMBINE REFERENCES

Nelson describes "a relatively large quantity of the bromine react[ing] with the carbon, forming surface compounds on the large-surface area of the carbon," also referred to as "surface complexes."  Both "elemental mercury and oxidized mercury species" in the flue gas then "react with at least one form of the bromine-carbon surface compounds that were created and are held fast."  Ex[1012], 6:5-34. Nelson does not detail the "surface complexes" or the reaction mechanism by which the components "react" with one another.  A POSITA would have combined Nelson with Olson-Paper, which proposes such underlying chemical-reaction mechanisms. Ex[1003], ¶¶287-289.  *See  Abbott Labs.*, 471 F.3d at 1368 (discussing the "general principle precluding patentability for "a newly-discovered property of the prior art"); *see In re Crish*, 393 F.3d 1253, 1258 (Fed. Cir. 2004) ("[O]ne cannot establish novelty by claiming a known material by its properties.").

Both  Nelson  and  Olson-Paper  teach  using  halogens  to  improve  the effectiveness of activated-carbon sorbent in removing mercury.  Nelson describes using "halogenated carbon materials to reduce the emissions of mercury from coal-fired plants."  Ex[1012], 1:25-28.  Similarly, Olson-Paper is entitled, "Chemical mechanisms in mercury emission control technologies."  Both references teach the same supplier (Norit) and the same specific brand (Darco FGD®) of activated-carbon sorbent. Ex[1012], 11:17-19 ("Norit's Darco FGD"); Ex[1079], 981 ("Norit

FGD"). Accordingly, a POSITA would have combined Nelson with Olson-Paper to describe the surface chemistry of the sorbent in Nelson. Ex[1003], ¶¶290-291.

A POSITA would have understood the applicability of chloride-containing chemical reactions with activated-carbon sorbent (Olson-Paper) to bromide-containing chemical reactions with the same sorbent (Nelson). First, Nelson teaches that chlorides improve the ability of activated carbon to capture mercury. Ex[1012], 2:36-44, 12:20-31, Fig. 14. Second, it was well-known that bromine and chlorine have similar chemical properties, undergo similar chemical reactions, and are adjacent within the same group in the periodic table. Ex[1003], ¶¶292-294; *see also* Ex[1003], ¶¶71-73, 83-86. *In re Mayne*, 104 F.3d 1339, 1340 (Fed. Cir. 1997) (affirming obviousness when "applicants merely substituted one element known in the art for a known equivalent").



Ex[1027], exhibit p.239 (annotated).  "[H]alogens belong to the same group in the periodic table (VII group) and [are] expected to possess similar properties."  *See* Ex[1051], *Ex Parte Jacobson*, Appeal 2009-003022, Decision on Appeal, slip op. at 6-7 (BPAI Feb. 1, 2010) (affirming "prima facie case of obviousness" of selecting one halogen "from the small genus of known halogens").  Once the reaction mechanisms between chlorine-containing compounds and activated-carbon sorbents were presented in Olson-Paper, a POSITA would have expected similar reactions with bromine-containing compounds.  Ex[1003], §294; *see* Ex[1003], ¶¶128-129, 150-163.

A POSITA would have had a reasonable expectation of success, because combining with Olson-Paper would have been nothing more than seeking additional

information regarding surface chemistry and reaction mechanisms already theorized to take place in the process of Nelson. No modifications would need to be have been made to the process conditions of Nelson. Ex[1003], ¶289. *See PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1363-64 (Fed. Cir. 2007) ("[C]onfirmation of what was already believed to be true … does not give rise to a patentable invention.")

## D.   CLAIM 1

### 1.   1(Preamble) —"A method for separating mercury from a mercury containing gas comprising:"

Nelson discloses "removing mercury and mercury-containing compounds from a combustion gas in an exhaust system" by reacting mercury with sorbent, and then "removing the mercury sorbent from the combustion gas stream." Ex[1012], cl. 1. The "combustion gas" is a mercury-containing gas, and the mercury is removed (separated) from it. Ex[1012], Title, Abstract, 1:24-27, 4:31-35. Ex[1003], ¶¶295-296.

### 2.   Elements 1(a)(1)-1(a)(2)

*1(a)(1):* "*promoting at least a portion of a particulate sorbent material comprising activated carbon by chemically reacting the sorbent material with a bromine containing promoter to form a promoted brominated sorbent,*"

*1(a)(2):* "*the bromine containing promoter is in gaseous form, vapor form, or non-aqueous liquid*

*form,"*

These limitations are disclosed by Nelson, and obvious over Nelson in view of Olson-Paper.  The particulate sorbent in Nelson is powdered-activated carbon ("PAC").  Ex[1012], 5:63-6:34, Fig. 1 (excerpted below).



"Norit's Darco FGD® is a common PAC frequently used by other researchers as a comparative yardstick."  Ex[1012], 11:11-20.  The PAC is "in a very fine state," as "carbon particles" or "carbonaceous…particles."  Ex[1012], 6:34-37, 7:16-34, 7:64-66.  Ex[1003], ¶¶297-300.

The sorbent (below, red) is reacted with bromine-containing promoter (blue) "to increase the ability of the carbonaceous substrate to adsorb mercury and mercury-containing compounds."   Ex[1012], 4:58-63; *see* 6:10-16; *compare* Ex[1001], 13:22-25 ("activity for mercury capture is enhanced").



Ex[1012], Fig. 1 (annotated), 7:4-36.  Ex[1003], ¶¶301-307.

The promoter (blue) is "bromine-containing gas 3," including "$Br_2(g)$ [and] other bromine-containing gases, such as hydrogen bromide, HBr."  Ex[1012], 7:45-51; *see* 4:64-67, 5:18-21, 6:46-52.



Ex[1012], Fig. 1.  Bromine-containing promoters "chemically react with strongly-held carbon surface compounds," shown in Step 4 as "Reaction."  Ex[1012], 2:36-37, Fig. 1; *see* 7:16-19, 8:8-30.  The promoter "reacts with the carbon, forming surface compounds."  Ex[1012], 6:26-34.  Ex[1003], ¶¶301-303, 308-309.

The chemical reaction promotes the sorbent, forming a promoted-brominated sorbent, labeled "Improved Mercury Sorbent" in Figure 1, and also referred to as "brominated mercury sorbent."



Ex[1012], Fig. 1, cl. 19; 5:28-36 (describing Figs. 1-9 as "performance plots indicating improvements in mercury capture").  Ex[1003], ¶¶304-307.

Olson-Paper confirms that the promoter-sorbent reactions are promotion, as described below for Claim Elements 1(a)(3)-1(a)(4).  Olson-Paper describes that elemental mercury has a low affinity for activated carbon, but that acid halide gases promote the binding sites on activated carbon and increases their affinity towards elemental mercury.  The "basic carbene [on untreated activated carbon] cannot react directly with $Hg^0$ [elemental mercury], but reacts with HCl to form stable carbenium ion intermediates, which are then ***active for binding*** $Hg^0$, accepting electrons from

the atom (Figure 2).   Thus HCl *or other acids promote the oxidation step*." Ex[1079], 981.  Ex[1003], ¶303.

### 3.   Elements 1(a)(3)-1(a)(4)

> *1(a)(3):* *"the activated carbon contains graphene sheets having carbene species edge sites,"*
>
> *1(a)(4):* *"which react with the bromine containing promoter to form a carbocation paired with a bromide anion in the promoted brominated sorbent for oxidation of the mercury"*

These limitations are disclosed by Olson-Paper, and obvious over Nelson in view of Olson-Paper.  As described for Element 1(a)(1), Nelson discloses that bromine-containing promoter "reacts with the carbon, forming surface compounds." Ex[1012], 6:26-34.  Olson-Paper identifies such surface compounds and proposes chemical-reaction models underlying the disclosure of Nelson.  Ex[1003], ¶¶310-311, 313.

Regarding Element 1(a)(3), Nelson and Olson-Paper both disclose the same supplier (Norit) and brand name (Darco) of activated-carbon sorbent. Ex[1012], 11:17-19 ("Norit's Darco FGD"); Ex[1079], 981 ("Norit FGD").  Olson-Paper describes that activated carbon—particularly the Norit Darco FGD® of Nelson— contains graphene sheets having "a zig-zag *carbene site* on the *carbon edge*." Ex[1079], 979 (Abstract); *see* 982 ("carbene structures … at the edges of the carbon graphene layers"); *see* Ex[1046] (cited by Olson-Paper, describing "carbene … at

the zigzag sites").  The carbene sites in graphene sheets are depicted in Figure 2 of

Olson-Paper, labeled "Carbon Basic Zig-Zag Site."  Ex[1079], 982 (annotated).



Figure 2. Reaction site model for activated carbon.

Each vertex represents a carbon atom, and each hexagon represents an aromatic ring.

Graphene is a structure with stacked sheets of such aromatic rings.  Ex[1003], ¶¶78-

81, 122-127.  The zig-zag site, circled in red, is a "carbene species edge site," as it

contains a neutral carbon atom bonded to two other carbon atoms and with two

unshared electrons.  The carbene species is depicted identically in Figure 2 from

Olson-Paper (left) and '147 Patent (right).

Ex[1003], ¶¶310-315.

Regarding Element 1(a)(4), Olson-Paper describes "the carbon site and its interaction with flue gases and Hg," including acid-halide gases:

> The basic carbene cannot react directly with $Hg^0$, but reacts with HCl *to form stable carbenium ion intermediates*, which are then active for binding $Hg^0$, accepting electrons from the atom (Figure 2). Thus *HCl or other acids promote the oxidation step*.

Ex[1079], 982. $Hg^0$ refers to elemental mercury, and "carbenium ion intermediates" is another term for a "carbocation." Olson-Paper identifies this carbocation as promoting oxidation of mercury—"promote the oxidation step."



Figure 2. Reaction site model for activated carbon.

Ex[1079], Fig. 2 (annotated).   In Step 1, a halogen-containing promoter (e.g., hydrohalide, HCl), chemically reacts with carbene (red) at the edge-site of a graphene layer.  The result is a promoted sorbent (blue), including a carbocation (+) paired with halide anion (Cl⁻).  The promoted sorbent is for oxidation of mercury, as Step 2 shows elemental mercury ($Hg^0$) oxidized to Hg(II) or $Hg^{2+}$.  Ex[1003], ¶¶316-317.

Although Olson-Paper identifies hydrochloric acid (HCl) and chloride anions (Cl⁻), a POSITA would have applied the same mechanism for a bromine-containing promoter (e.g., HBr).  First, Olson-Paper generalizes the mechanism beyond HCl, to

"HCl or other acids."  Ex[1079], 982.  A POSITA, in view of Nelson, would have recognized that such other acids would have included HBr, as Nelson describes HBr as one such exemplary promoter throughout the reference.  Ex[1012], 6:10-15, 7:45-51, Fig. 1.  A POSITA would  have expected that, when using the same sorbent in both Nelson and Olson-Paper (Norit Darco FGD activated carbon), bromides and chlorides would follow similar reaction and oxidation pathways with activated carbon.  Indeed, chlorine and bromine are adjacent in the halogen family with similar chemical properties and reactions.  *See* §IV.D.3.  Ex[1003], ¶¶318-319; *see also* Ex[1003], ¶¶83-87, 157-163.  *Mayne*, 104 F.3d at 1340 (obvious when "merely substitut[ing] one element known in the art for an equivalent"); Ex[1051], *Ex Parte Jacobson*, slip op. at 6-7 (affirming examiner's "prima facie case of obviousness" of selecting one halogen "from the small genus of known halogens").

Notably, the reaction mechanism with carbocation depicted in Figure 2 of Olson-Paper (top) is nearly identical to Figure 2 of the '147 Patent (bottom).

Petition for IPR2020-00926
USP 8,168,147



Ex[1003], ¶320.

> **4.   Element 1(b) —"chemically reacting elemental mercury in the mercury containing gas with the promoted brominated sorbent to form a mercury/sorbent chemical composition"**

This limitation is disclosed by Nelson, and obvious over Nelson in view of

Olson-Paper.  Nelson describes that "elemental mercury … *appear[s] to react with*

*at least one form of the bromine-carbon surface compounds that were created and*

*are held fast*."  Ex[1012], 6:26-34; *see* Fig. 12 (annotated) ("Elemental Hg" reacting

with promoted-brominated sorbent).



Ex[1003], ¶¶321-322.

Olson-Paper also discloses this limitation, stating that halogen-promoted activated carbon is "active for binding $Hg^0$," referring to reacting with elemental mercury. Ex[1079], 982.

Petition for IPR2020-00926
USP 8,168,147



Figure 2. Reaction site model for activated carbon.

In Step 2 of Figure 2, elemental mercury ($Hg^0$) reacts with halogen-promoted sorbent (blue) to form a mercury/sorbent chemical composition.   Ex[1079], Fig. 2 (annotated).  Ex[1003], ¶323.

### 5.   Element 1(c)—"separating particulates from the mercury containing gas, the particulates including ash and the mercury/sorbent chemical composition."

Nelson discloses separating mercury/sorbent particulates from the mercury-containing gas "along with the fly ash," using a "particulate collector" such as an "electrostatic precipitator (ESP) or fabric filter."   Ex[1012], 6:1-4, 6:30-41, 9:17-10:67 (describing Figs. 2-4, 6).  Ex[1003], ¶¶324-328.  Notably, the '147 Patent

41

Petition for IPR2020-00926
USP 8,168,147

admits that such particulate separation devices—including ESP and fabric filters—were "known in the art."  Ex[1001], 8:61-66.  Ex[1003], ¶¶210, 329.

### E.   DEPENDENT CLAIMS

#### 1.   Claim 2: "the bromine containing promoter is in gaseous form."

Nelson discloses gaseous HBr and/or $Br_2$, as described for Element 1(a)(2). Ex[1003], ¶330.

#### 2.   Claim 4: "the carbocation paired with a bromide anion chemically react with elemental mercury form the mercury/sorbent composition."

This claim is obvious over Nelson in view of Olson-Paper, as described for Elements 1(a)(4) and 1(b). Ex[1003], ¶331.

#### 3.   Claim 5: "at least a portion of the basic binding sites of the activated carbon reacts with oxidized mercury in the mercury containing gas to form another mercury/sorbent chemical composition."

This limitation is obvious over Nelson in view of Olson-Paper.  As described for Element 1(b), Nelson in view of Olson-Paper discloses *elemental* mercury chemically reacting with activated-carbon sorbent to form a mercury/sorbent composition.  Nelson also discloses that "*oxidized* mercury" reacts to form *another* mercury/sorbent composition. Ex[1012], 6:26-41; 9:35-37.  Ex[1003], ¶¶332-333.

Olson-Paper describes that both elemental mercury ($Hg^0$) and oxidized mercury (Hg(II)) are present in the flue gas, and proposes that both react with activated-carbon sorbent to form mercury/sorbent compositions:

> [T]he carbon sorbents have *two or more reaction sites comprising at least an oxidation site and a binding site for the Hg(II)* … [T]he oxidation site is an electron-accepting Lewis acid site, and the Hg(II) binding site is an electron-donating basic site.

Ex[1079], 979-980.  Thus, Olson-Paper proposes two reaction mechanisms to form two mercury/sorbent compositions:

- halogens bind to basic-binding sites of activated carbon to form *promoted sites*, which capture *elemental* mercury;

- *oxidized* mercury binds to *unpromoted* (basic) binding sites.

Petition for IPR2020-00926
USP 8,168,147



Figure 2. Reaction site model for activated carbon.

Ex[1079], Fig. 2 (annotated).  As described for Element 1(b), Steps 1-2 depict

promoting the first mechanism, reacting with *elemental* mercury ($Hg^0$) to produce

mercury/sorbent composition "B."  Regarding Claim 5, Step 3 depicts "*basic sites*

*on carbon that are responsible for binding the Lewis acid Hg(II)*."  Ex[1079], 981.

"Hg(II)" refers to oxidized mercury, which binds to the basic binding sites on

activated carbon to produce mercury/sorbent composition "A."  Ex[1003], ¶¶334-

337.

Notably, the depiction of the two reaction mechanisms is nearly identical

between Figure 2 of Olson-Paper and Figure 2 of the '147 Patent.

44

Petition for IPR2020-00926
USP 8,168,147



Ex[1079]

Ex[1001]

Ex[1003], ¶338.

4.    **Claim 6. "the step of separating particulates from the mercury containing gas comprises separating in a particulate separator comprising one or more electrostatic precipitators."**

Nelson discloses electrostatic precipitators (ESP), as described regarding Element 1(c).  Ex[1003], ¶339.

5.    **Claims 9-10:**

> *9. "injecting an alkali component into the mercury containing gas  for protecting mercury binding sites and capturing oxidized mercury"*
>
> *10. "wherein the alkali component comprises an oxide, hydroxide, carbonate, phosphate of an alkali or alkaline earth element."*

These claims are obvious over Nelson in view of Olson-Paper.  Nelson teaches to inject, in addition to activated carbon, calcium hydroxide $[Ca(OH)_2]$ and magnesium hydroxide $[Mg(OH)_2]$ as "sorbents for other flue gas components such as flue gas $SO_3$, HCl, or $SO_2$."  Ex[1012], 10:39-48.  $Ca(OH)_2$ and $Mg(OH)_2$ are examples of "alkali components" (cl. 9), and are each a "hydroxide" of an "alkaline earth element" (cl. 10).  Ex[1003], ¶¶74-77, 341-342.

$Ca(OH)_2$ and $Mg(OH)_2$ adsorb $SO_2$, thus protecting the binding sites on activated-carbon sorbent to capture mercury.  Absent these additional sorbents, the $SO_2$ would react with "the sorbent surface" of activated carbon, and that at high enough concentrations of $SO_2$, "mercury is no longer sorbed" on activated carbon.

Ex[1079], 980-981.  The calcium-hydroxide and magnesium-hydroxide sorbents are

basic in nature, thus providing them with a strong affinity for scavenging $SO_2$ and

also for capturing oxidized mercury. Notably, the '147 Patent acknowledges that it

was "known in the art" to inject "alkaline and alkaline earth components" to capture

interfering flue-gas components and to capture oxidized mercury.  Ex[1001], 4:45-

52. Ex[1003], ¶¶343-346.

6.   **Claims 11-12**

> **11. "adding a second halogen or halide promoter to the promoted halogen containing sorbent"**
>
> **12. "wherein the second halogen or halide promoter comprises HI, HBr, HCl, Group V element with halogen, or Group VI element with halogen."**

These claims are disclosed by Nelson, and obvious over Nelson in view of

Olson-Paper.  Nelson describes adding a second halide promoter (e.g., HBr, $Br_2$)

simultaneously with the first promoter, and also describes adding a second promoter

(e.g., HCl) subsequent to the first promoter.  Ex[1003], ¶347.

Nelson describes promoting sorbent with "at least one of" gaseous HBr

"and/or" $Br_2$.  Ex[1012], 4:64-67, 5:17-21.  Figure 1 of Nelson, excerpted below,

shows two promoters.  When both HBr and $Br_2$ are simultaneously used, the HBr

can be considered a first promoter and the $Br_2$ a second promoter, and vice versa.

Petition for IPR2020-00926
USP 8,168,147



Nelson also describes adding a second halogen promoter subsequent to the first bromine-promotion step, such as exposing a "brominated sorbent" to hydrogen chloride (HCl). Ex[1012], 13:1-8, Fig. 11. Per Nelson and Olson-Paper, HCl also acts as a promoter of activated carbon. Ex[1012], 12:20-34; Ex[1079], Fig. 2, 982 (activated carbon "reacts with HCl to form stable carbenium ion intermediates, which are then active for binding $Hg^0$ … HCl or other acids promote the oxidation step."). Ex[1003], ¶¶348-350.

### 7. **Claims 13-14:**

> **13. "adding a stabilizing agent to the promoted brominated sorbent"**
>
> **14. "the stabilizing agent comprises at least one of S, Se, $H_2S$, $SO_2$, $H_2Se$, $SeO_2$, $CS_2$, $P_2S_5$, or mixtures thereof."**

Claims 13-14 are disclosed by Nelson. Nelson describes that sorbent can include "a sulfur-impregnated PAC." Ex[1012], 7:10-12. Nelson also discloses exposing the promoted-brominated sorbent to $SO_2$ injected into the flue gas. Ex[1012], 13:1-10, Fig. 11. Sulfur (S) and sulfur dioxide ($SO_2$) are expressly identified in Claim 14 as stabilizing agents. In addition, the '147 Patent confirms

that the "stabilizing reagent(s) may be sequentially added, either *before or after* the addition and reaction of the halogen/halide." Ex[1001], 10:54-56. Ex[1003], ¶351.

### 8.    Claim 15. "the step of promoting at least a portion of the available sorbent material occurs at least partially outside of the mercury containing gas."

This limitation is disclosed by Nelson, as described for Element 1(a)(1). Nelson discloses promoting sorbent prior to (and partially outside of) mercury-containing gas. Ex[1012], 6:4-9, cl. 1, Figs. 1-6. Ex[1003], ¶352.

### 9.    Claim 16. "the promoted brominated sorbent combines with at least 70% of the mercury present in the mercury containing gas."

Nelson discloses this limitation. Nelson describes that "brominated PAC achieved 90% mercury removal." Ex[1012], 14:1-14. Figure 14 plots mercury-removal percentage versus sorbent-injection rate.

Petition for IPR2020-00926
USP 8,168,147



Ex[1012], Fig. 14 (coloring added). Nelson achieved "Mercury Removal %" above 70% when using HBr (●) or using $Br_2$ (■ ♦ ▲) to load the activated carbon. Ex[1012], 8:35-53, 14:1-30. In Figure 15, Nelson depicted a "number of different sorbents … at different injection levels" and the "Hg vapor removal (%) *due to sorbent*" itself (Y-axis). Ex[1012], 15:23-28, Fig. 15.

Petition for IPR2020-00926
USP 8,168,147



At a sorbent-injection rate of approximately 3 lb/MMacf, the sorbent removes above 70% of the mercury with 15 wt% $Br_2$, shown with (♦) datapoints. Ex[1012], 15:35-38. Ex[1003], ¶¶353-356. *See* State of the Art, §IV.D.2 (describing further motivations for 70% removal).

### 10. Claim 17

*Element 17(a)*—*"injecting the particulate sorbent material at a sorbent material injection rate and injecting separately the bromine containing promoter into a gas stream"*

*Element 17(b)*—*"whereby in-flight reaction produces the promoted brominated sorbent,"*

51

Petition for IPR2020-00926
USP 8,168,147

These limitations are disclosed by Nelson.  The particulate-sorbent material, powdered-activated carbon, is discussed for Claim Element 1(a)(1).  As described for Elements 1(a)(2) and 1(a)(4), the sorbent (red) and bromine-containing promoter (blue) are injected separately into a gas stream, in which in-flight reaction (blue) produces promoted-brominated sorbent (purple).



Ex[1012], Fig. 1 (annotated).  A POSITA would have understood that for sorbent and promoter to be injected, they must necessarily have been injected at an injection rate.  For example, Figures 14 and 15 of Nelson refer to a "Sorbent Injection Rate."

Notably, nothing in claim 17 (or claim 1) of the '147 patent limits the in-flight reaction to one that occurs at the combustion site. Ex[1003], ¶¶357-358.

As shown in Figure 1 and described by Nelson, bromine-containing promoter—$Br_2(g)$ and/or $HBr(g)$—and sorbent are injected "separately" into a gas stream. Ex[1012], 6:42-52. For example, "diluting carrier gas" is used to inject promoter. Ex[1012], 7:64-66. Nelson refers to the sorbent as "fluidizable," meaning it can be injected and transported in a gas stream. Ex[1012], 5:4-6; *see* 9:30-33, 9:60-66, 13:59-63, 14:23-26. Bromine-containing promoter and sorbent react in-flight in a gas-phase, such as in a "fluidized-bed unit" or a "transport reactor." Ex[1012], 8:57-67. A POSITA would have recognized that in such reactors, the sorbent would be delivered in a gas mixture. *See, e.g.,* Ex[1027], 16-1. Notably, the '147 Patent also discloses a "fluidized bed" reactor for in-flight reaction between promoter and sorbent. Ex[1001], 9:61-64, 10:28-33. Ex[1003], ¶¶359-364.

### Element 17(c)—"the promoter is reacted in the gas phase or as a vapor,"

This limitation is disclosed by Nelson. As discussed for Element 1(a)(2), Claim 2, and Element 17(a), gaseous $Br_2(g)$ and/or $HBr(g)$ reacts with sorbent in the gas phase.



Ex[1003], ¶365.

> ### Element 17(d)—"the promoter is added at from about 1 to about 30 grams per 100 grams of the sorbent material."

Whether Element 17(d) is interpreted as a ratio of promoter added *to the sorbent* or a ratio of promoter added *to the gas stream*, Element 17(d) would have been obvious under either interpretation.  Ex[1003], ¶366.

Nelson expressly describes adding promoter *to the sorbent* from about 1-30 grams per 100 grams of sorbent:  "While over 30 wt% of $Br_2$ (g) can be adsorbed into some powdered activated carbons, … significant increases in mercury reactivity will be observed with only about 1 wt % $Br_2$ (g) in the PAC."  Ex[1012], 8:35-42; 11:10-20 (sorbent with "15 wt % Br"); 12:9-20 ("brominated … to 10 wt %"); 13:23-26, 14:55-63, 15:35-46.  Ex[1003], ¶367. *Accord Titanium Metals Corp. v. Banner*,

778 F.2d 775, 782 (Fed. Cir. 1985) (when "a claim covers several compositions, the claim is 'anticipated' if one of them is in the prior art").

As for adding promoter *to the gas stream*, Nelson does not expressly state the gas-phase concentration ratio of promoter to sorbent. However, it would have been obvious, given the highly reactive nature of HBr and $Br_2$ towards activated carbon, that the gas-phase ratio would have been similar to the ratio on the sorbent in Nelson. For example, Nelson describes that when bromine-containing promoter "contacts the solids … it is quickly adsorbed and reacted with the materials," to have "the bromine as stable as possible on the carbon." Ex[1012], 8:9-35. Ex[1003], ¶368.

In addition, it would have been well within the purview of a POSITA to adjust promoter and sorbent-injection rates, as needed, to achieve desired mercury removal. Ex[1003], ¶369. The range is only approximate—"from about 1 to about 30," and nothing in the '147 Patent attributes significance to the claimed range, or establishes that it "achieves unexpected results." *In re Applied Materials, Inc.*, 692 F.3d 1289, 1297-98 (Fed. Cir. 2012).

### 11. <u>Claim 20. "A method according to claim 17, wherein the promoter injection rate and the sorbent injection rate into the gas are determined at least in part on the monitored mercury content of the cleaned gas."</u>

Figures 14-15 of Nelson disclose that the monitored mercury content (Y-axis) of the cleaned gas depends on: (a) "injection rate" of promoted sorbent (X-axis); and

(b) composition of the promoted sorbent (as represented by the different data sets, such as 1.5%, 5%, etc.).



Ex[1012], Figs. 14-15 (annotated). Nelson also discloses measuring mercury content of the cleaned gas using a "continuous mercury monitor." Ex[1012], 11:50-56, 13:63-67. Notably, Nelson discloses the same manufacturer and model of mercury monitor as the '147 Patent. *Compare* Ex[1012], 15:14-17; Ex[1001], 15:30-32, 19:37-40. Ex[1003], ¶¶370-372.

Based on Figures 14-15 of Nelson, it would have been obvious to determine a desired sorbent-injection rate and a sorbent composition "at least in part on the monitored mercury content." For example, if measured mercury content in the cleaned gas were too high when using sorbent with 5 wt% bromine (data set in green in Fig. 14), it would have been obvious to either increase the sorbent-injection rate

(X-axis) or use a sorbent composition with 15 wt% bromine (data set in red in Fig.

14). A POSITA would have known that the sorbent composition of Figures 14-15

depends on the promoter injection rate used to manufacture that promoted sorbent

off-site. Ex[1012], Fig. 1. Claim 20 does not require continuously monitoring

mercury content, continuously adjusting injection rates, or control feedback signals.

Nor does Claim 20 require that sorbent and promoter injection rates "are

determined" concurrently. As such, it would have been obvious to determine the

promoter injection rate "at least in part on the monitored mercury content." In

addition, it was well-known in the art, and discussed by EPA, that when using

halogens with activated-carbon sorbent, "the amount of sorbent needed" and "the

amount of Cl [halogen] present" are two primary variables to control mercury

removal. Ex[1009], 4676. Ex[1003], ¶373.

### 12. **Claim 21. "A method according to claim 1, wherein the composition of the promoted sorbent is controlled by the mercury content of the cleaned gas stream."**

Claim 21 recites that sorbent composition is "controlled by *the* mercury

content of *the* cleaned gas," without antecedent basis. Petitioners interpret this

phrase, consistent with the specification, as "controlled based on measured mercury

content of the mercury containing gas," after mercury has been removed in Claim

Element 1(c). Ex[1001], 4:53-55, 9:31-38.

Petition for IPR2020-00926
USP 8,168,147

Nelson discloses a "continuous mercury monitor" (using the same manufacturer and model as the '147 Patent) to measure mercury content remaining in cleaned gas. Ex[1012], 11:50-56, 13:63-67, 15:14-17; Ex[1001], 15:30-32. As discussed regarding Claim 20, Nelson compares measured-mercury content to sorbent composition. Ex[1012], Figs. 14-15.



It would have been obvious, based on measured-mercury content, to control sorbent composition—such as to inject sorbent with 1 wt%, 5 wt%, or 15 wt% bromine. For example, if using sorbent brominated to 5 wt% with $Br_2$ (green) yielded excessive mercury content in cleaned gas, it would have been obvious to try sorbent

brominated to 10 wt% with HBr (yellow) or 15 wt% with $Br_2$ (red).  Ex[1003], ¶¶374-376.

To the extent Claim 21 is interpreted to require that the mercury content is what changes composition of the promoted sorbent, this too is obvious.  As described for Element 1(b), Nelson in view of Olson-Paper disclose that mercury reacts with promoted-brominated sorbent; as more mercury reacts with the sorbent, the sorbent composition changes, at least with respect to mercury content.  Ex[1003], ¶377.

### 13.  Claims 22-24:  "the bromine containing promoter comprises [cl. 22: at least one of HBr, PBr3, or Br₂] [cl. 23: molecular bromine] [cl. 24: a bromine compound]"

As described for Elements 1(a)(1)-1(a)(2), Nelson discloses HBr(g) and/or $Br_2(g)$ as promoters.  Ex[1003], ¶¶378-380.

## VII.  GROUND 2: CLAIMS 11-12 AND 17-20 ARE OBVIOUS OVER NELSON IN VIEW OF OLSON-PAPER AND LISSIANSKI-PATENT

Claims 11-12, 17, and 20 would have been obvious over Nelson in view of Olson-Paper, as described in Ground 1.  These claims, and claims 18-19, would have been further obvious over Lissianski-Patent.  Elements and claims not mentioned below are disclosed or obvious for the reasons provided in Ground 1.  Ex[1003], ¶381.

Petition for IPR2020-00926
USP 8,168,147

### A.   OVERVIEW OF EX[1036] ("LISSIANSKI-PATENT")

Lissianski-Patent improves mercury capture by introducing a "halogen agent"

(gold) into mercury-containing gas (green).



Ex[1036], Fig. 3 (annotated).   Ammonium chloride ($NH_4Cl$) and/or ammonium

bromide ($NH_4Br$) are added "into the flue gas … downstream of the primary

combustion zone."   Ex[1036], 2:8-10.   The halogens are transported using "air,

recycled flue gas, nitrogen or another carrier gas."   Ex[1036], 4:13-29.   The "hot flue

gas causes the additive to thermally decompose to form HCl, HBr or HI which results

in more significant mercury oxidation.   The increase in mercury oxidation allows for

improved efficiency of mercury removal by activated carbon (AC) injection."

Ex[1036], 3:45-49.   The halogens of Lissianski-Patent also "increase efficiency of

NOx reduction," another harmful pollutant, "by reducing oxides of nitrogen to

molecular nitrogen."   Ex[1036], 3:23-25, 4:55-59.   Ex[1003], ¶¶253-258.

### B.    REASONS TO COMBINE REFERENCES

A POSITA would have been motivated, with a reasonable expectation of success, to combine Nelson and Olson-Paper with Lissianski-Patent to: (i) supply the pre-brominated sorbent of Nelson into mercury-containing flue gas; and (ii) supply the halogen agent of Lissianski-Patent, upstream of the sorbent, into the same mercury-containing flue gas.  The halogen agent of Lissianski-Patent would further promote the pre-brominated sorbent of Nelson.  In implementing the teachings of Nelson in a plant with a selective catalytic reduction (SCR) unit—as taught by both Nelson and Lissianski-Patent—a POSITA would already have been separately providing additional bromine-containing promoter into mercury-containing gas to remediate NOx. Ex[1012], 10:34-39; Ex[1036], 2:61-64, 3:51-58, 4:43-59.  *See* §IV.D.1 (well-known nature of SCR units); Ex[1003], ¶¶110-115, 382-391.  *See Alcon Research Ltd. v. Apotex Inc.*, 687 F.3d 1362, 1368-69 (Fed. Cir. 2012) (collecting cases, obviousness "does not require that the references be combined for the reasons contemplated by the inventor").

In the combined system, nothing would need to have been taken away from Nelson, because Nelson already describes injecting pre-brominated sorbent (labeled "improved mercury sorbent") (purple) into mercury-containing gas (green). Ex[1012], Figs. 1-6.

Petition for IPR2020-00926
USP 8,168,147





Ex[1012], Figs. 1-2 (annotated).  As taught by Lissianski-Patent, a POSITA would

have supplied "halogen agent" (gold) to mercury-containing gas (green), where it

forms HCl and/or HBr.  Ex[1036], Figs. 1-3, 4:14-60.



Ex[1036], Fig. 3 (annotated).  The additional-halogen promoter (gold) of Lissianski-

Patent would have been added to Nelson as follows:



**Figure 1.**



**Figure 2.**

Ex[1012], Figs. 1, 2 (annotated).  Combining the pre-brominated sorbent of Nelson (purple) in mercury-containing gas (green) with additional halogen (gold) of Lissianski-Patent beneficially provides multi-pollutant control, enhancing removal of both NOx and mercury.  Ex[1003], ¶¶387-392.

## 1. **Enhanced NOx Removal**

A POSITA would have been motivated to combine Nelson with Lissianski-Patent, with reasonable expectation of success, to remove NOx.  First, both Nelson and Lissianski-Patent disclose NOx as a byproduct of coal combustion.  Ex[1012], 11:46-48; Ex[1036], 1:9-13.  Second, Nelson and Lissianski-Patent disclose power plants with well-known selective-catalytic reduction (SCR) units, which convert harmful NOx into harmless $N_2$.  Ex[1012], 10:34-39; Ex[1036], 2:60-64, 3:51-58; *See* §IV.D.I.  Ex[1003], ¶¶102, 110-115.  Third, Nelson states that the presence of an SCR does not detract from the "utility of the disclosed mercury-removal method." Ex[1012], 10:34-37.  Fourth, the additional halogens provided by Lissianski-Patent "upstream of a selective catalytic reduction (SCR) unit" can "improve the performance of the SCR process" and "increase efficiency of NOx reduction." Ex[1036], 3:50-58, 4:14-59.  Accordingly, both Nelson and Lissianski-Patent teach the presence of an SCR unit as part of an already-existing pollution-control system,

Petition for IPR2020-00926
USP 8,168,147

and providing additional halogens to improve efficiency in NOx removal.  Ex[1003],

¶¶393-395.

### 2.   <u>Enhanced Mercury Removal</u>

A  POSITA  would  also  have  been  motivated  to  combine  Nelson  with

Lissianski-Patent,  with  a  reasonable  expectation  of  success,  to  enhance  mercury

removal.   Nelson  describes  embodiments  in  which  bromine-promoted  sorbent

(purple) is prepared offsite through an in-flight reaction between bromine-containing

gas (blue) and sorbent (red).



Bromine-promoted sorbent is then injected into mercury-containing (flue) gas to remediate mercury.  Ex[1012], 9:21-34.



Nelson explains that increasing the weight ratio of bromine to sorbent within the range of 1-30 wt% is "better and may be preferable" in producing "an even more capable mercury sorbent" (i.e., removing more mercury for a given sorbent-injection rate), but that increasing above 15 wt% presented engineering challenges in terms of desorption during storage and transportation.  Ex[1012], 8:35-56. Ex[1003], ¶¶396-399.

A  POSITA wanting to increase mercury removal, without increasing the sorbent-injection rate, would have been motivated to supply additional halogen to mercury-containing gas to increase the fraction of oxidized mercury in the mercury-containing gas, thus making the mercury more susceptible to removal by activated

carbon. Ex[1036], 6:33-7:6 (discussing Fig. 8-9); 1:22-42; 3:14-50; Ex[1012], Fig. 12; Ex[1079], 979. Providing these additional halogens would also increase the weight ratio of bromine on the pre-brominated sorbent of Nelson, such that *additional promoted sites* on activated carbon would be available to react with elemental mercury, as discussed for Claim Element 1(b) and Claim 5 in Ground 1. Ex[1003], ¶400.

A POSITA would be further motivated to combine, with a reasonable expectation of success, because all three references are from the same field of endeavor. They each use halogen promoters with activated-carbon sorbent to remove mercury from combustion gas. Indeed, both Nelson and Lissianski-Patent teach contacting activated-carbon with the same chemicals, including HCl and HBr. Ex[1012], 6:10-15; Ex[1036], 3:20-47. Ex[1003], ¶¶390-391.

## C. TEACHINGS OF NELSON, OLSON-PAPER, AND LISSIANSKI-PATENT

### 1. Claims 11-12

> **11. "adding a second halogen or halide promoter to the promoted halogen containing sorbent"**
>
> **12. "wherein the second halogen or halide promoter comprises HI, HBr, HCl, Group V element with halogen, or Group VI element with halogen."**

Lissianski-Patent discloses adding "ammonium chloride ($NH_4Cl$), $NH_4Br$ or $NH_4I$ into flue gas, especially in the flue gas from low-rank coals. The hot flue gas

causes the additive to thermally decompose to form HCl, HBr or HI which results in more significant mercury oxidation" and improved NOx reduction. Ex[1036], 3:42-51. HCl, as disclosed in Olson-Paper and Lissianski-Patent, is a second halide promoter that further promotes the pre-brominated sorbent of Nelson. Ex[1079], Fig. 2 (effects of HCl on activated carbon), 982 (carbene species react "with HCl to form stable carbenium ion intermediates, which are then active for binding $Hg^0$ … Thus HCl or other acids promote the oxidation step."). Ex[1003], ¶¶402-403.

## 2. <u>Claims 17-18</u>

Claims 17 and 18 are obvious over Nelson in view of Olson-Paper and Lissianski-Patent. The pre-brominated sorbent ("improved mercury sorbent") of Nelson—comprising powdered-activated carbon with 1-15 wt% Br— is a "sorbent," as recited in claims 1, 17, and 18. First, claim 1 recites "sorbent material comprising activated carbon," which means that sorbent can include other components besides activated-carbon, such as halogens. Ex[1001], 7:44-47, 10:34-57 (describing multiple halogenation steps). Nelson teaches injecting pre-brominated sorbent into mercury-containing gas ("gas stream" of claim 17 and "mercury-containing gas" of claim 18) to remove mercury.

Petition for IPR2020-00926
USP 8,168,147



Ex[1012], Figs. 1, 2 (annotated); 9:21-35.  Ex[1003], ¶¶404.

The additional HBr supplied by Lissianski-Patent (gold) further promotes the

pre-brominated sorbent of Nelson in mercury-containing gas (green).

70





Ex[1003], ¶¶389, 404-405.

Petition for IPR2020-00926
USP 8,168,147

Regarding Element 17(a), the pre-brominated sorbent of Nelson is injected into mercury-containing gas (y-axis) at a "sorbent injection rate" (x-axis), as shown in Figures 14-15.



In Figure 14 (annotated), Nelson discloses a "sorbent injection rate" of pre-brominated sorbent of 3.7 lb/MMacf (pounds per million actual cubic feet), when previously loaded with $Br_2$ up to 5 wt% (♦) and 15 wt% ( ▲ ), or loaded with 10 wt% using HBr (●).

Bromine-containing promoter in Lissianski-Patent is injected into mercury-containing gas (green), at least under Patent Owner's infringement theories in its Complaint.  Patent Owner contends that claim 17 is broad enough to include a process by which a bromine-containing ingredient is added to coal in any phase of matter (e.g., gas, liquid, solid, or aqueous), is then vaporized upon burning of coal, and is then "in gaseous form when it comes into contact with activated carbon." Ex[1005], ¶¶206-216.  Lissianski-Patent discloses supplying $NH_4Br$ directly into mercury-containing gas, which thermally decomposes to form HBr and provides the mercury-containing gas (green) with a gas-phase "Br" concentration of 0.3 or 3 ppm. Ex[1036], 6:53-7:6, Fig. 9.  Ex[1003], ¶¶408-409.



Fig. 3

The bromine-containing promoter of Lissianski-Patent further reacts in mercury-containing gas with the improved mercury sorbent of Nelson, as shown below:

Petition for IPR2020-00926
USP 8,168,147



Ex[1003], ¶410.

A POSITA would have recognized that the bromine-containing promoter in Lissianski-Patent would have been supplied "separately" from the pre-brominated sorbent in Nelson. Lissianski-Patent discloses that HBr is formed at "flue gas temperatures in a range of 1600ºF (Fahrenheit) to 2300 ºF." Ex[1036], 3:45-59, Fig. 7. In contrast, Nelson discloses supplying pre-brominated sorbent at cooler temperatures, such as "150-to-200ºC." Ex[1012], 9:21-30, Fig. 2. Ex[1003], ¶¶410-411.

Regarding Elements 17(b)-17(c), much like "gaseous hydrogen bromide, HBr(g)" was used to manufacture the pre-brominated sorbent of Nelson, Lissianski-Patent discloses using the same gaseous HBr(g) to further promote the sorbent. Ex[1012], 6:10-13; Ex[1036], 3:42-50.  An "in-flight" reaction occurs in mercury-containing gas between the HBr(g) of Lissianski-Patent and the pre-brominated (partially promoted) sorbent of Nelson.



As described in Ground 1, a POSITA would have understood that HBr(g) chemically reacts with and promotes activated carbon to form a promoted-brominated sorbent. Also, most of the Br-species supplied by Lissianski-Patent would have been available to react with the pre-brominated sorbent of Nelson (purple), as opposed to being consumed in oxidizing mercury.  The gas-phase Br concentration is 300-3000 times greater than gas-phase mercury concentration (0.3-3 parts *per million* v. 10 parts *per billion*).  Ex[1036], 6:33-40, 6:62-67. Ex[1003], ¶412.

Regarding Element 17(d), Nelson discloses binding 1-15 wt% bromine on the sorbent, but that activated carbon can bind up to 30 wt% bromine. Ex[1012], 8:35-57, Fig. 14.  Accordingly, the pre-brominated sorbent of Nelson was not fully

saturated (can hold more bromine), and would chemically react with the additional bromine-containing promoter (e.g., HBr) provided by Lissianski-Patent. Ex[1003], ¶¶413-414.

The additional Br-promoter supplied by Lissianski-Patent would fall within the ratios of Element 17(d). Lissianski-Patent discloses supplying 0.3 ppm or 3 ppm of additional "Br" into mercury-containing gas. Ex[1036], 6:62-67, Fig. 9. Nelson describes a sorbent injection rate of approximately 3.7 lb/MMacf. Ex[1003], ¶¶88-90.



Ex[1012], Fig. 14 (annotated).  Comparing the two rates corresponds to a gas-phase ratio of 1.17 grams (0.3 ppm) or 11.7 grams (3 ppm) of bromine-containing promoter per 100 grams of sorbent—each of which is within the claimed ratio.  And even if all of the additional gas-phase HBr of Lissianski-Patent were to chemically react with the pre-brominated sorbent of Nelson, the total weight ratio of bromine to sorbent (including the promoter originally provided by Nelson and the promoter added from Lissianski-Patent) would still remain below 30 wt%.  Ex[1003], ¶¶415-420.

Petition for IPR2020-00926
USP 8,168,147

Regarding Claim 18, the additional promoter of Lissianski-Patent and the pre-brominated sorbent of Nelson react in-flight with one another in a mercury-containing (flue gas).  Ex[1003], ¶420.

### 3.  Claim 19. "A method according to claim 18, wherein the gas stream is a transport gas."

Lissianski-Patent states that additional bromine-containing promoter can be introduced by using "air, recycled flue gas, nitrogen or another carrier gas" to improve mixing.  Ex[1036], 4:20-23.  The mercury-containing flue gas transports the additional bromine-containing promoter of Lissianski-Patent to the pre-brominated sorbent of Nelson.  Ex[1003], ¶¶421-422.

### 4.  Claim 20: "A method according to claim 17, wherein the promoter injection rate and the sorbent injection rate into the gas are determined at least in part on the monitored mercury content of the cleaned gas"

In addition to the reasons provided in Ground 1, Claim 20 is also obvious over Nelson in view of Olson-Paper and Lissianski-Patent.  As discussed for Claims 17-18 (Ground 2), the promoted sorbent of Nelson is a "sorbent."  Figures 14-15 of Nelson disclose that monitored-mercury content of cleaned gas (brown, Y-axis) depends on "sorbent injection rate" of promoted sorbent (red, X-axis).

Petition for IPR2020-00926
USP 8,168,147



Based on Figures 14-15 (annotated above), it would have been obvious to determine a desired sorbent-injection rate "at least in part on the monitored mercury content"—measuring mercury and determining which "sorbent injection rate" to use. A POSITA would have also found it obvious to determine the injection rate of additional halogen-containing promoter according to the concentration of Lissianski-Patent, at least in part on the monitored-mercury content.



*Fig. 9*

Determining a ratio of oxidized mercury to elemental mercury, as in Figure 9 of Lissianski-Patent, is a form of "mercury content." Based on the mercury content (e.g., % of oxidized mercury) and temperature, Lissianski-Patent determines a promoter rate of 0.3 ppm or 3 ppm. Ex[1036], 6:61-67, Figs. 8-9. Ex[1003], ¶423.

Determining a promoter-injection rate and sorbent-injection rate, at least in part on mercury content, would reduce costs by avoiding wastefully injecting unneeded excess materials. Due to the variability of the composition of coal as a fuel source (e.g., native mercury and halogen content), it would have been obvious that some amount of adjustment to the sorbent-injection rate and promoter-injection

rate would have been performed as part of routine process control and optimization. Ex[1003], ¶¶134, 150, 424.  *See* §IV.D.3; *Philips*, 948 F.3d at 1337.

## VIII.   GROUND 3: CLAIMS 1-2, 4-6, 11-12, 15-16, AND 21-24 ARE OBVIOUS OVER DOWNS-HALOGENATION IN VIEW OF OLSON-PAPER

### A.   OVERVIEW OF EX[1015] ("DOWNS-HALOGENATION")

"**Downs-Halogenation**" Ex[1015] qualifies as §102(e) prior art, with priority to March 22, 2004, the filing date of 60/555,353 "**Downs-Halogenation-Provisional**."  Ex[1016].  *Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*, 800 F.3d 1375, 1378 (Fed. Cir. 2015); *Amgen Inc. v. Sanofi*, 872 F.3d 1367, 1380 (Fed. Cir. 2017) (*Dynamic* applies to published patent applications).  Downs-Halogenation has written-description support in Downs-Halogenation-Provisional, as illustrated in a redline between the two.   Ex[1018].   The subject matter cited from Downs-Halogenation is found in Downs-Halogenation-Provisional, as indicated by the parallel citations to Ex[1015] and Ex[1016].  Ex[1003], ¶¶225-226.

Downs-Halogenation Ex[1015] applies "bromine-containing compounds" to powdered-activated carbon (PAC) sorbent, and the enhanced sorbent has "high reactivity for the removal of elemental mercury."   Ex[1015], ¶[0010], [0019]; Ex[1016], ¶[0012], [0022].   The configuration in Downs-Halogenation (top) resembles the '147 Patent (bottom) (annotated):

Petition for IPR2020-00926
USP 8,168,147



**Ex[1015]**

FIG. 2



**Ex[1001]**

FIG. 3

Petition for IPR2020-00926
USP 8,168,147

Ex[1003], ¶427. Both the '147 Patent and Downs-Halogenation store powdered-activated carbon (PAC) in a reservoir (red) and inject the PAC through a feeder (orange) into transport gas (purple) driven by a blower (pink). Halogen-containing promoter is injected from a reservoir (blue) into transport-gas (purple), downstream of the PAC injection. A promoted-carbon sorbent is prepared "in-flight" within the transport gas prior to injection into mercury-containing gas (green). *Compare* Ex[1001], 8:25-53, 9:51-56 *with* Ex[1015], ¶[0019]; *see also* Ex[1016], ¶[0022]. Ex[1003], ¶¶227-233, 427.

Claim 1 of Downs-Halogenation has written-description support in Downs-Halogenation-Provisional. Ex[1003], ¶¶234-242. Regarding Element 1(a) of Downs-Halogenation, Downs-Halogenation-Provisional discloses "removing elemental mercury from coal combustion flue gases." Ex[1016], ¶[0026], cl. 1. Ex[1003], ¶236. Regarding Element 1(b), Downs-Halogenation-Provisional discloses four streams, including: halogen-containing gas (first stream); PAC sorbent (second); transport gas (third); and mercury-containing flue gas (fourth). Ex[1016], ¶[0022]; Ex[1003], ¶¶237-238. Regarding Elements 1(c)-1(d), Downs-Halogenation-Provisional combines halogen-containing gas, PAC sorbent, and transport air, and injects the combination into flue gas. Ex[1016], ¶[0022]; Ex[1003], ¶¶239-240. Regarding Element 1(e), Downs-Halogenation-Provisional

discloses "adsorption" of elemental mercury onto the sorbent. Ex[1016], ¶[0005]; Ex[1003], ¶241.   Regarding Element 1(f), Downs-Halogenation-Provisional discloses removing sorbent from flue gas using particulate collectors, such as ESPs or fabric filters. Ex[1016], ¶[0004], [0025].  Ex[1003], ¶242.

### B.   REASONS TO COMBINE DOWNS-HALOGENATION WITH OLSON-PAPER

Downs-Halogenation promotes conventional powdered-activated-carbon (PAC) sorbent with "halogen-containing compound to be adsorbed onto the sorbent surface" to provide the sorbent "with a high reactivity for the removal of elemental mercury."  Ex[1015], Abstract; Ex[1016], ¶[0022].  Downs-Halogenation does not detail the "sorbent surface" or the reaction mechanism with halogens.  A POSITA would have combined Downs-Halogenation with Olson-Paper, which explains the underlying "sorbent surface" and proposes underlying chemical reactions mechanisms on that surface.  Ex[1003], ¶¶426-428. *See  Abbott Labs.*, 471 F.3d at 1368 (precluding patentability for "a newly-discovered property of the prior art"); *Crish*, 393 F.3d at 1258 (no "novelty [in] claiming a known material by its properties.")

A POSITA would have been motivated to combine Downs-Halogenation and Olson-Paper, with a reasonable expectation of success, because both references teach using halogens and activated-carbon sorbents to improve mercury removal.

Downs-Halogenation is entitled, "Dynamic Halogenation of Sorbents for the Removal of Mercury from Flue Gases," and Olson-Paper is entitled, "Chemical mechanisms in mercury emission control technologies." Ex[1003], ¶¶428-429.

A POSITA would have understood the applicability of chloride-containing chemical reactions (Olson-Paper) to bromide-containing chemical reactions (Downs-Halogenation). First, both references use the same sorbent, "powdered activated carbon" (PAC). Ex[1079], 982; Ex[1015], ¶[0019]; Ex[1016], ¶[0022]. Second, both references teach that hydrogen chloride (HCl) improves the ability of PAC to capture mercury. Ex[1015] ¶[0023]; Ex[1016], ¶[0026]; Ex[1079], Fig. 2. Ex[1003], ¶431, 433. Third, it was well-known that bromine and chlorine have similar chemical properties, undergo similar reactions, and are adjacent in the periodic table. Ex[1003], ¶¶432-433; *see also* Ex[1003], ¶¶71-73, 83-86. *Mayne*, 104 F.3d at 1340 (obviousness when "substitut[ing] one element known in the art for a known equivalent").

Ex[1027], exhibit p.239 (annotated).  *Ex Parte Jacobson*, Appeal 2009-003022, Decision on Appeal, slip op. at 6-7 (BPAI Feb. 1, 2010) (affirming examiner's "prima facie case of obviousness" of selecting one halogen "from the small genus of known halogens").  Once the reaction mechanisms between chlorine-containing compounds and activated-carbon sorbents were presented in Olson-Paper, a POSITA would have expected similar reactions with bromine-containing compounds.  Ex[1003], ¶433; *see* Ex[1003], ¶¶128-129, 150-163.

A POSITA would have had a reasonable expectation of success, because combining with Olson-Paper would have been nothing more than seeking additional information regarding surface chemistry and reaction mechanisms already theorized to take place in the process of Downs-Halogenation.  No modifications would need

Petition for IPR2020-00926
USP 8,168,147

to be have been made to the process conditions of Downs-Halogenation.  Ex[1003],

¶428.  *See PharmaStem*, 491 F.3d at 1363-64 (obviousness for "confirmation of what

was already believed to be true").

C.  CLAIM 1

1.  **1(Preamble)—"A method for separating mercury from a
mercury containing gas comprising:"**

Downs-Halogenation discloses "mercury removal that is applicable to

virtually all coal-fired utility power plants."  Ex[1015] ¶, [0011]; Ex[1016], ¶[0013].

Downs-Halogenation separates (removes) mercury from mercury-containing gas by

reacting the mercury with sorbent, and then removing the sorbent.   Ex[1015],

¶[0002], [0004]; Ex. 1016, ¶[003], [005].  Ex[1003], ¶¶434-437.

2.  **Elements 1(a)(1)-1(a)(2)**

*1(a)(1): "promoting at least a portion of a
particulate sorbent material comprising activated
carbon by chemically reacting the sorbent
material with a bromine containing promoter to
form a promoted brominated sorbent,"*

*1(a)(2): "the bromine containing promoter is in
gaseous form, vapor form, or non-aqueous liquid
form,"*

These limitations are disclosed by Downs-Halogenation, and obvious over

Downs-Halogenation in view of Olson-Paper.  The particulate sorbent in Downs-

Halogenation is "carbonaceous sorbent (e.g., powdered activated carbon, or PAC)."

Ex[1015], ¶[0004], [0010]; Ex[1016], ¶[005], [0012].  Downs-Halogenation labels

"carbonaceous sorbent 14 particle" and "sorbent 14 particles."  Ex[1015], ¶[0019],

[0024]; Ex[1016], ¶[0022], [0027].  Ex[1003], ¶¶438-442.

The PAC sorbent (red) is treated with halogen-containing reagent (blue, *e.g.*,

HBr or Br$_2$) to form promoted-brominated sorbent. Ex[1015], ¶[0023]-[0024],

[0026]; Ex[1016], ¶[0026]-[0027], [0029].



FIG. 2

The halogen-containing reagent (blue) is in gaseous form when it contacts the

sorbent, and includes hydrogen bromide (HBr), bromine (Br$_2$), hydrogen chloride

(HCl), and/or chlorine gases, with HBr being "most effective."  Ex[1015], ¶[0019],

[0023], [0026]-[0027]; Ex[1016], ¶[0029]-[0030].  Ex[1003], ¶¶443, 448-449.

The halogen-containing reagent is a promoter. It "facilitate[s] gas-solid reactions between the gaseous mercury and the solid carbon particles." Ex[1015], ¶[0003]; Ex[1016], ¶[004] ("***promote*** the adsorption of vapor-phase mercury species"). The sorbent and its loading of "halogen-containing reagent 24 enter the flue gas … injection locations 28 with high reactivity for the removal of elemental mercury." Ex[1015], ¶[0019]; Ex[1016], ¶[0022]. Ex[1003], ¶443.

Chemical reaction with the halogen-containing reagent—e.g., HBr(g) or $Br_2$(g)—provides promoted-brominated sorbent, referred to as "Dynamically Halogenated PAC." Ex[1015], ¶[0023], [0026]; Ex[1016], ¶[0029], [0026]. The reaction with "halogen-containing reagent 24" has the effect of "placing it exactly where it is needed to facilitate elemental mercury removal—on the surface of the sorbent 14." Ex[1015], ¶[0021], ¶[0019]; Ex[1016], ¶[0024], [0022]. A POSITA would have understood that when halogens are "adsorbed onto the sorbent surface," as in Downs-Halogenation, the halogens (particularly chlorine-containing and bromine-containing) react with activated carbon, and that the reaction was one of promotion. Ex[1015], Abstract; Ex[1016], ¶22. A POSITA would have known that untreated activated carbon is basic (can donate electrons), whereas HCl and HBr are acidic (accept electrons). A POSITA would have known that acid halides have an

affinity for bases, and expected that Br and Cl would readily react with activated carbon.  *See* §IV.D.3. Ex[1003], ¶¶444-445; *see also* Ex[1003], ¶¶130-132, 150-163.

Olson-Paper confirms that the reactions are promotion, as described for Claim Elements 1(a)(3) and 1(a)(4).  Olson-Paper describes that elemental mercury has a low affinity for activated carbon, but acid halide gases promote the binding sites on activated carbon and increase their affinity towards elemental mercury.  The "basic carbene [on untreated activated carbon] cannot react directly with $Hg^0$ [elemental mercury], but reacts with HCl to form stable carbenium ion intermediates, which are then ***active for binding*** $Hg^0$, accepting electrons from the atom (Figure 2).  Thus HCl ***or other acids promote the oxidation step***."  Ex[1079], 981.  Ex[1003], ¶446-447.

### 3.    Elements 1(a)(3)-1(a)(4)

> ***1(a)(3):*** ***"the activated carbon contains graphene sheets having carbene species edge sites,"***
>
> ***1(a)(4):*** ***"which react with the bromine containing promoter to form a carbocation paired with a bromide anion in the promoted brominated sorbent for oxidation of the mercury"***

These limitations are disclosed by Olson-Paper, and obvious over Downs-Halogenation in view of Olson-Paper.  As described in Element 1(a)(1), Downs-Halogenation teaches that halogen-containing reagent adsorbs onto activated-carbon sorbent.  Olson-Paper identifies surface compounds and proposes chemical-reaction models underlying the disclosure of Downs-Halogenation.  Ex[1003], ¶¶450-451.

Petition for IPR2020-00926
USP 8,168,147

Regarding Element 1(a)(3), both references disclose "powdered activated carbon" (PAC).  Ex[1079], 982; Ex[1015], ¶[0019]; Ex[1016], ¶[0022].  Olson-Paper states that PAC contains graphene sheets having "a zig-zag *carbene site* on the *carbene* edge."  Ex[1079], 979 (Abstract); *see* 982 ("carbene structures … at the edges of the carbon graphene layers").  The carbene sites in graphene sheets are shown in Figure 2 of Olson-Paper, labeled "Carbon Basic Zig-Zag Site."  Ex[1079], 982.



Figure 2. Reaction site model for activated carbon.

The disclosure of Olson-Paper is further described above in VI.D.3 (Ground 1).  Ex[1003], ¶¶78-81, 122-127, 450-456.

Regarding Element 1(a)(4), Olson-Paper describes that "basic carbene …

reacts with HCl to form stable carbenium ion intermediates, which are then active

for binding $Hg^0$, accepting electrons from the atom (Figure 2)."   Ex[1079], 982.

"$Hg^0$" refers to elemental mercury, and "carbenium ion intermediates" is another

term for a "carbocation."



Figure 2. Reaction site model for activated carbon.

Ex[1079], Fig. 2 (annotated).   In Step 1 of Figure 2, a hydrohalide (e.g., HCl)

chemically reacts with carbene (red), forming a promoted sorbent (blue) with a

carbocation (+) paired with a halide anion ($Cl^-$).   The promoted sorbent is for

oxidation of mercury, as Step 2 shows elemental mercury ($Hg^0$) oxidized to Hg(II)

or $Hg^{2+}$.  Ex[1003], ¶¶457-458.

Although Olson-Paper identifies HCl and chloride anions ($Cl^-$), a POSITA

would have applied the same mechanism for a bromine-containing promoter (e.g.,

HBr).   Downs-Halogenation teaches that both HCl and HBr improve the

effectiveness of PAC to remove mercury. Ex[1015], ¶[0006], [0023]; Ex[1016],

¶[007], [0026].  Olson-Paper generalizes the mechanism beyond HCl, to "HCl or

other acids."  Ex[1079], 982.  A POSITA would have expected that HBr and other

halides (e.g., HCl) would have followed similar reaction pathways with activated

carbon.  As described in State of the Art (§IV.D.3), Reasons to Combine (§VIII.B)

and in Ground 1 (§VI.D.3) chlorine and bromine are adjacent in the halogen family

with similar chemical properties and reactions.   Ex[1003], ¶¶459-461; *see also*

Ex[1003], ¶¶83-87, 157-163.  *Mayne*, 104 F.3d at 1340 (obvious when "merely

substitut[ing] one element known in the art for an equivalent"); Ex[1051], *Ex Parte*

*Jacobson*, slip op. at 6-7 (affirming examiner's "prima facie case of obviousness" of

selecting one halogen "from the small genus of known halogens").

Petition for IPR2020-00926
USP 8,168,147

### 4. Element 1(b) —"chemically reacting elemental mercury in the mercury containing gas with the promoted brominated sorbent to form a mercury/sorbent chemical composition"

This limitation is disclosed by Downs-Halogenation, and obvious over Downs-Halogenation in view of Olson-Paper. Downs-Halogenation describes "sorbent 14 particles with their loading of adsorbed halogen-containing reagent 24 enter the flue gas … *with high reactivity for the removal of elemental mercury*." Ex[1015], ¶[0019]-[0020]; Ex[1016], ¶[0022]-[0023]. Mercury is "converted (oxidized) on the surface" of the PAC and is "permanently captured by the carbon." Ex[1015], ¶[0006]; Ex[1016], ¶[007]. Downs-Halogenation describes the "sorbent, and its burden of adsorbed mercury." Ex[1015], ¶[0004]; Ex[1016], ¶[0005]. Accordingly, a mercury/sorbent composition is formed. Ex[1003], ¶¶462-463.

Olson-Paper also discloses this limitation, stating that halogen-promoted activated carbon is "active for binding $Hg^0$," referring to reaction with elemental mercury. Ex[1079], 982.

Petition for IPR2020-00926
USP 8,168,147



Figure 2. Reaction site model for activated carbon.

In Step 2 of Figure 2, elemental mercury ($Hg^0$) reacts with halogen-promoted sorbent (blue) to form a mercury/sorbent chemical composition.  Ex[1079], Fig. 2; Ex[1003], ¶464.

### 5.   Element 1(c)—"separating particulates from the mercury containing gas, the particulates including ash and the mercury/sorbent chemical composition."

Downs-Halogenation discloses separating fly ash and mercury/sorbent composition from mercury-containing gas, using particulate collector devices, such as an electrostatic precipitator (ESP) or fabric filter (FF).  Ex[1015], ¶[0003]-[0004], 0029]; Ex[1016], ¶[0004]-[0005], [0032].  Figures 4-6 show such devices (purple).

95



Ex[1015]-[1016], Fig. 5 (annotated).  The "fabric filter (FF)" is used "for removal

of *fly ash* and *spent sorbent*."   Ex[1015], ¶[0022] (emphasis added); Ex[1016],

¶[0025].  Ex[1003], ¶¶465-467.

    **D.**    **DEPENDENT CLAIMS**

        **1.**    **Claim 2: "the bromine containing promoter is in gaseous
form."**

Downs-Halogenation discloses "hydrogen bromide gas" or other "halogen-

containing gases," as described for Elements 1(a)(1)-1(a)(2).  Ex[1003], ¶468.

        **2.**    **Claim 4: "the carbocation paired with a bromide anion
chemically react with elemental mercury form the
mercury/sorbent composition."**

This claim is obvious over Downs-Halogenation in view of Olson-Paper, as

described for Elements 1(a)(4) and 1(b).  Ex[1003], ¶469.

Petition for IPR2020-00926
USP 8,168,147

### 3. Claim 5: "at least a portion of the basic binding sites of the activated carbon reacts with oxidized mercury in the mercury containing gas to form another mercury/sorbent chemical composition."

This limitation is obvious over Downs-Halogenation in view of Olson-Paper.

Downs-Halogenation explains that conventional PAC injection may be used to remove "both oxidized and elemental mercury species." Ex[1015], ¶[0004]; Ex[1016], ¶[005]. Ex[1003], ¶¶470-476.

As described for Element 1(b) (Ground 2) and Claim 5 (Ground 1), Olson-Paper describes that in Step 3, *oxidized* mercury (Hg(II)) reacts with "basic binding sites on carbon" to form another mercury/sorbent composition, labeled "A." Ex[1079], 981.



Figure 2. Reaction site model for activated carbon.

Ex[1079], Fig. 2 (annotated), 979-980.  Ex[1003], ¶¶473-476.

**4.    Claim 6. "the step of separating particulates from the mercury containing gas comprises separating in a particulate separator comprising one or more electrostatic precipitators."**

Downs-Halogenation discloses electrostatic precipitators (ESP), as described for Element 1(c).  Ex[1003], ¶¶477-478.

**5.    Claims 11-12**

*11. "adding a second halogen or halide promoter to the promoted halogen containing sorbent"*

*12. "wherein the second halogen or halide*

Petition for IPR2020-00926
USP 8,168,147

> *promoter comprises HI, HBr, HCl, Group V*
> *element with halogen, or Group VI element with*
> *halogen."*

These claims are disclosed by Downs-Halogenation, and obvious over Downs-Halogenation in view of Olson-Paper. Downs-Halogenation discloses that "halogen-containing gases 24 may include *any one or more of* the following: hydrogen chloride [HCl], chlorine ($Cl_2$), ...." Ex[1015], ¶[0027]; Ex[1016], ¶[0030]. With one bromine-based halogen-containing reagent as the first promoter, the remaining compounds in the list above constitute a "second ... promoter." Olson-Paper confirms that HCl promotes activated-carbon sorbent. Ex[1079], Fig. 2, 982 ("react[ing] with HCl to form stable carbenium ion intermediates, which are then active for binding $Hg^0$ ... HCl or other acids promote the oxidation step."). The '147 Patent teaches that activated carbon can be "simultaneously" promoted with two promoters. Ex[1001], 3:17-27, Ex[1003], ¶¶479-481.

### 6.  Claim 15. "the step of promoting at least a portion of the available sorbent material occurs at least partially outside of the mercury containing gas."

This limitation is disclosed by Downs-Halogenation, as described for Element 1(a)(1). Downs-Halogenation disclosing preparing promoted-brominated sorbent prior to (and partially outside of) entry into the mercury-containing flue gas at injection location 28.



FIG. 2



FIG. 5

Ex[1015], ¶[0019], [0024], Figs. 2, 5; Ex[1016], ¶[0022], [0027], Figs. 2, 5.

Ex[1003], ¶¶482-484.

### 7.   Claim 16. "the promoted brominated sorbent combines with at least 70% of the mercury present in the mercury containing gas."

Downs-Halogenation discloses this limitation.   The promoted-brominated sorbent removed approximately 83% (red) of "the vapor-phase mercury exiting the system," as shown in annotated Figure 3:



As compared to promoted-brominated sorbent (blue), use of untreated PAC "at a similar injection rate provided no discernable mercury removal," corresponding to the initial value (green)   Ex[1015], ¶[0021], [0023]; Ex[1016], ¶[0024], [0026]. Accordingly, the mercury reduction from 6 µg/dscm to 1 µg/dscm (83%) in Figure 3 is attributable to gas-phase mercury combining with the promoted-brominated sorbent itself.  Ex[1003], ¶¶485-486. *See* State of the Art, §IV.D.2.

Petition for IPR2020-00926
USP 8,168,147

### 8.     Claim 21. "the composition of the promoted sorbent is controlled by the mercury content of the cleaned gas stream."

Claim 21 recites that sorbent composition is "controlled by *the* mercury content of *the* cleaned gas" without antecedent basis.   Petitioners interpret this phrase, consistent with embodiments in the specification, as "controlled based on the measured mercury content of the mercury containing gas" after mercury has been removed in Claim Element 1(c).  Ex[1001], 4:53-55, 9:31-38.  Ex[1003], ¶487.

Figure 3 of Downs-Halogenation (annotated below) teaches that monitored-mercury content (Y-axis) depends on sorbent-injection rate ("PAC injection rate") and promoter-injection rate ("HBr injection rate").



FIG. 3

It was well-known in the art, and discussed by EPA, that when using halogens with activated-carbon sorbent, "the amount of sorbent needed" and "the amount of Cl [halogen] present" are two primary variables to control mercury removal. Ex[1009], 4676. A POSITA would have understood that adjusting either injection rate would control the composition of the promoted sorbent. Ex[1003], ¶488.

Downs-Halogenation also discloses that "one or more" types of halogens could be used to promote activated carbon, such as hydrogen chloride, chlorine ($Cl_2$), …" Ex[1015], ¶[0027]; *see* Ex[1016], ¶[0030]. A POSITA would have understood that various halogen-containing gases may be selected individually and in combination in response to the mercury content of the cleaned gas stream to control the composition of the promoted sorbent as desired. Ex[1003], ¶488.

Controlling sorbent composition based on measured-mercury content would meet the stated goal of Downs-Halogenation to "reduce the cost of mercury removal at coal-fired electric plants." Ex[1015], ¶[0020]; Ex[1016], ¶[0023]. A POSITA would have been motivated to inject the amount of sorbent and/or promoter needed to remove mercury, and have avoided wastefully injecting unneeded excess materials. Downs-Halogenation depicts the variability of the composition of coal as a fuel source (e.g., native mercury and halogen content):



,

Ex[1015], Fig. 1, ¶[0005]; Ex[1016], Fig. 1, ¶[0006]. Due to the variability of the composition of coal as a fuel source (e.g., native mercury and halogen content), it would have been obvious that some amount of adjustment to the sorbent-injection rate and promoter-injection rate would have been performed as part of routine process control and optimization, which would have provided a concomitant adjustment of the promoted sorbent. Ex[1003], ¶¶134, 150, 489. *See* §IV.D.3; *Philips*, 948 F.3d at 1337.

To the extent Claim 21 is interpreted to require that the mercury content is what changes the composition of the promoted sorbent, this too is obvious. As described for Element 1(b), Downs-Halogenation in view of Olson-Paper discloses that mercury reacts with promoted-brominated sorbent—as more mercury reacts

with the sorbent, the sorbent composition changes, at least with respect to mercury content.  Ex[1003], ¶490.

> **9.**     **Claims 22-24:  "the bromine containing promoter comprises [cl. 22: at least one of HBr, PBr3, or Br$_2$] [cl. 23: molecular bromine] [cl. 24: a bromine compound]"**

As described for Elements 1(a)(1)-1(a)(2), Downs-Halogenation discloses HBr(g) and/or Br$_2$(g) as promoters.   Ex[1015], ¶[0026]; Ex[1016], ¶[0029]. Ex[1003], ¶¶491-493.

## IX.     GROUND 4: CLAIMS 17-20 ARE OBVIOUS OVER DOWNS-HALOGENATION IN VIEW OF OLSON-PAPER AND LISSIANSKI-PATENT

Claims 17-20 would have been obvious in view of Downs-Halogenation, Olson-Paper, and Lissianski-Patent.  Elements and claims not mentioned below are disclosed or obvious for the reasons provided in Ground 3.  Ex[1003], ¶494.

### A.     REASONS TO COMBINE REFERENCES

Downs-Halogenation describes separately injecting bromine-containing promoter (HBr, blue) and activated-carbon sorbent (red), with in-flight reaction occurring in a transport line (purple) to produce promoted-brominated sorbent. Figure 2 (annotated) of Downs-Halogenation is shown below:

Petition for IPR2020-00926
USP 8,168,147



Downs-Halogenation also describes that the promoted-brominated sorbent is "injected into the flue gas stream" (*i.e.*, a mercury-containing gas) for subsequent removal of mercury. Ex[1015], ¶[0023]; Ex[1016], ¶[0026]. Ex[1003], ¶¶495-497.

As described in Ground 2 (§VII.A), Lissianski-Patent discloses that some types of coal tend to have "low chlorine (Cl) content" natively, which results "in relatively high levels of elemental mercury in the flue gas from low rank coal." Ex[1036], 1:52-67. Lissianski-Patent discloses increasing the concentration of HBr in a mercury-containing gas (green), by supplying a "halogen agent" (gold") to the mercury-containing gas.

Petition for IPR2020-00926
USP 8,168,147



*Fig. 3*

Ex[1003], ¶496.   The increased HBr concentration "results in more significant mercury oxidation. The increase in mercury oxidation allows for improved efficiency of mercury removal by activated carbon (AC) injection." Ex[1036], 3:45-49.   Lissianski-Patent explains that halogen agent (gold) may be provided using "recycled flue gas" as the carrier gas, such as from a bleed line from the main flue-gas ductwork, in order to "improve mixing of the [bromine-containing promoter] and flue gas." Ex[1036], 4:20-23, cl. 24.  Ex[1003], ¶¶496-497.

Based on the teachings of Lissianski-Patent, a POSITA would have been motivated, with a reasonable expectation of success, to use a stream of recycled (mercury-containing) flue gas (below, green) as the medium in which activated-carbon sorbent and halogen-containing reagent undergo in-flight reaction in Downs-Halogenation, and for carrying the promoted-brominated sorbent to injection location(s) 28 in the main flue gas duct.  The combined system would look like the

Petition for IPR2020-00926
USP 8,168,147

following annotated Fig. 2 of Downs-Halogenation, with annotations in green

indicating content drawn from Lissianski-Patent:



Ex[1003], ¶497.

A POSITA would have had a reasonable expectation of success in using

recycled flue gas as the medium for in-flight reaction between sorbent and promoter

and subsequent transport, because Downs-Halogenation teaches flexibility in gases

used in the transport line (purple). Specifically, Downs-Halogenation discloses that

"pneumatic transport conveying system[s], and many other configurations could be

used or developed by one of ordinary skill in the art without departing from the scope

of the present invention." Ex[1015], ¶[0019]; Ex[1016], ¶[0022]. Lissianski-Patent expressly identifies such pneumatic transport conveying mediums, including: "air, recycled flue gas, nitrogen or another carrier gas." Ex[1036], 4:20-23. A POSITA would have readily been able to recycle the flue gas into the transport line that stages bromination and sorbent injection. Ex[1003], ¶498.

A POSITA would have been further motivated to combine these references because all three references are from the same field of endeavor. For example, Downs-Halogenation and Lissianski-Patent teach the same sorbent (activated carbon), and improving its effectiveness in mercury removal by using the same promoter (HBr) injected into a gas. Ex[1015], ¶[0003]-[0004], [0023]; Ex[1016], ¶[0004]-[0005], [0026]; Ex[1036], 1:35-40, 3:42-50. Olson-Paper confirms the importance of halogens to the capture of elemental mercury on activated carbon because, "[w]ithout either HCl or $NO_2$ in the gas stream, the carbon sorbents are ineffective, and immediate breakthrough occurred." Ex. 1079 (Olson-Paper) at 980. Ex[1003], ¶¶499-502.

## B.   TEACHINGS OF DOWNS-HALOGENATION, OLSON-PAPER, AND LISSIANSKI-PATENT

As described for Ground 3, all limitations of claim 1 are obvious over Downs-Halogenation and Olson-Paper. Claims 17 and 20, which depend from claim 1, are likewise obvious over the system in Downs-Halogenation when implementing the

corresponding promoter addition rate disclosed by Lissianski-Patent. Claims 18 and 19 are further obvious over Downs-Halogenation when using recycled flue gas as the carrier transport gas, as disclosed by Lissianski-Patent.

## 1.   Claim 17

### Element 17(a)—"injecting the particulate sorbent material at a sorbent material injection rate and injecting separately the bromine containing promoter into a gas stream"

### Element 17(b)—"in-flight reaction produces the promoted brominated sorbent,"

These limitations are disclosed by Downs-Halogenation. The particulate-sorbent material (powdered-activated carbon, PAC), is discussed in Ground 3 for Claim Element 1(a)(1). As described for Elements 1(a)(2) and 1(a)(4), sorbent is injected at a sorbent material injection rate, labeled "PAC injection rate" (circled in red) in Figure 3.

Petition for IPR2020-00926
USP 8,168,147



FIG. 3

The sorbent (PAC, red) and promoter (HBr, blue) are injected "separately" into a gas stream in the transport line (purple) at points 22 and 26, respectively:



Ex[1015], ¶[0019], Fig. 2 (annotated); Ex[1016], ¶[0022], Fig. 2.  Ex[1003], ¶¶504-506.

As discussed for Claim Elements 1(a)(1)-1(a)(2), HBr reacts with activated-carbon sorbent.  Downs-Halogenation describes that bromine-containing promoter mixes with the "flowing transport air/sorbent stream"; both the sorbent and the bromine are conveyed together (reacting in-flight) within the pneumatic transport conveying system, which places the HBr "exactly where it is needed to facilitate elemental mercury removal—on the surface of the sorbent 14."  Ex[1015], ¶[0019]; Ex[1016], ¶[0022].  The above in-flight reaction would occur regardless of whether

112

the transport gas is air (as in Downs-Halogenation), or the transport gas is a recycled flue gas (as in Lissianski-Patent). Ex[1036], 4:20-23. Ex[1003], ¶¶507-509.

> ### Element 17(c)—" the promoter is reacted in the gas phase or as a vapor,"

As discussed for Element 1(a)(2), Claim 2, and Element 17(a), Downs-Halogenation discloses gaseous $HBr(g)$ and/or $Br_2(g)$ reacting with sorbent in the gas phase. Ex[1003], ¶510.

> ### Element 17(d)—" the promoter is added at from about 1 to about 30 grams per 100 grams of the sorbent material."

Whether Element 17(d) is interpreted as a ratio of promoter added *to the sorbent* or a ratio of promoter added *to the gas stream*, Element 17(d) would have been obvious under either interpretation. Ex[1003], ¶511.

Regarding the second interpretation, a POSITA would have been motivated to try the injection rates of activated-carbon sorbent disclosed in Downs-Halogenation, combined with the bromine-promoter rate disclosed in Lissianski-Patent. First, Downs-Halogenation describes a sorbent-injection rate of 0.6 lb/MMacf (pounds-per-million actual cubic feet of flue gas), and a bromine-promoter injection rate of 3 ppm (parts-per-million in flue gas). Ex[1003], ¶¶88-90.



Ex[1015]-[1016], Fig. 3 (annotated).  Second, Lissianski-Patent discloses a 3 ppm

"Br," the same as in Downs-Halogenation, and explains that this would be an

acceptable promoter rate for both chlorine-containing promoters (as in Olson-Paper)

and bromine-containing promoters.



Ex[1036], Fig. 9.  Lissianski-Patent expressly motivates using a lower promoter rate

as an advantage of bromine-containing promoter compared to chlorine-containing

114

promoter: "a presence of only 0.3 ppm of bromine in flue gas results almost in the same effect as 3 ppm of chlorine." Ex[1036], Fig. 9; 6:62-67. Using the lower promoter rate, as taught by Lissianski-Patent, would meet the stated goal of Downs-Halogenation to "reduce the cost of mercury removal at coal-fired electric plants" Ex[1015], ¶[0020]; Ex[1016], ¶[0023]. Ex[1003], ¶512.

The promoter rate of Lissianski-Patent (0.3 ppm) corresponds to 19.55 g/MMacf, and the sorbent rate of Downs-Halogenation (0.6 lb/MMacf) corresponds to 272 g/MMacf. Accordingly, there is a gas-phase ratio of 7.19 grams of bromine-containing promoter per 100 grams of sorbent, which is within the range of claim 17. Ex[1003], ¶¶84, 88-90, 513-516.

Regarding the first interpretation, a gas-phase ratio of 7.19 grams bromine per 100 grams sorbent also leads to a disclosure that the "promoter is added [to the sorbent] at from about 1 to about 30 grams per 100 grams of the sorbent material." Downs-Halogenation explains that promoter and sorbent are "brought together in the sorbent pneumatic transport line with sufficient residence time for the halogen-containing reagent 24 to be adsorbed onto the carbonaceous sorbent 14 particle" prior to injection into the main flue gas duct. Ex[1015], ¶[0024]; Ex[1016], ¶[0027]. Accordingly, a POSITA would have understood that all of the gas-phase promoter

would have been added to the activated-carbon sorbent, such that the promoter added to the sorbent would also be within the claimed ratio of 1-30.  Ex[1003], ¶517.

It would have been well within the purview of a POSITA to adjust promoter and sorbent-injection rates, as needed, to achieve desired mercury removal.  The range is only approximate—"from about 1 to about 30," and nothing in the '147 Patent attributes significance to the claimed range, or establishes that it "achieves unexpected results."  *Applied Materials*, 692 F.3d at 1297-1298.  Ex[1003], ¶518.

### 2.   Claims 18-19

> **18. "A method according to claim 17, wherein the gas stream is a mercury containing gas."**
>
> **19. "A method according to claim 18, wherein the gas stream is a transport gas."**

Claim 18 does not specify whether "a mercury containing gas" is "the mercury containing gas" of Claim 1 or some other mercury containing gas.  As described in Reasons to Combine (§IX.A) and Claim 17, these claims are obvious over Downs-Halogenation in view of Lissianski-Patent under either interpretation.  In the combined system, an in-flight reaction occurs between activated-carbon sorbent (red) and promoter (blue) in mercury-containing gas (green).

Petition for IPR2020-00926
USP 8,168,147



FIG. 2

Lissianski-Patent discloses "recycled flue gas" (green) as one type of transport gas to inject promoters and other material into a flue gas duct.  Ex[1036], 4:20-23. Downs-Halogenation discloses that "pneumatic transport conveying system[s], and many other configurations could be used or developed by one of ordinary skill in the art without departing from the scope of the present invention."  Ex[1015], ¶[0019]; Ex[1016], ¶[0022].  Downs-Halogenation refers to "a sorbent *transport* air stream 18" for delivering sorbent and promoter to the main flue-gas duct (injection location 28), and describes "a sorbent *transport* air blower 20."  Ex[1015], ¶[0019]; Ex[1016], ¶[0022].  Even with the modification from Lissianski-Patent in using a

recycled flue gas as the transport gas, this would still be understood by a POSITA to be a "transport gas."  Ex[1003], ¶¶519-522.

### 3.   Claim 20. "A method according to claim 17, wherein the promoter injection rate and the sorbent injection rate into the gas are determined at least in part on the monitored mercury content of the cleaned gas."

In addition to the reasons provided in Ground 3 for Claim 21, Claim 20 would have been obvious over Downs-Halogenation in view of Lissianski-Patent.  Figure 3 of Downs-Halogenation (annotated below) teaches that the monitored mercury content (Y-axis) depends on sorbent-injection rate ("PAC injection rate") and promoter-injection rate ("HBr injection rate").



Claim 20 does not require continuously monitoring mercury content, continuously adjusting injection rates, or control feedback signals. Nor does Claim 20 require that sorbent and promoter injection rates "are determined" concurrently. Based on Figure 3 of Downs-Halogenation, it would have been obvious to determine a desired sorbent-injection rate and a promoter-injection rate "at least in part on the monitored mercury content." For example, a POSITA measuring a mercury content of 6 µg/dscm (green) would have determined to use a 3 ppm promoter injection rate along with a 0.6 lb/MMacf sorbent-injection rate to achieve a 1 µg/dscm mercury concentration (blue) of the cleaned gas. In addition, it was well-known in the art, and discussed by EPA, that when using halogens with activated-carbon sorbent, "the amount of sorbent needed" and "the amount of Cl [halogen] present" are two primary variables to control mercury removal. Ex[1009], 4676. Ex[1003], ¶¶523-526.

A POSITA would have also found it obvious to determine the injection rate of additional halogen-containing promoter disclosed by Lissianski-Patent at least in part on the monitored mercury content.



*Fig. 9*

Ex[1036], 6:62-67, Fig. 9 (annotated). Determining a ratio of oxidized mercury to elemental mercury, as in Figure 9 of Lissianski, is a form of "mercury content." Based on the mercury content (e.g., % of oxidized mercury) and temperature, Lissianski-Patent determines a promoter injection rate of 0.3 ppm or 3 ppm. Ex[1036], 6:61-67, Figs. 8-9. Ex[1003], ¶527

Determining a promoter injection rate and sorbent-injection rate, at least in part, based on mercury content would meet the stated goal of Downs-Halogenation to "reduce the cost of mercury removal at coal-fired electric plants" Ex[1015], ¶[0020]; Ex[1016], ¶[0023]. A POSITA would have been motivated to inject the

amount of sorbent and/or promoter needed to remove mercury, and have avoided wastefully injecting unneeded excess materials.  Downs-Halogenation depicts the variability of the composition of coal as a fuel source (e.g., native mercury and halogen content).



FIG. 1

Ex[1015], Fig. 1, ¶[0005]; Ex[1016], Fig. 1, ¶[0006], Fig. 1. Due to the variability of the composition of coal as a fuel source (e.g., native mercury and halogen content), it would have been obvious that some amount of adjustment to the sorbent-injection rate and promoter-injection rate would have been performed as part of routine process control and optimization.  Ex[1003], ¶¶134, 150, 528-529.  *See* §IV.D.3; *Philips*, 948 F.3d at 1337.

## X.   **CONCLUSION**

Petitioners respectfully request that IPR be instituted and that the Challenged

Claims be cancelled as unpatentable under 35 U.S.C. §318(b).

Respectfully submitted,
BAKER BOTTS L.L.P.


May 27, 2020                                    /Brian W. Oaks/
Date                                            Brian W. Oaks (Reg. 44,981)
                                                98 San Jacinto Blvd., Suite 1500
                                                Austin, Texas 78701
                                                Phone: (512) 322-5470

                                                LEAD ATTORNEY FOR PETITIONERS

Petition for IPR2020-00926
USP 8,168,147

# **CERTIFICATE OF COMPLIANCE**

Pursuant to 37 C.F.R. §42.24(d), the undersigned certifies that the foregoing Petition, exclusive of the exempted portions as provided in 37 C.F.R. §42.24(a), contains 13,734 words which is no more than 14,000 words and therefore complies with the type-volume limitations of 37 C.F.R. §42.24(a). The word count was calculated by starting with Microsoft Word's total document word count and subtracting the words for the Table of Contents, the Exhibit List, the Mandatory Notices, the Certificate of Compliance, and the Certificate of Service.

Dated: May 27, 2020                    /Brian w. Oaks/_____
                                       Brian W. Oaks (Reg. No. 44,981)
                                       98 San Jacinto Blvd., Suite 1500
                                       Austin, Texas 78701
                                       Phone: (512) 322-2500

                                       LEAD ATTORNEY FOR PETITIONERS

Petition for IPR2020-00926
USP 8,168,147

# CERTIFICATE OF SERVICE

In accordance with 37 C.F.R. §§42.6(e) and 42.105, the undersigned certifies

that on the 27th day of May, 2020, a complete and entire copy of the PETITION

FOR *INTER PARTES* REVIEW ("petition"), Power of Attorney and related Exhibits

were served on Patent Owner at the correspondence address of record for the subject

patent,

SCHWEGMAN LUNDBERG & WOESSNER, P.A.
P.O. BOX 2938
MINNEAPOLIS MN 55402

via Express Mail or by means at least as fast and reliable as Express Mail.

Additionally, a courtesy copy was served via electronic mail on the Patent

Owner's counsel at the following email address:

**CALDWELL CASSADY CURRY PC**
2101 Cedar Springs Road, Suite 1000
Dallas, Texas 75201

Bradley W. Caldwell (Texas Bar No. 24040630)
bcaldwell@caldwellcc.com

and
Justin T. Nemunaitis (Texas Bar No. 24065815)
jnemunaitis@caldwellcc.com

124

Petition for IPR2020-00926
USP 8,168,147

Dated: May 27, 2020                    /Brian W. Oaks/
                                       Brian W. Oaks (Reg. No. 44,981)
                                       98 San Jacinto Blvd., Suite 1500
                                       Austin, Texas 78701

                                       LEAD ATTORNEY FOR PETITIONERS