# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MIDWEST ENERGY EMISSIONS CORP. and MES INC., | |
| Plaintiffs, | C.A. No. 19-1334-RGA |
| v. | JURY TRIAL DEMANDED |
| VISTA ENERGY CORP., et al. | |
| Defendants. | |

**PLAINTIFFS MIDWEST ENERGY EMISSIONS CORP. AND MES INC.'S RESPONSE IN OPPOSITION TO THE TALEN, NRG, AND AEP DEFENDANTS' <u>MOTION TO STAY THE CASE PENDING INTER PARTES REVIEW</u>**

Dated: November 20, 2020

OF COUNSEL:

Bradley W. Caldwell
Texas Bar No. 24040630
Jason D. Cassady
Texas Bar No. 24045625
John Austin Curry
Texas Bar No. 24059636
Justin T. Nemunaitis
Texas Bar No. 24065815
**CALDWELL CASSADY CURRY PC**
2101 Cedar Springs Road, Suite 1000
Dallas, Texas 75201
Phone: (214) 888-4848
Fax: (214) 888-4849
bcaldwell@caldwellcc.com
jcassady@caldwellcc.com
acurry@caldwellcc.com
jnemunaitis@caldwellcc.com

DEVLIN LAW FIRM LLC
James M. Lennon (No. 4570)
1526 Gilpin Avenue
Wilmington, DE 19806
(302) 449-9010
jlennon@devlinlawfirm.com

*Attorneys for Plaintiffs Midwest Energy Emissions Corp. and MES Inc.*

1

## TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 5

II. NATURE AND STAGE OF THE PROCEEDINGS ................................................. 5

III. SUMMARY OF THE ARGUMENT ........................................................................ 5

IV. STATEMENT OF FACTS ........................................................................................ 6

V. ARGUMENT .................................................................................................................. 6

   A. Defendants Have Not Demonstrated a "Clear Case of Hardship or Inequity." .... 7

   B. A Stay Will Not Simplify the Issues. ...................................................................... 8

   C. The Current Stage of the Litigation Does Not Favor a Stay ............................... 11

   D. A Stay Would Prejudice ME2C ........................................................................... 11

VI. CONCLUSION ........................................................................................................ 14

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Benefit Funding Sys. LLC v. Advance Am., Cash Advance Centers, Inc.*,
   Civ. No. 12–801–LPS,
   2013 WL 3296230 (D. Del. June 28, 2013)) ............................................................................ 14

*Boston Scientific Corp. v. Cordis Corp.*,
   777 F. Supp. 2d 783 (D. Del. 2011) ........................................................................................ 13

*Clouding IP LLC v. SAP AG*,
   C.A. No. 13-1456-LPS, Oral Order, D.I. 35 (D. Del. Jan 21, 2014) ......................................... 9

*Cooper Notification, Inc. v. Twitter, Inc.*,
   No. CIV. 09-865-LPS,
   2010 WL 5149351 (D. Del. Dec. 13, 2010) .............................................................................. 8

*Copy Protection LLC v. Netflix, Inc.*,
   C.A. No. 14-365-LPS,
   2015 WL 3799363 (D. Del. June 17, 2015) ......................................................................... 9, 12

*CTF Hotel Holdings, Inc. v. Marriott Intern., Inc.*,
   381 F.3d 131 (3d Cir. 2004) ...................................................................................................... 7

*Freeny v. Apple Inc.*,
   No. 2:13–cv–00361–WCB,
   2014 WL 3611948 (E.D. Tex. July 22, 2014) .......................................................................... 9

*Gold v. Johns-Manville Sales Corp.*,
   723 F.2d 1068 (3d Cir. 1983) .................................................................................................... 7

*Intellectual Ventures I LLC v. Toshiba Corp.*,
   C.A. No. 13-453-SLR-SRF,
   2015 WL 3773779 (D. Del. May 15, 2015) ........................................................................ 9, 14

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
   No. CV 18-452-WCB,
   2019 WL 3943058 (D. Del. Aug. 21, 2019) ............................................................................ 10

*Personalized User Model, L.L.P. v. Google, Inc.*,
   C.A. 09-525-LPS,
   2012 WL 5379106 (D. Del. Oct. 31, 2012) .............................................................................. 8

*SenoRx, Inc. v. Hologic, Inc.*,
   No. 12-173-LPS,
   2013 WL 144255 (D. Del. Jan. 11, 2013) .................................................................................. 13

*Siemens Indus., Inc. v. Westinghouse Air Brake Techs. Corp.*,
   C.A. No. 16-284-LPS,
   2018 WL 3046511 (D. Del. June 20, 2018) ................................................................................ 8

*Toshiba Samsung Storage Tech. Korea Corp. v. LG Elecs., Inc.*,
   No. CV 15-691-LPS-CJB,
   2015 WL 7824098 (D. Del. Dec. 3, 2015) .................................................................................. 9

*Yodlee, Inc. v. Plaid Techs. Inc.*,
   C.A. No. 14-1445-LPS-CJB,
   2017 WL 401896 (D. Del. Jan. 27, 2017) ................................................................................... 7

### Statutes

35 U.S.C. § 282 ............................................................................................................................. 10

35 U.S.C. § 321 ............................................................................................................................. 10

### Other Authorities

MPEP 608.01 ................................................................................................................................ 12

## I.     INTRODUCTION

Defendants seek to stay the case based on an IPR institution decision related to just one of the five patents-in-suit. They claim that this decision impacts all of the other claims at issue, but offer no concrete evidence to establish that assertion. Moreover, they fail to mention that the one other patent they have challenged via *Inter Partes* Review has been challenged based on different grounds, such that the '114 IPR is not representative. Because a stay at this stage of the case would be premature and highly prejudicial to ME2C, ME2C requests that the present motion be denied.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

ME2C filed its original complaint on July 17, 2019 asserting the U.S. Patent Nos. 8,168,147 ("147 Patent") and 10,343,114 ("114 Patent"). Defendants filed IPR petitions against these patents in April and May of 2020. On July 15, 2020, ME2C filed the First Amended Complaint adding U.S. Patent Nos. 10,589,225 ("'225 Patent"), 10,596,517 ("'517 Patent"), and 10,668,430 ("'430 Patent"). Defendants have not sought review of the '225, '517, and '430 patents.

## III.   SUMMARY OF THE ARGUMENT

Defendants have failed to demonstrate a clear case of hardship or inequity justifying a stay. With respect to the traditional factors, Defendants have failed to show that a stay would simplify the issues because they have only filed IPR petitions against two of the five patents-in-suit, and only one of those patents has been instituted for review. While Defendants argue that the IPR proceeding against the '114 patent is representative as to all of the asserted patents, they did not do the one thing that could have supported that assertion, i.e., file IPR or PGR petitions

against those patents based on the same unpatentability theories. Accordingly, the present motion is premature, at best.

In addition, even if there were some possibility for simplification of issues, that should not outweigh the fact that a stay will unduly prejudice ME2C. ME2C is currently suffering competitive harm based on the fact that the moving defendants are using products from ME2C's direct competitors to infringe. Further delaying resolution of ME2C's claims against these Defendants will cause ongoing business harm to ME2C.

## IV.     STATEMENT OF FACTS

ME2C is a publicly traded company that manufactures and sells bromine-containing additives and sorbents for use in reducing mercury emissions from coal-fired power plants. See D.I. 97-1, (describing ME2C's SF oxidizer and SB sorbent line of products). The patents-in-suit cover methods of using these products. *See* Compl. At ¶ 82. ME2C filed the present lawsuit against its potential customers and competitors. *See* Compl. at ¶¶ 82-88. ME2C has accused each of the Coal Plant Defendants of purchasing materials from ME2C's competitors and using them to perform the patented methods for mercury capture. *See* Compl. at ¶¶ 90-144.

## V.     ARGUMENT

Under Third Circuit law, "[i]t is well settled that before a stay may be issued, the petitioner must demonstrate 'a clear case of hardship or inequity' if there is 'even a fair possibility' that the stay would work damage on another party." *Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1075-76 (3d Cir. 1983); *see also CTF Hotel Holdings, Inc. v. Marriott Intern., Inc.*, 381 F.3d 131, 139 (3d Cir. 2004) ("The opposing party must state a clear countervailing interest to abridge a party's right to litigate."); *Yodlee, Inc. v. Plaid Techs. Inc.*, C.A. No. 14-1445-LPS-CJB, 2017 WL 401896, at *2 (D. Del. Jan. 27, 2017) ("A movant's

6

failure to articulate a clear hardship or inequity that it would suffer in the absence of a stay also weighs against such relief.").

Further, in deciding whether to grant a stay, this Court has also considered the following three factors: "(1) whether a stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay or allow the movant to gain a clear tactical advantage." *Siemens Indus., Inc. v. Westinghouse Air Brake Techs. Corp.*, C.A. No. 16-284-LPS, 2018 WL 3046511, at *1 (D. Del. June 20, 2018).

Here, the Court can deny Defendants' request based simply on their failure to show any "clear hardship or inequity." Nonetheless, ME2C also discusses each of the three factors and explains why those factors also weigh against a stay, and thus provides an additional basis for the Court to deny Defendants' request.

### A.  Defendants Have Not Demonstrated a "Clear Case of Hardship or Inequity."

As a threshold matter, Defendants have failed to show that they would suffer a "clear case of hardship or inequity" if these cases continue on the Court's existing schedule. At most, Defendants argue that they don't want to litigate the case. Courts in this district have repeatedly rejected that argument, holding that "Defendants [had] failed to make such a showing" where "[t]he only prejudice Defendants argue they will incur in proceeding with the litigation is added cost." *Cooper Notification, Inc. v. Twitter, Inc.*, No. CIV. 09-865-LPS, 2010 WL 5149351, at *2, n.1 (D. Del. Dec. 13, 2010); *see also Personalized User Model, L.L.P. v. Google, Inc.*, C.A. 09-525-LPS, 2012 WL 5379106, at *2 (D. Del. Oct. 31, 2012) ("Google points to no other hardship other than the expense of litigation and the risk that the reexaminations will render the case moot. Under the circumstances here, these do not rise to the level of undue hardship favoring a stay."); *Clouding IP LLC v. SAP AG*, C.A. No. 13-1456-LPS, Oral Order, D.I. 35 (D.

7

Del. Jan 21, 2014) (explaining that "the purported prejudice to SAP of having to litigate in the PTAB and this Court is entirely the result of SAP's decision to file the petition for IPR"); *Intellectual Ventures I LLC v. Toshiba Corp.*, C.A. No. 13-453-SLR-SRF, 2015 WL 3773779, at *2 (D. Del. May 15, 2015) ("Toshiba has not demonstrated a clear case of hardship or inequity if the motion for stay is denied. Toshiba chose to contest validity through the IPR process and, therefore, cannot complain that it is being prejudiced by the dual track proceedings it initiated."). This is particularly true here where Defendants have not shown that the majority of patents will even be involved in IPR proceedings.

### B. A Stay Will Not Simplify the Issues.

"Generally, 'the "simplification" issue does not cut in favor of granting a stay prior to the time the PTAB decides whether to grant the petition for inter partes review.'" *Copy Protection LLC v. Netflix, Inc.*, C.A. No. 14-365-LPS, 2015 WL 3799363, at *1 (D. Del. June 17, 2015) (quoting *Freeny v. Apple Inc.*, No. 2:13–cv–00361–WCB, 2014 WL 3611948, at *2 (E.D. Tex. July 22, 2014)). This Court's Revised Procedures for Managing Patent Cases also "express[es] the District Court's preference that, in the main, cases filed by a plaintiff should move forward" in the face of pre-institution-decision IPR petitions. *See also Toshiba Samsung Storage Tech. Korea Corp. v. LG Elecs., Inc.*, No. CV 15-691-LPS-CJB, 2015 WL 7824098, at *2 (D. Del. Dec. 3, 2015) (denying motion to stay without prejudice to renew to "allow for a better, more fully developed record as to the 'simplification of issues' factor").

In this case, Defendants seek a stay based on IPRs instituted with respect to only one of the five patents-in-suit. With regard to three of the patents-in-suit, they have not even requested

8

post-grant review.[1] Accordingly, the current motion is, at best, premature. *IOENGINE, LLC v. PayPal Holdings, Inc.*, No. CV 18-452-WCB, 2019 WL 3943058, at *6 (D. Del. Aug. 21, 2019) ("courts almost invariably deny requests for stays pending IPR proceedings when the stay requests are filed before the IPR is instituted").

Defendants attempt to excuse the fact that they have not sought review of most of the patents-in-suit by noting that they cannot petition for *Inter Partes* Review of these patents until nine months after their issue dates. They neglect to mention that, even if they are correct, they can seek Post Grant Review of these patents, which also allows for assertion of § 102 and § 103 invalidity theories. 35 U.S.C. § 321 (citing 35 U.S.C. § 282). They offer no explanation as to why they could not use this procedure. Whether this has been done to promote delay or based on a perceived strategic advantage of IPR proceedings over PGR proceedings, the fact is, Defendants chose not to petition for review of all of the patents-in-suit. Accordingly, it would be premature (assuming Defendants do intend to petition for review of all of the patents-in-suit) for the Court to stay this case when the majority of the patents-in-suit are not even involved in any post grant proceedings.

Defendants also argue that a stay is appropriate because the '114 patent is representative of the other patents-in-suit. For support they cite ME2C's infringement contentions. However, the mere fact that ME2C has asserted these patents against the same infringing conduct does not mean that Defendants will attempt to prove unpatentability based on the same invalidity theories. Indeed, Defendants have asserted different invalidity grounds against the '114 and '147 patents, and they offer no assurance that they will not assert other theories against the three other patents-

---

[1] Defendants claim that they cannot file *Inter Partes* Reviews against these patents, but they, of course, can request Post Grant Review. *Compare* 35 U.S. Code § 321(c) with § 311(c).

in-suit. If Defendants really did have a smoking gun invalidity theory to assert against all of the patents, it merely begs the question–why have Defendants not already sought review of all of the patents-in-suit? Because Defendants have failed to show that the '114 patent is representative of the undisclosed invalidity theories that they may assert against the other patents-in-suit, the Court should find that Defendants have failed to show that this factor weighs in favor of a stay.

Finally, Defendants argue that a stay would simplify the issues based on its assertion that all of the patents are subject to a priority date challenge. The PTAB preliminarily found that the '114 patent was not entitled to its earliest claimed priority date based on its conclusion that there was a "break" in the priority chain. However, Defendants fail to show that this priority date issue is applicable to all of the asserted claims. For example, with respect to the '147 patent, Defendants do not even challenge the priority date of half of the asserted claims of that patent.[2] Defendants similarly have not challenged the priority date of '114 claims 10 and 11. Mot. at 10.

Even if Defendants file additional petitions for review, and even if they raise this priority date issue, Defendants fail to show that it will be dispositive with respect to the claims attacked as lacking priority. According to Defendants, information in an application relied upon to establish a priority date is "essential material" that cannot be incorporated by reference from a provisional application. However, this rule regarding incorporation of essential material applies only to written description challenges under § 112, not priority date assertions under § 120:

> **The limitations on the material which may be incorporated by reference in U.S. patent applications which are to issue as U.S. patents do not apply to applications relied on only to establish an earlier effective filing date under 35**

---

[2] ME2C has asserted claims 17-20. Defendants only challenge the priority date of claims 18-19. D.I. 236-7 at pgs. 7-8 ("The current petition assumes arguendo that the Challenged Claims of the '147 Patent have priority to August 30, 2004. The second petition challenges only claims 18 and 19 and asserts a priority date of no earlier than April 2009, when the '147 Patent was filed").

10

> **U.S.C. 119 or 35 U.S.C. 120.** Neither 35 U.S.C. 119(a) nor 35 U.S.C. 120 places any restrictions or limitations as to how the claimed invention must be disclosed in the earlier application to comply with 35 U.S.C. 112(a). Accordingly, an application is entitled to rely upon the filing date of an earlier application, even if the earlier application itself incorporates essential material by reference to another document.

MPEP 608.01(p) (emphasis added).

At most, Defendants have shown that IPRs are instituted against one of the patents-in-suit, and they have expressed their hope that similar decisions will issue if they seek review of the remaining patents-in-suit. At this stage of the proceedings, Defendants have failed to show that a stay would simplify issues, as opposed to prematurely injecting delay. Accordingly, this factor weighs against a stay.

### C. The Current Stage of the Litigation Does Not Favor a Stay

This case has been pending for over a year. The parties have exchanged documents, served and responded to interrogatories, served subpoenas, and ME2C has served infringement contentions. The Court has resolved one set of motions to dismiss and various disputes related to scheduling and discovery, and it is scheduled to hold a hearing on the currently pending motions to dismiss in January. Granting a stay now would derail the current schedule for claim construction and potentially jeopardize the current trial date of January 9, 2023. Conversely, if the Court denies a stay, Defendants may still seek review of the patents-in-suit and re-file this motion if the PTAB institutes review. Accordingly, this factor weighs against a stay.

### D. A Stay Would Prejudice ME2C

Staying a case pending review by the Patent Office "risks prolonging the final resolution of the dispute and thereby may result in some inherent prejudice to the plaintiff." *Copy Protection*, 2015 WL 3799363, at *1 (citation omitted). Here, trial is already scheduled to occur over four years after ME2C filed this case. Any further delay prejudices ME2C as an operating

company seeking to stop infringement, facilitated by competitors, that is hindering its ability to sell its own product and services, as a patent owner seeking to establish the strength of its patents, and as a plaintiff seeking resolution of its claims.

In considering this factor, the Court may also consider: (1) the timing of the IPR petitions, (2) the timing of the request for stay, (3) the status of the IPR proceedings, and (4) the relationship of the parties. *See Boston Scientific Corp. v. Cordis Corp.*, 777 F. Supp. 2d 783, 789 (D. Del. 2011). Factors (1), (3), and (4) favor denial of Defendants' motion.

With respect to the first factor, Defendants' delay in challenging all of the patents-in-suit weighs against a stay. ME2C filed this case on July 17, 2019. Defendants waited over nine months to *start* filing IPR petitions, and thus far, they have only filed with respect to two of the five patents-in-suit. While Defendants contend that they could not file IPR petitions earlier, that is simply not true with respect to the '147 patent which issued in 2012. Moreover, as explained above, Defendants could have, and still can, file PGR petitions against the other patents-in-suit. Accordingly, the timing of the IPR petitions (and lack of review petitions against the other patents) weighs against a stay.

With respect to the third factor, the fact that only one of the five patents-in-suit is currently involved in an instituted post grant proceeding similarly weighs against a stay.

Finally, the fourth factor weighs against a stay. "Courts have recognized that when the parties are direct competitors, there is a reasonable chance that delay in adjudicating the alleged infringement will have outsized consequences to the party asserting infringement has occurred, including the potential for loss of market share and an erosion of goodwill." *SenoRx, Inc. v. Hologic, Inc.*, No. 12-173-LPS, 2013 WL 144255, at *7 (D. Del. Jan. 11, 2013). In this case, the Coal Plant Defendants are currently purchasing products from ME2C's direct competitors, and

some of those direct competitors, i.e., the refined coal defendants, are asserting that ME2C's only recourse is against coal plants, not the mercury control suppliers that service coal plants. In other words, just as in a direct competitor case, ME2C is seeking to stop infringement to support is business operations.

Defendants assert that ME2C is just after money in this case, but that is not true. For example, final resolution of ME2C's claims against Vistra was designed to renew the business relationship between the parties. Ex. 1, ME2C/Vistra press release: "Midwest Energy Emissions Corp. and Vistra Announce Fleetwide License and Supply Agreement". Continued delay in resolving this case will extend the competitive harm to ME2C by preventing it from relying on the strength of its patents to secure similar agreements.

Moreover, as courts have recognized, plaintiffs "will suffer some prejudice from a stay, due to loss of their chosen forum, the possibility of necessary witnesses' memories fading, and negative impact on their ability to license the patents-in-suit." *Intellectual Ventures I LLC v. Toshiba Corp.*, No. CIV. 13-453-SLR/SRF, 2015 WL 3773779, at *2 (D. Del. May 15, 2015) (quoting *Benefit Funding Sys. LLC v. Advance Am., Cash Advance Centers, Inc.*, Civ. No. 12–801–LPS, 2013 WL 3296230, at *2 (D. Del. June 28, 2013)).

In addition, although Defendants do not seek to stay the case as to the refined coal defendants, a stay as to those defendants would be highly prejudicial to ME2C. The case is currently stayed as to those Defendants pending resolution of their pending motions to dismiss. ME2C has since amended its complaint and asserted direct infringement against those entities. Both sides would benefit from receiving a ruling on those pending motions to dismiss to better understand the status of ME2C's claims. Moreover, as ME2C has reiterated on several

occasions, it needs discovery from those Defendants to untangle their complex, confidential corporate structure and identify additional infringing entities.  If the Court were to stay the case and prevent that discovery for a year or more, those entities could escape liability for purely procedural reasons.

## VI.  CONCLUSION

Defendants have failed to show that the IPR proceeding for the '114 patent will simplify the issues in dispute for all five patents-in-suit.  Defendants could have sought more clarity on this issue by filing IPRs or PGRs earlier in the case, but they chose not to do so.  While they may have strategic reasons for that delay, it leaves the Court in no position to determine that a stay is appropriate for this case.  This is particularly true given the prejudice ME2C will suffer as a patent owner, practicing entity, and plaintiff.  Accordingly, ME2C requests that the present motion be denied.

| | |
|---|---|
| Dated: November 20, 2020 | DEVLIN LAW FIRM LLC |
| OF COUNSEL: | */s/ James M. Lennon*<br>James M. Lennon (No. 4570)<br>1526 Gilpin Avenue |
| Bradley W. Caldwell<br>Texas Bar No. 24040630<br>Jason D. Cassady<br>Texas Bar No. 24045625<br>John Austin Curry<br>Texas Bar No. 24059636<br>Justin T. Nemunaitis<br>Texas Bar No. 24065815<br>**CALDWELL CASSADY CURRY PC**<br>2101 Cedar Springs Road, Suite 1000<br>Dallas, Texas 75201<br>Phone: (214) 888-4848<br>Fax: (214) 888-4849<br>bcaldwell@caldwellcc.com<br>jcassady@caldwellcc.com<br>acurry@caldwellcc.com<br>jnemunaitis@caldwellcc.com | Wilmington, DE 19806<br>(302) 449-9010<br>jlennon@devlinlawfirm.com<br><br>*Attorneys for Plaintiffs Midwest Energy Emissions Corp. and MES Inc.* |