IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MIDWEST ENERGY EMISSIONS CORP. and MES INC., | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) C.A. No. 19-1334 (RGA) (CJB) |
| VISTRA ENERGY CORP., *et al.*, | ) ) ) |
| Defendants. | ) |

**JOINT LETTER AS TO WHETHER THE STAY IN LIGHT OF THE IPR PROCEEDINGS (D.I. 153) SHOULD APPLY TO THE REFINED COAL DEFENDANTS**

DEVLIN LAW FIRM LLC
James M. Lennon (#4570)
1526 Gilpin Avenue
Wilmington, DE 19806
(302) 449-9010
jlennon@devlinlawfirm.com

OF COUNSEL:

CALDWELL CASSADY CURRY PC
Bradley W. Caldwell
Jason D. Cassady
John Austin Curry
Justin T. Nemunaitis
2010 Cedar Springs Road, Suite 1000
Dallas, TX 75201

*Attorneys for Plaintiffs Midwest Energy Emissions Corp. and MES Inc.*

MORRIS, NICHOLS, ARSHT &TUNNELL LLP
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
began@mnat.com

OF COUNSEL:

GIBSON, DUNN & CRUTCHER LLP
Richard W. Mark
Joseph Evall
Paul J. Kremer
200 Park Avenue
New York, NY 10166-0193
(212) 351-4000

*Attorneys for Defendants
Arthur J. Gallagher & Co.
Gallagher Clean Energy, LLC
AJG Coal, LLC
AJG Iowa Refined Coal LLC
Chem-Mod LLC
Joppa Refined Coal LLC
Thomas Hill Refined Coal LLC
Wagner Coaltech LLC*

*Walter Scott Refined Coal LLC*
*Louisa Refined Coal, LLC*
*DTE Ref Holdings, LLC*
*DTE REF Holdings II LLC*
*Belle River Fuels Company, LLC*
*Arbor Fuels Company, LLC*
*Portage Fuels Company, LLC*

SKADDEN, ARPS, SLATE, MEAGHER
    & FLOM LLP
Robert S. Saunders (#3027)
Nicole A. DiSalvo (#4662)
Jessica R. Kunz (#5698)
One Rodney Square
P.O. Box 636
Wilmington, DE  19899
(302) 651-3000
rob.saunders@skadden.com
jessica.kunz@skadden.com

OF COUNSEL:

SKADDEN, ARPS, SLATE, MEAGHER
    & FLOM LLP
Douglas R. Nemec
Leslie A. Demers
4 Times Square
New York, NY  10036

*Attorneys for Defendants CERT Coal Holdings LLC, CERT Holdings LLC, CERT Holdings 2018, LLC, CERT Operations LLC, CERT Operations II LLC, CERT Operations III LLC, CERT Operations IV LLC, CERT Operations V LLC, and CERT Operations RCB LLC*

December 16, 2020

ii

Dear Judge Burke:

Pursuant to the Court's December 10, 2020 Oral Order (D.I. 254), Plaintiffs and the Refined Coal Defendants submit this joint letter setting forth the parties' respective positions as to whether the stay in light of the IPR proceedings (D.I. 253) should apply to these non-moving Defendants.

**Plaintiffs' Position**

ME2C requests that the Court proceed with resolving the refined coal Defendants' motions to dismiss and, in the event that the motions are denied, allow ME2C to at least take limited discovery regarding the identity of the John Doe Defendants. Depending on the status of the IPRs, the Court may then decide to stay all other aspects of the case as to the refined coal defendants. This approach will impose minimal burden on the refined coal defendants as the briefing on these motions is complete except as to potential letter briefs addressing ME2C's second amended complaint. This approach also avoids duplicative claim construction or other proceedings given the limited scope of the discovery sought. In addition, this approach is necessary to prevent significant prejudice to ME2C.

ME2C alleges that the refined coal defendants use shell LLCs to qualify for refined coal tax credits. While ME2C has identified a number of these entities based on publicly available information, it needs discovery to identify all of the remaining entities.

ME2C accuses these un-named entities, the "John Doe Defendants," of direct and indirect infringement of ME2C's patents. ME2C further alleges that this infringement allows these John Doe Defendants to collect tax credits, the value of which passes through to other unknown owners of the Defendants. See, generally, Reuters, "U.S. investment firms rake in 'staggering' returns on clean coal tax credits" https://www.reuters.com/investigates/special-report/usa-coal-wallstreet/. The value of this tax credit is directly related to the value of the infringement.

However, the refined coal tax credit is set to expire at the end of 2021. https://www.cnbc.com/2019/12/23/us-senators-ask-for-government-investigation-of-tax-credit-program-for-coal.html ("most of the plants in production still have until the end of 2021 to generate tax credits"). It is likely that when the credit expires, the refined coal Defendants will wind down the shell LLCs used to collect the tax credits. ("'It was virtually impossible to make money producing clean coal for utilities,' said Roger Jones, senior counsel at McDermott Will & Emery LLP in Chicago, who has represented refined coal tax investors. 'But as soon as the credit was there, people thought about capital-raising to engage in this activity.'").

If the case is stayed until 2022, and ME2C prevails in the IPRs with respect to at least one claim, it will request that the Court lift the stay and resolve the motions to dismiss. But even if ME2C prevails at that point, it would then need to obtain discovery regarding infringement committed by entities that may no longer exist. This could lead to loss of evidence, an inability to identify relevant witnesses for those entities, or an inability to collect on a judgment. Moreover, even if ME2C can assert its claims against the parent or successor companies to the John Doe Defendants, those entities may argue that ME2C's indirect infringement claims are barred because ME2C did not provide pre-suit notice to those unknown shell companies. At best, a stay would lead to discovery complications, additional motion practice, and potential loss of evidence. At worst,

The Honorable Christopher J. Burke                                            December 16, 2020

ME2C may be denied relief even though it may ultimately have meritorious claims against the John Doe Defendants.

Accordingly, ME2C requests that the Court maintain the current stay for the refined coal Defendants, proceed with the scheduling hearing on their motions to dismiss, and if the motions are denied, allow ME2C to conduct limited discovery into a critical and time-sensitive issue.

**Refined Coal Defendants' Position**

The Refined Coal Defendants (the RC Defendants, the Refined Coal LLC Defendants, and the CERT Defendants) did not join the Power Plant Defendants' motion to stay the litigation pending the outcome of the IPR Proceedings (D.I. 234) because the Court had previously stayed the litigation as to the Refined Coal Defendants "until the Court determines that Plaintiffs have stated a viable claim for relief against those Defendants." D.I. 166. The Court's analysis in staying the litigation as to the Power Plant Defendants (the "IPR-related Stay"), D.I. 253, warrants applying that stay to the entire litigation. The three factors considered on a stay application are discussed below.

*First*, staying the entirety of the litigation "until at least final written decisions have been entered" (D.I. 253) with respect to the PTAB's instituted review of the '114 and '147 patents would simplify the litigation. The PTAB review covers all claims that are asserted against all defendants (except for two dependent claims). *See* IPR Stay Motion Argument 12/09/20 Tr. ("Tr.") at 41:1-22. Thus, as the Court concluded on the Power Plant Defendants' stay motion, absent a stay "there is a very good chance that the parties and the Court could engage in a significant amount of pre-trial work, only to have the PTAB end up invalidating nearly all asserted claims (or otherwise issuing decisions that will have a significant bearing on the patent infringement claims . . . including regarding the priority date of the '114 patent)." D.I. 253. The same analysis applies for the Refined Coal Defendants—any litigation activity that takes place during the PTAB review would be unnecessary if the IPRs result in patent invalidation.

Moreover, Plaintiffs' proposed counts against the Refined Coal Defendants assert that they induce infringement, contribute to infringement, and participate in joint infringement with power plants, including those that are subject to the IPR-related Stay. It would be inefficient and impractical to allow those claims to be litigated while the IPR-related Stay is in effect, because a central feature of that litigation would involve discovery as to whether those stayed power plants perform the methods claimed in the patents, and whether they do so at the direction or insistence of the Refined Coal Defendants. Those inquiries, however, are subject to the IPR-related Stay.

Denying the Refined Coal Defendants a stay now creates the risk of litigating the same patents and issues on three separate tracks—in the PTAB, in this Court as to the Refined Coal Defendants, and in this Court as to the Power Plant Defendants in the event that any claims survive the PTAB review. That would be wasteful; Courts in this District have recognized the efficiency of applying an IPR-based stay to all infringement defendants. Indeed, in *Safe Storage LLC v. Dell Inc.*, No. 12-1624-GMS, D.I. 36 (Jan. 22, 2015), a stay pending IPR was extended to non-moving defendants even though such defendants were named in different cases. *Id.* at 1-2 n.4.

The Honorable Christopher J. Burke                                                                           December 16, 2020

***Second***, the "stage of the litigation" factor warrants staying litigation as to the Refined Coal Defendants even more strongly than it did for the Power Plant Defendants. Although the proceedings involving those defendants are at an early stage, there has been discovery, and some non-dismissed claims. But there has been no discovery involving the Refined Coal Defendants.[1]

***And third***, with respect to the "undue prejudice" factor, Plaintiffs' assertion of harm because they purportedly compete with Refined Coal Defendants is unsupported. In granting the Refined Coal Defendants' stay motion, the Court found that Plaintiffs' assertions in that regard were "not robust" (D.I. 166), and Plaintiffs have not come forward with anything to alter that assessment. Indeed, Plaintiffs' bald assertion that the Refined Coal Defendants are their competitors is belied by Plaintiffs' own public 10-K filing, which identifies seven competitors by name, not one of which is a Refined Coal Defendant (or any other defendant named in this case). D.I. 247, Ex. K at 9; *see Neste Oil OYJ v. Dynamic Fuels, LLC*, No. 12-1744-GMS, 2013 U.S. Dist. LEXIS 92416, at *11 (D. Del. July 2, 2013) (finding the parties were not direct competitors because "the relevant market [was] actually quite broad"). Other suggestions of prejudice are similarly unavailing. For example, Plaintiffs suggested that a stay would be prejudicial because of their purported need for the Refined Coal Defendants to provide the names of other refined coal entities or power plants. Tr. at 43-44. But Plaintiffs have not shown such information to be unavailable from a diligent review of public sources, or that they are otherwise unable to obtain the information on their own. Plaintiffs' assertions of prejudice absent such discovery are speculative, and do not show a need for such information before the PTAB rules on the IPR. The so-called prejudice is also entirely belied by Plaintiffs' actions to date—they waited six years after the '147 patent issued before bringing suit; once they commenced suit and were greeted with multiple motions listing the deficiencies in their original Complaint, they failed to fix them (including the failure to plead that one of the two Plaintiffs has standing); and they failed to seek preliminary injunctive relief. These actions support stays even in cases involving demonstrated competitors. *See, e.g.*, *Ethicon LLC v. Intuitive Surgical, Inc.*, C.A. No. 17-871-LPS, 2019 U.S. Dist. LEXIS 45452, at *8-9 (D. Del. Mar. 20, 2019) (granting stay where plaintiff's "delay in filing suit, decision not to seek a preliminary injunction, and delay in narrowing its asserted claims weigh in favor of [movant]."). In sum, Plaintiffs make no showing of competition-based harm. By contrast, the other "prejudice" factors the Court identified in granting the IPR-based Stay— (i) the IPR Petitions were promptly filed and (ii) the stay motion was promptly brought—apply equally here, as do the reasons identified by the Court for staying the case with respect to all five patents, and not just the two patents on which PTAB reviews have been instituted.

Finally, applying the stay to the entire litigation logically warrants adjourning the adjudication of the motion practice directed to the pleadings. First, Plaintiffs have not yet been granted leave to file the proposed Second Amended Complaint, and the case has been stayed with respect to the parties who are involved in motion practice as to whether such leave should be granted. It would be impractical to conduct motion practice on a proposed amended complaint when the action is already stayed as to many of the named defendants. Second, the outcome of the instituted IPRs, and potentially other IPRs, will no doubt have a bearing on what patents and claims remain to be

---

[1] The absence of discovery involving the Refined Coal Defendants is a direct consequence of the "fail[ure of] Plaintiffs' original Complaint . . . to state a claim against" the Refined Coal Defendants. D.I. 166. As yet there is no viable claim against any of the Refined Coal Defendants. By contrast, certain claims against the other defendants were never challenged.

The Honorable Christopher J. Burke                                                          December 16, 2020

asserted—if any—and on what acts Plaintiffs can allege in good faith are covered by any such remaining patent claims.  It would be inefficient for the Court (and burdensome for the parties) to address the sufficiency of the current pleadings when, as a consequence of the IPR, the case may be entirely eliminated, or substantially simplified.

                      Respectfully,

                      */s/ Brian P. Egan*

                      Brian P. Egan (#6227)

BPE/bac

cc:      All Counsel of Record (Via Electronic Mail)