## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MIDWEST ENERGY EMISSIONS CORP. and MES INC., <br><br> Plaintiffs, <br><br> v. <br><br> AEP GENERATION RESOURCES INC., *et al.*, <br><br> Defendants. | Case No. 1:19-cv-01334-RGA-CJB |

**LETTER BRIEF TO THE HONORABLE CHRISTOPHER J. BURKE FROM
ROBERT S. SAUNDERS REGARDING THE INSUFFICIENCY OF THE
NEW ALLEGATIONS IN THE SECOND AMENDED COMPLAINT
AS TO CLAIMS AGAINST THE CERT DEFENDANTS**

OF COUNSEL:

Douglas R. Nemec
Leslie A. Demers
SKADDEN, ARPS, SLATE, MEAGHER &
  FLOM LLP
One Manhattan West
New York, New York  10001-8602
Tel.: (212) 735-3000
douglas.nemec@skadden.com
leslie.demers@skadden.com

Robert S. Saunders (ID No. 3027)
Nicole A. DiSalvo (ID No. 4662)
Jessica R. Kunz (ID No. 5698)
SKADDEN, ARPS, SLATE, MEAGHER &
  FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899
Tel.: (302) 651-3000
Fax: (302) 651-3001
rob.saunders@skadden.com
nicole.disalvo@skadden.com
jessica.kunz@skadden.com

*Attorneys for Defendants CERT
Coal Holdings LLC, CERT
Holdings LLC, CERT Holdings
2018, LLC, CERT Operations
LLC, CERT Operations II LLC,
CERT Operations III LLC,
CERT Operations IV LLC,
CERT Operations V LLC and
CERT Operations RCB LLC*

December 21, 2020

**VIA CM/ECM**

The Honorable Christopher J. Burke
United States Magistrate Judge
District of Delaware
844 N. King St, Unit 28, Room 2325
Wilmington, Delaware 19801

        RE:   *Midwest Energy Emissions Corp. et al. v. AEP Generation Resources Inc. et al.* – Case No. 1:19-cv-01334-RGA-CJB

Dear Judge Burke:

I write on behalf of the CERT Defendants[1] to address the insufficiency of the new allegations in the Second Amended Complaint ("SAC") (D.I. 214) as to claims against the CERT Defendants. (*See* D.I. 215, so ordered on Sept. 28, 2020.)

The SAC is ME2C's ***third*** attempt to plead claims against the CERT Defendants. The Court found that the Original Complaint failed to state a claim for patent infringement based on the CERT Defendants' alleged provision of coal with added bromine to other entities, which must perform a second Activated Carbon Step to infringe the Original Asserted Patents. (D.I. 110.) ME2C filed a First Amended Complaint ("FAC"), which the CERT Defendants moved to dismiss ("Motion"). (D.I. 175.) Before the Court could issue a ruling, but after the parties completed briefing, ME2C filed the SAC and a blackline depicting its changes. (D.I. 214-1.)

As contemplated by the stipulation so-ordered by the Court (D.I. 215), the CERT Defendants incorporate all arguments from their prior briefing on the Motion (D.I. 176, 203), as well as the arguments in all briefs incorporated or adopted therein. This letter brief is limited to the handful of changes in the SAC pertaining to claims against the CERT Defendants. For the reasons discussed below, ME2C again has failed in its latest attempt to plead claims against the CERT Defendants, and the claims should be dismissed with prejudice.

    **I.**    **The SAC Continues to Improperly Lodge Amorphous Group Allegations at "CERT"**

The CERT Defendants explained in the Motion that ME2C's exclusive use of group allegations to lump together the nine entities as "CERT," with 15 other named defendants, failed to provide notice of the grounds and plausible allegations that *each* defendant is liable for infringement. (D.I. 179 at 8-9; D.I. 203 at 1-2; *see also* D.I. 110 at 8 n.7.) In opposition, ME2C merely dismissed its obligation as a clerical matter. (*See* D.I. 190 at 4, 6 (deriding the issue as a matter of "copy[ing]

---

[1]   The term "CERT Defendants" refers to the nine entities alleged by ME2C as part of "CERT" for which claims were previously dismissed by the Court. (D.I. 110 at 13-22.) Unless noted otherwise, capitalized terms not defined herein shall have the same meanings ascribed to them in the prior briefing on the Motion. (*See* D.I. 176, 203.)

Hon. Christopher J. Burke
December 21, 2020
Page 2

and past[ing] defendant names instead of using group names or . . . particular phrases").) But not only does the SAC not remedy the FAC's deficiencies, it confirms that ME2C cannot make plausible, factual allegations against each defendant. ME2C's new description of the names – as "*individually and collectively*, 'CERT'" (D.I. 214-1 at 2 (emphasis added))[2] – is exactly the type of change the CERT Defendants explained would not fulfill ME2C's obligation. (*See* D.I. 203 at 1-2.) This superficial change does not cure ME2C's failure to provide any factual allegation that any single CERT Defendant infringed the Asserted Patents.

The SAC's other new allegations also fail to "clearly allege[] that [any] [d]efendant [took] part in any *specific* infringing act." *N. Star Innovations, Inc. v. Toshiba Corp.*, No. 16-115-LPS-CJB, 2016 U.S. Dist. LEXIS 168670, at *4 (D. Del. Dec. 6, 2016) (emphasis in original); *see Promos Techs., Inc. v. Samsung Elecs. Co.*, No. 18-307-RGA, 2018 U.S. Dist. LEXIS 186276, at *9-10 (D. Del. Oct. 31, 2018) (dismissing complaint where "the Counts referr[ed] to Defendants collectively as 'Samsung,'" but its preceding paragraphs "d[id] not identify any [of] Defendant's infringing acts" because "a Count must incorporate previous allegations of the Complaint identifying the *specific* infringing acts of the *individual defendants*" (emphases added)). *First*, ME2C now alleges that only three CERT Defendants,[3] along with 13 other defendants, "directly operated and operate an Accused RC Facility" and "perform the associated post-emission control section 45 testing." (D.I. 214-1 ¶213.) As explained *infra*, such allegations fail to state a claim of infringement. (*See* Sec. II (indirect infringement), Sec. III (direct infringement).) ME2C failed to include the remaining six CERT Defendants, confirming that the real issue is if "ME2C has a basis under Fed. R. Civ. P. 11 to allege that each of the nine CERT Defendants committed an act of infringement" (D.I. 203 at 2), not if ME2C can "copy and paste" defendant names. (D.I. 190 at 6.)

*Second*, ME2C alleges in new paragraph 212 that the nine CERT Defendants, 18 other named defendants, and John Doe LLCs "operate at least one Accused RC Facility either by directly owning the facility, directly controlling the facility, or indirectly exercising control of the facility through a subsidiary that is either named above or referred to as a John Doe LLC." (D.I. 214-1 ¶212.) But not only does this allegation fail to make individualized allegations against the 27 named entities, it also fails to render infringement any more plausible. (*See infra*, Sec. II.) In fact, it is unclear how under *any* legal principle an entity purportedly "indirectly exercising control of [a] facility through a subsidiary" (that may be unnamed) can commit patent infringement.

*Finally*, ME2C alleges that "[e]ach of the entities identified with the names AJG, DTE, CERT, and the RC Defendants perform post-emission control testing at least with respect to each power plant they provide refined coal to, if the power plant uses activated carbon injection." (D.I. 214-1 ¶87.) This also fails to provide any factual allegation specific to any single CERT Defendant, especially when the SAC excludes six of the nine CERT Defendants from a separate allegation

---

[2]  Tellingly, although ME2C mirrors the "individually and collectively" language from *IOENGINE, LLC v. PayPal Holdings, Inc.*, it *still* fails to "set forth the parent and subsidiary relationships among the . . . defendants," *i.e.*, an agency theory, Nos. 18-452-WCB, 18-826-WCB, 2019 U.S. Dist. LEXIS 12195, at *35 (D. Del. Jan. 25, 2019). (*See* D.I. 179 at 9 n.8.)

[3]  The SAC excludes CERT Coal Holdings LLC, CERT Holdings LLC, CERT Holdings 2018, LLC, CERT Operations LLC, CERT Operations II LLC, and CERT Operations III LLC.

Hon. Christopher J. Burke
December 21, 2020
Page 3

regarding the performance of Section 45 certification testing.  (*Id.* ¶213.)  At any rate, performance of certification testing does not state a claim for infringement.  (*See* Sec. III, *infra*.)

## II.  The SAC Fails To Provide Plausible Factual Allegations for Indirect Infringement

As set forth in the briefing on the Motion, ME2C's indirect infringement claims are at best (for ME2C) temporally limited, and at worst completely defunct.  The SAC does not provide any new factual allegation to expand the time periods during which the CERT Defendants had knowledge of either the patents or the alleged direct infringement, nor does it provide any basis to infer the missing elements of the induced or contributory infringement claims.

*First*, regarding the temporal limitations, ME2C does not provide any new factual allegation to support that the CERT Defendants had knowledge of the patents or the alleged direct infringement before, at the earliest, July 17, 2019 (for the Original Asserted Patents) or June 29, 2020 (for the Newly Added Patents).  (*See* D.I. 214-1 ¶¶202-03 (newly identifying even *later* dates for allegations of knowledge).)  ME2C's continued failure to plausibly allege earlier knowledge temporally limits its claims.  (*See* D.I. 179 at 5-7; D.I. 203 at 2-3.)

*Second*, regarding its induced infringement claims, ME2C fails to provide any new factual allegations that renders plausible a specific intent to induce infringement, *i.e.*, that any CERT Defendant specifically intended for power plants to perform the Activated Carbon Step.  The new portions of the SAC potentially relevant to specific intent amount to assertions that:

1. Three of the nine CERT Defendants directly operate an Accused RC Facility that, in turn, provides refined coal to power plants (D.I. 214-1 ¶213);
2. The nine CERT Defendants directly own, directly control, or indirectly control through (unnamed) subsidiaries an Accused RC Facility (*id.* ¶212); and
3. Unnamed parties' provision of refined coal to plants induces infringement. (*id.* ¶87).[4]

These allegations still fall short of the bar set in the R&R: ME2C must allege that the CERT Defendants "necessarily know and intend that the coal plants will go on to perform the Activated Carbon Step."  (D.I. 110 at 14.)  Merely operating, owning, and/or controlling (directly or indirectly) an *Accused RC Facility* says nothing about whether these entities know or intend for the *power plants* to perform the Activated Carbon Step.  Unnamed parties "providing the refined coal to these power plants" adds nothing to the FAC's deficient allegations.  (D.I. 214-1 ¶87)  Without any plausible factual allegations to support an inference that any single CERT Defendant possessed the requisite specific intent, ME2C's induced infringement claims still fail.  (*See* D.I. 179 at 7-15 (quoting, *inter alia*, *Neology, Inc. v. Kapsch Trafficcom IVHS, Inc.*, No. 13-2052-LPS,

---

[4]  These portions of the SAC suggest that ME2C's indirect infringement claims are based on the alleged provision of refined coal to power plants, whereas its direct infringement claims are based solely on Section 45 certification testing.  (*See* D.I. 214-1 ¶87 (delineating these two categories of activities).)  To the extent ME2C argues that the new Section 45 certification testing allegations are also relevant to indirect infringement claims, these new allegations are deficient for the reasons discussed *infra*, Sec. III.  (*See also* D.I. 179 at 10-13; D.I. 203 at 4-5.)

Hon. Christopher J. Burke
December 21, 2020
Page 4

2014 U.S. Dist. LEXIS 131568, at *21 (D. Del. Sept. 19, 2014) (dismissing for not "articulating how each [defendant] has encouraged the induced infringement at issue")); D.I. 203 at 1-2, 4-6.)

Moreover, the SAC proves that ME2C cannot provide allegations beyond scenarios that "would be compatible with (but would not necessarily require) an Activated Carbon Step." (D.I. 179 at 9-10.) The SAC asserts that post-emission control testing is performed with a significant caveat: "*if* the power plant uses activated carbon injection." (D.I. 214-1 ¶87 (emphasis added).) This assertion joins the long line of ME2C admissions that the Activated Carbon Step need not be performed. (*See* D.I. 179 at 10 n.9, 13 (collecting admissions).) The SAC recognizes that the Activated Carbon Step need not be necessarily performed, and does not plausibly allege that the CERT Defendants intend for its performance. That is fatal to ME2C's inducement claims. (*See id.* at 10 (quoting *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1329 (Fed. Cir. 2009)).)

*Third*, regarding contributory infringement claims, ME2C fails to provide any new allegations to prove that refined coal has no substantial non-infringing uses or that it was made specifically to infringe. (*See* D.I. 179 at 15-16; D.I. 203 at 6-8.) Again, if anything, the SAC's new allegations cut *against* such an inference. (*See* D.I. 214-1 ¶87.)

### III. The SAC Fails to Provide Plausible Factual Allegations for Single-Actor Direct Infringement

The SAC also fails to salvage ME2C's narrow claim for direct infringement against the CERT Defendants – limited only to certification testing for Section 45 tax credits – because ME2C failed to allege that an Activated Carbon Step is required during Section 45 certification testing. (*See* D.I. 179 at 11-12; *see* D.I. 203 at 4-5.) The FAC offered only speculation as to how certification testing *could be* conducted, or that certification could not be obtained *if* activated carbon and all "other mercury control equipment" were "disregard[ed]." (D.I. 130 at ¶87.) The SAC offers new allegations that the CERT Defendants "perform post-emission control testing . . . , *if* the power plant uses activated carbon injection." (D.I. 214-1 ¶87 (emphasis added).) But even ME2C's third attempt shows it can only allege pure speculation as to what *may* occur.

Like the FAC, the SAC fails to provide individualized factual allegations that each CERT Defendant committed an act of infringement. Rather, the SAC alleges that these defendants had a different role in the operations of the Accused RC Facilities and/or the certification testing. (D.I. 214-1 ¶87 (asserting that only three of these defendants "directly operated and operate an Accused RC Facility" and "perform the associated post-emission control section 45 testing").) As in the FAC, ME2C has not provided factual allegations making plausible an inference that each of these defendants performed every claimed step. (D.I. 179 at 19-20; D.I. 203 at 9-10.)

The SAC also adds bare conclusions to the Counts that "CERT," and a block of 19 named defendants, performed certain (not all) steps of the claimed methods, repeating the same boilerplate statement throughout: "AJG, DTE, CERT, Chem-Mod and the RC Defendants perform this method when conducting section 45 testing for at least one coal plant that uses activated carbon sorbent." (*See* D.I. 214-1 ¶250; *accord id.* at ¶¶253, 256, 259, 287, 290, 293, 296, 300, 326, 329, 332, 358, 361, 364, 390, 393, 396, 399.) But the portions of the SAC that contain the factual bases for ME2C's assertion of infringement make clear that ME2C's claims rest on conjecture as to how

Hon. Christopher J. Burke
December 21, 2020
Page 5

testing *could be* conducted, as opposed to grounds for belief that all steps *are* performed (and performed by all CERT Defendants at that). ME2C cannot salvage its claims with a rote recitation of its conclusions in the Counts. (*See, e.g.*, D.I. 179 at 19-20.) In fact, the new paragraphs in the Counts are more notable for what they do not allege. While the SAC adds conclusions to the Counts that many of the claimed method steps are performed by "CERT," ME2C did not even bother with this boilerplate statement for *all* claimed steps, such as:

> 250.260. Claim 25 of the '114 patent recites: separating the mercury/sorbent composition from the mercury-containing gas, to form a cleaned gas.

> 375.400. Claim 1 of the '430 patent recites: "separating the sorbent contacted with the mercury from the mercury-containing gas."

(D.I. 214-1 ¶¶260, 400.) ME2C thus cannot rely on these incomplete, bare conclusions for its direct infringement claims for the '114 and '430 patents.

### IV. The SAC Fails to Provide Any New Support for Joint Infringement

The SAC only muddies the waters for the joint infringement claims, as it separates out alleged activities for just three of the nine CERT Defendants without explaining how this affects the purported joint enterprises. (*See* D.I. 179 at 18 (observing that the amorphous nature of the alleged members of the joint enterprises, *i.e.*, "the CERT Defendants collectively, unspecified RC Defendants, and unspecified power plants," fails to provide fair notice of the claims and the supporting grounds).) The gradations of alleged control of an Accused RC Facility – *i.e.*, directly operating an Accused RC Facility, or directly owning, directly controlling, or indirectly controlling through subsidiaries an Accused RC Facility (D.I. 214-1 ¶¶212-13) – further cast doubt over all participants holding "an equal right to a voice in the direction of the enterprise, which gives an equal right of control," *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1023 (Fed. Cir. 2015) (citation omitted). (*See also* D.I. 179 at 17-19; D.I. 203 at 8-9.) Likewise, the SAC adds four new defendants into the RC Defendant category, again without specifying the effect on the purported joint enterprises that also involve "CERT." (*See* D.I. 214-1 at 2.)

### V. The SAC Fails to Provide New Support for Willful Infringement

The CERT Defendants refer to their briefing on the Motion concerning willfulness, as the SAC does not include new allegations in this regard. (*See* D.I. 179 at 20; D.I. 203 at 10.)

\* \* \*

ME2C has now had the benefit of two fully briefed motions to dismiss from the CERT Defendants and a robust R&R detailing how ME2C's allegations fell short. Despite clear and specific guidance from the Court, ME2C still cannot chin the bar in its third attempt to state claims against the CERT Defendants. Accordingly, such claims should be dismissed with prejudice.

Hon. Christopher J. Burke
December 21, 2020
Page 6

                Respectfully submitted,

                /s/ *Robert S. Saunders*

                Robert S. Saunders (ID No. 3027)

Enclosure
cc:    Clerk of the Court (via CM/ECF, w/ encl.)
       Counsel of Record (via CM/ECF, w/ encl.)