```
        IN THE UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF DELAWARE


MIDWEST ENERGY EMISSIONS  )
CORP. and MES, INC.,      )
              Plaintiffs,) Civil Action No.
                         ) 19-1334-RGA-CJB
v.                       )
                         )
VISTRA ENERGY CORP.,     )
et al.,                  )
              Defendant. )




              Wednesday, December 9, 2020
              11:00 a.m.
              Teleconference



BEFORE:  THE HONORABLE CHRISTOPHER J. BURKE
         United States Magistrate Judge



APPEARANCES:


     DEVLIN LAW FIRM
     BY:  VERONICA M. SCHAD, ESQ.

            -and-

     CALDWELL, CASSADY & CURRY
     BY:  JUSTIN T. NEMUNAITIS, ESQ.

              Counsel for the Plaintiffs
```

```
1      APPEARANCES, CONTINUED:

2          SKADDEN ARPS MEAGHER & FLOM, LLP
           BY:  NICOLE A. DiSALVO, ESQ.
3               DOUGLAS R. NEMEC, ESQ.

4                  Counsel for the CERT Defendants

5

6          MORRIS NICHOLS ARSHT & TUNNELL LLP
           BY:  BRIAN P. EGAN, ESQ.
7
                     -and-
8
           GIBSON DUNN & CRUTCHER LLP
9          BY:  RICHARD W. MARK, ESQ.
                JOSEPH EVALL, ESQ.
10
                  Counsel for the Refined
11                Coal Defendants

12

13         FAEGRE DRINKER BIDDLE & REATH LLP
           BY:  FRANCIS DIGIOVANNI, ESQ.
14              THATCHER A. RAHMEIER, ESQ.

15                   -and-

16         BAKER BOTTS LLP
           BY:  SYED K. FAREED, ESQ.
17              DAVID TOBIN, ESQ.

18                  Counsel for Defendants Talen
                    Energy Corp, Brandon Shores LLC,
19                  Talen Generation LLC, and
                    H.A. Wagner LLC
20

21

22

23

24
```

1     APPEARANCES, CONTINUED:

2

3          RICHARDS LAYTON & FINGER, P.A.
           BY:  TYLER E. CRAGG, ESQ.

4                    -and-

5          BAKER BOTTS LLP
           BY:  ELIZABETH DURHAM FLANNERY, ESQ.
6               ALI DHANANI, ESQ.
                THOMAS E. CARTER, ESQ.
7                    Counsel for the NRG Defendants

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1          THE COURT:  Let's go on the

2     record, and as we do here, I'll just say a few

3     things for the record.  The first is that

4     we're here today in the Midwest Energy

5     Emissions Corp., et al., v. Vista Energy

6     Corp., et al., it's at Civil Action Number

7     19-1334-RGA-CJB here in our court.

8               We're here today for argument on

9     a motion of stay filed by certain of the

10    defendants, that is the Talen Energy and AEP

11    defendants.

12              Before we go further, let's have

13    counsel for each side identify themselves for

14    the record.  We'll start first with counsel

15    for plaintiffs' side.  We'll begin there with

16    Delaware counsel.

17              MS. SCHAD:  Good morning, Your

18    Honor.  This is Veronica Schad; I'm local

19    counsel for plaintiff Midwest Energy Emissions

20    Corp.  With me today and speaking on behalf of

21    Midwest Energy will be Justin Nemunaitis.

22              THE COURT:  Okay, thanks to you

23    both.  Let's have counsel for the defendants

24    identify themselves for the record, and again,

```
1     we'll begin with Delaware counsel.
2                   MR. DiGIOVANNI:  Your Honor,
3     this is Frank DiGiovanni representing the
4     Talen defendants as Delaware counsel.
5     Thatcher Rahmeier also from my office is on
6     the line.  Lead counsel who will be arguing
7     today is Syed Fareed, and David Tobin from
8     Baker Botts is also on the line today.
9                   THE COURT:  Thank you.  And for
10    other of the defendants?
11                  MR. CRAGG:  Good morning, Your
12    Honor, this is Tyler Cragg of Richards, Layton
13    & Finger appearing on behalf of NRG Energy
14    Incorporated, NRG Texas Power LLC, Midwest
15    Generation EME LLC, and Midwest Generation
16    LLC, the NRG defendants.  I have with me my
17    colleagues Elizabeth Flannery, Ali Dhanani,
18    and Thomas Carter from Baker Botts.
19                  THE COURT:  All right.  Thank
20    you.  And I guess that leaves the AEP
21    defendants?
22                  MR. NEMUNAITIS:  Your Honor,
23    this is Justin Nemunaitis with Midwest.  We
24    dismissed AEP.  We reached a settlement
```

1    agreement with them, and I do not believe they

2    will be joining this call.

3              THE COURT:  Oh, okay.  Thank

4    you, Mr. Nemunaitis.  I appreciate it.

5              Counsel, I've reviewed the

6    papers, and it's defendants' motion, so I'll

7    go to them first.  I'll have some questions

8    here, and I'll certainly allow counsel to add

9    anything else they wish to add about the

10   motion, as well, in addition to answering my

11   questions.

12             Mr. Fareed, are you going to be

13   speaking on behalf of the defendants

14   collectively?

15             MR. FAREED:  Good morning, Your

16   Honor.  Yes, I will be.

17             THE COURT:  Let me just throw a

18   few questions at you first and then I'll give

19   you a chance to add other info.

20             It looks like we've got five

21   patents-in-suit.  As to two of them, we've had

22   institution on all asserted claims other than

23   maybe two dependent claims against NRG, but

24   then we've got the three other patents, as to

1    which defendants believe they are not able to

2    file an IPR until the nine-month waiting

3    period expires.  Of those, it looks like two

4    of the three, the waiting expires later this

5    month, and maybe one I think might have been

6    March.

7              So first question for you is do

8    you anticipate filing IPRs as to all three of

9    those patents, and if you do, when do you

10   anticipate filing them?

11             MR. FAREED:  Yes, Your Honor.

12   So to answer your first question, we do

13   anticipate filing IPRs on all three of those

14   patents.  As far as timing is concerned, we

15   don't have a specific date in mind, but it's

16   certainly -- we are intending to file it, you

17   know, reasonably soon after the window opens.

18   So we were looking perhaps, you know, early

19   part of January, after we get through the

20   holidays for the first two of the three

21   patents that remain, and then by mid March on

22   the third patent.  That's what we are

23   anticipating at this stage.

24             THE COURT:  I think one of the

1    issues that the parties talked about

2    particularly in the briefing when we had

3    institution on the '114, but it was unclear

4    whether there would be institution on the '147

5    was, well, what art is going to be asserted to

6    invalidate, you know, the '147 in the

7    institution petition, and is it similar art as

8    the art that's been put up as to the claims of

9    the '114?

10              And I gather the idea is because

11   to the extent that there is real overlap

12   between the asserted prior art that

13   invalidates claims as to one patent and claims

14   as to another, where we haven't yet gotten an

15   institution decision, well, then if there is

16   one, an institution decision and we've got the

17   same prior art being asserted against the

18   claims of the two different patents, it's

19   going to likely mean that if we get a -- you

20   know, at the time when the briefing was going

21   on, you know, if the '114 was going forward

22   and we knew that certain prior art was at

23   issue in the PTAB, we would know that if the

24   PTAB said something about whether that prior

1    art rendered a claim of the '114 valid, that

2    might well have some bearing on invalidity

3    arguments as to the '147.

4              And so now that we have

5    institution as to two of the five, we're

6    thinking about the other three patents, do you

7    anticipate that some of the same invalidity

8    theories that were common to the '114 and the

9    '147 patents will be asserted against the

10   three new patents, either the Nelson or Olson

11   or Sjostrom references or others?

12             MR. FAREED:  Yes, Your Honor.

13   We do anticipate that some of the same

14   invalidity theories will be presented in the

15   IPRs from the other three patents, yes.  It

16   may not be identical across the board, but

17   there will be overlap for sure.

18             THE COURT:  Just a couple more

19   questions I had in terms of the facts.  I saw

20   the briefing and the back and forth in the

21   briefing about what we're calling a priority

22   issue.  But I have to say I was a little

23   unsure if I had all the facts right as to what

24   the issue is with priority, and how that has

1   some bearing on the five patents and what

2   might be happening with them in the PTAB.  So

3   can you explain to me a little bit more about

4   what is this priority date issue, and how does

5   it have a bearing on the stay factors as you

6   see it?

7               MR. FAREED:  Yes, Your Honor;

8   certainly I can.  So the priority date issue

9   here, the patentee here incorporated some

10  essential material from the provisional

11  application that was filed in 2004.  The

12  incorporation by reference throughout the

13  chain of these patents has not been

14  consistent.  In some instances, perhaps in

15  some of the intervening patents, that

16  language -- they incorporate by reference

17  language, first of all, "to the extent

18  appropriate" or "to the extent necessary."

19  It's not an all- encompassing incorporation by

20  reference.  So that is one issue.

21              The other issue is that

22  according to the PTO rules, you cannot

23  incorporate essential material from a

24  provisional application.  It has to be a

1    published patent application or -- essentially

2    a published patent or an issued patent.

3                So those are two reasons why

4    ME2C, we contend that ME2C cannot seek

5    priority all the way back to the earliest

6    filing date.  And if they cannot do that, the

7    next date that they can really seek priority

8    credibly is their actual filing it for each of

9    the individual patents.  And that is the issue

10   that the PTAB has before it, which is why we

11   filed two petitions on each of these patents.

12   PTAB preliminarily has ruled in defendants'

13   favor in saying that there is a legitimate

14   concern about whether these are really titled

15   back to the earliest priority date, and the

16   PTAB preliminarily has concluded that they are

17   not.

18                If, Your Honor, defendants

19   prevail on those specific issues of priority

20   and these patents are entitled to their actual

21   filing date, what that means is that the

22   accused activity here in this litigation

23   becomes prior art.  So that will greatly

24   simplify the case if eliminated.

1                THE COURT:  And do you expect or

2       anticipate that you're going to -- that the

3       priority issue will also have relevance to

4       what happens with institution decisions as to

5       the remaining three patents?

6                     I couldn't tell, for example,

7       whether you were saying that, well, look, if

8       what's going to be at issue may be in our

9       position at the PTAB with respect to the other

10      patents, as well, the PTAB might have to make

11      an initial call on whether it's likely that

12      the priority date goes back all the way to

13      '04, and if they say it doesn't, then they say

14      more likely that we'll actually get

15      institution as to the other three patents

16      because some of the art we're putting up.

17                     If the priority date is only the

18      date of the patents' filing, would it then

19      become clearly relevant and bolster our case

20      for invalidity and institution?  Is that a

21      part of it, too, or, no, am I misreading it?

22                MR. FAREED:  Yes, Your Honor.

23      So we will be -- our plan is to challenge the

24      next three patents along the same lines that

1    we just did in the first two, which is to say
2    that we will be challenging the priority date
3    for those patents and we will be advancing
4    arguments saying that if the PTAB rules
5    against us on priority, if the PTAB says these
6    patents are entitled to the earliest priority
7    date, the claims are nevertheless still
8    invalid in light of even earlier prior art.
9            THE COURT:  Okay.  So certain of
10   the art you will put up would predate '04;
11   certain might not.  And if the PTAB says that
12   the priority date is not likely to be '04, it
13   only helps you, but it doesn't eliminate your
14   ability to get institution in terms of what
15   you expect to happen with regard to the
16   remaining three petitions?
17           MR. FAREED:  Precisely, Your
18   honor.  Yes.
19           THE COURT:  And the three pieces
20   of prior art that I understand to be commonly
21   at issue in the '114 and the '147
22   institutions, which I gather were Nelson,
23   Olson, and Sjostrom, are those pieces of prior
24   art that predate '04 or that are post '04?

1              MR. FAREED:  Two of them predate

2       '04, Your Honor, if I'm getting my dates

3       correct.  Nelson, as best I can recall, Nelson

4       and Olson papers do predate '04.  I could be a

5       little bit off.  But the Sjostrom if I recall

6       correctly was the intervening art, which means

7       the earliest filing date and the actual filing

8       date.

9              Actually, I've been corrected by

10      my team.  So Nelson predates '04; Sjostrom and

11      Olson are intervening art.

12              THE COURT:  Got it.  Last

13      question before I'll let you address the other

14      factors you want to address.  I know there was

15      some point of disagreement between the parties

16      about what the MPEP about a particular issue

17      as it related to the priority date.  I think

18      in your brief you told me there's a dispute,

19      but Judge, you don't have to worry about it

20      for purposes of this motion.  Is it relevant

21      in your mind to whatever I have to decide?

22      Because I wasn't sure I followed it in the

23      brief.

24              MR. FAREED:  To answer your

1    question, Your Honor, it should not change the

2    way the Court rules on the stay issue.  The

3    issue is very crystallized before the PTAB

4    already.  The PTAB's preliminary decision has

5    been in line with what defendants have argued,

6    which is that the MPEP guidelines and the case

7    law interpreting some of the priority date

8    issues, in light of all of that, ME2C is not

9    entitled to the earlier priority date.

10              So regardless of the priority

11   date issue, the point that defendants are

12   making here on the stay motion is that PTAB

13   has that issue in front of it, it's going to

14   rule on it, and that is another reason why we

15   will greatly benefit from the PTAB's decision,

16   or at least their guidance how priority date

17   has to be ascertained here.  So if you get a

18   stay, by the time we get through the final

19   written decision on these IPRs, we will know

20   one way or the other how the PTAB is

21   interpreting it, and that decision will be

22   certainly instructive if there's still a

23   dispute before the Court.

24              THE COURT:  Okay.  And actually,

```
 1        maybe one other question before I let you
 2        address the other issues that you want to talk
 3        about.  Here, when it comes to the '114 and
 4        the '147, if this case was only about those
 5        two patents, I think it could be said it
 6        wouldn't be a difficult call, you know.  You
 7        have a very strong stay motion as it relates
 8        to those two in light of what I understand the
 9        facts to be and where we stand in the case, et
10        cetera.
11                We do have these other three
12        patents where we haven't even yet had an IPR
13        petition filed, and I understand why in terms
14        of your view about the waiting period.  But
15        make the best case for me -- I know you talked
16        about this in your brief a bit -- but make
17        your case for me that, look, Judge, when it
18        comes to the other three, because we know
19        we've got institution on all or just about all
20        of the asserted claims of these first two, it
21        is very likely for these reasons that what the
22        PTAB has to say about invalidity or claim
23        construction as it relates to the '114 and
24        '147 is going to have impact on what happens
```

 1    with those other three patents, or is going to

 2    have the impact on potentially how a court

 3    might view key issues as to those three other

 4    patents.  And so it makes sense, even though

 5    we don't have institution on those other three

 6    patents, because we do on the first two, there

 7    are all kinds of efficiency gains that are

 8    likely to happen with regard to the other

 9    three, as well.

10            MR. FAREED:  Sure, Your Honor.

11    So with respect to the next stage that we're

12    looking at here in a couple of months, we'll

13    start down the Markman phase, these are five

14    patents that are coming from the same family.

15    These are not unrelated patents.  These are

16    from the same family, have the same technology

17    in their claims, have some of the same terms

18    that permeate across all five patents.  So

19    this is a case where the PTAB's decision on

20    the first two is going to have a significant

21    bearing on how claims construction or claims

22    are construed across all five patents, not

23    just the first two.

24            The other thing we're already

```
 1      seeing in the two existing IPRs, and we think
 2      it's going to happen even more so next year,
 3      is the evolution of the intrinsic record.  The
 4      intrinsic record is already evolving based on
 5      arguments and disclaimers that ME2C has made
 6      before the PTAB.  In their patent owner
 7      preliminary response, as just one example, for
 8      the '147 patent, they disclaimed, one of the
 9      terms is in flight, what that means.  We
10      expect some similar statements will be made in
11      these ongoing IPRs and the next set of IPRs,
12      as well.
13              So we will be in a situation,
14      Your Honor, that if we don't have a stay, we
15      get, you know, we get until Markman briefing
16      is complete, we still have not, you know,
17      reached the Markman hearing stage by let's say
18      next May or June, and the landscape of these
19      patents has been greatly altered at the PTAB.
20              Let's say we proceed through the
21      Markman hearing here next July.  After that,
22      we'll likely see some more papers from ME2C at
23      the PTAB which, again, will either require
24      parties to file supplemental briefing if we
```

1      don't have a Markman ruling from the Court

2      yet, or if we have a Markman ruling, might

3      require supplemental Markman.  We think that

4      is going to be a waste of resources, certainly

5      a waste of the Court's time and energy, and

6      the parties', as well.

7                  So all of that can be saved

8      significantly if we just stay the case, get

9      past these IPRs, and then assess, well, which

10     claims -- and by the way, Your Honor, it goes

11     without saying, but it might be the case that

12     the Court is required to construe claims that

13     may later, just a few months afterwards, have

14     been found invalid by the PTAB.  So all that

15     counsels towards -- we just think it's pretty

16     close to a classic case for why a stay should

17     be granted here.  Granted, you know, the three

18     patents are not before the PTAB, the last

19     three patents are not before the PTAB now but

20     they will be.

21                  THE COURT:  You mentioned one

22     term.  Are there certain claim terms that

23     you'd say, Judge, these claims are going to be

24     at issue in the case, and the same term spans

1    all five patents, so, you know, we think it's

2    very likely that -- you know, we think all

3    five patents will get instituted on, but if

4    they do, we think at least these terms that

5    span all five patents are likely to be at

6    issue in the PTAB and are going to be at issue

7    in the district court issue, so that's also a

8    factor.  If that's what you're arguing, are

9    there other claim terms you would point to?

10             MR. FAREED:  Yes, Your Honor.

11    One example would be bromine compound.  That

12    is a term that permeates across multiple

13    asserted patents.  We think that's going to be

14    a kind of benefit from the PTAB's guidance on

15    that or what that means or what ME2C argues

16    that it really means.  That's going to have a

17    bearing on the Markman issues.  You know,

18    injection or injecting is another term, Your

19    Honor, that permeates across several asserted

20    parents here.

21             So there are multiple of these

22    terms, terminologies that are identical, if

23    not identical, very, very similar across all

24    patents that will be before the PTAB.

1                    THE COURT:  All right.
2      Mr. Fareed, let me let you address any other
3      factors in the briefing that we haven't
4      discussed that you want to address.
5                    MR. FAREED:  Your Honor, we've
6      made some of the highlighted points just now.
7      But the other point that I'll note, Your
8      Honor, this is not a close case as far as
9      simplification is concerned.  As Your Honor
10     has already noted, as Judge Andrews in his
11     order has already noted, when a PTO or PTAB is
12     looking at reexamining the patent or doing
13     IPRs, there are three outcomes, and whichever
14     outcome occurs, there's great potential for
15     simplification of issues, and that is where we
16     are.  If we don't have a stay, as I mentioned
17     earlier, we will by the end of next year will
18     have gone through Markman on claims or patents
19     that might have, you know, been found invalid.
20     That is a great waste of the Court's
21     resources, certainly a waste of parties'
22     resources.
23                    We will be conducting discovery
24     perhaps on claims on patents that are being

1    invalidated or perhaps on accused processes

2    that should no longer have been accused

3    because they predated the patents.

4              So a lot of this, you know, very

5    strongly counsels in favor of say a lot of

6    simplification issues, counsel in favor of a

7    stay.

8              The other point, Your Honor,

9    that I'll note is Your Honor right now has

10   pending motions to dismiss on ME2C's

11   complaints, and as well as the motion for

12   leave on the second amended complaint.

13             One of the issues, Your Honor,

14   that cuts across all of those, all of those

15   briefings is the issue of pre-suit knowledge.

16   That's just one example.  Because ME2C has

17   alleged willfulness, ME2C has alleged induced

18   infringement across multiple defendants.  And

19   the linchpin for all of these allegations is

20   that ME2C gave notice to whichever defendants

21   you pick about the '147 patent.  Your Honor,

22   if the '147 patent is invalidated, that notice

23   is of no consequence.  There cannot be a

24   credible basis of willful infringement or

1    pre-suit inducement that is hinging on an

2    invalid patent.

3              So Your Honor, if we, you know,

4    if we go through this -- proceed through the

5    case without a stay, Your Honor has a hearing

6    set for January 6.  Well, that issue, if the

7    patent is invalidated, that willfulness issue,

8    a pre-suit issue will essentially have been

9    extinguished.  So it will certainly save, you

10   know, a lot of time and energy by the Court

11   and certainly by the parties.

12             The other point I'll note, Your

13   Honor, is the status of the litigation factor

14   greatly favors stay.  Just to give some of the

15   highlighted points, Your Honor, the moving

16   defendants that are still in this case have

17   not even answered yet.  We don't have an

18   operative complaint to answer, because as I

19   mentioned, the pleading deficiencies which are

20   before Your Honor.

21             Discovery is in very early

22   stages.  Defendants have not served invalidity

23   contentions, not a single deposition has been

24   taken or even noticed.  As I mentioned,

1    Markman phase is at least a couple of months

2    away, and let alone expert discovery and

3    dispositive motions which are even farther

4    away.  So some of the most burdensome stages

5    of this case, Your Honor, has not even begun,

6    so we are in the very early stage.

7              And as far as the last point,

8    Your Honor, with respect to the stay factors,

9    the prejudice, you know, ME2C has not really

10   argued or contended that we'd be delayed in

11   seeking the stay.  To the extent they argue

12   that we were somehow delayed in pursuing IPRs,

13   we've already addressed that, Your Honor, in

14   our briefing very adequately, I think.  We'd

15   file IPRs of the '114 pretty soon after the

16   expiration of the nine-month window.  On the

17   '147 patent, we'd filed it the following

18   month, but well within the statutory period,

19   you know, months in advance of the ME2C

20   serving its infringement contentions.

21              But anyway, last point, Your

22   Honor, I'd make is on the relationship of the

23   parties factor.  That is a point that ME2C has

24   at least indicated that they think this is a

```
 1          competitor case, Your Honor.  This is not a
 2          competitor case.  ME2C and moving defendants
 3          are not competitors.  Moving defendants,
 4          they're in the business of selling and
 5          generating electricity.  ME2C is in the
 6          business of selling commodity chemicals.  We
 7          don't compete.  And outside of this
 8          litigation, if you see ME2C's papers and their
 9          SEC filings, ME2C does not consider moving
10          defendants as its competitors.  So this is not
11          a competitor case that would warrant some sort
12          of a, you know, closer inquiry on prejudice
13          issues, Your Honor.
14                  And last point I'd note is if
15          ME2C even believed that there was any
16          competition between itself and the Coal Plant
17          defendants, it probably would have filed a
18          lawsuit several years ago when it first
19          alleged to have given us notice of these
20          patents.  The fact that it waited six, seven,
21          eight years to even pursue litigation strongly
22          suggests that this is not a fierce competitive
23          landscape, certainly that ME2C does not
24          consider moving defendants as its competitor.
```

```
1                    So I'll just conclude, Your
2       Honor, by saying that the level of competition
3       here is either non-existent or docile at best.
4                    THE COURT:  And I guess one last
5       question on that last line of argument.  I
6       know the moving defendants here are Talen and
7       NRG, but in terms of if I stayed the case,
8       would it make sense not to stay the case as to
9       all defendants in terms of the arguments
10      you're making about deficiencies and the like?
11                   MR. FAREED:  We certainly think
12      so, Your Honor.  For all the reasons I
13      mentioned earlier about simplification and
14      evolution of the intrinsic record, for all of
15      those reasons, it would make the most sense
16      for the Court to stay the entire case across
17      all defendants until we get past the PTAB
18      proceedings.  And the reason is because, you
19      know, it doesn't make sense to do Markman in a
20      piecemeal fashion or first perhaps for Refined
21      Coal defendants, assuming they're not stayed.
22      It doesn't make sense to do that and then have
23      another Markman in once we get out of the stay
24      for the Coal Plant defendants.
```

```
 1                    So that burden, the reduction of
 2        the burden on the Court, counsels in favor of
 3        a stay across the entire case.  But, of
 4        course, Your Honor, I can't speak for Refined
 5        Coal defendants.  They're on this line, and if
 6        they have anything to add, I'll certainly
 7        defer to them on their clients' behalf.
 8                    THE COURT:  All right.  Thank
 9        you.  Let me turn to plaintiffs' counsel to
10        ask some questions and let them speak to these
11        issues.  Who is going to speak on behalf of
12        the plaintiffs' side?
13                    MR. NEMUNAITIS:  Justin
14        Nemunaitis, Your Honor.
15                    THE COURT:  Okay,
16        Mr. Nemunaitis, with regard to the issues with
17        regard to efficiencies and the like, we do
18        have now in the PTAB a world where they're
19        using the same claim construction standard as
20        district courts are.  And to Mr. Fareed's
21        argument, if we are going to have the PTAB,
22        you know, no doubt be addressing certain claim
23        terms, at least those that relate to the '114
24        and the '147 patent but that perhaps could
```

```
 1    span across the five, wouldn't there be some

 2    inefficiencies in having the PTAB go through

 3    the process while the Court might almost be

 4    simultaneously going through that process, as

 5    well?

 6                    MR. NEMUNAITIS:  I would say the

 7    likelihood of that, Your Honor, is very low.

 8    The reason why is that in the '114 petition

 9    for IPR, the petitioners did not ask for any

10    terms to be construed.

11                    You heard just now two terms

12    that they raised, one is bromide.  I don't

13    believe there's a claim construction dispute

14    in the IPRs about that term.  I suppose they

15    can correct me if I'm wrong.  But I don't

16    believe that's an issue that's been raised by

17    either side or by the PTAB at this point, nor

18    is there a reason to believe that it would be

19    flushed out in further briefing.

20                    The other term that was

21    identified is injecting.  Now, that is a term

22    that appears in a larger phrase, and in our

23    response to one of the '114 petitions, we did

24    raise that as a potential claim construction
```

1    issue.  And that's because it's an issue
2    specific to one asserted prior art reference.
3    There the petitioners were arguing that
4    placing a new fabric filter into a baghouse
5    and then providing gas into that baghouse
6    counts as injecting, and we said, no, no,
7    that's something different.
8              The board agreed with us on our
9    interpretation of the prior art reference and
10   said, yeah, this is different than what's
11   being described in the '114 patent, but
12   ultimately concluded that because that was
13   clear, just based on a review of the reference
14   itself, that there was no need for
15   construction.  And so it's not clear to me at
16   this point if there's any further claim
17   construction work to be done on either of
18   those terms or other terms that would span all
19   of these patents.
20             THE COURT:  Are you saying you
21   think it is unlikely that the PTAB, as to at
22   least the '114 and '147 institutions, is going
23   to have anything to say about the scope of any
24   claim terms?  It seems unusual that we would

1    get a final written decision from the PTAB

2    that would have nothing to say about what

3    certain claim terms mean.  But is that you are

4    suggesting would likely be the case?

5              MR. NEMUNAITIS:  If I were to

6    say yes to that question, it would certainly

7    be thrown back at me in later claim

8    construction briefing.

9              THE COURT:  I'm not trying to --

10             MR. NEMUNAITIS:  Yeah.  But I

11   think that's generally correct, and there's

12   two reasons.  One is there's really only one

13   term, potential term dispute that's been

14   raised at this point for the '114 patent, and

15   it's not clear that because it was so specific

16   to a particular prior art reference, that that

17   is really going to have much of an impact on

18   the issues, in this case dealing with

19   infringement and whatever prior art theories

20   they raise.

21             The other point I would make is

22   just that these patent claims, you know, I

23   don't want to oversimplify the technology, but

24   they're fairly short claims; the words are

1       generally pretty straightforward.  So this is

2       not a case where there's a lot of highly

3       technical terms that really require a lot of

4       heated, you know, claim construction disputes.

5               THE COURT:  Okay.  Next question

6       would be, look, I think I've said already,

7       based on just reading the papers, you know, if

8       this case were only a case involving the '114

9       and the '147, I feel like the motion would be,

10      you know, pretty strong.  I know you have

11      arguments otherwise.  But just in general, my

12      understanding is that just about all the

13      asserted claims against the moving defendants

14      are instituted on -- you know, this case, I'll

15      just tell you I think we are in a relatively

16      early stage of this case.  Obviously we're not

17      at the very beginning.  But in light of all

18      that's gone on and the fact that the case is

19      stayed as to certain defendants, we're pretty

20      early.

21              So I've already said I think

22      it's a pretty strong argument as to a stay as

23      to those two patents, and if those are the

24      only two patents in the case, this wouldn't be

1   much of an argument, I think.

2                   We do have these other three

3   patents, though, and defendant has asserted

4   they just don't believe they could file for

5   IPRs yet as to those in light of the waiting

6   period.

7                   So one question for me is going

8   to be, well, look, what do I do about that?

9   And the defendant has said, look, I think

10   there are going to be real efficiencies gained

11   from what happens in the IPRs as to the '114

12   and the '147 that will impact these other

13   three patents, regardless of whether IPRs are

14   instituted, although we think they will be.

15   And I know you pushed back on that.

16                   And so we've heard from

17   Mr. Fareed as to why he thinks that overlap

18   will be there in terms of are asserted, in

19   terms of claim terms or potential claim terms,

20   disputes, et cetera.  And you're giving me the

21   opposite position, no, I don't think that's

22   right, I don't necessarily what the PTAB is

23   going to say about the '114 and the '147 is

24   going to have much to do with these other

1    three patents.  If that is your argument, let

2    me give you a chance to make that and give me

3    the factors why.

4              MR. NEMUNAITIS:  Yes, thank you,

5    Your Honor.

6              What we have seen so far from

7    the petitioners is that they did not raise

8    identical arguments for both the patents that

9    they instituted.  Setting aside the claim

10   construction issue for a minute, the main

11   thing they focus on is the priority date

12   issue.  And that was raised as to all the '114

13   claims, but it was not raised as to all of the

14   '147 claims.

15             And just to back up a bit, on

16   this prior art date issue, there's really two

17   aspects to it.  One is a dispute over what is

18   required under the MPEP to incorporate an

19   earlier pairing application by reference, and

20   we have a dispute there.  And that was sort of

21   the primary thing that the patent office

22   relied on, and we believe that the reasoning

23   from those, the '114 institution decision,

24   will be inapplicable because of this provision

1   of the MPEP that we identified.

2               The other aspect of the priority

3   date issue is just setting aside the

4   incorporation by reference, do each of these

5   applications describe the invention in

6   sufficient detail to maintain priority

7   throughout the chain?

8               So what petitioners need to do

9   for these next three patents is decide whether

10  or not they want to treat them like the '114

11  patent or like the '147 patent.  Because if

12  they treat it like the '147 patent, then they

13  can't raise these same priority date issues as

14  to all claims.  And whether that's because

15  they don't want to say something inconsistent

16  with the non-infringement argument or they

17  don't want to say something that's

18  inconsistent with another prior art theory

19  that they assert, at the end of the day, what

20  we would need to see to determine whether or

21  not they're going to raise the same arguments

22  or the same issues are going to be

23  overlapping, is what are they going to put in

24  the petition and then what responses do we

1    have to that?

2              So that's why I would say it's

3    premature to conclude that just because they

4    raised arguments as to these two patents, that

5    we're going to see the same things and the

6    same decisions by the PTAB as to the other

7    three patents.

8              THE COURT:  I guess objectively

9    that there was certain art that the defendant

10   has put up against the '114 and the '147 in

11   the PTAB that has been instituted on across

12   those patents.  I think you would probably

13   acknowledge that, look, if the defendant is

14   going to assert in this case and/or at the

15   PTAB that that same art invalidates some or

16   all of the remaining three patent claims, or

17   that other art put up as to either the '114 or

18   the '147 that also gets put up against the

19   other three invalidates, what the PTAB has to

20   say about, you know, the art in the '114 and

21   '147 IPRs might have real relevance here.  For

22   one thing, if claims of the '114 are found

23   invalid based on certain of that art, there is

24   a real chance that claims of the other patents

```
1     would be, as well, and/or that could one way
2     or the other kind of eliminate arguments about
3     validity as to those other patents.
4                    Isn't that kind of argument,
5     doesn't it, isn't there some sense behind it?
6                    MR. NEMUNAITIS:  Well, one point
7     of clarification would be that some of the
8     same references are cited in both of those
9     petitions, but not necessarily in the same
10    way.  So, for example, Nelson is cited as a
11    primary reference as to one patent and as a
12    secondary reference as to another patent.
13    There's a Sjostrom reference in one, and a
14    different reference by the same author in
15    another.  So I think it's a little bit more
16    complicated than that.
17                    But I suppose what I would say,
18    I mean, I would agree, I mean, if the patent
19    office does decide to institute as to the
20    other -- well, let me start over on that
21    point.  I agree that the patent office's
22    analysis in these institution decisions is
23    likely something that they would consider when
24    looking at the other three patents when those
```

1      petitions are filed, assuming they get filed.

2                    But there's also a body of case

3      law indicating that you can't, you know, take

4      a decision from the patent office or take

5      preliminary responses and use those to improve

6      on your theories.

7                    And so, for example, one of the

8      pre-2004 prior art periods that have been

9      asserted against the '114 patents based on

10     this Vosteen reference which the patent office

11     rejected that in their institution decision.

12     So what we could see is the petitioners coming

13     back with some new replacement theory that

14     tries to fill in the gaps there.  And the

15     patent office would then need to decide, okay,

16     once we brief this priority date issue again,

17     assuming that it's raised as to all the

18     claims, and once we look at this other prior

19     art theory, you know, are they kind of taking

20     a second bite at the apple such that this one

21     should not be instituted even if there's some

22     overlap in the subject matter there.

23                    So again, I think the

24     appropriate thing to do would be see what the

```
 1    petitions are that are filed, see the

 2    preliminary response, and see whether those

 3    other three patents get instituted.

 4              THE COURT:  Relatedly, if I were

 5    to say -- if the outcome were to be and I were

 6    to say, look, I am definitely going to grant

 7    the stay request as to the '114 and the '147,

 8    but I were to say to plaintiff, if I were to

 9    do that, would you even want to go forward as

10    to the other three patents while the case as

11    to those first two patents were stayed, if I

12    gave you the opportunity, is the answer yes?

13              MR. NEMUNAITIS:  Yes.  I suppose

14    I would need to talk to the client.  But one

15    thing that immediately occurs to me is that

16    it -- what might make the most sense is to

17    maintain the trial date and push back the

18    claim construction hearing or something like

19    that to try to keep claim construction

20    briefing the same.  Well, I don't know; it

21    gets into a complicated question of -- I would

22    not want to be putting up our inventor for

23    multiple depositions.

24              THE COURT:  I guess normally it
```

```
 1      is an all or nothing kind of thing.  Either
 2      you stay the whole case or none of it.  I
 3      think what you're saying is, look, there are
 4      going to be interrelationships between those
 5      first two patents and the last three, same
 6      inventors, same claim terms, et cetera.  And
 7      so it probably makes better sense for the
 8      Court to treat it as an all or nothing
 9      decision in light of those interrelationships.
10      Is that fair?
11                  MR. NEMUNAITIS:  Yes.  I think
12      it would be complicated to separate them.
13                  THE COURT:  Okay.  A couple of
14      other quick questions, and I'll let you
15      address anything else if there's anything you
16      want to add.
17                  Do you concede that the priority
18      dates to the three newly asserted patents are
19      not before March 6, 2013?  I know the
20      defendants suggested that maybe you were doing
21      that when it came to this argument the parties
22      were having about whether they could have
23      filed PGRs.  My guess was you weren't
24      conceding that, but I'd be happy to hear from
```

1    you on that.

2                MR. NEMUNAITIS:  Absolutely not

3    conceding that point.  The argument that we

4    were making is simply under petitioner's

5    interpretation, if they challenge the priority

6    date, they are not allowed to file an IPR

7    until this nine-month window.  And the only

8    point we were making is there's a different

9    procedural vehicle, which is filing a PGR,

10   which they could have done at any time.

11               So the fact that they had that

12   option available to them should not result in

13   them getting the benefit of the doubt that

14   they're going to get these other three patents

15   instituted, when we could be in a different

16   world if they had just raised these same

17   arguments in PGRs against those patents.

18               THE COURT:  And then another

19   question I had is obviously the moving

20   defendants here, there's only certain

21   defendants that the case is not stayed to

22   already, and that's these moving defendants.

23   And they're moving and saying, hey, for these

24   reasons, you should stay in favor of the IPR.

```
 1                    I'm just trying to figure out if
 2      I were to grant their motion -- not saying I
 3      will -- but if I did, would it be making any
 4      sense that the case wouldn't be stayed in
 5      favor of IPR as to all defendants in the case?
 6      And one of the questions there I had was as to
 7      the '114 and the '147 patents, are all the
 8      asserted claims that are asserted against the
 9      moving defendants, are they the same asserted
10      claims that are being asserted against the
11      non-moving defendants, I guess we're calling
12      them the Refined Coal company defendants,
13      against whom the case is already stayed?
14                    MR. NEMUNAITIS:  I believe that
15      is correct as to the independent claims, and
16      it may or may not be as to some of the
17      dependent claims.
18                    THE COURT:  So in the main, it
19      may be that the asserted claims asserted
20      against the moving defendants here are the
21      same ones asserted against the non-moving
22      defendants; is that fair?
23                    MR. NEMUNAITIS:  I --
24                    THE COURT:  It sounds like with
```

```
 1      respect to the '147, I think if I understand
 2      it right, that the only claims that are left
 3      have all been instituted on.  So if that's
 4      right, it's got to be the case that to at
 5      least that patent, every claim in the PTAB
 6      right now that these moving defendants have
 7      put in there as to that fact has to encompass
 8      all the claims that are being asserted against
 9      the non-moving defendants; is that right?
10                MR. NEMUNAITIS:  I believe
11      that's right.  My only hesitation was
12      characterizing the issues with respect to all
13      the dependent claims as sort of outside the
14      main, something like that.  But I believe the
15      same independent claims are asserted against
16      all the defendants.
17                THE COURT:  Okay.  All right.
18      Mr. Nemunaitis, let me let you address any of
19      the other stay factors that either came up in
20      Mr. Fareed's argument or in the briefing that
21      you wanted to add to here.
22                MR. NEMUNAITIS:  Thank you, Your
23      Honor.  One thing I'd like to address up front
24      is the scope of the stay if Your Honor were
```

1    inclined to grant a stay.  I think one very

2    important point here is whether or not it

3    applies to the Refined Coal defendants.  When

4    we had the meet-and-confer, I made absolutely

5    clear that this motion would be limited to

6    seeking stay on behalf of the movants.  I

7    don't believe any party has filed any request

8    for a stay as to the Refined Coal defendants.

9              And there's a unique prejudice

10   that would occur to ME2C if the stay were at

11   this point sua sponte granted as to the

12   Refined Coal defendants, and that's because we

13   have alleged infringement by various John Doe

14   defendants.  And those entities are involved

15   in this Refined Coal tax credit program which

16   is currently set to expire next year.

17             And so I would not want to be in

18   a world where we don't -- we cannot identify

19   all of those companies until after the tax

20   credits expire and now we need to try and go

21   name their predecessor companies or figure out

22   what happens to liability or try to obtain

23   discovery from entities that potentially no

24   longer exist because they no longer serve the

```
1     purpose of obtaining these tax credits.

2                     So I do think most importantly

3     that we should move forward with the motion to

4     dismiss hearing and resolving that motion to

5     dismiss with respect to the Refined Coal

6     companies.  Or that if Your Honor were

7     inclined to grant a broader stay as to those

8     companies and cancel that hearing, that we

9     have an opportunity to brief that issue,

10    because I do think that is a unique prejudice

11    to ME2C that has not really been flushed out

12    in any briefing by the parties.

13                    THE COURT:  Okay.  All right.

14    Other points you want to make that we haven't

15    discussed?

16                    MR. NEMUNAITIS:  Yes.  As to the

17    timing, Your Honor made the point that we're

18    relatively early in the case.  And given where

19    the trial was scheduled, I think that cuts

20    both ways.  Because what that also means is

21    that there is time for the parties to proceed

22    with the case as it is, wait to see what

23    happens with the institution in those other

24    three patents, and then decide there whether
```

```
 1      or not to stay the case.  Then that way we
 2      avoid losing the trial date, avoid having
 3      other delays, and there should not be a
 4      tremendous burden on any party if we proceed
 5      over the next few months with that plan.
 6                  THE COURT:  Speak more to that,
 7      Mr. Nemunaitis.  So in terms of, you know,
 8      when might we know when we got institution
 9      decisions as to those other three patents?  Of
10      course, I know that depends on when the other
11      side files, or assuming they file when they
12      say they are going to file, which is shortly
13      after they're able to.  In terms of our
14      current schedule, and I don't have it up
15      before me, but wouldn't there be quite a lot
16      expected to happen between when we might get
17      institution decisions from the PTAB on those?
18                  MR. NEMUNAITIS:  Well, if they
19      file in the next month or two, our preliminary
20      response would be in three months, we get an
21      institution decision in three months, so
22      that's six to seven months.  And discovery
23      would proceed.  But if --
24                  THE COURT:  What's our claim
```

1    construction schedule as that relates to that

2    timing, do you know?  It looks like it might

3    have been -- is it still in July of 2021?

4                    MR. NEMUNAITIS:  I believe

5    that's right.

6                    THE COURT:  So we could be

7    bumping up against that, right?

8                    MR. NEMUNAITIS:  Right.  But

9    then it gets back to the issue of what is the

10   real overlapping claim construction?  If there

11   is not much overlap, that would not be a

12   hindrance.  It may be that there's one or two

13   issues sort of peculiar to the prior art

14   references at issue in the PTAB which may be

15   different from the infringement focused claim

16   construction disputes before the Court.  And

17   if that's the case, then delaying claim

18   construction would really just be injecting

19   delay without significant benefit to the

20   parties and the Court.

21                    THE COURT:  But it is true that

22   if we went forward with claim construction at

23   that time and I didn't stay the case in toto,

24   we obviously could be, it's possible, maybe

```
 1    even the defense would say likely, we could be
 2    construing terms relating to the two patents
 3    that have already been instituted on when the
 4    claims of those patents could end up being
 5    invalidated not long after.  That could be the
 6    case, right?
 7                    MR. NEMUNAITIS:  That's true,
 8    although -- I suppose that would only matter
 9    if there are terms that are specific to the
10    '114 and the '147 that don't bear on the other
11    patents.  So there could potentially be some
12    wasted effort in --
13                    THE COURT:  And there, it's a
14    fine line you're walking, right, because on
15    the one hand, you want me to understand that
16    there are, in fact, quite a lot of terms that
17    overlap all five patents, and such that I
18    think what you're saying is no, if you went
19    forward with the Markman and construed a bunch
20    of terms, even if all the claims of the '114
21    and the '147 got invalidated, it wouldn't be a
22    waste because those same terms are probably
23    going to be at play in the other three
24    patents, too, and you need to do that for
```

```
 1      those patents.

 2                  On the other hand, if I conceded

 3      the defendants' argument that what the PTAB

 4      has to say about claim construction as to the

 5      first two patents might relate to the other

 6      three, but there probably isn't going to be

 7      any claim construction at play in what the

 8      PTAB is doing.  Have I got that balance

 9      correct?

10                  MR. NEMUNAITIS:  I think that's

11      about right.

12                  THE COURT:  Okay.  Any other

13      points that you'd like to make about the other

14      factors?

15                  MR. NEMUNAITIS:  I suppose as to

16      this scheduling issue, if there were a way to

17      maintain the trial date and work out a claim

18      construction schedule that pushes the hearing

19      back by one or two months, maybe that would

20      resolve some of the issues there.

21                  As to the other factor as to

22      prejudice --

23                  THE COURT:  Mr. Nemunaitis, is

24      part of what you're saying, look, Judge, we
```

 1    think you should -- we don't think this is a
 2    strong enough request to stay the whole case
 3    in part because we don't have decisions on the
 4    other three.  So we think you should deny the
 5    motion until at least we get decisions on the
 6    other three, or at least two of the three.
 7              And so if you were going to do
 8    that, then your next question would be, well,
 9    would the Court be doing -- I mean, the
10    parties might be doing work, but would the
11    Court be doing work that might end up being
12    for naught if the '114 and '147 claims got
13    invalidated?  And what you're saying is,
14    Judge, if you're worried about that as part of
15    claim construction, maybe push claim
16    construction a bit until after the institution
17    decision comes down, and that could be a way
18    to balance both concerns.  Is that what you're
19    suggesting?
20              MR. NEMUNAITIS:  Yes, exactly,
21    Your Honor.  I think I've been struggling to
22    envision all these claim construction issues,
23    and it's just a bit hypothetical for me to
24    talk about it much more concretely.  So thank

         1      you for that summary; that articulated it

         2      better than I did.

         3                  THE COURT:  Go ahead.  I'm sorry

         4      to interrupt.

         5                  MR. NEMUNAITIS:  The last point

         6      to make is as to prejudice.  And here what we

         7      have is a stronger prejudice with respect to

         8      the Refined Coal companies, where Midwest is

         9      certainly competing with those companies to

        10      provide products to some of these same

        11      companies.  But even though Midwest is not

        12      competing with Talen, it's a similar posture

        13      in that what Midwest is trying to do is stop

        14      the infringement of a potential customer, to

        15      stop them from using generic chemicals in a

        16      way that infringes.  So it would have the same

        17      effect as if we were going up against a direct

        18      competitor here.

        19                  THE COURT:  I think the

        20      prejudice factor is a little tricky here as to

        21      the moving defendants, because I think it's

        22      not disputed that you don't directly compete

        23      with them.  Your argument, though, is that

        24      because there's an interrelationship between

1    these moving defendants and the people you do

2    directly compete with, that if you couldn't

3    press forward with your case in toto, there

4    would be some undue prejudice here in light of

5    that.

6             And I think in my prior decision

7    I said I wasn't certain that the showing about

8    how robust that prejudice would be in terms of

9    the relevant market and the players, et

10   cetera, was clear.  Is there anything more

11   you'd like to say about why that factor should

12   come out a little differently in terms of the

13   record for this motion?

14             MR. NEMUNAITIS:  Well, I believe

15   the concern there was that there's potentially

16   other players in the market.  But what we've

17   seen play out, for example, when we settled

18   with Vistra, is that the parties signed a

19   license and supply agreement which indicates

20   that, you know, Midwest is not a

21   non-practicing entity just looking for lump

22   sum license deals, they are looking to grow

23   their business, and the infringement by the

24   moving defendants is directly stopping them

1    from doing that.  And a stay would make it

2    that much more difficult for Midwest to

3    continue to grow the business.

4              THE COURT:  Okay.  Thank you,

5    Mr. Nemunaitis.  I appreciate those arguments.

6              I'll turn it back to Mr. Fareed

7    to give brief opportunity for rebuttal.

8              MR. FAREED:  Thank you, Your

9    Honor.  I'll take it in reverse order, if I

10   could.

11             With respect to Your Honor's

12   questions with respect to the timing of the

13   stay, Your Honor, and the discussion you were

14   just having about whether we push Markman to

15   be sometime after the institution decisions on

16   the next three patents come out, Your Honor, I

17   will note, so we were talking about those

18   windows, when those windows open, and for the

19   last patent, that window opens starting March

20   of 2021.  Assuming we file the first day, we

21   will get an institution decision in September

22   of 2021.  Let's say we push Markman until

23   after that, sometime in September.  At that

24   stage, the next month, October of 2021 is when

1    we're expected to receive the final written

2    decision from the PTAB on the first IPR.

3              So we're somewhat squeezing it

4    against two decisions, and we just don't think

5    it makes much sense for the Court to be, you

6    know, taking up Markman when the following

7    month, the final decision is going to come

8    out, and two months later another final

9    decision is going to come out.

10             So against that backdrop, it

11   makes the most prudent sense to stay until the

12   conclusion of the two existing IPRs.  And as

13   you noticed in our briefing, at that stage,

14   the parties can jointly approach the Court and

15   advise the Court on the status of the other

16   three IPRs, and then we can determine how much

17   more of a stay is needed in light of what's

18   happened in those IPRs.

19             THE COURT:  So Mr. Fareed,

20   you're saying, look, Judge, order that there

21   be a total stay of the cases with moving

22   defendants; order that it be until the

23   conclusion of the later of the '114 and the

24   '147 IPRs.  But, you know, I think what you're

```
 1    implicitly saying is, but, of course that
 2    gives you the flexibility, if it turns out
 3    that in the interval we file the petitions as
 4    to the other three patents and the PTAB
 5    actually denies them, of course the plaintiff
 6    could come forward and tell the Court that,
 7    and if that changes the calculus about whether
 8    the case should go forward either in toto or
 9    as to those patents where there wasn't an
10    institution, the Court would always have the
11    flexibility to be able to address that issue
12    then; is that right?
13              MR. FAREED:  Yes, yes.  Either
14    party can notify the Court as to whatever is
15    happening at the PTAB.  If things have
16    drastically changed as they are currently, the
17    inclinations are coming out of the patent
18    office, either party can approach the Court
19    and advise as to what has happened.  We, of
20    course, moving defendants, don't think the
21    PTAB is going to have a drastically different
22    decision on patents that are largely the same
23    as those that are already before it.  But yes,
24    if those decisions come out, you know,
```

1    adversely to the moving defendants, ME2C can

2    certainly come forward to the Court and let

3    the Court know.

4              THE COURT:  All right.  Let me

5    let you continue.

6              MR. FAREED:  Sure.  With respect

7    to, Your Honor, we've focused a lot of our

8    discussion on the amount of work the Court is

9    going to be needing to do which might be

10   wasted if perhaps the PTAB is invalidating the

11   claims or coming out on findings with claim

12   construction.  And I will note, Your Honor, we

13   fully agree with the Court's note that it

14   would be a highly unusual scenario where the

15   PTAB reaches a final written decision and has

16   made no, you know, finding of -- either have

17   not interpreted claims or has made no finding

18   on claim construction.  And certainly even

19   more unusual to get through all of that

20   without the patent owner itself construing

21   claims or arguing that certain terms mean

22   certain things.

23             So with all that said, it just

24   seems very unlikely that the parties will

1    proceed through the PTAB proceedings and come

2    out on the other side with no statements on

3    claim construction, no disclaimers whatsoever.

4    We've already seen what has happened in the

5    existing IPRs and they've already disclaimed a

6    couple of things, so we expect that to

7    continue.

8                    But moving aside from just the

9    claim construction perspective, Your Honor,

10   this is a patent --

11                   THE COURT:  Mr. Fareed, before

12   you move on, I think Mr. Nemunaitis was

13   suggesting that at least as part of the IPR

14   institution process, the parties and/or

15   plaintiffs hadn't asked for constructions of

16   terms, and that that was indicative of the

17   fact that as those now instituted proceedings

18   move to their conclusion, the PTAB won't be

19   asked to construe terms or the parties won't

20   otherwise need to or the plaintiff won't

21   otherwise need to take a position on the

22   meaning of a term or disclaim a meaning.

23                   Do you disagree that what you're

24   saying about what has already happened or been

1    argued has a bearing on what might happen in

2    the future on claim construction?

3              MR. FAREED:  Partly, yes, Your

4    Honor.  It is correct to say that the

5    petitioners did not seek claim construction.

6    It would incorrect to say that the patent

7    owner has not sought claim construction in the

8    patent owner preliminary response.  ME2C has

9    sought construction of a couple of terms, and

10   if that pattern continues with the next set of

11   IPRs, we're going to have a situation where

12   ME2C may take certain positions on claim

13   constructions after Markman hearing happens

14   here in this court.  Or perhaps PTAB might

15   find, you know, that those terms mean

16   something different than what ME2C is

17   suggesting.

18             So it's sort of a fluid

19   situation, and as I mentioned earlier, it

20   would be most prudent to wait until all that

21   has crystallized before we pick up on the

22   district court proceedings.

23             THE COURT:  You were going to

24   make another point.

```
 1              MR. FAREED:  Yes, Your Honor.
 2     So besides just claim construction, as I
 3     mentioned here, this is a patent case, we're
 4     in discovery, and almost -- I mean, Your Honor
 5     knows it probably better than anybody, fact
 6     discovery disputes are going to bubble up.  It
 7     would be an unusual situation where parties
 8     have no fact discovery disputes, and if those
 9     bubble up to the Court, that's, again,
10     additional tasks that the Court is going to be
11     asked to rule on.  And if we have a stay,
12     that's one less thing the Court has to do.
13              So we don't have any
14     crystallized dispute at this stage, but
15     between now and next year at this time, it
16     would be unusual, certainly -- I have not been
17     in a patent case in my career where a year has
18     passed by and parties have no discovery
19     disputes.  We're hopeful, but the chances are
20     unlikely that will be the situation.  So
21     that's another point that I'd like to add,
22     Your Honor, to what we said before.
23              And just a last point with
24     respect to the stay against the Refined Coal
```

1    defendants; as Your Honor noted, that is not

2    an issue that is germane to the moving

3    defendants here.  But I will note for the

4    Court, Your Honor, that to the extent ME2C

5    says that there's some kind of a prejudice

6    because they wanted to add John Doe defendants

7    and, you know, in light of the tax window or

8    tax credit window closing next year, it begs a

9    question why that hasn't happened yet.  Fact

10   discovery started, you know, earlier this

11   fall, and we're already past the deadline

12   where parties can add or ME2C can add parties

13   into the case.  So we're already past that

14   window of opportunity.

15            So to the extent ME2C will be

16   adding more parties, it implicates several

17   other issues, you know, the motion for leave

18   inquiry becomes even more strict for the

19   patent owners -- sorry, for the plaintiffs

20   here.

21            So with all that said, Your

22   Honor, it is unclear whether that really is a

23   legitimate concern here with respect to adding

24   John Doe defendants.  We thought they already

1    did that when they were pursuing the motion

2    for leave to file the second amended

3    complaint.

4              THE COURT:  Okay.  Thank you,

5    Mr. Fareed.  By the way, I think at one point

6    it was noted, do we have counsel on the line

7    for the Refined Coal defendants?

8              MR. EGAN:  Yes, Your Honor.

9    This is Brian Egan from Morris Nichols.

10   Apologies, at the beginning of the call, I

11   didn't want to interrupt the flow.  But we

12   also have Joseph Evall from Gibson Dunn as

13   well as Richard Mark from Gibson Dunn.

14             THE COURT:  I just wanted to

15   make sure we had counsel on the record.

16             What I will do here is that I

17   promised the parties, because I know I need to

18   get decisions to know how things will move

19   forward.  I'll try to make a decision on this

20   motion promptly, as I said I would.  It's a

21   motion brought by the moving defendants, which

22   are not all defendants in the case.  And I

23   probably would, if I was making this decision,

24   I would be making it initially at least only

1    as to the moving parties, the parties who have

2    moved, and the parties who have addressed in

3    their briefs why the factors should go their

4    way in light of their particular situation.

5            If I were to grant the motion, I

6    would likely relatively promptly give

7    plaintiffs and the non-moving defendants the

8    opportunity to tell me why or why not my

9    decision should also apply to the non-moving

10   defendants, and to allow a little process with

11   regard to that.  And so that I think is at

12   least my plan as to what I'm going to do with

13   this motion going forward.

14           Before I end the call, though,

15   having said all that, I'll just ask if there's

16   anything more counsel for plaintiffs' side or

17   for the moving defendants or for the

18   non-moving defendants wish to ask or add with

19   regard to procedural issues.  So let me turn

20   it first to Mr. Nemunaitis.  Anything further

21   for the plaintiffs' side, Mr. Nemunaitis?

22           MR. NEMUNAITIS:  Just with one

23   point of clarification on the last comment

24   there about adding parties.  We did add

1    parties within the window; that was based on

2    discovery we received from the defendants that

3    we could get discovery from.  Since the case

4    is stayed as to the Refined Coal defendants,

5    we have not been able to obtain further

6    discovery to identify the remaining John Doe

7    defendants, and so that's why we're in the

8    situation we're in.

9                    THE COURT:  All right, thank

10   you.

11                   Mr. Fareed, anything further to

12   add or ask on behalf of the moving defendants?

13                   MR. FAREED:  Nothing further,

14   Your Honor.  Thank you so much.

15                   THE COURT:  Okay.  And counsel

16   for the non-moving defendants, is there

17   anything you wish to ask or add?

18                   MR. MARK:  Your Honor, Richard

19   Mark, Gibson Dunn, for certain of the Refined

20   Coal defendants.  I think several of the

21   points in terms of the common issues in the

22   case and the logic of application on the stay

23   for the entire case have been explored, but I

24   understand Your Honor's comment regarding the

1    desirability of further briefing to illuminate

2    any other issues that may exist if the Court

3    were to extend the stay to the non-movants.

4    So we will await that order to state any

5    positions that might be relevant to the issue.

6              I believe that the current

7    schedule, however, calls for the submission of

8    supplemental briefing relating to the motion

9    on the second amended complaint to be due on

10   Friday.  And if there is going to be the

11   possibility of supplemental briefing on the

12   stay, I would ask the Court to consider

13   whether the schedule on the second amended

14   complaint, supplemental briefing and argument

15   should be adjusted to allow the stay question,

16   if there is one, as was hypothesized in your

17   statement, if that does arise.

18              I would also note regarding the

19   current procedural situation, of course, since

20   the dismissal of the complaint, the action has

21   been stayed as to the Refined Coal defendants,

22   and there isn't a valid complaint pending

23   against us yet.  That stay by its terms is to

24   continue and remains in place until claims are

1    stated.  So there is no proceeding against us.

2    The case is stayed as against us right now.

3              If a stay were to issue on the

4    moving defendants, then the question comes up,

5    should it be extended and the Court wants

6    briefing on that regarding the Refined Coal

7    defendants, perhaps the entire schedule should

8    be adjusted as part of that.

9              THE COURT:  Okay.  I understand

10   what you're saying, Mr. Mark.  Just in terms

11   of the current schedule, remind me, we have a

12   motion to dismiss hearing on January 6.  I

13   think there's two sets of additional briefing

14   that have to come in on that motion.  Your

15   briefs are due currently when?

16             MR. MARK:  December 11 is when

17   our brief is due.  I can look up the

18   additional schedule here in a moment.

19             THE COURT:  Mr. Nemunaitis, do

20   you know when yours is due?

21             MR. NEMUNAITIS:  I believe it's

22   one week or ten days after theirs.

23             MR. MARK:  And there is also, I

24   believe, Talen has the possibility of papers

```
 1    due on the permission to file a second amended

 2    complaint; I believe it's Talen.  Obviously,

 3    if the stay motion went into effect, that

 4    would affect that motion, as well.  But that's

 5    also on tap for January 6.

 6                THE COURT:  Thank you.  Counsel,

 7    I'll take it under advisement.  Yes, did

 8    someone speak?

 9                MS. DiSALVO:  I'm sorry, Judge.

10    This is Nicole DiSalvo from Skadden Arps on

11    behalf of the CERT defendants.  On the line is

12    Doug Nemec with me also from Skadden.  We are

13    also putting in briefing on the 11th, and I

14    just wanted to note our presence.  We didn't

15    announce ourselves before.  We also concur

16    with Mr. Mark's remarks.

17                THE COURT:  Thank you.  Any

18    other counsel that hasn't identified

19    themselves?

20                (No response.)

21                THE COURT:  I'll try to take all

22    this into account and get you a decision

23    shortly, and also provide some guidance,

24    depending on the nature of the decision, as to
```

1    how the decision does or does not impact the

2    non-moving defendants.  Obviously, if I don't

3    grant a stay in favor of the IPRs at this

4    stage, there's probably not much more for me

5    to do.  If I do, I will put up some guidance

6    with regard to the non-moving defendants and

7    the plaintiff as to how the stay decision, how

8    we should address whether the stay decision

9    should impact non-moving defendants, as well.

10                   Thanks everyone.  I appreciate

11   your time today and the argument.  I wish

12   everybody health and safety and a happy

13   holiday season, and I look forward to speaking

14   to you soon.  Take care.

15                   (Hearing adjourned at 12:15

16   p.m.)

17

18

19

20

21

22

23

24

```
 1    State of Delaware)
                      )
 2    New Castle County)


 3

 4              CERTIFICATE OF REPORTER

 5

 6         I, Jennifer M. Guy, Registered

 7    Professional Reporter and Notary Public in the

 8    State of Delaware, do hereby certify that the

 9    foregoing record, Pages 1 to 67 inclusive, is

10    a true and accurate record of the

11    above-captioned proceedings held on the 9th

12    day of November, 2020, in Wilmington.

13

14

15              /S/  Jennifer M Guy, RPR
                Jennifer M. Guy, RPR
16

17

18

19

20

21

22

23

24
```

**'**

**'04** [8] - 12:13,
13:10, 13:12,
13:24, 14:2, 14:4,
14:10
**'114** [32] - 8:3, 8:9,
8:21, 9:1, 9:8,
13:21, 16:3,
16:23, 24:15,
27:23, 28:8,
28:23, 29:11,
29:22, 30:14,
31:8, 32:11,
32:23, 33:12,
33:23, 34:10,
35:10, 35:17,
35:20, 35:22,
37:9, 38:7, 41:7,
47:10, 47:20,
49:12, 53:23
**'147** [29] - 8:4, 8:6,
9:3, 9:9, 13:21,
16:4, 16:24, 18:8,
22:21, 22:22,
24:17, 27:24,
29:22, 31:9,
32:12, 32:23,
33:14, 34:11,
34:12, 35:10,
35:18, 35:21,
38:7, 41:7, 42:1,
47:10, 47:21,
49:12, 53:24

**/**

**/S** [1] - 67:15

**1**

**1** [1] - 67:9
**11** [1] - 64:16
**11:00** [1] - 1:10
**11th** [1] - 65:13
**12:15** [1] - 66:15
**19-1334-RGA-CJB**
[2] - 1:4, 4:7

**2**

**2004** [1] - 10:11
**2013** [1] - 39:19
**2020** [2] - 1:10,
67:12
**2021** [4] - 46:3,
52:20, 52:22,
52:24

**6**

**6** [4] - 23:6, 39:19,
64:12, 65:5
**67** [1] - 67:9

**9**

**9** [1] - 1:10
**9th** [1] - 67:11

**A**

**a.m** [1] - 1:10
**ability** [1] - 13:14
**able** [4] - 7:1,
45:13, 54:11,
62:5
**above-captioned**
[1] - 67:11
**absolutely** [2] -
40:2, 43:4
**according** [1] -
10:22
**account** [1] - 65:22
**accurate** [1] - 67:10
**accused** [3] -
11:22, 22:1, 22:2
**acknowledge** [1] -
35:13
**action** [1] - 63:20
**Action** [2] - 1:4, 4:6
**activity** [1] - 11:22
**actual** [3] - 11:8,
11:20, 14:7
**add** [14] - 6:8, 6:9,
6:19, 27:6, 39:16,
42:21, 58:21,
59:6, 59:12,
61:18, 61:24,
62:12, 62:17
**adding** [3] - 59:16,
59:23, 61:24
**addition** [1] - 6:10
**additional** [3] -
58:10, 64:13,
64:18
**address** [10] -
14:13, 14:14,
16:2, 21:2, 21:4,
39:15, 42:18,
42:23, 54:11,
66:8
**addressed** [2] -
24:13, 61:2
**addressing** [1] -
27:22
**adequately** [1] -
24:14
**adjourned** [1] -

66:15
**adjusted** [2] -
63:15, 64:8
**advance** [1] - 24:19
**advancing** [1] -
13:3
**adversely** [1] - 55:1
**advise** [2] - 53:15,
54:19
**advisement** [1] -
65:7
**AEP** [3] - 4:10,
5:20, 5:24
**affect** [1] - 65:4
**afterwards** [1] -
19:13
**ago** [1] - 25:18
**agree** [3] - 36:18,
36:21, 55:13
**agreed** [1] - 29:8
**agreement** [2] -
6:1, 51:19
**ahead** [1] - 50:3
**al** [3] - 1:6, 4:5, 4:6
**Ali** [1] - 5:17
**ALI** [1] - 3:6
**allegations** [1] -
22:19
**alleged** [4] - 22:17,
25:19, 43:13
**allow** [3] - 6:8,
61:10, 63:15
**allowed** [1] - 40:6
**almost** [2] - 28:3,
58:4
**alone** [1] - 24:2
**altered** [1] - 18:19
**amended** [5] -
22:12, 60:2, 63:9,
63:13, 65:1
**amount** [1] - 55:8
**analysis** [1] - 36:22
**Andrews** [1] -
21:10
**announce** [1] -
65:15
**answer** [4] - 7:12,
14:24, 23:18,
38:12
**answered** [1] -
23:17
**answering** [1] -
6:10
**anticipate** [7] - 6:8,
7:10, 7:13, 9:7,
9:13, 12:2
**anticipating** [1] -
7:23
**anyway** [1] - 24:21
**Apologies** [1] -

60:10
**APPEARANCES**
[3] - 1:15, 2:1, 3:1
**appearing** [1] -
5:13
**apple** [1] - 37:20
**application** [5] -
10:11, 10:24,
11:1, 33:19,
62:22
**applications** [1] -
34:5
**applies** [1] - 43:3
**apply** [1] - 61:9
**appreciate** [3] -
6:4, 52:5, 66:10
**approach** [2] -
53:14, 54:18
**appropriate** [2] -
10:18, 37:24
**argue** [1] - 24:11
**argued** [3] - 15:5,
12:10, 57:1
**argues** [1] - 20:15
**arguing** [4] - 5:6,
20:8, 29:3, 55:21
**argument** [15] - 4:8,
26:5, 27:21,
31:22, 32:1, 33:1,
34:16, 36:4,
39:21, 40:3,
42:20, 48:3,
50:23, 63:14,
66:11
**arguments** [11] -
9:3, 13:4, 18:5,
26:9, 31:11, 33:8,
34:21, 35:4, 36:2,
40:17, 52:5
**arise** [1] - 63:17
**ARPS** [1] - 2:2
**Arps** [1] - 65:10
**ARSHT** [1] - 2:6
**art** [29] - 8:5, 8:7,
8:8, 8:12, 8:17,
8:22, 9:1, 11:23,
12:16, 13:8,
13:10, 13:20,
13:24, 14:6,
14:11, 29:2, 29:9,
30:16, 30:19,
33:16, 34:18,
35:9, 35:15,
35:17, 35:20,
35:23, 37:8,
37:19, 46:13
**articulated** [1] -
50:1
**ascertained** [1] -
15:17

**aside** [3] - 33:9,
34:3, 56:8
**aspect** [1] - 34:2
**aspects** [1] - 33:17
**assert** [2] - 34:19,
35:14
**asserted** [23] -
6:22, 8:5, 8:12,
8:17, 9:9, 16:20,
20:13, 20:19,
29:2, 31:13, 32:3,
32:18, 37:9,
39:18, 41:8, 41:9,
41:10, 41:19,
41:21, 42:8,
42:15
**assess** [1] - 19:9
**assuming** [5] -
26:21, 37:1,
37:17, 45:11,
52:20
**author** [1] - 36:14
**available** [1] -
40:12
**avoid** [2] - 45:2
**await** [1] - 63:4

**B**

**backdrop** [1] -
53:10
**baghouse** [2] -
29:4, 29:5
**Baker** [2] - 5:8,
5:18
**BAKER** [2] - 2:16,
3:5
**balance** [2] - 48:8,
49:18
**based** [6] - 18:4,
29:13, 31:7,
35:23, 37:9, 62:1
**basis** [1] - 22:24
**bear** [1] - 47:10
**bearing** [6] - 9:2,
10:1, 10:5, 17:21,
20:17, 57:1
**become** [1] - 12:19
**becomes** [2] -
11:23, 59:18
**BEFORE** [1] - 1:13
**begin** [2] - 4:15, 5:1
**beginning** [2] -
31:17, 60:10
**begs** [1] - 59:8
**begun** [1] - 24:5
**behalf** [8] - 4:20,
5:13, 6:13, 27:7,
27:11, 43:6,
62:12, 65:11

behind [1] - 36:5
benefit [4] - 15:15, 20:14, 40:13, 46:19
best [3] - 14:3, 16:15, 26:3
better [3] - 39:7, 50:2, 58:5
between [7] - 8:12, 14:15, 25:16, 39:4, 45:16, 50:24, 58:15
BIDDLE [1] - 2:13
bit [7] - 10:3, 14:5, 16:16, 33:15, 36:15, 49:16, 49:23
bite [1] - 37:20
board [2] - 9:16, 29:8
body [1] - 37:2
bolster [1] - 12:19
Botts [2] - 5:8, 5:18
BOTTS [2] - 2:16, 3:5
Brandon [1] - 2:18
Brian [1] - 60:9
BRIAN [1] - 2:6
brief [7] - 14:18, 14:23, 16:16, 37:16, 44:9, 52:7, 64:17
briefing [21] - 8:2, 8:20, 9:20, 9:21, 18:15, 18:24, 21:3, 24:14, 28:19, 30:8, 38:20, 42:20, 44:12, 53:13, 63:1, 63:8, 63:11, 63:14, 64:6, 64:13, 65:13
briefings [1] - 22:15
briefs [2] - 61:3, 64:15
broader [1] - 44:7
bromide [1] - 28:12
bromine [1] - 20:11
brought [1] - 60:21
bubble [2] - 58:6, 58:9
bumping [1] - 46:7
bunch [1] - 47:19
burden [3] - 27:1, 27:2, 45:4
burdensome [1] - 24:4
BURKE [1] - 1:13
business [4] - 25:4,

25:6, 51:23, 52:3
BY [9] - 1:17, 1:20, 2:2, 2:6, 2:9, 2:13, 2:16, 3:3, 3:5

## C

calculus [1] - 54:7
CALDWELL [1] - 1:19
cancel [1] - 44:8
cannot [5] - 10:22, 11:4, 11:6, 22:23, 43:18
captioned [1] - 67:11
care [1] - 66:14
career [1] - 58:17
Carter [1] - 5:18
CARTER [1] - 3:6
case [58] - 11:24, 12:19, 15:6, 16:4, 16:9, 16:15, 16:17, 17:19, 19:8, 19:11, 19:16, 19:24, 21:8, 23:5, 23:16, 24:5, 25:1, 25:2, 25:11, 26:7, 26:8, 26:16, 27:3, 30:4, 30:18, 31:2, 31:8, 31:14, 31:16, 31:18, 31:24, 35:14, 37:2, 38:10, 39:2, 40:21, 41:4, 41:5, 41:13, 42:4, 44:18, 44:22, 45:1, 46:17, 46:23, 47:6, 49:2, 51:3, 54:8, 58:3, 58:17, 59:13, 60:22, 62:3, 62:22, 62:23, 64:2
cases [1] - 53:21
CASSADY [1] - 1:19
Castle [1] - 67:2
CERT [2] - 2:4, 65:11
certain [16] - 4:9, 8:22, 13:9, 13:11, 19:22, 27:22, 30:3, 31:19, 35:9, 35:23, 40:20, 51:7, 55:21, 55:22, 57:12, 62:19

certainly [16] - 6:8, 7:16, 10:8, 15:22, 19:4, 21:21, 23:9, 23:11, 25:23, 26:11, 27:6, 30:6, 50:9, 55:2, 55:18, 58:16
CERTIFICATE [1] - 67:4
certify [1] - 67:8
cetera [4] - 16:10, 32:20, 39:6, 51:10
chain [2] - 10:13, 34:7
challenge [2] - 12:23, 40:5
challenging [1] - 13:2
chance [3] - 6:19, 33:2, 35:24
chances [1] - 58:19
change [1] - 15:1
changed [1] - 54:16
changes [1] - 54:7
characterizing [1] - 42:12
chemicals [2] - 25:6, 50:15
CHRISTOPHER [1] - 1:13
cited [2] - 36:8, 36:10
Civil [2] - 1:4, 4:6
claim [40] - 9:1, 16:22, 19:22, 20:9, 27:19, 27:22, 28:13, 28:24, 29:16, 29:24, 30:3, 30:7, 31:4, 32:19, 33:9, 38:18, 38:19, 39:6, 42:5, 45:24, 46:10, 46:15, 46:17, 46:22, 48:4, 48:7, 48:17, 49:15, 49:22, 55:11, 55:18, 56:3, 56:9, 57:2, 57:5, 57:7, 57:12, 58:2
claims [42] - 6:22, 6:23, 8:8, 8:13, 8:18, 13:7, 16:20, 17:17, 17:21, 19:10, 19:12, 19:23, 21:18, 21:24, 30:22, 30:24, 31:13, 33:13, 33:14,

34:14, 35:16, 35:22, 35:24, 37:18, 41:8, 41:10, 41:15, 41:17, 41:19, 42:2, 42:8, 42:13, 42:15, 47:4, 47:20, 49:12, 55:11, 55:17, 55:21, 63:24
clarification [2] - 36:7, 61:23
classic [1] - 19:16
clear [5] - 29:13, 29:15, 30:15, 43:5, 51:10
clearly [1] - 12:19
client [1] - 38:14
clients' [1] - 27:7
close [2] - 19:16, 21:8
closer [1] - 25:12
closing [1] - 59:8
Coal [18] - 2:11, 25:16, 26:21, 26:24, 27:5, 41:12, 43:3, 43:8, 43:12, 43:15, 44:5, 50:8, 58:24, 60:7, 62:4, 62:20, 63:21, 64:6
colleagues [1] - 5:17
collectively [1] - 6:14
coming [4] - 17:14, 37:12, 54:17, 55:11
comment [2] - 61:23, 62:24
commodity [1] - 25:6
common [2] - 9:8, 62:21
commonly [1] - 13:20
companies [7] - 43:19, 43:21, 44:6, 44:8, 50:8, 50:9, 50:11
company [1] - 41:12
compete [3] - 25:7, 50:22, 51:2
competing [2] - 50:9, 50:12
competition [2] - 25:16, 26:2
competitive [1] - 25:22

competitor [5] - 25:1, 25:2, 25:11, 25:24, 50:18
competitors [2] - 25:3, 25:10
complaint [8] - 22:12, 23:18, 60:3, 63:9, 63:14, 63:20, 63:22, 65:2
complaints [1] - 22:11
complete [1] - 18:16
complicated [3] - 36:16, 38:21, 39:12
compound [1] - 20:11
concede [1] - 39:17
conceded [1] - 48:2
conceding [2] - 39:24, 40:3
concern [3] - 11:14, 51:15, 59:23
concerned [2] - 7:14, 21:9
concerns [1] - 49:18
conclude [2] - 26:1, 35:3
concluded [2] - 11:16, 29:12
conclusion [3] - 53:12, 53:23, 56:18
concretely [1] - 49:24
concur [1] - 65:15
conducting [1] - 21:23
confer [1] - 43:4
consequence [1] - 22:23
consider [4] - 25:9, 25:24, 36:23, 63:12
consistent [1] - 10:14
construction [32] - 16:23, 17:21, 27:19, 28:13, 28:24, 29:15, 29:17, 30:8, 31:4, 33:10, 38:18, 38:19, 46:1, 46:10, 46:16, 46:18, 46:22, 48:4, 48:7, 48:18,

3

49:15, 49:16,
49:22, 55:12,
55:18, 56:3, 56:9,
57:2, 57:5, 57:7,
57:9, 58:2
**constructions** [2] -
56:15, 57:13
**construe** [2] -
19:12, 56:19
**construed** [3] -
17:22, 28:10,
47:19
**construing** [2] -
47:2, 55:20
**contend** [1] - 11:4
**contended** [1] -
24:10
**contentions** [2] -
23:23, 24:20
**continue** [4] - 52:3,
55:5, 56:7, 63:24
**CONTINUED** [2] -
2:1, 3:1
**continues** [1] -
57:10
**Corp** [4] - 2:18, 4:5,
4:6, 4:20
**CORP** [2] - 1:3, 1:6
**correct** [6] - 14:3,
28:15, 30:11,
41:15, 48:9, 57:4
**corrected** [1] - 14:9
**correctly** [1] - 14:6
**counsel** [18] - 4:13,
4:14, 4:16, 4:19,
4:23, 5:1, 5:4,
5:6, 6:5, 6:8,
22:6, 27:9, 60:6,
60:15, 61:16,
62:15, 65:6,
65:18
**Counsel** [5] - 1:21,
2:4, 2:10, 2:18,
3:7
**counsels** [3] -
19:15, 22:5, 27:2
**counts** [1] - 29:6
**County** [1] - 67:2
**couple** [6] - 9:18,
17:12, 24:1,
39:13, 56:6, 57:9
**course** [6] - 27:4,
45:10, 54:1, 54:5,
54:20, 63:19
**court** [5] - 4:7,
17:2, 20:7, 57:14,
57:22
**COURT** [54] - 1:1,
4:1, 4:22, 5:9,
5:19, 6:3, 6:17,

7:24, 9:18, 12:1,
13:9, 13:19,
14:12, 15:24,
19:21, 21:1, 26:4,
27:8, 27:15,
29:20, 30:9, 31:5,
35:8, 38:4, 38:24,
39:13, 40:18,
41:18, 41:24,
42:17, 44:13,
45:6, 45:24, 46:6,
46:21, 47:13,
48:12, 48:23,
50:3, 50:19, 52:4,
53:19, 55:4,
56:11, 57:23,
60:4, 60:14, 62:9,
62:15, 64:9,
64:19, 65:6,
65:17, 65:21
**Court** [30] - 15:2,
15:23, 19:1,
19:12, 23:10,
26:16, 27:2, 28:3,
39:8, 46:16,
46:20, 49:9,
49:11, 53:5,
53:14, 53:15,
54:6, 54:10,
54:14, 54:18,
55:2, 55:3, 55:8,
58:9, 58:10,
58:12, 59:4, 63:2,
63:12, 64:5
**Court's** [3] - 19:5,
21:20, 55:13
**courts** [1] - 27:20
**Cragg** [1] - 5:12
**CRAGG** [2] - 3:3,
5:11
**credible** [1] - 22:24
**credibly** [1] - 11:8
**credit** [2] - 43:15,
59:8
**credits** [2] - 43:20,
44:1
**CRUTCHER** [1] -
2:8
**crystallized** [3] -
15:3, 57:21,
58:14
**current** [4] - 45:14,
63:6, 63:19,
64:11
**CURRY** [1] - 1:19
**customer** [1] -
50:14
**cuts** [2] - 22:14,
44:19

**D**

**date** [29] - 7:15,
10:4, 10:8, 11:6,
11:7, 11:15,
11:21, 12:12,
12:17, 12:18,
13:2, 13:7, 13:12,
14:7, 14:8, 14:17,
15:7, 15:9, 15:11,
15:16, 33:11,
33:16, 34:3,
34:13, 37:16,
38:17, 40:6, 45:2,
48:17
**dates** [2] - 14:2,
39:18
**David** [1] - 5:7
**DAVID** [1] - 2:17
**days** [1] - 64:22
**deadline** [1] - 59:11
**dealing** [1] - 30:18
**deals** [1] - 51:22
**December** [2] -
1:10, 64:16
**decide** [5] - 14:21,
34:9, 36:19,
37:15, 44:24
**decision** [29] -
8:15, 8:16, 15:4,
15:15, 15:19,
15:21, 17:19,
30:1, 33:23, 37:4,
37:11, 39:9,
45:21, 49:17,
51:6, 52:21, 53:2,
53:7, 53:9, 54:22,
55:15, 60:19,
60:23, 61:9,
65:22, 65:24,
66:1, 66:7, 66:8
**decisions** [11] -
12:4, 35:6, 36:22,
45:9, 45:17, 49:3,
49:5, 52:15, 53:4,
54:24, 60:18
**Defendant** [1] - 1:7
**defendant** [4] -
32:3, 32:9, 35:9,
35:13
**defendants** [76] -
4:10, 4:11, 4:23,
5:4, 5:10, 5:16,
5:21, 6:13, 7:1,
11:18, 15:5,
15:11, 22:18,
22:20, 23:16,
23:22, 25:2, 25:3,
25:10, 25:17,
25:24, 26:6, 26:9,

26:17, 26:21,
26:24, 27:5,
31:13, 31:19,
39:20, 40:20,
40:21, 40:22,
41:5, 41:9, 41:11,
41:12, 41:20,
41:22, 42:6, 42:9,
42:16, 43:3, 43:8,
43:12, 43:14,
50:21, 51:1,
51:24, 53:22,
54:20, 55:1, 59:1,
59:3, 59:6, 59:24,
60:7, 60:21,
60:22, 61:7,
61:10, 61:17,
61:18, 62:2, 62:4,
62:7, 62:12,
62:16, 62:20,
63:21, 64:4, 64:7,
65:11, 66:2, 66:6,
66:9
**Defendants** [4] -
2:4, 2:11, 2:18,
3:7
**defendants'** [3] -
6:6, 11:12, 48:3
**defense** [1] - 47:1
**defer** [1] - 27:7
**deficiencies** [2] -
23:19, 26:10
**definitely** [1] - 38:6
**DELAWARE** [1] -
1:1
**Delaware** [5] - 4:16,
5:1, 5:4, 67:1,
67:8
**delay** [1] - 46:19
**delayed** [2] - 24:10,
24:12
**delaying** [1] - 46:17
**delays** [1] - 45:3
**denies** [1] - 54:5
**deny** [1] - 49:4
**dependent** [3] -
6:23, 41:17,
42:13
**deposition** [1] -
23:23
**depositions** [1] -
38:23
**describe** [1] - 34:5
**described** [1] -
29:11
**desirability** [1] -
63:1
**detail** [1] - 34:6
**determine** [2] -
34:20, 53:16

**DEVLIN** [1] - 1:17
**DHANANI** [1] - 3:6
**Dhanani** [1] - 5:17
**different** [9] - 8:18,
29:7, 29:10,
36:14, 40:8,
40:15, 46:15,
54:21, 57:16
**differently** [1] -
51:12
**difficult** [2] - 16:6,
52:2
**DIGIOVANNI** [1] -
2:13
**DiGiovanni** [2] -
5:2, 5:3
**direct** [1] - 50:17
**directly** [3] - 50:22,
51:2, 51:24
**disagree** [1] - 56:23
**disagreement** [1] -
14:15
**DiSalvo** [3] - 2:2,
65:9, 65:10
**disclaim** [1] - 56:22
**disclaimed** [2] -
18:8, 56:5
**disclaimers** [2] -
18:5, 56:3
**discovery** [13] -
21:23, 23:21,
24:2, 43:23,
45:22, 58:4, 58:6,
58:8, 58:18,
59:10, 62:2, 62:3,
62:6
**discussed** [2] -
21:4, 44:15
**discussion** [2] -
52:13, 55:8
**dismiss** [4] - 22:10,
44:4, 44:5, 64:12
**dismissal** [1] -
63:20
**dismissed** [1] -
5:24
**dispositive** [1] -
24:3
**dispute** [7] - 14:18,
15:23, 28:13,
30:13, 33:17,
33:20, 58:14
**disputed** [1] -
50:22
**disputes** [6] - 31:4,
32:20, 46:16,
58:6, 58:8, 58:19
**DISTRICT** [2] - 1:1,
1:1
**district** [3] - 20:7,

27:20, 57:22
**docile** [1] - 26:3
**Doe** [4] - 43:13, 59:6, 59:24, 62:6
**done** [2] - 29:17, 40:10
**doubt** [2] - 27:22, 40:13
**Doug** [1] - 65:12
**DOUGLAS** [1] - 2:3
**down** [2] - 17:13, 49:17
**drastically** [2] - 54:16, 54:21
**DRINKER** [1] - 2:13
**due** [5] - 63:9, 64:15, 64:17, 64:20, 65:1
**DUNN** [1] - 2:8
**Dunn** [3] - 60:12, 60:13, 62:19
**DURHAM** [1] - 3:5

## E

**earliest** [4] - 11:5, 11:15, 13:6, 14:7
**early** [6] - 7:18, 23:21, 24:6, 31:16, 31:20, 44:18
**effect** [2] - 50:17, 65:3
**efficiencies** [2] - 27:17, 32:10
**efficiency** [1] - 17:7
**effort** [1] - 47:12
**Egan** [1] - 60:9
**EGAN** [2] - 2:6, 60:8
**eight** [1] - 25:21
**either** [12] - 9:10, 18:23, 26:3, 28:17, 29:17, 35:17, 39:1, 42:19, 54:8, 54:13, 54:18, 55:16
**electricity** [1] - 25:5
**eliminate** [2] - 13:13, 36:2
**eliminated** [1] - 11:24
**Elizabeth** [1] - 5:17
**ELIZABETH** [1] - 3:5
**EME** [1] - 5:15
**EMISSIONS** [1] - 1:3
**Emissions** [2] -

4:5, 4:19
**encompass** [1] - 42:7
**encompassing** [1] - 10:19
**end** [5] - 21:17, 34:19, 47:4, 49:11, 61:14
**Energy** [7] - 2:18, 4:4, 4:5, 4:10, 4:19, 4:21, 5:13
**ENERGY** [2] - 1:3, 1:6
**energy** [2] - 19:5, 23:10
**entire** [4] - 26:16, 27:3, 62:23, 64:7
**entities** [2] - 43:14, 43:23
**entitled** [3] - 11:20, 13:6, 15:9
**entity** [1] - 51:21
**envision** [1] - 49:22
**ESQ** [15] - 1:17, 1:20, 2:2, 2:3, 2:6, 2:9, 2:9, 2:13, 2:14, 2:16, 2:17, 3:3, 3:5, 3:6, 3:6
**essential** [2] - 10:10, 10:23
**essentially** [2] - 11:1, 23:8
**et** [7] - 1:6, 4:5, 4:6, 16:9, 32:20, 39:6, 51:9
**Evall** [1] - 60:12
**EVALL** [1] - 2:9
**evolution** [2] - 18:3, 26:14
**evolving** [1] - 18:4
**exactly** [1] - 49:20
**example** [7] - 12:6, 18:7, 20:11, 22:16, 36:10, 37:7, 51:17
**exist** [2] - 43:24, 63:2
**existent** [1] - 26:3
**existing** [3] - 18:1, 53:12, 56:5
**expect** [4] - 12:1, 13:15, 18:10, 56:6
**expected** [2] - 45:16, 53:1
**expert** [1] - 24:2
**expiration** [1] - 24:16
**expire** [2] - 43:16,

43:20
**expires** [2] - 7:3, 7:4
**explain** [1] - 10:3
**explored** [1] - 62:23
**extend** [1] - 63:3
**extended** [1] - 64:5
**extent** [6] - 8:11, 10:17, 10:18, 24:11, 59:4, 59:15
**extinguished** [1] - 23:9

## F

**fabric** [1] - 29:4
**fact** [9] - 25:20, 31:18, 40:11, 42:7, 47:16, 56:17, 58:5, 58:8, 59:9
**factor** [6] - 20:8, 23:13, 24:23, 48:21, 50:20, 51:11
**factors** [8] - 10:5, 14:14, 21:3, 24:8, 33:3, 42:19, 48:14, 61:3
**facts** [3] - 9:19, 9:23, 16:9
**FAEGRE** [1] - 2:13
**fair** [2] - 39:10, 41:22
**fairly** [1] - 30:24
**fall** [1] - 59:11
**family** [2] - 17:14, 17:16
**far** [4] - 7:14, 21:8, 24:7, 33:6
**Fareed** [9] - 5:7, 6:12, 21:2, 32:17, 52:6, 53:19, 56:11, 60:5, 62:11
**FAREED** [19] - 2:16, 6:15, 7:11, 9:12, 10:7, 12:22, 13:17, 14:1, 14:24, 17:10, 20:10, 21:5, 26:11, 52:8, 54:13, 55:6, 57:3, 58:1, 62:13
**Fareed's** [2] - 27:20, 42:20
**fashion** [1] - 26:20
**favor** [7] - 11:13,

22:5, 22:6, 27:2, 40:24, 41:5, 66:3
**favors** [1] - 23:14
**few** [4] - 4:2, 6:18, 19:13, 45:5
**fierce** [1] - 25:22
**figure** [2] - 41:1, 43:21
**file** [13] - 7:2, 7:16, 18:24, 24:15, 32:4, 40:6, 45:11, 45:12, 45:19, 52:20, 54:3, 60:2, 65:1
**filed** [11] - 4:9, 10:11, 11:11, 16:13, 24:17, 25:17, 37:1, 38:1, 39:23, 43:7
**files** [1] - 45:11
**filing** [10] - 7:8, 7:10, 7:13, 11:6, 11:8, 11:21, 12:18, 14:7, 40:9
**filings** [1] - 25:9
**fill** [1] - 37:14
**filter** [1] - 29:4
**final** [6] - 15:18, 30:1, 53:1, 53:7, 53:8, 55:15
**findings** [1] - 55:11
**fine** [1] - 47:14
**FINGER** [1] - 3:2
**Finger** [1] - 5:13
**FIRM** [1] - 1:17
**first** [21] - 4:3, 4:14, 6:7, 6:18, 7:7, 7:12, 7:20, 10:17, 13:1, 16:20, 17:6, 17:20, 17:23, 25:18, 26:20, 38:11, 39:5, 48:5, 52:20, 53:2, 61:20
**five** [11] - 6:20, 9:5, 10:1, 17:13, 17:18, 17:22, 20:1, 20:3, 20:5, 28:1, 47:17
**Flannery** [1] - 5:17
**FLANNERY** [1] - 3:5
**flexibility** [2] - 54:2, 54:11
**flight** [1] - 18:9
**FLOM** [1] - 2:2
**flow** [1] - 60:11
**fluid** [1] - 57:18
**flushed** [2] - 28:19, 44:11

**focus** [1] - 33:11
**focused** [2] - 46:15, 55:7
**followed** [1] - 14:22
**following** [2] - 24:17, 53:6
**FOR** [1] - 1:1
**foregoing** [1] - 67:9
**forth** [1] - 9:20
**forward** [12] - 8:21, 38:9, 44:3, 46:22, 47:19, 51:3, 54:6, 54:8, 55:2, 60:19, 61:13, 66:13
**FRANCIS** [1] - 2:13
**Frank** [1] - 5:3
**Friday** [1] - 63:10
**front** [2] - 15:13, 42:23
**fully** [1] - 55:13
**future** [1] - 57:2

## G

**gained** [1] - 32:10
**gains** [1] - 17:7
**gaps** [1] - 37:14
**gas** [1] - 29:5
**gather** [2] - 8:10, 13:22
**general** [1] - 31:11
**generally** [2] - 30:11, 31:1
**generating** [1] - 25:5
**Generation** [3] - 2:19, 5:15
**generic** [1] - 50:15
**germane** [1] - 59:2
**GIBSON** [1] - 2:8
**Gibson** [3] - 60:12, 60:13, 62:19
**given** [2] - 25:19, 44:18
**grant** [6] - 38:6, 41:2, 43:1, 44:7, 61:5, 66:3
**granted** [3] - 19:17, 43:11
**great** [2] - 21:14, 21:20
**greatly** [4] - 11:23, 15:15, 18:19, 23:14
**grow** [2] - 51:22, 52:3
**guess** [6] - 5:20, 26:4, 35:8, 38:24, 39:23, 41:11
**guidance** [4] -

15:16, 20:14,
65:23, 66:5
**guidelines** [1] -
15:6
**Guy** [3] - 67:6,
67:15, 67:15

## H

**H.A** [1] - 2:19
**hand** [2] - 47:15,
48:2
**happy** [2] - 39:24,
66:12
**health** [1] - 66:12
**hear** [1] - 39:24
**heard** [2] - 28:11,
32:16
**Hearing** [1] - 66:15
**hearing** [9] - 18:17,
18:21, 23:5,
38:18, 44:4, 44:8,
48:18, 57:13,
64:12
**heated** [1] - 31:4
**held** [1] - 67:11
**helps** [1] - 13:13
**hereby** [1] - 67:8
**hesitation** [1] -
42:11
**highlighted** [2] -
21:6, 23:15
**highly** [2] - 31:2,
55:14
**hindrance** [1] -
46:12
**hinging** [1] - 23:1
**holiday** [1] - 66:13
**holidays** [1] - 7:20
**Honor** [62] - 4:18,
5:2, 5:12, 5:22,
6:16, 7:11, 9:12,
10:7, 11:18,
12:22, 14:2, 15:1,
17:10, 18:14,
19:10, 20:10,
20:19, 21:5, 21:8,
21:9, 22:8, 22:9,
22:13, 22:21,
23:3, 23:5, 23:13,
23:15, 23:20,
24:5, 24:8, 24:13,
24:22, 25:1,
25:13, 26:2,
26:12, 27:4,
27:14, 28:7, 33:5,
42:23, 42:24,
44:6, 44:17,
49:21, 52:9,
52:13, 52:16,

55:7, 55:12, 56:9,
57:4, 58:1, 58:4,
58:22, 59:1, 59:4,
59:22, 60:8,
62:14, 62:18
**honor** [1] - 13:18
**Honor's** [2] - 52:11,
62:24
**HONORABLE** [1] -
1:13
**hopeful** [1] - 58:19
**hypothesized** [1] -
63:16
**hypothetical** [1] -
49:23

## I

**idea** [1] - 8:10
**identical** [4] - 9:16,
20:22, 20:23,
33:8
**identified** [3] -
28:21, 34:1,
65:18
**identify** [4] - 4:13,
4:24, 43:18, 62:6
**illuminate** [1] - 63:1
**immediately** [1] -
38:15
**impact** [6] - 16:24,
17:2, 30:17,
32:12, 66:1, 66:9
**implicates** [1] -
59:16
**implicitly** [1] - 54:1
**important** [1] - 43:2
**importantly** [1] -
44:2
**improve** [1] - 37:5
**IN** [1] - 1:1
**inapplicable** [1] -
33:24
**INC** [1] - 1:3
**inclinations** [1] -
54:17
**inclined** [2] - 43:1,
44:7
**inclusive** [1] - 67:9
**inconsistent** [2] -
34:15, 34:18
**incorporate** [3] -
10:16, 10:23,
33:18
**Incorporated** [1] -
5:14
**incorporated** [1] -
10:9
**incorporation** [3] -
10:12, 10:19,

34:4
**incorrect** [1] - 57:6
**independent** [2] -
41:15, 42:15
**indicated** [1] -
24:24
**indicates** [1] -
51:19
**indicating** [1] -
37:3
**indicative** [1] -
56:16
**individual** [1] - 11:9
**induced** [1] - 22:17
**inducement** [1] -
23:1
**inefficiencies** [1] -
28:2
**info** [1] - 6:19
**infringement** [9] -
22:18, 22:24,
24:20, 30:19,
34:16, 43:13,
46:15, 50:14,
51:23
**infringes** [1] -
50:16
**initial** [1] - 12:11
**injecting** [4] -
20:18, 28:21,
29:6, 46:18
**injection** [1] - 20:18
**inquiry** [2] - 25:12,
59:18
**instances** [1] -
10:14
**institute** [1] - 36:19
**instituted** [11] -
20:3, 31:14,
32:14, 33:9,
35:11, 37:21,
38:3, 40:15, 42:3,
47:3, 56:17
**institution** [25] -
6:22, 8:3, 8:4,
8:7, 8:15, 8:16,
9:5, 12:4, 12:15,
12:20, 13:14,
16:19, 17:5,
33:23, 36:22,
37:11, 44:23,
45:8, 45:17,
45:21, 49:16,
52:15, 52:21,
54:10, 56:14
**institutions** [2] -
13:22, 29:22
**instructive** [1] -
15:22
**intending** [1] - 7:16

**interpretation** [2] -
29:9, 40:5
**interpreted** [1] -
55:17
**interpreting** [2] -
15:7, 15:21
**interrelationship**
[1] - 50:24
**interrelationships**
[2] - 39:4, 39:9
**interrupt** [2] - 50:4,
60:11
**interval** [1] - 54:3
**intervening** [3] -
10:15, 14:6,
14:11
**intrinsic** [3] - 18:3,
18:4, 26:14
**invalid** [5] - 13:8,
19:14, 21:19,
23:2, 35:23
**invalidate** [1] - 8:6
**invalidated** [6] -
22:1, 22:22, 23:7,
47:5, 47:21,
49:13
**invalidates** [3] -
8:13, 35:15,
35:19
**invalidating** [1] -
55:10
**invalidity** [6] - 9:2,
9:7, 9:14, 12:20,
16:22, 23:22
**invention** [1] - 34:5
**inventor** [1] - 38:22
**inventors** [1] - 39:6
**involved** [1] - 43:14
**involving** [1] - 31:8
**IPR** [8] - 7:2, 16:12,
28:9, 40:6, 40:24,
41:5, 53:2, 56:13
**IPRs** [23] - 7:8,
7:13, 9:15, 15:19,
18:1, 18:11, 19:9,
21:13, 24:12,
24:15, 28:14,
32:5, 32:11,
32:13, 35:21,
53:12, 53:16,
53:18, 53:24,
56:5, 57:11, 66:3
**issue** [40] - 8:23,
9:22, 9:24, 10:4,
10:8, 10:20,
10:21, 11:9, 12:3,
12:8, 13:21,
14:16, 15:2, 15:3,
15:11, 15:13,
19:24, 20:6, 20:7,

22:15, 23:6, 23:7,
23:8, 28:16, 29:1,
33:10, 33:12,
33:16, 34:3,
37:16, 44:9, 46:9,
46:14, 48:16,
54:11, 59:2, 63:5,
64:3
**issued** [1] - 11:2
**issues** [23] - 8:1,
11:19, 15:8, 16:2,
17:3, 20:17,
21:15, 22:6,
22:13, 25:13,
27:11, 27:16,
30:18, 34:13,
34:22, 42:12,
46:13, 48:20,
49:22, 59:17,
61:19, 62:21,
63:2
**itself** [3] - 25:16,
29:14, 55:20

## J

**January** [4] - 7:19,
23:6, 64:12, 65:5
**Jennifer** [3] - 67:6,
67:15, 67:15
**John** [4] - 43:13,
59:6, 59:24, 62:6
**joining** [1] - 6:2
**jointly** [1] - 53:14
**Joseph** [1] - 60:12
**JOSEPH** [1] - 2:9
**Judge** [9] - 1:13,
14:19, 16:17,
19:23, 21:10,
48:24, 49:14,
53:20, 65:9
**July** [2] - 18:21,
46:3
**June** [1] - 18:18
**Justin** [3] - 4:21,
5:23, 27:13
**JUSTIN** [1] - 1:20

## K

**keep** [1] - 38:19
**key** [1] - 17:3
**kind** [6] - 20:14,
36:2, 36:4, 37:19,
39:1, 59:5
**kinds** [1] - 17:7
**knowledge** [1] -
22:15
**knows** [1] - 58:5

## L

**landscape** [2] - 18:18, 25:23
**language** [2] - 10:16, 10:17
**largely** [1] - 54:22
**larger** [1] - 28:22
**last** [12] - 14:12, 19:18, 24:7, 24:21, 25:14, 26:4, 26:5, 39:5, 50:5, 52:19, 58:23, 61:23
**LAW** [1] - 1:17
**law** [2] - 15:7, 37:3
**lawsuit** [1] - 25:18
**LAYTON** [1] - 3:2
**Layton** [1] - 5:12
**lead** [1] - 5:6
**least** [12] - 15:16, 20:4, 24:1, 24:24, 27:23, 29:22, 42:5, 49:5, 49:6, 56:13, 60:24, 61:12
**leave** [3] - 22:12, 59:17, 60:2
**leaves** [1] - 5:20
**left** [1] - 42:2
**legitimate** [2] - 11:13, 59:23
**less** [1] - 58:12
**level** [1] - 26:2
**liability** [1] - 43:22
**license** [2] - 51:19, 51:22
**light** [10] - 13:8, 15:8, 16:8, 31:17, 32:5, 39:9, 51:4, 53:17, 59:7, 61:4
**likelihood** [1] - 28:7
**likely** [13] - 8:19, 12:11, 12:14, 13:12, 16:21, 17:8, 18:22, 20:2, 20:5, 30:4, 36:23, 47:1, 61:6
**limited** [1] - 43:5
**linchpin** [1] - 22:19
**line** [8] - 5:6, 5:8, 15:5, 26:5, 27:5, 47:14, 60:6, 65:11
**lines** [1] - 12:24
**litigation** [4] - 11:22, 23:13, 25:8, 25:21
**LLC** [6] - 2:18, 2:19, 2:19, 5:14,

5:15, 5:16
**LLP** [6] - 2:2, 2:6, 2:8, 2:13, 2:16, 3:5
**local** [1] - 4:18
**logic** [1] - 62:22
**look** [13] - 12:7, 16:17, 31:6, 32:8, 32:9, 35:13, 37:18, 38:6, 39:3, 48:24, 53:20, 64:17, 66:13
**looking** [6] - 7:18, 17:12, 21:12, 36:24, 51:21, 51:22
**looks** [3] - 6:20, 7:3, 46:2
**losing** [1] - 45:2
**low** [1] - 28:7
**lump** [1] - 51:21

## M

**Magistrate** [1] - 1:13
**main** [3] - 33:10, 41:18, 42:14
**maintain** [3] - 34:6, 38:17, 48:17
**March** [4] - 7:6, 7:21, 39:19, 52:19
**MARK** [4] - 2:9, 62:18, 64:16, 64:23
**Mark** [3] - 60:13, 62:19, 64:10
**mark's** [1] - 65:16
**market** [2] - 51:9, 51:16
**Markman** [17] - 17:13, 18:15, 18:17, 18:21, 19:1, 19:2, 19:3, 20:17, 21:18, 24:1, 26:19, 26:23, 47:19, 52:14, 52:22, 53:6, 57:13
**material** [2] - 10:10, 10:23
**matter** [2] - 37:22, 47:8
**ME2C** [26] - 11:4, 15:8, 18:5, 18:22, 20:15, 22:16, 22:17, 22:20, 24:9, 24:19, 24:23, 25:2, 25:5,

25:9, 25:15, 25:23, 43:10, 44:11, 55:1, 57:8, 57:12, 57:16, 59:4, 59:12, 59:15
**ME2C's** [2] - 22:10, 25:8
**MEAGHER** [1] - 2:2
**mean** [8] - 8:19, 30:3, 36:18, 49:9, 55:21, 57:15, 58:4
**meaning** [2] - 56:22
**means** [6] - 11:21, 14:6, 18:9, 20:15, 20:16, 44:20
**meet** [1] - 43:4
**meet-and-confer** [1] - 43:4
**mentioned** [7] - 19:21, 21:16, 23:19, 23:24, 26:13, 57:19, 58:3
**MES** [1] - 1:3
**mid** [1] - 7:21
**Midwest** [11] - 4:4, 4:19, 4:21, 5:14, 5:15, 5:23, 50:8, 50:11, 50:13, 51:20, 52:2
**MIDWEST** [1] - 1:3
**might** [22] - 7:5, 9:2, 10:2, 12:10, 13:11, 17:3, 19:2, 19:11, 21:19, 28:3, 35:21, 38:16, 45:8, 45:16, 46:2, 48:5, 49:10, 49:11, 55:9, 57:1, 57:14, 63:5
**mind** [2] - 7:15, 14:21
**minute** [1] - 33:10
**misreading** [1] - 12:21
**moment** [1] - 64:18
**month** [8] - 7:2, 7:5, 24:16, 24:18, 40:7, 45:19, 52:24, 53:7
**months** [10] - 17:12, 19:13, 24:1, 24:19, 45:5, 45:20, 45:21, 45:22, 48:19, 53:8
**morning** [3] - 4:17,

5:11, 6:15
**Morris** [1] - 60:9
**MORRIS** [1] - 2:6
**most** [6] - 24:4, 26:15, 38:16, 44:2, 53:11, 57:20
**motion** [25] - 4:9, 6:6, 6:10, 14:20, 15:12, 16:7, 22:11, 31:9, 41:2, 43:5, 44:3, 44:4, 49:5, 51:13, 59:17, 60:1, 60:20, 60:21, 61:5, 61:13, 63:8, 64:12, 64:14, 65:3, 65:4
**motions** [2] - 22:10, 24:3
**movants** [2] - 43:6, 63:3
**move** [4] - 44:3, 56:12, 56:18, 60:18
**moved** [1] - 61:2
**moving** [36] - 23:15, 25:2, 25:3, 25:9, 25:24, 26:6, 31:13, 40:19, 40:22, 40:23, 41:9, 41:11, 41:20, 41:21, 42:6, 42:9, 50:21, 51:1, 51:24, 53:21, 54:20, 55:1, 56:8, 59:2, 60:21, 61:1, 61:7, 61:9, 61:17, 61:18, 62:12, 62:16, 64:4, 66:2, 66:6, 66:9
**MPEP** [4] - 14:16, 15:6, 33:18, 34:1
**MR** [50] - 5:2, 5:11, 5:22, 6:15, 7:11, 9:12, 10:7, 12:22, 13:17, 14:1, 14:24, 17:10, 20:10, 21:5, 26:11, 27:13, 28:6, 30:5, 30:10, 33:4, 36:6, 38:13, 39:11, 40:2, 41:14, 41:23, 42:10, 42:22, 44:16, 45:18, 46:4, 46:8, 47:7, 48:10, 48:15, 49:20, 50:5, 51:14, 61:22, 64:21

51:14, 52:8, 54:13, 55:6, 57:3, 58:1, 60:8, 61:22, 62:13, 62:18, 64:16, 64:21, 64:23
**MS** [2] - 4:17, 65:9
**multiple** [4] - 20:12, 20:21, 22:18, 38:23

## N

**name** [1] - 43:21
**nature** [1] - 65:24
**naught** [1] - 49:12
**necessarily** [2] - 32:22, 36:9
**necessary** [1] - 10:18
**need** [10] - 29:14, 34:8, 34:20, 37:15, 38:14, 43:20, 47:24, 56:20, 56:21, 60:17
**needed** [1] - 53:17
**needing** [1] - 55:9
**Nelson** [6] - 9:10, 13:22, 14:3, 14:10, 36:10
**Nemec** [1] - 65:12
**NEMEC** [1] - 2:3
**Nemunaitis** [13] - 4:21, 5:23, 6:4, 27:14, 27:16, 42:18, 45:7, 48:23, 52:5, 56:12, 61:20, 61:21, 64:19
**NEMUNAITIS** [27] - 1:20, 5:22, 27:13, 28:6, 30:5, 30:10, 33:4, 36:6, 38:13, 39:11, 40:2, 41:14, 41:23, 42:10, 42:22, 44:16, 45:18, 46:4, 46:8, 47:7, 48:10, 48:15, 49:20, 50:5, 51:14, 61:22, 64:21
**nevertheless** [1] - 13:7
**new** [3] - 9:10, 29:4, 37:13
**New** [1] - 67:2
**newly** [1] - 39:18
**next** [19] - 11:7,

12:24, 17:11, 18:2, 18:11, 18:18, 18:21, 21:17, 31:5, 34:9, 43:16, 45:5, 45:19, 49:8, 52:16, 52:24, 57:10, 58:15, 59:8
**NICHOLS** [1] - 2:6
**Nichols** [1] - 60:9
**NICOLE** [1] - 2:2
**Nicole** [1] - 65:10
**nine** [3] - 7:2, 24:16, 40:7
**nine-month** [3] - 7:2, 24:16, 40:7
**non** [14] - 26:3, 34:16, 41:11, 41:21, 42:9, 51:21, 61:7, 61:9, 61:18, 62:16, 63:3, 66:2, 66:6, 66:9
**non-existent** [1] - 26:3
**non-infringement** [1] - 34:16
**non-movants** [1] - 63:3
**non-moving** [10] - 41:11, 41:21, 42:9, 61:7, 61:9, 61:18, 62:16, 66:2, 66:6, 66:9
**non-practicing** [1] - 51:21
**none** [1] - 39:2
**normally** [1] - 38:24
**Notary** [1] - 67:7
**note** [10] - 21:7, 22:9, 23:12, 25:14, 52:17, 55:12, 55:13, 59:3, 63:18, 65:14
**noted** [4] - 21:10, 21:11, 59:1, 60:6
**nothing** [4] - 30:2, 39:1, 39:8, 62:13
**notice** [3] - 22:20, 22:22, 25:19
**noticed** [2] - 23:24, 53:13
**notify** [1] - 54:14
**November** [1] - 67:12
**NRG** [6] - 3:7, 5:13, 5:14, 5:16, 6:23, 26:7

**Number** [1] - 4:6

## O

**objectively** [1] - 35:8
**obtain** [2] - 43:22, 62:5
**obtaining** [1] - 44:1
**obviously** [5] - 31:16, 40:19, 46:24, 65:2, 66:2
**occur** [1] - 43:10
**occurs** [2] - 21:14, 38:15
**October** [1] - 52:24
**OF** [2] - 1:1, 67:4
**office** [7] - 5:5, 33:21, 36:19, 37:4, 37:10, 37:15, 54:18
**office's** [1] - 36:21
**Olson** [4] - 9:10, 13:23, 14:4, 14:11
**once** [3] - 26:23, 37:16, 37:18
**one** [40] - 7:5, 7:24, 8:13, 8:16, 10:20, 15:20, 16:1, 18:7, 18:8, 19:21, 20:11, 22:13, 22:16, 26:4, 28:12, 28:23, 29:2, 30:12, 32:7, 33:17, 35:22, 36:1, 36:6, 36:11, 36:13, 37:7, 37:20, 38:14, 41:6, 42:23, 43:1, 46:12, 47:15, 48:19, 58:12, 60:5, 61:22, 63:16, 64:22
**ones** [1] - 41:21
**ongoing** [1] - 18:11
**open** [1] - 52:18
**opens** [2] - 7:17, 52:19
**operative** [1] - 23:18
**opportunity** [5] - 38:12, 44:9, 52:7, 59:14, 61:8
**opposite** [1] - 32:21
**option** [1] - 40:12
**order** [5] - 21:11, 52:9, 53:20, 53:22, 63:4

**otherwise** [3] - 31:11, 56:20, 56:21
**ourselves** [1] - 65:15
**outcome** [2] - 21:14, 38:5
**outcomes** [1] - 21:13
**outside** [2] - 25:7, 42:13
**overlap** [6] - 8:11, 9:17, 32:17, 37:22, 46:11, 47:17
**overlapping** [2] - 34:23, 46:10
**oversimplify** [1] - 30:23
**owner** [4] - 18:6, 56:20, 57:7, 57:8
**owners** [1] - 59:19

## P

**P.A** [1] - 3:2
**p.m** [1] - 66:16
**Pages** [1] - 67:9
**pairing** [1] - 33:19
**papers** [6] - 6:6, 14:4, 18:22, 25:8, 31:7, 64:24
**parents** [1] - 20:20
**part** [7] - 7:19, 12:21, 48:24, 49:3, 49:14, 56:13, 64:8
**particular** [3] - 14:16, 30:16, 61:4
**particularly** [1] - 8:2
**parties** [26] - 8:1, 14:15, 18:24, 23:11, 24:23, 39:21, 44:12, 44:21, 46:20, 49:10, 51:18, 53:14, 55:24, 56:14, 56:19, 58:7, 58:18, 59:12, 59:16, 60:17, 61:1, 61:2, 61:24, 62:1
**parties'** [2] - 19:6, 21:21
**partly** [1] - 57:3
**party** [4] - 43:7, 45:4, 54:14, 54:18

**passed** [1] - 58:18
**past** [4] - 19:9, 26:17, 59:11, 59:13
**patent** [39] - 7:22, 8:13, 11:1, 11:2, 18:6, 18:8, 21:12, 22:21, 22:22, 23:2, 23:7, 24:17, 27:24, 29:11, 30:14, 30:22, 33:21, 34:11, 34:12, 35:16, 36:11, 36:12, 36:18, 36:21, 37:4, 37:10, 37:15, 42:5, 52:19, 54:17, 55:20, 56:10, 57:6, 57:8, 58:3, 58:17, 59:19
**patentee** [1] - 10:9
**patents** [79] - 6:21, 6:24, 7:9, 7:14, 7:21, 8:18, 9:6, 9:9, 9:10, 9:15, 10:1, 10:13, 10:15, 11:9, 11:11, 11:20, 12:5, 12:10, 12:15, 12:24, 13:3, 13:6, 16:5, 16:12, 17:1, 17:4, 17:6, 17:14, 17:15, 17:18, 17:22, 18:19, 19:18, 19:19, 20:1, 20:3, 20:5, 20:13, 20:24, 21:18, 21:24, 22:3, 25:20, 29:19, 31:23, 31:24, 32:3, 32:13, 33:1, 33:8, 34:9, 35:4, 35:7, 35:12, 35:24, 36:3, 36:24, 37:9, 38:3, 38:10, 38:11, 39:5, 39:18, 40:14, 40:17, 41:7, 44:24, 45:9, 47:2, 47:4, 47:11, 47:17, 47:24, 48:1, 48:5, 52:16, 54:4, 54:9, 54:22
**patents'** [1] - 12:18
**patents-in-suit** [1] - 6:21
**pattern** [1] - 57:10

**peculiar** [1] - 46:13
**pending** [2] - 22:10, 63:22
**people** [1] - 51:1
**perhaps** [9] - 7:18, 10:14, 21:24, 22:1, 26:20, 27:24, 55:10, 57:14, 64:7
**period** [4] - 7:3, 16:14, 24:18, 32:6
**periods** [1] - 37:8
**permeate** [1] - 17:18
**permeates** [2] - 20:12, 20:19
**permission** [1] - 65:1
**perspective** [1] - 56:9
**petition** [4] - 8:7, 16:13, 28:8, 34:24
**petitioner's** [1] - 40:4
**petitioners** [6] - 28:9, 29:3, 33:7, 34:8, 37:12, 57:5
**petitions** [7] - 11:11, 13:16, 28:23, 36:9, 37:1, 38:1, 54:3
**PGR** [1] - 40:9
**PGRs** [2] - 39:23, 40:17
**phase** [2] - 17:13, 24:1
**phrase** [1] - 28:22
**pick** [2] - 22:21, 57:21
**piecemeal** [1] - 26:20
**pieces** [2] - 13:19, 13:23
**place** [1] - 63:24
**placing** [1] - 29:4
**plaintiff** [5] - 4:19, 38:8, 54:5, 56:20, 66:7
**plaintiffs** [3] - 56:15, 59:19, 61:7
**Plaintiffs** [2] - 1:4, 1:21
**plaintiffs'** [5] - 4:15, 27:9, 27:12, 61:16, 61:21
**plan** [3] - 12:23, 45:5, 61:12

**Plant** [2] - 25:16, 26:24
**play** [3] - 47:23, 48:7, 51:17
**players** [2] - 51:9, 51:16
**pleading** [1] - 23:19
**point** [27] - 14:15, 15:11, 20:9, 21:7, 22:8, 23:12, 24:7, 24:21, 24:23, 25:14, 28:17, 29:16, 30:14, 30:21, 36:6, 36:21, 40:3, 40:8, 43:2, 43:11, 44:17, 50:5, 57:24, 58:21, 58:23, 60:5, 61:23
**points** [5] - 21:6, 23:15, 44:14, 48:13, 62:21
**position** [3] - 12:9, 32:21, 56:21
**positions** [2] - 57:12, 63:5
**possibility** [2] - 63:11, 64:24
**possible** [1] - 46:24
**post** [1] - 13:24
**posture** [1] - 50:12
**potential** [5] - 21:14, 28:24, 30:13, 32:19, 50:14
**potentially** [4] - 17:2, 43:23, 47:11, 51:15
**Power** [1] - 5:14
**practicing** [1] - 51:21
**pre** [3] - 22:15, 23:1, 23:8
**pre-2004** [1] - 37:8
**pre-suit** [3] - 22:15, 23:1, 23:8
**precisely** [1] - 13:17
**predate** [4] - 13:10, 13:24, 14:1, 14:4
**predated** [1] - 22:3
**predates** [1] - 14:10
**predecessor** [1] - 43:21
**prejudice** [11] - 24:9, 25:12, 43:9, 44:10, 48:22, 50:6, 50:7, 50:20,

51:4, 51:8, 59:5
**preliminarily** [2] - 11:12, 11:16
**preliminary** [6] - 15:4, 18:7, 37:5, 38:2, 45:19, 57:8
**premature** [1] - 35:3
**presence** [1] - 65:14
**presented** [1] - 9:14
**press** [1] - 51:3
**pretty** [6] - 19:15, 24:15, 31:1, 31:10, 31:19, 31:22
**prevail** [1] - 11:19
**primary** [2] - 33:21, 36:11
**priority** [27] - 9:21, 9:24, 10:4, 10:8, 11:5, 11:7, 11:15, 11:19, 12:3, 12:12, 12:17, 13:2, 13:5, 13:6, 13:12, 14:17, 15:7, 15:9, 15:10, 15:16, 33:11, 34:2, 34:6, 34:13, 37:16, 39:17, 40:5
**procedural** [3] - 40:9, 61:19, 63:19
**proceed** [6] - 18:20, 23:4, 44:21, 45:4, 45:23, 56:1
**proceeding** [1] - 64:1
**proceedings** [5] - 26:18, 56:1, 56:17, 57:22, 67:11
**process** [4] - 28:3, 28:4, 56:14, 61:10
**processes** [1] - 22:1
**products** [1] - 50:10
**Professional** [1] - 67:7
**program** [1] - 43:15
**promised** [1] - 60:17
**promptly** [2] - 60:20, 61:6
**provide** [2] - 50:10,

65:23
**providing** [1] - 29:5
**provision** [1] - 33:24
**provisional** [2] - 10:10, 10:24
**prudent** [2] - 53:11, 57:20
**PTAB** [50] - 8:23, 8:24, 10:2, 11:10, 11:12, 11:16, 12:9, 12:10, 13:4, 13:5, 13:11, 15:3, 15:12, 15:20, 16:22, 18:6, 18:19, 18:23, 19:14, 19:18, 19:19, 20:6, 20:24, 21:11, 26:17, 27:18, 27:21, 28:2, 28:17, 29:21, 30:1, 32:22, 35:6, 35:11, 35:15, 35:19, 42:5, 45:17, 46:14, 48:3, 48:8, 53:2, 54:4, 54:15, 54:21, 55:10, 55:15, 56:1, 56:18, 57:14
**PTAB's** [4] - 15:4, 15:15, 17:19, 20:14
**PTO** [2] - 10:22, 21:11
**Public** [1] - 67:7
**published** [2] - 11:1, 11:2
**purpose** [1] - 44:1
**purposes** [1] - 14:20
**pursue** [1] - 25:21
**pursuing** [2] - 24:12, 60:1
**push** [4] - 38:17, 49:15, 52:14, 52:22
**pushed** [1] - 32:15
**pushes** [1] - 48:18
**put** [8] - 8:8, 13:10, 34:23, 35:10, 35:17, 35:18, 42:7, 66:5
**putting** [3] - 12:16, 38:22, 65:13

**Q**

**questions** [8] - 6:7,

6:11, 6:18, 9:19, 27:10, 39:14, 41:6, 52:12
**quick** [1] - 39:14
**quite** [2] - 45:15, 47:16

**R**

**Rahmeier** [1] - 5:5
**RAHMEIER** [1] - 2:14
**raise** [5] - 28:24, 30:20, 33:7, 34:13, 34:21
**raised** [8] - 28:12, 28:16, 30:14, 33:12, 33:13, 35:4, 37:17, 40:16
**reached** [2] - 5:24, 18:17
**reaches** [1] - 55:15
**reading** [1] - 31:7
**real** [5] - 8:11, 32:10, 35:21, 35:24, 46:10
**really** [11] - 11:7, 11:14, 20:16, 24:9, 30:12, 30:17, 31:3, 33:16, 44:11, 46:18, 59:22
**reason** [4] - 15:14, 26:18, 28:8, 28:18
**reasonably** [1] - 7:17
**reasoning** [1] - 33:22
**reasons** [6] - 11:3, 16:21, 26:12, 26:15, 30:12, 40:24
**REATH** [1] - 2:13
**rebuttal** [1] - 52:7
**receive** [1] - 53:1
**received** [1] - 62:2
**record** [11] - 4:2, 4:3, 4:14, 4:24, 18:3, 18:4, 26:14, 51:13, 60:15, 67:9, 67:10
**reduction** [1] - 27:1
**reexamining** [1] - 21:12
**reference** [14] - 10:12, 10:16, 10:20, 29:2, 29:9, 29:13, 30:16,

33:19, 34:4, 36:11, 36:12, 36:13, 36:14, 37:10
**references** [3] - 9:11, 36:8, 46:14
**Refined** [16] - 2:10, 26:20, 27:4, 41:12, 43:3, 43:8, 43:12, 43:15, 44:5, 50:8, 58:24, 60:7, 62:4, 62:19, 63:21, 64:6
**regard** [7] - 13:15, 17:8, 27:16, 27:17, 61:11, 61:19, 66:6
**regarding** [3] - 62:24, 63:18, 64:6
**regardless** [2] - 15:10, 32:13
**Registered** [1] - 67:6
**rejected** [1] - 37:11
**relate** [2] - 27:23, 48:5
**related** [1] - 14:17
**relatedly** [1] - 38:4
**relates** [3] - 16:7, 16:23, 46:1
**relating** [2] - 47:2, 63:8
**relationship** [1] - 24:22
**relatively** [3] - 31:15, 44:18, 61:6
**relevance** [2] - 12:3, 35:21
**relevant** [4] - 12:19, 14:20, 51:9, 63:5
**relied** [1] - 33:22
**remain** [1] - 7:21
**remaining** [4] - 12:5, 13:16, 35:16, 62:6
**remains** [1] - 63:24
**remarks** [1] - 65:16
**remind** [1] - 64:11
**rendered** [1] - 9:1
**replacement** [1] - 37:13
**REPORTER** [1] - 67:4
**Reporter** [1] - 67:7
**representing** [1] - 5:3
**request** [3] - 38:7, 43:7, 49:2

**require** [3] - 18:23, 19:3, 31:3
**required** [2] - 19:12, 33:18
**resolve** [1] - 48:20
**resolving** [1] - 44:4
**resources** [3] - 19:4, 21:21, 21:22
**respect** [12] - 12:9, 17:11, 24:8, 42:1, 42:12, 44:5, 50:7, 52:11, 52:12, 55:6, 58:24, 59:23
**response** [6] - 18:7, 28:23, 38:2, 45:20, 57:8, 65:20
**responses** [2] - 34:24, 37:5
**result** [1] - 40:12
**reverse** [1] - 52:9
**review** [1] - 29:13
**reviewed** [1] - 6:5
**Richard** [2] - 60:13, 62:18
**RICHARD** [1] - 2:9
**Richards** [1] - 5:12
**RICHARDS** [1] - 3:2
**robust** [1] - 51:8
**RPR** [2] - 67:15, 67:15
**rule** [2] - 15:14, 58:11
**ruled** [1] - 11:12
**rules** [3] - 10:22, 13:4, 15:2
**ruling** [1] - 19:1, 19:2

## S

**safety** [1] - 66:12
**save** [1] - 23:9
**saved** [1] - 19:7
**saw** [1] - 9:19
**scenario** [1] - 55:14
**SCHAD** [2] - 1:17, 4:17
**Schad** [1] - 4:18
**schedule** [8] - 45:14, 46:1, 48:18, 63:7, 63:13, 64:7, 64:11, 64:18
**scheduled** [1] - 44:19
**scheduling** [1] - 48:16

**scope** [2] - 29:23, 42:24
**season** [1] - 66:13
**SEC** [1] - 25:9
**second** [6] - 22:12, 37:20, 60:2, 63:9, 63:13, 65:1
**secondary** [1] - 36:12
**see** [10] - 10:6, 18:22, 25:8, 34:20, 35:5, 37:12, 37:24, 38:1, 38:2, 44:22
**seeing** [1] - 18:1
**seek** [3] - 11:4, 11:7, 57:5
**seeking** [2] - 24:11, 43:6
**selling** [2] - 25:4, 25:6
**sense** [11] - 17:4, 26:8, 26:15, 26:19, 26:22, 36:5, 38:16, 39:7, 41:4, 53:5, 53:11
**separate** [1] - 39:12
**September** [2] - 52:21, 52:23
**serve** [1] - 43:24
**served** [1] - 23:22
**serving** [1] - 24:20
**set** [4] - 18:11, 23:6, 43:16, 57:10
**sets** [1] - 64:13
**setting** [2] - 33:9, 34:3
**settled** [1] - 51:17
**settlement** [1] - 5:24
**seven** [2] - 25:20, 45:22
**several** [4] - 20:19, 25:18, 59:16, 62:20
**Shores** [1] - 2:18
**short** [1] - 30:24
**shortly** [2] - 45:12, 65:23
**showing** [1] - 51:7
**side** [8] - 4:13, 4:15, 27:12, 28:17, 45:11, 56:2, 61:16, 61:21
**signed** [1] - 51:18
**significant** [2] - 17:20, 46:19
**significantly** [1] -

19:8
**similar** [4] - 8:7, 18:10, 20:23, 50:12
**simplification** [4] - 21:9, 21:15, 22:6, 26:13
**simplify** [1] - 11:24
**simply** [1] - 40:4
**simultaneously** [1] - 28:4
**single** [1] - 23:23
**situation** [8] - 18:13, 57:11, 57:19, 58:7, 58:20, 61:4, 62:8, 63:19
**six** [2] - 25:20, 45:22
**Sjostrom** [5] - 9:11, 13:23, 14:5, 14:10, 36:13
**SKADDEN** [1] - 2:2
**Skadden** [2] - 65:10, 65:12
**someone** [1] - 65:8
**sometime** [2] - 52:15, 52:23
**somewhat** [1] - 53:3
**soon** [3] - 7:17, 24:15, 66:14
**sorry** [3] - 50:3, 59:19, 65:9
**sort** [5] - 25:11, 33:20, 42:13, 46:13, 57:18
**sought** [2] - 57:7, 57:9
**sounds** [1] - 41:24
**span** [3] - 20:5, 28:1, 29:18
**spans** [1] - 19:24
**speaking** [3] - 4:20, 6:13, 66:13
**specific** [5] - 7:15, 11:19, 29:2, 30:15, 47:9
**sponte** [1] - 43:11
**squeezing** [1] - 53:3
**stage** [9] - 7:23, 17:11, 18:17, 24:6, 31:16, 52:24, 53:13, 54:16, 66:4
**stages** [2] - 23:22, 24:4
**stand** [1] - 16:9
**standard** [1] -

27:19
**start** [3] - 4:14, 17:13, 36:20
**started** [1] - 59:10
**starting** [1] - 52:19
**State** [2] - 67:1, 67:8
**state** [1] - 63:4
**statement** [1] - 63:17
**statements** [2] - 18:10, 56:2
**STATES** [1] - 1:1
**States** [1] - 1:13
**status** [2] - 23:13, 53:15
**statutory** [1] - 24:18
**stay** [50] - 4:9, 10:5, 15:2, 15:12, 15:18, 16:7, 18:14, 19:8, 19:16, 21:16, 22:7, 23:5, 23:14, 24:8, 24:11, 26:8, 26:16, 26:23, 27:3, 31:22, 38:7, 39:2, 40:24, 42:19, 42:24, 43:1, 43:6, 43:8, 43:10, 44:7, 45:1, 46:23, 49:2, 52:1, 52:13, 53:11, 53:17, 53:21, 58:11, 58:24, 62:22, 63:3, 63:12, 63:15, 63:23, 64:3, 65:3, 66:3, 66:7, 66:8
**stayed** [10] - 26:7, 26:21, 31:19, 38:11, 40:21, 41:4, 41:13, 62:4, 63:21, 64:2
**still** [5] - 13:7, 15:22, 18:16, 23:16, 46:3
**stop** [2] - 50:13, 50:15
**stopping** [1] - 51:24
**straightforward** [1] - 31:1
**strict** [1] - 59:18
**strong** [4] - 16:7, 31:10, 31:22, 49:2
**stronger** [1] - 50:7
**strongly** [2] - 22:5, 25:21

**struggling** [1] - 49:21
**sua** [1] - 43:11
**subject** [1] - 37:22
**submission** [1] - 63:7
**sufficient** [1] - 34:6
**suggested** [1] - 39:20
**suggesting** [4] - 30:4, 49:19, 56:13, 57:17
**suggests** [1] - 25:22
**suit** [4] - 6:21, 22:15, 23:1, 23:8
**sum** [1] - 51:22
**summary** [1] - 50:1
**supplemental** [5] - 18:24, 19:3, 63:8, 63:11, 63:14
**supply** [1] - 51:19
**suppose** [5] - 28:14, 36:17, 38:13, 47:8, 48:15
**Syed** [1] - 5:7
**SYED** [1] - 2:16

## T

**Talen** [8] - 2:18, 2:19, 4:10, 5:4, 26:6, 50:12, 64:24, 65:2
**tap** [1] - 65:5
**tasks** [1] - 58:10
**tax** [5] - 43:15, 43:19, 44:1, 59:7, 59:8
**team** [1] - 14:10
**technical** [1] - 31:3
**technology** [2] - 17:16, 30:23
**Teleconference** [1] - 1:11
**ten** [1] - 64:22
**term** [10] - 19:22, 19:24, 20:12, 20:18, 28:14, 28:20, 28:21, 30:13, 56:22
**terminologies** [1] - 20:22
**terms** [41] - 9:19, 13:14, 16:13, 17:17, 18:9, 19:22, 20:4, 20:9, 20:22, 26:7, 26:9, 27:23, 28:10,

28:11, 29:18,
29:24, 30:3, 31:3,
32:18, 32:19,
39:6, 45:7, 45:13,
47:2, 47:9, 47:16,
47:20, 47:22,
51:8, 51:12,
55:21, 56:16,
56:19, 57:9,
57:15, 62:21,
63:23, 64:10
**Texas** [1] - 5:14
**THATCHER** [1] -
2:14
**Thatcher** [1] - 5:5
**THE** [56] - 1:1, 1:1,
1:13, 4:1, 4:22,
5:9, 5:19, 6:3,
6:17, 7:24, 9:18,
12:1, 13:9, 13:19,
14:12, 15:24,
19:21, 21:1, 26:4,
27:8, 27:15,
29:20, 30:9, 31:5,
35:8, 38:4, 38:24,
39:13, 40:18,
41:18, 41:24,
42:17, 44:13,
45:6, 45:24, 46:6,
46:21, 47:13,
48:12, 48:23,
50:3, 50:19, 52:4,
53:19, 55:4,
56:11, 57:23,
60:4, 60:14, 62:9,
62:15, 64:9,
64:19, 65:6,
65:17, 65:21
**theirs** [1] - 64:22
**themselves** [3] -
4:13, 4:24, 65:19
**theories** [4] - 9:8,
9:14, 30:19, 37:6
**theory** [3] - 34:18,
37:13, 37:19
**they've** [1] - 56:5
**thinking** [1] - 9:6
**thinks** [1] - 32:17
**third** [1] - 7:22
**Thomas** [1] - 5:18
**THOMAS** [1] - 3:6
**three** [47] - 6:24,
7:4, 7:8, 7:13,
7:20, 9:6, 9:10,
9:15, 12:5, 12:15,
12:24, 13:16,
13:19, 16:11,
16:18, 17:1, 17:3,
17:5, 17:9, 19:17,
19:19, 21:13,

32:2, 32:13, 33:1,
34:9, 35:7, 35:16,
35:19, 36:24,
38:3, 38:10, 39:5,
39:18, 40:14,
44:24, 45:9,
45:20, 45:21,
47:23, 48:6, 49:4,
49:6, 52:16,
53:16, 54:4
**throughout** [2] -
10:12, 34:7
**throw** [1] - 6:17
**thrown** [1] - 30:7
**timing** [4] - 7:14,
44:17, 46:2,
52:12
**titled** [1] - 11:14
**Tobin** [1] - 5:7
**TOBIN** [1] - 2:17
**today** [6] - 4:4, 4:8,
4:20, 5:7, 5:8,
66:11
**total** [1] - 53:21
**toto** [3] - 46:23,
51:3, 54:8
**towards** [1] - 19:15
**treat** [3] - 34:10,
34:12, 39:8
**tremendous** [1] -
45:4
**trial** [4] - 38:17,
44:19, 45:2,
48:17
**tricky** [1] - 50:20
**tries** [1] - 37:14
**true** [3] - 46:21,
47:7, 67:10
**try** [5] - 38:19,
43:20, 43:22,
60:19, 65:21
**trying** [3] - 30:9,
41:1, 50:13
**TUNNELL** [1] - 2:6
**turn** [3] - 27:9,
52:6, 61:19
**turns** [1] - 54:2
**two** [35] - 6:21,
6:23, 7:3, 7:20,
8:18, 9:5, 11:3,
11:11, 13:1, 14:1,
16:5, 16:8, 16:20,
17:6, 17:20,
17:23, 18:1,
28:11, 30:12,
31:23, 31:24,
33:16, 35:4,
38:11, 39:5,
45:19, 46:12,
47:2, 48:5, 48:19,

49:6, 53:4, 53:8,
53:12, 64:13
**Tyler** [1] - 5:12
**TYLER** [1] - 3:3

## U

**ultimately** [1] -
29:12
**unclear** [2] - 8:3,
59:22
**under** [3] - 33:18,
40:4, 65:7
**undue** [1] - 51:4
**unique** [2] - 43:9,
44:10
**UNITED** [1] - 1:1
**United** [1] - 1:13
**unlikely** [3] - 29:21,
55:24, 58:20
**unrelated** [1] -
17:15
**unsure** [1] - 9:23
**unusual** [5] - 29:24,
55:14, 55:19,
58:7, 58:16
**up** [22] - 8:8, 12:16,
13:10, 33:15,
35:10, 35:17,
35:18, 38:22,
42:19, 42:23,
45:14, 46:7, 47:4,
49:11, 50:17,
53:6, 57:21, 58:6,
58:9, 64:4, 64:17,
66:5

## V

**valid** [2] - 9:1,
63:22
**validity** [1] - 36:3
**various** [1] - 43:13
**vehicle** [1] - 40:9
**Veronica** [1] - 4:18
**VERONICA** [1] -
1:17
**view** [2] - 16:14,
17:3
**vista** [1] - 4:5
**Vistra** [1] - 51:18
**VISTRA** [1] - 1:6
**Vosteen** [1] - 37:10

## W

**Wagner** [1] - 2:19
**wait** [2] - 44:22,
57:20
**waited** [1] - 25:20

**waiting** [4] - 7:2,
7:4, 16:14, 32:5
**walking** [1] - 47:14
**wants** [1] - 64:5
**warrant** [1] - 25:11
**waste** [5] - 19:4,
19:5, 21:20,
21:21, 47:22
**wasted** [2] - 47:12,
55:10
**ways** [1] - 44:20
**wednesday** [1] -
1:10
**week** [1] - 64:22
**whatsoever** [1] -
56:3
**whichever** [2] -
21:13, 22:20
**whole** [2] - 39:2,
49:2
**willful** [1] - 22:24
**willfulness** [2] -
22:17, 23:7
**Wilmington** [1] -
67:12
**window** [8] - 7:17,
24:16, 40:7,
52:19, 59:7, 59:8,
59:14, 62:1
**windows** [2] -
52:18
**wish** [4] - 6:9,
61:18, 62:17,
66:11
**words** [1] - 30:24
**world** [3] - 27:18,
40:16, 43:18
**worried** [1] - 49:14
**worry** [1] - 14:19
**written** [4] - 15:19,
30:1, 53:1, 55:15

## Y

**year** [6] - 18:2,
21:17, 43:16,
58:15, 58:17,
59:8
**years** [2] - 25:18,
25:21