# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MIDWEST ENERGY EMISSIONS CORP. and MES INC., <br><br> Plaintiffs, <br><br> v. <br><br> VISTRA ENERGY CORP., ET AL., <br><br> Defendants. | C.A. No. 1:19-cv-01334-RGA-CJB <br><br> JURY TRIAL DEMANDED |

### LETTER TO THE HONORABLE CHRISTOPHER J. BURKE FROM JAMES M. LENNON IN RESPONSE TO CERT DEFENDANTS' LETTER-BRIEF REGARDING THE NEW ALLEGATIONS IN THE SECOND AMENDED COMPLAINT

Dated: December 30, 2020

**DEVLIN LAW FIRM LLC**
James M. Lennon (No. 4570)
1526 Gilpin Avenue
Wilmington, DE 19806
(302) 449-9010
jlennon@devlinlawfirm.com

*Attorneys for Plaintiffs Midwest Energy Emissions Corp. and MES Inc.*

December 30, 2020

**VIA CM/ECF**

The Honorable Christopher J. Burke
United States Magistrate Judge
District of Delaware
844 N. King St., Unit 28, Room 2325
Wilmington, DE 19801

>   RE:   *Midwest Energy Emissions Corp., et al. v. Vistra Energy Corp. et al.,*
>   C.A. No. 1:19-cv-01334-RGA-CJB

Dear Judge Burke:

Pursuant to the Court's December 10, 2020 Oral Order (D.I. 254) ME2C responds to the letter brief filed by the CERT Defendants regarding the new allegations in the Second Amended Complaint ("SAC").

For the reasons stated in ME2C's opposition to the Moving RC Defendants' motion to dismiss, ME2C's First Amended Complaint ("FAC") sufficiently pleads its claims. Nonetheless, the SAC contains additional allegations to further support those claims based on arguments made in the CERT Defendants' motion to dismiss.

The bulk of the CERT Defendants' criticism of the SAC stems from ME2C's allegations that some CERT Defendants directly operate refined coal facilities at issue, while others may do so indirectly. However, this form of pleading is entirely permissible. A patent owner may plead infringement based on direct infringement or based on control of a subsidiary. *See IOENGINE, LLC v. PayPal Holdings, Inc.*, No. CV 18-452-WCB, 2019 WL 330515, at \*12 (D. Del. Jan. 25, 2019). Accordingly, ME2C has adequately alleged infringement by each of the CERT Defendants as the SAC alleges:

> 212. Each of Arthur J. Gallagher & Co., Gallagher Clean Energy, LLC, and AJG Coal, LLC; DTE REF Holdings, LLC, DTE REF Holdings II LLC; CERT Coal Holdings LLC, CERT Holdings LLC, CERT Holdings 2018, LLC, CERT Operations LLC, CERT Operations II LLC, CERT Operations III LLC, CERT Operations IV LLC, CERT Operations V LLC, CERT Operations RCB LLC; AJG Iowa Refined Coal LLC, Joppa Refined Coal LLC, Thomas Hill Refined Coal LLC, Wagner Coaltech LLC, Walter Scott Refined Coal LLC, Louisa Refined Coal, LLC, Belle River Fuels Company, LLC, Arbor Fuels Company, LLC, Portage Fuels Company, LLC, Brandon Shores Coaltech, LLC, Senescence Energy Products, LLC, Rutledge Products, LLC, Alistar Enterprises, LLC and John Doe LLCs operate at least one Accused RC Facility either by directly owning the facility, directly controlling the facility, or indirectly exercising control of the facility through a subsidiary that is either named above or referred to as a John Doe LLC. For example, Arthur J. Gallagher & Co. owns and controls Walter Scott Refined Coal LLC which directly operates a refined coal facility at a power plant

>that directly infringes by supplying bromine-containing refined coal to a combustion chamber and injecting activated carbon sorbent downstream of the combustion chamber.

Even if the Court concludes that *IOENGINE* is incorrect—and the CERT Defendants offer no reason for the Court to reach such a conclusion—the SAC separately alleges that several of the CERT Defendants directly control the Accused RC Facilities at issue. The CERT Defendants do not dispute that these allegations avoid their group pleading criticism. Accordingly, ME2C's claims against those Defendants certainly should not be dismissed:

> 213. At least CERT Operations IV LLC, CERT Operations V LLC, CERT Operations RCB LLC; AJG Iowa Refined Coal LLC, Joppa Refined Coal LLC, Thomas Hill Refined Coal LLC, Wagner Coaltech LLC, Walter Scott Refined Coal LLC, Louisa Refined Coal, LLC, Belle River Fuels Company, LLC, Arbor Fuels Company, LLC, Portage Fuels Company, LLC, Brandon Shores Coaltech, LLC, Senescence Energy Products, LLC, Rutledge Products, LLC, and Alistar Enterprises, LLC each directly operated and operate an Accused RC Facility that provides bromine-containing refined coal to a coal plant that directly infringes by combining the refined coal provided by those companies with use of activated carbon sorbents downstream of the combustion chamber. Those entities also perform the associated post-emission control section 45 testing.

Regardless, ME2C's complaint states a claim against the CERT Defendants even absent these allegations as explained in response to the CERT Defendants motion to dismiss. Overall, Defendants criticism of ME2C's use of group pleading misstates the law, fails to show that the complaint provides adequate notice of ME2C's claims, and these arguments were waived. *See* D.I. 190 at 4-7.

The CERT Defendants also argue that the SAC admits that the activated carbon step need not be performed. This is incorrect. The FAC and SAC explain that, when the CERT Defendants supply refined coal to a coal plant that uses activated carbon injection, they must perform post-emission control testing to qualify that coal for section 45 tax credits. As a result of that testing process, the CERT Defendants must obtain information regarding the plant's use of activated carbon injection. Thus, when they supply refined coal to those coal plants, they know that the refined coal will be used with activated carbon injection in a manner that result in infringing conduct (for purposes of contributory infringement), and they intend for that conduct to occur so that they can obtain section 45 tax credits (for purposes of induced infringement). D.I. 214-1 at ¶ 87 ("To be clear, Defendants refer to the above described type of testing as 'post-emission control testing,' Each of the entities identified with the names AJG, DTE, CERT, and the RC Defendants perform post-emission control testing at least with respect to each power plant they provide refined coal to, if the power plant uses activated carbon injection. Performance of this testing constitutes direct infringement of at least one claim of each of the patents-in-suit, and providing the refined coal to these power plants also induces and contributes to infringement at the power plant.") Taken as true, these allegations support claims for direct and indirect infringement.

While it is hypothetically possible for an entity to provide refined coal to a plant that does not use activated carbon injection, that is not the accused conduct at issue in this case. When the

2

CERT Defendants prepare the specific refined coals at issue in this case, they are formulated and certified for use only at a plant that uses activated carbon injection. That conduct constitutes indirect infringement. D.I. 214-1 at ¶ 105 ("When AJG, DTE, CERT, Chem-Mod, and/or one of the RC Defendants provides refined coal to a coal plant with an activated carbon injection system, they intend for the plant to continue to operate that system by injecting sorbent comprising activated carbon so that these Defendants may continue to receive the benefits of Section 45 tax credits."); ¶ 106 ("Thus, when AJG, DTE, CERT, Chem-Mod, and/or one of the RC Defendants provides refined coal on the conveyance leading to the combustion chamber of a coalfired power plant with an activated carbon injection system, AJG, DTE, CERT, Chem-Mod, and the RC Defendants know that this refined coal has been specifically tailored and certified for that plant, and that the provided refined coal has no substantial non-infringing use (i.e., it cannot reasonably be used for purposes other than to be combusted at the plant where sorbent comprising activated carbon will later be injected)."). Moreover, because the CERT Defendants actually perform each step of at least one claim of each patent when performing these certification tests, they also directly infringe. D.I. 214-1 at ¶ 87.

Finally, the CERT Defendants assert that the SAC does not separately allege performance of one step of one claim of the '114 patent and the '430 patent. However, as explained above, ME2C alleges that each limitation of at least one claim of these patents is performed by these Defendants. D.I. 214-1 at ¶ 87. In particular, ME2C alleges that these Defendants form the cleaned gas at issue in order to show that the refined coal meets the mercury reduction requirements necessary to qualify for section 45 tax credits. D.I. 214-1 at ¶ 86. Regardless, "the Federal Rules of Civil Procedure do not require a plaintiff to plead facts establishing that each element of an asserted claim is met." *See Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018) (quoting *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1331 (Fed. Cir. 2012)). Thus, this is no basis to grant a motion to dismiss.

The remainder of the CERT Defendants' letter brief addresses issues that are not specific to the SAC. As explained in ME2C's response to the CERT Defendants' motion to dismiss, those arguments are meritless.

Respectfully,

*/s/ James M. Lennon*

James M. Lennon (No. 4570)

cc:     Clerk of the Court and Counsel of Record (via CM/ECF)