**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| MIDWEST ENERGY EMISSIONS CORP. and MES INC., | |
| Plaintiffs, | |
| v. | C.A. No. 1:19-cv-01334-RGA-CJB |
| VISTRA ENERGY CORP., ET AL., | JURY TRIAL DEMANDED |
| Defendants. | |

**LETTER TO THE HONORABLE CHRISTOPHER J. BURKE FROM JAMES M. LENNON IN RESPONSE TO REFINED COAL DEFENDANTS' LETTER-BRIEF REGARDING THE NEW ALLEGATIONS IN THE SECOND AMENDED COMPLAINT**

Dated: December 30, 2020

**DEVLIN LAW FIRM LLC**
James M. Lennon (No. 4570)
1526 Gilpin Avenue
Wilmington, DE 19806
(302) 449-9010
jlennon@devlinlawfirm.com

*Attorneys for Plaintiffs Midwest Energy Emissions Corp. and MES Inc.*

December 30, 2020

**VIA CM/ECF**

The Honorable Christopher J. Burke
United States Magistrate Judge
District of Delaware
844 N. King St., Unit 28, Room 2325
Wilmington, DE 19801

        RE:    *Midwest Energy Emissions Corp., et al. v. Vistra Energy Corp. et al.*,
                C.A. No. 1:19-cv-01334-RGA-CJB

Dear Judge Burke:

Pursuant to the Court's December 10, 2020 Oral Order (D.I. 254) ME2C responds to the letter brief filed by the Refined Coal LLC Defendants and RC Defendants (collectively the "Moving RC Defendants") regarding the new allegations in the Second Amended Complaint ("SAC").

For the reasons stated in ME2C's opposition to the Moving RC Defendants' motion to dismiss, ME2C's First Amended Complaint ("FAC") sufficiently pleads its claims. Nonetheless, the SAC contains additional allegations to further support those claims based on arguments made in the Moving RC Defendants' motion to dismiss.

### The SAC Contains Additional Support for ME2C's Indirect Infringement Claims

With respect to ME2C's claims for indirect infringement, the Moving RC Defendants had argued that, to state a claim for indirect infringement, ME2C would need to allege that they perform post-emission control testing. Mot. at 8. In response, ME2C explained that the FAC contained such an allegation, and simply did not used the Moving RC Defendants' nomenclature. To remove any doubt, the SAC alleges that when these Defendants supply refined coal to coal plants that used activated carbon injection, they perform the infringing post-emission control testing: "To be clear, Defendants refer to the above described type of testing as 'post-emission control testing,' Each of the entities identified with the names AJG, DTE, CERT, and the RC Defendants perform post-emission control testing at least with respect to each power plant they provide refined coal to, if the power plant uses activated carbon injection. Performance of this testing constitutes direct infringement of at least one claim of each of the patents-in-suit, and providing the refined coal to these power plants also induces and contributes to infringement at the power plant." D.I. 214-1 at ¶ 87. Based on the admissions made in the Moving RC Defendants' own motion, this allegation confirms that ME2C has stated a claim for direct and indirect infringement against those Defendants.

The Moving RC Defendants attempt to minimize this allegation by characterizing it is "conditional," but that is incorrect. ME2C has alleged, that when the Moving RC Defendants supply refined coal to coal plants that use activated carbon injection, they perform the infringing post-emission control testing and further induce infringement of ME2C's patents. This is not a

1

conditional statement, it is just an identification of which coal plants are the direct infringers being induced by the Moving RC Defendants. For example, the SAC alleges that when the Moving RC Defendants supply refined coal to coal plants that use activated carbon injection, they know that the refined coal will be used with activated carbon injection in a manner that results in infringing conduct (for purposes of contributory infringement), and they intend for that conduct to occur so that they can obtain section 45 tax credits (for purposes of induced infringement). D.I. 214-1 at ¶ 105 ("When AJG, DTE, CERT, Chem-Mod, and/or one of the RC Defendants provides refined coal to a coal plant with an activated carbon injection system, they intend for the plant to continue to operate that system by injecting sorbent comprising activated carbon so that these Defendants may continue to receive the benefits of Section 45 tax credits."); ¶ 106 ("Thus, when AJG, DTE, CERT, Chem-Mod, and/or one of the RC Defendants provides refined coal on the conveyance leading to the combustion chamber of a coalfired power plant with an activated carbon injection system, AJG, DTE, CERT, Chem-Mod, and the RC Defendants know that this refined coal has been specifically tailored and certified for that plant, and that the provided refined coal has no substantial non-infringing use (i.e., it cannot reasonably be used for purposes other than to be combusted at the plant where sorbent comprising activated carbon will later be injected).").

The remainder of the Moving RC Defendants' letter brief merely reiterates arguments raised in its motion to dismiss briefing or otherwise attacks the FAC instead of new allegations in the SAC. For the reasons stated in response to their motion to dismiss these arguments are misguided.

The Moving RC Defendants criticize the FAC's reference to the publicly available refined coal contract attached to the FAC. Defendants fail to explain how this issue is related to new allegations in the SAC. Regardless, their assertion is incorrect. In particular, the Moving RC Defendants state: "But nothing in the contract shows actual use of activated carbon in conjunction with refined coal." Not so. The contract requires the coal plant operator to report the amount of activated carbon in use to Belle River Fuels (D.I. 130-6 at sec. 8.2(e), exhibit C), and it requires combustion of the refined coal at that plant (D.I. 130-6 at sec. 8.2(d) "Buyer hereby covenants that it will use all Refined Coal purchased hereunder solely for use as fuel in the Belle River Power Plant."). Regardless, ME2C as noted above, ME2C has sufficiently alleged claims of indirect infringement such that Defendants' criticisms of ME2C's supporting evidence are better directed to the discovery process, not ME2C's pleadings.

The Moving RC Defendants also criticize the FAC's use of group allegations. These arguments are meritless, but regardless, the SAC also alleges: "At least CERT Operations IV LLC, CERT Operations V LLC, CERT Operations RCB LLC; AJG Iowa Refined Coal LLC, Joppa Refined Coal LLC, Thomas Hill Refined Coal LLC, Wagner Coaltech LLC, Walter Scott Refined Coal LLC, Louisa Refined Coal, LLC, Belle River Fuels Company, LLC, Arbor Fuels Company, LLC, Portage Fuels Company, LLC, Brandon Shores Coaltech, LLC, Senescence Energy Products, LLC, Rutledge Products, LLC, and Alistar Enterprises, LLC each directly operated and operate an Accused RC Facility that provides bromine-containing refined coal to a coal plant that directly infringes by combining the refined coal provided by those companies with use of activated carbon sorbents downstream of the combustion chamber. Those entities also perform the associated post-emission control section 45 testing." D.I. 214-1 at ¶ 213; *see also id.* at ¶ 212 ("Arthur J. Gallagher & Co. owns and controls Walter Scott Refined Coal LLC which directly operates a refined coal facility at a power plant that directly infringes by supplying bromine-

2

containing refined coal to a combustion chamber and injecting activated carbon sorbent downstream of the combustion chamber."). The Moving RC Defendants have no response to these allegations.

### **The SAC Contains Additional Support for ME2C's Direct Infringement Claims**

With respect to ME2C's allegations of direct infringement, the SAC alleges that the Moving RC Defendants perform each step of at least one claim in each asserted patent. D.I. 214-1 ¶ 87; *see also id.* ¶¶ 250, 253, 256, 259, 287, 290, 293, 296, 300, 326, 329, 332, 358, 361, 364, 390, 393, 396, 399. It also identifies the specific conduct that causes infringement, i.e., performing the described post-emission control testing. D.I. 214-1 at ¶¶ 82-87. Nothing more is required at the pleading stage. *See, e.g., Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018); *see also NNCrystal US Corp. v. Nanosys, Inc.*, No. CV 19-1307-RGA, 2020 WL 616307, at *3 (D. Del. Feb. 10, 2020) (explaining that to plead direct infringement a patent owner need only identify the accused products and allege that they infringe).

The Moving RC Defendants also criticize the SAC for failing to identify by name each coal plant for which an RC Defendant has performed post-emission control testing. However, this level of detail is not required at the pleading stage. *Promos Techs., Inc. v. Samsung Elecs. Co.*, No. CV 18-307-RGA, 2018 WL 5630585, at *3 (D. Del. Oct. 31, 2018) (explaining that a patent owner may plead direct infringement without identifying specific accused product names); *see also In re Bill of Lading*, 681 F.3d at 1336 ("To state a claim for indirect infringement, therefore, a plaintiff need not identify a specific direct infringer if it pleads facts sufficient to allow an inference that at least one direct infringer exists."). This is particularly true where this type of information is maintained as confidential by the Defendants. *See NNCrystal US Corp. v. Nanosys, Inc.*, No. CV 19-1307-RGA, 2020 WL 616307, at *3 (D. Del. Feb. 10, 2020) ("pleading upon information and belief is permissible under Twombly/Iqbal where the requisite facts are peculiarly within the defendant's knowledge or control."). In fact, in *Nalco* the Federal Circuit found that the patent owner had stated a claim for direct infringement based on allegations of section 45 refined coal testing without the need to name each coal plant at issue. *See Nalco*, 883 F.3d at 1350 ("the 4AC plausibly states a claim that Defendants direct or control use of the Chem–Mod Solution in connection with the pilot-scale and full-scale testing of the solution."). Similarly here, the SAC provides notice that the Defendants' performing post-emission control testing with activated carbon constitutes direct infringement. Accordingly, it states a viable claim for direct infringement.

The Moving RC Defendants also contend that the SAC fails to allege the "when" and "what" of the accused infringement. But these assertions fail to acknowledge that the SAC alleges direct infringement based on their performance of post-emission control testing. For example, they argue that ME2C failed to allege that they perform the steps of injecting activated carbon or combusting coal because ME2C alleges that these steps are performed by coal plants. To be clear, ME2C alleges that coal plants perform those steps during ordinary operation. D.I. 214-1 at ¶¶ 252, 255. ME2C also alleges that the Moving RC Defendants also perform those steps during post-emission control testing. D.I. 214-1 at ¶¶ 87, 253, 256. Taken as true, these allegations state a claim for direct infringement.

Finally, the Moving RC Defendants assert that the SAC does not separately allege performance of one step of one claim of the '114 patent. However, as explained above, ME2C alleges that each limitation of at least one claim of the '114 patent is performed by these Defendants. D.I. 214-1 at ¶ 87. In particular, ME2C alleges that these Defendants form the cleaned gas at issue in order to show that the refined coal meets the mercury reduction requirements necessary to qualify for section 45 tax credits. D.I. 214-1 at ¶ 86. Regardless, "the Federal Rules of Civil Procedure do not require a plaintiff to plead facts establishing that each element of an asserted claim is met." *See Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018) (quoting *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1331 (Fed. Cir. 2012)). Thus, this is no basis to grant a motion to dismiss.

### **The Moving RC Defendants Fail to Show that Dismissal with Prejudice Is Warranted**

First, the Moving RC Defendants criticize the SAC for making group allegations, but as explained above, the SAC contains addition individualized allegations. Moreover, because the Moving RC Defendants waived this argument, it cannot justify dismissal of ME2C's complaint, let alone dismissal with prejudice. *See* D.I. 190 at 4-5.

Second, the Moving RC Defendants argue that ME2C has failed to plead inducement of the activated carbon step, but the FAC and SAC allege that "[w]hen AJG, DTE, CERT, Chem-Mod, and/or one of the RC Defendants provides refined coal to a coal plant with an activated carbon injection system, they intend for the plant to continue to operate that system by injecting sorbent comprising activated carbon so that these Defendants may continue to receive the benefits of Section 45 tax credits." D.I. 214-1 at ¶ 105. This directly addresses the alleged deficiency in ME2C's complaint.

Third, the Moving Refined Coal Defendants argue that ME2C failed to allege that refined coal has no substantial non-infringing use. However, this conflates the general term "refined coal," with the specific refined coals accused of infringement. For example, the FAC and SAC allege "when AJG, DTE, CERT, Chem-Mod, and/or one of the RC Defendants provides refined coal on the conveyance leading to the combustion chamber of a coalfired power plant with an activated carbon injection system, AJG, DTE, CERT, Chem-Mod, and the RC Defendants know that this refined coal has been specifically tailored and certified for that plant, and that the provided refined coal has no substantial non-infringing use (i.e., it cannot reasonably be used for purposes other than to be combusted at the plant where sorbent comprising activated carbon will later be injected)." D.I. 214-1 at ¶ 106. Again, this directly responds to the alleged deficiency in ME2C's complaint.

Fourth, the Moving Refined Coal Defendants argue that they lack pre-suit notice of the patents, but they do not deny that the SAC alleges that ME2C at least provided notice of the patents on June 29, July 15, and September 21 2020. D.I. 214-1 at ¶¶ 201-203.

Fifth, the Moving RC Defendants argue that they disputed ME2C's waiver arguments. However, ME2C explained that Defendants waived their current argument by failing to argue that ME2C's indirect infringement allegations were deficient based on group pleading. In response, the Moving RC Defendants argued that they objected to ME2C's joint enterprise allegations based on insufficient identification of the entities involved. D.I. 205 at 1-2. But that just proves ME2C's

4

point that they failed to allege such a deficiency with respect to ME2C's indirect infringement allegations.

      In short, ME2C has directly responded to each of the alleged deficiencies in its pleading such that dismissal with prejudice would be inappropriate.

                                      Respectfully,

                                      */s/ James M. Lennon*

                                      James M. Lennon (No. 4570)

cc:     Clerk of the Court and Counsel of Record (via CM/ECF)