IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MIDWEST ENERGY EMISSIONS CORP. and MES INC., <br><br> Plaintiffs, <br><br> v. <br><br> AEP GENERATION RESOURCES INC., *et al.*, <br><br> Defendants. | Case No. 1:19-cv-01334-RGA-CJB |

**LETTER REPLY BRIEF TO THE HONORABLE CHRISTOPHER J. BURKE FROM ROBERT S. SAUNDERS IN FURTHER RESPONSE TO THE INSUFFICIENCY OF THE NEW ALLEGATIONS IN THE SECOND AMENDED COMPLAINT AS TO <u>CLAIMS AGAINST THE CERT DEFENDANTS</u>**

OF COUNSEL:

Douglas R. Nemec
Leslie A. Demers
SKADDEN, ARPS, SLATE, MEAGHER &
 FLOM LLP
One Manhattan West
New York, New York 10001-8602
Tel.: (212) 735-3000
douglas.nemec@skadden.com
leslie.demers@skadden.com

Robert S. Saunders (ID No. 3027)
Nicole A. DiSalvo (ID No. 4662)
Jessica R. Kunz (ID No. 5698)
SKADDEN, ARPS, SLATE, MEAGHER &
 FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
Tel.: (302) 651-3000
Fax: (302) 651-3001
rob.saunders@skadden.com
nicole.disalvo@skadden.com
jessica.kunz@skadden.com

*Attorneys for Defendants CERT Coal Holdings LLC, CERT Holdings LLC, CERT Holdings 2018, LLC, CERT Operations LLC, CERT Operations II LLC, CERT Operations III LLC, CERT Operations IV LLC, CERT Operations V LLC and CERT Operations RCB LLC*

January 6, 2021

**VIA CM/ECM**

The Honorable Christopher J. Burke
United States Magistrate Judge
District of Delaware
844 N. King St, Unit 28, Room 2325
Wilmington, Delaware 19801

      RE:   *Midwest Energy Emissions Corp. et al. v. AEP Generation Resources Inc. et al.* – Case No. 1:19-cv-01334-RGA-CJB

Dear Judge Burke:

I write on behalf of the CERT Defendants to reply to the arguments in ME2C's letter filed on December 30, 2020 ("Response Letter") (D.I. 259) in response to the CERT Defendants' letter brief regarding the insufficiency of the new allegations in the SAC ("Letter") (D.I. 256).[1] For the reasons discussed below, the Response Letter merely underscores that the SAC, like the FAC and the Original Complaint, is nothing more than a web of assumptions, hypotheticals and speculation. The pleading is replete with "ifs" and other qualifiers because ME2C cannot, either affirmatively or on information and belief, plead facts sufficient to support a claim against all or any one of the CERT Defendants. Accordingly, ME2C's claims in the SAC should be dismissed with prejudice.

### I. The Response Letter Ignores the CERT Defendants' Argument That The SAC Continues to Improperly Lodge Amorphous Group Allegations at "CERT"

ME2C argues that "[t]he bulk of the CERT Defendants' criticism of the SAC stems from ME2C's allegations that some CERT Defendants directly operate refined coal facilities at issue, while others may do so indirectly." (D.I. 259 at 1.) The CERT Defendants are unsure what this statement means, but surely it does not accurately characterize the thrust of the Letter. That it took three tries for ME2C to finally specify that only three of the CERT Defendants even arguably operate an Accused RC Facility proves how woefully deficient the Original Complaint and the FAC were. But it does not improve the quality of ME2C's allegations against any or all of the CERT Defendants because, despite admitting that the CERT Defendants are differently situated, the SAC continues to improperly lodge amorphous group allegations at "CERT." (D.I. 256 at 1-3.)

In a perfunctory single sentence, ME2C argues that "Defendants' criticism of ME2C's use of group pleading misstates the law, fails to show that the complaint provides adequate notice of ME2C's claims, and these arguments were waived."[2] (D.I. 259 at 2.) But ME2C does not explain how the

---

[1] Unless noted otherwise, capitalized terms not defined herein shall have the same meanings ascribed to them in the Letter and in the prior briefing on the Motion. (*See* D.I. 176, 203.)

[2] ME2C's waiver argument is meritless. As the CERT Defendants explained in the prior briefing on the Motion (*see* D.I. 203 at 1-2), they raised this issue explicitly in their original motion, as

Hon. Christopher J. Burke
January 6, 2021
Page 2

CERT Defendants have misstated the law, nor does it cite any authority to counter the showing that the SAC needed to "clearly allege[] that [any] [d]efendant [took] part in any *specific* infringing act." (D.I. 256 at 2 (quoting *N. Star Innovations, Inc. v. Toshiba Corp.*, No. 16-115-LPS-CJB, 2016 U.S. Dist. LEXIS 168670, at *4 (D. Del. Dec. 6, 2016) (emphasis in original)).) As detailed in the Letter, ME2C has not satisfied this burden as the SAC does not provide plausible allegations that any *single* CERT Defendant infringed the Asserted Patents. (*See* D.I. 256 at 1-3.)

## II.     The SAC Fails to Support Plausible Factual Allegations for Indirect Infringement

The Response Letter fails to salvage ME2C's indirect infringement claims for several reasons. ***First***, ME2C alleges that a patent owner may plead indirect infringement "based on control of a subsidiary." (D.I. 259 at 1.) That is false. In the Letter, the CERT Defendants explained that "it is unclear how under *any* legal principle an entity purportedly 'indirectly exercising control of [a] facility through a subsidiary' (that may be unnamed) can commit patent infringement." (D.I. 256 at 2 (emphasis in original).) The only authority that ME2C could muster in response was an unexplained citation to *IOENGINE, LLC v. PayPal Holdings, Inc.*, Nos. 18-452-WCB, 18-826-WCB, 2019 U.S. Dist. LEXIS 12195 (D. Del. Jan. 25, 2019). Yet even *IOENGINE* is inapposite. In *IOENGINE* the Court relied, among other things, on counterclaim plaintiff having specifically pled and "set forth the parent and subsidiary relationships among the three defendants." *Id.* at *35; *see Ingenico Inc. v. IOENGINE, LLC*, No. 18-826-GMS, D.I. 12, Counterclaims ¶¶276-78 (D. Del. Aug. 17, 2018). But here, as explained in the Letter (*see* D.I. 256 at 2 n.2), the SAC fails to plead any such parent and subsidiary relationship for the CERT Defendants, let alone explain how such relationship is sufficient to imbue any given CERT Defendant with the requisite knowledge and intent associated with indirect infringement committed by some unnamed subsidiary. (*See* D.I. 214-1 ¶¶20-28.) In fact, the SAC does not specifically identify a *single* purported subsidiary over which any CERT Defendant allegedly indirectly exercises control. (*See* D.I. 214-1 ¶212.) Without any allegations supporting such an agency theory, ME2C's indirect infringement claims fail.

***Second***, ME2C by ignoring aspects of the Letter effectively concedes several points. Namely, the CERT Defendants argued that the SAC does not provide any new factual allegation to support that they had knowledge of the patents or the alleged direct infringement before, at the earliest, July 17, 2019 (for the Original Asserted Patents) or June 29, 2020 (for the Newly Added Patents). (D.I. 256 at 3.) ME2C ignored this argument, thereby effectively conceding that its claims are temporally limited. Likewise, ME2C did not respond to the CERT Defendants' argument that ME2C's induced infringement claims fail because ME2C must allege that the CERT Defendants 'necessarily know and intend that the coal plants will go on to perform the Activated Carbon Step.'" (*Id.* (quoting D.I. 110 at 14).)

***Third***, ME2C contends that the Letter incorrectly "argue[s] that the SAC admits that the activated carbon step need not be performed." (D.I. 259 at 2.) Yet ME2C's own admissions – including the new admission that "it is hypothetically possible for an entity to provide refined coal to a plant that does not use activated carbon injection" – prove that the Activated Carbon Step need not be

---

reflected in the R&R. (*See* D.I. 110 at 16 (holding that the Original Complaint did not plausibly allege pre-suit knowledge by "the *CERT Defendants* (one of them, or all of them)").

Hon. Christopher J. Burke
January 6, 2021
Page 3

performed.  (*Id.*)  Citing to no specific paragraph in either the FAC or the SAC, ME2C argues that both pleadings "explain that, when the CERT Defendants supply refined coal to a coal plant that uses activated carbon injection, they must perform post-emission control testing to qualify that coal for section 45 tax credits."  (*Id.*)  But this statement does not match the reality of the SAC's specific language.  New Paragraph 87 shows that post-emission control testing is performed only "*if* the power plant uses activated carbon injection" (D.I. 214-1 ¶87 (emphasis added));  thus, the SAC – like the Asserted Patents – allows for the possibility that the Activated Carbon Step need not be performed.  Accordingly, ME2C's contributory infringement claims fail.

### III.    The SAC Fails to Provide Plausible Factual Allegations for Direct Infringement

The Response Letter also fails to salvage ME2C's narrow claim for direct infringement involving certification testing for Section 45 tax credits.  ***First***, the CERT Defendants explained in the Letter that ME2C's claim must be dismissed "because ME2C failed to allege that an Activated Carbon Step is required during Section 45 certification testing" and the SAC "can only allege pure speculation as to what *may* occur."  (D.I. 256 at 4 (emphasis in original).)  ME2C does not even address this argument in the Response Letter, thus conceding it.

***Second***, ME2C argues that the SAC pleads direct infringement because it "alleges that each limitation of at least one claim of these patents is performed by these Defendants." (D.I. 259 at 3.)  But this Court requires ME2C to plausibly allege that any CERT Defendant practices ***each*** claim element (by itself or through a third party).  *See, e.g.*, *Horatio Wash. Depot Techs. LLC v. Tolmar, Inc.*, No. 17-1086-LPS, 2018 U.S. Dist. LEXIS 187074, at *31 (D. Del. Nov. 1, 2018) (recommending dismissal of direct infringement claims where plaintiff failed to "plead[] facts relating to [each] claim limitation[] sufficient to explain why it is plausible that [d]efendants' product/acts satisfy those elements of the claims").  ME2C's conspicuous failure to allege that certain claim elements have been met, even if permissible as ME2C contends, is just the tip of the iceberg.  If the hypothetical nature of ME2C's allegations concerning certification testing were not enough to render the claim implausible, ME2C's infringement counts resolve any doubt.  Not only does ME2C not know when or if any of the CERT Defendants are involved in certification testing, they also have no idea how such testing would actually occur, thus resorting to three different alternative constructs in which the CERT Defendants might play a role in such testing.  (*See, e.g.*, D.I. 214-1 ¶275-77.)  Accordingly, because ME2C offers no evidence that all steps ***are*** performed by all CERT Defendants for the Asserted Patents, only offering once more speculation on how certification testing for Section 45 tax credits ***could be*** conducted, the claim should be dismissed.

### IV.    The Response Letter Fails to Address Joint Infringement

The Response Letter fails to address in any way the deficiencies raised in the Letter regarding the SAC's joint infringement claims, including the impact on the purported joint enterprise of "CERT" by adding four new defendants into the RC Defendant category.  (*See* D.I. 256 at 5.)  Accordingly, because ME2C's argument with respect to joint infringement was not even "cursory [or] non-responsive," the Court should dismiss the claims with prejudice.  (*See* D.I. 110 at 21-22.)

Hon. Christopher J. Burke
January 6, 2021
Page 4

                                      Respectfully submitted,

                                      /s/ *Robert S. Saunders*

                                      Robert S. Saunders (ID No. 3027)

cc:    Clerk of the Court (via CM/ECF, w/ encl.)
        Counsel of Record (via CM/ECF, w/ encl.)