IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MIDWEST ENERGY EMISSIONS CORP. and MES INC., | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) )  C.A. No. 19-1334 (RGA) (CJB) |
| ARTHUR J. GALLAGHER & CO., *et al.*, | ) ) ) |
| Defendants. | ) |

**MOVING DEFENDANTS OBJECTIONS**
**TO REPORT & RECOMMENDATION (D.I. 279)**

MORRIS, NICHOLS, ARSHT &TUNNELL LLP
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
began@mnat.com

*Attorneys for Defendants*
*AJG Coal, LLC*
*AJG Iowa Refined Coal LLC*
*Arbor Fuels Company, LLC*
*Arthur J. Gallagher & Co.*
*Belle River Fuels Company, LLC*
*Chem-Mod LLC*
*DTE REF Holdings, LLC*
*DTE REF Holdings II LLC*
*Gallagher Clean Energy, LLC*
*Joppa Refined Coal LLC*
*Louisa Refined Coal, LLC*
*Portage Fuels Company, LLC*
*Thomas Hill Refined Coal LLC*
*Wagner Coaltech LLC*
*Walter Scott Refined Coal LLC*

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Robert S. Saunders (ID No. 3027)
Nicole A. DiSalvo (ID No. 4662)
Jessica R. Kunz (ID No. 5698)
Daniel S. Atlas (ID No. 6436)
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
Tel.: (302) 651-3000
rob.saunders@skadden.com
nicole.disalvo@skadden.com
jessica.kunz@skadden.com
daniel.atlas@skadden.com

*Attorneys for Defendants*
*CERT Coal Holding, LLC,*
*CERT Holdings LLC,*
*CERT Holdings 2018, LLC,*
*CERT Operations LLC,*
*CERT Operations II LLC,*
*CERT Operations III LLC,*
*CERT Operations IV LLC,*
*CERT Operations V LLC*
*CERT Operations RCB LLC*

June 3, 2021

The Moving Defendants, as defined in D.I. 279 at 2, make these limited joint objections to certain aspects of the May 20, 2021, Report & Recommendation. D.I. 279 ("R&R"). This Court's Local Rules treat a motion to dismiss as a dispositive motion. D. Del. LR 72.1(3). When reviewing the decision of a Magistrate Judge on a dispositive matter, the Court conducts a *de novo* review. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). The Court may "accept, reject, or modify the recommended disposition" of the magistrate judge. Fed. R. Civ. P. 72(b)(3).

**I.    The R&R Misinterpreted the Law of Substantial Non-Infringing Use**

Addressing the motions to dismiss Plaintiffs' contributory infringement claim, the R&R states that the "proper inquiry is whether the accused refined coal 'as sold and delivered' lacks substantial non-infringing use." D.I. 279 at 27 (citing *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1357 (Fed. Cir. 2018); D.I. 110 at 18). From there, the R&R makes two errors, either of which, when corrected, would result in dismissal of the claim. First, the R&R misreads the test, interpreting it to require analysis of "substantial non-infringing use" by looking at whether the *buyer*—with its specific equipment and needs—must use the product in an infringing manner, rather than considering from the *seller's* perspective whether the *market* recognizes other substantial non-infringing uses for the *seller's* product. This error led to the conclusion that a coal plant buying millions of tons of refined coal could only use it with the equipment it had in place (here, the alleged activated-carbon injection ("ACI") equipment). If the R&R had, instead, focused on the accused product, a different result would have been reached. Second, the R&R analysis overlooks or discredits the pleading's acknowledgment of substantial non-infringing uses, which distinguishes the allegations here from those at issue in *Nalco*.

Accepting Plaintiffs' argument, the R&R considered the question of substantial non-infringing use with respect to ACI-using coal plants buying refined coal. Citing the Federal Circuit's decision in *Nalco*, the R&R read the requirement to evaluate the accused product "as sold

1

and delivered" to mean that non-infringing uses must be considered from the viewpoint of the plant receiving and using the millions of tons of refined coal. D.I. 279 at 27. *Nalco*, however, did not announce such a test. In that case, the Federal Circuit *was quoting from the pleading at issue in that case*: "Nalco pled that: 'As sold and delivered to the Refined Coal LLCs or operators of coalfired power plants using the Chem-Mod$^{TM}$ Solution," the "additives specifically formulated to be used with the Chem-Mod Solution in coal-fired power plants," and the refined coal itself, "have no substantial noninfringing uses." *Nalco*, 883 F.3d at 1357.

Those allegations were presumed true at the pleadings stage in *Nalco*, but they did not become law or alter the proper contributory infringement inquiry , which "focuses on whether the accused products can be used for purposes *other than* infringement." *Id.* (citing *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1338 (Fed. Cir. 2012)). In contributory infringement claims, the accused products are the products as "sold and delivered," meaning that the analysis considers non-infringing uses of those products in the form that they are delivered, not whether the recipient of the delivery actually used, uses, or would use the product in a non-infringing way.

The R&R improperly focused on whether the accused products "as sold and delivered" to ACI-using power plants lacked substantial non-infringing uses by those plants and sustained the contributory infringement claim on that basis. D.I. 279 at 17. The R&R concluded that, taken collectively, the allegations "suggest[] that *when the refined coal at issue is dropped off at the power plant*, it has no substantial non-infringing use." *Id.* at 28 (emphasis added). This is the very type of analysis rejected by *Bill of Lading*, which found that plaintiff's contributory infringement allegations amounted to "nothing more than 'if you use this device to perform the patented method, the device will infringe and has no non-infringing uses.'" *Bill of Lading*, 681 F.3d at 1338. This

approach improperly cuts "substantial non-infringing use" out of 35 U.S.C. § 271(c) for articles in commerce. Indeed, "that a product may be unavailable for simultaneous noninfringing uses while being used to infringe, is not determinative. When the product is equally capable of, and interchangeably capable of both infringing and substantial non-infringing uses, a claim for contributory infringement does not lie." *Bill of Lading*, 681 F.3d at 1338.

Moreover, the SAC's allegations are different from the allegations in *Nalco* in a crucial way: the SAC's allegations show that Refined Coal has substantial non-infringing uses. This was a key distinction between *Nalco* and *Bill of Lading*. In *Nalco*, the complaint alleged that the additives used with the accused product and the accused product itself have no substantial non-infringing uses (indeed, the infringement theory in *Nalco* was that merely burning refined coal infringed the patent-in-suit; here, by contrast, infringement requires burning refined coal in conjunction with the use of ACI). *Nalco*, 883 F.3d at 1357. In *Bill of Lading*, exhibits attached to the pleadings described non-infringing uses of the accused products that "supplie[d] the very facts which defeat [the] claims of contributory infringement." *Bill of Lading*, 681 F.3d at 1338. That is also the case here, as detailed *infra*.

## II. Using the Correct Contributory Infringement Analysis, the Claims Fail

As in *In re Bill of Lading*, Plaintiffs have pleaded themselves out of a contributory infringement claim and the R&R erred in concluding otherwise. D.I. 279 at 29. In weighing the plausibility of Plaintiffs' allegations, the R&R considered the accused products "as sold and delivered" from the perspective of the specific alleged entities: ACI-using coal-fired power plants that purchased Refined Coal ("it is *plausible* … that, *as sold and delivered to the plants*, the coal has no substantial non-infringing use"). *Id.* at 28-29 (emphasis added). Having focused on the refined coal as allegedly "tailored" or ideally suited to an infringing use by these plants, the R&R omitted considering whether such refined coal could be used in a "not-unusual" way by the plant.

3

And the pleadings described just such "non-unusual" and non-infringing uses: burning the refined coal, with an additional mercury-emission reducing system other than ACI, or with no other controls at all. The decision assumed that a power plant that was configured with an ACI system would want to use that system, and use it all the time. That left no room to consider statements in the patents and pleadings themselves showing that other non-infringing systems can be used, or that the ACI system can be turned off while combusting refined coal.

Applying the correct standard, the SAC fails to state a claim for contributory infringement because the pleadings disclose multiple substantial non-infringing uses of refined coal. The first is the use of refined coal without ACI or any additional mercury-reduction technology. Indeed, ME2C characterizes its invention as a "discover[y of] the benefits of combining halogen treatments (*e.g.*, bromine containing materials) in-flight with backend sorbents (e.g., activated carbon)." (D.I. 281 ¶ 61.) The logical predicate for this cumulative "discovery" is that the Bromine Step and the Activated Carbon Step are not always combined—i.e., that refined coal may be burned without any activated carbon. The Asserted Patents disclose this non-infringing prior art method, describing methods for reducing mercury that use bromine without any mention of activated carbon. (D.I. 281-1 ('114 Pat.) col. 2:60-3:8 (listing patent asserted in *Nalco* as prior art).).

The Asserted Patents describe a second non-infringing use of refined coal: burning refined coal with a non-carbon sorbent (i.e., a sorbent that is not "Activated Carbon"). (*Id*. col. 10:4-8.) And this is not described as an unusual or occasional use; rather, the specification states that "the use of non-carbon base sorbents and a combination of carbon and non-carbon base sorbents is also contemplated to **at least the same degree** as carbon base sorbents." (*Id.* (emphasis added).) In other words, the specification discloses the genus of backend sorbents, whereas the claims are directed only to the activated carbon species.

4

Plaintiffs argue that because the amount of bromine used to prepare a refined coal facility's product is "tailored" to the coal plant that it supplies, the refined coal can be used only by that coal plant, but that, too, is belied by the pleadings. A contract attached to the pleadings expressly contemplates the sale of the refined coal to third parties. (*See* D.I. 281-6, Section 5.2 ("Any Refined Coal produced at the Facility and not purchased by Buyer, for any reason, may be sold by Seller to third parties or otherwise disposed . . . .").) In sum, this is a rare case—like *Bill of Lading*—where the pleadings assert both that there are non-infringing uses, and that these non-infringing uses are substantial.

In reasoning to the opposite conclusion, the R&R relied upon allegations that "when engaging in Section 45 certification testing, Moving Defendants prepare a specific type of refined coal that is designed to work for a particular coal-fired power plant, and they will be aware of the plant's use of activated carbon injection (e.g., in part due to the post-emissions control testing process)." (D.I. 279 at 27.) However, tax guidance describing certification testing confirms that ACI is but one optional illustrative system for use with refined coal and permits certification testing to be conducted by measuring mercury emissions *before* "any . . . Hg [mercury] control device (such as activated carbon injection)." *See* IRS Notice 2010-54, § 6.03(1)(a)(vi).

The R&R further credited allegations that power plants "could face fines" if they were to change operations. (D.I. 279 at 27.) But ME2C's pleadings do not identify any particular law, rule, or regulation that would be violated by burning refined coal without the use of ACI, and thus give rise to fines, and Defendants know of none. Rather, the implication seems to be that emissions requirements would not be met without the concomitant use of ACI. But in the absence of any plausible factual allegation that this is so—and with multiple allegations to the contrary as detailed above—a hypothetical risk of fines is insufficient to demonstrate the lack of substantial non-

5

infringing uses. *See Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1327 (Fed. Cir. 2009) (substantial non-infringing uses are those that are not "unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental") (citation omitted).

Finally, the R&R relies upon one allegation in the SAC that, contrary to the R&R, actually undercuts Plaintiffs' claim for contributory infringement. Paragraph 107 asserts that "it is reasonable to infer that [a refined coal facility] require[s] the coal plant to combust the provided refined coal *or at least some significant portion of it* . . . " in an infringing way. D.I. 279 at 28 (emphasis added). That allegation fails to exclude substantial non-infringing alternatives. Even if only a "significant portion" of the refined coal is expected to be burned in an infringing manner (as alleged)—that allegation leaves ample room for a substantial amount of such coal to be used in a non-infringing manner. In their third attempt to state a claim, Plaintiffs chose to plead paragraph 107 in a manner falling far short of what is required to allege no substantial non-infringing use.

Not only does the R&R incorrectly conclude that paragraph 107 pleads elements of contributory infringement, but the R&R discredits Defendants' arguments as "clever" that this paragraph is an affirmative pleading that at least a portion of the refined coal—even "as sold and delivered"—is plausibly not used in an infringing way. *Id.* at 29. The R&R concluded that the allegation that Moving Defendants require the coal plant to "combust the provided refined coal *or at least some significant portion of it*" in an infringing way "can . . . mean that only a *less-than-significant* portion of the provided refined coal (if any) might somehow end up being utilized in a non-infringing manner." D.I. 279 at 29 (emphasis in R&R). But that misses the key point that the allegation is true even if the Moving Defendants only require the coal plant to combust a "significant portion" of the refined coal "in an infringing way"; subtracting away, say a "significant

6

portion" of even 50% of the coal leaves half that can be used in a non-infringing way. The R&R erroneously concluded that such non-infringing uses "would be unusual or occasional—i.e., not "substantial."" But 50% surely is substantial as a matter of law.

Had the R&R applied the correct legal standard, it would have focused on the *form* in which the accused products are "sold and delivered," and whether such refined coal has substantial non-infringing uses—and concluded that Plaintiffs' admitted non-infringing uses are substantial and defeat their contributory infringement claims. By interpreting "as sold and delivered" to look to whether the receiving plant itself would be interested in other uses, the R&R committed legal error.

### III.   The Dismissal of Claims Against Certain Defendants On Group Pleading/Lumping Grounds Should Be With Prejudice.

The R&R properly recommended dismissal of all claims against twelve of the Moving Defendants (the "Twelve Movants") on group pleading/lumping grounds. (D.I. 279 at 12, and n.7.) However, the R&R's recommendation that such claims be dismissed without prejudice is incorrect because it gives undue weight to the fact that the claims were not previously dismissed on such grounds. All claims against those Twelve Movants should be dismissed with prejudice because it would be futile for ME2C to attempt to overcome this deficiency. (*Id.* at 42.)

"[D]ismissal of a count in a complaint with prejudice is appropriate if amendment would be inequitable or futile." *Perlmutter v. Salton, Inc.*, C.A. No. 09–690–GMS, 2010 WL 3834040, at *5 (D. Del. Sept. 24, 2010), *aff'd sub nom. Perlmutter v. Russell Hobbs, Inc.*, 450 Fed. Appx. 161 (3d Cir. 2011) (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)). Futility does not depend on whether certain claims have for "the first time [] been addressed" by the Court, as suggested in the R&R. (D.I. 279 at 42.) Rather, where, as here, plaintiff "has already amended the complaint once, and the deficiencies of the amended complaint appear to be incurable,"

7

dismissal with prejudice is appropriate because granting leave to amend "would be futile." *Perlmutter*, 2010 WL 3834040, at *5.[1]

Here, ME2C's own inaction proves that the SAC's deficiencies regarding group pleading are incurable; thus, any further amendment to the SAC would be futile. The CERT Defendants and Moving Refined Coal Defendants first put ME2C on notice of their objections on group pleading/lumping grounds in their respective briefs in support of motions to dismiss the original Complaint. (*See, e.g.*, D.I. 50 at 13; D.I. 56 at 16-17; D.I. 84 at 2, 6.) Indeed, the June 18, 2020 R&R reflected that ME2C had lumped at least the CERT Defendants together. (*E.g.*, D.I. 110 at 16 (holding that the original complaint did not plausibly allege pre-suit knowledge by "the CERT Defendants (one of them, or all of them)").) The CERT Defendants and Moving Refined Coal Defendants then renewed their objections to the FAC on group pleading/lumping grounds (D.I. 177 at 6; D.I. 179 at 8-9), and objected *again* to the SAC on this basis (D.I. 256 at 1-3, D.I. 257 at 5), affording ME2C a third proverbial bite at the apple to cure its defective pleading. Each time, ME2C declined to cure this deficiency and decided instead to rest on a vague theory of liability based on "indirectly exercise[] control" of that facility "through a subsidiary," (D.I. 279 at 9), which the Court rejected in the R&R. (*Id.* at 8-11.) ME2C's decision not to replead shows that the group pleading/lumping defect cannot be cured. *See Walker Digital*, 2013 WL 5799912, at *2.

ME2C should not be given a *fourth* bite at the apple to plead claims against the Twelve Movants where such an amendment would be futile. *See Abbott*, 2021 WL 1168958, at *4.

---

[1] *See also Abbott v. Mette*, C.A. No. 20-cv-131-RGA, 2021 WL 1168958, at *4 (D. Del. Mar. 26, 2021) (rejecting request for leave to amend as the court "d[id] not read *Alston* to mandate curative amendments ad infinitum in the event that a defendant may prevail on a motion to dismiss"); *Walker Digital, LLC v. Expedia, Inc.*, 2013 WL 5799912, at *2 (D. Del. Oct. 25, 2013) (dismissing with prejudice where "plaintiff was offered multiple opportunities to cure").

8

**IV.     The R&R Did Not Address the RC Defendants' Argument About Pre-Suit Knowledge**

The R&R correctly concludes that the SAC fails to plead that any non-dismissed CERT Defendant had the requisite intent for induced infringement, at least before the complaints were served, because there are no plausible allegations that such defendants had knowledge of the patents before receiving the complaints ("pre-suit knowledge"). D.I. 279 at 16-20. The R&R erred, however, in failing to reach the same conclusion regarding the essentially identical inducement claims directed against the non-dismissed RC Defendants. Indeed, the R&R did not address the RC Defendants' argument at all.

In their motions to dismiss, the RC Defendants argued that the knowledge and intent allegations were inadequate as a matter of law. See D.I. 177 at 7 ("There are simply no allegations that lead to the plausible inference that any specific Movant had the knowledge and intent required for claims of indirect infringement."). Citing this Court's decision in *Neology, Inc. v. Kapsch Tafficcom IVHS, Inc.*, No. 13-2052-LPS, 2014 WL 4675316, at *7 (D. Del. Sept. 19, 2014), the RC Defendants further argued that the FAC failed to "plead facts that individual Movants possessed the requisite knowledge and intent" for induced infringement. D.I. 177 at 12. The RC Defendants' brief addressed allegations that the FAC aimed specifically at RC Defendants AJG and Chem-Mod, whom the R&R recommends dismissing entirely from the case. RC Defendants argued that as a matter of law, even the specific allegations against *those* defendants "do not provide the basis for an inference of knowledge." *Id*. at 12, n. 7 (citing allegations that Defendants AJG and Chem-Mod had knowledge of the patents because they "[w]ork[ed] in the same industry or [went] to the same conference as an inventor").

The briefing then turned to the other RC Defendants, and argued that "if such allegations [directed to AJG and Chem-Mod] do not support an inference regarding . . . Movants [AJG and Chem-Mod], they are certainly inadequate to plead plausibly that the other Movants had such

9

knowledge" of the patents. *Id.* The R&R appeared to agree with that proposition, concluding that the specific allegations directed to AJG and Chem-Mod fail to allege pre-suit knowledge, and that the allegations against the CERT Defendants (which are identical to those made against the other RC Defendants), fail to allege pre-suit knowledge. The R&R, however, omitted the non-dismissed RC Defendants (*i.e.*, RC Defendants other than AJG and Chem-Mod) from its analysis resolving the intent arguments, and from its recommendations.

Because the original Complaint named more than forty defendants, the defendants have worked to avoid burdening the Court with duplicative and repetitive arguments, by making joint presentations on common legal issues and focusing separate briefing on defendant-specific points.[2] Thus, the RC Defendants addressed the intent allegations specifically directed to AJG and Chem-Mod in their briefing, and then incorporated by reference the CERT Defendants' brief for a detailed discussion of why the remaining pre-suit knowledge allegations failed. *See* D.I. 177 at 12, n.7. ("Movants adopt the CERT Defendants' arguments relating to the FAC's failure to plead the knowledge and intent required for induced, contributory, and willful infringement.").

When allegations directed only to the Twelve Movants are put aside, the pre-suit knowledge allegations directed against the RC Defendants are no different from those lodged against the CERT Defendants, and should be dismissed for the same reasons.

## CONCLUSION

The Report & Recommendations should be adopted by this Court, subject to the modifications set forth herein.

---

[2] Likewise, the parties divided the issues among counsel during oral argument, with CERT's counsel taking the lead on intent and knowledge issues.

| | |
|---|---|
| MORRIS, NICHOLS, ARSHT &TUNNELL LLP | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP |
| */s/ Brian P. Egan* | */s/ Jessica R. Kunz* |
| Jack B. Blumenfeld (#1014)<br>Brian P. Egan (#6227)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899<br>(302) 658-9200<br>jblumenfeld@mnat.com<br>began@mnat.com | Robert S. Saunders (ID No. 3027)<br>Nicole A. DiSalvo (ID No. 4662)<br>Jessica R. Kunz (ID No. 5698)<br>Daniel S. Atlas (ID No. 6436)<br>One Rodney Square<br>P.O. Box 636<br>Wilmington, Delaware 19899-0636<br>Tel.: (302) 651-3000<br>rob.saunders@skadden.com<br>nicole.disalvo@skadden.com<br>jessica.kunz@skadden.com<br>daniel.atlas@skadden.com |
| *Attorneys for Defendants*<br>*AJG Coal, LLC*<br>*AJG Iowa Refined Coal LLC*<br>*Arbor Fuels Company, LLC*<br>*Arthur J. Gallagher & Co.*<br>*Belle River Fuels Company, LLC*<br>*Chem-Mod LLC*<br>*DTE REF Holdings, LLC*<br>*DTE REF Holdings II LLC*<br>*Gallagher Clean Energy, LLC*<br>*Joppa Refined Coal LLC*<br>*Louisa Refined Coal, LLC*<br>*Portage Fuels Company, LLC*<br>*Thomas Hill Refined Coal LLC*<br>*Wagner Coaltech LLC*<br>*Walter Scott Refined Coal LLC* | *Attorneys for Defendants*<br>*CERT Coal Holding, LLC,*<br>*CERT Holdings LLC,*<br>*CERT Holdings 2018, LLC,*<br>*CERT Operations LLC,*<br>*CERT Operations II LLC,*<br>*CERT Operations III LLC,*<br>*CERT Operations IV LLC,*<br>*CERT Operations V LLC*<br>*CERT Operations RCB LLC* |

June 3, 2021

### CERTIFICATION PURSUANT TO DISTRICT OF DELAWARE STANDING ORDER
### FOR OBJECTIONS FILED UNDER FED. R. CIV. P. 72

Defendants, by and through their counsel, hereby certify that the foregoing objections do not raise any legal or factual arguments that were not previously raised before Magistrate Judge Burke.

*/s/ Brian P. Egan*
_____
Brian P. Egan (#6227)

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 3, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on June 3, 2021, upon the following in the manner indicated:

| | |
|---|---|
| James M. Lennon, Esquire<br>DEVLIN LAW FIRM LLC<br>1526 Gilpin Avenue<br>Wilmington, DE  19806<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |
| Bradley W. Caldwell, Esquire<br>Jason D. Cassady, Esquire<br>John Austin Curry, Esquire<br>Justin T. Nemunaitis, Esquire<br>CALDWELL CASSADY CURRY PC<br>2010 Cedar Springs Road, Suite 1000<br>Dallas, TX  75201<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |

*/s/ Brian P. Egan*

Brian P. Egan (#6227)