IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MIDWEST ENERGY EMISSIONS CORP. and MES INC., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) C.A. No. 19-1334 (RGA) (CJB) |
| ARTHUR J. GALLAGHER & CO., *et al.*, | ) ) ) |
| Defendants. | ) |

**MOVING DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTIONS
TO REPORT & RECOMMENDATION (D.I. 279)**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
began@mnat.com

*Attorneys for Defendants*
*AJG Coal, LLC*
*AJG Iowa Refined Coal LLC*
*Arbor Fuels Company, LLC*
*Arthur J. Gallagher & Co.*
*Belle River Fuels Company, LLC*
*Chem-Mod LLC*
*DTE REF Holdings, LLC*
*DTE REF Holdings II LLC*
*Gallagher Clean Energy, LLC*
*Joppa Refined Coal LLC*
*Louisa Refined Coal, LLC*
*Portage Fuels Company, LLC*
*Thomas Hill Refined Coal LLC*
*Wagner Coaltech LLC*
*Walter Scott Refined Coal LLC*

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Robert S. Saunders (ID No. 3027)
Nicole A. DiSalvo (ID No. 4662)
Jessica R. Kunz (ID No. 5698)
Daniel S. Atlas (ID No. 6436)
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
Tel.: (302) 651-3000
rob.saunders@skadden.com
nicole.disalvo@skadden.com
jessica.kunz@skadden.com
daniel.atlas@skadden.com

*Attorneys for Defendants*
*CERT Coal Holding, LLC,*
*CERT Holdings LLC,*
*CERT Holdings 2018, LLC,*
*CERT Operations LLC,*
*CERT Operations II LLC,*
*CERT Operations III LLC,*
*CERT Operations IV LLC,*
*CERT Operations V LLC*
*CERT Operations RCB LLC*

June 17, 2021

The Moving Defendants, as defined in D.I. 279 at 2, respond to Plaintiffs' Objections (D.I. 284) to certain aspects of the May 20, 2021, Report & Recommendation. D.I. 279 ("R&R"). The governing standard is set forth in the Moving Defendants' narrow objections to the R&R, D.I. 286, at 1.

I.  **The Court Should Accept the R&R's Recommendation to Dismiss Claims Against the Three Separate Defendants "Individually and Collectively" Referred to As "AJG"**

The Second Amended Complaint (D.I. 281, "SAC") improperly lumps together eleven named defendants, largely treating them as an undifferentiated group, and consequently fails to put any one of them on notice of the infringement allegations against it. The R&R properly recommends dismissing those eleven defendants on that basis. Plaintiffs assert that the Magistrate Judge erred in recommending dismissal of the claims against just three of those defendants—Arthur J. Gallagher & Co., Gallagher Clean Energy, LLC, and AJG Coal, LLC. The SAC refers to those three entities by using the defined term "AJG" to mean those three entities, "individually and collectively," and uses that term throughout the pleading. D.I. 281 at 2. Plaintiffs' objections are without merit.

The eleven defendants recommended for dismissal stand in marked contrast from the now-dismissed power plant defendants, who purportedly practice the claimed process of burning bromine-enriched coal and treating the flue gas with Activated Carbon. *See* D.I. 110 at 2-3. The SAC also treats these eleven defendants differently from the refined coal facility defendants, which are alleged to supply the power plants with refined coal, induce them to inject activated carbon into the combustion gas produced by burning that coal, and conduct a certification-related test at the power plants. *See* R&R at 8-9. Although the SAC's allegations against the power plant and refined coal facility defendants are vague and ultimately largely false, the SAC's allegations

against these eleven defendants—which are neither power plants nor refined coal facilities—do not even inform them what they have supposedly done to infringe.

The R&R, scouring the SAC and citing oral argument, recognizes that two paragraphs of the SAC "are particularly important" on whether Plaintiffs' lumped allegations against multiple defendants are improper, and further determines that of those two paragraphs, only paragraph 212 references those eleven defendants at all.  R&R at 8-9.  Upon scrutiny, the "allegations in paragraph 212 leaves the Court and these defendants at a loss as to what these Defendants are alleged to have done that amounts to infringement."  R&R at 9.  For example, the SAC leaves the reader unsure as to whether the Defendants are alleged to infringe because they "'directly own[] an Accused RC Facility,. . . 'directly control[] the facility (whatever that means?) . . . [or] because they are said to 'indirectly exercise[][ control' of that facility 'through a subsidiary' (. . . that with one exception, is not specifically identified)."  *Id*.  The R&R concludes that the SAC, having bundled together imprecise allegations concerning these undifferentiated eleven defendants, "leaves the Court and Defendants to guess at what is the theory of liability that is being asserted here."  *Id*.  The R&R therefore recommends dismissal of claims against those eleven defendants.

Plaintiffs make three objections to the recommended dismissal of the three AJG entities.

First, Plaintiffs object that the SAC's allegations of infringement by those three defendants are sufficient because the Federal Circuit did not dismiss claims against those same three parties in *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337 (Fed. Cir. 2018)—a different case, brought (and ultimately dismissed) by a different plaintiff, involving a different patent, advancing different claims and theories of infringement, and directed to different allegedly infringing activity.  Plaintiffs' argument fails for many reasons, the most basic being that in *Nalco* there was no "lumped pleading" challenge, and thus no ruling relevant to this case.  Here, the SAC pleads

against the three companies using a collective reference ("AJG"), with few if any differentiated allegations.  By contrast, the *Nalco* plaintiff named each of those three entities in a separate count of infringement, with each count spanning two to three pages of the complaint, and each focused on allegedly relevant activities of the entity that was the subject of the count against it.  Indeed, in concluding that the complaint in *Nalco* adequately stated an inducement claim[1] against each of those three companies, the Federal Circuit specifically cited the separate portions of the *Nalco* complaint that made distinct allegations relating to each such defendant.  *See id.*, 883 F.3d at 1355 ("*id.* at 46–47 (alleging induced infringement by Defendant A.J. Gallagher); *id.* at 49–51 (alleging induced infringement by Defendant Gallagher Clean Energy); *id.* at 53–54 (alleging induced infringement by Defendant AJG Coal)).  With that level of granularity, a "lumping" challenge was never made—and never decided—under the Seventh Circuit law applied there, or the Third Circuit law applicable here.

Second, citing Fed. R. Civ. P. 12(g)(2), Plaintiffs object that the recommended "lumped pleading" dismissal was improper because defendants did not challenge the original complaint for "lumped pleading," and thus waived their right to move to dismiss the SAC on such grounds. Plaintiffs made this waiver argument before the Magistrate Judge, and he rejected it:

> But the Court agrees with Moving Defendants that they did raise this issue (and, in doing so, cited to relevant case law) when seeking to dismiss the original Complaint.  (D.I. 203 at 1 (citing D.I. 50 at 13, D.I. 84 at 2, 6); D.I. 205 at 1-2 (citing D.I. 56 at 16, 18)).  (R&R at 6, n. 4).

Indeed, Plaintiffs' attempt to argue waiver was so starkly at odds with the record that Judge Burke stated that he "finds Plaintiffs' waiver argument not to be well taken."  R&R at 6, n. 4.

---

[1] The inducement claims in *Nalco* were also far simpler to state.  As the R&R recognizes, a claim for inducement in this case requires tying a defendant's provision of refined coal for the "Bromine Step" to a coal plant's performance of the Activated Carbon Step.  R&R at 20-21. The *Nalco* patent presented no such pleading challenge.

3

Plaintiffs now seek to divert the Court from the R&R's plain finding of no waiver and instead focus on the R&R's acknowledgment that it had not previously decided the lumped-pleading argument. D.I. 284 at 7. But the absence of a prior decision on lumped pleading has nothing to do with whether the arguments were raised, the *sine qua non* of waiver. And with so many other deficiencies infecting the original complaint, the Court was able to dismiss all claims against all non-power plant defendants without needing to reach the "lumped pleading" issue.

Perhaps recognizing the rich record that belies their assertion of waiver, Plaintiffs also make a narrower argument: that the original complaint was not challenged for insufficiently alleging "control." *Id*. ("AJG could have moved to dismiss ME2C's original complaint by arguing it failed to adequately allege control by AJG. It did not."). There was, however, extensive briefing and argument about both complaints' failure to allege the requisite "control" element of a joint infringement claim, under either a "direction and control" or a "joint enterprise" theory. The R&R recommends dismissing all joint infringement claims with prejudice, and Plaintiffs do not challenge that recommendation. R&R at 30-34. It is unsurprising that there were no specific arguments directed to whether the complaint pleads "control" for purposes of vicarious liability, because neither complaint purported to plead such a theory of liability. Plaintiffs' Objections to the R&R are the first time that Plaintiffs suggest that any of the three defendants it calls "AJG" is liable for the acts of another defendant under what amounts to an alter ego (control) theory. Indeed, Plaintiffs' briefing in response to the motions to dismiss did not argue—much less suggest that they had pleaded—any such theory. Instead, ME2C's briefing sought to save its lumped allegations by claiming that the SAC appropriately accused all defendants of the same undifferentiated acts:

> By stating, e.g., 'AJG, DTE, CERT, Chem-Mod, and the RC Defendants operate RC facilities that receive coal, add bromine and /or bromide such as CaBr2 to the

4

> coal, and then provide that 'refined' coal to a coal-fired power plant that injects a sorbent material comprising activated carbon downstream of the combustion chamber,' (D.I. 130 at para 206), ME2C has provided notice that each of the Defendants included in those group names are accused of the acts constituting infringement. (D.I. 191 at 6)

This does not argue liability derived from "control." Where, as here, the SAC was so devoid of any apparent intention to assert a claim against AJG based on vicarious liability, AJG cannot have waived the right to challenge the inadequacy of any such claim.

That leaves Plaintiffs' third objection—that the SAC's assertion of corporate ownership or control is enough to state a claim that the three grouped AJG defendants are vicariously liable for the purported acts of one or more unspecified subsidiaries.

Plaintiffs' argument ignores the fundamental principle, articulated in the R&R, that "as a general matter, corporate entities are understood to be separate and distinct. Just because a company is the parent of a subsidiary, that does not (without more) mean that the parent is automatically liable for patent infringement committed by the subsidiary." R&R at 9 (citing cases). Therefore if one of the three defendants is "alleged to be liable for patent infringement because of the acts of their subsidiary, the SAC would need to identify a legal basis for such liability, such as alter ego liability, or agency status." *Id*. (citing cases).

Plaintiffs contend that they met this requirement by pleading that "AJG maintains majority control, or, if it lacks majority control, AJG requires that all major decisions obtain approval from AJG." D.I. 284 at 5, citing SAC ¶ 72. The R&R addressed this precise assertion, concluding that the allegations are insufficient for three reasons; Plaintiffs take issue with each as "contrary to the Federal Circuit's *Nalco* decision." *Id*. As explained above, however, *Nalco* is not material to whether the allegations in the SAC state a claim in this case.

5

Plaintiffs further take issue with the R&R's first reason for determining that Paragraph 72 does not remedy the SAC, which is that "it lumps together three defendants," which "is not *per se* improper." *Id*., citing R&R at 11 n.6. This argument fails to address the core issue, which is the inadequacy of those lumped allegations: ¶ 72, and the SAC as a whole, fail to allege facts that would render any of the three AJG defendants liable for the acts of another company. Does the SAC claim that all three entities taken together exercise "majority control," or that each of them has "majority control"? How can multiple entities each have majority control? Which AJG defendant is purported to require which AJG defendant's "approval," and which "decisions" relevant here are "major"? The SAC fails to put any of the three AJG defendants on notice as to whether it is alleged to be an alter ego of an unspecified company, or what acts it supposedly did that would render it liable for the acts of another unspecified company.

Plaintiffs' riposte that the pleading passes muster because "the three AJG entities (individually and collectively) infringe based on the same conduct," D.I 284 at 6, is unavailing because (i) that "same conduct" is not specified; (ii) it is entirely unclear what Plaintiffs mean by "individual[] and collective[] infringe[ment]"; and (iii) Plaintiffs' reference to "collective" infringement appears to be a back-door way to save their joint infringement allegations—which the R&R recommends be dismissed with prejudice—without objecting to that recommendation, or addressing the numerous deficiencies in their "joint infringement" pleading.

The R&R's second reason that ¶ 72 does not save the claims against AJG is that the paragraph "pleads facts in an 'either/or' manner that does not clearly state what the facts alleged to a particular entity actually are." R&R 11 n. 6. Plaintiffs' objections state that the "disjunctive in ME2C's allegation is only as to the mechanism of control (by majority vote or by contractual requirement)." D.I. 284 at 6. But that is a crucial deficiency, because the allegation fails to plead

6

facts that plausibly support a conclusion that each of the three defendants actually has control over relevant acts, or exercised that control with respect to a material act. And Plaintiffs ignore that the "either/or" deficiency includes the ambiguous definition of AJG: three entities, "individually and collectively."

The R&R's third reason that ¶ 72 does not save the SAC is that it "generally fails to demonstrate that any particular Defendant is an alter ego or agent or any other particular Defendant." R&R 11 n. 6. Plaintiffs respond by stating: "A patent owner need not allege alter ego or agency liability to support a claim of indirect infringement by a parent of a subsidiary." D.I. 284 at 6. But that statement is misleading, and only partly true. If Plaintiffs are seeking to hold a parent liable for the actions of a subsidiary under a doctrine of "alter ego" or by otherwise piercing the corporate veil, then Plaintiffs must plead facts that would permit the parent to be held liable for the acts of the subsidiary—which the SAC does not do. On the other hand, if it is Plaintiffs' contention that a defendant parent is liable for induced infringement because it actively induced infringing acts. That is not an "alter ego" theory, and the complaint must plead facts that support a plausible inference that the parent itself actively induced the infringement. If that is indeed Plaintiffs' theory, then the claims against the three "AJG" defendants fail because the SAC makes no such allegations, and no such allegations about what the SAC means by "collective" infringement by three defendants.

Plaintiffs take issue with each of the three reasons that Judge Burke provided for concluding that ¶ 72 did not save the SAC's lumped allegations against the three distinct AJG defendants. Plaintiffs are wrong on each count, but the question is not whether each reason separately renders ¶ 72 inadequate, but whether that the SAC as a whole—including that paragraph—informs each of the three defendants what it is "alleged to have done that amounts to

7

infringement." R&R at 9.  Plaintiffs' objections do not explain how or why the SAC answers that fundamental question, and the Court should adopt the R&R's conclusions that the claims against Arthur J. Gallagher & Co., Gallagher Clean Energy, LLC, and AJG Coal, LLC should be dismissed.  As set forth in Defendants' Objections to certain aspects of the R&R, D.I. 286, such dismissal should be with prejudice.

## II. ME2C's Attempt to Lighten the Pleading Standard for Direct Infringement Is Unsupported

The R&R correctly held that "[f]or single-actor direct infringement, at the pleading stage, the plaintiff must allege facts that plausibly indicate that the defendant's acts satisfy each limitation found in the asserted claims."  D.I. 279 at 35 (citing cases).  The R&R further explained why the Federal Circuit in *Nalco* did not undo this standard: "the quotation in *Nalco* [relied upon by ME2C] was clearly dicta," and the quotation originates from *Bill of Lading*, which addressed the pleading standard under the now defunct Form 18 as opposed to under *Twombly/Iqbal*.  D.I. 279 at 24.[2] Rather than addressing the R&R's detailed analysis or any of the cited authority supporting the ruling, ME2C blindly quotes the same language from *Nalco* in arguing for a lighter burden at the pleading stage.  D.I. 284 at 11.  For the reasons discussed in the R&R, ME2C is obligated to allege facts plausibly supporting that each limitation is satisfied.  ME2C cannot lower this bar to save its claims.

## III. The R&R Correctly Found that Certain of the SAC's Single-Actor Direct Infringement Allegations Fall Short

ME2C's fallback position—that the SAC contains factual support for the limitation "separating the mercury/sorbent composition from the mercury-containing gas, to form a cleaned

---

[2]   ME2C's reliance on *NNCrystal US Corp. v. Nanosys, Inc.*, No. CV 19-1307-RGA, 2020 WL 616307, at *2 (D. Del. Feb. 10, 2020) is misplaced for the same reasons, as it draws from the same dicta in *Nalco*.

8

gas"—misses the mark. For support, ME2C points to SAC ¶ 86, claiming it alleges that "Defendants perform this step during Section 45 certification testing by capturing mercury and sorbent in a collection device such as an electrostatic precipitator." D.I. 284 at 11. As an initial matter, SAC ¶ 86 describes hypothetical scenarios of how certification testing might occur. D.I. 281 ¶ 86 (supposing that testing "could be a test at the plant, or a test at a pilot scale facility that simulates the plant's equipment"; speculating as an "example" that "these Defendants can establish a baseline mercury capture rate by combusting non-refined coal in a combustion chamber and then using the mercury control equipment employed at the plant under test (e.g., activated carbon injection and electrostatic precipitator)"). What is more, ME2C ignores that the counts in the SAC conspicuously skip this limitation—twice—in concluding that each limitation is met. *See* D.I. 281 ¶¶ 260, 400. The hypothetical nature of the allegations, combined with ME2C omitting the limitation at issue twice from the counts of the complaint, render its claims implausible.[3]

In any event, SAC ¶ 86 alleges at most that "mercury in the coal will be emitted from the combustion chamber, mix with the activated carbon, and at least some will be captured in the electrostatic precipitator," and does not address whether "the mercury/sorbent composition" is separated from the gas as required. Accordingly, the R&R correctly found that ME2C failed to provide factual support for certain elements of the '114 and '430 Patent claims.

---

[3] ME2C understates the impact of the R&R's dismissal of single actor direct infringement claims for failure to plead a necessary element of claim 25 of the '114 patent and claim 1 of the '430. That element is also an element of dependent claims 26-30 of the '114 patent and dependent claims 2-27 of the '430 patent. Because "[o]ne who does not infringe an independent claim cannot infringe a claim dependent on (and thus containing all the limitations of) that claim," the R&R's ruling with respect to the two independent claims necessarily removes all of the aforementioned dependent claims from the case. *See Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1552 n.9 (Fed. Cir. 1989).

9

**IV.   The Court Should Not Overrule the Nature of the Dismissal**

The R&R recognized that "Plaintiffs have now submitted three complaints in this action and thus have had three tries to assert plausible claims against the Moving Defendants." D.I. 279 at 41.  In the words of the R&R: "That is a lot of tries."  *Id.*  Nevertheless, for the single-actor direct infringement claims, the R&R recommended that dismissal be without prejudice, provided that ME2C first files a motion for leave to add single-actor direct infringement claims, among other claims.  *Id.* at 42.  Unsatisfied with having to seek permission for a fourth try to assert plausible claims, ME2C now asks for the unfettered right to file amended complaints on the single-actor direct infringement issue.  D.I. 284 at 12.  While ME2C claims that the defect in its single-actor direct infringement claims can be addressed "via a straightforward amendment to the complaint," ME2C never explains why it has good cause to amend the SAC now to include what it previously omitted.[4]  The Court should sustain this portion of the R&R and require ME2C to seek leave to add these single-actor direct infringement claims to the case.

## **CONCLUSION**

The Report & Recommendations should be adopted by this Court, subject to the modifications set forth in the Moving Defendants' Objections to the R&R.

---

[4]  ME2C's claim that it included an allegation regarding a "nearly identical step" for a different patent only underscores the point:  ME2C must have perceived some difference in the limitation in the '114 and '430 Patents, or else it would not have deliberately omitted that allegation from the counts of the complaint for those patents.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Brian P. Egan*

_____
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
began@mnat.com

*Attorneys for Defendants*
*AJG Coal, LLC*
*AJG Iowa Refined Coal LLC*
*Arbor Fuels Company, LLC*
*Arthur J. Gallagher & Co.*
*Belle River Fuels Company, LLC*
*Chem-Mod LLC*
*DTE REF Holdings, LLC*
*DTE REF Holdings II LLC*
*Gallagher Clean Energy, LLC*
*Joppa Refined Coal LLC*
*Louisa Refined Coal, LLC*
*Portage Fuels Company, LLC*
*Thomas Hill Refined Coal LLC*
*Wagner Coaltech LLC*
*Walter Scott Refined Coal LLC*

June 17, 2021

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

*/s/ Jessica R. Kunz*

_____
Robert S. Saunders (ID No. 3027)
Nicole A. DiSalvo (ID No. 4662)
Jessica R. Kunz (ID No. 5698)
Daniel S. Atlas (ID No. 6436)
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
Tel.: (302) 651-3000
rob.saunders@skadden.com
nicole.disalvo@skadden.com
jessica.kunz@skadden.com
daniel.atlas@skadden.com

*Attorneys for Defendants*
*CERT Coal Holding, LLC,*
*CERT Holdings LLC,*
*CERT Holdings 2018, LLC,*
*CERT Operations LLC,*
*CERT Operations II LLC,*
*CERT Operations III LLC,*
*CERT Operations IV LLC,*
*CERT Operations V LLC*
*CERT Operations RCB LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 17, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on June 17, 2021, upon the following in the manner indicated:

| | |
|---|---|
| James M. Lennon, Esquire<br>DEVLIN LAW FIRM LLC<br>1526 Gilpin Avenue<br>Wilmington, DE  19806<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |
| Bradley W. Caldwell, Esquire<br>Jason D. Cassady, Esquire<br>John Austin Curry, Esquire<br>Justin T. Nemunaitis, Esquire<br>CALDWELL CASSADY CURRY PC<br>2010 Cedar Springs Road, Suite 1000<br>Dallas, TX  75201<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |

*/s/ Brian P. Egan*

Brian P. Egan (#6227)