**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| MIDWEST ENERGY EMISSIONS CORP. and MES INC., | |
| Plaintiffs, | C.A. No. 19-1334-RGA-CJB |
| v. | **JURY TRIAL DEMANDED** |
| ARTHUR J. GALLAGHER & CO., et al. | |
| Defendants. | |

**THE CERT DEFENDANTS AND CERTAIN REFINED COAL LLC DEFENDANTS'
ANSWER TO THE SECOND AMENDED COMPLAINT AND COUNTERCLAIMS**

Defendants CERT Operations IV LLC, CERT Operations V LLC, CERT Operations RCB LLC (the "CERT Defendants"); Senescence Energy Products, LLC; Rutledge Products, LLC; and Alistar Enterprises, LLC (the "Certain Refined Coal LLC Defendants"; the Certain Refined Coal LLC Defendants together with the CERT Defendants, the "Defendants"), by and through their attorneys, hereby respond to the Second Amended Complaint of Plaintiffs Midwest Energy Emissions Corp. and MES Inc.'s (collectively, "ME2C" or "Plaintiffs"). To the extent that any allegation made in the Second Amended Complaint is not expressly admitted in this Answer, it is denied.

**THE PARTIES**

1.      Midwest Energy Emissions Corp. is a Delaware corporation with its principal place of business at 670 D Enterprise Drive, Lewis Center, Ohio 43035.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

2.      MES Inc. is a North Dakota corporation with its principal place of business at 311 S. 4th St. STE 118, Grand Forks, ND 58201.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

3.      Defendant AEP Generation Resources Inc. is a Delaware corporation with its principal place of business at 1 Riverside Plaza, Columbus, OH 43215. AEP Generation Resources has designated The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801 as its agent for service of process.

**RESPONSE**: The Defendants deny that the entity named in this paragraph is a defendant in this action, and therefore deny the allegations therein.

4.      Defendant Southwestern Electric Power Company is a Delaware corporation with its principal place of business at 1 Riverside Plaza, Columbus, OH 43215. Southwestern Electric Power Co. has designated The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801 as its agent for service of process.

**RESPONSE**: The Defendants deny that the entity named in this paragraph is a defendant in this action, and therefore deny the allegations therein.

5.      Defendant AEP Texas Inc. is a Delaware corporation with its principal place of business at 1616 Woodall Rodgers Freeway, Dallas, TX 75202. AEP Texas Inc. has designated The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801 as its agent for service of process.

**RESPONSE**: The Defendants deny that the entity named in this paragraph is a defendant in this action, and therefore deny the allegations therein.

6.      Defendant NRG Energy, Inc. is a Delaware corporation with its principal place of business at 804 Carnegie Center, Princeton, NJ 08540. NRG Energy, Inc. has designated The

Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801 as its agent for service of process.

**RESPONSE**: The Defendants deny that the entity named in this paragraph is a defendant in this action, and therefore deny the allegations therein.

7.      Defendant NRG Texas Power LLC is a Delaware limited liability company with its principal place of business at 1301 McKinney St., Ste. 2300, Houston, TX 77010. NRG Texas Power LLC has designated The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801 as its agent for service of process.

**RESPONSE**: The Defendants deny that the entity named in this paragraph is a defendant in this action, and therefore deny the allegations therein.

8.      Defendant Midwest Generation EME, LLC is a Delaware limited liability company with its principal place of business at 440 South La Salle St., One Financial Place, Suite 3500, Chicago, IL 60605. Midwest Generation EME, LLC has designated The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801 as its agent for service of process.

**RESPONSE**: The Defendants deny that the entity named in this paragraph is a defendant in this action, and therefore deny the allegations therein.

9.      Defendant Midwest Generation, LLC is a Delaware limited liability company with its principal place of business at 440 South La Salle St., One Financial Place, Suite 3500, Chicago, IL 60605. Midwest Generation, LLC has designated The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801 as its agent for service of process.

**RESPONSE**: The Defendants deny that the entity named in this paragraph is a defendant in this action, and therefore deny the allegations therein.

10.     Defendant Talen Energy Corporation is a Delaware corporation with its principal place of business at 835 Hamilton St., Allentown, PA 18101. Talen Energy Corporation has designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808 as its agent for service of process.

**RESPONSE**: The Defendants deny that the entity named in this paragraph is a defendant in this action, and therefore deny the allegations therein.

11.     Defendant Brandon Shores LLC is a Delaware limited liability company with its principal place of business at 2030 Brandon Shores Rd., Curtis Bay, MD 21226. Brandon Shores LLC has designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808 as its agent for service of process.

**RESPONSE**: The Defendants deny that the entity named in this paragraph is a defendant in this action, and therefore deny the allegations therein.

12.     Defendant Talen Generation LLC is a Delaware limited liability company with its principal place of business at Two North Ninth St., Allentown, PA 18101. Talen Generation LLC has designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808 as its agent for service of process.

**RESPONSE**: The Defendants deny that the entity named in this paragraph is a defendant in this action, and therefore deny the allegations therein.

13.     Defendant Talen Montana LLC is a Delaware limited liability company with its principal place of business at 303 North Broadway, Suite 400, Billings, MT 59101. Talen Montana LLC has designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808 as its agent for service of process.

**RESPONSE**: The Defendants deny that the entity named in this paragraph is a defendant in this action, and therefore deny the allegations therein.

14.    Defendant H. A. Wagner LLC is a Delaware limited liability company with its principal place of business at 3000 Brandon Shores Rd., Baltimore. MD 21226. H. A. Wagner LLC has designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808 as its agent for service of process.

**RESPONSE**: The Defendants deny that the entity named in this paragraph is a defendant in this action, and therefore deny the allegations therein.

15.    Defendant Arthur J. Gallagher & Co. is a Delaware corporation with its principal place of business at 2850 Gold Road, Rolling Meadows, IL 60008. Arthur J. Gallagher & Co. has designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808 as its agent for service of process.

**RESPONSE**: The Defendants deny that the entity named in this paragraph is a defendant in this action, and therefore deny the allegations therein.

16.    Defendant Gallagher Clean Energy, LLC is a Delaware limited liability company with its principal place of business at Two Pierce Place, Itasca, IL 60143. Gallagher Clean Energy, LLC has designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808 as its agent for service of process.

**RESPONSE**: The Defendants deny that the entity named in this paragraph is a defendant in this action, and therefore deny the allegations therein.

17.    Defendant AJG Coal, LLC is a Delaware limited liability company with its principal place of business at Two Pierce Place, Itasca, IL 60143. AJG Coal, LLC has designated

Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808 as its agent for service of process.

**RESPONSE**: The Defendants deny that the entity named in this paragraph is a defendant in this action, and therefore deny the allegations therein.

18.    Defendant DTE REF Holdings, LLC is a Delaware limited liability company with its principal place of business at One Energy Plaza, Detroit, MI 48226. DTE REF Holdings, LLC has designated The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801 as its agent for service of process.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

19.    Defendant DTE REF Holdings II LLC is a Delaware limited liability company with its principal place of business at One Energy Plaza, Detroit, MI 48226. DTE REF Holdings II LLC has designated The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801 as its agent for service of process.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

20.    Defendant CERT Coal Holdings, LLC is a Delaware limited liability company with its principal place of business at 2100 Southbridge Parkway, Suite 585, Birmingham, AL 35209. CERT Coal Holdings, LLC has designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808 as its agent for service of process.

**RESPONSE**: The Defendants deny that the entity named in this paragraph is a defendant in this action, and therefore deny the allegations therein.

6

21.     Defendant CERT Holdings, LLC is a Delaware limited liability company with its principal place of business at 2100 Southbridge Parkway, Suite 585, Birmingham, AL 35209. CERT Holdings, LLC has designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808 as its agent for service of process.

**RESPONSE**: The Defendants deny that the entity named in this paragraph is a defendant in this action, and therefore deny the allegations therein.

22.     Defendant CERT Holdings 2018, LLC is a Delaware limited liability company with its principal place of business at 2100 Southbridge Parkway, Suite 585, Birmingham, AL 35209. CERT Holdings 2018, LLC has designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808 as its agent for service of process.

**RESPONSE**: The Defendants deny that the entity named in this paragraph is a defendant in this action, and therefore deny the allegations therein.

23.     Defendant CERT Operations, LLC is a Delaware limited liability company with its principal place of business at 2100 Southbridge Parkway, Suite 585, Birmingham, AL 35209. CERT Operations LLC has designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808 as its agent for service of process.

**RESPONSE**: The Defendants deny that the entity named in this paragraph is a defendant in this action, and therefore deny the allegations therein.

24.     Defendant CERT Operations II, LLC is a Delaware limited liability company with its principal place of business at 2100 Southbridge Parkway, Suite 585, Birmingham, AL 35209. CERT Operations II, LLC has designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808 as its agent for service of process.

**RESPONSE**:  The Defendants deny that the entity named in this paragraph is a defendant in this action, and therefore deny the allegations therein.

25.     Defendant CERT Operations III, LLC is a Delaware limited liability company with its principal place of business at 2100 Southbridge Parkway, Suite 585, Birmingham, AL 35209. CERT Operations III, LLC has designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808 as its agent for service of process.

**RESPONSE**:  The Defendants deny that the entity named in this paragraph is a defendant in this action, and therefore deny the allegations therein.

26.     Defendant CERT Operations IV, LLC is a Delaware limited liability company with its principal place of business at 2100 Southbridge Parkway, Suite 585, Birmingham, AL 35209. CERT Operations IV, LLC has designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808 as its agent for service of process.

**RESPONSE**:  Admitted, by CERT Operations IV, LLC.  Otherwise, denied.

27.     Defendant CERT Operations V, LLC is a Delaware limited liability company with its principal place of business at 2100 Southbridge Parkway, Suite 585, Birmingham, AL 35209. CERT Operations V, LLC has designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808 as its agent for service of process.

**RESPONSE**:  Admitted, by CERT Operations V, LLC.  Otherwise, denied.

28.     Defendant CERT Operations RCB, LLC is a Delaware limited liability company with its principal place of business at 2100 Southbridge Parkway, Suite 585, Birmingham, AL 35209. CERT Operations RCB, LLC has designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808 as its agent for service of process.

**RESPONSE**:  Admitted, by CERT Operations RCB, LLC.  Otherwise, denied.

29.     Defendant Chem-Mod LLC is a Delaware limited liability company with its principal place of business at Two Pierce Place, Itasca, Illinois 60143. Chem-Mod LLC has designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808 as its agent for service of process. On information and belief, Defendant A.J. Gallagher holds a controlling interest in Chem-Mod, and has controlled and directed the actions and infringement of Chem-Mod alleged herein.

**RESPONSE**: The Defendants deny that the entity named in this paragraph is a defendant in this action, and therefore deny the allegations therein.

30.     Defendant AJG Iowa Refined Coal LLC is a Delaware limited liability company with its principal place of business at Two Pierce Place, Itasca, IL 60143. AJG Iowa Refined Coal LLC has designated Cogency Global Inc., 850 New Burton Road, Suite 201, Dover DE 19904 as its agent for service of process.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

31.     Defendant Joppa Refined Coal LLC is a Delaware limited liability company with its principal place of business at or near the Joppa Power Station near Joppa, IL. Joppa Refined Coal LLC has designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808 as its agent for service of process.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

32.     Defendant Thomas Hill Refined Coal LLC is a Delaware limited liability company with its principal place of business at or near the Thomas Hill Energy Center near Clifton Hill,

MO. Thomas Hill Refined Coal LLC has designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808 as its agent for service of process.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

33.     Defendant Wagner Coaltech LLC is a Delaware limited liability company with its principal place of business at or near the Herbert A. Wagner Generating Station in Anne Arundel County, MD. Wagner Coaltech LLC has designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808 as its agent for service of process.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

34.     Defendant Walter Scott Refined Coal LLC is a Delaware limited liability company with its principal place of business at or near the Council Bluffs Energy Center (also known as the Walter Scott Energy Center) near Council Bluffs, IA. Walter Scott Refined Coal LLC has designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808 as its agent for service of process.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

35.     Defendant Louisa Refined Coal, LLC is a Delaware limited liability company with its principal place of business at 6901 Dodge St., Suite 201, Omaha, NE 68132. Louisa Refined Coal, LLC has designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808 as its agent for service of process.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

36.     Defendant Belle River Fuels Company, LLC is a Delaware limited liability company with its principal place of business at or near the Belle River Power Plant in Saint Claire County, MI. Belle River Fuels Company, LLC has designated The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801 as its agent for service of process.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

37.     Defendant Arbor Fuels Company, LLC is a Delaware limited liability company with its principal place of business at 414 S. Main St, Suite 600, Ann Arbor, MI 48104. Arbor Fuels Company, LLC has designated The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801 as its agent for service of process.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

38.     Defendant Portage Fuels Company, LLC is a Delaware limited liability company with its principal place of business 414 S. Main St, Suite 600, Ann Arbor, MI 48104. Portage Fuels Company, LLC has designated The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801 as its agent for service of process.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

39.     Defendant Brandon Shores Coaltech, LLC is a Delaware limited liability company with its principal place of business 1431 Opus Place, Suite 210, Downers Grove, IL 60515. Brandon Shores Coaltech, LLC has designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808 as its agent for service of process.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

40.     Defendant Senescence Energy Products, LLC is a Delaware limited liability company with its principal place of business 2100 Southbridge Parkway, Suite 585, Birmingham, AL 35209. Senescence Energy Products, LLC has designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808 as its agent for service of process.

**RESPONSE**: Admitted, by Senescence Energy Products, LLC.  Otherwise, denied.

41.     Defendant Rutledge Products, LLC is a Delaware limited liability company with its principal place of business 1120 River Road, Quinton, AL 35130. Rutledge Products, LLC has designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808 as its agent for service of process.

**RESPONSE**:  Denied.

42.     Defendant Alistar Enterprises, LLC is a Delaware limited liability company with its principal place of business 2100 Southbridge Parkway, Suite 585, Birmingham, AL 35209. Alistar Enterprises, LLC has designated The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801 as its agent for service of process.

**RESPONSE**: Admitted, by Alistar Enterprises, LLC.  Otherwise, denied.

43.     On information and belief, AJG, DTE, CERT, and/or Chem-Mod have used additional Delaware John Doe LLCs to collect Section 45 Tax Credits and to provide refined coal to additional coal-fired power plants in a manner that induces and or contributes to infringement of the patents-in-suit.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations. The Defendants otherwise deny any allegations in this paragraph that pertain to them.

### JURISDICTION AND VENUE

44.    This action includes a claim of patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1 et seq. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

**RESPONSE**: This paragraph contains conclusions of law to which no response is required. To the extent a response is required, admitted that the Complaint purports to state claims that arise under the laws cited in this paragraph.

45.    This Court has personal jurisdiction over Defendants, because each is incorporated in and/or a limited liability company formed in Delaware. In addition, Defendants have conducted business in this district by taking advantage of the laws of this district and by forming and controlling affiliated entities involved in the acts of infringement described below.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required. To the extent a response is required, admitted that this Court has personal jurisdiction over the Defendants for this action only. The Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph with respect to the other defendants, and therefore deny those allegations.

46.    Venue is proper in this district pursuant to 28 U.S.C. § 1400(b) with respect to each Defendant that resides in this District.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required. To the extent a response is required, admitted that this Court has personal jurisdiction over the

Defendants for this action only.  The Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph with respect to the other defendants, and therefore deny those allegations.

## ASSERTED PATENTS

47.    On July 9, 2019, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,343,114 (the "'114 patent") entitled "Sorbents for the Oxidation and Removal of Mercury." A copy of the '114 patent is attached as Exhibit A.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, admitted that the '114 patent is entitled "Sorbents for the Oxidation and Removal of Mercury," and lists and issue date of July 9, 2019.  Otherwise, denied.

48.    On May 1, 2012, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,168,147 (the "'147 patent") entitled "Sorbents for the Oxidation and Removal of Mercury." A copy of the '147 patent is attached as Exhibit B.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, admitted that the '147 patent is entitled "Sorbents for the Oxidation and Removal of Mercury," and lists and issue date of May 1, 2012.  Otherwise, denied.

49.    On March 17, 2020, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,589,225 (the "'225 patent") entitled "Sorbents for the Oxidation and Removal of Mercury." A copy of the '225 patent is attached as Exhibit C.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, admitted that the '225 patent is entitled "Sorbents for the Oxidation and Removal of Mercury," and lists and issue date of March 17, 2020.  Otherwise, denied.

50.     On March 24, 2020, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,596,517 (the "'517 patent") entitled "Sorbents for the Oxidation and Removal of Mercury." A copy of the '517 patent is attached as Exhibit D.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, admitted that the '517 patent is entitled "Sorbents for the Oxidation and Removal of Mercury," and lists and issue date of March 24, 2020.  Otherwise, denied.

51.     On June 2, 2020, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,668,430 (the "'430 patent") entitled "Sorbents for the Oxidation and Removal of Mercury." A copy of the '430 patent is attached as Exhibit E.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, admitted that the '430 patent is entitled "Sorbents for the Oxidation and Removal of Mercury," and lists and issue date of June 2, 2020.  Otherwise, denied.

## FACTUAL ALLEGATIONS

**The Federal Government Resolves to Regulate Mercury Emissions from Power Plants**

52.     In 1990, Congress passed the Clean Air Act Amendments of 1990.

**RESPONSE**: Admitted.  To the extent that the heading immediately preceding this paragraph may be deemed to contain factual allegations, they are denied.

53.     That law required the U.S. Environmental Protection Agency (EPA) to study the impact of various air pollutants, including mercury.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, denied.

54.     To assist in the research, in 1992, the EPA established a National Center for Excellence at the Energy & Environmental Research Center (EERC) referred to as the Center for Air Toxic Metals (CATM).

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

55.     In 1997 and 1998, the EPA issued two reports to Congress: Mercury Study Report to Congress (issued December 1997) and Study of Hazardous Air Pollutant Emissions from Electric Utility Steam (issued February 1998). As an outcome of these studies, the EPA found a pressing need for regulation of mercury pollution from coal-fired power plants. Unfortunately, it also found that no existing technologies were up to the task of significantly reducing the mercury pollution from those plants.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

56.     In the wake of these reports, various governmental and industry organizations injected millions of dollars into basic scientific research and experimental studies in the search for new mercury capture technologies.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

**The Inventors of the Patents-in-Suit Develop Mercury Capture Solutions**

57.     Researchers at the EERC were instrumental in developing new techniques for studying this problem and ultimately solving it.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.  To the extent that the heading

16

immediately preceding this paragraph may be deemed to contain factual allegations, they are denied.

58.     In 2002, the EPA surveyed the state of research in this field and produced a follow-up report: Control of Mercury Emissions from Coal-Fired Electric Utility Boilers: Interim Report. This report identified some promising areas of research, and it noted that some technologies were available for reducing mercury emissions. However, the EPA recognized that there was no universal solution to this problem and that more work remained to be done.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

59.     During this time, the inventors of the patents-in-suit were researching the issue of mercury capture at the EERC. Through their work, they uncovered some of the complex chemistry that occurs in a coal-fired boiler.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

60.     They further discovered a number of methods for improving mercury capture. In particular, they found that applying a halogen additive such as bromine and bromide compounds onto coal or into a combustion chamber, when combined with sorbent injection, could dramatically reduce the mercury content of coal-fired power plant emissions.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

61.     By 2004, the inventors filed a provisional application that would lead to the patents in suit. This application, and the subsequently issued patents, cover some of their discoveries and various applications of their discoveries. In particular, the inventors discovered, and ultimately

proved, the benefits of combining halogen treatments (e.g., bromine containing materials) in-flight with backend sorbents (e.g., activated carbon).

**RESPONSE**: The Defendants admit that halogen treatments and sorbents were pre-existing technologies, as described in the patents-in-suit.  The Defendants otherwise lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

62.     In 2011, the EPA finalized the first national standards to reduce mercury and other toxic air pollution from coal-fired plants (the Mercury and Air Toxics Standards or "MATS"). Most coal-fired power plants were required to comply with this rule by 2016.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

### Congress Creates the Section 45 Refined Coal Tax Credit

63.     While the EPA was working on addressing the issue of mercury emissions, Congress also took action. In 2004, Congress passed the American Jobs Act, which created a new tax credit related to the production of refined coal (referred to as "Section 45 tax credits").

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.  To the extent that the heading immediately preceding this paragraph may be deemed to contain factual allegations, they are denied.

64.     Under this law, a refined coal producer can receive an inflation-adjusted tax credit for each ton ($/ton) of refined coal sold to a power plant that results in a 40% reduction in mercury emissions and a 20% reduction in NOx emissions. This law has resulted in companies receiving hundreds of millions of dollars in tax credits each year.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

65.     Because of this highly lucrative law, financial services companies such as AJG jumped at the chance to collect the tax credits.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

### AJG, DTE, CERT, Chem-Mod, and the RC Defendants Reap Staggering Profits from Section 45 Tax Credits

66.     AJG is an insurance brokerage and risk management services firm.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.  To the extent that the heading immediately preceding this paragraph may be deemed to contain factual allegations, they are denied.

67.     AJG Chief Financial Officer Douglas Howell has claimed credit for designing a business model to maximize profits based on Section 45 tax credits.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

68.     "Our return on investment is staggering," Mr. Howell told analysts in a March 14, 2018 call. "Oh, 200 percent, 300 percent, 400 percent, 500 percent. I mean, just because it costs so little to develop" facilities.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

69.     As a result, Mr. Howell has explained that AJG will not be paying much, if any, U.S. federal income tax for many years to come.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

70.      According to the AJG business model, AJG does not build standalone facilities to refine coal that is then shipped around the country for use at coal plants.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

71.      Instead, AJG uses shell companies that are designed to lose money each year, but that ultimately result in AJG profiting from Section 45 tax credits.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

72.      Specifically, AJG forms a limited liability company ("LLC") to be associated with a particular coal-fired power plant (the "Refined Coal LLC"). The paragraphs below refer to actions taken by a Refined Coal LLC, but AJG maintains control throughout this process. For example, AJG maintains majority control, or, if it lacks majority control, AJG requires that all major decisions obtain approval from AJG.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

73.      Through its controlling interests in Refined Coal LLCs and Chem-Mod, AJG causes Chem-Mod to contract with the Refined Coal LLC to provide Chem-Mod chemicals, and technical, regulatory, and/or operational support to the Refined Coal LLC.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

74.     The Refined Coal LLC rents space on-site at a power plant where it can briefly take possession of coal from the power plant. It purchases coal from the plant, treats it with Chem-Mod chemicals, and then sells the coal—now considered "refined coal"—back to the coal-fired power plant at the same price or for a loss.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

75.     For example, the Refined Coal LLC can take possession of coal as it moves along a conveyor belt toward a combustion chamber. It can then add chemicals to the coal and return it to a conveyor belt leading to the combustion chamber.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

76.     The Chem-Mod chemicals applied to the coal include $Br_2$, $HBr$, a bromide compound such as $CaBr_2$, or a combination thereof.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

77.     One important aspect of this plan is that an LLC is a pass-through entity for tax purposes. That is, the benefits of the Section 45 tax credits pass through to AJG and other owners of the Refined Coal LLC.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

78.     AJG sells ownership in the LLC based at least in part on the value of those tax credits.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

79.     By using the Refined Coal LLCs as shell companies, AJG is able to operate companies that are designed to lose money, but that ultimately benefit AJG because they allow it to obtain hundreds of millions of dollars in federal tax credits.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

80.     This model has been emulated by others, such as DTE and CERT.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations. The Defendants deny any allegations in this paragraph that pertain to them.

81.     DTE and CERT both use Chem-Mod supplied chemicals and provide refined coal through Refined Coal LLCs in order to obtain Section 45 Tax Credits.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations. The Defendants deny any allegations in this paragraph that pertain to them.

82.     In order to obtain the benefits of Section 45 Tax Credits, AJG, DTE, CERT, Chem-Mod, and the RC Defendants must comply with 26 U.S.C. § 45 by demonstrating that the alleged refined coal is "a liquid, gaseous, or solid fuel produced from coal (including lignite) or high carbon fly ash, including such fuel used as a feedstock," "is sold by the taxpayer with the reasonable expectation that it will be used for the purpose of producing steam," and "is certified by the taxpayer as resulting (when used in the production of steam) in a qualified emission reduction." To demonstrate "qualified emission reduction," these parties must demonstrate "a

reduction of at least 20 percent of the emissions of nitrogen oxide and at least 40 percent of the emissions of either sulfur dioxide or mercury released when burning the refined coal (excluding any dilution caused by materials combined or added during the production process), as compared to the emissions released when burning the feedstock coal or comparable coal predominantly available in the marketplace as of January 1, 2003."

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, denied.

83.     While the parties could qualify for this credit by demonstrating a reduction in either sulfur dioxide or mercury, on information and belief, they have elected to focus on a reduction in mercury rather than sulfur dioxide.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

84.     On information and belief, AJG, DTE, CERT, Chem-Mod, and the RC Defendants provide the required certification for qualified emission reduction by performing pilot scale testing that simulates the conditions of a particular coal-fired power plant or by performing testing at a particular coal-fired power plant. In either case, AJG, DTE, CERT, Chem-Mod, and the RC Defendants must prepare a specific refined coal designed to work for that plant, and they will be aware of a plant's use of activated carbon injection.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations.  The Defendants deny any allegations in this paragraph that pertain to them.

85.     On information and belief, when AJG, DTE, CERT, Chem-Mod, and the RC Defendants perform certification testing for a particular plant, they must be aware of the other

mercury control equipment at the plant, including activated carbon injection. Because AJG, DTE, CERT, Chem-Mod, and the RC Defendants make refined coal by adding chemicals to the coal, not by removing atoms of mercury, the mercury present in the coal will also be present in the gas emitted from the combustion chamber. Indeed, according to Chem-Mod, the additives applied to the coal do not destroy or remove the mercury atoms, they merely result in the mercury being converted into a different form of mercury (e.g., molecular mercury to oxidized mercury). Thus, if these Defendants attempted to perform a certification test by merely combusting refined coal and measuring the amount of emitted mercury leaving the combustion chamber (i.e., disregarding the plant's activated carbon injection and other mercury control equipment), they would be unable to demonstrate the required reduction in mercury.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations.  The Defendants deny any allegations in this paragraph that pertain to them.

86.    On information and belief, for coal-fired power plants that use activated carbon injection, AJG, DTE, CERT, Chem-Mod, and the RC Defendants demonstrate qualified emission reduction for those plants by adding activated carbon sorbent downstream of the combustion chamber during the certification testing. For example, these Defendants can establish a baseline mercury capture rate by combusting non-refined coal in a combustion chamber and then using the mercury control equipment employed at the plant under test (e.g., activated carbon injection and electrostatic precipitator). This could be a test at the plant, or a test at a pilot scale facility that simulates the plant's equipment. In either case, mercury in the coal will be emitted from the combustion chamber, mix with the activated carbon, and at least some will be captured in the electrostatic precipitator. The gas downstream of the electrostatic precipitator can then be

measured for mercury content to establish a baseline for mercury emissions. When the Defendants switch to using refined coal (which has been formulated to react with the plant's use of activated carbon and other mercury controls in a manner will meet the qualified emission reduction requirement and that meets the plant's regulatory obligations), the bromine added to the coal boosts the performance of the activated carbon sorbent such that additional mercury is captured in the electrostatic precipitator. The Defendants can then measure the gas downstream of the electrostatic precipitator and rely on the reduced level of mercury in that measurement to certify that they achieve the required emissions reduction. Thus, AJG, DTE, CERT, Chem-Mod, and the RC Defendants are aware of a plant's use of activated carbon either by obtaining that information so that they can simulate this step during pilot scale testing, or by observing the use of activated carbon on-site at the plant.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations.  The Defendants deny any allegations in this paragraph that pertain to them.

87.    To be clear, Defendants refer to the above described type of testing as "post-emission control testing," Each of the entities identified with the names AJG, DTE, CERT, and the RC Defendants perform post-emission control testing at least with respect to each power plant they provide refined coal to, if the power plant uses activated carbon injection. Performance of this testing constitutes direct infringement of at least one claim of each of the patents-in-suit, and providing the refined coal to these power plants also induces and contributes to infringement at the power plant.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to

the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

88.     On information and belief, for each coal-fired power plant using activated carbon injection, AJG, DTE, CERT, Chem-Mod, and the RC Defendants perform certification testing at least every six months in order to maintain their eligibility for section 45 tax credits.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

89.     Even if it were possible for AJG, DTE, CERT, Chem-Mod, and the RC Defendants to avoid learning of a plant's use of activated carbon for purposes of certification testing, on information and belief, these Defendants would learn of the plant's use of activated carbon by working with the plant. These Defendants must have access to coal-fired power plants to determine logistics for installing refined coal equipment, storing and supplying chemicals, and operating and maintaining equipment. As part of that process, they would be able to witness activated carbon injection equipment and on-site activated carbon, as this material is readily recognizable to persons familiar with mercury control equipment and procedures. Moreover, individuals on-site would be required to comply with safety protocols at the plant. For example, AJG, DTE, CERT, Chem-Mod, and the RC Defendants would be instructed as to plant operations and protocols for interfering with aspects of plant operation that are not under the control of AJG, DTE, CERT, Chem-Mod, and the RC Defendants. In addition, they would be aware of warnings and safety information regarding the hazards of activated carbon. As a result, those individuals would be aware of the plant's use of activated carbon injection.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations.  The Defendants deny any allegations in this paragraph that pertain to them.

90.     Even if it were possible for AJG, DTE, CERT, Chem-Mod, and the RC Defendants to supply, maintain, and operate mercury control equipment on-site at a coal-fired power plant without learning of the other mercury control equipment on-site at the plant, on information and belief, they would learn of the plant's use of sorbent containing activated carbon through routine conversation and communications with individuals at the coal-fired power plant that are necessary to ensure coordination and smooth operation of the plant. For example, if the plant were to unilaterally reduce its activated carbon injection rate, or AJG, DTE, CERT, Chem-Mod, and the RC Defendants were to unilaterally reduce the amount of bromine added to the coal, this could hinder the plant's ability to comply with state and federal mercury regulations and/or the certification process for section 45 tax credits. Thus, AJG, DTE, CERT, Chem-Mod, and the RC Defendants coordinate with coal-fired power plants by keeping each other aware of their respective bromine and activated carbon usage rates.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

91.     On information and belief, AJG, DTE, CERT, Chem-Mod, and the RC Defendants discuss with owners and operators of coal-fired power plants at least the following: how they will create the refined coal onsite, the equipment that would be installed, the location and integration of their equipment into the coal conveyance system, how the certification tests would be

performed, how the plant operates, the plant layout and equipment, the emissions control equipment, and the mercury control system, such as the activated carbon injection equipment and the effect that the sorbent comprising activated carbon would have on the test results (emissions reductions), the impact and benefits the refined coal would have on the plant's mercury control strategy, and how best to combine and integrate refined coal into the plant's approach for an optimum solution for compliance (e.g., how best to set the quantities for bromine and activated carbon so as to minimize overall cost and balance of plant effects).

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations. The Defendants deny any allegations in this paragraph that pertain to them.

92. Moreover, one of the benefits of using coal with added bromine and/or bromide at a coal-fired power plant with an activated carbon injection system is that the bromine and/or bromide enhances the performance of the activated carbon. This results in a reduced need for emission controls (e.g., reducing the quantity of activated carbon that would otherwise be required). It is reasonable to infer that AJG, DTE, CERT, Chem-Mod, and the RC Defendants are aware of this fact and take it into consideration when marketing their offerings to coal-fired power plants and when negotiating contracts with coal-fired power plants.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations. The Defendants deny any allegations in this paragraph that pertain to them.

93. For example, AJG CFO Doug Howell has stated: "people have asked what does it really cost to produce this and where does it go? You can see that the materials that we use are $0.80 working from the bottom left, labor and other plant operating costs cost about $0.72 a ton,

the utility gets—we pay them rent for putting these plants on their property, or we give them a discount on the coal they produce of about $0.45, and then there's a license fee that goes to Chem-Mod – about $0.30. Now, it's important to also know that not only does the utility—the reason why they participate in these projects is that they've got a financial incentive to participate in it, but they also receive the improved environmental results basically for free and they get a better ash and favorable operating results. So the utility is part of this process and they have a financial incentive and an environment incentive. It's very important for everybody to understand that this technology works to help the utilities solve new emissions standards."

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

94.     As another example, a refined coal contract between Belle River Fuels LLC (an AJG and Chem-Mod affiliated Refined Coal LLC) and DTE specifically references the reduced quantity of activated carbon sorbent (not elimination) as a benefit of the arrangement. (Attached as Exhibit F). At a minimum, this demonstrates that AJG and Belle River Fuels LLC are aware of activated carbon use at coal-fired power plants to which they supply refined coal. It is further reasonable to infer that these parties are not outliers, but rather that DTE, CERT, Chem-Mod, and the other RC Defendants have similar knowledge and require similar contractual provisions.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

95.     In addition, the use of high quantities of activated carbon injection can discolor the fly ash produced by a coal-fired power plant. This may prevent the plant from selling the fly ash to cement producers, and instead require it to take on the cost of disposing of the fly ash. Providing bromine and/or bromide additives onto the coal combusted at a coal-fired power plant can reduce,

the quantity of activated carbon required for mercury capture and thus preserve the plant's ability to sell fly ash.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

96.     Chem-Mod advertises that its bromine-containing coal additives improve fly ash saleability. Thus, Chem-Mod specifically markets its bromine-containing additives to coal-fired power plants that use sorbents comprising activated carbon. Similarly, the contract between DTE and Belle River Fuels LLC also describes this fly ash benefit. Because AJG, DTE, CERT, and the RC Defendants work with Chem-Mod and use Chem-Mod, it is reasonable to infer that they are aware of this purported benefit and Chem-Mod's marketing. It is also reasonable to infer that AJG, DTE, CERT, and the RC Defendants also rely on this knowledge and Chem-Mod's marketing materials when negotiating contracts with coal-fired power plants, and that they similarly target their efforts toward coal-fired power plants that they know use, and will continue to use, activated carbon injection systems.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations.  The Defendants deny any allegations in this paragraph that pertain to them.

97.     An activated carbon injection system for mercury control requires an upfront cost and ongoing costs for operation. Plants with such systems installed operate the systems in order to comply with state and federal regulations regarding mercury emissions. Were a plant to stop operating its activated carbon injection system, it could face fines that would destroy the economic incentives for dealing with a refined coal provider, or be shut down.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

98.     AJG, DTE, CERT, Chem-Mod, and the RC Defendants are aware of state and federal mercury regulations and the economic incentives of coal-fired power plants with activated carbon injection systems.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations.  The Defendants deny any allegations in this paragraph that pertain to them.

99.     Thus, AJG, DTE, CERT, Chem-Mod, and the RC Defendants must necessarily know and intend that the coal plants will go on to perform the step of injecting activated carbon.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations.  The Defendants deny any allegations in this paragraph that pertain to them.

100.     Alternatively, if AJG, DTE, CERT, Chem-Mod, and/or one of the RC Defendants contend that they somehow avoid learning of a plant's use of sorbent comprising activated carbon, they are acting with willful blindness.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

101.   Once AJG, DTE, CERT, Chem-Mod, and/or one of the RC Defendants has provided section 45 certification of qualified emissions reductions for a plant, the amount of bromine and/or bromide applied to the coal will need to be tailored (chemically adjusted) depending on the ongoing needs of the plant (e.g., when considering a new coal supply that has different chemical properties or is mined from a different location, or operations of the plant change).

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations.  The Defendants deny any allegations in this paragraph that pertain to them.

102.   When such tailoring occurs, the coal-fired power plant must ensure that it does not cause the plant to emit mercury (or other emissions such as SO2, NOx, and PM) in excess of state or federal mercury regulations. The refined coal provider (AJG, DTE, CERT, Chem-Mod, and/or one of the RC Defendants) must ensure that the tailoring will not interfere with its ability to provide section 45 certification. On information and belief, the parties must keep each other apprised of the bromine, bromide, and activated carbon in use to ensure that they are able to comply with regulatory requirements. For example, plant personnel have requested (communicated to at least some of the refined coal provider Defendants) that the bromine concentration in the refined coal be altered during testing and evaluation of alternative carbon suppliers.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations.  The Defendants deny any allegations in this paragraph that pertain to them.

103.   Thus, AJG, DTE, CERT, Chem-Mod, and the RC Defendants must know and intend that the coal plants will go on to perform the step of providing sorbent comprising activated

carbon after the refined coal with added HBr, Br2, and/or bromide has been tailored to account for changing circumstances.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

104.    Alternatively, if AJG, DTE, CERT, Chem-Mod, and/or one of the RC Defendants contend that they somehow avoid learning of a plant's use of sorbent comprising activated carbon, they are acting with willful blindness.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

105.    When AJG, DTE, CERT, Chem-Mod, and/or one of the RC Defendants provides refined coal to a coal plant with an activated carbon injection system, they intend for the plant to continue to operate that system by injecting sorbent comprising activated carbon so that these Defendants may continue to receive the benefits of Section 45 tax credits.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

106.    Thus, when AJG, DTE, CERT, Chem-Mod, and/or one of the RC Defendants provides refined coal on the conveyance leading to the combustion chamber of a coal-fired power

plant with an activated carbon injection system, AJG, DTE, CERT, Chem-Mod, and the RC Defendants know that this refined coal has been specifically tailored and certified for that plant, and that the provided refined coal has no substantial non-infringing use (i.e., it cannot reasonably be used for purposes other than to be combusted at the plant where sorbent comprising activated carbon will later be injected).

**RESPONSE**: This paragraph contains conclusions of law to which no response is required. To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

107.    In addition, even if the provided refined coal could have had some non-infringing use, because AJG, DTE, CERT, Chem-Mod, and one of the RC Defendants must sell the refined coal "with the reasonable expectation that it will be used for the purpose of producing steam," and as explained above, the refined coal is only certified for a particular plant (i.e., a plant that uses activated carbon),it is reasonable to infer that they require the coal plant to combust the provided refined coal or at least some significant portion of it in accordance with those expectations, i.e., not in some non-infringing way.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required. To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

### ME2C Attempts to Compete in the Market for Mercury Capture Technologies

108.    ME2C is the commercial extension of the patented technology.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.  To the extent that the heading immediately preceding this paragraph may be deemed to contain factual allegations, they are denied.

109.    MES, Inc. obtained an exclusive license to the '147 patent and pending related applications from the EERC. Midwest Energy Emissions Corp. later obtained an assignment of the patents-in-suit from the EERC including any rights retained by the EERC to receive past damages, and MES, Inc. agreed to terminate its exclusive license at that time. Thus, during the time period of alleged infringement, MES, Inc. and/or Midwest Energy Emissions Corp. held all substantial rights in the patents-in-suit.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

110.    ME2C develops, markets, and sells products and services that practice the patented technology.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

111.    ME2C's product development efforts have been led by named inventor and Chief Technology Officer John Pavlish. ME2C has developed both sorbent enhancement additives and activated carbon sorbents for practicing the technology described in the patents-in-suit and for practicing other patented methods owned by ME2C.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

112.    ME2C has also publicized its patent portfolio and explained the scope of the patented technology through its website, its interactions with customers and potential customers, and through presentations at industry events such as the MEGA Symposium, the Energy, Utility & Environment Conference, Lignite Energy Conference, and the Air Quality Conference. Representatives of Defendants have attended these conferences and received materials from such conferences.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

113.    ME2C has attempted to compete in the market for mercury capture technologies. In particular it attempted to negotiate supply contracts with coal-fired power plants in anticipation of MATS regulations that became effective in 2015 and 2016, and also periodically afterwards as plants re-evaluate their MATS compliance strategies.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

114.    However, ME2C it is at an unfair disadvantage with respect to the RC Defendants that encourage power plants to use ME2C's patented technology instead of developing new technologies for refined coal. These RC Defendants induce power plants to infringe the patents-in-suit by offering the technology at no or artificially low costs to the plant.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

115.    AJG CFO Douglas Howell has explained, "the reason why [coal-fired power plants] participate in these [Section 45 Tax Credit] projects is that they've got a financial incentive to participate in it, but they also receive the improved environmental results basically for free and they get a better ash and favorable operating results."

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

116.    In addition, because the Coal Plant Defendants have decided to infringe ME2C's patents, they now purchase various materials from different suppliers at artificially deflated prices and employ them in a manner that infringes ME2C's patents.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

117.    Despite these difficulties, ME2C has sold its products and services to various power plants throughout the country.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

**ME2C's Interactions with Defendant Vistra**

118.    In 2012, ME2C contracted with Luminant Generation Company LLC ("Luminant") to perform testing of the patented methods at various Luminant power plants.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.  To the extent that the heading immediately preceding this paragraph may be deemed to contain factual allegations, they are denied.

119.    At least as early as 2012, ME2C informed Luminant of its patent portfolio, including the '147 patent and parent applications to the '114 patent.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

120.   By 2012, ME2C had also explained that its patents cover the use of halogen-based sorbent enhancement additives and backend carbon-based sorbents.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

121.   After successfully testing its patented technology at Luminant plants, Luminant signed a Master Supply Agreement with ME2C.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

122.   Luminant is now a subsidiary of Vistra.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

123.   Through Luminant, ME2C has informed Vistra of the patents-in-suit and also explained that its patents cover the use of halogen-based sorbent enhancement additives and backend carbon-based sorbents.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

124.   ME2C also attempted to develop business with other affiliates of Vistra. For example, ME2C has had various interactions with Vistra subsidiary Dynegy Inc. and its subsidiaries ("Dynegy").

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

125.    Beginning in 2011, ME2C and Dynegy evaluated the ME2C process for use at the Joppa Steam Plant in Massac county Illinois.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

126.    As part of that process, ME2C informed Dynegy of its patent portfolio, including the '147 patent and parent applications to the '114 patent.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

127.    ME2C has informed Dynegy that its patents cover the use of halogen-based sorbent enhancement additives and backend carbon-based sorbents.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

128.    Although the test results were favorable, Dynegy ultimately determined not to sign a supply agreement with ME2C.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

129.    Throughout 2014 and 2015, ME2C had further interactions with Dynegy and conducted a further demonstration at the Edwards Power Station in Peoria County, Illinois.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

130.    Again, Dynegy declined to sign a supply agreement with ME2C.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

131.    In 2018, Vistra acquired Dynegy.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

132.    That same year, Vistra requested that ME2C again perform a demonstration at the Joppa Steam Plant.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

133.    ME2C informed Vistra of its patent portfolio and also explained that its patents cover the use of halogen-based sorbent enhancement additives and backend carbon-based sorbents.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

134.    ME2C also attempted to negotiate a supply agreement with Vistra for the Joppa Steam Plant.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

135.    However, the Joppa Steam Plant was receiving refined coal treated with halogen from a refined coal producer.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

136.    Joppa Refined Coal LLC, has and continues to provide refined coal to the Joppa Steam Plant. AJG, Chem-Mod and Joppa Refined Coal LLC provide financial, technical, and contractual incentives to Vistra to burn refined coal as part of their scheme to collect Section 45 Tax Credits.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

137.    The Joppa Steam Plant is owned and/or operated by Vistra in the United States.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

138.    Vistra negotiates and/or procures products and/or services related to mercury control for use at the Joppa Steam Plant.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

139.    The Joppa Steam Plant has burned and/or burns coal that has added bromine and/or bromide.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

140.    The Joppa Steam Plant combusts coal along with added bromine and/or bromide.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

141.    The Joppa Steam Plant injects sorbent material comprising activated carbon downstream of the combustion chamber.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

142.    The Joppa Steam Plant contracts with Joppa Refined Coal LLC to obtain coal with added bromine and/or bromide.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

143.     The Joppa Steam Plant uses added bromine and/or bromide and activated carbon to ensure compliance with federal and state MATS regulations.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

144.     In addition to the foregoing, on July 17, 2019, ME2C provided notice to Vistra of the '114 and '147 patents and of the acts constituting infringement by filing the original complaint in this case.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

145.     It is reasonable to infer that Vistra would have reviewed the prosecution history for the '114 and '147 patents and would be generally aware of other patents in the same family.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

146.     On June 29, 2020, ME2C provided notice to Vistra of the '225, '517, and '430 patents and of the acts constituting infringement by providing Vistra with a draft amended complaint.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

**ME2C's Interactions with Defendant AEP**

147.     In 2011, ME2C met with officials at AEP to discuss ME2C's mercury capture products and services.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations. To the extent that the heading immediately preceding this paragraph may be deemed to contain factual allegations, they are denied.

148.    In or around that meeting, ME2C informed AEP of its patent portfolio.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

149.    The parties did not enter into a commercial agreement at that time.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

150.    In 2013, representatives of AEP attended the Air Quality 9 conference and received a presentation on the patented technology which identified the '147 patent and parent applications to the '114 patent.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

151.    In 2016, ME2C and AEP discussed potential work related to AEP's H.W. Pirkey Power Plant.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

152.    ME2C and AEP, including its subsidiary Southwestern Electric Power Co. contracted for ME2C to provide demonstration testing at the H.W. Pirkey Power Plant.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

153.    Through those interactions, ME2C again reminded AEP of its patent portfolio and explained that its patents covered the use of halogen-based sorbent enhancement additives and backend carbon-based sorbents.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

154.    ME2C specifically identified the '147 patent and parent applications to the '114 patent to AEP.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

155.    Between 2016 and 2018, ME2C explained its technology to AEP, provided technical and economic presentations, and performed demonstration testing at AEP's H.W. Pirkey Power Plant in Harrison County, Texas.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

156.    The H.W. Pirkey Power Plant is owned and/or operated by AEP in the United States.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

157.    AEP negotiates for and/or procures products and/or services related to mercury control for use at the H.W. Pirkey Power Plant.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

158.    The H.W. Pirkey Power Plant combusts coal along with added bromine and/or bromide.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

159.    The H.W. Pirkey Power Plant injects sorbent material comprising activated carbon downstream of the combustion chamber.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

160.    The H.W. Pirkey Power Plant employs halogenated PAC (Powdered Activated Carbon) sorbent injection as a form of mercury control.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

161.    The H.W. Pirkey Power Plant uses added bromine and/or bromide and activated carbon to ensure compliance with federal MATS regulations.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

162.    In addition to the foregoing, on July 17, 2019, ME2C provided notice to AEP of the '114 and '147 patents and of the acts constituting infringement by filing the original complaint in this case.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

163.    It is reasonable to infer that AEP would have reviewed the prosecution history for the '114 and '147 patents and would be generally aware of other patents in the same family.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

164.    On June 29, 2020, ME2C provided notice to AEP of the '225, '517, and '430 patents and of the acts constituting infringement by providing AEP with a draft amended complaint.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

165.    On July 15, 2020, ME2C again provided notice to AEP of the patents-in-suit and of the acts constituting infringement by filing the second amended complaint.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

166.    On September 21, 2020, ME2C provided notice to AEP of the patents-in-suit and of the acts constituting infringement by providing AEP with a draft second amended complaint.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

167.    Despite knowledge of ME2C's patents, AEP has elected to infringe ME2C's patents at its coal-fired power plants including at the H.W. Pirkey Power Plant.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

### ME2C's Interactions with NRG

168.    In 2012, ME2C had various interactions with NRG to discuss ME2C's patented technology.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.  To the extent that the heading

immediately preceding this paragraph may be deemed to contain factual allegations, they are denied.

169.    Over the next few years, NRG evaluated its options for coming into compliance with upcoming MATS regulations.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

170.    During that time, ME2C identified its patents to NRG and explained the operation of its patented technology.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

171.    The parties also considered having ME2C perform various demonstrations of the technology at NRG power plants.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

172.    In addition to the foregoing, on July 17, 2019, ME2C provided notice to NRG of the '114 and '147 patents and of the acts constituting infringement by filing the original complaint in this case.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

173.    It is reasonable to infer that NRG would have reviewed the prosecution history for the '114 and '147 patents and would be generally aware of other patents in the same family.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

174.     On June 29, 2020, ME2C provided notice to NRG of the '225, '517, and '430 patents and of the acts constituting infringement by providing NRG with a draft amended complaint.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

175.     On July 15, 2020, ME2C again provided notice to NRG of the patents-in-suit and of the acts constituting infringement by filing the second amended complaint.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

176.     On September 21, 2020, ME2C provided notice to NRG of the patents-in-suit and of the acts constituting infringement by providing NRG with a draft second amended complaint.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

177.     Nonetheless, NRG elected to infringe ME2C's patents.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

**ME2C's Interactions with Defendant Talen**

178.     Talen owns and/or operates the Colstrip and other power plants.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.  To the extent that the heading immediately preceding this paragraph may be deemed to contain factual allegations, they are denied.

179.     Prior to 2015 those plants were owned and/or operated by PPL.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

180.    In 2013, representatives of PPL attended the Air Quality 9 conference and received a presentation on the patented technology which identified the '147 patent and parent applications to the '114 patent.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

181.    In 2013, ME2C met with PPL employees tasked with understanding and designing mercury control procedures, including Jon Boucher, Bill Neumiller, and Steve Craig, to discuss the use of ME2C's patented technology at power plants in the PPL fleet, including Colstrip and other plants.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

182.    ME2C specifically identified the '147 patent and the parent patent to the '114 patent to at least Jon Boucher, and explained that these patents covered the use of halogen-based sorbent enhancement additives and backend carbon-based sorbents.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

183.    In 2015, PPL spun off a portion of its business to form Talen.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

184.    At least Jon Boucher has remained with Talen.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

185.    In addition, operation of a coal-fired power plant can be dangerous and complicated, requiring a team of qualified engineers. Similarly, ensuring compliance with mercury capture regulations requires managing complex chemical reactions occurring at the plant. Accordingly, it is reasonable to infer that even when Talen took over control of the plants at issue, it would have retained additional individuals knowledgeable of plant operations and mercury control processes at the plants. Thus, it is likely that at least some of those additional individuals that met with and/or received information about ME2C's patented technology would have remained with Talen as of 2015, or would have shared information related to mercury control at the plants with other Talen personnel and management as Talen is now responsible for complying with state and federal mercury regulations.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

186.    In addition to the foregoing, on July 17, 2019, ME2C provided notice to Talen of the '114 and '147 patents and of the acts constituting infringement by filing the original complaint in this case.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

187.    It is reasonable to infer that Talen would have reviewed the prosecution history for the '114 and '147 patents and would be generally aware of other patents in the same family.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

188.    On June 29, 2020, ME2C provided notice to Talen of the '225, '517, and '430 patents and of the acts constituting infringement by providing Talen with a draft amended complaint.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

189.   On July 15, 2020, ME2C again provided notice to Talen of the patents-in-suit and of the acts constituting infringement by filing the second amended complaint.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

190.   On September 21, 2020, ME2C provided notice to Talen of the patents-in-suit and of the acts constituting infringement by providing Talen with a draft second amended complaint.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

191.   Despite being aware of ME2C's patents, Talen has elected to infringe those patents.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

### ME2C's Interactions with Defendant AJG, DTE, CERT, Chem-Mod, and RC Defendants

192.   AJG, DTE, CERT, Chem-Mod, and RC Defendants have worked with the EERC to conduct testing related to their coal treatment processes. For example, they have relied on the EERC to demonstrate that the processes employed by refined coal facilities qualify for Section 45 Tax Credits. Through those interactions, it is likely that they became aware of the patents-in-suit and/or related applications as they were initially developed by the inventors while they were at the EERC.

**RESPONSE**: The CERT Defendants admit that they have received reports from the EERC relating to testing.  Otherwise, denied.  To the extent that the heading immediately preceding this paragraph may be deemed to contain factual allegations, they are denied.

193.    In addition, at least Chem-Mod participates in conferences where ME2C describes its patented technology. For example, Chem-Mod president Murray F. Abbott attended the 2018 MEGA conference where ME2C described the technology at issue in this case and explained that it was covered by its patents. ME2C also referred attendees to its website which has additional information regarding its patents.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

194.    Given the close relationship between Chem-Mod, AJG, DTE, CERT, and the RC Defendants, those Defendants know of ME2C's patented technology and patent portfolio and/or are willfully blind to ME2C's patents.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations. The Defendants deny any allegations in this paragraph that pertain to them.

195.    In addition, ME2C is one of a small number of companies that competes with Chem-Mod, AJG, DTE, CERT, and the RC Defendants to provide bromine-containing additives for mercury control. It is reasonable to infer that these companies have done at least some due diligence on potential competitors. During that process, it is likely that they would have discovered the patents-in-suit from the U.S. Patent Office, Google Patents, ME2C publications and product literature, and/or ME2C's website.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations. The Defendants deny any allegations in this paragraph that pertain to them.

196.    For example, prior to filing this lawsuit, AJG acknowledged that it could face claims of patent infringement for its refined coal activities. This indicates that it has performed some due diligence to identify patents potentially relevant to its business. It has advertised to investors and/or potential investors that the risk of a patent infringement finding is mitigated by the fact that Chem-Mod has patent infringement insurance. This indicates that Chem-Mod has also performed some due diligence to identify patents potentially relevant to its business. Given the limited number of participants in the relevant market, it is reasonable to infer that Chem-Mod's decision to purchase patent infringement insurance, and AJG's reliance on that insurance, were motivated at least in part by their awareness of ME2C's patents and the risk of infringing those patents.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

197.    Because CERT, DTE, and the RC Defendants have emulated AJG's business model and also use Chem-Mod as a supplier, it is reasonable to infer that these parties would have also been aware of ME2C's patents either as a result of their own due diligence, or as part of their interactions with Chem-Mod and/or AJG.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations.  The Defendants deny any allegations in this paragraph that pertain to them.

198.    Given that a company's internal knowledge and motivation for purchasing liability insurance is often not publicly available, further evidence regarding these Defendants' pre-suit knowledge of the patents-in-suit is likely solely within their possession and available to ME2C only through discovery.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations. The Defendants deny any allegations in this paragraph that pertain to them.

199.    In addition to the foregoing, on July 17, 2019, ME2C provided notice to AJG, DTE, CERT, Chem-Mod, and RC Defendants of the '114 and '147 patents and of the acts constituting infringement by filing the original complaint in this case.

**RESPONSE**: Admitted that ME2C filed its original complaint in this action on July 17, 2019. Otherwise, denied.

200.    It is reasonable to infer that AJG, DTE, CERT, Chem-Mod, and RC Defendants would have reviewed the prosecution history for the '114 and '147 patents and would be generally aware of other patents in the same family.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations. The Defendants deny any allegations in this paragraph that pertain to them.

201.    On June 29, 2020, ME2C provided notice to AJG, DTE, CERT, Chem-Mod, and RC Defendants of the '225, '517, and '430 patents and of the acts constituting infringement by providing AJG, DTE, CERT, Chem-Mod, and RC Defendants with a draft amended complaint.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations. The Defendants deny any allegations in this paragraph that pertain to them.

202.    On July 15, 2020, ME2C again provided notice to AJG, DTE, CERT, Chem-Mod, and RC Defendants of the patents-in-suit and of the acts constituting infringement by filing the second amended complaint.

**RESPONSE**: Admitted that ME2C filed the First Amended Complaint on July 15, 2020. Otherwise, denied.

203.    On September 21, 2020, ME2C provided notice to AJG, DTE, CERT, Chem-Mod, and RC Defendants of the patents-in-suit and of the acts constituting infringement by providing AJG, DTE, CERT, Chem-Mod, and RC Defendants with a draft second amended complaint.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations.  The Defendants deny any allegations in this paragraph that pertain to them.

204.    Despite being aware of ME2C's patents, AJG, DTE, CERT, Chem-Mod, and RC Defendants have continued to infringe.

**RESPONSE**: Denied.

<strong>Defendants' Acts of Infringement</strong>

205.    The Coal Plant Defendants each operate at least one coal-fired power plant where they combust coal in a combustion chamber with bromine and/or bromide that has been added to the coal and/or that has been provided to the combustion chamber, and where they inject a sorbent material comprising activated carbon downstream of the combustion chamber (the "Accused Coal Plants"). The Accused Coal Plants are not limited to the specifically named, exemplary coal plants named above.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.  To the extent that the heading immediately preceding this paragraph may be deemed to contain factual allegations, they are denied.

206.    In doing so, the Coal Plant Defendants perform the methods claimed by the patents-in-suit, and thus directly infringe the patents-in-suit.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

207.    As the parent of the other NRG entities, NRG Energy Inc. induces the other NRG entities to perform the steps of the patented methods.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

208.    On information and belief and based on ME2C's past business encounters with NRG, NRG Energy Inc. does so by exercising control over subsidiaries, providing technical, administrative, logistical and financial services to subsidiaries, and/or negotiating standard form or bulk agreements for products and services related to mercury control. For example, NRG Energy Inc. negotiates or exercises veto power over decisions to sign supply contracts for activated carbon and bromine-containing additives. In so doing, NRG Energy Inc. takes part in the decisions regarding supply contracts and influences the other NRG entities to select suppliers for the plant, including those that provide bromine-containing additives and activated carbon.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

209.    As the parent of the other Talen entities, Talen Energy Corporation induces the other Talen entities to perform the steps of the patented methods.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

210.    On information and belief and based on ME2C's business encounters with PPL and the fact that Talen retained at least some PPL employees, Talen Energy Corporation does so by exercising control over subsidiaries, providing technical, administrative, logistical and financial

services to subsidiaries, and/or negotiating standard form or bulk agreements for products and services related to mercury control. For example, Talen Energy Corporation negotiates or exercises veto power over decisions to sign supply contracts for activated carbon and bromine-containing additives. In so doing, Talen Energy Corporation takes part in the decisions regarding supply contracts and influences the other Talen entities to select suppliers for the plant, including those that provide bromine-containing additives and activated carbon.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

211.    AJG, DTE, CERT, Chem-Mod, and the RC Defendants operate RC facilities that receive coal, add bromine and/or bromide such as CaBr2 to the coal, and then provide that "refined" coal to a coal-fired power plant that injects a sorbent material comprising activated carbon downstream of the combustion chamber (the "Accused RC Facilities").

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations. The CERT Defendants admit that they operate refined coal facilities. The Defendants otherwise deny any allegations in this paragraph that pertain to them.

212.    Each of Arthur J. Gallagher & Co., Gallagher Clean Energy, LLC, and AJG Coal, LLC; DTE REF Holdings, LLC, DTE REF Holdings II LLC; CERT Coal Holdings LLC, CERT Holdings LLC, CERT Holdings 2018, LLC, CERT Operations LLC, CERT Operations II LLC, CERT Operations III LLC, CERT Operations IV LLC, CERT Operations V LLC, CERT Operations RCB LLC; AJG Iowa Refined Coal LLC, Joppa Refined Coal LLC, Thomas Hill Refined Coal LLC, Wagner Coaltech LLC, Walter Scott Refined Coal LLC, Louisa Refined Coal, LLC, Belle River Fuels Company, LLC, Arbor Fuels Company, LLC, Portage Fuels Company,

LLC, Brandon Shores Coaltech, LLC, Senescence Energy Products, LLC, Rutledge Products, LLC, Alistar Enterprises, LLC and John Doe LLCs operate at least one Accused RC Facility either by directly owning the facility, directly controlling the facility, or indirectly exercising control of the facility through a subsidiary that is either named above or referred to as a John Doe LLC. For example, Arthur J. Gallagher & Co. owns and controls Walter Scott Refined Coal LLC which directly operates a refined coal facility at a power plant that directly infringes by supplying bromine-containing refined coal to a combustion chamber and injecting activated carbon sorbent downstream of the combustion chamber.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations. The CERT Defendants admit that they operate refined coal facilities. The Defendants otherwise deny any allegations in this paragraph that pertain to them.

213.   At least CERT Operations IV LLC, CERT Operations V LLC, CERT Operations RCB LLC; AJG Iowa Refined Coal LLC, Joppa Refined Coal LLC, Thomas Hill Refined Coal LLC, Wagner Coaltech LLC, Walter Scott Refined Coal LLC, Louisa Refined Coal, LLC, Belle River Fuels Company, LLC, Arbor Fuels Company, LLC, Portage Fuels Company, LLC, Brandon Shores Coaltech, LLC, Senescence Energy Products, LLC, Rutledge Products, LLC, and Alistar Enterprises, LLC each directly operated and operate an Accused RC Facility that provides bromine-containing refined coal to a coal plant that directly infringes by combining the refined coal provided by those companies with use of activated carbon sorbents downstream of the combustion chamber. Those entities also perform the associated post-emission control section 45 testing.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations. The CERT Defendants admit that they operate refined coal facilities. The Defendants otherwise deny any allegations in this paragraph that pertain to them.

214.    Chem-Mod provides chemicals and/or refined coal to at least some of the Accused Coal Plants and Accused RC Facilities.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations. The Defendants deny any allegations in this paragraph that pertain to them.

215.    Chem-Mod also assists in operating the Accused Coal Plants and Accused RC Facilities in connection with administering the chemicals supplied by Chem-Mod.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

216.    Given the location and operation of the Accused RC Facilities and the contractual relationships between Accused RC Facilities and associated coal-fired power plants, the refined coal provided by each Accused RC Facility has no substantial non-infringing use.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations. The Defendants deny any allegations in this paragraph that pertain to them.

217.    In addition, AJG, DTE, CERT, Chem-Mod, and the RC Defendants provide financial incentives to operators of coal-fired power plants to participate in a Section 45 Tax Credit scheme.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations.  The Defendants deny any allegations in this paragraph that pertain to them.

218.    AJG, DTE, CERT, Chem-Mod, and the RC Defendants condition participation in an activity or receipt of a benefit, i.e., the financial benefits of participating in the Section 45 Tax Credit scheme and the technical and environmental benefits of using refined coal, upon performance of a step or steps of a patented method, i.e., the combusting of coal with added bromine and/or bromide, and they establish the manner or timing of that performance by requiring the power plant to use the refined coal and by providing the refined coal directly onto conveyances leading to the combustor.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations.  The Defendants deny any allegations in this paragraph that pertain to them.

219.    AJG, DTE, and CERT, directly and in concert with their subsidiaries including Chem-Mod and the RC Defendants, have engaged in a pattern of conduct intended to induce and/or contribute to the infringement of others, including the Coal Plant Defendants and the operators of coal-fired power plants connected to an Accused RC Facility. These actions have included:

a.    forming several of the RC Defendants specifically for the purpose of using Chem-Mod products in the manner described below as infringing;

b.    providing several of the RC Defendants and operators of coal-fired power plants with chemicals used to directly infringe the patents-in-suit;

c.    Building the core components of the RC facilities to use Chem-Mod chemicals;

d.    Connecting the RC facilities to coal-fired power plants;

e.    Placing the RC Facilities into service;

      f.      Providing the RC Defendants with operational support, regulatory, and technical support necessary to use Chem-Mod chemicals at the Accused RC Facilities and Accused Coal Plants;

      g.      Testing the performance of the RC Facilities for regulatory reasons and to obtain Section 45 Tax Credits;

      h.      Conditioning participation in the Section 45 Tax Credits program on use of Chem-Mod chemicals at the Accused RC Facilities;

      i.      Limiting the amount of capital and/or supplies of the RC Defendants;

      j.      Using the RC Defendants to claim Section 45 Tax Credits;

      k.      Tailoring the treatments applied to coal for each individual power plant; and

      l.      Modifying the amount of bromine and/or bromide added to coal sold to Coal Plant Defendants and/or operators of coal-fired power plants connected to an RC Facility in connection with plants' MATS obligations.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

220.    AJG, Chem-Mod, their associated RC Defendants, and the operators of coal-fired power plants connected to an RC Facility that is owned by AJG and/or its subsidiaries are involved in a joint enterprise to infringe the patents-in-suit.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

221.    AJG, Chem-Mod, their associated RC Defendants, and the operators of coal-fired power plants connected to an RC Facility that is owned by AJG contract to provide refined coal at

the coal-fired power plant for the common purpose of obtaining the benefits of Section 45 tax credits. AJG, Chem-Mod, their associated RC Defendants and the operator of a coal-fired power plant have a community of pecuniary interest in that purpose because they share in the benefits of those tax credits either by receiving the tax credits or by relying on the value of the tax credits to provide discounted refined coal and/or pay rent to the coal-fired power plant.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

222.    AJG, Chem-Mod, their associated RC Defendants, and the operators of coal-fired power plants connected to an RC Facility that is owned by AJG have an equal right of control in the joint enterprise because each controls a necessary aspect of the endeavor. AJG, Chem-Mod, their associated RC Defendants control the certification process for obtaining the benefits of section 45 tax credits and the provision of chemicals onto the coal. AJG can exercise its controlling interest in the RC Defendants to cease providing refined coal, and it can exercise its controlling interest in Chem-Mod to cease providing the coal additives. The coal-fired power plant controls the process of combusting the coal and providing sorbent comprising activated carbon.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

223.     DTE, Chem-Mod, their associated RC Defendants, and the operators of coal-fired power plants connected to an RC Facility that is owned by DTE and/or its subsidiaries are involved in a joint enterprise to infringe the patents-in-suit.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

224.     DTE, Chem-Mod, their associated RC Defendants, and the operators of coal-fired power plants connected to an RC Facility that is owned by DTE contract to provide refined coal at the coal-fired power plant for the common purpose of obtaining the benefits of Section 45 tax credits. DTE, Chem-Mod, their associated RC Defendants and the operator of a coal-fired power plant have a community of pecuniary interest in that purpose because they share in the benefits of those tax credits either by receiving the tax credits or by relying on the value of the tax credits to provide discounted refined coal and/or pay rent to the coal-fired power plant.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

225.     DTE, Chem-Mod, their associated RC Defendants, and the operators of coal-fired power plants connected to an RC Facility that is owned by DTE have an equal right of control in the joint enterprise because each controls a necessary aspect of the endeavor. DTE, Chem-Mod, their associated RC Defendants control the certification process for obtaining the benefits of section 45 tax credits and the provision of chemicals onto the coal. DTE can exercise its controlling

interest in the RC Defendants to cease providing refined coal. Chem-Mod can exercise control by ceasing to provide the coal additives. The coal-fired power plant controls the process of combusting the coal and providing sorbent comprising activated carbon.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

226.    CERT, Chem-Mod, their associated RC Defendants, and the operators of coal-fired power plants connected to an RC Facility that is owned by CERT and/or its subsidiaries are involved in a joint enterprise to infringe the patents-in-suit.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

227.    CERT, Chem-Mod, their associated RC Defendants, and the operators of coal-fired power plants connected to an RC Facility that is owned by CERT contract to provide refined coal at the coal-fired power plant for the common purpose of obtaining the benefits of Section 45 tax credits. CERT, Chem-Mod, their associated RC Defendants and the operator of a coal-fired power plant have a community of pecuniary interest in that purpose because they share in the benefits of those tax credits either by receiving the tax credits or by relying on the value of the tax credits to provide discounted refined coal and/or pay rent to the coal-fired power plant.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to

the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

228.   CERT, Chem-Mod, their associated RC Defendants, and the operators of coal-fired power plants connected to an RC Facility that is owned by CERT have an equal right of control in the joint enterprise because each controls a necessary aspect of the endeavor. CERT, Chem-Mod, their associated RC Defendants control the certification process for obtaining the benefits of section 45 tax credits and the provision of chemicals onto the coal. CERT can exercise its controlling interest in the RC Defendants to cease providing refined coal. Chem-Mod can exercise control by ceasing to provide the coal additives. The coal-fired power plant controls the process of combusting the coal and providing sorbent comprising activated carbon.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

229.   Thus, AJG, DTE, CERT, Chem-Mod, and the RC Defendants induce and/or contribute to direct infringement of the patents-in-suit by coal-fired power plant operators, and thus indirectly infringe the patents-in-suit.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

230.   Defendants' infringement of the Patents-in-Suit is willful. Defendants continue to commit acts of infringement despite a high likelihood that its actions constitute infringement, and

Defendants knew or should have known that their actions constituted an unjustifiably high risk of infringement.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

231.    In addition to the allegations provided above, Defendants have had notice of the '114 and '147 patents and ME2C's allegations of infringement at least as of the filing of the original complaint in this case on July 17, 2019, and Defendants have had notice of the '225, '517, and '430 patents and ME2C's allegations of infringement at least as of June 29, 2020, when ME2C provided Defendants with a draft amended complaint.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations.  The Defendants deny any allegations in this paragraph that pertain to them, except that the Defendants admit that the complaint was filed on July 17, 2019.

232.    In accordance with 35 U.S.C. § 287, Defendants have actual notice and knowledge of all of the Patents-in-Suit as described above and no later than the filing of this Complaint and/or the date this Complaint was served upon each Defendant. In any event, Defendants may not avail themselves of 35 U.S.C. § 287 as a defense because ME2C is under no obligation to mark performance of the patented methods.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to

the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

233.    Defendants acts of infringement have been willful as of the date they became aware of the patented technology and the patents-in-suit, and in any event no later than the filing of this Complaint and/or the date this Complaint was served upon each Defendant.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

### Defendants' Interactions With Each Other Related to Infringement

234.    Each Coal Plant Defendant consists of a parent company and various subsidiaries. These various entities work together to procure materials and manage Accused Power Plants.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore deny those allegations.  To the extent that the heading immediately preceding this paragraph may be deemed to contain factual allegations, they are denied.

235.    Each of AJG, DTE, and CERT own and operate Refined Coal LLCs (including the other named RC Defendants) that use Chem-Mod materials at the Accused Coal Plants and coal plants with associated Accused RC Facilities.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations.  The Defendants deny any allegations in this paragraph that pertain to them.

236.    Vistra's Joppa Coal plant, and Talen's Brandon Shores, Herbert Wagner, and Montour coal plants obtain refined coal from AJG, Chem-Mod, and their associated Refined Coal LLCs.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore deny those allegations.

237.    Vistra's Duck Creek and Newton coal plants obtain refined coal from DTE, Chem-Mod, and their associated Refined Coal LLCs.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore deny those allegations.

238.    The Conesville power plant in Ohio has been/is owned and/or operated by Vistra and AEP.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore deny those allegations.

239.    At least Defendants NRG and Talen have owned and/or operated Accused Coal Plants using Chem-Mod products to directly infringe the patents-in-suit and thus NRG is jointly and severally liable with Chem-Mod, and Talen is jointly and severally liable with Chem-Mod with respect to those plants.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

240.    At least Defendants AJG, DTE, Chem-Mod and their associated Refined Coal LLCs have induced and/or contributed to infringement at Talen Accused Coal Plants and coal

plants associated with Accused RC Facilities, and thus those parties are jointly, severally, and/or in the alternative liable with respect to those plants.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

241.    Each of the RC Defendants is owned and/or operated by AJG, DTE, and/or CERT, and each uses Chem-Mod to induce and/or contribute to infringement. Thus, each RC Defendant is jointly, severally, and/or in the alternative liable with respect to Chem-Mod and the Defendant that is its associated owner/operator.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

<u>**COUNT ONE: INFRINGEMENT OF THE '114 PATENT**</u>

242.    ME2C incorporates by reference the preceding paragraphs as if fully set forth herein.

**RESPONSE**:  The Defendants incorporate by reference their answers to the preceding paragraphs. To the extent that the heading immediately preceding this paragraph may be deemed to contain factual allegations, they are denied.

243.    U.S. Patent No. 10,343,114 (the "'114 patent"), entitled "Sorbents for the Oxidation and Removal of Mercury", was issued on July 9, 2019, naming Edwin S. Olson, Michael J. Holmes and John H. Pavlish as the inventors. Exhibit A ('114 Patent).

**RESPONSE**: Admitted that the '114 patent is entitled "Sorbents for the Oxidation and Removal of Mercury" and the cover page of the '114 patent lists an issue date of July 9, 2019, and lists the following inventors: Edwin S. Olson, Michael J. Holmes and John H. Pavlish. Otherwise, denied.

244.    ME2C owns all rights, title, and interest in the '114 Patent, and holds all substantial rights pertinent to this suit, including the right to sue and recover for all past, current, and future infringement.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, admitted that the '114 patent on its face lists Midwest Energy Emissions Corp. of Lewis Center, Ohio as the assignee. Otherwise, denied.

245.    The '114 Patent is valid and enforceable and directed to patentable subject matter.

**RESPONSE**: Denied.

246.    Defendants infringe at least one of claims 1-30 of the '114 patent.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

247.    ME2C provides the following explanation of infringement with regard to an exemplary claim.

**RESPONSE**: Denied.

248.    Claim 25 of the '114 patent recites: A method of separating mercury from a mercury-containing gas.

**RESPONSE**: Admitted that claim 25 of the '114 patent recites the language asserted in this paragraph.  Otherwise, denied.

249.    The Coal Plant Defendants and power plants connected to an Accused RC Facility perform this method in order to comply with federal and/or state mercury regulations.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

250.    AJG, DTE, CERT, Chem-Mod and the RC Defendants perform this method when conducting section 45 testing for at least one coal plant that uses activated carbon sorbent.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

251.    Claim 25 of the '114 patent recites: combusting coal in a combustion chamber to provide the mercury-containing gas, wherein the coal comprises added Br2, HBr, a bromide compound, or a combination thereof, added to the coal upstream of the combustion chamber, or the combustion chamber comprises added Br2, HBr, a bromide compound, or a combination thereof, or a combination thereof.

**RESPONSE**: Admitted that claim 25 of the '114 patent recites the language asserted in this paragraph.  Otherwise, denied.

252.    The Coal Plant Defendants and power plants connected to an Accused RC Facility perform this step by burning coal with an added Br2, HBr, a bromide compound, or a combination thereof and/or by adding Br2, HBr, a bromide compound, or a combination thereof to the combustion chamber.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

253.    AJG, DTE, CERT, Chem-Mod and the RC Defendants perform this step when conducting section 45 testing for at least one coal plant that uses activated carbon sorbent.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

254.    Claim 25 of the '114 patent recites: injecting a sorbent material comprising activated carbon into the mercury containing gas downstream of the combustion chamber.

**RESPONSE**: Admitted that claim 25 of the '114 patent recites the language asserted in this paragraph.  Otherwise, denied.

255.    The Coal Plant Defendants and power plants connected to an Accused RC Facility perform this step by injecting activated carbon sorbent downstream of the combustion chamber.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

256.    AJG, DTE, CERT, Chem-Mod and the RC Defendants perform this step when conducting section 45 testing for at least one coal plant that uses activated carbon sorbent.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

257.    Claim 25 of the '114 patent recites: contacting mercury in the mercury-containing gas with the sorbent, to form a mercury/sorbent composition.

**RESPONSE**: Admitted that claim 25 of the '114 patent recites the language asserted in this paragraph.  Otherwise, denied.

258.    The Coal Plant Defendants and power plants connected to an Accused RC Facility perform this step because mercury contained in the gas exiting the combustion chamber contacts the sorbent as all of this material is contained in the same gas.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

259.    AJG, DTE, CERT, Chem-Mod and the RC Defendants perform this step when conducting section 45 testing for at least one coal plant that uses activated carbon sorbent.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

260.    Claim 25 of the '114 patent recites: separating the mercury/sorbent composition from the mercury-containing gas, to form a cleaned gas.

**RESPONSE**: Admitted that claim 25 of the '114 patent recites the language asserted in this paragraph.  Otherwise, denied.

261.    The Coal Plant Defendants and power plants connected to an Accused RC Facility perform this step using equipment to collect the mercury captured by the sorbent in order to comply with mercury regulations.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

262.    The Coal Plant Defendants have and continue to directly infringe, literally and/or under the doctrine of equivalents, the '114 patent under 35 U.S.C. § 271(a).

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, denied.

263.    In addition, NRG Energy Inc., and Talen Energy Corporation induce their respective subsidiary Defendants to infringe under 35 U.S.C. § 271(b). NRG Energy Inc., and Talen Energy Corporation are each aware of the patents-in-suit, but nonetheless encourage their subsidiaries to infringe by, on information and belief, taking part in the supply contract process for activated carbon and bromine-containing additives at coal-fired power plants that directly infringe and signing, or encouraging their subsidiaries to sign, contracts with suppliers that provide the activated carbon and bromine-containing additives that lead to infringement.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

264.    AJG, DTE, CERT, Chem-Mod and the RC Defendants provide coal with added Br2, HBr, a bromide compound, or a combination thereof to coal-fired power plants connected to an Accused RC Facility.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations.  The Defendants deny any allegations in this paragraph that pertain to them.

265.    When AJG, DTE, CERT, Chem-Mod and the RC Defendants provide coal with added Br2, HBr, a bromide compound, or a combination thereof to a coal-fired power plant with an activated carbon injection system, AJG, DTE, CERT, Chem-Mod and the RC Defendants know

that the coal-fired power plant will perform the step of injecting sorbent comprising activated carbon.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

266.    Alternatively, when AJG, DTE, CERT, Chem-Mod and the RC Defendants provide coal with added Br2, HBr, a bromide compound, or a combination thereof to a coal-fired power plant with an activated carbon injection system, AJG, DTE, CERT, Chem-Mod and the RC Defendants are willfully blind to the fac that the coal-fired power plant will perform the step of injecting sorbent comprising activated carbon.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

267.    The coal with added Br2, HBr, a bromide compound, or a combination thereof provided by AJG, DTE, CERT, Chem-Mod and the RC Defendants is not a staple article or commodity of commerce suitable for substantial non-infringing use. This coal is supplied to a conveyance that moves the coal toward the combustion chamber of a power plant that directly infringes the '114 patent. In addition, AJG, DTE, CERT, Chem-Mod and the RC Defendants tailor the amount of Br2, HBr, a bromide compound, or a combination thereof added to the coal for the specific needs of the power plant.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations.  The Defendants deny any allegations in this paragraph that pertain to them.

268.    When AJG, DTE, CERT, Chem-Mod and the RC Defendants provide coal with added Br2, HBr, a bromide compound, or a combination thereof to a coal-fired power plant with an activated carbon injection system, AJG, DTE, CERT, Chem-Mod and the RC Defendants know that the provided coal has no substantial use other than to be combusted at the plant that will perform the step of injecting sorbent comprising activated carbon.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations.  The Defendants deny any allegations in this paragraph that pertain to them.

269.    AJG, DTE, CERT, Chem-Mod and the RC Defendants took the above-described actions intending to cause infringing acts by others.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

270.    AJG, DTE, CERT, Chem-Mod and the RC Defendants have actual knowledge of the '114 patent and know that actions described above, if taken, would constitute infringement of that patent. Alternatively, AJG, DTE, CERT, Chem-Mod and the RC Defendants believe there is a high probability that others would infringe the '114 patent but have remained willfully blind to the infringing nature of those actions. AJG, DTE, CERT, Chem-Mod and the RC Defendants

therefore infringe the '114 patent under 35 U.S.C. § 271(b) with respect to each coal-fired power plant connected to an Accused RC Facility.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

271.    AJG, DTE, CERT, Chem-Mod and the RC Defendants indirectly infringe the '114 patent by contributing to infringement by others, such as its customers and end-users by offering to sell and/or selling within the United States coal with added $Br_2$, HBr, a bromide compound, or a combination thereof used to practice one or more processes/methods covered by the claims of the '114 patent and that constitute a material part of the inventions claimed in the '114 patent. AJG, DTE, CERT, Chem-Mod and the RC Defendants therefore infringe the '114 patent under 35 U.S.C. § 271(c) with respect to each coal-fired power plant connected to an Accused RC Facility.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations.  The Defendants deny any allegations in this paragraph that pertain to them.

272.    AJG, Chem-Mod, and their associated RC Defendants, directly infringe the '114 patent with respect to each joint enterprise formed between these Defendants and each coal-fired power plant with an activated carbon injection system to which they provide refined coal comprising added $Br_2$, HBr, a bromide compound, or a combination thereof.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations.  The Defendants deny any allegations in this paragraph that pertain to them.

77

273.    DTE, Chem-Mod, and their associated RC Defendants, directly infringe the '114 patent with respect to each joint enterprise formed between these Defendants and each coal-fired power plant with an activated carbon injection system to which they provide refined coal comprising added Br2, HBr, a bromide compound, or a combination thereof.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations.  The Defendants deny any allegations in this paragraph that pertain to them.

274.    CERT, Chem-Mod, and their associated RC Defendants, directly infringe the '114 patent with respect to each joint enterprise formed between these Defendants and each coal-fired power plant with an activated carbon injection system to which they provide refined coal comprising added Br2, HBr, a bromide compound, or a combination thereof.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

275.    AJG, DTE, CERT, Chem-Mod, and their associated RC Defendants also directly infringe when performing certification testing of refined coal designed for coal-fired power plants that use sorbent comprising activated carbon. They perform each step of the '114 patent claims, or they engage a third party agent on their behalf to perform each step of the '114 patent claims that acts under their control.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to

the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

276.     Alternatively, AJG, DTE, CERT, Chem-Mod, and their associated RC Defendants also directly infringe by directing and controlling a third party to perform certification testing of refined coal designed for coal-fired power plants that use sorbent comprising activated carbon. They either instruct the third party to perform the test using coal with added bromine or bromide and using sorbent comprising activated carbon downstream of the combustion chamber, or they instruct the third party to simulate the operation of a particular plant that uses sorbent comprising activated carbon. In either case, they condition payment for the testing on the third party performing each step of the '114 patent claims.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

277.     Alternatively, AJG, DTE, CERT, Chem-Mod, and their associated RC Defendants also indirectly infringe by engaging a third party to perform certification testing of refined coal designed for coal-fired power plants that use sorbent comprising activated carbon. They either instruct the third party to perform the test using coal with added bromine or bromide and using sorbent comprising activated carbon downstream of the combustion chamber, or they instruct the third party to simulate the operation of a particular plant that uses sorbent comprising activated carbon. In either case, they condition payment for the testing on the third party performing each step of the '114 patent claims.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required. To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

278.    Defendants' acts of infringement have caused damage to ME2C. ME2C is entitled to recover from Defendants the damages sustained by ME2C as a result of Defendants' wrongful acts in an amount subject to proof at trial. In addition, the infringing acts and practices of Defendants have caused, are causing, and, unless such acts and practices are enjoined by the Court, will continue to cause immediate and irreparable harm to ME2C for which there is no adequate remedy at law, and for which ME2C is entitled to injunctive relief under 35 U.S.C. § 283.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations. The Defendants deny any allegations in this paragraph that pertain to them.

### COUNT TWO: INFRINGEMENT OF THE '147 PATENT

279.    ME2C incorporates by reference the preceding paragraphs as if fully set forth herein.

**RESPONSE**: The Defendants incorporate by reference their answers to the preceding paragraphs. To the extent that the heading immediately preceding this paragraph may be deemed to contain factual allegations, they are denied.

280.    U.S. Patent No. 8,168,147 (the "'147 patent"), entitled "Sorbents for the Oxidation and Removal of Mercury", was issued on May 1, 2012, naming Edwin S. Olson, Michael J. Holmes and John H. Pavlish as the inventors. Exhibit B ('147 Patent).

**RESPONSE**: Admitted that the '147 patent is entitled "Sorbents for the Oxidation and Removal of Mercury" and the cover page of the '147 patent lists an issue date of May 1, 2012, and lists the following inventors: Edwin S. Olson, Michael J. Holmes and John H. Pavlish. Otherwise, denied.

281.     ME2C owns by assignment all rights, title, and interest in the '147 Patent, and holds all substantial rights pertinent to this suit, including the right to sue and recover for all past, current, and future infringement.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, admitted that the '147 patent on its face lists Midwest Energy Emissions Corp. of Lewis Center, Ohio as the assignee. Otherwise, denied.

282.     The '147 Patent is valid and enforceable and directed to patentable subject matter.

**RESPONSE**: Denied.

283.     Defendants infringe at least one of claims 17-20 of the '147 patent.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

284.     ME2C provides the following explanation of infringement with regard to an exemplary claim.

**RESPONSE**: Denied.

285.     Claim 17 of the '147 patent recites: "A method for separating mercury from a mercury containing gas."

**RESPONSE**: Admitted that claim 17 of the '147 patent recites the language asserted in this paragraph.  Otherwise, denied.

286.   The Coal Plant Defendants and power plants connected to an Accused RC Facility perform this method in order to comply with federal and/or state mercury regulations.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

287.   AJG, DTE, CERT, Chem-Mod and the RC Defendants perform this method when conducting section 45 testing for at least one coal plant that uses activated carbon sorbent.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

288.   Claim 17 of the '147 patent recites: "promoting at least a portion of a particulate sorbent material comprising activated carbon by chemically reacting the sorbent material with a bromine containing promoter to form a promoted brominated sorbent, wherein the bromine containing promoter is in gaseous form, vapor form, or non-aqueous liquid form, and wherein the activated carbon contains graphene sheets having carbene species edge sites which react with the bromine containing promoter to form a carbocation paired with a bromide anion in the promoted brominated sorbent for oxidation of the mercury."

**RESPONSE**: Admitted that claim 17 of the '147 patent recites the language asserted in this paragraph.  Otherwise, denied.

289.   The Coal Plant Defendants and power plants connected to an Accused RC Facility perform this step because they burn coal with added Br2, HBr, a bromide compound, or a combination thereof and/or they provide Br2, HBr, a bromide compound, or a combination thereof into the combustion zone with the coal. The bromine containing promoter is in gaseous form when

82

it comes into contact with activated carbon added by the Coal Plant Defendants and/or power plants connected to an Accused RC Facility. This contact causes the recited chemical reaction to occur.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

290.    AJG, DTE, CERT, Chem-Mod and the RC Defendants perform this step when conducting section 45 testing for at least one coal plant that uses activated carbon sorbent.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

291.    Claim 17 of the '147 patent recites: "chemically reacting elemental mercury in the mercury containing gas with the promoted brominated sorbent to form a mercury/sorbent chemical composition."

**RESPONSE**: Admitted that claim 17 of the '147 patent recites the language asserted in this paragraph.  Otherwise, denied.

292.    As noted above, the Coal Plant Defendants and power plants connected to an Accused RC Facility perform this step such that the recited chemical reaction occurs.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

293.    AJG, DTE, CERT, Chem-Mod and the RC Defendants perform this step when conducting section 45 testing for at least one coal plant that uses activated carbon sorbent.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

294.   Claim 17 of the '147 patent recites: "separating particulates from the mercury containing gas, the particulates including ash and the mercury/sorbent chemical composition."

**RESPONSE**: Admitted that claim 17 of the '147 patent recites the language asserted in this paragraph.  Otherwise, denied.

295.   The Coal Plant Defendants and power plants connected to an Accused RC Facility perform this method in order to comply with federal and/or state mercury regulations.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

296.   AJG, DTE, CERT, Chem-Mod and the RC Defendants perform this step when conducting section 45 testing for at least one coal plant that uses activated carbon sorbent.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

297.   Claim 17 of the '147 patent recites: "A method according to claim 1, further comprising injecting the particulate sorbent material at a sorbent material injection rate and injecting separately the bromine containing promoter into a gas stream whereby in-flight reaction produces the promoted brominated sorbent, wherein the promoter is reacted in the gas phase or as

a vapor, wherein the promoter is added at from about 1 to about 30 grams per 100 grams of the sorbent material."

**RESPONSE**: Admitted that claim 17 of the '147 patent recites the language asserted in this paragraph. Otherwise, denied.

298.    The Coal Plant Defendants and power plants connected to an Accused RC Facility perform this step because they burn coal with added $Br_2$, HBr, a bromide compound, or a combination thereof and/or they provide $BR_2$, HBr, a bromide compound, or a combination thereof into the combustion zone with the coal. In either case, the bromine containing promoter is injected into a gas stream, and it later comes into contact with activated carbon sorbent added by the Coal Plant Defendants and/or power plants connected to an Accused RC Facility. This contact causes in-flight promotion of the sorbent.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

299.    The bromine containing promoter is added at from about 1 to 30 grams per 100 grams of the sorbent material.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

300.    AJG, DTE, CERT, Chem-Mod and the RC Defendants perform this step when conducting section 45 testing for at least one coal plant that uses activated carbon sorbent.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required. To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

301.    The Coal Plant Defendants have and continue to directly infringe, literally and/or under the doctrine of equivalents, the '147 patent under 35 U.S.C. § 271(a).

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, denied.

302.    In addition, NRG Energy Inc., and Talen Energy Corporation induce their respective subsidiary Defendants to infringe under 35 U.S.C. § 271(b). NRG Energy Inc., and Talen Energy Corporation are each aware of the patents-in-suit, but nonetheless encourage their subsidiaries to infringe by, on information and belief, taking part in the supply contract process for activated carbon and bromine-containing additives at coal-fired power plants that directly infringe and signing, or encouraging their subsidiaries to sign, contracts with suppliers that provide the activated carbon and bromine-containing additives that lead to infringement.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

303.    AJG, DTE, CERT, Chem-Mod and the RC Defendants provide coal with added Br2, HBr, a bromide compound, or a combination thereof to coal-fired power plants connected to an Accused RC Facility.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations.  The Defendants deny any allegations in this paragraph that pertain to them.

304.    When AJG, DTE, CERT, Chem-Mod and the RC Defendants provide coal with added Br2, HBr, a bromide compound, or a combination thereof to a coal-fired power plant with an activated carbon injection system, AJG, DTE, CERT, Chem-Mod and the RC Defendants know

that the coal-fired power plant will perform the step of injecting sorbent comprising activated carbon.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

305.    Alternatively, when AJG, DTE, CERT, Chem-Mod and the RC Defendants provide coal with added Br2, HBr, a bromide compound, or a combination thereof to a coal-fired power plant with an activated carbon injection system, AJG, DTE, CERT, Chem-Mod and the RC Defendants are willfully blind to the fact that the coal-fired power plant will perform the step of injecting sorbent comprising activated carbon.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

306.    The coal with added Br2, HBr, a bromide compound, or a combination thereof provided by AJG, DTE, CERT, Chem-Mod and the RC Defendants is not a staple article or commodity of commerce suitable for substantial non-infringing use. This coal is supplied to a conveyance that moves the coal toward the combustion chamber of a power plant that directly infringes the '147 patent. In addition, AJG, DTE, CERT, Chem-Mod and the RC Defendants tailor the amount of Br2, HBr, a bromide compound, or a combination thereof added to the coal for the specific needs of the power plant.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations.  The Defendants deny any allegations in this paragraph that pertain to them.

307.   When AJG, DTE, CERT, Chem-Mod and the RC Defendants provide coal with added Br2, HBr, a bromide compound, or a combination thereof to a coal-fired power plant with an activated carbon injection system, AJG, DTE, CERT, Chem-Mod and the RC Defendants know that the provided coal has no substantial use other than to be combusted at the plant that will perform the step of injecting sorbent comprising activated carbon.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

308.   AJG, DTE, CERT, Chem-Mod and the RC Defendants took the above-described actions intending to cause infringing acts by others.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

309.   AJG, DTE, CERT, Chem-Mod and the RC Defendants have actual knowledge of the '147 patent and know that actions described above, if taken, would constitute infringement of that patent. Alternatively, AJG, DTE, CERT, Chem-Mod and the RC Defendants believe there is a high probability that others would infringe the '147 patent but have remained willfully blind to the infringing nature of those actions. AJG, DTE, CERT, Chem-Mod and the RC Defendants

therefore infringe the '147 patent under 35 U.S.C. § 271(b) with respect to each coal-fired power plant connected to an Accused RC Facility.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

310.    AJG, DTE, CERT, Chem-Mod and the RC Defendants indirectly infringes the '147 patent by contributing to infringement by others, such as its customers and end-users by offering to sell and/or selling within the United coal with added BR2, HBR, a bromide compound, or a combination thereof used to practice one or more processes/methods covered by the claims of the '147 patent and that constitute a material part of the inventions claimed in the '147 patent. AJG, DTE, CERT, Chem-Mod and the RC Defendants therefore infringe the '147 patent under 35 U.S.C. § 271(c) with respect to each coal-fired power plant connected to an Accused RC Facility.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

311.    AJG, Chem-Mod, and their associated RC Defendants, directly infringe the '147 patent with respect to each joint enterprise formed between these Defendants and each coal-fired power plant with an activated carbon injection system to which they provide refined coal comprising added Br2, HBr, a bromide compound, or a combination thereof.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to

the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

312.    DTE, Chem-Mod, and their associated RC Defendants, directly infringe the '147 patent with respect to each joint enterprise formed between these Defendants and each coal-fired power plant with an activated carbon injection system to which they provide refined coal comprising added Br2, HBr, a bromide compound, or a combination thereof.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

313.    CERT, Chem-Mod, and their associated RC Defendants, directly infringe the '114 patent with respect to each joint enterprise formed between these Defendants and each coal-fired power plant with an activated carbon injection system to which they provide refined coal comprising added Br2, HBr, a bromide compound, or a combination thereof.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

314.    AJG, DTE, CERT Chem-Mod, and their associated RC Defendants also directly infringe when performing certification testing of refined coal designed for coal-fired power plants that use sorbent comprising activated carbon. They perform each step of the '147 patent claims, or they engage a third party agent on their behalf to perform each step of the '147 patent claims that acts under their control.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

315.    Alternatively, AJG, DTE, CERT Chem-Mod, and their associated RC Defendants also directly infringe by directing and controlling a third party to perform certification testing of refined coal designed for coal-fired power plants that use sorbent comprising activated carbon. They either instruct the third party to perform the test using coal with added bromine or bromide and using sorbent comprising activated carbon downstream of the combustion chamber, or they instruct the third party to simulate the operation of a particular plant that uses sorbent comprising activated carbon. In either case, they condition payment for the testing on the third party performing each step of the '147 patent claims.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

316.    Alternatively, AJG, DTE, CERT Chem-Mod, and their associated RC Defendants also indirectly infringe by engaging a third party to perform certification testing of refined coal designed for coal-fired power plants that use sorbent comprising activated carbon. They either instruct the third party to perform the test using coal with added bromine or bromide and using sorbent comprising activated carbon downstream of the combustion chamber, or they instruct the third party to simulate the operation of a particular plant that uses sorbent comprising activated

carbon. In either case, they condition payment for the testing on the third party performing each step of the '147 patent claims.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

317.    Defendants' acts of infringement have caused damage to ME2C. ME2C is entitled to recover from Defendants the damages sustained by ME2C as a result of Defendants' wrongful acts in an amount subject to proof at trial. In addition, the infringing acts and practices of Defendants have caused, are causing, and, unless such acts and practices are enjoined by the Court, will continue to cause immediate and irreparable harm to ME2C for which there is no adequate remedy at law, and for which ME2C is entitled to injunctive relief under 35 U.S.C. § 283.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them..

## COUNT THREE: INFRINGEMENT OF THE '225 PATENT

318.    ME2C incorporates by reference the preceding paragraphs as if fully set forth herein.

**RESPONSE**: The Defendants incorporate by reference its answers to the preceding paragraphs. To the extent that the heading immediately preceding this paragraph may be deemed to contain factual allegations, they are denied.

319.     U.S. Patent No. 10,589,225 (the "'225 patent"), entitled "Sorbents for the Oxidation and Removal of Mercury", was issued on March 17, 2020, naming Edwin S. Olson, Michael J. Holmes and John H. Pavlish as the inventors. Exhibit C ('225 Patent).

**RESPONSE**: Admitted that the '225 patent is entitled "Sorbents for the Oxidation and Removal of Mercury" and the cover page of the '225 patent lists an issue date of March 17, 2020, and lists the following inventors: Edwin S. Olson, Michael J. Holmes and John H. Pavlish. Otherwise, denied.

320.     ME2C owns by assignment all rights, title, and interest in the '225 Patent, and holds all substantial rights pertinent to this suit, including the right to sue and recover for all past, current, and future infringement.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required. To the extent a response is required, admitted that the '225 on its face lists as assignee Midwest Energy Emissions Corp. of Lewis Center, Ohio. Otherwise denied.

321.     The '225 Patent is valid and enforceable and directed to patentable subject matter.

**RESPONSE**: Denied.

322.     Defendants infringe at least one of claims 1-29 of the '225 patent.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

323.     ME2C provides the following explanation of infringement with regard to an exemplary claim.

**RESPONSE**: Denied.

324.   Claim 1 of the '225 patent recites: "A method for treating a mercury-containing gas."

**RESPONSE**: Admitted that claim 1 of the '225 patent recites the language asserted in this paragraph.  Otherwise, denied.

325.   The Coal Plant Defendants and power plants connected to an Accused RC Facility perform this method in order to comply with federal and/or state mercury regulations.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

326.   AJG, DTE, CERT, Chem-Mod and the RC Defendants perform this method when conducting section 45 testing for at least one coal plant that uses activated carbon sorbent.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

327.   Claim 1 of the '225 patent recites: "combusting a mixture comprising coal, pyrolysis char, and an additive comprising HBr, a bromide compound, or a combination thereof, to form the mercury-containing, gas."

**RESPONSE**: Admitted that claim 1 of the '225 patent recites the language asserted in this paragraph.  Otherwise, denied.

328.   The Coal Plant Defendants and power plants connected to an Accused RC Facility perform this step because they combust coal, pyrolysis char, and an additive comprising HBr, a bromide compound, or a combination thereof.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

329.   AJG, DTE, CERT, Chem-Mod and the RC Defendants perform this step when conducting section 45 testing for at least one coal plant that uses activated carbon sorbent.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

330.   Claim 1 of the '225 patent recites: "adding a particulate sorbent material comprising activated carbon into the mercury-containing gas."

**RESPONSE**: Admitted that claim 1 of the '225 patent recites the language asserted in this paragraph.  Otherwise, denied.

331.   The Coal Plant Defendants and power plants connected to an Accused RC Facility perform this step by adding sorbent containing activated carbon to the gas that exits the combustion chamber.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

332.   AJG, DTE, CERT, Chem-Mod and the RC Defendants perform this step when conducting section 45 testing for at least one coal plant that uses activated carbon sorbent.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

333.     The Coal Plant Defendants have and continue to directly infringe, literally and/or under the doctrine of equivalents, the '225 patent under 35 U.S.C. § 271(a).

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, denied.

334.     In addition, NRG Energy Inc., and Talen Energy Corporation induce their respective subsidiary Defendants to infringe under 35 U.S.C. § 271(b). NRG Energy Inc., and Talen Energy Corporation are each aware of the patents-in-suit, but nonetheless encourage their subsidiaries to infringe by, on information and belief, taking part in the supply contract process for activated carbon and bromine-containing additives at coal-fired power plants that directly infringe and signing, or encouraging their subsidiaries to sign, contracts with suppliers that provide the activated carbon and bromine-containing additives that lead to infringement.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

335.     AJG, DTE, CERT, Chem-Mod and the RC Defendants provide coal with added Br2, HBr, a bromide compound, or a combination thereof to coal-fired power plants connected to an Accused RC Facility.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations.  The Defendants deny any allegations in this paragraph that pertain to them.

336.     When AJG, DTE, CERT, Chem-Mod and the RC Defendants provide coal with added Br2, HBr, a bromide compound, or a combination thereof to a coal-fired power plant with

an activated carbon injection system, AJG, DTE, CERT, Chem-Mod and the RC Defendants know that the coal-fired power plant will perform the step of injecting sorbent comprising activated carbon.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required. To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

337.    Alternatively, when AJG, DTE, CERT, Chem-Mod and the RC Defendants provide coal with added Br2, HBr, a bromide compound, or a combination thereof to a coal-fired power plant with an activated carbon injection system, AJG, DTE, CERT, Chem-Mod and the RC Defendants are willfully blind to the fact that the coal-fired power plant will perform the step of injecting sorbent comprising activated carbon.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required. To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

338.    The coal with added Br2, HBr, a bromide compound, or a combination thereof provided by AJG, DTE, CERT, Chem-Mod and the RC Defendants is not a staple article or commodity of commerce suitable for substantial non-infringing use. This coal is supplied to a conveyance that moves the coal toward the combustion chamber of a power plant that directly infringes the '225 patent. In addition, AJG, DTE, CERT, Chem-Mod and the RC Defendants tailor the amount of Br2, HBr, a bromide compound, or a combination thereof added to the coal for the specific needs of the power plant.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations.  The Defendants deny any allegations in this paragraph that pertain to them.

339.    When AJG, DTE, CERT, Chem-Mod and the RC Defendants provide coal with added Br2, HBr, a bromide compound, or a combination thereof to a coal-fired power plant with an activated carbon injection system, AJG, DTE, CERT, Chem-Mod and the RC Defendants know that the provided coal has no substantial use other than to be combusted at the plant that will perform the step of injecting sorbent comprising activated carbon.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

340.    AJG, DTE, CERT, Chem-Mod and the RC Defendants took the above-described actions intending to cause infringing acts by others.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

341.    AJG, DTE, CERT, Chem-Mod and the RC Defendants have actual knowledge of the '225 patent and know that actions described above, if taken, would constitute infringement of that patent. Alternatively, AJG, DTE, CERT, Chem-Mod and the RC Defendants believe there is a high probability that others would infringe the '225 patent but have remained willfully blind to the infringing nature of those actions. AJG, DTE, CERT, Chem-Mod and the RC Defendants

therefore infringe the '225 patent under 35 U.S.C. § 271(b) with respect to each coal-fired power plant connected to an Accused RC Facility.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

342.    AJG, DTE, CERT, Chem-Mod and the RC Defendants indirectly infringes the '225 patent by contributing to infringement by others, such as its customers and end-users by offering to sell and/or selling within the United coal with added BR2, HBR, a bromide compound, or a combination thereof used to practice one or more processes/methods covered by the claims of the '225 patent and that constitute a material part of the inventions claimed in the '225 patent. AJG, DTE, CERT, Chem-Mod and the RC Defendants therefore infringe the '225 patent under 35 U.S.C. § 271(c) with respect to each coal-fired power plant connected to an Accused RC Facility.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

343.    AJG, Chem-Mod, and their associated RC Defendants, directly infringe the '225 patent with respect to each joint enterprise formed between these Defendants and each coal-fired power plant with an activated carbon injection system to which they provide refined coal comprising added Br2, HBr, a bromide compound, or a combination thereof.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to

the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

344.     DTE, Chem-Mod, and their associated RC Defendants, directly infringe the '225 patent with respect to each joint enterprise formed between these Defendants and each coal-fired power plant with an activated carbon injection system to which they provide refined coal comprising added Br2, HBr, a bromide compound, or a combination thereof.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

345.     CERT, Chem-Mod, and their associated RC Defendants, directly infringe the '225 patent with respect to each joint enterprise formed between these Defendants and each coal-fired power plant with an activated carbon injection system to which they provide refined coal comprising added Br2, HBr, a bromide compound, or a combination thereof.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

346.     AJG, DTE, CERT Chem-Mod, and their associated RC Defendants also directly infringe when performing certification testing of refined coal designed for coal-fired power plants that use sorbent comprising activated carbon. They perform each step of the '225 patent claims, or they engage a third party agent on their behalf to perform each step of the '225 patent claims that acts under their control.

**RESPONSE**:  This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

347.    Alternatively, AJG, DTE, CERT Chem-Mod, and their associated RC Defendants also directly infringe by directing and controlling a third party to perform certification testing of refined coal designed for coal-fired power plants that use sorbent comprising activated carbon. They either instruct the third party to perform the test using coal with added bromine or bromide and using sorbent comprising activated carbon downstream of the combustion chamber, or they instruct the third party to simulate the operation of a particular plant that uses sorbent comprising activated carbon.  In either case, they condition payment for the testing on the third party performing each step of the '225 patent claims.

**RESPONSE**:  This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

348.    Alternatively, AJG, DTE, CERT Chem-Mod, and their associated RC Defendants also indirectly infringe by engaging a third party to perform certification testing of refined coal designed for coal-fired power plants that use sorbent comprising activated carbon. They either instruct the third party to perform the test using coal with added bromine or bromide and using sorbent comprising activated carbon downstream of the combustion chamber, or they instruct the third party to simulate the operation of a particular plant that uses sorbent comprising activated

carbon. In either case, they condition payment for the testing on the third party performing each step of the '225 patent claims.

**RESPONSE**:  This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

349.    Defendants' acts of infringement have caused damage to ME2C. ME2C is entitled to recover from Defendants the damages sustained by ME2C as a result of Defendants' wrongful acts in an amount subject to proof at trial. In addition, the infringing acts and practices of Defendants have caused, are causing, and, unless such acts and practices are enjoined by the Court, will continue to cause immediate and irreparable harm to ME2C for which there is no adequate remedy at law, and for which ME2C is entitled to injunctive relief under 35 U.S.C. § 283.

**RESPONSE**:  This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

<u>**COUNT FOUR: INFRINGEMENT OF THE '517 PATENT**</u>

350.    ME2C incorporates by reference the preceding paragraphs as if fully set forth herein.

**RESPONSE**:  The Defendants incorporate by reference their answers to the preceding paragraphs. To the extent that the heading immediately preceding this paragraph may be deemed to contain factual allegations, they are denied.

351.    U.S. Patent No. 10,596,517(the "'517 patent"), entitled "Sorbents for the Oxidation and Removal of Mercury", was issued on March 24, 2020, naming Edwin S. Olson, Michael J. Holmes and John H. Pavlish as the inventors. Exhibit D ('517 Patent).

**RESPONSE**: Admitted that the '517 patent is entitled "Sorbents for the Oxidation and Removal of Mercury" and the cover page of the '517 patent lists an issue date of March 24, 2020, and lists the following inventors: Edwin S. Olson, Michael J. Holmes and John H. Pavlish. Otherwise, denied.

352.    ME2C owns by assignment all rights, title, and interest in the '517 Patent, and holds all substantial rights pertinent to this suit, including the right to sue and recover for all past, current, and future infringement.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required. To the extent a response is required, admitted that the '517 on its face lists as assignee Midwest Energy Emissions Corp. of Lewis Center, Ohio. Otherwise denied.

353.    The '517 Patent is valid and enforceable and directed to patentable subject matter.

**RESPONSE**: Denied.

354.    Defendants infringe at least one of claims 1-30 of the '517 patent.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

355.    ME2C provides the following explanation of infringement with regard to an exemplary claim.

**RESPONSE**: Denied.

356.    Claim 1 of the '517 patent recites: "A method for reducing mercury in a mercury-containing gas."

**RESPONSE**: Admitted that claim 1 of the '517 patent recites the language asserted in this paragraph.  Otherwise, denied.

357.    The Coal Plant Defendants and power plants connected to an Accused RC Facility perform this method in order to comply with federal and/or state mercury regulations.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

358.    AJG, DTE, CERT, Chem-Mod and the RC Defendants perform this method when conducting section 45 testing for at least one coal plant that uses activated carbon sorbent.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

359.    Claim 1 of the '517 patent recites: "combusting coal in a combustion chamber, the coal comprising an additive comprising Br2, HBr, a bromide compound, or a combination thereof, to form the mercury-containing gas."

**RESPONSE**: Admitted that claim 1 of the '517 patent recites the language asserted in this paragraph.  Otherwise denied.

360.    The Coal Plant Defendants and power plants connected to an Accused RC Facility perform this step because they combust coal with an additive comprising Br2, HBr, a bromide compound, or a combination thereof to form mercury-containing gas.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

361.    AJG, DTE, CERT, Chem-Mod and the RC Defendants perform this step when conducting section 45 testing for at least one coal plant that uses activated carbon sorbent.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

362.    Claim 1 of the '517 patent recites: "collecting mercury in the mercury-containing gas with a sorbent added to the mercury-containing gas, the sorbent comprising activated carbon."

**RESPONSE**: Admitted that claim 1 of the '517 patent recites the language asserted in this paragraph.  Otherwise, denied.

363.    The Coal Plant Defendants and power plants connected to an Accused RC Facility perform this step by adding sorbent containing activated carbon to the gas that exits the combustion chamber. The mercury in the gas is then collected with the sorbent.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

364.    AJG, DTE, CERT, Chem-Mod and the RC Defendants perform this step when conducting section 45 testing for at least one coal plant that uses activated carbon sorbent.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

365.    The Coal Plant Defendants have and continue to directly infringe, literally and/or under the doctrine of equivalents, the '517 patent under 35 U.S.C. § 271(a).

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, denied.

366.    In addition, NRG Energy Inc., and Talen Energy Corporation induce their respective subsidiary Defendants to infringe under 35 U.S.C. § 271(b). NRG Energy Inc., and Talen Energy Corporation are each aware of the patents-in-suit, but nonetheless encourage their subsidiaries to infringe by, on information and belief, taking part in the supply contract process for activated carbon and bromine-containing additives at coal-fired power plants that directly infringe and signing, or encouraging their subsidiaries to sign, contracts with suppliers that provide the activated carbon and bromine-containing additives that lead to infringement.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

367.    AJG, DTE, CERT, Chem-Mod and the RC Defendants provide coal with added $Br_2$, HBr, a bromide compound, or a combination thereof to coal-fired power plants connected to an Accused RC Facility.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations.  The Defendants deny any allegations in this paragraph that pertain to them.

368.    When AJG, DTE, CERT, Chem-Mod and the RC Defendants provide coal with added $Br_2$, HBr, a bromide compound, or a combination thereof to a coal-fired power plant with

an activated carbon injection system, AJG, DTE, CERT, Chem-Mod and the RC Defendants know that the coal-fired power plant will perform the step of injecting sorbent comprising activated carbon.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

369.    Alternatively, when AJG, DTE, CERT, Chem-Mod and the RC Defendants provide coal with added Br2, HBr, a bromide compound, or a combination thereof to a coal-fired power plant with an activated carbon injection system, AJG, DTE, CERT, Chem-Mod and the RC Defendants are willfully blind to the fac that the coal-fired power plant will perform the step of injecting sorbent comprising activated carbon.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

370.    The coal with added Br2, HBr, a bromide compound, or a combination thereof provided by AJG, DTE, CERT, Chem-Mod and the RC Defendants is not a staple article or commodity of commerce suitable for substantial non-infringing use. This coal is supplied to a conveyance that moves the coal toward the combustion chamber of a power plant that directly infringes the '517 patent. In addition, AJG, DTE, CERT, Chem-Mod and the RC Defendants tailor the amount of Br2, HBr, a bromide compound, or a combination thereof added to the coal for the specific needs of the power plant.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations. The Defendants deny any allegations in this paragraph that pertain to them.

371. When AJG, DTE, CERT, Chem-Mod and the RC Defendants provide coal with added Br2, HBr, a bromide compound, or a combination thereof to a coal-fired power plant with an activated carbon injection system, AJG, DTE, CERT, Chem-Mod and the RC Defendants know that the provided coal has no substantial use other than to be combusted at the plant that will perform the step of injecting sorbent comprising activated carbon.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required. To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

372. AJG, DTE, CERT, Chem-Mod and the RC Defendants took the above-described actions intending to cause infringing acts by others.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required. To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

373. AJG, DTE, CERT, Chem-Mod and the RC Defendants have actual knowledge of the '517 patent and know that actions described above, if taken, would constitute infringement of that patent. Alternatively, AJG, DTE, CERT, Chem-Mod and the RC Defendants believe there is a high probability that others would infringe the '517 patent but have remained willfully blind to the infringing nature of those actions. AJG, DTE, CERT, Chem-Mod and the RC Defendants

therefore infringe the '517 patent under 35 U.S.C. § 271(b) with respect to each coal-fired power plant connected to an Accused RC Facility.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

374.    AJG, DTE, CERT, Chem-Mod and the RC Defendants indirectly infringes the '517 patent by contributing to infringement by others, such as its customers and end-users by offering to sell and/or selling within the United coal with added BR2, HBR, a bromide compound, or a combination thereof used to practice one or more processes/methods covered by the claims of the '517 patent and that constitute a material part of the inventions claimed in the '517 patent. AJG, DTE, CERT, Chem-Mod and the RC Defendants therefore infringe the '517 patent under 35 U.S.C. § 271(c) with respect to each coal-fired power plant connected to an Accused RC Facility.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

375.    AJG, Chem-Mod, and their associated RC Defendants, directly infringe the '517 patent with respect to each joint enterprise formed between these Defendants and each coal-fired power plant with an activated carbon injection system to which they provide refined coal comprising added Br2, HBr, a bromide compound, or a combination thereof.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to

the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

376.    DTE, Chem-Mod, and their associated RC Defendants, directly infringe the '517 patent with respect to each joint enterprise formed between these Defendants and each coal-fired power plant with an activated carbon injection system to which they provide refined coal comprising added Br2, HBr, a bromide compound, or a combination thereof.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

377.    CERT, Chem-Mod, and their associated RC Defendants, directly infringe the '517 patent with respect to each joint enterprise formed between these Defendants and each coal-fired power plant with an activated carbon injection system to which they provide refined coal comprising added Br2, HBr, a bromide compound, or a combination thereof.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

378.    AJG, DTE, CERT Chem-Mod, and their associated RC Defendants also directly infringe when performing certification testing of refined coal designed for coal-fired power plants that use sorbent comprising activated carbon. They perform each step of the '517 patent claims, or they engage a third party agent on their behalf to perform each step of the '517 patent claims that acts under their control.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

379.    Alternatively, AJG, DTE, CERT Chem-Mod, and their associated RC Defendants also directly infringe by directing and controlling a third party to perform certification testing of refined coal designed for coal-fired power plants that use sorbent comprising activated carbon. They either instruct the third party to perform the test using coal with added bromine or bromide and using sorbent comprising activated carbon downstream of the combustion chamber, or they instruct the third party to simulate the operation of a particular plant that uses sorbent comprising activated carbon. In either case, they condition payment for the testing on the third party performing each step of the '517 patent claims.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

380.    Alternatively, AJG, DTE, CERT Chem-Mod, and their associated RC Defendants also indirectly infringe by engaging a third party to perform certification testing of refined coal designed for coal-fired power plants that use sorbent comprising activated carbon. They either instruct the third party to perform the test using coal with added bromine or bromide and using sorbent comprising activated carbon downstream of the combustion chamber, or they instruct the third party to simulate the operation of a particular plant that uses sorbent comprising activated

carbon. In either case, they condition payment for the testing on the third party performing each step of the '517 patent claims.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

381.    Defendants' acts of infringement have caused damage to ME2C. ME2C is entitled to recover from Defendants the damages sustained by ME2C as a result of Defendants' wrongful acts in an amount subject to proof at trial. In addition, the infringing acts and practices of Defendants have caused, are causing, and, unless such acts and practices are enjoined by the Court, will continue to cause immediate and irreparable harm to ME2C for which there is no adequate remedy at law, and for which ME2C is entitled to injunctive relief under 35 U.S.C. § 283.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

### COUNT FIVE: INFRINGEMENT OF THE '430 PATENT

382.    ME2C incorporates by reference the preceding paragraphs as if fully set forth herein.

**RESPONSE**:  The Defendants incorporate by reference their answers to the preceding paragraphs. To the extent that the heading immediately preceding this paragraph may be deemed to contain factual allegations, they are denied.

383.    U.S. Patent No. 10,668,430 (the "'430 patent"), entitled "Sorbents for the Oxidation and Removal of Mercury", was issued on March 24, 2020, naming Edwin S. Olson, Michael J. Holmes and John H. Pavlish as the inventors. Exhibit D ('430 Patent).

**RESPONSE**: Admitted that the '430 patent is entitled "Sorbents for the Oxidation and Removal of Mercury" and the cover page of the '430 patent lists the following inventors: Edwin S. Olson, Michael J. Holmes and John H. Pavlish. Otherwise, denied.

384.    ME2C owns by assignment all rights, title, and interest in the '430 Patent, and holds all substantial rights pertinent to this suit, including the right to sue and recover for all past, current, and future infringement.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the event a response is required, admitted that the '430 on its face lists as assignee Midwest Energy Emissions Corp. of Lewis Center, Ohio. Otherwise denied.

385.    The '430 Patent is valid and enforceable and directed to patentable subject matter.

**RESPONSE**: Denied.

386.    Defendants infringe at least one of claims 1-29 of the '430 patent.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

387.    ME2C provides the following explanation of infringement with regard to an exemplary claim.

**RESPONSE**: Denied.

388.    Claim 1 of the '430 patent recites: "A method of separating mercury from a mercury-containing gas."

**RESPONSE**: Admitted that claim 1 of the '430 patent recites the language asserted in this paragraph.  Otherwise, denied.

389.    The Coal Plant Defendants and power plants connected to an Accused RC Facility perform this method in order to comply with federal and/or state mercury regulations.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

390.    AJG, DTE, CERT, Chem-Mod and the RC Defendants perform this method when conducting section 45 testing for at least one coal plant that uses activated carbon sorbent.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

391.    Claim 1 of the '430 patent recites: "combusting coal in a combustion chamber, to provide the mercury-containing gas, wherein the coal comprises an additive comprising Br2, HBr, a bromide compound, or a combination thereof, wherein the additive is added to the coal before the coal enters the combustion chamber, or the combustion chamber comprises an additive comprising Br2, HBr, a bromide compound, or a combination thereof or a combination thereof."

**RESPONSE**: Admitted that claim 1 of the '430 patent recites the language asserted in this paragraph.  Otherwise, denied.

392.    The Coal Plant Defendants and power plants connected to an Accused RC Facility perform this step because they combust coal with an additive comprising Br2, HBr, a bromide compound, or a combination thereof to form mercury-containing gas.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

393.    AJG, DTE, CERT, Chem-Mod and the RC Defendants perform this step when conducting section 45 testing for at least one coal plant that uses activated carbon sorbent.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

394.    Claim 1 of the '430 patent recites: "injecting a sorbent comprising activated carbon into the mercury-containing gas downstream of the combustion chamber."

**RESPONSE**: Admitted that claim 1 of the '430 patent recites the language asserted in this paragraph.  Otherwise, denied.

395.    The Coal Plant Defendants and power plants connected to an Accused RC Facility perform this step by injecting sorbent containing activated carbon downstream of the combustion chamber.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

396.    AJG, DTE, CERT, Chem-Mod and the RC Defendants perform this step when conducting section 45 testing for at least one coal plant that uses activated carbon sorbent.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

397.    Claim 1 of the '430 patent recites: "contacting mercury in the mercury-containing gas with the sorbent."

**RESPONSE**: Admitted that claim 1 of the '430 patent recites the language asserted in this paragraph.  Otherwise, denied.

398.    The Coal Plant Defendants and power plants connected to an Accused RC Facility perform this step because mercury contained in the gas exiting the combustion chamber contacts the sorbent as all of this material is contained in the same gas.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

399.    AJG, DTE, CERT, Chem-Mod and the RC Defendants perform this step when conducting section 45 testing for at least one coal plant that uses activated carbon sorbent.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

400.    Claim 1 of the '430 patent recites: "separating the sorbent contacted with the mercury from the mercury-containing gas."

**RESPONSE**: Admitted that claim 1 of the '430 patent recites the language asserted in this paragraph.  Otherwise, denied.

401.    The Coal Plant Defendants and power plants connected to an Accused RC Facility perform this step using equipment to collect the mercury captured by the sorbent in order to comply with mercury regulations.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny those allegations.

402.    The Coal Plant Defendants have and continue to directly infringe, literally and/or under the doctrine of equivalents, the'430 patent under 35 U.S.C. § 271(a).

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, denied.

403.    In addition, NRG Energy Inc., and Talen Energy Corporation induce their respective subsidiary Defendants to infringe under 35 U.S.C. § 271(b). NRG Energy Inc., and Talen Energy Corporation are each aware of the patents-in-suit, but nonetheless encourage their subsidiaries to infringe by, on information and belief, taking part in the supply contract process for activated carbon and bromine-containing additives at coal-fired power plants that directly infringe and signing, or encouraging their subsidiaries to sign, contracts with suppliers that provide the activated carbon and bromine-containing additives that lead to infringement.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

404.    AJG, DTE, CERT, Chem-Mod and the RC Defendants provide coal with added Br2, HBr, a bromide compound, or a combination thereof to coal-fired power plants connected to an Accused RC Facility.

**RESPONSE**: The Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations.  The Defendants deny any allegations in this paragraph that pertain to them.

405.   When AJG, DTE, CERT, Chem-Mod and the RC Defendants provide coal with added Br2, HBr, a bromide compound, or a combination thereof to a coal-fired power plant with an activated carbon injection system, AJG, DTE, CERT, Chem-Mod and the RC Defendants know that the coal-fired power plant will perform the step of injecting sorbent comprising activated carbon.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

406.   Alternatively, when AJG, DTE, CERT, Chem-Mod and the RC Defendants provide coal with added Br2, HBr, a bromide compound, or a combination thereof to a coal-fired power plant with an activated carbon injection system, AJG, DTE, CERT, Chem-Mod and the RC Defendants are willfully blind to the fac that the coal-fired power plant will perform the step of injecting sorbent comprising activated carbon.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

407.   The coal with added Br2, HBr, a bromide compound, or a combination thereof provided by AJG, DTE, CERT, Chem-Mod and the RC Defendants is not a staple article or

commodity of commerce suitable for substantial non-infringing use. This coal is supplied to a conveyance that moves the coal toward the combustion chamber of a power plant that directly infringes the '430 patent. In addition, AJG, DTE, CERT, Chem-Mod and the RC Defendants tailor the amount of Br2, HBr, a bromide compound, or a combination thereof added to the coal for the specific needs of the power plant.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required. To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

408.   When AJG, DTE, CERT, Chem-Mod and the RC Defendants provide coal with added Br2, HBr, a bromide compound, or a combination thereof to a coal-fired power plant with an activated carbon injection system, AJG, DTE, CERT, Chem-Mod and the RC Defendants know that the provided coal has no substantial use other than to be combusted at the plant that will perform the step of injecting sorbent comprising activated carbon.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required. To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

409.   AJG, DTE, CERT, Chem-Mod and the RC Defendants took the above-described actions intending to cause infringing acts by others.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required. To the extent a response is required, the Defendants lack information sufficient to form a belief as to

the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

410.    AJG, DTE, CERT, Chem-Mod and the RC Defendants have actual knowledge of the '430 patent and know that actions described above, if taken, would constitute infringement of that patent. Alternatively, AJG, DTE, CERT, Chem-Mod and the RC Defendants believe there is a high probability that others would infringe the '430 patent but have remained willfully blind to the infringing nature of those actions. AJG, DTE, CERT, Chem-Mod and the RC Defendants therefore infringe the '430 patent under 35 U.S.C. § 271(b) with respect to each coal-fired power plant connected to an Accused RC Facility.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

411.    AJG, DTE, CERT, Chem-Mod and the RC Defendants indirectly infringes the '430 patent by contributing to infringement by others, such as its customers and end-users by offering to sell and/or selling within the United coal with added BR2, HBR, a bromide compound, or a combination thereof used to practice one or more processes/methods covered by the claims of the '430 patent and that constitute a material part of the inventions claimed in the '430 patent. AJG, DTE, CERT, Chem-Mod and the RC Defendants therefore infringe the '430 patent under 35 U.S.C. § 271(c) with respect to each coal-fired power plant connected to an Accused RC Facility.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to

the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

412.    AJG, Chem-Mod, and their associated RC Defendants, directly infringe the '430 patent with respect to each joint enterprise formed between these Defendants and each coal-fired power plant with an activated carbon injection system to which they provide refined coal comprising added Br2, HBr, a bromide compound, or a combination thereof.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

413.    DTE, Chem-Mod, and their associated RC Defendants, directly infringe the '430 patent with respect to each joint enterprise formed between these Defendants and each coal-fired power plant with an activated carbon injection system to which they provide refined coal comprising added Br2, HBr, a bromide compound, or a combination thereof.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

414.    CERT, Chem-Mod, and their associated RC Defendants, directly infringe the '114 patent with respect to each joint enterprise formed between these Defendants and each coal-fired power plant with an activated carbon injection system to which they provide refined coal comprising added Br2, HBr, a bromide compound, or a combination thereof.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

415.    AJG, DTE, CERT Chem-Mod, and their associated RC Defendants also directly infringe when performing certification testing of refined coal designed for coal-fired power plants that use sorbent comprising activated carbon. They perform each step of the '430 patent claims, or they engage a third party agent on their behalf to perform each step of the '430 patent claims that acts under their control.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

416.    Alternatively, AJG, DTE, CERT Chem-Mod, and their associated RC Defendants also directly infringe by directing and controlling a third party to perform certification testing of refined coal designed for coal-fired power plants that use sorbent comprising activated carbon. They either instruct the third party to perform the test using coal with added bromine or bromide and using sorbent comprising activated carbon downstream of the combustion chamber, or they instruct the third party to simulate the operation of a particular plant that uses sorbent comprising activated carbon. In either case, they condition payment for the testing on the third party performing each step of the '430 patent claims.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to

the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

417.    Alternatively, AJG, DTE, CERT Chem-Mod, and their associated RC Defendants also indirectly infringe by engaging a third party to perform certification testing of refined coal designed for coal-fired power plants that use sorbent comprising activated carbon. They either instruct the third party to perform the test using coal with added bromine or bromide and using sorbent comprising activated carbon downstream of the combustion chamber, or they instruct the third party to simulate the operation of a particular plant that uses sorbent comprising activated carbon. In either case, they condition payment for the testing on the third party performing each step of the '430 patent claims.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

418.    Defendants' acts of infringement have caused damage to ME2C. ME2C is entitled to recover from Defendants the damages sustained by ME2C as a result of Defendants' wrongful acts in an amount subject to proof at trial. In addition, the infringing acts and practices of Defendants have caused, are causing, and, unless such acts and practices are enjoined by the Court, will continue to cause immediate and irreparable harm to ME2C for which there is no adequate remedy at law, and for which ME2C is entitled to injunctive relief under 35 U.S.C. § 283.

**RESPONSE**: This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, the Defendants lack information sufficient to form a belief as to

the truth of the allegations in this paragraph that do not pertain to them, and therefore deny those allegations; and the Defendants deny any allegations in this paragraph that pertain to them.

## PRAYER FOR RELIEF

The Defendants deny that Plaintiffs are entitled to any of the relief they request with respect to the asserted patents.

## AFFIRMATIVE DEFENSES

The Defendants have not completed their investigation of defenses available to them, and therefore reserve the right to amend their Answer and Counterclaims as their investigation continues.  Each paragraph of their Answer and Counterclaims is incorporated into each Affirmative Defense listed below.

### First Affirmative Defense

1.      To the extent ME2C's claims regarding this patent are not dismissed by the Court, the '147 patent is not infringed because the Defendants do not make, use, sell, offer for sale, or import into the United States, and have not made, used, sold, offered for sale, or imported into the United States, any products or methods that infringe any valid, enforceable claims of the '147 patent, literally or under the doctrine of equivalents; nor have they infringed contributorily, by inducement, or in any other manner, literally or under the doctrine of equivalents.  Furthermore, to the extent that ME2C licensed, waived, released, entered covenants not to sue, or otherwise extinguished claims of infringement for certain purported direct infringers, any conduct by Defendants would not constitute indirect infringement.

2.      To the extent ME2C's claims regarding this patent are not dismissed by the Court, the '114 patent is not infringed because the Defendants do not make, use, sell, offer for sale, or import into the United States, and have not made, used, sold, offered for sale, or imported into the

124

United States, any products or methods that infringe any valid, enforceable claims of the '114 patent, literally or under the doctrine of equivalents; nor have they infringed contributorily, by inducement, or in any other manner, literally or under the doctrine of equivalents.  Furthermore, to the extent that ME2C licensed, waived, released, entered covenants not to sue, or otherwise extinguished claims of infringement for certain purported direct infringers, any conduct by Defendants would not constitute indirect infringement.

3.      To the extent ME2C's claims regarding this patent are not dismissed by the Court, the '225 patent is not infringed because the Defendants do not make, use, sell, offer for sale, or import into the United States, and have not made, used, sold, offered for sale, or imported into the United States, any products or methods that infringe any valid, enforceable claims of the '225 patent, literally or under the doctrine of equivalents; nor have they infringed contributorily, by inducement, or in any other manner, literally or under the doctrine of equivalents.  Furthermore, to the extent that ME2C licensed, waived, released, entered covenants not to sue, or otherwise extinguished claims of infringement for certain purported direct infringers, any conduct by Defendants would not constitute indirect infringement.

4.      To the extent ME2C's claims regarding this patent are not dismissed by the Court, the '517 patent is not infringed because the Defendants do not make, use, sell, offer for sale, or import into the United States, and have not made, used, sold, offered for sale, or imported into the United States, any products or methods that infringe any valid, enforceable claims of the '517 patent, literally or under the doctrine of equivalents; nor have they infringed contributorily, by inducement, or in any other manner, literally or under the doctrine of equivalents.  Furthermore, to the extent that ME2C licensed, waived, released, entered covenants not to sue, or otherwise

extinguished claims of infringement for certain purported direct infringers, any conduct by Defendants would not constitute indirect infringement.

5. To the extent ME2C's claims regarding this patent are not dismissed by the Court, the '430 patent is not infringed because the Defendants do not make, use, sell, offer for sale, or import into the United States, and have not made, used, sold, offered for sale, or imported into the United States, any products or methods that infringe any valid, enforceable claims of the '430 patent, literally or under the doctrine of equivalents; nor have they infringed contributorily, by inducement, or in any other manner, literally or under the doctrine of equivalents.  Furthermore, to the extent that ME2C licensed, waived, released, entered covenants not to sue, or otherwise extinguished claims of infringement for certain purported direct infringers, any conduct by Defendants would not constitute indirect infringement.

<u>Second Affirmative Defense</u>

6. The '147 patent is invalid for failing to satisfy the conditions of patentability, including but not limited to those set forth in 35 U.S.C. §§ 101, 102, 103, and 112.  For example, on information and belief, one or more claims of the '147 patent are invalid for at least the same reasons as set forth in the petitions filed in PTAB Case Nos. IPR2020-00926, IPR2020-00928, IPR2020-1296, and IPR2020-1297. The Defendants' investigation is ongoing, and thus the Defendants expressly reserve the right to assert further and additional grounds for invalidity of the '147 patent according to the appropriate schedule determined by the Court.

7. The '114 patent is invalid for failing to satisfy the conditions of patentability, including but not limited to those set forth in 35 U.S.C. §§ 101, 102, 103, and 112.  For example, on information and belief, one or more claims of the '114 patent are invalid for at least the same reasons as set forth in the petitions filed in PTAB Case Nos. IPR2020-00832, IPR2020-00834,

IPR2020-1294, and IPR2020-1295. The Defendants' investigation is ongoing, and thus the Defendants expressly reserve the right to assert further and additional grounds for invalidity of the '114 patent according to the appropriate schedule determined by the Court.

8.      The '225 patent is invalid for failing to satisfy the conditions of patentability, including but not limited to those set forth in 35 U.S.C. §§ 101, 102, 103, and 112.  For example, on information and belief, one or more claims of the '225 patent are invalid including with respect to the prior art cited in the petitions filed in PTAB Case Nos. IPR2020-00926, IPR2020-00928, IPR2020-1296, IPR2020-1297, IPR2020-00832, IPR2020-00834, IPR2020-1294, and IPR2020-1295. The Defendants' investigation is ongoing, and thus the Defendants expressly reserve the right to assert further and additional grounds for invalidity of the '225 patent according to the appropriate schedule determined by the Court.

9.      The '517 patent is invalid for failing to satisfy the conditions of patentability, including but not limited to those set forth in 35 U.S.C. §§ 101, 102, 103, and 112.  For example, on information and belief, one or more claims of the '517 patent are invalid including with respect to the prior art cited in the petitions filed in PTAB Case Nos. IPR2020-00926, IPR2020-00928, IPR2020-1296, IPR2020-1297, IPR2020-00832, IPR2020-00834, IPR2020-1294, and IPR2020-1295. The Defendants' investigation is ongoing, and thus the Defendants expressly reserve the right to assert further and additional grounds for invalidity of the '517 patent according to the appropriate schedule determined by the Court.

10.     The '430 patent is invalid for failing to satisfy the conditions of patentability, including but not limited to those set forth in 35 U.S.C. §§ 101, 102, 103, and 112.  For example, on information and belief, one or more claims of the '430 patent are invalid including with respect to the prior art cited in the petitions filed in PTAB Case Nos. IPR2020-00926, IPR2020-00928,

IPR2020-1296, IPR2020-1297, IPR2020-00832, IPR2020-00834, IPR2020-1294, and IPR2020-1295. The Defendants' investigation is ongoing, and thus the Defendants expressly reserve the right to assert further and additional grounds for invalidity of the '430 patent according to the appropriate schedule determined by the Court.

Third Affirmative Defense

11.     For the reasons stated below, the '147 patent, the '114 patent, the '225 patent, the '517 patent and the '430 patent are unenforceable pursuant to the doctrine of inequitable conduct.

Fourth Affirmative Defense

12.     For the reasons discussed below, ME2C's claims for relief are barred, in whole or in part, under the doctrine of unclean hands, including to the extent that ME2C is asserting claims for indirect infringement based on conduct by certain purported direct infringers that have received from ME2C licenses, waivers, releases, or covenants not to sue, or for whom ME2C otherwise extinguished claims of infringement, and including for the reasons set forth in the Counterclaims.

Fifth Affirmative Defense

13.     For the reasons discussed below, ME2C's claims for relief are barred, in whole or in part, under the doctrines of waiver, implied license, equitable estoppel, acquiescence and/or other equitable principles, including to the extent that ME2C licensed, waived, released, entered covenants not to sue, or otherwise extinguished claims of infringement for certain purported direct infringers.

Sixth Affirmative Defense

14.     Upon information and belief, Plaintiff MES Inc. has no interest in the patents-in-suit that would give MES Inc. standing to sue for patent infringement.  Accordingly, Plaintiff MES Inc.'s claims fail for lack of standing.

<u>Seventh Affirmative Defense</u>

15.     Under 35 U.S.C. § 271, the Defendants cannot be liable for infringement in connection with licensed uses of a process that is purportedly covered by the asserted claims of the Patents-in-Suit, and licensed thereunder.

16.     On information and belief, Plaintiffs have licensed certain power plants to practice the asserted claims of the Patents-in-Suit.

17.     On information and belief, the licensed power plants include but are not limited to power plants owned or operated by AEP Generation Resources Inc.; Southwestern Electric Power Co.; AEP Texas Inc.; NRG Energy, Inc.; NRG Texas Power LLC; Midwest Generation EME, LLC; Midwest Generation, LLC; Talen Energy Corporation; Brandon Shores LLC; Talen Generation, LLC; H.A. Wagner LLC; Vistra Energy Corp.; Dynegy Miami Fort, LLC; Dynegy Inc.; Dynegy Midwest Generation, LLC; IPH, LLC; Illinois Power Resources Generating, LLC; and their affiliates (together, the "Licensed Defendants").

18.     According to the SAC, the Defendants are accused of infringement in connection with licensed uses of a process that is purportedly covered by the asserted claims of the Patents-in-Suit at the Licensed Defendants' power plants.

19.     The Defendants cannot be liable for such acts under 35 U.S.C. § 271.

20.     On information and belief, the licensed power plants also include ME2C's customers and other authorized users of ME2C's products (together, "ME2C Customers").

21.     To the extent that the Defendants are accused of infringement in connection with licensed uses, at ME2C Customers' power plants, of a process that is purportedly covered by the asserted claims of the Patents-in-Suit, the Defendants cannot be liable for such acts under 35 U.S.C. § 271.

Eighth Affirmative Defense

22.      One or more of the patents-in-suit is unenforceable against the Defendants under the doctrine of patent misuse.

23.      On information and belief, Plaintiffs have impermissibly broadened the scope of their patent grants by marketing unpatented chemical products as patented.

24.      On information and belief, Plaintiffs have impermissibly broadened the scope of their patent grants by requiring alleged infringers to purchase unpatented chemical products from Plaintiffs to avoid charges of infringement.

25.      On information and belief, Plaintiffs have unfairly restrained competition in the market for power plant treatment chemicals by leveraging the threat of patent assertion to charge higher prices for chemical products.

26.      On information and belief, Plaintiffs have unfairly restrained competition in the market for power plant treatment chemicals by improperly tying licenses to one or more patents-in-suit to purchases of unpatented chemical products.

27.      On information and belief, Plaintiffs' actions have had anticompetitive effects on market participants by, among other things, forcing entities to purchase unpatented chemicals from Plaintiffs, rather than freely from the market.

28.      Because Plaintiffs have unfairly benefitted from actions that go beyond the statutory rights created by their patent grants, Plaintiffs should not be permitted to enforce the patents-in-suit against the Defendants.

Ninth Affirmative Defense

29.      ME2C's complaint fails to state a claim upon which relief can be granted

<u>Additional Defenses Reserved</u>

30.     The Defendants' investigations into the allegations set forth in ME2C's Complaint are ongoing and discovery has not yet commenced.  The Defendants expressly reserve the right to assert and pursue additional defenses.

## <u>COUNTERCLAIMS</u>

The Defendants counterclaim as follows:

## <u>Parties, Jurisdiction and Venue</u>

1.      ME2C filed a Complaint against the Defendants seeking, among other things, a judgment that the Defendants infringe U.S. Patent Nos. 10,343,114 ("the '114 patent"), 8,168,147 ("the '147 patent"), 10,589,225 ("the '225 patent"), 10,596,517 ("the '517 patent") and 10,668,430 ("the '430 patent"). An immediate and justiciable controversy exists between ME2C and the Defendants regarding the infringement and validity of the patents-in-suit.

2.      Subject matter jurisdiction in this Court is proper under, among other things, 28 U.S.C. §§ 1331, 1338 and 1367.

3.      CERT Operations IV, LLC is a Delaware limited liability company with its principal place of business at 2100 Southbridge Parkway, Suite 585, Birmingham, AL 35209.

4.      CERT Operations V, LLC is a Delaware limited liability company with its principal place of business at 2100 Southbridge Parkway, Suite 585, Birmingham, AL 35209.

5.      CERT Operations RCB, LLC is a Delaware limited liability company with its principal place of business at 2100 Southbridge Parkway, Suite 585, Birmingham, AL 35209.

6.      Senescence Energy Products, LLC is a Delaware limited liability company with its principal place of business at 2100 Southbridge Parkway, Suite 585, Birmingham, AL 35209.

7.      Rutledge Products, LLC is a Delaware limited liability company with its principal place of business at 2100 Southbridge Parkway, Suite 585, Birmingham, AL 35209.

8.      Alistar Enterprises, LLC is a Delaware limited liability company with its principal place of business at 2100 Southbridge Parkway, Suite 585, Birmingham, AL 35209.

9.      On information and belief, Midwest Energy Emissions Corp. is a Delaware corporation with its principal place of business in Corsicana, Texas.

10.     On information and belief, MES Inc. is a North Dakota corporation with its principal place of business at 311 S. 4th street, STE 118, Grand Forks, ND 58201.

11.     This Court has personal jurisdiction over ME2C because, among other things, Midwest Energy Emissions Corp. is incorporated in this District and ME2C submitted to the jurisdiction of this Court by filing its Complaint in this Court.

12.     Venue is proper in this Court under 28 U.S.C. §§ 1391 and 1400 because, among other things, Midwest Energy Emissions Corp. is incorporated in this District and ME2C selected this venue by filing its Complaint in this Court.

## The '114 Patent

13.     On its face, the '114 patent, entitled "Sorbents for the oxidation and removal of mercury," indicates it was issued by the USPTO on July 9, 2019.

14.     On information and belief, Midwest Energy Emissions Corp. is the assignee of the '114 patent.

15.     The '114 patent contains thirty claims.

16.     The '114 patent contains four independent claims.

17.     Each independent claim of the '114 patent recites "[a] method of separating mercury from a mercury-containing gas."

## The '147 Patent

18.     On its face, the '147 patent, entitled "Sorbents for the oxidation and removal of mercury," indicates it was issued by the USPTO on May 1, 2012.

19.     ME2C asserts it is the owner of the '147 patent.

20.     The '147 patent contains twenty-five claims.

21.     The '147 patent contains one independent claim.

22.     Independent claim 1 recites "[a] method for separating mercury from a mercury-containing gas."

### The '225 Patent

23.     On its face, the '517 patent, entitled "Sorbents for the oxidation and removal of mercury," indicates it was issued by the USPTO on March 17, 2020.

24.     ME2C asserts it is the owner of the '225 patent.

25.     The '225 patent contains twenty-nine claims.

26.     The '225 patent contains four independent claims.

27.     Independent claim 1 recites "[a] method for treating a mercury-containing gas."

### The '517 Patent

28.     On its face, the '517 patent, entitled "Sorbents for the oxidation and removal of mercury," indicates it was issued by the USPTO on March 24, 2020.

29.     ME2C asserts it is the owner of the '517 patent.

30.     The '517 patent contains thirty claims.

31.     The '517 patent contains three independent claims.

32.     Independent claim 1 recites "[a] method for reducing mercury in a mercury-containing gas."

### The '430 Patent

33.     On its face, the '430 patent, entitled "Sorbents for the oxidation and removal of mercury," indicates it was issued by the USPTO on June 2, 2020.

34.     ME2C asserts it is the owner of the '430 patent.

35.    The '430 patent contains twenty-nine claims.

36.    The '430 patent contains three independent claims.

37.    Independent claim 1 recites "[a] method of separating mercury from a mercury-containing gas."

### The Defendants Do Not Infringe

38.    The Defendants do not utilize activated carbon or engage a third party agent to utilize activated carbon for any certification testing for Section 45 tax credits or otherwise in connection with the production of refined coal.

39.    Prior to and other than in connection with defending this lawsuit, the Defendants have and had no knowledge of the particulars of the processes employed by any coal-fired power plants identified in the Second Amended Complaint, including whether any of these power plants utilized activated carbon in processes to capture mercury.

40.    The Defendants do not and did not intend for any coal-fired power plants to utilize activated carbon in processes that the power plants practice.

41.    In addition, refined coal can be utilized in processes that do not infringe the patents-in-suit, such as burning the refined coal without activated carbon, or other technologies using and not using activated carbon that would not implicate the patents-in-suit.

### Misrepresenting the Disclosure of the Nelson Reference and Intentionally Withholding the Inventors' March 2003 Publication

42.    The '147 patent is unenforceable pursuant to the doctrine of inequitable conduct. During prosecution of the '147 patent, the inventors misrepresented to the Patent Office that the activated carbons disclosed in the prior art United States Patent Application Publication US 2004/0003716 to Sidney G. Nelson, Jr. ("the Nelson reference" or "Nelson, Jr.") did not include any activated carbon having "graphene sheets having carbene species edge sites."

43.     During the same prosecution, the inventors also intentionally withheld from the Patent Office a March 2003 article that the inventors themselves had published that stated that activated carbon disclosed in the Nelson reference included graphene sheets having carbene species edge sites.  The "who, what, when, where, and how" of these acts of inequitable conduct are described below.

## **Who**: The Inventors

44.     Edwin S. Olson, Michael J. Holmes, and John H. Pavlish are the named inventors of the '147 patent.

### **What, When, Where and How**: To overcome an anticipation rejection under § 102, the inventors falsely asserted that the Nelson reference does not disclose activated carbon with graphene having carbene species edge sites

45.     The issued claims of the '147 patent require a sorbent material comprising activated carbon.

46.     The issued claims of the '147 patent require that the activated carbon contain "graphene sheets having carbene species edge sites."

47.     The claim language requiring "graphene sheets having carbene species edge sites" was added during prosecution of the '147 patent in order to overcome an anticipation rejection under 35 U.S.C. § 102.

48.     As of October 14, 2010, application claim 34 (which after amendment became claim 1 of the '147 patent) recited a method for separating mercury from a mercury containing gas comprising chemically reacting activated carbon with a bromine containing promoter followed by other process steps to remove mercury from a gas.

49.     As of October 14, 2010, application claim 53 (which after an amendment became claim 17 of the '147 patent) recited a "method of claim 34 further comprising injecting the sorbent

material … and injecting separately the bromine containing promoter into a gas stream whereby in-flight reaction produces the promoted brominated sorbent."

50.     As of October 14, 2010, neither application claim 34 nor application claim 53 recited "activated carbon contained graphene sheets having carbene species edge sites that react with the bromine containing promoter."

51.     On October 14, 2010, the Patent Examiner, Amber Orlando, issued a Final Office Action rejecting all pending claims in the application leading to the '147 patent.

52.     In the October 14, 2010 Final Office Action, the Examiner rejected application claim 34 as anticipated over the Nelson reference.

53.     In discussing her rejection of application claim 34 as anticipated by the Nelson reference, Examiner Orlando stated that Nelson disclosed "a method for separating mercury from a mercury containing gas comprising: (a) promoting at least a portion of a sorbent material by chemically reacting the sorbent material with a bromine containing promoter to form a promoted brominated sorbent; (b) chemically reacting elemental mercury in the mercury containing gas with a promoted brominated sorbent to form a mercury/sorbent chemical composition; (c) separating particulates from the mercury containing gas, the particulates including ash and the mercury/sorbent composition, the bromine containing promoter is in gaseous form, the activated carbon contains basic binding sites which react with the bromine containing promoter to form a carbocation paired with a bromide anion in the promoted brominated sorbent by oxidation of the mercury, the carbocation paired with a bromide anion chemically react with elemental mercury form the mercury/sorbent composition, at least a portion of the basic binding sites of the activated carbon reacts with the oxidized mercury in the mercury containing gas to form another mercury/sorbent chemical composition."

54.     During prosecution, the inventors never disputed the Examiner's statements, quoted in the previous paragraph, regarding the disclosure of the Nelson reference.

55.     In her October 14, 2010 Final Office Action, Examiner Orlando stated that then-pending application claim 34 was anticipated by the Nelson reference.

56.     In her October 14, 2010 Final Office Action, Examiner Orlando rejected application claim 53 as being obvious over the Nelson reference "as applied in application claim 34 above."

57.     In her October 14, 2010 Final Office Action, Examiner Orlando stated application claim 53 was rejected further rejected in view of U.S. Patent No. 6,848,374 to Srinavasachar et al. ("the Srinavasachar patent").

58.     In her October 14, 2010 Final Office Action, the Examiner stated that the Srinavasachar patent disclosed injecting sorbent material at a sorbent material injection rate and injecting separately the bromine containing promoter into a gas stream whereby in-flight reaction produces the promoted brominated sorbent.

59.     In her October 14, 2010 Final Office Action, the Examiner stated that it would have been obvious to one of ordinary skill in the art at the time the invention was made to have modified the Nelson reference to inject separately the bromine containing promoter into a gas stream whereby in-flight reaction produces the promoted brominated sorbent.

60.     The inventors never disputed during prosecution of the application leading to the '147 patent that it would have been obvious to one of ordinary skill in the art at the time the invention was made to have modified the Nelson reference to inject separately the bromine containing promoter into a gas stream whereby in-flight reaction produces the promoted brominated sorbent.

61.     On February 14, 2011, the inventors filed a response to the October 14, 2010 Office Action.

62.     In the February 14, 2011 response, the inventors amended claim 34 to add "and wherein the activated carbon contains graphene sheets having carbene species edge sites which react with the bromine containing promoter to form a carbocation paired with a bromide anion in the promoted  brominated sorbent for oxidation of the mercury."

63.     In the February 14, 2011 response, the inventors made no changes to the text of application claim 53.

64.     In the February 14, 2011 response, the inventors argued that application claim 34, as amended to require "graphene sheets having carbene species edge sites," was not anticipated by the Nelson reference.

65.     In the February 14, 2011 response, the inventors addressed the Examiner's anticipation rejection of claim 34 over the Nelson reference by asserting, among other things, that "Nelson, Jr. fails to disclose activated carbon containing graphene sheets having carbene species edge sites therein."

66.     In the February 14, 2011 response, the inventors also argued that "Nelson, Jr. describes exemplary activated carbons in paragraph 69."

67.     Paragraph 69 of the Nelson reference states in part that "The gas-phase bromine treatment of this invention has been tested on many different commercially-available powdered activated carbons (PACs). Each has been found to be easily brominated to at least 15 wt % Br, including PACs from … Norit. Norit's Darco FGD® is a common PAC yardstick frequently used by other researchers as a competitive yardstick."

68.     By February 14, 2011, inventors Edwin S. Olson, Michael J. Holmes and John H. Pavlish had published extensively on research conducted using the Norit FGD PAC referred to in paragraph 69 of the Nelson reference.

69.     In February 2005, inventors John H. Pavlish and Michael J. Holmes were co-authors of a Final Report submitted to the U.S. Department of Energy regarding Cooperative Agreement No. DE-FC26-034NT41897 wherein they described "NORIT Americas Inc. DARCO® FGD."

70.     The February 2005 Final Report stated that Norit Darco FGD "has been proven in numerous incinerator facilities to be highly effective for removing gaseous Hg…."

71.     The February 2005 Final Report indicates that the inventors used Norit Darco FGD in pilot-scale tests involving sorbent injections and mercury oxidation additives.

72.     On information and belief, by February 14, 2011, the inventors were familiar with Norit Darco FGD.

73.     By February 14, 2011, inventors Edwin S. Olson, Michael J. Holmes and John H. Pavlish had published multiple articles stating and/or disclosing that the Norit FGD PAC contained graphene sheets having carbene species edge sites.

74.     By February 14, 2011, inventors Edwin S. Olson, Michael J. Holmes and John H. Pavlish knew that the Norit PAC referred to in paragraph 69 of the Nelson reference contained graphene sheets having carbene species edge sites.

75.     In the February 14, 2011 response, the inventors also stated that "The Examiner's attention is directed to the examples reported by Nelson, Jr. The test results tend to demonstrate that the selection of activated carbon according to Nelson, Jr. is not particularly significant."

76.     The argument in the previous paragraph implies that not all activated carbons include graphene sheets having carbene species edge sites.

77.     In the February 14, 2011 response, the inventors also responded to the rejection of application claim 53 as obvious over the Nelson reference and the Srinavasachar patent.

78.     In the February 14, 2011 response in the section addressing the obviousness rejection of claim 53 over the Nelson reference and the Srinavasachar patent, the inventors asserted that "Nelson, Jr. fails to disclose activated carbon containing graphene sheets having carbene species edge sites therein."

79.     The inventors knew, when the statement in the previous paragraph was submitted to the Patent Examiner, that Norit Darco FGD was an activated carbon containing graphene sheets having carbene species edge sites therein.

80.     In the February 14, 2011 response in the section addressing the obviousness rejection of claim 53 over the Nelson reference and the Srinavasachar patent, the inventors also referred the Examiner to the exemplary activated carbons described in paragraph 69 of the Nelson reference and argued that Nelson's test results demonstrate that the selection of activated carbon according to Nelson is not particularly significant.

81.     In the '147 patent, Figure 2 shows carbene structures present in graphene sheets.

82.     Figure 2 of the '147 patent illustrates the chemistry whereby the graphene sheets that in bulk make up the activated carbon used in the '147 patent react at an edge carbene site—a carbon Zigzag site—with the bromine.

83.     Figure 2 of the patent discloses the zig-zag carbene structures referred to in the March 2003 presentation (discussed below):

FIG. 2

### The inventors' March 2003 article disclosed that Norit FGD contained graphene sheets with carbene species edge sites

84.     In 2003, inventors Olson, Pavlish and other authors published an article, "The Multiple Site Model for Flue Gas-Mercury Interactions on Activated Carbons: the Basic Site," *Fuel Chemistry Division Preprints 2003, 48(1), 30.* The article was also presented at a conference in March 2003: the 225th American Chemical Society National Meeting, New Orleans, LA, March 23-27, 2003.

85.     The March 2003 presentation reported that "The commercial powdered carbon Norit FGD sorbent has been thoroughly investigated at the Energy & Environmental Research Center (EERC) as a sorbent for elemental mercury…."

86.     In the March 2003 presentation, the inventors reported an explanation for the nature of carbon sites and their interaction with flue gases and mercury. This explanation used "the concept of zig-zag carbene structures recently proposed for electronic states at the edges of the carbon graphene layers."

87.     The 2003 article states that the chemistry of the Norit FGD sorbent is summarized in a figure showing the same structures:

142

88.     The March 2003 presentation is prior art under 35 U.S.C. § 102(b) to the '147 patent and was 35 U.S.C. § 102(b) prior art to the application that led to the '147 patent.

89.     The inventors never disclosed the March 2003 presentation to the Patent Office during the pendency of the application leading to the '147 patent.

90.     By March 2003 the inventors knew that the Norit FGD activated carbon disclosed in the Nelson reference includes graphene sheets with carbene species edge sites therein.

91.     By March 2003 the inventors know that Norit Darco FGD activated carbon includes graphene sheets with carbene species edge sites therein.

92.     The March 2003 presentation shows that the Norit FGD activated carbon disclosed in the Nelson reference includes graphene sheets with carbene species edge sites therein.

93.     The March 2003 presentation shows that Norit Darco FGD activated carbon includes graphene sheets with carbene species edge sites therein.

94.     The March 2003 presentation directly contradicts the inventors' statements to the Patent Office that the Nelson reference failed to disclose activated carbon containing graphene sheets having carbene species therein.

143

95.     The March 2003 presentation would have been material to the prosecution of the '147 patent.

**The inventors continue to misrepresent Nelson in subsequent prosecution**

96.     On information and belief, in response to the inventors' February 14, 2011 filing, the Patent Examiner believed the inventors' false statement that the Nelson reference did not disclose graphene having carbene edge sites. She stated so in her February 23, 2011 Office Action.

97.     Having successfully misled the Examiner, the inventors in subsequent papers argued that "The Examiner admits that Nelson does not disclose or suggest graphenes, or edge sites of graphene sheets being carbenes."

98.     The inventors also asserted that the Nelson reference, even when combined with other prior art, "fails to disclose or suggest the use of graphene sheets, their carbene- containing edge sites and reaction with bromine promoting agents, and production of carbocations."

99.     For instance, on May 20, 2011, the inventors filed an Amendment and Response under 37 C.F.R. § 1.111 (May 2011 Response).  No claims were amended or canceled in the May 2011 Response.

100.    In the May 2011 Response, the inventors stated that "[t]he Examiner admits that Nelson does not disclose or suggest graphenes, or edge sites of graphene sheets being carbenes.  It also does not disclose or suggest the reaction of the carbene sites with a bromine containing promoter to yield bromide anion paired carbocation sites on the carbon as being the sites reactive with mercury, which serve to react with and immobilize mercury vapor from the waste gas stream." In the May 2011 Response, the applicants requested withdrawal of the rejections with respect to claim 34 and all rejected dependent claims.

101.    In an August 4, 2011 Non-Final Rejection ("August 2011 Rejection"), the Patent Office rejected all pending claims under 35 U.S.C. 103(a) as being unpatentable over Nelson, Jr. in light of other references.

102.    In the August 2011 Rejection, the Examiner stated that Nelson Jr. reference "does not disclose the activated carbon being graphene sheets and the binding sites being carbene species edge sites."

103.    In the August 2011 Rejection, the Examiner stated that "Chlorine and bromine are very similar in there [sic] chemical characteristics, and there would be a reasonable expectation of success when using the same methods to regenerate a brominated sorbent as is used for a chlorinated sorbent."

104.    On August 31, 2011, the Examiner held a telephone interview with the applicants representatives' Nicholas P. Lanzatella and Ramani V. Marakani.

105.    On October 27, 2011, the Applicants filed an Amendment and Response under 37 C.F.R. § 1.111 ("the October 2011 Response").  In the October 2011 Response, independent claim 34 was amended to add the word "particulate" before the phrase "sorbent material."  According to the October 2011 Response, this amendment was proposed during the August 31, 2011 interview.

106.    In the October 2011 Response, the Applicants stated that "[t]he Examiner admits that Nelson does not disclose or suggest the activated carbon being graphene sheets, or edge sites of graphene sheets being carbenes."  In the October 2011 Response, the Applicants requested withdrawal of the rejections with respect to claim 34 and all rejected dependent claims.

107.    In the October 2011 Response, the Applicants argued that the Examiners' rejections over Nelson Jr. in light of other references had a fundamental deficiency "concerning activated carbon containing graphene sheets, carbene-containing edge sites of the graphene sheets and

145

reaction bromine promoting agents, and the resulting production of carbocations that can react with and immobilize vaporized mercury."  The Applicants next stated that "[a]ccordingly, a prima facie case" of obviousness had not been properly made.  The Applicants repeated the above two statements in regard to multiple combinations of references, each of which included the Nelson Jr. reference.

**The inventors' misrepresentations regarding Norit PAC and the withholding of the March 2003 article were material and done with the intent to deceive the Patent Examiner into issuing the '147 Patent**

108.    The statement that "Nelson, Jr. fails to disclose activated carbon containing graphene sheets having carbene species edge sites therein" is false.

109.    The inventors made the statement in the previous paragraph multiple times during the prosecution of the '147 patent.

110.    Each of the inventors' statements that "Nelson, Jr. fails to disclose activated carbon containing graphene sheets having carbene species edge sites therein" was material to the prosecution of the '147 patent.

111.    The statement that "The Examiner admits that Nelson does not disclose or suggest graphenes, or edge sites of graphene sheets being carbenes" implies that Nelson does not disclose or suggest graphenes, or edge sites of graphene sheets being carbenes.

112.    The inventors made the statement in the previous paragraph multiple times during the prosecution of the '147 patent.

113.    The implication that Nelson does not disclose or suggest graphenes, or edge sites of graphene sheets being carbenes is false.

114.    Each of the inventors' statements that "The Examiner admits that Nelson does not disclose or suggest graphenes, or edge sites of graphene sheets being carbenes" and their implications, was material to prosecution of the '147 patent.

146

115.    The statement that the Nelson reference, when combined with other references, did not disclose or suggest graphene sheets containing carbene species edge cites is false.

116.    The inventors made the statement in the previous paragraph multiple times during the prosecution of the '147 patent.

117.    Each of the inventors' statement that the Nelson reference, when combined with other references, did not disclose or suggest graphene sheets containing carbene species edge cites was material to prosecution.

118.    By the time the inventors made the false statements to the Examiner regarding the activated carbons disclosed in the Nelson reference, the inventors had thoroughly investigated the Norit FGD sorbent and were familiar with its structure.

119.    The inventors stated or implied that Nelson did not disclose activated carbene containing graphene sheets having carbene species edge sites at least fifteen times over the course of February 14, 2011 until October 27, 2011.

120.    In a January 10, 2012 Notice of Allowance, Claims 34-36, 39, 40, and 42-61 were allowed.  The examiner's entire statement of reasons for allowance was that "a method for separating mercury from a mercury containing gas comprising promoting at least a portion of a particulate sorbent material comprising activated carbon by chemically reacting the sorbent material with a bromine containing promoter to form a promoted brominated sorbent, wherein the activated carbon contains graphene sheets having carbine species edge sites which react with the bromine containing promoter to form a carbocation paired with a bromide anion in the promoted brominated sorbent for oxidation of the mercury could not be found within the prior art."

121.    On information and belief, the Examiner stated in her reasons for allowance that she was allowing the claims of the '147 patent to issue because she believed the prior art did not

disclose a method of removing mercury from a gas using bromine and activated carbon where the activated carbon contains graphene sheets having carbene edge species sites.

122.    The only reasonable inference that can be drawn from the inventors' repeated false statements regarding the activated carbons disclosed in the Nelson reference and the inventors' failure to disclose the March 2003 article that would have exposed the inventors' falsehood and the other conduct cited above is that the inventors made these false statements and withheld this reference in an attempt to deceive the Examiner into issuing the '147 patent.

## Withholding of the May 2003 presentation and article

123.    During prosecution of the '147 patent, the inventors intentionally withheld their May 2003 article and a separate May 2003 presentation, each of which were § 102(b) prior art to the '147 patent and the '114 patent and each of which disclosed an element that the inventors contended was missing from the prior art—that carbene sites that react with bromines to produce carbocationic sites that can react with and immobilize mercury atoms.

124.    Bromine and chlorine are halogens.

125.    The examiner repeatedly stated that "chlorine and bromine are very similar in there chemical characteristics."

126.    The '147 patent discloses in Figure 2 "a theory developed from scientific evidence to explain the nature of the promoting compounds."

127.    Figure 2 of the '147 patent illustrates the chemistry whereby the graphene sheets react at an edge carbene site with bromine to form a mercury-reactive species capable of capturing mercury.

128.     The specification of the '114 Patent describes the Figure 2 as follows:  "Thus an entirely new model is presented for the reactivity of bromine-treated carbon with mercury shown in Fig. 2."

129.     In May 2003, the inventors issued two publications that disclose this chemistry for chlorine.

130.     Inventors Edwin S. Olson, Michael J. Holmes and John H. Pavlish are co-authors on Olson et al., "Chemical mechanisms in mercury emission control technologies," *J. Phys. IV France* 107 (2003), presented May 26-30, 2003 and the XIIth International Conference on Heavy Metals in the Environment in Grenoble, France.

131.     The same inventors are co-authors on another paper, Olson et al., "An Improved Model for Flue Gas-Mercury Interactions on Activated Carbons," Paper #142 at the Combined Power Plant Air Pollutant Control Mega Symposium, May 19-22, 2003, in Washington, DC.

132.     By virtue of being published more than one year before the earliest application date shown on the face of either the '147 patent or the '114 patent, each of these papers is prior art under 35 U.S.C. § 102(b) to the '147 patent and to the '114 patent.

133.     Each of these May 2003 inventor publications discloses the same chemistry for chlorine that the inventors claimed they discovered for bromine.

134.     Shown below is Figure 2 from the patents-in-suit on the left and the corresponding figure from the May 2003 inventor publications:

FIG. 2

Figure 3. Oxidation mechanism model for activated carbons.

135.     The prior art included teachings that bromine compounds oxidize mercury more effectively than chlorine compounds.

136.     However, the inventors argued that the prior art did not disclose the same chemistry as allegedly discovered by the inventors by which bromine interacted with carbon and mercury.

137.     The statement by the inventors that Fig. 2 shows "an entirely new model" is false, as the model was disclosed in the 2003 prior art references described above.

138.     The May 2003 inventor publications disclosed that chlorine acted in accordance with the same chemical reactions and taught that other halogens would work in the same way.

139.     The May 2003 inventor publications would have been material to the prosecution of the '147 patent and the prosecution of the '114 patent because, among other reasons, it showed that chlorine interacted with carbon and mercury using the same chemical reactions as the inventors claimed bromine interacted with carbon and mercury and that activated brominated carbon used in the prior art to control mercury possessed the requisite structures for these chemical reactions.

140.     But for the inventors' deliberate withholding of their May 2003 publications, the Examiner would have persisted in rejecting the claims of the '114 patent and the '147 patent over

the prior art and the claims of the '114 patent and the '147 patent would not have issued in their present form.

141.    The inventors had knowledge of their May 2003 publications and had knowledge of their contents.

142.    The only reasonable inference that can be drawn regarding the inventors' decision to withhold the May 2003 inventor publications is that they did so in order to deceive the Patent Examiner into issuing the '114 and '147 patents.

143.    Each of the '225, '517, and '430 patents is a related patent to both the '114 and '147 patents.

144.    Each claim of the '225, '517, and '430 patents includes, inter alia, elements relating to the combusting of coal and a bromine or bromide additive, and the use of a sorbent containing activated carbon.  Each of the '225, '517, and '430 patents includes Figure 2, which is substantially identical to Figure 2 in the '114 and '147 patents discussed above.

145.    The inequitable conduct of the named inventors discussed above relating to the '147 patent, which occurred earlier in the patent family chain, bears an immediate and necessary relationship to the enforcement of the '225, '517, and '430 patents, as the claims concern, inter alia, the interaction of additive halogens with an activated carbon sorbent.

146.    The inequitable conduct of the inventors discussed above relating to the '114 patent, which occurred earlier in the patent family chain,  bears an immediate and necessary relationship to the enforcement of the '225, '517, and '430 patents, as the claims concern, inter alia, the interaction of additive halogens with an activated carbon sorbent.

147.    The inequitable conduct associated with the '147 and '114 patent occurred earlier in the patent family chain that led to the '225, '517, and '430 patents.  Because the inequitable conduct

associated with the '147 and '114 patents bears an immediate and necessary relation to the enforcement of the '225, '517, and '430 patents, the inequitable conduct associated with the '147 and '114 patents, individually and together, renders each of the '225, '517, and '430 patents unenforceable.

### ME2C's Use of AEP's Confidential Information

148.    On information and belief, in 2016, ME2C induced AEP to permit ME2C to enter AEP's H.W. Pirkey Power Plant and gain access to confidential information regarding the operation of that plant.

149.    On information and belief, ME2C entered a Non-Disclosure Agreement ("NDA") in which ME2C promised to maintain as confidential and promised that it would not use any of AEP's confidential information for any purpose other than for evaluation of and negotiations relating to the testing at the Pirkey plant.

150.    On information and belief, ME2C was then permitted to enter the Pirkey plant, where ME2C conducted tests and had access to confidential information regarding the operation of the Pirkey plant.

151.    On information and belief, at the time of these tests, ME2C considered the process at Pirkey using halogen-based additives and halogen-based sorbents to be a process outside the scope of ME2C's patents that was, ME2C believed, inferior to ME2C's patented process.

152.    On information and belief, ME2C repeatedly identified its patents, including the '147 patent, as covering a process that was different from, and allegedly superior to, the halogen-based additive and sorbent process that was already being used at Pirkey.

153.    On information and belief, ME2C, at the time of the testing at Pirkey, did not believe the '147 patent covered the halogen-based additive and sorbent process that was already being used at Pirkey and that is still being used today.

154.    On information and belief, in 2018, ME2C filed a patent application seeking to obtain claims that covered the halogen-based additive and sorbent process that ME2C learned was being used at Pirkey. ME2C gained that knowledge through confidential information it received under the work governed by the NDA.

155.    On information and belief, ME2C knowingly and willfully breached the NDA, which precluded ME2C from using AEP's confidential information for purposes other than for evaluation and negotiations relating to the Pirkey plant testing.

156.    On information and belief, in 2018 or 2019, ME2C, by distorting the meanings of claim terms in the '147 patent, developed an argument that the '147 patent covered the halogen-based additive and sorbent process that was already being used at Pirkey, despite concluding in 2016 and 2017 that the '147 patent did not cover that process.

157.    On information and belief, ME2C developed the argument referred to in the previous paragraph using confidential information about the Pirkey plant obtained as part of its work at Pirkey governed by the NDA.

### COUNT I: NONINFRINGEMENT OF THE '147 PATENT

158.    The Defendants re-allege herein the foregoing paragraphs of their Counterclaims.

159.    This counterclaim arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.,* and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and seeks a declaration that no valid claims of the '147 patent are infringed by the Defendants and that the Defendants have not made, used, sold and/or offered to sell in this country any of the methods that are within

the scope of the claims of the '147 patent and thus have not infringed and are not infringing any claim of the '147 patent, to the extent ME2C's claims regarding this patent are not dismissed by the Court.

160.    There is an actual and justiciable controversy between the parties concerning whether the manufacture, use, sale and/or offering for sale of the Defendants' methods will infringe any valid and enforceable claim of the '147 patent.

161.    The Defendants do not infringe any claim of the '147 patent.

162.    The Defendants are entitled to a judicial declaration that the manufacture, use, sale and/or offering for sale of the Defendants' methods will not infringe, directly or indirectly, any valid claim of the '147 patent.

## COUNT II: INVALIDITY OF THE '147 PATENT

163.    The Defendants re-allege herein the foregoing paragraphs of their Counterclaims.

164.    This counterclaim arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.,* and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and seeks a declaration that the claims of the '147 patent are invalid for failure to comply with the statutory prerequisites of Title 35 of the United States Code, including without limitation, one or more of §§ 101, 102, 103, and/or 112, or other judicially-created bases for invalidation and unenforceability.

165.    There is an actual and justiciable controversy between the parties concerning whether the manufacture, use, sale and/or offering for sale of the Defendants' methods will infringe any valid and enforceable claim of the '147 patent.

166.    One or more claims of the '147 patent is invalid under one or more of §§ 101, 102, 103, and/or 112 of the Patent Act, Title 35 of the United States Code.  On information and belief, one or more claims of the '147 patent are invalid for at least the same reasons as set forth in the

154

petitions filed in PTAB Case Nos. IPR2020-00926, IPR2020-00928, IPR2020-1296, and IPR2020-1297. The Defendants' investigation is ongoing, and thus the Defendants expressly reserve the right to assert further and additional grounds for invalidity of the '147 patent according to the appropriate schedule determined by the Court.

167.    The Defendants are entitled to a judicial declaration that the claims of the '147 patent are invalid for failure to comply with the statutory prerequisites of Title 35 of the United States Code, including without limitation, one or more of §§ 101, 102, 103, and/or 112, or other judicially-created bases for invalidation and unenforceability.

### **COUNT III: UNENFORCEABILITY OF THE '147 PATENT**

168.    The Defendants re-allege herein the foregoing paragraphs of their Counterclaims.

169.    This counterclaim arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and seeks a declaration that the claims of the '147 patent are unenforceable pursuant to the doctrine of inequitable conduct and unclean hands.

170.    The Defendants seek a declaration that the claims of the '147 patent are unenforceable. A judicial declaration is necessary and appropriate at this time in order that the Defendants may ascertain their rights and duties with respect to the '147 patent and to any past, present, or future conduct by the Defendants.

171.    As alleged in more detail above, during prosecution of the '147 patent, the inventors made material misrepresentations of fact to the Patent Office regarding the activated carbon disclosed in the Nelson prior art reference, and intentionally withheld a prior art reference that the inventors themselves had authored which would have exposed the falsehood of the inventors' misrepresentations.

172.    As alleged in more detail above, the inventors acted with an intent to deceive the Patent Office into issuing the '147 patent.

173.    The named inventors further violated their duty of candor by failing to submit to the patent examiner and the USPTO material prior art, namely the May 2003 inventor publications discussed above.

174.    As alleged in more detail above, the May 2003 publications were material to the prosecution of the '147 patent, the inventors made material misrepresentations of fact to the Patent Office regarding the activated carbon disclosed in the Nelson prior art reference, and intentionally withheld a prior art reference that the inventors themselves had authored which would have exposed the falsehood of the inventors' misrepresentations. As alleged in more detail above, the inventors acted with an intent to deceive the Patent Office into issuing the '147 patent.

175.    The Defendants are entitled to a judicial declaration that the claims of the '147 patent are therefore unenforceable due to the inventors' inequitable conduct and unclean hands.

## <u>COUNT IV: NONINFRINGEMENT OF THE '114 PATENT</u>

176.    The Defendants re-allege herein the foregoing paragraphs of their Counterclaims.

177.    This counterclaim arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.,* and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and seeks a declaration that no valid claims of the '114 patent are infringed by the Defendants and that the Defendants have not made, used, sold and/or offered to sell in this country any of the methods that are within the scope of the claims of the '114 patent and thus have not infringed and are not infringing any claim of the '114 patent, to the extent ME2C's claims regarding this patent are not dismissed by the Court.

178.     There is an actual and justiciable controversy between the parties concerning whether the manufacture, use, sale and/or offering for sale of the Defendants' methods will infringe any valid and enforceable claim of the '114 patent.

179.     The Defendants do not infringe any claim of the '114 patent.

180.     The Defendants are entitled to a judicial declaration that the manufacture, use, sale and/or offering for sale of the Defendants' methods will not infringe, directly or indirectly, any valid claim of the '114 patent.

## COUNT V: INVALIDITY OF THE '114 PATENT

181.     The Defendants re-allege herein the foregoing paragraphs of their Counterclaims.

182.     This counterclaim arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.,* and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and seeks a declaration that the claims of the '114 patent are invalid for failure to comply with the statutory prerequisites of Title 35 of the United States Code, including without limitation, one or more of §§ 101, 102, 103, and/or 112, or other judicially-created bases for invalidation and unenforceability.

183.     There is an actual and justiciable controversy between the parties concerning whether the manufacture, use, sale and/or offering for sale of the Defendants' methods will infringe any valid and enforceable claim of the '114 patent.

184.     One or more claims of the '114 patent is invalid under one or more of §§ 101, 102, 103, and/or 112 of the Patent Act, Title 35 of the United States Code.  On information and belief, one or more claims of the '114 patent are invalid for at least the same reasons as set forth in the petitions filed in PTAB Case Nos. IPR2020-00832, IPR2020-00834, IPR2020-1294, and IPR2020-1295. The Defendants' investigation is ongoing, and thus the Defendants expressly

reserve the right to assert further and additional grounds for invalidity of the '114 patent according to the appropriate schedule determined by the Court.

185.    The Defendants are entitled to a judicial declaration that the claims of the '114 patent are invalid for failure to comply with the statutory prerequisites of Title 35 of the United States Code, including without limitation, one or more of §§ 101, 102, 103, and/or 112, or other judicially-created bases for invalidation and unenforceability.

### COUNT VI: UNENFORCEABILITY OF THE '114 PATENT

186.    The Defendants re-allege herein the foregoing paragraphs of their Counterclaims.

187.    This counterclaim arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and seeks a declaration that the claims of the '114 patent are unenforceable pursuant to the doctrine of inequitable conduct and unclean hands.

188.    The Defendants seek a declaration that the claims of the '114 patent are unenforceable. A judicial declaration is necessary and appropriate at this time in order that the Defendants may ascertain their rights and duties with respect to the '114 patent and to any past, present, or future conduct by the Defendants.

189.    As alleged in more detail above, during prosecution of the '114 patent, the inventors intentionally withheld a prior art reference that the inventors themselves had authored which would have exposed the falsehood of the inventors' misrepresentations.

190.    As alleged in more detail above, the inventors acted with an intent to deceive the Patent Office into issuing the '114 patent.

191.    The named inventors further violated their duty of candor by failing to submit to the patent examiner and the USPTO material prior art, namely the March 2003 and May 2003 inventor publications discussed above.

192.     As alleged in more detail above, the March and May 2003 publications were material to the prosecution of the '114 patent, the inventors intentionally withheld a prior art reference that the inventors themselves had authored which would have led the Examiner to refuse to issue the claims of the '114 patent in their current form.

193.     As alleged in more detail above, the inventors acted with an intent to deceive the Patent Office into issuing the '114 patent.

194.     As also alleged above, ME2C obtained the '114 patent and drafted the claims of the '114 patent using confidential information of AEP's that ME2C used in breach of the NDA that ME2C entered into with AEP.

195.     The Defendants are entitled to a judicial declaration that the claims of the '114 patent are therefore unenforceable due to the inventors' inequitable conduct and unclean hands.

## COUNT VII: NONINFRINGEMENT OF THE '225 PATENT

196.     The Defendants re-allege herein the foregoing paragraphs of their Counterclaims.

197.     This counterclaim arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.,* and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and seeks a declaration that no valid claims of the '225 patent are infringed by the Defendants and that the Defendants have not made, used, sold and/or offered to sell in this country any of the methods that are within the scope of the claims of the '225 patent and thus have not infringed and are not infringing any claim of the '225 patent, to the extent ME2C's claims regarding this patent are not dismissed by the Court.

198.     There is an actual and justiciable controversy between the parties concerning whether the manufacture, use, sale and/or offering for sale of the Defendants' methods will infringe any valid and enforceable claim of the '225 patent.

199.    The Defendants do not infringe any claim of the '225 patent.

200.    The Defendants are entitled to a judicial declaration that the manufacture, use, sale and/or offering for sale of the Defendants' methods will not infringe, directly or indirectly, any valid claim of the '225 patent.

## COUNT VIII: INVALIDITY OF THE '225 PATENT

201.    The Defendants re-allege herein the foregoing paragraphs of their Counterclaims.

202.    This counterclaim arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.,* and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and seeks a declaration that the claims of the '225 patent are invalid for failure to comply with the statutory prerequisites of Title 35 of the United States Code, including without limitation, one or more of §§ 101, 102, 103, and/or 112, or other judicially-created bases for invalidation and unenforceability.

203.    There is an actual and justiciable controversy between the parties concerning whether the manufacture, use, sale and/or offering for sale of the Defendants' methods will infringe any valid and enforceable claim of the '225 patent.

204.    One or more claims of the '225 patent is invalid under one or more of §§ 101, 102, 103, and/or 112 of the Patent Act, Title 35 of the United States Code.  On information and belief, one or more claims of the '225 patent are invalid including with respect to the prior art cited in the petitions filed in PTAB Case Nos. IPR2020-00926, IPR2020-00928, IPR2020-1296, IPR2020-1297, IPR2020-00832, IPR2020-00834, IPR2020-1294, and IPR2020-1295. The Defendants' investigation is ongoing, and thus the Defendants expressly reserve the right to assert further and additional grounds for invalidity of the '225 patent according to the appropriate schedule determined by the Court.

205.    The Defendants are entitled to a judicial declaration that the claims of the '225 patent are invalid for failure to comply with the statutory prerequisites of Title 35 of the United States Code, including without limitation, one or more of §§ 101, 102, 103, and/or 112, or other judicially-created bases for invalidation and unenforceability.

## COUNT IX: UNENFORCEABILITY OF THE '225 PATENT

206.    The Defendants re-allege herein the foregoing paragraphs of their Counterclaims.

207.    This counterclaim arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and seeks a declaration that the claims of the '225 patent are unenforceable pursuant to the doctrines of inequitable conduct and unclean hands.

208.    The Defendants seek a declaration that the claims of the '225 patent are unenforceable. A judicial declaration is necessary and appropriate at this time in order that the Defendants may ascertain their rights and duties with respect to the '225 patent and to any past, present, or future conduct by the Defendants.

209.    As alleged in more detail above, the inequitable conduct associated with the '147 and '114 patents, individually and together, renders the '225 patent unenforceable.

210.    As also alleged above, ME2C obtained the '225 patent and drafted the claims of the '225 patent using confidential information of AEP's that ME2C used in breach of the NDA that ME2C entered into with AEP.

211.    The Defendants are entitled to a judicial declaration that the claims of the '225 patent are therefore unenforceable due to the inventors' inequitable conduct.

## COUNT X: NONINFRINGEMENT OF THE '517 PATENT

212.    The Defendants re-allege herein the foregoing paragraphs of their Counterclaims.

213.     This counterclaim arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.,* and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and seeks a declaration that no valid claims of the '517 patent are infringed by the Defendants and that the Defendants have not made, used, sold and/or offered to sell in this country any of the methods that are within the scope of the claims of the '517 patent and thus have not infringed and are not infringing any claim of the '517 patent, to the extent ME2C's claims regarding this patent are not dismissed by the Court.

214.     There is an actual and justiciable controversy between the parties concerning whether the manufacture, use, sale and/or offering for sale of the Defendants' methods will infringe any valid and enforceable claim of the '517 patent.

215.     The Defendants do not infringe any claim of the '517 patent.

216.     The Defendants are entitled to a judicial declaration that the manufacture, use, sale and/or offering for sale of the Defendants' methods will not infringe, directly or indirectly, any valid claim of the '517 patent.

## COUNT XI: INVALIDITY OF THE '517 PATENT

217.     The Defendants re-allege herein the foregoing paragraphs of their Counterclaims.

218.     This counterclaim arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.,* and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and seeks a declaration that the claims of the '517 patent are invalid for failure to comply with the statutory prerequisites of Title 35 of the United States Code, including without limitation, one or more of §§ 101, 102, 103, and/or 112, or other judicially-created bases for invalidation and unenforceability.

219.    There is an actual and justiciable controversy between the parties concerning whether the manufacture, use, sale and/or offering for sale of the Defendants' methods will infringe any valid and enforceable claim of the '517 patent.

220.    One or more claims of the '517 patent is invalid under one or more of §§ 101, 102, 103, and/or 112 of the Patent Act, Title 35 of the United States Code.  On information and belief, one or more claims of the '517 patent are invalid including with respect to the prior art cited in the petitions filed in PTAB Case Nos. IPR2020-00926, IPR2020-00928, IPR2020-1296, IPR2020-1297, IPR2020-00832, IPR2020-00834, IPR2020-1294, and IPR2020-1295. The Defendants' investigation is ongoing, and thus the Defendants expressly reserve the right to assert further and additional grounds for invalidity of the '517 patent according to the appropriate schedule determined by the Court.

221.    The Defendants are entitled to a judicial declaration that the claims of the '517 patent are invalid for failure to comply with the statutory prerequisites of Title 35 of the United States Code, including without limitation, one or more of §§ 101, 102, 103, and/or 112, or other judicially-created bases for invalidation and unenforceability.

## COUNT XII: UNENFORCEABILITY OF THE '517 PATENT

222.    The Defendants re-allege herein the foregoing paragraphs of their Counterclaims.

223.    This counterclaim arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and seeks a declaration that the claims of the '517 patent are unenforceable pursuant to the doctrines of inequitable conduct and unclean hands.

224.    The Defendants seek a declaration that the claims of the '517 patent are unenforceable.  A judicial declaration is necessary and appropriate at this time in order that the

Defendants may ascertain their rights and duties with respect to the '517 patent and to any past, present, or future conduct by the Defendants.

225. As alleged in more detail above, the inequitable conduct associated with the '147 and '114 patents, individually and together, renders the '517 patent unenforceable.

226. As also alleged above, ME2C obtained the '517 patent and drafted the claims of the '517 patent using confidential information of AEP's that ME2C used in breach of the NDA that ME2C entered into with AEP.

227. The Defendants are entitled to a judicial declaration that the claims of the '517 patent are therefore unenforceable due to the inventors' inequitable conduct.

## COUNT XIII: NONINFRINGEMENT OF THE '430 PATENT

228. The Defendants re-allege herein the foregoing paragraphs of their Counterclaims.

229. This counterclaim arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.,* and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and seeks a declaration that no valid claims of the '430 patent are infringed by the Defendants and that the Defendants have not made, used, sold and/or offered to sell in this country any of the methods that are within the scope of the claims of the '430 patent and thus have not infringed and are not infringing any claim of the '430 patent, to the extent ME2C's claims regarding this patent are not dismissed by the Court.

230. There is an actual and justiciable controversy between the parties concerning whether the manufacture, use, sale and/or offering for sale of the Defendants' methods will infringe any valid and enforceable claim of the '430 patent.

231. The Defendants do not infringe any claim of the '430 patent.

232.    The Defendants are entitled to a judicial declaration that the manufacture, use, sale and/or offering for sale of the Defendants' methods will not infringe, directly or indirectly, any valid claim of the '430 patent.

## COUNT XIV: INVALIDITY OF THE '430 PATENT

233.    The Defendants re-allege herein the foregoing paragraphs of their Counterclaims.

234.    This counterclaim arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.,* and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and seeks a declaration that the claims of the '430 patent are invalid for failure to comply with the statutory prerequisites of Title 35 of the United States Code, including without limitation, one or more of §§ 101, 102, 103, and/or 112, or other judicially-created bases for invalidation and unenforceability.

235.    There is an actual and justiciable controversy between the parties concerning whether the manufacture, use, sale and/or offering for sale of the Defendants' methods will infringe any valid and enforceable claim of the '430 patent.

236.    One or more claims of the '430 patent is invalid under one or more of §§ 101, 102, 103, and/or 112 of the Patent Act, Title 35 of the United States Code.  On information and belief, one or more claims of the '430 patent are invalid including with respect to the prior art cited in the petitions filed in PTAB Case Nos. IPR2020-00926, IPR2020-00928, IPR2020-1296, IPR2020-1297, IPR2020-00832, IPR2020-00834, IPR2020-1294, and IPR2020-1295. The Defendants' investigation is ongoing, and thus the Defendants expressly reserve the right to assert further and additional grounds for invalidity of the '430 patent according to the appropriate schedule determined by the Court.

237.    The Defendants are entitled to a judicial declaration that the claims of the '430 patent are invalid for failure to comply with the statutory prerequisites of Title 35 of the United

States Code, including without limitation, one or more of §§ 101, 102, 103, and/or 112, or other judicially-created bases for invalidation and unenforceability.

<u>**COUNT XV: UNENFORCEABILITY OF THE '430 PATENT**</u>

238.   The Defendants re-allege herein the foregoing paragraphs of their Counterclaims.

239.   This counterclaim arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and seeks a declaration that the claims of the '430 patent are unenforceable pursuant to the doctrines of inequitable conduct and unclean hands.

240.   The Defendants seek a declaration that the claims of the '430 patent are unenforceable.   A judicial declaration is necessary and appropriate at this time in order that the Defendants may ascertain their rights and duties with respect to the '430 patent and to any past, present, or future conduct by the Defendants.

241.   As alleged in more detail above, the inequitable conduct associated with the '147 and '114 patents, individually and together, renders the '430 patent unenforceable.

242.   As also alleged above, ME2C obtained the '430 patent and drafted the claims of the '430 patent using confidential information of AEP's that ME2C used in breach of the NDA that ME2C entered into with AEP.

243.   The Defendants are entitled to a judicial declaration that the claims of the '430 patent are therefore unenforceable due to the inventors' inequitable conduct.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, the Defendants respectfully request that the Court enter a Judgment and Order as follows:

A.   Declaring that the Defendants have not infringed, and are not infringing, the '114 patent, to the extent ME2C's claims regarding this patent are not dismissed by the Court;

166

B.  Declaring that the Defendants have not infringed, and are not infringing, the '147 patent, to the extent ME2C's claims regarding this patent are not dismissed by the Court;

C.  Declaring that the Defendants have not infringed, and are not infringing, the '225 patent, to the extent ME2C's claims regarding this patent are not dismissed by the Court;

D.  Declaring that the Defendants have not infringed, and are not infringing, the '517 patent, to the extent ME2C's claims regarding this patent are not dismissed by the Court;

E.  Declaring that the Defendants have not infringed, and are not infringing, the '430 patent, to the extent ME2C's claims regarding this patent are not dismissed by the Court;

F.  Declaring that the '114 patent is invalid and void;

G.  Declaring that the '147 patent is invalid and void;

H.  Declaring that the '225 patent is invalid and void;

I.  Declaring that the '517 patent is invalid and void;

J.  Declaring that the '430 patent is invalid and void;

K.  Declaring that the '114 patent is unenforceable against the Defendants;

L.  Declaring that the '147 patent is unenforceable against the Defendants;

M.  Declaring that the '225 patent is unenforceable against the Defendants;

N.  Declaring that the '517 patent is unenforceable against the Defendants;

O.  Declaring that the '430 patent is unenforceable against the Defendants;

P.  A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding the Defendants their reasonable attorneys' fees against Plaintiffs; and

Q.  Such other relief as the Court deems proper.

Dated:  August 3, 2021

OF COUNSEL:

Douglas R. Nemec

Leslie A. Demers

SKADDEN, ARPS, SLATE, MEAGHER &
   FLOM LLP

One Manhattan West

New York, New York 10001-8602

Tel.: (212) 735-3000

Fax: (212) 735-2000

douglas.nemec@skadden.com

leslie.demers@skadden.com

/s/ *Robert S. Saunders*

Robert S. Saunders

Robert S. Saunders (ID No. 3027)

Jessica R. Kunz (ID No. 5698)

SKADDEN, ARPS, SLATE, MEAGHER &
   FLOM LLP

One Rodney Square

P.O. Box 636

Wilmington, Delaware 19899-0636

Tel.: (302) 651-3000

Fax: (302) 651-3001

rob.saunders@skadden.com

jessica.kunz@skadden.com

*Attorneys for Defendants CERT
Operations IV LLC, CERT Operations V
LLC, CERT Operations RCB LLC,
Senescence Energy Products, LLC,
Rutledge Products, LLC, and Alistar
Enterprises, LLC*

168