**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| MIDWEST ENERGY EMISSIONS CORP. and MES INC.,<br><br>　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>ARTHUR J. GALLAGHER & CO., *et al*.,<br><br>　　　　　　　　Defendants. | Case No. 1:19-cv-01334-RGA-CJB |

**LETTER BRIEF TO THE HONORABLE CHRISTOPHER J. BURKE FROM
DEFENDANTS REGARDING THE PLAINTIFFS' RULE 45 SUBPOENAS**

| **MORRIS, NICHOLS, ARSHT & TUNNELL LLP** | **SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP** |
|---|---|
| Jack B. Blumenfeld (ID No. 1014)<br>Brian P. Egan (ID No. 6227)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, Delaware 19899<br>(302) 658-9200<br>jblumenfeld@mnat.com<br>began@mnat.com<br><br>OF COUNSEL:<br><br>**GIBSON, DUNN & CRUTCHER LLP**<br><br>Richard W. Mark<br>Joseph Evall<br>Paul J. Kremer<br>200 Park Avenue<br>New York, NY 10166-0193<br>(212) 351-4000<br>rmark@gibsondunn.com<br>jevall@gibsondunn.com<br>pkremer@gibsondunn.com<br><br>*Attorneys for Defendants<br>AJG Coal, LLC,<br>AJG Iowa Refined Coal LLC,* | Robert S. Saunders (ID No. 3027)<br>Nicole A. DiSalvo (ID No. 4662)<br>Jessica R. Kunz (ID No. 5698)<br>One Rodney Square<br>P.O. Box 636<br>Wilmington, Delaware 19899-0636<br>Tel.: (302) 651-3000<br>Fax: (302) 651-3001<br>rob.saunders@skadden.com<br>nicole.disalvo@skadden.com<br>jessica.kunz@skadden.com<br><br>OF COUNSEL:<br><br>Douglas R. Nemec<br>Leslie A. Demers<br>One Manhattan West<br>New York, New York 10001-8602<br>Tel.: (212) 735-3000<br>Fax: (212) 735-2000<br>douglas.nemec@skadden.com<br>leslie.demers@skadden.com<br><br>*Attorneys for Defendants<br>Alistar Enterprises, LLC,<br>CERT Operations RCB LLC,* |

*Arbor Fuels Company, LLC,*
*Arthur J. Gallagher & Co.,*
*Belle River Fuels Company, LLC,*
*Brandon Shores Coaltech LLC,*
*Chem-Mod-LLC,*
*DTE REF Holdings LLC,*
*DTE REF Holdings II LLC,*
*Gallagher Clean Energy LLC,*
*Joppa Refined Coal LLC,*
*Louisa Refined Coal, LLC,*
*Portage Fuels Company, LLC,*
*Thomas Hill Refined Coal LLC,*
*Wagner Coaltech LLC, and*
*Walter Scott Refined Coal LLC*

*CERT Operations IV LLC,*
*CERT Operations V LLC,*
*Rutledge Products, LLC, and*
*Senescence Energy Products, LLC*

September 7, 2021

**VIA CM/ECM**

Dear Judge Burke:

I submit this letter on behalf of all Defendants in the above-titled action to address the timing and scope of twenty Rule 45 subpoenas noticed by Plaintiffs (the "Subpoenas") referenced in the Parties' stipulation (D.I. 306). On August 11, 2021, Plaintiffs emailed Defendants a 453-page document containing 27 document subpoenas and 27 deposition subpoenas. Seven of the subpoenas were directed to power plant entities and are not the subject of this motion, per the Parties' stipulation. The remaining 20 subpoenas contain nearly identical sets of 18 document requests and 21 deposition topics. An exemplary subpoena is attached for the Court's reference.

As set forth below, we respectfully request that the Subpoenas be quashed for at least three reasons. First, the Subpoenas seek evidence of potential infringement by non-parties, as opposed to discovery relevant to the claims or defenses of the parties in the case (which itself names 44 defendants). Second, the Subpoenas seek information related to claims that the Court recommended be dismissed, including with prejudice, in its Report and Recommendation (D.I. 279). Third, the Subpoenas seek information that is available from Defendants.[1]

**I.   The Subpoenas Improperly "Fish" for New Entities to Accuse of Infringement**

The information that the Subpoenas seek from the 20 targets is unrelated to the claims and defenses at issue in the case.[2] Courts have held that the federal "discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable without discovery, not to find out if it has any basis for a claim." *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1327 (Fed. Cir. 1990). "That the discovery might uncover evidence showing that a plaintiff has a legitimate claim does not justify the discovery request." *Id*. Parties "should not be permitted to embark on a 'fishing expedition' based on 'mere suspicion or speculation.'" *Haworth, Inc. v. Steelcase, Inc.*, 12 F.3d 1090, 1094 (Fed. Cir. 1993) (quoting *Micro Motion*, 894 F.2d at 1325-27).

---

[1]   Plaintiffs expanded their third party discovery campaign even after the conference was set on this motion, serving several more overbroad and duplicative subpoenas. These subpoenas are directed to entities and individuals totally unrelated to Defendants and unaffected by the expiration of Section 45 tax credits that Plaintiffs have invoked as the impetus for seeking third party discovery so early in the case. These additional subpoenas, and those served on the power plants, prove that Plaintiffs' expansive requests are not primarily about preservation of evidence, but reflect a fishing expedition in search of new infringement defendants. That the Subpoenas are an abusive tactic is further shown by Plaintiffs' statements during an August 16, 2021 earnings call with investors, describing the Subpoenas as leading to "a significant difference in the value proposition of [their] claims" (transcript of earnings call available at https://seekingalpha.com/article/4449969-midwest-energy-emissions-corp-meec-ceo-richard-macpherson-on-q2-2021-results-earnings-call).

[2]   This includes, but is not limited to, Document Request Nos. 1, 2, 4, 5, 8, and 9 and Deposition Topic Nos. 1, 2, 4, 5, 8, 9, 19, and 20 from the enclosed sample, and all identical requests.

Hon. Christopher J. Burke
September 7, 2021
Page 2

Here, the Subpoenas demand their targets to provide extensive information about non-parties. For instance, Memco CERT 2018, LLC was asked to "[i]dentify each coal-fired power plant that receives refined coal from you or an entity or facility directly or indirectly owned, operated, or controlled by you" and JPM Capital Corporation was instructed to provide "[a]ll tests, evaluations, analyses of mercury capture technologies and/or refined coal technologies that have been employed at a refined coal facility or coal-fired power plant." Requests identical to each of these were incorporated into subpoenas served on 19 entities. These requests broadly seek information about the subpoenaed parties with no stated limit or tie back to the claims pending against the actual defendants. Thus, the requests on their face seek to discover whether Plaintiffs may have claims against non-parties – or other unknown parties that may be associated with these non-parties. Indeed, material already produced to Plaintiffs shows that these non-parties have no connection (or at best a limited connection) to the claims and defenses asserted in the case.[3]

## II.     The Subpoenas Request Information Related to Dismissed Claims

The Subpoenas seek documents and deposition testimony relating to Plaintiffs' claims of direct infringement that the Court recommended be dismissed.[4] The Court recommended dismissal of Plaintiffs' claims for joint infringement with prejudice, finding that Plaintiffs had insufficiently alleged that "a Moving Defendant and its associated power plant each have an 'equal right to a voice in the direction of the enterprise, which gives an equal right of control.'" (D.I. 279, p. 32). The Court also recommended dismissal of Plaintiffs' theory of single-actor direct infringement with respect to multiple patent claims based on allegations of directly owning, directly controlling, or indirectly controlling a refined coal facility. (D.I. 279, p. 38).[5]

Despite the Court's ruling, the Subpoenas seek information concerning Plaintiffs' defective joint infringement and single-actor direct infringement claims. The Subpoenas request that multiple non-parties provide documents and "[e]xplain the relationship (i.e., control, ownership, or other contractual relationship) between you and any Defendant in this case" or *any* entity involved in

---

[3]   As just one example, Memco CERT 2018, LLC was identified in certain Defendants' interrogatory responses as a member of an entity that wholly owns two defendants. That does not provide a basis to fish broadly for claims against Memco CERT 2018, LLC.

[4]   These requests include, but are not limited to, Document Request No. 6 and Deposition Topic No. 6 from the enclosed sample, and all identical requests.

[5]   Defendants note that their Rule 7(b) disclosures included hundreds of reports demonstrating that the refined coal companies qualify their refined coal for Section 45 tax credits using a testing protocol that is entirely separate from any use of activated carbon by the plant. The produced documents belie Plaintiffs' permitted theory of direct infringement and indirect infringement, *viz.*, that Defendants' Section 45 qualification employed "post-emission certification testing" that reflected use of activated carbon. The Subpoenas came only days after Defendants produced thousands of pages of reports, and before ME2C posed any questions about whether Defendants' production was complete. With Defendants having produced documents that contradict Plaintiffs' core theory, Plaintiffs apparently embarked on a fishing expedition to find a different one.

Hon. Christopher J. Burke
September 7, 2021
Page 3

the sale of refined coal. By seeking discovery related to claims that the Court has recommended be dismissed, Plaintiffs effectively are attempting to circumvent the Court's Report and Recommendation, including aspects to which they did not object.

### III.     The Subpoenas Seek Duplicative Discovery from the Non-Parties

Plaintiffs' Subpoenas are improper because they request documents, information, and deposition testimony that can be obtained through party discovery.[6,7] Courts may deny discovery where the requesting party already has access to the relevant information. *See Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 532 (D. Del. 2002) (quashing subpoena where requesting party "presumably ha[d] access or will have access to similar information from its opponents during discovery on their defenses"). Here, Plaintiffs already have received numerous documents that obviate the need for many of the Subpoenas' requests. For instance, in their Subpoena to Buffington Partners, LLC ("Buffington"), Plaintiffs seek "[a]ll contracts with entities that own or operate refined coal facilities." However, certain Defendants already have produced the Operation and Maintenance Agreement for Buffington. (CERT-0003214 – CERT-0003240; *see also* CERT-0007771 – CERT-0007833 (Lease and License Agreement for Buffington)).

The Subpoenas also prematurely request information from non-parties that, in many respects, likely will become available during party discovery. For example, the Subpoenas request "documents" and "communications," which are both defined in each Subpoena to include emails. However, Plaintiffs are not yet entitled to email discovery per the parties' agreed protocol for email discovery (D.I. 156). Likewise, Plaintiffs seek information from the non-parties relating to the magnitude of Section 45 tax credits, even though (i) Plaintiffs' efforts to bring Section 45 tax credits into the case—through their "post-emission certification testing" theory of direct and indirect infringement—are at odds with the hundreds of "core technical documents" that Defendants produced, leaving Plaintiffs bereft of any Section 45-related theory of infringement *or* damages; and (ii) Defendants provided dozens of P&L statements, covering each Defendant, in their core technical documents, many of which show the amount of refined coal sold and therefore permit ready calculation for Section 45 tax credits anyway.

*     *     *

All told, the Subpoenas cast a far-too-wide net that imposes an enormous and entirely unwarranted compliance burden on their targets—a burden that relates to entities and theories that are not in the case; piles onto theories that do not square with the record; and seeks documents through Rule 45 without first analyzing or obtaining the same materials through parties. For the reasons set forth above, Defendants respectfully request that the Court quash the Subpoenas and grant such further relief as it deems just and proper.

---

[6]   These requests include, but are not limited to, Document Request Nos. 7, 11, and 17 and Deposition Topic Nos. 7, 11, and 17 from the enclosed sample, and all identical requests.

[7]   The Subpoenas are also unduly burdensome because they are unnecessarily duplicative. Indeed, all 20 targets received nearly identical requests in this regard.

Hon. Christopher J. Burke
September 7, 2021
Page 4

                              Respectfully submitted,

                              /s/ *Jessica R. Kunz*

                              Jessica R. Kunz (ID No. 5698)

Enclosure

cc:    Clerk of the Court (via CM/ECF, w/ encl.)
        Counsel of Record (via CM/ECF, w/ encl.)