```
 1                    IN THE UNITED STATES DISTRICT COURT

 2                     FOR THE DISTRICT OF DELAWARE

 3

 4    MIDWEST ENERGY EMISSIONS CORP., )
      and MES INC.,                   )
 5                                    )
                     Plaintiffs,      )
 6                                    ) C.A. No. 19-1334-RGA-CJB
      v.                              )
 7                                    )
      ARTHUR J. GALLAGHER & CO., ET   )
 8    AL.,                            )
                                      )
 9                     Defendants.    )

10
                                      J. Caleb Boggs Courthouse
11                                    844 North King Street
                                      Wilmington, Delaware
12
                                      Monday, September 27, 2021
13                                    1:00 p.m.
                                      Discovery Dispute
14                                    Teleconference

15
      BEFORE:  THE HONORABLE CHRISTOPHER J. BURKE
16             United States District Court Magistrate Judge

17    APPEARANCES:

18            DEVLIN LAW FIRM LLC
              BY:  JOEL GLAZER, ESQUIRE
19
                      -and-
20
              CALDWELL CASSADY CURRY PC
21            BY:  JUSTIN T. NEMUNAITIS, ESQUIRE

22                            For the Plaintiffs

23

24

25
```

```
 1    APPEARANCES CONTINUED:

 2

 3              SKADDEN ARPS SLATE MEAGHER & FLOM LLP
                BY:  NICOLE A. DiSALVO, ESQUIRE
 4
                          -and-
 5
                BY:  DOUGLAS R. NEMEC, ESQUIRE
 6              BY:  LESLIE A. DEMERS, ESQUIRE
                     (New York, New York)
 7
                          For the Defendants
 8                        CERT Operations IV, LLC, CERT
                          Operations V LLC, CERT Operations
 9                        RBC LLC, Senescence Energy

10

11              MORRIS NICHOLS ARSHT & TUNNELL LLP
                BY:  BRIAN P. EGAN, ESQUIRE
12
                          -and-
13
                GIBSON DUNN & CRUTCHER LLP
14              BY:  RICHARD W. MARK, ESQUIRE
                BY:  JOSEPH EVALL, ESQUIRE
15
                          For the Defendants
16                        AJG Iowa Refined Coal LLC
                          ArborFuels Company, LLC
17                        Belle River Fuels Company, LLC
                          Brandon Shores Coaltech, LLC
18                        Joppa Refined Coal LLC
                          Louisa Refined Coal, LLC
19                        Portage Fuels Company, LLC
                          Thomas Hill Refined Coal LLC
20

21

22                   ***  PROCEEDINGS  ***

23              THE COURT:  Good afternoon, everyone.  It's

24    Judge Burke here.

25              Why don't we go on the record.  And as we do,
```

01:03:20  1    let me just state for the record that we're here this

01:03:21  2    afternoon by way of a teleconference in the matter of

01:03:26  3    *Midwest Energy Emissions Corp, et al vs. Arthur J. Gallagher*

01:03:30  4    *& Co, et al.*  It's Civil Action Number 19-1334-RGA-CJB here

01:03:37  5    in our court.  We're here to address a discovery-related

01:03:40  6    dispute.

01:03:41  7              Before we go further, let me ask counsel who's

01:03:44  8    on the line for each side to identify themselves for the

01:03:46  9    record.  We'll start first with counsel for the Plaintiffs'

01:03:48 10    side, and we'll begin there with Delaware counsel.

01:03:50 11              MR.  GLAZER:  Good afternoon, Your Honor.  This

01:03:53 12    is Joel Glazer with Devlin Law Firm, and with me today and

01:03:57 13    doing most of the speaking on behalf of Plaintiffs is Justin

01:04:02 14    Nemunaitis for Caldwell Cassady Curry.

01:04:03 15              THE COURT:  All right.  And good afternoon to

01:04:04 16    you both.

01:04:05 17              And we'll do the same for Defendants' side.  I

01:04:08 18    think, if memory serves me, we have two sets of Defendants

01:04:14 19    perhaps that have counsel on the line with us.  Some of

01:04:18 20    which -- one of the groups include those who are what's

01:04:23 21    called the CERT Defendants' counsel.

01:04:25 22              Why don't I start with them first and have

01:04:27 23    Delaware counsel identify who's on the line for those

01:04:29 24    parties.

01:04:32 25              MS. DISALVO:  Certainly.  Good afternoon, Your

01:04:33 1    Honor.  This is Nicole DiSalvo from Skadden Arps Slate

01:04:37 2    Meagher & Flom on behalf of the CERT defendants, and with me

01:04:39 3    today is Doug Nemec and Leslie Demers from Skadden's New

01:04:44 4    York office.  And Doug is going to be doing the argument

01:04:47 5    today.

01:04:47 6              THE COURT:  All right.  Thank you.

01:04:48 7              And we have counsel on the line representing a

01:04:51 8    group of additional Defendants.  Why don't I have Delaware

01:04:53 9    counsel identify who's on the line for them.

01:04:56 10             MR. EGAN:  Good afternoon, Your Honor.  This is

01:04:58 11   Brian Egan from Morris Nichols on behalf of the Refined Coal

01:05:03 12   Defendants.  Joining me on the call today are Richard Mark

01:05:05 13   and Joseph Evall from Gibson Dunn.

01:05:09 14             THE COURT:  Okay.  Thank you.

01:05:11 15             All right.  Counsel, I should say, just by way

01:05:18 16   of prelude, I read the parties' letters with regard to the

01:05:22 17   dispute.  I understand there's a threshold standing issue

01:05:24 18   which I think I understand.  So I'll ask the parties about

01:05:29 19   that.

01:05:30 20             But then as to the remainder of the substance of

01:05:32 21   the dispute, I'll confess that I found the letters really

01:05:35 22   kind of confusing.  Let me just try to say why and then that

01:05:39 23   way, you know, when you all go through your arguments, you

01:05:42 24   know, perhaps you can try to address at least what, in

01:05:45 25   substance, was confusing to me.

01:05:49  1            As I understand it, the dispute relates to

01:05:52  2   subpoenas that have been issued to 20 different third

01:05:55  3   parties.  I think in the record I have a stipulation that

01:06:00  4   lists the names of each of those third parties.  But beyond

01:06:03  5   that, much of the argument, at least it seems to me, relates

01:06:06  6   to kind of who are these third parties.  In what way do

01:06:11  7   these third parties relate to the currently identified

01:06:15  8   Defendants who are in the case or, perhaps relatedly, to

01:06:21  9   what extent do these third parties likely have information

01:06:25 10   about or may well themselves be the John Doe Defendants who

01:06:29 11   are referenced in the operative Complaint?

01:06:33 12            And additionally, to what extent might these

01:06:38 13   third parties have information relating to the claims and

01:06:42 14   defenses at issue in the Complaint?  The problem is I don't

01:06:44 15   think I have really hardly any information, certainly very

01:06:48 16   little, if any, record information about who these entities

01:06:51 17   are.  I think Plaintiff makes a couple of statements in

01:06:53 18   their letter, without citation, about who they've been told

01:06:58 19   the entities are, but I don't think I have any of the

01:07:01 20   information.

01:07:02 21            And so it was really difficult for me going

01:07:04 22   through the letters and trying to figure out, you know, are

01:07:06 23   these folks -- do they have relevant information about the

01:07:09 24   case?  Like how are they connected potentially with the

01:07:12 25   case?  I didn't know anything about who they were.

01:07:15  1          So it was very difficult for me to track the

01:07:17  2    arguments and figure out how I would make a decision on

01:07:20  3    those arguments other than the standing issue because of at

01:07:23  4    least what seemed to me to be that lack of information I

01:07:26  5    had.  So I just provide that by way of prelude to the

01:07:29  6    parties as we address these issues, and now let's jump into

01:07:32  7    that.

01:07:33  8          And it's Defendants' motion here, and Mr. Nemec,

01:07:37  9    are you going to be representing or speaking on behalf of

01:07:40 10    all the Defendants, at least to start?

01:07:43 11          MR. NEMEC:  Yes, Your Honor.  Perhaps at their

01:07:46 12    peril, the Defendants have agreed to let me speak on their

01:07:48 13    behalf, but Mr. Mark may also weigh in on certain points,

01:07:52 14    and in particular those that are unique to the clients

01:07:56 15    represented by Gibson Dunn.

01:07:58 16          THE COURT:  Okay.  Fair enough.  Well, then

01:07:59 17    let's start with the standing issue because it did read in

01:08:02 18    your letter as if the parties making this motion were the

01:08:05 19    Defendants who, obviously, are represented by counsel on the

01:08:09 20    line.  But it seems like, in terms of the substance of the

01:08:14 21    arguments, these are the kinds of arguments that you would

01:08:17 22    think would be made by the third parties themselves.  These

01:08:21 23    are reasons why the subpoena should be quashed as to us,

01:08:24 24    including that we don't think that they seek relevant

01:08:27 25    information about the case.

01:08:28  1          So in response to the Plaintiffs' argument in

01:08:32  2     their answering letter brief, how would the current

01:08:36  3     Defendants have standing to challenge these third-party

01:08:36  4     subpoenas?

01:08:40  5          MR. NEMEC:  I'm happy to begin with that, Your

01:08:41  6     Honor.  Frankly, we were rather surprised in Plaintiffs'

01:08:44  7     response letter to see standing raised at all, let alone as

01:08:48  8     the lead argument.  In the lead up to bringing this motion

01:08:52  9     before the Court, we had a number of meet and confer

01:08:57 10     discussions, and one of the issues that I brought up in

01:08:59 11     relation to bringing the matter to the Court in this

01:09:03 12     fashion, which I'll admit was my proposed mechanism, was

01:09:07 13     that if we agreed to, as a matter of efficiency, put these

01:09:11 14     arguments before the Court as one to the existing Defendants

01:09:15 15     as opposed to having a myriad of third parties appearing and

01:09:19 16     bringing what would likely be the same arguments, perhaps

01:09:23 17     through multiple counsel, we didn't want to be greeted with

01:09:27 18     an argument that somehow we didn't have standing to raise

01:09:29 19     this issue.

01:09:31 20          Those discussions gave rise to the stipulation

01:09:34 21     that was filed with the Court as Document Number 306 on the

01:09:40 22     30th of August, and we understood that to be an agreement

01:09:43 23     that this is the mechanism that the parties have stipulated

01:09:46 24     to for resolution of these threshold issues with regard to

01:09:50 25     the 20 subpoenas.

01:09:52  1          So Your Honor's absolutely correct that the

01:09:55  2  types of argument that we're raising are the same sort that

01:09:58  3  would be raised by a third-party recipient of the subpoenas.

01:10:07  4  The view from the defense side at least is this goes beyond

01:10:10  5  the individual document requests and subpoena topics in the

01:10:17  6  various subpoenas, but it really boils down to a docket

01:10:21  7  management issue.

01:10:22  8          We're here at the very early stage in discovery.

01:10:25  9  We received the packet of 27 documents, subpoenas and

01:10:29 10  accompanying deposition subpoenas just two or three business

01:10:33 11  days after providing interrogatory responses and document

01:10:36 12  production that, as far as we could tell, had not even been

01:10:41 13  analyzed at the time that the subpoenas were served.  We're

01:10:44 14  working against a substantial completion of document

01:10:47 15  production deadline.  It's not until December the 8th of

01:10:49 16  2021, and the discovery cutoff is September of 2022.  So it

01:10:56 17  strikes us as very, very early in the case for this

01:11:00 18  broad-based discovery to be taking place where we're

01:11:02 19  actually looking at, I think, 30 to 31 subpoenas that have

01:11:06 20  been served to date on third parties.  We're focused on this

01:11:11 21  portion only on the 20 that are enumerated because they

01:11:13 22  present the most problematic issue.

01:11:15 23          But there is an enormous amount of duplication

01:11:19 24  in subject matter as between what's sought on the subpoenas

01:11:23 25  and what's sought between the parties.  To our mind, it's

much too early in the case to be burdening such a wide range of parties with that sort of discovery.

So to tie that up and put a bow on it, Your Honor, we felt like this was the best way to put the question in front of the Court as to the propriety of this group of subpoenas and obtaining a ruling all at once, rather than in separate motion practice.

THE COURT:  Fair enough.  And I guess when I look at the stip, at DI-306, if I do have to address the standing issue here, are you asserting that something about the content of that stipulation amounts to like a waiver on Plaintiffs' side of the ability to argue that you don't have standing to challenge the subpoenas?

MR. NEMEC:  I believe so, Your Honor.  I think that was certainly our understanding in entering the stipulation, and I would also submit that really this issue can be resolved as a matter of the Court's docket management powers under Rule 1 to foreclose what will be burdensome third-party discovery and in a complicated process that could take place later in the case, if it's necessary at all, as opposed to putting all 20 of these or 31, if you include the whole group, through an ESI collection process, and depositions, and so forth that will also be taking place through the parties, at least to some extent.

THE COURT:  Okay.  And I'll move on, but as I

01:13:03  1    circle back to you, before we end our call, Mr. Nemec, if

01:13:06  2    there is particular language in the stipulation that you

01:13:08  3    think amounts to that waiver, perhaps you can let me know

01:13:13  4    when I come back to you for brief rebuttal.

01:13:18  5            As to the substance, there are arguments in

01:13:22  6    response to your letter by the Plaintiffs' side and there

01:13:28  7    are various arguments.  One is that they're arguing that the

01:13:32  8    subpoenas are likely to be in some way useful to identifying

01:13:39  9    what are called the John Doe Defendants in the Complaint.

01:13:43 10    They're also arguing that, you know, alternatively, that the

01:13:50 11    subpoenas may also be relevant to the current claims of

01:13:54 12    infringement and damages.  And they also argue that they're

01:14:03 13    not necessarily duplicative.

01:14:05 14            But in terms of the substance, is there any more

01:14:09 15    you can tell me?  You know, I know you pushed back on those

01:14:13 16    issues, but when I read the letters I just felt like I don't

01:14:16 17    know who these 20 entities are.  I don't know in what way

01:14:19 18    they've been said by Defendants to relate to the Defendants

01:14:23 19    or don't.  I don't know in what way the Plaintiff is

01:14:27 20    suggesting that if the Defendants haven't told them that

01:14:30 21    they're related entities, you know, how else are they said

01:14:33 22    to be relevant?

01:14:34 23            I just kind of felt at a loss as to how I would

01:14:37 24    resolve this dispute in light of the limited information I

01:14:40 25    had about these 20 entities.  So as you get into the merits

01:14:44  1   of your argument, if there's anything else you can tell me

01:14:46  2   about who these entities are and how I can use that

01:14:50  3   information to resolve the disputes, I'd appreciate it.

01:14:54  4            MR. NEMEC:  Absolutely, Your Honor.  And I

01:14:55  5   appreciate you putting that out there.  I regret that our

01:14:57  6   papers weren't informative in that regard, and I think it is

01:15:00  7   important to talk a little bit about that because I think it

01:15:03  8   helps to elucidate the fact that this is not really a John

01:15:08  9   Doe discovery scenario.

01:15:12 10            The entities that are the subject of the 20

01:15:15 11   subpoenas we're looking at here, by and large, and I can

01:15:19 12   speak only with first-hand knowledge to the CERT Defendants'

01:15:22 13   discovery responses, but with regard to those, are entities

01:15:27 14   that were disclosed.  In some cases, they were disclosed

01:15:30 15   earlier in corporate disclosure statements on the docket.

01:15:34 16   Some of them have been out there for -- since the outset of

01:15:36 17   the case.  Others were identified in the interrogatory

01:15:39 18   responses calling for disclosure of companies that are

01:15:45 19   related to the named Defendants.

01:15:47 20            Some of these are holding companies that hold

01:15:51 21   the named Defendants.  Some of these are investment

01:15:55 22   companies that hold a stake in the holding companies or in

01:15:59 23   the Defendants themselves, like JPM Capital Corporation, for

01:16:04 24   example.  Others are Refined Coal entities, so they're

01:16:09 25   actually involved in the provision of refined coal actually

01:16:16 1    out in the field.

01:16:17 2            So there are a range of different entities.  All

01:16:21 3    of which have been identified and their relationship to the

01:16:25 4    named Defendants disclosed in at least one fashion, if not

01:16:30 5    in multiple fashions.  So the notion that there is John Doe

01:16:34 6    discovery taking place here is really misplaced as are the

01:16:39 7    authorities cited in Plaintiffs' letter to that effect where

01:16:42 8    the discovery that was allowed and, in fact, was constrained

01:16:47 9    sought only names and addresses for various entities that

01:16:49 10   were known, for example, by a URL or some other information,

01:16:53 11   but the actual entity name and the address of that entity

01:16:58 12   were not known.  So discovery was permitted to seek out that

01:17:02 13   information against parties who were in some fashion

01:17:07 14   identified in the operative Complaint as involved in the

01:17:13 15   acts of infringement.

01:17:14 16           This is a different situation.  These are known

01:17:17 17   entities and their relationship to the Defendants is also

01:17:22 18   known.

01:17:22 19           I'll add one more thing, and Your Honor, I think

01:17:25 20   this really underscores where we're coming from with respect

01:17:28 21   to our concerns about this discovery.  Four of the subpoena

01:17:33 22   recipients were named Defendants in the Second Amended

01:17:36 23   Complaint and were dismissed by virtue of Your Honor's

01:17:39 24   Report and Recommendation which was confirmed by Judge

01:17:43 25   Andrews on Friday.  Six of the subpoenas or, forgive me, six

01:17:49  1    were former Defendants.  Four are new Defendants identified

01:17:55  2    for the first time in the Third Amended Complaint that was

01:17:59  3    put before Your Honor on Friday.

01:18:03  4          So with respect to six claims of infringement

01:18:07  5    that were pled in the Second Amended Claim were deemed by

01:18:11  6    Your Honor to be insufficient, that was confirmed by Judge

01:18:13  7    Andrews.  And now, those entities are facing subpoenas

01:18:16  8    asking for information about their acts of potential

01:18:20  9    infringement that go beyond any relation to the named

01:18:25 10    Defendants.

01:18:25 11          With respect to the four who have been now named

01:18:28 12    in the Third Amended Complaint, they have not yet even been

01:18:34 13    served.  The adequacy of the pleadings against those

01:18:39 14    Defendants has been contested, and yet they are in receipt

01:18:41 15    of subpoenas asking about acts of infringement that they may

01:18:45 16    have committed and like information independent of

01:18:47 17    relationship to the named Defendants.

01:18:50 18          So that really gets to the heart of our

01:18:53 19    difficulty with these subpoenas.  The remaining parties,

01:18:57 20    there's not even been an attempt to make out a claim of

01:19:00 21    infringement, and yet the subpoenas ask for information

01:19:03 22    about acts of alleged infringement that they may have

01:19:06 23    committed, once again, unrelated to the named Defendants.

01:19:10 24          Is there some potential scope of discovery among

01:19:14 25    these 20 subpoenas that does relate to the case?  I won't

01:19:19  1    deny that there is a potential for that, nor can we deny,

01:19:23  2    particularly at this stage when it's not been fully

01:19:26  3    investigated, whether these entities might have documents

01:19:30  4    that would relate to the named Defendants.  But there, the

01:19:34  5    issue goes to timing of the subpoenas and the fact that this

01:19:39  6    information has been sought from the named Defendants.

01:19:43  7           Discovery is ongoing in that regard.  Some of it

01:19:45  8    has already been produced by the named Defendants and yet

01:19:48  9    it's, once again, requested from these third parties.  So

01:19:52 10    there it gets back to the point I made with regard to docket

01:19:55 11    management.  We're opposing the enormous burden on a lot of

01:19:59 12    different parties that at present have no stake in this case

01:20:02 13    asking for information that Defendants -- pardon, that

01:20:06 14    Plaintiffs already have or can get from the existing

01:20:10 15    parties.

01:20:10 16           So let me pause there, Your Honor.  I know that

01:20:13 17    didn't help to give you particulars of who each subpoena

01:20:16 18    recipient is, but does it help to at least clarify the

01:20:20 19    landscape in terms of these entities, who these entities are

01:20:23 20    in general?

01:20:24 21           THE COURT:  It sounds like they fall into

01:20:27 22    different categories and that overall, one of your

01:20:37 23    objections is that it's premature to do this kind of

01:20:41 24    discovery now.  But then, among other objections, it's that

01:20:48 25    some of these entities, depending on who they are, may not

01:20:51  1    have any relevant information.  Some might, but maybe it's

01:20:54  2    already been produced, or maybe they might have some

01:20:59  3    additional information that's relevant, but again, that

01:21:01  4    could be handled in good time.

01:21:02  5           And so it does seem like, tell me if I'm wrong,

01:21:07  6    Mr. Nemec, that to the extent to which the subpoenas are

01:21:10  7    kind of wrongfully issued or may be rightfully issued in

01:21:14  8    part, but premature in your view or totally fine, it does

01:21:19  9    seem like in some ways it kind of might depend on like,

01:21:22 10    Well, who are we talking about?  Like what entity and what

01:21:24 11    reason do we have to believe that that entity has

01:21:27 12    information about, you know, anything to do with the claims

01:21:30 13    or defenses in this case?

01:21:32 14           Is that fair?

01:21:34 15           MR. NEMEC:  That's absolutely fair, Your Honor,

01:21:35 16    that they do fall into different categories, and I think

01:21:38 17    that's further revealed by the fact that with knowledge of

01:21:42 18    who all of these various entities are, when the time came on

01:21:47 19    Friday for the Plaintiff to seek a further amendment to

01:21:52 20    their Complaint, they only added a handful of these

01:21:54 21    entities.  So they do fall into a variety of categories.

01:21:58 22           If we take, for example, Cottbus Associates,

01:22:03 23    LLC, which is a Refined Coal LLC that the Plaintiffs are

01:22:08 24    seeking to add them as a Defendant in the new case or in the

01:22:11 25    new Complaint, apologies, vs. CERT Holdings LLC, which was a

01:22:17  1    holding company and a former Defendant in the case that was

01:22:20  2    dismissed.  JPMorgan Capital Corporation, which is an

01:22:25  3    investor in a holding company that is related to one of the

01:22:30  4    Defendants.  So there are various degrees of separation from

01:22:34  5    the named Defendants and that's why it's not a

01:22:37  6    straightforward question to answer without going through a

01:22:39  7    chart that I have in front of me.

01:22:41  8         That's probably more information than you want

01:22:43  9    to hear about in this call, but I think the need for and

01:22:50 10    extent to which any discovery is justified from these

01:22:53 11    parties is really yet to be seen.  We don't know which ones

01:22:57 12    are parties.  If some of the subpoena recipients are going

01:23:01 13    to be parties, there's no reason that they should be put

01:23:03 14    through a third-party discovery process now, particularly

01:23:07 15    given that we have an ESI agreement that runs at least

01:23:11 16    somewhat counter to the instructions in the subpoenas.

01:23:15 17         Likewise, we see no reason why parties that have

01:23:17 18    been dismissed for insufficient pleading should be subjected

01:23:21 19    to third-party discovery in the hope that some additional

01:23:25 20    information might be revealed using this case as a vehicle

01:23:28 21    to try to identify claims against parties that have been

01:23:33 22    dismissed.  For this discovery --

01:23:36 23         THE COURT:  And Mr. Nemec, I'm sorry to

01:23:38 24    interrupt you.  I should state for the record, I don't know

01:23:40 25    if other counsel are having this issue, but at least on my

01:23:43 1  end, your call, your line is kind of coming in spotty.  It's

01:23:46 2  kind of -- there's some static on it.  I can still hear and

01:23:50 3  understand everything that you're saying, I just want you to

01:23:52 4  know that it's a little staticky in case we have to ask you

01:23:56 5  to repeat something.

01:23:58 6         MR. NEMEC:  I apologize for that, Your Honor.

01:23:59 7  And Murphy's Law, the firm is having telephone problems this

01:24:04 8  morning.  I thought that they had been resolved.  If it gets

01:24:08 9  to be annoying, please let me know.  I can dial back in from

01:24:11 10 my cell.

01:24:12 11        THE COURT:  Okay.  No, no worries.  I think we

01:24:14 12 can get through it.

01:24:15 13        All right.  I mean, I'd like to hear what the

01:24:17 14 Plaintiffs say in response, but let me get -- in addition to

01:24:21 15 what you've said in your letter, if there's other

01:24:23 16 information that you wanted to provide initially, I'm happy

01:24:25 17 to hear it before I turn to the Plaintiffs' side.

01:24:29 18        MR. NEMEC:  No, Your Honor, other than to say

01:24:31 19 that I think if there's anything coming out of the

01:24:34 20 authorities that we put before Your Honor that really brings

01:24:37 21 our concerns into focus, it's a verbiage from the *Micro*

01:24:45 22 *Motion vs. Kane Steel* Federal Circuit case that is cited in

01:24:47 23 our opening letter and Defendants' opening letter.  And it

01:24:51 24 reads, "It is reasonable to provide a nonparty from whom

01:24:54 25 discovery is sought at a minimum with the same protection

01:24:57 1    from discovery of information regarding infringement that it

01:25:00 2    would have received had it been sued for infringement."

01:25:04 3            So with respect to two of the categories of the

01:25:09 4    recipients here, that language really resonates.  "A party

01:25:13 5    who has been sued and dismissed would certainly have

01:25:16 6    protection from discovery requests.  A party that has been

01:25:19 7    sued and not yet served, absent some expedited discovery

01:25:23 8    motion, would not be subject to discovery requests of this

01:25:28 9    nature.  And a party against whom no claim of infringement

01:25:31 10   has even been made out or attempted to be made out, would be

01:25:35 11   protected from discovery requests relating to alleged acts

01:25:38 12   of infringement by that subpoena recipient."

01:25:41 13           So I'll leave Your Honor with that quote, and

01:25:44 14   I'm happy to answer other questions.  I will also, lest I

01:25:48 15   forget, answer Your Honor's question about the stipulation.

01:25:52 16   And I'll point to what is the -- let's see, I guess this

01:25:57 17   would be the fourth "Whereas" clause on the second page of

01:26:03 18   Docket 302.  "Whereas, the parties agree to resolve their

01:26:07 19   discovery dispute related to the non-power-plant subpoenas

01:26:12 20   pursuant to the discovery dispute procedure in the Court's

01:26:16 21   Scheduling Order in lieu of filing separate motions to quash

01:26:18 22   under Rule 45."

01:26:21 23           That, Your Honor, is what we had in mind upon

01:26:25 24   opening Plaintiffs' response letter and being surprised to

01:26:31 25   see this standing issue raised.

01:26:33 1                    THE COURT:  Okay.  And I guess one other

01:26:35 2    question, Mr. Nemec, that I had, which is I know one of your

01:26:37 3    concerns is timing.  You know, so you say we're still

01:26:43 4    relatively early in the discovery process as it relates to

01:26:47 5    Defendants.  Many months to go before that process will

01:26:49 6    conclude.

01:26:50 7                    Now, Plaintiff is seeking third-party discovery

01:26:52 8    that in some ways gets ahead of where you are with the named

01:26:56 9    Defendants.  I guess, as a practical matter, though, if I

01:26:59 10   were to deny your motion, that the subpoenas, you know, they

01:27:04 11   go out to these third parties or they have gone out to them,

01:27:07 12   and then third parties have to engage with the Plaintiff.

01:27:09 13   Again, it's very possible, it sounds like, that there may be

01:27:12 14   some later deal worked out, at least as to some of these

01:27:15 15   entities.  Perhaps Defendants' counsel gets involved in

01:27:18 16   that.  Maybe there are some of these third parties that say,

01:27:21 17   yeah, I don't know why we're being -- information is being

01:27:24 18   requested of us.  It makes no sense and we're fighting it,

01:27:26 19   and that that comes to the Court.

01:27:29 20                    The bottom line seems to be, like from a timing

01:27:31 21   perspective, even if I deny your motion, it's going to take

01:27:34 22   some time.  If there are disputes about these subpoenas with

01:27:37 23   the third parties, it's going to take some time for those to

01:27:41 24   get hashed out and resolved.  How come that won't put us

01:27:44 25   back on the right timeframe in terms of when this discovery

01:27:48  1    might formally come in vis-a-vis the schedule?

01:27:51  2              MR. NEMEC:  Your Honor, I think it comes down to

01:27:52  3    a couple of things.  One is, for sure, a matter of principle

01:27:56  4    where the scope of the subject, the scope of the subpoenas

01:28:00  5    is seeking information that really doesn't have a nexus to

01:28:03  6    this case.  So that problem really never goes away with

01:28:05  7    these subpoenas.

01:28:07  8              If we put that portion of the request, those

01:28:11  9    topics, and the deposition subpoenas, and document requests

01:28:14 10    and the document subpoenas aside, then it's a question of

01:28:19 11    efficiency.  If the fact discovery process between the

01:28:23 12    Plaintiffs and the existing Defendants were allowed to

01:28:26 13    proceed and mature, any subpoenas directed to these third

01:28:31 14    parties could surely be more focused and avoid the need for

01:28:35 15    all the back and forth that Your Honor is describing.

01:28:37 16              If Your Honor denies the motion, then that's

01:28:40 17    what will occur.  But I think it will lead to, certainly for

01:28:46 18    counsel, an enormous amount of resources extended.  I'm not

01:28:50 19    sure how many law firms will end up being involved there.

01:28:54 20    It might also continue to task the Court depending on what

01:28:57 21    kind of skirmishes erupt with regard to the subpoena

01:29:02 22    recipients on particular categories of information, or

01:29:05 23    requests for ESI collection or the like.

01:29:07 24              So the notion here is that the later in the

01:29:09 25    process this kind of third-party discovery occurs, the more

01:29:14  1   focused and streamlined it's going to be and the less

01:29:17  2   problems that I would anticipate there being.

01:29:19  3                  THE COURT:  Okay.  Fair enough.

01:29:20  4          I want to hear from the Plaintiffs' side because

01:29:23  5   maybe they will help frame what is in dispute.  Let me turn

01:29:26  6   to Plaintiffs' counsel now, and I'll give Defendants a

01:29:29  7   chance for brief rebuttal before we end.

01:29:32  8          And Mr. Nemunaitis, I know you're going to speak

01:29:34  9   for Plaintiffs' side and maybe we could start in the same

01:29:37 10   place where I started with Defendants' counsel, which is you

01:29:39 11   raised as a threshold issue this issue of standing.  You

01:29:42 12   cite some law which does seem to make the point that you're

01:29:45 13   trying to make which is typically, you know, you can't -- in

01:29:47 14   this circumstance, you know, the named Defendants wouldn't

01:29:49 15   have standing to challenge subpoenas issued to third

01:29:52 16   parties.  But Mr. Nemec says that in your stipulation, and

01:29:56 17   particularly the paragraph he cites, you kind of waived any

01:29:59 18   argument in that regard and agreed to kind of decide this

01:30:02 19   this way.

01:30:04 20          What's your response to that and what else do

01:30:06 21   you want to say about the standing issue?

01:30:10 22                  MR. NEMUNAITIS:  I believe the standing argument

01:30:12 23   still stands.  I don't see anything in the stipulation that

01:30:15 24   waives argument that we could have made or otherwise says

01:30:18 25   that the Defendants have standing to act on behalf of these

third parties.

I actually remember adding that language in to this stipulation when we were drafting it just to clarify that the whole purpose of this procedure was to streamline things, and I don't think there was ever a discussion of what party or set of parties would actually be filing this letter brief.  My understanding and expectation was that because it was these subpoena recipients that were resisting discovery, they were just going to join together and file a joint letter brief which I thought was a much more efficient procedure then having 20 letter briefs submitted to the Court.  So I thought that was a much better way to handle this, and so I was very surprised to see that this was just the Defendants opposing discovery on behalf of parties that were not formally appearing.

Part of the reason I thought this made sense was I thought that the same law firms representing the current Defendants were going to end up representing most of these parties.  But at this point, I don't know what ultimately is going to happen there with that.

So to the extent --

THE COURT:  The last paragraph, Mr. Nemunaitis, it says that, "The parties agree to resolve their discovery disputes... in lieu of filing separate motions to quash under Rule 45."  What that meant to you was not that the

01:31:38 1   third-party Defendants themselves wouldn't be challenging

01:31:41 2   the subpoenas, but they wouldn't be doing so by separate

01:31:45 3   motions.  They would kind of all band together, file one

01:31:48 4   joint motion, and address it in that way.

01:31:52 5               Is that what you're saying?

01:31:55 6               MR. NEMUNAITIS:  Yeah, and part of my concern

01:31:56 7   was, you know, we have Your Honor's order that kind of

01:31:59 8   specifies discovery disputes between the parties, but it was

01:32:02 9   not clear to me exactly how that applied to third parties.

01:32:04 10  And I did not want to face a situation which third parties

01:32:07 11  can sort of drag the process out, especially given the

01:32:11 12  opportunity for this much more efficient process.

01:32:13 13              THE COURT:  Okay.  Yeah, just fyi, I mean, the

01:32:17 14  Court's discovery dispute process in terms of the process

01:32:21 15  isn't different with regard to third parties as it is to

01:32:24 16  parties.  You know, we would do the same letter briefing,

01:32:28 17  type of letter briefing schedule, about the same type of,

01:32:31 18  you know, temporal schedule.  The third party and the side

01:32:38 19  who it was posed to would file a joint letter in advance

01:32:42 20  alerting me to the dispute.  Obviously, the third party

01:32:45 21  would have to intervene for purposes of being able to argue,

01:32:48 22  but it would all work the same way, just so you know that

01:32:51 23  for the future.

01:32:53 24              Okay.  Well, beyond the standing issue,

01:32:59 25  Mr. Nemunaitis, I guess, again, you know, whether -- trust

01:33:03  1   me, I mean, it makes total sense to me that it would be much

01:33:08  2   more efficient ultimately to resolve any disputes about

01:33:11  3   these 20 subpoenas in one process, or through one call or

01:33:16  4   letter than in 20 or something, you know, greater than one.

01:33:22  5   But it also kind of seems to me that the arguments about

01:33:26  6   whether any particular subpoena and its content, as directed

01:33:34  7   to any particular third party, is relevant to the claims and

01:33:38  8   defenses at issue in the case or relevant to determining the

01:33:41  9   identity of a John Doe Defendant, it kind of strikes me that

01:33:45  10  that may well depend on, well, who is the third party?  What

01:33:49  11  is their connection said to be to either the named

01:33:54  12  Defendants or the claims and defenses at issue in the case?

01:33:57  13  And why does, you know, the sender of the subpoena Plaintiff

01:34:02  14  believe that this party is likely to have relevant

01:34:04  15  information?

01:34:05  16          And so in that regard, how am I to decide this

01:34:09  17  kind of en masse dispute about, you know, these different

01:34:14  18  types of third-party Defendants in light of the information

01:34:16  19  that I do or don't have about who these Defendants are and

01:34:19  20  how they relate to the current Complaint?

01:34:25  21          MR. NEMUNAITIS:  Yeah, I understand.  I think it

01:34:28  22  would help to back up and explain how we got here a little

01:34:31  23  bit because I think the path forward is to deny the present

01:34:35  24  motion, require each of these parties to obtain counsel so

01:34:38  25  that they can reach out to me and I can have a conversation

01:34:42 1   with them about what the actual burdens are.  And so, that

01:34:45 2   sort of thing, have an understanding of what their position

01:34:46 3   is, if they actually are objecting to something, because I

01:34:49 4   don't think there's a real dispute here that -- certainly,

01:34:51 5   some of these parties have relevant information, and we can

01:34:53 6   kind of work out the logistics and that sort of thing when I

01:34:56 7   have, you know, my counterpart that I can actually discuss

01:35:00 8   the substance with.

01:35:01 9          As far as this en masse issue, the way we ended

01:35:05 10  up here is after we served the subpoenas, the Defendants

01:35:08 11  reached out and wanted to meet and confer on this and, you

01:35:12 12  know, they raised their points about this being premature,

01:35:14 13  about maybe some of the Defendants have some of this

01:35:16 14  information.  And I explained that one of the key kind of

01:35:23 15  threshold issues here is identifying who should be the

01:35:25 16  Defendants in this case and making sure we have a complete

01:35:28 17  list of all the refined coal facilities that should be

01:35:31 18  accused in this case.

01:35:32 19         And the timing on that is particularly important

01:35:35 20  here because the Refined Coal Tax Credit Program, which is

01:35:41 21  what motivated the creation of all of these facilities,

01:35:43 22  expires at the end of this year.  And so one of the current

01:35:46 23  concerns I have -- we have, Midwest has, and I explained to

01:35:49 24  the Defendants is that there could be entities involved in

01:35:53 25  refined coal operations that should be accused and in this

01:35:56  1   case because it's basically the same as what's already

01:35:58  2   accused.  But if we don't discover those entities until

01:36:03  3   2022, they may close up shop, and it may be difficult to add

01:36:07  4   them into the case.  There may be documents that get lost

01:36:10  5   because we haven't sent them a subpoena requiring them to

01:36:15  6   preserve documents and that sort of thing.

01:36:16  7        And so really what I wanted to make sure we

01:36:18  8   could do is have that complete set of refined coal

01:36:21  9   facilities and entities that should be in the case and then

01:36:24 10   work out logistical and burden-type issues in discovery

01:36:27 11   moving forward.  And so one of the compromises I proposed

01:36:30 12   was that, well, if the Defendants and these third parties

01:36:33 13   can provide us with that list of information and sort of the

01:36:35 14   basic information that the parties provided as part of their

01:36:38 15   technical discovery as to that full set of facilities, not

01:36:42 16   just the ones that are specifically referenced in the

01:36:45 17   Complaint, then we could focus on party discovery at that

01:36:49 18   point.  And to the extent we need to burden the third

01:36:51 19   parties with anything above and beyond party discovery, you

01:36:53 20   know, we could figure that out later, but I wanted to get

01:36:56 21   that course of information early on.

01:36:59 22        But it was clear from Defendants that they,

01:37:01 23   under no circumstances, would agree to provide any discovery

01:37:04 24   of any refined coal facility or any entity that wasn't

01:37:08 25   specifically named or identified in the Complaint.  And

01:37:11  1    that's why it really boiled down to us, as a matter of

01:37:16  2    identifying these John Doe Defendants, is if we can use the

01:37:19  3    third-party discovery to identify the John Doe Defendants,

01:37:21  4    have that complete set, then we can focus more on all the

01:37:26  5    particularized points that you raised.  And I do think that

01:37:28  6    to the extent there are, you know, more specific objections

01:37:32  7    to discovery at that point, that that would be the way to

01:37:35  8    handle it.

01:37:37  9              THE COURT:  And just trying to break down the

01:37:39  10   third-party Defendants, Mr. Nemunaitis like, for example,

01:37:42  11   it's said by Mr. Nemec that some number of these 20 entities

01:37:47  12   are entities that are now included in the proposed Third

01:37:52  13   Amended Complaint that I understand you've submitted on

01:37:55  14   Friday.  So like, for example, if I was just focusing on

01:38:00  15   those, and I don't know how many there are, you know, if

01:38:03  16   there's four, or five, or three or whatever, but if those

01:38:07  17   are the only entities at issue here, you know, I might say

01:38:10  18   to myself, you know, jeez, they're about to become parties

01:38:13  19   because I think that -- I don't think there's a dispute that

01:38:17  20   the Complaint, indeed, can be filed.

01:38:21  21              And so it seems kind of strange and unfair to be

01:38:25  22   pursuing Rule 45 third-party discovery of the entities who

01:38:30  23   are basically about to be parties in the case.  Like if

01:38:33  24   that's what I was focusing on, that argument would seem to

01:38:37  25   make some sense.  Like doesn't that argument make some sense

01:38:39 1   and doesn't that just underscore that it kind of depends on

01:38:43 2   who these entities really are?

01:38:44 3        MR. NEMUNAITIS:  Well, as to the four Defendants

01:38:51 4   that are being named in the case now, I don't think there's

01:38:55 5   going to be a need for subpoena on those parties, I mean

01:38:58 6   those entities, because I think they're going to be parties

01:39:00 7   in the case and you can obtain party discovery.

01:39:00 8        I mean, as to the others, I mean, I can give an

01:39:05 9   example of why -- I mean, I can explain why each of these

01:39:06 10  received a subpoena.  But just as one example, one entity is

01:39:10 11  a company called DRA.  DRA is a company that was identified

01:39:14 12  by these, by some of the Defendants as a vendor that works

01:39:17 13  on some of these refined coal facilities.  And so by virtue

01:39:20 14  of that, we believe that they would have knowledge of plants

01:39:23 15  that receive refined coal that are also using activated

01:39:27 16  carbon, and they would have the contracts to identify the

01:39:29 17  names of each of those entities involved.

01:39:32 18       And so to the extent -- you know, for purposes

01:39:35 19  of this Complaint, we've identified the 20 or so facilities

01:39:38 20  that we know about, but we expect that DRA will have

01:39:41 21  information regarding an additional, say, five entities that

01:39:45 22  are involved in the same process or they may also be aware

01:39:50 23  of an additional five entities, you know, that are involved

01:39:54 24  in the same process at different plants.

01:39:57 25       And so that's why -- that's one example, but why

01:40:01  1    it would make sense to allow that subpoena to proceed to at

01:40:04  2    least obtain, you know, information about the identities of

01:40:07  3    those entities, and then we can do our analysis to determine

01:40:11  4    whether or not we should move to amend the Complaint to add

01:40:13  5    additional entities in the case at that time.  But I believe

01:40:18  6    the motion should be denied at this point as to sort of a

01:40:22  7    blanket no more third-party discovery on this issue.

01:40:25  8           We will then get contact information from DRA

01:40:29  9    and identify if they have any objections to the subpoena.

01:40:31 10    And if they do, we can work with them to try to resolve them

01:40:34 11    or, you know, they can potentially file an appropriate

01:40:37 12    motion at that time.

01:40:39 13           THE COURT:  Okay.  I'm going to do something a

01:40:42 14    little unusual which I think I'm just going to tell the

01:40:43 15    parties right now like what I know I'm going to do here,

01:40:50 16    unless someone says something after I've said it that makes

01:40:53 17    it clear that what I'm saying is totally wrong.  But let me

01:40:55 18    just go ahead and do that now.  And then after I think what

01:40:57 19    I'm going to say about the Court's anticipated Order, I'll

01:41:01 20    give both Defendants' side and Plaintiffs' side a chance to

01:41:04 21    tell me, Judge, before you say that Order is final, I think

01:41:09 22    you're wrong and so you should know "X."

01:41:12 23           Here's what I'm thinking.  First, it may be a

01:41:16 24    technical matter, it may not be, but I don't know.  I don't

01:41:19 25    think that I can grant the motion in light of the

01:41:22   1    Plaintiffs' argument about lack of standing.

01:41:24   2         As I understand the law cited in Plaintiffs'

01:41:27   3    papers, it is the case that as to requests like these, the

01:41:30   4    named Defendants would not have standing to challenge the

01:41:34   5    subpoenas, unless it's clear from the record that the

01:41:38   6    Plaintiffs waived the right to make that defense.  And the

01:41:42   7    portion of the stipulation at issue that's been cited, it's

01:41:46   8    not clear enough to me that the Plaintiffs did make that

01:41:49   9    waiver.

01:41:50  10         So I don't know.  I don't believe that the

01:41:55  11    Plaintiffs have lost the ability to argue that for standing,

01:41:58  12    and it does seem to me like these named Defendants would not

01:42:01  13    otherwise have standing to make these challenges, that

01:42:03  14    third-party defendants would have to do it.

01:42:05  15         Also, I should say, by the way, I don't know

01:42:07  16    that that's totally an academic exercise.  It does strike me

01:42:11  17    that one of the reasons why you might want third parties to

01:42:14  18    whom the subpoenas are addressed to to actually be the ones

01:42:18  19    who are engaged in the process and, if necessary, be

01:42:20  20    fighting the subpoenas is because they might be the best

01:42:24  21    people in the position to provide like the specific

01:42:26  22    information about that Defendant.  Who are we?  Why is it

01:42:30  23    just clear based on who we are that we would not have

01:42:32  24    relevant information here as it relates to the Complaint in

01:42:35  25    this case?

01:42:38  1          Alternatively, it could also be non-academic

01:42:41  2   because like that entity's counsel, and I don't know, it may

01:42:44  3   end up being the named Defendant's counsel or it may not be,

01:42:48  4   they may get on the phone real quickly with Plaintiff and

01:42:51  5   just work out a quick deal to provide certain info and then

01:42:51  6   I'd never see that Defendant by way of a dispute.

01:42:55  7          So it's all to say that, I don't believe there's

01:42:58  8   standing for the named Defendants to raise this dispute in

01:43:00  9   the way they have.  I don't believe it's clear enough that

01:43:03 10   that argument has been waived by Plaintiffs that might well

01:43:08 11   make a difference.  So for that reason, I'd be inclined to

01:43:11 12   deny the motion.

01:43:12 13          Additionally, I would deny the motion at this

01:43:14 14   stage simply because I haven't been provided with sufficient

01:43:18 15   information about the 20 Defendants at issue to be able to

01:43:22 16   make individualized determinations that, in fact, the

01:43:27 17   subpoena's content and its requests are irrelevant to the

01:43:33 18   claims and defenses at issue in the case.

01:43:35 19          I think, ultimately, that that burden is on the

01:43:37 20   entity bringing the motion to provide me with that kind of

01:43:40 21   information and clarity.  So I can see, Judge, look, for

01:43:44 22   example, you know, named Defendant Number 1 is blank.  That

01:43:48 23   entity, let me just tell you about that entity and what

01:43:50 24   we've said to the Plaintiff about it, who they are, and let

01:43:53 25   me explain to you why there's no way in the world that the

01:43:56  1    subpoena request to that entity, and you can look at it, no

01:43:59  2    way in the world in which it's likely to generate relevant

01:44:02  3    information related to claims and defenses in the case.

01:44:05  4            I just don't have that kind of record.  I know

01:44:07  5    very little.  I've been given some very broad categories

01:44:10  6    about who those entities are, but I have nothing in the

01:44:12  7    record to actually drill down on it.  It might well be, and

01:44:16  8    I hope this doesn't happen, but if I actually had to field

01:44:19  9    disputes about all 20 of these entities, I might well have

01:44:21 10    to provide additional briefing space to do it and I would do

01:44:25 11    that.  Again, my hope is that the parties would be able to

01:44:28 12    resolve some or all of these matters with some additional

01:44:31 13    time.

01:44:31 14            But I just don't have the individualized basis

01:44:33 15    to grant the motion as to these 20 entities because I just

01:44:38 16    don't have enough information about who they are and about

01:44:40 17    how they do or don't relate to the claims and defenses at

01:44:43 18    issue in the case.

01:44:44 19            So my inclination is to deny the motion.  It's

01:44:48 20    to encourage the parties to further meet and confer about

01:44:50 21    these third parties, to the extent that they can reach some

01:44:53 22    agreement, and it's to, ultimately, that if they can't reach

01:44:57 23    agreement on some or all of them, that these third parties

01:45:01 24    and the Plaintiff would need to bring disputes as to them

01:45:03 25    and the subpoenas, if I have the authority to resolve them.

01:45:06 1   I don't know if these Rule 45 subpoenas are ones that I

01:45:09 2   would be resolving in our court or some other court might

01:45:11 3   have to deal with, but in any event, to bring those to the

01:45:14 4   Court when it's ripe.

01:45:17 5          So that's my inclination here, what I'm very,

01:45:20 6   very likely inclined to do here.  That said, as I promised,

01:45:24 7   I'll give the parties a chance to tell me anything else they

01:45:27 8   want to tell me or why I shouldn't do what I just said I'm

01:45:29 9   about to do.

01:45:30 10         Defendants' counsel, is there anything you want

01:45:32 11  to add about anything I'm missing or anything else I should

01:45:36 12  consider before I decide whether my Proposed Order is final?

01:45:40 13         MR. NEMEC:  Your Honor, this is Doug Nemec

01:45:42 14  again.  I certainly am sympathetic to the confusion for the

01:45:46 15  number of subpoenas here and the difficulty in parsing out

01:45:50 16  who is who.  So I, again, apologize for the lack of clarity

01:45:55 17  in our submissions in that regard and, in general, apologize

01:45:59 18  that my idea of trying to simplify and ease the burden on

01:46:03 19  the Court maybe backfired here.

01:46:07 20         THE COURT:  Oh, Mr. Nemec, let me just say like,

01:46:09 21  obviously, it goes without saying to all the parties here,

01:46:12 22  like I appreciate any efforts that are made to try to

01:46:15 23  streamline things and make things more efficient, and I

01:46:18 24  encourage them, you know, a hundred percent.  Like, you

01:46:21 25  know, I don't want to deal with 20, if I don't have to, with

01:46:24  1    20 individual motions to quash 20 individual third-party

01:46:29  2    subpoenas for sure.

01:46:30  3           Like I definitely -- it's just that ultimately

01:46:32  4    at the end of the day if I'm being asked to deny a party

01:46:34  5    relief with finality, you know, in some way, you know, I

01:46:39  6    can't do that unless I have the record to justify it and if,

01:46:44  7    in the service of efficiency, again, which is a lawful goal,

01:46:47  8    I don't have that record.  I can't just say, Well, I'm going

01:46:50  9    to grant the request because it's not fair to the party who

01:46:53 10    is seeking the discovery.

01:46:54 11           You know, so it's all to say, I hope none of my

01:46:57 12    comments here are interpreted as the Court doesn't want the

01:47:00 13    parties to try to do what they can to be efficient.  It's

01:47:03 14    just I also have to ultimately be fair to the parties as

01:47:05 15    well in terms of what they're entitled to and what they're

01:47:08 16    not entitled to in a case.

01:47:10 17           Any way, please continue.

01:47:11 18           MR. NEMEC:  Not at all, Your Honor, and

01:47:13 19    understood.  I appreciate where you're coming from on this

01:47:16 20    and will not belabor it.

01:47:19 21           I just do want to raise a couple of things for

01:47:21 22    purposes of clarification.  One is I hear a representation

01:47:26 23    from Plaintiffs that they will not pursue the subpoenas

01:47:31 24    against the newly named Defendants, and I just want to make

01:47:35 25    clear that that's on the record, and we can consider those,

01:47:38  1    at least for the moment, withdrawn.

01:47:41  2          With respect to the Defendants who were named in

01:47:45  3    the Second Amended Complaint and have been dismissed from

01:47:47  4    the case, at least to my mind, those are the most likely to

01:47:53  5    be the ones coming back before Your Honor at some junction

01:47:55  6    because it's just fundamentally problematic to me to think

01:48:01  7    that a party can be sued, the pleading can be deemed

01:48:03  8    inadequate to state a case against them, and then the case

01:48:08  9    against remaining Defendants is the vehicle for a party to

01:48:13 10    seek out discovery and try to make out the case they

01:48:16 11    couldn't make in the first instance.

01:48:18 12          The Micro Motion case that I quoted from earlier

01:48:20 13    is very much on point in that regard.  You have to make out

01:48:24 14    your case before you seek out discovery about it and not the

01:48:27 15    opposite.  So I said that only by virtue of a preview, Your

01:48:31 16    Honor, that that issue, absent some agreement between the

01:48:34 17    parties, is the one most likely to come back through some

01:48:37 18    counsel.  Maybe it's us, maybe it's Gibson Dunn or someone

01:48:41 19    else, we'll see.  The rest we will endeavor to work out and

01:48:45 20    not burden you further.

01:48:47 21          THE COURT:  Okay.  Thank you.

01:48:49 22          And I should just say with regard to that issue,

01:48:51 23    that is, if an entity was a named Defendant in the case and

01:48:57 24    now they are no longer a named Defendant because they've

01:49:00 25    been dismissed pursuant to the Court's last Report and

01:49:03  1    Recommendation that Judge Andrews has adopted, you know, can

01:49:05  2    the Plaintiff seek third-party discovery of them by way of

01:49:08  3    Rule 45 subpoena, just off the top of my head, it doesn't

01:49:12  4    strike me that the Plaintiff absolutely cannot.  I mean,

01:49:14  5    entities who are third parties to a, case whether they have

01:49:16  6    been named Defendants or not, it's possible that such an

01:49:19  7    entity might well have information relevant to the claims

01:49:22  8    and defenses at issue in the case as to named Defendants.

01:49:25  9    Possible, I think, that a party seeking third-party

01:49:29 10    discovery from one of those entities could demonstrate that.

01:49:31 11          I mean, I don't have that record in front of me

01:49:33 12    because I don't really have any information about these

01:49:35 13    other entities, but it's not clear to me that just because

01:49:38 14    an entity was once a named Defendant here and is now

01:49:41 15    dismissed that they could never have relevant information

01:49:43 16    that could be sought by way of a Rule 45 subpoena.

01:49:46 17          That's my initial reaction to that one lingering

01:49:48 18    issue.  But all that said, again, that's neither here nor

01:49:53 19    there for the dispute that we're dealing with today in light

01:49:58 20    of the Proposed Order.

01:50:00 21          Mr. Nemunaitis, is there anything that you wish

01:50:03 22    to add either by way of clarification or response?

01:50:08 23          MR. MARK:  Your Honor, this is Richard Mark for

01:50:09 24    the other Defendants, the other Refined Coal Defendants.

01:50:12 25    May I make one point before you turn back to

01:50:15  1   Mr. Nemunaitis?

01:50:16  2              THE COURT:  Oh, you bet, Mr. Mark.  I'm sorry.

01:50:18  3   I did want to give you the chance to speak if there was

01:50:20  4   points that you wanted to add, so yes, please do.

01:50:23  5              MR. MARK:  I appreciate that, Your Honor.  And I

01:50:25  6   do concur in the analysis and the points that Mr. Nemec has

01:50:32  7   made thus far.  I understand where Your Honor is coming from

01:50:36  8   on the ruling.

01:50:39  9              I would point out the following:  There are five

01:50:43 10   entities that were in the group covered by the stipulation

01:50:52 11   as the non-power plant subpoenas that we represented and

01:50:55 12   that have been dismissed from the case.  AJG Coal, Arthur J.

01:51:02 13   Gallagher & Company, Gallagher Clean Energy, also DTE Rev

01:51:06 14   Holdings, II, and DTE Rev Holdings.

01:51:08 15              I understand Your Honor's point of, when you

01:51:12 16   asked as a hypothetical, is there something about being

01:51:16 17   dismissed that immunizes someone from third-party discovery.

01:51:22 18   And I think, without having to decide that definitively now,

01:51:26 19   one question relates to the scope of the discovery.  Your

01:51:30 20   Honor has noted that you don't think the record is

01:51:32 21   sufficient to this point to decide that.

01:51:35 22              There was attached to the Defendants' letter an

01:51:39 23   exemplar stipulation and one -- an exemplar of a subpoena to

01:51:46 24   one of the parties, non-parties, and these were -- this was

01:51:50 25   put there to provide an example so the Court could see what

1   the scope of the discovery was that was being sought from

2   these non-parties.

3         The one thing I would ask Your Honor to take one

4   last look at in connection with the ruling is we believe

5   that it is apparent from the face of the document request

6   that these go far beyond the claims in the case.  And our

7   point about sequencing and saying, no, this is not to be a

8   final, and we understand that it would not have been a final

9   and dispositive question of whether third-party discovery

10  could ever be sought, but whether, at this point in the

11  case, given where we are, well before the substantial

12  completion date of discovery and just at the threshold of

13  ESI, whether to issue a tsunami of subpoenas at this point

14  to seek information, very generally and very broadly, about

15  the activities of these non-parties, not related to the

16  claims in the case, but related to what they do.

17        Our real argument here, as Mr. Nemec said, was

18  that the Court could, notwithstanding the standing problem,

19  use its authority under the rules to say, This isn't the

20  time for this yet.

21        Plaintiffs' counsel made mention of DRA and said

22  DRA had been identified by one Defendant that was doing a

23  certain type of work for a Defendant Refined Coal entity.

24  So then it wants to ask DRA, where else are you doing this?

25  That is not a request that is designed to get information

01:53:47  1    pertaining to the claims in the case.

01:53:49  2            We have yet to explore and finish up the

01:53:52  3    discovery from the party that identified DRA as to its

01:53:55  4    communications with DRA, et cetera, et cetera, et cetera.

01:53:59  5    But to go to DRA and say, Tell me everything you're doing so

01:54:03  6    I can identify other claims, it is the sequencing of that

01:54:07  7    that we went to.  I understand where Your Honor is coming

01:54:09  8    from, but I just wanted that point to be clear to the Court.

01:54:13  9            THE COURT:  Okay.  Fair enough.  And I have

01:54:16 10    another call at the top of the hour, but Plaintiffs' side,

01:54:18 11    is there anything that you wish to add to the record before

01:54:24 12    I finalize my order?

01:54:26 13            MR. NEMUNAITIS:  No, I mean, your analysis and

01:54:29 14    explanation made sense.  I don't think I have anything

01:54:29 15    further to add.

01:54:29 16            Just to comment on the last point, you know, the

01:54:32 17    authority we cited in the briefing indicates that that would

01:54:34 18    be permissible discovery.  You know, if we accuse a widget

01:54:39 19    maker of making widgets and they use a subsidiary to sell

01:54:42 20    them on the East Coast, I mean, we should still be able to

01:54:44 21    get discovery regarding all of the accused widgets, which is

01:54:47 22    sort of the situation we have here.

01:54:49 23            THE COURT:  Okay.  Sorry.

01:54:52 24            MR. MARK:  That's exactly what is not happening

01:54:54 25    here.  He is not asking for additional discovery about what

01:54:58  1    the parties are doing.  He's asking for discovery about what

01:55:02  2    a non-party is doing somewhere else.

01:55:06  3              THE COURT:  Okay.  Mr. Mark, as I think you know

01:55:08  4    from our prior calls, each time I'm asking counsel on the

01:55:12  5    line to address issues, I'll let you know, I'll say, Now,

01:55:14  6    let me hear from Plaintiffs' side or let me hear from -- and

01:55:17  7    obviously, if I forget to do that, as we did before, it's

01:55:20  8    okay to jump in and remind me.  But what I don't like to

01:55:22  9    have is parties just deciding they can argue with each other

01:55:25 10    without being called on by the Court because that doesn't

01:55:28 11    make for an efficient phone call.  So we'll have to leave it

01:55:31 12    there.

01:55:31 13              For the reasons that I said earlier, I'm going

01:55:36 14    to order that the motion be denied, both on lack of standing

01:55:41 15    grounds and in light of the fact that I don't think I've

01:55:45 16    been provided with a sufficient record to justify the

01:55:47 17    wholesale request to quash these subpoenas.  And the

01:55:54 18    substance of the Court's Order will be reflected in the

01:55:57 19    transcript of today's call.

01:55:58 20              With regard to the Refined Coal Defendants' last

01:56:03 21    point about both the breadth of the document request and

01:56:07 22    their timing, I offer, just by way of guidance having

01:56:13 23    reviewed Exhibit 1 to the Defendants' letter that provides

01:56:17 24    the exemplary subpoena, it does strike me that, as is the

01:56:22 25    case often when I read almost any discovery request, that

01:56:25 1  the actual amount of discovery and its breadth is very

01:56:28 2  broad.

01:56:30 3          It would surprise me, just as a general matter,

01:56:33 4  if every category of document request, for example, that are

01:56:37 5  called out in those 18 different document requests was

01:56:41 6  actually likely to be kind of relevant or proportional as to

01:56:45 7  any particular individual third-party recipient.  I would

01:56:50 8  almost certainly expect that if those third-party entities

01:56:53 9  engaged and filed with the Plaintiff that, at a minimum,

01:56:56 10 there would be some narrowing or perhaps a lot of narrowing

01:57:00 11 with regard to them.

01:57:03 12         I will say it's hard, as a general matter, for

01:57:05 13 me to conclude that as to these 20 entities or any one of

01:57:09 14 them that some or all of the different requests are

01:57:12 15 absolutely irrelevant.  You know, it's just very difficult

01:57:16 16 to do that based on the limited record that I have.  My

01:57:19 17 guess is that, in general, there's a lot of overbreadth

01:57:21 18 there, but you know, who knows, the devil may be in the

01:57:24 19 details.

01:57:25 20         In terms of timing, I'm not prepared to say at

01:57:27 21 this stage that it's wholesale wrongful to issue Rule 45

01:57:31 22 subpoenas at this stage.  Again, there will likely have to

01:57:36 23 be some back and forth between counsel for these third

01:57:40 24 parties and the Plaintiffs.  The case has been pending for a

01:57:42 25 very long time.  There is some number of months left to

01:57:45 1   complete discovery, but not a ton, and I'm not aware of a

01:57:50 2   rule or portion of the Court's Scheduling Order that

01:57:53 3   absolutely prohibits the issuance of a third-party subpoena

01:57:56 4   at this stage, so I'm not going to come to some ruling that

01:57:59 5   Plaintiff is wholesale precluded from issuing such subpoenas

01:58:03 6   now.

01:58:03 7          Again, I leave the parties with what I said

01:58:06 8   earlier which is I certainly encourage further dialogue

01:58:10 9   between named Defendants' counsel and Plaintiffs' counsel,

01:58:12 10   as well as counsel for these third parties in an attempt to

01:58:15 11   reduce or eliminate any disputes about these subpoenas.  If

01:58:19 12   that does not work out, then I'll take up these disputes by

01:58:25 13   way of our discovery dispute procedures.

01:58:26 14          In doing that, I certainly encourage third-party

01:58:29 15   Defendants and Plaintiffs' side to do whatever they can to

01:58:32 16   make that process more efficient.  But to the extent that I

01:58:34 17   have to rule on matters that it is clear I'm going to need

01:58:38 18   more information than our typical discovery dispute

01:58:41 19   procedures might provide for, the parties can certainly

01:58:43 20   alert me to that by way of a letter that they file and

01:58:46 21   advise me of the dispute, and I'll be happy to provide,

01:58:50 22   especially in light of my experience here, provide some

01:58:51 23   additional process so that they can actually make the case

01:58:53 24   they need to as to any particular third-party Defendants.

01:58:58 25          All right.  With all that I said, the motion is

01:58:59  1    denied for the reasons I've said, and we'll end our

01:59:01  2    teleconference today.  I appreciate the parties' arguments.

01:59:05  3    I wish everybody continued health and safety.

01:59:08  4            We'll go off the record for our teleconference

01:59:11  5    today.

01:59:11  6            (Court was recessed at 1:59 p.m.)

          7            I hereby certify the foregoing is a true and

          8    accurate transcript from my stenographic notes in the

          9    proceeding.

          10           /s/ Heather M. Triozzi
                       Certified Merit and Real-Time Reporter
          11           U.S. District Court

          12

          13

          14

          15

          16

          17

          18

          19

          20

          21

          22

          23

          24

          25