IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MIDWEST ENERGY EMISSIONS CORP.    )
and MES INC.,                     )
                                  )
        Plaintiffs,               )
                                  )
    v.                            )    C.A. No. 19-1334 (RGA) (CJB)
                                  )
ARTHUR J. GALLAGHER & CO., *et al.*,   )    **JURY TRIAL DEMANDED**
                                  )
        Defendants.               )

## ANSWER TO THIRD AMEND COMPLAINT

Defendants AJG Iowa Refined Coal LLC; Arbor Fuels Company, LLC; Belle River Fuels Company, LLC; Brandon Shores Coaltech LLC; Erie Fuels Company, LLC; George Neal North Refined Coal, LLC; George Neal Refined Coal, LLC, sued herein as George Neal South Refined Coal, LLC; Huron Fuels Company, LLC; Joppa Refined Coal LLC; Louisa Refined Coal, LLC; Portage Fuels Company, LLC; Superior Fuels Company 1, LLC; Thomas Hill Refined Coal LLC; Wagner Coaltech LLC; and Walter Scott Refined Coal LLC (individually, "Answering Defendant," or together, "Answering Defendants"), for their Answer to the Third Amended Complaint, D.I. 326 (the "TAC") filed by Plaintiffs Midwest Energy Emissions Corp. and MES Inc. (together, "Plaintiffs"), hereby respond as follows:

## THE PARTIES

1.      Midwest Energy Emissions Corp. is a Delaware corporation with its principal place of business at 670 D Enterprise Drive, Lewis Center, Ohio 43035.

## RESPONSE TO PARAGRAPH 1

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 1 of the TAC, and therefore denies the allegations therein.

2.      MES Inc. is a North Dakota corporation with its principal place of business at 311 S. 4th St. STE 118, Grand Forks, ND 58201.

## RESPONSE TO PARAGRAPH 2

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 2 of the TAC, and therefore denies the allegations therein.

3.      Defendant Arthur J. Gallagher & Co. is a Delaware corporation with its principal place of business at 2850 Gold Road, Rolling Meadows, IL 60008.  Arthur J. Gallagher & Co. has designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808 as its agent for service of process.

## RESPONSE TO PARAGRAPH 3

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 3 of the TAC, and therefore denies the allegations therein.

4.      Defendant Gallagher Clean Energy, LLC is a Delaware limited liability company with its principal place of business at Two Pierce Place, Itasca, IL  60143.  Gallagher Clean Energy, LLC has designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808 as its agent for service of process.

## RESPONSE TO PARAGRAPH 4

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 4 of the TAC, and therefore denies the allegations therein.

5.      Defendant AJG Coal, LLC is a Delaware limited liability company with its principal place of business at Two Pierce Place, Itasca, IL  60143.  AJG Coal, LLC has designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808 as its agent for service of process.

## RESPONSE TO PARAGRAPH 5

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 5 of the TAC, and therefore denies the allegations therein.

6.      Defendant DTE REF Holdings, LLC is a Delaware limited liability company with its principal place of business at One Energy Plaza, Detroit, MI 48226.  DTE REF Holdings, LLC has designated The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801 as its agent for service of process.

## RESPONSE TO PARAGRAPH 6

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 6 of the TAC, and therefore denies the allegations therein.

7.      Defendant DTE REF Holdings II LLC is a Delaware limited liability company with its principal place of business at One Energy Plaza, Detroit, MI 48226.  DTE REF Holdings II LLC has designated The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801 as its agent for service of process.

## RESPONSE TO PARAGRAPH 7

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 7 of the TAC, and therefore denies the allegations therein.

8.      Defendant CERT Coal Holdings, LLC is a Delaware limited liability company with its principal place of business at 2100 Southbridge Parkway, Suite 585, Birmingham, AL  35209. CERT Coal Holdings, LLC has designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE  19808 as its agent for service of process.

## RESPONSE TO PARAGRAPH 8

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 8 of the TAC, and therefore denies the allegations therein.

9.      Defendant CERT Holdings, LLC is a Delaware limited liability company with its principal place of business at 2100 Southbridge Parkway, Suite 585, Birmingham, AL  35209. CERT Holdings, LLC has designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE  19808 as its agent for service of process.

## RESPONSE TO PARAGRAPH 9

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 9 of the TAC, and therefore denies the allegations therein.

10.     Defendant CERT Holdings 2018, LLC is a Delaware limited liability company with its principal place of business at 2100 Southbridge Parkway, Suite 585, Birmingham, AL  35209. CERT Holdings 2018, LLC has designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE  19808 as its agent for service of process.

## RESPONSE TO PARAGRAPH 10

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 10 of the TAC, and therefore denies the allegations therein.

11.     Defendant CERT Operations, LLC is a Delaware limited liability company with its principal place of business at 2100 Southbridge Parkway, Suite 585, Birmingham, AL  35209. CERT Operations LLC has designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE  19808 as its agent for service of process.

## RESPONSE TO PARAGRAPH 11

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 11 of the TAC, and therefore denies the allegations therein.

12.     Defendant CERT Operations II, LLC is a Delaware limited liability company with its principal place of business at 2100 Southbridge Parkway, Suite 585, Birmingham, AL  35209. CERT Operations II, LLC has designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE  19808 as its agent for service of process.

## RESPONSE TO PARAGRAPH 12

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 12 of the TAC, and therefore denies the allegations therein.

13.     Defendant CERT Operations III, LLC is a Delaware limited liability company with its principal place of business at 2100 Southbridge Parkway, Suite 585, Birmingham, AL  35209. CERT Operations III, LLC has designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE  19808 as its agent for service of process.

## RESPONSE TO PARAGRAPH 13

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 13 of the TAC, and therefore denies the allegations therein.

14.     Defendant CERT Operations IV, LLC is a Delaware limited liability company with its principal place of business at 2100 Southbridge Parkway, Suite 585, Birmingham, AL  35209. CERT Operations IV, LLC has designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE  19808 as its agent for service of process.

## RESPONSE TO PARAGRAPH 14

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 14 of the TAC, and therefore denies the allegations therein.

15.     Defendant CERT Operations V, LLC is a Delaware limited liability company with its principal place of business at 2100 Southbridge Parkway, Suite 585, Birmingham, AL 35209. CERT Operations V, LLC has designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808 as its agent for service of process.

## RESPONSE TO PARAGRAPH 15

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 15 of the TAC, and therefore denies the allegations therein.

16.     Defendant CERT Operations RCB, LLC is a Delaware limited liability company with its principal place of business at 2100 Southbridge Parkway, Suite 585, Birmingham, AL 35209. CERT Operations RCB, LLC has designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808 as its agent for service of process.

## RESPONSE TO PARAGRAPH 16

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 16 of the TAC, and therefore denies the allegations therein.

17.     Defendant Chem-Mod LLC is a Delaware limited liability company with its principal place of business at Two Pierce Place, Itasca, Illinois 60143. Chem-Mod LLC has designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808 as its agent for service of process.  On information and belief, Defendant A.J. Gallagher holds a controlling interest in Chem-Mod, and has controlled and directed the actions and infringement of Chem-Mod alleged herein.

## RESPONSE TO PARAGRAPH 17

Each Answering Defendant denies the allegations in paragraph 17 of the TAC.

18.     Defendant AJG Iowa Refined Coal LLC is a Delaware limited liability company with its principal place of business at Two Pierce Place, Itasca, IL 60143.  AJG Iowa Refined Coal LLC has designated Cogency Global Inc., 850 New Burton Road, Suite 201, Dover DE 19904 as its agent for service of process.

## RESPONSE TO PARAGRAPH 18

The Answering Defendant named in paragraph 18 admits the allegations set forth in paragraph 18; each other Answering Defendant lacks knowledge or information sufficient to

form a belief as to the truth of the matter alleged in paragraph 18 of the TAC, and therefore

denies the allegations therein.

19.     Defendant Joppa Refined Coal LLC is a Delaware limited liability company with its principal place of business at or near the Joppa Power Station near Joppa, IL.  Joppa Refined Coal LLC has designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808 as its agent for service of process.

### RESPONSE TO PARAGRAPH 19

The Answering Defendant named in paragraph 19 admits the allegations set forth in

paragraph 19; each other Answering Defendant lacks knowledge or information sufficient to

form a belief as to the truth of the matter alleged in paragraph 19 of the TAC, and therefore

denies the allegations therein.

20.     Defendant Thomas Hill Refined Coal LLC is a Delaware limited liability company with its principal place of business at or near the Thomas Hill Energy Center near Clifton Hill, MO. Thomas Hill Refined Coal LLC has designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808 as its agent for service of process.

### RESPONSE TO PARAGRAPH 20

The Answering Defendant named in paragraph 20 admits the allegations set forth in

paragraph 20; each other Answering Defendant lacks knowledge or information sufficient to

form a belief as to the truth of the matter alleged in paragraph 20 of the TAC, and therefore

denies the allegations therein.

21.     Defendant Wagner Coaltech LLC is a Delaware limited liability company with its principal place of business at or near the Herbert A. Wagner Generating Station in Anne Arundel County, MD.  Wagner Coaltech LLC has designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808 as its agent for service of process.

### RESPONSE TO PARAGRAPH 21

The Answering Defendant named in paragraph 21 admits the allegations set forth in

paragraph 21; each other Answering Defendant lacks knowledge or information sufficient to

form a belief as to the truth of the matter alleged in paragraph 21 of the TAC, and therefore

denies the allegations therein.

22.     Defendant Walter Scott Refined Coal LLC is a Delaware limited liability company with its principal place of business at or near the Council Bluffs Energy Center (also known as the Walter Scott Energy Center) near Council Bluffs, IA.  Walter Scott Refined Coal LLC has

designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808 as its agent for service of process.

## RESPONSE TO PARAGRAPH 22

The Answering Defendant named in paragraph 22 admits the allegations set forth in paragraph 22; each other Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 22 of the TAC, and therefore denies the allegations therein.

23.     Defendant Louisa Refined Coal, LLC is a Delaware limited liability company with its principal place of business at 6901 Dodge St., Suite 201, Omaha, NE 68132. Louisa Refined Coal, LLC has designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808 as its agent for service of process.

## RESPONSE TO PARAGRAPH 23

The Answering Defendant named in paragraph 23 admits the allegations set forth in paragraph 23; each other Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 23 of the TAC, and therefore denies the allegations therein.

24.     Defendant Belle River Fuels Company, LLC is a Delaware limited liability company with its principal place of business at or near the Belle River Power Plant in Saint Claire County, MI. Belle River Fuels Company, LLC has designated The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801 as its agent for service of process.

## RESPONSE TO PARAGRAPH 24

The Answering Defendant named in paragraph 24 admits the allegations set forth in paragraph 24; each other Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 24 of the TAC, and therefore denies the allegations therein.

25.     Defendant Arbor Fuels Company, LLC is a Delaware limited liability company with its principal place of business at 414 S. Main St, Suite 600, Ann Arbor, MI  48104. Arbor Fuels Company, LLC has designated The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801 as its agent for service of process.

## RESPONSE TO PARAGRAPH 25

The Answering Defendant named in paragraph 25 admits the allegations set forth in paragraph 25; each other Answering Defendant lacks knowledge or information sufficient to

form a belief as to the truth of the matter alleged in paragraph 25 of the TAC, and therefore

denies the allegations therein.

26.     Defendant Portage Fuels Company, LLC is a Delaware limited liability company with its principal place of business 414 S. Main St, Suite 600, Ann Arbor, MI  48104.  Portage Fuels Company, LLC has designated The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801 as its agent for service of process.

## RESPONSE TO PARAGRAPH 26

The Answering Defendant named in paragraph 26 admits the allegations set forth in

paragraph 26; each other Answering Defendant lacks knowledge or information sufficient to

form a belief as to the truth of the matter alleged in paragraph 26 of the TAC, and therefore

denies the allegations therein.

27.     Defendant Brandon Shores Coaltech, LLC is a Delaware limited liability company with its principal place of business 1431 Opus Place, Suite 210, Downers Grove, IL 60515.  Brandon Shores Coaltech, LLC has designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE  19808 as its agent for service of process.

## RESPONSE TO PARAGRAPH 27

The Answering Defendant named in paragraph 27 admits the allegations set forth in

paragraph 27; each other Answering Defendant lacks knowledge or information sufficient to

form a belief as to the truth of the matter alleged in paragraph 27 of the TAC, and therefore

denies the allegations therein.

28.     Defendant Senescence Energy Products, LLC is a Delaware limited liability company with its principal place of business 2100 Southbridge Parkway, Suite 585, Birmingham, AL 35209.  Senescence Energy Products, LLC has designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE  19808 as its agent for service of process.

## RESPONSE TO PARAGRAPH 28

Each Answering Defendant lacks knowledge or information sufficient to form a belief as

to the truth of the matter alleged in paragraph 28 of the TAC, and therefore denies the allegations

therein.

29.     Defendant Rutledge Products, LLC is a Delaware limited liability company with its principal place of business 1120 River Road, Quinton, AL  35130. Rutledge Products, LLC has designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE  19808 as its agent for service of process.

## RESPONSE TO PARAGRAPH 29

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 29 of the TAC, and therefore denies the allegations therein.

30.     Defendant Alistar Enterprises, LLC is a Delaware limited liability company with its principal place of business 2100 Southbridge Parkway, Suite 585, Birmingham, AL  35209. Alistar Enterprises, LLC has designated The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, DE  19801 as its agent for service of process.

## RESPONSE TO PARAGRAPH 30

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 30 of the TAC, and therefore denies the allegations therein.

31.     Defendant Spring Hill Resources, LLC is a Delaware limited liability company with its principal place of business at 1140 Highway 270, Maylene, AL 35114.  Spring Hill Resources, LLC has designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808 as its agent for service of process.

## RESPONSE TO PARAGRAPH 31

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 31 of the TAC, and therefore denies the allegations therein.

32.     Defendant Buffington Partners, LLC is a Delaware limited liability company with its principal place of business at 221 Bolivar Street, Jefferson City, MO 65101. Buffington Partners, LLC has designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808 as its agent for service of process.

## RESPONSE TO PARAGRAPH 32

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 32 of the TAC, and therefore denies the allegations therein.

33.     Defendant Bascobert (A) Holdings, LLC is a Delaware limited liability company with its principal place of business at 2100 South SouthBridge Pkwy., Suite 585, Birmingham, AL 35209. Bascobert (A) Holdings, LLC has designated Corporation Service Company DBA CSC – Lawyers Inc., 211 E. 7TH Street, Suite 620, Austin, TX 78701 as its agent for service of process.

## RESPONSE TO PARAGRAPH 33

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 33 of the TAC, and therefore denies the allegations therein.

34.     Defendant Larkwood Energy, LLC is a Delaware limited liability company with its principal place of business at 12747 Olive Boulevard, Suite 300, St. Louis, MO 63141. Larkwood Energy, LLC has designated The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, DE  19801 as its agent for service of process.

### RESPONSE TO PARAGRAPH 34

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 34 of the TAC, and therefore denies the allegations therein.

35.     Defendant Cottbus Associates, LLC is a Delaware limited liability company with its principal place of business at 5601 S. 59TH Street, Suite C, Lincoln, NE 68516. Cottbus Associates, LLC has designated The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, DE  19801 as its agent for service of process.

### RESPONSE TO PARAGRAPH 35

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 35 of the TAC, and therefore denies the allegations therein.

36.     George Neal Refined Coal LLC is a Delaware limited liability company with its principal place of business at or near the George Neal Station South near Salix, Iowa. George Neal Refined Coal LLC has designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808 as its agent for service of process.

### RESPONSE TO PARAGRAPH 36

The Answering Defendant named in paragraph 36 admits the allegations set forth in paragraph 36; each other Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 36 of the TAC, and therefore denies the allegations therein.

37.     George Neal North Refined Coal LLC is a Delaware limited liability company with its principal place of business at or near the George Neal Station North near Sergeant Bluff, Iowa. George Neal North Refined Coal LLC has designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808 as its agent for service of process.

### RESPONSE TO PARAGRAPH 37

The Answering Defendant named in paragraph 37 admits the allegations set forth in

paragraph 37; each other Answering Defendant lacks knowledge or information sufficient to

form a belief as to the truth of the matter alleged in paragraph 37 of the TAC, and therefore

denies the allegations therein.

38.    Superior Fuels Company 1, LLC is a Delaware limited liability company with its
principal place of business at 5102 S. Cant Rd., Duluth, MN 55804. Superior Fuels Company 1,
LLC has designated The Corporation Trust Company, Corporation Trust Center, 1209 Orange
St., Wilmington, DE  19801 as its agent for service of process.

## RESPONSE TO PARAGRAPH 38

The Answering Defendant named in paragraph 38 admits that it is a Delaware company

that has designated The Corporation Trust Company, Corporation Trust Center, 1209 Orange St.,

Wilmington, DE 19801 as its agent for service of process and denies the remaining allegations of

Paragraph 38.  Each other Answering Defendant lacks knowledge or information sufficient to

form a belief as to the truth of the matter alleged in paragraph 38 of the TAC, and therefore

denies the allegations therein.

39.    Erie Fuels Company, LLC is a Delaware limited liability company with its principal
place of business at 414 S. Main Street, Suite 600, Ann Arbor, MI 48104. Erie Fuels Company,
LLC has designated C T Corporation System, 301 S. Bedford St. Suite 1, Madison, WI 53703 as
its agent for service of process.

## RESPONSE TO PARAGRAPH 39

The Answering Defendant named in paragraph 39 admits that it is a Delaware company

with its principal place of business at 414 S. Main Street, Suite 600, Ann Arbor, MI 48104 and

denies the remaining allegations of Paragraph 39.  Each other Answering Defendant lacks

knowledge or information sufficient to form a belief as to the truth of the matter alleged in

paragraph 39 of the TAC, and therefore denies the allegations therein.

40.    Huron Fuels Company, LLC is a foreign limited liability company with its principal place
of business at One Energy Plaza, Detroit, MI 48226. Huron Fuels Company, LLC has designated
The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, DE
19801 as its agent for service of process.

## RESPONSE TO PARAGRAPH 40

The Answering Defendant named in paragraph 40 admits that it has designated The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801 as its agent for service of process and denies the remaining allegations of Paragraph 40. Each other Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 40 of the TAC, and therefore denies the allegations therein.

41.     On information and belief, AJG, DTE, CERT, and/or Chem-Mod have used additional Delaware John Doe LLCs to collect Section 45 Tax Credits and to provide refined coal to additional coal-fired power plants in a manner that induces and or contributes to infringement of the patents-in-suit.

## RESPONSE TO PARAGRAPH 41

Each Answering Defendant denies the allegations in paragraph 41 of the TAC.

## JURISDICTION AND VENUE

42.     This action includes a claim of patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq*. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

## RESPONSE TO PARAGRAPH 42

Each Answering Defendant admits that Plaintiffs filed the TAC, refer to the TAC for a statement of its contents, and deny the remaining allegations of paragraph 42.

43.     This Court has personal jurisdiction over Defendants, because each is incorporated in and/or a limited liability company formed in Delaware. In addition, Defendants have conducted business in this district by taking advantage of the laws of this district and by forming and controlling affiliated entities involved in the acts of infringement described below.

## RESPONSE TO PARAGRAPH 43

Each Answering Defendant admits that it is incorporated in and/or a limited liability company formed in Delaware. Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning any other Defendant and therefore denies same; and denies all other allegations of paragraph 43.

44.     Venue is proper in this district pursuant to 28 U.S.C. § 1400(b) with respect to each Defendant that resides in this District.

## RESPONSE TO PARAGRAPH 44

Each Answering Defendant admits the allegations of paragraph 44 insofar as they are directed to that Answering Defendant; and lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning any other Defendant and therefore denies same.

## ASSERTED PATENTS

45.    On July 9, 2019, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,343,114 (the "'114 patent") entitled "Sorbents for the Oxidation and Removal of Mercury."  A copy of the '114 patent is attached as Exhibit A.

## RESPONSE TO PARAGRAPH 45

Each Answering Defendant admits that Exhibit A purports to be a copy of the '114 patent; refers to that document for a statement of its contents; and denies the remaining allegations of paragraph 45 of the TAC.

46.    On May 1, 2012, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,168,147 (the "'147 patent") entitled "Sorbents for the Oxidation and Removal of Mercury."  A copy of the '147 patent is attached as Exhibit B.

## RESPONSE TO PARAGRAPH 46

Each Answering Defendant admits that Exhibit B purports to be a copy of the '147 patent; refers to that document for a statement of its contents; and denies the remaining allegations of paragraph 46 of the TAC.

47.    On March 17, 2020, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,589,225 (the "'225 patent") entitled "Sorbents for the Oxidation and Removal of Mercury."  A copy of the '225 patent is attached as Exhibit C.

## RESPONSE TO PARAGRAPH 47

Each Answering Defendant admits that Exhibit C purports to be a copy of the '225 patent; refers to that document for a statement of its contents; and denies the remaining allegations of paragraph 47 of the TAC.

48.    On March 24, 2020, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,596,517 (the "'517 patent") entitled "Sorbents for the Oxidation and Removal of Mercury."  A copy of the '517 patent is attached as Exhibit D.

## RESPONSE TO PARAGRAPH 48

Each Answering Defendant admits that Exhibit D purports to be a copy of the '517 patent; refers to that document for a statement of its contents; and denies the remaining allegations of paragraph 48 of the TAC.

49.     On June 2, 2020, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,668,430 (the "'430 patent") entitled "Sorbents for the Oxidation and Removal of Mercury."  A copy of the '430 patent is attached as Exhibit E.

### RESPONSE TO PARAGRAPH 49

Each Answering Defendant admits that Exhibit E purports to be a copy of the '430 patent; refers to that document for a statement of its contents; and denies the remaining allegations of paragraph 49 of the TAC.

### FACTUAL ALLEGATIONS

50.     In 1990, Congress passed the Clean Air Act Amendments of 1990.

### RESPONSE TO PARAGRAPH 50

Paragraph 50 of the TAC refers to a conclusion of law or legislative act to which no response is required; to the extent a response is required, each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of paragraph 50 and therefore denies the allegation of paragraph 50 of the TAC.

51.     That law required the U.S. Environmental Protection Agency (EPA) to study the impact of various air pollutants, including mercury.

### RESPONSE TO PARAGRAPH 51

Paragraph 51 of the TAC refers to a conclusion of law or legislative act to which no response is required; to the extent a response is required, each Answering Defendant refers to the appropriate government records for a full statement of government action, and denies the allegation of paragraph 51 of the TAC.

52.     To assist in the research, in 1992, the EPA established a National Center for Excellence at the Energy & Environmental Research Center (EERC) referred to as the Center for Air Toxic Metals (CATM).

### RESPONSE TO PARAGRAPH 52

Paragraph 52 of the TAC refers to a conclusion of law or an agency action to which no response is required; to the extent a response is required, each Answering Defendant refers to the appropriate government records for a full statement of government action, and denies the allegation of paragraph 52 of the TAC.

53.     In 1997 and 1998, the EPA issued two reports to Congress: Mercury Study Report to Congress (issued December 1997) and Study of Hazardous Air Pollutant Emissions from Electric Utility Steam (issued February 1998).  As an outcome of these studies, the EPA found a pressing need for regulation of mercury pollution from coal-fired power plants.   Unfortunately, it also found that no existing technologies were up to the task of significantly reducing the mercury pollution from those plants.

## RESPONSE TO PARAGRAPH 53

Paragraph 53 of the TAC refers to a conclusion of law or agency action to which no response is required; to the extent a response is required, each Answering Defendant refers to the appropriate government records for a full statement of government action, and denies the allegation of paragraph 53 of the TAC.

54.     In the wake of these reports, various governmental and industry organizations injected millions of dollars into basic scientific research and experimental studies in the search for new mercury capture technologies.

## RESPONSE TO PARAGRAPH 54

Paragraph 54 of the TAC refers to a conclusion of law or agency actions to which no response is required; to the extent a response is required, each Answering Defendant refers to the appropriate government records for a full statement of government action, and otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 54 and therefore denies such allegations.

55.     Researchers at the EERC were instrumental in developing new techniques for studying this problem and ultimately solving it.

## RESPONSE TO PARAGRAPH 55

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 55 of the TAC, and therefore denies the allegations therein.

15

56.     In 2002, the EPA surveyed the state of research in this field and produced a follow-up report: Control of Mercury Emissions from Coal-Fired Electric Utility Boilers: Interim Report. This report identified some promising areas of research, and it noted that some technologies were available for reducing mercury emissions.  However, the EPA recognized that there was no universal solution to this problem and that more work remained to be done.

## RESPONSE TO PARAGRAPH 56

Each Answering Defendant refers to the referenced report for a statement of its contents,

and lacks knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in paragraph 56 of the TAC and therefore denies same.

57.     During this time, the inventors of the patents-in-suit were researching the issue of mercury capture at the EERC.  Through their work, they uncovered some of the complex chemistry that occurs in a coal-fired boiler.

## RESPONSE TO PARAGRAPH 57

Each Answering Defendant lacks knowledge or information sufficient to form a belief as

to the truth of the allegations in paragraph 57 of the TAC and therefore denies same.

58.     They further discovered a number of methods for improving mercury capture.  In particular, they found that applying a halogen additive such as bromine and bromide compounds onto coal or into a combustion chamber, when combined with sorbent injection, could dramatically reduce the mercury content of coal-fired power plant emissions.

## RESPONSE TO PARAGRAPH 58

Each Answering Defendant denies the allegations in paragraph 58 of the TAC.

59.     By 2004, the inventors filed a provisional application that would lead to the patents in suit.  This application, and the subsequently issued patents, cover some of their discoveries and various applications of their discoveries.  In particular, the inventors discovered, and ultimately proved, the benefits of combining halogen treatments (e.g., bromine containing materials) in-flight with backend sorbents (e.g., activated carbon).

## RESPONSE TO PARAGRAPH 59

Each Answering Defendant denies the allegations in paragraph 59 of the TAC.

60.     In 2011, the EPA finalized the first national standards to reduce mercury and other toxic air pollution from coal-fired plants (the Mercury and Air Toxics Standards or "MATS").  Most coal-fired power plants were required to comply with this rule by 2016.

## RESPONSE TO PARAGRAPH 60

Paragraph 60 of the TAC refers to a conclusion of law or regulatory act to which no

response is required; to the extent a response is required, each Answering Defendant responds

that the paragraph is incomplete and therefore inaccurate, refers to the appropriate government

records for a full statement of government action, and otherwise lacks knowledge or information

sufficient to form a belief as to the truth of the allegations of paragraph 60 of the TAC and

therefore denies same.

61.     While the EPA was working on addressing the issue of mercury emissions, Congress also took action.  In 2004, Congress passed the American Jobs Act, which created a new tax credit related to the production of refined coal (referred to as "Section 45 tax credits").

## RESPONSE TO PARAGRAPH 61

Paragraph 61 of the TAC refers to a conclusion of law or legislative act to which no

response is required; to the extent a response is required, each Answering Defendant responds

that the paragraph is incomplete and therefore inaccurate, refers to the appropriate government

records for a full statement of government action, and otherwise lacks knowledge or information

sufficient to form a belief as to the truth of the allegations of paragraph 61 of the TAC and

therefore denies same.

62.     Under this law, a refined coal producer can receive an inflation-adjusted tax credit for each ton ($/ton) of refined coal sold to a power plant that results in a 40% reduction in mercury emissions and a 20% reduction in NOx emissions.  This law has resulted in companies receiving hundreds of millions of dollars in tax credits each year.

## RESPONSE TO PARAGRAPH 62

Each Answering Defendant lacks knowledge or information sufficient to form a belief as

to the truth of the allegations of paragraph 62 of the TAC and therefore denies same.

63.     Because of this highly lucrative law, financial services companies such as AJG jumped at the chance to collect the tax credits.

## RESPONSE TO PARAGRAPH 63

Each Answering Defendant lacks knowledge or information sufficient to form a belief as

to the truth of the allegations in paragraph 63 of the TAC and therefore denies same.

64.     AJG is an insurance brokerage and risk management services firm.

## RESPONSE TO PARAGRAPH 64

Each Answering Defendant lacks knowledge or information sufficient to form a belief as

to the truth of the allegations in paragraph 64 of the TAC and therefore denies same

65.     AJG Chief Financial Officer Douglas Howell has claimed credit for designing a business model to maximize profits based on Section 45 tax credits.

## RESPONSE TO PARAGRAPH 65

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 65 of the TAC and therefore denies same.

66.     "Our return on investment is staggering," Mr. Howell told analysts in a March 14, 2018 call. "Oh, 200 percent, 300 percent, 400 percent, 500 percent. I mean, just because it costs so little to develop" facilities.

## RESPONSE TO PARAGRAPH 66

Each Answering Defendant refers to any referenced quotation for a statement of its contents; responds that any such quotation is incomplete and therefore misleading; and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 66 of the TAC and therefore denies same.

67.     As a result, Mr. Howell has explained that AJG will not be paying much, if any, U.S. federal income tax for many years to come.

## RESPONSE TO PARAGRAPH 67

Each Answering Defendant refers to any referenced quotation for a statement of its contents; responds that any such quotation is incomplete and therefore misleading; and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 67 of the TAC and therefore denies same

68.     According to the AJG business model, AJG does not build standalone facilities to refine coal that is then shipped around the country for use at coal plants.

## RESPONSE TO PARAGRAPH 68

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 68 of the TAC, and therefore denies the allegations therein.

69.     Instead, AJG uses shell companies that are designed to lose money each year, but that ultimately result in AJG profiting from Section 45 tax credits.

## RESPONSE TO PARAGRAPH 69

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 69 of the TAC, and therefore denies the allegations therein.

70.     Specifically, AJG forms a limited liability company ("LLC") to be associated with a particular coal-fired power plant (the "Refined Coal LLC").  The paragraphs below refer to actions taken by a Refined Coal LLC, but AJG maintains control throughout this process.  For example, AJG maintains majority control, or, if it lacks majority control, AJG requires that all major decisions obtain approval from AJG.

## RESPONSE TO PARAGRAPH 70

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of any allegations of paragraph 70 of the TAC and therefore denies same.

71.     Through its controlling interests in Refined Coal LLCs and Chem-Mod, AJG causes Chem-Mod to contract with the Refined Coal LLC to provide Chem-Mod chemicals, and technical, regulatory, and/or operational support to the Refined Coal LLC.

## RESPONSE TO PARAGRAPH 71

Each Answering Defendant denies the allegations of paragraph 71 of the TAC insofar as it pertains to that entity; and denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 71 insofar as they pertain to any other defendant.

72.     The Refined Coal LLC rents space on-site at a power plant where it can briefly take possession of coal from the power plant.  It purchases coal from the plant, treats it with Chem-Mod chemicals, and then sells the coal—now considered "refined coal"—back to the coal-fired power plant at the same price or for a loss.

## RESPONSE TO PARAGRAPH 72

Each Answering Defendant denies the allegations of paragraph 72 of the TAC insofar as it pertains to that entity; and denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 72 insofar as they pertain to any other defendant.

73.     For example, the Refined Coal LLC can take possession of coal as it moves along a conveyor belt toward a combustion chamber.  It can then add chemicals to the coal and return it to a conveyor belt leading to the combustion chamber.

## RESPONSE TO PARAGRAPH 73

Each Answering Defendant denies the allegations of paragraph 73 of the TAC insofar as it pertains to that entity; and denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 73 insofar as they pertain to any other defendant.

74.     The Chem-Mod chemicals applied to the coal include $Br_2$, HBr, a bromide compound such as $CaBr_2$, or a combination thereof.

## RESPONSE TO PARAGRAPH 74

Each Answering Defendant denies the allegations of paragraph 74 of the TAC insofar as it pertains to that entity; and denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 74 insofar as they pertain to any other defendant.

75.     One important aspect of this plan is that an LLC is a pass-through entity for tax purposes. That is, the benefits of the Section 45 tax credits pass through to AJG and other owners of the Refined Coal LLC.

## RESPONSE TO PARAGRAPH 75

Paragraph 75 of the TAC sets forth conclusions of law to which no response to is required.  To the extent a response is required, each Answering Defendant denies the allegations of paragraph 75 of the TAC.

76.     AJG sells ownership in the LLC based at least in part on the value of those tax credits.

## RESPONSE TO PARAGRAPH 76

Each Answering Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 76 of the TAC, and therefore denies same.

77.     By using the Refined Coal LLCs as shell companies, AJG is able to operate companies that are designed to lose money, but that ultimately benefit AJG because they allow it to obtain hundreds of millions of dollars in federal tax credits.

## RESPONSE TO PARAGRAPH 77

Each Answering Defendant denies the allegations of paragraph 77 of the TAC.

78.     This model has been emulated by others, such as DTE and CERT.

## RESPONSE TO PARAGRAPH 78

Each Answering Defendant denies the allegations in paragraph 78 of the TAC.

79.     DTE and CERT both use Chem-Mod supplied chemicals and provide refined coal through Refined Coal LLCs in order to obtain Section 45 Tax Credits.

## RESPONSE TO PARAGRAPH 79

DTE REF Holdings LLC and DTE REF Holdings II LLC deny the allegations in

paragraph 79 of the TAC; each other Answering Defendant denies knowledge or information

sufficient to form a belief as to the truth of the allegations in paragraph 79 of the TAC, and

therefore denies same.

80.     In order to obtain the benefits of Section 45 Tax Credits, AJG, DTE, CERT, Chem-Mod, and the RC Defendants must comply with 26 U.S.C. § 45 by demonstrating that the alleged refined coal is "a liquid, gaseous, or solid fuel produced from coal (including lignite) or high carbon fly ash, including such fuel used as a feedstock," "is sold by the taxpayer with the reasonable expectation that it will be used for the purpose of producing steam," and "is certified by the taxpayer as resulting (when used in the production of steam) in a qualified emission reduction."  To demonstrate "qualified emission reduction," these parties must demonstrate "a reduction of at least 20 percent of the emissions of nitrogen oxide and at least 40 percent of the emissions of either sulfur dioxide or mercury released when burning the refined coal (excluding any dilution caused by materials combined or added during the production process), as compared to the emissions released when burning the feedstock coal or comparable coal predominantly available in the marketplace as of January 1, 2003."

## RESPONSE TO PARAGRAPH 80

To the extent that Paragraph 80 of the TAC quotes from the text of a statute, each

Answering Defendant refers to the text of the statute and responds that in quoting only portions

of the text the allegation is necessarily incomplete and therefore inaccurate and denied.  Each

Answering Defendant further responds that Paragraph 80 of the TAC sets forth a conclusion of

law to which no response is required; to the extent a response is required, each Answering

Defendant denies the allegations of paragraph 80 of the TAC.

81.     While the parties could qualify for this credit by demonstrating a reduction in either sulfur dioxide or mercury, on information and belief, they have elected to focus on a reduction in mercury rather than sulfur dioxide.

## RESPONSE TO PARAGRAPH 81

Each Answering Defendant denies the allegations of Paragraph 81 of the TAC.

82.      On information and belief, AJG, DTE, CERT, Chem-Mod, and the RC Defendants provide the required certification for qualified emission reduction by performing pilot scale testing that simulates the conditions of a particular coal-fired power plant or by performing testing at a particular coal-fired power plant.  In either case, AJG, DTE, CERT, Chem-Mod, and the RC Defendants must prepare a specific refined coal designed to work for that plant, and they will be aware of a plant's use of activated carbon injection.

## RESPONSE TO PARAGRAPH 82

Each Answering Defendant denies the allegations of Paragraph 82 of the TAC.

83.    On information and belief, when AJG, DTE, CERT, Chem-Mod, and the RC Defendants perform certification testing for a particular plant, they must be aware of the other mercury control equipment at the plant, including activated carbon injection.  Because AJG, DTE, CERT, Chem-Mod, and the RC Defendants make refined coal by adding chemicals to the coal, not by removing atoms of mercury, the mercury present in the coal will also be present in the gas emitted from the combustion chamber.  Indeed, according to Chem-Mod, the additives applied to the coal do not destroy or remove the mercury atoms, they merely result in the mercury being converted into a different form of mercury (e.g., molecular mercury to oxidized mercury).  Thus, if these Defendants attempted to perform a certification test by merely combusting refined coal and measuring the amount of emitted mercury leaving the combustion chamber (i.e., disregarding the plant's activated carbon injection and other mercury control equipment), they would be unable to demonstrate the required reduction in mercury.

## RESPONSE TO PARAGRAPH 83

Each Answering Defendant denies the allegations of Paragraph 83 of the TAC.

84.    On information and belief, for coal-fired power plants that use activated carbon injection, AJG, DTE, CERT, Chem-Mod, and the RC Defendants demonstrate qualified emission reduction for those plants by adding activated carbon sorbent downstream of the combustion chamber during the certification testing.  For example, these Defendants can establish a baseline mercury capture rate by combusting non-refined coal in a combustion chamber and then using the mercury control equipment employed at the plant under test (e.g., activated carbon injection and electrostatic precipitator).  This could be a test at the plant, or a test at a pilot scale facility that simulates the plant's equipment.  In either case, mercury in the coal will be emitted from the combustion chamber, mix with the activated carbon, and at least some will be captured in the electrostatic precipitator.  The gas downstream of the electrostatic precipitator can then be measured for mercury content to establish a baseline for mercury emissions.  When the Defendants switch to using refined coal (which has been formulated to react with the plant's use of activated carbon and other mercury controls in a manner will meet the qualified emission reduction requirement and that meets the plant's regulatory obligations), the bromine added to the coal boosts the performance of the activated carbon sorbent such that additional mercury is captured in the electrostatic precipitator.  The Defendants can then measure the gas downstream of the electrostatic precipitator and rely on the reduced level of mercury in that measurement to certify that they achieve the required emissions reduction.  Thus, AJG, DTE, CERT, Chem-Mod, and the RC Defendants are aware of a plant's use of activated carbon either by obtaining that information so that they can simulate this step during pilot scale testing, or by observing the use of activated carbon on-site at the plant.

## RESPONSE TO PARAGRAPH 84

Each Answering Defendant denies the allegations of Paragraph 84 of the TAC.

85.    To be clear, Defendants refer to the above described type of testing as "post-emission control testing,"  Each of the entities identified with the names AJG, DTE, CERT, and the RC Defendants perform post-emission control testing at least with respect to each power plant they provide refined coal to, if the power plant uses activated carbon injection. Performance of this testing constitutes direct infringement of at least one claim of each of the patents-in-suit, and providing the refined coal to these power plants also induces and contributes to infringement at the power plant.

**RESPONSE TO PARAGRAPH 85**

Each Answering Defendant denies the allegations of Paragraph 85 of the TAC.

86.    On information and belief, for each coal-fired power plant using activated carbon injection, AJG, DTE, CERT, Chem-Mod, and the RC Defendants perform certification testing at least every six months in order to maintain their eligibility for section 45 tax credits.

**RESPONSE TO PARAGRAPH 86**

Each Answering Defendant denies the allegations of Paragraph 86 of the TAC.

87.    Even if it were possible for AJG, DTE, CERT, Chem-Mod, and the RC Defendants to avoid learning of a plant's use of activated carbon for purposes of certification testing, on information and belief, these Defendants would learn of the plant's use of activated carbon by working with the plant. These Defendants must have access to coal-fired power plants to determine logistics for installing refined coal equipment, storing and supplying chemicals, and operating and maintaining equipment. As part of that process, they would be able to witness activated carbon injection equipment and on-site activated carbon, as this material is readily recognizable to persons familiar with mercury control equipment and procedures. Moreover, individuals on-site would be required to comply with safety protocols at the plant. For example, AJG, DTE, CERT, Chem-Mod, and the RC Defendants would be instructed as to plant operations and protocols for interfering with aspects of plant operation that are not under the control of AJG, DTE, CERT, Chem-Mod, and the RC Defendants. In addition, they would be aware of warnings and safety information regarding the hazards of activated carbon. As a result, those individuals would be aware of the plant's use of activated carbon injection.

**RESPONSE TO PARAGRAPH 87**

Each Answering Defendant denies the allegations of Paragraph 87 of the TAC.

88.    Even if it were possible for AJG, DTE, CERT, Chem-Mod, and the RC Defendants to supply, maintain, and operate mercury control equipment on-site at a coal-fired power plant without learning of the other mercury control equipment on-site at the plant, on information and belief, they would learn of the plant's use of sorbent containing activated carbon through routine conversation and communications with individuals at the coal-fired power plant that are necessary to ensure coordination and smooth operation of the plant. For example, if the plant were to unilaterally reduce its activated carbon injection rate, or AJG, DTE, CERT, Chem-Mod, and the RC Defendants were to unilaterally reduce the amount of bromine added to the coal, this could hinder the plant's ability to comply with state and federal mercury regulations and/or the certification process for section 45 tax credits. Thus, AJG, DTE, CERT, Chem-Mod, and the RC Defendants coordinate with coal-fired power plants by keeping each other aware of their respective bromine and activated carbon usage rates.

**RESPONSE TO PARAGRAPH 88**

Each Answering Defendant denies the allegations of Paragraph 88 of the TAC.

89.    On information and belief, AJG, DTE, CERT, Chem-Mod, and the RC Defendants discuss with owners and operators of coal-fired power plants at least the following: how they will create the refined coal onsite, the equipment that would be installed, the location and integration of their equipment into the coal conveyance system, how the certification tests would be performed, how the plant operates, the plant layout and equipment, the emissions control equipment, and the mercury control system, such as the activated carbon injection equipment and

the effect that the sorbent comprising activated carbon would have on the test results (emissions reductions), the impact and benefits the refined coal would have on the plant's mercury control strategy, and how best to combine and integrate refined coal into the plant's approach for an optimum solution for compliance (e.g., how best to set the quantities for bromine and activated carbon so as to minimize overall cost and balance of plant effects).

### RESPONSE TO PARAGRAPH 89

Each Answering Defendant denies the allegations of Paragraph 89 of the TAC.

90.    Moreover, one of the benefits of using coal with added bromine and/or bromide at a coal-fired power plant with an activated carbon injection system is that the bromine and/or bromide enhances the performance of the activated carbon.  This results in a reduced need for emission controls (e.g., reducing the quantity of activated carbon that would otherwise be required).  It is reasonable to infer that AJG, DTE, CERT, Chem-Mod, and the RC Defendants are aware of this fact and take it into consideration when marketing their offerings to coal-fired power plants and when negotiating contracts with coal-fired power plants.

### RESPONSE TO PARAGRAPH 90

Each Answering Defendant denies the allegations of Paragraph 90 of the TAC.

91.    For example, AJG CFO Doug Howell has stated: "people have asked what does it really cost to produce this and where does it go? You can see that the materials that we use are $0.80 working from the bottom left, labor and other plant operating costs cost about $0.72 a ton, the utility gets—we pay them rent for putting these plants on their property, or we give them a discount on the coal they produce of about $0.45, and then there's a license fee that goes to Chem-Mod – about $0.30. Now, it's important to also know that not only does the utility—the reason why they participate in these projects is that they've got a financial incentive to participate in it, but they also receive the improved environmental results basically for free and they get a better ash and favorable operating results. So the utility is part of this process and they have a financial incentive and an environment incentive. It's very important for everybody to understand that this technology works to help the utilities solve new emissions standards."

### RESPONSE TO PARAGRAPH 91

Each Answering Defendant responds to the allegations of Paragraph 91 of the TAC that

any quotation is partial and refers to the full transcript or record for the text of any statement

made; and to the extent required, lacks knowledge or information sufficient to form a belief as to

the truth of the allegations in Paragraph 91 of the TAC.

92.    As another example, a refined coal contract between Belle River Fuels LLC (an AJG and Chem-Mod affiliated Refined Coal LLC) and DTE specifically references the reduced quantity of activated carbon sorbent (not elimination) as a benefit of the arrangement.  (Attached as Exhibit F).  At a minimum, this demonstrates that AJG and Belle River Fuels LLC are aware of activated carbon use at coal-fired power plants to which they supply refined coal.  It is further reasonable to infer that these parties are not outliers, but rather that DTE, CERT, Chem-Mod, and the other RC Defendants have similar knowledge and require similar contractual provisions.

### RESPONSE TO PARAGRAPH 92

Each Answering Defendant denies the allegations of Paragraph 92 of the TAC.

93.   In addition, the use of high quantities of activated carbon injection can discolor the fly ash produced by a coal-fired power plant.  This may prevent the plant from selling the fly ash to cement producers, and instead require it to take on the cost of disposing of the fly ash. Providing bromine and/or bromide additives onto the coal combusted at a coal-fired power plant can reduce, the quantity of activated carbon required for mercury capture and thus preserve the plant's ability to sell fly ash.

### RESPONSE TO PARAGRAPH 93

Each Answering Defendant denies the allegations of Paragraph 93 of the TAC.

94.   Chem-Mod advertises that its bromine-containing coal additives improve fly ash saleability.  Thus, Chem-Mod specifically markets its bromine-containing additives to coal-fired power plants that use sorbents comprising activated carbon.  Similarly, the contract between DTE and Belle River Fuels LLC also describes this fly ash benefit.  Because AJG, DTE, CERT, and the RC Defendants work with Chem-Mod and use Chem-Mod, it is reasonable to infer that they are aware of this purported benefit and Chem-Mod's marketing.  It is also reasonable to infer that AJG, DTE, CERT, and the RC Defendants also rely on this knowledge and Chem-Mod's marketing materials when negotiating contracts with coal-fired power plants, and that they similarly target their efforts toward coal-fired power plants that they know use, and will continue to use, activated carbon injection systems.

### RESPONSE TO PARAGRAPH 94

Each Answering Defendant denies the allegations of Paragraph 94 of the TAC.

95.   An activated carbon injection system for mercury control requires an upfront cost and ongoing costs for operation.  Plants with such systems installed operate the systems in order to comply with state and federal regulations regarding mercury emissions.  Were a plant to stop operating its activated carbon injection system, it could face fines that would destroy the economic incentives for dealing with a refined coal provider, or be shut down.

### RESPONSE TO PARAGRAPH 95

Each Answering Defendant denies the allegations of Paragraph 95 of the TAC.

96.   AJG, DTE, CERT, Chem-Mod, and the RC Defendants are aware of state and federal mercury regulations and the economic incentives of coal-fired power plants with activated carbon injection systems.

### RESPONSE TO PARAGRAPH 96

Each Answering Defendant denies the allegations of Paragraph 96 of the TAC.

97.   Thus, AJG, DTE, CERT, Chem-Mod, and the RC Defendants must necessarily know and intend that the coal plants will go on to perform the step of injecting activated carbon.

### RESPONSE TO PARAGRAPH 97

Each Answering Defendant denies the allegations of Paragraph 97 of the TAC.

98.     Alternatively, if AJG, DTE, CERT, Chem-Mod, and/or one of the RC Defendants contend that they somehow avoid learning of a plant's use of sorbent comprising activated carbon, they are acting with willful blindness.

### RESPONSE TO PARAGRAPH 98

Each Answering Defendant denies the allegations of Paragraph 98 of the TAC.

99.     Once AJG, DTE, CERT, Chem-Mod, and/or one of the RC Defendants has provided section 45 certification of qualified emissions reductions for a plant,  the amount of bromine and/or bromide applied to the coal will need to be tailored (chemically adjusted) depending on the ongoing needs of the plant (e.g., when considering a new coal supply that has different chemical properties or is mined from a different location, or operations of the plant change).

### RESPONSE TO PARAGRAPH 99

Each Answering Defendant denies the allegations of Paragraph 99 of the TAC.

100.    When such tailoring occurs, the coal-fired power plant must ensure that it does not cause the plant to emit mercury (or other emissions such as SO2, NOx, and PM)) in excess of state or federal mercury regulations.  The refined coal provider (AJG, DTE, CERT, Chem-Mod, and/or one of the RC Defendants) must ensure that the tailoring will not interfere with its ability to provide section 45 certification.  On information and belief, the parties must keep each other apprised of the bromine, bromide, and activated carbon in use to ensure that they are able to comply with regulatory requirements. For example, plant personnel have requested (communicated to at least some of the refined coal provider Defendants) that the bromine concentration in the refined coal be altered during testing and evaluation of alternative carbon suppliers.

### RESPONSE TO PARAGRAPH 100

Each Answering Defendant denies the allegations of Paragraph 100 of the TAC.

101.    Thus, AJG, DTE, CERT, Chem-Mod, and the RC Defendants must know and intend that the coal plants will go on to perform the step of providing sorbent comprising activated carbon after the refined coal with added HBr, Br2, and/or bromide has been tailored to account for changing circumstances.

### RESPONSE TO PARAGRAPH 101

Each Answering Defendant denies the allegations of Paragraph 101  of the TAC.

102.    Alternatively, if AJG, DTE, CERT, Chem-Mod, and/or one of the RC Defendants contend that they somehow avoid learning of a plant's use of sorbent comprising activated carbon, they are acting with willful blindness.

### RESPONSE TO PARAGRAPH 102

Each Answering Defendant denies the allegations of Paragraph 102 of the TAC.

103.    When AJG, DTE, CERT, Chem-Mod, and/or one of the RC Defendants provides refined coal to a coal plant with an activated carbon injection system, they intend for the plant to continue to operate that system by injecting sorbent comprising activated carbon so that these Defendants may continue to receive the benefits of Section 45 tax credits.

## RESPONSE TO PARAGRAPH 103

Each Answering Defendant denies the allegations of Paragraph 103 of the TAC.

104.   Thus, when AJG, DTE, CERT, Chem-Mod, and/or one of the RC Defendants provides refined coal on the conveyance leading to the combustion chamber of a coal-fired power plant with an activated carbon injection system, AJG, DTE, CERT, Chem-Mod, and the RC Defendants know that this refined coal has been specifically tailored and certified for that plant, and that the provided refined coal has no substantial non-infringing use (i.e., it cannot reasonably be used for purposes other than to be combusted at the plant where sorbent comprising activated carbon will later be injected).

## RESPONSE TO PARAGRAPH 104

Each Answering Defendant denies the allegations of Paragraph 104 of the TAC.

105.   In addition, even if the provided refined coal could have had some non-infringing use, because AJG, DTE, CERT, Chem-Mod, and one of the RC Defendants must sell the refined coal "with the reasonable expectation that it will be used for the purpose of producing steam," and as explained above, the refined coal is only certified for a particular plant (i.e., a plant that uses activated carbon),it is reasonable to infer that they require the coal plant to combust the provided refined coal or at least some significant portion of it in accordance with those expectations, i.e., not  in some non-infringing way.

## RESPONSE TO PARAGRAPH 105

Each Answering Defendant denies the allegations of Paragraph 105 of the TAC.

**ME2C Attempts to Compete in the Market for Mercury Capture Technologies**

106.   ME2C is the commercial extension of the patented technology.

## RESPONSE TO PARAGRAPH 106

Each Answering Defendant denies the allegations of paragraph 106 of the TAC.

107.   MES, Inc. obtained an exclusive license to the '147 patent and pending related applications from the EERC.  Midwest Energy Emissions Corp. later obtained an assignment of the patents-in-suit from the EERC including any rights retained by the EERC to receive past damages, and MES, Inc. agreed to terminate its exclusive license at that time.  Thus, during the time period of alleged infringement, MES, Inc. and/or Midwest Energy Emissions Corp. held all substantial rights in the patents-in-suit.

## RESPONSE TO PARAGRAPH 107

Each Answering Defendant denies the allegations of Paragraph 107 of the TAC.

108.   ME2C develops, markets, and sells products and services that practice the patented technology.

## RESPONSE TO PARAGRAPH 108

Each Answering Defendant denies the allegations of Paragraph 108 of the TAC.

109.    ME2C's product development efforts have been led by named inventor and Chief Technology Officer John Pavlish.  ME2C has developed both sorbent enhancement additives and activated carbon sorbents for practicing the technology described in the patents-in-suit and for practicing other patented methods owned by ME2C.

## RESPONSE TO PARAGRAPH 109

Each Answering Defendant denies the allegations of Paragraph 109 of the TAC.

110.    ME2C has also publicized its patent portfolio and explained the scope of the patented technology through its website, its interactions with customers and potential customers, and through presentations at industry events such as the MEGA Symposium, the Energy, Utility & Environment Conference, Lignite Energy Conference, and the Air Quality Conference. Representatives of Defendants have attended these conferences and received materials from such conferences.

## RESPONSE TO PARAGRAPH 110

Each Answering Defendant denies the allegations of Paragraph 110 of the TAC.

111.    ME2C has attempted to compete in the market for mercury capture technologies.  In particular it attempted to negotiate supply contracts with coal-fired power plants in anticipation of MATS regulations that became effective in 2015 and 2016, and also periodically afterwards as plants re-evaluate their MATS compliance strategies.

## RESPONSE TO PARAGRAPH 111

Each Answering lacks knowledge or information sufficient to form a belief as to the truth

of the matter alleged in paragraph 111 of the TAC, and therefore denies the allegations therein.

112.    However, ME2C it is at an unfair disadvantage with respect to the RC Defendants that encourage power plants to use ME2C's patented technology instead of developing new technologies for refined coal.  These RC Defendants induce power plants to infringe the patents-in-suit by offering the technology at no or artificially low costs to the plant.

## RESPONSE TO PARAGRAPH 112

Each Answering Defendant denies the allegations of paragraph 112 of the TAC.

113.    AJG CFO Douglas Howell has explained, "the reason why [coal-fired power plants] participate in these [Section 45 Tax Credit] projects is that they've got a financial incentive to participate in it, but they also receive the improved environmental results basically for free and they get a better ash and favorable operating results."

## RESPONSE TO PARAGRAPH 113

Each Answering Defendant refers to any referenced quotation for a statement of its

contents; responds that any such quotation is incomplete and therefore misleading; and lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

in paragraph 113 of the TAC and therefore denies same.

28

114.    In addition, because the power plants connected to an Accused RC Facility have decided to infringe ME2C's patents, they now purchase various materials from different suppliers at artificially deflated prices and employ them in a manner that infringes ME2C's patents.

## RESPONSE TO PARAGRAPH 114

Each Answering Defendant denies the allegations of paragraph 114 of the TAC.

115.    Despite these difficulties, ME2C has sold its products and services to various power plants throughout the country.

## RESPONSE TO PARAGRAPH 115

Each Answering Defendant denies the allegations of paragraph 115 of the TAC.

**ME2C's Interactions with Defendant Vistra**

116.    In 2012, ME2C contracted with Luminant Generation Company LLC ("Luminant") to perform testing of the patented methods at various Luminant power plants.

## RESPONSE TO PARAGRAPH 116

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 116 of the TAC, and therefore denies the allegations therein.

117.    At least as early as 2012, ME2C informed Luminant of its patent portfolio, including the '147 patent and parent applications to the '114 patent.

## RESPONSE TO PARAGRAPH 117

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 117 of the TAC, and therefore denies the allegations therein.

118.    By 2012, ME2C had also explained that its patents cover the use of halogen-based sorbent enhancement additives and backend carbon-based sorbents.

## RESPONSE TO PARAGRAPH 118

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 118 of the TAC, and therefore denies the allegations therein.

119.    After successfully testing its patented technology at Luminant plants, Luminant signed a Master Supply Agreement with ME2C.

## RESPONSE TO PARAGRAPH 119

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 119 of the TAC, and therefore denies the allegations therein.

120.   Luminant is now a subsidiary of Vistra.

## RESPONSE TO PARAGRAPH 120

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 120 of the TAC, and therefore denies the allegations therein.

121.   Through Luminant, ME2C has informed Vistra of the patents-in-suit and also explained that its patents cover the use of halogen-based sorbent enhancement additives and backend carbon-based sorbents.

## RESPONSE TO PARAGRAPH 121

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 121 of the TAC, and therefore denies the allegations therein.

122.   ME2C also attempted to develop business with other affiliates of Vistra.  For example, ME2C has had various interactions with Vistra subsidiary Dynegy Inc. and its subsidiaries ("Dynegy").

## RESPONSE TO PARAGRAPH 122

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 122 of the TAC, and therefore denies the allegations therein.

123.   Beginning in 2011, ME2C and Dynegy evaluated the ME2C process for use at the Joppa Steam Plant in MasTAC county Illinois.

## RESPONSE TO PARAGRAPH 123

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 123 of the TAC, and therefore denies the allegations therein.

124.    As part of that process, ME2C informed Dynegy of its patent portfolio, including the '147 patent and parent applications to the '114 patent.

## RESPONSE TO PARAGRAPH 124

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 124 of the TAC, and therefore denies the allegations therein.

125.    ME2C has informed Dynegy that its patents cover the use of halogen-based sorbent enhancement additives and backend carbon-based sorbents.

## RESPONSE TO PARAGRAPH 125

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 125 of the TAC, and therefore denies the allegations therein.

126.    Although the test results were favorable, Dynegy ultimately determined not to sign a supply agreement with ME2C.

## RESPONSE TO PARAGRAPH 126

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 126 of the TAC, and therefore denies the allegations therein.

127.    Throughout 2014 and 2015, ME2C had further interactions with Dynegy and conducted a further demonstration at the Edwards Power Station in Peoria county Illinois.

## RESPONSE TO PARAGRAPH 127

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 127 of the TAC, and therefore denies the allegations therein.

128.    Again, Dynegy declined to sign a supply agreement with ME2C.

## RESPONSE TO PARAGRAPH 128

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 128 of the TAC, and therefore denies the allegations therein.

129.    In 2018, Vistra acquired Dynegy.

**RESPONSE TO PARAGRAPH 129**

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 129 of the TAC, and therefore denies the allegations therein.

130.    That same year, Vistra requested that ME2C again perform a demonstration at the Joppa Steam Plant.

**RESPONSE TO PARAGRAPH 130**

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 130 of the TAC, and therefore denies the allegations therein.

131.    ME2C informed Vistra of its patent portfolio and also explained that its patents cover the use of halogen-based sorbent enhancement additives and backend carbon-based sorbents.

**RESPONSE TO PARAGRAPH 131**

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 131 of the TAC, and therefore denies the allegations therein.

132.    ME2C also attempted to negotiate a supply agreement with Vistra for the Joppa Steam Plant.

**RESPONSE TO PARAGRAPH 132**

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 132 of the TAC, and therefore denies the allegations therein.

133.    However, the Joppa Steam Plant was receiving refined coal treated with halogen from a refined coal producer.

**RESPONSE TO PARAGRAPH 133**

The Answering Defendants lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 133 of the TAC, and therefore deny the allegations therein.

134.    Joppa Refined Coal LLC, has and continues to provide refined coal to the Joppa Steam Plant.  AJG, Chem-Mod and Joppa Refined Coal LLC provide financial, technical, and contractual incentives to Vistra to burn refined coal as part of their scheme to collect Section 45 Tax Credits.

## RESPONSE TO PARAGRAPH 134

Defendant Joppa Refined Coal admits that it has provided refined coal  to the Joppa

Steam plant; lacks knowledge or information sufficient to form a belief as to the truth of the

remaining allegations of paragraph 134 of the TAC and therefore denies same.  Each of the other

Answering Defendants lacks knowledge or information sufficient to form a belief as to the truth

of the matter alleged in paragraph 134 of the TAC, and therefore denies the allegations therein.

135.    The Joppa Steam Plant is owned and/or operated by Vistra in the United States.

## RESPONSE TO PARAGRAPH 135

Each of the Answering Defendants lacks knowledge or information sufficient to form a

belief as to the truth of the matter alleged in paragraph 135 of the TAC, and therefore denies the

allegations therein.

136.    Vistra negotiates and/or procures products and/or services related to mercury control for use at the Joppa Steam Plant.

## RESPONSE TO PARAGRAPH 136

Each of the Answering Defendants lacks knowledge or information sufficient to form a

belief as to the truth of the matter alleged in paragraph 136 of the TAC, and therefore denies the

allegations therein.

137.    The Joppa Steam Plant has burned and/or burns coal that has added bromine and/or bromide.

## RESPONSE TO PARAGRAPH 137

Each of the Answering Defendants lacks knowledge or information sufficient to form a

belief as to the truth of the matter alleged in paragraph 137 of the TAC, and therefore denies the

allegations therein.

138.    The Joppa Steam Plant combusts coal along with added bromine and/or bromide.

## RESPONSE TO PARAGRAPH 138

Each of the Answering Defendants lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 138 of the TAC, and therefore denies the allegations therein.

139.    The Joppa Steam Plant injects sorbent material comprising activated carbon downstream of the combustion chamber.

## RESPONSE TO PARAGRAPH 139

Each of the Answering Defendants lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 139 of the TAC, and therefore denies the allegations therein.

140.    The Joppa Steam Plant contracts with Joppa Refined Coal LLC to obtain coal with added bromine and/or bromide.

## RESPONSE TO PARAGRAPH 140

Defendant Joppa LLC admits that it has entered into contractual arrangements to provide refined coal to the Joppa Steam Plant.  Each other Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 140 of the TAC, and therefore denies the allegations therein.

141.    The Joppa Steam Plant uses added bromine and/or bromide and activated carbon to ensure compliance with federal and state MATS regulations.

## RESPONSE TO PARAGRAPH 141

Each of the Answering Defendants  lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 141 of the TAC, and therefore denies the allegations therein.

142.    In addition to the foregoing, on July 17, 2019, ME2C provided notice to Vistra of the '114 and '147 patents and of the acts constituting infringement by filing the original complaint in this case.

## RESPONSE TO PARAGRAPH 142

Each of the Answering Defendants denies the allegations of paragraph 142 of the TAC.

143.    It is reasonable to infer that Vistra would have reviewed the prosecution history for the '114 and '147 patents and would be generally aware of other patents in the same family.

## RESPONSE TO PARAGRAPH 143

Each of the Answering Defendants denies the allegations of paragraph 143 of the TAC.

144.    On June 29, 2020, ME2C provided notice to Vistra of the '225, '517, and '430 patents and of the acts constituting infringement by providing Vistra with a draft amended complaint.

## RESPONSE TO PARAGRAPH 144

Each of the Answering Defendants denies the allegations of paragraph 144 of the TAC.

145.    In 2011, ME2C met with officials at AEP to discuss ME2C's mercury capture products and services.

## RESPONSE TO PARAGRAPH 145

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 145 of the TAC, and therefore denies the allegations therein.

146.    In or around that meeting, ME2C informed AEP of its patent portfolio.

## RESPONSE TO PARAGRAPH 146

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 146 of the TAC, and therefore denies the allegations therein.

147.    The parties did not enter into a commercial agreement at that time.

## RESPONSE TO PARAGRAPH 147

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 147 of the TAC, and therefore denies the allegations therein.

148.    In 2013, representatives of AEP attended the Air Quality 9 conference and received a presentation on the patented technology which identified the '147 patent and parent applications to the '114 patent.

## RESPONSE TO PARAGRAPH 148

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 148 of the TAC, and therefore denies the allegations therein.

149.    In 2016, ME2C and AEP discussed potential work related to AEP's H.W. Pirkey Power Plant.

### RESPONSE TO PARAGRAPH 149

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 149 of the TAC, and therefore denies the allegations therein.

150.    ME2C and AEP, including its subsidiary Southwestern Electric Power Co. contracted for ME2C to provide demonstration testing at the H.W. Pirkey Power Plant.

### RESPONSE TO PARAGRAPH 150

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 150 of the TAC, and therefore denies the allegations therein.

151.    Through those interactions, ME2C again reminded AEP of its patent portfolio and explained that its patents covered the use of halogen-based sorbent enhancement additives and backend carbon-based sorbents.

### RESPONSE TO PARAGRAPH 151

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 151 of the TAC, and therefore denies the allegations therein.

152.    ME2C specifically identified the '147 patent and parent applications to the '114 patent to AEP.

### RESPONSE TO PARAGRAPH 152

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 152 of the TAC, and therefore denies the allegations therein.

153.   Between 2016 and 2018, ME2C explained its technology to AEP, provided technical and economic presentations, and performed demonstration testing at AEP's H.W. Pirkey Power Plant in Harrison county, Texas.

## RESPONSE TO PARAGRAPH 153

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 153 of the TAC, and therefore denies the allegations therein.

154.   The H.W. Pirkey Power Plant is owned and/or operated by AEP in the United States.

## RESPONSE TO PARAGRAPH 154

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 154 of the TAC, and therefore denies the allegations therein.

155.   AEP negotiates for and/or procures products and/or services related to mercury control for use at the H.W. Pirkey Power Plant.

## RESPONSE TO PARAGRAPH 155

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 155 of the TAC, and therefore denies the allegations therein.

156.   The H.W. Pirkey Power Plant combusts coal along with added bromine and/or bromide.

## RESPONSE TO PARAGRAPH 156

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 156 of the TAC, and therefore denies the allegations therein.

157.   The H.W. Pirkey Power Plant injects sorbent material comprising activated carbon downstream of the combustion chamber.

## RESPONSE TO PARAGRAPH 157

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 157 of the TAC, and therefore denies the allegations therein.

158.    The H.W. Pirkey Power Plant employs halogenated PAC (Powdered Activated Carbon) sorbent injection as a form of mercury control.

### RESPONSE TO PARAGRAPH 158

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 158 of the TAC, and therefore denies the allegations therein.

159.    The H.W. Pirkey Power Plant uses added bromine and/or bromide and activated carbon to ensure compliance with federal MATS regulations.

### RESPONSE TO PARAGRAPH 159

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 159 of the TAC, and therefore denies the allegations therein.

160.    In addition to the foregoing, on July 17, 2019, ME2C provided notice to AEP of the '114 and '147 patents and of the acts constituting infringement by filing the original complaint in this case.

### RESPONSE TO PARAGRAPH 160

Each Answering Defendant denies the allegations of Paragraph 160 of the TAC.

161.    It is reasonable to infer that AEP would have reviewed the prosecution history for the '114 and '147 patents and would be generally aware of other patents in the same family.

### RESPONSE TO PARAGRAPH 161

Each Answering Defendant denies the allegations of Paragraph 161 of the TAC.

162.    On June 29, 2020, ME2C provided notice to AEP of the '225, '517, and '430 patents and of the acts constituting infringement by providing AEP with a draft amended complaint.

### RESPONSE TO PARAGRAPH 162

Each Answering Defendant denies the allegations of Paragraph 162 of the TAC.

163.    On July 15, 2020, ME2C again provided notice to AEP of the patents-in-suit and of the acts constituting infringement by filing the second amended complaint.

### RESPONSE TO PARAGRAPH 163

Each Answering Defendant denies the allegations of Paragraph 163 of the TAC.

164.    On September 21, 2020, ME2C provided notice to AEP of the patents-in-suit and of the acts constituting infringement by providing AEP with a draft second amended complaint.

### RESPONSE TO PARAGRAPH 164

Each Answering Defendant denies the allegations of Paragraph 164 of the TAC.

165.    Despite knowledge of ME2C's patents, AEP has elected to infringe ME2C's patents at its coal-fired power plants including at the H.W. Pirkey Power Plant.

### RESPONSE TO PARAGRAPH 165

Each Answering Defendant denies the allegations of Paragraph 165 of the TAC.

166.    In 2012, ME2C had various interactions with NRG to discuss ME2C's patented technology.

### RESPONSE TO PARAGRAPH 166

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 166 of the TAC, and therefore denies the allegations therein.

167.    Over the next few years, NRG evaluated its options for coming into compliance with upcoming MATS regulations.

### RESPONSE TO PARAGRAPH 167

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 167 of the TAC, and therefore denies the allegations therein.

168.    During that time, ME2C identified its patents to NRG and explained the operation of its patented technology.

### RESPONSE TO PARAGRAPH 168

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 168 of the TAC, and therefore denies the allegations therein.

169.    The parties also considered having ME2C perform various demonstrations of the technology at NRG power plants.

### RESPONSE TO PARAGRAPH 169

Each Answering Defendant denies the allegations of paragraph 169.

170.    In addition to the foregoing, on July 17, 2019, ME2C provided notice to NRG of the '114 and '147 patents and of the acts constituting infringement by filing the original complaint in this case.

## RESPONSE TO PARAGRAPH 170

Each Answering Defendant denies the allegations of Paragraph 170 of the TAC.

171.    It is reasonable to infer that NRG would have reviewed the prosecution history for the '114 and '147 patents and would be generally aware of other patents in the same family.

## RESPONSE TO PARAGRAPH 171

Each Answering Defendant denies the allegations of Paragraph 171 of the TAC.

172.    On June 29, 2020, ME2C provided notice to NRG of the '225, '517, and '430 patents and of the acts constituting infringement by providing NRG with a draft amended complaint.

## RESPONSE TO PARAGRAPH 172

Each Answering Defendant denies the allegations of Paragraph 172 of the TAC.

173.    On July 15, 2020, ME2C again provided notice to NRG of the patents-in-suit and of the acts constituting infringement by filing the second amended complaint.

## RESPONSE TO PARAGRAPH 173

Each Answering Defendant denies the allegations of Paragraph 173 of the TAC.

174.    On September 21, 2020, ME2C provided notice to NRG of the patents-in-suit and of the acts constituting infringement by providing NRG with a draft second amended complaint.

## RESPONSE TO PARAGRAPH 174

Each Answering Defendant denies the allegations of Paragraph 174 of the TAC.

175.    Nonetheless, NRG elected to infringe ME2C's patents.

## RESPONSE TO PARAGRAPH 175

Each Answering Defendant denies the allegations of Paragraph 175 of the TAC.

176.    Talen owns and/or operates the Colstrip and other power plants.

## RESPONSE TO PARAGRAPH 176

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 176 of the TAC, and therefore denies the allegations therein.

177.    Prior to 2015 those plants were owned and/or operated by PPL.

## RESPONSE TO PARAGRAPH 177

Each Answering Defendant lacks knowledge or information sufficient to form a belief as

to the truth of the matter alleged in paragraph 177 of the TAC, and therefore denies the

allegations therein.

178.    In 2013, representatives of PPL attended the Air Quality 9 conference and received a presentation on the patented technology which identified the '147 patent and parent applications to the '114 patent.

## RESPONSE TO PARAGRAPH 178

Each Answering Defendant lacks knowledge or information sufficient to form a belief as

to the truth of the matter alleged in paragraph 178 of the TAC, and therefore denies the

allegations therein.

179.    In 2013, ME2C met with PPL employees tasked with understanding and designing mercury control procedures, including Jon Boucher, Bill Neumiller, and Steve Craig, to discuss the use of ME2C's patented technology at power plants in the PPL fleet, including Colstrip and other plants.

## RESPONSE TO PARAGRAPH 179

Each Answering Defendant lacks knowledge or information sufficient to form a belief as

to the truth of the matter alleged in paragraph 179 of the TAC, and therefore denies the

allegations therein.

180.    ME2C specifically identified the '147 patent and the parent patent to the '114 patent to at least Jon Boucher, and explained that these patents covered the use of halogen-based sorbent enhancement additives and backend carbon-based sorbents.

## RESPONSE TO PARAGRAPH 180

Each Answering Defendant lacks knowledge or information sufficient to form a belief as

to the truth of the matter alleged in paragraph 180 of the TAC, and therefore denies the

allegations therein.

181.    In 2015, PPL spun off a portion of its business to form Talen.

## RESPONSE TO PARAGRAPH 181

Each Answering Defendant lacks knowledge or information sufficient to form a belief as

to the truth of the matter alleged in paragraph 181 of the TAC, and therefore denies the

allegations therein.

182.    At least Jon Boucher has remained with Talen.

## RESPONSE TO PARAGRAPH 182

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matter alleged in paragraph 182 of the TAC, and therefore denies the allegations therein.

183.    In addition, operation of a coal-fired power plant can be dangerous and complicated, requiring a team of qualified engineers.  Similarly, ensuring compliance with mercury capture regulations requires managing complex chemical reactions occurring at the plant.  Accordingly, it is reasonable to infer that even when Talen took over control of the plants at issue, it would have retained additional individuals knowledgeable of plant operations and mercury control processes at the plants.  Thus, it is likely that at least some of those additional individuals that met with and/or received information about ME2C's patented technology would have remained with Talen as of 2015, or would have shared information related to mercury control at the plants with other Talen personnel and management as Talen is now responsible for complying with state and federal mercury regulations..

## RESPONSE TO PARAGRAPH 183

Each Answering Defendant admits that operation of a coal-fired power plant requires a team of qualified engineers; and denies the remaining allegations of paragraph 183.

184.    In addition to the foregoing, on July 17, 2019, ME2C provided notice to Talen of the '114 and '147 patents and of the acts constituting infringement by filing the original complaint in this case.

## RESPONSE TO PARAGRAPH 184

Each Answering Defendant denies the allegations of Paragraph 184 of the TAC.

185.    It is reasonable to infer that Talen would have reviewed the prosecution history for the '114 and '147 patents and would be generally aware of other patents in the same family.

## RESPONSE TO PARAGRAPH 185

Each Answering Defendant denies the allegations of Paragraph 185 of the TAC.

186.    On June 29, 2020, ME2C provided notice to Talen of the '225, '517, and '430 patents and of the acts constituting infringement by providing Talen with a draft amended complaint.

## RESPONSE TO PARAGRAPH 186

Each Answering Defendant denies the allegations of Paragraph 186 of the TAC.

187.    On July 15, 2020, ME2C again provided notice to Talen of the patents-in-suit and of the acts constituting infringement by filing the second amended complaint.

## RESPONSE TO PARAGRAPH 187

Each Answering Defendant denies the allegations of Paragraph 187 of the TAC.

188.    On September 21, 2020, ME2C provided notice to Talen of the patents-in-suit and of the acts constituting infringement by providing Talen with a draft second amended complaint.

## RESPONSE TO PARAGRAPH 188

Each Answering Defendant denies the allegations of Paragraph 188 of the TAC.

189.    Despite being aware of ME2C's patents, Talen has elected to infringe those patents.

## RESPONSE TO PARAGRAPH 189

Each Answering Defendant denies the allegations of Paragraph 189 of the TAC.

190.    AJG, DTE, CERT, Chem-Mod, and RC Defendants have worked with the EERC to conduct testing related to their coal treatment processes.  For example, they have relied on the EERC to demonstrate that the processes employed by refined coal facilities qualify for Section 45 Tax Credits.  Through those interactions, it is likely that they became aware of the patents-in-suit and/or related applications as they were initially developed by the inventors while they were at the EERC.

## RESPONSE TO PARAGRAPH 190

Each Answering Defendant admits that it has submitted coal to EERC for testing, and

denies the remaining allegations of paragraph 190 of the TAC.

191.    In addition, at least Chem-Mod participates in conferences where ME2C describes its patented technology.  For example, Chem-Mod president Murray F. Abbott attended the 2018 MEGA conference where ME2C described the technology at issue in this case and explained that it was covered by its patents.  ME2C also referred attendees to its website which has additional information regarding its patents.

## RESPONSE TO PARAGRAPH 191

Each Answering Defendant lacks knowledge or information sufficient to form a belief as

to the truth of the matter alleged in paragraph 191 of the TAC, and therefore denies the

allegations therein.

192.    Given the close relationship between Chem-Mod, AJG, DTE, CERT, and the RC Defendants, those Defendants know of ME2C's patented technology and patent portfolio and/or are willfully blind to ME2C's patents.

## RESPONSE TO PARAGRAPH 192

Each Answering Defendant denies the allegations of Paragraph 192 of the TAC.

193.    In addition, ME2C is one of a small number of companies that competes with Chem-Mod, AJG, DTE, CERT, and the RC Defendants to provide bromine-containing additives for

mercury control.  It is reasonable to infer that these companies have done at least some due diligence on potential competitors.  During that process, it is likely that they would have discovered the patents-in-suit from the U.S. Patent Office, Google Patents, ME2C publications and product literature, and/or ME2C's website.

### RESPONSE TO PARAGRAPH 193

Each Answering Defendant denies the allegations of Paragraph 193 of the TAC.

194.    For example, prior to filing this lawsuit, AJG acknowledged that it could face claims of patent infringement for its refined coal activities.  This indicates that it has performed some due diligence to identify patents potentially relevant to its business. It has advertised to investors and/or potential investors that the risk of a patent infringement finding is mitigated by the fact that Chem-Mod has patent infringement insurance.  This indicates that Chem-Mod has also performed some due diligence to identify patents potentially relevant to its business.  Given the limited number of participants in the relevant market, it is reasonable to infer that Chem-Mod's decision to purchase patent infringement insurance, and AJG's reliance on that insurance, were motivated at least in part by their awareness of ME2C's patents and the risk of infringing those patents.

### RESPONSE TO PARAGRAPH 194

Each Answering Defendant denies the allegations in paragraph 194 of the TAC.

195.    Because CERT, DTE, and the RC Defendants have emulated AJG's business model and also use Chem-Mod as a supplier, it is reasonable to infer that these parties would have also been aware of ME2C's patents either as a result of their own due diligence, or as part of their interactions with Chem-Mod and/or AJG.

### RESPONSE TO PARAGRAPH 195

Each Answering Defendant denies the allegations in paragraph 195 of the TAC.

196.    Given that a company's internal knowledge and motivation for purchasing liability insurance is often not publicly available, further evidence regarding these Defendants' pre-suit knowledge of the patents-in-suit is likely solely within their possession and available to ME2C only through discovery.

### RESPONSE TO PARAGRAPH 196

Each Answering Defendant denies the allegations in paragraph 196 of the TAC.

197.    In addition to the foregoing, on July 17, 2019, ME2C provided notice to AJG, DTE, CERT, Chem-Mod, and RC Defendants[1] of the '114 and '147 patents and of the acts constituting infringement by filing the original complaint in this case.

---

[1] Brandon Shores Coaltech, LLC, Senescence Energy Products, LLC, Rutledge Products, LLC, Alistar Enterprises, LLC, Springhill Resources LLC, Buffington Partners LLC, Bascobert (A) Holdings LLC, Larkwood Energy LLC, Cottbus Associates LLC, George Neal South Refined Coal, LLC, George Neal North Refined Coal, LLC, Superior Fuels Company 1, LLC, Erie Fuels Company, LLC, and Huron Fuels Company, LLC,  have been added to this case in subsequent

### RESPONSE TO PARAGRAPH 197

Each Answering Defendant admits that the original complaint in this action was filed on

July 17, 2019, and denies the remaining allegations of paragraph 197 of the TAC.

198.    It is reasonable to infer that AJG, DTE, CERT, Chem-Mod, and RC Defendants would have reviewed the prosecution history for the '114 and '147 patents and would be generally aware of other patents in the same family.

### RESPONSE TO PARAGRAPH 198

Each Answering Defendant denies the allegations in paragraph 198 of the TAC.

199.    On June 29, 2020, ME2C provided notice to AJG, DTE, CERT, Chem-Mod, and RC Defendants of the '225, '517, and '430 patents and of the acts constituting infringement by providing AJG, DTE, CERT, Chem-Mod, and RC Defendants  with a draft amended complaint.

### RESPONSE TO PARAGRAPH 199

Each Answering Defendant denies the allegations in paragraph 199 of the TAC.

200.    On July 15, 2020, ME2C again provided notice to AJG, DTE, CERT, Chem-Mod, and RC Defendants of the patents-in-suit and of the acts constituting infringement by filing the second amended complaint.

### RESPONSE TO PARAGRAPH 200

Each Answering Defendant denies the allegations in paragraph 200 of the TAC.

201.    On September 21, 2020, ME2C provided notice to AJG, DTE, CERT, Chem-Mod, and RC Defendants  of the patents-in-suit and of the acts constituting infringement by providing AJG, DTE, CERT, Chem-Mod, and RC Defendants with a draft second amended complaint.

### RESPONSE TO PARAGRAPH 201

Each Answering Defendant denies the allegations in paragraph 201 of the TAC.

202.    Each of the RC Defendants have been operated by the same small groups of individuals. These groups of individuals include at least Jeff Green and Leah Schatt with respect to CERT and CERT-affiliated RC Defendants (including Senescence Energy Products, LLC, Rutledge Products, LLC, Alistar Enterprises, LLC, Springhill Resources LLC, Buffington Partners LLC, Bascobert (A) Holdings LLC, Larkwood Energy LLC, and Cottbus Associates LLC), Eddie Turner, Marc Levine, Rick Thomas, Vince Inendino and Sally Batanian with respect to AJG and the AJG-affiliated RC Defendants (including AJG Iowa Refined Coal LLC; Brandon Shores Coaltech, LLC; Joppa Refined Coal LLC; Louisa Refined Coal, LLC; Thomas Hill Refined Coal LLC; Wagner Coaltech LLC; and Walter Scott Refined Coal LLC, George Neal South Refined Coal, LLC, George Neal North Refined Coal, LLC), and Kerry Kaminski, Christopher Berkimer, and Katie Panczak with respect to DTE and the DTE-affiliated RC Defendants (including Arbor

---

amendments to the complaint and would at least have notice of ME2C's claims based on receiving copies of those complaints.

Fuels Company, LLC; Belle River Fuels Company, LLC; Portage Fuels Company, LLC; Superior Fuels Company 1, LLC; Erie Fuels Company, LLC; Huron Fuels Company, LLC).

### RESPONSE TO PARAGRAPH 202

Each Answering Defendant denies the allegations set forth in paragraph 202 of the TAC as it pertains to itself, and lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 202 with respect to the other Answering Defendants, and therefore denies same.

203.    On information and belief, these individuals have been contacted regarding this case and are aware of the issues involved in this litigation.

### RESPONSE TO PARAGRAPH 203

Each Answering Defendant denies the allegations in paragraph 203 of the TAC as it pertains to itself, and lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 203 with respect to the other Answering Defendants, and therefore denies same.

204.    On information and belief, these individuals have knowledge of ME2C's patents, claims and the conduct accused of infringement in this case.  In the alternative, those individuals have been willfully blind to those facts by taking steps to deliberately avoid learning of facts alleged in ME2C's complaint.  Accordingly, for any RC Defendant that has been included in an amendment to ME2C's complaint, that RC Defendant has already been aware of: ME2C's patents; ME2C's claims; the conduct accused of infringement by ME2C; and the fact that ME2C has expressed its intent to name the remaining John Doe Defendants for engaging in the same conduct accused with respect to the named Defendants, at least as of the filing of the original complaint in this case.

### RESPONSE TO PARAGRAPH 204

Each Answering Defendant denies the allegations in paragraph 204 of the TAC.

205.    Despite being aware of ME2C's patents, AJG, DTE, CERT, Chem-Mod, and RC Defendants have continued to infringe.

### RESPONSE TO PARAGRAPH 205

Each Answering Defendant denies the allegations in paragraph 205 of the TAC.

206.    The power plants connected to an Accused RC Facility each operate at least one coal-fired power plant where they combust coal in a combustion chamber with bromine and/or bromide that has been added to the coal and/or that has been provided to the combustion chamber, and where they inject a sorbent material comprising activated carbon downstream of the combustion chamber (the "Accused Coal Plants").  The Accused Coal Plants are not limited to the specifically named, exemplary coal plants named above.

## RESPONSE TO PARAGRAPH 206

Each Answering Defendant denies the allegations in paragraph 206 of the TAC.

207.    In doing so, the power plants connected to an Accused RC Facility perform the methods claimed by the patents-in-suit, and thus directly infringe the patents-in-suit.

## RESPONSE TO PARAGRAPH 207

Each Answering Defendant denies the allegations in paragraph 207 of the TAC.

208.    As the parent of the other NRG entities, NRG Energy Inc. induces the other NRG entities to perform the steps of the patented methods.

## RESPONSE TO PARAGRAPH 208

The allegations in paragraph 208 of the TAC are directed to a claim against a defendant

that has been dismissed with prejudice from this action, and therefore no response is required.

To the extent a response is required, each Answering Defendant denies the allegations of

paragraph 208 of the TAC.

209.    On information and belief and based on ME2C's past business encounters with NRG, NRG Energy Inc. does so by exercising control over subsidiaries, providing technical, administrative, logistical and financial services to subsidiaries, and/or negotiating standard form or bulk agreements for products and services related to mercury control.  For example, NRG Energy Inc. negotiates or exercises veto power over decisions to sign supply contracts for activated carbon and bromine-containing additives.  In so doing, NRG Energy Inc. takes part in the decisions regarding supply contracts and influences the other NRG entities to select suppliers for the plant, including those that provide bromine-containing additives and activated carbon.

## RESPONSE TO PARAGRAPH 209

Each Answering Defendant lacks knowledge or information sufficient to form a belief as

to the truth of the matter alleged in paragraph 209 of the TAC, and therefore denies the

allegations therein.

210.    As the parent of the other Talen entities, Talen Energy Corporation induces the other Talen entities to perform the steps of the patented methods.

## RESPONSE TO PARAGRAPH 210

The allegations in paragraph 210 of the TAC are directed to a claim against a defendant

that has been dismissed with prejudice from this action, and therefore no response is required.

To the extent a response is required, each Answering Defendant denies the allegations of

paragraph 210 of the TAC.

211.    On information and belief and based on ME2C's business encounters with PPL and the fact that Talen retained at least some PPL employees, Talen Energy Corporation does so by exercising control over subsidiaries, providing technical, administrative, logistical and financial services to subsidiaries, and/or negotiating standard form or bulk agreements for products and services related to mercury control.  For example, Talen Energy Corporation negotiates or exercises veto power over decisions to sign supply contracts for activated carbon and bromine-containing additives.  In so doing, Talen Energy Corporation takes part in the decisions regarding supply contracts and influences the other Talen entities to select suppliers for the plant, including those that provide bromine-containing additives and activated carbon.

## RESPONSE TO PARAGRAPH 211

Each Answering Defendant lacks knowledge or information sufficient to form a belief as

to the truth of the matter alleged in paragraph 211 of the TAC, and therefore denies the

allegations therein.

212.    AJG, DTE, CERT, Chem-Mod, and the RC Defendants operate RC facilities that receive coal, add bromine and/or bromide such as $CaBr_2$ to the coal, and then provide that "refined" coal to a coal-fired power plant that injects a sorbent material comprising activated carbon downstream of the combustion chamber (the "Accused RC Facilities").

## RESPONSE TO PARAGRAPH 212

Each Answering Defendant denies the allegations of paragraph 212 insofar as it pertains

to that Answering Defendant, and lacks knowledge or information sufficient to form a belief as

to the truth of the allegations of paragraph 212 as they pertain to any other defendant.

213.    Each of Arthur J. Gallagher & Co., Gallagher Clean Energy, LLC, and AJG Coal, LLC; DTE REF Holdings, LLC, DTE REF Holdings II LLC; CERT Coal Holdings LLC, CERT Holdings LLC, CERT Holdings 2018, LLC, CERT Operations LLC, CERT Operations II LLC, CERT Operations III LLC, CERT Operations IV LLC, CERT Operations V LLC, CERT Operations RCB LLC; AJG Iowa Refined Coal LLC, Joppa Refined Coal LLC, Thomas Hill Refined Coal LLC, Wagner Coaltech LLC, Walter Scott Refined Coal LLC, Louisa Refined Coal, LLC, Belle River Fuels Company, LLC, Arbor Fuels Company, LLC, Portage Fuels Company, LLC, Brandon Shores Coaltech, LLC, Senescence Energy Products, LLC, Rutledge Products, LLC, Alistar Enterprises, LLC, Springhill Resources LLC, Buffington Partners LLC, Bascobert (A) Holdings LLC, Larkwood Energy LLC, Cottbus Associates LLC, George Neal South Refined Coal, LLC, George Neal North Refined Coal, LLC, Superior Fuels Company 1, LLC, Erie Fuels Company, LLC, Huron Fuels Company, LLC, and John Doe LLCs operate at least one Accused RC Facility either by directly owning the facility, directly controlling the facility, or indirectly exercising control of the facility through a subsidiary that is either named above or referred to as a John Doe LLC.  For example, Arthur J. Gallagher & Co. owns and controls Walter Scott Refined Coal LLC which directly operates a refined coal facility at a power plant that directly infringes by supplying bromine-containing refined coal to a combustion chamber and injecting activated carbon sorbent downstream of the combustion chamber.

## RESPONSE TO PARAGRAPH 213

Each Answering Defendant denies the allegations in paragraph 213 of the TAC.

214.    At least CERT Operations IV LLC, CERT Operations V LLC, CERT Operations RCB LLC; AJG Iowa Refined Coal LLC, Joppa Refined Coal LLC, Thomas Hill Refined Coal LLC, Wagner Coaltech LLC, Walter Scott Refined Coal LLC, Louisa Refined Coal, LLC, Belle River Fuels Company, LLC, Arbor Fuels Company, LLC, Portage Fuels Company, LLC, Brandon Shores Coaltech, LLC, Senescence Energy Products, LLC, Rutledge Products, LLC, Alistar Enterprises, LLC, and Springhill Resources LLC, Buffington Partners LLC, Bascobert (A) Holdings LLC, Larkwood Energy LLC, Cottbus Associates LLC, George Neal South Refined Coal, LLC, George Neal North Refined Coal, LLC, Superior Fuels Company 1, LLC, Erie Fuels Company, LLC, Huron Fuels Company, LLC,  each directly operated and operate an Accused RC Facility that provides bromine-containing refined coal to a coal plant that directly infringes by combining the refined coal provided by those companies with use of activated carbon sorbents downstream of the combustion chamber.  Those entities also perform the associated post-emission control section 45 testing.

## RESPONSE TO PARAGRAPH 214

Each Answering Defendant denies the allegations in paragraph 214 of the TAC.

215.    Chem-Mod provides chemicals and/or refined coal to at least some of the Accused Coal Plants and Accused RC Facilities.

## RESPONSE TO PARAGRAPH 215

Each Answering Defendant denies the allegations of paragraph 215 of the TAC as it

pertains to itself, and lacks knowledge or information sufficient to form a belief as to the truth of

the allegations of paragraph 215 with respect to the other Answering Defendants, and therefore

denies same.

216.    Chem-Mod also assists in operating the Accused Coal Plants and Accused RC Facilities in connection with administering the chemicals supplied by Chem-Mod.

## RESPONSE TO PARAGRAPH 216

Each Answering Defendant denies the allegations of paragraph 216.

217.    Given the location and operation of the Accused RC Facilities and the contractual relationships between Accused RC Facilities and associated coal-fired power plants, the refined coal provided by each Accused RC Facility has no substantial non-infringing use.

## RESPONSE TO PARAGRAPH 217

Each Answering Defendant denies the allegations of paragraph 217.

218.    In addition, AJG, DTE, CERT, Chem-Mod, and the RC Defendants provide financial incentives to operators of coal-fired power plants to participate in a Section 45 Tax Credit scheme.

## RESPONSE TO PARAGRAPH 218

Each Answering Defendant denies the allegations of paragraph 218.

219.    AJG, DTE, CERT, Chem-Mod, and the RC Defendants condition participation in an activity or receipt of a benefit, i.e., the financial benefits of participating in the Section 45 Tax Credit scheme and the technical and environmental benefits of using refined coal, upon performance of a step or steps of a patented method, i.e., the combusting of coal with added bromine and/or bromide, and they establish the manner or timing of that performance by requiring the power plant to use the refined coal and by providing the refined coal directly onto conveyances leading to the combustor.

## RESPONSE TO PARAGRAPH 219

Each Answering Defendant denies the allegations of paragraph 219.

220.    AJG, DTE, and CERT, directly and in concert with their subsidiaries including Chem-Mod and the RC Defendants, have engaged in a pattern of conduct intended to induce and/or contribute to the infringement of others, including the power plants connected to an Accused RC Facility and the operators of coal-fired power plants connected to an Accused RC Facility. These actions have included:

a.   forming several of the RC Defendants specifically for the purpose of using Chem-Mod products in the manner described below as infringing;

b.   providing several of the RC Defendants and operators of coal-fired power plants with chemicals used to directly infringe the patents-in-suit;

c.   Building the core components of the RC facilities to use Chem-Mod chemicals;

d.   Connecting the RC facilities to coal-fired power plants;

e.   Placing the RC Facilities into service;

f.   Providing the RC Defendants with operational support, regulatory, and technical support necessary to use Chem-Mod chemicals at the Accused RC Facilities and Accused Coal Plants;

g.   Testing the performance of the RC Facilities for regulatory reasons and to obtain Section 45 Tax Credits;

h.   Conditioning participation in the Section 45 Tax Credits program on use of Chem-Mod chemicals at the Accused RC Facilities;

    i.   Limiting the amount of capital and/or supplies of the RC Defendants;

    j.   Using the RC Defendants to claim Section 45 Tax Credits;

    k.   Tailoring the treatments applied to coal for each individual power plant; and

    l.   Modifying the amount of bromine and/or bromide added to coal sold to operators of coal-fired power plants connected to an RC Facility in connection with plants' MATS obligations.

RESPONSE TO PARAGRAPH 220

Each Answering Defendant denies the allegations of paragraph 220.

221.

**RESPONSE TO PARAGRAPH 221**

There is no allegation in paragraph 221. To the extent a response is required, each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 221, and therefore denies same.

222.    Thus, AJG, DTE, CERT, Chem-Mod, and the RC Defendants induce and/or contribute to direct infringement of the patents-in-suit by coal-fired power plant operators, and thus indirectly infringe the patents-in-suit.

**RESPONSE TO PARAGRAPH 222**

Each Answering Defendant denies the allegations of paragraph 222.

223.    Defendants' infringement of the Patents-in-Suit is willful. Defendants continue to commit acts of infringement despite a high likelihood that its actions constitute infringement, and Defendants knew or should have known that their actions constituted an unjustifiably high risk of infringement.

**RESPONSE TO PARAGRAPH 223**

Each Answering Defendant denies the allegations of paragraph 223.

224.    In addition to the allegations provided above, Defendants have had notice of the '114 and '147 patents and ME2C's allegations of infringement at least as of the filing of the original

complaint in this case on July 17, 2019, and Defendants have had notice of the '225, '517, and '430 patents and ME2C's allegations of infringement at least as of June 29, 2020, when ME2C provided Defendants with a draft amended complaint.

## RESPONSE TO PARAGRAPH 224

Each Answering Defendant denies the allegations of paragraph 224.

225.    In accordance with 35 U.S.C. § 287, Defendants have actual notice and knowledge of all of the Patents-in-Suit as described above and no later than the filing of this Complaint and/or the date this Complaint was served upon each Defendant.  In any event, Defendants may not avail themselves of 35 U.S.C. § 287 as a defense because ME2C is under no obligation to mark performance of the patented methods.

## RESPONSE TO PARAGRAPH 225

Each Answering Defendant denies the allegations of paragraph 225 of the TAC.

226.    Defendants acts of infringement have been willful as of the date they became aware of the patented technology and the patents-in-suit, and in any event no later than the filing of this Complaint and/or the date this Complaint was served upon each Defendant.

## RESPONSE TO PARAGRAPH 226

Each Answering Defendant denies the allegations of paragraph 226 of the TAC.

227.    Each Coal Plant Defendant consists of a parent company and various subsidiaries.  These various entities work together to procure materials and manage Accused Power Plants.

## RESPONSE TO PARAGRAPH 227

Each Answering Defendant lacks knowledge or information sufficient to form a belief as

to the truth of the allegations of paragraph 227, and therefore denies same.

228.    Each of AJG, DTE, and CERT own and operate Refined Coal LLCs (including the other named RC Defendants) that use Chem-Mod materials at the Accused Coal Plants and coal plants with associated Accused RC Facilities.

## RESPONSE TO PARAGRAPH 228

Each Answering Defendant lacks knowledge or information sufficient to form a belief as

to the truth of the allegations of paragraph 228 and therefore denies same.

229.    Vistra's Joppa Coal plant, and Talen's Brandon Shores, Herbert Wagner, and Montour coal plants obtain refined coal from AJG, Chem-Mod, and their associated Refined Coal LLCs.

## RESPONSE TO PARAGRAPH 229

Each Answering Defendant lacks knowledge or information sufficient to form a belief as

to the truth of the allegations of paragraph 229 and therefore denies same.

230.    Vistra's Duck Creek and Newton coal plants obtain refined coal from DTE, Chem-Mod, and their associated Refined Coal LLCs.

### RESPONSE TO PARAGRAPH 230

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 230 and therefore denies same.

231.    The Conesville power plant in Ohio has been/is owned and/or operated by Vistra and AEP.

### RESPONSE TO PARAGRAPH 231

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 231.

232.    At least Defendants NRG and Talen have owned and/or operated Accused Coal Plants using Chem-Mod products to directly infringe the patents-in-suit and thus NRG is jointly and severally liable with Chem-Mod, and Talen is jointly and severally liable with Chem-Mod with respect to those plants.

### RESPONSE TO PARAGRAPH 232

Each Answering Defendant denies the allegations of paragraph 232.

233.    At least Defendants AJG, DTE, Chem-Mod and their associated Refined Coal LLCs have induced and/or contributed to infringement at Talen Accused Coal Plants and coal plants associated with Accused RC Facilities, and thus those parties are jointly, severally, and/or in the alternative liable with respect to those plants.

### RESPONSE TO PARAGRAPH 233

Each Answering Defendant denies the allegations of paragraph 233.

234.    Each of the RC Defendants is owned and/or operated by AJG, DTE, and/or CERT, and each uses Chem-Mod to induce and/or contribute to infringement.  Thus, each RC Defendant is jointly, severally, and/or in the alternative liable with respect to Chem-Mod and the Defendant that is its associated owner/operator.

### RESPONSE TO PARAGRAPH 234

Each Answering Defendant denies the allegations of paragraph 234.

### COUNT ONE: '114 PATENT

235.    ME2C incorporates by reference the preceding paragraphs as if fully set forth herein.

### RESPONSE TO PARAGRAPH 235

Each Answering Defendant incorporates by reference its responses to the allegations in the preceding paragraphs.

236.    U.S. Patent No. 10,343,114 (the "'114 patent"), entitled "Sorbents for the Oxidation and Removal of Mercury", was issued on July 9, 2019, naming Edwin S. Olson, Michael J. Holmes and John H. Pavlish as the inventors. Exhibit A ('114 Patent).

### RESPONSE TO PARAGRAPH 236

Each Answering Defendant admits that Exhibit A is a document that bears the indicated number, title, issuance date, and named inventors; and denies the remaining allegations of paragraph 236 of the TAC.

237.    ME2C owns all rights, title, and interest in the '114 Patent, and holds all substantial rights pertinent to this suit, including the right to sue and recover for all past, current, and future infringement.

### RESPONSE TO PARAGRAPH 237

Each Answering Defendant denies the allegations of paragraph 237 of the TAC.

238.    The '114 Patent is valid and enforceable and directed to patentable subject matter.

### RESPONSE TO PARAGRAPH 238

Each Answering Defendant denies the allegations of paragraph 238 of the TAC.

239.    Defendants infringe at least one of claims 1-30 of the '114 patent.

### RESPONSE TO PARAGRAPH 239

Each Answering Defendant denies the allegations of paragraph 239 of the TAC.

240.    ME2C provides the following explanation of infringement with regard to an exemplary claim.

### RESPONSE TO PARAGRAPH 240

Each Answering Defendant denies the allegations of paragraph 240 of the TAC.

241.    Claim 25 of the '114 patent recites: A method of separating mercury from a mercury-containing gas.

### RESPONSE TO PARAGRAPH 241

Each Answering Defendant responds that to the extent that paragraph 241 of the TAC purports to quote from a claim of the '114 Patent, such statement is incomplete and therefore

inaccurate; refers to that document for a statement of its contents; and denies the remaining

allegations of paragraph 241 of the TAC.

242.    The power plants connected to an Accused RC Facility perform this method in order to comply with federal and/or state mercury regulations.

**RESPONSE TO PARAGRAPH 242**

Each Answering Defendant denies the allegations of paragraph 242 of the TAC.

243.    AJG, DTE, CERT, Chem-Mod and the RC Defendants perform this method when conducting section 45 testing for at least one coal plant that uses activated carbon sorbent.

**RESPONSE TO PARAGRAPH 243**

Each Answering Defendant denies the allegations of paragraph 243 of the TAC.

244.    Claim 25 of the '114 patent recites: combusting coal in a combustion chamber to provide the mercury-containing gas, wherein the coal comprises added $Br_2$, HBr, a bromide compound, or a combination thereof, added to the coal upstream of the combustion chamber, or the combustion chamber comprises added Br2, HBr, a bromide compound, or a combination thereof, or a combination thereof.

**RESPONSE TO PARAGRAPH 244**

Each Answering Defendant responds that to the extent that paragraph 244 of the TAC

purports to quote from a claim of the '114 Patent, such statement is incomplete and therefore

inaccurate; refers to that document for a statement of its contents; and denies the remaining

allegations of paragraph 244 of the TAC.

245.    The power plants connected to an Accused RC Facility perform this step by burning coal with an added $Br_2$, HBr, a bromide compound, or a combination thereof and/or by adding $Br_2$, HBr, a bromide compound, or a combination thereof to the combustion chamber.

**RESPONSE TO PARAGRAPH 245**

Each Answering Defendant denies the allegations of paragraph 245 of the TAC.

246.    AJG, DTE, CERT, Chem-Mod and the RC Defendants perform this step when conducting section 45 testing for at least one coal plant that uses activated carbon sorbent.

**RESPONSE TO PARAGRAPH 246**

Each Answering Defendant denies the allegations of paragraph 246 of the TAC.

247.    Claim 25 of the '114 patent recites: injecting a sorbent material comprising activated carbon into the mercury containing gas downstream of the combustion chamber.

**RESPONSE TO PARAGRAPH 247**

55

Each Answering Defendant responds that to the extent that paragraph 247 of the TAC purports to quote from a claim of the '114 Patent, such statement is incomplete and therefore inaccurate; refers to that document for a statement of its contents; and denies the remaining allegations of paragraph 247 of the TAC.

248.    The power plants connected to an Accused RC Facility perform this step by injecting activated carbon sorbent downstream of the combustion chamber.

## RESPONSE TO PARAGRAPH 248

Each Answering Defendant denies the allegations of paragraph 248 of the TAC.

249.    AJG, DTE, CERT, Chem-Mod and the RC Defendants perform this step when conducting section 45 testing for at least one coal plant that uses activated carbon sorbent.

## RESPONSE TO PARAGRAPH 249

Each Answering Defendant denies the allegations of paragraph 249 of the TAC.

250.    Claim 25 of the '114 patent recites: contacting mercury in the mercury-containing gas with the sorbent, to form a mercury/sorbent composition.

## RESPONSE TO PARAGRAPH 250

Each Answering Defendant responds that to the extent that paragraph 250 of the TAC purports to quote from a claim of the '114 Patent, such statement is incomplete and therefore inaccurate; refers to that document for a statement of its contents; and denies the remaining allegations of paragraph 250 of the TAC.

251.    The power plants connected to an Accused RC Facility perform this step because mercury contained in the gas exiting the combustion chamber contacts the sorbent as all of this material is contained in the same gas.

## RESPONSE TO PARAGRAPH 251

Each Answering Defendant denies the allegations of paragraph 251 of the TAC.

252.    AJG, DTE, CERT, Chem-Mod and the RC Defendants perform this step when conducting section 45 testing for at least one coal plant that uses activated carbon sorbent.

## RESPONSE TO PARAGRAPH 252

Each Answering Defendant denies the allegations of paragraph 252 of the TAC.

253.    Claim 25 of the '114 patent recites: separating the mercury/sorbent composition from the mercury-containing gas, to form a cleaned gas.

## RESPONSE TO PARAGRAPH 253

Each Answering Defendant responds that to the extent that paragraph 253 of the TAC purports to quote from a claim of the '114 Patent, such statement is incomplete and therefore inaccurate; refers to that document for a statement of its contents; and denies the remaining allegations of paragraph 253 of the TAC.

254.    The power plants connected to an Accused RC Facility perform this step using equipment to collect the mercury captured by the sorbent in order to comply with mercury regulations.

## RESPONSE TO PARAGRAPH 254

Each Answering Defendant denies the allegations of paragraph 254 of the TAC.

255.    AJG, DTE, CERT, Chem-Mod and the RC Defendants provide coal with added $Br_2$, HBr, a bromide compound, or a combination thereof to coal-fired power plants connected to an Accused RC Facility.

## RESPONSE TO PARAGRAPH 255

Each Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 255.

256.    When AJG, DTE, CERT, Chem-Mod and the RC Defendants provide coal with added $Br_2$, HBr, a bromide compound, or a combination thereof to a coal-fired power plant with an activated carbon injection system, AJG, DTE, CERT, Chem-Mod and the RC Defendants know that the coal-fired power plant will perform the step of injecting sorbent comprising activated carbon.

## RESPONSE TO PARAGRAPH 256

Each Answering Defendant denies the allegations of paragraph 256 of the TAC.

257.    Alternatively, when AJG, DTE, CERT, Chem-Mod and the RC Defendants provide coal with added $Br_2$, HBr, a bromide compound, or a combination thereof to a coal-fired power plant with an activated carbon injection system, AJG, DTE, CERT, Chem-Mod and the RC Defendants are willfully blind to the fac that the coal-fired power plant will perform the step of injecting sorbent comprising activated carbon.

## RESPONSE TO PARAGRAPH 257

Each Answering Defendant denies the allegations of paragraph 257 of the TAC.

258.    The coal with added $Br_2$, HBr, a bromide compound, or a combination thereof provided by AJG, DTE, CERT, Chem-Mod and the RC Defendants is not a staple article or commodity of commerce suitable for substantial non-infringing use.  This coal is supplied to a conveyance that moves the coal toward the combustion chamber of a power plant that directly infringes the '114 patent.  In addition, AJG, DTE, CERT, Chem-Mod and the RC Defendants tailor the amount of $Br_2$, HBr, a bromide compound, or a combination thereof added to the coal for the specific needs of the power plant.

## RESPONSE TO PARAGRAPH 258

Each Answering Defendant denies the allegations of paragraph 258 of the TAC.

259.    When AJG, DTE, CERT, Chem-Mod and the RC Defendants provide coal with added $Br_2$, HBr, a bromide compound, or a combination thereof to a coal-fired power plant with an activated carbon injection system, AJG, DTE, CERT, Chem-Mod and the RC Defendants know that the provided coal has no substantial use other than to be combusted at the plant that will perform the step of injecting sorbent comprising activated carbon.

## RESPONSE TO PARAGRAPH 259

Each Answering Defendant denies the allegations of paragraph 259 of the TAC.

260.    AJG, DTE, CERT, Chem-Mod and the RC Defendants took the above-described actions intending to cause infringing acts by others.

## RESPONSE TO PARAGRAPH 260

Each Answering Defendant denies the allegations of paragraph 260 of the TAC.

261.    AJG, DTE, CERT, Chem-Mod and the RC Defendants have actual knowledge of the '114 patent and know that actions described above, if taken, would constitute infringement of that patent. Alternatively, AJG, DTE, CERT, Chem-Mod and the RC Defendants believe there is a high probability that others would infringe the '114 patent but have remained willfully blind to the infringing nature of those actions.  AJG, DTE, CERT, Chem-Mod and the RC Defendants therefore infringe the '114 patent under 35 U.S.C. § 271(b) with respect to each coal-fired power plant connected to an Accused RC Facility.

## RESPONSE TO PARAGRAPH 261

Each Answering Defendant denies the allegations of paragraph 261 of the TAC.

262.    AJG, DTE, CERT, Chem-Mod and the RC Defendants indirectly infringe the '114 patent by contributing to infringement by others, such as its customers and end-users by offering to sell and/or selling within the United States coal with added $Br_2$, HBr, a bromide compound, or a combination thereof used to practice one or more processes/methods covered by the claims of the '114 patent and that constitute a material part of the inventions claimed in the '114 patent.  AJG, DTE, CERT, Chem-Mod and the RC Defendants therefore infringe the '114 patent under 35 U.S.C. § 271(c) with respect to each coal-fired power plant connected to an Accused RC Facility.

## RESPONSE TO PARAGRAPH 262

Each Answering Defendant denies the allegations of paragraph 262 of the TAC.

263.    AJG, DTE, CERT, Chem-Mod, and their associated RC Defendants also directly infringe when performing certification testing of refined coal designed for coal-fired power plants that use sorbent comprising activated carbon.  They perform each step of the '114 patent claims, or they engage a third party agent on their behalf to perform each step of the '114 patent claims that acts under their control.

## RESPONSE TO PARAGRAPH 263

Each Answering Defendant denies the allegations of paragraph 263 of the TAC.

264.    Alternatively, AJG, DTE, CERT, Chem-Mod, and their associated RC Defendants also directly infringe by directing and controlling a third party to perform certification testing of refined coal designed for coal-fired power plants that use sorbent comprising activated carbon. They either instruct the third party to perform the test using coal with added bromine or bromide and using sorbent comprising activated carbon downstream of the combustion chamber, or they instruct the third party to simulate the operation of a particular plant that uses sorbent comprising activated carbon.  In either case, they condition payment for the testing on the third party performing each step of the '114 patent claims.

## RESPONSE TO PARAGRAPH 264

Each Answering Defendant denies the allegations of paragraph 264 of the TAC.

265.    Alternatively, AJG, DTE, CERT, Chem-Mod, and their associated RC Defendants also indirectly infringe by engaging a third party to perform certification testing of refined coal designed for coal-fired power plants that use sorbent comprising activated carbon.  They either instruct the third party to perform the test using coal with added bromine or bromide and using sorbent comprising activated carbon downstream of the combustion chamber, or they instruct the third party to simulate the operation of a particular plant that uses sorbent comprising activated carbon.  In either case, they condition payment for the testing on the third party performing each step of the '114 patent claims.

## RESPONSE TO PARAGRAPH 265

Each Answering Defendant denies the allegations of paragraph 265 of the TAC.

266.    Defendants' acts of infringement have caused damage to ME2C.  ME2C is entitled to recover from Defendants the damages sustained by ME2C as a result of Defendants' wrongful acts in an amount subject to proof at trial. In addition, the infringing acts and practices of Defendants have caused, are causing, and, unless such acts and practices are enjoined by the Court, will continue to cause immediate and irreparable harm to ME2C for which there is no adequate remedy at law, and for which ME2C is entitled to injunctive relief under 35 U.S.C. § 283.

## RESPONSE TO PARAGRAPH 266

Each Answering Defendant denies the allegations of paragraph 266 of the TAC.

## COUNT TWO: '147 PATENT

267.    ME2C incorporates by reference the preceding paragraphs as if fully set forth herein.

## RESPONSE TO PARAGRAPH 267

Each Answering Defendant incorporates by reference its response to the preceding

paragraphs as if fully set forth herein.

268.    U.S. Patent No. 8,168,147 (the "'147 patent"), entitled "Sorbents for the Oxidation and Removal of Mercury", was issued on May 1, 2012, naming Edwin S. Olson, Michael J. Holmes and John H. Pavlish as the inventors. Exhibit B ('147 Patent).

## RESPONSE TO PARAGRAPH 268

Each Answering Defendant admits that Exhibit B is a document that bears the indicated

number, title, issuance date, and named inventors, and denies the remaining allegations of

paragraph 268 of the TAC.

269.    ME2C owns by assignment all rights, title, and interest in the '147 Patent, and holds all substantial rights pertinent to this suit, including the right to sue and recover for all past, current, and future infringement.

## RESPONSE TO PARAGRAPH 269

Each Answering Defendant denies the allegations of paragraph 269 of the TAC.

270.    The '147 Patent is valid and enforceable and directed to patentable subject matter.

## RESPONSE TO PARAGRAPH 270

Each Answering Defendant denies the allegations of paragraph 270 of the TAC.

271.    Defendants infringe at least one of claims 17-20 of the '147 patent.

## RESPONSE TO PARAGRAPH 271

Each Answering Defendant denies the allegations of paragraph 271 of the TAC.

272.    ME2C provides the following explanation of infringement with regard to an exemplary claim.

## RESPONSE TO PARAGRAPH 272

Each Answering Defendant denies the allegations of paragraph 272 of the TAC.

273.    Claim 17 of the '147 patent recites: "A method for separating mercury from a mercury containing gas."

## RESPONSE TO PARAGRAPH 273

Each Answering Defendant responds that to the extent that paragraph 273 of the TAC

purports to quote from a claim of the '147 Patent, such statement is incomplete and therefore

inaccurate; refers to that document for a statement of its contents; and denies the remaining

allegations of paragraph 273 of the TAC.

274.    The power plants connected to an Accused RC Facility perform this method in order to comply with federal and/or state mercury regulations.

## RESPONSE TO PARAGRAPH 274

Each Answering Defendant denies the allegations of paragraph 274 of the TAC.

275.    AJG, DTE, CERT, Chem-Mod and the RC Defendants perform this method when conducting section 45 testing for at least one coal plant that uses activated carbon sorbent.

## RESPONSE TO PARAGRAPH 275

Each Answering Defendant denies the allegations of paragraph 275 of the TAC.

276.    Claim 17 of the '147 patent recites: "promoting at least a portion of a particulate sorbent material comprising activated carbon by chemically reacting the sorbent material with a bromine containing promoter to form a promoted brominated sorbent, wherein the bromine containing promoter is in gaseous form, vapor form, or non-aqueous liquid form, and wherein the activated carbon contains graphene sheets having carbene species edge sites which react with the bromine containing promoter to form a carbocation paired with a bromide anion in the promoted brominated sorbent for oxidation of the mercury."

## RESPONSE TO PARAGRAPH 276

Each Answering Defendant responds that to the extent that paragraph 276 of the TAC

purports to quote from a claim of the '147 Patent, such statement is incomplete and therefore

inaccurate; refers to that document for a statement of its contents; and denies the remaining

allegations of paragraph 276 of the TAC.

277.    The power plants connected to an Accused RC Facility perform this step because they burn coal with added $Br_2$, HBr, a bromide compound, or a combination thereof and/or they provide $Br_2$, HBr, a bromide compound, or a combination thereof into the combustion zone with the coal.  The bromine containing promoter is in gaseous form when it comes into contact with activated carbon added by the power plants connected to an Accused RC Facility.  This contact causes the recited chemical reaction to occur.

## RESPONSE TO PARAGRAPH 277

Each Answering Defendant denies the allegations of paragraph 277 of the TAC.

278.    AJG, DTE, CERT, Chem-Mod and the RC Defendants perform this step when conducting section 45 testing for at least one coal plant that uses activated carbon sorbent.

## RESPONSE TO PARAGRAPH 278

Each Answering Defendant denies the allegations of paragraph 278 of the TAC.

279.    Claim 17 of the '147 patent recites: "chemically reacting elemental mercury in the mercury containing gas with the promoted brominated sorbent to form a mercury/sorbent chemical composition."

## RESPONSE TO PARAGRAPH 279

Each Answering Defendant responds that to the extent that paragraph 279 of the TAC

purports to quote from a claim of the '147 Patent, such statement is incomplete and therefore

inaccurate; refers to that document for a statement of its contents; and denies the remaining

allegations of paragraph 279 of the TAC.

280.   As noted above, power plants connected to an Accused RC Facility perform this step such that the recited chemical reaction occurs.

## RESPONSE TO PARAGRAPH 280

Each Answering Defendant denies the allegations of paragraph 280 of the TAC.

281.   AJG, DTE, CERT, Chem-Mod and the RC Defendants perform this step when conducting section 45 testing for at least one coal plant that uses activated carbon sorbent.

## RESPONSE TO PARAGRAPH 281

Each Answering Defendant denies the allegations of paragraph 281 of the TAC.

282.   Claim 17 of the '147 patent recites: "separating particulates from the mercury containing gas, the particulates including ash and the mercury/sorbent chemical composition."

## RESPONSE TO PARAGRAPH 282

Each Answering Defendant responds that to the extent that paragraph 282 of the TAC

purports to quote from a claim of the '147 Patent, such statement is incomplete and therefore

inaccurate; refers to that document for a statement of its contents; and denies the remaining

allegations of paragraph 282 of the TAC.

283.   The power plants connected to an Accused RC Facility perform this method in order to comply with federal and/or state mercury regulations.

## RESPONSE TO PARAGRAPH 283

Each Answering Defendant denies the allegations of paragraph 283 of the TAC.

284.   AJG, DTE, CERT, Chem-Mod and the RC Defendants perform this step when conducting section 45 testing for at least one coal plant that uses activated carbon sorbent.

## RESPONSE TO PARAGRAPH 284

Each Answering Defendant denies the allegations of paragraph 284 of the TAC.

285.   Claim 17 of the '147 patent recites: "A method according to claim 1, further comprising injecting the particulate sorbent material at a sorbent material injection rate and injecting separately the bromine containing promoter into a gas stream whereby in-flight reaction produces the promoted brominated sorbent, wherein the promoter is reacted in the gas phase or

as a vapor, wherein the promoter is added at from about 1 to about 30 grams per 100 grams of the sorbent material."

## RESPONSE TO PARAGRAPH 285

Each Answering Defendant responds that to the extent that paragraph 285 of the TAC purports to quote from a claim of the '147 Patent, such statement is incomplete and therefore inaccurate; refers to that document for a statement of its contents; and denies the remaining allegations of paragraph 285 of the TAC.

286.    The power plants connected to an Accused RC Facility perform this step because they burn coal with added $Br_2$, HBr, a bromide compound, or a combination thereof and/or they provide $BR_2$, HBr, a bromide compound, or a combination thereof into the combustion zone with the coal.  In either case, the bromine containing promoter is injected into a gas stream, and it later comes into contact with activated carbon sorbent added by the power plants connected to an Accused RC Facility.  This contact causes in-flight promotion of the sorbent.

## RESPONSE TO PARAGRAPH 286

Each Answering Defendant denies the allegations of paragraph 286 of the TAC.

287.    The bromine containing promoter is added at from about 1 to 30 grams per 100 grams of the sorbent material.

## RESPONSE TO PARAGRAPH 287

Each Answering Defendant denies the allegations of paragraph 287 of the TAC.

288.    AJG, DTE, CERT, Chem-Mod and the RC Defendants perform this step when conducting section 45 testing for at least one coal plant that uses activated carbon sorbent.

## RESPONSE TO PARAGRAPH 288

Each Answering Defendant denies the allegations of paragraph 288 of the TAC.

289.    AJG, DTE, CERT, Chem-Mod and the RC Defendants provide coal with added $Br_2$, HBr, a bromide compound, or a combination thereof to coal-fired power plants connected to an Accused RC Facility.

## RESPONSE TO PARAGRAPH 289

Each Answering Defendant denies the allegations of paragraph 289 of the TAC.

290.    When AJG, DTE, CERT, Chem-Mod and the RC Defendants provide coal with added $Br_2$, HBr, a bromide compound, or a combination thereof to a coal-fired power plant with an activated carbon injection system, AJG, DTE, CERT, Chem-Mod and the RC Defendants know that the coal-fired power plant will perform the step of injecting sorbent comprising activated carbon.

## RESPONSE TO PARAGRAPH 290

Each Answering Defendant denies the allegations of paragraph 290 of the TAC.

291.    Alternatively, when AJG, DTE, CERT, Chem-Mod and the RC Defendants provide coal with added $Br_2$, HBr, a bromide compound, or a combination thereof to a coal-fired power plant with an activated carbon injection system, AJG, DTE, CERT, Chem-Mod and the RC Defendants are willfully blind to the fac that the coal-fired power plant will perform the step of injecting sorbent comprising activated carbon.

## RESPONSE TO PARAGRAPH 291

Each Answering Defendant denies the allegations of paragraph 291 of the TAC.

292.    The coal with added $Br_2$, HBr, a bromide compound, or a combination thereof provided by AJG, DTE, CERT, Chem-Mod and the RC Defendants is not a staple article or commodity of commerce suitable for substantial non-infringing use.  This coal is supplied to a conveyance that moves the coal toward the combustion chamber of a power plant that directly infringes the '147 patent.  In addition, AJG, DTE, CERT, Chem-Mod and the RC Defendants tailor the amount of $Br_2$, HBr, a bromide compound, or a combination thereof added to the coal for the specific needs of the power plant.

## RESPONSE TO PARAGRAPH 292

Each Answering Defendant denies the allegations of paragraph 292 of the TAC.

293.    When AJG, DTE, CERT, Chem-Mod and the RC Defendants provide coal with added $Br_2$, HBr, a bromide compound, or a combination thereof to a coal-fired power plant with an activated carbon injection system, AJG, DTE, CERT, Chem-Mod and the RC Defendants know that the provided coal has no substantial use other than to be combusted at the plant that will perform the step of injecting sorbent comprising activated carbon.

## RESPONSE TO PARAGRAPH 293

Each Answering Defendant denies the allegations of paragraph 293 of the TAC.

294.    AJG, DTE, CERT, Chem-Mod and the RC Defendants took the above-described actions intending to cause infringing acts by others.

## RESPONSE TO PARAGRAPH 294

Each Answering Defendant denies the allegations of paragraph 294 of the TAC.

295.    AJG, DTE, CERT, Chem-Mod and the RC Defendants have actual knowledge of the '147 patent and know that actions described above, if taken, would constitute infringement of that patent. Alternatively, AJG, DTE, CERT, Chem-Mod and the RC Defendants believe there is a high probability that others would infringe the '147 patent but have remained willfully blind to the infringing nature of those actions.  AJG, DTE, CERT, Chem-Mod and the RC Defendants therefore infringe the '147 patent under 35 U.S.C. § 271(b) with respect to each coal-fired power plant connected to an Accused RC Facility.

## RESPONSE TO PARAGRAPH 295

Each Answering Defendant denies the allegations of paragraph 295 of the TAC.

296.    AJG, DTE, CERT, Chem-Mod and the RC Defendants indirectly infringes the '147 patent by contributing to infringement by others, such as its customers and end-users by offering to sell and/or selling within the United coal with added $BR_2$, HBR, a bromide compound, or a combination thereof used to practice one or more processes/methods covered by the claims of the '147 patent and that constitute a material part of the inventions claimed in the '147 patent.  AJG, DTE, CERT, Chem-Mod and the RC Defendants therefore infringe the '147 patent under 35 U.S.C. § 271(c) with respect to each coal-fired power plant connected to an Accused RC Facility.

## RESPONSE TO PARAGRAPH 296

Each Answering Defendant denies the allegations of paragraph 296 of the TAC.

297.    AJG, DTE, CERT Chem-Mod, and their associated RC Defendants also directly infringe when performing certification testing of refined coal designed for coal-fired power plants that use sorbent comprising activated carbon.  They perform each step of the '147 patent claims, or they engage a third party agent on their behalf to perform each step of the '147 patent claims that acts under their control.

## RESPONSE TO PARAGRAPH 297

Each Answering Defendant denies the allegations of paragraph 297 of the TAC.

298.    Alternatively, AJG, DTE, CERT Chem-Mod, and their associated RC Defendants also directly infringe by directing and controlling a third party to perform certification testing of refined coal designed for coal-fired power plants that use sorbent comprising activated carbon. They either instruct the third party to perform the test using coal with added bromine or bromide and using sorbent comprising activated carbon downstream of the combustion chamber, or they instruct the third party to simulate the operation of a particular plant that uses sorbent comprising activated carbon.  In either case, they condition payment for the testing on the third party performing each step of the '147 patent claims.

## RESPONSE TO PARAGRAPH 298

Each Answering Defendant denies the allegations of paragraph 298 of the TAC.

299.    Alternatively, AJG, DTE, CERT Chem-Mod, and their associated RC Defendants also indirectly infringe by engaging a third party to perform certification testing of refined coal designed for coal-fired power plants that use sorbent comprising activated carbon.  They either instruct the third party to perform the test using coal with added bromine or bromide and using sorbent comprising activated carbon downstream of the combustion chamber, or they instruct the third party to simulate the operation of a particular plant that uses sorbent comprising activated carbon.  In either case, they condition payment for the testing on the third party performing each step of the '147 patent claims.

## RESPONSE TO PARAGRAPH 299

Each Answering Defendant denies the allegations of paragraph 299 of the TAC.

300.    Defendants' acts of infringement have caused damage to ME2C.  ME2C is entitled to recover from Defendants the damages sustained by ME2C as a result of Defendants' wrongful acts in an amount subject to proof at trial. In addition, the infringing acts and practices of Defendants have caused, are causing, and, unless such acts and practices are enjoined by the Court, will continue to cause immediate and irreparable harm to ME2C for which there is no

adequate remedy at law, and for which ME2C is entitled to injunctive relief under 35 U.S.C. § 283.

## RESPONSE TO PARAGRAPH 300

Each Answering Defendant denies the allegations of paragraph 300 of the TAC.

## COUNT THREE:  '225 PATENT

301.   ME2C incorporates by reference the preceding paragraphs as if fully set forth herein.

## RESPONSE TO PARAGRAPH 301

Each Answering Defendant incorporates by reference its response to the preceding

paragraphs as if fully set forth herein.

302.   U.S. Patent No. 10,589,225 (the "'225 patent"), entitled "Sorbents for the Oxidation and Removal of Mercury", was issued on March 17, 2020, naming Edwin S. Olson, Michael J. Holmes and John H. Pavlish as the inventors. Exhibit C ('225 Patent).

## RESPONSE TO PARAGRAPH 302

Each Answering Defendant admits that Exhibit C is a document that bears the indicated

number, title, issuance date, and named inventors, and denies the remaining allegations of

paragraph 302 of the TAC.

303.   ME2C owns by assignment all rights, title, and interest in the '225 Patent, and holds all substantial rights pertinent to this suit, including the right to sue and recover for all past, current, and future infringement.

## RESPONSE TO PARAGRAPH 303

Each Answering Defendant denies the allegations of paragraph 303 of the TAC.

304.   The '225 Patent is valid and enforceable and directed to patentable subject matter.

## RESPONSE TO PARAGRAPH 304

Each Answering Defendant denies the allegations of paragraph 304 of the TAC.

305.   Defendants infringe at least one of claims 1-29 of the '225 patent.

## RESPONSE TO PARAGRAPH 305

Each Answering Defendant denies the allegations of paragraph 305 of the TAC.

306.   ME2C provides the following explanation of infringement with regard to an exemplary claim.

## RESPONSE TO PARAGRAPH 306

Each Answering Defendant denies the allegations of paragraph 306 of the TAC.

307.   Claim 1 of the '225 patent recites: "A method for treating a mercury-containing gas."

### RESPONSE TO PARAGRAPH 307

Each Answering Defendant responds that to the extent that paragraph 307 of the TAC purports to quote from a claim of the '225 Patent, such statement is incomplete and therefore inaccurate; refers to that document for a statement of its contents; and denies the remaining allegations of paragraph 307 of the TAC.

308.   The power plants connected to an Accused RC Facility perform this method in order to comply with federal and/or state mercury regulations.

### RESPONSE TO PARAGRAPH 308

Each Answering Defendant denies the allegations of paragraph 308 of the TAC.

309.   AJG, DTE, CERT, Chem-Mod and the RC Defendants perform this method when conducting section 45 testing for at least one coal plant that uses activated carbon sorbent.

### RESPONSE TO PARAGRAPH 309

Each Answering Defendant denies the allegations of paragraph 309 of the TAC.

310.   Claim 1 of the '225 patent recites: "combusting a mixture comprising coal, pyrolysis char, and an additive comprising HBr, a bromide compound, or a combination thereof, to form the mercury-containing, gas."

### RESPONSE TO PARAGRAPH 310

Each Answering Defendant responds that to the extent that paragraph 310 of the TAC purports to quote from a claim of the '225 Patent, such statement is incomplete and therefore inaccurate; refers to that document for a statement of its contents; and denies the remaining allegations of paragraph 310 of the TAC.

311.   The power plants connected to an Accused RC Facility perform this step because they combust coal, pyrolysis char, and an additive comprising HBr, a bromide compound, or a combination thereof.

### RESPONSE TO PARAGRAPH 311

Each Answering Defendant denies the allegations of paragraph 311 of the TAC.

312.   AJG, DTE, CERT, Chem-Mod and the RC Defendants perform this step when conducting section 45 testing for at least one coal plant that uses activated carbon sorbent.

## RESPONSE TO PARAGRAPH 312

Each Answering Defendant denies the allegations of paragraph 312 of the TAC.

313.    Claim 1 of the '225 patent recites: "adding a particulate sorbent material comprising activated carbon into the mercury-containing gas."

## RESPONSE TO PARAGRAPH 313

Each Answering Defendant responds that to the extent that paragraph 313 of the TAC

purports to quote from a claim of the '225 Patent, such statement is incomplete and therefore

inaccurate; refers to that document for a statement of its contents; and denies the remaining

allegations of paragraph 313 of the TAC.

314.    The power plants connected to an Accused RC Facility perform this step by adding sorbent containing activated carbon to the gas that exits the combustion chamber.

## RESPONSE TO PARAGRAPH 314

Each Answering Defendant denies the allegations of paragraph 314 of the TAC.

315.    AJG, DTE, CERT, Chem-Mod and the RC Defendants perform this step when conducting section 45 testing for at least one coal plant that uses activated carbon sorbent.

## RESPONSE TO PARAGRAPH 315

Each Answering Defendant denies the allegations of paragraph 315 of the TAC.

316.    AJG, DTE, CERT, Chem-Mod and the RC Defendants provide coal with added $Br_2$, HBr, a bromide compound, or a combination thereof to coal-fired power plants connected to an Accused RC Facility.

## RESPONSE TO PARAGRAPH 316

Each Answering Defendant denies the allegations of paragraph 316 of the TAC.

317.    When AJG, DTE, CERT, Chem-Mod and the RC Defendants provide coal with added $Br_2$, HBr, a bromide compound, or a combination thereof to a coal-fired power plant with an activated carbon injection system, AJG, DTE, CERT, Chem-Mod and the RC Defendants know that the coal-fired power plant will perform the step of injecting sorbent comprising activated carbon.

## RESPONSE TO PARAGRAPH 317

Each Answering Defendant denies the allegations of paragraph 317 of the TAC.

318.    Alternatively, when AJG, DTE, CERT, Chem-Mod and the RC Defendants provide coal with added $Br_2$, HBr, a bromide compound, or a combination thereof to a coal-fired power plant with an activated carbon injection system, AJG, DTE, CERT, Chem-Mod and the RC Defendants are willfully blind to the fac that the coal-fired power plant will perform the step of injecting sorbent comprising activated carbon.

## RESPONSE TO PARAGRAPH 318

Each Answering Defendant denies the allegations of paragraph 318 of the TAC.

319.    The coal with added $Br_2$, HBr, a bromide compound, or a combination thereof provided by AJG, DTE, CERT, Chem-Mod and the RC Defendants is not a staple article or commodity of commerce suitable for substantial non-infringing use.  This coal is supplied to a conveyance that moves the coal toward the combustion chamber of a power plant that directly infringes the '225 patent.  In addition, AJG, DTE, CERT, Chem-Mod and the RC Defendants tailor the amount of $Br_2$, HBr, a bromide compound, or a combination thereof added to the coal for the specific needs of the power plant.

## RESPONSE TO PARAGRAPH 319

Each Answering Defendant denies the allegations of paragraph 319 of the TAC.

320.    When AJG, DTE, CERT, Chem-Mod and the RC Defendants provide coal with added $Br_2$, HBr, a bromide compound, or a combination thereof to a coal-fired power plant with an activated carbon injection system, AJG, DTE, CERT, Chem-Mod and the RC Defendants know that the provided coal has no substantial use other than to be combusted at the plant that will perform the step of injecting sorbent comprising activated carbon.

## RESPONSE TO PARAGRAPH 320

Each Answering Defendant denies the allegations of paragraph 320 of the TAC.

321.    AJG, DTE, CERT, Chem-Mod and the RC Defendants took the above-described actions intending to cause infringing acts by others.

## RESPONSE TO PARAGRAPH 321

Each Answering Defendant denies the allegations of paragraph 321 of the TAC.

322.    AJG, DTE, CERT, Chem-Mod and the RC Defendants have actual knowledge of the '225 patent and know that actions described above, if taken, would constitute infringement of that patent. Alternatively, AJG, DTE, CERT, Chem-Mod and the RC Defendants believe there is a high probability that others would infringe the '225 patent but have remained willfully blind to the infringing nature of those actions.  AJG, DTE, CERT, Chem-Mod and the RC Defendants therefore infringe the '225 patent under 35 U.S.C. § 271(b) with respect to each coal-fired power plant connected to an Accused RC Facility.

## RESPONSE TO PARAGRAPH 322

Each Answering Defendant denies the allegations of paragraph 322 of the TAC.

323.    AJG, DTE, CERT, Chem-Mod and the RC Defendants indirectly infringes the '225 patent by contributing to infringement by others, such as its customers and end-users by offering to sell and/or selling within the United coal with added $BR_2$, HBR, a bromide compound, or a combination thereof used to practice one or more processes/methods covered by the claims of the '225 patent and that constitute a material part of the inventions claimed in the '225 patent.  AJG, DTE, CERT, Chem-Mod and the RC Defendants therefore infringe the '225 patent under 35 U.S.C. § 271(c) with respect to each coal-fired power plant connected to an Accused RC Facility.

## RESPONSE TO PARAGRAPH 323

Each Answering Defendant denies the allegations of paragraph 323 of the TAC.

324.    AJG, DTE, CERT Chem-Mod, and their associated RC Defendants also directly infringe when performing certification testing of refined coal designed for coal-fired power plants that use sorbent comprising activated carbon.  They perform each step of the '225 patent claims, or they engage a third party agent on their behalf to perform each step of the '225 patent claims that acts under their control.

## RESPONSE TO PARAGRAPH 324

Each Answering Defendant denies the allegations of paragraph 324 of the TAC.

325.    Alternatively, AJG, DTE, CERT Chem-Mod, and their associated RC Defendants also directly infringe by directing and controlling a third party to perform certification testing of refined coal designed for coal-fired power plants that use sorbent comprising activated carbon.  They either instruct the third party to perform the test using coal with added bromine or bromide and using sorbent comprising activated carbon downstream of the combustion chamber, or they instruct the third party to simulate the operation of a particular plant that uses sorbent comprising activated carbon.  In either case, they condition payment for the testing on the third party performing each step of the '225 patent claims.

## RESPONSE TO PARAGRAPH 325

Each Answering Defendant denies the allegations of paragraph 325 of the TAC.

326.    Alternatively, AJG, DTE, CERT Chem-Mod, and their associated RC Defendants also indirectly infringe by engaging a third party to perform certification testing of refined coal designed for coal-fired power plants that use sorbent comprising activated carbon.  They either instruct the third party to perform the test using coal with added bromine or bromide and using sorbent comprising activated carbon downstream of the combustion chamber, or they instruct the third party to simulate the operation of a particular plant that uses sorbent comprising activated carbon.  In either case, they condition payment for the testing on the third party performing each step of the '225 patent claims.

## RESPONSE TO PARAGRAPH 326

Each Answering Defendant denies the allegations of paragraph 326 of the TAC.

327.    Defendants' acts of infringement have caused damage to ME2C.  ME2C is entitled to recover from Defendants the damages sustained by ME2C as a result of Defendants' wrongful acts in an amount subject to proof at trial. In addition, the infringing acts and practices of Defendants have caused, are causing, and, unless such acts and practices are enjoined by the Court, will continue to cause immediate and irreparable harm to ME2C for which there is no adequate remedy at law, and for which ME2C is entitled to injunctive relief under 35 U.S.C. § 283.

## RESPONSE TO PARAGRAPH 327

Each Answering Defendant denies the allegations of paragraph 327 of the TAC.

## COUNT FOUR:  '517 PATENT

328.    ME2C incorporates by reference the preceding paragraphs as if fully set forth herein.

## RESPONSE TO PARAGRAPH 328

Each Answering Defendant incorporates by reference its response to the preceding

paragraphs as if fully set forth herein.

329.    U.S. Patent No. 10,596,517(the "'517 patent"), entitled "Sorbents for the Oxidation and Removal of Mercury", was issued on March 24, 2020, naming Edwin S. Olson, Michael J. Holmes and John H. Pavlish as the inventors. Exhibit D ('517 Patent).

## RESPONSE TO PARAGRAPH 329

Each Answering Defendant admits that Exhibit D is a document that bears the indicated

number, title, issuance date, and named inventors, and denies the remaining allegations of

paragraph 329 of the TAC.

330.    ME2C owns by assignment all rights, title, and interest in the '517 Patent, and holds all substantial rights pertinent to this suit, including the right to sue and recover for all past, current, and future infringement.

## RESPONSE TO PARAGRAPH 330

Each Answering Defendant denies the allegations of paragraph 330 of the TAC.

331.    The '517 Patent is valid and enforceable and directed to patentable subject matter.

## RESPONSE TO PARAGRAPH 331

Each Answering Defendant denies the allegations of paragraph 331 of the TAC.

332.    Defendants infringe at least one of claims 1-30 of the '517 patent.

## RESPONSE TO PARAGRAPH 332

Each Answering Defendant denies the allegations of paragraph 332 of the TAC.

333.    ME2C provides the following explanation of infringement with regard to an exemplary claim.

## RESPONSE TO PARAGRAPH 333

Each Answering Defendant denies the allegations of paragraph 333 of the TAC.

334.    Claim 1 of the '517 patent recites: "A method for reducing mercury in a mercury-containing gas."

## RESPONSE TO PARAGRAPH 334

Each Answering Defendant responds that to the extent that paragraph 334 of the TAC purports to quote from a claim of the '517 Patent, such statement is incomplete and therefore inaccurate; refers to that document for a statement of its contents; and denies the remaining allegations of paragraph 334 of the TAC.

335.    The power plants connected to an Accused RC Facility perform this method in order to comply with federal and/or state mercury regulations.

### RESPONSE TO PARAGRAPH 335

Each Answering Defendant denies the allegations of paragraph 335 of the TAC.

336.    AJG, DTE, CERT, Chem-Mod and the RC Defendants perform this method when conducting section 45 testing for at least one coal plant that uses activated carbon sorbent.

### RESPONSE TO PARAGRAPH 336

Each Answering Defendant denies the allegations of paragraph 336 of the TAC.

337.    Claim 1 of the '517 patent recites: "combusting coal in a combustion chamber, the coal comprising an additive comprising Br2, HBr, a bromide compound, or a combination thereof, to form the mercury-containing gas."

### RESPONSE TO PARAGRAPH 337

Each Answering Defendant responds that to the extent that paragraph 337 of the TAC purports to quote from a claim of the '517 Patent, such statement is incomplete and therefore inaccurate; refers to that document for a statement of its contents; and denies the remaining allegations of paragraph 337 of the TAC.

338.    The power plants connected to an Accused RC Facility perform this step because they combust coal with an additive comprising Br2, HBr, a bromide compound, or a combination thereof to form mercury-containing gas.

### RESPONSE TO PARAGRAPH 338

Each Answering Defendant denies the allegations of paragraph 338 of the TAC.

339.    AJG, DTE, CERT, Chem-Mod and the RC Defendants perform this step when conducting section 45 testing for at least one coal plant that uses activated carbon sorbent.

### RESPONSE TO PARAGRAPH 339

Each Answering Defendant denies the allegations of paragraph 339 of the TAC.

340.    Claim 1 of the '517 patent recites: "collecting mercury in the mercury-containing gas with a sorbent added to the mercury-containing gas, the sorbent comprising activated carbon."

## RESPONSE TO PARAGRAPH 340

Each Answering Defendant responds that to the extent that paragraph 340 of the TAC purports to quote from a claim of the '517 Patent, such statement is incomplete and therefore inaccurate; refers to that document for a statement of its contents; and denies the remaining allegations of paragraph 340 of the TAC.

341.    The power plants connected to an Accused RC Facility perform this step by adding sorbent containing activated carbon to the gas that exits the combustion chamber.  The mercury in the gas is then collected with the sorbent.

## RESPONSE TO PARAGRAPH 341

Each Answering Defendant denies the allegations of paragraph 341 of the TAC.

342.    AJG, DTE, CERT, Chem-Mod and the RC Defendants perform this step when conducting section 45 testing for at least one coal plant that uses activated carbon sorbent.

## RESPONSE TO PARAGRAPH 342

Each Answering Defendant denies the allegations of paragraph 342 of the TAC.

343.    AJG, DTE, CERT, Chem-Mod and the RC Defendants provide coal with added $Br_2$, HBr, a bromide compound, or a combination thereof to coal-fired power plants connected to an Accused RC Facility.

## RESPONSE TO PARAGRAPH 343

Each Answering Defendant denies the allegations of paragraph 343 of the TAC.

344.    When AJG, DTE, CERT, Chem-Mod and the RC Defendants provide coal with added $Br_2$, HBr, a bromide compound, or a combination thereof to a coal-fired power plant with an activated carbon injection system, AJG, DTE, CERT, Chem-Mod and the RC Defendants know that the coal-fired power plant will perform the step of injecting sorbent comprising activated carbon.

## RESPONSE TO PARAGRAPH 344

Each Answering Defendant denies the allegations of paragraph 344 of the TAC.

345.    Alternatively, when AJG, DTE, CERT, Chem-Mod and the RC Defendants provide coal with added $Br_2$, HBr, a bromide compound, or a combination thereof to a coal-fired power plant with an activated carbon injection system, AJG, DTE, CERT, Chem-Mod and the RC Defendants are willfully blind to the fac that the coal-fired power plant will perform the step of injecting sorbent comprising activated carbon.

## RESPONSE TO PARAGRAPH 345

Each Answering Defendant denies the allegations of paragraph 345 of the TAC.

346.    The coal with added $Br_2$, HBr, a bromide compound, or a combination thereof provided by AJG, DTE, CERT, Chem-Mod and the RC Defendants is not a staple article or commodity of commerce suitable for substantial non-infringing use.  This coal is supplied to a conveyance that moves the coal toward the combustion chamber of a power plant that directly infringes the '517 patent.  In addition, AJG, DTE, CERT, Chem-Mod and the RC Defendants tailor the amount of $Br_2$, HBr, a bromide compound, or a combination thereof added to the coal for the specific needs of the power plant.

### RESPONSE TO PARAGRAPH 346

Each Answering Defendant denies the allegations of paragraph 346 of the TAC.

347.    When AJG, DTE, CERT, Chem-Mod and the RC Defendants provide coal with added $Br_2$, HBr, a bromide compound, or a combination thereof to a coal-fired power plant with an activated carbon injection system, AJG, DTE, CERT, Chem-Mod and the RC Defendants know that the provided coal has no substantial use other than to be combusted at the plant that will perform the step of injecting sorbent comprising activated carbon.

### RESPONSE TO PARAGRAPH 347

Each Answering Defendant denies the allegations of paragraph 347 of the TAC.

348.    AJG, DTE, CERT, Chem-Mod and the RC Defendants took the above-described actions intending to cause infringing acts by others.

### RESPONSE TO PARAGRAPH 348

Each Answering Defendant denies the allegations of paragraph 348 of the TAC.

349.    AJG, DTE, CERT, Chem-Mod and the RC Defendants have actual knowledge of the '517 patent and know that actions described above, if taken, would constitute infringement of that patent. Alternatively, AJG, DTE, CERT, Chem-Mod and the RC Defendants believe there is a high probability that others would infringe the '517 patent but have remained willfully blind to the infringing nature of those actions.  AJG, DTE, CERT, Chem-Mod and the RC Defendants therefore infringe the '517 patent under 35 U.S.C. § 271(b) with respect to each coal-fired power plant connected to an Accused RC Facility.

### RESPONSE TO PARAGRAPH 349

Each Answering Defendant denies the allegations of paragraph 349 of the TAC.

350.    AJG, DTE, CERT, Chem-Mod and the RC Defendants indirectly infringes the '517 patent by contributing to infringement by others, such as its customers and end-users by offering to sell and/or selling within the United coal with added $BR_2$, HBR, a bromide compound, or a combination thereof used to practice one or more processes/methods covered by the claims of the '517 patent and that constitute a material part of the inventions claimed in the '517 patent.  AJG, DTE, CERT, Chem-Mod and the RC Defendants therefore infringe the '517 patent under 35 U.S.C. § 271(c) with respect to each coal-fired power plant connected to an Accused RC Facility.

### RESPONSE TO PARAGRAPH 350

Each Answering Defendant denies the allegations of paragraph 350 of the TAC.

351.    AJG, DTE, CERT Chem-Mod, and their associated RC Defendants also directly infringe when performing certification testing of refined coal designed for coal-fired power plants that use sorbent comprising activated carbon.  They perform each step of the '517 patent claims, or they engage a third party agent on their behalf to perform each step of the '517 patent claims that acts under their control.

## RESPONSE TO PARAGRAPH 351

Each Answering Defendant denies the allegations of paragraph 351 of the TAC.

352.    Alternatively, AJG, DTE, CERT Chem-Mod, and their associated RC Defendants also directly infringe by directing and controlling a third party to perform certification testing of refined coal designed for coal-fired power plants that use sorbent comprising activated carbon. They either instruct the third party to perform the test using coal with added bromine or bromide and using sorbent comprising activated carbon downstream of the combustion chamber, or they instruct the third party to simulate the operation of a particular plant that uses sorbent comprising activated carbon.  In either case, they condition payment for the testing on the third party performing each step of the '517 patent claims.

## RESPONSE TO PARAGRAPH 352

Each Answering Defendant denies the allegations of paragraph 352 of the TAC.

353.    Alternatively, AJG, DTE, CERT Chem-Mod, and their associated RC Defendants also indirectly infringe by engaging a third party to perform certification testing of refined coal designed for coal-fired power plants that use sorbent comprising activated carbon.  They either instruct the third party to perform the test using coal with added bromine or bromide and using sorbent comprising activated carbon downstream of the combustion chamber, or they instruct the third party to simulate the operation of a particular plant that uses sorbent comprising activated carbon.  In either case, they condition payment for the testing on the third party performing each step of the '517 patent claims.

## RESPONSE TO PARAGRAPH 353

Each Answering Defendant denies the allegations of paragraph 353 of the TAC.

354.    Defendants' acts of infringement have caused damage to ME2C.  ME2C is entitled to recover from Defendants the damages sustained by ME2C as a result of Defendants' wrongful acts in an amount subject to proof at trial. In addition, the infringing acts and practices of Defendants have caused, are causing, and, unless such acts and practices are enjoined by the Court, will continue to cause immediate and irreparable harm to ME2C for which there is no adequate remedy at law, and for which ME2C is entitled to injunctive relief under 35 U.S.C. § 283.

## RESPONSE TO PARAGRAPH 354

Each Answering Defendant denies the allegations of paragraph 354 of the TAC.

## COUNT FIVE: '430 PATENT

355.    ME2C incorporates by reference the preceding paragraphs as if fully set forth herein.

## RESPONSE TO PARAGRAPH 355

Each Answering Defendant incorporates by reference its response to the preceding paragraphs as if fully set forth herein.

356.    U.S. Patent No. 10,668,430 (the "'430 patent"), entitled "Sorbents for the Oxidation and Removal of Mercury", was issued on March 24, 2020, naming Edwin S. Olson, Michael J. Holmes and John H. Pavlish as the inventors. Exhibit D ('430 Patent).

### RESPONSE TO PARAGRAPH 356

Each Answering Defendant denies the allegations of paragraph 356 of the SAC.

357.    ME2C owns by assignment all rights, title, and interest in the '430 Patent, and holds all substantial rights pertinent to this suit, including the right to sue and recover for all past, current, and future infringement.

### RESPONSE TO PARAGRAPH 357

Each Answering Defendant denies the allegations of paragraph 357 of the TAC.

358.    The '430 Patent is valid and enforceable and directed to patentable subject matter.

### RESPONSE TO PARAGRAPH 358

Each Answering Defendant denies the allegations of paragraph 358 of the TAC.

359.    Defendants infringe at least one of claims 1-29 of the '430 patent.

### RESPONSE TO PARAGRAPH 359

Each Answering Defendant denies the allegations of paragraph 359 of the TAC.

360.    ME2C provides the following explanation of infringement with regard to an exemplary claim.

### RESPONSE TO PARAGRAPH 360

Each Answering Defendant denies the allegations of paragraph 360 of the TAC.

361.    Claim 1 of the '430 patent recites: "A method of separating mercury from a mercury-containing gas."

### RESPONSE TO PARAGRAPH 361

Each Answering Defendant responds that to the extent that paragraph 361 of the TAC purports to quote from a claim of the '430 Patent, such statement is incomplete and therefore inaccurate; refers to that document for a statement of its contents; and denies the remaining allegations of paragraph 361 of the TAC.

362.    The power plants connected to an Accused RC Facility perform this method in order to comply with federal and/or state mercury regulations.

## RESPONSE TO PARAGRAPH 362

Each Answering Defendant denies the allegations of paragraph 362 of the TAC.

363.    AJG, DTE, CERT, Chem-Mod and the RC Defendants perform this method when conducting section 45 testing for at least one coal plant that uses activated carbon sorbent.

## RESPONSE TO PARAGRAPH 363

Each Answering Defendant denies the allegations of paragraph 363 of the TAC.

364.    Claim 1 of the '430 patent recites: "combusting coal in a combustion chamber, to provide the mercury-containing gas, wherein the coal comprises an additive comprising $Br_2$, HBr, a bromide compound, or a combination thereof, wherein the additive is added to the coal before the coal enters the combustion chamber, or the combustion chamber comprises an additive comprising $Br_2$, HBr, a bromide compound, or a combination thereof or a combination thereof."

## RESPONSE TO PARAGRAPH 364

Each Answering Defendant responds that to the extent that paragraph 364 of the TAC

purports to quote from a claim of the '430 Patent, such statement is incomplete and therefore

inaccurate; refers to that document for a statement of its contents; and denies the remaining

allegations of paragraph 364 of the TAC.

365.    The power plants connected to an Accused RC Facility perform this step because they combust coal with an additive comprising Br2, HBr, a bromide compound, or a combination thereof to form mercury-containing gas.

## RESPONSE TO PARAGRAPH 365

Each Answering Defendant denies the allegations of paragraph 365 of the TAC.

366.    AJG, DTE, CERT, Chem-Mod and the RC Defendants perform this step when conducting section 45 testing for at least one coal plant that uses activated carbon sorbent.

## RESPONSE TO PARAGRAPH 366

Each Answering Defendant denies the allegations of paragraph 366 of the TAC.

367.    Claim 1 of the '430 patent recites: "injecting a sorbent comprising activated carbon into the mercury-containing gas downstream of the combustion chamber."

## RESPONSE TO PARAGRAPH 367

Each Answering Defendant responds that to the extent that paragraph 367 of the TAC

purports to quote from a claim of the '430 Patent, such statement is incomplete and therefore

inaccurate; refers to that document for a statement of its contents; and denies the remaining allegations of paragraph 367 of the TAC.

368.    The  power plants connected to an Accused RC Facility perform this step by injecting sorbent containing activated carbon downstream of the combustion chamber.

## RESPONSE TO PARAGRAPH 368

Each Answering Defendant denies the allegations of paragraph 368 of the TAC.

369.    AJG, DTE, CERT, Chem-Mod and the RC Defendants perform this step when conducting section 45 testing for at least one coal plant that uses activated carbon sorbent.

## RESPONSE TO PARAGRAPH 369

Each Answering Defendant denies the allegations of paragraph 369 of the TAC.

370.    Claim 1 of the '430 patent recites: "contacting mercury in the mercury-containing gas with the sorbent."

## RESPONSE TO PARAGRAPH 370

Each Answering Defendant responds that to the extent that paragraph 370 of the TAC purports to quote from a claim of the '430 Patent, such statement is incomplete and therefore inaccurate; refers to that document for a statement of its contents; and denies the remaining allegations of paragraph 370 of the TAC.

371.    The power plants connected to an Accused RC Facility perform this step because mercury contained in the gas exiting the combustion chamber contacts the sorbent as all of this material is contained in the same gas.

## RESPONSE TO PARAGRAPH 371

Each Answering Defendant denies the allegations of paragraph 371 of the TAC.

372.    AJG, DTE, CERT, Chem-Mod and the RC Defendants perform this step when conducting section 45 testing for at least one coal plant that uses activated carbon sorbent.

## RESPONSE TO PARAGRAPH 372

Each Answering Defendant denies the allegations of paragraph 372 of the TAC.

373.    Claim 1 of the '430 patent recites: "separating the sorbent contacted with the mercury from the mercury-containing gas."

## RESPONSE TO PARAGRAPH 373

Each Answering Defendant responds that to the extent that paragraph 373 of the TAC purports to quote from a claim of the '430 Patent, such statement is incomplete and therefore inaccurate; refers to that document for a statement of its contents; and denies the remaining allegations of paragraph 373 of the TAC.

374.    The power plants connected to an Accused RC Facility perform this step using equipment to collect the mercury captured by the sorbent in order to comply with mercury regulations.

## RESPONSE TO PARAGRAPH 374

Each Answering Defendant denies the allegations of paragraph 374 of the TAC.

375.    AJG, DTE, CERT, Chem-Mod and the RC Defendants provide coal with added $Br_2$, HBr, a bromide compound, or a combination thereof to coal-fired power plants connected to an Accused RC Facility.

## RESPONSE TO PARAGRAPH 375

Each Answering Defendant denies the allegations of paragraph 375 of the TAC.

376.    When AJG, DTE, CERT, Chem-Mod and the RC Defendants provide coal with added $Br_2$, HBr, a bromide compound, or a combination thereof to a coal-fired power plant with an activated carbon injection system, AJG, DTE, CERT, Chem-Mod and the RC Defendants know that the coal-fired power plant will perform the step of injecting sorbent comprising activated carbon.

## RESPONSE TO PARAGRAPH 376

Each Answering Defendant denies the allegations of paragraph 376 of the TAC.

377.    Alternatively, when AJG, DTE, CERT, Chem-Mod and the RC Defendants provide coal with added $Br_2$, HBr, a bromide compound, or a combination thereof to a coal-fired power plant with an activated carbon injection system, AJG, DTE, CERT, Chem-Mod and the RC Defendants are willfully blind to the fac that the coal-fired power plant will perform the step of injecting sorbent comprising activated carbon.

## RESPONSE TO PARAGRAPH 377

Each Answering Defendant denies the allegations of paragraph 377 of the TAC.

378.    The coal with added $Br_2$, HBr, a bromide compound, or a combination thereof provided by AJG, DTE, CERT, Chem-Mod and the RC Defendants is not a staple article or commodity of commerce suitable for substantial non-infringing use.  This coal is supplied to a conveyance that moves the coal toward the combustion chamber of a power plant that directly infringes the '430 patent.  In addition, AJG, DTE, CERT, Chem-Mod and the RC Defendants tailor the amount of $Br_2$, HBr, a bromide compound, or a combination thereof added to the coal for the specific needs of the power plant.

## RESPONSE TO PARAGRAPH 378

Each Answering Defendant denies the allegations of paragraph 378 of the TAC.

379.   When AJG, DTE, CERT, Chem-Mod and the RC Defendants provide coal with added Br2, HBr, a bromide compound, or a combination thereof to a coal-fired power plant with an activated carbon injection system, AJG, DTE, CERT, Chem-Mod and the RC Defendants know that the provided coal has no substantial use other than to be combusted at the plant that will perform the step of injecting sorbent comprising activated carbon.

### RESPONSE TO PARAGRAPH 379

Each Answering Defendant denies the allegations of paragraph 379 of the TAC.

380.   AJG, DTE, CERT, Chem-Mod and the RC Defendants took the above-described actions intending to cause infringing acts by others.

### RESPONSE TO PARAGRAPH 380

Each Answering Defendant denies the allegations of paragraph 380 of the TAC.

381.   AJG, DTE, CERT, Chem-Mod and the RC Defendants have actual knowledge of the '430 patent and know that actions described above, if taken, would constitute infringement of that patent. Alternatively, AJG, DTE, CERT, Chem-Mod and the RC Defendants believe there is a high probability that others would infringe the '430 patent but have remained willfully blind to the infringing nature of those actions.  AJG, DTE, CERT, Chem-Mod and the RC Defendants therefore infringe the '430 patent under 35 U.S.C. § 271(b) with respect to each coal-fired power plant connected to an Accused RC Facility.

### RESPONSE TO PARAGRAPH 381

Each Answering Defendant denies the allegations of paragraph 381 of the TAC.

382.   AJG, DTE, CERT, Chem-Mod and the RC Defendants indirectly infringes the '430 patent by contributing to infringement by others, such as its customers and end-users by offering to sell and/or selling within the United coal with added BR2, HBR, a bromide compound, or a combination thereof used to practice one or more processes/methods covered by the claims of the '430 patent and that constitute a material part of the inventions claimed in the '430 patent. AJG, DTE, CERT, Chem-Mod and the RC Defendants therefore infringe the '430 patent under 35 U.S.C. § 271(c) with respect to each coal-fired power plant connected to an Accused RC Facility.

### RESPONSE TO PARAGRAPH 382

Each Answering Defendant denies the allegations of paragraph 382 of the TAC.

383.   AJG, DTE, CERT Chem-Mod, and their associated RC Defendants also directly infringe when performing certification testing of refined coal designed for coal-fired power plants that use sorbent comprising activated carbon.  They perform each step of the '430 patent claims, or they engage a third party agent on their behalf to perform each step of the '430 patent claims that acts under their control.

### RESPONSE TO PARAGRAPH 383

Each Answering Defendant denies the allegations of paragraph 383 of the TAC.

384.    Alternatively, AJG, DTE, CERT Chem-Mod, and their associated RC Defendants also directly infringe by directing and controlling a third party to perform certification testing of refined coal designed for coal-fired power plants that use sorbent comprising activated carbon. They either instruct the third party to perform the test using coal with added bromine or bromide and using sorbent comprising activated carbon downstream of the combustion chamber, or they instruct the third party to simulate the operation of a particular plant that uses sorbent comprising activated carbon.  In either case, they condition payment for the testing on the third party performing each step of the '430 patent claims.

## RESPONSE TO PARAGRAPH 384

Each Answering Defendant denies the allegations of paragraph 384 of the TAC.

385.    Alternatively, AJG, DTE, CERT Chem-Mod, and their associated RC Defendants also indirectly infringe by engaging a third party to perform certification testing of refined coal designed for coal-fired power plants that use sorbent comprising activated carbon.  They either instruct the third party to perform the test using coal with added bromine or bromide and using sorbent comprising activated carbon downstream of the combustion chamber, or they instruct the third party to simulate the operation of a particular plant that uses sorbent comprising activated carbon.  In either case, they condition payment for the testing on the third party performing each step of the '430 patent claims.

## RESPONSE TO PARAGRAPH 385

Each Answering Defendant denies the allegations of paragraph 385 of the TAC.

386.    Defendants' acts of infringement have caused damage to ME2C.  ME2C is entitled to recover from Defendants the damages sustained by ME2C as a result of Defendants' wrongful acts in an amount subject to proof at trial. In addition, the infringing acts and practices of Defendants have caused, are causing, and, unless such acts and practices are enjoined by the Court, will continue to cause immediate and irreparable harm to ME2C for which there is no adequate remedy at law, and for which ME2C is entitled to injunctive relief under 35 U.S.C. § 283.

## RESPONSE TO PARAGRAPH 386

Each Answering Defendant denies the allegations of paragraph 386 of the TAC.

## DEFENSES

Pursuant to Federal Rule of Civil Procedure 8(c), the Answering Defendants assert the following defenses.  Assertion of a defense is not a concession that the Answering Defendants have any burden of proving the matter asserted.  In addition to the defenses described below, the Answering Defendants expressly reserve the right to allege additional defenses as they become known through the course of discovery.

### First Defense – Non-Infringement

1.       The Answering Defendants, by virtue of any conduct alleged in the extant claims of the

TAC, have not infringed and are not infringing any asserted claim of the Patents-in-Suit, either

directly or indirectly, literally or under the doctrine of equivalents, willfully or otherwise.

2.       The provision or sale of Refined Coal by any Answering Defendant for use in the Chem-

Mod Solution does not infringe any asserted claim of the Patents-in-Suit, either directly or

indirectly, literally or under the doctrine of equivalents, willfully or otherwise.

**Second Defense – Unpatentability / Invalidity**

3.       Each asserted claim of the Patents-in-Suit is unpatentable or otherwise invalid for failure

to meet the conditions of patentability and otherwise comply with the requirements of

35 U.S.C. § 101.

4.       Each asserted claim of the Patents-in-Suit is unpatentable or otherwise invalid for failure

to meet the conditions of patentability and otherwise comply with the requirements of

35 U.S.C. §§ 102 and 103.  For example, on information and belief, one or more claims of  the

Patents-in-Suit are invalid with respect to the prior art cited in the petitions filed in PTAB Case

Nos. IPR2020-00926, IPR2020-00928, IPR2020-1296, IPR2020-1297,  IPR2020-00832,

IPR2020-00834, IPR2020-1294, and IPR2020-1295.  Furthermore, to the extent that the priority

date of any asserted claim of the Patents-in-Suit is found to postdate conduct of any defendant

that ME2C accuses of infringement, and such conduct is found to infringe that asserted claim,

then that asserted claim is invalid.  For avoidance of doubt, Answering Defendants do not

concede that any accused conduct constitutes patent infringement.

5.       Each asserted claim of the Patents-in-Suit is invalid for failure to comply with the

requirements of 35 U.S.C. § 112.

**Third Defense – Inequitable Conduct**

6. Each claim of the '147 Patent and '114 Patent is unenforceable pursuant to the doctrine of inequitable conduct and/or unclean hands, for the reasons stated below. Each claim of the '225 patent, the '430 patent and the '517 patent is unenforceable due to inequitable conduct based on the doctrine of infectious unenforceability and/or unclean hands, for the reasons stated below.

### Fourth Defense – Lack of Standing

7. Upon information and belief, Plaintiff MES Inc. has no interest in the Asserted Patents that would give MES Inc. standing to sue for patent infringement.  Accordingly, Plaintiff MES Inc.'s claims fail for lack of standing.

### Fifth Defense – Failure to State a Claim

8. Plaintiffs fail to state a claim upon which relief can be granted.

### Sixth Defense – License

9. Under 35 U.S.C. § 271, the Answering Defendants cannot be liable for infringement in connection with licensed uses of a process that is purportedly covered by the asserted claims of the Patents-in-Suit, and licensed thereunder.

10. On information and belief, Plaintiffs have licensed certain power plants to practice the asserted claims of the Patents-in-Suit.

11. On information and belief, the licensed power plants include but are not limited to power plants owned or operated by AEP Generation Resources Inc.; Southwestern Electric Power Co.; AEP Texas Inc.; NRG Energy, Inc.; NRG Texas Power LLC; Midwest Generation EME, LLC; Midwest Generation, LLC; Talen Energy Corporation; Brandon Shores LLC; Talen Generation, LLC; H.A. Wagner LLC; Vistra Energy Corp.; Dynegy Miami Fort, LLC; Dynegy Inc.; Dynegy Midwest Generation, LLC; IPH, LLC; Illinois Power Resources Generating, LLC; and their affiliates (together, the "Licensed Defendants").

12.     According to the TAC, the Answering Defendants are accused of infringement in connection with licensed uses of a process that is purportedly covered by the asserted claims of the Patents-in-Suit at the Licensed Defendants' power plants.

13.     The Answering Defendants cannot be liable for such acts under 35 U.S.C. § 271.

14.     On information and belief, the licensed power plants also include ME2C's customers and other authorized users of ME2C's products (together, "ME2C Customers").

15.     To the extent that Answering Defendants are accused of infringement in connection with licensed uses at ME2C Customers' power plants of a process that is purportedly covered by the asserted claims of the Patents-in-Suit, the Answering Defendants cannot be liable for such acts under 35 U.S.C. § 271.

## Seventh Defense – Waiver/Estoppel

16.     ME2C's claims for relief are barred, in whole or in part, under the doctrines of waiver, equitable estoppel, acquiescence and/or other equitable principles, including to the extent that ME2C licensed, waived, released, entered covenants not to sue, or otherwise extinguished claims of infringement for certain purported direct or indirect infringers.

## Eighth Defense – Patent Misuse

17.      One or more of the Asserted Patents is unenforceable against the Answering Defendants under the doctrine of patent misuse.

18.     On information and belief, Plaintiffs have impermissibly broadened the scope of their patent grants by marketing unpatented chemical products as patented.

19.     On information and belief, Plaintiffs have impermissibly broadened the scope of their patent grants by requiring alleged infringers to purchase unpatented chemical products from Plaintiffs to avoid charges of infringement.

20.     On information and belief, Plaintiffs have unfairly restrained competition in the market for power plant treatment chemicals by leveraging the threat of patent assertion to charge higher prices for chemical products.

21.     On information and belief, Plaintiffs have unfairly restrained competition in the market for power plant treatment chemicals by improperly tying licenses to one or more Asserted Patents to purchases of unpatented chemical products.

22.     On information and belief, Plaintiffs' actions have had anticompetitive effects on market participants by, among other things, forcing entities to purchase unpatented chemicals from Plaintiffs, rather than freely from the market.

23.     Because Plaintiffs have unfairly benefitted from actions that go beyond the statutory rights created by their patent grants, Plaintiffs should not be permitted to enforce the Asserted Patents against the Answering Defendants.

### Ninth Defense – Section 273 Defense

24.     To the extent that the priority date of any Asserted Patent is found to post-date by more than one year the activity of an Answering Defendant other than Erie Fuels Company, LLC, Huron Fuels Company, LLC, and Superior Fuels Company 1, LLC, that is accused of infringement, then Plaintiffs cannot recover from that Defendant for claims that such activity infringes in view of 35 U.S.C. §§ 273, 282(b).  For avoidance of doubt, Defendants do not concede that any accused conduct constitutes patent infringement.

### Additional Defenses Reserved

25.      The Answering Defendants expressly reserve the right to assert and pursue additional defenses, as their investigations into the allegations set forth in the TAC are ongoing and discovery is far from over.

## COUNTERCLAIMS FOR A DECLARATORY JUDGMENT

The Answering Defendants, for their counterclaims against Plaintiffs, hereby allege as follows:

### PARTIES

1.      Defendant AJG Iowa Refined Coal LLC is a Delaware limited liability company with its principal place of business at Two Pierce Place, Itasca, IL 60143.

2.      Defendant Arbor Fuels Company, LLC is a Delaware limited liability company with its principal place of business at 414 S. Main St, Suite 600, Ann Arbor, MI 48104.

3.      Defendant Belle River Fuels Company, LLC is a Delaware limited liability company with its principal place of business at the Belle River Power Plant in Saint Claire County, MI.

4.      Defendant Brandon Shores Coaltech, LLC is a Delaware limited liability company with its principal place of business 1431 Opus Place, Suite 210, Downers Grove, IL 60515.

5.      Defendant Erie Fuels Company, LLC is a Delaware limited liability company with its principal place of business at 414 S. Main Street, Suite 600, Ann Arbor, MI 48104.

6.      Defendant George Neal North Refined Coal, LLC is a Delaware limited liability company with its principal place of business at 414 S. Main St., Suite 600, Ann Arbor, MI 48104.

7.      Defendant George Neal Refined Coal, LLC, sued herein as George Neal South Refined Coal, LLC, is a Delaware limited liability company with its principal place of business at 414 S. Main St, Suite 600, Ann Arbor, MI 48104.

8.      Defendant Huron Fuels Company, LLC is a Delaware limited liability company with its principal place of business at 414 S. Main Street, Suite 600, Ann Arbor, MI 48104.

9.      Defendant Joppa Refined Coal LLC is a Delaware limited liability company with its principal place of business at the Joppa Power Station near Joppa, IL.

10.     Defendant Louisa Refined Coal, LLC is a Delaware limited liability company with its principal place of business at 6901 Dodge St., Suite 201, Omaha, NE 68132.

11.     Defendant Portage Fuels Company, LLC is a Delaware limited liability company with its principal place of business at 414 S. Main St, Suite 600, Ann Arbor, MI 48104.

12.     Defendant Superior Fuels Company 1, LLC is a Delaware limited liability company with its principal place of business at 414 S. Main Street, Suite 600, Ann Arbor, MI 48104.

13.     Defendant Wagner Coaltech LLC is a Delaware limited liability company with its principal place of business at the Herbert A. Wagner Generating Station in Anne Arundel County, MD.

14.     Defendant Walter Scott Refined Coal LLC is a Delaware limited liability company with its principal place of business at Council Bluffs Energy Center near Council Bluffs, IA.

15.     On information and belief, Midwest Energy Emissions Corp. is a Delaware corporation with its principal place of business at 670 D Enterprise Drive, Lewis Center, Ohio 43035.

16.     On information and belief, MES Inc. is a North Dakota corporation with its principal place of business at 311 S. 4th St. STE 118, Grand Forks, ND 58201.

**JURISDICTION AND VENUE**

17.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338(a), and 2201(a), because there is an actual controversy between the parties as to whether the Answering Defendants infringe one or more claims of the Asserted Patents.

18.     This Court has personal jurisdiction over Plaintiff Midwest Energy Emissions Corp. because that plaintiff availed itself of this Court's jurisdiction by filing the original complaint in this action, thereby consenting to this Court's exercise of personal jurisdiction in connection with these counterclaims.

19.     This Court has personal jurisdiction over Plaintiff MES Inc. because that plaintiff availed itself of this Court's jurisdiction by filing the original complaint in this action, thereby consenting to this Court's exercise of personal jurisdiction in connection with these counterclaims.

20.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)(2) and 1391(b)(3), because Plaintiffs have accused the Answering Defendants of patent infringement in this judicial district and are subject to this Court's personal jurisdiction with respect to this action.

**PLAINTIFFS' ASSERTIONS OF FIVE PATENTS**

21.     On July 17, 2019, Plaintiffs filed an "Original Complaint for Patent Infringement" in this Court, seeking damages and a permanent injunction against Defendants based on allegations that each Defendant infringes claims of the '114 patent and the '147 patent.

22.     On May 21, 2021, Plaintiffs filed a "Second Amended Complaint for Patent Infringement" in this Court, seeking damages and a permanent injunction against Defendants based on allegations that each Defendant infringes claims of the '114 patent, the '147 patent, the '225 patent, the '517 patent, and the '430 patent.

23.     On October 7, 2021, Plaintiffs filed a "Third Amended Complaint for Patent Infringement" in this Court, seeking damages and a permanent injunction against Defendants based on allegations that each Defendant infringes claims of the '114 patent, the '147 patent, the '225 patent, the '517 patent, and the '430 patent.

### COUNT I – DECLARATION OF NON-INFRINGEMENT

24.     Defendants incorporate the allegations of paragraphs 1-23 above and paragraphs 1–25 of its defenses as if set forth fully herein.

25.     Plaintiffs' assertions of claims of the Patents-in-Suit, including in this action, have given rise to an actual controversy over whether the sale or provision of Refined Coal by the Answering Defendants, or the use of such Refined Coal in practicing the Chem-Mod Solution at certain power plants, constitutes direct or indirect infringement of any asserted claim of the Patents-in-Suit, either literally or under the doctrine of equivalents, willfully or otherwise, to the extent such claim is not already dismissed by the court.

26.     Neither the sale nor the provision of Refined Coal by the Answering Defendants, nor the use of such Refined Coal in practicing the Chem-Mod Solution at certain power plants, infringes any asserted claim of the Patents-in-Suit, either directly or indirectly, and either literally or under the doctrine of equivalents.

27.     The Answering Defendants further do not infringe any claim of the Asserted Patents, either directly or indirectly, to the extent that the Plaintiffs have extinguished any claims of infringement by license, waiver, release, covenant not to sue, or equitable estoppel.

28.     The Answering Defendants are entitled to a declaratory judgment that they have not infringed, and are not infringing, any claim of the Asserted Patents, either directly or indirectly,

literally or under the doctrine of equivalents, willfully or otherwise, to the extent such claim is not already dismissed by the court.

### COUNT II – DECLARATION OF INVALIDITY AND UNENFORCEABILITY

29.     The Answering Defendants incorporate the allegations of paragraphs 1-28 above and paragraphs 1–25 of its defenses as if set forth fully herein.

30.     Plaintiffs' assertions of the Patents-in-Suit, including in this action, have given rise to an actual controversy over whether the claims of the Asserted Patents are valid and enforceable.

31.     Each claim of the Patents-in-Suit is unpatentable or otherwise invalid for failure to meet the conditions of patentability and otherwise comply with the requirements of 35 U.S.C. § 101.

32.     Each claim of the Patents-in-Suit is unpatentable or otherwise invalid for failure to meet the conditions of patentability and otherwise comply with the requirements of 35 U.S.C. §§ 102 and 103, including but not limited to, failure to meet the conditions of patentability in light of the prior art cited in the petitions filed with the PTAB in IPR Case Nos. IPR2020-00926, IPR2020-00928, IPR2020-1296, IPR2020-1297, IPR2020-00832, IPR2020-00834, IPR2020-1294, and IPR2020-1295.

33.     Each claim of the Patents-in-Suit is invalid for failure to comply with the requirements of 35 U.S.C. § 112.

34.     Each claim of the '147 patent and each claim of the '114 patent is unenforceable pursuant to the doctrine of inequitable conduct and/or unclean hands.  Each claim of the '225 patent, the '430 patent and the '517 patent is unenforceable based on inequitable conduct based on the doctrine of infectious unenforceability and/or unclean hands.

35.     During the prosecution of the '114 patent and the '147 patent, the inventors withheld materials references that they themselves authored from the U.S. Patent and Trademark Office ("USPTO").  Further, the inventors knowingly made false statements about the state of the prior art to the USPTO that would have been belied by the withheld references.  The only reasonable inference for these actions on the part of the inventors was to deceive the USPTO in order to obtain the '147 and '114 patents.

### *Prosecution of the '147 and '114 Patent*

36.     The application that would become the 147 Patent was US Patent Application 12/419,219 ("'219 application") which was filed on April 6, 2009.

37.     The only applicants of the '219 application are the listed putative inventors Edwin S. Olson, Michael J. Holmes, and John H. Pavlish ("Applicants").

38.     Each listed putative inventor signed an inventor's declaration pursuant to 37 CFR 1.63 as part of the filing of the '219 application.  This declaration included an acknowledgement of the inventor's duty to disclose to the United States Patent and Trademark Office all information known to the inventors to be material to patentability.

39.     The application that would become the '147 Patent was US Patent Application 15/978,760 ("'760 application") which was filed on May 14, 2018.

40.     The only applicants of the '760 application are the listed inventors Edwin S. Olson, Michael J. Holmes, and John H. Pavlish ("Applicants").

41.     Each listed putative inventor signed an inventor's declaration pursuant to 37 CFR 1.63 as part of the filing of the '760 application.  This declaration included an acknowledgement of the

inventors duty to disclose to the United States Patent and Trademark Office all information known to the inventors to be material to patentability.

42.     The original claims of the '219 application as of the April 6, 2009 filing date contained no reference to claim elements of "graphene sheets" or "carbene edges."

43.     All pending claims of the '219 application were rejected on October 14, 2010 in a Final Rejection.  All pending claims except for dependent claim 46 and dependent claims 53-57 were rejected under 35 U.S.C. 102(b) as being clearly anticipated by Nelson Jr., US Patent Application No. 2004/0003716 ("Nelson Jr.").  Dependent claim 46 and dependent claims 53-57, among others, were rejected under 35 U.S.C. 103(a) as being unpatentable under Nelson Jr. in view of additional references.

44.     The Applicants filed a February 15, 2011 amendment and request for reconsideration ("2011 Amendment").  In the 2011 Amendment, the Applicants amended Claim 34, the only pending independent claim, to include the limitation "and wherein the activated carbon contains graphene sheets having carbene species edge sites which react with the bromine containing promoter to form a carbocation paired with a bromide anion in the promoted  brominated sorbent for oxidation of the mercury."

45.     The claim language requiring "graphene sheets having carbene species edge sites" was added during prosecution of the '147 patent in order to overcome an anticipation rejection under 35 U.S.C. § 102.

46.    The claim language requiring "graphene sheets having carbene species edge sites" was added during prosecution of the '147 patent in order to overcome obviousness rejections under 35 U.S.C. § 103.

47.    In the Remarks submitted to the Patent Office with the 2011 Amendment, the Applicants remarked that "Nelson, Jr. fails to disclose activated carbon containing graphene sheets having carbene species edge sites therein."

48.    In the Remarks submitted to the Patent Office with the 2011 Amendment, the Applicants remarked that "Nelson, Jr. describes exemplary activated carbons at paragraph 69."

49.    In the Remarks submitted to the Patent Office with the 2011 Amendment, the Applicants argued that, in view of the applicant's amendments, "the claimed invention is not anticipated by Nelson Jr., and would not have been obvious from Nelson, Jr. Accordingly, withdrawal of this rejection is requested."

50.    In a November 23, 2011 Non-Final Rejection, the Patent Office rejected all pending claims under 35 U.S.C. 103(a) as being unpatentable over Nelson, Jr. in light of other references.

51.    On May 20, 2011, the '219 Applicants filed an Amendment and Response under 37 C.F.R. § 1.111 (May 2011 Response).  No claims were amended or canceled in the May 2011 Response.

52.    In the May 2011 Response, the Applicants stated that "[t]he Examiner admits that Nelson does not disclose or suggest graphenes, or edge sites of graphene sheets being carbenes.  It also does not disclose or suggest the reaction of the carbene sites with a bromine containing promoter to yield bromide anion paired carbocation sites on the carbon as being the sites reactive with

mercury, which serve to react with and immobilize mercury vapor from the waste gas stream."
In the May 2011 Response, the Applicants requested withdrawal of the rejections with respect to
claim 34 and all rejected dependent claims.

53.     In an August 4, 2011 Non-Final Rejection ("August 2011 Rejection"), the Patent Office
rejected all pending claims under 35 U.S.C. 103(a) as being unpatentable over Nelson, Jr. in light
of other references.

54.     In the August 2011 Rejection, the examiner stated that Nelson Jr. reference "does not
disclose the activated carbon being graphene sheets and the binding sites being carbene species
edge sites."

55.     In the August 2011 Rejection, the examiner stated that "Chlorine and bromine are very
similar in there [sic] chemical characteristics, and there would be a reasonable expectation of
success when using the same methods to regenerate a brominated sorbent as is used for a
chlorinated sorbent."

56.     On August 31, 2011, the examiner held a telephone interview with the Applicants
representatives Nicholas P. Lanzatella and Ramani V. Marakani.

57.     On October 27, 2011, the Applicants filed an Amendment and Response under 37 C.F.R.
§ 1.111 (October 2011 Response).  In the October 2011 Amendment, independent claim 34 was
amended to add the word "particulate" before the phrase "sorbent material."  According to the
October 2011 Response, this amendment was proposed during the August 31, 2011 interview.

58.     In the October 2011 Response, the Applicants stated that "[t]he Examiner admits that
Nelson does not disclose or suggest the activated carbon being graphene sheets, or edge sites of

graphene sheets being carbenes."  In the October 2011 Response, the Applicants requested withdrawal of the rejections with respect to claim 34 and all rejected dependent claims.

59.     In the October 2011 Response, the Applicants argued that the examiners' rejections over Nelson Jr. in light of other references had a fundamental deficiency "concerning activated carbon containing graphene sheets, carbene-containing edge sites of the graphene sheets and reaction bromine promoting agents, and the resulting production of carbocations that can react with and immobilize vaporized mercury."  The Applicants next stated that "[a]ccordingly, a prima facie case" of obviousness had not been properly made.  The Applicants repeated the above two statements in regard to multiple combinations of references, each of which included the Nelson Jr. reference.

60.     In a January 10, 2012 Notice of Allowance, Claims 34-36, 39, 40, and 42-61 were allowed.  The examiner's entire statement of reasons for allowance was that "a method for separating mercury from a mercury containing gas comprising promoting at least a portion of a particulate sorbent material comprising activated carbon by chemically reacting the sorbent material with a bromine containing promoter to form a promoted brominated sorbent, wherein the activated carbon contains grapheme sheets having carbine species edge sites which react with the bromine containing promoter to form a carbocation paired with a bromide anion in the promoted  brominated sorbent for oxidation of the mercury could not be found within the prior art."

61.     The issued claims of the '147 patent require that the activated carbon contain "graphene sheets having carbene species edge sites."

### 2003 Activated Carbon Article

62.     In 2003, listed inventors on the '219 Application Edwin S. Olson and John H. Pavlish, and other authors, published a two-page article, "The Multiple Site Model for Flue Gas-Mercury Interactions on Activated Carbons: the Basic Site," Fuel Chemistry Division Preprints 2003, 48(a), 30. ("2003 Article").

63.     The 2003 Article was also presented at a conference in March 2003: the 225th American Chemical Society National Meeting, New Orleans, LA, March 23-27, 2003.

64.     The subject matter of the 2003 Article was activated carbons.  The particular activated carbon investigated was commercial powdered carbon Norit FGD sorbent.

65.     The 2003 Article states that "[t]he commercial powdered carbon Norit FGD sorbent has been thoroughly investigated at the Energy & Environmental Research Center (EERC) as a sorbent for elemental mercury (Hg0) in flue gas streams."

66.     The 2003 Article teaches that the activated carbon of the Norit FGD sorbent contains zig-zag carbene structures at the edges of carbon graphene layers.

67.     The authors of the 2003 Articles propose that the carbene structures at the edges of the graphene layers offer more detail on the nature of the carbon site and its interaction with flue gas and Hg.

68.     The 2003 Article includes a figure that shows the interactions that, according to the authors, adequately explain the behavior of the FGD sorbent.  That figure is Figure 2, shown below.

**Figure 2.** Basic site model.

69.     Figure 2 in the 2003 Article shows the zig-zag Lewis base carbene site of the Figure 2 in

the 2003 Article shows the zig-zag Lewis base carbene site of the Norit FGD sorbent.

70.     Paragraph 69 of the Nelson reference states in part that "The gas-phase bromine

treatment of this invention has been tested on many different commercially-available powdered

activated carbons (PACs). Each has been found to be easily brominated to at least 15 wt % Br,

including PACs from …Norit. Norit's Darco FGD® is a common PAC yardstick frequently used

by other researches as a competitive yardstick."

71.     As of February 2011, inventors Edwin S. Olson and John H. Pavlish were aware of the

2003 Article that they co-authored.

72.     On information and belief, inventor Michael J. Holmes was also aware of the 2003

Article as of February 2011, as he had been working with Edwin S. Olson and John H. Pavlish

on the study of activated carbon sorbents for the removal of mercury at the EERC Foundation.

73.     As of February 2011, inventors Edwin S. Olson and John H. Pavlish understood the

teachings of the 2003 Article that they co-authored.

74.     By February 2011, inventors Edwin S. Olson, Michael J. Holmes and John H. Pavlish

had published extensively on research conducted using the Norit FGD PAC referred to in

paragraph 69 of the Nelson reference. For example, in February 2005, the inventors John H.

Pavlish and Michael J. Holmes were co-authors of a Final Report submitted to the U.S.

Department of Energy regarding Cooperative Agreement No. DE-FC26-034NT41897 wherein

they described "NORIT Americas Inc. DARCO® FGD."

75.     As of February 2011, inventors Edwin S. Olson and John H. Pavlish understood that the

2003 Article taught that Norit FGD powdered activated carbon used in the Nelson Jr. reference

included graphene sheets having carbene edge sites.

76.     As of February 2011, inventor Michael J. Holmes also understood the teaching of the

2003 article as stated in the preceding paragraph.

77.     As of February 2011, inventors Edwin S. Olson and John H. Pavlish knew that Norit

FGD powdered activated carbon used in the Nelson Jr. reference included graphene sheets

having carbene edge sites.

78.     As of February 2011, inventor Michael J. Holmes also understood the properties of

Norgit FGD powder used in the Nelson Jr reference as stated in the preceding paragraph.

### *Misrepresentations to the USPTO*

79.     The 2003 Article was material prior art to the '219 application.

80.     Each of the listed inventors on the '219 application knew, prior to and during the

prosecution of the '219 application, that the 2003 article was material to the patentability of that

application.

81.     None of the Applicants or their representatives disclosed the 2003 Article during the prosecution of the '219 application.

82.     Inventors Edwin S. Olson and John H. Pavlish knew that the examiner's statement in the August 2011 Rejection that Nelson Jr. reference "does not disclose the activated carbon being graphene sheets and the binding sites being carbene species edge sites" was false.

83.     Inventors Edwin S. Olson and John H. Pavlish knew that the examiner's statement in the August 2011 Rejection that the Nelson Jr. reference "does not disclose the activated carbon being graphene sheets and the binding sites being carbene species edge sites" was belied by the 2003 Article.

84.     Inventor Michael J. Holmes also knew the above facts regarding the examiner's statement as described in the two preceding paragraphs.

85.     The statement made by the Applicants to the Patent Office in connection with the 2011 Amendment that "Nelson, Jr. fails to disclose activated carbon containing graphene sheets having carbene species edge sites therein" was false.

86.     The Applicants knew that the statement made to the Patent Office in connection with the 2011 Amendment that "Nelson, Jr. fails to disclose activated carbon containing graphene sheets having carbene species edge sites therein" was false at the time it was submitted to the Patent Office.

87.     The Patent Office relied on the Applicants' statement made in connection with the 2011 Amendment that "Nelson, Jr. fails to disclose activated carbon containing graphene sheets having carbene species edge sites therein" in the subsequent prosecution of the '219 Application.

88.     At no point in the prosecution of the '219 Application did the Named Inventors correct the examiner's incorrect belief that Nelson Jr. reference does not disclose activated carbon that has graphene sheets with binding sites being carbene species edge sites.

89.     The only reasonable inference from decision of the Applicants to make the false statement referred to in the above paragraph was that the statement was made with the purpose of deceiving the Patent Office in order to obtain allowance of the patent.

90.     If the examiner had been aware of the 2003 Article, she would not have concluded that Nelson Jr. does not disclose the activated carbon being graphene sheets and the binding sites being carbene species edge sites.

91.     If the examiner had been aware of the 2003 Article, the claims of the '147 Patent would not have issued in their current form.

92.     Named inventors Edwin S. Olson and John H. Pavlish knew that the examiner relied on her incorrect understanding that Nelson Jr. did not concern activated carbon having graphene sheets with carbene species edge sites therein.  Named inventors Olson and Pavlish knew that this understanding was incorrect and was shown to be incorrect by the 2003 Article.  The single reasonable inference for their reason for withholding the 2003 Article during prosecution, which they co-authored, was to prevent the examiner from correcting this understanding and thus obtain allowance of the patent.

93.     The inference that inventors Olson and Pavlish purposely withheld the 2003 Article in order to misrepresent the state of the prior art is further evidenced by the centrality of the issue of graphene sheets with carbene edge sites to the prosecution, the consistent repetition by the

Applicants of statements mischaracterizing the Nelson, Jr. reference, and the very short length of the 2003 Article.

### *Additional Material References Withheld*

94.    Figure 2 of the 2003 Article shows the mechanism by which Inventors Olson, Holmes and Pavlish claim that chlorine promotes adsorption of mercury onto activated carbon.

95.    Figure 2 of the 2003 Article is substantially identical to Figure 2 of the '147 Patent, and Figure 2 of the '114 Patent, with the exception that the chlorine (Cl) in the 2003 Article is replaced with bromine (Br) in the patents.

96.    As stated above, the examiner stated during the prosecution of the '146 Patent that "Chlorine and bromine are very similar in there [sic] chemical characteristics, and there would be a reasonable expectation of success when using the same methods to regenerate a brominated sorbent as is used for a chlorinated sorbent."

97.    Inventors Olson, Holmes  and Pavlish are co-authors of two additional references disclosing the promoted halogen scheme depicted in Figure 2 of the 2003 Article.

98.    Inventors Olson, Holmes  and Pavlish are co-authors on Olson et al., "Chemical mechanisms in mercury emission control technologies," J. Phys. IV France 107 (2003), presented May 26-30, 2003 and the XIIth International Conference on Heavy Metals in the Environment in Grenoble, France ("2003 France Presentation").

99.    Inventors Olson, Holmes  and Pavlish are co-authors on Olson et al., "An Improved Model for Flue Gas-Mercury Interactions on Activated Carbons," Paper #142 at the Combined Power Plant Air Pollutant Control Mega Symposium, May 19-22, 2003 in Washington, DC ("2003 Washington Presentation").

100.    Each of the papers in the above two paragraphs is prior art under 35 U.S.C. § 102(b) to the '147 patent and to the '114 patent.

101.    The specification of the '114 Patent describes the Figure 2 as follows:  "Thus an entirely new model is presented for the reactivity of bromine-treated carbon with mercury shown in Fig. 2."

102.    Both the 2003 France Presentation and 2003 Washington Presentation disclose the chemical model of the reactivity of halogen-treated carbon with mercury that is substantially identical to the model presented in the '114 Patent and '147 patent as new.

103.    The 2003 France Presentation and 2003 Washington Presentation disclose the same chemistry for chlorine that the inventors claimed they discovered for bromine.

104.    Neither the 2003 France Presentation nor the 2003 Washington Presentation was identified or disclosed by the Applicants during the prosecution of the '114 or '147 patent.

105.    Because the chemical characteristics of chlorine and bromine are "very similar," according to the examiner of the '147 and '114 patents, the Inventors knew that the 2003 France Presentation and 2003 Washington Presentation were material to the patentability of the claims of the '114 patent and the '147 patent.

106.    The statement by the inventors that Fig. 2 shows "an entirely new model" is false, as the model was disclosed in the 2003 prior art references described above.

107.    The inventors withheld the 2003 prior art references from the prosecution of the '114 and '147 patents despite their knowledge that they were material.

108.    The only reasonable inference for the inventors decision to withhold the 2003 prior art references was to misrepresent to the Patent Office that the model shown in Figure 2 of the '114 and '147 patent was a new model and to thus obtain issuance of the claims.

109.    Each of the '225, '517, and '430 patents is a related patent to both the '114 and '147 patent.

110.    Each claim of the '225, '517, and '430 patents includes, inter alia, elements relating to the combusting of coal and a bromine or bromide additive, and the use of a sorbent containing activated carbon.  Each of the '225, '517, and '430 patents includes Figure 2, which is substantially identical to Figure 2 in the '114 and '147 patent discussed above.

111.    The inequitable conduct of the named inventors discussed above relating to the '147 patent, which occurred earlier in the patent family chain, bears an immediate and necessary relationship to the enforcement of the '225, '517, and '430 patents, as the claims concern, inter alia, the interaction of additive halogens with an activated carbon sorbent.

112.    The inequitable conduct of the inventors discussed above relating to the '114 patent, which occurred earlier in the patent family chain,  bears an immediate and necessary relationship to the enforcement of the '225, '517, and '430 patents, as the claims concern, inter alia, the interaction of additive halogens with an activated carbon sorbent.

113.    The inequitable conduct associated with the '147 and '114 patent occurred earlier in the patent family chain that lead to the '225, '517, and '430 patents.  Because the inequitable conduct associated with the '147 and '114 patents bears an immediate and necessary relation to the enforcement of the '225, '517, and '430 patents, the inequitable conduct associated with the

'147 and '114 patents, individually and together, renders each of the '225, '517, and '430 patents unenforceable.

114.    Each Answering Defendant is entitled to a declaratory judgment that each claim of the Asserted Patents is invalid and unenforceable.

## <u>JURY TRIAL DEMAND</u>

Each Answering Defendant hereby demands a trial by jury on all issues so triable.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, each Answering Defendant respectfully requests:

A.    An order dismissing all of Plaintiffs' claims with prejudice and denying all relief requested by Plaintiffs;

B.    A  declaration that any preparation or provision of Refined Coal by that Answering Defendant, or any other accused activities by such Answering Defendant, does not infringe, directly, by inducement, or by contribution, any asserted claim of the Patents-in-Suit, to the extent that such claims are not already dismissed by the court;

C.    A declaration that such Answering Defendant does not infringe, directly or indirectly, literally or under the doctrine of equivalents, or willfully, any asserted claim of the Patents-in-Suit, to the extent any such claims were not dismissed by the court;

D.    A declaration that each asserted claim of each Patent-in-Suit is invalid  and unenforceable;

E.    An award of attorney fees and costs pursuant to 35 U.S.C. § 285; and

F.    Any such further relief at law or in equity as the Court deems just and proper, including but not limited to costs, fees, expenses, interest, and attorney fees.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Brian P. Egan*

_____
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com
araucci@morrisnichols.com

OF COUNSEL:

Richard W. Mark
Joseph Evall
Paul J. Kremer
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
(212) 351-4000

*Attorneys for Defendants*
*AJG Iowa Refined Coal LLC*
*Arbor Fuels Company, LLC*
*Belle River Fuels Company, LLC*
*Brandon Shores Coaltech LLC*
*Erie Fuels Company, LLC*
*George Neal North Refined Coal, LLC*
*George Neal Refined Coal, LLC*
*Huron Fuels Company, LLC*
*Joppa Refined Coal LLC*
*Louisa Refined Coal, LLC*
*Portage Fuels Company, LLC*
*Superior Fuels Company 1, LLC*
*Thomas Hill Refined Coal LLC*
*Wagner Coaltech  LLC and*
*Walter Scott Refined Coal LLC*

November 17, 2021

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on November 15, 2021, upon the following in the manner indicated:

James M. Lennon, Esquire                            *VIA ELECTRONIC MAIL*
DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE 19806
*Attorneys for Plaintiffs*

Bradley W. Caldwell, Esquire                        *VIA ELECTRONIC MAIL*
Jason D. Cassady, Esquire
John Austin Curry, Esquire
Justin T. Nemunaitis, Esquire
CALDWELL CASSADY CURRY PC
2010 Cedar Springs Road, Suite 1000
Dallas, TX 75201
*Attorneys for Plaintiffs*

Robert S. Saunders, Esquire                         *VIA ELECTRONIC MAIL*
Nicole A. DiSalvo, Esquire
Jessica R. Kunz, Esquire
Daniel S. Atlas, Esquire
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, DE 19899-0636
*Attorneys for Defendants CERT Coal Holding,*
*LLC, CERT Holdings LLC, CERT Holdings 2018,*
*LLC, CERT Operations LLC, CERT Operations II*
*LLC, CERT Operations III LLC, CERT*
*Operations IV LLC, CERT Operations V LLC,*
*CERT Operations RCB LLC, Senescence Energy*
*Products, LLC, Rutledge Products, LLC,*
*and Alistar Enterprises, LLC*

Douglas R. Nemec, Esquire                                   *VIA ELECTRONIC MAIL*
Leslie A. Demers, Esquire
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, NY  10001-8602
*Attorneys for Defendants CERT Coal Holding,*
*LLC, CERT Holdings LLC, CERT Holdings 2018,*
*LLC, CERT Operations LLC, CERT Operations II*
*LLC, CERT Operations III LLC, CERT*
*Operations IV LLC, CERT Operations V LLC,*
*CERT Operations RCB LLC, Senescence Energy*
*Products, LLC, Rutledge Products, LLC,*
*and Alistar Enterprises, LLC*


                                   */s/ Brian P. Egan*
                    _____

                    Brian P. Egan (#6227)