IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MIDWEST ENERGY EMISSIONS CORP. and MES INC., <br><br> Plaintiffs, <br><br> v. <br><br> ARTHUR J. GALLAGHER & CO., et al., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) C.A. No. 19-1334 (RGA) (CJB) <br> ) <br> ) <br> ) <br> ) |

**LETTER TO THE HONORABLE CHRISTOPHER J. BURKE
FROM DEFENDANTS REGARDING OPPOSITION TO
<u>MOTION FOR LEAVE TO FILE FOURTH AMENDED COMPLAINT</u>**

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
Robert S. Saunders (#3027)
Nicole A. DiSalvo (#4662)
Jessica R. Kunz (#5698)
One Rodney Square
P.O. Box 636
Wilmington, DE  19899-0636
(302) 651-3000
rob.saunders@skadden.com
nicole.disalvo@skadden.com
jessica.kunz@skadden.com

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com
araucci@morrisnichols.com

OF COUNSEL:

Douglas R. Nemec
Leslie A. Demers
SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP
One Manhattan West
New York, NY   10001-8602
(212) 735-3000

*Attorneys for Defendants
Alistar Enterprises, LLC, CERT Operations RCB LLC, CERT Operations IV LLC, CERT Operations V LLC,
Rutledge Products, LLC, Senescence Energy Products, LLC, Spring Hill Resources LLC, Buffington Partners LLC, Bascobert (A) Holdings LLC, Larkwood Energy LLC, and Cottbus Associates LLC.*

OF COUNSEL:

Richard W. Mark
Joseph Evall
Paul J. Kremer
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY   10166-0193
(212) 351-4000

*Attorneys for Defendants
AJG Iowa Refined Coal LLC
Arbor Fuels Company, LLC
Belle River Fuels Company, LLC
Brandon Shores Coaltech, LLC
Erie Fuels Company, LLC
George Neal North Refined Coal, LLC
George Neal Refined Coal, LLC
Huron Refined Coal, LLC
Joppa Refined Coal LLC
Louisa Refined Coal, LLC
Portage Fuels Company, LLC
Superior Fuels Company 1, LLC
Thomas Hill Refined Coal LLC
Wagner Coaltech LLC
Walter Scott Refined Coal LLC*

March 10, 2022

Dear Judge Burke:

We write on behalf of all Defendants in opposition to Plaintiffs' Motion for Leave to File Fourth Amended Complaint (D.I. 375). The Court should deny Plaintiffs' Motion in part, as explained below, because at least the following claims in Defendants' proposed Fourth Amended Complaint (D.I. 373-1) ("4AC") are futile. A motion to amend a pleading should be denied as futile if the resulting claim does not "state a claim upon which relief could be granted." *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). Many of Plaintiffs' proposed amendments fail that test.

*First*, Plaintiffs claim that certain Defendants who make and sell bromine-treated Refined Coal to power plants ("REFCOs") are sham entities, and, on that allegation, Plaintiffs seek to pierce the corporate veil and hold the REFCOs' corporate parents—some of whom were previously dismissed from the case—responsible for the REFCOs' activities. The 4AC's conclusory veil-piercing allegations fail as a matter of law, and the 4AC does not attempt to state any direct claim against those parent entities. Moreover, all allegations and claims against the corporate parents are improper because they do not distinguish among various entities and are impermissibly "lumped" with allegations and claims against other Defendants. This Court has previously dismissed claims and parties for that pleading deficiency.

*Second*, the Court should reject all of the inducement claims in the 4AC, because the "intent" allegations fail as a matter of law. This Court dismissed Plaintiffs' Original Complaint ("OC") for that deficiency, but permitted inducement claims to go forward after Plaintiffs added allegations of "post-emission control testing" to their Second Amended Complaint ("SAC"). The 4AC excises those allegations, which were factually false, leaving Plaintiffs' intent allegations in the same form that the Court found wanting in the OC. Accordingly, the inducement claims in the 4AC are futile.

**<u>Procedural Background</u>**: The OC alleged that certain power plant defendants directly infringed the method claims of the patents-in-suit by performing two steps: the "Bromine Step," when they burned bromine-treated "Refined Coal," and the "Activated Carbon Step," when they injected activated carbon ("AC") into the combustion gases. In addition, the OC alleged that REFCO defendants, which made Refined Coal and sold it to the power plants, induced and contributed to the power plants' infringement. The OC also alleged that various corporate parents of the REFCOs jointly infringed. This Court's First Report & Recommendation on Defendants' motions to dismiss ("R&R-1") (D.I. 110) concluded that the inducement and other claims failed as a matter of law. Regarding inducement, the Court explained that the OC alleged no facts rendering it plausible that when any REFCO provided Refined Coal to a power plant for the alleged performance of the "Bromine Step," the REFCO intended for the power plant also to practice the "Activated Carbon Step" required by the patent claims. The Court dismissed all claims against the REFCOs and the corporate parents, without prejudice. *See* D.I. 110 at 2-4, n.7, and 23.

Plaintiffs settled with the power plant defendants, then filed a First Amended Complaint ("FAC") and the SAC, newly pleading that: (i) the REFCOs used "post-emission control testing" to qualify Refined Coal for tax credits under 26 U.S.C. § 45; (ii) such testing measured the emissions reduction resulting from the combustion of Refined Coal with the concomitant use of AC to treat the emissions gases; and (iii) thereafter, when the REFCOs supplied Refined Coal to power plants,

The Honorable Christopher J. Burke                                                                March 10, 2022

they intended the power plants to use Refined Coal in combination with AC so that they could obtain the emission reduction demonstrated by the qualification testing that had used AC.

The Court granted in part Defendants' motions to dismiss, D.I. 279 ("R&R-2"), (i) dismissing without prejudice all claims against the corporate parents on, *inter alia*, lumped pleading grounds, and requiring Plaintiffs to obtain leave before attempting to reinstate claims against any of them (*id.* at 8-9, 42); (ii) dismissing with prejudice the joint infringement claims (*id.* at 41); and (iii) concluding that the SAC's "post-emission control testing" theory met Plaintiffs' obligation to plausibly plead that the REFCOs sold Refined Coal with the specific intent that power plants would also use AC, because according to the SAC, the REFCOs needed power plants to use AC just as it was allegedly used in the Section 45 qualification testing (*id.* at 24-25). The District Court issued an order adopting the portions of R&R-2 relevant here. D.I. 319.

Discovery showed that—as Defendants repeatedly told Plaintiffs—the qualification testing did not need to use AC, and did not in fact use AC, leading Plaintiffs to make a U-turn. The 4AC therefore removes all "post-emission control testing" allegations (and the direct infringement claims which were predicated on them). As a consequence, the inducement claims once again fail.

**The 4AC Does Not State a Claim Against the Corporate Parents**

The 4AC asserts that each of the AJG-affiliated REFCOs "have acted as the alter ego and a sham entity" on behalf of three parties previously dismissed from the case (Arthur J. Gallagher & Co., AJG Coal LLC, and Gallagher Clean Energy, LLC (lumped by Plaintiffs as "AJG"), and a fourth proposed new Defendant, AJG Financial Services Inc. 4AC ¶ 235. Plaintiffs make similar allegations as to the DTE-affiliated REFCOs and a proposed new defendant, DTE Energy Resources, LLC (together with AJG and AJG Financial Services Inc., "Parent Entities"). 4AC ¶¶ 235, 245. Plaintiffs' pleading fails as a matter of law.

***Plaintiffs' Alter-Ego Theory:*** To state an alter-ego veil piercing claim under Delaware law, a plaintiff has the burden to "plead facts supporting an inference that the corporation, through its alter-ego, has created a sham entity designed to defraud investors or creditors." *E.I. du Pont de Nemours v. Agfa-Gavaert NV*, 335 F. Supp. 3d 657, 675 (D. Del. 2018). "[E]ffectively," the corporation "must be a sham and exist for no other purpose than as a vehicle for fraud." *Wenske v. Blue Bell Creameries, Inc.*, 2018 WL 5994971, at *7 (Del. Ch. Nov. 13, 2018). When analyzing alter-ego claims, Delaware courts consider whether: (1) the company was adequately capitalized for the undertaking; (2) the company was solvent; (3) corporate formalities were observed; (4) the dominant shareholder siphoned company funds; and (5) in general, the company simply functioned as a façade for the dominant shareholder. *MicroStrategy Inc. v. Acacia Research Corp.*, 2010 WL 5550455, at *11-12 (Del. Ch. Dec. 30, 2010) (veil-piercing claim requires "facts suggesting that" alleged breach of contract and fraud "arose out of a 'misuse of the corporate structure'"). Plaintiffs "actually need to plead facts about those relevant factors." *See* R&R-2 at 10.

They do not. The central "alter ego" allegations of the 4AC are that the Parent Entities provided accounting and tax services for the REFCOs; that the REFCOs "were designed to operate at a loss" to generate tax credits; that such credits are "passed along" to others; and that the REFCOs required parental approval to enter into contracts. D.I. 373-1 at ¶¶ 238, 239, 242. But these allegations describe a everyday parent-subsidiary relationship. *See Masimo Corp. v. Wireless,* 2020 WL 7260660, *13 (S.D. Cal. Dec. 10, 2020) (allegations that parent had "significant ownership"

2

interest in subsidiary and "placed its employees at high-level positions" in subsidiary "reflect high-level involvement . . . in a subsidiaries' operations or finances," not that subsidiary is parent's alter ego) (cited at R&R-2 at 10). The 4AC nowhere pleads "that the Delaware Subsidiary" is not "validly incorporated," that it does not "elect[] its own officers and directors," or that it fails to "file[] tax returns in its own name" or "maintain[] corporate records" or have "its own corporate checking account"—*i.e.*, the 4AC does not allege that the REFCOs "disregard[] corporate formalities." *See E.I. du Pont de Nemours*, 335 F. Supp. 3d at 676, 680. In short, the 4AC does not support a plausible inference that the REFCOs were "sham entities" or "alter egos" or otherwise improper. *See Quantum Loyalty Sys., Inc. v. TPG Rewards, Inc.*, 2009 WL 5184350, at *7 (D. Del. Dec. 23, 2009) ("Even if [plaintiffs] ha[d] pled sufficient facts [directed to] alter ego . . ., the . . . complaint lacks any facts evidencing fraud or inequity.").

***Plaintiffs' Agency Theory***: Plaintiffs also assert that the AJG- and DTE-affiliated REFCOs act as "the agents" of the four "new" AJG entities and DTE Energy Resources, respectively. Under an agency theory of veil piercing, a Delaware court "attributes specific acts to the parent because of the parent's authorization of those acts, but does not treat the parent and the subsidiary as one entity." *C.R. Bard, Inc. v. Guidant Corp.*, 997 F. Supp. 556, 560 (D. Del. 1998) (holding that alleged patent infringer subsidiary was not parent's agent). Specific factors relevant to the agency theory include "the extent of overlap of officers and directors, methods of financing, the division of responsibility for day-to-day management, and the process by which each corporation obtains its business." *Applied Biosys., Inc. v. Cruachem Ltd.*, 772 F. Supp. 1458, 1463 (D. Del. 1991).

Again, the 4AC's allegations fall short. Plaintiffs allege that the money for the coal, chemical additives, and licenses purchased by the REFCOs comes from the parent entities and that the "benefits" of the tax credits earned by the REFCOs "ultimately accrue" to the parent company. 4AC ¶¶ 237-38, 246-47. But "[t]he fact that a parent corporation finances the operations of a subsidiary is not sufficient to support a finding that the subsidiary is a mere agent or instrumentality of the parent." *E.I. du Pont de Nemours*, 335 F. Supp. 3d at 670. Plaintiffs also allege that the "day-to-day operations, and the negotiation of contracts for the provision of refined coal," are handled by a parent's employees, and that dismissed defendant Chem-Mod provides the REFCOs with technical expertise. 4AC ¶¶ 241, 255. Again, charging subsidiaries for services provided by a parent is not meaningful evidence of agency. And neither an overlap in employees, nor the fact that "a parent and a subsidiary have common officers and directors" establishes an agency relationship. *Id.*; *see also, e.g. Telcordia Techs., Inc. v. Alcatel* S.A., 2005 WL 1268061, at *3 (D. Del. May 27, 2005) ("it is entirely appropriate for directors of a parent corporation to serve as directors of a subsidiary"); *Masimo Corp.*, 2020 WL 7260660, at *17-18 (agency not shown by allegations that entities "share officers and/or directors," that parent is involved in "minutia" of subsidiary's products, or that parent exercises "oversight or management" of subsidiary's legal actions). There is no allegation that the REFCOs held themselves out as agents of the parents, or acted on a parent's behalf. As with the alter-ego theory, Plaintiffs' allegations describe commonplace corporate structures—not a basis to disregard the corporate form.

***Lumping:*** Finally, the allegations against the Parent Entities fail because they do not overcome the "lumped pleading" deficiencies that led this Court earlier to dismiss three Parent Entities. In its R&R-2, the Court agreed that the allegations against various Parent Entities "leaves the Court and these Defendants at a loss as to what these Defendants are alleged to have done that amounts to infringement." D.I. 279 at 9. So, too, here. Plaintiffs indiscriminately lump the allegations

3

directed to the four entities it collectively calls "AJG" without specifying who allegedly did what (or owned what) that would warrant piercing the corporate veil. Moreover, the 4AC once again fails to identify specific acts or theories directed to any of the proposed Parent Entities—lumping the four "AJG" entities with non-party Chem-Mod LLC and with other parent entities in multiple allegations across the 4AC. *See, e.g.,* D.I. 373-1 at ¶¶ 272-79, 298-305, 319-26, 340-47, 365-72 (each using the lumped-term "AJG, DTE, CERT, Chem-Mod and the RC Defendants" without distinguishing among them).

**All Induced Infringement Claims Are Futile For Failure to Plead Intent**

If the Court has a sense of *déjà vu* in reviewing the induced infringement allegations of the proposed 4AC, it is for good reason: they are nearly identical to those in the OC, which the Court previously dismissed as insufficient. *Cf.* 4AC ¶¶ 220(a)-(l) *with* OC ¶¶ 158 (a)-(l). To state a claim for induced infringement, Plaintiffs must plead allegations that plausibly support an inference that in supplying Refined Coal to power plants, the REFCOs intended for the power plants to use AC to treat the emissions gases resulting from combusting the Refined Coal. That element was not adequately pleaded in the OC. The Court concluded that Plaintiffs adequately pleaded that element in the SAC because they specifically alleged that by engaging in "post-emission control testing," the REFCOs expected and needed power plants to use AC when they burned Refined Coal. D.I. 279 at 24-25. Plaintiffs also fashioned new claims of direct infringement based on those same allegations.

The 4AC removes all allegations of post-emission control testing, because they simply aren't true. Indeed, the 4AC removes each of the SAC's predicate allegations that the R&R-2 recited in finding that the SAC adequately pleaded intent. *See* D.I. 279 at 22-24 (quoting SAC ¶¶ 84-87, each absent from the 4AC, SAC ¶ 82/4AC ¶ 78, which simply quotes from Section 45 of the tax code, SAC ¶ 83/4AC ¶ 79, which asserts generally that the parties elected to focus on mercury reduction, SAC ¶ 88/4AC ¶ 81, which describes the frequency of certification testing, and SAC ¶ 105/4AC ¶ 99, now devoid of antecedent allegations). Defendants do not object to those amendments, and indeed believe that Plaintiffs are required to make them. Without those allegations, however, the 4AC's inducement claims are as inadequate as those of the OC: Plaintiffs' inducement claims again rely on the REFCOs' alleged knowledge that power plants use AC when they supplied the plants with Refined Coal, and lack allegations that any REFCO affirmatively intended for any power plant to use AC. If anything, the amendments in the 4AC cut against an inference of intent. While the 4AC paints Section 45 tax credits as central to ME2C's theories, ME2C has now conceded that its claimed methods are not infringed during the certification testing required to obtain these credits. In other words, the 4AC severs any alleged ties between Section 45 benefits and ME2C's claimed methods.

Defendants explained this pleading deficiency to Plaintiffs during the parties' meet-and-confer, and Plaintiffs' counsel responded that they had expected Defendants to make that argument. Plaintiffs' Motion, however, misses the boat, arguing simply that there are other, distinct allegations in the 4AC that Defendants had *knowledge* that power plants used AC. But the issue is not knowledge; it is *intent*. As this Court has already held, allegations that Defendants knew that power plants use AC are inadequate to state the required element that they specifically intended for power plants to use AC when they burned Refined Coal. *See* R&R-1 at 13-14. Plaintiffs' 4AC makes no plausible allegations of intent and adds no new material on this point.

4

The Honorable Christopher J. Burke                                                                  March 10, 2022

This dooms *all* inducement claims against *all* defendants—existing and proposed—as a matter of law.

Finally, the 4AC repeats allegations that a power plant using AC "could" be "hinder[ed]" in its "ability to comply" with environmental regulations, ¶ 84, or "could face fines," ¶ 91, if it stopped using AC.  But alleging that a power plant "could" face challenges if it stopped using AC is a far cry from plausibly alleging that a REFCO *specifically intends* for a power plant to use AC.  Put differently, even after substantial completion of party document discovery and the service of dozens of subpoenas, Plaintiffs still only allege that each REFCO simply has the general intent that it wants the power plant purchasing its Refined Coal to stay in business.  But even if that could be interpreted as alleging an omnibus general intent for the power plant to perform the myriad acts it needs to do to avoid any hypothetical risks to its continued operation, that is still not the same as plausibly alleging that the REFCO specifically intends for the power plant to perform the "Activated Carbon Step" of the patent claims.  Indeed, Plaintiffs' about-face on "post-emission certification testing"—and the fact that AC is neither needed nor used in such testing—shows just how tenuously Plaintiffs' allegation relates to intent to use AC, and how speculative Plaintiffs' allegation is about what "could" happen to a power plant that stopped using AC.

## Other Matters

*Timing:*  The September 24, 2021 deadline for adding parties or amending or supplementing the pleadings is long past.  (D.I. 283 at 2).  As we informed Plaintiffs' counsel during our meet-and-confer, Defendants' opposition to the Motion is substantive, and not based on timing.  We therefore do not devote space to correcting the misstatements in footnote 1 of Plaintiffs' letter-brief.

*Other Proposed Changes to Named Defendants:*  The 4AC proposes dismissing claims against REFCOs Brandon Shores Coaltech, LLC; Thomas Hill Refined Coal LLC; and Wagner Coaltech LLC; such dismissal should be with prejudice.  The 4AC proposes adding the following non-parent defendants to the case:  Coronado Refined Coal, LLC; Chouteau Fuels Company, LLC; Jasper Fuels Company, LLC; Newton RC, LLC; Canadys Refined Coal, LLC; Hastings Refined Coal LLC; Jefferies Refined Coal, LLC; Williams Refined Coal, LLC; and CERT Operations II LLC.  Defendants do not oppose the additions, subject to a reasonable schedule for response and discovery, the application of the prior Orders and Stipulations in this case, and the caveat that there be no claims against such Defendants for induced or direct infringement.

## Conclusion

For the foregoing reasons, Plaintiffs' motion should be:  (i) denied insofar as the Motion seeks leave to add  parent companies; (ii) denied insofar as the Motion seeks leave to assert induced infringement claims or direct infringement claims against any defendant; (iii) granted insofar as the Motion seeks to remove all allegations concerning post-emission control testing; and (iv) granted insofar as it seeks to drop certain REFCO defendants and add others, subject to limitation (ii).  Moreover, Plaintiffs should not be permitted any further amendment, and the failure of the induced infringement claims should be a prejudicial ruling, since Plaintiffs have been given multiple opportunities to try to state a claim.

The Honorable Christopher J. Burke                                                                 March 10, 2022

                                              Respectfully,

                                              */s/ Brian P. Egan*

                                              Brian P. Egan (#6227)

BPE/bac

cc:      All Counsel of Record (via electronic mail)