1          IN THE UNITED STATES DISTRICT COURT

2          IN AND FOR THE DISTRICT OF DELAWARE

3

4    MIDWEST ENERGY EMISSIONS CORP.,)
     et al.,                       )
                                   )
5    --------------------Plaintiffs,)
                                   )Case No.
6              vs.                  )19-CV-1334-CJB
                                   )
7    ARTHUR J. GALLAGHER & CO., et  )
     al.,                          )
8    --------------------Defendants.)

9

10             TRANSCRIPT OF MARKMAN HEARING

11

12        MARKMAN HEARING had before the Honorable

13   Christopher J. Burke, U.S.M.J., in Courtroom 2A

14   on the 28th of April, 2022.

15

16                  APPEARANCES

17   DEVLIN LAW FIRM
          BY: JAMES LENNON, ESQ.
18
                      -and-
19
     CALDWELL CASSADY & CURRY
20        BY: BRAD CALDWELL, ESQ.
          JUSTIN NEMUNAITIS, ESQ.
21        ADRIENNE DELLINGER, ESQ.

22                         Counsel for Plaintiff

23

     MORRIS, NICHOLS, ARSHT & TUNNELL LLP
24        BY: BRIAN EGAN, ESQ.

25                    -and-

```
 1              GIBSON DUNN & CRUTCHER
                    BY: DAVID GLANDOLE, ESQ.
 2                  RICHARD MARK, ESQ.
                    JOSEPH EVALL, ESQ.
 3                  PAUL KREMER, ESQ.

 4                              Counsel for Refined
                                Coal LLC Defendants
 5
                SKADDEN ARPS SLATE MEAGER & FLOM LLP
 6                  BY: JESSICA KUNZ, ESQ.
                    LESLIE DEMERS, ESQ.
 7                  DOUGLAS NEMEC, ESQ.

 8                              Counsel for CERT

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          THE COURT:  All right.  We'll go on

2     the record.  Thanks to our court reporter for

3     her service today.

4          As we do, let me say a few things for the

5     record as we get started today.  The first is

6     that we're here this afternoon in the matter of

7     Midwest Corp., et al., versus Arthur J.

8     Gallagher Co., et al.  It's Civil Action Number

9     19-1334-RGA- -- now just CJB here in our court,

10    and we're here today for our Markman hearing in

11    the case.

12         Before we go further, let's have counsel

13    for each side identify themselves for the

14    record.  We'll start first with counsel for

15    Plaintiffs' side, and we'll begin there with

16    Delaware counsel.

17         Mr. Lennon, good afternoon to you.

18          MR. LENNON:  Good afternoon, Your

19    Honor.  Thank you.  It's Jim Lennon from the

20    Devlin Law Firm.  With me today from Caldwell,

21    Cassady, Curry, I believe presenting on the

22    first issue, is Justin Nemunaitis and Adrienne

23    Dellinger, and also with us is Bradley

24    Caldwell.

25          THE COURT:  Welcome to you.

1          We'll do the same for the two sets of

2     defendants here on Defendants' side.  First,

3     we'll ask counsel for the Refined Coal LLC

4     defendants, again beginning with Delaware

5     counsel.

6               MR. EGAN:  Good afternoon, Your

7     Honor.  Brian Egan from Morris Nichols on

8     behalf of the Refined Coal LLC defendants.

9     Joining me at counsel table are David Glandole

10    and Joseph Evall from Gibson Dunn.  We also

11    have Richard Mark and Paul Kremer from Gibson

12    Dunn as well.  We have a pending pro hac motion

13    for Mr. Glandole, who'll be presenting today,

14    and orally move for admission to the Court.

15              THE COURT:  I'll grant that motion.

16              MR. EGAN:  Thank you, Your Honor.

17    The parties discussed before the hearing that

18    we would argue in the order of the briefing the

19    terms.

20              THE COURT:  Okay.  Thank you.

21    Welcome to all of you.

22         We'll do the same for the counsel for the

23    CERT defendants.  Again, we'll begin there with

24    Delaware counsel.

25              MS. KUNZ:  Good afternoon, Your

1    Honor.  Jessica Kunz on behalf of the CERT

2    defendants.  With me here today are my

3    colleagues Leslie Demers and Douglas Nemec, and

4    also Mr. Glandole will be handling largely the

5    presentation today on behalf of all defendants.

6    Should the Court have any questions for the

7    CERT defendants, with Your Honor's permission,

8    Mr. Nemec will be handling them.

9              THE COURT:  All right.  Counsel, it's

10   good to be here in person.  We haven't had too

11   many of those in this case since COVID-19, so

12   good to see you all in person.

13         As we noted, the parties agreed, and I

14   agree, that with regard to now just the two

15   terms that are left -- four terms were briefed

16   in the parties' joint claim construction brief.

17   One of those terms, the first term that was

18   briefed, the parties in a later meet-and-confer

19   determined that term was no longer in dispute,

20   and the final term approved was one where the

21   parties entered a stipulation and it's become

22   moot as to that dispute.

23         There are two terms left.  I know that

24   per the parties' prior agreement, the

25   plaintiffs' side is going to go first on these

1    two terms.  To the extent the parties have

2    slides they want to use today and have slide

3    books, when you get up to present with regard

4    to the first term, feel free to bring up copies

5    to my clerk with regard to those slide decks.

6          Lastly, I think at one point I allocated

7    two hours for argument, but because the number

8    of terms have gone down, we'll just hear

9    argument from the parties on the two terms, so

10   you'll have as much time as you need to be able

11   to make that argument fairly, and I'll give

12   each side a chance both to have opening

13   remarks, and if they want, some brief rebuttal,

14   I'll let you.

15         Okay.  Any questions procedurally before

16   we get started?

17         All right.  Then let me turn to the

18   plaintiffs' counsel, Mr. Nemunaitis.  I'll

19   begin with regard to our first term, which is

20   the injected term.  Feel free, if you want to

21   make introductory comments about the case,

22   claim construction, feel free to do that as we

23   get started as well.

24              MR. NEMUNAITIS:  Thank you, Your

25   Honor.  May I approach to provide slide copies?

1          THE COURT:  You may.

2              I should also say if counsel is going to

3      be showing slides on the screen, I'll likely be

4      looking at the screen as opposed to my book.

5      If I'm not looking at you directly, no offense

6      intended.  I'm trying to follow along.

7              MR. NEMUNAITIS:  I believe today both

8      sides will refer to the slide books or put

9      things on the ELMO to keep it simple.

10             THE COURT:  I'll follow along that

11     way.  Thank you.

12             MR. NEMUNAITIS:  The first term in

13     dispute is from the '147 patent, and I would

14     like to begin by just sort of explaining what I

15     believe the parameters of the dispute are, then

16     back up a little bit, talk a little bit about

17     what the -- the technology is and some of the

18     terminology to make sure everyone is on the

19     same page on that, and then go through the

20     arguments.

21             And so the term in dispute is on the

22     third page of the slide I just handed up.  The

23     term is "injecting the particulate sorbent

24     material at a sorbent material injection rate

25     and injecting separately the bromine containing

1      promoter into a gas stream."

2           We propose no construction necessary, and

3      Defendants propose, essentially, a rewrite of

4      this term, and I'd like to focus in on the

5      specific changes the defendants proposed to the

6      claim language.  And these can be grouped into

7      two different types of changes.  The first is

8      the claim itself mentions the phrase "gas

9      stream" once, and Defendants propose changing

10     that to mentioning the term "gas stream" twice.

11     I don't believe that Defendants have

12     articulated a difference in claim scope for

13     this change.  For that reason, we don't have a

14     substantive problem with that change.  If it

15     really is the case there's no difference in

16     claim scope, we propose there's, at that point,

17     no reason, no basis to rewrite the claim

18     language, particularly if defendants have some

19     noninfringement hook or something behind this.

20     I don't think that's been articulated well

21     enough in the briefing to justify the change.

22          The real dispute, though, is on the

23     second portion here where Defendants propose

24     inserting this new language, "whereby neither

25     injection occurs upstream of a furnace exit."

1          What Defendants are proposing here really is

2      inserting a new limitation into the claim.

3      Many claim construction disputes, the dispute

4      is about what does a particular term mean.  You

5      may have the word "adjacent" appear in the

6      claim, and if you look it up in the dictionary,

7      you may have one definition that says

8      "adjacent" means two things that are next to

9      each other, nothing in between them, and

10      another definition says two things that are

11      pretty close together, maybe there's something

12      in between, and it's really close together, and

13      the fight is about which of those two

14      definitions apply.

15          Here, we can say based on their proposed

16      construction, they're not really proposing a

17      definition for a term.  They're proposing we

18      insert a new limitation into the claim, and to

19      justify that kind of ruling, Defendants need to

20      show disclaimer or disavowal, very exacting

21      standards there.  They can't just rely on terms

22      being used in a particular way in a limited

23      number of embodiments in the specification.

24      They've got to show a clear intent from the

25      inventor to actually limit the scope of their

1    claim, given they didn't actually put that

2    limitation in the claim language.

3         Before I get into some of the intrinsic

4    evidence, I do want to walk through the

5    technology briefly to make sure we're clear on

6    the way this works.  What I have here is a

7    figure from Plaintiffs' technology tutorial,

8    and it shows, essentially, the portion of a

9    coal-fired power plan that takes pulverized

10   coal, combusts it, and prepares it to go

11   through the bulk of the inclusion equipment.

12        As we see here, the coal is first led

13   into the coal pulverizer, and I'll show a quick

14   close-up of what the coal pulverizer looks like

15   here.  You have hot gas coming in from the

16   bottom, coal coming in from the top, and the

17   pulverized coal, once it is changed into a hard

18   lump of coal into dust that can be picked up by

19   the hot air, it goes out to the exhaust pipe.

20   What we see here is coal leaving the

21   pulverizer, going through this piping, and

22   entering the furnace, where it's injected into

23   the furnace.  And in the furnace itself,

24   there's already going to be combustion taking

25   place.  The moment that dust and whatever

```
 1          additives are applied to the coal enters the

 2          furnace, it combusts, and that heat causes it

 3          to flow through the rest of the furnace, out

 4          through the flue, until it's ready to go

 5          through the rest of the pollution control

 6          equipment.

 7                    THE COURT:  When we talk about the

 8          furnace, are we going to be using

 9          interchangeably "furnace" and "combustion

10          chamber" and "combustor"?

11                    MR. NEMUNAITIS:  I believe for

12          today's purposes, "furnace," "combustion

13          chamber," and "boiler" are the same.

14                    THE COURT:  Boiler as well.

15                    MR. NEMUNAITIS:  Technically, they

16          have slight variations, but I don't believe

17          there's any dispute.

18                    THE COURT:  Okay.

19                    MR. NEMUNAITIS:  I would also like to

20          mention now the invention itself is really an

21          improvement on the type of equipment that you

22          saw previously.  The inventors proposed adding

23          two things: a bromine additive that's added in

24          somewhere and activated carbon injection.  You

25          combine those two things and capture mercury.
```

1       What I showed here are figures, again, from

2       Plaintiffs' technology tutorial.  On the left

3       is a figure of the actual additive feeder that

4       the inventors used when they first came up with

5       this technology in the early 2000s, and you can

6       see it's actually dropping bromine onto

7       pre-pulverized coal that then gets injected

8       into the combustion chamber they're using.

9              Similarly, with the activated carbon

10      injector, there's activated carbon that gets

11      injected into the big steel drum that gets

12      injected into the gas line below the picture

13      here.

14             Finally, I want to combine these

15      components together with the diagram from the

16      plaintiffs' tutorial to point out that the way

17      this power plant works is really by using a

18      loop of air that travels through the entire

19      system, and this matters because we need to

20      talk about what a gas stream is.  So as we see

21      here, coal comes from the coal pile, goes up

22      the conveyor belt, and around E is where you

23      can have additive sprayed onto the coal.  It

24      drops down into the pulverizer, where you can

25      see the primary air fan blowing into the

1          pulverizer and also blowing air out of the

2          pulverizer so it can be injected in the boiler.

3          And this same path of air is carrying that

4          coal, whatever additives are added, throughout

5          the rest of the system to the stack.  Some of

6          that air also goes back to the primary air fan

7          to continue this loop, so the gas stream

8          continues throughout entire system.

9                 Right around F4G is where you would most

10         likely see activated carbon injection so it can

11         react with the bromine and the mercury and be

12         collected here so it doesn't get admitted

13         through the atmosphere.

14                With that, I'd like to return to the

15         disputed issue, which is this requirement

16         "whereby neither injection occurs upstream of

17         the furnace exit."  The -- to resolve this

18         dispute -- in the slides here I have some

19         statements of case law, but I'm sure Your Honor

20         is aware of the general case law standards

21         here.

22                Look at the intrinsic evidence starting

23         with the claims.  If you look at Claim 1, it

24         requires three things: promoting sorbent with

25         bromine, so reacting sorbent to bromine; B,

1   reacting elemental mercury gas with the

2   promoted sorbent; and, C, separating out the

3   particles.  One thing to note about Claim 1 is

4   it's fairly broad compared to the other claims

5   outside the briefing, but there's no

6   requirement that it be a power plant.  There's

7   no mention of where this -- these chemicals are

8   added, whether there's a flue or not, whether

9   there's a furnace or not.  It really talks more

10   about the idea of combining sorbent bromine and

11   mercury and capturing that.

12         THE COURT:  For the purposes of our

13   hearing today, can we use "sorbent" and

14   "activated carbon" as synonyms and "promotor"

15   and "bromine"?  I notice those terms are

16   together, but that's largely what we're going

17   to be talking about.

18         MR. NEMUNAITIS:  I'm sorry.  I'm sure

19   I've been not as clear as I could have been on

20   that point.

21         With that in mind, that that is what

22   Claim 1 covers, let's look at Claim 17 and see

23   what it adds.  What it adds is -- again, this

24   is Defendants' rewrite of it.  It says

25   injecting the particulate sorbent material at a

1    sorbent material injection rate.  Okay.  It

2    doesn't say where or how it happens, just

3    injecting the sorbent.  And injecting

4    separately the bromine-containing promoter into

5    the gas stream.  Again, it doesn't say where

6    this gas stream comes from, where these

7    injections are in relation to each other.  It

8    just requires that there be two separate

9    injections.

10       They go on to provide "whereby in-flight

11   reaction produces the promoted brominated

12   source."  Again, it doesn't say one way or the

13   other whether it's before or after the flue.

14   It just says they need to combine together in

15   flight, in the air, to create this reaction.

16   Again, this brings us back to the key point

17   here, which is there's got to be some statement

18   in the specification, the prosecution history,

19   of disclaimer or disavowal.

20           THE COURT:  On the disavowal or

21   disclaimer piece and the idea that what

22   Defendants are doing basically is inserting

23   into the claims a new limitation that's not in

24   any way connected to the claim language, how

25   come it couldn't be said by Defendants that

1    what the limitation, the added issue in their

2    construction, really is just a further gloss on

3    what "into the gas stream" means?  Those words

4    "into the gas stream" are in the claim.  Could

5    it be said what Defense is doing is making it

6    clear.  Let's all be clear what that term

7    means.  How come that's not what they're doing

8    as opposed to injecting new wording into the

9    claim that's totally disconnected to the claim

10   language?

11           MR. NEMUNAITIS:  I agree that's the

12   argument they set out here and essentially what

13   that argument would amount to is saying that

14   the ordinary English words "into the gas

15   stream" inherently mean "into the gas stream

16   downstream of the furnace," and that is not

17   what the normal English words mean.  Unless

18   there's some clear intent from the inventors

19   saying we're not using ordinary English, we're

20   using a specialized meaning of the words, they

21   can't just read a limitation in.

22           THE COURT:  In terms of better

23   understanding what the dispute really is about

24   here, I think the other side says that your

25   brief was kind of a little coy about exactly

1      what the dispute is.  Here's the way the

2      defendants frame what they think is going on,

3      and your brief never really comes out and says

4      that really isn't going on or something

5      different.

6           What they're saying is what the fight is

7      all about, Judge, is that the plaintiffs want

8      to be covered by the claims, a scenario where

9      the bromide-containing promoters are introduced

10     into the furnace with the coal.  In other

11     words, coal that's treated with bromine.  They

12     say that's what the plaintiffs want to be

13     covered here, that if the bromine is with the

14     coal and that gets put into the furnace and

15     then there's combustion, that that counts as as

16     injecting the. . .bromine-containing promoter

17     into a gas stream.  Is that really what you're

18     suggesting?  Because you could be suggesting

19     that, or you could be saying no, no, it has to

20     be injected in the gas stream, meaning into

21     gas, but we dispute whether it has to happen

22     after the exit to the furnace or maybe it could

23     happen before.

24          What's really the issue here?  Why are

25     you fighting this?  What's the deal?

1                 MR. NEMUNAITIS:  From my perspective,

2      what we are fighting about is the two different

3      claim construction proposals before the Court,

4      and at the end of the day, the difference in

5      the words presented to the Court are is there a

6      requirement that the injection occurs after the

7      flue or not.  I think it's clear from the

8      intrinsic evidence that we win that fight.

9                 THE COURT:  The flue is like a

10     synonym for furnace exit, the words they use?

11                MR. NEMUNAITIS:  Yes, I'm sorry.

12                THE COURT:  I'm thinking of the

13     combustion chamber and I'm thinking of some

14     exit, basically, the place where the gas comes

15     out.  They're saying that somewhere after

16     there, always, these materials must be injected

17     into the gas stream.  You're saying no.  That

18     may happen, but it's possible that the promoter

19     and the activated carbon could be injected into

20     a gas stream earlier.  Which I think, what

21     would earlier cover?  It would cover in the

22     combustion chamber or maybe even prior to the

23     combustion chamber.

24                By the way, is that what you're

25     suggesting, that the injection could come both

1          in the combustion chamber and prior to -- even

2          prior to the combustion chamber?

3                    MR. NEMUNAITIS:  Yes, Your Honor.

4          The claim language itself is agnostic as to the

5          location.  As long as we can prove a factual

6          matter for infringement that injection of the

7          gas stream occurs, the particular location in

8          relation to the furnace does not matter to the

9          claim.

10                   THE COURT:  And with the bromine in

11         particular, the promoter in particular, is a

12         possible way that you would say, talking about

13         the claim, bromine could be injected. . .into

14         the gas stream is that the bromine is part of

15         the coal.  It's part of the same substance that

16         makes up the coal.  That stuff goes into the

17         combustion chamber and gets combusted.  That

18         gets turned into gas.  Is that an example of a

19         bromine promoter being injected. . .into the

20         gas stream?

21                   MR. NEMUNAITIS:  Yes, Your Honor.  As

22         a practical matter, because this is hot air

23         coming in, bromine goes from liquid to gas

24         really easily.  It may turn into gas before you

25         get to the combustion chamber.  Again, I don't

```
1      think that matters.
2               THE COURT:  So the thing that they
3      say they're worried about in the briefs, the
4      thing they say is the real issue is the key
5      issue or at least disputed, they don't believe
6      that it's possible, according to this phrase in
7      dispute, injecting. . .into the gas stream,
8      they don't believe it's possible for the
9      bromine piece to be injected into the gas
10     stream if the bromine is, like, the same
11     substance as the coal.  The bromine substance
12     gets put into the chamber and gets combusted.
13     You believe that can qualify.  That's, at a
14     minimum, a key dispute that's at issue here
15     with regard to this term.  Is that fair?
16               MR. NEMUNAITIS:  I agree that's a key
17     dispute in the case.  That was raised in the
18     sur-reply, and we haven't had much disclosure
19     on this.  I believe that's really their
20     noninfringement position.  It wasn't, in fact,
21     disclosed to us until the claim construction
22     sur-reply.  I don't believe that presents a
23     claim construction dispute for Your Honor to
24     rule on.  It's a factual matter of the way the
25     bromine makes it from the coal to the
```

1       combustion chamber or, essentially, to the

2       point where it reacts with the activated

3       carbon.  Does an injection occur?  I believe

4       that's a factual question.

5                THE COURT:  The other question about

6       possibilities, sounds like that's one

7       possibility that could be covered by what this

8       claim term allows for, but are you also

9       suggesting -- it may not turn out to actually

10      be relevant on infringement issues here, but

11      are you also suggesting it's possible that no,

12      look, the bromine could actually be injected

13      into a gas stream, and by "injected into a gas

14      stream," here I'm talking about the way

15      Defendants understand that term, meaning

16      literally injected into the gaseous substance.

17           It's very possible physically where that

18      could happen and does happen where the

19      injection happens in the combustion chamber.

20      There are some -- it's possible, Judge, that

21      there are some plants that the way they work is

22      actually inside the combustion chamber, gas is

23      emitted and bromine actually gets injected into

24      that gas in the combustion chamber.  Are you

25      saying that's possible?

1          MR. NEMUNAITIS:  Yes, absolutely.

2          THE COURT:  Can bromine get injected

3    into gas in some way in these plant apparatuses

4    even before the combustion chamber comes into

5    play?  I can't picture that, but is that a

6    possibility?

7          MR. NEMUNAITIS:  Certainly.  You

8    could do it by putting it on the coal and going

9    through that process or just by having a

10    separate bromine injector injecting gas or

11    liquid bromine into the gas chamber.

12          THE COURT:  How could you have gas

13    before the combustion chamber that combusts

14    stuff that creates this?

15          MR. NEMUNAITIS:  You could use

16    bromine in a gaseous form.

17          THE COURT:  The bromine would have to

18    get injected into the gas stream.  Bromine

19    itself in a gaseous form, how would that be

20    injecting bromine into a gas stream?

21          MR. NEMUNAITIS:  Any time you're

22    moving material through the pipes of one of

23    these power plants, there has to be a flow of

24    air or gas, a preexisting flow of air or gas.

25    So you have a pipe here, pump gas down into

1    this, it gets carried by the gas that's already

2    there into the combustion chamber, which is

3    also the same way with the pulverized coal in

4    that there already has to be a flow of gas into

5    the combustion chamber and the combustion

6    chamber itself is going to be sucking gas in so

7    the pulverized coal would be injected into that

8    coal and continue into the combustion chamber.

9              THE COURT:  Okay.  So in some world

10   where there is a gaseous substance that is

11   going to be inserted into the combustion

12   chamber, and you're saying I think the claim

13   could allow, for example, that bromine could

14   actually be injected into that gaseous

15   substance which is then put into the combustion

16   chamber prior to the combustion chamber.

17   That's a possibility that could happen, and the

18   claims would allow for that.

19             MR. NEMUNAITIS:  Yes, absolutely.

20             THE COURT:  Okay.  So let's say your

21   position is that all those various things are

22   possible in all those various ways.  We think,

23   Judge, that bromine, for example, can be

24   injected into a gas stream at some point prior

25   to the furnace exit.  If it turns out that

1      although that's fine and good but what's really

2      in dispute for the infringement piece of this

3      case is the more particular assertion you're

4      making, one of the ways you think that it would

5      qualify here, which is that you could inject

6      bromine into the gas stream by having bromine

7      be combined with coal or part of a coal-like

8      substance and then putting that thing into the

9      combustion chamber and combusting it.  That

10     seems like that's the key issue here, the key

11     infringement issue.  And I guess what I'm

12     wondering is if I understand that to be the key

13     infringement issue, I mean, obviously, you have

14     to construe the claim terms -- you don't

15     construe the claim terms by focusing on the

16     infringement question.  On the other hand, you

17     want to provide the parties at claim

18     construction with guidance about the meaning of

19     the term so that it is actually helpful when

20     you get to the infringement stage.

21          I guess that's a long way of asking

22     should I make sure that what I do, when I

23     construe this term, however I construe it, but

24     when I write out my Markman opinion, should I

25     make sure that one way or the other I tell the

1          parties, hey, look, I understand the dispute is

2          does coal plus bromine being put into a

3          combustion chamber and combusted count and

4          here's my answer, do I need to answer that

5          question one way or the other as part of my

6          Markman decision here or not?

7                    MR. NEMUNAITIS:  I don't believe --

8                    THE COURT:  Do you know what I mean?

9                    MR. NEMUNAITIS:  I do understand the

10         question, yes, and what I would say to that is

11         both sides had a chance to propose terms and

12         propose proposed constructions, and what we got

13         was Defendants' proposal about the key issue

14         being location in relation to the furnace.

15         That's what we briefed.  To the extent this

16         additional issue became more clear in the

17         sur-reply, I don't believe there's been

18         sufficient briefing on the particular issue

19         Your Honor is briefing even if it is an

20         infringement issue, but at the end of the day,

21         the way it's being discussed here it sounds

22         like resolving whether or not a particular

23         plant's use of coal and bromine and the type of

24         pulverizer they use and the type of piping they

25         use, whether or not that qualifies as injecting

1    into the gas stream strikes me as a very

2    factual question and not one that is driven by

3    the intrinsic evidence to resolve it.

4              THE COURT:  You keep saying in the

5    sur-reply, but in their answering brief, they

6    made clear that they thought this was the

7    dispute.  On page 30, they say, "Although

8    Plaintiffs' stated position is no construction

9    necessary, it argues in its infringement

10   contentions that injecting a bromine-containing

11   promoter into a gas stream should be understood

12   to include pretreating coal with bromine."

13   That's the dispute.  It's in there in the

14   answer.  I don't see how this dispute was only

15   raised in the sur-reply or wasn't teed up right

16   away.  To me, it seems like it was teed up from

17   the get-go.  Is that wrong?

18             MR. NEMUNAITIS:  It's difficult for

19   me to reconcile those statements with the

20   actual different proposed instructions.  To the

21   extent that argument was directed to resolve a

22   claim construction dispute, it's not clear to

23   me how that relates to their proposed

24   construction.  I certainly understand they are

25   taking the position, as a noninfringement

1    matter, that we will not be able to prove

2    infringement for that reason, but it is unclear

3    to me how that turns into a claim construction

4    issue that was properly briefed and is before

5    the Court.

6             THE COURT:  So I think what you're

7    saying, tell me if this is right, is, Judge, we

8    think the claim construction dispute that's

9    really best teed up by the proposed

10   constructions, or in your case lack thereof, is

11   just whether or not, when it comes to this

12   term, does the injection only occur upstream of

13   the furnace exit or not.  Basically, tell us

14   yes or no as to that and just that.  No need to

15   go on and say by the way, somehow this

16   addresses the more specific issue of can coal

17   treated with bromine going into the combustion

18   chamber, can that count.  Is that what you're

19   saying?

20            MR. NEMUNAITIS:  Yes, certainly, and

21   I would say I believe to the extent Defendants

22   want to make that position, what they should

23   have done is articulate a proposed

24   construction.  Right now, I'm having difficulty

25   understanding how the claims can be construed

1    to resolve that dispute, which is why I keep

2    addressing it as an infringement issue, because

3    it's not clear to me how claim construction can

4    resolve that matter.

5                THE COURT:  In a sense, since we're

6    talking about the proposed construction, in

7    your case there's no construction necessary, if

8    I were going to ask you, understanding what you

9    think the dispute is here, were you going to

10   have to put into words what is the plain and

11   ordinary meaning of the term in the way that

12   gets the dispute out of the way, what words

13   would you use?  How would you construe this

14   term in a way that resolves this dispute but

15   actually uses words if you had to?  Maybe I can

16   ask you that, and maybe on rebuttal you can

17   come back.  I'll give you a chance to think

18   about it and on rebuttal, come back and let me

19   know, unless there's something you want to say.

20               MR. NEMUNAITIS:  I think I can

21   address one aspect of it, and maybe you can

22   tell me if that better answers your question.

23   I suppose I can take Defendants' proposed

24   construction where they're saying "whereby

25   neither injection occurs upstream of a furnace

```
1    exit," we would propose that it reads "whereby
2    either upstream or downstream of the furnace
3    exit."  I think that's the substantive dispute,
4    although I don't think it would be necessary to
5    put that in the claim, given what the actual
6    words of the claim mean.
7              THE COURT:  I have other questions,
8    but I don't want to hijack your presentation.
9    I'll turn it back to you and get my questions
10   in.
11             MR. NEMUNAITIS:  There were a few
12   other points that I wanted to make, although,
13   given the nature of the questions, I'm not sure
14   they're particularly pertinent.
15             But I guess just very briefly, there was
16   a significant amount of briefing on what the
17   phrase "gas stream" means, and I would just
18   point out that I've provided multiple examples,
19   different ways to read the technology that's
20   disclosed, and they use the word "gas stream"
21   just in the ordinary English sense.  This is an
22   example where it says thus, the bromine gas
23   stream continuously passes into the rotating
24   barrel.  This is an example of an apparatus
25   where there's a bromine and carbon reaction
```

1    occurring, but -- it's not a power plant.  It's

2    a completely different type of apparatus.  It

3    just shows the inventors using "gas stream" in

4    the normal English sense.

5          Similarly, with Example 12 it talks

6    about, in this case, a sorbent in a gas stream.

7    Again, this is an experimental apparatus using

8    a glass dish, but in this example, again, not

9    using "gas stream" to particularly mean

10   downstream.

11         And then finally --

12         THE COURT:  How would I know that

13   from the example?  How would I know where, in

14   particular, the gas stream at issue there is

15   coming into play?

16         MR. NEMUNAITIS:  I can pull up the

17   patent.  This particular example is fairly

18   long, but what it's talking about is a test to

19   measure the effectiveness of this promotion

20   reaction, so it talks about a glass tube fitted

21   with a medium frit sintered glass filter disc

22   to hold the sorbent in the gas stream, the tube

23   containing some type of a gas inlet tube.  When

24   you read through it, it's clear it was talking

25   about an experimental apparatus.  These type of

1      things they're describing are not at a power

2      plant.

3           Finally, I would mention Example 10.  In

4      this example, it is talking about injecting

5      sorbent that has already been mixed with

6      bromine into a gas stream downstream of the

7      furnace exit, but it doesn't just say injecting

8      into a gas stream.  It says it's provided to

9      the flue gas stream, which, again, would

10     indicate that if the inventors really just

11     meant -- really believed that "gas stream"

12     meant the gas downstream of the flue, there

13     would be no reason to have the word there.

14     It's clear they mean "gas stream" in the

15     ordinary English sense, so they need to clarify

16     this is the part of the gas stream that's

17     downstream of the flue.

18          THE COURT:  Just coming back to what

19     I'm going to do here, I can see -- I can see a

20     world where I could, if I did what you wanted,

21     which is to just answer the question by way of

22     a construction as to whether or not the claim

23     requires that the respective injections must

24     occur upstream of the furnace exit, I could

25     answer that question one way or another, but it

```
1      would be possible that, like, let's say I

2      answered it in your favor, and I agreed with

3      you, that, no, I don't think that the claims

4      absolutely require in every instance that

5      respective injections both must occur into a

6      gas stream upstream of the furnace.  I could

7      answer that question, but in doing so, I

8      wouldn't necessarily be providing guidance

9      about what the defendants say.  I think you

10      would acknowledge it's probably going to be the

11      key dispute here, which is what about if you've

12      got the coal plus the bromine promoter which is

13      inserted into the combustion chamber and

14      combusted?  Does that count as

15      injecting. . .bromine into a gas stream?

16      Because the defendants would say that's not

17      injecting it into a gas stream at all, whether

18      you're talking about at the furnace exit in the

19      combustion chamber or before.  So my worry

20      there would be if that happens, we're still at

21      square one with regard to what probably is in

22      dispute.  You don't think that's a problem?

23           MR. NEMUNAITIS:  I can certainly see

24      that being a vigorous dispute, one that would

25      normally be resolved with expert testimony and
```

1    evidence.  I believe that would be the most

2    efficient way to resolve that dispute.

3              THE COURT:  By saying that, though, I

4    think what you're saying is, Judge, I think

5    that's an infringement dispute.  The case law

6    on what counts as an infringement dispute

7    versus what's a claim construction dispute is a

8    fine line and sometimes hard to discern.  I

9    think that's what you're saying in terms of

10   what you just said.

11             MR. NEMUNAITIS:  I agree.  Part of

12   the reason I have difficulty with this question

13   is I understand the goal the defendants want to

14   get to, a claim construction issue that will

15   just grant them noninfringement as a matter of

16   law.  What I don't understand and what I have

17   difficulty commenting on is how they propose

18   getting from the intrinsic evidence to that

19   goal.  For example, you could have a system

20   where you have bromine liquid or gaseous form

21   using an off-the-shelf injection device

22   injecting somewhere into the gas stream at a

23   power plant.  We generally agree that counts as

24   injection into the a gas stream.  What if we

25   add some coal dust into that?  Does that now

1    defeat it?  I don't know.  Maybe their position

2    is that it would, but I don't understand what

3    the basis would be for arguing that.

4            THE COURT:  I think the way that they

5    would explain why it is that this is a claim

6    construction dispute is that it goes to what

7    the meaning of the phrase "injecting. . .into a

8    gas stream" is.  I think at base they would say

9    it's a linguistic matter.  The sorbent -- or

10   I'm sorry.  The promoter, it can't be -- it

11   can't be injected into a gas stream if the way

12   that it ends up materializing in a gas stream

13   is it being a part of coal that is then

14   combusted.  That can't be linguistically what

15   "injected into a gas stream" means.

16       I think they would say to be injected

17   into a gas stream, you have to actually inject

18   the bromine, the promoter, into a gaseous

19   material, and that that's not what happens when

20   you have bromine in coal that's combusted and

21   turns into gas.  I think that's the way they

22   would tie it -- they'll tell me if I'm wrong

23   when they get up here in a minute.  That's the

24   way they would tie to claim language and the

25   articulation that it's claim construction.

```
 1              If that's right -- I'm not saying it
 2      is -- how can that, from a linguistic
 3      perspective, how would you argue that, sure,
 4      you can inject a promoter into the gas stream
 5      in the sense that the promoter, when it's
 6      combusted along with coal, turns into gas?  How
 7      can that be the same thing?  Do you know what
 8      I'm saying?
 9              MR. NEMUNAITIS:  As I'm thinking
10      about how a power plant works, coal, once it's
11      in its pulverized form, it does not move from
12      point A to point B except by the use of a gas
13      stream that is moving it.  So if bromine is
14      placed into that gas stream, you're also now
15      injecting bromine into that gas stream, and it
16      moves along and it enters the combustion
17      chamber, and the combustion chamber itself
18      already has gas in it, and it's funneling gas
19      and the coal after it combusts out through the
20      exit of the furnace.
21              THE COURT:  Maybe I'm using the wrong
22      terminology.  Let me go back to the way the
23      defendants said it in their answering brief,
24      the thing I was referring to when I said I
25      think they raised this dispute in their
```

1    answering brief.

2         Pretreating coal with a bromine promoter.

3    I'm picturing you've got the coal, and I don't

4    know how it happens, but someone is spraying

5    bromine on the coal and now the coal has got

6    bromine on it.  And that substance, what I'm

7    picturing to be like a hard substance, like a

8    physical material, not gas, then goes into the

9    combustion chamber.  I understand.  I think the

10   methods here, that's what's going on.  And they

11   seem to be saying spraying the bromine on coal,

12   putting it into the chamber and combusting that

13   to create gas can't be injecting the bromine

14   into a gas stream.  That's just not what that

15   means.  That's spraying bromine on coal which

16   later gets combusted.  Isn't that the issue?

17        MR. NEMUNAITIS:  I believe that I

18   understand.  I believe we're missing a step

19   there.  Bromine sprayed onto coal.  It's in

20   lumps, fist-sized lumps.  It moves along.  The

21   brominated coal is placed in the pulverizer

22   where it is injected from the pulverizer into a

23   gas stream.  Now there's injection of bromine

24   into a gas stream along with pulverized coal

25   where it travels along piping.  The gas stream

1    is then injected into a combustion chamber,

2    again, bromine injected into gas stream, where

3    it's moved on to the next section at the power

4    plant.

5              THE COURT:  So you're arguing that

6    somehow -- that in a world where you have,

7    again, to use the defendants' phrase,

8    pretreated coal with bromine promoter, that

9    that's not -- the fact of pretreating the coal

10   with bromine and the fact it later gets put in

11   the combustion chamber and combusted and

12   creates a gas, that's not what you're saying

13   amounts to injecting bromine into a combustion

14   chamber.  It's the fact that at some point that

15   pretreated coal with bromine promoter gets

16   pulverized and itself is injected into a gas

17   stream that might go into the combustion

18   chamber itself, and that kind of injection of

19   bromine into a gas stream can occur before the

20   furnace exit.

21             MR. NEMUNAITIS:  Yes.  Depending on

22   how a particular plant is set up, there could

23   be multiple points where the bromine is

24   injected into the gas stream before it gets to

25   the furnace or -- focus on the injection into

1          the furnace over the injection to the gas

2          stream.  Depending on the claims, I believe

3          there could be multiple different options.

4                    THE COURT:  In your view there, the

5          relevant gas stream is combusted and creates

6          gas.  The relevant gas stream is some kind of

7          gas stream that, maybe, say entering into the

8          combustion chamber or even precombustion

9          chamber to which in some way bromine, maybe

10         even that had been mixed with coal, gets

11         injected into; is that right?

12                   MR. NEMUNAITIS:  I believe that's

13         right, yes.

14                   THE COURT:  I don't know.  I can't

15         tell if you're looking at me saying, Judge, I

16         don't know what you're talking about.  You

17         know, if you're saying no, I totally understand

18         you, but I think this is what I think the thing

19         I'm saying is what the briefs were all about

20         and the questions I'm asking is what they were

21         all about.  Do you think I'm wrong?  I'm

22         legitimately asking because it could be that I

23         didn't quite fully understand the real dispute

24         or at least what Plaintiffs think the real

25         dispute is.

1              MR. NEMUNAITIS:  I was also confused
2      by the briefing.
3              THE COURT:  You all live with the
4      case in a different way.
5              MR. NEMUNAITIS:  This is what I think
6      happened, is we got their proposed
7      construction.  We thought the battle line was
8      location of the injection, before or after.
9      That's the discovery.  Then we get to these
10     statements about how, well, our goal is to get
11     this noninfringement finding through claim
12     construction, but I saw no way that was tied to
13     the actual dispute before the Court, so we
14     always focused on battle line in the two
15     different competing composed constructions, but
16     I think that is at least the source of the
17     confusion.
18          And then an additional source of
19     confusion is I suppose the defendants want to
20     exclude just spraying bromine into open air
21     when coal is blown across it.  That won't meet
22     the claim.  I don't think there's a dispute
23     about that.  And the real infringement dispute
24     is about the plant setup and how the injection
25     happens.

1          THE COURT:  Let me ask a couple final

2     questions here and let you add whatever you

3     think is appropriate before we go to the other

4     side.

5          What you've been talking about is some

6     hypothetical scenarios in which you think

7     bromine could be injected into a gas stream

8     before a furnace exit.  I've been asking is

9     that possible, does that happen.  I think the

10    other side would say, Judge, in terms of what

11    the intrinsic evidence demonstrates when it

12    talks about the concept of injecting, for

13    example, bromine, they would say the only

14    examples shown are ones that happen after the

15    furnace exit.  Isn't that correct, albeit you

16    would say if it's correct, it doesn't mean the

17    claims are limited to it, or would you say no,

18    that's incorrect, I actually think the patent

19    shows or talks about bromine being injected in

20    the gas stream prior to the furnace exit?

21          MR. NEMUNAITIS:  As you said, the

22    sticky point is a legal one, and that's

23    insufficient.  I would point to a few examples

24    to rebut that.  One is -- well, certainly

25    there's examples I went through before, which

1       are experimental apparatuses where there is no

2       furnace.  I think the fairest reading of the

3       specification is that it is agnostic as to

4       location of the injection unless it says

5       otherwise.

6              I would also refer to Example 10 here as

7       one example.  This is one where the brominated

8       sorbent is injected downstream of the furnace,

9       but then it also says, "In general, however,

10      the inventive sorbent can be injected where

11      desired before, after, or within the boiler."

12      So, again, this would be injecting the carbon

13      and the bromine before or after or within the

14      boiler.

15             THE COURT:  I think they would say

16      there, gas stream, though, which is their key

17      term in the claim, that you'd say it could be

18      this other thing, but it's not the same thing

19      as injecting bromine into the gas stream.

20             MR. NEMUNAITIS:  Yes, and also the

21      fact that it uses the word "injected" would

22      be -- it would be confusing to me if the word

23      "injected" could not at least include the

24      possibility of injection into a gas stream.  It

25      would be unusual if it was not injecting into

1      the gas stream.

2              THE COURT:  A couple other questions.

3      This one, maybe just to be clear, the

4      plaintiffs are not asserting that a way in

5      which the claim limitation can be met is if

6      bromine-treated coal is simply inserted into a

7      combustion chamber, combusted, and that that

8      creates gas.  The product of that combustion

9      creates a gas.  You are not saying that would

10     meet the limitations of the claim.

11             Instead, you are arguing no, in some way

12     bromine, whether it's left in and of itself or

13     whether it's connected to coal or whatever has

14     to be, at some point, injected into something

15     that is a gas.  Am I right?

16             MR. NEMUNAITIS:  Yes, I believe I

17     agree with that.  The one caveat I would have

18     is you used the word "inserted."  If what we're

19     envisioning is shovelling coal into a boiler,

20     that's different than what the claims are

21     talking about.  I agree with that.  I wanted to

22     make that clear as a practical matter.  The way

23     the power plants work is by injecting it into a

24     pipe that has a gas stream in it.

25             THE COURT:  And then just a couple of

1    questions about Figure 2 and the provisional

2    application, just to make sure I have the

3    arguments right.  With respect to that figure,

4    you've said that you think section 1.57(e) of

5    37 CFR applies as opposed to B being

6    nonessential materials versus B's essential

7    materials.  I think the other side is saying if

8    that reference is being utilized to help us

9    understand the claim scope, which I think is

10   how it's utilized here, they're saying it's

11   really helpful with the arrows.  They're a key

12   piece of evidence here that helps you, Judge.

13   With that item by definition being essential

14   material, the second material that is part of

15   D, Judge, I would say, all of the possible

16   options there require publication, which it

17   seems undisputed that the application was not

18   published at the time, why is that line of

19   argument wrong?

20              MR. NEMUNAITIS:  The point we made

21   there is background material can be

22   incorporated.  There's no problem with that to

23   the extent background material explains what a

24   word means.  I think really the key point is

25   intrinsic evidence from the prosecution record

1      is always used to understand the meaning of the

2      words as the inventors used.  So whether this

3      figure was in a provisional or whether it was

4      cited to the examiners as an example to help

5      explain arguments, it would be inappropriate to

6      disregard that figure when trying to understand

7      what words like "additive" or "injection" mean

8      because it shows the inventors' understanding.

9              THE COURT:  I don't know the answer

10     to this.  Is this part of the prosecution

11     history for the '147 patent or no?

12             MR. NEMUNAITIS:  For the particular

13     '147 patent, I don't believe it is included on

14     there, but I would find it difficult to

15     believe -- and I suppose we could submit

16     something on this -- that the Federal Circuit

17     would rule that the provisional application

18     cited on the face of the patent would not be

19     part of the intrinsic record.

20             THE COURT:  If for some reason they

21     were correct that the way it was cited, the way

22     it was attempted to be incorporated by

23     reference, isn't sufficient to make it a part

24     of the intrinsic record because it wasn't cited

25     in a more specific way that they would say the

```
1      law requires.  There, you would say even if
2      that's right, at minimum it's a piece of
3      evidence, extrinsic evidence, that is certainly
4      related in some way to this patent.  It's
5      helpful, relevant, you should consider it,
6      Judge.  Is that what you're saying?
7                  MR. NEMUNAITIS:  Yes.
8                  THE COURT:  I think that's all the
9      questions I have.  Anything further,
10     Mr. Nemunaitis?
11                 MR. NEMUNAITIS:  No, Your Honor.
12                 THE COURT:  Thank you.  We'll hear
13     from your colleague on the other side.
14                 MR. GLANDOLE:  May I approach?
15                 THE COURT:  You may.
16                 MR. GLANDOLE:  Good afternoon, Your
17     Honor, and may it please the Court.  My name is
18     David Glandole I'm here on behalf of all
19     defendants in this case with regard to the
20     disputed terms that are specific to the '147
21     and '225 patents.
22         Let me start by mentioning the parties
23     really have two disputes about the '147 patent,
24     both centered around similar language.
25                 THE COURT:  Mr. Glandole, just as
```

1     you're doing that, my first question was that

2     your initial response asserted that there were

3     two disputes, one being whether the particular

4     sorbent has to be injected into the gas stream

5     after the furnace exit and one being whether

6     the bromine promoter has to be injected after

7     the furnace exit.  The sur-reply portion of the

8     brief really focused on the bromine, which made

9     me think is there still a dispute about the

10    sorbent?

11            MR. GLANDOLE:  That's what I'm

12    referring to, Your Honor, you're right.  And

13    maybe some of the confusion arises from

14    procedurally how the parties went back and

15    forth on different terms.  And I don't know if

16    Your Honor is familiar with the '114 and the

17    '430 briefing that was mooted by the parties'

18    agreement.  The briefing there really did focus

19    on the sorbent, and we have it, though, and I

20    think in your briefing in 1.7, we do have a

21    section of the sorbent as well, which refers

22    largely back to the '114 and '430 briefing.

23            Maybe I should start there.  The parties

24    agreed, with regard to that term and with

25    regard to the injection of the sorbent

1          material, that that must be from outside,

2          outside the combustion chamber.  Those were the

3          words that were added by the parties'

4          agreement, "from outside."

5               We then negotiated with the plaintiffs

6          further as to whether or not that language

7          could be applied to the '147 patent as well.

8          The '147 patent has the same terms, "injecting"

9          or "injecting sorbent and bromine" in those

10         patents.  In those patents, you're just

11         injecting the sorbent, so we should also

12         include the words "from outside" here as well.

13         We never reached agreement with the plaintiffs,

14         but I think that is something we could consider

15         here today as well, whether there is any

16         clarification to be brought by using the words

17         "from outside" for both the sorbent and bromine

18         term here.

19               THE COURT:  As it stands, you think

20         there's a substantive dispute about whether to

21         insert "bromine must be injected into the gas

22         stream downstream of the furnace exit," but

23         also, as you assert, whether in all

24         circumstances the sorbent has to be injected

25         into a gas stream downstream of the furnace

1      exit.  You think the plaintiffs are asserting,

2      no, it's possible to inject the sorbent in the

3      gas stream upstream of the furnace exit.

4                  MR. GLANDOLE:  That is correct.

5                  THE COURT:  I'll certainly ask them

6      about that on rebuttal.

7                  MR. GLANDOLE:  As you know, Your

8      Honor, each of the claims in this case refer to

9      both a bromine compound and a sorbent.  I

10     believe as you said, the sorbent, we also refer

11     to that as activated carbon.  Each of the

12     claims requires sorbent to comprise activated

13     carbon.  We do use those terms.

14          With regard to the bromine compound, the

15     '147 patent has a specific term that it uses,

16     which is the bromine-containing promoter, so

17     the identification of what that species is is

18     important.  Again, as Your Honor mentioned, we

19     would often refer to bromine or bromine

20     compound.  The exact term is bromine-containing

21     promoter.

22          One thing that came out as Plaintiffs

23     were speaking and they referred to the

24     technology tutorial, and they really started at

25     the -- if you're going left to right, they

1      started at the left here.  They started at the

2      addition of the coal.  Here's where the coal is

3      added, here is where it's pulverized, here's

4      where it's combusted.

5           Missing from that discussion is any

6      discussion of the actual '147 patent itself.

7      If one reads through the '147 patent, there is

8      no focus on the combustion.  There's no focus

9      on what's being done to the coal, the treatment

10     of the coal, how the coal enters into the

11     system.  That discussion and the background

12     technology there does really apply to the '114

13     and '430 patents.  It is missing from the '147

14     patent.

15          The '147 has a specific context, and that

16     context is the right side, the back end, the

17     treating of the mercury gases, the flue gases

18     that are created during combustion.  All of

19     this discussion about the coal and how it can

20     be treated in the coal, it's missing -- there's

21     no guidance for a person of the skill in the

22     art in the '147 patent.  That is not what the

23     discussion is.

24          Stepping back --

25               THE COURT:  I think, in part, I'm

1       getting what you're leading up to there, is,

2       Judge, if you were to ultimately agree with the

3       plaintiffs and disagree with us that the

4       injections at issue here don't necessarily all

5       have to happen after the furnace exit, that's

6       not even talking about that at all; ergo,

7       indefiniteness or lack of written description

8       or enablement or something like that, some kind

9       of 112 argument.  Is that what you're alluding

10      to?

11              MR. GLANDOLE:  As well as just

12      confusion to the jury, difficulty of providing

13      proper instructions to the jury.  But I think

14      it also counsels for understanding this term in

15      the way that Defendants have proposed their

16      construction, and the reason that we are

17      providing this construction -- and I disagree

18      with Plaintiffs' counsel, that we're trying to

19      limit the scope or redefine the scope.  We're

20      trying to clarify the scope that the

21      application is seeking, and the scope should be

22      understood in the context of the patent.  This

23      patent, unlike the other four patents, is

24      downstream of the furnace.  It is treatment of

25      those gases.

```
 1              THE COURT:  Let me let you continue.
 2              MR. GLANDOLE:  Turning to the
 3     background technology here, just to say a
 4     little bit about that, again, the plaintiffs, I
 5     don't believe, are claiming -- they certainly
 6     should not be claiming that they were the first
 7     to identify the ability of bromine to promote
 8     or enhance activated carbon as an absorbent of
 9     mercury.  That was known and discussed in the
10     file history as of late -- in the file history
11     for the '147 patent, for example, I would point
12     you to the discussion of the Nelson reference,
13     which Nelson created a brominated activated
14     sorbent, an activated carbon sorbent, and he
15     took activated carbon outside of the system,
16     activated it with bromine, introduced that into
17     the system to help absorb mercury gases.
18          It's under that context that we should
19     understand what's happening in the '147 patent.
20     I would ask the Court to consider that, given
21     that background, the how and the where, the
22     manner of promoting the sorbent, is key to the
23     patent.  It's key to distinguishing this from
24     the art.  It's key to a person of skill in the
25     art reading this and understanding how it might
```

1    be an advancement over the background.  We do

2    need to determine the manner, the how and the

3    where, of the addition of the bromine and the

4    sorbent.

5         If we look going to the sixth page now in

6    our slides, Your Honor spoke with Plaintiffs'

7    counsel quite a bit about, you know, addition

8    of the bromine to the coal.  Well, here are the

9    other four patents in the case, and we've been

10   talking about the '147 and its language of

11   injecting a bromine-containing precursor into a

12   gas stream, and I think it's worthwhile to look

13   at how different that is from the other four

14   patents.  These are Claim 1 of the other four

15   patents where the coal comprises the added

16   bromine compounds, combusting a mixture

17   comprising coal and bromine compounds.  Clear

18   language, clear direction to a person of skill

19   in the art that this patent covers treatment of

20   coal with bromine.

21        And practically speaking, there was some

22   discussion of the technology here and how it

23   works in practice.  The addition of bromine

24   that's being accused here is really -- it's a

25   dripping, frankly.  You drip the solution of

1      bromine salt onto the cold coal before it's fed

2      into the system.  This is very much upstream of

3      anything that's happening in the '147 patent.

4              THE COURT:  I had a back and forth

5      about this.  When I read the briefs, this is

6      the way it read to me, that at least

7      Defendants' side thinks that this is what's

8      going on here and why it's important that we

9      construe this term and you construe it in the

10     way we suggest, and that is -- I'm going to

11     generalize, but what is happening in terms of

12     the infringement dispute is that we're talking

13     about coal that is pretreated with bromine.  I

14     don't know whether that happens, as you say, it

15     drips, bromine is dripped onto the coal.  And

16     that substance, coal that has bromine on it, is

17     put into a combustion chamber and it's

18     combusted.  And from that combustion process,

19     gas is produced.  I don't think there's dispute

20     about that.  And the gas makes its way out of

21     the furnace and down a -- we think what the

22     plaintiffs want to do is they want to consider

23     bromine added to coal that's then put into a

24     combustion chamber and combusted creating gas

25     as an example of bromine being injected into a

1      gas stream, and we Defendants just don't think

2      that's possible.  We don't think it's possible

3      linguistically that that can be what it means

4      to inject bromine into the gas stream.  And

5      that's the key dispute.  When I read it, part

6      of our proposal here is to wall off that

7      possibility, but we think it's also tied to the

8      claim language.

9           When I said all that to counsel on the

10     other side, they suggested maybe that's not the

11     dispute.  That's not what they're suggesting

12     could count as meeting the claim limitations,

13     and instead maybe in some way the bromine, for

14     example, has to be added before they think --

15     before the furnace exit to a gaseous stream.

16     You wouldn't count just dripping it on coal and

17     combust it, but they think maybe that can be

18     the case.

19          With all that said, is the key dispute

20     that you thought you were having in the briefs

21     still the one we think we're having after

22     hearing the other side speak?

23               MR. GLANDOLE:  I do think that's

24     right, and I think Your Honor has a good handle

25     on what the dispute is.  And you're right that

1      our construction makes it clear.  Our

2      construction would, for lack of a better term,

3      move that debate.  Without our construction, I

4      think it's very unclear.

5           We've been frustrated in this case

6      looking at the infringement contentions, trying

7      to understand from the plaintiffs claiming

8      plain and ordinary meaning, it's not clear at

9      all to us how the plain and ordinary meaning of

10     "inject into a gas stream," let alone how it's

11     understood in the patent, how that can apply to

12     dripping the bromine compound onto the coal.

13          We try to speculate as to multiple areas.

14     Is that addition of the bromine onto the coal

15     the injection?  Is it the moving the coal,

16     then, into the furnace?  Is it some kind of --

17     is there a portion of the combustion?  Is there

18     a combustion action that goes on that somehow

19     injects a bromine compound into a gas stream?

20          We have been confused.  We have asked for

21     clarification on this.  We hoped there would be

22     clarification that would come through the

23     briefing, and I don't feel like we got it.  I

24     do think the back and forth with Your Honor

25     this morning was somewhat helpful to help us

1    kind of finally understand what their theory of

2    infringement is, although I would say it's

3    still a little unclear to us, still some

4    caveats there.

5         Again, I would say that all these

6    theories are certainly outside the context of

7    the teachings in the '147 patent, but we do

8    have those concerns, and part of those concerns

9    as well is what is it that they are identifying

10   as the bromine-containing promoter?  There is

11   one thing that has to be -- there is a specific

12   item that needs to be identified, that is

13   anything that's being injected into the gas

14   stream.  What is the bromine-containing

15   promoter?  What is the injection?  Which of

16   these is the gas stream?  These are all

17   questions that we are hoping -- frankly, I

18   think we deserve an answer to, and we're trying

19   to find the right way to --

20             THE COURT:  I'm not sure that some of

21   those questions are going to be answered by

22   this claim construction dispute.  What

23   qualifies as a bromine-containing promoter?  I

24   don't see any way that issue is fairly teed up

25   on the briefings.

1          But I think on what I thought was maybe a

2     key dispute, which is can the claim limitation

3     be met -- phrasing it this way sounds more like

4     an infringement dispute, but whatever.  Let's

5     talk about it.  Can the claim limitation be met

6     by dripping bromine onto coal and putting that

7     bromine-coated coal into a combustion chamber

8     and combusting it to get a gas, you were

9     worried they were saying yes.  I think they're

10    saying today no, that's not what we're saying.

11    Instead, some other way bromine must be

12    injected into a gaseous substance, but they're

13    saying that can happen before a furnace exit.

14    It's possible that it can happen.  It's

15    possible it could happen in the combustion

16    chamber.  It's possible it could happen leading

17    into the combustion chamber.

18          I guess my question would be, just as a

19    technical matter, is there anything in the

20    record that suggests that's wrong, that it

21    can't happen that way, that a

22    bromine-containing promoter can't be injected

23    into a gas stream at some point prior to the

24    furnace exit?

25                MR. GLANDOLE:  Our position is that

1        reading the claim language in the context of

2        the patent, in the context of the teachings of

3        the specification, that what is being discussed

4        here, what is being taught here, so that what

5        is being claimed here, is injection into a gas

6        stream not upstream of the furnace exit.

7                THE COURT:  And I know you cited that

8        Figure 3 is an example of this process

9        happening downstream.  I don't think there's

10       any dispute from the other side that that's

11       happening.  They say it's illustrated, but it's

12       not binding.  Is that about the only

13       circumstance where I can get a good handle that

14       the fact that -- absolutely, Judge, only after

15       the furnace exit can these substances be

16       injected?

17               MR. GLANDOLE:  There are a number of,

18       I guess, teachings or embodiments throughout

19       the patent, and, again, stepping back, because

20       many of the examples that counsel referred to I

21       think don't apply at all to the way these

22       claims ended up being written.  There are a lot

23       of unclaimed embodiments discussed here.

24               Again, reading through the patent, it is

25       about the preparation, the creation, of a

1    brominated activated carbon source, and there

2    are a number of different ways to prepare that.

3    Some of the examples even show, I think, you

4    can have a barrel full of activated carbon and

5    you can run it through some bromine gas or you

6    can put bromine into that.  You can create it

7    in a solution.  You can create it in a vapor.

8    You can have a fluidized bed of activated

9    carbon and run bromine through there.  All

10   these different ways to make it before you

11   introduce it into the system where it can

12   remove mercury.

13       One of the ways they taught to make it is

14   in-flight reaction.  Just to go back to the

15   claim language in Claim 17, Claim 17 is

16   specifically about that teaching about

17   in-flight preparation.

18       THE COURT:  There my question was

19   going to be -- I know you referenced that in

20   the briefs sometimes.  I think you want me to

21   understand that "in-flight" is kind of a

22   synonym for downstream from the furnace exit.

23       MR. GLANDOLE:  That's right.  That's

24   where the teaching is, I think, clear that this

25   in-flight preparation is downstream.

1          THE COURT:  What's the best part of

2     the patent that makes it super clear that when

3     the patent refers to the phrase "in flight"

4     that it must be only meaning downstream of the

5     furnace exit as opposed to some more broader

6     range?

7          MR. GLANDOLE:  Sure, I can point a

8     few reasons for that.

9          One is I think you see it here in the

10    claim language that these are both injected

11    into a gas stream, and I think the most

12    reasonable reading of this claim is there is

13    one gas stream.  They are injected into a gas

14    stream, and that's where the reaction happens.

15    The reaction happens in a gas stream.  That's

16    the in-flight part.  They're not making it in a

17    barrel outside the system.

18          So it's into a single gas stream.  That

19    has to be the gas stream, then, where you're

20    going to treat the mercury.  You're going to do

21    that directly where the mercury gas is or

22    you're going to do it in a transport line

23    that's subsequently being introduced into the

24    gas stream.  I think from the claim language

25    itself, it makes sense.

```
 1              If we go, again, to the teachings of the
 2      patent, you're right.  The only figure here
 3      that relates to the in-flight promotion is
 4      Figure 3, and I've highlighted here -- we're
 5      not pointing to any particular injection points
 6      here and saying this has to be the injection
 7      point.  Our point is understanding this in the
 8      context of the teaching, the context of the
 9      patent.  This entire figure is the only one
10      that's really related to this in-flight
11      reaction.  It's all downstream of the furnace
12      exit.
13              THE COURT:  You would say the
14      promoter and the sorbent, they don't have to be
15      injected at the same time or the same place or
16      a particular place.  They just have to be
17      injected downstream of the furnace exit.
18              MR. GLANDOLE:  Into a gas stream.
19              Perhaps Your Honor understands this.  To
20      be clear, the furnace here is below the figure.
21      It's down here in the corner and the gas flows
22      up.  The yellow is the flue up to the exhaust,
23      and here are all these different transport
24      lines.  They're taking, in this case the
25      promoter sorbent, and those get pushed into,
```

1     injected into, the mercury-containing gas.

2              THE COURT:  I guess this is a

3     question I asked the other side and may not be

4     in the record, but just as a practical matter,

5     would it be possible in some way, again, just

6     focusing on the bromine piece of this, could it

7     be possible to inject bromine into a gas stream

8     either in a combustion chamber or even slightly

9     before the entrance to the combustion chamber

10    in a manner that still utilizes that bromine in

11    a way that ends up having the desired effect

12    with regard to the production of mercury

13    emission?  Can that be possible?  Even if maybe

14    that's not in the main what the patent was

15    talking about, or how you do it, et cetera.

16             MR. GLANDOLE:  Just to clarify, when

17    you say is that possible, I don't know if

18    you're asking if that works scientifically to

19    remove mercury or whether you're saying that is

20    possible within the scope of the claim.

21             THE COURT:  I mean, just to simplify,

22    I'm figuring in my head.  I'm picturing a

23    combustion chamber, and I'm understanding in

24    some way the claim requires that the promoter

25    has to be injected into a gas stream.  And I'm

1      just thinking like, okay, thinking of the

2      promoter, and if -- is it possible that

3      somewhere in the chamber itself or even just

4      thinking maybe there's a pipe leading into the

5      chamber in which gas --

6            MR. GLANDOLE:  Into the combustion

7      chamber.

8            THE COURT:  Into the internal

9      combustion chamber.  Maybe there's a pipe

10     leading into that chamber which gas is flowing

11     through.  Could bromine be added to that gas,

12     it then flows into the combustion chamber and

13     ultimately flows out of the combustion chamber,

14     after coal is combusted, such that the bromine

15     can be useful in this process?  Is it

16     physically possible to do what the plaintiff

17     says could be captured by this claim

18     limitation, i.e., inject the bromine either

19     into a gas stream in the combustion chamber or

20     before the entry?

21           MR. GLANDOLE:  I think I want to make

22     sure.  There are maybe two different questions

23     there, and I'm going to answer them both to

24     make sure it's clear.

25           Certainly, from a scientific point of

```
1     view, that can work, and I think that is what
2     is being discussed.  I guess that's more
3     similar to some of the other claims here.  You
4     could add the bromine.  Now, what you add to
5     the combustion chamber is going to be subject
6     to the combustion chamber, so it might not be
7     bromine in the same form it is later
8     downstream.  You can add bromine before.  You
9     can add bromine into the combustion chamber.
10             THE COURT:  And you don't have to add
11    it just by putting it into the coal or dripping
12    it onto the coal?
13             MR. GLANDOLE:  You can inject it
14    directly into the system.  Again, I don't know
15    the efficiency of that.  That bromine can
16    survive.  It may change form or another, but it
17    can survive and react downstream.  I want to be
18    clear that my answer there is about the
19    scientific, whether that works scientifically.
20    Let's go back to the claim.
21             THE COURT:  You'd say that's not
22    what --
23             MR. GLANDOLE:  That is not what the
24    patent talks about.  When you said will that
25    work, that does not work with the claims.  I
```

1    think -- again, I'm not the expert here, but I

2    believe that would work in the system.

3         With regard to the claims, they're

4    injecting the sorbent and the bromine into a

5    gas stream.  That gas stream -- practically

6    speaking, the sorbent we're talking about here

7    is activated carbon.  It's carbon.  Carbon is

8    combustible.  Plaintiffs can't deny that.

9    Activated carbon is able to combust.  It will

10   combust in the combustion chamber.

11        So in order to meet this claim in that

12   system, would you be injecting both the sorbent

13   and bromine into the combustion zone?

14             THE COURT:  You're saying why would

15   you be introducing activated carbon pre

16   combustion chamber or into the combustion

17   chamber before it could be combusted?

18             MR. GLANDOLE:  Doesn't make sense.

19   You wouldn't do that.  That's correct.

20             THE COURT:  That's why I thought

21   maybe, ultimately, the dispute was more about

22   the promoter and less about the sorbent itself,

23   but I could be wrong.  I'll ask Plaintiffs'

24   counsel.

25             MR. GLANDOLE:  I think that

1          understanding, that you wouldn't inject

2          activated carbon into the combustion zone, it

3          does inform, I think, the bromine flow because

4          these are both injected -- our position is the

5          reasonable reading of this is that they're both

6          injected into the same gas stream.  Those would

7          be different gas streams if you do it that way.

8          It's a different approach to the problem of

9          capturing mercury.  It's not the one that's

10         taught and claimed here in Claim 17.

11              Again, one thing I would point out, I

12         would dispute of Plaintiffs' characterization

13         of our construction as adding words or adding

14         limitations, I think we are clarifying the

15         scope of the claim term.

16              THE COURT:  To the extent they say,

17         Judge, the additional phraseology that the

18         defendants use is untethered to the words of

19         the claim, you would disagree and say no, it's

20         tethered to the words of the claim.  And the

21         words of the claim it's tethered to are?

22              MR. GLANDOLE:  Are injected in.  It

23         is, in fact, injecting into a gas stream.  And,

24         again, that last phrase, a gas stream whereby

25         in-flight reaction produces the promoted

1    brominated sorbent.  That also informs what

2    that gas stream is directed to.

3        We heard a lot of talking back and forth

4    with Plaintiffs, and certainly looking at their

5    infringement contentions, that I think their

6    plain reading of the injecting into a gas

7    stream does kind of take the meaning out of

8    those terms.  There's no longer injection.

9    It's simply getting it into the system,

10   providing it in the system.  It ends up

11   somewhere where there's not a vacuum in a gas.

12   That seems to be their reading of the term, and

13   I think that's what's led us to this proposed

14   construction here today.

15            THE COURT:  It does seem like it may

16   not be an issue anymore, but when we thought

17   that the key issue was does combusting

18   bromine-treated coal to create a gaseous

19   substance amount to reading off this claim

20   language, the other side would say, Judge,

21   that's an infringement dispute.  That's not

22   defining what this term means.  That's a

23   question about whether a particular

24   circumstance, i.e. pretreated bromine-treated

25   coal being combusted, meets the claim

1          limitation.  That's an infringement dispute.

2                  MR. GLANDOLE:  I do think that's a

3          question for claim construction.  I think

4          that's one we would like resolved now.  If I'm

5          understanding your question, you're referring

6          to this potential theory where something in the

7          combustion process where you have pretreated

8          coal that's being combusted, something in that

9          process is what Plaintiffs define as injection

10         into a gas stream.  Again, that is really the

11         end of this for the "from the outside" term.

12             If you recall from the briefing -- and,

13         again, I apologize.  We settled this term

14         before you got a chance to dig into the

15         briefing on '413 and '440.  There was a

16         question there that burning coal would create

17         activate carbon, that that would somehow be

18         creating activated carbon, just the plain

19         combustion of coal.  And the parties agreed no,

20         that's not what this patent is talking about.

21         It's saying when you're adding the sorbent,

22         you're injecting the sorbent, that means from

23         outside the system.

24             And so I think that may help.  Those

25         words may help clarify here as well, that

1 there's not some theory here hiding in the

2 weeds where they're going to be talking about

3 something in the combustion of the treated coal

4 is going to be the injection of bromine.

5   THE COURT:  The other question I have

6 relates to this, which is in the briefing, you

7 sometimes use the phrase "inside the gas

8 stream."  I thought you were using that phrase

9 to be a synonym for already in the coal or

10 already part of the substance or something.  Is

11 that what you were getting to?

12   MR. GLANDOLE:  That's right.

13   THE COURT:  Whereas outside the gas

14 stream is, you would say, a substance being put

15 into, injected into, in some way introduced

16 into, something that could be considered a gas

17 stream.

18   MR. GLANDOLE:  Yes, a preexisting gas

19 stream.  We're not creating the gas stream and

20 then somehow in the creation of the gas stream

21 you're injecting one of the -- one of the

22 original --

23   THE COURT:  Mr. Glandole, anything

24 further you wanted to add?

25   MR. GLANDOLE:  Let me just refer

1        here.  I do think I'll pause at this point.

2                THE COURT:  Okay.  Let me give your

3        colleague from the other side some rebuttal

4        time.

5            Mr. Nemunaitis, if you come up, the one

6        lingering question that I have for you from

7        Mr. Glandole's presentation was, it did seem

8        like in the reply and sur-reply portion of the

9        brief, that although the plaintiff talks about

10       injecting a sorbent into the gas stream, a lot

11       of the sur-reply brief was particularly focused

12       on the bromine piece of that, and maybe you

13       didn't have a dispute -- well, the defendants

14       thought we didn't have a dispute about where

15       the sorbent must be injected.

16           Is your position that the sorbent can

17       only be injected after the -- downstream of the

18       furnace exit, but the bromine can be injected

19       anywhere?  Or is your position that no, just

20       like with the bromine, the sorbent can be

21       injected prior to the furnace exit too?

22                MR. NEMUNAITIS:  Just like with the

23       bromine.  The patent specification discusses

24       injecting bromine before the furnace, and

25       there's just nothing in the claim language that

1      is one way or the other.

2                    THE COURT:  So both the sorbent and

3      the bromine could be injected prior to the

4      furnace exit, in your view?

5                    MR. NEMUNAITIS:  Correct.  As a

6      practical matter of the infringement theories,

7      I don't think that matters, but that is the way

8      to interpret the claims.

9                    THE COURT:  Let me let you make a

10     brief rebuttal.

11                   MR. NEMUNAITIS:  I just want to make

12     sure I make this point clear, which is that

13     this gas stream which is taking the pulverized

14     coal into the boiler, this is piping that has

15     gas flowing in it.  It has to have gas flowing

16     in it.  All these black arrows, green arrows,

17     it has to have a constant flow of gas.

18     Otherwise, everything shuts down.

19          So when this pulverized coal enters this

20     pre-existing gas stream and pipes, this is an

21     injection.  When it enters the boiler over

22     here, again, this is an injection.

23          I would come back to this point here.  I

24     believe this is an engineering point.  As a

25     practical matter, the way these injectors work

1          is they are blowing fine coal dust into the

2          furnace.  Once this coal dust enters the

3          furnace, it immediately combusts, and it is

4          flowing, and the reason it's staggered this way

5          is to create a fire tornado so you would have a

6          fire tornado flowing through to get this stream

7          of gas flowing.

8                    THE COURT:  Just to understand, in

9          your view, when you're talking about the

10         promoter and sorbent being injected into the

11         gas stream, what qualifies there is that you

12         take the -- I say the promoter.  And it must

13         be, in some way, injected.  It must be, in some

14         way, pushed into a space in which a gas stream,

15         gaseous material, is also, and they must touch.

16         They must what?  What qualifies?  Is it

17         injecting the promoter or the sorbent into a

18         gas stream?  Do you know what I'm saying?

19                    MR. NEMUNAITIS:  Yes, we would say

20         that injecting is pushing something, could be

21         gas, could be a solid, could be particles, into

22         some type of pipe or apparatus or duct,

23         whatever, where there is gas that has some type

24         of movement that can transport whatever is

25         being put into it.

1          THE COURT:  They've got to make

2     contact; right?  The gas stream has to make

3     contact in some way with the sorbent or

4     promoter.

5          MR. NEMUNAITIS:  Right.

6          THE COURT:  They may not combine.

7          MR. NEMUNAITIS:  I believe that's

8     right.  If you think of injecting blood in

9     someone's vein, there's blood, and the blood

10    itself has liquid plasma as well as blood cells

11    that are solids and that gets injected in and

12    moves through the bloodstream.  I think it

13    works the same way except with a gas stream,

14    which is why the phrase is used throughout the

15    literature in this patent.

16         THE COURT:  Please continue.

17         MR. NEMUNAITIS:  I guess the final

18    point I would make is the purpose of these

19    changes, "into the gas stream," was to exclude

20    just spraying bromine into the open air and

21    letting it fall on bromine.  I don't think

22    there's any dispute about that, so the way to

23    resolve the dispute would be to reject that

24    change because it's not necessary.  And then we

25    get to the separate issue of before or after

1        the furnace exit.

2             Unless Your Honor has any further

3        questions.

4             THE COURT:  Thank you,

5        Mr. Nemunaitis.

6             Any brief rebuttal from defendants?

7             MR. GLANDOLE:  Very briefly, Your

8        Honor.  Just, again, just to clarify a few

9        things about this drawing here, and there is --

10       just to get an idea of the scale here, there is

11       this little fellow down here.  These are very

12       large systems.  The flue, which is an area down

13       here, is ten feet across.  These are very large

14       systems.

15            I appreciated counsel's example of the

16       bloodstream.  I think that's right.  What we're

17       seeking here is to understand injection in the

18       context that it's used in the patent, and when

19       you have injection into a gas stream the way

20       that's discussed in the patent is into these

21       gas streams that are downstream of the furnace.

22       Just like injection into the bloodstream has a

23       particular meaning.  It's not just something

24       that is in the blood.  When we talk about

25       injection, it has a specific meaning in that

1    context.  I think we want to appreciate that

2    same context.

3              THE COURT:  Just to make sure I

4    understand, the meaning, in your view, bromine

5    or the sorbent that's injected into a gas

6    stream in the sense that those substances are

7    in some way blank and then they blank with

8    regard to the gas stream.  What's required?

9              MR. GLANDOLE:  I think they are

10   exterior to the gas stream and they are pushed,

11   under pressure, under some kind of force, into

12   the gas stream; right?

13             THE COURT:  Meaning in some way, they

14   come into contact with the gas stream.

15             MR. GLANDOLE:  That's right.  They

16   enter into the gas stream.  In practicality,

17   this is done with very large lances.

18             THE COURT:  And it all together flows

19   in that stage?

20             MR. GLANDOLE:  It pushes in.  That's

21   right.

22             THE COURT:  Okay.

23             MR. GLANDOLE:  Again, I think what

24   counsel is talking about here whether or not

25   there's some injections, whether or not there

1   are gas streams present.  Our view on this,

2   again, is to look back at the patent and each

3   of the patents.  What is the gas stream being

4   mentioned there?  What does it teach a person

5   of skill in the art how to practice the

6   invention?

7             THE COURT:  All right.  There's one

8   other term that the parties still have in

9   dispute, the third term in the briefing and

10   second term today, "combusting a mixture" term.

11   I'll turn to Plaintiffs' counsel.

12             MS. DELLINGER:  Good afternoon, Your

13   Honor.  Adrienne Dellinger on behalf of the

14   plaintiffs.  I'll be arguing the '225 patent

15   term, which is "combusting a mixture comprising

16   coal, pyrolysis charge, and additive comprising

17   HBr, a bromide compound, or a combination

18   thereof."

19       Your Honor, the defendants' proposed

20   construction seeks to add in limitations,

21   limitations that the patentee explicitly

22   rejected during prosecution and that the

23   doctrine of claim differentiation refused.  In

24   doing, so the defendants hope to add in these

25   limitations to affect infringement, and in

1    doing so, importing those limitations is

2    improper is this case.

3            We talked about previously in order to

4    add in limitations, the defendants must point

5    to a clear and unmistakable statement of

6    disclaimer, disavowal, or lexicography.  The

7    defendants have been unable to point to any

8    such clear statement.  As we see if we look at

9    the proposed constructions, the defendants seek

10   to add in the language of "whereby each

11   substance in the mixture is added to the

12   combustor" and "to which has been added" for

13   claim 14.

14           First, I believe it's an undisputed point

15   that pyrolysis char is created by combustion of

16   coal.  That's cited in the brief, and I think

17   understood.

18           THE COURT:  Maybe there, to make

19   sure, again, I understand what the dispute is

20   from the plaintiffs' point of view, do you

21   agree the dispute as to this term is whether

22   the asserted claims require combusting a

23   mixture of coal and char and the bromine

24   compound, or whether the limitation can be met

25   by combusting a mixture of coal and the

 1          compound that during the combustion process

 2          produces chalk that is then combusted?  It

 3          seemed like that's the dispute.  Is that right?

 4                  MS. DELLINGER:  Your Honor, I think

 5          the dispute circles around whether these

 6          substances should be added to the combustor.  I

 7          think that the combustion of coal -- through

 8          the combustion of coal, pyrolysis char is

 9          created, and when coal is combusted, the

10          pyrolysis char is created, the mixture includes

11          them both.  I don't believe the dispute centers

12          around whether the mixture itself is combusted

13          but how that mixture must come to be.

14                  THE COURT:  So I think what you're

15          saying if I'm right is no dispute that in

16          practice, the way that the char comes about

17          here is that no one is putting this pyrolysis

18          char into a combustion chamber.  The only way

19          the char is generated is it's generated as a

20          product of the combustion, for example, of the

21          coal and the bromine or perhaps other

22          substances in addition, but it's created in the

23          chamber; is that right?

24                  MS. DELLINGER:  Certainly, it is,

25          Your Honor, but the claim scope is not limited

1      to that.  It would also include adding it in.

2      We see that claim specifically in dependent

3      claims and other claims throughout the '225

4      patent.

5              THE COURT:  You could add it in, but

6      the fight is about what happens in a world

7      where it's not added into the chamber, it's

8      created by the combustion of the materials

9      within the chamber?

10             MS. DELLINGER:  Yes, Your Honor.

11             THE COURT:  So would you have, in

12     that scenario, a circumstance where you're

13     combusting a mixture of the coal, the char, and

14     the bromine?  And that led to my question,

15     well, is what Plaintiffs are suggesting -- I

16     can picture one world in my mind where I've got

17     the coal and the bromine together.  I add it to

18     the coal, and the coal gets put into the

19     chamber.  That gets combusted.  Mentally, I

20     have this picture.  It creates this char, and

21     that's it.  There's nothing else left.  It's

22     just the char, and the char gets combusted.

23         The plaintiffs might be saying that

24     counts.  That counts as combusting a mixture,

25     or would Plaintiffs say no, we acknowledge that

1    doesn't count, but what we're suggesting is

2    what would count is you've got the coal and the

3    bromine, gets put into the chamber, gets

4    combusted.  Char is created, but there's still

5    some coal and some bromine hanging around in

6    there, and they're all together, and that gets

7    combusted, and that's the mixture.  It's when

8    the char created by the coal and bromine

9    combustion gets further combusted in a matter

10   such that there is still also coal and bromine

11   in the chamber such that they're all, quote,

12   mixed.  That's what we're saying counts, and

13   that's what Defendants say doesn't count, and

14   they're wrong.

15        Is that the issue, the last piece?  Am I

16   right about that?

17        MS. DELLINGER:  I would agree with

18   you there, but I think going back to just

19   factually how this occurs, we looked at the

20   diagram that showed the multiple entrances to

21   the furnace, the multiple gas inlets, it had

22   the pulverized coal and bromine, the fire

23   tornado that was referenced.  That whole

24   process is occurring simultaneously, so the

25   coal being combusted causes the char being

```
1     created and all being combusted together as a
2     factual matter occurs.
3          Defendants make a point that that may be
4     factually difficult to parse out and determine
5     based on whichever firm you're looking at, but
6     that isn't a matter of whether a claim is
7     indefinite or where the claim scope lands.
8     That is a matter of infringement, whether you
9     can actually factually determine that.
10          THE COURT:  I don't think you're
11    getting at what I'm getting, which is trying to
12    understand the dispute and what is at issue.
13    Let me try to reframe that.
14          I think maybe now, based on what your
15    comments are, that you are acknowledging that
16    for something to meet the claim limitation,
17    when the combustion at issue called for by the
18    specification happens, that combustion must in
19    some way occur as to a substance or it must
20    occur in a place that includes all three of the
21    substances.  It's not enough for two of the
22    substances to be put in, they get combusted,
23    create the third, but they go away, and then
24    the third gets combusted only on its own.
25    Combusting has to happen with all of those
```

1    still in the mix.  I think that's what you're

2    acknowledging, but you're saying as a practical

3    matter, this happens really fast.  May be hard

4    to figure out if that's happening or deal with

5    it, but that's an infringement dispute.

6         But we agree that the combustion in

7    question must occur as to all three somehow

8    mixed, somehow in the -- I don't know if

9    "mixed" means they're physically all touching

10   each other or "mixed" just in the sense that

11   they're all in the internal space, the chamber,

12   but that's what you're getting at.  Am I right?

13   What are you saying?

14        MS. DELLINGER:  I believe, Your

15   Honor, the claim language states combusting a

16   mixture comprising coal, pyrolysis char, and an

17   additive comprising HBr, and we believe that's

18   what it means.  The mixture comprising those

19   three substances must be combusted.  Whether

20   that mixture is partially created in the

21   combustion chamber by adding in coal and an

22   additive and that is created, there must be at

23   some point all three of those being combusted.

24        THE COURT:  And so all three of them

25   have to be combusted at the same time.  Do they

1      all have to be touching each other?

2              MS. DELLINGER:  I don't believe those

3      are limitations that are required by the

4      claims.

5              THE COURT:  We're trying to get at

6      what mixture means.  What does mixture mean in

7      your view?  How could the three substances be

8      mixed if they're not in contact with each

9      other?  They're mixed because?

10             MS. DELLINGER:  They could be making

11     contact with each other in a gaseous form,

12     which is likely what's occurring.  The

13     definition of what constitutes a mixture I

14     don't believe was disputed in the briefing, but

15     as far as what comprises a mixture and how

16     close in proximity those substances need to be,

17     I'm not quite sure there's a definite space

18     requirement, but the mixture could definitely

19     be inside the combustor, all three of the

20     substances.

21             THE COURT:  I thought the entire

22     dispute was about what mixture means.  What

23     does it mean to have a mixture that's three

24     substances?

25             It sounds like what you're saying is we

1     acknowledge that the three substances must all

2     be in the combustion chamber when the

3     combustion happens, and as long as that's the

4     case, that counts, even if a human being or a

5     machine didn't necessarily put in all three

6     substances into the combustion chamber from

7     outside of it.

8           MS. DELLINGER:  Certainly, Your

9     Honor.

10          THE COURT:  Is that right?

11          MS. DELLINGER:  Certainly.

12          THE COURT:  That's really the key;

13    right?  Because the char, no one is putting

14    that into the combustion chamber.  It gets

15    created by stuff already in there, and that's

16    what you believe can be captured by this claim

17    language; is that right?

18          MS. DELLINGER:  Yes, Your Honor.

19          THE COURT:  Let me let you continue.

20          MS. DELLINGER:  Thank you, Your

21    Honor.

22          Returning to the intrinsic evidence and

23    the prosecution history in the briefing, the

24    defendants cite to the prosecution history and

25    claim that that shows that this pyrolysis char

1    must be added from the outside, but the portion

2    of the prosecution history they cite goes to a

3    claim that is not in the '225 patent that we

4    see today.  Claim 45 was cancelled and never

5    underwent any substantive analysis at the PTO.

6         If we look at the prosecution history as

7    it pertains to the claims that did eventually

8    end up in the '225, we see that the examiner

9    and the patentee both understood the embodiment

10   to exclude the construction.

11             THE COURT:  Did you make the argument

12   in your briefing that the reason why the

13   intrinsic evidence that the other side cited to

14   Claim 45 shouldn't be considered is because

15   that wasn't part of the actual claims that were

16   discussed.

17             MS. DELLINGER:  I don't believe that

18   was in there.  We cited to the intrinsic

19   evidence supports that no construction is

20   necessary, and I'm happy to go further into

21   that, or if you would prefer not.

22             THE COURT:  I'll let you continue to

23   make whatever arguments you'd like to make, and

24   there's a question whether you fairly made

25   those arguments in the briefing.  I can always

1     assess.  I'll let you make all the arguments

2     you want in the time.  Please continue.

3          MS. DELLINGER:  Understood, Your

4     Honor.  Thank you.

5          If we look at the nonfinal office action

6     that was issued in this case on July 2nd of

7     2018, the examiner issued a 112 rejection, and

8     in doing so stated that addressing claim 66

9     correlates to Claim 1 of the '225 patent and

10    stated Claim 66 claims combusting pyrolysis

11    char and a promoter comprising BR2, HBr, and

12    Br.  As pyrolysis char is a byproduct of the

13    combination or the combustion of coal and the

14    promoter cannot be combusted as it is a halide,

15    it is believed that the applicant meant to

16    claim combusting coal in the presence of

17    pyrolysis char and a promoter and is

18    interpreted as such in the rejection below.

19         From this, we see that the examiner

20    understood that the applicant was claiming the

21    exact embodiment that the defendants seek to

22    exclude, which is combusting coal wherein the

23    pyrolysis char is created and combusted in the

24    mixture as well.  In response, the applicant

25    traversed the 112 rejection, but also stated --

1           THE COURT:  And I'm sorry to go back

2      to this, but what you're saying right now,

3      that's not in the briefing.  This is all new

4      argument that I'm hearing for the first time

5      and the other side is too.

6           MS. DELLINGER:  This specific screen

7      shot is not in the briefing.  The arguments

8      that made intrinsic evidence supports that this

9      is clearly contemplated by the patentee.

10          THE COURT:  Intrinsic evidence as it

11     brought through the patent specification and

12     claims, the particular intrinsic evidence

13     you're talking about now is part of the

14     prosecution history.  Part of it made it to the

15     examiner.  Okay.  I'm not going to be in a

16     great position to comment or ask questions

17     about it because I never heard it before.

18          MS. DELLINGER:  The point of that was

19     that the applicant agreed that that was not

20     going to be encompassed in the claim scoping.

21     Respondents are saying that a mixture can be

22     combusted without each individual component of

23     the mixture being combusted.  While that may be

24     part of the claim scope, the applicant's

25     understanding was that combusting coal within

1    the presence of the pyrolysis char and the

2    promoter falls within the claim scope.

3              THE COURT:  When I read this again,

4    something in the prosecution history is going

5    to show me that when it's talking about

6    combusting coal and promoter in the presence of

7    pyrolysis char has the requisite combustion?

8              MS. DELLINGER:  Yes, Your Honor.

9              THE COURT:  The thing you think the

10   other side is trying to exclude?

11             MS. DELLINGER:  Yes, Your Honor.

12             THE COURT:  Does pyrolysis char

13   always result from the combustion of coal plus

14   a bromine promoter?

15             MS. DELLINGER:  I believe -- I'm

16   hesitant to say always, but pyrolysis char is a

17   form -- pyrolysis char is also a partially

18   combusted carbon substance, and so yes, it is.

19   I wouldn't say always created, but I don't want

20   to say 100 percent of the time.

21             THE COURT:  Somebody could argue that

22   if it's a practical matter that char is always

23   created via combustion of the first two, why

24   would it need to be asserted in the claims?  If

25   it automatically comes about and automatically

```
1    would in turn be combusted always along with
2    the promoter and the coal, if it's inherently
3    going to happen, why do you want it listed out
4    as a required add in the claims?  People would
5    say because you have to literally add it in
6    separately.  To that, you would say what?
7              MS. DELLINGER:  The claim does not
8    require that it be added in, and the claim, as
9    it is written, is the most accurate description
10   of what is going on during this process because
11   when coal is combusted and pyrolysis char is
12   created, the mixture inside the chamber
13   includes them both.
14             THE COURT:  When you say mixture
15   inside the chamber, that's a mixture inside the
16   chamber.  As long as three things are in the
17   chamber together and being combusted, that's
18   good.  It's good.
19             MS. DELLINGER:  I think practically
20   speaking, yes.  I don't believe that's required
21   by the claim language, but I agree.
22             THE COURT:  Please continue.
23             MS. DELLINGER:  Lastly, Your Honor,
24   the issue of the doctrine of claim
25   differentiation really shows that the
```

1    defendants' proposed construction is untenable.

2    So if we -- if the inventors wanted to claim

3    adding the pyrolysis char to the combustor,

4    they could have and did so in Claim 16.  If we

5    take a look, Claim 16 claims combusting coal in

6    a combustor and adding within the combustor a

7    pyrolysis char.  That limitation is not present

8    in Claims 1, 14, or 17.

9            THE COURT:  And just to make sure I

10   understand what you -- on the defendants' side,

11   what you think the claims mean by within the

12   combustor, or, for example, I know Claim 3 uses

13   the phraseology "prior to a combustor."  I'm

14   trying to understand what those words mean and

15   how they're different.

16       It sounds like what you think "adding

17   within the combustor" means is there's a

18   combustor, other stuff is in it, like, for

19   example, the coal plus the bromine, and then

20   we're going to put in char.  Is that what

21   adding within the combustor, a certain thing

22   within the combustor, means?  And how is adding

23   within the combustor distinguished from adding

24   prior to combustor?

25           MS. DELLINGER:  I think that's

1    exactly right.  Adding within the combustor

2    means adding something to the inside of the

3    chamber and prior to the combustor, I assume,

4    would be outside of the combustion chamber.

5              THE COURT:  Adding prior to the

6    combustion chamber ultimately goes into the

7    combustion chamber.  How would you know

8    something is added within the combustor but not

9    added prior to the combustor?  Why are those

10   two things different?

11             MS. DELLINGER:  I believe the

12   injection point may be different.  Adding

13   directly to the combustor versus adding

14   something at some point beforehand.

15             THE COURT:  So adding within the

16   combustor is like the injection goes directly

17   into the combustor, whereas prior to the

18   combustor means the injection or the

19   combination would be -- putting the element in

20   happens prior to the combustor, i.e., not

21   directly into it and then the stuff then later

22   goes into it.  Is that right?

23             MS. DELLINGER:  I think that would

24   fit those descriptions.

25             THE COURT:  Okay.  Anything further,

1       Ms. Dellinger?

2              MS. DELLINGER:  Briefly just

3       continuing onto Claims 3 and 4 as you

4       referenced, those also claimed this adding in

5       limitation which required that the pyrolysis

6       char be added in either prior to or within the

7       combustor.  Again, those limitations that are

8       present in dependent Claims 3 and 4 that depend

9       from Claim 1 here are not present in Claim 1.

10      Accordingly, Your Honor, we believe that those

11      limitations should not be imported into these

12      claims, and we ask that you find that no

13      construction is necessary.

14             THE COURT:  I think, Ms. Dellinger,

15      if I have it right for Claims 3 and 16 what I

16      think they mean here in terms of claim

17      differentiation, we know the other side wants

18      to include the phraseology "whereby each

19      substance in the mixture is added to the

20      combustor."

21          We know the key dispute here is what

22      happens when one of these substances actually

23      gets created within the combustor, and you say

24      limit this to just stuff having to be put into

25      the combustor, and you'd say well the claims,

1        one way or the other, talk about those

2        scenarios, talk about adding within, directly

3        in, they talk about it prior, with going in.

4        So if the claims wanted to limit things in the

5        way the defendants suggest these claims are

6        limited, they would have used the same

7        phraseology.  They would have said either added

8        within the combustor and prior to and/or prior

9        to the combustor, maybe just within.  They

10       would have used some or all of those phrases.

11       Since they didn't, there must be a broader

12       option, like one of the substances could get

13       created within the combustor and still be

14       combusted with the other stuff.  Is that what

15       you're saying?

16              MS. DELLINGER:  Yes, Your Honor.

17              THE COURT:  Thank you, Ms. Dellinger.

18       I'll give you a chance for brief rebuttal when

19       we hear from the other side.

20              MS. DELLINGER:  Thank you.

21              THE COURT:  We'll hear from

22       Defendants' counsel.

23          Mr. Glandole.

24              MR. GLANDOLE:  Thank you, Your Honor.

25       Scrambling a little bit because none of the

1     citations to the intrinsic record are present

2     in either of the plaintiffs' briefing of this

3     case, but I'm familiar with them, and I think I

4     can address them here.

5          The '225 patent differs from other

6     patents in this case in one way.  It includes

7     this term "pyrolysis char."  It includes that

8     term in every claim.  It's in every claim of

9     the '225 patent, and each claim requires it to

10    be part of the combustion mixture.  We're going

11    to talk about that term.

12         If you were to read through the '225

13    patent, it would be understandable if you

14    thought there might be some pages missing.

15    There's nothing in the '225 patent in the

16    specification talking about pyrolysis char, and

17    we heard that from Plaintiffs' counsel here.

18    There was no tieing to the specification, no

19    description whatsoever.  I understand some of

20    those are going to be 112 issues later down the

21    line, but we should acknowledge here in the

22    context of claim construction that we don't

23    have any teaching in the patent whatsoever on

24    this use of pyrolysis char.  It's difficult to

25    understand the plaintiffs' brief.

1            THE COURT:  Is it literally that the

2      term is used in the claims, but it's never used

3      in the specification?  The only time it shows

4      up is in the claims and/or perhaps in the

5      introduction of that?

6            MR. GLANDOLE:  I can tell you exactly

7      how it's used because it does appear in one

8      other context.  Looking here at the language of

9      the claim, this is Claim 17.  I'm using it as a

10     representative here, and there are some colors

11     that are not really showing up.

12           The '225, this claim has two terms we've

13     been talking about in this case.  There's a

14     bromine term, and that's supposed to be green

15     here.  There's a sorbent material comprising

16     activated carbon.  We talked about that quite a

17     bit, activated carbon and bromine.  Those two

18     elements are in every claim that's being

19     asserted in this case.

20           There is this additional term, pyrolysis

21     char here, which, again, as you were discussing

22     with plaintiffs' counsel, has to be part of the

23     mixture that's combusted.  Now, this use of

24     pyrolysis char as an ingredient in the

25     combustion mixture, there's no discussion of

1    that.  The term "pyrolysis char" does appear a

2    handful of times in the specification, but it

3    does so always in the same context, which is as

4    an example of activated carbon, as an example

5    of the activated carbon sorbent.  So there are

6    these lists in the patent of what activated

7    carbon sorbent, what those could be, all the

8    different things, different charcoals and

9    things that are considered activated carbon.

10   One of the things that's in there is pyrolysis

11   char, but it's in this long list always as an

12   example of activated carbon sorbent.  That's

13   not how it's being used in this claim.

14           THE COURT:  If you weren't using

15   pyrolysis char as your relevant sorbent

16   material to soak up the mercury, how would you

17   be using it?

18           MR. GLANDOLE:  I don't know.  I

19   honestly do not know the answer to that

20   question, Your Honor.  There was no suggestion

21   by the plaintiffs in their briefing discussion,

22   infringement contentions.  There's no

23   discussion or teaching in the patent, and this

24   maybe gets to the 112 issues I was referring

25   to.  I don't know.  There's no discussion of it

1              in the prosecution history of what it's doing

2          here in the combustion chamber.

3                   To go back to your question, the term

4          does show up in the patent in place, always in

5          this long list of sorbents, which, again, is

6          not where it appears here in the claim.

7                   So the term we are to construe is mixture

8          comprising coal, pyrolysis char, and an

9          additive.  Again, I think we have a similar

10         situation where Plaintiffs are saying they want

11         the plain and ordinary meaning, but when you

12         look behind the scenes and dig into their

13         infringement contentions, you take it with the

14         arguments in the briefs, it's clear that they

15         have, I would say, not a plain understanding of

16         this, a more exotic understanding of the term,

17         which is, as the judge mentioned, they are

18         really reading combusting a mixture comprising,

19         coal, pyrolysis char, and additive to be

20         combusting a mixture of coal and an additive.

21         We believe they're reading this term out of the

22         claim because they're arguing that this

23         pyrolysis char is -- maybe just short of saying

24         always, but it does seem to be they're saying

25         that it's always created here from the

1        combustion of coal.  There's really no

2        difference in scope whether you remove that

3        term or not.  We think that's improper.

4            Turning now to the intrinsic record, I

5        think there was something the plaintiff brought

6        up that I don't think really informed one way

7        or the other.  This idea that you have to

8        combust the coal in the presence of pyrolysis

9        char, I don't think that gets to our dispute

10       here today.  Our dispute here today is whether

11       you have to read this to mean that you have to

12       add in the char if you have the char and the

13       bromine.  You add in each of those things, you

14       make this mixture, and that's what's being

15       combusted.  I think the idea that it has to be

16       done, that there's char there, it's present, I

17       don't think answers that question.

18            THE COURT:  Why, pursuant to the

19       claim language, would you have to add the char

20       into the combustion chamber if it is possible

21       that the coal and the bromine compound are

22       added, they're combusted, but yet coal and the

23       bromine compound remain in the chamber, but the

24       coal and the bromine compound, when combusted,

25       create the pyrolysis char which is then

1      subsequently further combusted along with the

2      remaining coal and bromine?  All three of them

3      end up in the chamber.  All three of them are

4      combusted simultaneously.  How come that can't

5      qualify as combusting?

6              MR. GLANDOLE:  Again, that seems to

7      be to be a reversal of the plain language here.

8      You're talking about a product of combustion,

9      now char, and now you're -- whereas the claim

10      requires it to be an ingredient, one of the

11      components of the combustion.

12              THE COURT:  Let's stop there.  I

13      think it's really key.  I think you're

14      suggesting it must be what you think the

15      mixture is, that the definition of the term is

16      such that the requisite mixture has to be,

17      like, a closer kind of composition than what

18      the plaintiffs are allowing for.  I think what

19      they're thinking a mixture is, these three

20      things are all together within a combined space

21      and they're combusted all at the same time.  I

22      think what you're suggesting is a more narrow

23      definition of mixture with the claims you're

24      talking about.  Just like how the bromine is

25      part of the coal, maybe the char is too?  Or

1          no.  I'm trying to get to what's really the

2          dispute here.  Where does it come out in the

3          claim language?

4                    MR. GLANDOLE:  I do think you're

5          right.  The term "mixture" is key.  I don't

6          think of it in terms of closeness or proximity

7          to the components, but I think of it in terms

8          of something that the accused infringer has to

9          create, has to provide.  Providing a mixture to

10         be combusted.

11                   THE COURT:  It doesn't say provide.

12         It just says combusted.  I'm picturing, again,

13         simplified, I've got a combustion chamber and

14         I've got the entrance, a hole, that's going

15         into it.  And one possibility is, boom, I put

16         the coal, then I put in some bromine compound,

17         then I put in the pyrolysis char, one, two,

18         three.  I put all three in.  They go in and

19         they're all combusted.  Whether they all mix

20         together or I put all three of them in there

21         separately, they're all combusted.  I think you

22         would say yes, that would count.

23              But the plaintiff is saying, well, look.

24         You could put in the coal and the bromine in

25         practice.  They're together.  They get

1    combusted.  They create pyrolysis char, but in

2    that process, the coal and portions of the coal

3    and bromine still exist.  They're still in the

4    chamber, and those three things together are

5    then further combusted before gas is emitted,

6    and that counts too.

7         Why does combusting a mixture have to be

8    providing each of the three from outside?  Why

9    can't it be all three are in there and they're

10   combusting, and we're good?

11              MR. GLANDOLE:  I think there are two

12   problems with that.  One is, again, completely

13   divorced from any teaching or any language in

14   the specification.

15              THE COURT:  Because you would say,

16   frankly, there's no discussion of pyrolysis

17   char in this context at all.

18              MR. GLANDOLE:  That's correct.  I

19   think of that as a long scheme that's not

20   described here.  That's certainly larding a lot

21   onto the simple phrase.

22        The second reason is scientifically,

23   practically, it's nonsensical.  This idea that

24   you have this term comprising -- you're

25   combusting a mixture of coal and bromine.  The

1          fact that there might be some char created

2          during the middle of the process so the

3          insulator is combusted, we're talking about,

4          under their theory, an intermediate that

5          appears and disappears.

6                Again, it's meaningless in the context of

7          method of treating mercury gas.  Reading that

8          claim that way here, there's nothing here the

9          char is doing if we're talking about it being

10         created, further combusted.

11               THE COURT:  I think what you're

12         saying now is from a scientific perspective, it

13         makes tremendous sense to combust a mixture of

14         these three things or all three of these things

15         separately added into a combustion chamber.

16         But it wouldn't make any sense from a

17         scientific perspective for the way that the

18         three things were said to be combusted together

19         is two of them come in, get combusted, third is

20         created and all three of them are further

21         combusted.

22               I think you're saying from a scientific

23         perspective the first makes eminent sense in

24         terms of stopping mercury emissions.  The

25         second doesn't.  I guess my question would be,

1    how do I know that?  Is that a person of skill

2    in the art telling me that, the patent telling

3    me that?

4              MR. GLANDOLE:  You're right again.

5    The struggle here is the patent isn't telling

6    us anything about this process.

7              THE COURT:  There, I think your real

8    fight -- I wonder if -- the question about what

9    the claims would allow for is a different

10   question about -- what the words of the claims

11   could allow for is arguably a different

12   question than what does the body of the patent

13   teach.  The questions can be conflated, but

14   they can also be different.  And the claim

15   language as written could allow for X then at a

16   later stage, one could argue if that is true,

17   there wasn't sufficient description because the

18   patent never teaches how one would get that

19   out.  I wonder maybe would it be a fair

20   criticism that really your arguments are you're

21   more focused on the 112 side than the claim

22   language.

23             MR. GLANDOLE:  I do think there are

24   substantial 112 problems.

25             THE COURT:  You're going to make 112

1     arguments.

2             MR. GLANDOLE:  That is correct, and

3     policy and reasons behind 112 are coming out

4     here because we're having difficulty describing

5     what this claim scope means.  Certainly from an

6     inventor -- this idea that there may be char

7     there or not, there's nothing in the patent

8     that teaches whether or how to determine that

9     if it's being met by this intermediate

10    application as Plaintiffs are suggesting.

11         I would like to turn to the --

12           THE COURT:  One other question.

13    Briefly in your brief, you suggested that were

14    the plaintiffs' construction to prevail here,

15    this claim term is indefinite.  I guess if I

16    were to ask you whether or not that's true or

17    not, do I really have the record here to make a

18    definiteness determination at claim

19    construction?  I don't have anything from

20    experts or what persons of skill in the art

21    would know.  Could I make a definiteness

22    determination if I were to determine that the

23    plaintiffs' construction more closely aligns

24    with the claim language?

25           MR. GLANDOLE:  Yes, as Your Honor is

1  suggesting, indefiniteness is an issue that

2  occasionally may be resolved at the claim

3  construction stage but often does benefit from

4  additional expert testimony.

5              THE COURT:  You might argue that

6  further down the line were the plaintiffs to

7  prevail.

8              MR. GLANDOLE:  That's correct.  I

9  think the indefiniteness arguments here would

10  relate to the transient nature of the char and

11  the lack of any kind of direction in the

12  specification as to the extent or the --

13  whether it has to be present, whether it has to

14  be combusted, how one would go about measuring

15  it.  I appreciate the Court as to determine

16  whether that's something that exists from

17  expert testimony.

18              THE COURT:  The other thing is you

19  can speak to the plaintiffs' claim

20  differentiation arguments.  What they're

21  suggesting is, look, if the fight is all about

22  or mainly about here whether or not the

23  combustion at issue can occur when the char is

24  created by the combustion materials in the

25  chamber, and maybe there's further combustion

1    in there, they would say what the defendants

2    want is it has to come in from the outside.

3    The patent talks about the scenarios in which

4    it can come from the outside and it's using

5    words when it talks about those scenarios.

6    Since it didn't use those words, they must be

7    talking about a broader world where you can add

8    it in the combustor, prior to the combustor, or

9    you could have a third way like our way, the

10   way we're talking about.  How come that

11   argument isn't somewhat persuasive?

12           MR. GLANDOLE:  Let's look at that,

13   Your Honor, if we could.  If I may, Your Honor,

14   I'm going to use Plaintiffs' version here.

15           THE COURT:  We're getting a lot of

16   use of the ELMO today.  It's old school.  Good.

17           MR. GLANDOLE:  Claims 3 and 4 do add

18   additional language to Claim 1, and I think

19   what's being done here is identifying two ways

20   it can be done, but both, to underline the main

21   point, both use the word "added."  Both are

22   additions.  It can be added prior to combustor

23   or within the combustor.  It's awkward

24   language, frankly, this idea of you're

25   combusting a mixture of coal, char, and the

1    additive wherein the char and additive are

2    added prior to the combustor.  Added to what?

3    I think there's a little bit of ambiguity

4    there.  I think it's unusual language and we

5    struggle with it on our side.

6              THE COURT:  Do you think the

7    difference is that the other side I think

8    suggested that added within, it's kind of added

9    directly into the combustor whereas added prior

10   is added to stuff that later gets entered into

11   the combustor like add at an earlier stage.

12             MR. GLANDOLE:  Either way we're

13   talking about stuff going in.  It uses the word

14   added for both.  What they're distinguishing

15   here, what they're doing, what they're

16   distinguishing is either preparing the mixture

17   ahead of time or preparing the mixture there in

18   the combustor.  That's how I struggle with this

19   language.  I think it's unclear, but I read it

20   to mean "added within the combustor" is you're

21   adding these three things in and the mixture

22   doesn't really happen until they get there.

23   Added prior to a combustor that combusts the

24   mixture, again, this suggests that you made a

25   mixture prior to that mixture being added in,

1    so I think it's premixing as opposed to mixing

2    at the time.  I think that's the most

3    reasonable read.  We have no guidance in the

4    specification.

5            THE COURT:  But if those are the

6    reads and the plaintiff suggested a third

7    option, which is most of the three are added

8    within or added prior two of the three, but the

9    third created within the combustor and then

10    mixes around the other two.  How come that

11    broader third option couldn't be covered by --

12            MR. GLANDOLE:  I think our

13    construction -- first of all, I think our

14    construction covers both of these narrower

15    embodiments.  We're saying all three need to be

16    added to or that they are mixed before or mixed

17    after are both covered by our construction.

18            THE COURT:  So 3 and 4 in your view

19    are more limited.  One covers both options.

20            MR. GLANDOLE:  That's right and they

21    point to Claim 16.  Claim 16 is a claim that

22    just says within.  That's a narrower option.

23    There are other ways that Claim 16 is more

24    narrow than Claim 1 as well.  It's not a strict

25    claim differentiation argument.

1          THE COURT:  Anything further?

2          MR. GLANDOLE:  We still have not

3    gotten to our intrinsic evidence.

4          Again, going back to my discussion of the

5    '225 patent, the specification, you're reading

6    it, there's nothing in here about the use of

7    the term pyrolysis char and how it's used here.

8    The examiner recognized this.  The examiner

9    said what's your written description for this

10   term?  And so we have this written description

11   here now.

12         Just to pause briefly here, I think that

13   plaintiff's counsel suggested that this is a

14   claim that was amended and not here in this

15   form.  That's not an argument we heard from

16   them previously, but if you look at the claim

17   language here which is from the Claim 45, which

18   may have been amended further.  If you're

19   looking at the feature that's being discussed

20   here, it's the feature we're discussing today.

21   Combusting a mixture comprising coal, pyrolysis

22   char, and a promoter to form the

23   mercury-containing gas.

24         If you look at the actual claims we're

25   discussing today, that term "promoter" gets

1          defined as a bromine or bromide compound.  That

2          is -- that's the only difference between this

3          claimed feature and we'll talk about later they

4          spell out what the promoter is.

5               To be clear, the idea that this written

6          support here is not relevant because this claim

7          was later amended, I would suggest that that is

8          not at all accurate.  This is the written

9          support for the claim term that we are

10         discussing here today, and this is the entirety

11         of the support.

12              And one thing I would point out right

13         away, if you look at their example of support,

14         there's four or five paragraphs here, not all

15         the same paragraph, not adjacent to one

16         another.  It's very much a Frankenstein picking

17         from different parts.  What they did here was

18         as we talked about here, paragraph 49, that's

19         where they get the term "pyrolysis char."  As I

20         mentioned before, the activated carbon, they

21         have a list of things it can be.  One of the

22         examples is pyrolysis char.  They take from

23         that sorbent paragraph, even though, as we

24         said, the pyrolysis char in the claim is not

25         being used as a sorbent, they point to that.

1    So they first tie the pyrolysis char to a

2    sorbent and then they go to a different

3    paragraph, very far away in the application,

4    that says the sorbent can be added whenever,

5    before, after, or within the boiler.

6         I would argue this kind of a Frankenstein

7    construction is not really proper written

8    support, but it is the only thing we have, and

9    the only thing we have here says it can be

10   added.  It's to be added.  This is the only

11   written support we have.

12        THE COURT:  If it's talking about the

13   sorbent, the activated carbon can be pyrolysis

14   char, and we know that this part of the claim

15   language isn't about the activated carbon

16   piece, it's about a precursor step, how is any

17   of this relevant?

18        MR. GLANDOLE:  This is the only thing

19   they provided.  This is the only thing the

20   applicant pointed to as the support for, as the

21   written description for, the claim we are

22   discussing.

23        I share the confusion.  Does this apply

24   or not?  If it doesn't apply, there's nothing

25   here.  There's no written description.  And,

1     again, maybe that's a determination for later

2     in the case.

3          To the extent that there is, to the

4     extent there's any support whatsoever for this

5     term in the specification that they pointed to

6     so that this is not entirely new material

7     that's being claimed, they tie it to the

8     sorbent and they say it can be added.

9          THE COURT:  We don't have any further

10    description from the examiner in the

11    prosecution history like I heard their

12    argument, let me tell you why it is -- there's

13    nothing?

14          MR. GLANDOLE:  Nothing.  That's

15    right.

16          And, again, whether or not this was

17    properly -- this sentence was a properly

18    written description as it was, they are at

19    least asserting here in their written

20    description -- they are asserting in their

21    argument that it is to be added.  That's where

22    you get that word added.  It's not a word we

23    came up with out of nowhere.  That word "added"

24    comes from the only written description support

25    relied on.

1        I think with that, I'll stop.

2              THE COURT:  Okay.  Thank you.  I'll

3     ask if Ms. Dellinger has any brief rebuttal.

4              MS. DELLINGER:  Yes, Your Honor, a

5     few points.

6        First, we heard throughout this

7     discussion -- I'll start with where we ended as

8     to this written description portion.  The

9     defendants brought up the paragraph that went

10    to Claim 45, and my opposing counsel stated

11    that this claim was later amended.  This claim

12    was never amended and never underwent

13    prosecution.

14       Secondly --

15             THE COURT:  On that point, though, in

16    essence, though, wasn't the patentee trying to

17    tell us something about what phraseology, just

18    like the phraseology that's in dispute here,

19    means and where in the specification we can

20    look for information to inform the meaning?  Is

21    that fair?

22             MS. DELLINGER:  It is fair.  It's to

23    relevant parts of the specification, but,

24    again, the statement that there was nothing

25    further from the examiner or during the

1      prosecution about further support for that is

2      just factually incorrect because even though

3      those claims were cancelled, the claims that do

4      appear now including the pyrolysis char, the

5      mixture comprising pyrolysis char and additives

6      appear in Claim 66.  As we saw, there was that

7      exchange with the examiner where they

8      understood the embodiment to be included, which

9      was understood that it meant the claim was

10     important.

11          And a promoter, that was not in response

12     to a written description challenge.  The

13     sections of the specification that were cited

14     were not in regard to or in response to a

15     written description challenge, so just

16     clarifying a few points.

17               THE COURT:  With regard to that kind

18     of chart of Claim 45 that the other side relies

19     on here, I think what you were saying about it,

20     regardless of the reason why, is you don't

21     think that's helpful.  You don't think the

22     Court should necessarily consider it.  Am I

23     right?

24               MS. DELLINGER:  I think since it goes

25     to none of the claims that are currently in the

1    patent, it's not necessarily the most helpful

2    evidence.

3             THE COURT:  Not helpful in your view.

4    Is there another reason it's not helpful is

5    because in the patent it was pointing to

6    information about the char in the

7    specification, it was pointing to a part of the

8    specification that was referring to the char in

9    terms of its use as an activated carbon, i.e.,

10   something that is not a part of the limitation

11   we're dealing with now, something that's

12   talking about a step that comes later in the

13   claim?

14            MS. DELLINGER:  In that reference, it

15   does pertain to the activated carbon or

16   pyrolysis char being a form of activated

17   carbon, not necessarily it being created in the

18   combustion of coal in that section.

19            THE COURT:  Let me let you continue.

20            MS. DELLINGER:  Thank you.

21        Secondly, Defendants' proposed

22   construction, again, we talked about whether

23   this -- the dispute here focuses on what the

24   mixture is and where it's added or if it's

25   added.  Defendants' proposed construction seeks

1    to limit the claims to a premade mixture.  The

2    claims do not require a premade mixture.  The

3    claims are wholly silent as to where or when or

4    how this mixture is created or how it comes

5    about, so those limitations that the defendants

6    seek to import from these dependent claims or

7    from outside the specification where they're

8    seeking to import these limitations is

9    improper.

10           Additionally, Your Honor, when you look

11    at Claim 1, Claim 1 is a method claim.

12    Claim 1, Claim 14, and Claim 17.  We see

13    combusting a mixture comprising.  There is no

14    additional adding step in this combusting part.

15    We see adding a particular sorbent material but

16    no adding of a pyrolysis char in this method

17    step.  Accordingly, Your Honor, we believe it

18    is improper to read those limitations into

19    these claims.

20           Taking -- we believe when you look at all

21    the intrinsic evidence, particularly looking at

22    the differences between the claims and the fact

23    that they are silent as to whether and when and

24    how this mixture must appear, we believe that

25    it would be -- we ask that Your Honor not adopt

1    any claim limitation construction and find that

2    claim construction is not necessary.

3              THE COURT:  Thank you.

4         Any brief rebuttal?

5              MR. GLANDOLE:  Well, again, with

6    regard to the written description part, as I

7    mentioned, this is a new argument and one that

8    I wish we would have been able to address

9    previously, but just to restate what I said

10   earlier, this is the exact claim language that

11   is being disputed here.  It appears the claim

12   language appears in this form in the claim even

13   if this claim eventually was later cancelled,

14   so the suggestion that it is not relevant is

15   incorrect.

16        As far as the other statements, again,

17   there was discussion of this term.  There is no

18   further discussion of the term as we are

19   discussing it today.  There's no further

20   discussion of this question, this question of

21   whether the char is something to be added or

22   whether it arises naturally.  There's no

23   further discussion of that.

24        Also, I would point out when it comes to

25   written description, nothing we have seen from

1          Plaintiffs today is the discussion by the

2          examiner and applicant of the specification.

3          Nothing they've shown today is a discussion of

4          the written description support.  The only

5          discussion by the applicant and examiner with

6          written description support relates to the

7          paragraphs I've shown here, and I believe

8          that's true also for the claims that did issue.

9          I haven't had a chance sitting here today to go

10         through and make sure that's true.

11                THE COURT:  I know there's going to

12         be in the briefing, again, because you have it

13         up and you're addressing -- I'll ask you.  It

14         is asserted, though, that the patentee here is

15         saying in essence does it count to be

16         combusting the char and the coal and the

17         promoter in a circumstance where the char is

18         the byproduct of the coal and the promoter

19         being previously combusted?  Yeah, it counts.

20         It's asserted that that's what the patent is

21         saying.  Is that what the patent is saying?

22                MR. GLANDOLE:  I don't think that's

23         what the patent is saying here, and that's why

24         I put this language up.  Pyrolysis char is

25         something you can certainly purchase from a

1    supplier.  It's something you can buy and use,

2    and it has a variety of different applications.

3    The way it is created is from -- it can be

4    created from a variety of carbon sources but

5    often from coal.  I think that's all this is

6    saying here, is that char that is something

7    that's created, that can be created, from coal.

8    I don't think this is referring to the

9    combustion that's going on in the claim term.

10    There's no tying here to the combustion going

11    on in the claim term.

12          THE COURT:  It does say it is

13    believed the applicant meant to claim

14    combusting coal in the presence of pyrolysis

15    char and a promoter after just saying that the

16    way the pyrolysis char gets created is that

17    it's a byproduct of the combustion of coal and

18    the promoter, so what could the patentee be

19    meaning by it's believed the applicant meant to

20    claim combusting coal in the presence of

21    pyrolysis char?  What do you think the patentee

22    meant by that statement?

23          MR. GLANDOLE:  I think that is the

24    examiner here.

25          THE COURT:  I'm sorry.  The examiner.

1          MR. GLANDOLE:  I think the examiner

2    here, again, is saying pyrolysis char --

3    they're talking about its source.  It is often

4    sourced from coal.  That's the way it is

5    normally created.  It is not something that can

6    be -- it is something that can be combusted,

7    and I think they're contrasting it here with a

8    halide.  They're saying the claims require

9    burning all three at once, combusting all three

10   at once, even though it goes on to say the char

11   and the coal are combusted and the promoter is

12   not something that actually combusts.

13          THE COURT:  I may have asked you a

14   version of this.  One more time.  If you were

15   to have to separately define the term "mixture"

16   in this claim term, would the definition be

17   something like -- and we're talking about the

18   mixture of three elements, so would the

19   definition being something like the three

20   elements are all present together within the

21   combustor, or would the definition be more

22   narrow?

23          MR. GLANDOLE:  So I think all three

24   elements do need to be present in the combustor

25   and need to be subject to combustion.  Now, how

1      that -- chemically how that works with bromine

2      is a little different than the other two, but

3      they need to be in the combustion zone when

4      they're combusting together.

5              THE COURT:  They need to be in the

6      combustion zone in the combustor and combusted,

7      but that's combined with each other.

8              MR. GLANDOLE:  I think a mixture is a

9      direction to the person of skill in the art.

10     They are the one creating the mixture.  The

11     person of skill in the art is the one

12     performing this method, so they need to be the

13     ones to introduce that mixture.  We talk about

14     the two different ways the dependent claims

15     disclose that happening, whether it's in the

16     boiler or prior to the boiler, but no.  I think

17     mixture does imply that the person of skill in

18     the art, the accused infringer, has to be

19     creating that mixture.  They're the one

20     providing that mixture.  That's what it means

21     to be combusting that mixture.

22             THE COURT:  And the mixture must be

23     something more than putting the three elements

24     into an enclosed space and combusting that

25     mixture.  It must mean putting the three

1    elements into an enclosed space such that those

2    elements are blank before they're combusted.

3    What is the blank?

4            MR. GLANDOLE:  I don't think there is

5    a blank.  I don't think there is an additional

6    step.  Our position here is that they need to

7    put the three items in.  The difference between

8    our parties is they feel they only need to put

9    two.  It's all three.

10           THE COURT:  Anything further,

11   Mr. Glandole?

12           MR. GLANDOLE:  Nothing, Your Honor.

13           THE COURT:  Thank you.

14       All right, counsel.  I should say I

15   appreciate the parties' good faith efforts

16   before the hearing to meet and confer prior to

17   the claim construction hearing and see if they

18   could reach agreement on disputes.  The parties

19   did so with regard to one term, and the way it

20   worked out, with a stipulation of the other.  A

21   lot of it was airing out the issues with

22   respect to those remaining disputed terms, so I

23   appreciate the parties' efforts in that regard.

24       I will take the matter under advisement.

25   I expect to issue a claim construction

1          decision -- the scheduling order says that the

2          default would be within 60 days, and I'll

3          expect to do that.  If for some reason I'm not

4          going to meet that aspiration, I'll let the

5          parties know.

6               With all that said, before we go off the

7          record, is there anything further that I need

8          to address from a procedural perspective with

9          respect to our Markman here today?

10                    MR. NEMUNAITIS:  No, Your Honor.

11                    THE COURT:  On Defendants' side?

12                    MR. GLANDOLE:  Nothing Your Honor.

13                    THE COURT:  Let's go off the record.

14               (The proceeding was adjourned.)

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2    STATE OF DELAWARE         )
                               ) ss:
3    COUNTY OF NEW CASTLE       )

4         I, Deanna L. Warner, a Certified

5    Shorthand Reporter, do hereby certify that as

6    such Certified Shorthand Reporter, I was

7    present at and reported in Stenotype shorthand

8    the above and foregoing proceedings in Case

9    Number 19-CV-1334-CJB, *MIDWEST ENERGY EMISSIONS*

10   *CORP., et al. Vs. ARTHUR J. GALLAGHER & CO., et*

11   *al.*, heard on April 28, 2022.

12        I further certify that a transcript of

13   my shorthand notes was typed and that the

14   foregoing transcript, consisting of 124

15   typewritten pages, is a true copy of said

16   **MARKMAN HEARING**.

17        **SIGNED**, **OFFICIALLY SEALED**, and **FILED**

18   with the Clerk of the District Court, NEW

19   CASTLE County, Delaware, this 2nd day of May,

20   2022.

21

22   _____
                      Deanna L. Warner, CSR, #1687
23                    Speedbudget Enterprises, LLC

24

25

# #

**#1687** [1] - 124:22

# '

**'114** [3] - 46:16, 46:22, 49:12
**'147** [18] - 7:13, 44:11, 44:13, 45:20, 45:23, 47:7, 47:8, 48:15, 49:6, 49:7, 49:13, 49:15, 49:22, 51:11, 51:19, 52:10, 53:3, 56:7
**'225** [12] - 45:21, 76:14, 79:3, 85:3, 85:8, 86:9, 94:5, 94:9, 94:12, 94:15, 95:12, 109:5
**'413** [1] - 68:15
**'430** [3] - 46:17, 46:22, 49:13
**'440** [1] - 68:15

# 1

**1** [13] - 13:23, 14:3, 14:22, 52:14, 86:9, 90:8, 92:9, 106:18, 108:24, 116:11, 116:12
**1.57(e** [1] - 43:4
**1.7** [1] - 46:20
**10** [2] - 31:3, 41:6
**100** [1] - 88:20
**112** [9] - 50:9, 86:7, 86:25, 94:20, 96:24, 103:21, 103:24, 103:25, 104:3
**12** [1] - 30:5
**124** [1] - 124:14
**14** [3] - 77:13, 90:8, 116:12
**16** [6] - 90:4, 90:5, 92:15, 108:21, 108:23
**17** [7] - 14:22, 59:15, 66:10, 90:8, 95:9, 116:12
**19-1334-RGA** [1] - 3:9
**19-CV-1334-CJB** [2] - 1:6, 124:9

# 2

**2** [1] - 43:1

**2000s** [1] - 12:5
**2018** [1] - 86:7
**2022** [3] - 1:14, 124:11, 124:20
**28** [1] - 124:11
**28th** [1] - 1:14
**2A** [1] - 1:13
**2nd** [2] - 86:6, 124:19

# 3

**3** [8] - 58:8, 61:4, 90:12, 92:3, 92:8, 92:15, 106:17, 108:18
**30** [1] - 26:7
**37** [1] - 43:5

# 4

**4** [4] - 92:3, 92:8, 106:17, 108:18
**45** [5] - 85:4, 85:14, 109:17, 113:10, 114:18
**49** [1] - 110:18

# 6

**60** [1] - 123:2
**66** [3] - 86:8, 86:10, 114:6

# A

**ability** [1] - 51:7
**able** [4] - 6:10, 27:1, 65:9, 117:8
**absolutely** [4] - 22:1, 23:19, 32:4, 58:14
**absorb** [1] - 51:17
**absorbent** [1] - 51:8
**according** [1] - 20:6
**accordingly** [2] - 92:10, 116:17
**accurate** [2] - 89:9, 110:8
**accused** [4] - 52:24, 100:8, 121:18
**acknowledge** [4] - 32:10, 79:25, 84:1, 94:21
**acknowledging** [2] - 81:15, 82:2
**action** [3] - 3:8, 55:18, 86:5
**activate** [1] - 68:17

**activated** [35] - 11:24, 12:9, 12:10, 13:10, 14:14, 18:19, 21:2, 48:11, 48:12, 51:8, 51:13, 51:14, 51:15, 51:16, 59:1, 59:4, 59:8, 65:7, 65:9, 65:15, 66:2, 68:18, 95:16, 95:17, 96:4, 96:5, 96:6, 96:9, 96:12, 110:20, 111:13, 111:15, 115:9, 115:15, 115:16
**actual** [7] - 12:3, 26:20, 29:5, 39:13, 49:6, 85:15, 109:24
**add** [22] - 33:25, 40:2, 64:4, 64:8, 64:9, 64:10, 69:24, 76:20, 76:24, 77:4, 77:10, 79:5, 79:17, 89:4, 89:5, 98:12, 98:13, 98:19, 106:7, 106:17, 107:11
**added** [48] - 11:23, 13:4, 14:8, 16:1, 47:3, 49:3, 52:15, 53:23, 54:14, 63:11, 77:11, 77:12, 78:6, 79:7, 85:1, 89:8, 91:8, 91:9, 92:6, 92:19, 93:7, 98:22, 102:15, 106:21, 106:22, 107:2, 107:8, 107:9, 107:10, 107:14, 107:20, 107:23, 107:25, 108:7, 108:8, 108:16, 111:4, 111:10, 112:8, 112:21, 112:22, 112:23, 115:24, 115:25, 117:21
**adding** [24] - 11:22, 66:13, 68:21, 79:1, 82:21, 90:3, 90:6, 90:16, 90:21, 90:22, 90:23, 91:1, 91:2, 91:5, 91:12, 91:13, 91:15, 92:4, 93:2, 107:21, 116:14, 116:15, 116:16
**addition** [6] - 49:2, 52:3, 52:7, 52:23, 55:14, 78:22
**additional** [8] - 25:16, 39:18, 66:17, 95:20, 105:4, 106:18,

116:14, 122:5
**additionally** [1] - 116:10
**additions** [1] - 106:22
**additive** [12] - 11:23, 12:3, 12:23, 44:7, 76:16, 82:17, 82:22, 97:9, 97:19, 97:20, 107:1
**additives** [3] - 11:1, 13:4, 114:5
**address** [4] - 28:21, 94:4, 117:8, 123:8
**addresses** [1] - 27:16
**addressing** [3] - 28:2, 86:8, 118:13
**adds** [2] - 14:23
**adjacent** [3] - 9:5, 9:8, 110:15
**adjourned** [1] - 123:14
**admission** [1] - 116:25
**admitted** [1] - 13:12
**adopt** [1] - 116:25
**ADRIENNE** [1] - 1:21
**Adrienne** [2] - 3:22, 76:13
**advancement** [1] - 52:1
**advisement** [1] - 122:24
**affect** [1] - 76:25
**afternoon** [7] - 3:6, 3:17, 3:18, 4:6, 4:25, 45:16, 76:12
**agnostic** [2] - 19:4, 41:3
**agree** [12] - 5:14, 16:11, 20:16, 33:11, 33:23, 42:17, 42:21, 50:2, 77:21, 80:17, 82:6, 89:21
**agreed** [5] - 5:13, 32:2, 46:24, 68:19, 87:19
**agreement** [5] - 5:24, 46:18, 47:4, 47:13, 122:18
**ahead** [1] - 107:17
**air** [13] - 10:19, 12:18, 12:25, 13:1, 13:3, 13:6, 15:15, 19:22, 22:24, 39:20, 73:20
**airing** [1] - 122:21
**al** [6] - 1:4, 1:7, 3:7, 3:8, 124:10, 124:11
**albeit** [1] - 40:15
**aligns** [1] - 104:23
**allocated** [1] - 6:6
**allow** [5] - 23:13, 23:18, 103:9,

103:11, 103:15
**allowing** [1] - 99:18
**allows** [1] - 21:8
**alluding** [1] - 50:9
**alone** [1] - 55:10
**ambiguity** [1] - 107:3
**amended** [5] - 109:14, 109:18, 110:7, 113:11, 113:12
**amount** [3] - 16:13, 29:16, 67:19
**amounts** [1] - 37:13
**analysis** [1] - 85:5
**AND** [1] - 1:2
**answer** [11] - 25:4, 26:14, 31:21, 31:25, 32:7, 44:9, 56:18, 63:23, 64:18, 96:19
**answered** [2] - 32:2, 56:21
**answering** [3] - 26:5, 35:23, 36:1
**answers** [2] - 28:22, 98:17
**apologize** [1] - 68:13
**apparatus** [5] - 29:24, 30:2, 30:7, 30:25, 72:22
**apparatuses** [2] - 22:3, 41:1
**appear** [6] - 9:5, 95:7, 96:1, 114:4, 114:6, 116:24
**APPEARANCES** [1] - 1:16
**applicant** [9] - 86:15, 86:20, 86:24, 87:19, 111:20, 118:2, 118:5, 119:13, 119:19
**applicant's** [1] - 87:24
**application** [6] - 43:2, 43:17, 44:17, 50:21, 104:10, 111:3
**applications** [1] - 119:2
**applied** [2] - 11:1, 47:7
**applies** [1] - 43:5
**apply** [6] - 9:14, 49:12, 55:11, 58:21, 111:23, 111:24
**appreciate** [4] - 75:1, 105:15, 122:15, 122:23
**appreciated** [1] - 74:15
**approach** [3] - 6:25, 45:14, 66:8
**appropriate** [1] - 40:3

approved [1] - 5:20
April [2] - 1:14, 124:11
area [1] - 74:12
areas [1] - 55:13
arguably [1] - 103:11
argue [6] - 4:18, 35:3,
88:21, 103:16,
105:5, 111:6
argues [1] - 26:9
arguing [5] - 34:3,
37:5, 42:11, 76:14,
97:22
argument [16] - 6:7,
6:9, 6:11, 16:12,
16:13, 26:21, 43:19,
50:9, 85:11, 87:4,
106:11, 108:25,
109:15, 112:12,
112:21, 117:7
arguments [12] - 7:20,
43:3, 44:5, 85:23,
85:25, 86:1, 87:7,
97:14, 103:20,
104:1, 105:9, 105:20
arises [2] - 46:13,
117:22
ARPS [1] - 2:5
arrows [3] - 43:11,
71:16
ARSHT [1] - 1:23
art [10] - 49:22, 51:24,
51:25, 52:19, 76:5,
103:2, 104:20,
121:9, 121:11,
121:18
ARTHUR [2] - 1:7,
124:10
Arthur [1] - 3:7
articulate [1] - 27:23
articulated [2] - 8:12,
8:20
articulation [1] - 34:25
aspect [1] - 28:21
aspiration [1] - 123:4
assert [1] - 47:23
asserted [6] - 46:2,
77:22, 88:24, 95:19,
118:14, 118:20
asserting [4] - 42:4,
48:1, 112:19, 112:20
assertion [1] - 24:3
assess [1] - 86:1
assume [1] - 91:3
atmosphere [1] -
13:13
attempted [1] - 44:22
automatically [2] -
88:25
aware [1] - 13:20
awkward [1] - 106:23

B

B's [1] - 43:6
background [6] -
43:21, 43:23, 49:11,
51:3, 51:21, 52:1
barrel [3] - 29:24,
59:4, 60:17
base [1] - 34:8
based [3] - 9:15, 81:5,
81:14
basis [2] - 8:17, 34:3
battle [2] - 39:7, 39:14
became [1] - 25:16
become [1] - 5:21
bed [1] - 59:8
beforehand [1] -
91:14
begin [4] - 3:15, 4:23,
6:19, 7:14
beginning [1] - 4:4
behalf [5] - 4:8, 5:1,
5:5, 45:18, 76:13
behind [3] - 8:19,
97:12, 104:3
below [3] - 12:12,
61:20, 86:18
belt [1] - 12:22
benefit [1] - 105:3
best [2] - 27:9, 60:1
better [3] - 16:22,
28:22, 55:2
between [5] - 9:9,
9:12, 110:2, 116:22,
122:7
big [1] - 12:11
binding [1] - 58:12
bit [7] - 7:16, 51:4,
52:7, 93:25, 95:17,
107:3
black [1] - 71:16
blank [5] - 75:7, 122:2,
122:3, 122:5
blood [5] - 73:8, 73:9,
73:10, 74:24
bloodstream [3] -
73:12, 74:16, 74:22
blowing [3] - 12:25,
13:1, 72:1
blown [1] - 39:21
body [1] - 103:12
boiler [11] - 11:13,
11:14, 13:2, 41:11,
41:14, 42:19, 71:14,
71:21, 111:5, 121:16
book [1] - 7:4
books [2] - 6:3, 7:8
boom [1] - 100:15
bottom [1] - 10:16

Br [1] - 86:12
BR2 [1] - 86:11
BRAD [1] - 1:20
Bradley [1] - 3:23
BRIAN [1] - 1:24
Brian [1] - 4:7
brief [18] - 5:16, 6:13,
16:25, 17:3, 26:5,
35:23, 36:1, 46:8,
70:9, 70:11, 71:10,
74:6, 77:16, 93:18,
94:25, 104:13,
113:3, 117:4
briefed [4] - 5:15,
5:18, 25:15, 27:4
briefing [25] - 4:18,
8:21, 14:5, 25:18,
25:19, 29:16, 39:2,
46:17, 46:18, 46:20,
46:22, 55:23, 68:12,
68:15, 69:6, 76:9,
83:14, 84:23, 85:12,
85:25, 87:3, 87:7,
94:2, 96:21, 118:12
briefings [1] - 56:25
briefly [6] - 10:5,
29:15, 74:7, 92:2,
104:13, 109:12
briefs [6] - 20:3,
38:19, 53:5, 54:20,
59:20, 97:14
bring [1] - 6:4
brings [1] - 15:16
broad [1] - 14:4
broader [4] - 60:5,
93:11, 106:7, 108:11
bromide [3] - 17:9,
76:17, 110:1
bromide-containing
[1] - 17:9
brominated [6] -
15:11, 36:21, 41:7,
51:13, 59:1, 67:1
bromine [165] - 7:25,
11:23, 12:6, 13:11,
13:25, 14:10, 14:15,
15:4, 17:11, 17:13,
17:16, 19:10, 19:13,
19:14, 19:19, 19:23,
20:9, 20:10, 20:11,
20:25, 21:12, 21:23,
22:2, 22:10, 22:11,
22:16, 22:17, 22:18,
22:20, 23:13, 23:23,
24:6, 25:2, 25:23,
26:10, 26:12, 27:17,
29:22, 29:25, 31:6,
32:12, 32:15, 33:20,
34:18, 34:20, 35:13,
35:15, 36:2, 36:5,

36:6, 36:11, 36:13,
36:15, 36:19, 36:23,
37:2, 37:8, 37:10,
37:13, 37:15, 37:19,
37:23, 38:9, 39:20,
40:7, 40:13, 40:19,
41:13, 41:19, 42:6,
42:12, 46:6, 46:8,
47:9, 47:17, 47:21,
48:9, 48:14, 48:16,
48:19, 48:20, 51:7,
51:16, 52:3, 52:8,
52:11, 52:16, 52:17,
52:20, 52:23, 53:1,
53:13, 53:15, 53:16,
53:23, 53:25, 54:4,
54:13, 55:12, 55:14,
55:19, 56:10, 56:14,
56:23, 57:6, 57:7,
57:11, 57:22, 59:5,
59:6, 59:9, 62:6,
62:7, 62:10, 63:11,
63:14, 63:18, 64:4,
64:7, 64:8, 64:9,
64:15, 65:4, 65:13,
66:3, 67:18, 67:24,
69:4, 70:12, 70:18,
70:20, 70:23, 70:24,
71:3, 73:20, 73:21,
75:4, 77:23, 78:21,
79:14, 79:17, 80:3,
80:5, 80:8, 80:10,
80:22, 88:14, 90:19,
95:14, 95:17, 98:13,
98:21, 98:23, 98:24,
99:2, 99:24, 100:16,
100:24, 101:3,
101:25, 110:1, 121:1
bromine-coated [1] -
57:7
bromine-containing
[10] - 15:4, 17:16,
26:10, 48:16, 48:20,
52:11, 56:10, 56:14,
56:23, 57:22
bromine-treated [3] -
42:6, 67:18, 67:24
brought [4] - 47:16,
87:11, 98:5, 113:9
bulk [1] - 10:11
Burke [1] - 1:13
burning [2] - 68:16,
120:9
buy [1] - 119:1
BY [2] - 1:17, 2:6
byproduct [3] - 86:12,
118:18, 119:17

C

Caldwell [2] - 3:20,
3:24
CALDWELL [2] - 1:19,
1:20
cancelled [2] - 85:4,
114:3, 117:13
cannot [1] - 86:14
capture [1] - 11:25
captured [2] - 63:17,
84:16
capturing [2] - 14:11,
66:9
carbon [40] - 11:24,
12:9, 12:10, 13:10,
14:14, 18:19, 21:3,
29:25, 41:12, 48:11,
48:13, 51:8, 51:14,
51:15, 59:1, 59:4,
59:9, 65:7, 65:9,
65:15, 66:2, 68:17,
68:18, 88:18, 95:16,
95:17, 96:4, 96:5,
96:7, 96:9, 96:12,
110:20, 111:13,
111:15, 115:9,
115:15, 115:17,
119:4
carried [1] - 23:1
carrying [1] - 13:3
case [27] - 3:11, 5:11,
6:21, 8:15, 13:19,
13:20, 20:17, 24:3,
27:10, 28:7, 30:6,
33:5, 39:4, 45:19,
48:8, 52:9, 54:18,
55:5, 61:24, 77:2,
84:4, 86:6, 94:3,
94:6, 95:13, 95:19,
112:2
Case [2] - 1:5, 124:8
Cassady [1] - 3:21
CASSADY [1] - 1:19
CASTLE [2] - 124:3,
124:19
causes [2] - 11:2,
80:25
caveat [1] - 42:17
caveats [1] - 56:4
cells [1] - 73:10
centered [1] - 45:24
centers [1] - 78:11
CERT [4] - 2:8, 4:23,
5:1, 5:7
certain [1] - 90:21
Certainly [1] - 11:25
certainly [16] - 22:7,
26:24, 27:20, 32:23,

40:24, 45:3, 48:5, 51:5, 56:6, 67:4, 78:24, 84:8, 84:11, 101:20, 104:5, 118:25

**Certified** [2] - 124:4, 124:6

**certify** [2] - 124:5, 124:12

**cetera** [1] - 62:15

**CFR** [1] - 43:5

**chalk** [1] - 78:2

**challenge** [2] - 114:12, 114:15

**chamber** [92] - 11:10, 11:13, 12:8, 18:13, 18:22, 18:23, 19:1, 19:2, 19:17, 19:25, 20:12, 21:1, 21:19, 21:22, 21:24, 22:4, 22:11, 22:13, 23:2, 23:5, 23:6, 23:8, 23:12, 23:16, 24:9, 25:3, 27:18, 32:13, 32:19, 35:17, 36:9, 36:12, 37:1, 37:11, 37:14, 37:18, 38:8, 38:9, 42:7, 47:2, 53:17, 53:24, 57:7, 57:16, 57:17, 62:8, 62:9, 62:23, 63:3, 63:5, 63:7, 63:9, 63:10, 63:12, 63:13, 63:19, 64:5, 64:6, 64:9, 65:10, 65:16, 65:17, 78:18, 78:23, 79:7, 79:9, 79:19, 80:3, 80:11, 82:11, 82:21, 84:2, 84:6, 84:14, 89:12, 89:15, 89:16, 89:17, 91:3, 91:4, 91:6, 91:7, 97:2, 98:20, 98:23, 99:3, 100:13, 101:4, 102:15, 105:25

**chance** [6] - 6:12, 25:11, 28:17, 68:14, 93:18, 118:9

**change** [5] - 8:13, 8:14, 8:21, 64:16, 73:24

**changed** [1] - 10:17

**changes** [3] - 8:5, 8:7, 73:19

**changing** [1] - 8:9

**char** [84] - 77:15, 77:23, 78:8, 78:10, 78:16, 78:18, 78:19, 79:13, 79:20, 79:22, 80:4, 80:8, 80:25,

82:16, 84:13, 84:25, 86:11, 86:12, 86:17, 86:23, 88:1, 88:7, 88:12, 88:16, 88:17, 88:22, 89:11, 90:3, 90:7, 90:20, 92:6, 94:7, 94:16, 94:24, 95:21, 95:24, 96:1, 96:11, 96:15, 97:8, 97:19, 97:23, 98:9, 98:12, 98:16, 98:19, 98:25, 99:9, 99:25, 100:17, 101:1, 101:17, 102:1, 102:9, 104:6, 105:10, 105:23, 106:25, 107:1, 109:7, 109:22, 110:19, 110:22, 110:24, 111:1, 111:14, 114:4, 114:5, 115:6, 115:8, 115:16, 116:16, 117:21, 118:16, 118:17, 118:24, 119:6, 119:15, 119:16, 119:21, 120:2, 120:10

**characterization** [1] - 66:12

**charcoals** [1] - 96:8

**charge** [1] - 76:16

**chart** [1] - 114:18

**chemically** [1] - 121:1

**chemicals** [1] - 14:7

**Christopher** [1] - 1:13

**circles** [1] - 78:5

**circuit** [1] - 44:16

**circumstance** [4] - 58:13, 67:24, 79:12, 118:17

**circumstances** [1] - 47:24

**citations** [1] - 94:1

**cite** [2] - 84:24, 85:2

**cited** [9] - 44:4, 44:18, 44:21, 44:24, 58:7, 77:16, 85:13, 85:18, 114:13

**civil** [1] - 3:8

**CJB** [1] - 3:9

**Claim** [2] - 59:15, 86:9

**claim** [170] - 5:16, 6:22, 8:6, 8:8, 8:12, 8:16, 8:17, 9:2, 9:3, 9:6, 9:18, 10:1, 10:2, 13:23, 14:3, 14:22, 15:24, 16:4, 16:9, 18:3, 19:4, 19:9, 19:13, 20:21, 20:23,

21:8, 23:12, 24:14, 24:15, 24:17, 26:22, 27:3, 27:8, 28:3, 29:5, 29:6, 31:22, 33:7, 33:14, 34:5, 34:24, 34:25, 39:11, 39:22, 41:17, 42:5, 42:10, 43:9, 52:14, 54:8, 54:12, 56:22, 57:2, 57:5, 58:1, 59:15, 60:10, 60:12, 60:24, 62:20, 62:24, 63:17, 64:20, 65:11, 66:10, 66:15, 66:19, 66:20, 66:21, 67:19, 67:25, 68:3, 70:25, 76:23, 77:13, 78:25, 79:2, 81:6, 81:7, 81:16, 82:15, 84:16, 84:25, 85:3, 85:4, 85:14, 86:8, 86:10, 86:16, 87:20, 87:24, 88:2, 89:7, 89:8, 89:21, 89:24, 90:2, 90:4, 90:5, 90:12, 92:9, 92:16, 94:8, 94:9, 94:22, 95:9, 95:12, 95:18, 96:13, 97:6, 97:22, 98:19, 99:9, 100:3, 102:8, 103:14, 103:21, 104:5, 104:15, 104:18, 104:24, 105:2, 105:19, 106:18, 108:21, 108:23, 108:24, 108:25, 109:14, 109:16, 109:17, 110:6, 110:9, 110:24, 111:14, 111:21, 113:10, 113:11, 114:6, 114:9, 114:18, 115:13, 116:11, 116:12, 117:1, 117:2, 117:10, 117:11, 117:12, 117:13, 119:9, 119:11, 119:13, 119:20, 120:16, 122:17, 122:25

**claimed** [5] - 58:5, 66:10, 92:4, 110:3, 112:7

**claiming** [4] - 51:5, 51:6, 55:7, 86:20

**claims** [56] - 13:23, 14:4, 15:23, 17:8, 23:18, 27:25, 32:3, 38:2, 40:17, 42:20, 48:8, 48:12, 58:22,

64:3, 64:25, 65:3, 71:8, 77:22, 79:3, 83:4, 85:7, 85:15, 86:10, 87:12, 88:24, 89:4, 90:5, 90:8, 90:11, 92:3, 92:8, 92:12, 92:15, 92:25, 93:4, 93:5, 95:2, 95:4, 99:23, 103:9, 103:10, 106:17, 109:24, 114:3, 114:25, 116:1, 116:2, 116:3, 116:6, 116:19, 116:22, 118:8, 120:8, 121:14

**clarification** [3] - 47:16, 55:21, 55:22

**clarify** [5] - 31:15, 50:20, 62:16, 68:25, 74:8

**clarifying** [2] - 66:14, 114:16

**clear** [29] - 9:24, 10:5, 14:19, 16:6, 16:18, 18:7, 25:16, 26:6, 26:22, 28:3, 30:24, 31:14, 42:3, 42:22, 52:17, 52:18, 55:1, 55:8, 59:24, 60:2, 61:20, 63:24, 64:18, 71:12, 77:5, 77:8, 97:14, 110:5

**clearly** [1] - 87:9

**clerk** [1] - 6:5

**Clerk** [1] - 124:18

**close** [4] - 9:11, 9:12, 10:14, 83:16

**close-up** [1] - 10:14

**closely** [1] - 104:23

**closeness** [1] - 100:6

**closer** [1] - 99:17

**Co** [1] - 3:8

**CO** [2] - 1:7, 124:10

**coal** [150] - 4:3, 10:9, 10:10, 10:12, 10:13, 10:14, 10:16, 10:17, 10:18, 10:20, 11:1, 12:7, 12:21, 12:23, 13:4, 17:10, 17:11, 17:14, 19:15, 19:16, 20:11, 20:25, 22:8, 23:3, 23:7, 23:8, 24:7, 25:2, 25:23, 26:12, 27:16, 32:12, 33:25, 34:13, 34:20, 35:6, 35:10, 35:19, 36:2, 36:3, 36:5, 36:11, 36:15, 36:19, 36:21, 36:24, 37:8, 37:9, 37:15, 38:10,

39:21, 42:6, 42:13, 42:19, 49:2, 49:9, 49:10, 49:19, 49:20, 52:8, 52:15, 52:17, 52:20, 53:1, 53:13, 53:15, 53:16, 53:23, 54:16, 55:12, 55:14, 55:15, 57:6, 57:7, 63:14, 64:11, 64:12, 67:18, 67:25, 68:8, 68:16, 68:19, 69:3, 69:9, 71:14, 71:19, 72:1, 72:2, 76:16, 77:16, 77:23, 77:25, 78:7, 78:8, 78:9, 78:21, 79:13, 79:17, 79:18, 80:2, 80:5, 80:8, 80:10, 80:22, 80:25, 82:16, 82:21, 86:13, 86:16, 86:22, 87:25, 88:6, 88:13, 89:2, 89:11, 90:5, 90:19, 97:8, 97:19, 97:20, 98:1, 98:8, 98:21, 98:22, 98:24, 99:2, 99:25, 100:16, 100:24, 101:2, 101:25, 106:25, 109:21, 115:18, 118:16, 118:18, 119:5, 119:7, 119:14, 119:17, 119:20, 120:4, 120:11

**Coal** [2] - 2:4, 4:8

**coal-fired** [1] - 10:9

**coal-like** [1] - 24:7

**coated** [1] - 57:7

**cold** [1] - 53:1

**colleague** [2] - 45:13, 70:3

**colleagues** [1] - 5:3

**collected** [1] - 13:12

**colors** [1] - 95:10

**combination** [3] - 76:17, 86:13, 91:19

**combine** [4] - 11:25, 12:14, 15:14, 73:6

**combined** [3] - 24:7, 99:20, 121:7

**combining** [1] - 14:10

**combust** [5] - 54:17, 65:9, 65:10, 98:8, 102:13

**combusted** [66] - 19:17, 20:12, 25:3, 32:14, 34:14, 34:20, 35:6, 36:16, 37:11, 38:5, 42:7, 49:4, 53:18, 53:24, 63:14,

65:17, 67:25, 68:8, 78:2, 78:9, 78:12, 79:19, 79:22, 80:4, 80:7, 80:9, 80:25, 81:1, 81:22, 81:24, 82:19, 82:23, 82:25, 86:14, 86:23, 87:22, 87:23, 88:18, 89:1, 89:11, 89:17, 93:14, 95:23, 98:15, 98:22, 98:24, 99:1, 99:4, 99:21, 100:10, 100:12, 100:19, 100:21, 101:1, 101:5, 102:3, 102:10, 102:18, 102:19, 102:21, 105:14, 118:19, 120:6, 120:11, 121:6, 122:2

**combustible** [1] - 65:8

**combusting** [36] - 24:9, 36:12, 52:16, 57:8, 67:17, 76:10, 76:15, 77:22, 77:25, 79:13, 79:24, 81:25, 82:15, 86:10, 86:16, 86:22, 87:25, 88:6, 90:5, 97:18, 97:20, 99:5, 101:7, 101:10, 101:25, 106:25, 109:21, 116:13, 116:14, 118:16, 119:14, 119:20, 120:9, 121:4, 121:21, 121:24

**combustion** [112] - 10:24, 11:9, 11:12, 12:8, 17:15, 18:13, 18:22, 18:23, 19:1, 19:2, 19:17, 19:25, 21:1, 21:19, 21:22, 21:24, 22:4, 22:13, 23:2, 23:5, 23:8, 23:11, 23:15, 23:16, 24:9, 25:3, 27:17, 32:13, 32:19, 35:16, 35:17, 36:9, 37:1, 37:11, 37:13, 37:17, 38:8, 42:7, 42:8, 47:2, 49:8, 49:18, 53:17, 53:18, 53:24, 55:17, 55:18, 57:7, 57:15, 57:17, 62:8, 62:9, 62:23, 63:6, 63:9, 63:12, 63:13, 63:19, 64:5, 64:6, 64:9, 65:10, 65:13, 65:16, 66:2, 68:7, 68:19, 69:3, 77:15, 78:1, 78:7, 78:8,

78:18, 78:20, 79:8, 80:9, 81:17, 81:18, 82:6, 82:21, 84:2, 84:3, 84:6, 84:14, 86:13, 88:7, 88:13, 88:23, 91:4, 91:6, 91:7, 94:10, 95:25, 97:2, 98:1, 98:20, 99:8, 99:11, 100:13, 102:15, 105:23, 105:24, 105:25, 115:18, 119:9, 119:10, 119:17, 120:25, 121:3, 121:6

**combustor** [45] - 11:10, 77:12, 78:6, 83:19, 90:3, 90:6, 90:12, 90:13, 90:17, 90:18, 90:21, 90:22, 90:23, 90:24, 91:1, 91:3, 91:8, 91:9, 91:13, 91:16, 91:17, 91:18, 91:20, 92:7, 92:20, 92:23, 92:25, 93:8, 93:9, 93:13, 106:8, 106:22, 106:23, 107:2, 107:9, 107:11, 107:18, 107:20, 107:23, 108:9, 120:21, 120:24, 121:6

**combusts** [7] - 10:10, 11:2, 22:13, 35:19, 72:3, 107:23, 120:12

**coming** [6] - 10:15, 10:16, 19:23, 30:15, 31:18, 104:3

**comment** [1] - 87:16

**commenting** [1] - 33:17

**comments** [2] - 6:21, 81:15

**compared** [1] - 14:4

**competing** [1] - 39:15

**completely** [2] - 30:2, 101:12

**component** [1] - 87:22

**components** [3] - 12:15, 99:11, 100:7

**composed** [1] - 39:15

**composition** [1] - 99:17

**compound** [13] - 48:9, 48:14, 48:20, 55:12, 55:19, 76:17, 77:24, 78:1, 98:21, 98:23, 98:24, 100:16, 110:1

**compounds** [2] - 52:16, 52:17

**comprise** [1] - 48:12

**comprises** [2] - 52:15, 83:15

**comprising** [14] - 52:17, 76:15, 76:16, 82:16, 82:17, 82:18, 86:11, 95:15, 97:8, 97:18, 101:24, 109:21, 114:5, 116:13

**concept** [1] - 40:12

**concerns** [2] - 56:8

**confer** [2] - 5:18, 122:16

**conflated** [1] - 103:13

**confused** [2] - 39:1, 55:20

**confusing** [1] - 41:22

**confusion** [5] - 39:17, 39:19, 46:13, 50:12, 111:23

**connected** [2] - 15:24, 42:13

**consider** [5] - 45:5, 47:14, 51:20, 53:22, 114:22

**considered** [3] - 69:16, 85:14, 96:9

**consisting** [1] - 124:14

**constant** [1] - 71:17

**constitutes** [1] - 83:13

**construction** [56] - 5:16, 6:22, 8:2, 9:3, 9:16, 16:2, 18:3, 20:21, 20:23, 24:18, 26:8, 26:22, 26:24, 27:3, 27:8, 27:24, 28:3, 28:6, 28:7, 28:24, 31:22, 33:7, 33:14, 34:6, 34:25, 39:7, 39:12, 50:16, 50:17, 55:1, 55:2, 55:3, 56:22, 66:13, 67:14, 68:3, 76:20, 85:10, 85:19, 90:1, 92:13, 94:22, 104:14, 104:19, 104:23, 105:3, 108:13, 108:14, 108:17, 111:7, 115:22, 115:25, 117:1, 117:2, 122:17, 122:25

**constructions** [4] - 25:12, 27:10, 39:15, 77:9

**construe** [8] - 24:14, 24:15, 24:23, 28:13, 53:9, 97:7

**construed** [1] - 27:25

**contact** [5] - 73:2, 73:3, 75:14, 83:8, 83:11

**containing** [15] - 7:25, 15:4, 17:9, 17:16, 26:10, 30:23, 48:16, 48:20, 52:11, 56:10, 56:14, 56:23, 57:22, 62:1, 109:23

**contemplated** [1] - 87:9

**contentions** [5] - 26:10, 55:6, 67:5, 96:22, 97:13

**context** [17] - 49:15, 49:16, 50:22, 51:18, 56:6, 58:1, 58:2, 61:8, 74:18, 75:1, 75:2, 94:22, 95:8, 96:3, 101:17, 102:6

**continue** [9] - 13:7, 23:8, 51:1, 73:16, 84:19, 85:22, 86:2, 89:22, 115:19

**continues** [1] - 13:8

**continuing** [1] - 92:3

**continuously** [1] - 29:23

**contrasting** [1] - 120:7

**control** [1] - 11:5

**conveyor** [1] - 12:22

**copies** [2] - 6:4, 6:25

**copy** [1] - 124:15

**corner** [1] - 61:21

**CORP** [2] - 1:3, 124:10

**Corp** [1] - 3:7

**correct** [9] - 40:15, 40:16, 44:21, 48:4, 65:19, 71:5, 101:18, 104:2, 105:8

**correlates** [1] - 86:9

**counsel** [25] - 1:22, 3:12, 3:14, 3:16, 4:3, 4:5, 4:9, 4:22, 4:24, 5:9, 6:18, 7:2, 50:18, 52:7, 54:9, 58:20, 65:24, 75:24, 76:11, 93:22, 94:17, 95:22, 109:13, 113:10, 122:14

**Counsel** [2] - 2:4, 2:8

**counsel's** [1] - 74:15

**counsels** [1] - 50:14

**count** [10] - 25:3, 27:18, 32:14, 54:12, 54:16, 80:1, 80:2, 80:13, 100:22, 118:15

**counts** [9] - 17:15, 33:6, 33:23, 79:24, 80:12, 84:4, 101:6, 118:19

**COUNTY** [1] - 124:3

**County** [1] - 124:19

**couple** [3] - 40:1, 42:2, 42:25

**Court** [11] - 4:14, 5:6, 18:3, 18:5, 27:5, 39:13, 45:17, 51:20, 105:15, 114:22, 124:18

**court** [2] - 3:2, 3:10

**COURT** [146] - 1:1, 3:1, 3:25, 4:15, 4:20, 5:9, 7:1, 7:10, 11:7, 11:14, 11:18, 14:12, 15:20, 16:22, 18:9, 18:12, 19:10, 20:2, 21:5, 22:2, 22:12, 22:17, 23:9, 23:20, 25:8, 26:4, 27:6, 28:5, 29:7, 30:12, 31:18, 33:3, 34:4, 35:21, 37:5, 38:4, 38:14, 39:3, 40:1, 41:15, 42:2, 42:25, 44:9, 44:20, 45:8, 45:12, 45:15, 45:25, 47:19, 48:5, 49:25, 51:1, 53:4, 56:20, 58:7, 59:18, 60:1, 61:13, 62:2, 62:21, 63:8, 64:10, 64:21, 65:14, 65:20, 66:16, 67:15, 69:5, 69:13, 69:23, 70:2, 71:2, 71:9, 72:8, 73:1, 73:6, 73:16, 74:4, 75:3, 75:13, 75:18, 75:22, 76:7, 77:18, 78:14, 79:5, 79:11, 81:10, 82:24, 83:5, 83:21, 84:10, 84:12, 84:19, 85:11, 85:22, 87:1, 87:10, 88:3, 88:9, 88:12, 88:21, 89:14, 89:22, 90:9, 91:5, 91:15, 91:25, 92:14, 93:17, 93:21, 95:1, 96:14, 98:18, 99:12, 100:11, 101:15, 102:11, 103:7, 103:25, 104:12, 105:5, 105:18, 106:15, 107:6, 108:5, 108:18, 109:1, 111:12, 112:9,

113:2, 113:15,
114:17, 115:3,
115:19, 117:3,
118:11, 119:12,
119:25, 120:13,
121:5, 121:22,
122:10, 122:13,
123:11, 123:13
**Courtroom** [1] - 1:13
**cover** [2] - 18:21
**covered** [5] - 17:8,
17:13, 21:7, 108:11,
108:17
**covers** [4] - 14:22,
52:19, 108:14,
108:19
**COVID-19** [1] - 5:11
**coy** [1] - 16:25
**create** [11] - 15:15,
36:13, 59:6, 59:7,
67:18, 68:16, 72:5,
81:23, 98:25, 100:9,
101:1
**created** [33] - 49:18,
51:13, 77:15, 78:9,
78:10, 78:22, 79:8,
80:4, 80:8, 81:1,
82:20, 82:22, 84:15,
86:23, 88:19, 88:23,
89:12, 92:23, 93:13,
97:25, 102:1,
102:10, 102:20,
105:24, 108:9,
115:17, 116:4,
119:3, 119:4, 119:7,
119:16, 120:5
**creates** [6] - 22:14,
37:12, 38:5, 42:8,
42:9, 79:20
**creating** [5] - 53:24,
68:18, 69:19,
121:10, 121:19
**creation** [2] - 58:25,
69:20
**criticism** [1] - 103:20
**CRUTCHER** [1] - 2:1
**CSR** [1] - 124:22
**Curry** [1] - 3:21
**CURRY** [1] - 1:19

**D**

**David** [2] - 4:9, 45:18
**DAVID** [1] - 2:1
**days** [1] - 123:2
**deal** [2] - 17:25, 82:4
**dealing** [1] - 115:11
**Deanna** [2] - 124:4,
124:22

**debate** [1] - 55:3
**decision** [2] - 25:6,
123:1
**decks** [1] - 6:5
**default** [1] - 123:2
**defeat** [1] - 34:1
**Defendants** [2] - 1:8,
2:4
**defendants** [43] - 4:2,
4:4, 4:8, 4:23, 5:2,
5:5, 5:7, 8:3, 8:5,
8:9, 8:11, 8:18, 8:23,
9:1, 9:19, 15:22,
15:25, 17:2, 21:15,
27:21, 32:9, 32:16,
33:13, 35:23, 39:19,
45:19, 50:15, 54:1,
66:18, 70:13, 74:6,
76:24, 77:4, 77:7,
77:9, 80:13, 81:3,
84:24, 86:21, 93:5,
106:1, 113:9, 116:5
**Defendants'** [1] -
28:23
**defendants'** [12] - 4:2,
14:24, 25:13, 37:7,
53:7, 76:19, 90:1,
90:10, 93:22,
115:21, 115:25,
123:11
**defense** [1] - 16:5
**define** [2] - 68:9,
120:15
**defined** [1] - 110:1
**defining** [1] - 67:22
**definite** [1] - 83:17
**definitely** [1] - 83:18
**definiteness** [2] -
104:18, 104:21
**definition** [10] - 9:7,
9:10, 9:17, 43:13,
83:13, 99:15, 99:23,
120:16, 120:19,
120:21
**definitions** [1] - 9:14
**Delaware** [4] - 3:16,
4:4, 4:24, 124:19
**DELAWARE** [2] - 1:2,
124:2
**Dellinger** [6] - 3:23,
76:13, 92:1, 92:14,
93:17, 113:3
**DELLINGER** [34] -
1:21, 76:12, 78:4,
78:24, 79:10, 80:17,
82:14, 83:2, 83:10,
84:8, 84:11, 84:18,
84:20, 85:17, 86:3,
87:6, 87:18, 88:8,
88:11, 88:15, 89:7,

89:19, 89:23, 90:25,
91:11, 91:23, 92:2,
93:16, 93:20, 113:4,
113:22, 114:24,
115:14, 115:20
**DEMERS** [1] - 2:6
**Demers** [1] - 5:3
**demonstrates** [1] -
40:11
**deny** [1] - 65:8
**dependent** [4] - 79:2,
92:8, 116:6, 121:14
**described** [1] - 101:20
**describing** [2] - 31:1,
104:4
**description** [19] -
50:7, 89:9, 94:19,
103:17, 109:9,
109:10, 111:21,
111:25, 112:10,
112:18, 112:20,
112:24, 113:8,
114:12, 114:15,
117:6, 117:25,
118:4, 118:6
**descriptions** [1] -
91:24
**deserve** [1] - 56:18
**desired** [2] - 41:11,
62:11
**determination** [3] -
104:18, 104:22,
112:1
**determine** [6] - 52:2,
81:4, 81:9, 104:8,
104:22, 105:15
**determined** [1] - 5:19
**device** [1] - 33:21
**DEVLIN** [1] - 1:17
**Devlin** [1] - 3:20
**diagram** [2] - 12:15,
80:20
**dictionary** [1] - 9:6
**difference** [7] - 8:12,
8:15, 18:4, 98:2,
107:7, 110:2, 122:7
**differences** [1] -
116:22
**different** [31] - 8:7,
17:5, 18:2, 26:20,
29:19, 30:2, 38:3,
39:4, 39:15, 42:20,
46:15, 52:13, 59:2,
59:10, 61:23, 63:22,
66:7, 66:8, 90:15,
91:10, 91:12, 96:8,
103:9, 103:11,
103:14, 110:17,
111:2, 119:2, 121:2,
121:14

**differentiation** [5] -
76:23, 89:25, 92:17,
105:20, 108:25
**differs** [1] - 94:5
**difficult** [4] - 26:18,
44:14, 81:4, 94:24
**difficulty** [5] - 27:24,
33:12, 33:17, 50:12,
104:4
**dig** [2] - 68:14, 97:12
**directed** [2] - 26:21,
67:2
**direction** [3] - 52:18,
105:11, 121:9
**directly** [8] - 7:5,
60:21, 64:14, 91:13,
91:16, 91:21, 93:2,
107:9
**disagree** [3] - 50:3,
50:17, 66:19
**disappears** [1] - 102:5
**disavowal** [4] - 9:20,
15:19, 15:20, 77:6
**disc** [1] - 30:21
**discern** [1] - 33:8
**disclaimer** [4] - 9:20,
15:19, 15:21, 77:6
**disclose** [1] - 121:15
**disclosed** [2] - 20:21,
29:20
**disclosure** [1] - 20:18
**disconnected** [1] -
16:9
**discovery** [1] - 39:9
**discussed** [9] - 4:17,
25:21, 51:9, 58:3,
58:23, 64:2, 74:20,
85:16, 109:19
**discusses** [1] - 70:23
**discussing** [6] -
95:21, 109:20,
109:25, 110:10,
111:22, 117:19
**discussion** [21] - 49:5,
49:6, 49:11, 49:19,
49:23, 51:12, 52:22,
95:25, 96:21, 96:23,
96:25, 101:16,
109:4, 113:7,
117:17, 117:18,
117:20, 117:23,
118:1, 118:3, 118:5
**dish** [1] - 30:8
**dispute** [78] - 5:19,
5:22, 7:13, 7:15,
7:21, 8:22, 9:3,
11:17, 13:18, 16:23,
17:1, 17:21, 20:7,
20:14, 20:17, 20:23,
24:2, 25:1, 26:7,

26:13, 26:14, 26:22,
27:8, 28:1, 28:9,
28:12, 28:14, 29:3,
32:11, 32:22, 32:24,
33:2, 33:5, 33:6,
33:7, 34:6, 35:25,
38:23, 38:25, 39:13,
39:22, 39:23, 46:9,
47:20, 53:12, 53:19,
54:5, 54:11, 54:19,
54:25, 56:22, 57:2,
57:4, 58:10, 65:21,
66:12, 67:21, 68:1,
70:13, 70:14, 73:22,
73:23, 76:9, 77:19,
77:21, 78:3, 78:5,
78:11, 78:15, 81:12,
82:5, 83:22, 92:21,
98:9, 98:10, 100:2,
113:18, 115:23
**disputed** [6] - 13:15,
20:5, 45:20, 83:14,
117:11, 122:22
**disputes** [4] - 9:3,
45:23, 46:3, 122:18
**disregard** [1] - 44:6
**distinguished** [1] -
90:23
**distinguishing** [3] -
51:23, 107:14,
107:16
**District** [1] - 124:18
**DISTRICT** [2] - 1:1, 1:2
**divorced** [1] - 101:13
**doctrine** [2] - 76:23,
89:24
**done** [6] - 27:23, 49:9,
75:17, 98:16,
106:19, 106:20
**Douglas** [1] - 5:3
**DOUGLAS** [1] - 2:7
**down** [10] - 6:8, 12:24,
22:25, 53:21, 61:21,
71:18, 74:11, 74:12,
94:20, 105:6
**downstream** [20] -
16:16, 29:2, 30:10,
31:6, 31:12, 31:17,
41:8, 47:22, 47:25,
50:24, 58:9, 59:22,
59:25, 60:4, 61:11,
61:17, 64:8, 64:17,
70:17, 74:21
**drawing** [1] - 74:9
**drip** [1] - 52:25
**dripped** [1] - 53:15
**dripping** [5] - 52:25,
54:16, 55:12, 57:6,
64:11
**drips** [1] - 53:15

driven [1] - 26:2
dropping [1] - 12:6
drops [1] - 12:24
drum [1] - 12:11
duct [1] - 72:22
DUNN [1] - 2:1
Dunn [2] - 4:10, 4:12
during [6] - 49:18, 76:22, 78:1, 89:10, 102:2, 113:25
dust [5] - 10:18, 10:25, 33:25, 72:1, 72:2

## E

early [1] - 12:5
easily [1] - 19:24
effect [1] - 62:11
effectiveness [1] - 30:19
efficiency [1] - 64:15
efficient [1] - 33:2
efforts [2] - 122:15, 122:23
EGAN [3] - 1:24, 4:6, 4:16
Egan [1] - 4:7
either [8] - 29:2, 62:8, 63:18, 92:6, 93:7, 94:2, 107:12, 107:16
element [1] - 91:19
elemental [1] - 14:1
elements [7] - 95:18, 120:18, 120:20, 120:24, 121:23, 122:1, 122:2
ELMO [2] - 7:9, 106:16
embodiment [3] - 85:9, 86:21, 114:8
embodiments [4] - 9:23, 58:18, 58:23, 108:15
eminent [1] - 102:23
emission [1] - 62:13
emissions [1] - 102:24
EMISSIONS [2] - 1:3, 124:9
emitted [1] - 21:23, 101:5
enablement [1] - 50:8
enclosed [2] - 121:24, 122:1
encompassed [1] - 87:20
end [6] - 18:4, 25:20, 49:16, 68:11, 85:8, 99:3

ended [2] - 58:22, 113:7
ends [3] - 34:12, 62:11, 67:10
ENERGY [2] - 1:3, 124:9
engineering [1] - 71:24
English [6] - 16:14, 16:17, 16:19, 29:21, 30:4, 31:15
enhance [1] - 51:8
enter [1] - 75:16
entered [2] - 5:21, 107:10
entering [2] - 10:22, 38:7
Enterprises [1] - 124:23
enters [6] - 11:1, 35:16, 49:10, 71:19, 71:21, 72:2
entire [4] - 12:18, 13:8, 61:9, 83:21
entirely [1] - 112:6
entirety [1] - 110:10
entrance [2] - 62:9, 100:14
entrances [1] - 80:20
entry [1] - 63:20
envisioning [1] - 42:19
equipment [3] - 10:11, 11:6, 11:21
ergo [1] - 50:6
ESQ [12] - 1:17, 1:20, 1:20, 1:21, 1:24, 2:1, 2:2, 2:2, 2:3, 2:6, 2:6, 2:7
essence [2] - 113:16, 118:15
essential [2] - 43:6, 43:13
essentially [4] - 8:3, 10:8, 16:12, 21:1
et [7] - 1:4, 1:7, 3:7, 3:8, 62:15, 124:10
EVALL [1] - 2:2
Evall [1] - 4:10
eventually [2] - 85:7, 117:13
evidence [20] - 10:4, 13:22, 18:8, 26:3, 33:1, 33:18, 40:11, 43:12, 43:25, 45:3, 84:22, 85:13, 85:19, 87:8, 87:10, 87:12, 109:3, 115:2, 116:21
exact [3] - 48:20, 86:21, 117:10

exacting [1] - 9:20
exactly [3] - 16:25, 91:1, 95:6
examiner [14] - 85:8, 86:7, 86:19, 87:15, 109:8, 112:10, 113:25, 114:7, 118:2, 118:5, 119:24, 119:25, 120:1
examiners [1] - 44:4
example [28] - 19:18, 23:13, 23:23, 29:22, 29:24, 30:5, 30:8, 30:13, 30:17, 31:3, 31:4, 33:19, 40:13, 41:6, 41:7, 44:4, 51:11, 53:25, 54:14, 58:8, 74:15, 78:20, 90:12, 90:19, 96:4, 96:12, 110:13
examples [7] - 29:18, 40:14, 40:23, 40:25, 58:20, 59:3, 110:22
except [2] - 35:12, 73:13
exchange [1] - 114:7
exclude [5] - 39:20, 73:19, 85:10, 86:22, 88:10
exhaust [2] - 10:19, 61:22
exist [1] - 101:3
existing [1] - 71:20
exists [1] - 105:16
exit [36] - 8:25, 13:17, 17:22, 18:10, 18:14, 23:25, 27:13, 29:1, 29:3, 31:7, 31:24, 32:18, 35:20, 37:20, 40:8, 40:15, 40:20, 46:5, 46:7, 47:22, 48:1, 48:3, 50:5, 54:15, 57:13, 57:24, 58:6, 58:15, 59:22, 60:5, 61:12, 61:17, 70:18, 70:21, 71:4, 74:1
exotic [1] - 97:16
expect [2] - 122:25, 123:3
experimental [3] - 30:7, 30:25, 41:1
expert [4] - 32:25, 65:1, 105:4, 105:17
experts [1] - 104:20
explain [2] - 34:5, 44:5
explaining [1] - 7:14
explains [1] - 43:23
explicitly [1] - 76:21

extent [9] - 6:1, 25:15, 26:21, 27:21, 43:23, 66:16, 105:12, 112:3, 112:4
exterior [1] - 75:10
extrinsic [1] - 45:3

## F

F4G [1] - 13:9
face [1] - 44:18
fact [9] - 20:20, 37:9, 37:10, 37:14, 41:21, 58:14, 66:23, 102:1, 116:22
factual [5] - 19:5, 20:24, 21:4, 26:2, 81:2
factually [4] - 80:19, 81:4, 81:9, 114:2
fair [4] - 20:15, 103:19, 113:21, 113:22
fairest [1] - 41:2
fairly [5] - 6:11, 14:4, 30:17, 56:24, 85:24
faith [1] - 122:15
fall [1] - 73:21
falls [1] - 88:2
familiar [2] - 46:16, 94:3
fan [2] - 12:25, 13:6
far [3] - 83:15, 111:3, 117:16
fast [1] - 82:3
favor [1] - 32:2
feature [3] - 109:19, 109:20, 110:3
fed [1] - 53:1
Federal [1] - 44:16
feeder [1] - 12:3
feet [1] - 74:13
fellow [1] - 74:11
few [7] - 3:4, 29:11, 40:23, 60:8, 74:8, 113:5, 114:16
fight [6] - 9:13, 17:6, 18:8, 79:6, 103:8, 105:21
fighting [2] - 17:25, 18:2
figure [12] - 10:7, 12:3, 43:1, 43:3, 44:3, 44:6, 58:8, 61:2, 61:4, 61:9, 61:20, 82:4
figures [1] - 12:1
figuring [1] - 62:22
file [2] - 51:10

FILED [1] - 124:17
filter [1] - 30:21
final [3] - 5:20, 40:1, 73:17
finally [4] - 12:14, 30:11, 31:3, 56:1
fine [3] - 24:1, 33:8, 72:1
fire [3] - 72:5, 72:6, 80:22
fired [1] - 10:9
firm [1] - 81:5
FIRM [1] - 1:17
Firm [1] - 3:20
first [21] - 3:5, 3:14, 3:22, 4:2, 5:17, 5:25, 6:4, 6:19, 7:12, 8:7, 10:12, 12:4, 46:1, 51:6, 77:14, 87:4, 88:23, 102:23, 108:13, 111:1, 113:6
fist [1] - 36:20
fist-sized [1] - 36:20
fit [1] - 91:24
fitted [1] - 30:20
five [1] - 110:14
flight [11] - 15:10, 15:15, 59:14, 59:17, 59:21, 59:25, 60:3, 60:16, 61:3, 61:10, 66:25
FLOM [1] - 2:5
flow [6] - 11:3, 22:23, 22:24, 23:4, 66:3, 71:17
flowing [6] - 63:10, 71:15, 72:4, 72:6, 72:7
flows [4] - 61:21, 63:12, 63:13, 75:18
flue [11] - 11:4, 14:8, 15:13, 18:7, 18:9, 31:9, 31:12, 31:17, 49:17, 61:22, 74:12
fluidized [1] - 59:8
focus [5] - 8:4, 37:25, 46:18, 49:8
focused [4] - 39:14, 46:8, 70:11, 103:21
focuses [1] - 115:23
focusing [2] - 24:15, 62:6
follow [2] - 7:6, 7:10
FOR [1] - 1:2
force [1] - 75:11
foregoing [2] - 124:8, 124:14
form [12] - 22:16, 22:19, 33:20, 35:11, 64:7, 64:16, 83:11,

88:17, 109:15, 109:22, 115:16, 117:12

**forth** [4] - 46:15, 53:4, 55:24, 67:3

**four** [6] - 5:15, 50:23, 52:9, 52:13, 52:14, 110:14

**frame** [1] - 17:2

**Frankenstein** [2] - 110:16, 111:6

**frankly** [4] - 52:25, 56:17, 101:16, 106:24

**free** [3] - 6:4, 6:20, 6:22

**frit** [1] - 30:21

**frustrated** [1] - 55:5

**full** [1] - 59:4

**fully** [1] - 38:23

**funneling** [1] - 35:18

**furnace** [63] - 8:25, 10:22, 10:23, 11:2, 11:3, 11:8, 11:9, 11:12, 13:17, 14:9, 16:16, 17:10, 17:14, 17:22, 18:10, 19:8, 23:25, 25:14, 27:13, 28:25, 29:2, 31:7, 31:24, 32:6, 32:18, 35:20, 37:20, 37:25, 38:1, 40:8, 40:15, 40:20, 41:2, 41:8, 46:5, 46:7, 47:22, 47:25, 48:3, 50:5, 50:24, 53:21, 54:15, 55:16, 57:13, 57:24, 58:6, 58:15, 59:22, 60:5, 61:11, 61:17, 61:20, 70:18, 70:21, 70:24, 71:4, 72:2, 72:3, 74:1, 74:21, 80:21

### G

**GALLAGHER** [2] - 1:7, 124:10

**Gallagher** [1] - 3:8

**gas** [188] - 8:1, 8:8, 8:10, 10:15, 12:12, 12:20, 13:7, 14:1, 15:5, 15:6, 16:3, 16:4, 16:14, 16:15, 17:17, 17:20, 17:21, 18:14, 18:17, 18:20, 19:7, 19:14, 19:18, 19:20, 19:23, 19:24, 20:7, 20:9, 21:13, 21:22, 21:24, 22:3,

22:10, 22:11, 22:12, 22:18, 22:20, 22:24, 22:25, 23:1, 23:4, 23:6, 23:24, 24:6, 26:1, 26:11, 29:17, 29:20, 29:22, 30:3, 30:6, 30:9, 30:14, 30:22, 30:23, 31:6, 31:8, 31:9, 31:11, 31:12, 31:14, 31:16, 32:6, 32:15, 32:17, 33:22, 33:24, 34:8, 34:11, 34:12, 34:15, 34:17, 34:21, 35:4, 35:6, 35:12, 35:14, 35:15, 35:18, 36:8, 36:13, 36:14, 36:23, 36:24, 36:25, 37:2, 37:12, 37:16, 37:19, 37:24, 38:1, 38:5, 38:6, 38:7, 40:7, 40:20, 41:16, 41:19, 41:24, 42:1, 42:8, 42:9, 42:15, 42:24, 46:4, 47:21, 47:25, 48:3, 52:12, 53:19, 53:20, 53:24, 54:1, 54:4, 55:10, 55:19, 56:13, 56:16, 57:8, 57:23, 58:5, 59:5, 60:11, 60:13, 60:15, 60:18, 60:19, 60:21, 60:24, 61:18, 61:21, 62:1, 62:7, 62:25, 63:5, 63:10, 63:11, 63:19, 65:5, 66:6, 66:7, 66:23, 66:24, 67:2, 67:6, 67:11, 68:10, 69:7, 69:13, 69:16, 69:18, 69:19, 69:20, 70:10, 71:13, 71:15, 71:17, 71:20, 72:7, 72:11, 72:14, 72:18, 72:21, 72:23, 73:2, 73:13, 73:19, 74:19, 74:21, 75:5, 75:8, 75:10, 75:12, 75:14, 75:16, 76:1, 76:3, 80:21, 101:5, 102:7, 109:23

**gaseous** [12] - 21:16, 22:16, 22:19, 23:10, 23:14, 33:20, 34:18, 54:15, 57:12, 67:18, 72:15, 83:11

**gases** [4] - 49:17, 50:25, 51:17

**general** [2] - 13:20, 41:9

**generalize** [1] - 53:11

**generally** [1] - 33:23

**generated** [2] - 78:19

**get-go** [1] - 26:17

**GIBSON** [1] - 2:1

**Gibson** [2] - 4:10, 4:11

**given** [4] - 10:1, 29:5, 29:13, 51:20

**Glandole** [8] - 4:9, 4:13, 5:4, 45:18, 45:25, 69:23, 93:23, 122:11

**GLANDOLE** [60] - 2:1, 45:14, 45:16, 46:11, 48:4, 48:7, 50:11, 51:2, 54:23, 57:25, 58:17, 59:23, 60:7, 61:18, 62:16, 63:6, 63:21, 64:13, 64:23, 65:18, 65:25, 66:22, 68:2, 69:12, 69:18, 69:25, 74:7, 75:9, 75:15, 75:20, 75:23, 93:24, 95:6, 96:18, 99:6, 100:4, 101:11, 101:18, 103:4, 103:23, 104:2, 104:25, 105:8, 106:12, 106:17, 107:12, 108:12, 108:20, 109:2, 111:18, 112:14, 117:5, 118:22, 119:23, 120:11, 120:23, 121:8, 122:4, 122:12, 123:12

**Glandole's** [1] - 70:7

**glass** [3] - 30:8, 30:20, 30:21

**gloss** [1] - 16:2

**goal** [3] - 33:13, 33:19, 39:10

**grant** [2] - 4:15, 33:15

**great** [1] - 87:16

**green** [2] - 71:16, 95:14

**grouped** [1] - 8:6

**guess** [10] - 24:11, 24:21, 29:15, 57:18, 58:18, 62:2, 64:2, 73:17, 102:25, 104:15

**guidance** [4] - 24:18, 32:8, 49:21, 108:3

### H

**hac** [1] - 4:12

**halide** [2] - 86:14,

120:8

**hand** [1] - 24:16

**handed** [1] - 7:22

**handful** [1] - 96:2

**handle** [2] - 54:24, 58:13

**handling** [1] - 5:4, 5:8

**hanging** [1] - 80:5

**happy** [1] - 85:20

**hard** [4] - 10:17, 33:8, 36:7, 82:3

**HBr** [2] - 76:17, 82:17, 86:11

**head** [1] - 62:22

**hear** [4] - 6:8, 45:12, 93:19, 93:21

**heard** [7] - 67:3, 87:17, 94:17, 109:15, 112:11, 113:6, 124:11

**hearing** [7] - 3:11, 4:17, 14:13, 54:22, 87:4, 122:16, 122:17

**HEARING** [3] - 1:10, 1:12, 124:16

**heat** [1] - 11:2

**help** [6] - 43:8, 44:4, 51:17, 55:25, 68:24, 68:25

**helpful** [8] - 24:19, 43:11, 45:5, 55:25, 114:21, 115:1, 115:3, 115:4

**helps** [1] - 43:12

**hereby** [1] - 124:5

**hesitant** [1] - 88:16

**hiding** [1] - 69:1

**highlighted** [1] - 61:4

**hijack** [1] - 29:8

**history** [12] - 15:18, 44:11, 51:10, 84:23, 84:24, 85:2, 85:6, 87:14, 88:4, 97:1, 112:11

**hold** [1] - 30:22

**hole** [1] - 100:14

**honestly** [1] - 96:19

**Honor** [49] - 3:19, 4:7, 4:16, 5:1, 6:25, 13:19, 19:3, 19:21, 20:23, 25:19, 45:11, 45:17, 46:12, 46:16, 48:8, 48:18, 52:6, 54:24, 55:24, 61:19, 74:2, 74:8, 76:13, 76:19, 78:4, 78:25, 79:10, 82:15, 84:9, 84:18, 84:21, 86:4, 88:8, 88:11, 89:23, 92:10, 93:16, 93:24,

96:20, 104:25, 106:13, 113:4, 116:10, 116:17, 116:25, 122:12, 123:10, 123:12

**Honor's** [1] - 5:7

**Honorable** [1] - 1:12

**hook** [1] - 8:19

**hope** [1] - 76:24

**hoped** [1] - 55:21

**hoping** [1] - 56:17

**hot** [3] - 10:15, 10:19, 19:22

**hours** [1] - 6:7

**human** [1] - 84:4

**hypothetical** [1] - 40:6

### I

**i.e** [4] - 63:18, 67:24, 91:20, 115:9

**idea** [9] - 14:10, 15:21, 74:10, 98:7, 98:15, 101:23, 104:6, 106:24, 110:5

**identification** [1] - 48:17

**identified** [1] - 56:12

**identify** [2] - 3:13, 51:7

**identifying** [2] - 56:9, 106:19

**illustrated** [1] - 58:11

**immediately** [1] - 72:3

**imply** [1] - 121:17

**import** [2] - 116:6, 116:8

**important** [3] - 48:18, 53:8, 114:10

**imported** [1] - 92:11

**importing** [1] - 77:1

**improper** [4] - 77:2, 98:3, 116:9, 116:18

**improvement** [1] - 11:21

**IN** [2] - 1:1, 1:2

**in-flight** [9] - 15:10, 59:14, 59:17, 59:21, 59:25, 60:16, 61:3, 61:10, 66:25

**inappropriate** [1] - 44:5

**include** [5] - 26:12, 41:23, 47:12, 79:1, 92:18

**included** [2] - 44:13, 114:8

**includes** [5] - 78:10, 81:20, 89:13, 94:6,

94:7
**including** [1] - 114:4
**inclusion** [1] - 10:11
**incorporated** [2] -
43:22, 44:22
**incorrect** [3] - 40:18,
114:2, 117:15
**indefinite** [2] - 81:7,
104:15
**indefiniteness** [3] -
50:7, 105:1, 105:9
**indicate** [1] - 31:10
**individual** [1] - 87:22
**inform** [2] - 66:3,
113:20
**information** [2] -
113:20, 115:6
**informed** [1] - 98:6
**informs** [1] - 67:1
**infringement** [27] -
19:6, 21:10, 24:2,
24:11, 24:13, 24:16,
24:20, 25:20, 26:9,
27:2, 28:2, 33:5,
33:6, 39:23, 53:12,
55:6, 56:2, 57:4,
67:5, 67:21, 68:1,
71:6, 76:25, 81:8,
82:5, 96:22, 97:13
**infringer** [2] - 100:8,
121:18
**ingredient** [2] - 95:24,
99:10
**inherently** [2] - 16:15,
89:2
**initial** [1] - 46:2
**inject** [10] - 24:5,
34:17, 35:4, 48:2,
54:4, 55:10, 62:7,
63:18, 64:13, 66:1
**injected** [65] - 6:20,
10:22, 12:7, 12:11,
12:12, 13:2, 17:20,
18:16, 18:19, 19:13,
19:19, 20:9, 21:12,
21:13, 21:16, 21:23,
22:2, 22:18, 23:7,
23:14, 23:24, 34:11,
34:15, 34:16, 36:22,
37:1, 37:2, 37:16,
37:24, 38:11, 40:7,
40:19, 41:8, 41:10,
41:21, 41:23, 42:14,
46:4, 46:6, 47:21,
47:24, 53:25, 56:13,
57:12, 57:22, 58:16,
60:10, 60:13, 61:15,
61:17, 62:1, 62:25,
66:4, 66:6, 66:22,
69:15, 70:15, 70:17,

70:18, 70:21, 71:3,
72:10, 72:13, 73:11,
75:5
**injecting** [41] - 7:23,
7:25, 14:25, 15:3,
16:8, 17:16, 20:7,
22:10, 22:20, 25:25,
26:10, 31:4, 31:7,
32:15, 32:17, 33:22,
34:7, 35:15, 36:13,
37:13, 40:12, 41:12,
41:19, 41:25, 42:23,
47:8, 47:9, 47:11,
52:11, 65:4, 65:12,
66:23, 67:6, 68:22,
69:21, 70:10, 70:24,
72:17, 72:20, 73:8
**injection** [42] - 7:24,
8:25, 11:24, 13:10,
13:16, 15:1, 18:6,
18:25, 19:6, 21:3,
21:19, 27:12, 28:25,
33:21, 33:24, 36:23,
37:18, 37:25, 38:1,
39:8, 39:24, 41:4,
41:24, 44:7, 46:25,
55:15, 56:15, 58:5,
61:5, 61:6, 67:8,
68:9, 69:4, 71:21,
71:22, 74:17, 74:19,
74:22, 74:25, 91:12,
91:16, 91:18
**injections** [6] - 15:7,
15:9, 31:23, 32:5,
50:4, 75:25
**injector** [2] - 12:10,
22:10
**injectors** [1] - 71:25
**injects** [1] - 55:19
**inlet** [1] - 30:23
**inlets** [1] - 80:21
**insert** [2] - 9:18, 47:21
**inserted** [4] - 23:11,
32:13, 42:6, 42:18
**inserting** [3] - 8:24,
9:2, 15:22
**inside** [7] - 21:22,
69:7, 83:19, 89:12,
89:15, 91:2
**instance** [1] - 32:4
**instead** [3] - 42:11,
54:13, 57:11
**instructions** [2] -
26:20, 50:13
**insufficient** [1] - 40:23
**insulator** [1] - 102:3
**intended** [1] - 7:6
**intent** [2] - 9:24, 16:18
**interchangeably** [1] -
11:9

**intermediate** [2] -
102:4, 104:9
**internal** [2] - 63:8,
82:11
**interpret** [1] - 71:8
**interpreted** [1] - 86:18
**intrinsic** [19] - 10:3,
13:22, 18:8, 26:3,
33:18, 40:11, 43:25,
44:19, 44:24, 84:22,
85:13, 85:18, 87:8,
87:10, 87:12, 94:1,
98:4, 109:3, 116:21
**introduce** [1] - 59:11,
121:13
**introduced** [4] - 17:9,
51:16, 60:23, 69:15
**introducing** [1] -
65:15
**introduction** [1] - 95:5
**introductory** [1] - 6:21
**invention** [1] - 11:20,
76:6
**inventive** [1] - 41:10
**inventor** [2] - 9:25,
104:6
**inventors** [1] - 11:22,
12:4, 16:18, 30:3,
31:10, 44:2, 90:2
**inventors'** [1] - 44:8
**issue** [33] - 3:22,
13:15, 16:1, 17:24,
20:4, 20:5, 20:14,
24:10, 24:11, 24:13,
25:13, 25:16, 25:18,
25:20, 27:4, 27:16,
28:2, 30:14, 33:14,
36:16, 50:4, 56:24,
67:16, 67:17, 73:25,
80:15, 81:12, 81:17,
89:24, 105:1,
105:23, 118:8,
122:25
**issued** [2] - 86:6, 86:7
**issues** [4] - 21:10,
94:20, 96:24, 122:21
**item** [2] - 43:13, 56:12
**items** [1] - 122:7
**itself** [16] - 8:8, 10:23,
11:20, 19:4, 22:19,
23:6, 35:17, 37:16,
37:18, 42:12, 49:6,
60:25, 63:3, 65:22,
73:10, 78:12

## J

**JAMES** [1] - 1:17
**Jessica** [1] - 5:1

**JESSICA** [1] - 2:6
**Jim** [1] - 3:19
**joining** [1] - 4:9
**joint** [1] - 5:16
**JOSEPH** [1] - 2:2
**Joseph** [1] - 4:10
**Judge** [13] - 17:7,
21:20, 23:23, 27:7,
33:4, 38:15, 40:10,
43:12, 45:6, 50:2,
58:14, 66:17, 67:20
**judge** [2] - 43:15,
97:17
**July** [1] - 86:6
**jury** [2] - 50:12, 50:13
**justify** [2] - 8:21, 9:19
**JUSTIN** [1] - 1:20
**Justin** [1] - 3:22

## K

**keep** [3] - 7:9, 26:4,
28:1
**key** [23] - 15:16, 20:4,
20:14, 20:16, 24:10,
24:12, 25:13, 32:11,
41:16, 43:11, 43:24,
51:22, 51:23, 51:24,
54:5, 54:19, 57:2,
67:17, 84:12, 92:21,
99:13, 100:5
**kind** [15] - 9:19, 16:25,
37:18, 38:6, 50:8,
55:16, 56:1, 59:21,
67:7, 75:11, 99:17,
105:11, 107:8,
111:6, 114:17
**known** [1] - 51:9
**KREMER** [1] - 2:3
**Kremer** [1] - 4:11
**KUNZ** [2] - 2:6, 4:25
**Kunz** [1] - 5:1

## L

**lack** [4] - 27:10, 50:7,
55:2, 105:11
**lances** [1] - 75:17
**lands** [1] - 81:7
**language** [40] - 8:6,
8:18, 8:24, 10:2,
15:24, 16:10, 19:4,
34:24, 45:24, 47:6,
52:10, 52:18, 54:8,
58:1, 59:15, 60:10,
60:24, 67:20, 70:25,
77:10, 82:15, 84:17,
89:21, 95:8, 98:19,
99:7, 100:3, 101:13,

103:15, 103:22,
104:24, 106:18,
106:24, 107:4,
107:19, 109:17,
111:15, 117:10,
117:12, 118:24
**larding** [1] - 101:20
**large** [3] - 74:12,
74:13, 75:17
**largely** [3] - 5:4, 14:16,
46:22
**last** [2] - 66:24, 80:15
**lastly** [2] - 6:6, 89:23
**late** [1] - 51:10
**LAW** [1] - 1:17
**Law** [1] - 3:20
**law** [5] - 13:19, 13:20,
33:5, 33:16, 45:1
**leading** [4] - 50:1,
57:16, 63:4, 63:10
**least** [6] - 20:5, 38:24,
39:16, 41:23, 53:6,
112:19
**leaving** [1] - 10:20
**led** [3] - 10:12, 67:13,
79:14
**left** [7] - 5:15, 5:23,
12:2, 42:12, 48:25,
49:1, 79:21
**legal** [1] - 40:22
**legitimately** [1] -
38:22
**LENNON** [2] - 1:17,
3:18
**Lennon** [2] - 3:17,
3:19
**Leslie** [1] - 5:3
**LESLIE** [1] - 2:6
**less** [1] - 65:22
**letting** [1] - 73:21
**lexicography** [1] -
77:6
**likely** [3] - 7:3, 13:10,
83:12
**limit** [5] - 9:25, 50:19,
92:24, 93:4, 116:1
**limitation** [17] - 9:2,
9:18, 10:2, 15:23,
16:1, 16:21, 42:5,
57:2, 57:5, 63:18,
68:1, 77:24, 81:16,
90:7, 92:5, 115:10,
117:1
**limitations** [14] -
42:10, 54:12, 66:14,
76:20, 76:21, 76:25,
77:1, 77:4, 83:3,
92:7, 92:11, 116:5,
116:8, 116:18
**limited** [5] - 9:22,

40:17, 78:25, 93:6, 108:19
**line** [8] - 12:12, 33:8, 39:7, 39:14, 43:18, 60:22, 94:21, 105:6
**lines** [1] - 61:24
**lingering** [1] - 70:6
**linguistic** [2] - 34:9, 35:2
**linguistically** [2] - 34:14, 54:3
**liquid** [4] - 19:23, 22:11, 33:20, 73:10
**list** [3] - 96:11, 97:5, 110:21
**listed** [1] - 89:3
**lists** [1] - 96:6
**literally** [3] - 21:16, 89:5, 95:1
**literature** [1] - 73:15
**live** [1] - 39:3
**LLC** [4] - 2:4, 4:3, 4:8, 124:23
**LLP** [2] - 1:23, 2:5
**location** [5] - 19:5, 19:7, 25:14, 39:8, 41:4
**look** [23] - 9:6, 13:22, 13:23, 14:22, 21:12, 25:1, 52:5, 52:12, 76:2, 77:8, 85:6, 86:5, 90:5, 97:12, 100:23, 105:21, 106:12, 109:16, 109:24, 110:13, 113:20, 116:10, 116:20
**looked** [1] - 80:19
**looking** [9] - 7:4, 7:5, 38:15, 55:6, 67:4, 81:5, 95:8, 109:19, 116:21
**looks** [1] - 10:14
**loop** [2] - 12:18, 13:7
**lump** [1] - 10:18
**lumps** [2] - 36:20

**M**

**machine** [1] - 84:5
**main** [2] - 62:14, 106:20
**manner** [3] - 51:22, 52:2, 62:10
**Mark** [1] - 4:11
**MARK** [1] - 2:2
**MARKMAN** [3] - 1:10, 1:12, 124:16
**Markman** [4] - 3:10,

24:24, 25:6, 123:9
**material** [17] - 7:24, 14:25, 15:1, 22:22, 34:19, 36:8, 43:14, 43:21, 43:23, 47:1, 72:15, 95:15, 96:16, 112:6, 116:15
**materializing** [1] - 34:12
**materials** [5] - 18:16, 43:6, 43:7, 79:8, 105:24
**matter** [21] - 3:6, 19:6, 19:8, 19:22, 20:24, 27:1, 28:4, 33:15, 34:9, 42:22, 57:19, 62:4, 71:6, 71:25, 80:9, 81:2, 81:6, 81:8, 82:3, 88:22, 122:24
**matters** [3] - 12:19, 20:1, 71:7
**MEAGER** [1] - 2:5
**mean** [19] - 9:4, 16:15, 16:17, 24:13, 25:8, 29:6, 30:9, 31:14, 40:16, 44:7, 62:21, 83:6, 83:23, 90:11, 90:14, 92:16, 98:11, 107:20, 121:25
**meaning** [18] - 16:20, 17:20, 21:15, 24:18, 28:11, 34:7, 44:1, 55:8, 55:9, 60:4, 67:7, 74:23, 74:25, 75:4, 75:13, 97:11, 113:20, 119:19
**meaningless** [1] - 102:6
**means** [21] - 9:8, 16:3, 16:7, 29:17, 34:15, 36:15, 43:24, 54:3, 57:22, 68:22, 82:9, 82:18, 83:6, 83:22, 90:17, 90:22, 91:2, 91:18, 104:5, 113:19, 121:20
**meant** [7] - 31:11, 31:12, 86:15, 114:9, 119:13, 119:19, 119:22
**measure** [1] - 30:19
**measuring** [1] - 105:14
**medium** [1] - 30:21
**meet** [7] - 5:18, 39:21, 42:10, 65:11, 81:16, 122:16, 123:4
**meet-and-confer** [1] - 5:18

**meeting** [1] - 54:12
**meets** [1] - 67:25
**mentally** [1] - 79:19
**mention** [3] - 11:20, 14:7, 31:3
**mentioned** [5] - 48:18, 76:4, 97:17, 110:20, 117:7
**mentioning** [2] - 8:10, 45:22
**mentions** [1] - 8:8
**mercury** [18] - 11:25, 13:11, 14:1, 14:11, 49:17, 51:9, 51:17, 59:12, 60:20, 60:21, 62:1, 62:12, 62:19, 66:9, 96:16, 102:7, 102:24, 109:23
**mercury-containing** [2] - 62:1, 109:23
**met** [5] - 42:5, 57:3, 57:5, 77:24, 104:9
**method** [4] - 102:7, 116:11, 116:16, 121:12
**methods** [1] - 36:10
**middle** [1] - 102:2
**Midwest** [1] - 3:7
**MIDWEST** [2] - 1:3, 124:9
**might** [7] - 37:17, 51:25, 64:6, 79:23, 94:14, 102:1, 105:5
**mind** [2] - 14:21, 79:16
**minimum** [2] - 20:14, 45:2
**minute** [1] - 34:23
**missing** [5] - 36:18, 49:5, 49:13, 49:20, 94:14
**mix** [2] - 82:1, 100:19
**mixed** [10] - 31:5, 38:10, 80:12, 82:8, 82:9, 82:10, 83:8, 83:9, 108:16
**mixes** [1] - 108:10
**mixing** [1] - 108:1
**mixture** [71] - 52:16, 76:10, 76:15, 77:11, 77:23, 77:25, 78:10, 78:12, 78:13, 79:13, 79:24, 80:7, 82:16, 82:18, 82:20, 83:6, 83:13, 83:15, 83:18, 83:22, 83:23, 86:24, 87:21, 87:23, 89:12, 89:14, 89:15, 92:19, 94:10, 95:23, 95:25, 97:7, 97:18, 97:20,

98:14, 99:15, 99:16, 99:19, 99:23, 100:5, 100:9, 101:7, 101:25, 102:13, 106:25, 107:16, 107:17, 107:21, 107:24, 107:25, 109:21, 114:5, 115:24, 116:1, 116:2, 116:4, 116:13, 116:24, 120:15, 120:18, 121:8, 121:10, 121:13, 121:17, 121:19, 121:20, 121:21, 121:22, 121:25
**moment** [1] - 10:25
**moot** [1] - 5:22
**mooted** [1] - 46:17
**morning** [1] - 55:25
**MORRIS** [1] - 1:23
**Morris** [1] - 4:7
**most** [7] - 13:9, 33:1, 60:11, 89:9, 108:2, 108:7, 115:1
**motion** [2] - 4:12, 4:15
**move** [3] - 4:14, 35:11, 55:3
**moved** [1] - 37:3
**movement** [1] - 72:24
**moves** [3] - 35:16, 36:20, 73:12
**moving** [3] - 22:22, 35:13, 55:15
**MR** [110] - 3:18, 4:6, 4:16, 6:24, 7:7, 7:12, 11:11, 11:15, 11:19, 14:18, 16:11, 18:1, 18:11, 19:3, 19:21, 20:16, 22:1, 22:7, 22:15, 22:21, 23:19, 25:7, 25:9, 26:18, 27:20, 28:20, 29:11, 30:16, 32:23, 33:11, 35:9, 36:17, 37:21, 38:12, 39:1, 39:5, 40:21, 41:20, 42:16, 43:20, 44:12, 45:7, 45:11, 45:14, 45:16, 46:11, 48:4, 48:7, 50:11, 51:2, 54:23, 57:25, 58:17, 59:23, 60:7, 61:18, 62:16, 63:6, 63:21, 64:13, 64:23, 65:18, 65:25, 66:22, 68:2, 69:12, 69:18, 69:25, 70:22, 71:5, 71:11, 72:19, 73:5, 73:7, 73:17,

74:7, 75:9, 75:15, 75:20, 75:23, 93:24, 95:6, 96:18, 99:6, 100:4, 101:11, 101:18, 103:4, 103:23, 104:2, 104:25, 105:8, 106:12, 106:17, 107:12, 108:12, 108:20, 109:2, 111:18, 112:14, 117:5, 118:22, 119:23, 120:1, 120:23, 121:8, 122:4, 122:12, 123:10, 123:12
**MS** [34] - 4:25, 76:12, 78:4, 78:24, 79:10, 80:17, 82:14, 83:2, 83:10, 84:8, 84:11, 84:18, 84:20, 85:17, 86:3, 87:6, 87:18, 88:8, 88:11, 88:15, 89:7, 89:19, 89:23, 90:25, 91:11, 91:23, 92:2, 93:16, 93:20, 113:4, 113:22, 114:24, 115:14, 115:20
**multiple** [6] - 29:18, 37:23, 38:3, 55:13, 80:20, 80:21
**must** [27] - 18:16, 31:23, 32:5, 47:1, 47:21, 57:11, 60:4, 70:15, 72:12, 72:13, 72:15, 72:16, 77:4, 78:13, 81:18, 81:19, 82:7, 82:19, 82:22, 84:1, 85:1, 93:11, 99:14, 106:6, 116:24, 121:22, 121:25

**N**

**name** [1] - 45:17
**narrow** [3] - 99:22, 108:24, 120:22
**narrower** [2] - 108:14, 108:22
**naturally** [1] - 117:22
**nature** [2] - 29:13, 105:10
**necessarily** [6] - 32:8, 50:4, 84:5, 114:22, 115:1, 115:17
**necessary** [8] - 8:2, 26:9, 28:7, 29:4, 73:24, 85:20, 92:13,

117:2
**need** [19] - 6:10, 9:19, 12:19, 15:14, 25:4, 27:14, 31:15, 52:2, 83:16, 88:24, 108:15, 120:24, 120:25, 121:3, 121:5, 121:12, 122:6, 122:8, 123:7
**needs** [1] - 56:12
**negotiated** [1] - 47:5
**Nelson** [2] - 51:12, 51:13
**Nemec** [2] - 5:3, 5:8
**NEMEC** [1] - 2:7
**NEMUNAITIS** [49] - 1:20, 6:24, 7:7, 7:12, 11:11, 11:15, 11:19, 14:18, 16:11, 18:1, 18:11, 19:3, 19:21, 20:16, 22:1, 22:7, 22:15, 22:21, 23:19, 25:7, 25:9, 26:18, 27:20, 28:20, 29:11, 30:16, 32:23, 33:11, 35:9, 36:17, 37:21, 38:12, 39:1, 39:5, 40:21, 41:20, 42:16, 43:20, 44:12, 45:7, 45:11, 70:22, 71:5, 71:11, 72:19, 73:5, 73:7, 73:17, 123:10
**Nemunaitis** [5] - 3:22, 6:18, 45:10, 70:5, 74:5
**never** [8] - 17:3, 47:13, 85:4, 87:17, 95:2, 103:18, 113:12
**new** [8] - 8:24, 9:2, 9:18, 15:23, 16:8, 87:3, 112:6, 117:7
**NEW** [2] - 124:3, 124:18
**next** [2] - 9:8, 37:3
**Nichols** [1] - 4:7
**NICHOLS** [1] - 1:23
**none** [2] - 93:25, 114:25
**nonessential** [1] - 43:6
**nonfinal** [1] - 86:5
**noninfringement** [5] - 8:19, 20:20, 26:25, 33:15, 39:11
**nonsensical** [1] - 101:23
**normal** [2] - 16:17, 30:4
**normally** [2] - 32:25, 120:5

**note** [1] - 14:3
**noted** [1] - 5:13
**notes** [1] - 124:13
**nothing** [15] - 9:9, 70:25, 79:21, 94:15, 102:8, 104:7, 109:6, 111:24, 112:13, 112:14, 113:24, 117:25, 118:3, 122:12, 123:12
**notice** [1] - 14:15
**nowhere** [1] - 112:23
**Number** [2] - 3:8, 124:9
**number** [4] - 6:7, 9:23, 58:17, 59:2

## O

**obviously** [1] - 24:13
**occasionally** [1] - 105:2
**occur** [9] - 21:3, 27:12, 31:24, 32:5, 37:19, 81:19, 81:20, 82:7, 105:23
**occurring** [3] - 30:1, 80:24, 83:12
**occurs** [7] - 8:25, 13:16, 18:6, 19:7, 28:25, 80:19, 81:2
**OF** [4] - 1:2, 1:10, 124:2, 124:3
**off-the-shelf** [1] - 33:21
**offense** [1] - 7:5
**office** [1] - 86:5
**OFFICIALLY** [1] - 124:17
**often** [4] - 48:19, 105:3, 119:5, 120:3
**old** [1] - 106:16
**once** [6] - 8:9, 10:17, 35:10, 72:2, 120:9, 120:10
**one** [68] - 5:17, 5:20, 6:6, 9:7, 14:3, 15:12, 21:6, 22:22, 24:4, 24:25, 25:5, 26:2, 28:21, 31:25, 32:21, 32:24, 40:22, 40:24, 41:7, 42:3, 42:17, 46:3, 46:5, 48:22, 49:7, 54:21, 56:11, 59:13, 60:9, 60:13, 61:9, 66:9, 66:11, 68:4, 69:21, 70:5, 71:1, 76:7, 78:17, 79:16, 84:13, 92:22,

93:1, 93:12, 94:6, 95:7, 96:10, 98:6, 99:10, 100:15, 100:17, 101:12, 103:16, 103:18, 104:12, 105:14, 108:19, 110:12, 110:15, 110:21, 117:7, 120:14, 121:10, 121:11, 121:19, 122:19
**ones** [2] - 40:14, 121:13
**open** [2] - 39:20, 73:20
**opening** [1] - 6:12
**opinion** [1] - 24:24
**opposed** [5] - 7:4, 16:8, 43:5, 60:5, 108:1
**opposing** [1] - 113:10
**option** [4] - 93:12, 108:7, 108:11, 108:22
**options** [3] - 38:3, 43:16, 108:19
**orally** [1] - 4:14
**order** [4] - 4:18, 65:11, 77:3, 123:1
**ordinary** [8] - 16:14, 16:19, 28:11, 29:21, 31:15, 55:8, 55:9, 97:11
**original** [1] - 69:22
**otherwise** [2] - 41:5, 71:18
**outside** [19] - 14:5, 47:1, 47:2, 47:4, 47:12, 47:17, 51:15, 56:6, 60:17, 68:11, 68:23, 69:13, 84:7, 85:1, 91:4, 101:8, 105:2, 106:4, 116:7
**own** [1] - 81:24

## P

**page** [4] - 7:19, 7:22, 26:7, 52:5
**pages** [2] - 94:14, 124:15
**paragraph** [5] - 110:15, 110:18, 110:23, 111:3, 113:9
**paragraphs** [2] - 110:14, 118:7
**parameters** [1] - 7:15
**parse** [1] - 81:4
**part** [29] - 19:14,

19:15, 24:7, 25:5, 31:16, 33:11, 34:13, 43:14, 44:10, 44:19, 44:23, 49:25, 54:5, 56:8, 60:1, 60:16, 69:10, 85:15, 87:13, 87:14, 87:24, 94:10, 95:22, 99:25, 111:14, 115:7, 115:10, 116:14, 117:6
**partially** [2] - 82:20, 88:17
**particles** [2] - 14:3, 72:21
**particular** [19] - 9:4, 9:22, 19:7, 19:11, 24:3, 25:18, 25:22, 30:14, 30:17, 37:22, 44:12, 46:3, 61:5, 61:16, 67:23, 74:23, 87:12, 116:15
**particularly** [5] - 8:18, 29:14, 30:9, 70:11, 116:21
**particulate** [2] - 7:23, 14:25
**parties** [16] - 4:17, 5:13, 5:18, 5:21, 6:1, 6:9, 24:17, 25:1, 45:22, 46:14, 46:23, 68:19, 76:8, 122:8, 122:18, 123:5
**parties'** [6] - 5:16, 5:24, 46:17, 47:3, 122:15, 122:23
**parts** [2] - 110:17, 113:23
**passes** [1] - 29:23
**patent** [64] - 7:13, 30:17, 40:18, 44:11, 44:13, 44:18, 45:4, 45:23, 47:7, 47:8, 48:15, 49:6, 49:7, 49:14, 49:22, 50:22, 50:23, 51:11, 51:19, 51:23, 52:19, 53:3, 55:11, 56:7, 58:2, 58:19, 58:24, 60:2, 60:3, 61:2, 61:9, 62:14, 64:24, 68:20, 70:23, 73:15, 74:18, 74:20, 76:2, 76:14, 79:4, 85:3, 86:9, 87:11, 94:5, 94:9, 94:13, 94:15, 94:23, 96:6, 96:23, 97:4, 103:2, 103:5, 103:12, 103:18, 104:7, 106:3, 109:5,

115:1, 115:5, 118:20, 118:21, 118:23
**patentee** [7] - 76:21, 85:9, 87:9, 113:16, 118:14, 119:18, 119:21
**patents** [10] - 45:21, 47:10, 49:13, 50:23, 52:9, 52:14, 52:15, 76:3, 94:6
**path** [1] - 13:3
**PAUL** [1] - 2:3
**Paul** [1] - 4:11
**pause** [2] - 70:1, 109:12
**pending** [1] - 4:12
**people** [1] - 89:4
**per** [1] - 5:24
**percent** [1] - 88:20
**performing** [1] - 121:12
**perhaps** [3] - 61:19, 78:21, 95:4
**permission** [1] - 5:7
**person** [10] - 5:10, 5:12, 49:21, 51:24, 52:18, 76:4, 103:1, 121:9, 121:11, 121:17
**persons** [1] - 104:20
**perspective** [6] - 18:1, 35:3, 102:12, 102:17, 102:23, 123:8
**persuasive** [1] - 106:11
**pertain** [1] - 115:15
**pertains** [1] - 85:7
**pertinent** [1] - 29:14
**phrase** [11] - 8:8, 20:6, 29:17, 34:7, 37:7, 60:3, 66:24, 69:7, 69:8, 73:14, 101:21
**phraseology** [6] - 66:17, 90:13, 92:18, 93:7, 113:17, 113:18
**phrases** [1] - 93:10
**phrasing** [1] - 57:3
**physical** [1] - 36:8
**physically** [3] - 21:17, 63:16, 82:9
**picked** [1] - 10:18
**picking** [1] - 110:16
**picture** [4] - 12:12, 22:5, 79:16, 79:20
**picturing** [4] - 36:3, 36:7, 62:22, 100:12
**piece** [9] - 15:21, 20:9, 24:2, 43:12, 45:2,

62:6, 70:12, 80:15, 111:16
**pile** [1] - 12:21
**pipe** [6] - 10:19, 22:25, 42:24, 63:4, 63:9, 72:22
**pipes** [2] - 22:22, 71:20
**piping** [4] - 10:21, 25:24, 36:25, 71:14
**place** [6] - 10:25, 18:14, 61:15, 61:16, 81:20, 97:4
**placed** [2] - 35:14, 36:21
**plain** [8] - 28:10, 55:8, 55:9, 67:6, 68:18, 97:11, 97:15, 99:7
**Plaintiff** [1] - 1:22
**plaintiff** [5] - 63:16, 70:9, 98:5, 100:23, 108:6
**plaintiff's** [1] - 109:13
**Plaintiffs** [2] - 1:5, 67:4
**plaintiffs** [24] - 17:7, 17:12, 38:24, 42:4, 47:5, 47:13, 48:1, 48:22, 50:3, 51:4, 53:22, 55:7, 65:8, 68:9, 76:14, 79:15, 79:23, 79:25, 96:21, 97:10, 99:18, 104:10, 105:6, 118:1
**plaintiffs'** [18] - 5:25, 6:18, 10:7, 12:16, 26:8, 50:18, 52:6, 65:23, 66:12, 76:11, 77:20, 94:2, 94:25, 95:22, 104:14, 104:23, 105:19, 106:14
**Plaintiffs'** [3] - 3:15, 12:2, 94:17
**plan** [1] - 10:9
**plant** [10] - 12:17, 14:6, 22:3, 30:1, 31:2, 33:23, 35:10, 37:4, 37:22, 39:24
**plant's** [1] - 25:23
**plants** [3] - 21:21, 22:23, 42:23
**plasma** [1] - 73:10
**play** [2] - 22:5, 30:15
**plus** [4] - 25:2, 32:12, 88:13, 90:19
**point** [43] - 6:6, 8:16, 12:16, 14:20, 15:16, 21:2, 23:24, 29:18, 35:12, 37:14, 40:22,

12:7
**precombustion** [1] - 38:8
**precursor** [2] - 52:11, 111:16
**preexisting** [2] - 22:24, 69:18
**prefer** [1] - 85:21
**premade** [2] - 116:1, 116:2
**premixing** [1] - 108:1
**preparation** [3] - 58:25, 59:17, 59:25
**prepare** [1] - 59:2
**prepares** [1] - 10:10
**preparing** [2] - 107:16, 107:17
**presence** [6] - 86:16, 88:1, 88:6, 98:8, 119:14, 119:20
**present** [11] - 6:3, 76:1, 90:7, 92:8, 92:9, 94:1, 98:16, 105:13, 120:20, 120:24, 124:7
**presentation** [3] - 5:5, 29:8, 70:7
**presented** [1] - 18:5
**presenting** [2] - 3:21, 4:13
**presents** [1] - 20:22
**pressure** [1] - 75:11
**pretreated** [5] - 37:8, 37:15, 53:13, 67:24, 68:7
**pretreating** [3] - 26:12, 36:2, 37:9
**pretty** [1] - 9:11
**prevail** [2] - 104:14, 105:7
**previously** [5] - 11:22, 77:3, 109:16, 117:9, 118:19
**primary** [2] - 12:25, 13:6
**pro** [1] - 4:12
**problem** [4] - 8:14, 32:22, 43:22, 66:8
**problems** [2] - 101:12, 103:24
**procedural** [1] - 123:8
**procedurally** [2] - 6:15, 46:14
**proceeding** [1] - 123:14
**proceedings** [1] - 124:8
**process** [12] - 22:9, 53:18, 58:8, 63:15, 68:7, 68:9, 78:1,

80:24, 89:10, 101:2, 102:2, 103:6
**produced** [1] - 53:19
**produces** [3] - 15:11, 66:25, 78:2
**product** [3] - 42:8, 78:20, 99:8
**production** [1] - 62:12
**promote** [1] - 51:7
**promoted** [3] - 14:2, 15:11, 66:25
**promoter** [47] - 8:1, 15:4, 17:16, 18:18, 19:11, 19:19, 26:11, 32:12, 34:10, 34:18, 35:4, 35:5, 36:2, 37:8, 37:15, 46:6, 48:16, 48:21, 56:10, 56:15, 56:23, 57:22, 61:14, 61:25, 62:24, 63:2, 65:22, 72:10, 72:12, 72:17, 73:4, 86:11, 86:14, 86:17, 88:2, 88:6, 88:14, 89:2, 109:22, 109:25, 110:4, 114:11, 118:17, 118:18, 119:15, 119:18, 120:11
**promoters** [1] - 17:9
**promoting** [2] - 13:24, 51:22
**promotion** [2] - 30:19, 61:3
**promotor** [1] - 14:14
**proper** [2] - 50:13, 111:7
**properly** [3] - 27:4, 112:17
**proposal** [2] - 25:13, 54:6
**proposals** [1] - 18:3
**propose** [9] - 8:2, 8:3, 8:9, 8:16, 8:23, 25:11, 25:12, 29:1, 33:17
**proposed** [18] - 8:5, 9:15, 11:22, 25:12, 26:20, 26:23, 27:9, 27:23, 28:6, 28:23, 39:6, 50:15, 67:13, 76:19, 77:9, 90:1, 115:21, 115:25
**proposing** [3] - 9:1, 9:16, 9:17
**prosecution** [14] - 15:18, 43:25, 44:10, 76:22, 84:23, 84:24, 85:2, 85:6, 87:14, 88:4, 97:1, 112:11,

113:13, 114:1
**prove** [2] - 19:5, 27:1
**provide** [5] - 6:25, 15:10, 24:17, 100:9, 100:11
**provided** [3] - 29:18, 31:8, 111:19
**providing** [7] - 32:8, 50:12, 50:17, 67:10, 100:9, 101:8, 121:20
**provisional** [3] - 43:1, 44:3, 44:17
**proximity** [2] - 83:16, 100:6
**PTO** [1] - 85:5
**publication** [1] - 43:16
**published** [1] - 43:18
**pull** [1] - 30:16
**pulverized** [12] - 10:9, 10:17, 12:7, 23:3, 23:7, 35:11, 36:24, 37:16, 49:3, 71:13, 71:19, 80:22
**pulverizer** [9] - 10:13, 10:14, 10:21, 12:24, 13:1, 13:2, 25:24, 36:21, 36:22
**pump** [1] - 22:25
**purchase** [1] - 118:25
**purpose** [1] - 73:18
**purposes** [2] - 11:12, 14:12
**pursuant** [1] - 98:18
**pushed** [3] - 61:25, 72:14, 75:10
**pushes** [1] - 75:20
**pushing** [1] - 72:20
**put** [29] - 7:8, 10:1, 17:14, 20:12, 23:15, 25:2, 28:10, 29:5, 37:10, 53:17, 53:23, 59:6, 69:14, 72:25, 79:18, 80:3, 81:22, 84:5, 90:20, 92:24, 100:15, 100:16, 100:17, 100:18, 100:20, 100:24, 118:24, 122:7, 122:8
**putting** [10] - 22:8, 24:8, 36:12, 57:6, 64:11, 78:17, 84:13, 91:19, 121:23, 121:25
**pyrolysis** [52] - 76:16, 77:15, 78:8, 78:10, 78:17, 82:16, 84:25, 86:10, 86:12, 86:17, 86:23, 88:1, 88:7, 88:12, 88:16, 88:17, 89:11, 90:3, 90:7,

92:5, 94:7, 94:16, 94:24, 95:20, 95:24, 96:1, 96:10, 96:15, 97:8, 97:19, 97:23, 98:8, 98:25, 100:17, 101:1, 101:16, 109:7, 109:21, 110:19, 110:22, 110:24, 111:1, 111:13, 114:4, 114:5, 115:16, 116:16, 118:24, 119:14, 119:16, 119:21, 120:2

## Q

**qualifies** [4] - 25:25, 56:23, 72:11, 72:16
**qualify** [3] - 20:13, 24:5, 99:5
**questions** [11] - 5:6, 6:15, 29:7, 29:9, 29:13, 38:20, 40:2, 42:2, 43:1, 45:9, 56:17, 56:21, 63:22, 74:3, 87:16, 103:13
**quick** [1] - 10:13
**quite** [4] - 38:23, 52:7, 83:17, 95:16
**quote** [1] - 80:11

## R

**raised** [3] - 20:17, 26:15, 35:25
**range** [1] - 60:6
**rate** [2] - 7:24, 15:1
**reach** [1] - 122:18
**reached** [1] - 47:13
**react** [2] - 13:11, 64:17
**reacting** [2] - 13:25, 14:1
**reaction** [9] - 15:11, 15:15, 29:25, 30:20, 59:14, 60:14, 60:15, 61:11, 66:25
**reacts** [1] - 21:2
**read** [12] - 16:21, 29:19, 30:24, 53:5, 53:6, 54:5, 88:3, 94:12, 98:11, 107:19, 108:3, 116:18
**reading** [13] - 41:2, 51:25, 58:1, 58:24, 60:12, 66:5, 67:6, 67:12, 67:19, 97:18, 97:21, 102:7, 109:5

**reads** [3] - 29:1, 49:7, 108:6
**ready** [1] - 11:4
**real** [6] - 8:22, 20:4, 38:23, 38:24, 39:23, 103:7
**really** [42] - 8:15, 9:1, 9:12, 9:16, 11:20, 12:17, 14:9, 16:2, 16:23, 17:3, 17:4, 17:17, 17:24, 19:24, 20:19, 24:1, 27:9, 31:10, 31:11, 43:11, 43:24, 45:23, 46:8, 46:18, 48:24, 49:12, 52:24, 61:10, 68:10, 82:3, 84:12, 89:25, 95:11, 97:18, 98:1, 98:6, 99:13, 100:1, 103:20, 104:17, 107:22, 111:7
**reason** [13] - 8:13, 8:17, 27:2, 31:13, 33:12, 44:20, 50:16, 72:4, 85:12, 101:22, 114:20, 115:4, 123:3
**reasonable** [3] - 60:12, 66:5, 108:3
**reasons** [2] - 60:8, 104:3
**rebut** [1] - 40:24
**rebuttal** [10] - 6:13, 28:16, 28:18, 48:6, 70:3, 71:10, 74:6, 93:18, 113:3, 117:4
**recognized** [1] - 109:8
**reconcile** [1] - 26:19
**record** [13] - 3:2, 3:5, 3:14, 43:25, 44:19, 44:24, 57:20, 62:4, 94:1, 98:4, 104:17, 123:7, 123:13
**redefine** [1] - 50:19
**refer** [6] - 7:8, 41:6, 48:8, 48:10, 48:19, 69:25
**reference** [4] - 43:8, 44:23, 51:12, 115:14
**referenced** [3] - 59:19, 80:23, 92:4
**referred** [2] - 48:23, 58:20
**referring** [6] - 35:24, 46:12, 68:5, 96:24, 115:8, 119:8
**refers** [2] - 46:21, 60:3
**refined** [1] - 4:3
**Refined** [2] - 2:4, 4:8
**reframe** [1] - 81:13
**refused** [1] - 76:23

**regard** [18] - 5:14, 6:3, 6:5, 6:19, 20:15, 32:21, 45:19, 46:24, 46:25, 48:14, 62:12, 65:3, 75:8, 114:14, 114:17, 117:6, 122:19, 122:23
**regardless** [1] - 114:20
**reject** [1] - 73:23
**rejected** [1] - 76:22
**rejection** [3] - 86:7, 86:18, 86:25
**relate** [1] - 105:10
**related** [2] - 45:4, 61:10
**relates** [4] - 26:23, 61:3, 69:6, 118:6
**relation** [3] - 15:7, 19:8, 25:14
**relevant** [9] - 21:10, 38:5, 38:6, 45:5, 96:15, 110:6, 111:17, 113:23, 117:14
**relied** [1] - 112:25
**relies** [1] - 114:18
**rely** [1] - 9:21
**remain** [1] - 98:23
**remaining** [2] - 99:2, 122:22
**remarks** [1] - 6:13
**remove** [3] - 59:12, 62:19, 98:2
**reply** [20] - 20:18, 20:22, 25:17, 26:5, 26:15, 46:7, 70:8, 70:11
**reported** [1] - 124:7
**reporter** [1] - 3:2
**Reporter** [2] - 124:5, 124:6
**representative** [1] - 95:10
**require** [6] - 32:4, 43:16, 77:22, 89:8, 116:2, 120:8
**required** [5] - 75:8, 83:3, 89:4, 89:20, 92:5
**requirement** [4] - 13:15, 14:6, 18:6, 83:18
**requires** [8] - 13:24, 15:8, 31:23, 45:1, 48:12, 62:24, 94:9, 99:10
**requisite** [2] - 88:7, 99:16
**resolve** [7] - 13:17,

26:3, 26:21, 28:1, 28:4, 33:2, 73:23
**resolved** [3] - 32:25, 68:4, 105:2
**resolves** [1] - 28:14
**resolving** [1] - 25:22
**respect** [3] - 43:3, 122:22, 123:9
**respective** [2] - 31:23, 32:5
**respondents** [1] - 87:21
**response** [4] - 46:2, 86:24, 114:11, 114:14
**rest** [3] - 11:3, 11:5, 13:5
**restate** [1] - 117:9
**result** [1] - 88:13
**return** [1] - 13:14
**returning** [1] - 84:22
**reversal** [1] - 99:7
**rewrite** [3] - 8:3, 8:17, 14:24
**RICHARD** [1] - 2:2
**Richard** [1] - 4:11
**rotating** [1] - 29:23
**rule** [2] - 20:24, 44:17
**ruling** [1] - 9:19
**run** [2] - 59:5, 59:9

## S

**salt** [1] - 53:1
**saw** [3] - 11:22, 39:12, 114:6
**scale** [1] - 74:10
**scenario** [2] - 17:8, 79:12
**scenarios** [4] - 40:6, 93:2, 106:3, 106:5
**scenes** [1] - 97:12
**scheduling** [1] - 123:1
**scheme** [1] - 101:19
**school** [1] - 106:16
**scientific** [5] - 63:25, 64:19, 102:12, 102:17, 102:22
**scientifically** [3] - 62:18, 64:19, 101:22
**scope** [16] - 8:12, 8:16, 9:25, 43:9, 50:19, 50:20, 50:21, 62:20, 66:15, 78:25, 81:7, 87:24, 88:2, 98:2, 104:5
**scoping** [1] - 87:20
**scrambling** [1] - 93:25
**screen** [3] - 7:3, 7:4,

87:6
**SEALED** [1] - 124:17
**second** [5] - 8:23, 43:14, 76:10, 101:22, 102:25
**secondly** [2] - 113:14, 115:21
**section** [3] - 37:3, 43:4, 46:21, 115:18
**sections** [1] - 114:13
**see** [22] - 5:12, 10:12, 10:20, 12:6, 12:20, 12:25, 13:10, 14:22, 26:14, 31:19, 32:23, 56:24, 60:9, 77:8, 79:2, 85:4, 85:8, 86:19, 116:12, 116:15, 122:17
**seek** [3] - 77:9, 86:21, 116:6
**seeking** [3] - 50:21, 74:17, 116:8
**seeks** [2] - 76:20, 115:25
**seem** [4] - 36:11, 67:15, 70:7, 97:24
**sense** [12] - 28:5, 29:21, 30:4, 31:15, 35:5, 60:25, 65:18, 75:6, 82:10, 102:13, 102:16, 102:23
**sentence** [1] - 112:17
**separate** [3] - 15:8, 22:10, 73:25
**separately** [6] - 7:25, 15:4, 89:6, 100:21, 102:15, 120:15
**separating** [1] - 14:2
**service** [1] - 3:3
**set** [2] - 16:12, 37:22
**sets** [1] - 4:1
**settled** [1] - 68:13
**setup** [1] - 39:24
**share** [1] - 111:23
**shelf** [1] - 33:21
**short** [1] - 97:23
**Shorthand** [2] - 124:5, 124:6
**shorthand** [2] - 124:7, 124:13
**shot** [1] - 87:7
**shovelling** [1] - 42:19
**show** [6] - 9:20, 9:24, 10:13, 59:3, 88:5, 97:4
**showed** [2] - 12:1, 80:20
**showing** [2] - 7:3, 95:11
**shown** [3] - 40:14,

118:3, 118:7
**shows** [7] - 10:8, 30:3, 40:19, 44:8, 84:25, 89:25, 95:3
**shuts** [1] - 71:18
**side** [29] - 3:13, 3:15, 4:2, 5:25, 6:12, 16:24, 40:4, 40:10, 43:7, 45:13, 49:16, 53:7, 54:10, 54:22, 58:10, 62:3, 67:20, 70:3, 85:13, 87:5, 88:10, 90:10, 92:17, 93:19, 103:21, 107:5, 107:7, 114:18, 123:11
**sides** [2] - 7:8, 25:11
**SIGNED** [1] - 124:17
**significant** [1] - 29:16
**silent** [2] - 116:3, 116:23
**similar** [3] - 45:24, 64:3, 97:9
**similarly** [2] - 12:9, 30:5
**simple** [2] - 7:9, 101:21
**simplified** [1] - 100:13
**simplify** [1] - 62:21
**simply** [2] - 42:6, 67:9
**simultaneously** [2] - 80:24, 99:4
**single** [1] - 60:18
**sintered** [1] - 30:21
**sitting** [1] - 118:9
**situation** [1] - 97:10
**sixth** [1] - 52:5
**sized** [1] - 36:20
**SKADDEN** [1] - 2:5
**skill** [9] - 49:21, 51:24, 52:18, 76:5, 103:1, 104:20, 121:9, 121:11, 121:17
**SLATE** [1] - 2:5
**slide** [5] - 6:2, 6:5, 6:25, 7:8, 7:22
**slides** [4] - 6:2, 7:3, 13:18, 52:6
**slight** [1] - 11:16
**slightly** [1] - 62:8
**soak** [1] - 96:16
**solid** [1] - 72:21
**solids** [1] - 73:11
**solution** [2] - 52:25, 59:7
**someone** [1] - 36:4
**sometimes** [3] - 33:8, 59:20, 69:7
**somewhat** [2] - 55:25, 106:11

**somewhere** [5] - 11:24, 18:15, 33:22, 63:3, 67:11
**sorbent** [63] - 7:23, 7:24, 13:24, 13:25, 14:2, 14:10, 14:13, 14:25, 15:1, 15:3, 30:6, 30:22, 31:5, 34:9, 41:8, 41:10, 46:4, 46:10, 46:19, 46:21, 46:25, 47:9, 47:11, 47:17, 47:24, 48:2, 48:9, 48:10, 48:12, 51:14, 51:22, 52:4, 61:14, 61:25, 65:4, 65:6, 65:12, 65:22, 67:1, 68:21, 68:22, 70:10, 70:15, 70:16, 70:20, 71:2, 72:10, 72:17, 73:3, 75:5, 95:15, 96:5, 96:7, 96:12, 96:15, 110:23, 110:25, 111:2, 111:4, 111:13, 112:8, 116:15
**sorbents** [1] - 97:5
**sorry** [5] - 14:18, 18:11, 34:10, 87:1, 119:25
**sort** [1] - 7:14
**sounds** [5] - 21:6, 25:21, 57:3, 83:25, 90:16
**source** [5] - 15:12, 39:16, 39:18, 59:1, 120:3
**sourced** [1] - 120:4
**sources** [1] - 119:4
**space** [6] - 72:14, 82:11, 83:17, 99:20, 121:24, 122:1
**speaking** [4] - 48:23, 52:21, 65:6, 89:20
**specialized** [1] - 16:20
**species** [1] - 48:17
**specific** [9] - 8:5, 27:16, 44:25, 45:20, 48:15, 49:15, 56:11, 74:25, 87:6
**specifically** [2] - 59:16, 79:2
**specification** [23] - 9:23, 15:18, 41:3, 58:3, 70:23, 81:18, 87:11, 94:16, 94:18, 95:3, 96:2, 101:14, 105:12, 108:4, 109:5, 112:5, 113:19, 113:23,

114:13, 115:7, 115:8, 116:7, 118:2
**speculate** [1] - 55:13
**Speedbudget** [1] - 124:23
**spell** [1] - 110:4
**sprayed** [2] - 12:23, 36:19
**spraying** [5] - 36:4, 36:11, 36:15, 39:20, 73:20
**square** [1] - 32:21
**ss** [1] - 124:2
**stack** [1] - 13:5
**stage** [5] - 24:20, 75:19, 103:16, 105:3, 107:11
**staggered** [1] - 72:4
**standards** [2] - 9:21, 13:20
**stands** [1] - 47:19
**start** [4] - 3:14, 45:22, 46:23, 113:7
**started** [6] - 3:5, 6:16, 6:23, 48:24, 49:1
**starting** [1] - 13:22
**STATE** [1] - 124:2
**statement** [5] - 15:17, 77:5, 77:8, 113:24, 119:22
**statements** [4] - 13:19, 26:19, 39:10, 117:16
**STATES** [1] - 1:1
**states** [1] - 82:15
**steel** [1] - 12:11
**Stenotype** [1] - 124:7
**step** [6] - 36:18, 111:16, 115:12, 116:14, 116:17, 122:6
**stepping** [2] - 49:24, 58:19
**sticky** [1] - 40:22
**still** [14] - 32:20, 46:9, 54:21, 56:3, 62:10, 76:8, 80:4, 80:10, 82:1, 93:13, 101:3, 109:2
**stipulation** [2] - 5:21, 122:20
**stop** [2] - 99:12, 113:1
**stopping** [1] - 122:24
**stream** [132] - 8:1, 8:9, 8:10, 12:20, 13:7, 15:5, 15:6, 16:3, 16:4, 16:15, 17:17, 17:20, 18:17, 18:20, 19:7, 19:14, 19:20, 20:7, 20:10, 21:13,

21:14, 22:18, 22:20, 23:24, 24:6, 26:1, 26:11, 29:17, 29:20, 29:23, 30:3, 30:6, 30:9, 30:14, 30:22, 31:6, 31:8, 31:9, 31:11, 31:14, 31:16, 32:6, 32:15, 32:17, 33:22, 33:24, 34:8, 34:11, 34:12, 34:15, 34:17, 35:4, 35:13, 35:14, 35:15, 36:14, 36:23, 36:24, 36:25, 37:2, 37:17, 37:19, 37:24, 38:2, 38:5, 38:6, 38:7, 40:7, 40:20, 41:16, 41:19, 41:24, 42:1, 42:24, 46:4, 47:22, 47:25, 48:3, 52:12, 54:1, 54:4, 54:15, 55:10, 55:19, 56:14, 56:16, 57:23, 58:6, 60:11, 60:13, 60:14, 60:15, 60:18, 60:19, 60:24, 61:18, 62:7, 62:25, 63:19, 65:5, 66:6, 66:23, 66:24, 67:2, 67:7, 68:10, 69:8, 69:14, 69:17, 69:19, 69:20, 70:10, 71:13, 71:20, 72:6, 72:11, 72:14, 72:18, 73:2, 73:13, 73:19, 74:19, 75:6, 75:8, 75:10, 75:12, 75:14, 75:16, 76:3
**streams** [3] - 66:7, 74:21, 76:1
**strict** [1] - 108:24
**strikes** [1] - 26:1
**struggle** [3] - 103:5, 107:5, 107:18
**stuff** [9] - 19:16, 22:14, 84:15, 90:18, 91:21, 92:24, 93:14, 107:10, 107:13
**subject** [2] - 64:5, 120:25
**submit** [1] - 44:15
**subsequently** [2] - 60:23, 99:1
**substance** [18] - 19:15, 20:11, 21:16, 23:10, 23:15, 24:8, 36:6, 36:7, 53:16, 57:12, 67:19, 69:10, 69:14, 77:11, 81:19, 88:18, 92:19
**substances** [15] -

58:15, 75:6, 78:6, 78:22, 81:21, 81:22, 82:19, 83:7, 83:16, 83:20, 83:24, 84:1, 84:6, 92:22, 93:12
**substantial** [1] - 103:24
**substantive** [4] - 8:14, 29:3, 47:20, 85:5
**sucking** [1] - 23:6
**sufficient** [3] - 25:18, 44:23, 103:17
**suggest** [3] - 53:10, 93:5, 110:7
**suggested** [5] - 54:10, 104:13, 107:8, 108:6, 109:13
**suggesting** [13] - 17:18, 18:25, 21:9, 21:11, 54:11, 79:15, 80:1, 99:14, 99:22, 104:10, 105:1, 105:21
**suggestion** [2] - 96:20, 117:14
**suggests** [2] - 57:20, 107:24
**super** [1] - 60:2
**supplier** [1] - 119:1
**support** [12] - 110:6, 110:9, 110:11, 110:13, 111:8, 111:11, 111:20, 112:4, 112:24, 114:1, 118:4, 118:6
**supports** [2] - 85:19, 87:8
**suppose** [3] - 28:23, 39:19, 44:15
**supposed** [1] - 95:14
**sur** [8] - 20:18, 20:22, 25:17, 26:5, 26:15, 46:7, 70:8, 70:11
**sur-reply** [8] - 20:18, 20:22, 25:17, 26:5, 26:15, 46:7, 70:8, 70:11
**survive** [2] - 64:16, 64:17
**synonym** [3] - 18:10, 59:22, 69:9
**synonyms** [1] - 14:14
**system** [16] - 12:19, 13:5, 13:8, 33:19, 49:11, 51:15, 51:17, 53:2, 59:11, 60:17, 64:14, 65:2, 65:12, 67:9, 67:10, 68:23
**systems** [2] - 74:12, 74:14

## T

**table** [1] - 4:9
**talks** [9] - 14:9, 30:5, 30:20, 40:12, 40:19, 64:24, 70:9, 106:3, 106:5
**taught** [3] - 58:4, 59:13, 66:10
**teach** [2] - 76:4, 103:13
**teaches** [2] - 103:18, 104:8
**teaching** [6] - 59:16, 59:24, 61:8, 94:23, 96:23, 101:13
**teachings** [4] - 56:7, 58:2, 58:18, 61:1
**technical** [1] - 57:19
**technically** [1] - 11:15
**technology** [10] - 7:17, 10:5, 10:7, 12:2, 12:5, 29:19, 48:24, 49:12, 51:3, 52:22
**teed** [4] - 26:15, 26:16, 27:9, 56:24
**ten** [1] - 74:13
**term** [70] - 5:17, 5:19, 5:20, 6:4, 6:19, 6:20, 7:12, 7:21, 7:23, 8:4, 8:10, 9:4, 9:17, 16:6, 20:15, 21:8, 21:15, 24:19, 24:23, 27:12, 28:11, 28:14, 41:17, 46:24, 47:18, 48:15, 48:20, 50:14, 53:9, 55:2, 66:15, 67:12, 67:22, 68:11, 68:13, 76:8, 76:9, 76:10, 76:15, 77:21, 94:7, 94:8, 94:11, 95:2, 95:14, 95:20, 96:1, 97:3, 97:7, 97:16, 97:21, 98:3, 99:15, 100:5, 101:24, 104:15, 109:7, 109:10, 109:25, 110:9, 110:19, 112:5, 117:17, 117:18, 119:9, 119:11, 120:15, 120:16, 122:19
**terminology** [2] - 7:18, 35:22
**terms** [29] - 4:19, 5:15, 5:17, 5:23, 6:1, 6:8, 6:9, 9:21, 14:15, 16:22, 24:14, 24:15,

25:11, 33:9, 40:10, 45:20, 46:15, 47:8, 48:13, 53:11, 67:8, 92:16, 95:12, 100:6, 100:7, 102:24, 115:9, 122:22
**test** [1] - 30:18
**testimony** [3] - 32:25, 105:4, 105:17
**tethered** [2] - 66:20, 66:21
**THE** [147] - 1:1, 1:2, 3:1, 3:25, 4:15, 4:20, 5:9, 7:1, 7:10, 11:7, 11:14, 11:18, 14:12, 15:20, 16:22, 18:9, 18:12, 19:10, 20:2, 21:5, 22:2, 22:12, 22:17, 23:9, 23:20, 25:8, 26:4, 27:6, 28:5, 29:7, 30:12, 31:18, 33:3, 34:4, 35:21, 37:5, 38:4, 38:14, 39:3, 40:1, 41:15, 42:2, 42:25, 44:9, 44:20, 45:8, 45:12, 45:15, 45:25, 47:19, 48:5, 49:25, 51:1, 53:4, 56:20, 58:7, 59:18, 60:1, 61:13, 62:2, 62:21, 63:8, 64:10, 64:21, 65:14, 65:20, 66:16, 67:15, 69:5, 69:13, 69:23, 70:2, 71:2, 71:9, 72:8, 73:1, 73:6, 73:16, 74:4, 75:3, 75:13, 75:18, 75:22, 76:7, 77:18, 78:14, 79:5, 79:11, 81:10, 82:24, 83:5, 83:21, 84:10, 84:12, 84:19, 85:11, 85:22, 87:1, 87:10, 88:3, 88:9, 88:12, 88:21, 89:14, 89:22, 90:9, 91:5, 91:15, 91:25, 92:14, 93:17, 93:21, 95:1, 96:14, 98:18, 99:12, 100:11, 101:15, 102:11, 103:7, 103:25, 104:12, 105:5, 105:18, 106:15, 107:6, 108:5, 108:18, 109:1, 111:12, 112:9, 113:2, 113:15, 114:17, 115:3, 115:19, 117:3, 118:11, 119:12,

119:25, 120:13, 121:5, 121:22, 122:10, 122:13, 123:11, 123:13
**themselves** [1] - 3:13
**theories** [2] - 56:6, 71:6
**theory** [4] - 56:1, 68:6, 69:1, 102:4
**thereof** [2] - 27:10, 76:18
**they've** [2] - 73:1, 118:3
**They've** [1] - 9:24
**thinking** [7] - 18:12, 18:13, 35:9, 63:1, 63:4, 99:19
**thinks** [1] - 53:7
**third** [9] - 7:22, 76:9, 81:23, 81:24, 102:19, 106:9, 108:6, 108:9, 108:11
**three** [38] - 13:24, 81:20, 82:7, 82:19, 82:23, 82:24, 83:7, 83:19, 83:23, 84:1, 84:5, 89:16, 99:2, 99:3, 99:19, 100:18, 100:20, 101:4, 101:8, 101:9, 102:14, 102:18, 102:20, 107:21, 108:7, 108:8, 108:15, 120:9, 120:18, 120:19, 120:23, 121:23, 121:25, 122:7, 122:9
**throughout** [6] - 13:4, 13:8, 58:18, 73:14, 79:3, 113:6
**tie** [4] - 34:22, 34:24, 111:1, 112:7
**tied** [2] - 39:12, 54:7
**tieing** [1] - 94:18
**today** [26] - 3:3, 3:5, 3:10, 3:20, 4:13, 5:2, 5:5, 6:2, 7:7, 14:13, 47:15, 57:10, 67:14, 76:10, 85:4, 98:10, 106:16, 109:20, 109:25, 110:10, 117:19, 118:1, 118:3, 118:9, 123:9
**today's** [1] - 11:12
**together** [17] - 9:11, 9:12, 12:15, 14:16, 15:14, 75:18, 79:17, 80:6, 81:1, 89:17, 99:20, 100:20, 100:25, 101:4,

102:18, 120:20, 121:4
**took** [1] - 51:15
**top** [1] - 10:16
**tornado** [3] - 72:5, 72:6, 80:23
**totally** [2] - 16:9, 38:17
**touch** [1] - 72:15
**touching** [2] - 82:9, 83:1
**transcript** [2] - 124:12, 124:14
**TRANSCRIPT** [1] - 1:10
**transient** [1] - 105:10
**transport** [3] - 60:22, 61:23, 72:24
**travels** [2] - 12:18, 36:25
**traversed** [1] - 86:25
**treat** [1] - 60:20
**treated** [7] - 17:11, 27:17, 42:6, 49:20, 67:18, 67:24, 69:3
**treating** [2] - 49:17, 102:7
**treatment** [3] - 49:9, 50:24, 52:19
**tremendous** [1] - 102:13
**true** [5] - 103:16, 104:16, 118:8, 118:10, 124:15
**try** [2] - 55:13, 81:13
**trying** [12] - 7:6, 44:6, 50:18, 50:20, 55:6, 56:18, 81:11, 83:5, 88:10, 90:14, 100:1, 113:16
**tube** [3] - 30:20, 30:22, 30:23
**TUNNELL** [1] - 1:23
**turn** [7] - 6:17, 19:24, 21:9, 29:9, 76:11, 89:1, 104:11
**turned** [1] - 19:18
**turning** [2] - 51:2, 98:4
**turns** [4] - 23:25, 27:3, 34:21, 35:6
**tutorial** [4] - 10:7, 12:2, 12:16, 48:24
**twice** [1] - 8:10
**two** [32] - 4:1, 5:14, 5:23, 6:1, 6:7, 6:9, 8:7, 9:8, 9:10, 9:13, 11:23, 11:25, 15:8, 18:2, 39:14, 45:23, 46:3, 63:22, 81:21, 88:23, 91:10, 95:12, 95:17, 100:17,

102:18, 120:20, 121:4
**tying** [1] - 119:10
**type** [8] - 11:21, 25:23, 25:24, 30:2, 30:23, 30:25, 72:22, 72:23
**typed** [1] - 124:13
**types** [1] - 8:7
**typewritten** [1] - 124:15

## U

**U.S.M.J** [1] - 1:13
**ultimately** [4] - 50:2, 63:13, 65:21, 91:6
**unable** [1] - 77:7
**unclaimed** [1] - 58:23
**unclear** [4] - 27:2, 55:4, 56:3, 107:19
**under** [5] - 51:18, 75:11, 102:4, 122:24
**underline** [1] - 106:20
**understandable** [1] - 94:13
**understood** [9] - 26:11, 50:22, 55:11, 77:17, 85:9, 86:3, 86:20, 114:8, 114:9
**underwent** [2] - 85:5, 113:12
**undisputed** [2] - 43:17, 77:14
**UNITED** [1] - 1:1
**unless** [4] - 16:17, 28:19, 41:4, 74:2
**unlike** [1] - 50:23
**unmistakable** [1] - 77:5
**untenable** [1] - 90:1
**untethered** [1] - 66:18
**unusual** [2] - 41:25, 107:4
**up** [36] - 6:3, 6:4, 7:16, 7:22, 9:6, 10:14, 10:18, 12:4, 12:21, 19:16, 26:15, 26:16, 27:9, 30:16, 34:12, 34:23, 37:22, 50:1, 56:24, 58:22, 61:22, 62:11, 67:10, 70:5, 85:8, 95:4, 95:11, 96:16, 97:4, 98:6, 99:3, 112:23, 113:9, 118:13, 118:24
**upstream** [10] - 8:25, 13:16, 27:12, 28:25,

101:11, 102:19, 106:19, 108:8, 108:10, 121:2, 121:14, 122:9

29:2, 31:24, 32:6,
48:3, 53:2, 58:6
**useful** [1] - 63:15
**uses** [5] - 28:15,
41:21, 48:15, 90:12,
107:13
**utilized** [2] - 43:8,
43:10
**utilizes** [1] - 62:10

## V

**vacuum** [1] - 67:11
**vapor** [1] - 59:7
**variations** [1] - 11:16
**variety** [2] - 119:2,
119:4
**various** [2] - 23:21,
23:22
**vein** [1] - 73:9
**version** [2] - 106:14,
120:14
**versus** [4] - 3:7, 33:7,
43:6, 91:13
**via** [1] - 88:23
**view** [10] - 38:4, 64:1,
71:4, 72:9, 75:4,
76:1, 77:20, 83:7,
108:18, 115:3
**vigorous** [1] - 32:24
**vs** [2] - 1:6, 124:10

## W

**walk** [1] - 10:4
**wall** [1] - 54:6
**wants** [1] - 92:17
**warner** [1] - 124:4
**Warner** [1] - 124:22
**ways** [9] - 23:22, 24:4,
29:19, 59:2, 59:10,
59:13, 106:19,
108:23, 121:14
**weeds** [1] - 69:2
**welcome** [2] - 3:25,
4:21
**whatsoever** [3] -
94:19, 94:23, 112:4
**whereas** [4] - 69:13,
91:17, 99:9, 107:9
**whereby** [8] - 8:24,
13:16, 15:10, 28:24,
29:1, 66:24, 77:10,
92:18
**wherein** [2] - 86:22,
107:1
**whichever** [1] - 81:5
**who'll** [1] - 4:13

**whole** [1] - 80:23
**wholly** [1] - 116:3
**win** [1] - 18:8
**wish** [1] - 117:8
**wonder** [2] - 103:8,
103:19
**wondering** [1] - 24:12
**word** [12] - 9:5, 29:20,
31:13, 41:21, 41:22,
42:18, 43:24,
106:21, 107:13,
112:22, 112:23
**wording** [1] - 16:8
**words** [25] - 16:3,
16:14, 16:17, 16:20,
17:11, 18:5, 18:10,
28:10, 28:12, 28:15,
29:6, 44:2, 44:7,
47:3, 47:12, 47:16,
66:13, 66:18, 66:20,
66:21, 68:25, 90:14,
103:10, 106:5, 106:6
**works** [8] - 10:6,
12:17, 35:10, 52:23,
62:18, 64:19, 73:13,
121:1
**world** [6] - 23:9,
31:20, 37:6, 79:6,
79:16, 106:7
**worried** [2] - 20:3,
57:9
**worry** [1] - 32:19
**worthwhile** [1] - 52:12
**write** [1] - 24:24
**written** [22] - 50:7,
58:22, 89:9, 103:15,
109:9, 109:10,
110:5, 110:8, 111:7,
111:11, 111:21,
111:25, 112:18,
112:19, 112:24,
113:8, 114:12,
114:15, 117:6,
117:25, 118:4, 118:6

## Y

**yellow** [1] - 61:22

## Z

**zone** [4] - 65:13, 66:2,
121:3, 121:6