IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MIDWEST ENERGY EMISSIONS CORP. and MES INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 19-1334 (CJB) |
| ARTHUR J. GALLAGHER & CO., et al., | ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION**

Defendants submit this opposition to Plaintiffs' "Motion for Reconsideration of its Motion for Leave to File a Fourth Amended Complaint, or in the alternative, Leave to File a Fifth Amended Complaint."  D.I. 408, 409, 411.  For the reasons set forth below, Plaintiffs' Motion should be denied:  the Court's Oral Order (D.I. 404) denying leave to add four entities as Defendants in the Fourth Amended Complaint ("4AC") should not be disturbed, and Plaintiffs should not be permitted to file their proposed Fifth Amended Complaint ("5AC") (D.I. 408-1).

## NATURE AND STAGE OF THE PROCEEDING

Plaintiffs filed this patent infringement action in July 2019.  An Amended Scheduling Order entered on June 1, 2021 states: "All motions to join other parties, and to amend or supplement the pleadings, shall be filed on or before September 24, 2021 . . . . "  D.I. 283 at 2.

By Oral Order (D.I. 404) dated May 3, 2022, the Court granted Plaintiffs' motion for leave to file a proposed 4AC (filed as D.I. 406), but denied leave to add as parties four entities that the 4AC collectively referred to as "AJG"—three previously dismissed as defendants, Arthur J. Gallagher & Co., AJG Coal LLC, and Gallagher Clean Energy, LLC, and a fourth, "AJG Financial Services, LLC."  Plaintiffs seek reconsideration of aspects of that Order, or leave to serve a 5AC.

Prior motion practice relevant to Plaintiffs' Motion is discussed below.  Defendants' response to the 4AC is due on June 1, 2022.  D.I. 410.

## BACKGROUND

Relevant facts are set forth in Defendants' briefs in support of their motions to dismiss the Original Complaint ("OC") (D.I. 56) and First Amended Complaint ("FAC") (D.I. 177), and the Reports and Recommendations on such motions (D.I. 110 ("R&R 1") and D.I. 279 ("R&R 2")).

Plaintiffs' Original Complaint ("OC") asserted claims against refined coal company ("REFCOs") that made and sold Refined Coal, and claims against power plants that burned Refined Coal.  In addition, the OC asserted claims for induced infringement, contributory

1

infringement, and joint infringement against three additional entities—Arthur J. Gallagher & Co., AJG Coal LLC, and Gallagher Clean Energy, LLC—that Plaintiffs referred to collectively as "AJG." Defendants moved to dismiss the OC on various grounds, including that the claims were improperly lumped together against various defendants and failed to apprise them of what they were accused of doing. This Court's First R&R dismissed all claims against the three lumped AJG entities (D.I. 110), and an order adopting the R&R 1 was entered on July 15, 2020. D.I. 127.

Plaintiffs thereafter filed First and Second Amended Complaints ("FAC" and "SAC," respectively) against the REFCOs and the three AJG entities. Defendants once again moved to dismiss, once again arguing that the allegations were "impermissibly directed" to various defendants "as a group," and "thus fail to put any one of the Moving Defendants on notice of how it supposedly infringes the asserted patents." D.I. 279 at 6. This Court's R&R 2 dismissed the joint infringement claims against all defendants with prejudice, allowed the indirect infringement claims to proceed against the REFCOs, and dismissed all claims against the three AJG entities on the "lumped" allegations ground, which the R&R 2 analyzed and discussed in considerable detail.

First, this Court rejected Plaintiffs' argument that Defendants had "waived" the "lumping" argument, noting that Defendants had presented the argument in their motion to dismiss the OC. Citing the specific pages in Defendants' brief where Defendants had made those arguments, the Court stated "So it finds Plaintiffs' waiver argument not to be well taken." D.I . 279 at 6 n4.

Second, this Court explained in R&R 2 why certain "lump[ed] allegations against multiple defendants will not survive a motion to dismiss," analyzed several cases, and then noted that "two paragraphs of the SAC are particularly important" to the issue because of their insufficiently delineated and articulated allegations against the three AJG entities and certain other entities. R&R 2 stated: "The allegations in paragraph 212 leaves the Court and these Defendants at a loss as to

what these Defendants are alleged to have done that amounts to infringement." D.I. 279 at 7, 9.

The Court enumerated various reasons that the allegations in that paragraph and elsewhere were inadequate, concluding that the SAC "leaves the Court and Defendants to guess at what is the theory of liability that is being asserted here." *Id*. And this Court explained why Plaintiffs' failure to comply with the pleading requirements was not a mere formality or quibble:

> That lack of clarity . . . matters because, as a general matter, corporate entities are understood to be separate and distinct. Just because a company is the parent of a subsidiary, that does not (without more) mean that the parent is automatically liable for patent infringement committed by the subsidiary. (*Id.*)

This Court then delineated the law of veil-piercing, explained why the SAC failed, and concluded:

> The Court should not be responsible for having to ask all these questions and try to guess at what the answers are, in order to figure out what theories of liability are being pleaded in the SAC. Moving Defendants should not have to either.

D.I. 279 at 12. This Court considered the significance of these shortcomings in addressing the "Nature of Dismissal." (D.I. 279 at 41). In the Court's words:

> "Plaintiffs have now submitted three complaints in this action and thus have had three tries to assert plausible claims against Moving Defendants. That is a lot of tries." (*Id.*).

This Court therefore recommended dismissal of certain claims with prejudice, and the District Court adopted that recommendation. With respect to the dismissal of all claims against the three AJG entities (and certain other defendants), this Court gave Plaintiffs another opportunity to get it right. Although the "lumped pleading" ground had been raised by Defendants in the motion directed to the OC, the R&R 2 was "the first time" that the Court "recommended dismissal of all claims" against such defendants "on improper 'group pleading'/'lumping' grounds." *Id.* at 42. Accordingly, because "the Court's June 18 [2020] R&R [1] did not address these deficiencies," the R&R 2 recommended that the "dismissal be without prejudice." *Id.* But "in light of the many

opportunities Plaintiffs have now had to attempt to amend their original Complaint, the Court also recommends that as to any further attempt to amend (e.g. . . . to add back in certain claims against the above-referenced 12 Moving Defendants), Plaintiffs should not be permitted to do so as of right." *Id.* Plaintiffs would "first be required to file a motion for leave to file a further amended complaint (one that attaches the proposed amended pleading)." *Id.*

Defendants objected, arguing "that the claims dismissed on lumping/group pleading grounds should be dismissed with prejudice." D.I. 319 at 8 (citing D.I. 286 at 7-8). In particular, Defendants asserted that Plaintiffs "have been on notice of the objections to the group pleading since the original complaint," but failed to "'cure' this deficiency." D.I. 319 at 9 (citing D.I. 286 at 8). The District Judge disagreed, and concluded: "I am not convinced that the fact that [Plaintiffs] w[ere] on notice of the Defendants' objections is sufficient to establish futility" and support a prejudicial dismissal at that juncture. *Id.* The District Judge, however, warned Plaintiffs that even though it "agree[d] with the Magistrate Judge's conclusion that, in light of the circumstances, one cannot necessarily infer futility from the fact that [Plaintiffs] chose not to previously amend its complaint to address group pleading" in response to Defendants' raising the issue through argument, Plaintiffs were now on notice that their "lumped pleading" is unacceptable: "As of this Report, [Plaintiffs] [are] on notice that [their] pleading against the twelve grouped Defendants is legally insufficient and must be addressed." D.I. 319 at 9.

Eight months later, Plaintiffs moved for leave to file a proposed 4AC to, *inter alia*, add back the three dismissed AJG entities, and a fourth. Despite the admonitions from this Court and from the District Judge against group pleading, Plaintiffs again lumped four distinct entities into a collective "AJG" moniker. Defendants' opposition brief raised the "lumped pleading" problem that the Court had warned against. D.I. 376 at 3-4. Plaintiffs, however, insisted on moving forward

4

with the allegations against the four AJG entities as lumped together.

The Court's Oral Order denied Plaintiffs leave to add the four AJG entities on the ground that the proposed veil-piercing allegations against them were "lumped" together, "mak[ing] no attempt to explain how any of those parent-subsidiary relationships do or do not impact the alter ego or agency analysis" of the veil-piercing claims, and therefore "fail[ed] to provide each defendant with sufficient notice of the basis for the claims against it," as it must.   D.I. 404.

## ARGUMENT

### A.  <u>Reconsideration Is Not Warranted</u>

In denying Plaintiffs leave to add four new defendants—three of whom were previously dismissed from the case—this Court concluded that the proposed veil-piercing claims against those entities were improperly and indecipherably "lumped together" and therefore failed to apprise each of the nature of the claims against it.   Plaintiffs contend that "this decision was based on a misapprehension of ME2C's allegations and a clear error of law."  D. I. 408 at 3.

Plaintiffs' letter-brief, D.I. 408, does not identify anything the Court misapprehended. Plaintiffs appear to argue that the Court erred in allowing veil-piercing claims to proceed against a DTE parent, while not allowing them to proceed against the four AJG entities because, as Plaintiffs explain, the proposed 4AC "contained the same factual allegations against the AJG Parent Entities that the Court found sufficient with respect to DTE."  D.I. 408 at 2.

There was no misapprehension and no error, and Plaintiffs' argument overlooks the different presentations their proposed 4AC made with respect to DTE and the lumped-together AJG entities.   Regarding DTE, the proposed 4AC only sought to add veil-piercing allegations against one DTE entity.   The Court did not find that any "lumping" problem infected the allegations against that entity because the allegations necessarily referenced that one entity.  By contrast, the Court found that lodging "the same factual allegations" against four AJG entities,

lumped as one, was improper pleading—precisely what Plaintiffs had done before, and what the Court had warned would be unacceptable the next time.  D.I. 319 at 9; D.I. 408 at 2; *see* D.I. 404.

Plaintiffs' reliance on *H.Y.C. v. Hyatt Hotels*, 119 F.R.D. 136, 138 (D.Del. 2016), is inapposite.  *See* D.I. 408 at 2.  The plaintiff in *H.Y.C.* had direct claims against the proposed defendants—one allegedly designed the swimming pool that was the site of the accident, and another controlled the marketing—such that the theory of recovery against those defendants related to their role in designing the pool and selling the resort, and were not simply indirect allegations based on alter ego, as is the case here.  Here, by contrast, Plaintiffs tried twice to assert claims directly against three of the proposed defendants, and failed, leaving only the claims of vicarious liability that they seek to introduce here.

Plaintiffs' claim that the Court committed "legal error" fares no better.  According to Plaintiffs, "it is error to dismiss a claim supported by sufficient factual allegations merely because the plaintiff fails to provide specific notice of the legal theories asserted."  D.I. 408 at 2.  But Plaintiffs ignore the reason that leave was denied with respect to the four AJG entities:  the "lumping."  Plaintiffs simply posit that their claim against the four entities was "supported by sufficient factual allegations," but the fact of their "lumped pleading" deficiency belies that assumption.  The allegations were lumped together without making any factual distinction among the four AJG entities, depriving each defendant of notice about what it supposedly did that warrants disregarding the corporate form and piercing the corporate veil to make any or all of them responsible for acts allegedly taken in the name of a REFCO.

Plaintiffs' case is beside the point.  *See* D.I. 408 at 2, *citing Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014).  In *City of Shelby*, plaintiff police officers sued the city, claiming that they had been fired in retaliation for blowing the whistle on criminal conduct.  Their claim

was dismissed because they did not cite 42 U.S.C. § 1983 in their complaint.   The Supreme Court summarily reversed the dismissal, because the omission of the cite to section 1983 was immaterial to putting the city defendant on notice of the factual allegations underlying the officers' direct claim.   The proposed 4AC here, by contrast, failed to put each of the four proposed parties on notice as to what it allegedly did that would warrant piercing an unspecified number of corporate veils in order to hold each liable.   There was no regard to who owned or did what—a far cry from bringing what is self-evidently a section 1983 action and simply omitted the section number.

Moreover, Plaintiffs here were warned.   The Court's 43-page R&R 2 gave them clear guidance on the pleading requirements they would need to meet in order to add multiple defendants—particularly parties already been dismissed from the case.   Plaintiffs took eight months to replead, disregarded the Court's warnings, and stood by their "unacceptable" pleading when Defendants raised the 4AC's lumped pleading problem.   Plaintiffs cite no case that saves them under the circumstances present here.   There was no error, and the decision should stand.

**B.** **Plaintiffs' Should Not Be Permitted To File Yet Another Amended Complaint**

One year ago (and two years into this action), this Court wrote:

> "Plaintiffs have now submitted three complaints in this action and thus have had three tries to assert plausible claims against Moving Defendants.   That is a lot of tries." (D.I. 279 at 41).

In the year since, this Court gave Plaintiffs more than another chance—Plaintiffs submitted their Third Amended Complaint, and two versions of a Fourth Amended Complaint.   Now Plaintiffs seek to file a Fifth Amended Complaint.   Leave should be denied.

First, it is three years into the case and simply too late.   Defendants did not previously raise lateness because the Court had stated that Plaintiffs could have an opportunity to amend, given that the R&R 2 was the Court's first explicit ruling on the "lumped pleading" deficiency.   Now, however, there are only a few months left in fact discovery.   Allowing Plaintiffs to add new parties

at this time would be prejudicial, as Defendants would need to prepare initial disclosures, discovery responses, and depositions for multiple additional party witnesses well into fact discovery.  Plaintiffs have not identified any good cause for disregarding the Court's instructions about pleading and expecting a seventh bite at the pleading apple eight months after the deadline for joining parties.  D.I. 283 at 9.  Defendants should not be prejudiced in defending the case.

Second, there is no "good cause" for giving Plaintiffs yet another try after they were heard on their motion to file the 4AC.  Plaintiffs do not seek to assert any infringement claims against any of the four parties they seek to add.  They cite no prejudice in connection with litigation of the merits that would result if they are not permitted to add more parties at this late date.  Plaintiffs contend only that if any of the REFCO defendants are found to liable for indirect infringement, that Plaintiffs should be able to recover from other entities.  There are no new or additional infringement claims for which Plaintiffs require the four additional entities to be in the case.

Third, there is nothing unfair about denying Plaintiffs endless opportunities to change who is in the case.  Plaintiffs made their choice to move based on the 4AC as they drafted it, with guidance from both the R&R 2 and from the Order adopting the R&R 2.  Then Plaintiffs stuck with their 4AC collective allegations against the four parties even after Defendants argued that the 4AC violated the "lumping" rules that the Court had warned about (and even as they revised the 4AC to add another REFCO).  Plaintiffs opted to seek to add parties at the time and in the manner of their choosing—long after the deadline had passed, and with ample warning about what they would need to do.  Indeed, there is no reason that Plaintiffs didn't proffer the 5AC in February, instead of the 4AC that they chose to proffer.  They ignored the Court's guidance, and its warnings.

Fourth, the 5AC's allegations against the four AJG entities do not state a claim for veil piercing.  During oral argument on the motion for leave to file the 4AC, the Court noted that the

8

cited cases declining to pierce the corporate veil on either an alter ego or an agency theory each found that one or more of the specific factors relied upon by Plaintiffs were insufficient on their own to state a claim for veil piercing, and wondered whether multiple factors, alleged together, would state a plausible claim.  The allegations in the proposed 5AC fall short.

With respect to the alter ego theory, the 5AC allegations relate to the lawful operation of a subsidiary by one or more controlling parents.  There is no allegation supporting a finding that any of the REFCOs "disregard[] corporate formalities," *E.I. du Pont de Nemours*, 335 F. Supp. 3d at 680, or engaged in any activities "evidencing fraud."  *See Quantum Loyalty Sys., Inc. v. TPG Rewards, Inc*., 2009 WL 5184350, at *7 (D. Del. Dec. 23, 2009).  That leaves only the possibility that the allegations, taken together, evidence "inequity."  But there is nothing alleged that supports a finding of unfairness in the use of the corporate form, or any disadvantage to Plaintiffs.

Plaintiffs contend that the Court's decision to allow the claim against the DTE parent to proceed compels allowing the claims against the AJG parent entities to proceed.  Not so.  The Court concluded that the allegations directed to one entity (the single DTE parent) may "plausibly demonstrate[] an element of injustice or unfairness in DTE's alleged misuse of the corporate form, in that were amendment not permitted, Plaintiffs might have no non-judgment-proof entity from which to obtain redress for DTE's and the DTE REFCOs' alleged patent infringement."  D.I. 404.  But Plaintiffs have made no plausible allegation that any one of the four AJG entities is necessary to provide "redress"; that any named AJG REFCO is "judgment-proof"; that any AJG parent infringed; or that all four AJG parent entities should be added.

Likewise, with respect to the "agency" theory, the allegations against the four AJG entities are different from those against DTE.  The Court, in allowing an agency claim against a DTE parent, said:  "And as to the allegation that the DTE REFCOs acted as the agent of DTE, many of

9

the above referenced facts regarding the alleged lack of corporate separateness also help set out a plausible claim that the DTE REFCOs were so closely aligned with DTE that they were likely acting as DTEs agents: i.e., on DTEs behalf or at DTEs direction."  D.I. 404.  Here, by contrast, the allegations against four AJG entities are so muddled, diffuse, and confused, that there is no plausible allegation that any REFCO was "so closely aligned" with any AJG entity, let alone all four entities, to be acting as an agent.  Moreover, crucially, the essence of an agency claim is missing:  there is no allegation that the REFCOs held themselves out as agents of one of the AJG entities (let alone all four), or acted on behalf of one such entity (let alone all four).

Under either theory, cases permitting veil piercing allege the misuse of the corporate form to perpetrate fraud against, or flout contractual obligations to, plaintiff creditors or investors, and leave them in the lurch.  There are no such allegations here.

Finally, the 5AC essentially uses word processing features, rather than carefully framed allegations, to try to overcome the "lumped allegation" problems.  *Cf.* (D.I. 408 (proposed 5AC) ¶¶ 234–60 *with* D.I. 373-1 (proposed 4AC) ¶¶ 235–44 (largely replicating 4AC allegations).  The requirements to make precise allegations targeted to each defendant is not a formalistic one that can be overcome by cloning what were the collective allegations and pasting the clones under the name of each party.  The 5AC is simply the lumped pleading reorganized, with no change in content.  Indeed, the 5AC still lumps even the four proposed new entities into undifferentiated group allegations with other parties throughout the pleading.  See, e.g., D.I. 408-1 at ¶¶ 288-95, 314-21, 335-42, 356-63, 381-88 (each using the lumped-term "AJG, DTE, CERT, Chem-Mod and the RC Defendants," most of which themselves are lumped terms).

## CONCLUSION

For the reasons set forth above, Plaintiffs' motion should be denied.

MORRIS, NICHOLS, ARSHT &TUNNELL LLP

*/s/ Anthony D. Raucci*

_____

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
Anthony D. Raucci (#5948)
OF COUNSEL:

Richard W. Mark
Joseph Evall
Paul J. Kremer
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
(212) 351-4000

David Glandorf
GIBSON, DUNN & CRUTCHER LLP
1801 California Street
Suite 4200
Denver, CO 80202-2642
(303) 298-5700

1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Defendants*
*AJG Iowa Refined Coal LLC*
*Arbor Fuels Company, LLC*
*Belle River Fuels Company, LLC*
*Canadys Refined Coal, LLC*
*Chouteau Fuels Company, LLC*
*Coronado Refined Coal, LLC*
*DTE Energy Resources, LLC*
*Erie Fuels Company, LLC*
*George Neal North Refined Coal, LLC*
*George Neal Refined Coal, LLC*
*Hastings Refined Coal, LLC*
*Huron Fuels Company, LLC*
*Jasper Fuels Company, LLC*
*Jefferies Refined Coal, LLC*
*Joppa Refined Coal LLC*
*Louisa Refined Coal, LLC*
*Newton RC, LLC*
*Portage Fuels Company, LLC*
*Superior Fuels Company 1, LLC*
*Walter Scott Refined Coal LLC*
*Williams Refined Coal, LLC*

May 31, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on May 31, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on May 31, 2022, upon the following in the manner indicated:

James M. Lennon, Esquire                                          *VIA ELECTRONIC MAIL*
DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE  19806
*Attorneys for Plaintiffs*

Bradley W. Caldwell, Esquire                                      *VIA ELECTRONIC MAIL*
Jason D. Cassady, Esquire
John Austin Curry, Esquire
Justin T. Nemunaitis, Esquire
CALDWELL CASSADY CURRY PC
2010 Cedar Springs Road, Suite 1000
Dallas, TX  75201
*Attorneys for Plaintiffs*

Robert S. Saunders, Esquire                                       *VIA ELECTRONIC MAIL*
Nicole A. DiSalvo, Esquire
Jessica R. Kunz, Esquire
Daniel S. Atlas, Esquire
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, DE  19899-0636
*Attorneys for Defendants Alistar Enterprises, LLC,*
*CERT Operations RCB LLC, CERT Operations II*
*LLC, CERT Operations IV LLC, CERT Operations*
*V LLC, Rutledge Products, LLC, Senescence*
*Energy Products, LLC, Spring Hill Resources LLC,*
*Buffington Partners LLC, Bascobert (A) Holdings*
*LLC, Larkwood Energy LLC, Cottbus Associates*
*LLC, and Marquis Industrial Company, LLC*

Douglas R. Nemec, Esquire
Leslie A. Demers, Esquire
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, NY  10001-8602
*Attorneys for Defendants Alistar Enterprises, LLC,*
*CERT Operations RCB LLC, CERT Operations II*
*LLC, CERT Operations IV LLC, CERT Operations*
*V LLC, Rutledge Products, LLC, Senescence*
*Energy Products, LLC, Spring Hill Resources LLC,*
*Buffington Partners LLC, Bascobert (A) Holdings*
*LLC, Larkwood Energy LLC, Cottbus Associates*
*LLC, and Marquis Industrial Company, LLC*

*VIA ELECTRONIC MAIL*

*/s/ Anthony D. Raucci*

_____

Anthony D. Raucci (#5948)