IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MIDWEST ENERGY EMISSIONS CORP. and MES INC., | ) | |
| Plaintiffs, | ) | |
| v. | ) | C.A. No. 19-1334 (CJB) |
| ARTHUR J. GALLAGHER & CO., et al., | ) | |
| Defendants. | ) | |

**OPENING BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**FOURTH AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Pages**

NATURE AND STAGE OF THE PROCEEDING .... 1

SUMMARY OF ARGUMENT .... 2

STATEMENT OF FACTS .... 2

I. The Patents-in-Suit .... 2

II. The Allegations Against the REFCO Defendants .... 3

A. The Infringement Claims .... 3

B. Internal Revenue Code Section 45 .... 4

III. Procedural History: Motions Directed to the Pleadings .... 5

LEGAL STANDARD .... 9

ARGUMENT .... 9

I. Inducement Requires Acts That Communicate a Specific Intent and Cause Infringement .... 9

II. The 4AC Pleads No Acts That Communicate a Specific Intent to Cause Infringement, or That Cause Infringement. .... 11

CONCLUSION .... 14

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
363 F.3d 1263 (Fed. Cir. 2004).....11, 12

*Galderma Lab'ys, L.P. v. Medinter US, LLC*,
Civil Action No. 18-1892-CFC-CJB, 2020 WL 871507 (D. Del. Feb. 14, 2020).....8, 13, 14

*HZNP Medicines LLC v. Actavis Laboratories UT, Inc.*,
940 F.3d 680 (Fed. Cir. 2019).....10, 11

*Nalco Co. v. Chem-Mod, LLC*,
No. 14-cv-2510, 2015 WL 6122811 (N.D. Ill. Oct. 15, 2015).....5

*Power Integrations v. Fairchild Semiconductor Intl., Inc.*,
843 F.3d 1315 (Fed. Cir. 2016).....10, 11, 12

*Vita-Mix Corp. v. Basic Holding, Inc.*,
581 F.3d 1317 (Fed. Cir. 2009).....10

**Rules and Statutes**

26 U.S.C. § 45..... *passim*

26 U.S.C. § 45(c)(7)(A)(i)().....5

26 U.S.C. § 45(c)(7)(B).....5

35 U.S.C. § 271(b).....1, 2, 9, 12

Fed. R. Civ. P. 12(b)(6).....1, 5, 6, 9

Defendants[1] move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the claims for induced infringement in the Fourth Amended Complaint ("4AC"), D.I. 406, on the ground that Plaintiffs fail to allege "active inducement" by Defendants, as required for a claim under 35 U.S.C. § 271(b).

**NATURE AND STAGE OF THE PROCEEDING**

The significant motion practice directed to the complaints in this patent infringement action is summarized below, in the "Procedural History" section of the Statement of Facts.

This motion concerns the induced infringement claims in the 4AC (D.I. 406), which Plaintiffs filed, by leave of Court, on May 3, 2022. *See* D.I. 404 ("Oral Order"). The 4AC names more than thirty entities as Defendants, and asserts that each has induced and contributed to infringement of one or more claims of the five patents-in-suit.[2] Plaintiffs do not assert any claims of direct infringement against any Defendant.

Plaintiffs have separately moved for reconsideration (D.I. 411) of that part of the Court's Oral Order that denied them leave to add four additional entities as defendants on the ground that the proposed veil-piercing allegations against such Defendants were "lumped" together, "mak[ing] no attempt to explain how any of those parent-subsidiary relationships do or do not impact the alter ego or agency analysis" of the veil-piercing claims, and therefore "fail[ed] to provide each defendant with sufficient notice of the basis for the claims against it." D.I. 404. That motion is pending.

---

[1] This motion is brought on behalf of all Defendants because the induced infringement claims in the 4AC are all based on deficient allegations regarding the named Defendants alleged to make and sell Refined Coal ("REFCOs").

[2] The five Patents-in-Suit are: (i) the two patents that were the subject of the original Complaint (D.I. 1), U.S. Patent Nos. 10,343,114 (the "'114 Patent") and 8,168,147 (the "'147 Patent") (together, the "Original Patents-in-Suit"), and (ii) three additional patents (U.S. Patent Nos. 10,589,225 (the "'225 patent"), 10,596,517 (the "'517 patent"), and 10,668,430 (the "'430 patent").

## SUMMARY OF ARGUMENT

Active inducement under 35 U.S.C. § 271(b) requires acts by the alleged inducer that (i) communicate a specific intent that a third party infringe and (ii) cause the direct infringement. The 4AC fails to allege any acts by Defendants communicating such intent, or any acts by Defendants causing infringement by power plants. For each of these independent reasons, the 4AC fails to meet the "active inducement" requirement of section 271(b) and fails to state a claim for inducement.

## STATEMENT OF FACTS

Relevant allegations are set forth in Defendants' briefs in support of their motion to dismiss the Original Complaint ("OC") (D.I. 56) and in support of their motion to dismiss the First Amended Complaint ("FAC") (D.I. 177), which are incorporated herein by reference; the two Reports and Recommendations on such motions (D.I. 110 ("R&R 1") and D.I. 279 ("R&R 2")); and additional allegations in the 4AC.

### I.   The Patents-in-Suit

The two original Patents-in-Suit "relate to methods for reducing mercury emissions from coal-fired power plants by combining" two distinct steps: (1) a "Bromine Step," which requires the use of bromine-enhanced coal; and (2) an "Activated Carbon Step," which requires adding a sorbent such as Activated Carbon ("AC") to the flue gas formed from combustion of the coal. *See* D.I. 110 at 3.[3] Each asserted claim of the other three Patents-in-Suit is alleged to require the same two distinct steps. *See,* e.g., D.I. 130 ¶¶ 255, 289, 318, 347, 380.

---

[3] Although the parties dispute whether the use of bromine-treated coal comes within the scope of the "bromine containing promoter" limitations of the '147 patent claims, Defendants base this motion on Plaintiffs' allegations in the 4AC.

## II. The Allegations Against the REFCO Defendants

### A. The Infringement Claims

***Indirect Infringement Claims:*** The original induced and contributory infringement claims against the Refined Coal LLC Defendants ("REFCOs") focused on their provision of bromine-enriched Refined Coal to power plants. Those claims were dismissed because the OC did not tie the REFCOs' acts, knowledge, or intent to performance of the Activated Carbon Step by the coal-fired power plants that used their Refined Coal. D.I. 110 at 13-15, 19 ("As the Court has previously set out above, it does not believe that the Complaint sufficiently explains how the 'tailor[ed]' nature of the Refined Coal renders it plausible that [the REFCOs] knew or intended that this coal will in fact be utilized in an Activated Carbon Step.").

The FAC asserted the same legal theories of induced and contributory infringement against the REFCOs, but included new allegations based on "post-emission control testing." Under this theory, (i) the REFCOs used "post-emission control testing" to qualify Refined Coal for tax credits under 26 U.S.C. § 45; and (ii) such testing measures the emissions reduction resulting from the combustion of Refined Coal in combination with treatment of the emissions gas using AC. The Court concluded that the post-emission control testing of Refined Coal in combination with AC supported an inference that when the REFCOs supply Refined Coal to power plants, they intend for the power plants to use Refined Coal in combination with AC so that the power plants' overall emission control methodology would match the methodology used to qualify the Refined Coal for Section 45 credits and the tax credits would be earned. D.I. 279 at 22-24.[4]

---

[4] In the course of discovery, ME2C finally accepted what Defendants had repeatedly told it—that AC was not used in connection with Section 45 qualification testing. Accordingly, ME2C abandoned its position on inducement (and direct infringement), dropping all of the "post-emission control testing" allegations from the 4AC. Thus, the 4AC's induced infringement allegations

The 4AC provides a reason (also present in the FAC) to believe that the REFCOs might specifically intend for their customers to use Refined Coal in conjunction with Activated Carbon. Specifically, the 4AC alleges that: (i) power plants using Refined Coal must also use activated carbon to reduce mercury emissions to a level that will comply with "MATS" (the EPA's Mercury and Air Toxics Standards) and other environmental regulations in order to operate lawfully; and (ii) the REFCOs are aware of such environmental regulations affecting power plants and "the economic incentives of coal-fired power plants with activated carbon injection systems." D.I. 406 ¶ 88. But the 4AC does not identify any REFCO acts communicating that intent to anyone, let alone to the power plants. Nor does the 4AC allege any REFCO acts that would cause or bring about the power plants' alleged infringement. At best, these allegations suggest that the REFCOs hoped (i.e., specifically intended) that the power plants would comply with applicable regulations so that they can stay in business and continue purchasing Refined Coal from them. *See* D.I. 404.

***Direct Infringement Claims:*** The joint infringement claims in the FAC and SAC were dismissed with prejudice in R&R 2. The FAC and SAC also asserted that the REFCO defendants directly infringed the patents-in-suit by conducting post-emission control testing. Those allegations were withdrawn from the 4AC, and the 4AC contains no direct infringement claims.

Finally, as in prior complaints, the 4AC pleads that infringement is willful.

### B. Internal Revenue Code Section 45

For the convenience of the Court, this section—summarizing certain legal principles regarding Section 45 tax credits—is reproduced from Defendants' brief in support of its motion to dismiss the First Amended Complaint:

---

simply repeat the insufficient allegations set forth in the original complaint. *Compare* D.I 405 ¶ 211(a)-(l) *with* OC D.I. 1 ¶ 158(a)-(l).

- Section 45 Tax Credits are available to operators of certain facilities that make "Refined Coal" and sell such Refined Coal to an unrelated person, with the expectation that the Refined Coal would then be burned to produce steam. 26 U.S.C. § 45(c)(7)(A)(i)(). Section 45 Tax Credits are not available for the purchase of Refined Coal, or for the burning of Refined Coal.

- "Refined Coal" is coal that has been modified so as to produce a "qualified emission reduction," defined as 20 percent lower emissions of nitrogen oxides, ***and*** 40 percent lower emissions of ***either*** sulfur oxides ***or*** mercury when combusted "as compared to the emissions released when burning the [unrefined] feedstock coal." 26 U.S.C. § 45(c)(7)(B).

- Neither the use of Refined Coal, nor eligibility for Section 45 Tax Credits, requires the use of activated carbon. *See, e.g.*, *Nalco Co. v. Chem-Mod, LLC*, No. 14-cv-2510, 2015 WL 6122811, at *2 (N.D. Ill. Oct. 15, 2015) ("[d]efendants are not required to . . . practice any . . . specific process in order to qualify for Section 45 tax credits.").

## III. Procedural History: Motions Directed to the Pleadings

The OC alleged that certain power plant defendants directly infringed the method claims of the patents-in-suit by performing two steps: the "Bromine Step," when they burned bromine-treated "Refined Coal," and the "Activated Carbon Step," when they injected AC into the combustion gases. The OC further alleged that REFCO Defendants induced infringement of the asserted method claims by selling the Refined Coal that the power plants combusted.

On June 18, 2020, this Court issued a R&R 1 (D.I.110) recommending, *inter alia*, that all inducement claims against the REFCOs be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), but that Plaintiffs be given leave to file an amended complaint. The Court ruled that in specifying twelve putative "acts" relating only to the provision of bromine-treated refined coal to power plants, OC ¶ 158(a)-(l), the OC failed to plausibly allege that any REFCO had the specific intent necessary to induce the Activated Carbon Step. *See* D.I. 110 at 14 ("Plaintiffs' induced infringement claims . . . must be dismissed because: (1) the Complaint only ties them to performance of the Bromine Step and so (2) it fails to plausibly allege that these Defendants knowingly induced anyone to practice the Activated Carbon Step, or possessed specific intent to encourage infringement in this way.").

Because the Court found the OC's inducement claims deficient for failure to plead "specific intent," *id.*, the Court did not need to reach the argument in the REFCO Defendants' brief that the OC failed to plead acts necessary for inducement. *See* D.I. 56 at 11 (arguing "There is no comparable allegation that the [REFCOs] . . . induce the use of activated carbon by any power plant."); *id.* at 11 n. 7 (arguing that no part of the OC "alleges that any [REFCO] participates in or encourages performance of the Activated Carbon Step as required by the patents' claims."). Plaintiffs did not object to the R&R, which Judge Andrews adopted on July 15. (D.I. 127.) Accordingly, the inducement claims against the REFCOs were dismissed pursuant to Rule 12(b)(6) for failure to state a claim.

After settling with the power plant defendants, Plaintiffs filed a FAC and SAC, newly pleading their "post-emission control testing" theory. The Court granted in part Defendants' motions to dismiss, D.I. 279 ("R&R-2"), (i) dismissing without prejudice all claims against the corporate parents (*id.* at 12, 41); (ii) dismissing with prejudice the joint infringement claims (*id.* at 41); and (iii) with respect to the inducement claims, concluding that the SAC's "post-emission control testing" theory met Plaintiffs' obligation to plausibly plead that the REFCOs sold Refined Coal with the specific intent that power plants would also use AC when they burned the Refined Coal (*id.* at 25).

The Court's decision on the inducement claims focused on the "post-emission control theory," citing the SAC's allegations that the REFCOs needed the power plants to use AC in the same manner that it was allegedly used in Section 45 qualification testing. *Id.* at 24-25. The Court concluded that these allegations sufficiently pled that the REFCOs had "specific intent" to induce the use of activated carbon and infringe the patents—i.e., to have the power plants continue to use the AC that was purportedly used to qualify the Refined Coal for tax credits—and notes that

Plaintiffs' counsel had relied on those allegations to meet the pleading element of specific intent. *Id*. at 25. The Court also cited with approval the acts pleaded in connection with the "post-emission control testing" theory: "the conduct accused of infringement in the SAC is [REFCOs'] provision of coal to plants that *do* use an activated carbon injection—plants as to which [REFCOs] *engage* in Section 45 certification testing via *use of* the post-emission control method" (D.I. 279 at 25 (emphasis added)); *see also id.* (summarizing allegations that when REFCOs supply refined coal, "they *perform* the infringing post-emission control testing and *further induce* infringement of [Plaintiffs'] patents." (emphases added)). The District Court issued an order adopting the portions of R&R2 relevant here. D.I. 319.

Upon concluding that their "post-emission control testing" allegations were wrong both factually and legally—because the REFCOs' qualification testing never used AC—Plaintiffs sought leave to file a 4AC that removed all "post-emission control testing" allegations. D.I. 376. The 4AC also stripped away the direct infringement claims that were predicated on such allegations. *Id.*

The REFCOs opposed Plaintiffs' motion for leave to file the 4AC, arguing that the removal of Plaintiffs' "post-emission control testing" allegations from the 4AC would restore the inducement allegations to the status the Court previously found inadequate in R&R 1, rendering the inducement claims in the proposed 4AC futile. D.I. 376 at 2. The Court held argument, during which REFCO counsel explained that although the 4AC's claim for inducement was improper for failure to plead specific intent, it also failed to plead requisite acts of inducement—reiterating an argument Defendants' made with respect to the motion to dismiss the Original Complaint (D.I. 56 at 11-12) and the FAC and SAC (D.I. 177 at 8 "The FAC does not . . . plead any acts that any such Defendant took to actively induce a power plant using Refined Coal to continue to operate

an activated carbon system."; *id.* at 9 ("Like the Complaint the FAC does not allege that Movants do anything that actively encourages or promotes, or inevitably leads to, the use of activated carbon in combination with refined coal"); *id.* at 12 ("The FAC does not allege that Movants induce the Activated Carbon Step, including by acts directed to the Bromine Step"). *See* Tr. at 41-42 (April 22, 2022) ("I think just in summing up, I do want to be clear that while the letter [brief]s appear to focus mostly on the intent side, and that is correct, that it also does relate to, and as was discussed amply in the argument in May of 2020 that there has to be active inducement of the conduct. And the acts that are alleged in this complaint . . . all have to do with bromine. They all have to do with the bromine step . . . those acts don't go to performance of all elements of the patented method, including, very particularly, the activated carbon step.").

The Court granted Plaintiffs' motion in part, granting Plaintiffs leave to file the inducement allegations in their proposed 4AC, notwithstanding their excision of the "post-emission control testing" allegations. D.I. 404. In its Oral Order, the Court held that ME2C had "plausibly allege[d] that Defendants *specifically intended* that the plants infringe (so that Defendants could continue to benefit from a financial relationship with those plants)." *Id.* (emphasis added). The Court stated

> But the 4AC does allege that were the power plants to which Defendants supply coal to stop infringing (i.e., to stop using activated carbon), this could hinder the plants' economic viability (which in turn would harm Defendants' economic interests). (D.I. 372-2 at paras. 84, 90-91; see also D.I. 279 at 25-26 n.18) These allegations are sufficient to plausibly allege that Defendants specifically intended that the plants infringe (so that Defendants could continue to benefit from a financial relationship with those plants). (D.I. 378 at 2); cf. *Galderma Lab'ys, L.P. v. Medinter US, LLC*, Civil Action No. 18-1892-CFC-CJB, 2020 WL 871507, at *4-5 (D. Del. Feb. 14, 2020).

The Court's Oral Order did not address Defendants' arguments that, notwithstanding what the REFCOs plausibly "intended," the 4AC does not plead acts necessary to state a claim for

inducement—*i.e.*, that other than the dropped "post-emission control testing" allegations, there are no allegations that any REFCO (or, indeed, any Defendant) engaged in acts communicating an intent to cause infringement. Further, without the post-emission control testing allegations, the 4AC is devoid of any acts that are alleged to cause, encourage, or lead to a power plant's use of activated carbon, and thus infringement of the asserted method claims.

## LEGAL STANDARD

The legal standards governing Rule 12(b)(6) motions and claims for induced infringement are set forth in Defendants' opening brief in support of their motion to dismiss the Complaint (D.I. 56 at 9-10), and in R&R 1 (D.I. 110 at 5), and are adopted herein.

## ARGUMENT

The inducement claims fail as a matter of law because the 4AC does not allege that any Defendant performed any act communicating a specific intent for a power plant to perform all steps of a patent's method claims, including to use activated carbon, or that any Defendant caused a power plant to directly infringe. Absent such acts, a defendant cannot be liable for inducement under 35 U.S.C. § 271(b).

The Court has not ruled on this issue, except insofar as it ruled that the Original Complaint—whose allegations of acts are similar to those alleged in the 4AC—does not adequately plead acts required for a claim of inducement.

### I. Inducement Requires Acts That Communicate a Specific Intent and Cause Infringement

Under 35 U.S.C. § 271(b), "Whoever actively induces infringement of a patent shall be liable as an infringer." In *Global-Tech Appliances, Inc. v. SEB S.A*, the Supreme Court held that the word "actively" means that inducement requires more than just a requisite mental state; rather, to be liable for induced infringement, a defendant must perform *acts* that communicate the specific

intent to cause infringement and that bring about or cause such infringement. 563 U.S. 754, 760 (2011) ("The addition of the adverb 'actively' suggests that the inducement must involve the taking of affirmative steps to bring about the desired result."). Applying *Global-Tech*, the Federal Circuit has made clear that the inducer must act to encourage a third party to infringe. *See HZNP Medicines LLC v. Actavis Laboratories UT, Inc.*, 940 F.3d 680, 701 (Fed. Cir. 2019) ("To prove inducement, a plaintiff must present evidence of active steps taken to encourage direct infringement; mere knowledge about a product's characteristics or that it may be put to infringing uses is not enough.").

Several Federal Circuit cases have considered what activities meet this "active step" requirement. In *Power Integrations*, the Federal Circuit held that the inducer must "successfully communicate with and induce a third-party direct infringer"—that is, the inducer must express its intent in some way, and that expression must bring about infringement. *See Power Integrations v. Fairchild Semiconductor Intl., Inc.*, 843 F.3d 1315, 1331 (Fed. Cir. 2016). Even prior to *Global-Tech*, the Federal Circuit recognized that active steps are an essential element of an inducement claim; such acts must permit a plausible inference of specific intent to cause direct infringement. In *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1329 n.2 (Fed. Cir. 2009), the acts at issue were the instructions that the Defendants provided for their blender. The court held that the relevant question was whether the Defendants' "instructions teach an infringing use . . . such that we are willing to infer from those instructions an affirmative intent to infringe the patent."

As this Court has recognized, the inducer's acts must also "cause[]" direct infringement. D.I. 110 at 14 ("[A]n inducement claim requires a showing that *when the induced infringer did the act that caused the direct infringement to occur*, the induced infringer actually

knew that that direct infringement was happening . . . .") (emphasis added); *see also Global-Tech*, 560 U.S. at 760 (requiring "affirmative steps to *bring about* the desired result" (emphasis added)); *HZNP*, 940 F.3d at 701 (requiring "active steps taken to *encourage* direct infringement" (emphasis added)); *Power Integrations*, 843 F.3d at 1331 ("To prevail under a theory of indirect infringement, [plaintiff] must first prove that the defendants' actions led to direct infringement of the [patent-in-suit]." (alterations in original) (quoting *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1274 (Fed. Cir. 2004))).

## II. The 4AC Pleads No Acts That Communicate a Specific Intent to Cause Infringement, or That Cause Infringement.

The 4AC's inducement claims fail because Plaintiffs do not allege any acts by any REFCO that are specifically intended to cause—or that cause—performance of the Activated Carbon Step, let alone use of AC in conjunction with Refined Coal in an infringing manner.

On the one hand, the 4AC pleads acts directed to the use of Refined Coal itself. But these affirmative acts, pleaded in 4AC ¶ 216(a)–(l), are directed only to causing the purchase and combustion of Refined Coal—and do not even mention Activated Carbon. These allegations are unchanged from the OC, and the Court's first R&R explained why they were insufficient to plead inducement. Indeed, the Court described in detail why the original allegations—that the REFCOs "tailored" the amount of bromine in Refined Coal to accommodate AC usage by plants—were inadequate to state a claim for inducement of patent claims requiring the use of AC. D.I. 110 at 14-15.

The 4AC does not add any allegations that any REFCO encouraged AC usage. The Court's Oral Order addressed allegations that REFCOs wanted power plants to use AC, in order to comply with environmental regulations, stay in operation, and continue purchasing Refined Coal. *See* D.I. 404 ("These allegations are sufficient to plausibly allege that Defendants specifically intended that

the plants infringe (so that Defendants could continue to benefit from a financial relationship with those plants).”). But the Court only addressed whether such allegations satisfied the “specific intent” requirement of an inducement claim; the Court was silent on whether the 4AC, in these allegations or elsewhere, adequately pleads inducing acts, as required under *Global-Tech.*[5]

Regardless of what the REFCOs may be alleged to intend, or desire, or hope for, Section 271(b) requires more than specific intent that someone else infringe. It requires acts expressing that intent to the direct infringer, and causing the direct infringement. *See Power Integrations,*, 843 F.3d at 1330-31(“This instruction left the jury with the incorrect understanding that a party may be liable for induced infringement even where it does not successfully communicate with and induce a third-party direct infringer.”); *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1274 (Fed. Cir. 2004) (“To prevail under a theory of indirect infringement, [plaintiff] must first prove that the defendants’ actions led to direct infringement of the [patent-in-suit].”).

The 4AC fails the “act” requirement on both counts: it neither alleges acts expressing the REFCOs’ intent to cause the power plants to perform the claimed methods, nor explains how the acts that are alleged (all related to Refined Coal) could possibly cause the purportedly infringing use of Refined Coal in conjunction with Activated Carbon. The acts alleged in, and carried forward from, the Original Complaint are directed only to Refined Coal use. For example, the pleadings allege that Defendants provide “the RC Defendants with operational support, regulatory, and

[5] As they argued in their opposition to Plaintiffs’ motion for leave to file the 4AC, Defendants disagree that such allegations sufficiently allege the specific intent requirement for an inducement claim for two reasons. *See* D.I. 376. First, the allegations suggest that any seller of a product has a specific intent that the buyer comply with every applicable law or regulation so that it can remain in business and continue to buy the seller’s product. That may describe a hope, but it does not constitute “specific intent.” Second, a specific intent that a buyer comply with applicable regulations in order to remain in business does not constitute the necessary specific intent for inducement—i.e., that the buyer continue infringing the asserted patent claims.

technical support necessary to use Chem-Mod chemicals at the Accused RC Facilities and Accused Coal Plants." D.I. 406 ¶ 216(f). The "Chem-Mod chemicals" are alleged to be bromine and other non-AC substances. *Id*. ¶ 69. There is no comparable allegation that any Defendant has done anything to provide any entity with "operational support, regulatory, and technical support necessary to use" activated carbon.

Indeed, after taking multiple shots at fixing the glaring deficiencies in their Original Complaint, the Plaintiffs filed an 4AC devoid of any allegation that any REFCO defendant performed any act encouraging, directing, or causing a power plant to perform the Activated Carbon Step. The furthest that the 4AC goes is alleging that Defendants knew about their customers' activated carbon use and, based on that knowledge, "necessarily" intended that they continue using activated carbon in order to stay in business and remain able to purchase refined coal relate to knowledge and intent. *See* 4AC ¶¶ 88-89. But that alleges (at most) a mental state—not an act that communicates such intent, or that causes or encourages the use of activated carbon.

The Supreme Court has made clear that specific intent without an act directed to performance of all steps of a claimed method is not sufficient for an inducement claim. Defendants here are not accused of doing anything to bring about the result they allegedly specifically intend (i.e., the infringing use of refined coal and activated carbon together). In this regard, the 4AC stands in marked contrast with the pleading at issue in *Galderma Laboratories, L.P. v. Medinter US, LLC*, CV 18-1892-CFC-CJB, 2020 WL 871507, at *5 (D. Del. Feb. 14, 2020), which the Court cites in the Oral Order. In that case, specific intent was inferred from the alleged inducer's financial incentives to encourage infringement. *Id.* The pleading, however, also contained a slew of "act" allegations that the accused inducer was actively encouraging production of the complete infringing product. *Id.* Here, at best, there are bald allegations that the REFCOs would profit from

the power plants' use of Activated Carbon—but there are no allegations that the REFCOs communicated to the power plants that the plants should use Activated Carbon, or that they caused the plants to do so.

**CONCLUSION**

Plaintiffs have tried over and over again to link the REFCOs' alleged acts—selling Refined Coal to power plants—to the power plants' alleged use of Refined Coal in combination with Activated Carbon. But they have never been able to satisfy the statutory requirement of pleading allegations plausibly directed to all of the elements of an induced infringement claim. And this is not surprising: in selling Refined Coal to power plants, REFCOs do not communicate an intent that the plants use activated carbon, or cause, encourage, or otherwise direct them to use activated carbon, let alone activated carbon in concert with Refined Coal.

For the foregoing reasons, the Court should grant the Defendants' motion and dismiss the inducement claims in the 4AC with prejudice.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Anthony D. Raucci*

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Defendants*
*AJG Iowa Refined Coal LLC*
*Arbor Fuels Company, LLC*
*Belle River Fuels Company, LLC*
*Canadys Refined Coal, LLC*
*Chouteau Fuels Company, LLC*
*Coronado Refined Coal, LLC*
*DTE Energy Resources, LLC*
*Erie Fuels Company, LLC*
*George Neal North Refined Coal, LLC*
*George Neal Refined Coal, LLC*
*Hastings Refined Coal, LLC*
*Huron Fuels Company, LLC*
*Jasper Fuels Company, LLC*
*Jefferies Refined Coal, LLC*
*Joppa Refined Coal LLC*
*Louisa Refined Coal, LLC*
*Newton RC, LLC*
*Portage Fuels Company, LLC*
*Superior Fuels Company 1, LLC*
*Walter Scott Refined Coal LLC*
*Williams Refined Coal, LLC*

OF COUNSEL:

Richard W. Mark
Joseph Evall
Paul J. Kremer
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
(212) 351-4000

David Glandorf
GIBSON, DUNN & CRUTCHER LLP
1801 California Street
Suite 4200
Denver, CO 80202-2642
(303) 298-5700

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

*/s/ Jessica R. Kunz*

Paul J. Lockwood (#3369)
Nicole A. DiSalvo (#4662)
Jessica R. Kunz (#5698)
One Rodney Square
P.O. Box 636
Wilmington, DE 19899-0636
(302) 651-3000
paul.lockwood@skadden.com
nicole.disalvo@skadden.com
jessica.kunz@skadden.com

*Attorneys for Defendants*
*Alistar Enterprises, LLC,*
*CERT Operations RCB LLC,*
*CERT Operations II LLC,*
*CERT Operations IV LLC,*
*CERT Operations V LLC,*
*Rutledge Products, LLC,*
*Senescence Energy Products, LLC,*
*Spring Hill Resources LLC,*
*Buffington Partners LLC,*
*Bascobert (A) Holdings LLC,*
*Larkwood Energy LLC,*
*Cottbus Associates LLC, and*
*Marquis Industrial Company, LLC*

OF COUNSEL:

Douglas R. Nemec, Esquire
Leslie A. Demers, Esquire
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001-8602
(212) 735-3000

June 1, 2022

**CERTIFICATE OF SERVICE**

I hereby certify that on June 1, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on June 1, 2022, upon the following in the manner indicated:

James M. Lennon, Esquire
DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE 19806
*Attorneys for Plaintiffs*

*VIA ELECTRONIC MAIL*

Bradley W. Caldwell, Esquire
Jason D. Cassady, Esquire
John Austin Curry, Esquire
Justin T. Nemunaitis, Esquire
CALDWELL CASSADY CURRY PC
2010 Cedar Springs Road, Suite 1000
Dallas, TX 75201
*Attorneys for Plaintiffs*

*VIA ELECTRONIC MAIL*

*/s/ Anthony D. Raucci*

Anthony D. Raucci (#5948)