# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MIDWEST ENERGY EMISSIONS CORP. and MES INC., | ) ) ) |
| Plaintiffs, | ) ) ) C.A. No. 19-1334 (CJB) |
| v. | ) ) JURY TRIAL DEMANDED |
| ARTHUR J. GALLAGHER & CO., *et al.*, | ) ) |
| Defendants. | ) |

**PLAINTIFFS MIDWEST ENERGY EMISSIONS CORP. AND MES INC.'S
RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................................... ii
I.   INTRODUCTION ............................................................................................................ 1
II.   NATURE AND STAGE OF THE PROCEEDINGS ...................................................... 1
III.   SUMMARY OF THE ARGUMENT ............................................................................... 2
IV.   STATEMENT OF FACTS ............................................................................................... 2
V.   LEGAL STANDARD ....................................................................................................... 2
VI.   ARGUMENT .................................................................................................................... 3
     A.   Defendants Waived Any Right to File Another 12(b) Motion to Dismiss ME2C's Induced Infringement Claims. ........................................................................ 3
     B.   ME2C Has Adequately Pleaded Induced Infringement. ................................................ 4
     C.   Defendants' Motion Misstates the Law of Induced Infringement. ................................. 7
VII.   CONCLUSION ................................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Cases**

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009) ................................................................................................................ 3

*Bell Atl. Corp. v. Twombly*
   550 U.S. 544 (2007) ................................................................................................................ 3

*Erickson v. Pardus*
   551 U.S. 89 (2007) .................................................................................................................. 3

*Fromberg, Inc. v. Thornhill*
   315 F.2d 407, 137 USPQ 84 (5th Cir.1963) ........................................................................... 4

*Global-Tech Appliances, Inc. v. SEB S.A.*
   563 U.S. 754, 131 S.Ct. 2060, 179 L.Ed.2d 1167 (2011) ................................................ passim

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*
   681 F.3d 1323 (Fed. Cir. 2012) ............................................................................................ 4, 7

*Microsoft Corp. v. DataTern, Inc.*
   755 F.3d 899 (Fed. Cir. 2014) ................................................................................................. 4

*Nalco Co. v. Chem-Mod, LLC*
   883 F.3d 1337 (Fed. Cir. 2018) ............................................................................................... 3

*Power Integrations v. Fairchild Semiconductor Intl., Inc.*
   843 F.3d 1315 (Fed. Cir. 2016) ................................................................................. 7, 8, 9, 10

*Spruill v. Gillis*
   372 F.3d 218 (3d Cir. 2004) .................................................................................................... 2

*Tegal Corp. v. Tokyo Electron Co.*
   248 F.3d 1376 (Fed. Cir. 2001) ............................................................................................... 4

**Statutes**

35 U.S.C. § 271 ............................................................................................................................. 8

35 U.S.C. § 271(b) .................................................................................................................... 7, 8

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................................................ 2

**I.      INTRODUCTION**

On multiple occasions, the Court has found that ME2C's complaint sufficiently alleges claims for induced infringement. Nonetheless, Defendants are again seeking to dismiss these claims. This latest attempt is similarly misguided, and ME2C respectfully requests that the present motion be denied.

**II.     NATURE AND STAGE OF THE PROCEEDINGS**

On June 18, 2020, the Court issued a Report & Recommendation (the "R&R 1") granting various Defendants' motions to dismiss and allowing ME2C to amend its complaint. (D.I. 127.) ME2C later filed a First Amended Complaint ("1AC") and a Second Amended Complaint ("2AC"), which provided additional factual allegations related to its induced infringement claims, among other things.

Defendants again moved to dismiss ME2C's induced infringement claims, but the Court recommended denial of that portion of Defendants' motions (the "R&R 2"). (D.I. 279.) Defendants objected to portions of the R&R 2, but not to the court's finding that ME2C's amended complaint stated a claim for post-filing induced infringement. (D.I. 286.) Judge Andrews further adopted Court's recommendations regarding induced infringement. (D.I. 319.) Defendants did not seek re-argument of this decision.

On March 3, 2022, ME2C requested leave to file a Fourth Amended Complaint ("4AC"). Defendants opposed the motion, in part, because it contended that ME2C's induced infringement claims were futile. (D.I. 376.) The Court found that the 4AC plausibly stated a claim for induced infringement and thus granted-in-part ME2C's motion. (D.I. 404 ("These allegations are sufficient to plausibly allege that Defendants specifically intended that the plants infringe (so

1

that Defendants could continue to benefit from a financial relationship with those plants).").) Defendants did not seek re-argument of this decision.

Defendants' present motion again seeks dismissal of ME2C's induced infringement claims. According to Defendants, its motion is based on arguments previously presented to the Court related to ME2C's original complaint, the 1AC, 2AC, and 4AC. (Mot. at 7–8.)

### III.  SUMMARY OF THE ARGUMENT

Defendants have already sought to escape liability for induced infringement and lost. Because they never sought re-argument of this issue, the present motion is untimely and fails to satisfy the Local Rule requirements for re-argument.

Regardless, ME2C has adequately alleged induced infringement. The 4AC alleges that Defendants have committed affirmative acts that caused infringement, with the requisite knowledge and intent that those acts would cause infringement. Nothing more is required at the pleading stage. Moreover, Defendants are legally incorrect that a patentee must allege a specific "expression" of culpable intent. Thus, the present motion should be denied.

### IV.  STATEMENT OF FACTS

ME2C alleges that Defendants indirectly infringe by inducing and contributing to infringement at coal-fired power plants. (D.I. 406 at ¶ 56-240.) More detailed descriptions of the patented technology were provided in the parties' prior briefing and are not repeated here.

### V.  LEGAL STANDARD

When evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court is required to accept as true all material allegations in the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 570). "The plausibility standard 'does not impose a probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence' to support the plaintiff's allegations." *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018) (quoting *Twombly*, 550 U.S. at 556).

VI.     ARGUMENT

     **A. Defendants Waived Any Right to File Another 12(b) Motion to Dismiss ME2C's Induced Infringement Claims**

According to Defendants, they previously moved to dismiss, or to find futile, ME2C's induced infringement claims in the original complaint, 1AC, 2AC, and 4AC on two distinct grounds: (1) failure to allege intent and (2) failure to allege "acts" expressing intent. (Mot. at 7–8.) Defendants further contend that the Court addressed and rejected their (1) intent assertions but not their (2) acts expressing intent assertions. (Mot. at 8.) As explained below, Defendants' criticism of the Court's rulings is meritless as it is based on a misreading of applicable law. Regardless, at best, the present motion is an untimely motion for re-argument. Even if there were some merit to Defendants' position, they should have presented it to the Court in accordance with the Local Rule requirements. With respect to the 1AC and 2AC, the defendants could have presented proper objections to the R&R 2 denying dismissal (D.I. 279) or sought re-argument of Judge Andrews' order adopting the R&R 2 (319). With respect to the 4AC, Defendants could have sought re-argument of the Court's order allowing the filing of the 4AC (D.I. 404). They chose not to. Now, they do not even attempt to demonstrate good cause to

excuse their untimeliness, or to meet the requirements under the Local Rules for justifying reargument.  Accordingly, the present motion should be denied.

### B. ME2C Has Adequately Pleaded Induced Infringement.

To prove induced infringement, the patentee must "show that the accused inducer took an affirmative act to encourage infringement with the knowledge that the induced acts constitute patent infringement."  *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 904 (Fed. Cir. 2014) (citing *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765–66, 131 S.Ct. 2060, 179 L.Ed.2d 1167 (2011)).  An extensive scope of affirmative acts may suffice to create liability for inducement, in that "the term is as broad as the range of actions by which one in fact causes, or urges, or encourages, or aids another to infringe a patent."  *Tegal Corp. v. Tokyo Electron Co.*, 248 F.3d 1376, 1379 (Fed. Cir. 2001) (quoting *Fromberg, Inc. v. Thornhill*, 315 F.2d 407, 411, 137 USPQ 84, 87 (5th Cir.1963)).

A party may be liable for inducing infringement even if it does not specifically encourage a direct infringer to perform every step of a patented method.  *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1342 (Fed. Cir. 2012).  For example, in *In re Bill of Lading*, the district court dismissed the patentee's inducement claim because it failed to allege that the accused infringer specifically encouraged its customers to perform "an essential step of the patented method."  *Id.*  The Federal Circuit reversed.  It explained that a complaint may not be dismissed merely because it "fails to allege that the defendant specifically instructs its customers to perform each of the steps of the patented method."  *Id.* at 1345.

In this case, Defendants admit that the 4AC alleges "affirmative acts" that "caus[e] the purchase and combustion of Refined Coal."  (Mot. at 11.)  They also admit that the 4AC alleges that Defendants intend for their customers to combust the refined coal in an infringing manner, i.e., in conjunction with activated carbon:

4

> The 4AC provides a reason (also present in the FAC) to believe that ***the REFCOs might specifically intend for their customers to use Refined Coal in conjunction with Activated Carbon.*** Specifically, the 4AC alleges that: (i) power plants using Refined Coal must also use activated carbon to reduce mercury emissions to a level that will comply with "MATS" (the EPA's Mercury and Air Toxics Standards) and other environmental regulations in order to operate lawfully; and (ii) the REFCOs are aware of such environmental regulations affecting power plants and "the economic incentives of coal-fired power plants with activated carbon injection systems."

(Mot. at 4 (emphasis added).) In other words, Defendants admit that the 4AC alleges that Defendants engage in the affirmative act of supplying refined coal and that this act causes infringement. The 4AC also alleges that Defendants do so with the intent to cause infringement. Nothing more is required to allege induced infringement.

Moreover, the 4AC alleges that the Defendants specifically marketed refined coal to the power plants at issue by touting the benefits of combining refined coal with activated carbon systems. (D.I. 406 at ¶¶ 82, 84–86.) It alleges that Defendants have advertised the benefits of refined coal and specifically targeted marketing efforts towards plants that use activated carbon injection systems. (*Id.* at ¶ 85–86.) In particular, it alleges that Defendants advertise that refined coal can result in reduced carbon costs and the ability to sell fly ash instead of paying for disposal. (*Id.* at ¶ 85 ("In addition, the use of high quantities of activated carbon injection can discolor the fly ash produced by a coal-fired power plant. This may prevent the plant from selling the fly ash to cement producers, and instead require it to take on the cost of disposing of the fly ash. Providing bromine and/or bromide additives onto the coal combusted at a coal-fired power plant can reduce, the quantity of activated carbon required for mercury capture and thus preserve the plant's ability to sell fly ash.").)

The 4AC also alleges that Defendants supply refined coal to power plants using activated carbon at artificially reduced prices to incentivize their continued infringement. (*Id.* at ¶ 83

5

("AJG CFO Douglas Howell has explained, 'the reason why [coal-fired power plants] participate in these [Section 45 Tax Credit] projects is that they've got a financial incentive to participate in it, but they also receive the improved environmental results basically for free and they get a better ash and favorable operating results.'").)

The 4AC also alleges that, once a refined coal facility is installed at a plant, the plant operator and refined coal operator must coordinate regarding the amount of bromine and activated carbon being used. This may be for economic and technical reasons. For example, the refined coal contract between Defendant Belle River Fuels LLC and the Belle River Power Plant requires the coal plant operator to report the amount of activated carbon in use to Belle River Fuels. (D.I. 130-6 at sec. 8.2(e), exhibit C.) ME2C alleges that this contract is representative of the contracts entered into by other Moving Refined Coal Defendants. (*Id.* at ¶ 84.) ME2C also alleges that the Moving Refined Coal Defendants coordinate with coal plant operators to ensure that the amount of bromine used is appropriate for the amount of mercury in the current batch of coal and the current amount of activated carbon being added. (*Id.* at ¶ 91–93.)

Given this relationship between Defendants and the relevant power plants, the 4AC alleges that Defendants created financial incentives and contractual obligations to prevent the power plants at issue from ceasing infringement. (*Id.* at ¶ 87 ("Were a plant to stop operating its activated carbon injection system, it could face fines that would destroy the economic incentives for dealing with a refined coal provider, or be shut down."); *Id.* at ¶ 96 (alleging that Defendants provide the refined coal such that it "cannot reasonably be used for purposes other than to be combusted at the plant where sorbent comprising activated carbon will later be injected").) Taken as true, these additional allegations specify further affirmative acts that induce infringement.

### C. Defendants' Motion Misstates the Law of Induced Infringement

According to Defendants, 35 U.S.C. § 271(b) requires that "the inducer must express its intent in some way, and that expression must bring about infringement." (Mot. at 10.) Defendants assert that the 4AC fails to meet this standard because it does not allege that they "expressed an intent" for the power plant customers to use activated carbon. This is incorrect both legally and factually.

As an initial matter, ME2C agrees that § 271(b) requires some affirmative act that causes infringement. As explained above, the 4AC meets that requirement by alleging that Defendants engage in the affirmative acts of: supplying refined coal that infringes when combusted at power plants using activated carbon; touting the benefits of refined coal use with activated carbon; supplying refined coal to known users of activated carbon; supplying that refined coal at an artificially reduced price; and requiring power plants to combust the refined coal. Because this conduct causes infringement, and because Defendants engaged in this conduct knowing that it would cause infringement, the 4AC adequately alleges induced infringement. To the extent Defendants demand allegations of affirmative acts tied to each separate step of the patented methods, the Federal Circuit has already explained that § 271(b) contains no such requirement. *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1345 (explaining that it is error to dismiss a claim of induced infringement merely because the complaint "fails to allege that the defendant specifically instructs its customers to perform each of the steps of the patented method").

Moreover, Defendants' "expression of intent" standard for proving induced infringement is simply incorrect. They rely on *Global-Tech* and *Power Integrations* for support, but neither case supports Defendants' position.

7

In *Global-Tech*, the Supreme Court was called upon to resolve an ambiguity in § 271(b), i.e., "whether a party who 'actively induces infringement of a patent' under 35 U.S.C. § 271(b) must know that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 757 (2011). The Court concluded that § 271(b) does require knowledge that the induced acts constitute infringement. It did not go further to create a requirement for "expression of intent."[1] Defendants do not dispute that the 4AC satisfies the *Global-Tech* standard. (Mot. at 4 (explaining that the "4AC provides a reason (also present in the FAC) to believe that the REFCOs might specifically intend for their customers to use Refined Coal in conjunction with Activated Carbon"); Mot. at 2 (noting that infringement depends on combusting refined coal with activated carbon).)

Defendants' reliance on *Power Integrations* is similarly misplaced. This case simply does not hold that an induced infringer must "express" its intent to infringe to its customers. Indeed, the Court found that intent need not be expressed at all; it may be inferred through

---

[1] The Supreme Court explained this question as follows:

> When a person actively induces another to take some action, the inducer obviously knows the action that he or she wishes to bring about. If a used car salesman induces a customer to buy a car, the salesman knows that the desired result is the purchase of the car. But what if it is said that the salesman induced the customer to buy a damaged car? Does this mean merely that the salesman induced the customer to purchase a car that happened to be damaged, a fact of which the salesman may have been unaware? Or does this mean that the salesman knew that the car was damaged? The statement that the salesman induced the customer to buy a damaged car is ambiguous. So is § 271(b).

*Id.* 760. In other words, the Supreme Court had to decide what level subjective knowledge and intent is required to prove § 271(b) liability. Thus, Defendants' statement of the law misses the point of *Global-Tech*. Under Defendants' interpretation, a salesman could be found liable for selling a damaged car only if he "expressed an intent" for the customer to purchase a damaged car by telling the customer the car was damaged. The Supreme Court never imposed such a self-defeating requirement on § 271.

circumstantial evidence. *Power Integrations v. Fairchild Semiconductor Intl., Inc.*, 843 F.3d 1315, 1331 (Fed. Cir. 2016). At most, this case merely reiterates that induced infringement requires some affirmative act of inducement. *Id.*

In *Power Integrations*, the defendant sold infringing products outside the United States. The patentee accused the defendant of inducing infringement by causing US companies to import the products into the US. At trial, the defendant argued that it could not be liable for induced infringement because it "sells its controller chips overseas into a worldwide distribution system with no knowledge of where its chips will ultimately end up." *Id.* at 1333. The patentee countered that the defendant advertised the products as compliant with certain US standards, although it failed to present evidence that any of the advertisements were actually viewed by customers in the US or that they caused any specific US companies to import the infringing products into the US. *Id.* at 1335. The jury returned a verdict of induced infringement after being instructed that the "[direct] infringement need not have been actually caused by the [alleged inducer]'s actions. All that is required is that the party took steps to encourage or assist that infringement, regardless of whether that encouragement succeeded, or was even received." *Id.* at 1331-32. On appeal, the defendant challenged the sufficiency of the evidence and the jury instruction. The Federal Circuit agreed that the district court's instruction was erroneous because § 271(b) does require some affirmative act that causes infringement to occur. *Id.* at 1332. Nonetheless, it remanded for new trial after explaining that the patentee's evidence could sustain a verdict of induced infringement because it circumstantially demonstrated that the defendant intended for its products to be imported into the US. *Id.* at 1335.

Neither of the above cited cases support Defendants' statement of the law. Moreover, neither case is even comparable to the present case. In both *Global-Tech* and *Power*

9

*Integrations*, the accused infringers sold products that had both infringing and non-infringing uses (e.g., when used outside the US). Thus, the parties could dispute whether the defendants committed an affirmative act that turned the innocent act of selling products outside the US, into an infringing act—importing the products into the US. In this case, however, Defendants do not sell products on an open market where they could have substantial non-infringing uses. Rather, each Defendant sells a specific refined coal to a specific power plant where the only reasonable use for the refined coal is to combust the coal in a manner that causes infringement. Thus, even if *Global-Tech* or *Power Integrations* set forth some heightened standard of proof for induced infringement—which they do not—that would not justify a finding of noninfringement in this case, let alone dismissal of ME2C's pleading.

## VII. CONCLUSION

For the reasons stated above, ME2C respectfully requests that the Court deny Defendants' motion.

Dated: June 15, 2022                                  Respectfully submitted,

OF COUNSEL:                                           **DEVLIN LAW FIRM LLC**

Bradley W. Caldwell                                   */s/ James M. Lennon*
Texas Bar No. 24040630                                James M. Lennon (No. 4570)
Jason D. Cassady                                      1526 Gilpin Avenue
Texas Bar No. 24045625                                Wilmington, DE 19806
John Austin Curry                                     (302) 449-9010
Texas Bar No. 24059636                                jlennon@devlinlawfirm.com
Justin T. Nemunaitis
Texas Bar No. 24065815                                *Attorneys for Plaintiffs Midwest Energy*
Adrienne R. Dellinger                                 *Emissions Corp. and MES Inc.*
Texas Bar No. 24116275
**CALDWELL CASSADY CURRY PC**
2121 N. Pearl Street, Suite 1200
Dallas, Texas 75201
Phone: (214) 888-4848
Fax: (214) 888-4849

bcaldwell@caldwellcc.com
jcassady@caldwellcc.com
acurry@caldwellcc.com
jnemunaitis@caldwellcc.com
adellinger@caldwellcc.com