IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MIDWEST ENERGY EMISSIONS CORP. and MES INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 19-1334 (CJB) |
| ARTHUR J. GALLAGHER & CO., et al., | ) ) ) | |
| Defendants. | ) | |

**REPLY BRIEF IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS FOURTH AMENDED COMPLAINT**


## **TABLE OF CONTENTS**

**Pages**

I. Defendants Have Not Waived Their Right to Challenge the Sufficiency of the 4AC. ................................................................................................................. 1

II. A Claim for Induced Infringement Requires Acts That Induce Practice of the Claimed Method. ............................................................................................... 2

III. The 4AC Does Not Sufficiently Plead Acts of Inducement. ............................. 7

## **TABLE OF AUTHORITIES**

**Pages**

**Cases**

*Alpek Polyester, S.A. de C.V. v. Polymetrix AG*,
  2021 WL 5974163 (Fed. Cir. Dec. 16, 2021) ...................................................................2

*Fromberg, Inc. v. Thornhill*,
  315 F.2d 407 (5th Cir. 1963) ........................................................................................4, 5

*Glob.-Tech Appliances, Inc. v. SEB S.A.*,
  563 U.S. 754 (2011)..................................................................................................2, 3, 7

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
  681 F.3d 1323 (Fed. Cir. 2012)................................................................................5, 6, 9

*Microsoft Corp. v. DataTern, Inc.*,
  755 F.3d 899 (Fed. Cir. 2014).........................................................................................4

*Power Integrations, Inc. v. Fairchild Semiconductor Intl., Inc.*,
  843 F.3d 1315 (Fed. Cir. 2016).......................................................................................2

*Tegal Corp. v. Tokyo Electron Co.*,
  248 F.3d 1376 (Fed. Cir. 2001), D.I. 433 ...................................................................6, 8

*Vita-Mix Corp. v. Basic Holding, Inc.*,
  581 F.3d 1317 (Fed. Cir. 2009)...................................................................................2, 7

**Rules and Statutes**

26 U.S.C. § 45.....................................................................................................................5

Fed. R. Civ. P. 12(g)(2)......................................................................................................1

**I.      Defendants Have Not Waived Their Right to Challenge the Sufficiency of the 4AC.**

Plaintiffs cite no authority for their position that Defendants have "waived" their right to move to dismiss the 4AC. *See* D.I. 433 (Opp. Br.) at 3–6. Nor can they; for multiple reasons, Defendants have not waived anything.

First, there has been no prior Rule 12 motion directed to the 4AC, and the only limitation on Rule 12 motions is that a party may not file successive motions to respond to the same complaint (and even that rule has exceptions). *See* Fed. R. Civ. P. 12(g)(2).

Second, to the extent that similar arguments could have been made in Rule 12 motions that responded to previous complaints, the subset of 4AC Defendants who were parties to those earlier complaints made them. *See* D.I. 419 (Op. Br.) at 5–9 (summarizing prior motions to dismiss). Upon reviewing the prior complaint that asserted inducement with no allegations of "post-emission control testing," the Court dismissed that inducement claim on grounds other than the ones raised here. *See id.* at 6. Defendants had no need to seek reargument or reconsideration of the inducement issue, because the claim was otherwise dismissed. *See id.*

Third, nine Defendants were not named in those earlier complaints; they were first referenced when Plaintiffs filed the 4AC in May 2022, so they could not have waived anything.

Fourth, the only prior motion practice related to the 4AC was Plaintiffs' motion for leave to amend. *See* D.I. 375 (Mot. for Leave). There, Plaintiffs argued that a "substantive" challenge to the sufficiency of the inducement claims in the 4AC should be brought under Rule 12. *See* Apr. 22, 2022 Tr. at 20:17–21:1 (MR. NEMUNAITIS: "If all the defendants later want to move to dismiss the issue with more substantive detail at that point . . . ."); *see also id.* at 19:19–20:10 (THE COURT: "I think there's a flavor of your response in . . . [Plaintiffs'] letter that says [']I don't think that's . . . the kind of thing that seems like it would get teed up in a substantive motion to dismiss as opposed to a motion for leave to amend.[']"). Thus, Plaintiffs invited this motion.

## II. A Claim for Induced Infringement Requires Acts That Induce Practice of the Claimed Method.

*Global-Tech* made clear that inducement is not a thought crime. A claim under Section 271(b) requires pleading (and proving) that the alleged inducer not only had a "specific intent to cause infringement," but also acted to manifest that intent, thereby causing infringement. *See* D.I. 419 (Op. Br.) at 9–10. This "active" inducement element requires inducement of the entire claimed method—not just "some" steps.

The Federal Circuit has explained that the "active" element of "active inducement" has at least three components:

(i) "successful communication" with the direct infringer (*see Power Integrations, Inc. v. Fairchild Semiconductor Intl., Inc.*, 843 F.3d 1315, 1331 (Fed. Cir. 2016));

(ii) conduct from which a fact finder could "infer . . . an affirmative intent to infringe the patent" (*see Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1329 n.2 (Fed. Cir. 2009)); and

(iii) causation of acts that, taken together, constitute direct infringement (*see Power Integrations*, 843 F.3d at 1331; *see also Alpek Polyester, S.A. de C.V. v. Polymetrix AG*, 2021 WL 5974163, at *6–8 (Fed. Cir. Dec. 16, 2021)).[1]

Where, as here, the patent claims a multi-step method, the alleged inducer must therefore: (i) communicate with the direct infringer; (ii) manifest its "affirmative intent" to have the direct infringer perform each step of the method; and (iii) actually cause each step to be performed. Anything less would violate the Supreme Court's declaration that "induced infringement under § 271(b) requires knowledge that **the induced acts constitute patent infringement**." *See Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011) (emphasis added). Inducement

---

[1] Plaintiffs recount the facts of *Power Integrations* at some length, *see* D.I. 433 (Opp. Br.) at 8–10, but they do not dispute that the case requires that the inducer (i) "successfully communicate" with the direct infringer and (ii) actually cause direct infringement.

liability cannot be predicated on the inducement of fewer than all claim elements, because, in such a case, the "induced acts" would not constitute "patent infringement."

Thus, there can be no inducement liability if the alleged inducer's intent to cause infringement goes unexpressed; or if the alleged inducer does not communicate with the direct infringer; or if the alleged inducer's acts do not encourage performance of each and every element needed to infringe; or if the alleged inducer's acts are not the cause of the infringement. Plaintiffs' allegations fail to meet these tests. *See* D.I. 419 (Op. Br.) at 9–11; Section III, *infra*.

Plaintiffs characterize Defendants' use of "expressed an intent" as requiring an admission of liability. *See* D.I. 433 (Opp. Br.) at 7–10 & n.1. Not so. Saying "I want you to do X and Y, which constitute infringement of the patent claim," is not necessary. A statement that "I want you to do X and Y" would satisfy the "active" element of inducement if X and Y together sufficed to infringe. But unless the acts expressing the alleged inducer's intent encourage each and every step of the claimed method, the inducement claim will fail, because the "induced acts" will not "constitute patent infringement." *See Glob.-Tech*, 563 U.S. at 766.[2]

The cases Plaintiffs cite all say the same thing. In each one, the court found or allowed an inducement claim based on acts that: (i) communicated information to the direct infringer; (ii) encouraged performance of all steps of the claimed method; and (iii) caused the direct infringer to perform all of the claimed steps.

---

[2] Plaintiffs argue that "[u]nder Defendants' interpretation, a salesman could be found liable for selling a damaged car only if he 'expressed an intent' for the customer to purchase a damaged car by telling the customer the car was damaged." D.I. 433 (Opp. Br.) at 8 n.1. To the contrary, the law would find that a salesman induced a customer to buy a damaged car only if the salesman (a) specifically intended for the customer to buy the damaged car **and** (b) successfully expressed that intent by communicating with the customer in a manner that caused the customer to purchase that car. The salesman would not be required to communicate his culpability, and nothing in the law suggests otherwise.

3

For example, in *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 905 (Fed. Cir. 2014), the Federal Circuit held that inducement claims against Microsoft and SAP gave rise to declaratory judgment jurisdiction against DataTern, because DataTern had accused the plaintiffs of distributing to direct infringers "instruction manuals for using the components in an infringing manner," which "encourag[ed] the **exact** use which DataTern asserts amount to direct infringement." *Id.* (emphasis added). DataTern's claim charts showed how "SAP provides its customers with the necessary components to infringe the '402 and '502 patents as well as the instruction manuals for using the components in an infringing manner." *Id.* The court similarly relied on "Microsoft provided online documentation," which instructed users on "each limitation of the '502 patent's representative claims." *Id.* Thus, for these patents and alleged inducers, the patentee alleged that the inducer specifically encouraged each claimed step of the method, and thereby caused performance of each element of a patent claim—i.e., infringement.

The panel then *denied* declaratory judgment jurisdiction for Microsoft's claims based on the '402 patent, because for that patent, "[n]othing in the record suggests that Microsoft encouraged the acts accused of direct infringement." *Id.* & n.3 ("For example, no claim chart cites to Microsoft-provided documentation for the 'defining' and 'forming' steps, which are at the center of the parties' dispute over infringement."). Thus, even where the alleged inducer (i) communicates with the direct infringer and (ii) actually causes infringement, there is no inducement claim unless the inducer also (iii) acts to encourage each step of the claimed method.

These three requirements go all the way back to the pre-Federal Circuit case *Fromberg, Inc. v. Thornhill*, 315 F.2d 407, 412 (5th Cir. 1963). There, the alleged inducer "personally demonstrated how" its "Miracle Plug" product "could be inserted in an empty Fromberg tube to recreate the original device which he knew to be patented" by Fromberg, and thus literally

4

instructed the direct infringer how to make the device claimed in Fromberg's patent. That satisfied the communication and encouragement aspects of inducement in one stroke. It was then "overwhelmingly established" that the alleged inducer caused "flagrant" infringement. *Id.* at 411 n.10. By contrast, Plaintiffs here have withdrawn their earlier allegations that REFCOs demonstrated how to use refined coal and activated carbon together in order to qualify for tax credits under 26 U.S.C. § 45. D.I. 373 at 2; D.I. 376 at 6. Thus, the 4AC does not allege that any Defendant even came close to teaching how to use activated carbon in combination with refined coal.

Finally, Plaintiffs lean on *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323 (Fed. Cir. 2012), but that case provides no support for their position. There, as in Plaintiffs' other cases, the inducement claims contained all three elements.

The *Bill of Lading* patent claimed a method in which (1) "documents are scanned on board vehicles" (2) "for use by dispatchers in preparing manifests dictating which shipments should be consolidated and shipped on which trucks heading to which location." *Id.* at 1341. Defendant DriverTech was accused of selling "mobile computer products" allowing its customers "'to perform in-cab scanning of critical proof of delivery (POD) and other driver documents' and to transmit these documents wirelessly"—i.e., to complete the first step. *Id.* (citation omitted). Critically, DriverTech was **also** accused of "advertising that [its] product can be used in conjunction with dispatch software to improve asset utilization and provide operational efficiency to the less-than-a-load shipping/trucking industry"—i.e., advertising that its product could be paired with other products to perform the other steps of the claimed method. *Id.* The Federal Circuit held that the only way to perform the complete process DriverTech advertised was to

practice the patented claims, *id.*, meaning that DriverTech itself encouraged using its products in an infringing manner.

The court treated Defendant ACS the same way. ACS was accused not only of selling and marketing "mobile in-cab scanning products," but also "tout[ing] the ability of its products to integrate with 'all major dispatch system vendors.'" *Id.* at 1342 (citation omitted). The court reached the same result for Defendants PeopleNet (whose "own statements" included the claim that its products could be "integrated with dispatch systems so that, '[w]ith documents in hand, dispatch will be able to more quickly and surely dispatch loads and assign drivers,'" *id.* at 1344 (citation omitted)); Microdea (which "tout[ed] that its products are integrated 'with today's leading Transportation Management Systems,'" enabling "dispatch 'to more quickly and surely dispatch loads and assign drivers,'" *id.* at 1345 (citations omitted)); and Qualcomm (whose "own words make clear that it advertises that its products can scan bills-of-lading from the cab of the truck for transmission to the back office," *id.* at 1346).

Thus, in each of Plaintiffs' cases, the court allowed inducement claims for methods only where the alleged inducers: (i) communicated with direct infringers; (ii) expressed their specific intent to cause a complete performance of the claimed method; and (iii) actually caused direct infringement by inducing each step of the claimed method.[3]

Plaintiffs assert that "it is error to dismiss a claim of induced infringement merely because the complaint 'fails to allege that the defendant specifically instructs its customers to perform each of the steps of the patented method.'" D.I. 433 (Opp. Br.) at 7 (quoting *In re Bill of Lading*, 681 F.3d at 1345). But there is no "specific instruction" test, and Defendants do not advocate one.

---

[3] Plaintiffs also cite *Tegal Corp. v. Tokyo Electron Co.*, 248 F.3d 1376, 1379 (Fed. Cir. 2001), D.I. 433 (Opp. Br.) at 4, but that pre-*Global-Tech* case stands only for the settled proposition that active inducement requires an act.

6

Rather, the 4AC fails to plead *any* acts of a Defendant that encouraged or caused power plants to use activated carbon.

### III. The 4AC Does Not Sufficiently Plead Acts of Inducement.

Although the REFCO Defendants are accused of (i) directly communicating with their power plant customers, they are not alleged to (ii) cause the plants to infringe or (iii) encourage the plants to use activated carbon. *See* D.I. 419 (Op. Br.) at 7–9.

The 4AC alleges explicitly why power plants use activated carbon, and it is not because of Defendants: "Plants with [activated carbon] systems installed operate the systems in order to comply with state and federal regulations regarding mercury emissions." D.I. 406, 4AC ¶ 87.[4] There is no allegation that power plants use activated carbon because Defendants promoted its use with refined coal.

Absent such an allegation, there is no causation. If the REFCOs did not cause their customers to use activated carbon, then the REFCOs cannot have induced the combined use of refined coal and activated carbon. Holding a REFCO liable based on a power plant's independent decision to "operate" an activated carbon system "in order to comply" with emission regulations would run afoul of *Global-Tech*, which requires "the induced acts" to constitute "patent infringement." *Glob.-Tech*, 563 U.S. at 766. Mere knowledge that that step is being performed cannot suffice. *See Vita-Mix Corp.*, 581 F.3d at 1328.

As for encouraging the activated carbon step, Plaintiffs assert that the 4AC supports an inference that Defendants encouraged their customers to stay in business so that they could keep using refined coal. *See* D.I. 433 (Opp. Br.) at 4–5. But such general, putative "encouragement"

---

[4] This Court has twice held that Defendants' alleged knowledge of power plants' need to comply with mercury regulations is necessary to establish that Defendants specifically intended for their customers to use activated carbon. *See also* D.I. 404 (Oral Order), D.I. 279 (R&R-2) at 25 n.18. Plaintiffs relied on that allegation to avoid dismissal for lack of intent.

is not a direction to use activated carbon specifically, and Plaintiffs cite no case that would allow the inferential leap from "encouragement to stay in business" to "encouragement to do so by combining specific (but unnamed) emission control technologies."

A review of pertinent paragraphs of the 4AC reveals this pleading failure. The 4AC alleges how the REFCOs make refined coal and sell it to power plants, D.I. 406, 4AC ¶¶ 67–69, then lists alleged REFCO activities, all related to their singular purpose of making, selling, and promoting use of refined coal. *Id.* ¶¶ 215–16. These paragraphs say nothing about making, selling, or promoting use of activated carbon.[5]

Plaintiffs try to suggest that the REFCOs encourage activated carbon use by alleging, in paragraph 82, that "[i]t is reasonable to infer that AJG, DTE, CERT, Chem-Mod, and the RC Defendants [i.e., the REFCOs] are aware of" certain benefits of combining refined coal with activated carbon, and that it is "reasonable to infer" that these Defendants would "take [such benefits] into consideration when marketing their offerings to coal-fired power plants and when negotiating contracts with coal-fired power plants." *Id.* ¶ 82. Paragraph 85 repeats that theme, alleging other benefits of using refined coal and activated carbon together. *Id.* ¶¶ 82, 85. But even the inference as pleaded fails to supply what is needed for inducement liability: an allegation that it is the REFCO Defendants who encourage power plants to use both refined coal **and** activated carbon.

---

[5] While Plaintiffs have added, changed, or struck other allegations in their serial complaints, the language of paragraph 216, pleading the REFCO Defendants' active conduct, has not changed since the original complaint. *Compare id. with* D.I. 1 (Original Complaint) ¶ 158. This Court previously held those allegations (without related allegations of post-emission control testing) insufficient to support active inducement of the activated carbon step. *See* D.I. 419 (Op. Br.) at 11.

8

Thus, the 4AC does not allege that any Defendant encouraged power plants to use activated carbon with refined coal. The only thing the 4AC alleges the REFCOs "actively induce[]" is the "combusting of coal with added bromine," *id.* ¶ 215, by (among other things) providing "operational support, regulatory, and technical support necessary to use Chem-Mod chemicals [*viz.,* bromide compounds]," *id.* ¶ 216(f). As such, the 4AC's allegations are insufficient, and very different from the allegations that passed muster in *Bill of Lading*.[6] Plaintiffs do not allege that any Defendant touted using refined coal with activated carbon; they make no factual allegations to support an inference that Defendants marketed refined coal like that; and where they attribute specific acts to Defendants, those acts do not encourage activated carbon usage. *See id.* ¶¶ 215–16. In short, there is no basis for the inferential leap that Plaintiffs deem "reasonable."

Plaintiffs also turn once again to allegations concerning just one REFCO Defendant, Belle River Fuels Company, LLC ("Belle River"), alleging that Belle River's refined coal supply contract "specifically references the reduced quantity of activated carbon sorbent (not elimination) as a benefit of the arrangement." *Id.* ¶ 84; *see also id.* Ex. F. That allegation does not support a claim that Belle River "touted" the use of refined coal and activated carbon together. Indeed, the only plausible inference from the allegation and the attached contract is that Belle River offered refined coal to its customer in order to *reduce* the customer's activated carbon usage. That is not "encouraging" infringement.

Plaintiffs go further, pleading that "[i]t is further reasonable to infer that these parties [to the Belle River contract] are not outliers, but rather that DTE, CERT, Chem-Mod, and the other

---

[6] Like the defendants in *Bill of Lading*, the REFCO Defendants here are accused of selling a product (refined coal) that is used in one step of a multi-step process. But unlike the *Bill of Lading* defendants, the REFCO Defendants are **not** accused of touting customers' ability to combine the use of that product with others to achieve a certain result.

9

RC Defendants [i.e., the REFCOs] have similar knowledge and require similar contractual provisions." *Id.* ¶ 84. But even if the allegation helped Plaintiffs against Belle River (it does not), Plaintiffs do not allege any facts to make that inference regarding other Defendants. This is telling, because Plaintiffs have been in possession of refined coal supply agreements for other REFCOs since 2021.[7]

Finally, Plaintiffs try to revive their argument that the 4AC "alleges that the Moving Refined Coal Defendants coordinate with coal plant operators to ensure that the amount of bromine used is appropriate for the amount of mercury in the current batch of coal and the current amount of activated carbon being added." D.I. 433 (Opp. Br.) at 6. But that is simply the "tailoring" theory from the original complaint, which this Court has already rejected. *See* D.I. 110 (R&R-1) at 14 (allegation that Defendants "'tailor' the amount of bromide added to the coal 'for the specific needs of the power plant'" is "not sufficient").

Nowhere does the 4AC allege that any Defendant marketed, advertised, or "touted" any benefits of combining refined coal and activated carbon, or otherwise encouraged their use in combination. The remainder of Plaintiffs' allegations go to the various reasons why Defendants might want their customers to stay in business—an uncontroversial point not raised by this motion. *See generally* D.I. 433 (Opp. Br.) at 5–6; D.I. 404 (Oral Order).

\*   \*   \*

For the foregoing reasons and as set forth in Defendants' opening brief, the Court should grant the Defendants' motion and dismiss the inducement claims in the 4AC with prejudice.

---

[7] Elsewhere, Plaintiffs admit that non-party Chem-Mod LLC "advertises that its bromine-containing coal additives improve fly ash saleability," but allege that such "saleability" is *jeopardized* by power plants' use of activated carbon. *See* 4AC ¶¶ 85–86. If anything, these allegations plausibly imply that refined coal suppliers **discourage** activated carbon use, negating both the specific intent and the act requirements.

|  |  |
|---|---|
|  | MORRIS, NICHOLS, ARSHT &TUNNELL LLP |
|  | */s/ Anthony D. Raucci* |
|  | _____ |
| OF COUNSEL: | Jack B. Blumenfeld (#1014) |
|  | Brian P. Egan (#6227) |
| Richard W. Mark | Anthony D. Raucci (#5948) |
| Joseph Evall | 1201 North Market Street |
| Paul J. Kremer | P.O. Box 1347 |
| GIBSON, DUNN & CRUTCHER LLP | Wilmington, DE  19899 |
| 200 Park Avenue | (302) 658-9200 |
| New York, NY  10166-0193 | jblumenfeld@morrisnichols.com |
| (212) 351-4000 | began@morrisnichols.com |
|  | araucci@morrisnichols.com |
| David Glandorf | *Attorneys for Defendants* |
| GIBSON, DUNN & CRUTCHER LLP | *AJG Iowa Refined Coal LLC* |
| 1801 California Street, Suite 4200 | *Arbor Fuels Company, LLC* |
| Denver, CO 80202-2642 | *Belle River Fuels Company, LLC* |
| (303) 298-5700 | *Canadys Refined Coal, LLC* |
|  | *Chouteau Fuels Company, LLC* |
|  | *Coronado Refined Coal, LLC* |
|  | *DTE Energy Resources, LLC* |
|  | *Erie Fuels Company, LLC* |
|  | *George Neal North Refined Coal, LLC* |
|  | *George Neal Refined Coal, LLC* |
|  | *Hastings Refined Coal, LLC* |
|  | *Huron Fuels Company, LLC* |
|  | *Jasper Fuels Company, LLC* |
|  | *Jefferies Refined Coal, LLC* |
|  | *Joppa Refined Coal LLC* |
|  | *Louisa Refined Coal, LLC* |
|  | *Newton RC, LLC* |
|  | *Portage Fuels Company, LLC* |
|  | *Superior Fuels Company 1, LLC* |
|  | *Walter Scott Refined Coal LLC* |
|  | *Williams Refined Coal, LLC* |

|  |  |
|---|---|
| OF COUNSEL:<br><br>Douglas R. Nemec, Esquire<br>Leslie A. Demers, Esquire<br>SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP<br>One Manhattan West<br>New York, NY  10001-8602<br>(212) 735-3000 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP<br><br>*/s/ Jessica R. Kunz*<br>_____<br>Paul J. Lockwood (#3369)<br>Nicole A. DiSalvo (#4662)<br>Jessica R. Kunz (#5698)<br>One Rodney Square<br>P.O. Box 636<br>Wilmington, DE  19899-0636<br>(302) 651-3000<br>paul.lockwood@skadden.com<br>nicole.disalvo@skadden.com<br>jessica.kunz@skadden.com<br><br>*Attorneys for Defendants*<br>*Alistar Enterprises, LLC,*<br>*CERT Operations RCB LLC,*<br>*CERT Operations II LLC,*<br>*CERT Operations IV LLC,*<br>*CERT Operations V LLC,*<br>*Rutledge Products, LLC,*<br>*Senescence Energy Products, LLC,*<br>*Spring Hill Resources LLC,*<br>*Buffington Partners LLC,*<br>*Bascobert (A) Holdings LLC,*<br>*Larkwood Energy LLC,*<br>*Cottbus Associates LLC, and*<br>*Marquis Industrial Company, LLC* |

June 22, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on June 22, 2022, upon the following in the manner indicated:

| | |
|---|---|
| James M. Lennon, Esquire<br>DEVLIN LAW FIRM LLC<br>1526 Gilpin Avenue<br>Wilmington, DE  19806<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |
| Bradley W. Caldwell, Esquire<br>Jason D. Cassady, Esquire<br>John Austin Curry, Esquire<br>Justin T. Nemunaitis, Esquire<br>CALDWELL CASSADY CURRY PC<br>2010 Cedar Springs Road, Suite 1000<br>Dallas, TX  75201<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |

*/s/ Anthony D. Raucci*
_____
Anthony D. Raucci (#5948)