IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MIDWEST ENERGY EMISSIONS CORP. and MES INC., | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) C.A. No. 19-1334 (CJB) |
| ARTHUR J. GALLAGHER & CO., et al., | ) ) ) |
| Defendants. | ) ) |

**DEFENDANTS' NOTICE OF DEPOSITION UNDER
FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6) TO PLAINTIFFS**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendants AJG Iowa Refined Coal, LLC; Arbor Fuels Company, LLC; Belle River Fuels Company, LLC; Canadys Refined Coal, LLC; Chouteau Fuels Company, LLC; Coronado Refined Coal, LLC; George Neal Refined Coal, LLC; George Neal North Refined Coal, LLC; Hastings Refined Coal, LLC; Jasper Fuels Company, LLC; Jefferies Refined Coal, LLC; Newton RC, LLC; Portage Fuels Company, LLC; Walter Scott Refined Coal, LLC; Williams Refined Coal, LLC; DTE Energy Resources, LLC; Erie Fuels Company, LLC; Huron Fuels Company LLC; Superior Fuels Company 1 LLC, CERT Operations II LLC, CERT Operations IV LLC, CERT Operations V LLC, CERT Operations RCB LLC, Rutledge Products, LLC, Senescence Energy Products, LLC. Spring Hill Resources, LLC, Buffington Partners, LLC, Bascobert (A) Holdings, LLC,  Larkwood Energy, LLC, Cottbus Associates, and Marquis Industrial Company, LLC   (collectively, "Defendants"), will take the deposition upon oral examination of Plaintiffs Midwest Energy Emissions Corp. and MES Inc.'s (collectively, "Plaintiffs" or "ME2C").  The deposition will commence on August 15 at 9:30 a.m. at the law offices of Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, NY 10166, or at date and location mutually agreed upon by the parties.  The

deposition will be taken before a notary public or other authorized officer, will continue from day to day until completed, will be videotaped and recorded stenographically, and a realtime transcription service such as LiveNote may also be available for the use of counsel.

PLEASE TAKE FURTHER NOTICE THAT, pursuant to Federal Rule of Civil Procedure 30(b)(6), Plaintiffs shall designate one or more officers, directors, managing agents, or other persons who consent to testify on its behalf and who are most knowledgeable and competent to testify concerning each of the Topics set forth in Schedule A.

|  |  |
|---|---|
| OF COUNSEL: | MORRIS, NICHOLS, ARSHT &TUNNELL LLP |
|  | */s/ Brian P. Egan* |
| Richard W. Mark | _____ |
| Joseph Evall | Jack B. Blumenfeld (#1014) |
| Paul J. Kremer | Brian P. Egan (#6227) |
| GIBSON, DUNN & CRUTCHER LLP | Anthony D. Raucci (#5948) |
| 200 Park Avenue | 1201 North Market Street |
| New York, NY  10166-0193 | P.O. Box 1347 |
| (212) 351-4000 | Wilmington, DE  19899 |
|  | (302) 658-9200 |
| David Glandorf | jblumenfeld@morrisnichols.com |
| GIBSON, DUNN & CRUTCHER LLP | began@morrisnichols.com |
| 1801 California Street, Suite 4200 | araucci@morrisnichols.com |
| Denver, CO  80202-2642 |  |

*Attorneys for Defendants*
*AJG Iowa Refined Coal LLC*
*Arbor Fuels Company, LLC*
*Belle River Fuels Company, LLC*
*Canadys Refined Coal, LLC*
*Chouteau Fuels Company, LLC*
*Coronado Refined Coal, LLC*
*DTE Energy Resources, LLC*
*Erie Fuels Company, LLC*
*George Neal North Refined Coal, LLC*
*George Neal Refined Coal, LLC*
*Hastings Refined Coal, LLC*
*Huron Fuels Company, LLC*
*Jasper Fuels Company, LLC*
*Jefferies Refined Coal, LLC*
*Joppa Refined Coal LLC*
*Louisa Refined Coal, LLC*
*Newton RC, LLC*
*Portage Fuels Company, LLC*
*Superior Fuels Company 1, LLC*
*Walter Scott Refined Coal LLC*
*Williams Refined Coal, LLC*

|  |  |
|---|---|
| | MORRIS JAMES LLP |
| | */s/ Kenneth L. Dorsney* |
| OF COUNSEL: | Kenneth L. Dorsney (#3726)<br>Cortlan S. Hitch (#6720)<br>MORRIS JAMES LLP<br>500 Delaware Avenue, Suite 1500 |
| Jeff Dyess<br>Paul Sykes<br>Benn Wilson<br>BRADLEY ARANT BOULT CUMMINGS LLP<br>1819 Fifth Avenue North<br>Birmingham, AL 35203<br>(205) 521-8000 | Wilmington, DE 19801<br>(302) 888-6800<br>kdorsney@morrisjames.com<br>chitch@morrisjames.com<br><br>*Attorneys for "CERT" Defendants*<br>*Bascobert (A) Holdings LLC*<br>*Buffington Partners LLC* |
| Jessica Zurlo<br>BRADLEY ARANT BOULT CUMMINGS LLP<br>1615 L Street NW, Suite 1350<br>Washington, D.C. 20036<br>(202) 393-7150 | *CERT Operations II LLC*<br>*CERT Operations IV LLC*<br>*CERT Operations RCB LLC*<br>*CERT Operations V LLC*<br>*Cottbus Associates LLC*<br>*Larkwood Energy LLC*<br>*Marquis Industrial Company, LLC*<br>*Rutledge Products LLC*<br>*Senescense Energy Products LLC*<br>*Springhill Resources LLC* |

July 29, 2022

## SCHEDULE A

## **DEFINITIONS**

1. "RC-Using Power Plant" refers to any power plant that Plaintiffs contend is the location of any activity or method that directly infringes any Asserted Claim and forms the basis for any indirect infringement allegation against any Defendant.

2. "Bromine Species" means any chemical substance or species that includes the element bromine in any form or ionic state or oxidation state, including, but not limited to, elemental bromine, HBr, $Br_2$, bromide salts, bromine radicals, or $Br^-$.

3. "Chem-Mod" means "Chem-Mod LLC" as well as its divisions, parent companies, subsidiaries, affiliates, predecessors or successors-in-interest, agents, and representatives, including but not limited to NOx II, Ltd.

4. "EERC" means the Energy & Environmental Research Center, including its officers, directors, managers, employees, divisions, parent companies, subsidiaries, affiliates, predecessors or successors-in-interest, agents, and representatives.

5. "EERCF" means the Energy & Environmental Research Center Foundation, including its officers, directors, managers, employees, divisions, parent companies, subsidiaries, affiliates, predecessors or successors-in-interest, agents, and representatives.

6. "ME2C," and a pronoun referring to ME2C (e.g., "You" or "Your), means Midwest Energy Emissions Corp., including its officers, directors, managers, employees, divisions, parent companies, subsidiaries, affiliates, predecessors or successors-in-interest, agents, and representatives.

7. "MES," and a pronoun referring to MES, Inc. (e.g., "You" or "Your"), means MES, Inc., including its officers, directors, managers, employees, divisions, parent companies, subsidiaries, affiliates, predecessors or successors-in-interest, agents, and representatives.

8. "Nalco" means Nalco Company LLC, Ecolab Inc., Hazelmere Research, Ltd., Ecolab USA Inc., Nalco Holding Company, and Nalco U.S. 2 Inc., Mobotec AB, LLC, and any of their officers, directors, managers, employees, divisions, parent companies, subsidiaries, affiliates, predecessors or successors-in-interest, agents, and representatives.

9. "Plaintiffs" means ME2C and MES, severally and collectively.

10. "Power Plant" means an electrical generating unit that combusts coal to generate electricity, a station comprised of one or more electrical generating units, or a company that owns such units or stations.

11. "Refined Coal" means the product defined as "refined coal" at 26 U.S.C. § 45(c)(7).

12. "Section 45" refers to 26 U.S.C. § 45.

13. The phrases "relates to," "relating to," "related to," "refers to," or "referring to" a given subject shall mean, in whole or in part, directly or indirectly, concerning, constituting, containing, embodying, evidencing, showing, comprising, reflecting, identifying, illustrating, stating, referring to, dealing with, commenting on, responding to, describing, involving, mentioning, discussing, recording, supporting, or negating a given subject matter.

14. "'114 Patent" means U.S. Patent No. 10,343,114.

15. "'147 Patent" means U.S. Patent No. 8,168,147.

16. "'225 Patent" means U.S. Patent No. 10,589,225.

17. "'517 Patent" means U.S. Patent No. 10,596,517.

18. "'430 Patent" means U.S. Patent No. 10,668,430.

19. "Asserted Patent(s)" refers to the '114 Patent, '147 Patent, '225 Patent, '517 Patent, and the '430 Patent individually and collectively. If Plaintiffs asserts additional patents in the Lawsuit, such patents shall be included in the definitions of these terms.

20. "Asserted Claim(s)" shall mean those claims of the Asserted Patent(s) that Plaintiffs allege, at this time or any time in the future, are infringed by any of the Defendants.

21. The term "person" shall include, without limitation, natural persons, corporations, partnerships, business trusts, associations, and business or other entities, and any officer, director, employee, partner, corporate parent, subsidiary, affiliate, agent, representative, attorney, or principal thereof.

22. The term "third parties" shall mean any person or persons other than Plaintiffs or Defendants.

23. The terms "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request for production inclusive rather than exclusive.

24. The terms "any" and "each" shall be construed to include and encompass "all."

25. The term "including" shall not be construed as limiting any request, and shall mean the same as "including, but not limited to."

26. The use of the term "the" shall not be construed as limiting the scope of any request for production.

27. The singular form of a word shall include the plural and vice versa, as necessary to make the request inclusive rather than exclusive.

28. The definitions used herein are chosen for clarification and the convenience of the parties, and should not be construed as admissions.

## TOPICS

1. The facts that are set forth in your response to Common Interrogatory No. 13.

2. The value of Plaintiffs' stock since 2013, including but not limited to all dividends paid to shareholders since 2013.

3. Plaintiffs' competition for power plant business, and Plaintiffs' knowledge of its competitors.

4. Plaintiffs' efforts to sell products and services to power plants that have used or have considered using Refined Coal, including but not limited to San Miguel, Joppa, and Brunner Island.

5. Any settlement or license agreement entered into by Plaintiffs relating to any Asserted Patent, including but not limited to:

   a. The scope, terms, and interpretation of each agreement, and any variations in the scope, terms, or interpretation as among different settlement or license agreements;

   b. The field of use and extent of use of each Asserted Patent by the licensees covered by the agreement, including the total tonnage of coal burned annually at each power plant that is subject to the agreement, and the total annual tonnage that is licensed under such agreement; and

   c. Actual net revenues and profits earned by or due to Plaintiffs under the agreement.

6. The terms of Plaintiffs' sales of any product or service relating to mercury control, including but not limited to any sorbent, sorbent additive, sorbent enhancer, or oxidizer, including actual net revenues earned by or due to Plaintiffs under each product or service sale agreement.

7. Any communication or attempted communication by Plaintiffs to any entity that suggested or alleged that the entity was infringing any Asserted Patent and/or needed to enter into a license agreement with Plaintiffs covering any Asserted Patent.

8. Plaintiffs' negotiations with any power plant that it has licensed under any Asserted Patent.

9. Plaintiffs' negotiations with any power plant that it has attempted to license under any Asserted Patent.

10. Plaintiffs' negotiations with any power plant to which it has attempted to sell any product.

11. The value of Refined Coal when used with or without activated carbon.

12. All statements to investors regarding this litigation, any of the asserted patents, or Refined Coal.

13. All statements to sources of funding for this litigation regarding this litigation, any of the asserted patents, or Refined Coal.

14. The identity of, and Plaintiffs' relationship with, any person or entity who has now or previously had a financial, ownership, or other beneficial interest in this Action.

15. Any and all agreements between either Plaintiff and any potential fact witness or employer of a fact witness or entity wholly or partially owned or controlled by a fact witness.

16. Any and all past and future payments from either Plaintiff to any fact witness or entity responsive to Topic 14 above, that have been paid, are owed, or that may become due depending upon the outcome of any litigation involving the Asserted Patents.

17. Any attempt by Plaintiffs or their predecessors in interest to the Asserted Patents to place facilities in service to sell Refined Coal qualified under Section 45, to sell Refined Coal, or to earn tax credits under Section 45.

18. Any attempt by Plaintiffs to make or sell Refined Coal, or to license a process or technology for making Refined Coal.

19. Actual sales volume and profits for Plaintiffs' products.

20. Plaintiffs' sourcing for any of the products that it sells or offers for sale for mercury control, including any sorbent, sorbent additive, sorbent enhancer, or oxidizer.

21. Plaintiffs' profit margins for any of the products that it sells or offers for sale for mercury control, including any sorbent, sorbent additive, sorbent enhancer, or oxidizer, including how to interpret the documents produced on this point.

22. Plaintiffs' market share for the sales of any sorbent, sorbent additive, sorbent enhancer, or oxidizer.

23. Each Plaintiffs' communications with any power plant to which it has tried and failed to sell its products, including any chemicals.

24. Each Plaintiff's communications with any RC-Using Power Plant about the scope or applicability of any of the Asserted Patents to the power plant's processes.

25. Any analysis, including but not limited to the valuation of, any patents owned by Chem-Mod.

26. Any analysis, including but not limited to the valuation of, any patents owned by Nalco.

27. Any analysis, including but not limited to the valuation of, any patents owned by any Defendant relating to mercury control.

28. Any valuation, or evidence related to the valuation, of any of the Asserted Patents.

29. Any analysis, including but not limited to the valuation of, any patents owned by any third party relating to mercury control.

30. Your business plans, including, but not limited to, strategic plans, operating plans, marketing plans, financial plans, production plans, customer service plans, sales plans and capital

or investment plans relating to Plaintiffs' products or products used in the processes allegedly covered by any of the Asserted Patents.

31. The coauthors, purposes, and recipients of the following documents:

> ME2C-RC-00038657; ME2C-RC-00038833; ME2C-RC-00041731; ME2C-RC-00041810; ME2C-RC-00041810; ME2C-RC-00041931.

32. Defendant' knowledge of the Asserted Patents prior to the commencement of the Lawsuit, including but not limited to any public disclosures regarding the Asserted Patents or communications with Defendants regarding the Asserted Patents.

33. The content of, and circumstances surrounding, each communication in which a Plaintiff has provided notice of infringement under an Asserted Patent to anyone, including power plant operators, Refined Coal suppliers, the EERC, or others.

34. Plaintiffs' first knowledge of the use of Refined Coal with activated carbon by or at each RC-Using Power Plant, and any communications related to such use.

35. The decision to sue any current Defendant.

36. The decision not to sue any supplier of activated carbon to power plants.

37. Any communications by Plaintiff with its existing or potential customers regarding this case.

38. Any communications directed to investors or potential investors regarding this case.

39. Any third party investors or funders of this case.

40. Plaintiffs' relationship with EERC.

41. Plaintiffs' relationship with EERCF.

42. All sales or assignments of any of the Asserted Patents, including but not limited to sales of the Asserted Patents to Plaintiffs.

43. The negotiation of each sale or assignment of any Asserted Patent, including any internal or communicated projections regarding the value of any Asserted Patent or any technology that practices it.

44. The identity of each person who contributed to the alleged invention(s) disclosed or claimed in the Asserted Patents, and the specific contributions of each person to the alleged invention(s).

45. The work, research, tests, experiments, or studies performed that led to, or that are related to, the alleged inventions of the Asserted Patents.

46. The details of the experiments and research that are set forth in your response to CERT Interrogatory No. 1, and of all contemporaneous experiments and research by the named inventors.

47. The first time that any inventor added any Bromine Species to coal.

48. The first time that any inventor wrote down or otherwise recorded that a Bromine Species could be added directly to coal (i.e., added to the coal before it was brought to the combustion chamber of the furnace).

49. Any public presentation by or for Plaintiffs of the alleged invention in the Asserted Patents between 2000 and 2008.

50. Any public presentation by or for Plaintiffs regarding the use of any Bromine Species for mercury control between 2000 and 2008.

51. Research and development of the subject matter claimed in each asserted claim of the Asserted Patents, where such research and development took place between 2003 and the time when applications were filed for each such claim, and any documents or material that corroborates such research and development efforts.

52. Any research, design, development, implementation, and testing of any Plaintiff product or technology covered by any of the Asserted Patents.

53. All research and/or testing performed by or at the direction of Plaintiffs that compares the alleged invention(s) claimed in the Asserted Patents with any prior art inventions, and all articles, reports, and/or publications related to such research and/or testing.

54. The first knowledge by Plaintiffs of any party adding any Bromine Species to coal before combusting that coal.

55. Any declaration submitted to the US PTO during the prosecution of any Asserted Patent, including but not limited to any research or testing performed for each declaration.

56. For each defendant, Plaintiffs' knowledge prior to the filing of the Lawsuit of that defendant's EERC tests.

57. Plaintiffs' knowledge prior to 2019 of Sally Batanian (previously Wasikowski), Chem-Mod, and/or any method used by Chem-Mod relating to mercury control.

58. All facts relating to Plaintiffs' knowledge concerning the dates of use and amounts used of activated carbon and/or Refined Coal by any power plant using any defendant's Refined Coal from 2003 to present.

59. For each defendant, all evidence of the chemical state and chemical reactions entered into by any bromine species that was introduced into the power plant using such defendant's Refined Coal, when such Refined Coal is introduced into the boiler.

60. All knowledge regarding the chemical reactions that occur as a result of any allegedly infringing activity by any Defendant.

61. The presence of pyrolysis char, as that term is used in the '225 patent, in the combustion chamber of any power plant whose allegedly infringing use of Refined Coal is alleged to be induced or contributed to by any defendant.

62. The sorbent material injection rate, the promoter injection rate, and the ratio of grams of addition of promoter to grams of addition of the sorbent material, at each power plant that uses Refined Coal sold by a Defendant in this lawsuit.

63. All uses of Refined Coal without activated carbon known to Plaintiffs, and to the extent that Plaintiffs contend such use is not economically viable, the facts underlying such contention.

64. For each defendant, any tailoring of either Refined Coal, activated carbon, or any other substance used by a power plant in connection with its use of such defendant's Refined Coal.

65. Any tailoring of the chemicals that Plaintiffs provides to its own customers.

66. Analyses or opinions regarding the validity or invalidity of the Asserted Patents.

67. Prior art searches directed to the subject matter of the Asserted Patents.

68. The following references:

   d. "The Multiple Site Model for Flue Gas-Mercury Interactions on Activated Carbons: the Basic Site," Fuel Chemistry Division Preprints 2003, 48(1), 30.

   e. Olson et al., "An Improved Model for Flue Gas-Mercury Interactions on Activated Carbons," Paper #142, presented at the Combined Power Plant Air Pollutant Control Mega Symposium, May 19-22, 2003 in Washington, DC.

   f. Olson et al., "Chemical mechanisms in mercury emission control technologies," J. Phys. IV France 107 (2003), presented at the XIIth International Conference on Heavy Metals in the Environment, May 26-30, 2003 in Grenoble, France.

69. For each of the references in [[82]], (i) the reasons such reference was not cited to the PTO during the prosecution of the applications for the Asserted Patents; and (ii) all persons involved with the decision not to cite such reference to the PTO during such prosecution.

70. The facts that are set forth in your response to Common Interrogatory No. 2.

**CERTIFICATE OF SERVICE**

I hereby certify that on July 29, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on July 29, 2022, upon the following in the manner indicated:

| | |
|---|---|
| James M. Lennon, Esquire<br>DEVLIN LAW FIRM LLC<br>1526 Gilpin Avenue<br>Wilmington, DE 19806<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |
| Bradley W. Caldwell, Esquire<br>Jason D. Cassady, Esquire<br>John Austin Curry, Esquire<br>Justin T. Nemunaitis, Esquire<br>CALDWELL CASSADY CURRY PC<br>2010 Cedar Springs Road, Suite 1000<br>Dallas, TX 75201<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |

*/s/ Brian P. Egan*

Brian P. Egan (#6227)