**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **MIDWEST ENERGY EMISSIONS CORP. and MES INC.,** | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **C.A. No.:  19-1334-CJB** |
| **VISTA ENERGY CORP., et al.,** | ) ) ) | |
| **Defendants.** | | |

**NOTICE OF SUBPOENAS TO
VIRGINIA ELECTRIC AND POWER COMPANY**

PLEASE TAKE NOTICE that, pursuant to Federal Rules of Civil Procedure 30 and 45, Defendants CERT Operations II LLC, CERT Operations IV LLC, CERT Operations V LLC, CERT Operations RCB LLC, Senescence Energy Products, LLC, Springhill Resources LLC, Buffington Partners LLC, Bascobert (A) Holdings LLC, Larkwood Energy LLC, Cottbus Associates LLC, Marquis Industrial Company, LLC, and Rutledge Products, LLC, intend to serve Virginia Electric and Power Company ("VEPCO") on or after August 15, 2022 with a Subpoena to Produce Documents and a Subpoena to Testify at a Deposition in a Civil Action. A copy of the document subpoena is attached as Exhibit A. A copy of the deposition subpoena is attached as Exhibit B.

The deposition of VEPCO will take place remotely on September 12, 2022, at 9:00 am EST, or at some other such time and place as may be agreed upon by counsel. The deposition will be taken remotely and before a notary public or other office duly authorized to administer oaths and take testimony, and will be recorded by stenographic and videographic means. The deposition will continue from day to day until completed. You are invited to cross examine the witness.

1

Additionally, VEPCO will produce the documents, electronically stored information, or objects specified in the document subpoena below no later than September 5, 2022 at 10:30 am EST, or at some other such time and place as may be agreed upon by counsel.

Dated: August 15, 2022

                                        /s/ Cortlan S. Hitch
                                        Kenneth L. Dorsney (#3726)
                                        Cortlan S. Hitch (#6720)
                                        MORRIS JAMES LLP
                                        500 Delaware Avenue, Suite 1500
                                        Wilmington, DE 19801
OF COUNSEL:                             (302) 888-6800
                                        kdorsney@morrisjames.com
Jeff Dyess                              chitch@morrisjames.com
Paul Sykes
Benn Wilson
BRADLEY ARANT BOULT
CUMMINGS LLP                            *Attorneys for Defendants CERT Operations IV*
1819 Fifth Avenue North                 *LLC, CERT Operations V LLC, CERT*
Birmingham, AL 35203                    *Operations RCB LLC, Senescence Energy*
(205) 521-8000                          *Products, LLC, Springhill Resources LLC,*
                                        *Buffington Partners LLC, Bascobert (A)*
Jessica Zurlo                           *Holdings LLC, Larkwood Energy LLC, Cottbus*
BRADLEY ARANT BOULT                     *Associates LLC, CERT Operations II LLC,*
CUMMINGS LLP                            *Marquis Industrial Company, LLC, and Rutledge*
1615 L Street NW                        *Products, LLC.*
Ste 1350
Washington, D.C. 20036
(202) 393-7150

# EXHIBIT   A

AO 88B  (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Delaware

| | |
|---|---|
| MIDWEST ENERGY EMISSIONS CORP., ET AL. | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | )    Civil Action No.   19-1334-CJB |
| VISTA ENERGY CORP., ET AL. | ) |
| _____ | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   Virginia Electric and Power Company c/o Registered Agent, CT Corporation System, 4701 Cox Rd Ste 285, Glen Allen, VA, 23060

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

        See Attachment A.

| Place: Offices of Virginia Electric and Power Company 120 Tredegar Street Richmond, Virginia 23219 | Date and Time: 09/05/2022 10:30 am |
|---|---|

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

        The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   08/15/2022

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| _____ | | *Jeffrey D. Dyess* |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____

Various Defendants - see Attachment A _____ , who issues or requests this subpoena, are:

Jeffrey D. Dyess, One Federal Place 1819 5th Avenue North, Birmingham, AL 35203, jdyess@bradley.com, (205) 521-8288

**Notice to the person who issues or requests this subpoena**

A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   19-1334-CJB

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| MIDWEST ENERGY EMISSIONS<br>CORP. and MES INC.,<br><br>    Plaintiffs,<br><br>v.<br><br>VISTA ENERGY CORP., et al.,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)    C.A. No.:  19-1334-CJB<br>)<br>)<br>)<br>) |

**ATTACHMENT A:**
**CERT DEFENDANTS' REQUESTS FOR PRODUCTION**

Pursuant to Rules 26, 34, and 45 of the Federal Rules of Civil Procedure, Defendants CERT Operations II LLC, CERT Operations IV LLC, CERT Operations V LLC, CERT Operations RCB LLC, Senescence Energy Products, LLC, Springhill Resources LLC, Buffington Partners LLC, Bascobert (A) Holdings LLC, Larkwood Energy LLC, Cottbus Associates LLC, Marquis Industrial Company, LLC, and Rutledge Products, LLC, by and through their attorneys, jointly serve the following requests for production of documents and tangible things (hereinafter, "Requests") to Virginia Electric and Power Company ("VEPCO"), seeking production and to permit inspection and copying of the following documents and things at the place, date, and time specified in the accompanying subpoena.

**DEFINITIONS**

Unless otherwise indicated, the following definitions shall apply to the following Requests. Any term used but not defined herein shall have the broadest meaning ascribed to such term in the Federal Rules of Civil Procedure and the Federal Rules of Evidence, as applicable.

1

1.      "VEPCO," "You," "Your," and "Yourself" means Virginia Electric and Power Company.

2.      "Mt. Storm" or the "Mt. Storm Power Plant" is the coal-fired power plant located at Mt. Storm, West Virginia owned and operated by VEPCO.

3.      "Chesterfield" or the "Chesterfield Power Station" is the coal-fired power plant located at Chester, Virginia owned and operated by VEPCO.

4.      "Refined Coal" includes any coal or coal byproduct treated with bromine, any bromide compound, or any other halogen or halide compound prior to combustion or any "refined coal" as defined by 26 U.S.C. § 45(c)(7).

5.      "MATS" means the Mercury and Air Toxics Standards issued by the U.S. Environmental Protection Agency.

6.      "Defendants" means collectively CERT Operations II LLC, CERT Operations IV LLC, CERT Operations V LLC, CERT Operations RCB LLC, Senescence Energy Products, LLC, Springhill Resources LLC, Buffington Partners LLC, Bascobert (A) Holdings LLC, Larkwood Energy LLC, Cottbus Associates LLC, Marquis Industrial Company, LLC, and Rutledge Products, LLC, and any other person or entity Plaintiffs are permitted to name as a Defendant in any supplement or amendment to the Fourth Amended Complaint.

7.      "Plaintiff" or "ME2C" means Midwest Energy Emissions Corp. and MES Inc. collectively and severally.

8.      "Fourth Amended Complaint," and "4AC" means the Fourth Amended Complaint, filed by Plaintiffs on May 3, 2022 as well as any supplements thereto or amended version thereof.

9.      "Document(s)" is defined broadly to be given the full scope of that term as contemplated in Rule 34 of the Federal Rules of Civil Procedure and includes any Thing, any

2

written or graphic matter, and any medium of any type or description upon which intelligence or information is recorded or from which intelligence or information can be perceived, that is or has been in your actual or constructive possession, custody, or control, or of which you have knowledge, regardless of the medium on which it is produced, reproduced, or store (including, without limitation, computer programs and files containing any requested information), and any recording or writing, as these terms are defined in Rule 1001 of the Federal Rules of Evidence. This definition encompasses all tangible Things, all originals (or, if originals are not available, identical copies thereof), all non-identical copies of a Document, all drafts of final Documents, all other written, printed, or recorded matter of any kind, Source Code, and all other data compilations from which information can be obtained and translated if necessary, that are or have been in your actual or constructive possession or control, regardless of the medium on which they are produced, reproduced, or stored (including, without limitation, computer programs and files containing any requested information together with instructions or programs necessary to search and retrieve such data and hard copies where available and retrievable), any recording or writing, and/or any other documentary material of any nature.

10.    "Thing(s)" has the broadest meaning allowable under Rule 34 of the Federal Rules of Civil Procedure. This meaning encompasses any tangible object of any kind and nature other than a Document, including, without limitation, prototypes, models, and physical specimens thereof.

11.    "Entity(ies)" means any Person, corporation, company, partnership, sole proprietorship, firm, board, joint venture, association, organization, trust, governmental body, agency authority, commission, or any other juristic Person, business unit, or collective organization, and any legal, governmental, organizational, or political subdivision thereof. The

3

acts of an Entity shall include the acts of its directors, officers, owners, members, employees, agents, attorneys, and all other representatives acting on the Entity's behalf.

12.     "Person(s)" means any natural individual or individuals.

13.     "Employee" includes persons both currently or formerly employed.

14.     "Communication(s)" means, without limitation, any oral, written, or other contact between two or more Persons or Entities by which any information or knowledge of any nature is transmitted or conveyed or attempted to be transmitted or conveyed, including letters, memoranda, telegrams, telefaxes, telecopies, telexes or emails, text messages, face-to-face meetings, telephone conversations, voicemails, answering machine messages, and telephonic notes.

15.     "Concerning" means, without limitation, concerning, regarding, describing, comprising, referring to, Related To, supporting, favoring, opposing, bolstering, detracting from, located in, considered in connection with, bearing on, evidencing, indicating, reporting on, recording, alluding to, responding to, connected with, commenting on, in respect of, about, in Relation to, discussing, showing, describing, reflecting, analyzing, constituting, or being.

16.     "Relate To," "Relating To," or "Related To," when referring to any given subject matter means, without limitation, any Document or Thing that in whole or in part and directly or indirectly relates to, concerns, regards, discusses, describes, depicts, demonstrates, shows, evidences, supports, refutes, contradicts, summarizes, analyzes, bears upon, comments upon, pertains to, constitutes, comprises, involves, contains, embodies, reflects, alludes to, identifies, states, mentions, refers to, deals with, or is in any way relevant to the particular subject matter identified.

17.     The singular form of each word shall be interpreted in the plural as well.

4

18.     Any pronoun shall be construed to refer to the masculine, feminine, or neuter gender as is most appropriate in each case.

19.     The words "and," "or," and "and/or" shall be construed conjunctively or disjunctively, whichever maximizes the scope of each Request in which they are used.

20.     The words "any" and "all" shall be construed to mean "any and all."

21.     The words "each" and "every" shall be construed to mean "each and every."

22.     The word "including" and every variant thereof shall be construed to mean "including, without limitation."

## **INSTRUCTIONS**

The following instructions shall apply to these Requests:

1.     These Requests are continuing to the extent permitted under the Federal Rules of Civil Procedure and require You, consistent with Your obligations under Fed. R. Civ. P. 26(e)(1), promptly to produce for inspection and copying any Documents or things that You reasonably may acquire, obtain, locate or identify.

2.     Answer each Request separately by listing the responsive Documents and by describing them as defined below.  All Documents shall be:  (i) organized and designated to correspond to the categories in these Requests, or if not, (ii) produced as they are maintained in the normal course of business, and in either case:  (a) all associated file labels, file headings, and file folders shall be produced together with the responsive Documents and each file shall be identified as to its owner or custodian; (b) all Documents that cannot be legibly copied shall be produced in their original form; otherwise, You may produce photocopies (but Defendants reserve the right to inspect the originals); and (c) each page shall be given a discrete production number and produced in Bates-numbered form.

3.     Documents stored electronically must be produced in the form or forms in which they are ordinarily maintained.  Producing electronic Documents in the "form or forms in which they are ordinarily maintained" does not include printing those Documents and scanning them into PDF format.

4.     These Requests call for Documents that are known or available to You, or in Your possession, custody, or control, including all Documents known or available to Your attorneys, agents, representatives, or any other person acting on Your behalf or under Your direction or control.

5.     Possession, custody, and control does not require that You have actual physical possession; instead, if You have physical control or a superior right to compel production from another, the requested Document must be produced.

6.     In the event that multiple copies of a Document exist, produce every copy on which any notations or markings of any sort not appearing on any other copies exist.

7.     If no Documents or things are responsive to a particular Request, state that no responsive materials exist.

8.     If in answering these Requests You claim any ambiguity in either a Request or a definition or instruction applicable thereto, identify in Your response the language You consider ambiguous and state the interpretation You are using in responding.

9.     Each requested Document or thing shall be produced in its entirety and with all attachments, without deletions or excisions, regardless of whether You consider the entire Document or any attachment thereto to be relevant to this case or responsive to these Requests. If any Document or thing cannot be produced in full, it shall be produced to the fullest extent possible, specifying the reasons for the inability to produce the remainder and stating whatever

6

information, knowledge, or belief You have concerning the unproduced portion.

10.     If You or Your attorneys know of the existence, past or present, of any Document described in any of these Requests, but such Document is not presently in Your possession, custody, or control or in the possession, custody, or control of Your agents, representatives, or attorneys, You shall so state in response to the Request.  For any such Documents, provide the disposition of each such Document, including the date of, method of, and reasons for such disposition, and the name and address, if known, of any Person who has seen the Document or who now has custody, control, or possession thereof.  If such document no longer exists, state when, how, and why such Document ceased to exist.

11.     If You object to any Request or part thereof, You shall (1) state the objection, and (2) produce all relevant Documents to which Your objection does not apply.

12.     If any Documents are withheld from production under a claim of privilege or work product, produce all relevant Documents to which Your privilege objection does not apply, and then state the nature of the privilege claimed and provide sufficient information to permit a full determination of whether the claim is valid.  For allegedly privileged Documents, include:  (i) any privilege or immunity from discovery asserted; (ii) the nature of the Document (letter, memorandum, notes, etc.); (iii) the author; (iv) the addressee, including recipients of copies; (v) the date; (vi) each and every Person who has seen such Document or a portion of such Document; (vii) the subject matter and general nature of the information; and (viii) all other facts which are alleged to support the assertion of privilege or immunity.

13.     Unless otherwise stated, these Requests require the production of Documents or things that were prepared, created, written, sent, dated or received at any time.

14.     The geographic scope of these Requests is worldwide, to the extent that there is a

reasonable basis to believe that locations outside of the United States may contain responsive Documents that cannot be found inside the United States.

15.     The Defendants reserve the right to propose additional Requests.

## REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

1.     Documents sufficient to identify how coal was transported to the combustion chambers for the coal-fired units at the Mt. Storm Power Plant during any period of time that Refined Coal was used for combustion at the Mt. Storm Power Plant.

2.     Documents sufficient to identify the amount of Refined Coal combusted and when it was combusted at the Mt. Storm Power Plant for which no form of activated carbon was injected downstream of the combustion chamber following the combustion of the Refined Coal.

3.     For any periods of time when the Mt. Storm Power Plant used Refined Coal for combustion, documents sufficient to identify and describe the mercury emission control technologies in place or used at the Mt. Storm Power Plant that involved the injection of any form of activated carbon into a mercury-containing gas downstream from a combustion chamber, including, but not limited to documents sufficient to identify the date that each identified mercury emission control technology was placed in operation, and if applicable, ceased operation (either permanently or temporarily), for use at the Mt. Storm Power Plant.

4.     For any periods of time when the Mt. Storm Power Plant used Refined Coal for combustion, documents sufficient to identify and describe the mercury emission control technologies in place or used at the Mt. Storm Power Plant that involved the use of Refined Coal for combustion without also injecting any form of activated carbon into a mercury-containing gas downstream from a combustion chamber, including, but not limited to documents sufficient to identify the date that each identified mercury emission control technology was placed in operation,

and if applicable, ceased operation (either permanently or temporarily, for use at the Mt. Storm Power Plant.

5.     For any period of time that any of the three coal-fired units at the Mt. Storm Power Plant used Refined Coal for combustion, documents that identify any period of time when mercury emission control technology(ies) involving injecting any form of activated carbon into a mercury-containing gas downstream from a combustion chamber was used on at least one operating coal-fired unit but not on all operating coal-fired unit(s), and documents that identify whether the same or different feed stocks of Refined Coal were used on the operating coal-fired units during these identified periods of time.

6.     Documents sufficient to identify how coal was transported to the combustion chambers for the coal-fired units at the Chesterfield Power Station during any period of time that Refined Coal was used for combustion at the Chesterfield Power Station.

7.     Documents sufficient to identify the amount of Refined Coal combusted and when it was combusted at the Chesterfield Power Station for which no form of activated carbon was injected downstream of the combustion chamber following the combustion of the Refined Coal.

8.     For any periods of time when the Chesterfield Power Station used Refined Coal for combustion, documents sufficient to identify and describe the mercury emission control technologies in place or used in connection with the coal-fired combustion chambers at the Chesterfield Power Station that involved the injection of any form of activated carbon into a mercury-containing gas downstream from a coal-fired combustion chamber, including, but not limited to documents sufficient to identify the date that each identified mercury emission control technology was placed in operation, and if applicable, ceased operation (either permanently or temporarily, for use at the Chesterfield Power Station.

9.      For any periods of time when the Chesterfield Power Station used Refined Coal for combustion, documents sufficient to identify and describe the mercury emission control technologies in place or used in connection with the coal-fired combustion chambers at the Chesterfield Power Station that involved the use of Refined Coal for combustion without also injecting any form of activated carbon into a mercury-containing gas downstream from a coal-fired combustion chamber, including, but not limited to documents sufficient to identify the date that each identified mercury emission control technology placed in operation, and if applicable, ceased operation (either permanently or temporarily, for use at the Chesterfield Power Station.

10.     For any period of time that the two coal-fired units at the Chesterfield Power Station used Refined Coal for combustion, documents that identify any period of time when mercury emission control technology(ies) involving injecting any form of activated carbon into a mercury-containing gas downstream from a combustion chamber was used on one operating coal-fired unit but not on the other operating coal-fired unit, and documents that identify whether the same or different feed stocks of Refined Coal were used on the two operating coal-fired units during these identified periods of time.

# EXHIBIT   B

AO 88A  (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Delaware

| | |
|---|---|
| MIDWEST ENERGY EMISSIONS CORP., ET AL. | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.   19-1334-CJB |
| VISTA ENERGY CORP., ET AL. | ) |
| *Defendant* | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:     Virginia Electric and Power Company c/o Registered Agent, CT Corporation System, 4701 Cox Rd Ste 285,
Glen Allen, VA, 23060

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

See attachment B.

| Place: Offices of Virginia Electric and Power Company<br>120 Tredegar Street<br>Richmond, Virginia 23219 | Date and Time:<br><br>09/12/2022 9:00 am |
|---|---|

The deposition will be recorded by this method:     stenographic and/or videotaped

❑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     08/15/2022

| | | |
|---|---|---|
| | *CLERK OF COURT* | |
| | | OR |
| | | *Jeffrey D. Dyess* |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
Various Defendants - see Attachment A     , who issues or requests this subpoena, are:

Jeffrey D. Dyess, One Federal Place 1819 5th Avenue North, Birmingham, AL 35203, jdyess@bradley.com, (205) 521-8288

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.   19-1334-CJB

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
  **(i)** is a party or a party's officer; or
  **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
 **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
 **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
 **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  **(i)** fails to allow a reasonable time to comply;
  **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
  **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  **(iv)** subjects a person to undue burden.
 **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

  **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
  **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
 **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  **(i)** expressly make the claim; and
  **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**ATTACHMENT B**

Pursuant to Rules 30 and 45 of the Federal Rules of Civil Procedure, Defendants CERT Operations II LLC, CERT Operations IV LLC, CERT Operations V LLC, CERT Operations RCB LLC, Senescence Energy Products, LLC, Springhill Resources LLC, Buffington Partners LLC, Bascobert (A) Holdings LLC, Larkwood Energy LLC, Cottbus Associates LLC, Marquis Industrial Company, LLC, and Rutledge Products, LLC ("Defendants"), hereby request the deposition of Virginia Electric and Power Company covering the following topics.

**DEFINITIONS**

1.      "VEPCO," "You," "Your," and "Yourself" means Virginia Electric and Power Company.

2.      "Mt. Storm" or the "Mt. Storm Power Plant" is the coal-fired power plant located at Mt. Storm, West Virginia owned and operated by VEPCO.

3.      "Chesterfield" or the "Chesterfield Power Station" is the coal-fired power plant located at Chester, Virginia owned and operated by VEPCO.

4.      "Refined Coal" includes any coal or coal byproduct treated with bromine, any bromide compound, or any other halogen or halide compound prior to combustion or any "refined coal" as defined by 26 U.S.C. § 45(c)(7).

5.      "MATS" means the Mercury and Air Toxics Standards issued by the U.S. Environmental Protection Agency.

6.      "Defendants" means collectively CERT Operations II LLC, CERT Operations IV LLC, CERT Operations V LLC, CERT Operations RCB LLC, Senescence Energy Products, LLC, Springhill Resources LLC, Buffington Partners LLC, Bascobert (A) Holdings LLC, Larkwood Energy LLC, Cottbus Associates LLC, Marquis Industrial Company, LLC, and Rutledge Products,

11

LLC, and any other person or entity Plaintiffs are permitted to name as a Defendant in any supplement or amendment to the Fourth Amended Complaint.

7.      "Plaintiff" or "ME2C" means Midwest Energy Emissions Corp. and MES Inc. collectively and severally.

8.      "Fourth Amended Complaint," and "4AC" means the Fourth Amended Complaint, filed by Plaintiffs on May 3, 2022 as well as any supplements thereto or amended version thereof.

9.      "Document(s)" is defined broadly to be given the full scope of that term as contemplated in Rule 34 of the Federal Rules of Civil Procedure and includes any Thing, any written or graphic matter, and any medium of any type or description upon which intelligence or information is recorded or from which intelligence or information can be perceived, that is or has been in your actual or constructive possession, custody, or control, or of which you have knowledge, regardless of the medium on which it is produced, reproduced, or store (including, without limitation, computer programs and files containing any requested information), and any recording or writing, as these terms are defined in Rule 1001 of the Federal Rules of Evidence. This definition encompasses all tangible Things, all originals (or, if originals are not available, identical copies thereof), all non-identical copies of a Document, all drafts of final Documents, all other written, printed, or recorded matter of any kind, Source Code, and all other data compilations from which information can be obtained and translated if necessary, that are or have been in your actual or constructive possession or control, regardless of the medium on which they are produced, reproduced, or stored (including, without limitation, computer programs and files containing any requested information together with instructions or programs necessary to search and retrieve such data and hard copies where available and retrievable), any recording or writing, and/or any other documentary material of any nature.

10.     "Thing(s)" has the broadest meaning allowable under Rule 34 of the Federal Rules of Civil Procedure. This meaning encompasses any tangible object of any kind and nature other than a Document, including, without limitation, prototypes, models, and physical specimens thereof.

11.     "Entity(ies)" means any Person, corporation, company, partnership, sole proprietorship, firm, board, joint venture, association, organization, trust, governmental body, agency authority, commission, or any other juristic Person, business unit, or collective organization, and any legal, governmental, organizational, or political subdivision thereof. The acts of an Entity shall include the acts of its directors, officers, owners, members, employees, agents, attorneys, and all other representatives acting on the Entity's behalf.

12.     "Person(s)" means any natural individual or individuals.

13.     "Employee" includes persons both currently or formerly employed.

14.     "Communication(s)" means, without limitation, any oral, written, or other contact between two or more Persons or Entities by which any information or knowledge of any nature is transmitted or conveyed or attempted to be transmitted or conveyed, including letters, memoranda, telegrams, telefaxes, telecopies, telexes or emails, text messages, face-to-face meetings, telephone conversations, voicemails, answering machine messages, and telephonic notes.

15.     "Concerning" means, without limitation, concerning, regarding, describing, comprising, referring to, Related To, supporting, favoring, opposing, bolstering, detracting from, located in, considered in connection with, bearing on, evidencing, indicating, reporting on, recording, alluding to, responding to, connected with, commenting on, in respect of, about, in Relation to, discussing, showing, describing, reflecting, analyzing, constituting, or being.

13

16.     "Relate To," "Relating To," or "Related To," when referring to any given subject matter means, without limitation, any Document or Thing that in whole or in part and directly or indirectly relates to, concerns, regards, discusses, describes, depicts, demonstrates, shows, evidences, supports, refutes, contradicts, summarizes, analyzes, bears upon, comments upon, pertains to, constitutes, comprises, involves, contains, embodies, reflects, alludes to, identifies, states, mentions, refers to, deals with, or is in any way relevant to the particular subject matter identified.

17.     The singular form of each word shall be interpreted in the plural as well.

18.     Any pronoun shall be construed to refer to the masculine, feminine, or neuter gender as is most appropriate in each case.

19.     The words "and," "or," and "and/or" shall be construed conjunctively or disjunctively, whichever maximizes the scope of each Request in which they are used.

20.     The words "any" and "all" shall be construed to mean "any and all."

21.     The words "each" and "every" shall be construed to mean "each and every."

22.     The word "including" and every variant thereof shall be construed to mean "including, without limitation."

## DEPOSITION TOPICS

1.     The methods used to transport coal to the combustion chambers for the coal-fired units at the Mt. Storm Power Plant during any period of time that Refined Coal was used for combustion at the Mt. Storm Power Plant.

2.     The use of Refined Coal for combustion at the Mt. Storm Power Plant, including the periods of time that Refined Coal was used for combustion at the Mt. Storm Power Plant.

3.    The amount of Refined Coal combusted at the Mt. Storm Power Plant for which no form of activated carbon was injected downstream of the combustion chamber following the combustion of the Refined Coal.

4.    The identification of any periods of time that the Mt. Storm Power Plant used Refined Coal for combustion without also injecting any form of activated carbon into a mercury-containing gas downstream from a combustion chamber.

5.    For any periods of time when the Mt. Storm Power Plant used Refined Coal for combustion, the identification and description of the mercury emission control technologies in place or used at the Mt. Storm Power Plant that involved the injection of any form of activated carbon into a mercury-containing gas downstream from a combustion chamber, including, but not limited to the identification of the dates that each identified mercury emission control technology was in operation, and if applicable, ceased operation (either permanently or temporarily), at the Mt. Storm Power Plant.

6.    The identification and description of the mercury emission control technologies in place or used at the Mt. Storm Power Plant at any time that involved the use of Refined Coal for combustion without also injecting any form of activated carbon into a mercury-containing gas downstream from a combustion chamber, including the identification of the dates that each identified mercury emission control technology was in operation, and if applicable, ceased operation (either permanently or temporarily), for use at the Mt. Storm Power Plant.

7.    Any decision, and the factors used in reaching any identified decision, made by Mt. Storm Power Plant to operate a coal fired power plant at the Mt. Storm Power Plant using Refined Coal for combustion without also injecting some form of activated carbon into a mercury-containing gas downstream from a combustion chamber.

8.      Any decision, and the factors used in reaching any identified decision, made by you to install and use equipment for injecting some form of activated carbon downstream from a combustion chamber at the Mt. Storm Power Plant.

9.      For any period of time that any of the three coal-fired units at the Mt. Storm Power Plant used Refined Coal for combustion, the identification of any period of time when mercury emission control technology(ies) involving injecting any form of activated carbon into a mercury-containing gas downstream from a combustion chamber was used on at least one operating coal-fired unit but not on all operating coal-fired unit(s), and the identification and description of the feed stocks of Refined Coal that were used on the operating coal-fired units during these identified periods of time.

10.      For any period of time that any of the three coal-fired units at the Mt. Storm Power Plant used Refined Coal for combustion up to December 31, 2021, the Mt. Storm Power Plant's record of compliance with MATS and any state-based mercury emission control standards.

11.      The methods used to transport coal to the combustion chambers for the coal-fired units at the Chesterfield Power Station during any period of time that Refined Coal was used for combustion at the Chesterfield Power Station.

12.      The use of Refined Coal for combustion at the Chesterfield Power Station, including the periods of time of that Refined Coal was used for combustion at the Chesterfield Power Station.

13.      The amount of Refined Coal combusted at the Chesterfield Power Station for which no form of activated carbon was injected downstream of the combustion chamber following the combustion of the Refined Coal.

14.     The identification of any periods of time that the Chesterfield Power Station used Refined Coal for combustion for the coal-fired units at the Chesterfield Power Station without also injecting any form of activated carbon into a mercury-containing gas downstream from a combustion chamber of the coal-fired units.

15.     For any periods of time when the Chesterfield Power Station used Refined Coal for combustion, the identification and description of the mercury emission control technologies in place or used in connection with the coal-fired combustion chambers at the Chesterfield Power Station that involved the injection of any form of activated carbon into a mercury-containing gas downstream from a coal-fired combustion chamber, including, but not limited to the identification of the dates that each identified mercury emission control technology was in operation, and if applicable, ceased operation (either permanently or temporarily),  for use at the Chesterfield Power Station.

16.     The identification and description of the mercury emission control technologies in place or used in connection with the coal-fired combustion chambers at the Chesterfield Power Station at any time that involved the use of Refined Coal for combustion without also injecting any form of activated carbon into a mercury-containing gas downstream from a coal-fired combustion chamber, including the identification of the dates that each identified mercury emission control technology was in operation, and if applicable, ceased operation (either permanently or temporarily),  for use at the Chesterfield Power Station.

17.     Any decision, and the factors used in reaching any identified decision, made by Chesterfield Power Station to operate a coal fired power plant at the Chesterfield Power Station using Refined Coal for combustion without also injecting some form of activated carbon into a mercury-containing gas downstream from a coal-fired combustion chamber.

17

18.     Any decision, and the factors used in reaching any identified decision, made by you to install and use equipment for injecting some form of activated carbon downstream from a coal-fired combustion chamber at the Chesterfield Power Station.

19.     For any period of time that the two coal-fired units at the Chesterfield Power Station used Refined Coal for combustion, the identification of any period of time when mercury emission control technology(ies) involving injecting any form of activated carbon into a mercury-containing gas downstream from a coal-fired combustion chamber was used on one operating coal-fired unit but not on the other operating coal-fired unit, and the identification and description of the feed stocks of Refined Coal that were used on the two operating coal-fired units during these identified periods of time.

20.     For any period of time that the two coal-fired units at the Chesterfield Power Station used Refined Coal for combustion up to December 31, 2021, the Chesterfield Power Station's record of compliance for its coal-fired units with MATS and any state-based mercury emission control standards.

**<u>EXHIBIT C</u>**

**PROTECTIVE ORDER**

The Amended Protective Order (D.I. 182) is attached following this page.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

**MIDWEST ENERGY EMISSIONS CORP.**
**and MES INC.,**

**Plaintiffs,**

**v.**

**VISTRA ENERGY CORP., et al.**

**Defendants.**

C.A. No. 19-1334-RGA-CJB

**JURY TRIAL DEMANDED**

## <u>AMENDED PROTECTIVE ORDER</u>

WHEREAS, Plaintiffs Midwest Energy Emissions Corp. and MES Inc. ("ME2C") and

Defendants Illinois Power Resources Generating, LLC, Dynegy Midwest Generation LLC, Electric

Energy, Inc., Illinois Power Generating Company, Coleto Creek Power, LLC, Oak Grove

Management Company LLC, and Luminant Generation Company LLC (collectively, "Vistra");

AEP Generation Resources Inc., Southwestern Electric Power Co., Cardinal Operating Company,

LLC, and AEP Texas Inc. (collectively, "AEP"); NRG Energy, Inc., NRG Texas Power LLC,

Midwest Generation EME, LLC, Midwest Generation, LLC (collectively, "NRG"); Talen Energy

Corporation, Brandon Shores LLC, Talen Generation LLC, and H. A. Wagner LLC (collectively,

"Talen"), (Vistra, AEP, NRG, and Talen, are referred to collectively as "Coal Plant Defendants");

Arthur J. Gallagher & Co., Gallagher Clean Energy, LLC, and AJG Coal, LLC ("AJG"); DTE REF

Holdings, LLC, DTE REF Holdings II LLC ("DTE"); CERT Coal Holdings LLC, CERT Holdings

LLC, CERT Holdings 2018, LLC, CERT Operations LLC, CERT Operations II LLC, CERT

Operations III LLC, CERT Operations IV LLC, CERT Operations V LLC, CERT Operations RCB

LLC ("CERT"); Chem-Mod LLC ("Chem-Mod"); and the additional named and unnamed entities

referred to below as the "RC Defendants": AJG Iowa Refined Coal LLC, Joppa Refined Coal LLC,

Thomas Hill Refined Coal LLC, Wagner Coaltech LLC, Walter Scott Refined Coal LLC, Louisa Refined Coal, LLC, Belle River Fuels Company, LLC, Arbor Fuels Company, LLC, Portage Fuels Company, LLC, and John Doe LLCs (all of these entities are referred to collectively as "Defendants"), hereafter referred to as "the Parties," believe that certain information that is or will be encompassed by discovery demands by the Parties involves the production or disclosure of trade secrets, confidential business information, or other proprietary information;

WHEREAS, the Parties seek a protective order limiting disclosure thereof in accordance with Federal Rule of Civil Procedure 26(c):

THEREFORE, it is hereby stipulated among the Parties and ORDERED that:

1.   Each Party may designate as confidential for protection under this Order, in whole or in part, any document, information or material that constitutes or includes, in whole or in part, confidential or proprietary information or trade secrets of the Party or a Third Party to whom the Party reasonably believes it owes an obligation of confidentiality with respect to such document, information or material ("Protected Material"). Protected Material shall be designated by the Party producing it by affixing a legend or stamp on such document, information or material as follows: "CONFIDENTIAL" or "RESTRICTED – ATTORNEYS' EYES ONLY." The words "CONFIDENTIAL" or "RESTRICTED – ATTORNEYS' EYES ONLY" shall be placed clearly on each page of the Protected Material (except deposition and hearing transcripts) for which such protection is sought.  For deposition and hearing transcripts, the words "CONFIDENTIAL" or "RESTRICTED – ATTORNEYS' EYES ONLY" shall be placed on the cover page of the transcript (if not already present on the cover page of the transcript when received from the court reporter) by each attorney receiving a copy of the transcript after that attorney receives notice

2

of the designation of some or all of that transcript as "CONFIDENTIAL" or "RESTRICTED – ATTORNEYS' EYES ONLY."

2.  Any document produced before issuance of this Order and deemed Confidential under Civil Local Rule 26.2 shall be subject, starting from the date this Order is issued, to confidentiality under the terms of this Order.

3.  With respect to documents, information or material designated "CONFIDENTIAL" or "RESTRICTED – ATTORNEYS' EYES ONLY,"[1] subject to the provisions herein and unless otherwise stated, this Order governs, without limitation: (a) all documents, electronically stored information, and/or things as defined by the Federal Rules of Civil Procedure; (b) all pretrial, hearing or deposition testimony, or documents marked as exhibits or for identification in depositions and hearings; (c) pretrial pleadings, exhibits to pleadings and other court filings; (d) affidavits; and (e) stipulations.  All copies, reproductions, extracts, digests and complete or partial summaries prepared from any DESIGNATED MATERIALS shall also be considered DESIGNATED MATERIAL and treated as such under this Order.

4.  A designation of Protected Material (i.e., "CONFIDENTIAL" or "RESTRICTED – ATTORNEYS' EYES ONLY") may be made at any time.  Inadvertent or unintentional production of documents, information or material that has not been designated as DESIGNATED MATERIAL shall not be deemed a waiver in whole or in part of a claim for confidential treatment.  Any party that inadvertently or unintentionally produces Protected Material without designating it as DESIGNATED MATERIAL may request destruction of

---

[1] The term DESIGNATED MATERIAL is used throughout this Protective Order to refer to the class of Protected Material that has been designated as "CONFIDENTIAL" or "RESTRICTED – ATTORNEYS' EYES ONLY," both individually and collectively.

that Protected Material by notifying the recipient(s), as soon as reasonably possible after the producing Party becomes aware of the inadvertent or unintentional disclosure, and providing replacement Protected Material that is properly designated.  The recipient(s) shall then destroy all copies of the inadvertently or unintentionally produced Protected Materials and any documents, information or material derived from or based thereon.

5.   To the extent that any one of the Power-Plant Defendants in this litigation provides Designated Material under the terms of this Order to Plaintiffs, whether in the form of documents or testimony, Plaintiffs shall not share that material with any other Power-Plant Defendant in this litigation (*e.g.*, in Court filings, oral argument in Court, expert reports, deposition, discovery requests, discovery responses, or any other means), absent express written permission from the producing Power-Plant Defendant or an order from the Court. This Order does not confer any right to any one Defendant to access the Protected Material or Designated Material of any other Defendant.

6.   "CONFIDENTIAL" documents, information and material may be disclosed only to the following persons, except upon receipt of the prior written consent of the designating party, upon order of the Court, or as otherwise set forth in this Order:

(a)   outside counsel of record in this Action for the Parties;

(b)   employees of such counsel assigned to and reasonably necessary to assist such counsel in the litigation of this Action;

(c)   in-house counsel for the Parties who either have responsibility for making decisions dealing directly with the litigation of this Action, or who are assisting outside counsel in the litigation of this Action, provided that the parties shall identify to other parties by name and title any in-house counsel who will be given access to CONFIDENTIAL documents and information pursuant to paragraph 6(c), and state that such counsel (i) either has responsibility for making decisions dealing directly with the litigation of this Action, or is assisting outside counsel in the litigation of this Action, and (ii) agrees to be bound by the terms of the Protective Order;

(d)     up to and including three (3) designated representatives of each of the Parties to the extent reasonably necessary for the litigation of this Action, except that either party may in good faith request the other party's consent to designate one or more additional representatives, the other party shall not unreasonably withhold such consent, and the requesting party may seek leave of Court to designate such additional representative(s) if the requesting party believes the other party has unreasonably withheld such consent;

(e)     outside consultants or experts (*i.e.*, not current employees or affiliates of a Party or an affiliate of a Party) who are retained for the purpose of this litigation, provided that: (1) such consultants or experts are not currently employed or retained as consultants to such Party for purposes of providing strategic business advice relating to the subject of this Action, or for the purpose of providing strategic technical advice (other than litigation advice) relating to the subject of this Action; (2) any professionals working on this litigation under the Expert's or Consultant's supervision are not current employees of a party; and (3) before access is given, the consultant or expert has completed the Undertaking attached as Exhibit A hereto and the same is served upon the producing Party with a current curriculum vitae of the consultant or expert at least ten (10) days before access to the Protected Material is to be given to that consultant or Undertaking to object to and notify the receiving Party in writing that it objects to disclosure of Protected Material to the consultant or expert. The Parties agree to promptly confer and use good faith to resolve any such objection. If the Parties are unable to resolve any objection, the objecting Party may file a motion with the Court within fifteen (15) days of the notice, or within such other time as the Parties may agree, seeking a protective order with respect to the proposed disclosure. The objecting Party shall have the burden of proving the need for a protective order. No disclosure shall occur until all such objections are resolved by agreement or Court order;

(f)     independent litigation support services, including persons working for or as court reporters, graphics or design services, jury or trial consulting services (including but not limited to mock jurors), and photocopy, document imaging, and database services retained by counsel and reasonably necessary to assist counsel with the litigation of this Action; and

(g)     the Court and its personnel.

7.     Except as otherwise agreed by the Parties, a Party or Third Party shall designate documents, information or material as "CONFIDENTIAL" only upon a good faith belief that the documents, information or material contains confidential or proprietary information or trade secrets of the Party or a Third Party to whom the Party reasonably

believes it owes an obligation of confidentiality with respect to such documents, information or material.

8. Documents, information or material produced pursuant to any discovery request in this Action, including but not limited to Protected Material designated as DESIGNATED MATERIAL, shall be used by the Parties only in the litigation of this Action and shall not be used for any other purpose.   Any person or entity who obtains access to DESIGNATED MATERIAL or the contents thereof pursuant to this Order shall not make any copies, duplicates, extracts, summaries or descriptions of such DESIGNATED MATERIAL or any portion thereof except as may be reasonably necessary in the litigation of this Action.  Any such copies, duplicates, extracts, summaries or descriptions shall be classified DESIGNATED MATERIALS and subject to all of the terms and conditions of this Order.

9. To the extent a producing Party believes that certain Protected Material qualifying to be designated CONFIDENTIAL is so sensitive that its dissemination deserves even further limitation, or as otherwise agreed by the Parties, the producing Party may designate such Protected Material "RESTRICTED – ATTORNEYS' EYES ONLY."

10. For Protected Material designated "RESTRICTED – ATTORNEYS' EYES ONLY", access to, and disclosure of, such Protected Material shall be limited to individuals listed in paragraphs 6(a-c) and (e-g); provided, however, that access by in-house counsel pursuant to paragraph 6(c) be limited to in-house counsel who exercise no competitive decision-making authority on behalf of the client.  The parties shall identify to other parties by name and title any in-house counsel who will be given access to "RESTRICTED – ATTORNEYS' EYES ONLY" documents and information, and state that such counsel (i) either has responsibility for making decisions dealing directly with the litigation of this

Action, or is assisting outside counsel in the litigation of this Action, (ii) exercises no competitive decision-making authority on behalf of the client or any other party to this Action, and (iii) agrees to be bound by the terms of the Protective Order.  The Parties agree that nothing herein shall prevent the Parties' counsel from giving legal advice to their respective clients based on DESIGNATED MATERIAL protected by this Order.

11.   Any attorney representing a Party, whether in-house or outside counsel, and any person associated with a Party and permitted to receive another Party's Protected Material who obtains, receives, has access to, or otherwise learns, in whole or in part, another Party's Designated Material under this Order shall not be involved in Prosecution Activity on behalf of the receiving Party or its acquirer, successor, predecessor, or other affiliate during the pendency of this Action and for one year after its conclusion, including any appeals.  To ensure compliance with the purpose of this provision, each Party shall create an "Ethical Wall" between those persons with access to Protected Material and any individuals who, on behalf of the Party or its acquirer, successor, predecessor, or other affiliate are involved in Prosecution Activity. For purposes of this paragraph, "involved in Prosecution Activity" shall mean directly or indirectly drafting or amending claims, or advising others who are drafting or amending claims, with respect to patent claims or patent specifications in the United States or elsewhere in the field of mercury removal from coal-fired power plants. To avoid any doubt, "involved in Prosecution Activity" as used in this paragraph does not include representing a party either challenging or defending a patent before a domestic or foreign agency, including but not limited to reissue, reexamination, *inter partes* review, or other post grant administrative proceedings, but this provision would preclude advising

directly or indirectly on any amendments to the claims of the patent being challenged in such proceedings.

12.   Nothing in this Order shall require production of documents, information or other material that a Party contends is protected from disclosure by the attorney-client privilege, the work product doctrine, or other privilege, doctrine, or immunity.  If documents, information or other material subject to a claim of attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity is inadvertently or unintentionally produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any such privilege, doctrine, or immunity.   Any Party that inadvertently or unintentionally produces documents, information or other material it reasonably believes are protected under the attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity may obtain the return or destruction of such documents, information or other material by promptly notifying the recipient(s) and providing a privilege log for the inadvertently or unintentionally produced documents, information or other material.  The recipient(s): (1) shall not use, and shall immediately cease any prior use of, such documents, information, or other material; (2) not later than three (3) business days after receipt of the producing Party's notice, shall return to the producing Party (except for any pages containing privileged or otherwise protected markings by the recipient(s), which pages shall instead be destroyed) or destroy all copies of such documents, information or other material; and (3) shall certify to the producing Party that the recipient(s) have taken the aforementioned steps. The recipient(s) may seek to compel the production of inadvertently-produced documents or information that the producing Party has requested to claw back on the basis of attorney-client privilege, work product, or another privilege.

Any such effort shall not disclose or otherwise use the content of the inadvertently produced document or information that was the subject of the claw-back request, beyond any information appearing on the privilege log.  The Parties expressly acknowledge that documents that a Producing Party contends were inadvertently produced and seeks to claw back on the basis of attorney-client privilege, work product, or another privilege, must be returned and cannot be sequestered or otherwise retained by any recipient for submission to the Court.  Outside counsel for the producing Party and outside counsel for the recipient(s) shall meet and confer in accordance with applicable law or Court rules regarding any such request to compel production.

13.   There shall be no disclosure of any DESIGNATED MATERIAL by any person authorized to have access thereto to any person who is not authorized for such access under this Order. The Parties are hereby ORDERED to safeguard all such documents, information and material to protect against disclosure to any unauthorized persons or entities.

14.   Nothing contained herein shall be construed to prejudice any Party's right to use any DESIGNATED MATERIAL in taking testimony at any deposition or hearing provided that the DESIGNATED MATERIAL is only disclosed to a person(s) who is: (i) eligible to have access to the DESIGNATED MATERIAL by virtue of his or her employment with the designating party, (ii) identified in the DESIGNATED MATERIAL as an author, addressee, or copy recipient of such information, (iii) although not identified as an author, addressee, or copy recipient of such DESIGNATED MATERIAL, has, in the ordinary course of business, seen such DESIGNATED MATERIAL, (iv) a current or former officer, director or employee of the producing Party or a current or former officer, director or employee of a company affiliated with the producing Party; (v) counsel for a Party, including outside

counsel and in-house counsel (except as otherwise dictated by paragraph 10 of this Order); (vi) an independent contractor, consultant, and/or expert retained for the purpose of this litigation; (vii) court reporters and videographers; (viii) the Court; or (ix) other persons entitled hereunder to access to DESIGNATED MATERIAL. DESIGNATED MATERIAL shall not be disclosed to any other persons unless prior authorization is obtained from counsel representing the producing Party or from the Court.

15. Parties may, at the deposition or hearing or within fourteen (14) days after receipt of a deposition or hearing transcript, designate the deposition or hearing transcript or any portion thereof as "CONFIDENTIAL" or "RESTRICTED – ATTORNEYS' EYES ONLY," pursuant to this Order.   Access to the deposition or hearing transcript so designated shall be limited in accordance with the terms of this Order.  Until expiration of the 14-day period, the entire deposition or hearing transcript shall be treated as RESTRICTED – ATTORNEYS' EYES ONLY.

16. Any DESIGNATED MATERIAL that is filed with the Court shall be filed under seal and shall remain under seal until further order of the Court.   The filing party shall be responsible for informing the Clerk of the Court that the filing should be sealed and for placing the legend "FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER" above the caption and conspicuously on each page of the filing.    Exhibits to a filing shall conform to the labeling requirements set forth in this Order.   If a pretrial pleading filed under seal with the Court, or an exhibit thereto, discloses or relies on DESIGNATED MATERIAL, information or material, such confidential portions shall be redacted to the extent necessary and the pleading or exhibit filed publicly with the Court.

17.    Any Party intending to use Protected Material during any trial, hearing, or other court proceeding shall ensure compliance with this Order and avoid disclosure to persons and Parties not allowed to access such information, and shall give notice to the Party whose Protected Material is to be used.

18.    The Parties shall use reasonable care when designating documents or information as Protected Material, although nothing in this Order shall prevent a producing party from block designating documents it produces as DESIGNATED MATERIAL.   Further, nothing in this Order shall prevent a receiving Party from contending that any DESIGNATED MATERIAL has been improperly designated.   A Party may at any time request, in writing, that the designating Party cancel or modify the DESIGNATED MATERIAL designation with respect to any document or information contained therein. The Parties shall use their best efforts to resolve promptly and informally such disputes. If an agreement cannot be reached within ten (10) business days after receipt of the receiving Party's written challenge, the receiving Party may file a motion or other appropriate request that the Court cancel or modify a designation.   Upon any such application to the Court, the burden shall be on the designating Party to show why its classification is proper.   Such application shall be treated procedurally as a motion to compel pursuant to Federal Rules of Civil Procedure 37, subject to the Rule's provisions relating to sanctions.   In making such application, the requirements of the Federal Rules of Civil Procedure and the Local Rules of the Court shall be met.   Pending the Court's determination of the application, the designation of the designating Party shall be maintained.

19.   Each outside consultant or expert to whom DESIGNATED MATERIAL is disclosed in accordance with the terms of this Order shall be advised by counsel of the terms of this Order, shall be informed that he or she is subject to the terms and conditions of this Order, and shall sign an acknowledgment that he or she has received a copy of, has read, and has agreed to be bound by this Order.  A copy of the acknowledgment form is attached as Appendix A.

20.   To the extent that any discovery is taken of persons who are not Parties to this Action ("Third Parties") and in the event that such Third Parties contended the discovery sought involves trade secrets, confidential business information, or other proprietary information, then such Third Parties may agree to be bound by this Order.

21.   To the extent that discovery or testimony is taken of Third Parties, the Third Parties may designate as "CONFIDENTIAL" or "RESTRICTED – ATTORNEYS' EYES ONLY" any documents, information or other material, in whole or in part, produced or given by such Third Parties.   The Third Parties shall have ten (10) days after production of such documents, information or other materials to make such a designation.   Until that time period lapses or until such a designation has been made, whichever occurs sooner, all documents, information or other material so produced or given shall be treated as "CONFIDENTIAL" in accordance with this Order.

22.   Within thirty (60) days of final termination of this Action, including any appeals, all DESIGNATED MATERIAL, including all copies, duplicates, abstracts, indexes, summaries, descriptions, and excerpts or extracts thereof (excluding excerpts or extracts incorporated into any privileged memoranda of the Parties and materials which have been admitted into evidence in this Action), shall at the producing Party's election either be returned to the

producing Party or be destroyed.   The receiving Party shall verify the return or destruction by affidavit furnished to the producing Party, upon the producing Party's request. Notwithstanding the provisions of this paragraph, outside litigation counsel of record are not required to delete information that may reside on their respective firm's electronic back-up systems that are over-written in the normal course of business.   Further, outside counsel shall be entitled to maintain copies of all pleadings, expert reports, motions and trial briefs (including all supporting and opposing papers and exhibits thereto), written discovery requests and responses (and exhibits thereto), deposition transcripts (and exhibits thereto), trial transcripts and hearing transcripts, and exhibits offered or introduced into evidence at any hearing or trial, emails and their attachments, and attorney work product which refers or is related to any Protected Information solely for archival purposes.

23.   The failure to designate documents, information or material in accordance with this Order and the failure to object to a designation at a given time shall not preclude the filing of a motion at a later date seeking to impose such designation or challenging the propriety thereof.   The entry of this Order and/or the production of documents, information and material hereunder shall in no way constitute a waiver of any objection to the furnishing thereof, all such objections being hereby preserved.

24.   Any Party knowing or believing that any other party is in violation of or intends to violate this Order and has raised the question of violation or potential violation with the opposing party and has been unable to resolve the matter by agreement may move the Court for such relief as may be appropriate in the circumstances.   Pending disposition of the motion by the Court, the Party alleged to be in violation of or intending to violate this Order shall

discontinue the performance of and/or shall not undertake the further performance of any action alleged to constitute a violation of this Order.

25. Production of DESIGNATED MATERIAL by each of the Parties shall not be deemed a publication of the documents, information and material (or the contents thereof) produced so as to void or make voidable whatever claim the Parties may have as to the proprietary and confidential nature of the documents, information or other material or its contents.

26. Nothing in this Order shall be construed to effect an abrogation, waiver or limitation of any kind on the rights of each of the Parties to assert any applicable discovery or trial privilege.

27. Each of the Parties shall also retain the right to file a motion with the Court (a) to modify this Order to allow disclosure of DESIGNATED MATERIAL to additional persons or entities if reasonably necessary to prepare and present this Action and (b) to apply for additional protection of DESIGNATED MATERIAL.

28. To the extent a producing Party believes that certain Protected Material qualifying to be designated CONFIDENTIAL is so sensitive that its dissemination deserves even further limitation, or as otherwise agreed by the Parties, the producing Party may designate such Protected Material "RESTRICTED – OUTSIDE ATTORNEYS' EYES ONLY." The term DESIGNATED MATERIAL as used in this protective order also encompasses material designated RESTRICTED – OUTSIDE ATTORNEYS' EYES ONLY.

29. For Protected Material designated "RESTRICTED – OUTSIDE ATTORNEYS' EYES ONLY", access to, and disclosure of, such Protected Material shall be limited to individuals listed in paragraphs 6(a-b) and (e-g).

30. Other Proceedings. By entering this order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that information

may be relevant and subject to disclosure in another case.  Any person or party subject to this order who becomes subject to a motion to disclose another party's information designated as confidential pursuant to this order shall promptly notify that party of the motion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed.

Dated:  August 6, 2020

DEVLIN LAW FIRM LLC

/s/ James M. Lennon
James M. Lennon (No. 4570)
1526 Gilpin Avenue
Wilmington, DE 19806
(302) 449-9010
jlennon@devlinlawfirm.com

*Attorneys for Plaintiffs Midwest Energy Emissions Corp. and MES Inc.*

FAEGRE DRINKER BIDDLE & REATH LLP

/s/ Thatcher A. Rahmeier
Francis DiGiovanni (#3189)
Thatcher A. Rahmeier (#5222)
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
(302) 467-4200
francis.digiovanni@faegredrinker.com
thatcher.rahmeier@faegredrinker.com

*Attorneys for Defendants Talen Energy Corporation, Brandon Shores LLC, Talen Generation LLC, and H.A. Wagner LLC*

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Brian P. Egan
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
began@mnat.com

*Attorneys for Defendants
AJG Coal, LLC
AJG Iowa Refined Coal LLC
Arbor Fuels Company, LLC*

RICHARDS, LAYTON & FINGER, P.A.

/s/ Tyler E. Cragg
Frederick L. Cottrell, III (#2555)
Tyler E. Cragg (#6398)
One Rodney Square
920 N. King Street
Wilmington, DE 19801
(302) 651-7700
cottrell@rlf.com
cragg@rlf.com

*Attorneys for Defendants NRG Energy, Inc., NRG Texas Power LLC, Midwest Generation EME,LLC, and Midwest Generation, LLC*

*Arthur J. Gallagher & Co.*
*Belle River Fuels Company, LLC*
*Chem-Mod-LLC*
*DTE REF Holdings LLC*
*DTE REF Holdings II LLC*
*Gallagher Clean Energy LLC*
*Joppa Refined Coal LLC*
*Louisa Refined Coal, LLC*
*Portage Fuels Company, LLC*
*Thomas Hill Refined Coal LLC*
*Wagner Coaltech LLC*
*Walter Scott Refined Coal LLC*

MORRIS, NICHOLS, ARSHT
  & TUNNELL LLP

*/s/ Rodger D. Smith II*
Rodger D. Smith II (#3778)
Lucinda C. Cucuzzella (#3491)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@mnat.com
ccucuzzella@mnat.com
*Attorneys for Defendants*
*AEP Generation Resources Inc.,*
*Southwestern Electric Power Co.,*
*and AEP Texas Inc.*

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

*/s/ Jessica R. Kunz*
Robert S. Saunders (ID No. 3027)
Jessica R. Kunz (ID No. 5698)
One Rodney Square
P.O. Box 636
Wilmington, DE 19899-0636
(302) 651-3000
rob.saunders@skadden.com
jessica.kunz@skadden.com

*Attorneys for Defendants CERT Coal Holdings*
*LLC, CERT Holdings LLC, CERT Holdings*
*2018, LLC, CERT Operations LLC, CERT*
*Operations II LLC, CERT Operations III, LLC,*
*CERT Operations IV, LLC,CERT Operations*
*V LLC, and CERT Operations RBC LLC*

SO ORDERED this ___7th___ day of _____August_____, 2020.

___Christopher J. Burke___
United States Magistrate Judge

16

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **MIDWEST ENERGY EMISSIONS CORP. and MES INC.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | C.A. No. 19-1334-RGA-CJB |
| **v.** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **VISTRA ENERGY CORP., et al.,** | § | |
| | | |
| **Defendants.** | | |

**APPENDIX A
UNDERTAKING OF EXPERTS OR CONSULTANTS REGARDING
PROTECTIVE ORDER**

I, _____ declare that:

1. My address is _____.

   My current employer is _____.

   My current occupation is _____.

2. I have received a copy of the Protective Order in this action.  I have carefully read and understand the provisions of the Protective Order.

3. I will comply with all of the provisions of the Protective Order.  I will hold in confidence, will not disclose to anyone not qualified under the Protective Order, and will use only for purposes of this action any information designated as "CONFIDENTIAL" or "RESTRICTED – ATTORNEYS' EYES ONLY" that is disclosed to me.

4. I will ensure that those assisting me for the purpose of this litigation will comply with all provisions of the Protective Order, and will hold in confidence, will not disclose to anyone not qualified under the Protective Order, and will use only for the purposes of this

1

action any information designated as "CONFIDENTIAL" or "RESTRICTED –
ATTORNEYS' EYES ONLY".

5.      Promptly upon termination of these actions, I will return all documents and things

designated as   "CONFIDENTIAL" or "RESTRICTED – ATTORNEYS' EYES ONLY"

that came into my possession, and all documents and things that I have prepared relating

thereto, to the outside counsel for the Party by whom I am employed.

6.      I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the

Protective Order in this action.

I declare under penalty of perjury that the foregoing is true and correct.

Signature _____

Date _____