IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MIDWEST ENERGY EMISSIONS CORP. AND MES INC., <br><br> Plaintiffs, <br><br> v, <br><br> ARTHUR J. GALLAGHER & CO., *et al.*, <br><br> Defendants. | Civil Action No. 19-1334 (CJB) |

**CERTAIN DEFENDANTS' NOTICE OF DEPOSITION OF THIRD PARTY VIRGINIA ELECTRIC AND POWER COMPANY UNDER FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that pursuant to Rules 26 and 30 of the Federal Rules of Civil Procedure, Defendants CERT Operations II LLC, CERT Operations IV LLC, CERT Operations V LLC, CERT Operations RCB LLC, Senescence Energy Products, LLC, Springhill Resources LLC, Buffington Partners LLC, Bascobert (A) Holdings LLC, Larkwood Energy LLC, Cottbus Associates LLC, Marquis Industrial Company, LLC, and Rutledge Products, LLC (collectively, "Defendants"), will take the deposition upon oral examination of Virginia Electric and Power Company ("VEPCO"). The deposition will commence on Monday, September 12, 2022, at 8:00 a.m. Central (9:00 a.m. Eastern/7:00 a.m. Mountain). The deponent's designated witness(es) will be present at the Offices of Virginia Electric and Power Company 120 Tredegar Street, Richmond, Virginia 23219. The deposition will be conducted remotely via Zoom (or similar videoconferencing technology) before an officer authorized to administer oaths. The deposition will be recorded stenographically and will be videotaped.

1

PLEASE TAKE FURTHER NOTICE THAT, pursuant to Federal Rule of Civil Procedure 30(b)(6), the deponent shall, and has agreed to, designate one or more officers, directors, managing agents, or other persons who consent to testify on its behalf and who are most knowledgeable and competent to testify concerning each of the Topics set forth in Schedule A.

Dated: September 8, 2022

|  |  |
|---|---|
| OF COUNSEL:<br><br>Jeff Dyess<br>Paul Sykes<br>Benn Wilson<br>BRADLEY ARANT BOULT CUMMINGS LLP<br>1819 Fifth Avenue North<br>Birmingham, AL 35203<br>(205) 521-8000<br><br>Jessica Zurlo<br>BRADLEY ARANT BOULT CUMMINGS LLP<br>1615 L Street NW<br>Ste 1350<br>Washington, D.C. 20036<br>(202) 393-7150 |   /s/ Kenneth L. Dorsney<br>Kenneth L. Dorsney (#3726)<br>Cortlan S. Hitch (#6720)<br>MORRIS JAMES LLP<br>500 Delaware Avenue, Suite 1500<br>Wilmington, DE 19801<br>(302) 888-6800<br>kdorsney@morrisjames.com<br>chitch@morrisjames.com<br><br>*Attorneys for Defendants CERT Operations IV LLC, CERT Operations V LLC, CERT Operations RCB LLC, Senescence Energy Products, LLC, Springhill Resources LLC, Buffington Partners LLC, Bascobert (A) Holdings LLC, Larkwood Energy LLC, Cottbus Associates LLC, CERT Operations II LLC, Marquis Industrial Company, LLC, and Rutledge Products, LLC.* |

## SCHEDULE A

### DEFINITIONS

Unless otherwise indicated, the following definitions shall apply to the following Requests. Any term used but not defined herein shall have the broadest meaning ascribed to such term in the Federal Rules of Civil Procedure and the Federal Rules of Evidence, as applicable.

1. "VEPCO," "you," "your," and "yourself" means Virginia Electric and Power Company.

2. "Mt. Storm" or the "Mt. Storm Power Plant" is the coal-fired power plant located at Mt. Storm, West Virginia owned and operated by VEPCO.

3. "Chesterfield" or the "Chesterfield Power Station" is the coal-fired power plant located at Chester, Virginia owned and operated by VEPCO.

4. "Refined Coal" includes any coal or coal byproduct treated with bromine, any bromide compound, or any other halogen or halide compound prior to combustion or any "refined coal" as defined by 26 U.S.C. § 45(c)(7).

5. "MATS" means the Mercury and Air Toxics Standards issued by the U.S. Environmental Protection Agency.

6. "Defendants" means collectively CERT Operations II LLC, CERT Operations IV LLC, CERT Operations V LLC, CERT Operations RCB LLC, Senescence Energy Products, LLC, Springhill Resources LLC, Buffington Partners LLC, Bascobert (A) Holdings LLC, Larkwood Energy LLC, Cottbus Associates LLC, Marquis Industrial Company, LLC, and Rutledge Products, LLC, and any other person or entity Plaintiffs are permitted to name as a Defendant in any supplement or amendment to the Fourth Amended Complaint.

7. "Plaintiff" or "ME2C" means Midwest Energy Emissions Corp. and MES Inc. collectively and severally.

8. "Fourth Amended Complaint," and "4AC" means the Fourth Amended Complaint, filed by Plaintiffs on May 3, 2022 as well as any supplements thereto or amended version thereof.

9. "Document(s)" is defined broadly to be given the full scope of that term as contemplated in Rule 34 of the Federal Rules of Civil Procedure and includes any Thing, any written or graphic matter, and any medium of any type or description upon which intelligence or information is recorded or from which intelligence or information can be perceived, that is or has been in your actual or constructive possession, custody, or control, or of which you have knowledge, regardless of the medium on which it is produced, reproduced, or store (including, without limitation, computer programs and files containing any requested information), and any recording or writing, as these terms are defined in Rule 1001 of the Federal Rules of Evidence. This definition encompasses all tangible Things, all originals (or, if originals are not available, identical copies thereof), all non-identical copies of a Document, all drafts of final Documents, all other written, printed, or recorded matter of any kind, Source Code, and all other data compilations from which

information can be obtained and translated if necessary, that are or have been in your actual or constructive possession or control, regardless of the medium on which they are produced, reproduced, or stored (including, without limitation, computer programs and files containing any requested information together with instructions or programs necessary to search and retrieve such data and hard copies where available and retrievable), any recording or writing, and/or any other documentary material of any nature.

10. "Thing(s)" has the broadest meaning allowable under Rule 34 of the Federal Rules of Civil Procedure. This meaning encompasses any tangible object of any kind and nature other than a Document, including, without limitation, prototypes, models, and physical specimens thereof.

11. "Entity(ies)" means any Person, corporation, company, partnership, sole proprietorship, firm, board, joint venture, association, organization, trust, governmental body, agency authority, commission, or any other juristic Person, business unit, or collective organization, and any legal, governmental, organizational, or political subdivision thereof. The acts of an Entity shall include the acts of its directors, officers, owners, members, employees, agents, attorneys, and all other representatives acting on the Entity's behalf.

12. "Person(s)" means any natural individual or individuals.

13. "Employee" includes persons both currently or formerly employed.

14. "Communication(s)" means, without limitation, any oral, written, or other contact between two or more Persons or Entities by which any information or knowledge of any nature is transmitted or conveyed or attempted to be transmitted or conveyed, including letters, memoranda, telegrams, telefaxes, telecopies, telexes or emails, text messages, face-to-face meetings, telephone conversations, voicemails, answering machine messages, and telephonic notes.

15. "Concerning" means, without limitation, concerning, regarding, describing, comprising, referring to, Related To, supporting, favoring, opposing, bolstering, detracting from, located in, considered in connection with, bearing on, evidencing, indicating, reporting on, recording, alluding to, responding to, connected with, commenting on, in respect of, about, in Relation to, discussing, showing, describing, reflecting, analyzing, constituting, or being.

16. "Relate To," "Relating To," or "Related To," when referring to any given subject matter means, without limitation, any Document or Thing that in whole or in part and directly or indirectly relates to, concerns, regards, discusses, describes, depicts, demonstrates, shows, evidences, supports, refutes, contradicts, summarizes, analyzes, bears upon, comments upon, pertains to, constitutes, comprises, involves, contains, embodies, reflects, alludes to, identifies, states, mentions, refers to, deals with, or is in any way relevant to the particular subject matter identified.

17. The singular form of each word shall be interpreted in the plural as well.

18. Any pronoun shall be construed to refer to the masculine, feminine, or neuter gender as is most appropriate in each case.

19. The words "and," "or," and "and/or" shall be construed conjunctively or disjunctively, whichever maximizes the scope of each Request in which they are used.

20. The words "any" and "all" shall be construed to mean "any and all."

21. The words "each" and "every" shall be construed to mean "each and every."

22. The word "including" and every variant thereof shall be construed to mean "including, without limitation."

## DEPOSITION TOPICS

1. The identification of any periods of time that Mt. Storm used Refined Coal for combustion.

2. The identification of all providers of Refined Coal for use at Mt. Storm and the period(s) of time the identified providers provided Refined Coal for use at Mt. Storm.

3. The identification of the documents sufficient to identify the source of Refined Coal combusted at Mt. Storm and the period(s) of time the identified sources provided Refined Coal for use at Mt. Storm.

4. The identification of the documents sufficient to identify the amount of Refined Coal combusted and when it was combusted at Mt. Storm.

5. For any periods of time when Mt. Storm used Refined Coal for combustion, the identification and description of the mercury emission control technologies in place or used at Mt. Storm, including but not limited to the identification of any mercury emission control technology(ies) that involved the use of any form of activated carbon, with the identification and description to include the identification of the dates that each identified mercury emission control technology was in operation for use at Mt. Storm.

6. Any consideration or evaluation by Mt. Storm of the use of the injection of any form of activated carbon as an emission control technology made during any period of time that Mt. Storm used Refined Coal for combustion.

7. The path followed and the methods used for the transport of coal from the coal yard to the combustion chambers for the coal-fired units at Mt. Storm during the period(s) of time that Refined Coal was used for combustion at Mt. Storm.

8. The identification of any periods of time that Chesterfield used Refined Coal for combustion.

9. The identification of all providers of Refined Coal for use at Chesterfield and the period(s) of time the identified providers provided Refined Coal for use at Chesterfield.

10. The identification of the documents sufficient to identify the source of Refined Coal combusted at Chesterfield and the period(s) of time the identified sources provided Refined Coal for use at Chesterfield.

11. The identification of the documents sufficient to identify the amount of Refined Coal combusted and when it was combusted at Chesterfield.

12.	For any periods of time when Chesterfield used Refined Coal for combustion, the identification and description of the mercury emission control technologies in place or used at Chesterfield, including but not limited to the identification of any mercury emission control technology(ies) that involved the injection or use of any form of activated carbon, with the identification and description to include the identification of the dates that each identified mercury emission control technology was in operation for use at Chesterfield.

13.	Any consideration or evaluation by Chesterfield of the use of the injection of any form of activated carbon as a mercury emission control technology made during any period of time that Chesterfield used Refined Coal for combustion.

14.	The path followed and the methods used for the transport of coal from the coal yard to the combustion chambers for the coal-fired units at Chesterfield during the period(s) of time that Refined Coal was used for combustion at Chesterfield.