Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
 2                 FOR THE DISTRICT OF DELAWARE
 3
       MIDWEST ENERGY EMISSIONS    )
 4     CORP. and MES, INC.,        )
                                   )
 5           Plaintiffs,           )
                                   )  CIV. NO.
 6     v.                          )  1:19-cv-01334-CJB
                                   )
 7     ARTHUR J. GALLAGHER &       )
       CO., et al.,                )
 8                                 )
             Defendants.           )
 9
10
11
12                        - - -
13               Monday, September 19, 2022
                 Motion for Reconsideration
                    Motion to Dismiss
14               Motion for Reconsideration
15                        - - -
16          A telephonic hearing in the above-captioned
17     matter commencing at 3:30 p.m., before Ellen Corbett
18     Hannum, Registered Merit Reporter and Notary Public.
19
20     BEFORE:  HON. CHRISTOPHER J. BURKE, USMJ
21
22               VERITEXT LEGAL SOLUTIONS
                 Registered Professional Reporters
23               300 Delaware Avenue, Suite 815
                 Wilmington, DE 19801
24                    (302) 571-0510
```

```
1   APPEARANCES:
2
                DEVLIN LAW
3                 BY:  ANDREW DEMARCO, ESQ.
                          and
4               CALDWELL CASSADY CURRY PC
                  BY:  JUSTIN T. NEMUNAITIS
5
                      Representing the Plaintiff
6
7               SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                  BY:  JESSICA R. KUNZ, ESQ.
8                         and
                BRADLEY ARANT BOULT CUMMINGS LLP
9                 BY:  JEFFREY D. DYESS, ESQ.
10                    Representing the Defendants
11                        and
12              MORRIS NICHOLS ARSHT & TUNNELL
                  BY:  ANTHONY RAUCCI, ESQ.
13                        and
                GIBSON, DUNN & CRUTCHER LLP
14                BY:  RICHARD W. MARK, ESQ.
                  BY:  JOSEPH EVALL, ESQ.
15                BY:  PAUL J. KREMER, ESQ.
16                    Representing the Refined Coal
                      Defendants
17
                          and
18
                PAUL SEITZ, ESQ.
19
                      Representing CERT Defendants
20
21              ALSO PRESENT:
22              STACEY HYATT
                      Midwest Energy Emissions Corp.
23
24
```

Page 3

1            THE COURT:  Good afternoon.  Why don't

2   we go on the record, and let me say for the record that

3   we are here this afternoon by way of a teleconference in

4   the matter of Midwest Energy Emissions Corp., et al. v.

5   Arthur J. Gallagher & Co., et al., Civil Action No.

6   1:19-cv-01334-CJB here in our court.

7            Before we go further.  Let's have counsel

8   for each side identify themselves for the record.  We

9   will start first with counsel for the Plaintiffs' side.

10  We will begin there with local counsel.

11           MR. DeMARCO:  Yes, Your Honor.  My name is

12  Andrew DeMarco of the Devlin Law Firm, here as Delaware

13  counsel for Plaintiffs.  Handling our argument today will

14  be Justin Nemunaitis, our co-counsel.

15           THE COURT:  Thank you.  We will do the

16  same for counsel on Defendants' side.  Again, begin with

17  Delaware counsel.

18           MR. RAUCCI:  Your Honor, this is Anthony

19  Raucci at Morris Nichols on behalf of the Refined Coal

20  Defendants, and with me on the line from Gibson Dunn are

21  Joseph Evall, Richard Mark and Paul Kremer.  Mr. Mark

22  will be addressing the Motion for Reconsideration and

23  Mr. Kremer will be addressing the Motion to Dismiss.

24           THE COURT:  Okay.  Thank you.  And as was

Page 4

1    noted, Counsel, and as you know we are here by the way of

2    this teleconference for arguments on two different

3    motions.  One is the Plaintiffs' Motion for

4    Reconsideration with regard to its request to file, for

5    leave to file a Fourth Amended Complaint or in the

6    alternative for leave to file a Fifth Amended Complaint.

7              And the second is with regard to

8    Defendants' Motion to Dismiss the Fourth Amended

9    Complaint.  So two motions at issue here today.

10             Let's take up the Defendants' Motion to

11   Dismiss first.  And then we will touch on Plaintiffs'

12   motion after that.  And on that motion I will turn to

13   Defendants' side first.

14             Mr. Kremer, you are going to be arguing

15   that one, am I right?

16             MR. KREMER:  Yes, Your Honor.

17             THE COURT:  Okay.  Mr. Kremer, let me just

18   start off with some questions.  I will certainly give you

19   a chance to add anything that you might wish to add.

20   There's this threshold issue of timeliness that's raised

21   by the Plaintiffs' side and then there's kind of a

22   substantive issue:  Is there sufficient expletive with

23   regard to the acts of encouragement.

24             On the first of those, the timeliness

1    issue, here is what it seems like what happened.  After I

2    give you what it looks like to me has happened, you tell

3    me if you think that's right or if I am not quite right.

4    It looks like what happened here is the general issue of

5    whether or not the plaintiff had sufficiently pleaded

6    indirect infringement allegations.  It came up in the

7    prior Motion to Amend.  It came up there in the context

8    that Defendants were resisting the Motion to Amend

9    because Defendants were then asserting that if I were to

10   allow the Motion to Amend the Complaint, it would be

11   futile.

12            And in doing so, in their letter with

13   regard to the Motion to Amend, the Defendants, the only

14   issue they raised as to futility in their letter briefing

15   was the issue of whether the Plaintiff had sufficiently

16   pleaded specific intent to infringe.  Now, in your

17   motion, in the opening brief, your Motion to Dismiss, you

18   kind of like tend at the Motion to Amend stage, you also

19   raised the issue of was there sufficient facts pleaded as

20   to the acts of encouragement part of an induced

21   infringement claim, but the only thing you cite there is

22   something that was said very briefly during the oral

23   argument on that motion.

24            When I went back and looked at the actual

Veritext Legal Solutions
215-241-1000 ~ 610-434-8588 ~ 302-571-0510 ~ 202-803-8830

Page 6

1   briefing that you filed, of course, the only issue raised

2   there was specific intent.  And that's the reason why the

3   Court in its oral order only addressed the issue of

4   specific intent when it came to the futility concerns.

5              And the Plaintiffs, I think pointing to

6   that and suggesting now you are not allowed to raise a

7   different issue as to why the claims aren't well pleaded

8   in the context of your Motion to Dismiss, which is the

9   issue of whether the Plaintiff has sufficiently alleged

10  facts, and for the kind of acts of encouragement part of

11  an induced infringement claim.  And one of your responses

12  there is, Well, look you can't use Rule 12(g)2 against us

13  because that rule only speaks to consecutive motions to

14  dismiss, and here the prior engagement by the parties was

15  on a Motion to Amend not a Motion to Dismiss.

16             And so it seems like the defendant is

17  saying, Look, whether you could say that we should have

18  raised this in the Motion to Amend stage or not, we tend

19  to raise it now and we are.  And that is how it's trying

20  to get around Plaintiffs' concerns about untimeliness.

21             That's the way it looks to me.

22             Am I wrong about any of that?  Would you

23  push back about any of that summary as to what happened?

24             MR. KREMER:  No.  I think that's generally

```
 1   correct, Your Honor.  I think there are a few additional
 2   points I would make just to complete the record here.
 3            It is true that Rule 12(g) does not bar
 4   arguments that could have been raised in some other
 5   posture under other rules.  We are not aware of any
 6   precedent for applying Rule 12(g) in that way.
 7            And in the Motion to Dismiss context we
 8   have in fact raised this argument each time it's been
 9   available to us.  In the original Complaint, back in
10   2019, and then in the more recent Motion to Dismiss
11   that's now before the Court.
12            I would note, Your Honor, that the
13   futility standard is slightly different than the
14   plausibility standard that Rule 12 allows Defendants to
15   make motions under.  And one of the key rationales for
16   the focus on the Motion to Amend was that Your Honor had
17   seized on the lack of specific intent as the basis for
18   the Court's dismissal of the original Complaint.  There
19   were a slew of problems with the original Complaint; we
20   raised them all in the original Motion to Dismiss.  But
21   the grounds on which the Court focused in dismissing the
22   original inducement claims was the lack of specific
23   intent.
24            In our view, the primary argument for
```

Page 8

1   futility was that the Court had already ruled on the

2   exact issue that the 4AC would have presented if it had

3   been filed.

4          Now, the Court disagreed with us and we

5   are not trying to set aside the Court's ruling on whether

6   the 4AC plausibly alleges specific intent, but that's the

7   rationale for why we focused on it as the futility

8   argument.  As the Court noted, we did raise the failure

9   to allege sufficient acts as one of the grounds for why

10  the Complaint would fail under Rule 12 if it were filed.

11         And as Mr. Nemunaitis, on the Plaintiffs'

12  side, acknowledged during the oral argument --

13         THE COURT:  Mr. Kremer, just to be clear,

14  you said you raised the specific acts issue when we were

15  litigating the Motion to Amend.  What you mean is that

16  you mentioned it briefly during the teleconference, but

17  you never mentioned it at all in any way at all in your

18  actual briefing on that issue, right?  You never raised

19  it substantively in the briefing at the Motion to Amend

20  stage.

21         Am I right or wrong about that?

22         MR. KREMER:  No, that's fair, Your Honor.

23  We are not trying to rewrite history as to why we made

24  that argument.

Page 9

1              THE COURT:  So there's no way I could have

2   fairly, at the Motion to Amend stage, addressed an issue

3   in my order, for example, my order at -- I think it's

4   D.I. 404, which is where I addressed the Motion to

5   Amend -- I would have no reason to have been able to

6   address the issue of, the acts of encouragement issue

7   then because you hadn't raised it, right?

8              MR. KREMER:  That's fair, Your Honor.  And

9   the Court would have had to go into an analysis under

10  Rule 12 of the plausibility, which was not the governing

11  standard motion for that motion.  And, in fact, the

12  Plaintiffs basically said, when we were arguing other

13  grounds for dismissal during the oral argument, that the

14  proper venue for that sort of challenge would be a Rule

15  12 motion, which is what is now before the Court.

16             THE COURT:  So I just want to make sure,

17  because in your opening brief on pages 7 and 8, you can

18  read what you are saying there is the suggestion that:

19  The Court, I don't know what it was doing.  In its order

20  on the Motion to Amend the D.I. 404, it only addressed

21  the specific intent issue.  I don't know why it didn't

22  address the issue about acts of encouragement.

23             That's not what you intend to suggest by

24  the arguments you were making on pages 7 and 8 of your

```
                                                    Page 10
 1   opening brief of D.I. 419, am I right?
 2                  MR. KREMER:  It is not, Your Honor.
 3                  THE COURT:  Okay.
 4                  MR. KREMER:  And if we thought that the
 5   Court had improperly overlooked information that was
 6   rightly in front of the Court, we would have considered a
 7   Motion for Reconsideration.
 8                  THE COURT:  Got it.  Fair enough.
 9                  Let's get to the meat of your argument,
10   which is that you don't think that the Plaintiffs have
11   sufficiently plausibly alleged in the Fourth Amended
12   Complaint sufficient facts that get to the issue of --
13   you could call it encouraging infringement, the causation
14   requirement.  However you want to put it.  But what I
15   think you call sometimes the act requirement.  That's the
16   key issue here with regard to your Motion to Dismiss.
17                  And I guess my big question there is, in
18   making that argument I think at different points you used
19   certain phraseology that the Plaintiff hasn't
20   sufficiently alleged that the refcos "communicated to"
21   the power plants that the plants should use activated
22   carbon.  And if you are the Plaintiff and you were to
23   respond, as I think they do in part by saying, well, the
24   act, one of the acts that we are alleging that these
```

Page 11

 1   Defendants did that amounts to a plausible allegation

 2   that this act requirement was met is simply the act of

 3   providing the coal, the bromine-infused coal to the power

 4   plant.  That's the act.

 5              I think the Plaintiff would say there's no

 6   requirement in the law that under these circumstances

 7   that we have to allege that when these Defendants

 8   provided the coal to the power plants, they also included

 9   a note along with it that said, I just want you all to

10   know at the power plants, our intent is that you use this

11   coal with the activated carbon in combustion.

12              You don't have to have that kind of

13   communication of our intent to satisfy the act

14   requirement.

15              I think that's what they would say.  I

16   think you disagree, but why are they wrong?  Tell me why

17   they are wrong.

18              MR. KREMER:  So as an initial matter, I

19   would note that in many, many of these cases, that's

20   exactly the type of evidence that you see.  Right?  A

21   pharmaceutical label, instructions given with the

22   product.  It's not a farfetched scenario that the

23   inducement statute is invoked in those circumstances.

24              There are several issues with applying the

Page 12

1  inducement standard in the way that the Plaintiffs would

2  propose.  First, specific to this case, Your Honor, the

3  Court has already considered and rejected that precise

4  argument, that the providing of the refined coal is in

5  and of itself sufficient to stay the claim for

6  inducement.

7           Now, in the original Motion to Dismiss,

8  the Court focused on the fact that the acts we are

9  alleged of engaging in don't evince a specific intent

10 that the customer power plants used activated carbon.

11 That was a correct ruling, but it wasn't the only problem

12 with the allegations.

13          The additional problem is that the sale of

14 refined coal with nothing more, with no instruction, with

15 no encouragement, with no description of how it can be

16 combined with activated carbon in various ways, absent

17 those additional allegations, there's no way to draw the

18 inference that the refined coal is encouraging power

19 plants to use activated carbon.

20          And so we have kind of already been over

21 this territory, but separate and apart from the history

22 of this particular set of allegations, there's no

23 precedent for going down the road of saying that a

24 product can on its own induce other actions.  We already

 1    have a statute that governs when a party can be liable

 2    for selling a product used to infringe.  And under 271(c)

 3    for a Defendant to be liable just for the sale of a

 4    product, there are all these additional things that a

 5    Plaintiff needs to show.  The Plaintiff needs to prove

 6    not only that the Defendant intended its product to be

 7    used in the infringement, but also that the product has

 8    no substantial non-infringing use, that it was especially

 9    made or especially adapted for the infringement, and that

10    the Defendant that sold the product knows all of that.

11              By allowing the Plaintiffs to proceed on

12    an inducement theory based on the inherent properties of

13    refined coal, the Court would be basically allowing

14    parties to short-circuit 271(c).  And Congress had made

15    clear that when the act that gives rise to indirect

16    infringement is the sale or offer for sale of a product,

17    it can't just be that you know your downstream customer

18    is infringing.  There are additional requirements.

19              And third, Your Honor, there is a sort of

20    unstated agreed-upon understanding here that there is no

21    necessarily compelled outcome from using refined coal.

22    Burning refined coal without activated carbon is not

23    impossible.  There's no dispute there.  So the question

24    in the inducement context is, how does the providing of

Page 14

```
 1    refined coal to a power plant cause the power plant to

 2    take additional steps?

 3                    And every case that's been decided since

 4    Global Tech in the context of a pleading motion,

 5    including Bill of Lading, which both parties like,

 6    focuses on the full sweep of the steps.  And when the

 7    steps are theoretically independent, you have to look to

 8    see what the Defendant is doing to cause the subsequent

 9    steps in addition to the initial steps.

10                    So, for example, on Bill of Lading, you

11    have a multi-step claim that's asserted, and all of the

12    steps of the claim fall into two rough categories:

13    things that you do on the truck and things that you do

14    back at central dispatch.  And the Defendants were

15    alleged to do two things.  They were alleged to sell

16    products that could be used on the truck and they were

17    alleged to advertise that those products were compatible

18    with dispatch software, which was sold by other non-

19    parties.

20                    And so the Defendants were alleged to do

21    the two things.  They sold the product and they told the

22    customers that you could use the product in a certain

23    way.

24                    Activated carbon in our case is like the
```

Page 15

1    dispatch software in Bill of Lading.  It's provided by

2    somebody else.  It's used by the direct infringer.  But

3    there's no connection in our case to what our Defendants

4    do and the use of activated carbon.  We are not alleged

5    to have said word one about activated carbon.  We are not

6    environmental consultants.  We are not hired to advise on

7    how to meet regulatory requirements.  We are not engaged

8    in operating the power plant on a demonstration basis, as

9    was previously alleged.  There is just no nexus at all.

10                   And for the reason I mentioned earlier,

11   Your Honor, it's a dangerous road to suggest that a

12   product has inherently inducing properties when there's a

13   statute that already governs that scenario.  So the

14   proper inquiry here has to be:  What else have we done

15   besides stop supplying coal?  And the answer, since the

16   original Complaint, has been nothing.

17                   THE COURT:  Just to interrupt, Mr. Kremer.

18   I guess if it's alleged, and I said it plausibly has been

19   alleged, that these Defendants specifically intended that

20   the power plants directly infringe the patents-in-suit by

21   selling them coal -- so we have here allegations that are

22   sufficient enough to establish that when these Defendants

23   sell the power plants the coal, they want and they intend

24   for these plants to use activated carbon and infringe the

Page 16

1   patents.

2              And the allegations are that the plants

3   actually end up doing that, right?  So we know that they

4   intend for them to do it, infringe the patent, and that

5   they end up doing it.  And I guess if that's true, I am

6   just wondering why it is that the actual provision of the

7   coal that the plants end up, it's alleged, use activated

8   carbon with and combust in a way that's infringing, why

9   the provision of the thing that then leads to the act of

10  infringement -- you couldn't have the act of infringement

11  without it.  They need the coal to be able to infringe --

12  by the provision of the thing itself and could plausibly

13  allege causation.  I guess you could argue maybe at the

14  proof stage -- well, I don't know.  Is it actually the

15  case that the provision of the coal causes it or is there

16  some inconveniencing cause, or whatever.

17             But it's not even plausible in that

18  scenario, when we know that it's asserted that the

19  Defendants specifically intend that they be infringed,

20  and we know it's asserted that there actually is

21  infringement, that the provision of the thing that is

22  necessary to the infringement can't cause it?  How is

23  that not right?

24             MR. KREMER:  Because, Your Honor, under

Page 17

1     the Global Tech standard for inducement, it's not a

2     traditional proximate causation or closest in time

3     causation test.  What Global Tech says about causation of

4     infringement is that induced infringement -- this is a

5     quote -- "Induced infringement under 271(b) requires

6     knowledge that the induced acts constituted patent

7     infringement."  That's Global Tech at 766.

8                    Knowing that the customer infringes is not

9     enough, wanting the customer to infringe, specifically

10    intending to cause infringement, not enough.  When you

11    have a multi-step method claim, you must induce the full

12    sweep of the method.  You cannot induce only one of

13    several steps.

14                    What Global Tech tells us to do is to look

15    at the induced acts, collect the actions that are caused

16    by the alleged inducer, and then you look only at those

17    acts and you ask:  Do these acts taken together

18    constitute infringement of the method claim?  And in this

19    case, you sum up the things that we're alleged to cause.

20    We're alleged to cause the purchase of refined coal, the

21    combustion of refined coal, participation in the Section

22    45 tax credit program that incentivizes refined coal, so

23    on and so forth.

24                    We are not alleged to cause the use of

1   activated carbon.  Facilitating activated carbon by

2   tailoring the coal is not enough.  Facilitating the

3   customer's infringement is not enough.  Global Tech

4   directs the Court to look at the Defendants' acts to sum

5   up what the Defendant causes to occur, and to only look

6   at that series of steps.

7                THE COURT:  That's not just a fact dispute

8   about whether the sale of the coal that is ready to be

9   used, that the Defendants intend to be used for

10  infringement in fact causes the infringement?

11               MR. KREMER:  I would say two things to

12  that, Your Honor.  First, as I mentioned before, we think

13  that it's a particularly dangerous precedent to suggest

14  that liability for inducement can lie based on selling a

15  product with no communication for the reasons that it

16  runs into the 271(c) statute, which we know requires more

17  than that for liability on contributory infringement.

18               But second, there is -- sorry, Your Honor,

19  just a moment.

20               THE COURT:  Mr. Kremer, I am just trying

21  to put this in a different context.  Let's say you would

22  infringe a patent if you press a button, right?  And so

23  the direct infringer is the person who is said to -- is

24  the one who is pushing a button, but the induced

Page 19

1    infringer is said to have encouraged the act of

2    infringement by providing the button, putting the button

3    right up to the direct infringer's finger, pushing the

4    direct infringer's finger right up real close to the

5    button.  Now, there is no communication between them.

6    The person wouldn't say, Hey, direct infringer, I want

7    you to push this button.  It's my intent that you push

8    this button.  I am communicating that to you verbally or

9    in a document.

10                 But they make it all happen and they

11   provide the very thing that has to be there for it to

12   happen, and then the button gets pushed by the direct

13   infringer.

14                 That can't be the kind of causation, the

15   kind of act of encouragement that could count?  I am just

16   trying to -- I certainly take your point that in a lot of

17   induced infringement cases you have things that read like

18   communications.  Like there is a product out there and

19   you have the instruction manual that is sent blah, blah,

20   blah.  But I don't know if that necessarily means that in

21   all the cases it goes like that.

22                 MR. KREMER:  Your Honor, in the scenario

23   you just provided, I think there would be a good argument

24   for inducement based on the physical encouragement to

Page 20

1    press the button.  But if I understand Your Honor's

2    hypothetical correctly, the full scope of the claim

3    required simply pushing the button.

4              We are dealing with a multi-step claim

5    here.  A method claim that requires multiple,

6    theoretically independent steps, steps that don't follow

7    automatically from each other.

8              And in Bill of Lading, in the Datatern

9    case, the Microsoft v. Datatern case that was also

10   decided by the Federal Circuit after Global Tech, the

11   focus for these multi-step method claims, the focus is on

12   what does the Defendant allegedly do?  And does at least

13   one of the Defendants' acts go to each of the steps of

14   the claim?

15             And in Datatern the distinction is

16   actually quite clear, because there were multiple patents

17   asserted in that case.  The posture was a little funny

18   because it was a declaratory judgment action, but there

19   were multiple patents asserted.  And the Court found that

20   there was not declaratory judgment jurisdiction for the

21   combination of Defendant and patent where the Defendant

22   had not provided instructions on particular steps within

23   the method.  They had provided written instructions with

24   the software, but they had not directed any of their

Page 21

```
 1    communications to particular steps which were in dispute.
 2              And the Court said for that particular
 3    combination of Defendant and patent, there's no DJ
 4    jurisdiction.  There's no viable claim for inducement.
 5    But for the others, where the instructions provided with
 6    the software covered each and every step of the claim or
 7    would cover each and every step of the claim if the
 8    instructions were followed -- we are talking about
 9    plausibility and not proof -- those claims were allowed
10    to go forward.
11              And I take seriously Your Honor's concern
12    that we are unduly narrowing the test.  We are not saying
13    that there needs to be oral or written communication
14    aimed at teaching the use of each step.  However, when
15    you have a multi-step method claim, there has to be at
16    least one act that -- whether it's communication or
17    otherwise -- that if it really happened, and it really
18    had its intended effect on the direct infringer, it would
19    have caused the subsequent steps to occur.
20              And there are no allegations in the 4AC or
21    the original Complaint that if true we can say that would
22    have caused the power plant to burn activated carbon.  In
23    fact, Your Honor, the 4AC provides the actual reason why
24    power plants use activated carbon, because they choose to
```

Page 22

1    use it to meet their regulatory requirements.

2                    So setting aside the proof issue and just

3    focusing on what's plausible, there isn't even an act

4    that the Plaintiffs point to that they think might be a

5    competing reason for why activated carbon is used.  The

6    Complaint starts and ends by saying that we provide tons

7    of reasons to use refined coal, but there is no other

8    additional facts alleging why that would inspire a power

9    plant to use activated carbon.

10                   THE COURT:  Okay.  Anything further, Mr.

11   Kremer, before I turn to your colleague on the other

12   side?

13                   MR. KREMER:  No.  I just want to say one

14   other thing, Your Honor, with respect to the timeliness

15   issue, I would be remiss if I did not say that my

16   co-counsel, who represents the CERT Defendants, as well

17   as myself, who represent several Defendants, there are

18   several Defendants in this case who have not appeared

19   except in connection with the 4AC.  So for those

20   Defendants at least, the timeliness issue under 12(g) is

21   not ripe.  I mean, they never answered or responded.

22                   THE COURT:  You may be right that if this

23   had been so incredibly inefficient that there was a prior

24   point at which the Defendants asked, the Court really was

Page 23

1    taking up the issue of whether this 4AC on the claim of

2    indirect infringement was sufficiently pleaded so it

3    could withstand a Motion to Dismiss, and the Defendants

4    raised one issue and not the other.  I went through the

5    process of deciding that.  And now at the Motion to

6    Dismiss stage, it's a totally different issue that's

7    raised.  Like, you may be right, but you can't do that,

8    but just because the Defendants are right, it doesn't

9    mean it was sufficient or, I feel, like respectful of the

10   Court's time.

11              But, in any event, I take your point.

12              Let me turn to Plaintiffs' side.

13   Mr. Nemunaitis, I give you a chance to respond to what

14   you heard from Mr. Kremer.

15              MR. NEMUNAITIS:  Thank you, Your Honor.

16   Justin Nemunaitis for the Plaintiffs.

17              I want to make two points; one a legal

18   point and one more of a factual allegation point.  As to

19   the allegation, just to be clear, we don't allege that

20   the Defendants just create a product and put it in the

21   world and so therefore they infringe.  We also

22   specifically allege that they create a refined coal

23   specifically for power plants, they sell it at a loss,

24   provide financial incentives for the power plant to

Page 24

1   combust the coal.  They provide it on a conveyor belt

2   that just drops it into the combustor.  And they do all

3   of that knowing that the power plant has to use activated

4   carbon to meet the mercury regulations, and so they know

5   that the provision of that refined coal will cause

6   infringement.  And so that should be sufficient to state

7   a claim for induced infringement.

8                As to the legal point, as far as can

9   something like that, state a claim for induced

10  infringement or do you have to have a separate

11  communication, I would direct Your Honor to two cases.

12  One is the Power-One case that was originally cited by

13  the Defendants in the briefing.

14                If you look at that case, a big focus was

15  that in the jury instructions the Court said an induced

16  infringement doesn't actually meet the cause of direct

17  infringement.  And so that was found to be in error and

18  reversed.  But then the Federal Circuit went on to say,

19  okay, if the correct instruction had been given, could

20  the Plaintiff have potentially prevailed.

21                So they looked at that and they looked at

22  the evidence of inducement.  And they traced to the

23  evidence, and they found things like the accused inducer

24  designed the chips to meet U.S. standards, but they had

Page 25

1    support staff in the U.S., that they competed for

2    business in the U.S., even though there was no specific

3    evidence of any communications to actual customers in the

4    United States.

5              And so those are all examples of

6    situations where the Court found that there could be

7    inducement even in the absence of a specific

8    communication to address infringer.  I think part of

9    where there was this communication over the jury

10   instruction and over that whole appeal was based on these

11   earlier Federal Circuit decisions, one of them is Ricoh

12   v. Quantas, which addressed the Supreme Court's Grokster

13   decision.

14             If you look back at that, the Court really

15   pretty much takes up this issue, because the accused

16   product in that case was a CD-ROM drive that you could

17   plug into a laptop or a PC.  And it was alleged to

18   basically automatically infringe if somebody put a CD in

19   it.  The Court considered this question:  Well, does

20   there need to be specific evidence of communications?

21   And they were talking about the Grokster decision.  And I

22   am going to read a quote here.  It says, "The Supreme

23   Court then examined whether a showing of intent required

24   evidence that the accused indirect infringer successfully

Page 26

1    communicated a message of encouragement to the alleged

2    direct infringer, and concluded that such communication

3    is not necessary."  And it went on to go through the

4    Grokster opinion and explained why that was the case.

5              I would direct Your Honor to those two

6    cases as showing that this requirement of a separate

7    communication is not really a requirement for induced

8    infringement.  And that just makes sense kind of

9    logically.  If you have a situation where the product at

10   issue has an infringing use and a non-infringing use, it

11   would make sense to say, Okay, to prove that the seller

12   of that product is inducing infringement, you have got to

13   show that not only did they provide the product, but they

14   actually encouraged the specific non-infringing use as

15   opposed to the infringing use.

16             But in a situation like this or in the

17   Ricoh case where the only realistic use is the infringing

18   use, then the providing of that product is going to cause

19   infringement, and that's sufficient to state a claim.

20             THE COURT:  In the Fourth Amended

21   Complaint, there are some allegations, you may say that

22   they get this issue about the extent to which the

23   Defendants are said to or alleged to kind of market to

24   the power plants the use of the coal that they are

Page 27

1    providing in a manner that would be infringing.  And I
2    guess is your assertion that -- I think part of your
3    assertion is, Look, under the circumstances we pleaded,
4    simply providing the coal itself could be the act of
5    encouragement of infringement that's required under these
6    circumstances.
7                But are you also asserting that, Well, no
8    there are some other allegations -- if you look at
9    paragraphs 86 through 96 -- where we allege more than
10   that, we allege that, in addition to just providing the
11   coal, there is some kind of marketing or communication
12   about the use of this coal with activated carbon in a way
13   that would infringe that actually does provide some
14   communication, even though it's not required?
15               MR. NEMUNAITIS:  Yes, that is true as
16   well.  We allege that they communicate regarding the use
17   of activated carbon and that they specifically tout their
18   refined coal as providing a benefit to activated carbon
19   systems.
20               THE COURT:  And which paragraphs in
21   particular would you point to?
22               MR. NEMUNAITIS:  Paragraph 86 certainly,
23   and 85.  I believe 85 and 86 would probably be the main
24   ones.

Page 28

```
1                    THE COURT:  I guess you wouldn't disagree,
2       Mr. Nemunaitis, that often there is something with regard
3       to the acts of encouragement that can be said to have a
4       very direct communicatory aspect to it.  Let me give you
5       instructions, direct infringer, on exactly how you are to
6       do something that turns out to infringe.
7                    Your position is it's not necessarily
8       always required; is that right?
9                    MR. NEMUNAITIS:  Right.  Exactly.
10                   THE COURT:  Okay.  Thank you.
11                   Mr. Kremer, I will just give you a chance
12      to briefly respond to what you heard there.
13                   MR. KREMER:  Thank you, Your Honor.  We
14      obviously disagree with the Plaintiffs on the legal
15      standard, but we are really keying into the issue here.
16      If the Plaintiffs want to focus on paragraphs 85 and 86,
17      we don't read them that way.  We don't think that 85 and
18      86 provide communications about the benefits of using the
19      two methods together, refined coal and activated carbon,
20      but that's certainly the standard.  And if they have a
21      Rule 11 basis to plead that we actually advertised that
22      refined coal was compatible with and should be used as
23      activated carbon, we wouldn't be here.
24                   We don't read 85 and 86 to actually say
```

Page 29

1    that.  But short of reading through them with the Court

2    now, I don't think that's a good use of the Court's time,

3    but that's the test.

4              And if they had Rule 11 allegations that

5    they could make in good faith at this point about our

6    advertising activated carbon use, we would be in a much

7    different position, I'm sure.

8              THE COURT:  Okay.  And I guess just maybe

9    one more time to kind of ask -- in trying to figure out

10   the limits of what you think is and isn't permissible in

11   terms of what an act of encouragement could be.  If you

12   had a scenario where the alleged indirect infringer -- it

13   definitely intends that the direct infringer infringe.

14   It has that intent.  It wants the direct infringer to

15   infringe.

16             And if it pleads that it provides the coal

17   that the direct infringer uses to infringe, and it pleads

18   that the direct infringer does infringe ultimately, I

19   think again what the Plaintiff would say is the minimum

20   at issue here, under these circumstances it's not enough

21   because there's not a communication that in some way

22   says, Hey, direct infringer, use activated carbon with

23   this coal.

24             Is that the thing that's not communicated

Page 30

1    here sufficiently that you think is wonting?

2              MR. KREMER:  That's exactly right, Your

3    Honor.  And it's not just communication in the form of

4    instruction or encouragement, it could be communication

5    in the form of financial incentive.  We don't incentivize

6    the use of activated carbon the way we incentivize the

7    use of refined coal.  That would be another, sort of,

8    less communicative version of the additional missing

9    element.

10             Your Honor, the final point I would make

11   is that in the scenario that you just provided, the

12   Plaintiff is about halfway to making out a claim for

13   contributory infringement.  They would just need to also

14   allege that the product is especially made for

15   infringement, that it doesn't have a substantial amount

16   of infringer uses, and that those two facts are also

17   known to the Defendant.  That's the statute that this

18   fact pattern fits under.  And we submit that the

19   Plaintiffs should not be allowed to retrofit a

20   contributory infringement claim as an inducement claim

21   without pleading at least what would be needed for

22   contributory infringement.

23             THE COURT:  Okay.  Thank you.  Then let's

24   take up the Plaintiffs' motion next.  And here I will

Page 31

1    turn to Plaintiffs' counsel first.

2                    Mr. Nemunaitis, much of the motion is

3    framed as a Motion for Reconsideration or in the

4    alternative a Motion for Leave to file a Fifth Amended

5    Complaint.

6                    So on the Motion for Reconsideration side,

7    obviously in my prior order, you can read the Motion or

8    Reconsideration here to say something like the following,

9    Judge, I don't understand.  When it came to DTE there

10   were certain facts that we pleaded that we thought

11   plausibly alleged alter ego or agency status, and you

12   cited those.  You cite those in your order and said we

13   had plausibly pleaded all three alter ego or agency

14   status as the Defendant DTE.

15                   But, look, we pleaded those same kind of

16   facts as to the AJG Defendant entities.  You must have

17   just missed the fact that we pleaded the same fact as to

18   those AJG entities as we did as the DTE.  So we are just

19   pointing that out to you.  And so obviously that's a

20   mistake and you should allow the allegations as the AJG

21   Defendants.

22                   Obviously, it wasn't an apples-to-apples

23   comparison, right?  Because there was one -- I mean, for

24   the reasons the Defendants say in their answering brief.

1    There was one DTE entity.  There are four different AJG

2    Defendants that you were trying to bring in.  Not only

3    four different ones, but four different ones that are at

4    different levels of the parent's subsidiary chain.

5                    In fact, you were making multiple

6    different potential arguments about how it is that those

7    AJG Defendants could possibly be alter egos or have

8    agents.  Like one of the alternative arguments you were

9    making was that maybe AJG Financial Services is the agent

10   and then in some way it's the same as Arthur J. Gallagher

11   & Co.

12                   I guess my point is, like, obviously the

13   fact that the same kinds of corporate separateness-type

14   allegations were made both at the DTE and the four AJG

15   Defendants, that's the case, but it wasn't the only

16   problem.  The main problem that the Court was pointing

17   out was there were these four different AJG Defendants at

18   issue and you didn't differentiate between them.

19                   So I am just guessing like -- I don't

20   understand how -- I am not trying to understand the

21   Motion for Reconsideration argument, so if I am

22   misinterpreting it, I will just give you a chance to tell

23   me why you think the Court just totally missed the issues

24   that were being raised.

                                                                Page 33

1                    MR. NEMUNAITIS:   Thank you, Your Honor.

2       And I would say I certainly didn't think Your Honor just

3       made a mistake of that nature.   The points we tried to

4       make were, one, to point out a legal issue that we think

5       is important, and the other was to point out the

6       additional statements in the pleadings, kind of explain

7       what our position was here.

8                    And the reason for referring back to DTE

9       is -- to start from the baseline point of, if these four

10      Gallagher entities were all just one entity, then it

11      seems likely that we would be allowed to add them into

12      the case under an agency or alter ego theory.   So then

13      the question becomes, what additional information is in

14      the Complaint to explain how those four things all tie

15      together?   And so that's really what the purpose of this

16      motion is, is to explain our position on that point there

17      and to explain what is required under the law.

18                   So just to go back a minute to set the

19      stage so we are all using the correct names for the same

20      things.   You have the ultimate parent company, Arthur

21      Gallagher & Company, which owns Financial Services, which

22      owns AJG Coal, and then there's a sister entity,

23      Gallagher Clean Energy, and then AJG Coal owns all of the

24      refcos.

Page 34

```
 1              So what we did in the 4AC was to allege --
 2   well, to state the names of all the entities and to say
 3   that the refcos are all agents of each one of those
 4   entities, or in the alternative or in addition, to the
 5   extent you need to go through the levels, then they would
 6   be agents of AJG Coal or agents of Financial Services,
 7   which is ultimately an agent of the ultimate parent.
 8              And then to the extent there were
 9   important differences between those entities, there are
10   some additional allegations in the 4AC and in the
11   proposed 5AC that identifies that.
12              For example, we allege that Sally Batanian
13   sort of ran things for all of these refcos, and that she
14   was an officer all of the intermediate entities.  And to
15   the extent she had to get authority to sign a contract to
16   supply refined coal to a particular plant, she would have
17   to get that authority from the ultimate parent, Arthur
18   Gallagher & Co.
19              THE COURT:  Maybe just to stop you there
20   to make sure I am following.  For example, one of the two
21   alternatives theories is in paragraph 236 of what was
22   D.I. 3722 that was sort of the actual form of this
23   proposed Fourth Amended Complaint that I was looking at
24   back when I issued D.I. 404.  I am not sure exactly what
```

Page 35

1    that paragraph is in the current, clean version of the

2    Fourth Amended Complaint that's found at D.I. 406, but as

3    you were noting, that paragraph alleges, it says,

4    Gallagher Clean Energy, LLC and AJG Coal, LLC are owned

5    by AJG Financial Services.  Then it says AJG Financial

6    Services is owned by Arthur J. Gallagher & Co.  And then

7    it says, to the extent that any of the AJG affiliated RC

8    Defendants, Gallagher Clean Energy, LLC or AJG Coal, LLC

9    are deemed not to be the direct agents of Arthur

10   Gallagher & Co., and each entity is an agent of AJG

11   Financial Services, which is ultimately controlled by and

12   is an agent of Arthur Gallagher & Co.

13              So one question would be there:  What does

14   the Fourth Amended Complaint tell me to substantiate the

15   idea that AJG Financial Services is ultimately controlled

16   by and is an agent of Arthur Gallagher & Co.?  What facts

17   do I have about that relationship to make it plausible

18   that AJG Financial Services is controlled by Arthur

19   Gallagher & Co. or is its agent?  What is there?  What is

20   pleaded?

21              MR. NEMUNAITIS:  Right.  What we have

22   alleged is that the refcos obtain the tax credits, those

23   flow up through this chain, through Financial Services

24   ultimately to Arthur Gallagher & Co.  And, on the other

Page 36

1    hand, in order to fund the refcos, all of these Gallagher

2    entities pool their cash together, and that expenses for

3    the refcos are paid from that pool.  We also allege that

4    the officer in charge of Financial Services would need to

5    obtain permission from Gallagher & Co. before entering

6    into a deal to supply refined coal.

7              And the core point of all of these

8    allegations, and kind of the core point which we also

9    allege with respect to DTE is that none of these entities

10   are acting in their own self-interest with respect to

11   refined coal.  The whole purpose of this whole scheme --

12   and I don't mean scheme in a pejorative way.  The whole

13   purpose of this whole plan is to operate the refcos at a

14   loss, but to nonetheless generate tax credits for

15   Gallagher & Co. to obtain that benefit.  And so that's

16   why these entities must be acting as agents or -- agents

17   or alter egos.  They are acting on behalf of Gallagher &

18   Co. to provide the benefit to Gallagher & Co.

19             The other point I wanted to make is the

20   legal one.  As I understood Your Honor's opinion, the

21   failing of the Complaint was the failure to trace through

22   an exact sort of agency theory as to how agency would

23   work or alter ego would work.  And the takeaway that I

24   saw from that Johnson v. City of Shelby case is as long

Page 37

1    as you plead the facts that could support a claim, you

2    don't need to, at the Complaint stage, lay out what the

3    exact legal theory is.  So whether the ultimate legal

4    theory is each of the refcos is an agent of Gallagher &

5    Co. or whether it's that each refco is an agent of AJG

6    Coal, which is an agent of Financial Services, which is

7    an agent of Gallagher & Co., that sort of level of detail

8    is not required.  It doesn't need to be addressed at the

9    Motion to Dismiss stage, what matters are the factual

10   allegations there.

11             THE COURT:  I think the problem for me was

12   both from a legal and factual perspective, I thought that

13   the pleading was wonting.  So it is true that it was not

14   clear, at least to me, in the Fourth Amended Complaint as

15   to whether it was said that the refcos were the agent or

16   the alter ego of which of the four or all of them or some

17   of them.  But it was also -- at least what I was

18   attending to assert was that the factual allegations that

19   would make it plausible as to each or any of them were

20   missing.

21             And also, in part, because the four AJG

22   entities themselves are different entities, they have

23   different corporate relationships with each other, and

24   very little of that was spelled out.  And I guess,

Page 38

1    another example, one of the problems that I was asserting

2    there was that the four AJG entities were improperly kind

3    of lumped together without enough of those factual

4    allegations distinguishing them.

5              One of those four entities, as I

6    understand it, is Gallagher Clean Energy, LLC.  In the

7    Fourth Amended Complaint, if I understand it correctly,

8    it's alleged that that entity, I should consider them to

9    be just the same as AJG Coal and AJG Financial Services

10   and Arthur Gallagher & Co. from the perspective of how

11   they might be alter egos or in an agency relationship

12   with these refcos.

13             There was nothing distinct about Gallagher

14   Clean Energy's situation versus those other three

15   potential Defendants vis-a-vis these alter ego or agency

16   relationships.

17             I think in your proposed Fifth Amendment

18   Complaint, I think you are saying, if I am reading it

19   right, is that's not true.  Gallagher Clean Energy is

20   different as it turns out, right?  And so I just wonder

21   whether that doesn't kind of undermine -- the other side

22   is basically saying you have taken this pleading approach

23   where you just lumped together lots of entities without

24   specific allegations, and it turns out that those don't

 1    pan out all the time.  And so I am wondering isn't

 2    Gallagher Clean Energy an example of how that is kind of

 3    right?

 4                    MR. NEMUNAITIS:  I think it's certainly

 5    fair to say that our understanding of Gallagher Clean

 6    Energy has improved as discovery proceeded in the case.

 7    And so I think that's a fair point, but then the flip

 8    side of that would be -- certainly with respect to the

 9    Fifth Amended Complaint where we tried to be more

10    specific about this based on the information that we had

11    at the time, that in a situation where we really do have

12    AJG Coal owning and operating DT refcos, it's owned by

13    Financial Services, which is owned by Gallagher & Co.,

14    and ultimately the whole purpose of this is so that the

15    refcos obtain cash from the other Gallagher entities and

16    the cash credits all go up to Gallagher & Co.  There

17    certainly would be sufficient allegations for those

18    entities.

19                    I just want to make one last point.  I

20    think that in the last round of briefing there was a fair

21    amount of emphasis on alter ego, but I think certainly

22    with respect to agency, I think we haven't even -- a

23    stronger situation here that given the requirements for

24    proving agency, essentially that if one company or one

Page 40

1    entity is acting on behalf of the other and both sides

2    agree to do that, I believe we should be able to allege

3    that these refcos are agents of these other Gallagher

4    entities.

5              THE COURT:  The other question I have, to

6    the extent, separate and apart from the Motion for

7    Reconsideration, the alternative request that the Fifth

8    Amendment Complaint be permitted, I think the status quo

9    is the motion to permit at the Dominican plant would have

10   been made about nine months after the deadline line set

11   in the current scheduling order or in the pleadings.

12             If that's true, then the request basically

13   amounts to alteration of the scheduling order.  If that's

14   true, good cause would need to be established.  If that's

15   true, you would look to the diligence of the movant first

16   before you get into any other issue.  And I guess on that

17   front -- I mean, when I look at the proposed Fifth

18   Amended Complaint, the alterations that are being

19   suggested, I don't -- it didn't read to me as to most, if

20   not all of those, that those aren't alterations that

21   couldn't have been provided back when the Fourth Amended

22   Complaint was made, but just weren't.

23             And so how could it be said that the

24   Plaintiff has demonstrated diligence to allow for an

 1    amendment of the pleading deadline not much after the

 2    scheduling order would have called for, if the kind of

 3    things that Plaintiffs are proposing to add now are all

 4    stuff that they might well have added or could have added

 5    way back then?

 6                    MR. NEMUNAITIS:  Well, with respect to

 7    good cause, the key factors are prejudice to the parties

 8    and the diligence of the party that's moving.  We drafted

 9    up that Fifth Amended Complaint two weeks after we

10    received Your Honor's order, and attempted to address

11    those issues.  We do not believe that the Complaint, the

12    Fifth Amended Complaint, provides much in the way of

13    substantive changes to what was included in the Fourth

14    Amended Complaint, certainly with respect to Gallagher &

15    Co., Financial Services, AJG Coal, LLC, and I believe

16    just the way the law plays out, to the extent the problem

17    that is solved by the Fifth Amended Complaint is a

18    clearer explanation of the agency theory, that was never

19    required to be in the Fourth Amended Complaint in the

20    first place.

21                    THE COURT:  So it really delves back into

22    the Court, when it addressed the question as to the

23    Fourth Amended Complaint and the motion to amend it, it

24    made the wrong decision and the Motion for

Page 42

1    Reconsideration is the effort to correct that.  That's

2    what it sounds like what you are saying; is that right?

3                    MR. NEMUNAITIS:  Certainly, I think that's

4    the strong argument here.  I also believe that there

5    should also be good cause to add the Fifth Amended

6    Complaint, because we were diligent acting after we

7    received the Court's opinion and understood Your Honor's

8    reasoning there.  And also, just as a practical matter,

9    there's no reason to expect that there would be some

10   significant prejudice to the parties.

11                   When we moved to file the Fourth Amended

12   Complaint, there was no assertion that there was a lack

13   of good cause, that there would be practical problems.

14   And if you look back at our sealed filing on that, I

15   think the fact for that is it's pretty straight forward.

16   I won't go into the details of that confidential

17   information so we don't need to kick anyone off the call,

18   but effectively, there's just one entity on behalf of

19   these Gallagher Defendants as far as this litigation is

20   concerned.

21                   And so the Defendants would not be

22   prejudiced by allowing this amendment.  Whereas we, the

23   Plaintiff, would be substantially prejudiced and

24   potentially have difficulty in collecting a judgment or

Page 43

```
1   would need to file a separate case against the parent
2   companies.
3               THE COURT:  Okay.  All right.  Thank you,
4   Mr. Nemunaitis.
5               Let me turn to Defendants' side, Mr. Mark,
6   to get response to what you heard from your colleague on
7   the Plaintiffs' side.
8               MR. MARK:  I would begin, Your Honor,
9   with -- to go back into a little bit of history, and that
10  is, when we get to the request for the Fourth Amended
11  Complaint, there had been dismissals of these Gallagher
12  Defendants previously.  And the second time that it
13  happened, in 2021, we had asked the Court to make it a
14  prejudicial dismissal, but Your Honor decided that it
15  would not be a prejudicial dismissal because the basis or
16  the arguments or whatever, they had not had a chance
17  adequately to fix it first.
18              But the Court said at that time in No., I
19  believe, 279, Docket 279, that the Plaintiffs would be
20  required to seek leave to add these parties the next
21  time, if they attempted to do so.
22              And that was affirmed when that report and
23  recommendation went before Judge Andrews.  And he said,
24  in Docket Item 319, that any emphasis is on notice that
```

Page 44

1    its pleading is legally insufficient.

2              So that at the time that the Fourth

3    Amended Complaint was presented to the Court the question

4    of the defect in pleading either agency or alter ego had

5    been laid out specifically before the Plaintiffs.  And

6    they had been told, they had been warned that the defects

7    cited there, principally that the lumping together of the

8    parties and the failure to distinguish an alleged fact

9    showing why the relationships should lead to disregard of

10   the corporate form, that it was insufficient on that

11   basis.

12             It had been explained to them clearly, and

13   it was said, when you come to court the next time, the

14   Fourth Amended Complaint, you have to take account of

15   that in your pleading.  They did not do that.

16             That is the basis on which the Court ruled

17   in Docket Item 404, noting again that the attempt to

18   plead and get through the corporate form using either

19   theories of alter ego or agency were insufficient, and

20   that's that.  So that the attempt at the later date to

21   come back and say, Oh, we will fix it with this sort of

22   disaggregation that they present too late in the proposed

23   Fifth Amended Complaint simply doesn't fix it.  They had

24   been warned.

Page 45

```
 1              They had the opportunity to take care of
 2    it.  Plainly, they had means to take care of it, given
 3    the alacrity relative with which they came up with the
 4    Fifth Amended Complaint.
 5              I am not going to speak to whether those
 6    allegations themselves, if you took them, would be
 7    sufficient.  I think there are problems with them, but
 8    that's not the purpose of our arguments with regard to
 9    opposition to the Motion for Reconsideration.  The
10    pleadings define the scope of discovery and what the
11    battleground is and so forth.  We have been trying to get
12    the pleadings closed in this case for something like
13    three years.
14              They had the opportunity to get it right
15    in connection with the Fourth Amended Complaint they
16    proposed.  They did not.  There is no error of law or no
17    matter in the record that was overlooked, and so
18    reconsideration should be denied.  I believe it is that
19    simple, Your Honor.
20              THE COURT:  All right.  Thank you,
21    Mr. Mark.
22              Mr. Nemunaitis, anything further that you
23    want to add in response?
24              MR. NEMUNAITIS:  Just briefly as to that
```

Page 46

1    point about lumping.  If you look back in time, when one

2    of the Complaints was dismissed, we addressed that issue

3    by adding in a paragraph that stated the name of each

4    Defendant and then stated that they each operated a

5    refined coal facility, and continued with the -- sort of

6    the group name pleading for the rest of the Complaint, we

7    didn't redo the entire Complaint there.

8                      And we essentially took the same strategy

9    in preparing the 4AC where we had the handful of

10   paragraphs at the top that named each Defendant, each of

11   the parent companies, and to the extent there was

12   something special about them, we would name them

13   separately.  So I believe we were attempting to do the

14   same thing that had succeeded for us in the past, which I

15   think goes towards our diligence.

16                      THE COURT:  One other question,

17   Mr. Nemunaitis, just to again get to the lumping issue.

18   By way of example, in the 4AC, when it comes to these

19   four different Defendants, they are referred to in these

20   key paragraphs collectively as AJG, meaning AJG is a

21   shorthand that's supposed to encapsulate all four of the

22   Defendant entities that you want to add.  Am I right?

23                      MR. NEMUNAITIS:  Right.

24                      THE COURT:  So when the Complaint makes an

Page 47

1    allegation like, instead AJG controls the necessary

2    filings for tax credits through AJG employees, one of the

3    issues there is, okay, so AJG controls the necessary

4    filings for tax credits through AJG employees, does that

5    mean that Gallagher Clean Energy, LLC is being alleged to

6    control the necessary filings for tax credits for these

7    AJG refcos, or not, or is it just Arthur J. Gallagher or

8    all four of them?

9              I think as a factual matter we know that

10   Gallagher Clean Energy, LLC probably doesn't control the

11   necessary filings for tax credits through them.  Right?

12             MR. NEMUNAITIS:  Well, what we know is

13   that the person in charge of doing that, Ms. Batanian,

14   had a title for all of those entities and that the cash

15   of all those entities was pooled together.  So it is

16   difficult for me to even talk about any of those

17   intermediate entities doing things separate from each

18   other.

19             THE COURT:  So the allegation is meant to

20   be, like, for example, Yes, Gallagher Clean Energy, LLC

21   controls the necessary filings for tax credits through

22   Gallagher Clean Energy, LLC employees for the AJG refcos?

23   That was meant to be the allegation?

24             MR. NEMUNAITIS:  Yes.  That all four of

Page 48

1      them together do that.

2                         THE COURT:   Okay.   All right.   Thank you.

3                         Counsel, what I will do is I will likely

4      address the Plaintiffs' motion by way of a short order

5      before the end of this week.

6                         The Defendants' motion I will intend to

7      address soon, I may have to write something a little

8      longer for that.   But, in any event, I will try to

9      resolve these very shortly, and as soon as I can, so that

10     the parties have closure.

11                        I will just also note, I cannot think of a

12     case, certainly a case of mine, but I'm not sure I can

13     think of a case in our court, where there has been more

14     process given to the pleadings, to respective motions to

15     amend them or dismiss claims from them.   And whatever

16     happens with these motions, I can't imagine a scenario

17     where it was going to make sense for there to be more

18     process in the future with regard to what is in the

19     pleadings or not in them in light of where we stand in

20     the case.

21                        Hopefully, it's not contemplated, but at

22     some level, we have to get to the end here, to the merit

23     stage in terms of what is in the case.   And so I think

24     all the parties are focused on that, but I just want to

Page 49

1  make it clear from my perspective I think that's

2  certainly where we are.

3              With that said, as I said, I will try to

4  get the decisions out very shortly.  I appreciate

5  counsel's arguments today.  I look forward to working

6  with you on the case in the future.

7              I wish everyone continued good health and

8  safety.  With that, we will end our phone conference and

9  go off the record.

10              ALL COUNSEL:  Thank you, Your Honor.

11              (The hearing concluded at 4:35 p.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

Page 50

1                    C E R T I F I C A T E

2

3

4        I do hereby certify that the foregoing

5   teleconference hearing was taken before me, pursuant to

6   notice, at the time and place indicated; that the

7   statements of participants were correctly recorded in

8   machine shorthand by me and thereafter transcribed under

9   my supervision with computer-aided transcription; that

10  the transcript is a true record of the statements made by

11  the participants; and that I am neither of counsel nor

12  kin to any party in said action, nor interested in the

13  outcome thereof.

14

15       WITNESS my hand and official seal this 23rd day of

16  September A.D. 2022.

17                        _____

18

               Notary Public

19

20

21

22

23

24

**&**

**&**   1:7 2:7,12,13
3:5 32:11 33:21
34:18 35:6,10,12
35:16,19,24 36:5
36:15,17,18 37:4
37:7 38:10
39:13,16 41:14

**0**

**01334**   1:6 3:6

**1**

**11**   28:21 29:4
**12**   6:12 7:3,6,14
8:10 9:10,15
22:20
**1208**   50:17
**19**   1:12
**19801**   1:23
**1:19**   1:6 3:6

**2**

**2**   6:12
**2019**   7:10
**2021**   43:13
**2022**   1:12 50:16
**236**   34:21
**23rd**   50:15
**271**   13:2,14 17:5
18:16
**279**   43:19,19

**3**

**300**   1:23
**302**   1:24
**319**   43:24
**3722**   34:22
**3:30**   1:17

**4**

**404**   9:4,20 34:24
44:17
**406**   35:2
**419**   10:1
**45**   17:22
**4:35**   49:11
**4ac**   8:2,6 21:20
21:23 22:19
23:1 34:1,10
46:9,18

**5**

**571-0510**   1:24
**5ac**   34:11

**7**

**7**   9:17,24
**766**   17:7

**8**

**8**   9:17,24
**815**   1:23
**85**   27:23,23
28:16,17,24
**86**   27:9,22,23
28:16,18,24

**9**

**96**   27:9

**a**

**a.d.**   50:16
**able**   9:5 16:11
40:2
**absence**   25:7
**absent**   12:16
**account**   44:14
**accused**   24:23
25:15,24

**acknowledged**
8:12
**act**   10:15,24
11:2,2,4,13
13:15 16:9,10
19:1,15 21:16
22:3 27:4 29:11
**acting**   36:10,16
36:17 40:1 42:6
**action**   3:5 20:18
50:12
**actions**   12:24
17:15
**activated**   10:21
11:11 12:10,16
12:19 13:22
14:24 15:4,5,24
16:7 18:1,1
21:22,24 22:5,9
24:3 27:12,17,18
28:19,23 29:6,22
30:6
**acts**   4:23 5:20
6:10 8:9,14 9:6
9:22 10:24 12:8
17:6,15,17,17
18:4 20:13 28:3
**actual**   5:24 8:18
16:6 21:23 25:3
34:22
**adapted**   13:9
**add**   4:19,19
33:11 41:3 42:5
43:20 45:23
46:22
**added**   41:4,4
**adding**   46:3

**addition**   14:9
27:10 34:4
**additional**   7:1
12:13,17 13:4,18
14:2 22:8 30:8
33:6,13 34:10
**address**   9:6,22
25:8 41:10 48:4
48:7
**addressed**   6:3
9:2,4,20 25:12
37:8 41:22 46:2
**addressing**   3:22
3:23
**adequately**
43:17
**advertise**   14:17
**advertised**   28:21
**advertising**   29:6
**advise**   15:6
**affiliated**   35:7
**affirmed**   43:22
**afternoon**   3:1,3
**agency**   31:11,13
33:12 36:22,22
38:11,15 39:22
39:24 41:18
44:4,19
**agent**   32:9 34:7
35:10,12,16,19
37:4,5,6,7,15
**agents**   32:8 34:3
34:6,6 35:9
36:16,16 40:3
**agree**   40:2
**agreed**   13:20
**aided**   50:9

aimed  21:14
ajg  31:16,18,20
  32:1,7,9,14,17
  33:22,23 34:6
  35:4,5,5,7,8,10
  35:15,18 37:5,21
  38:2,9,9 39:12
  41:15 46:20,20
  47:1,2,3,4,7,22
al  1:7 3:4,5
alacrity  45:3
allegation  11:1
  23:18,19 47:1,19
  47:23
allegations  5:6
  12:12,17,22
  15:21 16:2
  21:20 26:21
  27:8 29:4 31:20
  32:14 34:10
  36:8 37:10,18
  38:4,24 39:17
  45:6
allege  8:9 11:7
  16:13 23:19,22
  27:9,10,16 30:14
  34:1,12 36:3,9
  40:2
alleged  6:9 10:11
  10:20 12:9
  14:15,15,17,20
  15:4,9,18,19
  16:7 17:16,19,20
  17:24 25:17
  26:1,23 29:12
  31:11 35:22
  38:8 44:8 47:5

allegedly  20:12
alleges  8:6 35:3
alleging  10:24
  22:8
allow  5:10 31:20
  40:24
allowed  6:6 21:9
  30:19 33:11
allowing  13:11
  13:13 42:22
allows  7:14
alter  31:11,13
  32:7 33:12
  36:17,23 37:16
  38:11,15 39:21
  44:4,19
alteration  40:13
alterations
  40:18,20
alternative  4:6
  31:4 32:8 34:4
  40:7
alternatives
  34:21
amend  5:7,8,10
  5:13,18 6:15,18
  7:16 8:15,19 9:2
  9:5,20 41:23
  48:15
amended  4:5,6,8
  10:11 26:20
  31:4 34:23 35:2
  35:14 37:14
  38:7 39:9 40:18
  40:21 41:9,12,14
  41:17,19,23 42:5
  42:11 43:10
  44:3,14,23 45:4

45:15
amendment
  38:17 40:8 41:1
  42:22
amount  30:15
  39:21
amounts  11:1
  40:13
analysis  9:9
andrew  2:3 3:12
andrews  43:23
answer  15:15
answered  22:21
answering  31:24
anthony  2:12
  3:18
apart  12:21 40:6
appeal  25:10
appearances  2:1
appeared  22:18
apples  31:22,22
applying  7:6
  11:24
appreciate  49:4
approach  38:22
arant  2:8
argue  16:13
arguing  4:14
  9:12
argument  3:13
  5:23 7:8,24 8:8
  8:12,24 9:13
  10:9,18 12:4
  19:23 32:21
  42:4
arguments  4:2
  7:4 9:24 32:6,8
  43:16 45:8 49:5

arps  2:7
arsht  2:12
arthur  1:7 3:5
  32:10 33:20
  34:17 35:6,9,12
  35:16,18,24
  38:10 47:7
aside  8:5 22:2
asked  22:24
  43:13
aspect  28:4
assert  37:18
asserted  14:11
  16:18,20 20:17
  20:19
asserting  5:9
  27:7 38:1
assertion  27:2,3
  42:12
attempt  44:17
  44:20
attempted  41:10
  43:21
attempting
  46:13
attending  37:18
authority  34:15
  34:17
automatically
  20:7 25:18
available  7:9
avenue  1:23
aware  7:5

**b**

b  17:5
back  5:24 6:23
  7:9 14:14 25:14

**[back - clean]**                                           Page 3

33:8,18 34:24
40:21 41:5,21
42:14 43:9
44:21 46:1
**bar**  7:3
**based**  13:12
18:14 19:24
25:10 39:10
**baseline**  33:9
**basically**  9:12
13:13 25:18
38:22 40:12
**basis**  7:17 15:8
28:21 43:15
44:11,16
**batanian**  34:12
47:13
**battleground**
45:11
**behalf**  3:19
36:17 40:1
42:18
**believe**  27:23
40:2 41:11,15
42:4 43:19
45:18 46:13
**belt**  24:1
**benefit**  27:18
36:15,18
**benefits**  28:18
**big**  10:17 24:14
**bill**  14:5,10 15:1
20:8
**bit**  43:9
**blah**  19:19,19,20
**boult**  2:8
**bradley**  2:8

**brief**  5:17 9:17
10:1 31:24
**briefing**  5:14 6:1
8:18,19 24:13
39:20
**briefly**  5:22 8:16
28:12 45:24
**bring**  32:2
**bromine**  11:3
**burke**  1:20
**burn**  21:22
**burning**  13:22
**business**  25:2
**button**  18:22,24
19:2,2,5,7,8,12
20:1,3

**c**

**c**  13:2,14 18:16
50:1,1
**caldwell**  2:4
**call**  10:13,15
42:17
**called**  41:2
**captioned**  1:16
**carbon**  10:22
11:11 12:10,16
12:19 13:22
14:24 15:4,5,24
16:8 18:1,1
21:22,24 22:5,9
24:4 27:12,17,18
28:19,23 29:6,22
30:6
**care**  45:1,2
**case**  12:2 14:3
14:24 15:3
16:15 17:19

20:9,9,17 22:18
24:12,14 25:16
26:4,17 32:15
33:12 36:24
39:6 43:1 45:12
48:12,12,13,20
48:23 49:6
**cases**  11:19
19:17,21 24:11
26:6
**cash**  36:2 39:15
39:16 47:14
**cassady**  2:4
**categories**  14:12
**causation**  10:13
16:13 17:2,3,3
19:14
**cause**  14:1,8
16:16,22 17:10
17:19,20,24 24:5
24:16 26:18
40:14 41:7 42:5
42:13
**caused**  17:15
21:19,22
**causes**  16:15
18:5,10
**cd**  25:16,18
**central**  14:14
**cert**  2:19 22:16
**certain**  10:19
14:22 31:10
**certainly**  4:18
19:16 27:22
28:20 33:2 39:4
39:8,17,21 41:14
42:3 48:12 49:2

**certify**  50:4
**chain**  32:4 35:23
**challenge**  9:14
**chance**  4:19
23:13 28:11
32:22 43:16
**changes**  41:13
**charge**  36:4
47:13
**chips**  24:24
**choose**  21:24
**christopher**  1:20
**circuit**  13:14
20:10 24:18
25:11
**circumstances**
11:6,23 27:3,6
29:20
**cite**  5:21 31:12
**cited**  24:12
31:12 44:7
**city**  36:24
**civ**  1:5
**civil**  3:5
**cjb**  1:6 3:6
**claim**  5:21 6:11
12:5 14:11,12
17:11,18 20:2,4
20:5,14 21:4,6,7
21:15 23:1 24:7
24:9 26:19
30:12,20,20 37:1
**claims**  6:7 7:22
20:11 21:9
48:15
**clean**  33:23 35:1
35:4,8 38:6,14
38:19 39:2,5

47:5,10,20,22
clear   8:13 13:15
    20:16 23:19
    37:14 49:1
clearer   41:18
clearly   44:12
close   19:4
closed   45:12
closest   17:2
closure   48:10
coal   2:16 3:19
    11:3,3,8,11 12:4
    12:14,18 13:13
    13:21,22 14:1
    15:15,21,23 16:7
    16:11,15 17:20
    17:21,22 18:2,8
    22:7 23:22 24:1
    24:5 26:24 27:4
    27:11,12,18
    28:19,22 29:16
    29:23 30:7
    33:22,23 34:6,16
    35:4,8 36:6,11
    37:6 38:9 39:12
    41:15 46:5
colleague   22:11
    43:6
collect   17:15
collecting   42:24
collectively
    46:20
combination
    20:21 21:3
combined   12:16
combust   16:8
    24:1

combustion
    11:11 17:21
combustor   24:2
come   44:13,21
comes   46:18
commencing
    1:17
communicate
    27:16
communicated
    10:20 26:1
    29:24
communicating
    19:8
communication
    11:13 18:15
    19:5 21:13,16
    24:11 25:8,9
    26:2,7 27:11,14
    29:21 30:3,4
communications
    19:18 21:1 25:3
    25:20 28:18
communicative
    30:8
communicatory
    28:4
companies   43:2
    46:11
company   33:20
    33:21 39:24
comparison
    31:23
compatible
    14:17 28:22
compelled   13:21
competed   25:1

competing   22:5
complaint   4:5,6
    4:9 5:10 7:9,18
    7:19 8:10 10:12
    15:16 21:21
    22:6 26:21 31:5
    33:14 34:23
    35:2,14 36:21
    37:2,14 38:7,18
    39:9 40:8,18,22
    41:9,11,12,14,17
    41:19,23 42:6,12
    43:11 44:3,14,23
    45:4,15 46:6,7
    46:24
complaints   46:2
complete   7:2
computer   50:9
concern   21:11
concerned   42:20
concerns   6:4,20
concluded   26:2
    49:11
conference   49:8
confidential
    42:16
congress   13:14
connection   15:3
    22:19 45:15
consecutive   6:13
consider   38:8
considered   10:6
    12:3 25:19
constitute   17:18
constituted   17:6
consultants   15:6
contemplated
    48:21

context   5:7 6:8
    7:7 13:24 14:4
    18:21
continued   46:5
    49:7
contract   34:15
contributory
    18:17 30:13,20
    30:22
control   47:6,10
controlled   35:11
    35:15,18
controls   47:1,3
    47:21
conveyor   24:1
corbett   1:17
core   36:7,8
corp   1:4 2:22 3:4
corporate   32:13
    37:23 44:10,18
correct   7:1
    12:11 24:19
    33:19 42:1
correctly   20:2
    38:7 50:7
counsel   3:7,9,10
    3:13,14,16,17
    4:1 22:16 31:1
    48:3 49:10
    50:11
counsel's   49:5
count   19:15
course   6:1
court   1:1 3:1,6
    3:15,24 4:17 6:3
    7:11,21 8:1,4,8
    8:13 9:1,9,15,16
    9:19 10:3,5,6,8

[court - dispute]                                                        Page 5

12:3,8 13:13
15:17 18:4,7,20
20:19 21:2
22:10,22,24
24:15 25:6,14,19
25:23 26:20
27:20 28:1,10
29:1,8 30:23
32:16,23 34:19
37:11 40:5
41:21,22 43:3,13
43:18 44:3,13,16
45:20 46:16,24
47:19 48:2,13
**court's** 7:18 8:5
23:10 25:12
29:2 42:7
**cover** 21:7
**covered** 21:6
**create** 23:20,22
**credit** 17:22
**credits** 35:22
36:14 39:16
47:2,4,6,11,21
**crutcher** 2:13
**cummings** 2:8
**current** 35:1
40:11
**curry** 2:4
**customer** 12:10
13:17 17:8,9
**customer's** 18:3
**customers** 14:22
25:3
**cv** 1:6 3:6

**d**

**d** 2:9
**d.i.** 9:4,20 10:1
34:22,24 35:2
**dangerous** 15:11
18:13
**datatern** 20:8,9
20:15
**date** 44:20
**day** 50:15
**de** 1:23
**deadline** 40:10
41:1
**deal** 36:6
**dealing** 20:4
**decided** 14:3
20:10 43:14
**deciding** 23:5
**decision** 25:13
25:21 41:24
**decisions** 25:11
49:4
**declaratory**
20:18,20
**deemed** 35:9
**defect** 44:4
**defects** 44:6
**defendant** 6:16
13:3,6,10 14:8
18:5 20:12,21,21
21:3 30:17
31:14,16 46:4,10
46:22
**defendants** 1:8
2:10,16,19 3:16
3:20 4:8,10,13
5:8,9,13 7:14
11:1,7 14:14,20

15:3,19,22 16:19
18:4,9 20:13
22:16,17,18,20
22:24 23:3,8,20
24:13 26:23
31:21,24 32:2,7
32:15,17 35:8
38:15 42:19,21
43:5,12 46:19
48:6
**define** 45:10
**definitely** 29:13
**delaware** 1:2,23
3:12,17
**delves** 41:21
**demarco** 2:3
3:11,12
**demonstrated**
40:24
**demonstration**
15:8
**denied** 45:18
**description**
12:15
**designed** 24:24
**detail** 37:7
**details** 42:16
**devlin** 2:2 3:12
**differences** 34:9
**different** 4:2 6:7
7:13 10:18
18:21 23:6 29:7
32:1,3,3,4,6,17
37:22,23 38:20
46:19
**differentiate**
32:18

**difficult** 47:16
**difficulty** 42:24
**diligence** 40:15
40:24 41:8
46:15
**diligent** 42:6
**direct** 15:2 18:23
19:3,4,6,12
21:18 24:11,16
26:2,5 28:4,5
29:13,14,17,18
29:22 35:9
**directed** 20:24
**directly** 15:20
**directs** 18:4
**disaggregation**
44:22
**disagree** 11:16
28:1,14
**disagreed** 8:4
**discovery** 39:6
45:10
**dismiss** 1:13
3:23 4:8,11 5:17
6:8,14,15 7:7,10
7:20 10:16 12:7
23:3,6 37:9
48:15
**dismissal** 7:18
9:13 43:14,15
**dismissals** 43:11
**dismissed** 46:2
**dismissing** 7:21
**dispatch** 14:14
14:18 15:1
**dispute** 13:23
18:7 21:1

**disregard** 44:9
**distinct** 38:13
**distinction** 20:15
**distinguish** 44:8
**distinguishing**
  38:4
**district** 1:1,2
**dj** 21:3
**docket** 43:19,24
  44:17
**document** 19:9
**doing** 5:12 9:19
  14:8 16:3,5
  47:13,17
**dominican** 40:9
**downstream**
  13:17
**drafted** 41:8
**draw** 12:17
**drive** 25:16
**drops** 24:2
**dt** 39:12
**dte** 31:9,14,18
  32:1,14 33:8
  36:9
**dunn** 2:13 3:20
**dyess** 2:9

### e

**e** 50:1,1
**earlier** 15:10
  25:11
**effect** 21:18
**effectively** 42:18
**effort** 42:1
**ego** 31:11,13
  33:12 36:23
  37:16 38:15

39:21 44:4,19
**egos** 32:7 36:17
  38:11
**either** 44:4,18
**element** 30:9
**ellen** 1:17
**emissions** 1:3
  2:22 3:4
**emphasis** 39:21
  43:24
**employees** 47:2
  47:4,22
**encapsulate**
  46:21
**encouraged** 19:1
  26:14
**encouragement**
  4:23 5:20 6:10
  9:6,22 12:15
  19:15,24 26:1
  27:5 28:3 29:11
  30:4
**encouraging**
  10:13 12:18
**ends** 22:6
**energy** 1:3 2:22
  3:4 33:23 35:4,8
  38:6,19 39:2,6
  47:5,10,20,22
**energy's** 38:14
**engaged** 15:7
**engagement**
  6:14
**engaging** 12:9
**entering** 36:5
**entire** 46:7
**entities** 31:16,18
  33:10 34:2,4,9

34:14 36:2,9,16
  37:22,22 38:2,5
  38:23 39:15,18
  40:4 46:22
  47:14,15,17
**entity** 32:1 33:10
  33:22 35:10
  38:8 40:1 42:18
**environmental**
  15:6
**error** 24:17
  45:16
**especially** 13:8,9
  30:14
**esq** 2:3,7,9,12,14
  2:14,15,18
**essentially** 39:24
  46:8
**establish** 15:22
**established**
  40:14
**et** 1:7 3:4,5
**evall** 2:14 3:21
**event** 23:11 48:8
**evidence** 11:20
  24:22,23 25:3,20
  25:24
**evince** 12:9
**exact** 8:2 36:22
  37:3
**exactly** 11:20
  28:5,9 30:2
  34:24
**examined** 25:23
**example** 9:3
  14:10 34:12,20
  38:1 39:2 46:18
  47:20

**examples** 25:5
**expect** 42:9
**expenses** 36:2
**explain** 33:6,14
  33:16,17
**explained** 26:4
  44:12
**explanation**
  41:18
**expletive** 4:22
**extent** 26:22
  34:5,8,15 35:7
  40:6 41:16
  46:11

### f

**f** 50:1
**facilitating** 18:1
  18:2
**facility** 46:5
**fact** 7:8 9:11
  12:8 18:7,10
  21:23 30:18
  31:17,17 32:5,13
  42:15 44:8
**factors** 41:7
**facts** 5:19 6:10
  10:12 22:8
  30:16 31:10,16
  35:16 37:1
**factual** 23:18
  37:9,12,18 38:3
  47:9
**fail** 8:10
**failing** 36:21
**failure** 8:8 36:21
  44:8

| | | | |
|---|---|---|---|
| **fair** 8:22 9:8 10:8 39:5,7,20 | **flip** 39:7 | **front** 10:6 40:17 | **gives** 13:15 |
| **fairly** 9:2 | **flom** 2:7 | **full** 14:6 17:11 20:2 | **global** 14:4 17:1 17:3,7,14 18:3 20:10 |
| **faith** 29:5 | **flow** 35:23 | **fund** 36:1 | **go** 3:2,7 9:9 20:13 21:10 26:3 33:18 34:5 39:16 42:16 43:9 49:9 |
| **fall** 14:12 | **focus** 7:16 20:11 20:11 24:14 28:16 | **funny** 20:17 | |
| **far** 24:8 42:19 | **focused** 7:21 8:7 12:8 48:24 | **further** 3:7 22:10 45:22 | |
| **farfetched** 11:22 | **focuses** 14:6 | **futile** 5:11 | **goes** 19:21 46:15 |
| **federal** 20:10 24:18 25:11 | **focusing** 22:3 | **futility** 5:14 6:4 7:13 8:1,7 | **going** 4:14 12:23 25:22 26:18 45:5 48:17 |
| **feel** 23:9 | **follow** 20:6 | **future** 48:18 49:6 | |
| **fifth** 4:6 31:4 38:17 39:9 40:7 40:17 41:9,12,17 42:5 44:23 45:4 | **followed** 21:8 | | **good** 3:1 19:23 29:2,5 40:14 41:7 42:5,13 49:7 |
| | **following** 31:8 34:20 | **g** | |
| | **foregoing** 50:4 | **g** 6:12 7:3,6 22:20 | |
| **figure** 29:9 | **form** 30:3,5 34:22 44:10,18 | **gallagher** 1:7 3:5 32:10 33:10,21 33:23 34:18 35:4,6,8,10,12 35:16,19,24 36:1 36:5,15,17,18 37:4,7 38:6,10 38:13,19 39:2,5 39:13,15,16 40:3 41:14 42:19 43:11 47:5,7,10 47:20,22 | **governing** 9:10 |
| **file** 4:4,5,6 31:4 42:11 43:1 | | | **governs** 13:1 15:13 |
| **filed** 6:1 8:3,10 | **forth** 17:23 45:11 | | **grokster** 25:12 25:21 26:4 |
| **filing** 42:14 | **forward** 21:10 42:15 49:5 | | **grounds** 7:21 8:9 9:13 |
| **filings** 47:2,4,6 47:11,21 | **found** 20:19 24:17,23 25:6 35:2 | | **group** 46:6 |
| **final** 30:10 | | | **guess** 10:17 15:18 16:5,13 27:2 28:1 29:8 32:12 37:24 40:16 |
| **financial** 23:24 30:5 32:9 33:21 34:6 35:5,5,11 35:15,18,23 36:4 37:6 38:9 39:13 41:15 | **four** 32:1,3,3,14 32:17 33:9,14 37:16,21 38:2,5 46:19,21 47:8,24 | **general** 5:4 | |
| | | **generally** 6:24 | |
| | | **generate** 36:14 | **guessing** 32:19 |
| | **fourth** 4:5,8 10:11 26:20 34:23 35:2,14 37:14 38:7 40:21 41:13,19 41:23 42:11 43:10 44:2,14 45:15 | **gibson** 2:13 3:20 | **h** |
| **finger** 19:3,4 | | **give** 4:18 5:2 23:13 28:4,11 32:22 | **halfway** 30:12 |
| **firm** 3:12 | | | **hand** 36:1 50:15 |
| **first** 3:9 4:11,13 4:24 12:2 18:12 31:1 40:15 41:20 43:17 | | **given** 11:21 24:19 39:23 45:2 48:14 | **handful** 46:9 |
| | | | **handling** 3:13 |
| **fits** 30:18 | | | |
| **fix** 43:17 44:21 44:23 | **framed** 31:3 | | |

[hannum - intermediate]                                      Page 8

| | | | |
|---|---|---|---|
| **hannum** 1:18 | | 18:14 19:24 | **infringes** 17:8 |
| **happen** 19:10,12 | **i** | 21:4 24:22 25:7 | **infringing** 13:8 |
| **happened** 5:1,2 | | 30:20 | 13:18 16:8 |
| 5:4 6:23 21:17 | **idea** 35:15 | **inducer** 17:16 | 26:10,10,14,15 |
| 43:13 | **identifies** 34:11 | 24:23 | 26:17 27:1 |
| **happens** 48:16 | **identify** 3:8 | **inducing** 15:12 | **infused** 11:3 |
| **health** 49:7 | **imagine** 48:16 | 26:12 | **inherent** 13:12 |
| **heard** 23:14 | **important** 33:5 | **inefficient** 22:23 | **inherently** 15:12 |
| 28:12 43:6 | 34:9 | **inference** 12:18 | **initial** 11:18 14:9 |
| **hearing** 1:16 | **impossible** 13:23 | **information** | **inquiry** 15:14 |
| 49:11 50:5 | **improperly** 10:5 | 10:5 33:13 | **inspire** 22:8 |
| **hey** 19:6 29:22 | 38:2 | 39:10 42:17 | **instruction** |
| **hired** 15:6 | **improved** 39:6 | **infringe** 5:16 | 12:14 19:19 |
| **history** 8:23 | **incentive** 30:5 | 13:2 15:20,24 | 24:19 25:10 |
| 12:21 43:9 | **incentives** 23:24 | 16:4,11 17:9 | 30:4 |
| **hon** 1:20 | **incentivize** 30:5 | 18:22 23:21 | **instructions** |
| **honor** 3:11,18 | 30:6 | 25:18 27:13 | 11:21 20:22,23 |
| 4:16 7:1,12,16 | **incentivizes** | 28:6 29:13,15,17 | 21:5,8 24:15 |
| 8:22 9:8 10:2 | 17:22 | 29:18 | 28:5 |
| 12:2 13:19 | **included** 11:8 | **infringed** 16:19 | **insufficient** 44:1 |
| 15:11 16:24 | 41:13 | **infringement** 5:6 | 44:10,19 |
| 18:12,18 19:22 | **including** 14:5 | 5:21 6:11 10:13 | **intend** 9:23 |
| 21:23 22:14 | **inconveniencing** | 13:7,9,16 16:10 | 15:23 16:4,19 |
| 23:15 24:11 | 16:16 | 16:10,21,22 17:4 | 18:9 48:6 |
| 26:5 28:13 30:3 | **incredibly** 22:23 | 17:4,5,7,10,18 | **intended** 13:6 |
| 30:10 33:1,2 | **independent** | 18:3,10,10,17 | 15:19 21:18 |
| 43:8,14 45:19 | 14:7 20:6 | 19:2,17 23:2 | **intending** 17:10 |
| 49:10 | **indicated** 50:6 | 24:6,7,10,16,17 | **intends** 29:13 |
| **honor's** 20:1 | **indirect** 5:6 | 26:8,12,19 27:5 | **intent** 5:16 6:2,4 |
| 21:11 36:20 | 13:15 23:2 | 30:13,15,20,22 | 7:17,23 8:6 9:21 |
| 41:10 42:7 | 25:24 29:12 | **infringer** 15:2 | 11:10,13 12:9 |
| **hopefully** 48:21 | **induce** 12:24 | 18:23 19:1,6,13 | 19:7 25:23 |
| **hyatt** 2:22 | 17:11,12 | 21:18 25:8,24 | 29:14 |
| **hypothetical** | **induced** 5:20 | 26:2 28:5 29:12 | **interest** 36:10 |
| 20:2 | 6:11 17:4,5,6,15 | 29:13,14,17,18 | **interested** 50:12 |
| | 18:24 19:17 | 29:22 30:16 | **intermediate** |
| | 24:7,9,15 26:7 | **infringer's** 19:3 | 34:14 47:17 |
| | **inducement** 7:22 | 19:4 | |
| | 11:23 12:1,6 | | |
| | 13:12,24 17:1 | | |

**interrupt** 15:17
**invoked** 11:23
**issue** 4:9,20,22
  5:1,4,14,15,19
  6:1,3,7,9 8:2,14
  8:18 9:2,6,6,21
  9:22 10:12,16
  22:2,15,20 23:1
  23:4,6 25:15
  26:10,22 28:15
  29:20 32:18
  33:4 40:16 46:2
  46:17
**issued** 34:24
**issues** 11:24
  32:23 41:11
  47:3
**item** 43:24 44:17

## j

**j** 1:7,20 2:15 3:5
  32:10 35:6 47:7
**jeffrey** 2:9
**jessica** 2:7
**johnson** 36:24
**joseph** 2:14 3:21
**judge** 31:9 43:23
**judgment** 20:18
  20:20 42:24
**jurisdiction**
  20:20 21:4
**jury** 24:15 25:9
**justin** 2:4 3:14
  23:16

## k

**key** 7:15 10:16
  41:7 46:20

**keying** 28:15
**kick** 42:17
**kin** 50:12
**kind** 4:21 5:18
  6:10 11:12
  12:20 19:14,15
  26:8,23 27:11
  29:9 31:15 33:6
  36:8 38:2,21
  39:2 41:2
**kinds** 32:13
**know** 4:1 9:19
  9:21 11:10
  13:17 16:3,14,18
  16:20 18:16
  19:20 24:4 47:9
  47:12
**knowing** 17:8
  24:3
**knowledge** 17:6
**known** 30:17
**knows** 13:10
**kremer** 2:15
  3:21,23 4:14,16
  4:17 6:24 8:13
  8:22 9:8 10:2,4
  11:18 15:17
  16:24 18:11,20
  19:22 22:11,13
  23:14 28:11,13
  30:2
**kunz** 2:7

## l

**label** 11:21
**lack** 7:17,22
  42:12

**lading** 14:5,10
  15:1 20:8
**laid** 44:5
**laptop** 25:17
**late** 44:22
**law** 2:2 3:12
  11:6 33:17
  41:16 45:16
**lay** 37:2
**lead** 44:9
**leads** 16:9
**leave** 4:5,6 31:4
  43:20
**legal** 1:22 23:17
  24:8 28:14 33:4
  36:20 37:3,3,12
**legally** 44:1
**letter** 5:12,14
**level** 37:7 48:22
**levels** 32:4 34:5
**liability** 18:14,17
**liable** 13:1,3
**lie** 18:14
**light** 48:19
**limits** 29:10
**line** 3:20 40:10
**litigating** 8:15
**litigation** 42:19
**little** 20:17 37:24
  43:9 48:7
**llc** 35:4,4,8,8
  38:6 41:15 47:5
  47:10,20,22
**llp** 2:7,8,13
**local** 3:10
**logically** 26:9
**long** 36:24

**longer** 48:8
**look** 6:12,17
  14:7 17:14,16
  18:4,5 24:14
  25:14 27:3,8
  31:15 40:15,17
  42:14 46:1 49:5
**looked** 5:24
  24:21,21
**looking** 34:23
**looks** 5:2,4 6:21
**loss** 23:23 36:14
**lot** 19:16
**lots** 38:23
**lumped** 38:3,23
**lumping** 44:7
  46:1,17

## m

**machine** 50:8
**main** 27:23
  32:16
**making** 9:24
  10:18 30:12
  32:5,9
**manner** 27:1
**manual** 19:19
**mark** 2:14 3:21
  3:21 43:5,8
  45:21
**market** 26:23
**marketing** 27:11
**matter** 1:17 3:4
  11:18 42:8
  45:17 47:9
**matters** 37:9
**meagher** 2:7

**mean** 8:15 22:21 23:9 31:23 36:12 40:17 47:5

**meaning** 46:20

**means** 19:20 45:2

**meant** 47:19,23

**meat** 10:9

**meet** 15:7 22:1 24:4,16,24

**mentioned** 8:16 8:17 15:10 18:12

**mercury** 24:4

**merit** 1:18 48:22

**mes** 1:4

**message** 26:1

**met** 11:2

**method** 17:11,12 17:18 20:5,11,23 21:15

**methods** 28:19

**microsoft** 20:9

**midwest** 1:3 2:22 3:4

**mine** 48:12

**minimum** 29:19

**minute** 33:18

**misinterpreting** 32:22

**missed** 31:17 32:23

**missing** 30:8 37:20

**mistake** 31:20 33:3

**moment** 18:19

**monday** 1:12

**months** 40:10

**morris** 2:12 3:19

**motion** 1:13,13 1:14 3:22,23 4:3 4:8,10,12,12 5:7 5:8,10,13,17,17 5:18,23 6:8,15 6:15,18 7:7,10 7:16,20 8:15,19 9:2,4,11,11,15 9:20 10:7,16 12:7 14:4 23:3,5 30:24 31:2,3,4,6 31:7 32:21 33:16 37:9 40:6 40:9 41:23,24 45:9 48:4,6

**motions** 4:3,9 6:13 7:15 48:14 48:16

**movant** 40:15

**moved** 42:11

**moving** 41:8

**multi** 14:11 17:11 20:4,11 21:15

**multiple** 20:5,16 20:19 32:5

**n**

**name** 3:11 46:3 46:6,12

**named** 46:10

**names** 33:19 34:2

**narrowing** 21:12

**nature** 33:3

**necessarily** 13:21 19:20 28:7

**necessary** 16:22 26:3 47:1,3,6,11 47:21

**need** 16:11 25:20 30:13 34:5 36:4 37:2,8 40:14 42:17 43:1

**needed** 30:21

**needs** 13:5,5 21:13

**neither** 50:11

**nemunaitis** 2:4 3:14 8:11 23:13 23:15,16 27:15 27:22 28:2,9 31:2 33:1 35:21 39:4 41:6 42:3 43:4 45:22,24 46:17,23 47:12 47:24

**never** 8:17,18 22:21 41:18

**nexus** 15:9

**nichols** 2:12 3:19

**nine** 40:10

**non** 13:8 14:18 26:10,14

**notary** 1:18 50:18

**note** 7:12 11:9 11:19 48:11

**noted** 4:1 8:8

**notice** 43:24 50:6

**noting** 35:3 44:17

**o**

**obtain** 35:22 36:5,15 39:15

**obviously** 28:14 31:7,19,22 32:12

**occur** 18:5 21:19

**offer** 13:16

**officer** 34:14 36:4

**official** 50:15

**oh** 44:21

**okay** 3:24 4:17 10:3 22:10 24:19 26:11 28:10 29:8 30:23 43:3 47:3 48:2

**ones** 27:24 32:3 32:3

**opening** 5:17 9:17 10:1

**operate** 36:13

**operated** 46:4

**operating** 15:8 39:12

**opinion** 26:4 36:20 42:7

**opportunity** 45:1,14

**opposed** 26:15

**opposition** 45:9

**oral** 5:22 6:3 8:12 9:13 21:13

**order** 6:3 9:3,3
  9:19 31:7,12
  36:1 40:11,13
  41:2,10 48:4
**original** 7:9,18
  7:19,20,22 12:7
  15:16 21:21
**originally** 24:12
**outcome** 13:21
  50:13
**overlooked** 10:5
  45:17
**owned** 35:4,6
  39:12,13
**owning** 39:12
**owns** 33:21,22
  33:23

**p**

**p.m.** 1:17 49:11
**pages** 9:17,24
**paid** 36:3
**pan** 39:1
**paragraph** 27:22
  34:21 35:1,3
  46:3
**paragraphs** 27:9
  27:20 28:16
  46:10,20
**parent** 33:20
  34:7,17 43:1
  46:11
**parent's** 32:4
**part** 5:20 6:10
  10:23 25:8 27:2
  37:21
**participants**
  50:7,11

**participation**
  17:21
**particular** 12:22
  20:22 21:1,2
  27:21 34:16
**particularly**
  18:13
**parties** 6:14
  13:14 14:5,19
  41:7 42:10
  43:20 44:8
  48:10,24
**party** 13:1 41:8
  50:12
**patent** 16:4 17:6
  18:22 20:21
  21:3
**patents** 15:20
  16:1 20:16,19
**pattern** 30:18
**paul** 2:15,18
  3:21
**pc** 2:4 25:17
**pejorative** 36:12
**permissible**
  29:10
**permission** 36:5
**permit** 40:9
**permitted** 40:8
**person** 18:23
  19:6 47:13
**perspective**
  37:12 38:10
  49:1
**pharmaceutical**
  11:21
**phone** 49:8

**phraseology**
  10:19
**physical** 19:24
**place** 41:20 50:6
**plainly** 45:2
**plaintiff** 2:5 5:5
  5:15 6:9 10:19
  10:22 11:5 13:5
  13:5 24:20
  29:19 30:12
  40:24 42:23
**plaintiffs** 1:5 3:9
  3:13 4:3,11,21
  6:5,20 8:11 9:12
  10:10 12:1
  13:11 22:4
  23:12,16 28:14
  28:16 30:19,24
  31:1 41:3 43:7
  43:19 44:5 48:4
**plan** 36:13
**plant** 11:4 14:1,1
  15:8 21:22 22:9
  23:24 24:3
  34:16 40:9
**plants** 10:21,21
  11:8,10 12:10,19
  15:20,23,24 16:2
  16:7 21:24
  23:23 26:24
**plausibility** 7:14
  9:10 21:9
**plausible** 11:1
  16:17 22:3
  35:17 37:19
**plausibly** 8:6
  10:11 15:18
  16:12 31:11,13

**plays** 41:16
**plead** 28:21 37:1
  44:18
**pleaded** 5:5,16
  5:19 6:7 23:2
  27:3 31:10,13,15
  31:17 35:20
**pleading** 14:4
  30:21 37:13
  38:22 41:1 44:1
  44:4,15 46:6
**pleadings** 33:6
  40:11 45:10,12
  48:14,19
**pleads** 29:16,17
**plug** 25:17
**point** 19:16 22:4
  22:24 23:11,18
  23:18 24:8
  27:21 29:5
  30:10 32:12
  33:4,5,9,16 36:7
  36:8,19 39:7,19
  46:1
**pointing** 6:5
  31:19 32:16
**points** 7:2 10:18
  23:17 33:3
**pool** 36:2,3
**pooled** 47:15
**position** 28:7
  29:7 33:7,16
**possibly** 32:7
**posture** 7:5
  20:17
**potential** 32:6
  38:15

**potentially**
24:20 42:24
**power** 10:21
11:3,8,10 12:10
12:18 14:1,1
15:8,20,23 21:22
21:24 22:8
23:23,24 24:3,12
26:24
**practical** 42:8,13
**precedent** 7:6
12:23 18:13
**precise** 12:3
**prejudice** 41:7
42:10
**prejudiced**
42:22,23
**prejudicial**
43:14,15
**preparing** 46:9
**present** 2:21
44:22
**presented** 8:2
44:3
**press** 18:22 20:1
**pretty** 25:15
42:15
**prevailed** 24:20
**previously** 15:9
43:12
**primary** 7:24
**principally** 44:7
**prior** 5:7 6:14
22:23 31:7
**probably** 27:23
47:10
**problem** 12:11
12:13 32:16,16

37:11 41:16
**problems** 7:19
38:1 42:13 45:7
**proceed** 13:11
**proceeded** 39:6
**process** 23:5
48:14,18
**product** 11:22
12:24 13:2,4,6,7
13:10,16 14:21
14:22 15:12
18:15 19:18
23:20 25:16
26:9,12,13,18
30:14
**products** 14:16
14:17
**professional**
1:22
**program** 17:22
**proof** 16:14 21:9
22:2
**proper** 9:14
15:14
**properties** 13:12
15:12
**propose** 12:2
**proposed** 34:11
34:23 38:17
40:17 44:22
45:16
**proposing** 41:3
**prove** 13:5 26:11
**provide** 19:11
22:6 23:24 24:1
26:13 27:13
28:18 36:18

**provided** 11:8
15:1 19:23
20:22,23 21:5
30:11 40:21
**provides** 21:23
29:16 41:12
**providing** 11:3
12:4 13:24 19:2
26:18 27:1,4,10
27:18
**proving** 39:24
**provision** 16:6,9
16:12,15,21 24:5
**proximate** 17:2
**public** 1:18
50:18
**purchase** 17:20
**purpose** 33:15
36:11,13 39:14
45:8
**pursuant** 50:5
**push** 6:23 19:7,7
**pushed** 19:12
**pushing** 18:24
19:3 20:3
**put** 10:14 18:21
23:20 25:18
**putting** 19:2

**q**

**quantas** 25:12
**question** 10:17
13:23 25:19
33:13 35:13
40:5 41:22 44:3
46:16
**questions** 4:18

**quite** 5:3 20:16
**quo** 40:8
**quote** 17:5 25:22

**r**

**r** 2:7 50:1
**raise** 6:6,19 8:8
**raised** 4:20 5:14
5:19 6:1,18 7:4
7:8,20 8:14,18
9:7 23:4,7 32:24
**ran** 34:13
**rationale** 8:7
**rationales** 7:15
**raucci** 2:12 3:18
3:19
**rc** 35:7
**read** 9:18 19:17
25:22 28:17,24
31:7 40:19
**reading** 29:1
38:18
**ready** 18:8
**real** 19:4
**realistic** 26:17
**really** 21:17,17
22:24 25:14
26:7 28:15
33:15 39:11
41:21
**reason** 6:2 9:5
15:10 21:23
22:5 33:8 42:9
**reasoning** 42:8
**reasons** 18:15
22:7 31:24
**received** 41:10
42:7

| recommendation | rejected 12:3 | responded 22:21 | s |
|---|---|---|---|
| 43:23 | relationship | response 43:6 | |
| reconsideration | 35:17 38:11 | 45:23 | safety 49:8 |
| 1:13,14 3:22 4:4 | relationships | responses 6:11 | sale 12:13 13:3 |
| 10:7 31:3,6,8 | 37:23 38:16 | rest 46:6 | 13:16,16 18:8 |
| 32:21 40:7 42:1 | 44:9 | retrofit 30:19 | sally 34:12 |
| 45:9,18 | relative 45:3 | reversed 24:18 | satisfy 11:13 |
| record 3:2,2,8 | remiss 22:15 | rewrite 8:23 | saw 36:24 |
| 7:2 45:17 49:9 | report 43:22 | richard 2:14 | saying 6:17 9:18 |
| 50:10 | reporter 1:18 | 3:21 | 10:23 12:23 |
| recorded 50:7 | reporters 1:22 | ricoh 25:11 | 21:12 22:6 |
| redo 46:7 | represent 22:17 | 26:17 | 38:18,22 42:2 |
| refco 37:5 | representing 2:5 | right 4:15 5:3,3 | says 17:3 25:22 |
| refcos 10:20 | 2:10,16,19 | 8:18,21 9:7 10:1 | 29:22 35:3,5,7 |
| 33:24 34:3,13 | represents 22:16 | 11:20 16:3,23 | scenario 11:22 |
| 35:22 36:1,3,13 | request 4:4 40:7 | 18:22 19:3,4 | 15:13 16:18 |
| 37:4,15 38:12 | 40:12 43:10 | 22:22 23:7,8 | 19:22 29:12 |
| 39:12,15 40:3 | required 20:3 | 28:8,9 30:2 | 30:11 48:16 |
| 47:7,22 | 25:23 27:5,14 | 31:23 35:21 | scheduling 40:11 |
| referred 46:19 | 28:8 33:17 37:8 | 38:19,20 39:3 | 40:13 41:2 |
| referring 33:8 | 41:19 43:20 | 42:2 43:3 45:14 | scheme 36:11,12 |
| refined 2:16 | requirement | 45:20 46:22,23 | scope 20:2 45:10 |
| 3:19 12:4,14,18 | 10:14,15 11:2,6 | 47:11 48:2 | seal 50:15 |
| 13:13,21,22 14:1 | 11:14 26:6,7 | rightly 10:6 | sealed 42:14 |
| 17:20,21,22 22:7 | requirements | ripe 22:21 | second 4:7 18:18 |
| 23:22 24:5 | 13:18 15:7 22:1 | rise 13:15 | 43:12 |
| 27:18 28:19,22 | 39:23 | road 12:23 15:11 | section 17:21 |
| 30:7 34:16 36:6 | requires 17:5 | rom 25:16 | see 11:20 14:8 |
| 36:11 46:5 | 18:16 20:5 | rough 14:12 | seek 43:20 |
| regard 4:4,7,23 | resisting 5:8 | round 39:20 | seitz 2:18 |
| 5:13 10:16 28:2 | resolve 48:9 | rule 6:12,13 7:3 | seized 7:17 |
| 45:8 48:18 | respect 22:14 | 7:6,14 8:10 9:10 | self 36:10 |
| regarding 27:16 | 36:9,10 39:8,22 | 9:14 28:21 29:4 | sell 14:15 15:23 |
| registered 1:18 | 41:6,14 | ruled 8:1 44:16 | 23:23 |
| 1:22 | respectful 23:9 | rules 7:5 | seller 26:11 |
| regulations 24:4 | respective 48:14 | ruling 8:5 12:11 | selling 13:2 |
| regulatory 15:7 | respond 10:23 | runs 18:16 | 15:21 18:14 |
| 22:1 | 23:13 28:12 | | sense 26:8,11 |
| | | | 48:17 |

| | | | |
|---|---|---|---|
| **sent** 19:19 | **simple** 45:19 | **spelled** 37:24 | **strong** 42:4 |
| **separate** 12:21 | **simply** 11:2 20:3 | **stacey** 2:22 | **stronger** 39:23 |
| 24:10 26:6 40:6 | 27:4 44:23 | **staff** 25:1 | **stuff** 41:4 |
| 43:1 47:17 | **sister** 33:22 | **stage** 5:18 6:18 | **submit** 30:18 |
| **separately** 46:13 | **situation** 26:9,16 | 8:20 9:2 16:14 | **subsequent** 14:8 |
| **separateness** | 38:14 39:11,23 | 23:6 33:19 37:2 | 21:19 |
| 32:13 | **situations** 25:6 | 37:9 48:23 | **subsidiary** 32:4 |
| **september** 1:12 | **skadden** 2:7 | **stand** 48:19 | **substantial** 13:8 |
| 50:16 | **slate** 2:7 | **standard** 7:13 | 30:15 |
| **series** 18:6 | **slew** 7:19 | 7:14 9:11 12:1 | **substantially** |
| **seriously** 21:11 | **slightly** 7:13 | 17:1 28:15,20 | 42:23 |
| **services** 32:9 | **software** 14:18 | **standards** 24:24 | **substantiate** |
| 33:21 34:6 35:5 | 15:1 20:24 21:6 | **start** 3:9 4:18 | 35:14 |
| 35:6,11,15,18,23 | **sold** 13:10 14:18 | 33:9 | **substantive** 4:22 |
| 36:4 37:6 38:9 | 14:21 | **starts** 22:6 | 41:13 |
| 39:13 41:15 | **solutions** 1:22 | **state** 24:6,9 | **substantively** |
| **set** 8:5 12:22 | **solved** 41:17 | 26:19 34:2 | 8:19 |
| 33:18 40:10 | **somebody** 15:2 | **stated** 46:3,4 | **succeeded** 46:14 |
| **setting** 22:2 | 25:18 | **statements** 33:6 | **successfully** |
| **shelby** 36:24 | **soon** 48:7,9 | 50:7,10 | 25:24 |
| **short** 13:14 29:1 | **sorry** 18:18 | **states** 1:1 25:4 | **sufficient** 4:22 |
| 48:4 | **sort** 9:14 13:19 | **status** 31:11,14 | 5:19 8:9 10:12 |
| **shorthand** 46:21 | 30:7 34:13,22 | 40:8 | 12:5 15:22 23:9 |
| 50:8 | 36:22 37:7 | **statute** 11:23 | 24:6 26:19 |
| **shortly** 48:9 49:4 | 44:21 46:5 | 13:1 15:13 | 39:17 45:7 |
| **show** 13:5 26:13 | **sounds** 42:2 | 18:16 30:17 | **sufficiently** 5:5 |
| **showing** 25:23 | **speak** 45:5 | **stay** 12:5 | 5:15 6:9 10:11 |
| 26:6 44:9 | **speaks** 6:13 | **step** 14:11 17:11 | 10:20 23:2 30:1 |
| **side** 3:8,9,16 | **special** 46:12 | 20:4,11 21:6,7 | **suggest** 9:23 |
| 4:13,21 8:12 | **specific** 5:16 6:2 | 21:14,15 | 15:11 18:13 |
| 22:12 23:12 | 6:4 7:17,22 8:6 | **steps** 14:2,6,7,9 | **suggested** 40:19 |
| 31:6 38:21 39:8 | 8:14 9:21 12:2,9 | 14:9,12 17:13 | **suggesting** 6:6 |
| 43:5,7 | 25:2,7,20 26:14 | 18:6 20:6,6,13 | **suggestion** 9:18 |
| **sides** 40:1 | 38:24 39:10 | 20:22 21:1,19 | **suit** 15:20 |
| **sign** 34:15 | **specifically** | **stop** 15:15 34:19 | **suite** 1:23 |
| **signature** 50:17 | 15:19 16:19 | **straight** 42:15 | **sum** 17:19 18:4 |
| **significant** 42:10 | 17:9 23:22,23 | **strategy** 46:8 | **summary** 6:23 |
| | 27:17 44:5 | | |

supervision 50:9
supply 34:16
  36:6
supplying 15:15
support 25:1
  37:1
supposed 46:21
supreme 25:12
  25:22
sure 9:16 29:7
  34:20,24 48:12
sweep 14:6
  17:12
systems 27:19

**t**

t 2:4 50:1,1
tailoring 18:2
take 4:10 14:2
  19:16 21:11
  23:11 30:24
  44:14 45:1,2
takeaway 36:23
taken 17:17
  38:22 50:5
takes 25:15
talk 47:16
talking 21:8
  25:21
tax 17:22 35:22
  36:14 47:2,4,6
  47:11,21
teaching 21:14
tech 14:4 17:1,3
  17:7,14 18:3
  20:10
teleconference
  3:3 4:2 8:16

50:5
telephonic 1:16
tell 5:2 11:16
  32:22 35:14
tells 17:14
tend 5:18 6:18
terms 29:11
  48:23
territory 12:21
test 17:3 21:12
  29:3
thank 3:15,24
  23:15 28:10,13
  30:23 33:1 43:3
  45:20 48:2
  49:10
theoretically
  14:7 20:6
theories 34:21
  44:19
theory 13:12
  33:12 36:22
  37:3,4 41:18
thereof 50:13
thing 5:21 16:9
  16:12,21 19:11
  22:14 29:24
  46:14
things 13:4
  14:13,13,15,21
  17:19 18:11
  19:17 24:23
  33:14,20 34:13
  41:3 47:17
think 5:3 6:5,24
  7:1 9:3 10:10,15
  10:18,23 11:5,15
  11:16 18:12

19:23 22:4 25:8
  27:2 28:17 29:2
  29:10,19 30:1
  32:23 33:2,4
  37:11 38:17,18
  39:4,7,20,21,22
  40:8 42:3,15
  45:7 46:15 47:9
  48:11,13,23 49:1
third 13:19
thought 10:4
  31:10 37:12
three 31:13
  38:14 45:13
threshold 4:20
tie 33:14
time 7:8 17:2
  23:10 29:2,9
  39:1,11 43:12,18
  43:21 44:2,13
  46:1 50:6
timeliness 4:20
  4:24 22:14,20
title 47:14
today 3:13 4:9
  49:5
told 14:21 44:6
tons 22:6
top 46:10
totally 23:6
  32:23
touch 4:11
tout 27:17
trace 36:21
traced 24:22
traditional 17:2
transcribed 50:8

transcript 50:10
transcription
  50:9
tried 33:3 39:9
truck 14:13,16
true 7:3 16:5
  21:21 27:15
  37:13 38:19
  40:12,14,15
  50:10
try 48:8 49:3
trying 6:19 8:5
  8:23 18:20
  19:16 29:9 32:2
  32:20 45:11
tunnell 2:12
turn 4:12 22:11
  23:12 31:1 43:5
turns 28:6 38:20
  38:24
two 4:2,9 14:12
  14:15,21 18:11
  23:17 24:11
  26:5 28:19
  30:16 34:20
  41:9
type 11:20 32:13

**u**

u.s. 24:24 25:1,2
ultimate 33:20
  34:7,17 37:3
ultimately 29:18
  34:7 35:11,15,24
  39:14
undermine
  38:21

**understand** 20:1
31:9 32:20,20
38:6,7
**understanding**
13:20 39:5
**understood**
36:20 42:7
**unduly** 21:12
**united** 1:1 25:4
**unstated** 13:20
**untimeliness**
6:20
**use** 6:12 10:21
11:10 12:19
13:8 14:22 15:4
15:24 16:7
17:24 21:14,24
22:1,7,9 24:3
26:10,10,14,15
26:17,18,24
27:12,16 29:2,6
29:22 30:6,7
**uses** 29:17 30:16
**usmj** 1:20

**v**

**v** 1:6 3:4 20:9
25:12 36:24
**various** 12:16
**venue** 9:14
**verbally** 19:8
**veritext** 1:22
**version** 30:8
35:1
**versus** 38:14
**viable** 21:4
**view** 7:24

**vis** 38:15,15

**w**

**w** 2:14
**want** 9:16 10:14
11:9 15:23 19:6
22:13 23:17
28:16 39:19
45:23 46:22
48:24
**wanted** 36:19
**wanting** 17:9
**wants** 29:14
**warned** 44:6,24
**way** 3:3 4:1 6:21
7:6 8:17 9:1
12:1,17 14:23
16:8 27:12
28:17 29:21
30:6 32:10
36:12 41:5,12,16
46:18 48:4
**ways** 12:16
**week** 48:5
**weeks** 41:9
**went** 5:24 23:4
24:18 26:3
43:23
**wilmington** 1:23
**wish** 4:19 49:7
**withstand** 23:3
**witness** 50:15
**wonder** 38:20
**wondering** 16:6
39:1
**wonting** 30:1
37:13

**word** 15:5
**work** 36:23,23
**working** 49:5
**world** 23:21
**write** 48:7
**written** 20:23
21:13
**wrong** 6:22 8:21
11:16,17 41:24

**y**

**years** 45:13

```
 1                  DELAWARE RULES OF CIVIL PROCEDURE

 2                  Part V. Depositions and Discovery

 3                       Title V, Rule 30

 4

 5        (e) Submission to witness; changes; signing. When

 6        the testimony is fully transcribed, the deposition

 7        shall be submitted to the witness for examination

 8        and shall be read to the witness, unless such

 9        examination and reading are waived by the witness

10        and by the parties. Any changes in form or

11        substance which the witness desires to make shall

12        be entered upon the deposition by the officer with

13        a statement of the reasons given by the witness for

14        making them. The deposition shall then be signed by

15        the witness, unless the parties by stipulation

16        waive the signing or the witness is ill or cannot

17        be found or refuses to sign. If the deposition is

18        not signed by the witness within 30 days after the

19        date when the reporter notifies the witness and

20        counsel by mail of the availability for examination

21        by the witness, the officer shall sign it and state

22        on the record the fact of the waiver or of the

23        illness or absence of the witness or the fact of

24        the refusal to sign together with the reason, if

25        any, given therefor; and the deposition may then be
```

1    used as fully as though signed, unless on a motion

2    to suppress under Rule 32(d) the Court holds that

3    the reasons given for the refusal to sign require

4    rejection of the deposition in whole or in part.

5

6

7

8

9

10   DISCLAIMER:  THE FOREGOING CIVIL PROCEDURE RULES

11   ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY.

12   THE ABOVE RULES ARE CURRENT AS OF APRIL 1,

13   2019.  PLEASE REFER TO THE APPLICABLE STATE RULES

14   OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

15

16

17

18

19

20

21

22

23

24

25

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foreging transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted
fashion to authenticated parties who are permitted to
access the material. Our data is hosted in a Tier 4
SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and
State regulations with respect to the provision of
court reporting services, and maintains its neutrality
and independence regardless of relationship or the
financial outcome of any litigation. Veritext requires
adherence to the foregoing professional and ethical
standards from all of its subcontractors in their
independent contractor agreements.

Inquiries about Veritext Legal Solutions'
confidentiality and security policies and practices
should be directed to Veritext's Client Services
Associates indicated on the cover of this document or
at www.veritext.com.