IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MIDWEST ENERGY EMISSIONS CORP. and MES INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 19-1334 (CJB) |
| ARTHUR J. GALLAGHER & CO., et al., | ) ) ) | REDACTED - PUBLIC VERSION |
| Defendants. | ) | |

**LETTER TO THE HONORABLE CHRISTOPHER J. BURKE
IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE PORTIONS OF PLAINTIFFS'
OCTOBER 25, 2022 EXPERT REPORTS OF
PHILIP J. O'KEEFE (INFRINGEMENT) AND PHILIP GREEN (DAMAGES)**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
Anthony D. Raucci (#5938)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com
araucci@morrisnichols.com

MORRIS JAMES LLP
Kenneth L. Dorsney (#3726)
Cortlan S. Hitch (#6720)
500 Delaware Avenue, Suite 1500
Wilmington, DE  19801
(302) 888-6800
kdorsney@morrisjames.com
chitch@morrisjames.com

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Paul J. Lockwood (#3369)
Nicole A. DiSalvo (#4662)
Jessica R. Kunz (#5698)
One Rodney Square
P.O. Box 636
Wilmington, DE  19899-0636
(302) 651-3000
paul.lockwood@skadden.com
nicole.disalvo@skadden.com

Originally Filed:  November 10, 2022
Redacted Version Filed:  November 17, 2022

Dear Judge Burke:

Pursuant to paragraph 8(g)(i) of the Amended Scheduling Order (D.I. 283), Defendants respectfully move to strike portions of the October 25, 2022 reports of plaintiff ME2C's expert witnesses on infringement (Philip J. O'Keefe) and damages (Philip Green).  As explained below, the *Pennypack* factors weigh heavily in favor of excluding each of the cited portions of these reports:  the theories these expert witnesses advance were not disclosed during fact discovery, despite repeated requests; the prejudice to Defendants cannot be remedied without re-opening fact discovery and derailing the case schedule; and there would be no injustice in limiting ME2C to the theories that they did disclose at the appropriate time.

Defendants' motion is limited to ME2C's failure to timely disclose information under Rule 26 and to stay within the bounds of the case as ME2C pleaded it and explained it in discovery. The motion is significant now because Defendants' rebuttal reports are due on December 12, 2022. Defendants therefore respectfully submit that the proper remedy is to strike these post–fact discovery contentions now, confirming that they are out of the case well in advance of the rebuttal report deadline.  This is not a *Daubert* challenge; Plaintiffs' expert witness opinions have multiple flaws under Fed. R. Evid. 702, but those will be addressed at the time set in the Amended Scheduling Order.  Addressing the limited issues raised herein will, however, prevent prejudice, simplify subsequent rounds of expert reports, and simplify summary judgment and *Daubert* briefing.

**ME2C's Experts Have Offered Four Sets of Untimely Opinions**

First, Mr. O'Keefe offers a previously undisclosed theory on what constitutes the infringing "bromine containing promoter" of the '147 Patent claims.  *See*, *e.g.*, Ex. A (O'Keefe Rpt.) at 132 (¶ 124) ███████████████████████████████████████████████████████████████████ ███████████████████; *id.* at 159, 161 (claim chart).  In fact discovery, Defendants repeatedly asked ME2C to disclose all of its contentions on this point.  *See, e.g.*, Ex. C at ECF pp. 3–5 (Common Rog No. 12) ("For each act of direct infringement . . . , identify and describe in detail the . . . 'bromine containing promoter'"); *id.* at 8–10 (Cl. Construction Hr'g Tr.) at 55:5–56:19 (Defendants raising, at claim construction, importance of "bromine containing promoter" element) ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████ *See id.* at 14 (final infringement contentions).  ME2C never disclosed its position, newly advanced by Mr. O'Keefe, that the bromine ions themselves are the "bromine containing promoter" of the patent claims.

Second, Mr. Green offers opinions regarding a license agreement between non-parties ADA-ES, Inc. and Clean Coal Solutions, LLC, which Mr. Green says provides ██████████████ ███████████████████████████████████████████ *See* Ex. B (Green Rpt.) ¶¶ 174–79.  ME2C did not identify the ADA-ES agreement as an allegedly comparable license, however, despite multiple interrogatories to which the agreement would have been responsive.  *See, e.g.*, Ex. C at ECF p. 16 (Refined Coal Defs.' Rog No. 4) (calling for "each agreement that you contend is comparable in any way").

Third, Mr. O'Keefe (a mechanical engineer) speculates on how "the fact-finder could conclude" that Defendants had pre-suit knowledge of the Asserted Patents and specific intent to

The Honorable Christopher J. Burke                                      November 10, 2022
Page 2

cause infringement.  *See* Ex. A (O'Keefe Rpt.) at 87–101 (¶¶ 112–132).  These include musings about:  inventor-written articles that Defendants *could have* read (*id.* ¶ 118); information that Defendants *could have* obtained from certain power plant operators (*id.* ¶¶ 121–122); the legal concept of "willful blindness" (*id.* ¶ 124); and whether Defendants' technical work *could have* included analysis of ME2C's patents (*id.* ¶ 125).  Mr. O'Keefe also speculates about the significance of Defendants' post-suit conduct, including Defendants' not ceasing operations (*id.* ¶¶ 126–127, 132); Defendants' communications with power plants about the case (*id.* ¶¶ 128–130); and Defendants' privileged decision-making with respect to advice of counsel (*id.* ¶ 131).  Setting aside the *Daubert* problem of Mr. O'Keefe offering legal opinions about fact-finders, and speculation about what individuals could have thought or done, none of these factual bases were disclosed during fact discovery.  *See* Ex. C at ECF pp. 25–26 (Common Rog No. 7) (purporting to disclose "all facts" related to pre-suit knowledge); *id.* at 18–24 (Common Rog No. 2) (purporting to disclose "all facts" supporting infringement).

Finally, both of ME2C's expert witnesses offer theories that assert and assume liability on the part of non-party Arthur J. Gallagher & Co. ("AJG").  The reports suggest that AJG and other non-party affiliates, including Chem-Mod LLC, should be seen as Defendants in this case, and that they should be treated as hypothetical licensees for purposes of the reasonable royalty analysis.  *See*, *e.g.*, Ex. B (Green Rpt.) ¶¶ 1, 32–35, 41–44, 92, 148 ████████████████████████ ████████████████████████████████████████ Ex. A (O'Keefe Rpt.) at 41–57 (¶¶ 79, 85–87, 92–95) (similar).  As the Court confirmed prior to expert discovery, however, ME2C's claims that certain Defendants are agents or alter egos of AJG (or anyone else) are no longer part of this case.  *See* D.I. 482 (order denying motion for reconsideration).

**The Court Should Strike These Untimely Disclosures**

In considering a motion to strike untimely expert opinions, courts in this District consider the *Pennypack* factors.  *TQ Delta, LLC v. Adtran, Inc.*, No. 14-954-RGA, 2020 WL 4529865, *1 (D. Del. July 31, 2020).  Those factors are:

(1) "the prejudice or surprise to the party against whom the evidence is offered";

(2) "the possibility of curing the prejudice";

(3) "the potential disruption of an orderly and efficient trial";

(4) "the presence of bad faith or willfulness in failing to disclose the evidence"; and

(5) "the importance of the information withheld."

*TQ Delta, LLC v. Adtran, Inc.*, 2019 WL 4346530, at *1 (D. Del. Sept. 12, 2019) (citing *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997)).  Here, each factor weighs in favor of excluding each of ME2C's untimely disclosed expert opinions.

***Prejudice to the Defendants:***   ME2C's late disclosures have unfairly prejudiced Defendants.  If ME2C had timely disclosed these opinions and factual bases during fact discovery, as requested, Defendants could have (for example) questioned the three named inventors on the

The Honorable Christopher J. Burke                                   November 10, 2022
Page 3

'147 Patent about the bromine ion theory and further refined their invalidity contentions. Defendants also could have sought tailored discovery from ADA-ES and Clean Coal Solutions and from the various non-parties that Mr. O'Keefe claims *could have* told Defendants about the Asserted Patents.  Defendants did none of that, because ME2C's discovery responses led Defendants to believe that none of it would be necessary.

Going forward, Defendants should not be required to offer expert rebuttal to these post–fact discovery theories, or to ME2C's defective (and dismissed) claims related to AJG.  Defendants will also suffer incurable prejudice at trial if ME2C's experts are permitted to suggest that Defendants' parents and other non-parties will pay any damages awarded against Defendants.

***Possibility of Curing the Prejudice / Potential Disruption:***  Re-opening fact discovery to address these new theories and factual bases would be an ineffective and impractical cure, given how discovery was shaped by the contentions that were disclosed.  Throughout fact discovery, Defendants assessed ME2C's disclosures and decided how to use their limited allowance of depositions and interrogatories.  Defendants are hamstrung in any attempt to address these new theories, because discovery never went there.  In any event, such an inefficient and costly "cure" could not be implemented without disrupting the rest of the case schedule, as the parties are due to complete expert discovery by February 2023, submit dispositive motions shortly thereafter, and be ready for trial in September 2023.

Looking ahead, the proper cure for the evidentiary prejudice that would be created by these expert witnesses' references to AJG is to strike those "opinions' now.  A curative instruction will not "un-ring the bell" of false suggestions about who the "Defendants" really are.

***Presence of Bad Faith:***  ME2C cannot justify its repeated failure to disclose the new theories its expert witnesses propose to advance, or the bases therefor.  ME2C knew that it was obligated to identify the accused "bromine containing promoter" in two rounds of infringement contentions as well as in interrogatory responses, and did so, identifying the Mer-Sorb product. Similarly, Defendants' counsel wrote multiple letters calling for ME2C to identify all contentions regarding Defendants' alleged knowledge and specific intent, to which ME2C responded with supplemental interrogatory responses citing at least four *other* theories.  And ME2C had actual notice, prior to expert discovery, that its alter ego and agency claims were out of the case. *See* D.I. 482.

***Importance of the Information to ME2C:***  Striking ME2C's additional theories would not be unfair to ME2C.  Subject to potential *Daubert* issues, ME2C is still free to pursue the theories it timely disclosed in discovery—including its original theory that Mer-Sorb is the "bromine containing promoter," its various previously disclosed theories of pre-suit knowledge and specific intent, and other, timely disclosed, license agreements.  And while ME2C might very much want to suggest to the jury that a large insurance company is the "real" Defendant here, that improper purpose is not a reason to allow expert testimony on a claim that the Court has ruled out of the case.

The Honorable Christopher J. Burke                                    November 10, 2022
Page 4

Respectfully,

*/s/ Brian P. Egan*

Brian P. Egan (#6227)

BPE/bac
Attachments

cc:      All Counsel of Record (via electronic mail; w/attachments)

# EXHIBITS A-C
# REDACTED IN THEIR ENTIRETY