IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MIDWEST ENERGY EMISSIONS CORP. and MES INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | C.A. No. 19-1334 (CJB) **REDACTED –** |
| ARTHUR J. GALLAGHER & CO., et al., | ) ) | **PUBLIC VERSION** |
| Defendants. | ) ) | |

**LETTER TO THE HONORABLE CHRISTOPHER J. BURKE
IN REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
Anthony D. Raucci (#5938)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com
araucci@morrisnichols.com

MORRIS JAMES LLP
Kenneth L. Dorsney (#3726)
Cortlan S. Hitch (#6720)
500 Delaware Avenue, Suite 1500
Wilmington, DE  19801
(302) 888-6800
kdorsney@morrisjames.com
chitch@morrisjames.com

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Paul J. Lockwood (#3369)
Nicole A. DiSalvo (#4662)
Jessica R. Kunz (#5698)
One Rodney Square
P.O. Box 636
Wilmington, DE  19899-0636
(302) 651-3000
paul.lockwood@skadden.com
nicole.disalvo@skadden.com

**Original Filing Date: November 21, 2022**
**Redacted Filing Date: November 28, 2022**

Dear Judge Burke:

We write in further support of Defendants' motion to strike (D.I. 493). As an initial matter, ME2C's reliance on *In re Paoli* is inapposite. In *Paoli*, the court held only that where the movant still had 60 days left in discovery and the prejudice was "extremely minimal," "willful deception or flagrant disregard of a court order" is required. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791–92 (3d Cir. 1994). Here, ME2C did not disclose its new facts and contentions until after fact discovery closed, prejudicing Defendants' ability to take relevant fact discovery.

**<u>Bromine-Containing Promoter ("BCP")</u>:** Each asserted claim of the '147 Patent, the *only* pre-suit patent, demands at least three things of whatever chemical is identified as the BCP: (i) it must "chemically react[]" with a "sorbent"; (ii) it must be "in gaseous form, vapor form, or non-aqueous liquid form"; and (iii) it must be "inject[ed] separately . . . into a gas stream." Recognizing that no single substance in any of the accused power plant processes could possibly meet those three requirements, Defendants zeroed in on this issue from the beginning of the case and pushed ME2C to identify what substance it contends is the BCP and does those three things—even flagging ME2C's non-responsiveness at the *Markman* hearing. *See* D.I. 494-1 (Defs' Ex. C) at 55–56. After much prodding, ME2C finally idomentified MerSorb—an aqueous calcium bromide solution that is mixed with coal before coal is fed to the furnace—as *the* BCP, positioning Defendants to debunk ME2C's infringement theory. Now, for the first time in the O'Keefe report, ME2C asserts that the accused BCP is not MerSorb, but rather bromine ions, a component of MerSorb. That is equally implausible—and also entirely new, as ME2C admits that its interrogatory responses and infringement contentions never identified "bromine ions" as the accused BCP. Opp. at 1.

ME2C attempts to excuse its failure by noting that the once-accused MerSorb "contains" the now-accused bromine ions. *Id.* That ignores patent law and is beside the point: During discovery, ME2C pinpointed the MerSorb formulation—not the "bromine ion" component of it—as *the* BCP, and Defendants therefore focused on rebutting ME2C's contention that the MerSorb formulation meets the limitations of the '147 Patent claims. ME2C's other excuses are equally unavailing: Its discussion of the '114 Patent is irrelevant, because the BCP claim term appears only in the '147 Patent, and the cited inventor deposition testimony did not involve the accused process, but rather experiments and examples in the '147 Patent specification. Indeed, the cited testimony confirms that Mr. O'Keefe's theory of infringement is entirely new. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Defs.' Ex. D (Olson Dep. Tr.) at 82:22–83:2. That testimony confirms not only that the bromine ion theory is new, but also that Defendants were prejudiced: Given ME2C's explicit identification of the MerSorb formulation as the BCP and the key inventor's disavowal of bromine ions as the BCP, Defendants had no reason to probe how bromine ions could possibly meet the BCP-related elements of the claims anywhere, let alone in the allegedly infringing coal-fired power plants, and did not ask such questions.

**<u>ADA-ES License</u>:** ME2C admits that it did not identify the ADA-ES license, urging only that it was publicly available during fact discovery. The problem is not ME2C's failure to produce the agreement, but its failure to identify it as "comparable." Defendants sought ME2C's contentions on comparable licenses during fact discovery so that Defendants could pursue relevant information

The Honorable Christopher J. Burke                                           November 21, 2022
Page 2

about any such non-party agreements. ME2C argues that no such information exists, because only the public information that would have been available to the hypothetical negotiators is relevant. Opp. at 3. By that logic, the agreement should be excluded because the public filing was not published until after the alleged date of first infringement.[1] ME2C cannot disclose a purportedly comparable license after the close of fact discovery and then unilaterally declare that no discovery into it was warranted. Finally, that the agreement was allegedly first located by Mr. Green is no excuse for not disclosing it. *Cf.* Ex. E (*Automotive Data Sols., Inc. v. Directed Electronics Can., Inc.*) at 5 ("[P]ermitting [an expert] to opine on . . . late-raised [evidence] on the basis that he initiated the search for it 'will open the door for . . . gamesmanship'" that local patent rules are designed to prevent).

***Knowledge/Intent:*** ME2C cannot point to any discovery responses that specifically disclosed the seven new mental state theories that Mr. O'Keefe now seeks to advance. *See generally* D.I. 494-1 (Defs.' Ex. C) at 7–12 (Common Rog No. 2); 26–27 (Common Rog No. 7). Instead, for example, ME2C suggests that its complaint put Defendants on notice that Mr. O'Keefe would attempt to prove Defendants' pre-suit knowledge of the patents using interactions that took place at Luminant and Antelope Valley Station. *See* Opp. at 4; D.I. 494-1 (O'Keefe Rpt.) at pp. 93–94 ¶ 122. But the cited complaint paragraph alleges only that certain non-parties "contracted to perform the patented method during 'test burns' at accused power plants," and that those unnamed plants "provided those [non-parties] with information regarding their use of activated carbon injection." *See* D.I. 406 (4AC) ¶ 195. ME2C never identified which, if any, of the two dozen power plants implicated by the complaint allegedly provided this information, or explained how non-party discussions about activated carbon could have given any Defendant knowledge of ME2C's patents. Mr. O'Keefe is the first to argue any of that. ME2C's suggestion that its silence was justified by Defendants' delayed production of documents misses the mark; Mr. O'Keefe cites only a handful of documents produced after the close of fact discovery, and each of those documents is substantially similar to documents produced months earlier.

***AJG:*** ME2C's insistence that "[n]o expert contends that AJG is a defendant" is belied by Mr. Green on the first page of his report:



*See* D.I. 494-1 (Defs.' Ex. B, Green Rpt.) ¶ 1. ME2C does not dispute that such opinions would eventually be excluded as prejudicial, asserting only that that objection is premature. To the contrary, no such opinion should even have been offered, and Defendants should not need to submit their own expert rebuttals on this sideshow of an issue.

---

[1] Mr. Green opines that the hypothetical negotiation between the parties would have taken place in May 2012. Defs.' Ex. D (Green Rpt.) ¶ 88. According to Mr. Green, the ADA-ES license agreement was not publicly filed until six months later. *See* https://content.edgar-online.com/ExternalLink/EDGAR/0001193125-12462616.html?hash=df736b90461a1e917cab80f6fd53fbba63cf04b47b30778cd28cfad418ad29c7&dest=D398286DEX1058_HTM#D398286DEX1058_HTM.

The Honorable Christopher J. Burke                                                                                November 21, 2022
Page 3

              Respectfully,

              */s/ Anthony D. Raucci*

              Anthony D. Raucci (#5948)

ADR/lkm
Attachments

cc:  All Counsel of Record (via electronic mail; w/attachments)