# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| MIDWEST ENERGY EMISSIONS CORP. and MES INC., | |
| Plaintiffs, | |
| v. | Civ. No. 1:19-cv-01334-CJB |
| ARTHUR J. GALLAGHER & CO., ET AL., |  |
| Defendants. | |

### PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE

Dated: November 17, 2022

OF COUNSEL:

Bradley W. Caldwell
Texas Bar No. 24040630
Jason D. Cassady
Texas Bar No. 24045625
John Austin Curry
Texas Bar No. 24059636
Justin T. Nemunaitis
Texas Bar No. 24065815
Adrienne R. Dellinger
Texas Bar No. 24116275
**CALDWELL CASSADY CURRY PC**
2121 N. Pearl Street, Suite 1200
Dallas, Texas 75201
Phone: (214) 888-4848
Fax: (214) 888-4849
bcaldwell@caldwellcc.com
jcassady@caldwellcc.com
acurry@caldwellcc.com
jnemunaitis@caldwellcc.com
adellinger@caldwellcc.com

**DEVLIN LAW FIRM LLC**
James M. Lennon (No. 4570)
1526 Gilpin Avenue
Wilmington, DE 19806
(302) 449-9010
jlennon@devlinlawfirm.com

*Attorneys for Plaintiffs Midwest Energy Emissions Corp. and MES Inc.*

Dear Judge Burke:

The infringement and damages expert opinions of Philip J. O'Keefe and Philip Green are within the bounds of the case as ME2C pleaded it and explained in discovery. Defendants have failed to show untimely disclosure, let alone that they would be entitled to the extreme relief of exclusion under *Pennypack*. Defendants' Motion should be denied.

## I. Legal Standard

A Motion to Strike is premised upon a party's alleged failure to meet its discovery disclosure obligations. If a party has made the requisite disclosures, exclusion of evidence is inappropriate. *See Integra Lifesciences Corp. v. Hyperbranch Med. Tech., Inc.*, No. CV 15-819-LPS-CJB, 2017 WL 11558096, at *6 (D. Del. Dec. 11, 2017).

In the event that certain evidence is disclosed in an untimely manner, courts in this district apply the *Pennypack* factors to determine whether the "extreme sanction" of excluding evidence should be imposed: (1) the surprise or prejudice to the moving party; (2) the ability of the moving party to cure any such prejudice; (3) the extent to which allowing the testimony would disrupt the order and efficiency of trial; (4) bad faith or willfulness in failing to comply with the court's order; and (5) the importance of the testimony sought to be excluded. *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997); *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791–92 (3d Cir. 1994). Indeed, a motion to strike should only be granted where the untimely disclosure amounts to "willful deception or flagrant disregard of a court order by the proponent of the evidence." *In re Paoli*, 35 F.3d at 792 (internal citations omitted).

## II. Discussion

1. *Defendants Fail to Justify Exclusion of Mr. O'Keefe's opinions regarding the "bromine containing promoter."*

According to Defendants, ME2C accused the use of Mer-Sorb as a bromine containing promoter but did not accuse the use of bromine ions. However, Mer-Sorb is merely calcium bromide salt dissolved in water. As a matter of basic chemistry, calcium bromide is a stable compound, which, when dissolved in water consists of negative bromine ions ($Br^-$) and positive calcium ions ($Ca^{2+}$). When those ions enter a coal combustion chamber, the heat from the combustion provides the energy necessary for the bromine to separate from the calcium so that the bromine ions can react with activated carbon and mercury. Mr. O'Keefe merely explained that chemistry and then demonstrated that the bromine ions act as a bromine containing promoter.

Mr. O'Keefe's testimony is entirely consistent with ME2C's infringement contentions. ME2C identifies the relevant product applied by Defendants as MerSorb: 

*See* Appx. Ex. A, ME2C's '147 Patent Claim 1 Infr. Cont. at 10. They also explain that MerSorb contains $Br^-$:

*See id.* Claim 17, '114 Patent Cl. 1, at 6–7.

In short, this is not a case where the plaintiff accused one set of products in its infringement contentions, and **then** accused a different set of products in its expert reports. Rather, ME2C has

1

consistently identified MerSorb as the product at issue, and its expert merely provided further detail regarding the chemical operation of that product and its relation the to claim language.

In any event, turning to the *Pennypack* factors, Defendants have suffered no prejudice. Defendants argue that had they known about this theory, they could have questioned the inventors on the '147 Patent about $Br^-$. But Defendant's did exactly that, and the inventors explained how bromine ions promote activated carbon. *See* Appx. Ex. B, Deposition Transcript of J. Pavlish at 469:24–470:6 ; Appx. Ex. C, Deposition Transcript E. Olsen at 99:14–100:3 Thus, Defendants have identified no evidence of surprise or prejudice, let alone incurable prejudice. This is especially true given that Defendants have an opportunity to provide rebuttal expert testimony on this issue.

Defendants also offer no evidence of bad faith. At worst, Defendants complain that ME2C should have supplemented its infringement contentions and interrogatory responses to match the same level of chemistry detail provided by the inventors in their depositions. But Defendants provide no evidence that they sought further clarification on this point or that ME2C deliberately hid behind the log.

Finally, this portion of Mr. O'Keefe's report is important for avoiding practical problems and jury confusion. For example, Defendants do not dispute that Mr. O'Keefe could present an infringement theory for the '147 patent, they just seek to prevent him from explaining how bromine ions split from calcium to react with activated carbon and mercury. But omitting this explanation could lead to unnecessary jury confusion regarding how this process works. In short, ME2C adequately disclosed this theory, and Defendants have failed to justify the extreme relief of striking it from Mr. O'Keefe's report.

2. *Defendants Fail to Justify Exclusion of Mr. Green's Opinions regarding the ADA-ES License.*

Defendants further ask the Court to strike Mr. Green's opinions regarding the ADA-ES license because it was produced with Mr. Green's report. This agreement is a third-party license that was not produced by either party during discovery. Rather, it was located by ME2C and Mr. Green in an online SEC filing after Defendants

Under the circumstances, ME2C's disclosure of this agreement was timely. ME2C explained during discovery that its damages theory would be based on expert testimony and could include consideration of third party licenses. *See* Appx. Ex. E, ME2C's Resp. to Def. Interrogatory No. 4. ME2C identified relevant licenses produced by the parties during discovery, and it produced a copy of the ADA-ES license shortly after Defendants and the document was discovered. Federal Rule of Civil Procedure 26(a)(2)(B)(ii) requires disclosure of "the facts or data considered by the witness in forming his or her opinions." *INVISTA N. Am. S.a.r.l. v. M & G USA Corp.*, No. CIV. 11-1007-SLR-CJB, 2013 WL 3216109, at *3 (D. Del. June 25, 2013). Mr. Green disclosed all such required facts and data.

In any event, in light of the *Pennypack* factors, the ADA-ES agreement should not be excluded. The deadline for supplementing interrogatory responses was September 29, 2022, and Mr. Green's report was served on October 25, 2022. Defendants do not dispute that, had ME2C discovered the ADA-ES license and produced it on September 29, Mr. Green's reliance on it would be timely. Defendants fail to identify any prejudice stemming from their learning of the license on October 25 instead.

Even if they had, any prejudice to Defendants has already been cured—the document was produced to Defendants weeks ago, and Defendants have the opportunity to respond to any of Mr. Green's opinions in their rebuttal reports. *See TQ Delta, LLC v. 2Wire, Inc.*, No. 13-1835-RGA, 2021 WL 3202077, *2–*4 (D. Del. 2021) (denying the accused infringer's motion to strike a new doctrine of equivalents theory under the *Pennypack* factors, since the accused infringer had the opportunity to depose the patentee's expert on the new theory and to address the theory in its own technical expert's rebuttal report, and therefore the accused infringer did not suffer prejudice from the late disclosure). Furthermore, Defendants have suffered no prejudice with regard to fact witness testimony on the matter as this agreement was between two **non-parties**. In other words, it is relevant to the hypothetical negotiation insofar as it was available to the parties, and the publicly available information about the license has been produced. *See California Inst. of Tech. v. Broadcom Ltd.*, No. CV 16-3714-GW (AGRX), 2018 WL 11328366, at *8 (C.D. Cal. Sept. 10, 2018) (denying motion to strike damages opinion testimony based on third party licenses that were not produced during discovery).

Defendants do not point to any disruption of an orderly and efficient trial that would be caused by the inclusion of this evidence, because there is none. Defendants will have the opportunity to ask Mr. Green about this document in his deposition, and/or respond appropriately to it in their rebuttal report. Similarly, Defendants point to no bad faith or willfulness on the part of ME2C—this is a public document, equally available to both Plaintiff and Defendant. ME2C did not withhold this document or participate in "willful deception or flagrant disregard of a court order." *See In re* Paoli, 35 F.3d at 792.

Finally, while this agreement is just one of several agreements considered by Mr. Green under the *Georgia-Pacific* factors, it is important for demonstrating the thoroughness of his opinions. Indeed, had Mr. Green not addressed this license, Defendants could have potentially criticized him for not considering third party licenses. This information is important to this case, and Mr. Green should be allowed to consider this agreement.

3. *Defendants Fail to Justify Exclusion of Mr. O'Keefe's Opinions Regarding Pre-Suit Notice and Intent.*

Defendants also seek to strike Mr. O'Keefe's opinions regarding Defendants' pre-suit knowledge of the patents and intent, which they claim were not disclosed during fact discovery. As an initial matter, Defendants have not clearly articulated what portions of Mr. O'Keefe's report they seek to strike. The overview section of his report on pre-suit notice of the patents and intent is at paragraphs 112–132.  *See* Defs. Ex. A, Dkt. No. 494-1. Defendants claim that they are not seeking to strike all evidence related to knowledge and intent, but their motion seeks to strike this entire section, albeit, without actually explaining the full content of those paragraphs.

Regardless, ME2C timely disclosed its contentions regarding pre-suit notice and intent. For example, ME2C alleged in its complaint and incorporated by reference into its interrogatory responses that: "ME2C has also publicized its patent portfolio and explained the scope of the

patented technology through its website, its interactions with customers and potential customers, and through presentations at industry events such as the MEGA Symposium, the Energy, Utility & Environment Conference, Lignite Energy Conference, and the Air Quality Conference. Representatives of Defendants have attended these conferences and received materials from such conferences." *See* Appx. Ex. F, ME2C Response to Interrogatory 7 at 67; Fourth Amended Complaint, Dkt. No. 406 at ¶ 102. ME2C also alleged in its Complaint: (1) in at least ¶¶ 78, 90, 94, 184, 197, 198, 200, 259, 263, 285, 306, 310, 327, 331, 352, and 356 that Defendants had willfully blinded themselves to the infringing conduct of each Defendant; (2) in at least ¶ 185 that Defendants likely had pre-suit notice based on ME2C's publications; (3) in at least ¶¶ 195 and 197 that Defendants likely had pre-suit knowledge through interactions with and information gained from their work with power plant operators; (4) in at least ¶¶ 182, 183, 185, 186, and 187 that Defendants' technical work likely included an analysis of ME2C's patents; and (5) in at least ¶¶ 195–199 that Defendants researched relevant patents based on interactions at the EERC and power plants. Dkt. No. 406. ME2C's interrogatory responses refer to the allegations in its complaint and stated ME2C's intent to prove those allegations based on Defendants' documentary and email production. In response to Defendant's Interrogatory Nos. 2, 7, ME2C further identified specific Defendant employees and agents with relevant knowledge, emails, and deposition testimony evidencing pre-suit knowledge and intent. *See* Appx. Ex. F at 50–56, 67–68. In response to Defendants' Interrogatory No. 8, ME2C disclosed that "Defendants have been aware of their infringement for years, and yet have continued their infringing behavior with those power plants." *See* Appx. Ex. F at 69.

In light of such disclosure, Defendants' Motion to Strike should be denied. The *Pennypack* factors similarly weigh against exclusion. Defendants have suffered no prejudice as this information was timely disclosed. Moreover, Mr. O'Keefe primarily cites *Defendants'* own documents and deposition testimony. Thus, any potential prejudice can be addressed by working with their own witnesses and by preparing their rebuttal reports.

In fact, the only prejudice alleged by Defendants is that they could have deposed the third parties identified in Mr. O'Keefe's report.[1] Again, while it is unclear what exactly Defendants are referring to, paragraphs 121–122 identify circumstantial evidence that Defendants  **Defendants produced all but one of those emails either two weeks before or after the close of discovery (included amongst batches of 10,000 and 15,000 documents respectively)**, and Defendants never specifically identified them in response to ME2C interrogatories asking Defendants to identify ▮▮▮. *See* Appx. Ex. G, Def. Resp. Inter. Nos. 2, 4.

In short, Defendants have suffered no prejudice by being confronted with their own documents in support of timely disclosed theories. As such, there is no prejudice to cure and no

---

[1] It is unclear whether Defendants already did so or would do so. When asked during the pre-motion meet and confer whether Defendants or their counsel communicated with any of these entities about the issues in Defendants' motion, they declined to answer.

schedule to disrupt. Likewise, ME2C did not act in bad faith; it properly disclosed the relevant information. And lastly, this information is important and goes directly to the intent and pre-suit knowledge elements of ME2C's indirect infringement allegations. At least under *Pennypack*, and for all of these reasons, the expert opinions of Mr. O'Keefe should not be struck.

Finally, although not relevant to Defendants' motion based on timeliness, Defendants criticize Mr. O'Keefe for relying on circumstantial evidence of pre-suit knowledge and intent. But this is entirely appropriate. *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice." (in reference to induced infringement)).

4. *No Expert Alleges that AJG is a Defendant; Defendants' Motion in Limine is untimely.*

Lastly, Defendants lodge a motion *in limine* disguised as a Motion to Strike to prevent any "suggest[ion] to the jury" that Arthur J. Gallagher (AJG) is a defendant in this case. No expert contends that AJG is a defendant. This is simply Defendants sideways attempt at both a motion *in limine* and a *Daubert* motion while meeting neither standard. The question for a Motion to Strike is whether such information was properly disclosed during fact discovery in accordance with the Court's orders, not whether such information will result in jury confusion.

ME2C disclosed the Defendants' corporate structure and its importance to the Refined Coal LLCs operation on numerous occasions. *See* Appx Ex. F, ME2C's Response to Defendants Interrogatory No. 2 at 50–56 (citing deposition testimony further explaining such structure in detail); *see also* Appx. Ex. G, Defendant's Response to ME2C's Interrogatory No. 1. Similarly, ME2C disclosed that it could calculate damages based on the value of tax credits generated by such Refined Coal LLCs that are collected by the Refined Coal, LLC parent entities. *See* Appx. Ex. F, ME2C's Response to Defendant's Interrogatory Nos. 5 and 6. In line with such disclosures, Mr. O'Keefe and Mr. Green acknowledged such corporate structure and tax credit strategy. Regarding damages, Mr. Green calculated damages separately for each individual Refined Coal LLC. In doing so, he noted that the purpose of each LLC was to generate tax credits, and that the value of those tax credits would be considered in the hypothetical negotiation even if the Refined Coal LLCs eventually passed them onto a parent company. ME2C properly disclosed this information during fact discovery.

Turning to the *Pennypack* factors, Defendants do not identify any, and have not suffered any prejudice. Again, no expert is contending that AJG is a Defendant in this case; AJG is not a defendant. Accordingly, there is no prejudice to cure or case schedule to disrupt. ME2C adequately and properly gathered the information necessary to piece together Defendants convoluted corporate structure, properly disclosed such information, and explained why it was relevant in response to Defendants' interrogatories—ME2C did not act in bad faith. Lastly, this information is important. Defendants are attempting to use a Motion to Strike to prevent any discussion whatsoever of the parent entities receiving tax benefits in this case. This is improper. Each of the *Pennypack* factors weigh against striking Mr. O'Keefe and Mr. Green's opinions. If Defendants believe certain testimony would be unfairly prejudicial, there is a procedural mechanism by which they may raise their concerns. If Defendants believe that certain testimony is unsupported by sufficient facts or data or is the product of unreliable principles and methods, there is a procedural mechanism in the Federal Rules for them there too. Neither of which are a Motion to Strike. Defendants' Motion should be denied.

Respectfully,

*/s/ James M. Lennon*

James M. Lennon (No. 4570)

cc: Enclosures
    Clerk of the Court (w/encls.)
    Counsel of Record (via CM/ECF & email w/encls.)