IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MIDWEST ENERGY EMISSIONS CORP. and MES INC., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) )   Civil Action No. 19-1334-CJB |
| ARTHUR J. GALLAGHER & CO., et al., | ) ) ) |
| Defendants. | ) |

**MEMORANDUM ORDER**

1.  The Court, having reviewed Defendants' "Motion to Strike Portions of Plaintiffs' October 25, 2022 Expert Reports of Philip J. O'Keefe (Infringement) and Philip Green (Damages)" (the "Motion"), (D.I. 493), and the parties' letter briefs relating thereto, (D.I. 494; D.I. 499; D.I. 500), and having heard telephonic argument on December 5, 2022, hereby DENIES the Motion for the reasons set out below.

2.  The first set of opinions at issue relate to Mr. O'Keefe's theory that "MerSorb contains bromine ions (Br-)" that in turn constitute the "bromine containing promoter" limitation at issue in the '147 patent. (D.I. 494, ex. A at 132 at ¶ 124, 159, 161) The Court is not persuaded that Mr. O'Keefe's theory is an entirely new and different theory from that earlier set out in Plaintiffs' Response to Defendants' Second Set of Common Interrogatories ("Response"), No. 12 ("ROG 12"), as the Court understands that submission. (D.I. 494, ex. C at 4; *see also* D.I. 499 at 1-2) To be sure, Plaintiffs' Response to ROG 12 does not expressly state that "MerSorb contains bromine ions (Br-) which are a bromine containing promoter"; it might have been preferable had the Response been that precise on this point. But the Response does appear to be attempting to communicate essentially the same thing, such as when it explains that "Mer-Sorb is

a bromine containing promoter [and] [a]s it passes through the combustion chamber, Mer-Sorb transitions to a gaseous, vapor, or non-aqueous liquid form" that, in this form, "reacts with activated carbon to form a promoted brominated sorbent." (D.I. 494, ex. C at 4; *see also* D.I. 499 at 1 (describing the chemical operation of MerSorb)) What was conveyed here was sufficient to put Defendants on notice of Plaintiffs' position, and to allow Defendants to inquire further about that position during fact discovery, had they wished to do so. Now, in expert discovery, Mr. O'Keefe is further articulating this theory. *See TQ Delta, LLC v. ADTRAN, Inc.*, Civil Action No. 14-954-RGA, 2021 WL 3633637, at *2 (D. Del. Aug. 17, 2021) (noting that an expert is entitled to expand upon a previously-disclosed infringement theory). Therefore, the Court cannot find that Mr. O'Keefe's theory regarding the bromine containing promoter is untimely.

        3.        The second set of opinions at issue are Mr. Green's opinions regarding the ADA-ES license. (D.I. 494, ex. B at ¶¶ 174-79) The Court agrees with Defendants that Plaintiffs failed to timely disclose the publicly-available ADA-ES license (one that Plaintiffs and their expert seemingly could have earlier located at any time during the fact discovery period) as a comparable license. (D.I. 494 at 1; D.I. 500 at 1-2) However, the *Pennypack* factors do not weigh in favor of striking Mr. Green's opinions regarding this license. At the outset, the Court has to be mindful of the United States Court of Appeals for the Third Circuit's guidance that "[e]xclusion of critical evidence is an extreme sanction, not normally to be imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791-92 (3d Cir. 1994) (internal quotation marks and citations omitted). The first *Pennypack* factor, which considers surprise or prejudice, weighs in favor of Defendants. Surely Defendants would have been surprised to see

discussion of this license in Mr. Green's report, since they had earlier asked Plaintiffs in discovery to identify any comparable licenses, and Plaintiffs had not disclosed this license in response. (D.I. 494 at 1) The second and third *Pennypack* factors weigh against striking Mr. Green's opinion, as any discovery that Defendants need regarding this issue should be fairly focused and "tailored[,]" and Defendants should be able to accomplish such discovery without unduly disrupting the pre-trial schedule or threatening the new November 13, 2023 trial date. (*Id.* at 3 (Defendants noting that they would have "sought tailored discovery from ADA-ES and Clean Coal Solutions" had the ADA-ES license been timely disclosed)) The fourth *Pennypack* factor also favors Plaintiffs, as there is no indication that their failure to earlier identify the ADA-ES license was the product of bad faith; rather, Plaintiffs assert that they only first thought to search for an ADA-ES-related license when ADA-ES was mentioned in Defendants' September 29, 2022 interrogatory responses. (D.I. 499 at 2) Finally, the last *Pennypack* factor is about neutral. While Mr. Green's reliance on the license (which he describes in some detail in his expert report) indicates that the license is somewhat important to Plaintiffs' damages case, it is "just one of several agreements considered by Mr. Green[,]" (*id.* at 3), and thus Plaintiffs have other probative evidence on this front. With the *Pennypack* factors leaning slightly in favor of Plaintiffs here, the Court will not strike Mr. Green's opinions regarding the ADA-ES license. However, Defendants may take targeted discovery relating to that license. The Court expects that the parties will work together cooperatively to attempt to agree on the scope and timing of such discovery and to complete that discovery in a timely fashion.

4.  The third and final remaining set of opinions at issue are Mr. O'Keefe's opinions regarding pre-suit knowledge and intent. Certain facts included in these opinions do appear to

have been previously disclosed. (*Compare* D.I. 494, ex. A at 101 at ¶ 132, *with* D.I. 499, ex. F at 28) However, the Court agrees with Defendants that at least certain aspects of these opinions are untimely, in that some of the content that Mr. O'Keefe discusses therein does not appear to have been previously disclosed, either in the Fourth Amended Complaint or elsewhere. Certain of this material should have been long known to Plaintiffs, such as the identity of certain articles and reports published by the inventors of the patents-in-suit. (*See, e.g.*, D.I. 494, ex. A at 92 at ¶ 118) In other cases, Plaintiffs asserted (and Defendants did not strongly contest) that Plaintiffs could *not* have disclosed particular facts much earlier, since Plaintiffs only learned of their existence shortly before Mr. O'Keefe's report was due (in that the facts were found in e-mails produced by Defendants a few weeks before or after the close of fact discovery). (D.I. 499 at 4 (citing D.I. 494, ex. A at ¶¶ 121-22); *see also* D.I. 500 at 2) In the end though, even if the Court were to apply the *Pennypack* factors to the late-disclosed facts/opinions at issue here, striking the material would not be the right result. The first *Pennypack* factor is mixed, since while Defendants may have been surprised to see facts in Mr. O'Keefe's report that were not previously set out in discovery responses, some number of those facts were derived from Defendants' own documents and e-mails. (*See* D.I. 499 at 4) The second and third *Pennypack* factors go Plaintiffs' way, as there would be time to cure any prejudice to Defendants without disrupting the November 2023 trial. Defendants have not identified an outsized amount of discovery that is needed regarding these issues. (D.I. 494 at 3) With respect to the fourth *Pennypack* factor, it too favors Plaintiffs, as there is no strong indication that Plaintiffs' failure to timely disclose these facts was the product of bad faith or willful disregard of the rules. And the fifth *Pennypack* factor also favors Plaintiffs, since the opinions at issue are clearly important, *inter alia*, to Plaintiffs' indirect infringement claims. (D.I. 499 at 5) Accordingly, when it

comes to these opinions about pre-suit knowledge and intent, nearly all of the *Pennypack* factors militate against the "extreme sanction" called for by Defendants' Motion. That said, under the circumstances, the Court again finds that Defendants should be permitted to take "tailored" discovery relating to the previously undisclosed facts regarding pre-suit knowledge and intent. (D.I. 494 at 3 (Defendants noting that they could have sought "tailored discovery . . . from the various non-parties that Mr. O'Keefe claims could have told Defendants about the Asserted Patents" if Mr. O'Keefe's opinions had been timely disclosed) (emphasis omitted)) As with the supplemental discovery regarding the ADA-ES license, the Court expects that the parties will be able to work cooperatively to negotiate the scope and timing of such discovery, and to complete such discovery in due course.

5.  Therefore, for the reasons set out above, the Court hereby ORDERS that Defendants' Motion is DENIED.

6.  Because this Memorandum Order may contain confidential information, it has been released under seal, pending review by the parties to allow them to submit a single, jointly proposed, redacted version (if necessary) of the Memorandum Order. Any such redacted version shall be submitted no later than **December 12, 2022** for review by the Court. It should be accompanied by a motion for redaction that shows that the presumption of public access to judicial records has been rebutted with respect to the proposed redacted material, by including a factually-detailed explanation as to how that material is the "kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure." *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (internal quotation marks and citation omitted). The Court will subsequently issue a publicly-available version of its Memorandum Order.

Dated:  December 7, 2022

_____
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE