# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MIDWEST ENERGY EMISSIONS CORP. and MES INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 19-1334-CJB |
| ARTHUR J. GALLAGHER & CO., et al., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER

1.  Pending before the Court in this patent infringement action is another in a long line of difficult pleading-related disputes between the parties: Defendants' motion to dismiss the induced infringement claims against them ("motion"), which are contained in the operative Fourth Amended Complaint ("4AC"). (D.I. 418) The Court writes briefly here and for the parties, who are well familiar with the facts and law relating the motion. Having reviewed the motion and the briefing related thereto, (D.I. 419; D.I. 433; D.I. 438), having heard telephonic argument on September 19, 2022, (D.I. 483 (hereinafter, "Tr.")), and having considered the legal requirements for review of a motion made pursuant to Federal Rule of Civil Procedure 12(b)(6), *see Tonal Sys., Inc. v. ICON Health & Fitness, Inc.*, Civil Action No. 20-1197-LPS, 2021 WL 1785072, at *2 (D. Del. May 5, 2021), the Court hereby DENIES the motion for the reasons set out below.

2.  There are five patents-in-suit in this case, all of which relate to methods for reducing mercury emissions from coal-fired power plants; each of the five patents are alleged to require that the claimed methods use, *inter alia*, two distinct steps: (1) a "Bromine Step," which requires the use of bromine-enhanced coal (or "refined coal"); and (2) an "Activated Carbon

Step," which requires adding a sorbent such as activated carbon. (D.I. 419 at 2; *see also* D.I. 279 at 2-3) Defendants, who are at times referred to as the "REFCO Defendants" in the briefing, are alleged to make and sell refined coal to third-party power plants. (*See* D.I. 406 at ¶¶ 67, 241-358) The power plants are alleged to add activated carbon to the process in which refined coal is combusted, in a manner that (when considered along with other acts taken by the power plants) amounts to direct infringement of the patents. (*Id.*)

       3.       There are a number of elements to an induced infringement claim, and most of them are not at issue here. For example, with their motion, Defendants do not challenge the plausibility of Plaintiffs Midwest Energy Emissions Corp. and MES Inc.'s ("Plaintiffs") allegations in the 4AC that the power plants directly infringe the patents-in-suit. Nor do Defendants challenge the plausibility of the 4AC's allegations that Defendants specifically intend that the power plants directly infringe.[1] Instead, what is at issue here is whether the 4AC plausibly alleges that Defendants took *active steps to encourage* the power plants' direct infringement (and, relatedly, that such steps did in fact cause direct infringement to occur). For ease of reference, the Court will refer to this as the "active step" element of induced infringement.[2]

---

[1] Earlier in this case, Defendants opposed Plaintiffs' motion for leave to file the 4AC ("motion for leave") on, *inter alia*, futility grounds; in doing so, Defendants there asserted that the 4AC did not sufficiently plead the "specific intent" element of induced infringement. (D.I. 376 at 4-5) In granting-in-part the motion for leave, the Court disagreed with Defendants on this point, determining that the 4AC *did* sufficiently allege specific intent. (D.I. 404)

[2] In their briefing on the motion for leave, Defendants did not argue that grant of that motion would be futile because the pleading did not sufficiently allege the active step element of induced infringement. (D.I. 483 at 8-10) In light of this, Plaintiffs make an argument here that Defendants have somehow waived their right to now move to dismiss the 4AC on this ground. (D.I. 433 at 3-4) The Court need not address this waiver issue, in light of the fact that it is denying the motion on another basis.

4.	35 U.S.C. § 271(b) states that "[w]however *actively induces* infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b) (emphasis added). With regard to the active step element, the United States Court of Appeals for the Federal Circuit has explained that a patentee must plead and prove that the accused inducer "took an affirmative act to encourage [direct] infringement[,]" *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 904 (Fed. Cir. 2014); *see also Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 760 (2011) ("The addition of the adverb 'actively' suggests that inducement must involve the taking of affirmative steps to bring about the desired result."), which in turn "led to [such] infringement[,]" *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1331 (Fed. Cir. 2016) (citation omitted). But the Federal Circuit has explained that while this "affirmative act" requirement "has connotations of active steps knowingly taken . . . the term is [otherwise] as broad as the range of actions by which one in fact causes, or urges, or encourages, or aids another to infringe a patent[.]" *Tegal Corp. v. Tokyo Electron Co.*, 248 F.3d 1376, 1378-79 (Fed. Cir. 2001) (citations and emphasis omitted); *see also Global-Tech Appliances, Inc.*, 563 U.S. at 760 (noting that the term "'induce' means '[t]o lead on; to influence; to prevail on; to move by persuasion or influence'") (citation omitted).

5.	At times, the Federal Circuit has also described the active step element as requiring that the inducer "successfully *communicate with* and induce a third-party direct infringer[.]" *Power Integrations, Inc.*, 843 F.3d at 1331 (emphasis added); *see also* (D.I. 419 at 10). Of course, in lots of patent cases where induced infringement is at issue, when attempting to satisfy the active step element, a patentee will demonstrate how the alleged inducer has expressed *in words* (i.e., via conversations or the provision of instruction manuals) the type of active communication/encouragement required by statute. But as even Defendants acknowledge

3

here, the caselaw does not absolutely require that the active step element be satisfied by a showing that an alleged inducer utilized *written or spoken words* to encourage infringement. (Tr. at 19-21) Indeed, there are surely plenty of non-word-based acts by which an inducer can encourage (or cause or aid or influence) another's patent infringement.

6. This brings us back to the motion, in that here, the primary active steps that Defendants are alleged to have taken to induce infringement involve their provision of refined coal to the power plants. (*See, e.g.*, D.I. 406 at ¶ 257 (alleging in the counts of infringement that Defendants "provide [bromide-enhanced] coal . . . to coal-fired power plants connected to an Accused [Refined Coal] facility"); D.I. 433 at 5 (Plaintiffs asserting that "Defendants admit that the 4AC alleges that [they] engage in the affirmative act of supplying refined coal and that this act causes infringement [with the requisite intent]. . . . Nothing more is required to allege induced infringement.")) In light of this, Defendants assert that the inducement allegations are wanting. They argue that even though the 4AC alleges facts plausibly demonstrating that they *specifically intend* for the power plants to infringe the patents after they provide the refined coal (by the power plants' use thereafter of activated carbon), the "4AC does not identify any REFCO acts *communicating that intent to anyone*, let alone to the power plants." (D.I. 419 at 4 (emphasis added); *see also id*. at 9; D.I. 438 at 5, 6; Tr. at 15)

7. In the Court's view, however, the 4AC's allegations are sufficient to plausibly allege that the active step element is satisfied. To be sure, Plaintiffs do not allege that when Defendants provide the refined coal to the power plants, Defendants also include a letter or an instruction manual saying "Please add activated carbon during the combustion process!" or its equivalent. But again, words are not necessarily required. The provision of the coal itself is an affirmative act. And that act is not performed in a vacuum.

4

8. Instead, the 4AC alleges that when Defendants provide this coal, they and the power plants all know that: (a) the power plants have an activated carbon injection system on site for mercury control, which requires an upfront cost and ongoing costs for operation; these systems have been installed in order to allow the plants to comply with state and federal regulations regarding mercury emissions; (b) were the plants to stop operating their activated carbon injection systems, they could face fines that would destroy the economic incentives for dealing with a refined coal provider, or be shut down; (c) were the plants to unilaterally reduce their activated carbon injection rate, or were Defendants to reduce the amount of bromine added to the refined coal that they provide to the plants, this could hinder the plants' ability to comply with state and federal mercury regulations; (d) one of the benefits of using refined coal at a power plant with an activated carbon injection system is that the bromine enhances the performance of the activated carbon, which results in a reduced need for emission controls (i.e., it reduces the quantity of activated carbon that is required to be used) and preserves the plant's ability to sell fly ash; and (e) partly in light of the above, the refined coal that Defendants produce has no substantial non-infringing use at these power plants (such that it cannot reasonably be used for purposes other than to be combusted at a plant where activated carbon will later be injected). (D.I. 406 at ¶¶ 80, 82-83, 85, 87-88, 96; *see also* Tr. at 23-24, 27) In light of these facts, a Defendant's affirmative act of providing the refined coal can reasonably be seen as a way of encouraging (or causing or aiding or influencing) the power plants to use activated carbon. It is a way of making it easier for those power plants to infringe (since the plants need the refined coal in the first place for infringement to happen). And it is a way of communicating to those power plants, in a non-word based manner, Defendants' intent and hope that

infringement will thereafter occur.[3] *Cf. Amarin Pharma, Inc. v. Hikma Pharms. USA Inc.*, C.A. No. 20-1630-RGA-JLH, 2021 WL 3396199, at *8 (D. Del. Aug. 3, 2021) (finding that induced infringement allegations against a health insurance provider were sufficiently pleaded, where the complaint alleged, *inter alia*, that the health insurance provider provided coverage and payment for the generic product even when it knew that a particular beneficiary was using the drug for an unapproved and infringing use, and that the health insurance provider encouraged use of the generic product by requiring a higher copay for the plaintiff's competing product), *report and recommendation adopted in relevant part*, 578 F. Supp. 3d 642, 648-49 (D. Del. 2022); *Galderma Labs., L.P. v. Medinter US, LLC*, Civil Action No. 18-1892-CFC-CJB, 2020 WL 12788390, at *3 & n.7 (D. Del. Mar. 11, 2020) (concluding that the act of licensing patents to alleged direct infringers, which in turn enabled those alleged infringers to manufacture the accused product, could amount to the type of aid or encouragement necessary to satisfy the active step element of induced infringement) (citing cases).

9.      Moreover, the 4AC also includes some additional allegations suggesting that at some point in their interactions with the power plants, Defendants *do* use words that are meant to encourage infringement. The 4AC includes allegations (though admittedly ones that are a bit vague at times), indicating that: (a) Defendants engage in various discussions with the power plant operators about the provision of refined coal and the plant's related use of activated carbon, and about the many associated benefits that follow from that process; (b) Defendants market and advertise their refined coal-producing efforts to the power plants; (c) Defendants enter into contracts with the plants that reference the benefits of activated carbon use after combustion of

---

[3] When the Court speaks of Defendants' "infringement" herein, it is simply referring to Plaintiffs' allegations, which must be taken as true at this stage. The Court expresses no opinion as to whether infringement is actually occurring.

refined coal; and (d) Defendants and the plants keep each other apprised of the bromine/bromide and activated carbon they use, so as to ensure that they are able to continue to comply with regulatory requirements.  (D.I. 406 at ¶¶ 81-82, 86, 92; Tr. at 27-28)  It is reasonable to read these allegations as suggesting that Defendants are indeed verbally communicating their desire that the power plants infringe the patents, and are describing the benefits of such infringement to the plant owners and operators.  These presence of these allegations further bolsters the conclusion that Plaintiffs have sufficiently pleaded the active step element.

10. The Court cannot know whether Plaintiffs' allegations will bear out, or if they will be enough to win the day at the proof stage.  But we are at the pleading stage, and for the reasons set out above, they are sufficient here to allege the active step element of induced infringement.  As such, the Motion is DENIED.

Dated: January 12, 2023

*Christopher J. Burke*
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE