**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| MIDWEST ENERGY EMISSIONS CORP. and MES INC., | |
| Plaintiffs, | C.A. No. 1:19-cv-01334-CJB |
| v. | JURY TRIAL DEMANDED |
| ARTHUR J. GALLAGHER & CO., ET AL., | |
| Defendants. | |

**PLAINTIFFS MIDWEST ENERGY EMISSIONS CORP. AND MES INC.'S
ANSWER TO REFINED COAL LLC DEFENDANTS' COUNTERCLAIMS**

Plaintiffs Midwest Energy Emissions Corp. and MES Inc. ("ME2C"), by and through their attorneys, hereby answer and respond to the Counterclaims filed by Defendants AJG Iowa Refined Coal LLC; Arbor Fuels Company, LLC; Belle River Fuels Company, LLC; Canadys Refined Coal, LLC; Chouteau Fuels Company, LLC; Coronado Refined Coal, LLC; DTE Energy Resources, LLC; Erie Fuels Company, LLC; George Neal Refined Coal, LLC; George Neal North Refined Coal, LLC; Hastings Refined Coal, LLC; Huron Fuels Company, LLC; Jasper Fuels Company, LLC; Jefferies Refined Coal, LLC; Joppa Refined Coal LLC; Louisa Refined Coal, LLC; Newton RC, LLC; Portage Fuels Company, LLC; Superior Fuels Company 1, LLC; Walter Scott Refined Coal LLC; and Williams Refined Coal, LLC (all of these entities are referred to individually and collectively as the "Defendants") (D.I. 516) and in support thereof would respectfully show the Court the following:

## COUNTERCLAIMS

### Parties

1.      Defendant AJG Iowa Refined Coal LLC is a Delaware limited liability company with its principal place of business at Two Pierce Place, Itasca, IL 60143.

**RESPONSE:** Admitted, on information and belief.

1

2.     Defendant Arbor Fuels Company, LLC is a Delaware limited liability company with its principal place of business at One Energy Plaza, 400 WCB, Detroit, MI 48226.

**RESPONSE:** Admitted, on information and belief.

3.     Defendant Belle River Fuels Company, LLC is a Delaware limited liability company with its principal place of business at One Energy Plaza, 400 WCB, Detroit, MI 48226.

**RESPONSE:** Admitted, on information and belief.

4.     Defendant Canadys Refined Coal, LLC is a Delaware limited liability company with its principal place of business at or near the Cope Generating Station, 405 Teamwork Dr., Cope, SC, 29038.

**RESPONSE:** Admitted, on information and belief.

5.     Defendant Chouteau Fuels Company, LLC is a Delaware limited liability company with its principal place of business at or One Energy Plaza, 400 WCB, Detroit, MI 48226.

**RESPONSE:** Admitted, on information and belief.

6.     Defendant Coronado Refined Coal, LLC is a Delaware limited liability company with its principal place of business at or near the Coronado Generating Station, 32060 U.S. 191, Saint Johns, AZ 85936.

**RESPONSE:** Admitted, on information and belief.

7.     Defendant DTE Energy Resources, LLC is a Delaware limited liability company with its principal place of business at One Energy Plaza, 400 WCB, Detroit, MI 48226.

**RESPONSE:** Admitted, on information and belief.

8.      Defendant Erie Fuels Company, LLC is a Delaware limited liability company with its principal place of business at One Energy Plaza, 400 WCB, Detroit, MI 48226.

**RESPONSE:** Admitted, on information and belief.

9.      Defendant George Neal North Refined Coal, LLC is a Delaware limited liability company with its principal place of business at or near the George Neal Station North near Sergeant Bluff, Iowa.

**RESPONSE:** Admitted, on information and belief.

10.      Defendant George Neal Refined Coal, LLC is a Delaware limited liability company with its principal place of business at or near the George Neal Station South near Salix, Iowa.

**RESPONSE:** Admitted, on information and belief.

11.      Defendant Hastings Refined Coal LLC is a Delaware limited liability company with its principal place of business at or near the Whelan Energy Center, 4520 East South St., Hastings, NE 68901.

**RESPONSE:** Admitted, on information and belief.

12.      Defendant Huron Fuels Company, LLC is a Delaware limited liability company with its principal place of business at One Energy Plaza, 400 WCB, Detroit, MI 48226.

**RESPONSE:** Admitted, on information and belief.

13.      Defendant Jefferies Refined Coal, LLC is a Delaware limited liability company with its principal place of business at or near the Muscatine Generating Station, 1700 Industrial Connector Rd., Muscatine, IA 52761.

**RESPONSE:** Admitted, on information and belief.

14.     Defendant Jasper Fuels Company, LLC is a Delaware limited liability company with its principal place of business at One Energy Plaza, 400 WCB, Detroit, MI 48226.

**RESPONSE:** Admitted, on information and belief.

15.     Defendant Joppa Refined Coal LLC is a Delaware limited liability company with its principal place of business at the Joppa Power Station near Joppa, IL.

**RESPONSE:** Admitted, on information and belief.

16.     Defendant Louisa Refined Coal, LLC is a Delaware limited liability company with its principal place of business at 6901 Dodge St., Suite 201, Omaha, NE 68132.

**RESPONSE:** Admitted, on information and belief.

17.     Defendant Newton RC, LLC is a Delaware limited liability company with its principal place of business at One Energy Plaza, 400 WCB, Detroit, MI 48226.

**RESPONSE:** Admitted, on information and belief.

18.     Defendant Portage Fuels Company, LLC is a Delaware limited liability company with its principal place of business at One Energy Plaza, 400 WCB, Detroit, MI 48226.

**RESPONSE:** Admitted, on information and belief.

19.     Defendant Superior Fuels Company 1, LLC was a Delaware limited liability company with its principal place of business at One Energy Plaza, 400 WCB, Detroit, MI 48226.

 **RESPONSE:** Admitted, on information and belief.

20.     Defendant Williams Refined Coal, LLC is a Delaware limited liability company with its principal place of business at or near the Williams Generation Station, 2242 Bushy Park Rd., Goose Creek, SC 29445.

**RESPONSE:** Admitted, on information and belief.

21.     Defendant Walter Scott Refined Coal LLC is a Delaware limited liability company with its principal place of business at Council Bluffs Energy Center near Council Bluffs, IA.

**RESPONSE:** Admitted, on information and belief.

22.     On information and belief, Midwest Energy Emissions Corp. is a Delaware corporation with its principal place of business at 670 D Enterprise Drive, Lewis Center, Ohio 43035.

**RESPONSE:** Denied. Midwest Energy Emissions Corp. is a Delaware corporation with its principal place of business at 1810 Jester Drive, Corsicana, TX 75109.

23.     On information and belief, MES Inc. is a North Dakota corporation with its principal place of business at 311 S. 4th St. STE 118, Grand Forks, ND 58201.

**RESPONSE:** Denied. MES Inc. is a North Dakota corporation with its principal place of business at 1810 Jester Drive, Corsicana, TX 75109.

## Jurisdiction and Venue

24.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338(a), and 2201(a), because there is an actual controversy between the parties as to whether the Answering Defendants infringe one or more claims of the Asserted Patents.

**RESPONSE:** Admitted.

25.     This Court has personal jurisdiction over Plaintiff Midwest Energy Emissions Corp. because that plaintiff availed itself of this Court's jurisdiction by filing the original complaint in this action, thereby consenting to this Court's exercise of personal jurisdiction in connection with these counterclaims.

**RESPONSE:** Admitted.

5

26.     This Court has personal jurisdiction over Plaintiff MES Inc. because that plaintiff availed itself of this Court's jurisdiction by filing the original complaint in this action, thereby consenting to this Court's exercise of personal jurisdiction in connection with these counterclaims.

**RESPONSE:** Admitted.

27.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)(2) and 1391(b)(3), because Plaintiffs have accused the Answering Defendants of patent infringement in this judicial district and are subject to this Court's personal jurisdiction with respect to this action.

**RESPONSE:** Admitted.

### Plaintiffs' Assertions of Five Patents

28.     On July 17, 2019, Plaintiffs filed an "Original Complaint for Patent Infringement" in this Court, seeking damages and a permanent injunction against Defendants based on allegations that each Defendant infringes claims of the '114 patent and the '147 patent.

**RESPONSE:** Admitted.

29.     On May 21, 2021, Plaintiffs filed a "Second Amended Complaint for Patent Infringement" in this Court, seeking damages and a permanent injunction against Defendants based on allegations that each Defendant infringes claims of the '114 patent, the '147 patent, the '225 patent, the '517 patent, and the '430 patent.

**RESPONSE:** Admitted.

30.     On October 7, 2021, Plaintiffs filed a "Third Amended Complaint for Patent Infringement" in this Court, seeking damages and a permanent injunction against Defendants

based on allegations that each Defendant infringes claims of the '114 patent, the '147 patent, the '225 patent, the '517 patent, and the '430 patent.

**RESPONSE:** Admitted.

31.     On May 3, 2022, Plaintiffs filed a "Fourth Amended Complaint for Patent Infringement" in this Court, seeking damages and a permanent injunction against Defendants based on allegations that each Defendant infringes claims of the '114 patent, the '147 patent, the '225 patent, the '517 patent, and the '430 patent.

**RESPONSE:** Admitted.

## COUNT I – DECLARATION OF NON-INFRINGEMENT

32.     Defendants incorporate the allegations of paragraphs 1-31 above and paragraphs 1–28 of its defenses as if set forth fully herein.

**RESPONSE:** Plaintiffs incorporate by reference their answers to the preceding paragraphs.

33.     Plaintiffs' assertions of claims of the Patents-in-Suit, including in this action, have given rise to an actual controversy over whether the sale or provision of Refined Coal by the Answering Defendants, or the use of such Refined Coal in practicing the Chem-Mod Solution at certain power plants, constitutes direct or indirect infringement of any asserted claim of the Patents-in-Suit, either literally or under the doctrine of equivalents, willfully or otherwise, to the extent such claim is not already dismissed by the court.

**RESPONSE:** Admitted.

34.     Neither the sale nor the provision of Refined Coal by the Answering Defendants, nor the use of such Refined Coal in practicing the Chem-Mod Solution at certain power plants,

infringes any asserted claim of the Patents-in-Suit, either directly or indirectly, and either literally or under the doctrine of equivalents.

**RESPONSE:** Denied.

35.     The Answering Defendants further do not infringe any claim of the Asserted Patents, either directly or indirectly, to the extent that the Plaintiffs have extinguished any claims of infringement by license, waiver, release, covenant not to sue, or equitable estoppel.

**RESPONSE:** Denied.

36.     The Answering Defendants are entitled to a declaratory judgment that they have not infringed, and are not infringing, any claim of the Asserted Patents, either directly or indirectly, literally or under the doctrine of equivalents, willfully or otherwise, to the extent such claim is not already dismissed by the court.

**RESPONSE:** Denied.

## COUNT II – DECLARATION OF INVALIDITY AND UNENFORCEABILITY

37.     The Answering Defendants incorporate the allegations of paragraphs 1-36 above and paragraphs 1–28 of its defenses as if set forth fully herein.

**RESPONSE:** Plaintiffs incorporate by reference their answers to the preceding paragraphs.

38.     Plaintiffs' assertions of the Patents-in-Suit, including in this action, have given rise to an actual controversy over whether the claims of the Asserted Patents are valid and enforceable.

**RESPONSE:** Denied.

39.     Each claim of the Patents-in-Suit is unpatentable or otherwise invalid for failure to meet the conditions of patentability and otherwise comply with the requirements of 35 U.S.C. § 101.

**RESPONSE:** Denied.

40.     Each claim of the Patents-in-Suit is unpatentable or otherwise invalid for failure to meet the conditions of patentability and otherwise comply with the requirements of 35 U.S.C. §§ 102 and 103, including but not limited to, failure to meet the conditions of patentability in light of the prior art cited in the petitions filed with the PTAB in IPR Case Nos. IPR2020-00926, IPR2020-00928, IPR2020-1296, IPR2020-1297, IPR2020-00832, IPR2020-00834, IPR2020-1294, and IPR2020-1295.

**RESPONSE:** Denied.

41.     Each claim of the Patents-in-Suit is invalid for failure to comply with the requirements of 35 U.S.C. § 112.

**RESPONSE:** Denied.

42.     Each claim of the '147 patent and each claim of the '114 patent is unenforceable pursuant to the doctrine of inequitable conduct and/or unclean hands. Each claim of the '225 patent, the '430 patent and the '517 patent is unenforceable based on inequitable conduct based on the doctrine of infectious unenforceability and/or unclean hands.

**RESPONSE:** Denied.

43.     During the prosecution of the '114 patent and the '147 patent, the inventors withheld materials references that they themselves authored from the U.S. Patent and Trademark Office ("USPTO"). Further, the inventors knowingly made false statements about the state of the

prior art to the USPTO that would have been belied by the withheld references. The only reasonable inference for these actions on the part of the inventors was to deceive the USPTO in order to obtain the '147 and '114 patents.

**RESPONSE:** Denied.

### Prosecution of the '147 and '114 Patent

44.    The application that would become the 147 Patent was US Patent Application 12/419,219 ("'219 application") which was filed on April 6, 2009.

**RESPONSE:** Admitted.

45.    The only applicants of the '219 application are the listed putative inventors Edwin S. Olson, Michael J. Holmes, and John H. Pavlish ("Applicants").

**RESPONSE:** ME2C admits that Edwin S. Olson, Michael J. Holmes, and John H. Pavlish are the listed inventors on the '219 application, otherwise, denied. To the extent Defendants equate the actions or knowledge of one individual with the actions or knowledge of another individual in this or any other paragraph based on ambiguous use of the term "Applicants," ME2C denies the allegations.

46.    Each listed putative inventor signed an inventor's declaration pursuant to 37 CFR 1.63 as part of the filing of the '219 application. This declaration included an acknowledgement of the inventor's duty to disclose to the United States Patent and Trademark Office all information known to the inventors to be material to patentability.

**RESPONSE:** ME2C admits each listed inventor signed an inventor's declaration as part of filing the '219 application, otherwise, denied.

47.    The application that would become the '147 Patent was US Patent Application 15/978,760 ("'760 application") which was filed on May 14, 2018.

**RESPONSE:** Denied.

48.     The only applicants of the '760 application are the listed inventors Edwin S. Olson, Michael J. Holmes, and John H. Pavlish ("Applicants").

**RESPONSE:** ME2C admits that Edwin S. Olson, Michael J. Holmes, and John H. Pavlish are the listed inventors on the '760 application, otherwise, denied. To the extent Defendants equate the actions or knowledge of one individual with the actions or knowledge of another individual in this or any other paragraph based on ambiguous use of the term "Applicants," ME2C denies the allegations.

49.     Each listed putative inventor signed an inventor's declaration pursuant to 37 CFR 1.63 as part of the filing of the '760 application. This declaration included an acknowledgement of the inventors duty to disclose to the United States Patent and Trademark Office all information known to the inventors to be material to patentability.

**RESPONSE:** ME2C admits each listed inventor signed an inventor's declaration as part of filing the '760 application.

50.     The original claims of the '219 application as of the April 6, 2009 filing date contained no reference to claim elements of "graphene sheets" or "carbene edges."

**RESPONSE:** Denied.

51.     All pending claims of the '219 application were rejected on October 14, 2010 in a Final Rejection. All pending claims except for dependent claim 46 and dependent claims 53-57 were rejected under 35 U.S.C. 102(b) as being clearly anticipated by Nelson Jr., US Patent Application No. 2004/0003716 ("Nelson Jr."). Dependent claim 46 and dependent claims 53-57,

among others, were rejected under 35 U.S.C. 103(a) as being unpatentable under Nelson Jr. in view of additional references.

**RESPONSE:** ME2C admits that in her October 14, 2010 Final Office Action, Examiner Orlando stated: "Claims 47, 48, 53-55 and 61 are rejected under 35 U.S.C. 103(a) as being unpatentable over Nelson Jr. US 2004/003716 (further referred to as 716) as applied in claim 34 above, and further in view of Srinivasachar et al. US 6,848,374 (further referred to as 374)." Otherwise, denied.

52.     The Applicants filed a February 15, 2011 amendment and request for reconsideration ("2011 Amendment"). In the 2011 Amendment, the Applicants amended Claim 34, the only pending independent claim, to include the limitation "and wherein the activated carbon contains graphene sheets having carbene species edge sites which react with the bromine containing promoter to form a carbocation paired with a bromide anion in the promoted brominated sorbent for oxidation of the mercury."

**RESPONSE:** ME2C admits that on February 14, 2011 the inventors amended claim 34 to add "and wherein the activated carbon contains graphene sheets having carbene species edge sites which react with the bromine containing promoter to form a carbocation paired with a bromide anion in the promoted brominated sorbent for oxidation of the mercury." To the extent Defendants intend for this paragraph to have a different meaning, denied.

53.     The claim language requiring "graphene sheets having carbene species edge sites" was added during prosecution of the '147 patent in order to overcome an anticipation rejection under 35 U.S.C. § 102.

**RESPONSE:** ME2C admits that, after a patent office rejection, claim 34 was amended to add the language: "and wherein the activated carbon contains graphene sheets having carbene species

edge sites which react with the bromine containing promoter to form a carbocation paired with a bromide anion in the promoted brominated sorbent for oxidation of the mercury." To the extent Defendants intend for this paragraph to have a different meaning, denied.

54.    The claim language requiring "graphene sheets having carbene species edge sites" was added during prosecution of the '147 patent in order to overcome obviousness rejections under 35 U.S.C. § 103.

**RESPONSE:** ME2C admits that, after a patent office rejection, claim language was added stating "graphene sheets having carbene species edge sites." To the extent Defendants intend for this paragraph to have a different meaning, denied.

55.    In the Remarks submitted to the Patent Office with the 2011 Amendment, the Applicants remarked that "Nelson, Jr. fails to disclose activated carbon containing graphene sheets having carbene species edge sites therein."

**RESPONSE:** ME2C admits that in the February 14, 2011 response Mr. Daley stated: "Nelson, Jr. fails to disclose activated carbon containing graphene sheets having carbene species edge sites therein." To the extent Defendants intends for this paragraph to have a different meaning, denied.

56.    In the Remarks submitted to the Patent Office with the 2011 Amendment, the Applicants remarked that "Nelson, Jr. describes exemplary activated carbons at paragraph 69."

**RESPONSE:** ME2C admits that in the February 14, 2011 response Mr. Daley stated, among other things: "Nelson, Jr. describes exemplary activated carbons in paragraph 69." To the extent Defendants intend for this paragraph to have a different meaning, denied.

57.    In the Remarks submitted to the Patent Office with the 2011 Amendment, the Applicants argued that, in view of the applicant's amendments, "the claimed invention is not

anticipated by Nelson Jr., and would not have been obvious from Nelson, Jr. Accordingly, withdrawal of this rejection is requested."

**RESPONSE:** ME2C admits that the February 14, 2011 response states that "the claimed invention is not anticipated by Nelson Jr., and would not have been obvious from Nelson, Jr. Accordingly, withdrawal of this rejection is requested." To the extent Defendants intend for this paragraph to have a different meaning, denied.

58.     In a November 23, 2011 Non-Final Rejection, the Patent Office rejected all pending claims under 35 U.S.C. 103(a) as being unpatentable over Nelson, Jr. in light of other references.

**RESPONSE:** Admitted.

59.     On May 20, 2011, the '219 Applicants filed an Amendment and Response under 37 C.F.R. § 1.111 (May 2011 Response). No claims were amended or canceled in the May 2011 Response.

**RESPONSE:** Admitted.

60.     In the May 2011 Response, the Applicants stated that "[t]he Examiner admits that Nelson does not disclose or suggest graphenes, or edge sites of graphene sheets being carbenes. It also does not disclose or suggest the reaction of the carbene sites with a bromine containing promoter to yield bromide anion paired carbocation sites on the carbon as being the sites reactive with mercury, which serve to react with and immobilize mercury vapor from the waste gas stream." In the May 2011 Response, the Applicants requested withdrawal of the rejections with respect to claim 34 and all rejected dependent claims.

**RESPONSE:** ME2C admits that in the May 2011 Response, Geoffrey Cooper stated that "[t]he Examiner admits that Nelson does not disclose or suggest graphenes, or edge sites of graphene

sheets being carbenes. It also does not disclose or suggest the reaction of the carbene sites with a bromine containing promoter to yield bromide anion paired carbocation sites on the carbon as being the sites reactive with mercury, which serve to react with and immobilize mercury vapor from the waste gas stream." In the May 2011 Response, the applicants requested withdrawal of the rejections with respect to claim 34 and all rejected dependent claims. To the extent Defendants intend for this paragraph to have a different meaning, denied.

61.     In an August 4, 2011 Non-Final Rejection ("August 2011 Rejection"), the Patent Office rejected all pending claims under 35 U.S.C. 103(a) as being unpatentable over Nelson, Jr. in light of other references.

**RESPONSE:** Admitted.

62.     In the August 2011 Rejection, the examiner stated that Nelson Jr. reference "does not disclose the activated carbon being graphene sheets and the binding sites being carbene species edge sites."

**RESPONSE:** Denied.

63.     In the August 2011 Rejection, the examiner stated that "Chlorine and bromine are very similar in there [sic] chemical characteristics, and there would be a reasonable expectation of success when using the same methods to regenerate a brominated sorbent as is used for a chlorinated sorbent."

**RESPONSE:** Denied.

64.     On August 31, 2011, the examiner held a telephone interview with the Applicants representatives Nicholas P. Lanzatella and Ramani V. Marakani.

**RESPONSE:** Admitted.

65.     On October 27, 2011, the Applicants filed an Amendment and Response under 37

C.F.R. § 1.111 (October 2011 Response). In the October 2011 Amendment, independent claim

34 was amended to add the word "particulate" before the phrase "sorbent material." According

to the October 2011 Response, this amendment was proposed during the August 31, 2011

interview.

**RESPONSE:** ME2C admits that the October 27, 2011 response states: "Applicants thank

Examiner Amber Orlando for the courtesy of a telephone interview on August 31, 2011 with

Applicants' representatives Nicholas P. Lanzatella and Ramani V. Marakani. During the

interview, it was proposed to amend claim 34 to include "a particulate sorbent material" in place

of "a sorbent material". It was agreed upon that with the amendment, Applicants would

overcome the rejections under 35 U.S.C § 112 and §103." To the extent Defendants intend for

this paragraph to have a different meaning, denied.

66.     In the October 2011 Response, the Applicants stated that "[t]he Examiner admits

that Nelson does not disclose or suggest the activated carbon being graphene sheets, or edge sites

of graphene sheets being carbenes." In the October 2011 Response, the Applicants requested

withdrawal of the rejections with respect to claim 34 and all rejected dependent claims.

**RESPONSE:** ME2C admits that the October 2011 Response states that "[t]he Examiner admits

that Nelson does not disclose or suggest the activated carbon being graphene sheets, or edge sites

of graphene sheets being carbenes," and requests withdrawal of the rejections with respect to

claim 34 and all rejected dependent claims. To the extent Defendants intend for this paragraph to

have a different meaning, denied.

67.     In the October 2011 Response, the Applicants argued that the examiners'

rejections over Nelson Jr. in light of other references had a fundamental deficiency "concerning

16

activated carbon containing graphene sheets, carbene-containing edge sites of the graphene sheets and reaction bromine promoting agents, and the resulting production of carbocations that can react with and immobilize vaporized mercury." The Applicants next stated that "[a]ccordingly, a prima facie case" of obviousness had not been properly made. The Applicants repeated the above two statements in regard to multiple combinations of references, each of which included the Nelson Jr. reference.

**RESPONSE:** ME2C admits that in the October 2011 response, Geoffrey Cooper stated:

"The Examiner's arguments for rejection of claims 34 and claims 35, 39, 40, 42, 49-52 and 5 8-60 dependent thereon over Nelson and Yang do not properly create a prima facie case of obviousness, at least because the two cited documents fail to disclose or suggest all elements of the rejected claims.

The Examiner admits that Nelson does not disclose or suggest the activated carbon being graphene sheets, or edge sites of graphene sheets being carbenes. It also does not disclose or suggest the reaction of the carbene sites with a bromine containing promoter to yield bromide anion paired carbocation sites on the carbon as being the sites reactive with mercury, which serve to react with and immobilize mercury vapor from the waste gas stream.

Yang does not remedy this deficiency. Yang neither discloses nor teaches using activated carbon containing graphene sheets. Yang discloses using carbon nanotubes as a sorbent to remove dioxin from an exhaust gas. Yang asserts that carbon nanotubes are better sorbents than activated carbon as the nanotubes desorb dioxin at a higher temperature than the activated carbon. Yang further discloses a principal problem associated with the use of activated carbon. Clearly, Yang teaches away from using activated carbon for

17

treating the exhaust gas. Support for this argument may at least be found from paragraphs [0015] to [0017] of Yang.

A person skilled in the art would not be motivated to combine the teachings of Nelson and Yang because Yang clearly teaches away from using activated carbon. Therefore, the combination of Nelson and Yang fails to create a prima facie case of obviousness. Further, the combination of the cited documents fails to disclose or suggest activated carbon containing graphene sheets with carbene species edge cites that react with a bromine containing promoter to produce carbocationic sites that can react with and immobilize mercury atoms."

To the extent Defendants intend for this paragraph to have a different meaning, denied.

68.     In a January 10, 2012 Notice of Allowance, Claims 34-36, 39, 40, and 42-61 were allowed. The examiner's entire statement of reasons for allowance was that "a method for separating mercury from a mercury containing gas comprising promoting at least a portion of a particulate sorbent material comprising activated carbon by chemically reacting the sorbent material with a bromine containing promoter to form a promoted brominated sorbent, wherein the activated carbon contains grapheme sheets having carbine species edge sites which react with the bromine containing promoter to form a carbocation paired with a bromide anion in the promoted brominated sorbent for oxidation of the mercury could not be found within the prior art."

**RESPONSE:** Admitted.

69.     The issued claims of the '147 patent require that the activated carbon contain "graphene sheets having carbene species edge sites."

**RESPONSE:** Admitted.

### 2003 Activated Carbon Article

70.     In 2003, listed inventors on the '219 Application Edwin S. Olson and John H. Pavlish, and other authors, published a two-page article, "The Multiple Site Model for Flue Gas-Mercury Interactions on Activated Carbons: the Basic Site," Fuel Chemistry Division Preprints 2003, 48(a), 30. ("2003 Article").

**RESPONSE:** Admitted.

71.     The 2003 Article was also presented at a conference in March 2003: the 225th American Chemical Society National Meeting, New Orleans, LA, March 23-27, 2003.

**RESPONSE:** Admitted.

72.     The subject matter of the 2003 Article was activated carbons. The particular activated carbon investigated was commercial powdered carbon Norit FGD sorbent.

**RESPONSE:** ME2C admits that "The Multiple Site Model for Flue Gas-Mercury Interactions on Activated Carbons: the Basic Site," Fuel Chemistry Division Preprints 2003, 48(a), 30 ("Preprint article"), states: "The commercial powdered carbon Norit FGD sorbent has been thoroughly investigated at the Energy & Environmental Research Center (EERC) as a sorbent for elemental mercury. . . .". To the extent Defendants intend for this paragraph to have a different meaning, denied.

73.     The 2003 Article states that "[t]he commercial powdered carbon Norit FGD sorbent has been thoroughly investigated at the Energy & Environmental Research Center (EERC) as a sorbent for elemental mercury (Hg0) in flue gas streams."

**RESPONSE:** ME2C admits that "The Multiple Site Model for Flue Gas-Mercury Interactions on Activated Carbons: the Basic Site," Fuel Chemistry Division Preprints 2003, 48(a), 30

19

("Preprint article"), states: "The commercial powdered carbon Norit FGD sorbent has been thoroughly investigated at the Energy & Environmental Research Center (EERC) as a sorbent for elemental mercury. . . .". To the extent Defendants intend for this paragraph to have a different meaning, denied.

74.    The 2003 Article teaches that the activated carbon of the Norit FGD sorbent contains zig-zag carbene structures at the edges of carbon graphene layers.

**RESPONSE:** Denied.

75.    The authors of the 2003 Articles propose that the carbene structures at the edges of the graphene layers offer more detail on the nature of the carbon site and its interaction with flue gas and Hg.

**RESPONSE:** Denied.

76.    The 2003 Article includes a figure that shows the interactions that, according to the authors, adequately explain the behavior of the FGD sorbent. That figure is Figure 2, shown below.



**Figure 2.** Basic site model.

**RESPONSE:** Denied.

77.     Figure 2 in the 2003 Article shows the zig-zag Lewis base carbene site of the Figure 2 in the 2003 Article shows the zig-zag Lewis base carbene site of the Norit FGD sorbent.

**RESPONSE:** Denied.

78.     Paragraph 69 of the Nelson reference states in part that "The gas-phase bromine treatment of this invention has been tested on many different commercially-available powdered activated carbons (PACs). Each has been found to be easily brominated to at least 15 wt % Br, including PACs from …Norit. Norit's Darco FGD® is a common PAC yardstick frequently used by other researches as a competitive yardstick."

**RESPONSE:** Admitted.

79.     As of February 2011, inventors Edwin S. Olson and John H. Pavlish were aware of the 2003 Article that they co-authored.

**RESPONSE:** Admitted.

80.     On information and belief, inventor Michael J. Holmes was also aware of the 2003 Article as of February 2011, as he had been working with Edwin S. Olson and John H. Pavlish on the study of activated carbon sorbents for the removal of mercury at the EERC Foundation.

**RESPONSE:** Admitted.

81.     As of February 2011, inventors Edwin S. Olson and John H. Pavlish understood the teachings of the 2003 Article that they co-authored.

**RESPONSE:** Admitted.

82.     By February 2011, inventors Edwin S. Olson, Michael J. Holmes and John H. Pavlish had published extensively on research conducted using the Norit FGD PAC referred to in

paragraph 69 of the Nelson reference. For example, in February 2005, the inventors John H.

Pavlish and Michael J. Holmes were co-authors of a Final Report submitted to the U.S.

Department of Energy regarding Cooperative Agreement No. DE-FC26-034NT41897 wherein

they described "NORIT Americas Inc. DARCO® FGD."

**RESPONSE:** ME2C admits that Edwin S. Olson, Michael J. Holmes and John H. Pavlish have

conducted various research that has incorporated products from Norit. As to the remainder of this

paragraph, ME2C lacks sufficient information to admit or deny.

83.   As of February 2011, inventors Edwin S. Olson and John H. Pavlish understood

that the 2003 Article taught that Norit FGD powdered activated carbon used in the Nelson Jr.

reference included graphene sheets having carbene edge sites.

**RESPONSE:** Denied.

84.   As of February 2011, inventor Michael J. Holmes also understood the teaching of

the 2003 article as stated in the preceding paragraph.

**RESPONSE:** Denied.

85.   As of February 2011, inventors Edwin S. Olson and John H. Pavlish knew that

Norit FGD powdered activated carbon used in the Nelson Jr. reference included graphene sheets

having carbene edge sites.

**RESPONSE:** Denied.

86.   As of February 2011, inventor Michael J. Holmes also understood the properties

of Norgit FGD powder used in the Nelson Jr reference as stated in the preceding paragraph.

**RESPONSE:** Denied.

## **[Alleged] Misrepresentations to the USPTO**

87.     The 2003 Article was material prior art to the '219 application.

**RESPONSE:** This paragraph contains conclusions of law to which no response is required. As such, it is denied.

88.     Each of the listed inventors on the '219 application knew, prior to and during the prosecution of the '219 application, that the 2003 article was material to the patentability of that application.

**RESPONSE:** This paragraph contains conclusions of law to which no response is required. As such, it is denied.

89.     None of the Applicants or their representatives disclosed the 2003 Article during the prosecution of the '219 application.

**RESPONSE:** ME2C admits that the 2003 Article was not cited in an information disclosure statement during the prosecution of the '219 application. To the extent Defendants intend for this paragraph to have a different meaning, denied.

90.     Inventors Edwin S. Olson and John H. Pavlish knew that the examiner's statement in the August 2011 Rejection that Nelson Jr. reference "does not disclose the activated carbon being graphene sheets and the binding sites being carbene species edge sites" was false.

**RESPONSE:** Denied.

91.     Inventors Edwin S. Olson and John H. Pavlish knew that the examiner's statement in the August 2011 Rejection that the Nelson Jr. reference "does not disclose the activated carbon being graphene sheets and the binding sites being carbene species edge sites" was belied by the 2003 Article.

**RESPONSE:** Denied.

92.     Inventor Michael J. Holmes also knew the above facts regarding the examiner's statement as described in the two preceding paragraphs.

**RESPONSE:** Denied.

93.     The statement made by the Applicants to the Patent Office in connection with the 2011 Amendment that "Nelson, Jr. fails to disclose activated carbon containing graphene sheets having carbene species edge sites therein" was false.

**RESPONSE:** Denied.

94.     The Applicants knew that the statement made to the Patent Office in connection with the 2011 Amendment that "Nelson, Jr. fails to disclose activated carbon containing graphene sheets having carbene species edge sites therein" was false at the time it was submitted to the Patent Office.

**RESPONSE:** Denied.

95.     The Patent Office relied on the Applicants' statement made in connection with the 2011 Amendment that "Nelson, Jr. fails to disclose activated carbon containing graphene sheets having carbene species edge sites therein" in the subsequent prosecution of the '219 Application.

**RESPONSE:** Plaintiffs lack sufficient information regarding this paragraph and thus deny this paragraph.

96.     At no point in the prosecution of the '219 Application did the Named Inventors correct the examiner's incorrect belief that Nelson Jr. reference does not disclose activated carbon that has graphene sheets with binding sites being carbene species edge sites.

**RESPONSE:** Denied.

97.     The only reasonable inference from decision of the Applicants to make the false statement referred to in the above paragraph was that the statement was made with the purpose of deceiving the Patent Office in order to obtain allowance of the patent.

**RESPONSE:** Denied.

98.     If the examiner had been aware of the 2003 Article, she would not have concluded that Nelson Jr. does not disclose the activated carbon being graphene sheets and the binding sites being carbene species edge sites.

**RESPONSE:** Denied.

99.     If the examiner had been aware of the 2003 Article, the claims of the '147 Patent would not have issued in their current form.

**RESPONSE:** Denied.

100.     Named inventors Edwin S. Olson and John H. Pavlish knew that the examiner relied on her incorrect understanding that Nelson Jr. did not concern activated carbon having graphene sheets with carbene species edge sites therein. Named inventors Olson and Pavlish knew that this understanding was incorrect and was shown to be incorrect by the 2003 Article. The single reasonable inference for their reason for withholding the 2003 Article during prosecution, which  they co-authored, was to prevent the examiner from correcting this understanding and thus obtain allowance of the patent.

**RESPONSE:** Denied.

101.     The inference that inventors Olson and Pavlish purposely withheld the 2003 Article in order to misrepresent the state of the prior art is further evidenced by the centrality of the issue of graphene sheets with carbene edge sites to the prosecution, the consistent repetition

25

by the Applicants of statements mischaracterizing the Nelson, Jr. reference, and the very short length of the 2003 Article.

**RESPONSE:** Denied.

### [Alleged] Additional Material References Withheld

102.    Figure 2 of the 2003 Article shows the mechanism by which Inventors Olson, Holmes and Pavlish claim that chlorine promotes adsorption of mercury onto activated carbon.

**RESPONSE:** Plaintiffs admit that figure 2 provides a model illustrating interaction between chlorine and mercury, otherwise denied.

103.    Figure 2 of the 2003 Article is substantially identical to Figure 2 of the '147 Patent, and Figure 2 of the '114 Patent, with the exception that the chlorine (Cl) in the 2003 Article is replaced with bromine (Br) in the patents.

**RESPONSE:** Denied.

104.    As stated above, the examiner stated during the prosecution of the '146 Patent that "Chlorine and bromine are very similar in there [sic] chemical characteristics, and there would be a reasonable expectation of success when using the same methods to regenerate a brominated sorbent as is used for a chlorinated sorbent."

**RESPONSE:** Admitted.

105.    Inventors Olson, Holmes and Pavlish are co-authors of two additional references disclosing the promoted halogen scheme depicted in Figure 2 of the 2003 Article.

**RESPONSE:** Given the lack of specificity, Plaintiffs are unable to determine the scope of this paragraph, and accordingly deny this paragraph.

106.    Inventors Olson, Holmes and Pavlish are co-authors on Olson et al., "Chemical mechanisms in mercury emission control technologies," J. Phys. IV France 107 (2003), presented May 26-30, 2003 and the XIIth International Conference on Heavy Metals in the Environment in Grenoble, France ("2003 France Presentation").

**RESPONSE:** Admitted.

107.    Inventors Olson, Holmes and Pavlish are co-authors on Olson et al., "An Improved Model for Flue Gas-Mercury Interactions on Activated Carbons," Paper #142 at the Combined Power Plant Air Pollutant Control Mega Symposium, May 19-22, 2003 in Washington, DC ("2003 Washington Presentation").

**RESPONSE:** Admitted.

108.    Each of the papers in the above two paragraphs is prior art under 35 U.S.C. § 102(b) to the '147 patent and to the '114 patent.

**RESPONSE:** This paragraph contains conclusions of law to which no response is required. As such, it is denied.

109.    The specification of the '114 Patent describes the Figure 2 as follows: "Thus an entirely new model is presented for the reactivity of bromine-treated carbon with mercury shown in Fig. 2."

**RESPONSE:** ME2C admits that the specification of the '114 Patent describes '114 Figure 2 as follows: "Thus an entirely new model is presented for the reactivity of bromine-treated carbon with mercury shown in Fig. 2."

110.     Both the 2003 France Presentation and 2003 Washington Presentation disclose the chemical model of the reactivity of halogen-treated carbon with mercury that is substantially identical to the model presented in the '114 Patent and '147 patent as new.

**RESPONSE:** Denied.

111.     The 2003 France Presentation and 2003 Washington Presentation disclose the same chemistry for chlorine that the inventors claimed they discovered for bromine.

**RESPONSE:** Denied.

112.     Neither the 2003 France Presentation nor the 2003 Washington Presentation was identified or disclosed by the Applicants during the prosecution of the '114 or '147 patent.

**RESPONSE:** ME2C admits that neither the 2003 France Presentation nor the 2003 Washington Presentation was identified in an Information Disclosure Statement of record in the prosecution record for the '114 or '147 patent. Otherwise, denied.

113.     Because the chemical characteristics of chlorine and bromine are "very similar," according to the examiner of the '147 and '114 patents, the Inventors knew that the 2003 France Presentation and 2003 Washington Presentation were material to the patentability of the claims of the '114 patent and the '147 patent.

**RESPONSE:** Denied.

114.     The statement by the inventors that Fig. 2 shows "an entirely new model" is false, as the model was disclosed in the 2003 prior art references described above.

**RESPONSE:** Denied.

115.     The inventors withheld the 2003 prior art references from the prosecution of the '114 and '147 patents despite their knowledge that they were material.

**RESPONSE:** Denied.

116.    The only reasonable inference for the inventors decision to withhold the 2003

prior art references was to misrepresent to the Patent Office that the model shown in Figure 2 of

the '114 and '147 patent was a new model and to thus obtain issuance of the claims.

**RESPONSE:** Denied.

117.    Each of the '225, '517, and '430 patents is a related patent to both the '114 and

'147 patent.

**RESPONSE:** Admitted.

118.    Each claim of the '225, '517, and '430 patents includes, inter alia, elements

relating to the combusting of coal and a bromine or bromide additive, and the use of a sorbent

containing activated carbon. Each of the '225, '517, and '430 patents includes Figure 2, which is

substantially identical to Figure 2 in the '114 and '147 patent discussed above.

**RESPONSE:** Admitted.

119.    The inequitable conduct of the named inventors discussed above relating to the

'147 patent, which occurred earlier in the patent family chain, bears an immediate and necessary

relationship to the enforcement of the '225, '517, and '430 patents, as the claims concern, inter

alia, the interaction of additive halogens with an activated carbon sorbent.

**RESPONSE:** Denied.

120.    The inequitable conduct of the inventors discussed above relating to the '114

patent, which occurred earlier in the patent family chain, bears an immediate and necessary

relationship to the enforcement of the '225, '517, and '430 patents, as the claims concern, inter

alia, the interaction of additive halogens with an activated carbon sorbent.

29

**RESPONSE:** Denied.

121.   The inequitable conduct associated with the '147 and '114 patent occurred earlier in the patent family chain that lead to the '225, '517, and '430 patents. Because the inequitable conduct associated with the '147 and '114 patents bears an immediate and necessary relation to the enforcement of the '225, '517, and '430 patents, the inequitable conduct associated with the '147 and '114 patents, individually and together, renders each of the '225, '517, and '430 patents unenforceable.

**RESPONSE:** Denied.

122.   Each Answering Defendant is entitled to a declaratory judgment that each claim of the Asserted Patents is invalid and unenforceable.

**RESPONSE:** Denied.

Dated: February 10, 2023

OF COUNSEL:

Bradley W. Caldwell
Texas Bar No. 24040630
Jason D. Cassady
Texas Bar No. 24045625
John Austin Curry
Texas Bar No. 24059636
Justin T. Nemunaitis
Texas Bar No. 24065815
Adrienne R. Dellinger
Texas Bar No. 24116275
**CALDWELL CASSADY CURRY PC**
2121 N. Pearl Street, Suite 1200
Dallas, Texas 75201
Phone: (214) 888-4848
Fax: (214) 888-4849
bcaldwell@caldwellcc.com
jcassady@caldwellcc.com
acurry@caldwellcc.com
jnemunaitis@caldwellcc.com
adellinger@caldwellcc.com

**DEVLIN LAW FIRM LLC**

*/s/ James M. Lennon*
James M. Lennon (No. 4570)
1526 Gilpin Avenue
Wilmington, DE 19806
(302) 449-9010
jlennon@devlinlawfirm.com

*Attorneys for Plaintiffs Midwest Energy
Emissions Corp. and MES Inc.*