IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MIDWEST ENERGY EMISSIONS CORP. and MES INC., ) ) ) Plaintiffs, ) ) v. ) ARTHUR J. GALLAGHER & CO., et al., ) ) Defendants. ) | Civil Action No. 19-1334-CJB |

James M. Lennon, DEVLIN LAW FIRM, Wilmington, DE; Bradley W. Caldwell, Jason D. Cassady, John Austin Curry, Justin T. Nemunaitis, Daniel R. Pearson, Adrienne R. Dellinger, CALDWELL CASSADY CURRY P.C., Dallas, TX; Attorneys for Plaintiffs.

Kenneth L. Dorsney and Cortlan S. Hitch, MORRIS JAMES LLP, Wilmington, DE; Jeff Dyess, Paul Sykes and Benn Wilson, BRADLEY ARANT BOULT CUMMINGS LLP, Birmingham, AL; Jessica Zurlo, BRADLEY ARANT BOULT CUMMINGS LLP, Washington, D.C., Attorneys for Defendants CERT Operations IV LLC, CERT Operations V LLC, CERT Operations RCB LLC, Senescence Energy Products, LLC, Rutledge Products, LLC, Springhill Resources LLC, Buffington Partners LLC, Bascobert (A) Holdings LLC, Larkwood Energy LLC, Cottbus Associates LLC, CERT Operations II LLC, and Marquis Industrial Company, LLC.

Jack B. Blumenfeld, Brian P. Egan and Anthony D. Raucci, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE; Richard W. Mark, Joseph Evall and Paul J. Kremer, GIBSON, DUNN & CRUTCHER LLP, New York, NY; David Glandorf, GIBSON, DUNN & CRUTCHER LLP, Denver, CO; Attorneys for Defendants AJG Iowa Refined Coal LLC, Arbor Fuels Company, LLC, Belle River Fuels Company, LLC, Canadys Refined Coal, LLC, Chouteau Fuels Company, LLC, Coronado Refined Coal, LLC, DTE Energy Resources, LLC, Erie Fuels Company, LLC, George Neal North Refined Coal, LLC, George Neal Refined Coal, LLC, Hastings Refined Coal, LLC, Huron Fuels Company, LLC, Jasper Fuels Company, LLC, Jefferies Refined Coal, LLC, Joppa Refined Coal LLC, Louisa Refined Coal, LLC, Newton Refined Coal, LLC, Portage Fuels Company, LLC, Superior Fuels Company 1, LLC, Walter Scott Refined Coal LLC, and Williams Refined Coal, LLC.

Nicole A. DiSalvo, Jessica R. Kunz and Daniel S. Atlas, SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, Wilmington, DE; Douglas R. Nemec and Leslie A. Demers, SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, New York, NY; Attorneys for Defendant Alistar Enterprises, LLC.

**MEMORANDUM OPINION**

October 23, 2023
Wilmington, Delaware

*Christopher J. Burke*
**BURKE, United States Magistrate Judge**

This is a patent action filed by Plaintiffs Midwest Energy Emissions Corp. ("Midwest Energy") and MES Inc. ("MES" and collectively with Midwest Energy, "Plaintiffs" or "ME2C") against 34 Defendants, in which Plaintiffs assert five patents-in-suit. The Court has set out a listing of all of the parties and asserted patents in its October 16, 2023 Memorandum Opinion ("October 16, 2023 MO"), (D.I. 586 at 2); it incorporates that discussion by reference here. Presently pending before the Court is Defendants' motion for summary judgment No. 4: no infringement by Defendants that did not sell or offer to sell refined coal ("Motion"). (D.I. 566) ME2C opposes the Motion. For the reasons set forth below, the Motion is GRANTED-IN-PART and DENIED-IN-PART.[1]

## I. BACKGROUND

ME2C commenced this action on July 17, 2019. (D.I. 1) Defendants filed the instant Motion on March 23, 2023. (D.I. 527; *see also* D.I. 566) The Motion was fully briefed as of April 18, 2023. (D.I. 555) A trial is set to begin on November 13, 2023. (D.I. 507)

As the Court writes primarily for the parties here, any facts relevant to this Memorandum Opinion will be discussed in Section III below.

## II. STANDARD OF REVIEW

---

[1] The parties have jointly consented to the Court's jurisdiction to conduct all proceedings in this case, including trial, the entry of final judgment and all post-trial proceedings. (D.I. 398)

The Court incorporates by reference the standard of review for summary judgment motions, which it set out in the October 16, 2023 MO, (D.I. 586 at 3-4), and the summary judgment-related legal standards specifically relating to claims of patent infringement, which it set out in an October 17, 2023 Memorandum Opinion, (D.I. 588 at 3). Additional relevant legal standards will be discussed in Section III below.

### III.     DISCUSSION

In this case, ME2C asserts that all Defendants indirectly infringed certain method claims of the asserted patents by manufacturing, selling and/or otherwise providing refined coal to non-party power plants. (D.I. 406 at ¶¶ 67, 208, 217; D.I. 546, ex. A at 123, at ¶ 99) The non-party power plants are alleged to add activated carbon to the process in which refined coal is combusted, in a manner that amounts to direct infringement of the patents. (D.I. 406 at ¶¶ 208, 217; D.I. 546, ex. A at 125, at ¶ 102; D.I. 546, ex. A at 127, at ¶ 108)

The instant Motion is brought by six Defendants; those six Defendants fall into three groupings: (1) CERT Operations II, LLC, CERT Operations IV, LLC, CERT Operations V, LLC and CERT Operations RCB, LLC (the "CERT Operations Companies"); (2) AJG Iowa Refined Coal LLC ("AJG Iowa"); and (3) DTE Energy Resources, LLC ("DTE"). (D.I. 566 at 2) As to these six Defendants (and all other Defendants in the case), Plaintiffs' allegations are that they committed induced infringement pursuant to 35 U.S.C. § 271(b) and contributory infringement pursuant to 35 U.S.C. § 271(c) ("Section 271(c)"). (D.I. 406 at ¶¶ 263-64, 289-90, 310-11, 331-32, 356-57) In order to demonstrate liability for induced infringement, Plaintiffs must demonstrate that, *inter alia*, a Defendant took "an affirmative act to encourage infringement with the knowledge that the induced acts constitute patent infringement." *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 904 (Fed. Cir. 2014). And in order to demonstrate liability for

contributory infringement, Plaintiffs must show that, *inter alia*, each Defendant "offers to sell" or "sells" material that contributes to infringement. 35 U.S.C. § 271(c); *PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1357-58 (Fed. Cir. 2007).

The Court first addresses the Motion as it relates to the CERT Operations Companies.

With regard to the induced infringement allegations against these parties, Defendants assert that each of the CERT Operations Companies did not "sell" or "offer to sell" refined coal to power plants (and instead, that the CERT RC Defendants did). (D.I. 528 at 19 (citing D.I. 532 at ¶ 4); D.I. 545 at 10; *see also* D.I. 528 at x) The Court will address that "sell"/"offer to sell" issue below. But even putting that issue aside, Plaintiffs' allegations are that the CERT Operations Companies are liable here because they took steps to "provide" refined coal to power plants, (*see* D.I. 406 at ¶¶ 241-358)—and one can "provide" such coal not only by selling the coal to the plants, but also by playing a role in having the coal delivered to the plants. And while Plaintiffs cite only to one deposition excerpt in their briefing on this point, in that excerpt, a vice president of operations for the CERT Operations Companies does appear to state that employees of the CERT Operations Companies operated the facilities of the CERT RC Defendants at the relevant times. (D.I. 545 at 10 (citing 548, ex. 25 at 254 ("The contract operator, the CERT Operations entity, is contracted by the refined coal company *to operate the facility* and follow the operating protocols[.]") (emphasis added)); *see also* D.I. 532 at ¶ 2) If that is so, then this would amount to evidence that the CERT Operations Companies could be liable for induced infringement, in that their employees were responsible for "provid[ing]" refined coal to the power plants at issue (even if it could not be said that those CERT Operations Companies "sold" that coal to the plants). On this ground then, the Motion is DENIED as to the CERT Operations Companies.

4

With regard to the contributory infringement allegations regarding the CERT Operations Companies, Defendants again assert that there is no evidence that these Defendants sold or offered to sell refined coal to any relevant power plant—and because Section 271(c) requires that a defendant sell or offer for sale material that contributes to infringement, Defendants argue that the CERT Operations Companies cannot be liable for a contributory infringement claim. (D.I. 528 at 19) In response, Plaintiffs suggest that the CERT Operations Companies could be liable under Section 271(c) because they were "participating in the operation, production, and delivery of refined coal" to the plants. (D.I. 545 at 11)

But the Court does not see (and Plaintiffs have not demonstrated) how simply "participating in the operation, production and delivery" of refined coal to a power plant on behalf of a refined coal company, without more, could equate to engaging in the *sale* of coal from the refined coal company to the power plant. And Section 271(c) requires that these CERT Operations Companies had to have participated in some way in that *sales* process—a process that involves two parties agreeing to transfer property or title in return for the payment of or promise to pay an agreed-upon price. *See PharmaStem*, 491 F.3d at 1357-58 (indicating that a "sale" for purposes of Section 271(c) is satisfied, *inter alia*, if a party that has title to a product engages in a transaction with another entity in which title is transferred to the other entity); *cf. NTP, Inc. v. Rsch. In Motion, Ltd.*, 418 F.3d 1282, 1319 (Fed. Cir. 2005) (stating that the definition of a "sale" under 35 U.S.C. § 271(a) is given "ordinary meaning," which has been defined as (1) "[t]he transfer of property or title for a price" or (2) "[t]he agreement by which such a transfer takes place," which requires (a) parties competent to contract, (b) mutual assent, (c) a thing capable of being transferred, and (d) a price in money paid or promised) (internal quotation marks and citations omitted), *abrogated on other grounds*, *Zoltek Corp. v. United States*, 672

5

F.3d 1309 (Fed. Cir. 2012). Plaintiffs have provided the Court with no evidence indicating that any employee or representative of any of the CERT Operations Companies was involved in an agreement regarding the sale of coal from a CERT RC Defendant to a power plant. That is, Plaintiffs have not demonstrated that any of the CERT Operations Companies advertised the coal for sale, negotiated the terms of sale, collected payment for any sale, received a portion of any sales revenue or in some other meaningful way participated in the actual negotiation and sales process. *Cf. Area 55, Inc. v. Amazon.com, Inc.*, CASE NO. 11-CV-00145-H (NLS), 2012 WL 12517661, at *3 (S.D. Cal. May 3, 2012).[2] Thus, summary judgment is GRANTED as to the claims for contributory infringement against the CERT Operations Companies.

Next, the Court will discuss the Motion as it relates to AJG Iowa. Here, Plaintiffs suggest that AJG Iowa can be liable for induced or contributory infringement because AJG Iowa "owns and controls entities that contracted for the sale of [r]efined [c]oal[.]" (D.I. 545 at 11, 12)[3] But there are no allegations in the case that AJG Iowa is the alter ego of other Defendants or that other Defendants acted as AJG Iowa's agent regarding relevant transactions. (D.I. 406) Thus, AJG Iowa cannot be held liable for the infringing acts of those other Defendant entities on an alter ego or agency basis. Moreover, Plaintiffs do not suggest or cite to any evidence that any

---

[2] In the paragraph in their briefing in which they argued that the CERT Operations Companies participated in the sale of refined coal to power plants for purposes of a contributory infringement claim (i.e., by "participating in the operation, production, and delivery of the refined coal to the infringing power plants"), Plaintiffs cited to no case law in support of the assertion that such conduct could actually amount to the "sale" of the coal at issue. (D.I. 545 at 10-11)

[3] Here, the Court believes that the Defendant "entities" that Plaintiffs are referring to are Defendants Joppa Refined Coal LLC, George Neal North Refined Coal LLC, George Neal Refined Coal LLC and Coronado Refined Coal LLC. (*See* D.I. 545 at 11-12 (citing D.I. 546, ex. A at 46, at ¶ 85 & D.I. 548, ex. 31))

employees of *AJG Iowa* took actions that resulted in refined coal being provided to certain power plants; instead, Plaintiffs state only that employees of "AJG Coal LLC and other Arthur J. Gallagher & Co. entities" did so. (D.I. 545 at 12 (citing D.I. 546, ex. 4 at 27-28 (witness noting only that "[m]e and a number of other of the offices of AJG Coal interact with" and "act[] on behalf of" certain Defendant entities))) And Plaintiffs do not otherwise point to evidence that AJG Iowa itself sold or offered to sell refined coal to the power plants, such as by entering into contracts for the sale of such coal to the power plants. (*Id.* at 11-12) So as far as the Court can tell, it has been provided with no evidence that AJG Iowa itself can be held liable for induced or contributory infringement here. Summary judgment is therefore GRANTED as to all claims against AJG Iowa.

Lastly, the Court addresses the Motion as it relates to DTE. The Court understands that the only theory of liability asserted against DTE in this case is that it is liable for the infringement committed by the various DTE RC Defendants because it is their alter ego or because the DTE RC Defendants acted as DTE's agent. (D.I. 528 at 19; *see also* D.I. 404; D.I. 406 at ¶¶ 230-36) In a two-sentence argument in their opening brief, Defendants simply asserted that "there is no evidence to support those [alter ego/agency] theories"—without even attempting to address or explain away any evidence of record that Plaintiffs have mustered on that score. (D.I. 528 at 3) In their answering brief, Plaintiffs cited to a bunch of such evidence. (D.I. 545 at 11-12) And in their reply brief, Defendants did not address any of Plaintiffs' cited evidence regarding DTE—nor did Defendants specifically mention the alter ego/agency issue again. (D.I. 555 at 3-4) For these reasons, the Motion is DENIED as to DTE.

**V.     CONCLUSION**

For the foregoing reasons, the Court finds that Defendants' Motion should be GRANTED-IN-PART and DENIED-IN-PART. More specifically, the Motion is granted as to all claims for contributory infringement against the four CERT Operations Companies and as to all claims against AJG Iowa. It is denied in all other respects. An appropriate Order will issue.

Because this Memorandum Opinion may contain confidential information, it has been released under seal, pending review by the parties to allow them to submit a single, jointly proposed, redacted version (if necessary) of the Memorandum Opinion. Any such redacted version shall be submitted no later than **October 26, 2023** for review by the Court. It should be accompanied by a motion for redaction that shows that the presumption of public access to judicial records has been rebutted with respect to the proposed redacted material, by including a factually-detailed explanation as to how that material is the "kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure." *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (internal quotation marks and citation omitted). The Court will subsequently issue a publicly-available version of its Memorandum Opinion.