# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MIDWEST ENERGY EMISSIONS ) <br> CORP. and MES INC., ) <br> ) <br>       Plaintiffs, ) <br> ) <br>       v. ) <br> ) <br> ARTHUR J. GALLAGHER & CO., et al., ) <br> ) <br>       Defendants. ) | Civil Action No. 19-1334-CJB |

James M. Lennon, DEVLIN LAW FIRM, Wilmington, DE; Bradley W. Caldwell, Jason D. Cassady, John Austin Curry, Justin T. Nemunaitis, Daniel R. Pearson, Adrienne R. Dellinger, CALDWELL CASSADY CURRY P.C., Dallas, TX; Attorneys for Plaintiffs.

Kenneth L. Dorsney and Cortlan S. Hitch, MORRIS JAMES LLP, Wilmington, DE; Jeff Dyess, Paul Sykes and Benn Wilson, BRADLEY ARANT BOULT CUMMINGS LLP, Birmingham, AL; Jessica Zurlo, BRADLEY ARANT BOULT CUMMINGS LLP, Washington, D.C., Attorneys for Defendants CERT Operations IV LLC, CERT Operations V LLC, CERT Operations RCB LLC, Senescence Energy Products, LLC, Rutledge Products, LLC, Springhill Resources LLC, Buffington Partners LLC, Bascobert (A) Holdings LLC, Larkwood Energy LLC, Cottbus Associates LLC, CERT Operations II LLC, and Marquis Industrial Company, LLC.

Jack B. Blumenfeld, Brian P. Egan and Anthony D. Raucci, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE; Richard W. Mark, Joseph Evall and Paul J. Kremer, GIBSON, DUNN & CRUTCHER LLP, New York, NY; David Glandorf, GIBSON, DUNN & CRUTCHER LLP, Denver, CO; Attorneys for Defendants AJG Iowa Refined Coal LLC, Arbor Fuels Company, LLC, Belle River Fuels Company, LLC, Canadys Refined Coal, LLC, Chouteau Fuels Company, LLC, Coronado Refined Coal, LLC, DTE Energy Resources, LLC, Erie Fuels Company, LLC, George Neal North Refined Coal, LLC, George Neal Refined Coal, LLC, Hastings Refined Coal, LLC, Huron Fuels Company, LLC, Jasper Fuels Company, LLC, Jefferies Refined Coal, LLC, Joppa Refined Coal LLC, Louisa Refined Coal, LLC, Newton Refined Coal, LLC, Portage Fuels Company, LLC, Superior Fuels Company 1, LLC, Walter Scott Refined Coal LLC, and Williams Refined Coal, LLC.

Nicole A. DiSalvo, Jessica R. Kunz and Daniel S. Atlas, SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, Wilmington, DE; Douglas R. Nemec and Leslie A. Demers, SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, New York, NY; Attorneys for Defendant Alistar Enterprises, LLC.

**MEMORANDUM OPINION**

November 8, 2023
Wilmington, Delaware

*Christopher J. Burke*
**BURKE, United States Magistrate Judge**

This is a patent action filed by Plaintiffs Midwest Energy Emissions Corp. ("Midwest Energy") and MES Inc. ("MES" and collectively with Midwest Energy, "Plaintiffs" or "ME2C") against 34 Defendants, in which Plaintiffs assert five patents-in-suit. The Court has set out a listing of all of the parties and asserted patents in its October 16, 2023 Memorandum Opinion ("October 16, 2023 MO"), (D.I. 586 at 2); it incorporates that discussion by reference here. Presently pending before the Court is Defendants' motion for summary judgment No. 7: no inducement under 35 U.S.C. § 271(b) ("Motion"). (D.I. 569) ME2C opposes the Motion. For the reasons set forth below, the Motion is DENIED.[1]

## I. BACKGROUND

ME2C commenced this action on July 17, 2019. (D.I. 1) Defendants filed the instant Motion on March 23, 2023. (D.I. 527; *see also* D.I. 569) The Motion was fully briefed as of April 18, 2023. (D.I. 555) A trial is set to begin on November 13, 2023. (D.I. 507)

As the Court writes primarily for the parties here, any facts relevant to this Memorandum Opinion will be discussed in Section III below.

## II. STANDARD OF REVIEW

The Court incorporates by reference the standard of review for summary judgment motions, which it set out in the October 16, 2023 MO, (D.I. 586 at 3-4), and the summary

---

[1] The parties have jointly consented to the Court's jurisdiction to conduct all proceedings in this case, including trial, the entry of final judgment and all post-trial proceedings. (D.I. 398)

judgment-related legal standards specifically relating to claims of patent infringement, which it set out in an October 17, 2023 Memorandum Opinion, (D.I. 588 at 3). Further relevant legal standards will be discussed below in Section III.

## III. DISCUSSION

In this case, ME2C asserts that all Defendants indirectly infringed certain method claims of the asserted patents by manufacturing and selling refined coal to non-party power plants. (D.I. 406 at ¶¶ 67, 208, 217; D.I. 546, ex. A at 123, at ¶ 99) The non-party power plants are alleged to add activated carbon to the process in which refined coal is combusted, in a manner that amounts to direct infringement of the patents. (D.I. 406 at ¶¶ 208, 217; D.I. 546, ex. A at 125, at ¶ 102; D.I. 546, ex. A at 127, at ¶ 108)

The Motion here is brought by all Defendants. It seeks summary judgment with respect to all of the asserted claims of all asserted patents regarding Plaintiffs' induced infringement allegations against them, made pursuant to 35 U.S.C. § 271(b) ("Section 271(b)"). (D.I. 573 at 2)

Section 271(b) states that "[w]however *actively induces* infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b) (emphasis added). Inducement requires a showing that the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent. *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009). With regard to the active inducement requirement, the United States Court of Appeals for the Federal Circuit has explained that a patentee must plead and prove that the accused inducer "took an affirmative act to encourage [direct] infringement[,]" *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 904 (Fed. Cir. 2014); *see also Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 760 (2011) ("The addition of the

adverb 'actively' suggests that the inducement must involve the taking of affirmative steps to bring about the desired result[.]"), which in turn "led to [such] infringement[,]" *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1331 (Fed. Cir. 2016) (citation omitted). The Federal Circuit has explained that while this "affirmative act" requirement "has connotations of active steps knowingly taken . . . . the term is [otherwise] as broad as the range of actions by which one in fact causes, or urges, or encourages, or aids another to infringe a patent[.]" *Tegal Corp. v. Tokyo Electron Co.*, 248 F.3d 1376, 1378-79 (Fed. Cir. 2001) (citations and emphasis omitted). Indeed, to "induce" can mean, *inter alia*, "[t]o lead on; to influence; to prevail on; to move by persuasion or influence." *Glob.-Tech Appliances, Inc.*, 563 U.S. at 760 (internal quotation marks and citation omitted). The induced infringer must encourage the performance of every single step in the patented method. *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1219 (Fed. Cir. 2014). And with regard to the specific intent requirement, such intent can be shown by circumstantial evidence, but the mere knowledge of possible infringement will not suffice. *Vita-Mix Corp.*, 581 F.3d at 1328.

With their Motion, Defendants press three arguments. The Court will address them in turn.

Defendants' first argument is that Defendants could not have acted to cause any power plant (the alleged direct infringers) to perform the activated carbon step of the claimed methods. (D.I. 528 at 25) This is purportedly because "the record shows that the accused power plants made their own decisions about how to meet mercury emissions regulations." (*Id*.) In support of that proposition, Defendants cited to the deposition testimony of only two power plant representatives. (*Id*. at 26) In one case, the representative states that his power plant coordinated with refined coal providers only on the amount of bromine additive added to the coal and not on

the amount of activated carbon used in the combustion process. (D.I. 533, ex. 16 at 22-23) The other representative (who appears to work for a power plant no longer at issue with regard to the induced infringement claims here)[2] states that the activated carbon equipment was installed at his plant to help comply with certain mercury emissions limits, and that it was not often used. (*Id.*, ex. 17 at 11-12)

As an initial matter, what representatives of two of the many power plants at issue in this case had to say on this matter falls far short of a demonstration of why *all* implicated power plants chose to utilize activated carbon. But assume that at the time they first started receiving refined coal from a Defendant, each power plant at issue had made an independent decision that it was in their interest to use activated carbon when combusting the coal (in order to satisfy certain mercury emissions regulations, or for other reasons). Defendants cite to no authority for the proposition that an entity that has decided that it may wish to take an action relevant to patent infringement cannot nevertheless be further encouraged (or influenced, or moved) to do so by another party. Even if one is predisposed to do something, one might still be further spurred on to do so by the act of another.

On this "spurred on" point, Defendants make one last, one-sentence argument (in support of which they cite to or refer to no evidence of record): that there is "not a shred of evidence that the use of Refined Coal spurred a power plant to install or use" activated carbon. (D.I. 528 at 26) As the Court noted in its October 19, 2023 Memorandum Order and reiterated recently in its November 6, 2023 Oral Order, a party bringing a summary judgment motion may not simply

---

[2]  The Court notes that this representative appears to be discussing the Cope Station power plant. (D.I. 533, ex. 17 at 11-12) The former named Defendant that supplied this plant with refined coal was Canadys Refined Coal, LLC ("Canadys"), and it appears that Plaintiffs are no longer pursuing claims against Canadys. (*See* D.I. 528 at ix; D.I. 598 at 1 n.2)

state, in a conclusory fashion, that the non-moving party has "no evidence" to support its position. (D.I. 590 at 4-5; D.I. 622) Instead, the movant must make some effort to engage with the evidence of record on the point; the movant must in some way identify or point out those portions of the record that support its position that summary judgment is warranted. (D.I. 590 at 5); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Here, in the report of their expert Philip J. O'Keefe, Plaintiffs had put forward record evidence that they felt demonstrated the encouragement of infringement. (*See* D.I. 546, ex. A at 67-87) Indeed, in their answering brief, Plaintiffs made reference to that very evidence (along with other portions of the record)—evidence that does appear to be relevant to each of the elements of the induced infringement claims at issue here. (D.I. 545 at 20) In the Court's view, Defendants had an obligation in their opening brief to identify or point out something about the evidence of record and articulate why that evidence was wanting or why it supported its summary judgment motion. (*See* D.I. 590 at 4-7) They failed to do so, and only engaged with the substantial record here in a few pages of briefing, which led to the Court having a poor record on which to make a determination about a key claim relating to all Defendants in the case. As a result, the Court cannot countenance Defendants' "not a shred of evidence"-type argument.

Defendants' second argument was that "[a]s a matter of law . . . the mere sale" or provision of refined coal by a Defendant to a power plant cannot amount to an inducing act. (D.I. 528 at 26) But in its prior ruling on a motion to dismiss in this case, the Court has determined that Defendants' provision of refined coal—in a circumstance where they and the power plants know that the power plants will surely combust the coal while using activated

carbon—*could possibly* be enough to induce infringement. (D.I. 513 at 4-5)[3] And to the extent that Defendants argue that there is "no evidence that any Defendant 'knew' that[,]" (D.I. 528 at 26), again, Defendants did not really cite to or engage with any of the record evidence on this point (and Plaintiffs' proffered evidence appears as if it could support the knowledge element). So the Court cannot grant summary judgment here.

      Defendants' third and final argument is that there is "no evidence" that Defendants intended that their power plant customers would use activated carbon in combination with refined coal in an infringing manner, such that Defendants could not have specifically intended infringement to occur. (*Id.* at 27) Again though, Defendants did not engage with any of the record in making this argument; they simply said there was "no evidence" in this regard and left the Court and Plaintiffs to figure out what portion of that significant record would be at issue as to this summary judgment motion. That is insufficient.

## IV.     CONCLUSION

---

[3] In support of their argument here, Defendants cite to *HZNP Meds. LLC v. Actavis Laby's UT, Inc.*, 940 F.3d 680, 701 (Fed. Cir. 2019) for the proposition that "mere knowledge about a product's characteristics or that it may be put to infringing uses is not enough" to be liable for induced infringement. (D.I. 528 at 27) Of course, the statement of the law in *HZNP* is correct; an induced infringer cannot be found liable simply because it knows that the direct infringer will infringe; the inducer needs to do something to encourage that infringement. But in *HZNP*, the patented method required three distinct steps involving the use of an inventive drug formulation, and the accused infringer's label for the drug, which was alleged to induce infringement, only required the first step of the method and did not require the second or third step at all. 940 F.3d at 702. Here the factual scenario at play is just different, as it is alleged that the infringing methods require use of refined coal in conjunction with the use of activated carbon, and the alleged induced infringer's act of providing the refined coal (coal that allegedly has no other significant non-infringing use) will necessarily lead to the power plant's use of activated carbon to combust the coal (and thus direct infringement). In sum, the facts of *HZNP* are just apples to oranges with regard to the facts here.

In the end, the Court is not prepared to adjudicate a case-dispositive motion as to inducement claims against over 30 Defendants—in a case with a very substantial record—based on one-line "no evidence"-type arguments raised by the movants. That is not the way the summary judgment process should fairly work. And it does not agree with Defendants' legal arguments here. For the foregoing reasons, the Court finds that Defendants' Motion should be DENIED. An appropriate Order will issue.