IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MIDWEST ENERGY EMISSIONS CORP. and MES INC., | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil Action No. 19-1334-CJB |
| ARTHUR J. GALLAGHER & CO., et al., | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM ORDER**

1.  Pending before the Court in this patent infringement action is the CERT Defendants' "Notice in Response to Memorandum Order (D.I. 627), Objections to Expert Testimony Inconsistent Therewith, and Motion to Reconsider Denial of Motion to Exclude Testimony of Plaintiffs' Damages Expert for Including Tax Credits in Patent Damages ("Motion")[.]" (D.I. 639) The Court writes briefly here and for the parties, who are well familiar with the facts and law relating to the Motion. Having reviewed the Motion and the briefing related thereto, (*id.*; D.I. 651), having heard argument on February 14, 2024 (the "February 14, 2024 hearing"), (D.I. 676 (hereinafter, "Tr.")), and having considered the legal requirements for review of a motion for reconsideration, *see* (D.I. 651 at 2-3), the Court hereby GRANTS-IN-PART and DENIES-IN-PART the Motion for the reasons set out below.[1]

2.  In the Court's November 7, 2023 Memorandum Order ("Memorandum Order") denying Defendants' motion to exclude certain opinions of Plaintiffs' damages expert Philip Green (the "Green Daubert Motion"), the Court addressed the three arguments presented by the

---

[1] The parties have jointly consented to the Court's jurisdiction to conduct all proceedings in this case, including trial, the entry of final judgment and all post-trial proceedings. (D.I. 398)

Green Daubert Motion. (D.I. 627) The third argument—and one that was addressed by the parties in only a few paragraphs in their summary judgment/*Daubert* briefs—is what is now at issue with the instant Motion. In that third argument, Defendants asserted that "Mr. Green's opinion on royalty rates also must be excluded because he does not apportion out the value of the Section 45 tax credits earned by the licensees of Chem-Mod's, Nalco's, and ADA-ES's technology[]" ("Defendants' third argument"). (D.I. 528 at 49) In response to that argument, Plaintiffs stated in part:

> Mr. Green's royalty rate opinion is a flat per-unit amount, assessed on a per-ton basis, and determined from a variety of inputs. . . . It does not *include* any tax credit component to apportion *out*, and Defendants identify no evidence to show the *inclusion* of the value of the tax credits.

(D.I. 545 at 48-49 (emphasis in original)) In light of the above positions, the Court's MO dealt with Defendants' third argument as follows:

> On this record, where the parties' arguments were not very clear, at least to the Court, the Court can only take Plaintiffs at their word that Mr. Green's royalty rate range is not going [to] "include a[] tax credit component" (and therefore does not "[f]ail to [a]pportion tax credits)." . . . In light of this representation, Defendants' argument that Mr. Green's royalty rate opinions must be excluded for failure to apportion out Section 45 tax credits is not well-taken.

(D.I. 627 at 12)

3.     The Court, particularly after now having had the benefit of discussing this issue with the parties' counsel during the February 14, 2024 hearing, now better understands the thrust of Defendants' third argument: i.e., that it was wrong for Mr. Green, when compiling his royalty rate, to take into account in *any fashion* value that is attributable to the receipt of Section 45 tax credits. (*See, e.g.*, D.I. 639 at 6-7) And while Plaintiffs represented that Mr. Green's royalty rate did not "include" any particular tax credit component, it is now clear to the Court that this

2

representation should not have resolved the dispute. That is because it is now evident that what Plaintiffs meant by this statement was simply that Mr. Green's proposed royalty rate did not include, *as a "line item[,]"* a portion that was explicitly attributable to the value of Section 45 tax credits. (Tr. at 63, 72 (emphasis added)) And yet during the February 14, 2024 argument, Plaintiffs' counsel at times acknowledged that, in different ways, Mr. Green's royalty rate opinion *was indeed influenced* by the value of Section 45 tax credits. (*See, e.g.*, *id.* at 63-64, 69 (Plaintiffs' counsel acknowledging that "Section 45 actually influenced . . . the amounts paid [with respect to] economically and technologically comparable licenses[,]" that the impact of the receipt of those tax credits "could make the [royalty rate] number go up or down a little bit" and that the tax credits have "an effect on the rate. . . . [i]n the sense of how much [an entity paid for a] comparable license"); *see also* D.I. 651 at 2 n.2, 6 ("That's not to say that tax credits are not relevant or are not part of Mr. Green's opinion: they are simply not part of his math.")) Therefore, the Court agrees with Defendants that the Court did not accurately apprehend the parties' positions regarding Defendants' third argument. And so in fairness, the Court must reconsider the basis for its denial of the Green Daubert Motion on this ground.

4.      In doing so, however, another problem for Defendants rears its head. This relates to the fact that, in Defendants' opening brief as to the Green Daubert Motion, they argued that Mr. Green's failure to "apportion out the value of the Section 45 tax credits earned by the licensees of Chem-Mod's, Nalco's, and ADA-ES's technology" was "fundamentally flawed for two reasons." (D.I. 528 at 49) And the problem is that both of the "reasons" that Defendants put forward simply do not withstand scrutiny.

5.      Defendants' first argument was that "it is undisputed that the patents-in-suit do not claim or enable qualifying for Section 45 tax credits or reducing NOx, a requirement to earn

3

those credits[.]" (*Id.*)  Yet Defendants' sole support for this assertion was a citation to Plaintiffs' response to one of Defendants' Requests for Admission ("RFA"); that RFA asked Plaintiffs to "[a]dmit that attainment of a Qualified Emission Reduction, as defined in 26 U.S.C. § 45(c)(7)(B), is not part of any method stated in an Asserted Claim." (D.I. 534, ex. 29 at 2)  To that, Plaintiffs responded only that "[they] admit[] that no Asserted Claim recites 'attainment of a Qualified Emission Reduction, as defined in 26 U.S.C. § 45(c)(7)(B),' otherwise denied." (*Id.* (*cited in* D.I. 528 at 49))  It is wrong to suggest that this RFA response amounts to an acknowledgement by Plaintiffs that the patents-in-suit "do not claim or enable qualifying for Section 45 tax credits or reducing NOx[,]" let alone that this state of affairs is "undisputed."  It is no such acknowledgement at all.

6.  Defendants' second argument was that "even if practicing the patents were incidentally necessary to earn the tax credits, the value of the allegedly infringing [r]efined [c]oal would still be attributable to the legal requirements that tax payers must meet to earn tax credits" and that "[t]he value of tax code compliance—comparable to the value inherent in meeting a standard set by an organization—would still need to be apportioned out." (D.I. 528 at 50)  Yet the sole case that Defendants cited in support of this proposition—*Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201 (Fed. Cir. 2014)—stands only for the proposition that "the royalty for [standard essential patents] should reflect the approximate value of that technological contribution, not the value of its widespread adoption due to standardization." 773 F.3d at 1233 (*cited in* D.I. 528 at 49-50).  The Court does not understand how such caselaw is relevant to our situation here, where the asserted patents are not said to be essential to practicing a technological standard mode of operation.  Nor did the few lines of argument in Defendants' opening brief

regarding the Green Daubert Motion sufficiently explain why this was so. (D.I. 528 at 50; *see also* D.I. 651 at 7)

7. Therefore, Defendants presented two reasons as to why Mr. Green's failure to apportion out the value of the Section 45 tax credits amounts to an unreliable methodology. And yet those two reasons were entirely unpersuasive.

8. That said, it is Plaintiffs' burden, as the party offering Mr. Green's expert testimony, to show that it is sufficiently reliable. *See, e.g.*, *Personal Audio, LLC v. Google LLC*, Civil Action No. 17-1751-CFC-CJB, 2021 WL 5038740, at *2 (D. Del. Oct. 25, 2021). And it is not like Plaintiffs did a great job of that either. As was noted above, one of the arguments that Plaintiffs made in their answering brief regarding the Green Daubert Motion—i.e., that Mr. Green's royalty rate opinion does not "*include* any tax credit component to apportion *out*[,]" (D.I. 545 at 48 (emphasis in original))—now seems off-point at best. And overall, Plaintiffs' couple-of-paragraph response in their brief as to this issue was less than clear.

9. However, in the last section of this portion of their brief, Plaintiffs appear to have been suggesting that it *can be* appropriate for Mr. Green to consider tax credits as relevant to his reasonable royalty opinion. (D.I. 545 at 49-50) And Plaintiffs' slides regarding the Green Daubert Motion do point to a linkage between the claimed technology and how one may claim entitlement to Section 45 tax credits. (Plaintiffs' Slides Regarding Defendants' Motion to Exclude Philip Green, Slides 86-88; *see also, e.g.*, D.I. 546, ex. A at 45-46 at ¶¶ 83-84; *id.* at 150, 167; Tr. at 58-60)[2] Under these circumstances, the Court declines to exclude Mr. Green's

---

[2] Specifically, the Court has been told that in order to claim Section 45 tax credits, one must utilize refined coal in a manner that allows for a reduction of mercury and NOx emissions of a certain amount. (*See* D.I. 555 at 24 (citing 26 U.S.C. § 45(c)(7)) Defendants provide refined coal containing MerSorb and S-Sorb and, as Defendants acknowledge, use of these additives leads to reduction in both mercury and NOx emissions. (*Id.* at 25; *see also* D.I.

expert opinions on the ground that he did not apportion out the value of the Section 45 tax credits earned by the licensees of Chem-Mod's, Nalco's, and ADA-ES's technology. Defendants "will be free to cross-examine [Mr. Green] on his factual assumptions underlying his reasonable royalty opinion" during trial. *Shire Viropharma Inc. v. CSL Behring LLC*, Civil Action No. 17-414 CONSOLIDATED, 2021 WL 1227097, at *28 (D. Del. Mar. 31, 2021).[3]

10.    Because this Memorandum Order may contain confidential information, it has been released under seal, pending review by the parties to allow them to submit a single, jointly proposed, redacted version (if necessary) of the Memorandum Order. Any such redacted version shall be submitted no later than **March 6, 2024** for review by the Court. It should be accompanied by a motion for redaction that shows that the presumption of public access to judicial records has been rebutted with respect to the proposed redacted material, by including a factually-detailed explanation as to how that material is the "kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure." *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (internal quotation marks and citation omitted). The Court will subsequently issue a publicly-available version of its Memorandum Order.

Dated: February 21, 2024

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

---

546, ex. A at 46 at ¶ 84) And Plaintiffs' technical expert has opined that MerSorb and S-Sorb practice at least claim 2 of the '517 patent. (D.I. 546, ex. A at 150, 167)

[3]    The portion of the CERT Defendants' Motion for Leave to File Reply relating to the instant Motion, (D.I. 652), is DENIED. The Court is not persuaded that Defendants' authority represents a change in the law that would warrant a reply brief. (*See* D.I. 654 at 1)