**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| MIDWEST ENERGY EMISSIONS CORP. and MES Inc., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 19-1334-CJB |
| ARTHUR J. GALLAGHER & CO., *et al.*, | ) ) | |
| Defendants. | ) | |

**<u>FINAL JURY INSTRUCTIONS</u>**

# 1.  GENERAL INSTRUCTIONS

## 1.1. INTRODUCTION

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case. Each of you has been provided a copy of these instructions. You may read along as I deliver them if you prefer.

I will start by explaining your duties and the general rules that apply in every civil case. Then I will explain some rules that you must use in evaluating particular testimony and evidence.

Then I will explain the positions of the parties and the law you will apply in this case. And last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the questions that you must answer to decide this case.

**1.2. JURORS' DUTIES**

You have two main duties as jurors. The first is to decide what the facts are from the evidence that you saw and heard in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way. You are the sole judges of the facts.

Your second duty is to take the law that I give you, apply it to the facts, and decide under the appropriate burden of proof which party should prevail on any given issue. It is my job to instruct you about the law, and you are bound by the oath you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not guess or speculate, and do not let any bias, sympathy, or prejudice you may feel toward one side or the other influence your decision in any way.

### 1.3. EVIDENCE DEFINED

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath (including deposition transcript testimony that has been played by video), the exhibits that I allowed into evidence, and the stipulations to which the parties agreed.

Certain charts and graphics have been used to illustrate testimony from witnesses. Unless I have specifically admitted them into evidence, these charts and graphics are not themselves evidence, even if they refer to, identify, or summarize evidence, and you will not have these demonstratives in the jury room.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts. Their questions and objections are not evidence. My legal rulings are not evidence. You should not be influenced by a lawyer's objection or by my ruling on that objection. Any of my comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked. I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see. And, sometimes I may have ordered you to disregard things that you saw or heard, or that I struck from the record. You must completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.  Make your decision based only on the evidence, as I have defined it here, and nothing else.

## 1.4. DIRECT AND CIRCUMSTANTIAL EVIDENCE

You may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that he saw it raining outside, and you believe him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

**1.5. CONSIDERATION OF EVIDENCE**

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

**1.6. STATEMENTS OF COUNSEL**

A further word about statements of counsel and arguments of counsel. The attorneys' statements and arguments are not evidence. Instead, their statements and arguments are intended to help you review the evidence presented.

If you remember the evidence differently from the way it was described by the attorneys, you should rely on your own recollection.

**1.7. CREDIBILITY OF WITNESSES**

You are the sole judges of each witness's credibility. You may believe everything a witness says, or part of it, or none of it. You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witnesses' manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony he gave at the trial. You have the right to distrust such a witness's testimony in other particulars and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

**1.8. NUMBER OF WITNESSES**

One more point about the witnesses. Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves. Concentrate on that, not the numbers.

**1.9. EXPERT WITNESSES**

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case. You are free to accept or reject the testimony of experts, just as with any other witness.

**1.10.     DEPOSITION TESTIMONY**

Deposition testimony is out of court testimony given under oath and is entitled to the same consideration you would give it had the witnesses personally appeared in court.

During the trial, certain testimony was presented to you by the reading of a deposition transcript or the playing of video excerpts from a deposition. If played by video, the deposition testimony may have been edited or cut to exclude irrelevant testimony. You should not attribute any significance to the fact that the deposition videos may appear to have been edited.

**1.11.    USE OF INTERROGATORIES**

You may have heard answers that the parties gave in response to written questions submitted by the other side. The written questions are called "interrogatories." The written answers were given in writing and under oath, before the trial.

You must consider the parties' answers to interrogatories in the same manner as if the answers were made from the witness stand.

## 1.12.    REQUESTS FOR ADMISSION AND UNCONTESTED FACTS

The parties have stipulated that certain facts are not disputed, or have agreed to or stipulated that they are true, and some of those stipulations have been read to you during this trial, sometimes referred to as "Uncontested Facts" or "Requests for Admission."  You must treat these facts as having been proved for the purposes of this case.

## 1.13.    EXHIBITS

During the course of the trial, you have seen many exhibits. Many of these exhibits were admitted as evidence. You will have these admitted exhibits in the jury room to consider as evidence for your deliberations.

The remainder of the exhibits (including charts, PowerPoint presentations and animations) were offered to help illustrate the testimony of the various witnesses. These illustrative exhibits, called "demonstrative exhibits," will not be in the jury room and have not been admitted, are not evidence, and should not be considered as evidence. Rather, it is the underlying testimony of the witness that you heard when you saw the demonstrative exhibits that is the evidence in this case.

In some instances, certain charts and summaries may have been received into evidence to illustrate information brought out in the trial. You may use these charts and summaries as evidence, even though the underlying documents and records may not be here. You should give them only such weight as you think they deserve.

## 1.14.    BURDENS OF PROOF

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof."   In a case such as this, the burden of proof is called "preponderance of the evidence."

ME2C is accusing each Defendant of patent infringement.   ME2C has the burden of proving for each Defendant its claims and the amount of its money damages, if any, by a preponderance of evidence. That means that ME2C has to produce evidence which, when considered in light of all of the facts, leads you to believe that what ME2C claims is more likely true than not. To put it differently, if you were to put the evidence of ME2C and a Defendant concerning infringement on opposite sides of a scale, the evidence supporting ME2C's claims would have to make the scales tip somewhat on its side in each instance. If the scale should remain equal or tip in favor of that Defendant, you must find for that Defendant.

If you find that a Defendant infringed one or more of ME2C's patents, then as a separate question, ME2C has also asserted that the infringement of the patents was willful. ME2C has the burden of proving for each Defendant this additional contention by a preponderance of the evidence.

Some of you may have heard the phrase "proof beyond a reasonable doubt." That burden of proof applies only in criminal cases and has nothing to do with a civil case like this one. You should therefore not consider it in this case.

**1.15.    USE OF NOTES**

You may use notes taken during trial to assist your memory. However, as I instructed you at the beginning of the case, you should use caution in consulting your notes. There is generally a tendency I think to attach undue importance to matters which one has written down. Some testimony which is considered unimportant at the time presented, and thus not written down, takes on greater importance later in the trial in light of all the evidence presented. Therefore, your notes are only a tool to aid your own individual memory, and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial.

Above all, your memory should be your greatest asset when it comes time to deliberate and render a decision in this case.

## 2.  THE PARTIES AND THEIR CONTENTIONS

### 2.1. THE PARTIES

I will now review for you the parties in this action, and the positions of the parties that you will have to consider in reaching your verdict.

The plaintiffs in this case are Midwest Energy Emissions Corp. and MES Inc., which I may refer to as "ME2C" or "Plaintiff."

The defendants in this case are:

- CERT Operations RCB LLC
- CERT Operations II LLC
- CERT Operations IV LLC
- CERT Operations V LLC
- Senescence Energy Products LLC
- Bascobert (A) Holdings LLC
- Buffington Partners LLC
- Larkwood Energy LLC
- Rutledge Products LLC
- Cottbus Associates LLC
- Springhill Resources LLC
- Marquis Industrial Company LLC

I may refer to this group of entities as the Defendants.

## 2.2. THE PARTIES' CONTENTIONS

There are two patents at issue in this case: United States Patent Nos. 10,343,114; and 10,596,517. You heard the lawyers and witnesses in the case refer to ME2C's patents as the '114, and '517 patents or the "ME2C patents." Copies of the ME2C patents have been given to you.

ME2C contends that each Defendant induced and contributed to infringement of the ME2C patents, that the infringement was willful, and that ME2C is entitled to damages.

Each Defendant denies that it infringed the ME2C patents, or that it did so willfully. Each Defendant also denies that ME2C is entitled to recover any damages related to the patents.

## 2.3. SUMMARY OF THE PATENT ISSUES

I will now summarize the patent issues that you must decide and for which I will provide instructions to guide your deliberations. The specific questions you must answer are listed on the verdict sheet you will be given. Here are the issues you must decide:

- Whether ME2C has proven by a preponderance of the evidence that each Defendant induced infringement by a power plant of one or more of the asserted claims of the '114 and '517 patents.

- Whether ME2C has proven by a preponderance of the evidence that each of the CERT RC Defendants contributed to the infringement by a power plant of one or more of the asserted claims of the '114 and '517 patents.

- If you decide that ME2C has proven that a Defendant infringed one or more of the asserted claims of the patents, whether ME2C has proven by a preponderance of the evidence that Defendant willfully infringed that claim.

- If you decide that ME2C has proven that a Defendant infringed a claim, what monetary damages ME2C has proven by a preponderance of the evidence that it is entitled to.

I will provide more detailed instructions on each of the issues you must decide elsewhere in these jury instructions.

## 3.  THE PATENT CLAIMS

### 3.1. PATENT LAWS

At the beginning of the trial, I gave you some general information about patents and the patent system and a brief overview of the patent laws relevant to this case. I will now give you more detailed instruction about the patent laws that specifically relate to this case.

**3.2. PATENT "CLAIMS" GENERALLY**

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims."

The patent claims are the numbered paragraphs at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. Only the claims of a patent can be infringed.

The claims are intended to define, in words, the bounds of an invention. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Each of the asserted claims must be considered individually.

In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations." For example, a claim that covers a process for making a round cake may recite the steps of (1) making cake batter, (2) pouring the batter into a round cake pan, and (3) baking it in an oven. Each of the three steps is a separate limitation of the claim. When a process meets each and every limitation of a claim, the claim is said to "cover" that process, and that process is said to "fall" within the scope of that claim.

Each claim may cover more or less than another claim. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

You will first need to understand what each claim covers in order to decide whether there is infringement of the claim.

### 3.3. CONSTRUCTION OF THE CLAIMS

It is the Court's duty under the law to define what the patent claims mean. As I instructed you at the beginning of the case, I have made my determinations, and I will now instruct you on the meaning, or "construction", of the claim terms. You must apply the meaning that I give in each patent claim to decide if the claim is infringed. You must accept my definitions of these words in the claims as being correct. You must ignore any different definitions used by the witnesses or the attorneys.

You are advised that the following definition for the following term must be applied:

| Claim Term | Claim Term | Construction |
|---|---|---|
| '114 Patent, Claim 25 | injecting a sorbent material comprising activated carbon into the mercury-containing gas downstream of the combustion chamber | injecting a sorbent material comprising activated carbon into the mercury-containing gas downstream of, and from outside, the combustion chamber |

For any words in the claim for which I have not provided you with a definition, you should apply the plain and ordinary meaning to a person of ordinary skill in the art.

### 3.4. INDEPENDENT AND DEPENDENT CLAIMS

This case involves two types of patent claims: independent claims and dependent claims.

An independent claim does not refer to any other claim of the patent and sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers.

In this case, claim 25 of the '114 patent and claim 1 of the '517 patent are each independent claims. An independent claim must be read separately from the other claims to determine the scope of the claim.

The remaining two asserted claims are dependent claims. A dependent claim does not itself recite all of the requirements of the claim but refers to another claim or claims for some of its requirements. In this way, the claim "depends" on another claim or claims. A dependent claim incorporates all of the requirements of the claims to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other independent claims to which it refers.

### 3.5. OPEN ENDED OR "COMPRISING" CLAIMS

The beginning portion, or preamble, of the asserted claims has the word "comprising." The word "comprising" means "including the following but not excluding others." A claim that uses the word "comprising" or "including" is not limited to methods having only the elements that are recited in the claim, but also covers methods that have additional elements.

If you find, for example, that the accused conduct includes all of the elements of a particular claim, the fact that the accused conduct might include additional steps would not avoid infringement of the claim.

## 4.  INFRINGEMENT

### 4.1. INFRINGEMENT GENERALLY

I will now instruct you how to decide whether ME2C has proven by a preponderance of the evidence (i.e., that it is more likely than not) that Defendants infringed the asserted claims of the patents-in-suit.

As I stated earlier, ME2C has alleged infringement of the '114 and '517 patents in this case.

A claim of a patent may be infringed directly or indirectly. As explained further in the following Instructions, direct infringement results if the accused process is covered by at least one claim of the patent. Indirect infringement results if a defendant induces another to infringe a claim of a patent or contributes to the infringement of a claim of a patent by another.

**4.2 DIRECT INFRINGEMENT**

ME2C does not allege that Defendants directly infringe any asserted claim. Instead, ME2C alleges that each Defendant induced one or more power plants to infringe one or more of the asserted claims, and that the CERT RC Defendants contributed to infringement of those claims by power plants. A finding of induced infringement or contributory infringement requires a showing that someone has directly infringed. ME2C alleges power plants that are Defendants' customers have directly infringed one or more asserted claims.

To find that a power plant has directly infringed an asserted claim, you must compare the accused conduct of that power plant with the asserted claim, using my Construction of the Claims instruction concerning the meaning of the terms the patent claims use.

A patent claim is directly infringed only if the power plant's conduct includes each and every step recited in that patent claim. If a power plant does not perform one or more steps recited in a claim, the power plant does not directly infringe that claim. You must determine direct infringement with respect to each patent claim individually. The accused conduct should be compared to the invention described in each patent claim it is alleged to infringe.

A power plant can directly infringe a patent without knowing of the patent or without knowing that what the power plant is doing is patent infringement. Thus, while ME2C must prove that a Defendant knew of or was willfully blind to a patent to prove induced or contributory infringement, ME2C is not required to prove that any power plant was aware of any of the asserted ME2C patents, or that the power plant knew its conduct directly infringed.

## 4.3. INDUCED INFRINGEMENT

ME2C alleges that Defendants are liable for infringement by actively inducing power plants to engage in acts that directly infringe one or more claims of the asserted ME2C patents. You must determine whether there has been active inducement on a Defendant-by-Defendant and claim-by-claim basis. This may be shown by direct or circumstantial evidence. A given Defendant is liable for active inducement of a claim only if ME2C proves by a preponderance of the evidence each of the following:

1. that the Defendant took some affirmative action, intending to cause a power plant to directly infringe one or more asserted claims of the asserted ME2C patents;

2. that the Defendant knew of the asserted ME2C patent, or showed willful blindness to the existence of the asserted ME2C patent, at that time;

3. that the Defendant knew, or showed willful blindness, that the actions of the power plant would infringe the asserted claim; and

4. that the Defendant's actions actually caused the power plant to perform each and every step of the asserted claim.

To find willful blindness of infringement, the Defendant must have believed that there was a high probability that the actions of its power plant customer infringed an asserted ME2C patent and taken deliberate steps to avoid learning of that customer's infringement. A belief that a patent is invalid is not a defense to induced infringement.

The mere fact, if true, that a Defendant knew or should have known that there was a substantial risk that a power plant would infringe a claim would not be sufficient for active inducement of infringement.

Inducing infringement cannot occur unintentionally. It is not enough for a Defendant to cause a power plant to engage in conduct that happens to amount to direct infringement. Rather,

to have induced infringement, the Defendant must have taken an affirmative act that caused a power plant to engage in conduct that the Defendant knew—or believed with high probability, but deliberately avoided confirming—was direct infringement.

To find that a power plant has directly infringed you must compare the accused conduct with each patent claim ME2C asserts is infringed, using my instruction as to the meaning of the terms the patent claims use.

In order to establish inducement of infringement, it is not sufficient that the Defendant's power plant customer directly infringed the claim. Nor is it sufficient that the Defendant was aware of the actions of the power plant that allegedly constitute the direct infringement. Rather, you must find that the Defendant specifically intended that the power plant would infringe the patent claim at issue, or that the Defendant believed there was a high probability that the power plant would infringe ME2C's patents but remained willfully blind to the infringing nature of the power plant's acts, in order to find inducement of infringement.

## 4.4. CONTRIBUTORY INFRINGEMENT

ME2C also asserts that each CERT RC Defendant has contributed to infringement by power plants.  As with induced infringement, you must determine whether there has been contributory infringement by each of the CERT RC Defendants on a Defendant-by-Defendant and claim-by-claim basis.  The CERT RC Defendants are Senescence Energy Products LLC, Bascobert (A) Holdings LLC, Buffington Partners LLC, Larkwood Energy LLC, Rutledge Products LLC, Cottbus Associates LLC, Springhill Resources LLC, and Marquis Industrial Company LLC.  There is not a contributory infringement claim against the CERT Operations Defendants.  A given CERT RC Defendant is liable for contributory infringement of a given claim only if ME2C proves by a preponderance of the evidence each of the following:

1. that a power plant has directly infringed one or more claims of an asserted ME2C patent;

2. that the Defendant sold that power plant refined coal made with calcium bromide;

3. that the Defendant knew that the refined coal supplied to that power plant, as sold and delivered during the damages period, is not a staple article or commodity of commerce capable of substantial non-infringing use;

4. that the refined coal constituted a material part of the claimed invention; and

5. that the Defendant knew that the refined coal was especially made or adapted for use in an infringing method.

A "staple article or commodity of commerce capable of substantial non-infringing use" is something that had uses other than as a part or component of the asserted claim, and those other uses were not occasional, farfetched, impractical, experimental, or hypothetical.

The Defendant's knowledge that the component was especially made or adapted for use in an infringing method may be shown with evidence of willful blindness, as I previously explained when discussing induced infringement.  To find willful blindness, the Defendant must have

believed that there was a high probability that a patent existed covering the accused method and must have taken deliberate actions to avoid learning of the patent.

Contributory infringement requires only proof of a Defendant's knowledge, not intent, that the activity causes infringement.

Proof that the Defendant knew its activity might infringe is not sufficient to show contributory infringement.  Similarly, if a Defendant reasonably believed it did not infringe, even if that belief was incorrect, the Defendant does not have knowledge of infringement.  Instead, contributory infringement requires proof the Defendant actually knew the acts were infringing. However, a belief that a patent is invalid is not a defense to contributory infringement.

Let me say a few final words about the "refined coal" that may be considered when you assess these contributory infringement issues.  When you are assessing the five elements of contributory infringement that I have just described—including the questions of whether a Defendant sold a power plant "refined coal made with calcium bromide" or whether that refined coal was "a staple article or commodity of commerce capable of substantial non-infringing use" or whether that refined coal "constituted a material part of the claimed invention" or whether that refined coal "was especially made or adapted for use in an infringing method"—the only refined coal you may consider is the refined coal that each Defendant supplied during the damages period to a power plant that is alleged to have directly infringed the patents-in-suit in this case.  In other words, in assessing those questions, you may not consider refined coal that Defendants may have sold prior to the issuance of the patents-in-suit, prior to this litigation, or outside the scope of the damages period, nor may you consider refined coal sold by entities that are not Defendants in this case.

However, one of Defendants' arguments as to why they are not liable for contributory

infringement is that, during the relevant damages period, they did not have the requisite knowledge that they were committing contributory infringement.  In this regard, Defendants are arguing that they had a reasonable though mistaken belief about what the law on contributory infringement requires—that is, that they had a reasonable though mistaken belief that the refined coal at issue in the contributory infringement analysis could include refined coal that Defendants may have sold prior to the issuance of the patents-in-suit, prior to this litigation, or outside the scope of the damages period, or refined coal sold by entities that are not Defendants in this case—and that this belief caused them to not have knowledge of any possible infringement.  You may consider these additional types of refined coal solely for purposes of assessing this question regarding Defendants' knowledge of infringement.

**4.5. WILLFUL INFRINGEMENT**

If you have decided that a Defendant has induced and/or contributed to infringement, you must go on and address the additional issue of whether or not this Defendant's infringement was willful. To prove willful infringement, ME2C must prove by a preponderance of the evidence that the Defendant deliberately or intentionally infringed an asserted patent. To determine whether the Defendant acted willfully, consider all of the facts.

If you determine that any infringement was willful, you may not allow that decision to affect the amount of any damages award you give for infringement.

## 5.  DAMAGES

If you find that an accused product infringes any of the asserted claims, you must determine the amount of damages to be awarded to ME2C for the infringement. On the other hand, if you find that all of the asserted patent claims are not infringed, then you should not consider damages in your deliberations.

ME2C must prove each element of its damages—including the amount of the damages—by a preponderance of the evidence, which means more likely than not.

If you find that a Defendant has infringed any of the asserted claims of the patents-in-suit, patent law provides that the amount of damages that the Defendant should pay ME2C for infringing ME2C's patents must be enough to compensate for the infringement, and may not be less than a reasonable royalty for the use of the patented invention.

The purpose of a damages award is to put ME2C in about the same financial position it would have been in if the infringement had not happened. You may not add anything to the amount of damages to punish Defendants or to set an example. You also may not add anything to the amount of damages for interest. ME2C must prove the amount of damages with reasonable certainty. While ME2C need not prove the amount of damages with mathematical precision, you may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

The fact that I am instructing you on damages does not mean that the Court believes that one party or the other should win in this case. My instructions about damages are for your guidance only in the event you find in favor of ME2C.

I will now give you more detailed instructions regarding damages.

**5.1. DATE OF COMMENCEMENT OF DAMAGES**

For each Defendant that you find liable for infringement, damages commence on the date that Defendant first induced or contributed to infringement of a patent-in-suit.

## 5.2. REASONABLE ROYALTY – USING THE "HYPOTHETICAL NEGOTIATION" METHOD

A reasonable royalty is the royalty that would have resulted from a hypothetical license negotiation between ME2C and a Defendant that took place at a time prior to when the Defendant's infringement first began. Of course, we know that the parties in this case did not agree to a license and royalty payment. But, in order to decide on the amount of reasonable royalty damages, you should assume that each infringing Defendant did negotiate a license just before the infringement began.  This is why it is called a "hypothetical" license negotiation. You should assume that both parties to the hypothetical negotiation understood that the patents were valid and infringed and that both sides were willing to enter into a license. You should also presume that the parties had full knowledge of the facts and circumstances surrounding the infringement at the time of the hypothetical negotiation. But evidence of things that happened after the infringement first began can be considered only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation. Although evidence of the actual profits each Defendant made may be used to determine the anticipated profits at the time of the hypothetical negotiation, the royalty may not be limited or increased based on the actual profits each Defendant made. Your role is to determine what the license would have looked like had the parties agreed to a license prior to infringement.

In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors that the experts may have referenced as "*Georgia Pacific*" factors, in addition to any other evidence presented by the parties on the economic value of the patents:

1. Any royalties received by the licensor for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

2. The rates paid by each Defendant to license other patents comparable to the asserted

patents.

3. The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

4. The licensor's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.

5. The commercial relationship between the licensor and the licensee, such as whether they are competitors in the same territory in the same line of business.

6. The effect of selling the patented product in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of its nonpatented items; and the extent of such collateral sales.

7. The duration of the asserted patents and the term of the license.

8. The established profitability of the product made under the asserted patents; its commercial success; and its current popularity.

9. The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.

10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

11. The extent to which a Defendant has made use of the invention; and any evidence that shows the value of that use.

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13. The portion of the profit that arises from the patented invention itself as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

14. The opinion testimony of qualified experts.

15. The amount that a licensor and a licensee (such as a Defendant) would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

16. Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

**5.3. REASONABLE ROYALTY – ATTRIBUTION/APPORTIONMENT**

The amount you find as damages must be based on the value attributable to the patented technology, as distinct from other, unpatented features of the accused product, or other factors such as marketing or advertising, or a Defendant's size or market position. In determining the appropriate royalty base and the appropriate royalty rate, the ultimate combination of both the royalty rate and the royalty base must reflect the value attributable to the patented technology. In other words, the royalty base must be closely tied to the invention. It is not sufficient to use a royalty base that is too high and then adjust the damages downward by applying a lower royalty rate. Similarly, it is not appropriate to select a royalty base that is too low and then adjust it upward by applying a higher royalty rate. Rather, you must determine an appropriate royalty rate and an appropriate royalty base that reflect the value attributable to the patented invention alone.

**5.4. REASONABLE ROYALTY – TIMING**

Damages are not based on a hindsight evaluation of what happened, but on what the parties to the hypothetical license negotiations would have agreed upon. Nevertheless, evidence relevant to the negotiation is not necessarily limited to facts that occurred on or before the date of the hypothetical negotiation. You may also consider information the parties would have foreseen or estimated during the hypothetical negotiation, which may under certain circumstances include evidence of usage after infringement started, license agreements entered into by the parties shortly after the date of the hypothetical negotiation, profits earned by the infringer, and non-infringing alternatives.

**5.5. REASONABLE ROYALTY – USE OF COMPARABLE LICENSE AGREEMENTS**

When determining a reasonable royalty, you may consider evidence concerning the amounts that other parties have paid for rights to the patents in question, or for rights to similar technologies. A license agreement need not be perfectly comparable to a hypothetical license that would be negotiated between ME2C and Defendants here in order for you to consider it. However, if you choose to rely upon evidence from any other license agreements, you must account for any differences between those licenses and the hypothetically negotiated license between ME2C and Defendants here, in terms of the technologies, the parties to the license, and economic circumstances of the contracting parties, when you make your reasonable royalty determination.

### 5.6. REASONABLE ROYALTY – AVAILABILITY OF NON-INFRINGING SUBSTITUTES

In determining a reasonable royalty, you may also consider evidence concerning the availability and cost of acceptable non-infringing substitutes to the patented invention. An acceptable non-infringing substitute must be a product that does not infringe the patent. It must have also been, at the time of the hypothetical negotiation, both "available" and "acceptable."

To be an "available" substitute it must have been available during the damages period. A substitute is available if, during the damages period, a Defendant had all the necessary equipment, materials, know-how, legal right, and experience to design and manufacture the non-infringing substitute. The substitute need not have actually been sold at that time.

To be an "acceptable" substitute, the product or process must have had one or more of the advantages of the patented invention that were important to the actual buyers of the infringing products, not the public in general. The acceptable substitutes or their use also must not infringe the patent. An acceptable non-infringing substitute may be one that modified the product or method to avoid infringement.

**5.7. CALCULATING DAMAGES IN CASES OF INDUCEMENT OR CONTRIBUTORY INFRINGEMENT**

In order to recover damages for induced infringement, ME2C must either prove that the Defendants' products necessarily infringe the Patents-in-Suit or prove acts of direct infringement by others that were induced by Defendants. Because the amount of damages for induced infringement is limited by the number of instances of direct infringement, ME2C must further prove the number of direct acts of infringement of the Patents-in-Suit, for example, by showing individual acts of direct infringement or by showing that a particular class of uses directly infringes.

In order to recover damages for contributory infringement, ME2C must either prove that the Defendants' products necessarily infringe the Patents-in-Suit or prove acts of direct infringement by others to which Defendants made a substantial contribution. Because the amount of damages for contributory infringement is limited by the number of instances of direct infringement, ME2C must further prove the number of direct acts of infringement of the Patents-in-Suit, for example, either by showing individual acts of direct infringement or by showing that a particular class of uses directly infringes.

**6.  DELIBERATION AND VERDICT**

**6.1. INTRODUCTION**

I have concluded the part of my instructions explaining the rules for considering some of the testimony and evidence. Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is Juror No. 1.

One more thing about messages. Do not ever write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be. That should stay secret until you are finished.

**6.2. UNANIMOUS VERDICT**

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges—judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you. I will review it with you in a moment. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. You will then return to the Courtroom and my deputy will read aloud your verdict. Place the completed verdict sheet in the envelope we will give you. Do not show the completed verdict form to anyone or share it with anyone until you are in the Courtroom.

It is proper to add the caution that nothing said in these instructions, and nothing in the verdict form, is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find. What the verdict shall be is your sole and exclusive duty and responsibility.

**6.3. DUTY TO DELIBERATE**

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say.

Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong. But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds. Listen carefully to what the other jurors have to say, and then decide for yourself.

**6.4. SOCIAL MEDIA**

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as the telephone, a cell phone, smartphone, iPhone, tablet or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog or website such as Facebook, TikTok, LinkedIn, YouTube, Instagram, Snapchat or Twitter to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.

### 6.5. COURT HAS NO OPINION

Let me finish by repeating something I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourselves based on the evidence presented.