# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MIDWEST ENERGY EMISSIONS CORP. and MES INC., | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) Civil Action No. 19-1334-CJB ) |
| ARTHUR J. GALLAGHER & CO., et al., | ) ) ) |
| Defendants. | ) |

James M. Lennon and Peter Akawie Mazur, DEVLIN LAW FIRM, Wilmington, DE; Bradley W. Caldwell, Justin T. Nemunaitis, Warren J. McCarty, III, Daniel R. Pearson, Adrienne R. Dellinger, Aisha M. Haley, Richard A. Cochrane, CALDWELL CASSADY CURRY P.C., Dallas, TX; Attorneys for Plaintiffs Midwest Energy Emissions Corp. and MES Inc.

Kenneth L. Dorsney and Cortlan S. Hitch, MORRIS JAMES LLP, Wilmington, DE; Jeff Dyess, Paul Sykes, Benn Wilson and Ashley M. Robinson, BRADLEY ARANT BOULT CUMMINGS LLP, Birmingham, AL; Jessica Zurlo, BRADLEY ARANT BOULT CUMMINGS LLP, Washington, D.C., Attorneys for Defendants CERT Operations II LLC, CERT Operations IV LLC, CERT Operations V LLC, CERT Operations RCB LLC, Senescence Energy Products, LLC, Spring Hill Resources LLC, Buffington Partners LLC, Bascobert (A) Holdings LLC, Larkwood Energy LLC, Cottbus Associates LLC, Marquis Industrial Company, LLC and Rutledge Products, LLC.

**MEMORANDUM OPINION**

July 8, 2025
Wilmington, Delaware

*Christopher J. Burke*
**BURKE, United States Magistrate Judge**

  In this case, Plaintiffs Midwest Energy Emissions Corp. ("ME2C") and MES Inc. ("MES" and collectively with ME2C, "Plaintiffs") sued current named Defendants Bascobert (A) Holdings LLC; Buffington Partners LLC; Cottbus Associates LLC; Larkwood Energy, LLC; Marquis Industrial Company, LLC; Rutledge Products, LLC; Senescence Energy Products, LLC; Spring Hill Resources, LLC; CERT Operations II LLC; CERT Operations IV LLC; CERT Operations V LLC; and CERT Operations RCB LLC (collectively, "CERT" or the "CERT Defendants") for infringement of claims 25 and 26 of United States Patent No. 10,343,114 (the "'114 patent") and claims 1 and 2 of United States Patent No. 10,596,517 (the "'517 patent" and collectively with the '114 patent, the "asserted patents").[1]  (D.I. 659, ex. 2 at ¶¶ 1-6; *id.*, ex. 3 at ¶ 1)  Following a 5-day jury trial beginning on February 26, 2024,[2] the jury found that CERT indirectly and willfully infringed the asserted patents.  (D.I. 781-85 (hereinafter, "JT Tr."); D.I. 692)  The jury awarded Plaintiffs damages of over 57 million dollars.  (D.I. 692; *see also* D.I. 738 at 2; JT Tr. (D.I. 783) at 769)  The Court entered non-final judgments on the verdict against the CERT Defendants.  (D.I. 697-708)  Thereafter, the parties submitted post-trial motions and briefing.  (D.I. 716; D.I. 718; D.I. 720; D.I. 763)[3]

---

  [1] Plaintiffs had previously also asserted three other patents, including United States Patent No. 8,168,147 (the "'147 patent"), but only pursued claims relating to the '114 patent and '517 patent at trial.  (*See, e.g.*, D.I. 670 at 3)

  [2] The parties have jointly consented to the Court's jurisdiction to conduct all proceedings in this case, including trial, the entry of final judgment and all post-trial proceedings.  (D.I. 398)

  [3] On May 30, 2024, the Court also held a bench trial regarding CERT's assertion that Plaintiffs' infringement claims are barred because CERT is entitled to an implied license to the asserted patents.  (D.I. 779)  The parties thereafter filed post-trial briefs regarding CERT's implied license defense, (D.I. 758; D.I. 760; D.I. 767), as well as proposed findings of fact and

Currently pending before the Court is CERT Defendants' Motion to Dismiss Plaintiff MES Inc. pursuant to Federal Rule of Civil Procedure 12(b)(1), and to Alter or Amend Judgments pursuant to Federal Rule of Civil Procedure 59(e) (the "Motion"). (D.I. 716)

## I.   BACKGROUND

### A.   Factual Background

The Court assumes familiarity with the factual background of this case, which the Court has set out in prior written opinions. (*See, e.g.*, D.I. 786 at 1-21) For purposes of this Motion, which asserts that MES lacks constitutional standing and must be dismissed from the case, the key facts are as follows:

- On January 15, 2009, Plaintiffs (through their predecessor company RLP Energy, Inc.) and the Energy & Environmental Research Center ("EERC") entered into a license agreement (the "Agreement") under which the EERC granted Plaintiffs an exclusive license to the EERC's intellectual property, which definition would encompass the '147 patent and the asserted patents. (JT Tr. (D.I. 782) at 448-49; D.I. 776, PTX-048 at §§ 1.10, 2.1; *see also* D.I. 786 at 25-39);

- The inventors of the asserted patents were researchers at the EERC, a nonprofit research arm at the University of North Dakota, who were studying the issue of mercury capture. (D.I. 546, ex. A at 19, at ¶¶ 48-49; D.I. 759 at ¶ 7; JT Tr. (D.I. 781) at 241);

- On May 1, 2012, the United States Patent and Trademark Office ("PTO") issued the '147 patent, entitled "Sorbents for the Oxidation and Removal of Mercury[,]" to the EERC. (D.I. 775, PTX-005.0002; *see also* D.I. 598, ex. 1 at ¶ 37) The '147 patent claims priority to provisional

---

conclusions of law, (D.I. 759; D.I. 762). On June 10, 2025, the Court issued a Memorandum Opinion and Order regarding that bench trial, in which it found that CERT's motion regarding the implied license defense should be denied. (D.I. 786; D.I. 787)

- application No. 60/605,640 (the "'640 Application"), filed on August 30, 2004. (D.I. 775, PTX-005.0002);

- The EERC and Plaintiffs executed a Closing Agreement (the "Closing Agreement") effective April 21, 2017. (D.I. 776, PTX-054)  The Closing Agreement defines the "Company" as ME2C and MES, and states that the Company has elected to exercise its option to acquire the patent rights at issue in the Agreement. (*Id.*, PTX-054.0001)  Pursuant to the Closing Agreement, the Agreement was terminated and the EERC was to execute and deliver to "ME2C" an "Assignment of the Patent Rights[.]" (*Id.*, PTX-054 at §§ 1, 12);

- The '147 patent was assigned to ME2C on April 24, 2017. (D.I. 776 at PTX-045);

- On July 9, 2019, the PTO issued the '114 patent, entitled "Sorbents for the Oxidation and Removal of Mercury[,]" to ME2C. (D.I. 775, PTX-001.0002; *see also* D.I. 659, ex. 1 at ¶ 15)  The '114 patent claims priority to the '640 Application. (D.I. 775, PTX-001.0003; D.I. 762 at ¶ 2); and

- On March 24, 2020, the PTO issued the '517 patent, entitled "Sorbents for the Oxidation and Removal of Mercury[,]" to ME2C. (D.I. 775, PTX-003.0002; *see also* D.I. 659, ex. 1 at ¶ 18)  The '517 patent claims priority to the '640 Application. (D.I. 775, PTX-003.0003)

Further relevant facts related to resolution of the Motion will be set out as needed in Section III.

    **B.**    **Procedural Background**

Three days before trial began on February 26, 2024, the parties filed a joint letter indicating that CERT "recently discovered" that MES lacks constitutional standing and must be dismissed from the case, and that the parties were attempting to resolve the issue before trial began. (D.I. 680)  The Court ordered the parties to file a follow-up joint letter setting out their respective views on the issue, (D.I. 681); that letter was filed on February 25, 2024, and in it, the

parties summarized their positions, (D.I. 682). The next day—at the close of the first day of the trial—the Court asked counsel if there was anything else that it needed to take up before concluding for the day. (JT Tr. (D.I. 781) at 268) CERT's counsel raised the standing issue, saying "I don't know if the Court wants to take that up or not." (*Id.*) The Court indicated that because the decision as to standing was one for it to make, and because the issue had only just recently been raised by CERT, the Court's plan was to defer a decision on the issue until after trial was concluded, since it "didn't see any reason that the trial would be affected one way or the other if we have two plaintiffs or one" in the case. (*Id.* at 269) There was no objection from either side, with CERT's counsel adding that "[w]e thought it was our duty to bring it to the Court's attention, and we don't know the full ramifications of it." (*Id.*)

CERT filed the instant Motion, along with a number of other post-trial motions, on April 5, 2024. (*See* D.I. 716) The Motion was fully briefed as of May 17, 2024. (D.I. 738)

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) permits the dismissal of a complaint for "lack of subject-matter jurisdiction[.]" Fed. R. Civ. P. 12(b)(1); *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). "Standing is a constitutional requirement pursuant to Article III and it is a threshold jurisdictional issue." *Abraxis Biosci., Inc. v. Navinta LLC*, 625 F.3d 1359, 1363 (Fed. Cir. 2010) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)); *see also Warth v. Seldin*, 422 U.S. 490, 498 (1975) ("[Standing] is the threshold question in every federal case, determining the power of the court to entertain the suit."). To establish constitutional standing, a plaintiff must show that: (1) it has suffered a concrete and particularized injury in fact that is actual or imminent; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely that the injury will be redressed by a favorable decision. *Lujan*,

504 U.S. at 560-61; *Freedom from Religion Found. Inc. v. New Kensington Arnold Sch. Dist.*, 832 F.3d 469, 476 (3d Cir. 2016).

With regard to the injury-in-fact requirement, the United States Court of Appeals for the Federal Circuit has explained that "the touchstone of constitutional standing in a patent infringement suit is whether a party can establish that it has an exclusionary right in a patent that, if violated by another, would cause the party holding the exclusionary right to suffer legal injury." *Univ. of S. Fla. Rsch. Found., Inc. v. Fujifilm Med. Sys. U.S.A., Inc.*, 19 F.4th 1315, 1323 (Fed. Cir. 2021) (quoting *WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1265 (Fed. Cir. 2010)) (internal quotation marks omitted); *see also Intell. Tech LLC v. Zebra Techs. Corp.*, 101 F.4th 807, 814 (Fed. Cir. 2024) ("In general, the question for the injury-in-fact threshold is whether a party has *an* exclusionary right.") (emphasis in original).[4] "As the party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing." *Puma Biotech., Inc. v. AstraZeneca Pharms. LP*, 723 F. Supp. 3d 327, 338 (D. Del. 2024) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430-31 (2021)) (internal quotation marks omitted).[5]

**III. DISCUSSION**

---

[4] The core exclusionary right of a patent is the negative right of a "patentee" to "exclude others from making, using, offering for sale, or selling the invention throughout the United States or importing the invention into the United States[.]" 35 U.S.C. § 154(a)(1).

[5] CERT's challenge to MES's standing came about as late in the federal district court litigation process as you will see. That said, "[a] challenge to constitutional standing goes to the Court's subject matter jurisdiction and may be raised at any time." *Cirba Inc. v. VMWARE, Inc.*, C.A. No. 19-742-LPS, C.A. No. 20-272-LPS, 2020 WL 7489765, at *4 n.4 (D. Del. Dec. 21, 2020); *see also* Fed. R. Civ. P. 12(h)(3).

There are two Plaintiffs in this case, ME2C and MES. (D.I. 406 at ¶¶ 1-2) There is no dispute here that ME2C has constitutional standing. (D.I. 729 at 3-4; D.I. 738 at 1; *see also* D.I. 406 at ¶ 99) As noted above, CERT's Motion concerns the standing of the other Plaintiff, MES.

On that front, CERT argues that "MES is not alleged to hold and no[] evidence was presented that it holds *any* rights regarding the [asserted] [']114 and [']517 patents." (D.I. 716 at 2 (emphasis in original)) Accordingly, CERT contends that MES has no exclusionary rights in the remaining asserted patents nor any right to recover damages for alleged infringement beginning in July 2019 (when the '114 patent—the first of the asserted patents—issued); thus, it asserts that MES does not have constitutional standing and must be dismissed from the case for lack of subject matter jurisdiction. (*Id*. at 1-2; D.I. 738 at 1)

In response, Plaintiffs do not seriously dispute that MES does not have constitutional standing. (D.I. 729 at 1-3; D.I. 738 at 1)[6] Instead, Plaintiffs contend that because one plaintiff (ME2C) undisputably *does* have such standing, the Court has the power to hear this case, and so MES's standing "need not be considered." (D.I. 729 at 1-3) This argument invokes what is known as the "one-plaintiff rule."

Pursuant to the one-plaintiff rule, in a case with multiple plaintiffs, "the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement." *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 52 n.2 (2006); *see also, e.g.*,

---

[6] In a footnote, ME2C acknowledges the Federal Circuit's holding that a party needs to have an exclusionary right in a patent in order to have constitutional standing. But in order to "preserve the argument[,]" it asserts that in patent cases, a plaintiff's constitutional standing should rise and fall with its injury-in-fact, which does not depend on having an exclusionary right in the patent. (D.I. 729 at 1 n.1) The Court must, of course, follow the law of the Federal Circuit and will do so here.

*Horne v. Flores*, 557 U.S. 433, 445 (2009) ("Here, as in all standing inquiries, the critical question is whether *at least* one petitioner has 'alleged such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal-court jurisdiction.'") (certain emphasis added, certain emphasis in original) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)); *Nat'l Ass'n for the Advancement of Multijurisdiction Prac. v. Castille*, 799 F.3d 216, 218 n.1 (3d Cir. 2015) ("We are satisfied that at least one Appellant has standing, allowing us to proceed to the merits."); (D.I. 729 at 2-3 (citing cases)).[7] The one-plaintiff rule can be applicable when multiple plaintiffs are seeking the same relief (as is the case here). *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 439-40 (2017) ("At least one plaintiff must have standing to seek each form of relief requested in the complaint."). With it undisputed that one plaintiff (here, ME2C) has constitutional standing, Plaintiffs' argument goes, then the Court need not consider whether MES also has standing—and thus should deny CERT's Motion. (D.I. 729 at 1-3)

In the Court's view, however, things are not quite as simple as Plaintiffs suggest. Plaintiffs' briefing implies that in *any* case like this where there are multiple plaintiffs, so long as one such plaintiff has constitutional standing, that should always be the end of the inquiry, full stop—i.e., that such a case should always just proceed forward as normal, with all plaintiffs avoiding dismissal on standing grounds. (*Id*. at 3 ("CERT cites no authority for the proposition

---

[7] Some courts have noted that the one-plaintiff rule "encourages judicial efficiency by permitting a court to proceed to the merits of a case involving multiple plaintiffs seeking identical relief when it is clear that at least one plaintiff has standing." *Thiebaut v. Colo. Springs Utils.*, 455 F. App'x 795, 802 (10th Cir. 2011); *see also, e.g.*, *Cohen v. Rice*, 800 F. Supp. 999, 1005 n.3 (D. Me. 1992). On the other hand, some commentators have noted that application of the rule may have downsides, too. *See generally* Aaron-Andrew P. Bruhl, *One Good Plaintiff Is Not Enough*, 67 Duke L.J. 481 (2017).

that, even if the Court is satisfied that one party has standing, it must go evaluate whether additional plaintiffs have standing and dismiss them if they do not.")")

Yet courts have recognized that "nothing in the cases addressing [the one-plaintiff rule] suggests that a court *must* permit a plaintiff that *lacks* standing to remain in a case whenever it determines that a co-plaintiff has standing. Instead, courts retain the ability to analyze the standing of all plaintiffs in a case and to dismiss those plaintiffs that lack standing." *Thiebaut v. Colo. Springs Utils.*, 455 F. App'x 795, 802 (10th Cir. 2011) (emphasis in original); *see also Loffman v. Cal. Dep't of Educ.*, 119 F.4th 1147, 1164 (9th Cir. 2024); *M.M.V. v. Garland*, 1 F.4th 1100, 1110-11 (D.C. Cir. 2021); *Wis. State Senate v. City of Green Bay*, 719 F. Supp. 3d 869, 875-76 (E.D. Wis. 2024); (D.I. 738 at 1). As a general matter, then, it is clear that the one-plaintiff rule is a *discretionary* rule—not a mandatory rule that must be applied in all cases. *See Cirba Inc. v. VMware, Inc.*, C.A. No. 19-742-LPS, 2020 WL 2992348, at *5 (D. Del. June 3, 2020) (not mentioning the one-plaintiff rule in determining that, post-trial, one plaintiff lacked constitutional standing to sue and must be dismissed from the case).

As CERT points out, the one-plaintiff rule cases cited by Plaintiffs "generally involve challenges to broadly applicable policies or regulations . . . not claims for monetary damages between private parties." (D.I. 738 at 1 n.1)[8] Indeed, courts have suggested that the rule is

---

[8] For example, Plaintiffs' briefing cites to the following cases in asserting that the Court should apply the one-plaintiff rule to the instant case: *Horne*, 557 U.S. at 440 (plaintiffs sought a declaratory judgment holding that the defendants were violating the Equal Educational Opportunities Act of 1974); *Summers*, 555 U.S. at 490 (plaintiffs sought to prevent the United States Forest Service from enforcing certain regulations); *Massachusetts v. E.P.A.*, 549 U.S. 497, 510-14 (2007) (plaintiffs sought review of an order denying a petition for rule making issued by the United States Environmental Protection Agency); *Bowsher v. Synar*, 478 U.S. 714, 719 (1986) (plaintiffs were a Congressman and the National Treasury Employees Union, and they sought declaratory relief that a law was unconstitutional); *Dir., Off. of Workers' Comp. Programs v. Perini N. River Assocs.*, 459 U.S. 297, 298-302 (1983) (Director of Office of

better applied in cases where plaintiffs are seeking declaratory or injunctive relief—as opposed to circumstances where money damages are at issue. *See Burns v. SeaWorld Parks & Ent., Inc.*, 675 F. Supp. 3d 532, 550 (E.D. Pa. 2023) ("As a general rule, *in an injunctive case*, [a court] need not address the standing of each plaintiff if it concludes that one plaintiff has standing.") (emphasis added) (internal quotation marks and citations omitted); *see also, e.g.*, *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 680 (9th Cir. 2023) (same); *Sch. Dist. of Kan. City, Mo. v. State of Missouri*, 460 F. Supp. 421, 437 (W.D. Mo. 1978) ("In an action for monetary damages, each and every plaintiff must have standing to reap the

---

Workers' Compensation Programs sought review of a denial of an injured worker's claim for compensation under the Longshoremen's and Harbor Workers' Compensation Act); *Biden v. Nebraska*, 600 U.S. 477, 483, 488 (2023) (plaintiffs were states that moved for a preliminary injunction regarding a student loan forgiveness program); *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 256-58 (1977) (plaintiffs sought declaratory and injunctive relief regarding the denial of a rezoning plan to build homes for low- and moderate-income tenants); *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 186-87 (2008) (plaintiffs filed suit seeking a judgment that a state law requiring voters to present photo identification was invalid and to enjoin the law's enforcement); *Know Your IX v. DeVos*, Civil Action No. RDB-20-01224, 2020 WL 6150935, at *1 (D. Md. Oct. 20, 2020) (plaintiffs sought an order declaring that certain provisions of new rule promulgated by the United States Department of Education violated federal law); *Nat'l Ass'n for the Advancement of Multijurisdiction Prac.*, 799 F.3d at 218 (plaintiffs were out-of-state attorneys and a national association challenging the constitutionality of Pennsylvania's reciprocal bar admission rule) (*cited in* D.I. 729 at 1-3).

That said, the Supreme Court did cite to the one-plaintiff rule in *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433 (2017), in which the plaintiff, an individual land developer, sued a town for damages arising out of the "red tape" put in place by the town with respect to the plaintiff's efforts to develop 400 acres of land that he purchased. 581 U.S. at 435-36. A real estate development company sought to intervene, alleging that it was the equitable owner of the land at issue and seeking damages. *Id.* at 436-37. The Court explained that "[a]t least one plaintiff must have standing to seek each form of relief requested in the complaint" and held that "at the least, an intervenor of right must demonstrate Article III standing when it seeks additional relief beyond that which the plaintiff requests." *Id.* at 439. The *Town of Chester* Court ultimately vacated the lower court's ruling that the development company intervenor need not have Article III standing, because the record was not clear as to whether that intervenor was seeking relief different from the individual land developer plaintiff. *Id.* at 441-42.

benefits of judgment against the defendant. In an equity proceeding seeking declaratory and injunctive relief . . . it is customary for courts to cease their inquiry once a proper plaintiff has been identified which satisfies the 'case or controversy' requirements."). Legal commentators have noted the same. 15 Moore's Federal Practice ¶ 101.23 (3d ed. 2025) (noting that the dictate that "[o]nly one plaintiff must have standing to assert a claim" must "logically be confined to suits in which generalized equitable relief is sought"); Aaron-Andrew P. Bruhl, *One Good Plaintiff Is Not Enough*, 67 Duke L.J. 481, 497-98 (2017) (explaining that "some courts and commentators have distinguished between injunctive and declaratory relief on the one hand and monetary relief on the other, restricting the one-plaintiff rule to the former" and that "even when courts do not expressly state such a remedy-based limitation, the cases in which the one-plaintiff rule is invoked are usually cases involving injunctive or declaratory relief, such as cases that seek to enjoin an allegedly illegal government policy or action").[9]

      In the end, the Court is not convinced that application of the one-plaintiff rule is warranted here. This is a case between private parties concerning patent infringement claims for monetary damages. The non-final judgments at issue were entered "in favor of [both] Plaintiffs and against CERT for damages" in a substantial amount—i.e., exceeding $57 million dollars. (D.I. 697-708 at ¶ 5) But, as explained above, it is undisputed that one of those Plaintiffs—MES—does not have constitutional standing. It seems wrong for the Court to grant such a substantial judgement to a Plaintiff that has not actually been injured in fact by CERT. For one

---

[9] The Court notes that the Federal Circuit has cited generally to the one-plaintiff rule in a patent infringement case involving private parties—a case that involved only one plaintiff (and thus did not require an assessment of the one-plaintiff rule). *Intell. Tech LLC*, 101 F.4th at 814 (citing *Town of Chester*, 581 U.S. at 439).

thing, doing so might suggest to third parties that the Court thinks such a plaintiff could or should be able to collect on that judgment (when in fact, it does not appear that it would be able to do so).  Indeed, it has been said that "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." *TransUnion LLC*, 594 U.S. at 431 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016) (Roberts, C.J., concurring)).  The Court therefore agrees with CERT that MES must be dismissed from the case.  *See Puma*, 723 F. Supp. 3d at 340 (dismissing from a patent infringement case a co-plaintiff ("Puma") that did not hold any exclusionary rights with respect to infringing conduct, in light of the Supreme Court's admonition that "Article III does not give federal courts the power to order relief to any uninjured plaintiff[,]" and in doing so, rejecting Puma's argument that it can proceed as a plaintiff regardless of whether it has Article III standing because its co-plaintiff has standing) (internal quotation marks and citation omitted).

      Relatedly, CERT also argues that since MES lacks standing and must be dismissed, MES is not entitled to a judgment against CERT—and so the non-final judgments must be altered and amended pursuant to Federal Rule of Civil Procedure 59(e), in order to remove MES.  (D.I. 716 at 4; D.I. 738 at 2)  "A proper motion to alter or amend judgment must rely on one of three major grounds:  (1) an intervening change in controlling law; (2) the availability of new evidence not available previously; or (3) the need to correct clear error of law or prevent manifest injustice." *Qorvo, Inc. v. Akoustis Techs., Inc.*, Case No. 1:21-cv-01417-JPM, 2024 WL 5334785, at *2 (D. Del. Oct. 15, 2024) (internal quotation marks and citation omitted).  While CERT does not cite to this standard, its argument appears to be based on the third prong.  CERT contends that it would be prejudicial to allow MES to remain in the action and potentially seek to obtain a money

12

judgment against CERT with no standing, as that would create "significant financial risk for CERT." (D.I. 738 at 2)

The Court agrees. Since MES lacks standing, the judgments shall be altered and amended to remove MES.[10]

## IV.   CONCLUSION

For the foregoing reasons, the Court finds that CERT's Motion should be GRANTED. An appropriate Order will issue.

---

[10] Plaintiffs argue that dismissal and alteration of the judgments could present significant prejudice to ME2C because "[a]fter MES is dismissed, CERT could argue that inclusion of MES was required and ME2C, standing alone, does not have constitutional standing." (D.I. 729 at 3-4) Plaintiffs then point to CERT's assertion in its briefing that while the Closing Agreement states that "the Company"—defined collectively as ME2C and MES—has the option to acquire the patent rights and has elected to exercise the option, the Closing Agreement later provides that the assignment of patent rights shall be delivered to ME2C. (*Id.* at 4 (citing D.I. 716 at 3)) Plaintiffs state that although they don't believe there is any ambiguity in the Agreement as to who owns the patent rights (i.e., ME2C does), to the extent that the Court or CERT were to disagree, then there is at least a possibility that MES may be a necessary party; Plaintiffs suggest that if MES were to be dismissed now and "and the Court were later to conclude inclusion of MES was necessary for constitutional standing, Plaintiffs would be severely prejudiced by the dismissal of MES." (*Id.*) CERT retorts that this argument makes no sense, as it is not challenging ME2C's standing; as such, CERT explains that ME2C will not suffer any prejudice by the Court's application of standing principles to MES. (D.I. 738 at 2)

CERT has flatly stated that "MES is not alleged to hold and no[] evidence was presented that it holds *any* rights regarding the [']114 and [']517 patents." (D.I. 716 at 2 (emphasis in original)) CERT's briefing only pointed to the Closing Agreement to support that argument—i.e., to show that it is ME2C that is the sole assignee of the asserted patents. (*Id.* at 3) On this record, the Court does not understand how it would or could later conclude that MES was necessary for constitutional standing. Thus, this argument of Plaintiffs' is not persuasive.