IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MIDWEST ENERGY EMISSIONS CORP. and MES INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 19-1334-CJB |
| ARTHUR J. GALLAGHER & CO., et al., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER

The Court[1] presided over a five-day jury trial in this patent infringement case from February 26, 2024 through March 1, 2024. (D.I. 781-85) At trial, Plaintiff Midwest Energy Emissions Corp. ("Midwest Energy") and then-Plaintiff MES Inc. ("MES" and collectively with Midwest Energy, "Plaintiffs" or "ME2C")[2] alleged that Defendants Bascobert (A) Holdings, LLC; Buffington Partners, LLC; Cottbus Associates, LLC; Larkwood Energy, LLC; Marquis Industrial Company, LLC; Rutledge Products, LLC; Senescence Energy Products, LLC and Springhill Resources, LLC (the "CERT RC Defendants"); CERT Operations II LLC; CERT Operations IV LLC; CERT Operations V LLC; and CERT Operations RCB LLC (the "CERT Operations Companies Defendants" and collectively with the CERT RC Defendants, "CERT" or

---

[1] The parties have jointly consented to the Court's jurisdiction to conduct all proceedings in this case, including trial, the entry of final judgment and all post-trial proceedings. (D.I. 398)

[2] As the parties are aware, subsequent to trial, the Court granted CERT's motion to dismiss Plaintiff MES pursuant to Federal Rule of Civil Procedure 12(b)(1). (D.I. 788; D.I. 789) Because MES participated in the case up through and including the filing of the briefing on the instant Motion, and simply to avoid confusion, the Court will herein refer to "Plaintiffs" or to "Plaintiffs' position" on the relevant issues, even though there is currently only one Plaintiff (i.e., Midwest Energy) in the case.

the "CERT Defendants") indirectly and willfully infringed claims 25 and 26 of United States Patent No. 10,343,114 (the "'114 patent") and claims 1 and 2 of United States Patent No. 10,596,517 (the "'517 patent" and collectively with the '114 patent, the "asserted patents"). (D.I. 659, ex. 2 at ¶¶ 1-6; *id.*, ex. 3 at ¶ 1) At the end of trial, the jury returned a verdict on all counts and an award of damages in favor of Plaintiffs. (D.I. 692) Pending before the Court is Plaintiffs' Post-Trial Motion for Enhancement and Pre- and Post-judgment Interest (the "Motion"). (D.I. 763)[3] For the following reasons, the Court GRANTS-IN-PART and DENIES-IN-PART the Motion in the manner set out below.

I. BACKGROUND

A. Factual Background

This patent infringement case relates to mercury control at coal-fired power plants ("power plants"). The Court has set out the background of this case many times, including in its recent opinion regarding CERT's motion for judgment as a matter of law ("JMOL decision"); it incorporates by reference the JMOL decision. (D.I. 791) The Court here writes primarily for the parties, and so any facts relevant to this Memorandum Opinion will be discussed in Section II below.

B. Procedural History

---

[3] The Motion also requested that the Court find that this is an exceptional case and award attorney's fees pursuant to 35 U.S.C. § 285 (the "request for attorney's fees"). (D.I. 763 at 16-19) The Court ordered that briefing on the request for attorney's fees be stayed until after Defendants' post-trial motions were resolved. (D.I. 766) The Court now DENIES that portion of the Motion without prejudice to renew. It also ORDERS that any subsequent request for attorney's fees shall be filed no later than 21 days following issuance of a mandate after any appeal, or, if no party files an appeal, 21 days after the expiration of the time to file a notice of appeal.

2

Following trial, the Court entered non-final judgments on the verdict against the CERT Defendants. (D.I. 697-708) The Court has also now resolved numerous additional post-trial motions, including CERT's motion for judgment as a matter of law and its motion for a new trial. (D.I. 791; D.I. 793)[4] Plaintiffs filed the instant Motion on July 26, 2024, and briefing concluded on August 27, 2024. (D.I. 763; D.I. 771)

## II. DISCUSSION

With the Motion, Plaintiffs move for enhancement of the jury's verdict pursuant to 35 U.S.C. § 284 as well as for pre- and post- judgment interest. (D.I. 763 at 1) The Court takes these issues up in turn below.

### A. Enhanced Damages

Plaintiffs first request that the Court award enhanced damages for CERT's willful infringement under 35 U.S.C. § 284 ("Section 284"). Section 284 provides the Court with discretion to increase Plaintiffs' damages up to three times the amount that the jury awarded. 35 U.S.C. § 284; *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103 (2016). Enhanced damages are "designed as a 'punitive' or 'vindictive' sanction" that is "generally reserved for egregious cases of culpable behavior." *Halo Elecs., Inc.*, 579 U.S. at 103-04; *see also Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1382 (Fed. Cir. 2017). While a jury's finding of willful infringement is a prerequisite to obtaining enhanced damages, it is not by itself sufficient. *Purewick Corp. v. Sage Prods., LLC*, 666 F. Supp. 3d 419, 446 (D. Del.

---

[4] CERT had also asserted that Plaintiffs' infringement claims are barred because CERT is entitled to an implied license to the asserted patents. (D.I. 515 at 112, at ¶ 16; D.I. 659, ex. 3 at 48 at ¶ 3(e)-(f)) On May 30, 2024, the Court held a bench trial regarding the implied license defense. (D.I. 779) The Court subsequently concluded that CERT failed to prove by a preponderance of the evidence that it has an implied license to the asserted patents. (D.I. 786)

3

2023); *see also Presidio Components, Inc.*, 875 F.3d at 1382. Instead, the Court must consider the "overall circumstances of the case" in determining whether to award enhanced damages. *Presidio Components, Inc.*, 875 F.3d at 1382.

In deciding whether enhanced damages are appropriate, courts may and often do (though they are not required to) consider the "*Read* factors" as part of their analysis. *Id.* (citing *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992)). The *Read* factors include: (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) the defendant's size and financial condition; (5) the closeness of the case; (6) the duration of the defendant's misconduct; (7) remedial action by the defendant; (8) the defendant's motivation for harm; and (9) whether the defendant attempted to conceal its misconduct. *Read Corp*, 970 F.2d at 827.[5]

Plaintiffs argue that most of the *Read* factors support an award of significant enhanced damages. CERT retorts that these factors show that enhanced damages are not warranted here. The Court sets out its analysis of the *Read* factors below.

1. **Analysis of the *Read* Factors**

    a. **Deliberate Copying (Factor 1)**

Plaintiffs do not dispute that there is no evidence that CERT deliberately copied Plaintiffs' technology. (D.I. 763 at 13; *see also* D.I. 769 at 9) Thus, *Read* factor one weighs

---

[5] The party seeking enhanced damages has the burden of proving by a preponderance of the evidence that such damages are warranted. *See Halo Elecs., Inc.*, 579 U.S. at 107; *VB Assets, LLC v. Amazon.com Servs. LLC*, 751 F. Supp. 3d 391, 413 (D. Del. 2024).

against enhancing damages. *See, e.g.*, *VB Assets, LLC v. Amazon.com Servs. LLC*, 751 F. Supp. 3d 391, 413-14 (D. Del. 2024) (finding this factor to weigh against enhancing damages, where there was a lack of evidence that the defendant deliberately copied the plaintiff's technology); *Vectura Ltd. v. GlaxoSmithKline LLC*, Civil Action No. 16-638-RGA, 2019 WL 4346502, at *3 (D. Del. Sept. 12, 2019) (same).[6]

### b. Good Faith Belief (Factor 2)

*Read* factor two asks whether CERT formed a good-faith belief that the patents-in-suit were invalid or that they were not infringed. *Read Corp*, 970 F.2d at 827. Plaintiffs assert that this factor weighs in favor of enhancement because the jury found willful infringement, and the jury's finding in that regard means that it rejected CERT's defense that it had a good faith belief in non-infringement and that it did not intend to cause infringement. (D.I. 763 at 1-2; D.I. 771 at 5) For its part, CERT acknowledges that the jury disagreed that it had a good faith and reasonable belief in non-infringement, but asserts that the Court could nevertheless find that this factor weighs against enhancement because "there is nothing in the verdict nor in other evidence before the Court that shows CERT held those beliefs in bad faith." (D.I. 769 at 9-10)

As the Court explained in the JMOL decision, there was substantial evidence in the record to permit the jury to reject CERT's mistake of law defense, and there was sufficient evidence to support the jury's verdict of willful infringement. (D.I. 791 at 32-33, 40-44) In

---

[6] Plaintiffs suggest that this factor should be neutral because CERT failed to design around Plaintiffs' patents after learning about them. (D.I. 763 at 13) But facts relating to a design around (or lack thereof) would seem to be covered by *Read* factor seven (i.e., the defendant's remedial action). And while Plaintiffs cite to *Bos. Sci. Corp. v. Cordis Corp.*, 838 F. Supp. 2d 259 (D. Del. 2012) in support of their assertion that this factor should be neutral, the *Bos. Sci. Corp.* Court did not explain why a finding of *lack* of copying would render this factor neutral (instead of weighing against enhancement). 838 F. Supp. 2d at 279, 281. So the Court does not find the opinion persuasive in that regard.

other words, the jury's well-supported verdict was consistent with the conclusion that CERT did not have the requisite good faith belief. Thus, *Read* factor two weighs in favor of enhanced damages. *See Vectura Ltd.*, 2019 WL 4346502, at *4 (finding that this factor weighed in favor of enhancement where "in view of the willful infringement verdict, [d]efendants did not have a good-faith belief of noninfringement"); *Green Mountain Glass LLC v. Saint-Gobain Containers, Inc.*, 300 F. Supp. 3d 610, 628-29 (D. Del. 2018) (same); *see also Sunoco Partners Mktg. & Terminals L.P. v. Powder Springs Logistics, LLC*, Civil Action No. 17-1390-RGA, 2022 WL 3973499, at *2 (D. Del. Aug. 31, 2022) (finding that this factor weighed in favor of enhancement where "[i]n ruling on [d]efendants' motion for JMOL of no willful infringement, [the Court] found that there was substantial evidence supporting the jury's presumed finding that [d]efendants had no reasonable basis of non-infringement").

### c. Litigation Conduct and Closeness of the Case (Factors 3 and 5)

Plaintiffs argue that *Read* factors three and five strongly support enhanced damages. According to Plaintiffs, this is because CERT asserted numerous problematic defenses, proposed claim construction positions that were rejected, lost 10 dispositive motions and attempts at reconsideration, abandoned its non-infringement, invalidity and damages experts at trial and attempted to inflame the jury with irrelevant and misleading arguments during its closing argument. (D.I. 763 at 3-10; D.I. 771 at 5-7) Plaintiffs also rely on the fact that the jury returned a verdict against CERT on all issues within approximately three hours. (D.I. 763 at 3) CERT, for its part, points out that Plaintiffs did not accuse CERT of any litigation misconduct during the lawsuit, and asserts that its defenses were neither frivolous nor meritless. (D.I. 769 at 10-17)

In the Court's view, these factors do not weigh in favor of enhancement. The Court will address the two factors in turn.

*Read* factor three, which relates to litigation misconduct, generally refers to "bringing vexatious or unjustified suits, discovery abuses, failure to obey orders of the court, or acts that unnecessarily prolong litigation." *VB Assets, LLC*, 751 F. Supp. 3d at 414 (quoting *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 859 (Fed. Cir. 2010)). No such conduct occurred here. (D.I. 769 at 10) This was a hard-fought litigation, and the behavior that Plaintiffs highlight is in line with that reality.[7] CERT certainly made many, many legal and factual challenges throughout the case. Some of those challenges had real merit, including some that CERT won[8] and even a few that it lost. Many others had less merit. But there is no indication that CERT made litigation choices for the "primary purpose of unnecessarily increasing the burden of this litigation" on Plaintiffs. *VB Assets, LLC*, 751 F. Supp. 3d at 414 (citation omitted). And while impassioned (and sometimes a little *too* impassioned), CERT's closing argument—to which Plaintiffs did not object contemporaneously—was not so egregious that it amounted to litigation misconduct. Thus, this factor is neutral at best for Plaintiffs. *See id.* at 414-15; *10X Genomics, Inc. v. Bruker Spatial Biology, Inc.*, Case No. 21 C 653, 2024 WL 5201115, at *17-18 (D. Del. Dec. 23, 2024) ("routine litigation tactic[s]" including "rehashing losing positions" did not amount to "egregious" litigation misconduct that would weigh in favor of enhancement); *Purewick Corp.*, 666 F. Supp. 3d at 447 ("[C]onsidering [d]efendant's litigation conduct as [a]

---

[7] Although Plaintiffs note that CERT ended up dropping various defenses at trial, Plaintiffs, for their part, also dropped three patents that they had previously asserted, and did so not long before trial. (*See* D.I. 791 at 4 n.4) To some degree, a party's decision to narrow or drop a claim or defense at or near trial in a complicated patent case can be seen (absent other indicia of bad faith or unfair dealing) as a necessary reality—one that can help streamline the case and assist a lay jury in better processing at trial what will then be a smaller amount of still challenging material. (D.I. 769 at 12)

[8] *See, e.g., infra* n.11.

7

whole, the Court is unpersuaded that it rose to the level of 'malicious' behavior required to support an award of enhanced damages. This case was fiercely fought, with both sides' conduct contributing to the occasionally heated nature of the proceedings. Therefore, this factor is, at most, neutral.").

The Court next turns to the fifth factor, relating to the closeness of the case. As CERT points out, courts do not automatically find that this factor weighs in favor of a plaintiff who won a jury verdict; instead, courts look to whether the defendant's theories throughout the lawsuit were "frivolous or unreasonable[,]" *Vectura Ltd.*, 2019 WL 4346502, at *6, or "particularly weak[,]" *MHL Custom, Inc. v. Waydoo USA, Inc.*, Civil Action No. 21-0091-RGA, 2023 WL 5805889, at *9 (D. Del. Sept. 7, 2023); *see also Tristrata Tech., Inc. v. ICN Pharms., Inc.*, 314 F. Supp. 2d 356, 361 (D. Del. 2004); *cf. VB Assets, LLC*, 751 F. Supp. 3d at 415. In the Court's view, the case was a bit closer than how Plaintiffs view it.

Now, to be sure, as Plaintiffs lay out, CERT lost the large majority of its summary judgment and *Daubert* motions. And it is also true (as the Court has articulated in resolving certain post-trial motions) that at trial, there certainly was a strong record in support of Plaintiffs' position on infringement and damages.[9] No doubt, this was due in part to the nature of the underlying relevant facts and in part due to choices made by counsel about how to present their

---

[9] While Plaintiffs also highlight that the jury needed only three hours to render a verdict fully in their favor (including the time it took to fill out a nine-page verdict form), (D.I. 763 at 3), that is not a fact that our Court typically takes into consideration in assessing the closeness of the case, *VB Assets, LLC*, 751 F. Supp. 3d at 415 (citing cases). And so the Court does not consider it here.

case at trial.[10] The jury appears to have concurred that Plaintiffs' trial evidence was strong, as demonstrated by its verdict.

But with all that said, there were various stages to this case—including pre-trial stages at which the Court had to address certain challenging legal and factual issues. *See, e.g.*, *Midwest Energy Emissions Corp. v. Arthur J. Gallagher & Co.*, Civil Action No. 19-1334-CJB, 2023 WL 172226, at *1 (D. Del. Jan. 12, 2023) ("Pending before the Court in this patent infringement action is another in a long line of difficult pleading-related disputes between the parties: Defendants' motion to dismiss the induced infringement claims against them[.]"); (D.I. 783 at 868-69 (the Court noting during trial in addressing certain jury instructions that "there's a lot of, I think, difficult issues in the case. The jury will have to go through the technology and the law. I don't know that this issue [relating to the relevance of unaccused coal], although I admit it's a challenging one, is necessarily more challenging than other difficult issues the jury will have to address and parse through"); *see also* D.I. 784 at 1166 (same)). Some of those decisions impacted what the scope of the case looked like when it arrived at trial. For reasons the Court has previously set out in significant length on the record, it believes that it made the right calls as to these difficult issues—a number of which went against CERT. But that does not mean that CERT's overall approach to the case was frivolous or unreasonable.[11]

---

[10] This reality included the fact (as Plaintiffs note) that a key non-infringement defense of CERT—i.e., that it *did not know* that its refined coal would be used with activated carbon at the power plants at issue, and so did not intend to cause infringement—would be definitively refuted by the evidence presented at trial. (D.I. 763 at 4-5) And the fact that Plaintiffs' damages expert's testimony went unrebutted by any opposing expert testimony on damages. (*Id*. at 6-7)

[11] CERT certainly prevailed on some pre-trial disputes in the case. For example, the Court granted-in-part CERT's *Daubert* motion relating to Plaintiffs' infringement expert, (D.I. 613 at 12-14), and it also granted CERT's motion for summary judgment as to Plaintiffs' claims

For these reasons, the Court finds this factor to be neutral. *See Wirtgen Am., Inc. v. Caterpillar, Inc.*, Case No. 1:17-cv-00770-JDW, 2024 WL 4216057, at *19 (D. Del. Sept. 17, 2024) (concluding the same, where the defendant "has maintained defensible positions during the case").

### d. Defendant's Size and Financial Condition (Factor 4)

*Read* factor four relates to the defendant/infringer's size and financial condition. What is this factor getting at? The factor seems to suggest, on the one hand, that if the jury's damages award is not likely to provide a sufficient disincentive to infringement (in light of the defendant's size and financial condition), then enhancement of damages may more likely be appropriate. *See i4i Ltd. P'ship*, 598 F.3d at 858-59; *GeigTech E. Bay LLC v. Lutron Elecs. Co.*, 18 Civ. 05290 (CM), 2025 WL 1576180, at *7 (S.D.N.Y. June 4, 2025). On the other hand, if enhancing damages may cause undue harm to the defendant's viability as a going concern, or to its non-infringing businesses, then such enhancement may be less appropriate. *Read Corp.*, 970 F.2d at 827; *VB Assets, LLC*, 751 F. Supp. 3d at 415 (citing cases); *MHL Custom, Inc.*, 2023 WL 5805889, at *9.

Plaintiffs contend that the CERT Defendants "are owned by large, multi-national corporations" (i.e., affiliates of JP Morgan, Kiewit Corporation and Mylan N.V.) and that these corporations "used [the CERT Defendants] to generate several hundreds of millions of dollars in tax credits." (D.I. 763 at 10) In light of this, and the fact that the individual partners in the

---

for contributory infringement against the CERT Operations Companies Defendants, (D.I. 593 at 6). Earlier in the case, the Court granted Defendants' motion to dismiss the original Complaint, (D.I. 110), and granted-in-part Defendants' motion to dismiss the First and Second Amended Complaints, (D.I. 279 at 41-42). And post-trial, the Court also granted CERT's motion to dismiss then-Plaintiff MES. (D.I. 788)

CERT Defendants (like CERT trial representative Jeff Green) earned large sums of money via infringement, Plaintiffs assert that CERT had a "powerful motive to infringe[;]" they argue that this factor must therefore weigh in favor of enhancement, so as to "counter-balance that motive." (*Id*. at 11; *see also* D.I. 771 at 7-8); *see also Bos. Sci. Corp. v. Cordis Corp.*, 838 F. Supp. 2d 259, 280 (D. Del. 2012) ("On factor 4, BSC argues, and Cordis does not dispute, that Cordis is a wholly-owned subsidiary of Johnson & Johnson with over $60 billion in annual sales."), *aff'd*, 497 F. App'x 69 (Fed. Cir. 2013). CERT retorts that the above-referenced corporations are merely investors in some of the Defendants, not parent companies, and that investor status is not considered under this factor. (D.I. 769 at 17)

Plaintiffs did not sue CERT's investors, they sued CERT. And Plaintiffs offer no evidence regarding *the CERT Defendants'* size and financial condition. *See Purewick Corp.*, 666 F. Supp. 3d at 448 (finding this factor to weigh against enhancement, where the plaintiff offered no information regarding the defendant's financial condition, and instead focused on the defendant's parent company, which the plaintiff did not sue); *see also Nox Med. Ehf v. Natus Neurology Inc.*, Civil Action No. 15-709-RGA, 2018 WL 4062626, at *5 (D. Del. Aug. 27, 2018) (same), *reconsidered on other grounds*, 2018 WL 6427686 (D. Del. Dec. 7, 2018).[12] And even assuming that investor status could have some relevance to this factor, the Court has minimal evidence before it to understand exactly how the CERT-investor relationship worked—

---

[12] The Court notes that even in circumstances where a defendant is large and wealthy, that does not necessarily always mean that this factor weighs in favor of enhancement. *See Siemens Mobility, Inc. v. Westinghouse Air Brake Techs. Corp.*, C.A. No. 16-284-LPS, 2019 WL 3240521, at *9 (D. Del. July 18, 2019) ("Westinghouse is a large, financially successful company. But the fact that Westinghouse could afford to pay an additional million dollars or so in damages does not provide a reason, under the circumstances here, to order it to do so."); *see also VB Assets, LLC*, 751 F. Supp. 3d at 415.

or how that interaction should impact this factor. (*Cf.* D.I. 624) Under these circumstances, the Court finds this factor to weigh against enhanced damages.

### e. Duration of the Defendant's Misconduct (Factor 6) and Remedial Action (Factor 7)

The sixth *Read* factor—duration of the defendant's misconduct—weighs in favor of enhancement. The infringement lasted approximately two and a half years, from July 2019 through December 2021.[13] (*See* D.I. 769 at 18) Courts considering this factor have found that infringement lasting for about this span of time is significant enough to support enhancement of damages. *See Nox Med. Ehf v. Natus Neurology Inc.*, Civil Action No. 1:15-cv-00709-RGA, 2018 WL 6427686, at *4 (D. Del. Dec. 7, 2018) (finding that this factor weighed in favor of enhancement where the defendant willfully infringed the patent for three years, which is "an objectively lengthy time to knowingly infringe a valid patent"); *Vectura Ltd.*, 2019 WL 4346502, at *4 (same, when knowing infringement occurred for nearly three years); *see also Saint-Gobain Autover USA, Inc. v. Xinyi Glass N. Am., Inc.*, 707 F. Supp. 2d 737, 754 (N.D. Ohio 2010) ("[T]he record shows that Xinyi continued to infringe for more than two years after learning of Saint Gobain's patents.[] The Court finds that this factor favors enhancement.").

As for the seventh *Read* factor, which considers the defendant/infringer's remedial actions, this factor also weighs in favor of awarding enhanced damages. The record does not reflect any remedial actions taken by CERT. To the contrary, after CERT learned of ME2C's patents from this lawsuit in 2019, CERT continued to engage in the same conduct accused of infringing until the Section 45 tax credit program ended in 2021, because CERT asserted that it

---

[13] The infringement stopped when the Section 45 tax credit program ended on December 31, 2021. (D.I. 659, ex. 1 at ¶ 32; D.I. 779 at 58; D.I. 783 at 710)

believed it did not infringe.[14] (*See* D.I. 779 at 121-22); *see also Energy Transp. Grp., Inc. v. Sonic Innovations, Inc.*, C.A. No. 05-422 (GMS), 2011 WL 2222066, at *16 (D. Del. June 7, 2011) (finding that "the fact that Widex continued to sell the accused products after it was sued without any remedial action weigh[s] in favor of enhanced damages"). And again, the jury rejected CERT's assertion (i.e., that CERT did not knowingly infringe the patents during this timeframe) in this regard.

### f. Defendant's Motivation for Harm (Factor 8)

The eighth *Read* factor is the defendant's motivation for the harm. This factor considers whether there is evidence of any direct motivation on the part of the defendant to harm the patentee, as opposed to advancing its own interests. *VB Assets, LLC*, 751 F. Supp. 3d at 416. Plaintiffs assert that even if CERT was not targeting Plaintiffs, it should have known that its infringement was damaging Plaintiffs' business (and that this factor is, therefore, at least neutral). (D.I. 763 at 14)

But Plaintiffs' Chief Executive Officer acknowledged that it did not "make any sense" to consider Plaintiffs and CERT to be competitors, because the parties were not in the same realm of the refined coal business. (D.I. 782 at 519-20); *cf. GeigTech E. Bay LLC*, 2025 WL 1576180, at *8 ("When the infringer is a direct competitor, this factor generally weighs in favor of enhanced damages.") (internal quotation marks and citation omitted). And elsewhere, Plaintiffs

---

[14] CERT argues that this factor should weigh against enhancement because the specific conduct that Plaintiffs accused CERT of in the First Amended Complaint was "post-emission control testing" using activated carbon—allegations that Plaintiffs later dropped. (D.I. 769 at 18-19) But as the Court has explained in the JMOL decision, that was not the only conduct of CERT's that Plaintiffs then alleged to be relevant to CERT's knowledge of infringement. (D.I. 791 at 43-44; *see also* D.I. 771 at 8-9) And so this argument is not persuasive.

argue that CERT had significant internal financial incentives to provide refined coal to power plants—and that it was those incentives (not some desire to cripple Plaintiffs' business specifically) that motivated infringement. (*See, e.g.*, D.I. 728 at 9-10) With the evidence showing that CERT's motivation was its own financial gain, instead of a desire to harm Plaintiffs, this factor weighs against enhancement. *VB Assets, LLC*, 751 F. Supp. 2d at 416 (citing cases); *Sunoco Partners Mktg. & Terminals L.P.*, 2022 WL 3973499, at *2.

### g. Whether the Misconduct was Concealed (Factor 9)

*Read* factor nine considers whether the defendant concealed misconduct. Plaintiffs have a couple of arguments as to why this factor supports enhancement.

First, Plaintiffs assert that this is so because CERT moved to dismiss the original Complaint (in which Plaintiffs sued not only known CERT entities, but also additional "John Doe" defendants that Plaintiffs intended to replace with named refined coal companies that operated at power plants using activated carbon, once Plaintiffs figured out those entities' names), even though CERT knew exactly which CERT entities sold refined coal to power plants using activated carbon. (D.I. 763 at 12-13) But as CERT retorts, the Court granted that motion to dismiss. And so it would be hard to say that CERT's successful act of *filing the motion to dismiss itself* should be held against it, or would amount to the "type of concealment of misconduct that would weigh in favor of enhancement." (D.I. 769 at 19)

Second, Plaintiffs point out that despite knowing at the time exactly which CERT entities sold refined coal to power plants using activated carbon, (D.I. 784 at 883-85), CERT denied that fact in responsive pleadings, (*id.* at 1099-1102; D.I. 345 at 51, at ¶ 214). (D.I. 763 at 12-13) Plaintiffs seem to have a point there, as it appears that CERT then had the requisite knowledge. And CERT does not directly to respond to this particular argument. (D.I. 769 at 19-20)

14

Third, Plaintiffs assert (without citation to the record) that CERT attempted to argue that Plaintiffs' delay in adding these LLCs to the case meant that Plaintiffs could not collect damages from them for the time period before the LLCs were in fact added as Defendants. (D.I. 763 at 13) But even if CERT did make this argument, as even Plaintiffs acknowledge, it did not ultimately impact damages in any way. (*Id.*)

Otherwise, there is no evidence that CERT physically attempted to hide or cover up its refined coal operations at the specific power plants where CERT was located. (D.I. 769 at 19)[15] This is a helpful fact for CERT. *See VB Assets, LLC*, 751 F. Supp. 3d at 416 (concluding that this factor did not support enhancement where "[n]o evidence indicates [d]efendant attempted to hide its products or sales"); *MHL Custom, Inc.*, 2023 WL 5805889, at *10 (finding that this factor weighs against enhanced damages where the defendant was operating in the open).

In the end, on the one hand, CERT denied allegations that it knowingly provided coal to plants that used activated carbon (even though, pursuant to CERT's representative's testimony at trial, CERT clearly then knew that it was doing so). But on the other hand, there is no evidence that CERT physically attempted to hide its operations, or that it held back material discovery documents regarding its actions. In balancing these realities, the Court finds that this factor to be about neutral. *Cf. Milwaukee Elec. Tool Corp. v. Snap-On Inc.*, 288 F. Supp. 3d 872, 904 (E.D. Wis. 2017) ("In the Court's view, this factor is limited to instances of overt misconduct [such as

---

[15] In the Court's view, the fact that there is security located at the plants where CERT's refined coal operations were based, (*see* D.I. 771 at 9), does not call for a different conclusion. There is no evidence that CERT hired such security to conceal its infringing acts at these plants. And it makes a lot of sense that a power plant would have security-related restrictions on access, so as to help ensure that the facility is run safely.

a pre-litigation cover-up or failure to disclose material information in discovery], which may not exist in every case.").

### 2. Conclusion

Having now assessed each of the *Read* factors, the Court concludes that an award of enhanced damages is not appropriate here. Only three factors favor enhancement—the infringer's good faith belief (factor two), the duration of the misconduct (factor six), and remedial action by CERT (factor seven). Yet the evidence in support of even these factors still does not demonstrate "egregious" misconduct by CERT. And so enhanced damages are not warranted. *See, e.g.*, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 08-309-LPS, 2019 WL 3290369, at *10 (D. Del. July 22, 2019) (denying an award of enhanced damages where only three *Read* factors favored enhancement, and where the evidence supporting those three factors was not itself overwhelming); *see also VB Assets, LLC*, 751 F. Supp. 3d at 416 ("Although several factors may support enhancement, on balance, the factors do not support the enhancement requested. More significantly, having overseen this case for its entirety, the Court does not view the particular circumstances of this case as involving the type of egregious misconduct recognized by the Supreme Court in *Halo*."); *Sunoco Partners Mktg. & Terminals L.P.*, 2022 WL 3973499, at *2-3 (denying plaintiff's motion for enhanced damages despite the jury's finding of willful infringement, where only *Read* factors two, four and six weighed in favor of enhancement, and where the plaintiff's arguments did not persuade the court that the facts of the case were "egregious"). The Court thus DENIES this request.

## B. Interest

Plaintiffs also assert that the Court should award pre- and post-judgement interest.

### 1. Pre-judgment Interest

The Patent Act provides for an award of interest upon a finding of infringement. 35 U.S.C. § 284; *see also Kaufman v. Microsoft Corp.*, 34 F.4th 1360, 1373-74 (Fed. Cir. 2022) ("Congress intended that prejudgment interest should ordinarily be awarded where necessary to afford the plaintiff full compensation for the infringement.") (internal quotation marks and citation omitted). Accordingly, an "award of pre-judgment interest is the rule, not the exception." *Energy Transp. Grp., Inc. v. William Demant Holding A/S*, 697 F.3d 1342, 1358 (Fed. Cir. 2012) (internal quotation marks and citation omitted). That said, the Supreme Court of the United States has explained that "it may be appropriate to limit prejudgment interest, or perhaps even deny it altogether, where the patent owner has been responsible for undue delay in prosecuting the lawsuit." *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657 (1983).

In federal question cases such as this one, "the rate of prejudgment interest is committed to the discretion of the district court." *Sun Ship, Inc. v. Matson Navigation Co.*, 785 F.2d 59, 63 (3d Cir. 1986). The "most common practice" in the District of Delaware is to calculate pre-judgment interest at the prime rate, and to compound pre-judgment interest on a quarterly basis. *ArcherDX, LLC v. Qiagen Scis., LLC*, C.A. No. 18-1019 (MN), 2022 WL 4597877, at *18 (D. Del. Sept. 30, 2022) (citing cases), *rev'd and remanded on other grounds*, *Lab'y Corp. of Am. Holdings v. Qiagen Scis., LLC*, 148 F.4th 1350 (Fed. Cir. 2025); *see also Galderma Lab'ys, L.P. v. Medinter US LLC*, Case No. 1:18-cv-01892-JDW-CJB, 2024 WL 456790, at *1 (D. Del. Feb. 5, 2024).

Plaintiffs request that the Court follow these rules and common practices here, and award pre-judgment interest at the prime rate, compounded quarterly, from the date of first infringement through the date of the Court's final judgment. (D.I. 763 at 19-20) CERT, for its part, argues that Plaintiffs are not entitled to pre-judgment interest because of dilatory conduct.

17

(D.I. 769 at 20) On that front, CERT (briefly) argues that: (1) in 2012, Plaintiffs claimed to be the licensees of a patent previously asserted in the case; and (2) Plaintiffs waited at least five years after learning of infringement to file suit. (*Id.*)

The Court is not persuaded. The patents asserted at trial and found to be infringed did not issue until 2019 and 2020, respectively, and Plaintiffs brought this case in 2019. (D.I. 751 at PTX 001.0002, PTX 003.0002) Moreover, "to show that delay was undue, a defendant must, at least generally, show that it was prejudiced." *Kaufman*, 34 F.4th at 1375; *VB Assets, LLC*, 751 F. Supp. 3d at 418. But CERT has not argued that it suffered any prejudice as result of any alleged undue delay by Plaintiffs in asserting their infringement claims. Thus, the Court finds that Plaintiffs are entitled to pre-judgment interest. *MHL Custom, Inc.*, 2023 WL 5805889, at *7 (rejecting the defendant's argument that the plaintiff was not entitled to pre-judgment interest because it delayed in filing suit, where the defendant failed to "present[] any argument that it was prejudiced by the delay" and instead merely argued that its damages were higher due to the delay, without asserting that it would have mitigated its damages but for the delay); *see also VB Assets, LLC*, 751 F. Supp. 3d at 418.

CERT also argues that if the Court finds that Plaintiffs are entitled to pre-judgment interest, it should be awarded at the Treasury bill rate instead of the prime rate. This, CERT says, is due to: (1) Plaintiffs' alleged delay in filing suit; and (2) Plaintiffs' failure to show either that it borrowed at a higher rate than the Treasury bill rate (i.e., at the prime rate), or a causal connection between borrowing and Plaintiffs' loss of the use of the money awarded as a result of infringement. (D.I. 769 at 20) But the Court declines this request. It will instead follow the common practice of the District and award pre-judgment interest at the prime rate, which this Court has recognized as "best compensat[ing] a patentee for lost revenues during the period of

18

infringement because the prime rate represents the cost of borrowing money, which is a better measure of the harm suffered as a result of the loss of the use of money over time." *VB Assets, LLC*, 751 F. Supp. 3d at 419 (internal quotation marks and citation omitted). Despite CERT's argument to the contrary, Plaintiffs need not "demonstrate that it borrowed at the prime rate in order to be entitled to prejudgment interest at that rate." *Purewick Corp.*, 666 F. Supp. 3d at 451 (internal quotation marks and citations omitted) (rejecting this same argument on the same grounds) (citing cases).

For these reasons, the Court GRANTS Plaintiffs' request for pre-judgment interest compounded quarterly at the prime rate.

### 2. Post-judgment Interest

With respect to post-judgment interest, "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Post-judgment interest is "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield . . . for the calendar week preceding[] the date of the judgment." *Id.* For claims involving private litigants, post-judgment interest is computed daily and compounded annually. 28 U.S.C. § 1961(b). Further, post-judgment interest is calculated based on the damages awarded in the underlying judgment, plus the amount of pre-judgment interest. *Sun Ship, Inc.*, 785 F.2d at 63. "[P]ost-judgment interest on the prejudgment interest award does not begin to accrue until the amended judgment quantifying the prejudgment interest is entered." *ArcherDX, LLC*, 2022 WL 4597877, at *19; *see also Travelers Cas. & Sur. Co. v. Ins. Co. of N. Am.*, 609 F.3d 143, 175 (3d Cir. 2010) ("[P]ost-judgment interest on Travelers' award of prejudgment interest did not begin to run until the December 5, 2007 order was entered quantifying the amount in prejudgment interest owed to Travelers.").

Plaintiffs request post-judgment interest at the weekly average one-year constant maturity Treasury yield beginning on the date that the final judgment is entered, and ending the day upon which CERT satisfies the Court's final judgment. (D.I. 763 at 20) CERT does not dispute that if they are liable for damages, they are required to pay post-judgment interest. (D.I. 769 at 20) Therefore, Plaintiffs' request for post-judgment interest is GRANTED.

## III. CONCLUSION

For the foregoing reasons, the Court finds that Plaintiffs' Motion should be GRANTED-IN-PART and DENIED-IN-PART. More specifically, Plaintiffs' request for enhanced damages is DENIED. Plaintiffs' request for pre- and post-judgment interest is GRANTED.

Dated: December 17, 2025

*Christopher J. Burke*
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE